UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2003 OCT 23 A 10: 45
US DISTRICT COURT
HARTFORD CT

IN RE: PRICELINE.COM SECURITIES
LITIGATION

Master File No.: 3:00cv1884(DJS)

This document relates to:

ALL ACTIONS

October 23, 2003

## RESPONSE OF DELOITTE & TOUCHE LLP TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant Deloitte & Touche LLP ("Deloitte") respectfully submits this Response to Plaintiffs' Notice of Supplemental Authority and Response to Defendant Deloitte & Touche LLP's Notices of Supplemental Authority, dated September 16, 2003 ("Plaintiffs' Notice").[1]

Of the two authorities cited in plaintiffs' Notice, *Newman v. Warnaco Group, Inc.*, 335 F.3d 187 (2d Cir. 2003), and *Levitt v. Bear Stearns & Co.*, 340 F.3d 94 (2d Cir. 2003), the first is inapposite here. In *Warnaco Group, Inc.*, plaintiffs had not filed any prior pleadings, which left a factual issue as to when plaintiffs should have discovered their claim. 335 F.3d at 194-95. Here, there is no such factual issue because plaintiffs are bound by the allegations in their Consolidated Amended Complaint ("CAC") and in their earlier pleadings, and those admissions establish as a matter of law that the allegations in the CAC were publicly known on the dates of the pertinent news articles quoted in the CAC (October 6, 2000 and earlier) and at

---

1. Plaintiffs responded to two Notices of Supplemental Authority Deloitte submitted, the first dated February 14, 2003, and the second dated July 23, 2003.

the dates of the plaintiffs' prior court filings (October 2-13, 2000) – more than one year before they sued Deloitte on October 29, 2000.

In *Levitt*, the second case cited by plaintiffs, there were prior pleadings concerning the same subject matter. Indeed, the Second Circuit's analysis of those papers clearly applies here and lends further support to Deloitte's motion to dismiss. The Second Circuit analyzed the timeliness of a securities fraud claim against an investment bank by comparing the *Levitt* complaint with a prior statement of claim in an earlier-filed NASD arbitration and with a complaint in a prior action filed in Texas. 340 F.3d at 102-103. The *Levitt* complaint contained three allegations of facts that were missing from the pleadings in the earlier arbitration and Texas proceedings, but the District Court had failed to assess whether any of these additional allegations was sufficient or, in the words of the Second Circuit's Opinion, "necessary" or "essential" to the claim against the bank, "or whether other facts alleged in the complaint would have sufficed."[2] *Id.* at 103.

Plaintiffs invoke *Levitt* to argue that this Court should consider their October 29, 2000 addition of Deloitte to be timely on the grounds that, prior to that date, they did not have a basis "sufficient to adequately allege Deloitte's involvement in the fraud."[3] (Plaintiffs' Notice at 5.) Plaintiffs attempt to fit within the *Levitt* analysis by citing four allegations of fact from their CAC which they argue were not publicly available when they filed their original pleadings. *Id.*

---

2. The Sixth Circuit recently performed a similar analysis in *New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495, 501-502 (6th Cir. 2003). The court affirmed dismissal of an amended complaint which named the Ernst & Young accounting firm as a defendant more than one year after the plaintiffs had filed their original complaint against Ernst's client and its corporate officers. The court noted in particular that the fraud alleged against Ernst's client in the original complaint involved primarily the same issues later alleged against Ernst in the amended complaint: departures from GAAP in the audited financial statements. *Id.* at 502.

3. Plaintiffs repeatedly assert that everything they knew prior to October 29, 2000 was insufficient to file a claim against Deloitte "capable of withstanding a motion to dismiss" (Plfs. Opp. at 49; *see* Plaintiffs' Notice at 4-5, 6),

2

In fact, applying the analysis in *Levitt* here, the comparison of plaintiffs' own CAC and their prior pleadings establishes as a matter of law that the four purported facts are either (a) not new, or (b) not sufficient to support a claim of fraud against Deloitte – or both.

*Allegation (1) (Repeat Users)*: The first purportedly new allegation is that "Deloitte 'knew the number of WebHouse customers using the system more than once was miniscule,'" in that a quarter of first time users used the site a second time and a quarter of the second-time users returned a third time. (Plaintiffs' Notice at 5 (citing CAC ¶ 85(c)(ii)).) Plaintiffs fail to explain how this allegation is supposed to implicate Deloitte in any wrongdoing. But, in any event, they incorrectly suggest that their CAC makes this allegation as to Deloitte. (*Id.*) In fact, their pleading does not make any such allegation as to Deloitte. The pleading alleges that "<u>Defendants</u> knew the number of WebHouse customers using the system more than once was miniscule" (CAC ¶ 85(c)(ii) (emphasis added)), and expressly defines "Defendants" to exclude Deloitte. (CAC ¶ 20 (defining "Defendants" as "Priceline and the Individual Defendants").) Of course, plaintiffs cannot rely on an allegation that they have failed to make against Deloitte.

Nor would it matter if plaintiffs had made the allegation against Deloitte since the allegation lacks the requisite particularity to support a fraud claim. Plaintiffs fail to allege: (a) that Deloitte knew the alleged fact; (b) when Deloitte knew it; (c) how Deloitte learned it; and (d) what Deloitte did or failed to do with the information. More importantly, plaintiffs fail to show how this allegation supports a finding of scienter as to Deloitte. (*See* Deloitte's Opening Brief at 20-21.) As Deloitte has shown, allegations of mere "access" to information fail to support a fraud claim as a matter of law. (*Id.* at 25; Deloitte's Reply Brief at 15-16.)

---

and that it was only through their "diligent investigation" that they were able to uncover four facts that were "necessary to plead sufficiently Deloitte's involvement in the alleged fraud." (Plaintiffs' Notice at 5, 6.)

3

Accordingly, even if plaintiffs had pleaded this allegation against Deloitte, it would fail the *Levitt* test which requires that the allegation not only be new but also that it be "necessary" or "essential" to the claim of securities fraud. 340 F.3d at 103.

*Allegations (2) & (3) (Computer Problems):* Plaintiffs' own CAC admits that their second and third "new" facts -- that there were "numerous problems with WebHouse's and Priceline's computer systems" and that WebHouse had to pay for computer upgrades -- were in fact publicly known on October 5 and 6, 2000.[4] If allegations that Deloitte was aware of WebHouse computer problems were sufficient to show fraud, then plaintiffs already knew enough on October 5, 2000 -- or from reading the next day's newspapers -- to file suit against Deloitte more than a year before they filed the CAC. Under *Levitt*, if such facts "would have sufficed" to state a claim, then the claim is time-barred. 340 F.3d at 103.

*Allegation (4) (Internal Reports):* Plaintiffs' fourth "new" allegation of the existence of "internal reports" is likewise not new. As Deloitte has shown, plaintiffs alleged the existence of negative internal reports in their original complaints as early as October 2, 2000. (Deloitte's Reply Brief at 9 & n.7.) Further, plaintiffs' generic allegations about these reports, devoid of any particularized information about when, or what or how Deloitte came to learn of any report or what Deloitte purportedly did or did not do with the information, are insufficient to establish a strong inference of scienter. (*Id.* at 16; Deloitte's Opening Brief at 26.)

---

4.  (*See* CAC ¶ 163(a) (quoting Oct. 6, 2000 *Wall Street Journal* article) ("**The cost of those subsidies, along with expensive computer systems, ate up most of the $363 million that WebHouse Club had raised from investors during the past two years.**") (original emphasis); ¶ 163(e) (quoting Oct. 6, 2000 *New York Post* article) ("WebHouse Club was affiliated [sic] with typical dot-com problems. **It raised money by the truckload but had trouble paying for computers, and this Summer was cut off by the company that sold it its high-end Unix servers.**") (original emphasis); *see also* ¶ 173 (quoting Oct. 18, 2000 *Wall Street Journal* article) (described in the CAC as an "extended revelation of WebHouse's ongoing problems," including how WebHouse was continually "bobbled [sic] by technological glitches," including limitations of the computer system: "**By January, even with teams of programmers working around the clock -- they slept on cots**

4

Since the four purportedly "new" facts either were not new or add nothing "necessary" or "essential" to plaintiffs' claim, *Levitt*, 340 F.3d at 103, the claim against Deloitte is untimely. For the same reason, the claim is also insufficient. *Compare Pfeiffer v. Goldman, Sachs & Co.*, No. 02 Civ. 6912, 2003 WL 21505876, at *4-6 (S.D.N.Y. July 1, 2003).

Finally, plaintiffs are in no position to argue that Deloitte "created barriers" to their "investigation" by not withdrawing its audit report, because they filed numerous lawsuits before, on, and shortly after October 5, 2000, alleging fraud in Priceline's financial statements, including the 1999 year-end financial statements audited by Deloitte. (Plaintiffs' Notice at 3-4; *see, e.g., Zia v. Priceline.com, Inc.*, No. 3:00CV1968, ¶ 64(f) (D. Conn. Oct. 13, 2000) (alleging that Priceline "carried this inflated valuation [of the WebHouse warrants] on the financial reports of the Company initially as income and continually as an asset").) *Compare New England Health Care Employees Pension Fund*, 336 F.3d at 501-502. Plaintiffs cannot disclaim their original complaints, which demonstrate their knowledge at the date of those filings -- more than one year before they filed suit against Deloitte. (*See* Deloitte's Opening Brief at 12-14; Deloitte's Reply Brief at 9-11.) Similarly, plaintiffs admissions in their own CAC fix the dates on which the facts they allege were publicly known. As the Second Circuit held in *LC Capital Partners, LP v. Frontier Ins., Group, Inc.*, 318 F.3d 148 (2d Cir. 2003), a time-bar ruling is appropriate on a motion to dismiss where the circumstances are "sufficiently clear on the face of the complaint and related documents." *Id.* at 157. Plaintiffs' admissions on the face of their own original pleadings and their CAC clearly satisfy the *Warnaco Group, Inc.* requirement of "uncontroverted evidence irrefutably demonstrat[ing] when plaintiff discovered or should have discovered the fraudulent conduct." *Warnaco Group, Inc.*, 335 F.3d at 195.

---

**strewn around the office -- the site was having serious trouble handling the legions of shoppers streaming into it.") (original emphasis).)**

For the foregoing reasons, the *Levitt* analysis supports Deloitte's argument in the underlying papers that addition of Deloitte as a defendant here was untimely.

Respectfully submitted

By: _____
William H. Narwold (CT 00133)
McCarter & English LLP
CityPlace I
Hartford, Connecticut 06103
Tel: (860) 275-6700

Attorneys for Defendant
Deloitte & Touche LLP

Of Counsel:

William R. Maguire (CT 23375)
Carla A. Kerr (CT 23376)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Tel: (212) 837-6000

Eric H. Fisher
DELOITTE & TOUCHE USA LLP
1633 Broadway
New York, New York 10019-6754
Tel: (212) 492-4020

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Response of Deloitte & Touche LLP to Plaintiffs' Notice of Supplemental Authority was mailed, postage prepaid, this 23rd day of October, 2003, to:

| Co-Lead Counsel | Liaison Counsel |
|---|---|
| David R. Scott, Esq.<br>James F. Miller, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:     860-537-3818<br>Fax:    860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:     212-687-7230<br>Fax:    212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Law Offices of Dennis J. Johnson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:     802-862-0030<br>Fax:    802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Patrick A. Klingman, Esq.<br>Schatz & Nobel, PC<br>330 Main Street, 2nd Floor<br>Hartford, CT  06106-1851<br>Tel:     860-493-6292<br>Fax:    860-493-6290 |

| **Attorneys for Defendant Deloitte & Touche LLP**<br><br>William R. Maguire, Esq.<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY  10004<br>Tel:    212-837-6000<br>Fax:   212-422-4726 | **Attorneys for Defendant Jay S. Walker**<br><br>Martin Glenn, Esq.<br>Dana C. MacGrath, Esq.<br>O'Melveney & Myers LLP<br>153 East 53rd Street<br>New York, NY  10022<br>Tel:    212-326-2000<br>Fax:   212-326-2061<br><br>Joseph L. Clasen, Esq.<br>Robinson & Cole LLP<br>Financial Centre<br>695 East Main Street<br>P.O. Box 10305<br>Stamford, CT  06904-2305<br>Tel:    (203) 462-7500<br>Fax:   (203) 462-7599<br><br>Frank F. Coulom, Jr., Esq.<br>Bradford S. Babbitt, Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT  06103-3597<br>Tel:    (860) 275-8200<br>Fax:   (860) 275-8299 |

| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.** | **Attorneys for Defendants Twardy, Weingarten. Berdakina, Mayer. Mazzo. Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols** |
|---|---|
| Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore<br>825 Eight Avenue<br>New York, NY  10019<br>Tel:    212-474-1000<br>Fax:    212-474-3700<br><br>Joseph L. Clasen, Esq.<br>Robinson & Cole LLP<br>Financial Centre<br>695 East Main Street<br>P.O. Box 10305<br>Stamford, CT  06904-2305<br>Tel:    (203) 462-7500<br>Fax:    (203) 462-7599<br><br>Frank F. Coulom, Jr., Esq.<br>Bradford S. Babbitt, Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT  06103-3597<br>Tel:    (860) 275-8200<br>Fax:    (860) 275-8299 | David A. Slossberg, Esq.<br>Margaret F. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT  06460<br>Tel:    203-877-8000<br>Fax:    203-878-9800 |

_____
William H. Narwold

HARTFORD: 601292.01

9