Westlaw.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 1

**H**
Motions, Pleadings and Filings

United States District Court,
S.D. New York.

In re AOL TIME WARNER, INC. SECURITIES AND "ERISA" LITIGATION

**No. 1500, 02 Civ. 5575(SWK).**

May 5, 2004.

*OPINION AND ORDER*

KRAM, J.

TABLE OF CONTENTS

I. INTRODUCTION .......... 2

II. PROCEDURAL HISTORY OF THIS ACTION .......... 4

III. THE PARTIES .......... 5

IV. THE COMPLAINT .......... 8

V. PLAINTIFF'S SUBSTANTIVE CLAIMS .......... 9

A. Section 11 .......... 10

B. Section 12(a)(2) .......... 10

C. Section 15 .......... 10

D. Section 13 .......... 11

E. Section 10(b) .......... 11

F. Section 14 .......... 12

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Page 3 of 48

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 2

G. Section 20 .......... 12

H. 28 U.S.C. § 1658 ("Sarbanes-Oxley") .......... 12

VI. LEGAL STANDARD FOR MOTION TO DISMISS .......... 13

VII. APPLICABLE STATUTE(S) OF LIMITATIONS .......... 14

A. This Action Was Filed on September 16, 2002 .......... 14

B. Sarbanes-Oxley Applies to MSBI's 10(b) Claims .......... 17

VIII. AN AOL INVESTOR OF "ORDINARY INTELLIGENCE" WOULD NOT HAVE BEEN AWARE OF THE PROBABILITY THAT SHE HAD BEEN DEFRAUDED PRIOR TO JULY 18, 2002 .... 18

A. The Sun, Hughes and Gateway Transactions Are Insufficient To Trigger Plaintiff's Duty to Inquire .......... 21

B. The Vendor Advertising and Equity Deals Are Also Insufficient to Trigger Plaintiff's Duty to Inquire .......... 22

IX. THE CLAIMS AGAINST THE NEWLY-NAMED DEFENDANTS ARE TIMELY .......... 26

X. BECAUSE THE AMENDED COMPLAINT IS TIMELY, ALLEGATIONS OF TOLLING ARE UNNECESSARY .......... 27

XI. MSBI HAS PROPERLY PLED COMPLIANCE WITH THE STATUTE OF LIMITATIONS ...... 27

XII. THE AMENDED COMPLAINT PLEADS ALLEGED MISSTATEMENTS WITH PARTICULARITY . 28

A. Allegedly Overstated A & C Revenue .......... 33

B. The Sections 11 and 12(a)(2) Claims Based on the Merger Registration Statement Are Pled With Particularity .......... 36

XIII. WITH THE EXCEPTIONS NOTED BELOW, THE SECTION 10(B) CLAIMS ARE NOT DISMISSED .......... 37

A. MSBI May Proceed Under Rules 10b-5(a) & (c) .......... 38

B. It is Axiomatic That a Claim Under Section 10(b) Must Allege Facts Giving Rise To a Strong Inference of Fraudulent Intent .......... 39

1. MSBI Has Not Adequately Pled Motive And Opportunity .......... 40

2. MSBI Has Satisfactorily Pled Conscious Misbehavior or

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B005580000045430005077012... 10/4/2004

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 3

Recklessness With Respect to Some, But Not All of the Defendants ......... 42

3. MSBI Has Adequately Alleged Scienter With Respect to Corporate Defendants AOLTW and AOL ........................................... 44

4. MSBI Has Adequately Alleged Conscious Misbehavior or Recklessness With Respect to Defendants Pittman, Kelly, Pace, Keller and Colburn, But Not With Respect to Defendants Schuler, Novack, Levin, Parsons, Ripp, Rindner, Berlow or Case ................................ 45

a. Robert W. Pittman .......................................... 47

b. J. Michael Kelly ........................................... 49

i. Kelly's Statements Do Not Qualify for Protection Under Either the "Bespeaks Caution" Doctrine or the PSLRA Safe Harbor .......... 51

c. Barry Schuler ................................................ 54

d. Kenneth J. Novack .......................................... 55

e. Gerald Levin .................................................. 56

f. Wayne H. Pace ................................................ 57

g. Richard Parsons ............................................. 58

h. Joseph Ripp .................................................. 59

i. Eric Keller ................................................... 60

i. Keller Is Not Subject to Section 11 Liability .......... 63

ii. The 10(b) Claim is Timely ........................... 63

j. Steven Rindner ............................................... 64

k. Myer Berlow ................................................... 65

l. David Colburn ................................................ 67

m. Stephen M. Case ............................................ 71

XIV. THE SECTIONS 10(B) AND 14(A) CLAIMS ADEQUATELY PLEAD LOSS CAUSATION ... 73

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Page 5 of 48

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 4

XV. AOLTW'S ARGUMENTS IN SUPPORT OF DISMISSAL OF THE SECTION 14(A) CLAIMS ARE UNPERSUASIVE ........ 75

XVI. MSBI'S CLAIMS UNDER SECTION 12(A)(2) BASED ON THE BOND OFFERINGS ARE DISMISSED AS TO AOLTW AND THE INDIVIDUAL DEFENDANTS ........ 77

XVII. MSBI'S SECTION 11 CLAIMS BASED ON THE BOND REGISTRATION STATEMENT (COUNTS FIVE AND SIX) ARE DISMISSED AS TO AOLTW AND THE INDIVIDUAL DEFENDANTS ........ 77

XVIII. MSBI'S SECTIONS 15 AND 20 CLAIMS FOR CONTROL PERSON LIABILITY ARE DISMISSED WITH RESPECT TO SOME, BUT NOT ALL OF THE INDIVIDUAL DEFENDANTS . 77

XIX. ERNST & YOUNG'S MOTION TO DISMISS IS GRANTED IN PART AND DENIED IN PART ........ 83

A. The Section 11 Claim Based on the Bond Registration Statement (Count 7) Is Dismissed With Prejudice ........ 85

B. The Section 11 Claim Based on the Merger Registration Statement (Count 3) Is Timely ........ 85

1. The Section 11 Merger Registration Claim Is Pled With Particularity ........ 87

C. MSBI's Section 10(b) Claim Against E & Y Properly Pleads Scienter ... 89

1. No Class Member Who Purchased Shares Prior to August 13, 1999 Has a 10(b) Claim Against Ernst & Young ........ 89

2. The 10(b) Claims Are Pled with Particularity ........ 90

3. MSBI Has Pled Facts Giving Rise To A Strong Inference that E & Y Acted With Scienter ........ 91

a. MSBI Has Not Alleged Motive and Opportunity ........ 92

b. MSBI Has Adequately Alleged Reckless Misbehavior by E & Y ..... 92

i. The Allegations in the Amended Complaint are Factually

and Legally Distinguishable From Zucker ........ 93

ii. When Combined With the GAAS and GAAP Violations and AOLTW's Dependence on Advertising Revenue to Meet Earnings Targets, the "Red Flags" Allegedly Ignored by E & Y Are Sufficient to Plead Scienter .. 94

D. MSBI's Section 14(a) Claim, As Circumscribed Below, Is Actionable .. 96

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Page 6 of 48

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 5

XX. MORGAN STANLEY'S MOTION TO DISMISS COUNTS FOUR AND SEVENTEEN IS GRANTED .......... 99

A. Statements of Opinion Are Actionable Only If Both Objectively and Subjectively False .......... 101

XXI. THE MOTION TO DISMISS OF THE BOND UNDERWRITERS AND DEFENDANT CITIGROUP IS GRANTED .......... 104

A. Plaintiffs Lack Article III Standing .......... 106

1. MSBI Has Not Alleged "Injury in Fact" .......... 107

2. MSBI Has Not Pled Facts Which Establish an Injury Under Sections 11 and 12(a)(2) .......... 108

a. MSBI Has Not Demonstrated Losses Under Section 11(e) .......... 108

b. MSBI Has Not Stated a Claim for Damages or Rescission Under Section 12(a)(2) .......... 109

XXII. LEAVE TO REPLEAD .......... 112

XXIII. CONCLUSION .......... 113

APPENDICES

A1. Section 11 .......... I

A2. Section 12 .......... II

A3. Section 14(a) .......... III

A4. Section 10(b) .......... IV

A5. Sections 15 and 20 .......... V

## I. INTRODUCTION

*1 On July 18 and 19, 2002, *The Washington Post* published a two-part article, "Unconventional Transactions Boosted Sales, Amid Big Merger, Company Resisted Dot-Com Collapse," reporting allegations that AOL Time Warner Inc. had substantially overstated publicly reported advertising revenue. [FN1] Within hours of the article's publication, Defendant Robert Pittman, AOLTW's Chief Operating Officer, Board member, and Head of Operations for the AOL division of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 6

Company, resigned. On July 24, 2002, AOLTW acknowledged that the Securities and Exchange Commission ("SEC") was investigating AOLTW's accounting practices. Amended Complaint ("AC") ¶ 5. On July 31, 2002, the Company confirmed that the Department of Justice ("DOJ") had commenced a criminal investigation of AOLTW's accounting practices. *Id.* [FN2]

FN1. On January 11, 2001, American Online ("AOL") merged with Time Warner in what analysts described as the "deal of the century." The merged entity was called AOL Time Warner ("AOLTW" or the "Company"). However, on October 10, 2003, in an effort to "better reflect the portfolio of our investors," defendant AOLTW changed its name to Time Warner, Inc. To avoid confusion, in this and subsequent opinions, the Court will refer to the merged entity as AOLTW, or the Company.

FN2. As of the date of this opinion, both the SEC and DOJ investigations are continuing. *See* Memorandum of Law in Support of the AOL Time Warner Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint, dated July 14, 2003, at 8 ("AOLTW Memo"). However, according to an April 13, 2004 article in *The Washington Post,* the SEC is preparing to formally accuse AOLTW for booking more than $400 million in questionable revenue following the January 2001 Merger.

On August 14, 2002, AOLTW issued a press release, along with its SEC Form 10-Q filing, in which it publicly acknowledged that advertising revenue "may have been overstated" in the amount of $49 million with respect to three transactions over a period of six quarters from 4Q 2000 to 1Q 2002. *Id.* ¶¶ 5-6.

On October 23, 2002, the Company restated the financial statements of AOL and AOLTW for eight consecutive quarters (July 1, 2000 through June 30, 2002) by reducing its advertising revenue in the amount of $190 million. Along with its financial restatement, the Company's Form 8-K filing with the SEC stated:

> As a result of the restatement announced on October 23, 2002 by AOL and AOL Time Warner Inc. (the "Company"), the Company's financial statements for the affected periods should no longer be relied upon, including the audited financial statements for 2000 and 2001 contained in the Company's annual report on Form 10-K for the year ended December 31, 2001.

*Id.* ¶ 6.

On March 28, 2003, in its SEC Form 10-K filing, AOLTW reported that it may restate AOL advertising revenue by an additional $400 million for the years 2001 and 2002. *Id.* The Company also stated that, "it is possible that further restatement of the Company's financial statements may be necessary," with respect to "the range of other transactions" being investigated by the SEC and DOJ. AC ¶ 6.

To date, the Company has either restated, or acknowledged the possibility of restating advertising revenue in the amount of $477 million. *Id.* ¶ 7.

II. PROCEDURAL HISTORY OF THIS ACTION

On July 18, 2002, the day that the first *Washington Post* article was published, two shareholder class action complaints were filed in this Court alleging violations of § 10(b) of the Exchange Act. *See* Butler Decl. Ex. 29 & 30. Those two initial class action complaints were followed by 27 similar class action complaints, including one filed by the Minnesota State Board of Investment ("MSBI") on September 16, 2002. Butler Decl. Ex. 31.

All of these putative class actions have been consolidated before this Court and the Court has appointed MSBI as the sole lead plaintiff. On April 15, 2003, MSBI filed the Amended Complaint. In addition to claims under § 10(b) of the Exchange Act asserted in prior complaints, the Amended Complaint added new claims under § 11 and § 12(a)(2) of the Securities Act, as well as § 14(a) of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Page 8 of 48

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 7

the Exchange Act, relating to the Merger Registration Statement and Merger Proxy. AC Counts 1-4, 14-17. The Amended Complaint also added new claims under § 11 and § 12(a)(2) relating to the Shelf Registration Statement and the Supplemental Prospectuses issued in connection with bond offerings in April 2001 and April 2002. *Id.* Counts 5-11. Finally, the Amended Complaint contains claims, some of which were present in prior complaints, for control person liability under § 15 of the Securities Act and § 20 of the Exchange Act. *Id.* Counts 12-13, 20.

III. THE PARTIES

*2 The Lead Plaintiff is the Minnesota State Board of Investment. MSBI is an agency established by Article XI of the Minnesota Constitution and laws of the State of Minnesota for the purpose of administering and directing investment of all state funds and pension funds. AC ¶ 31. During the Class Period, MSBI acquired approximately 3,073,050 shares of AOL stock, exchanged approximately 2,610,780 shares of Time Warner stock for AOLTW stock pursuant to the Merger, and purchased approximately 5,769,839 shares of AOLTW stock. MSBI also purchased approximately $44,679,246 worth of AOLTW debt securities. *Id.*

Numerous additional plaintiffs are included in the consolidated action. *See* AC at Exhibit C. During the Class Period, it is alleged that each additional plaintiff purchased or otherwise acquired securities of AOL or AOLTW, and suffered damages.

The Amended Complaint names AOL Time Warner Inc., America Online, Inc., and Time Warner Inc. as corporate defendants. AC ¶¶ 33-35. The Amended Complaint names the following officers and directors of AOL prior to the Merger as individual defendants: Stephen M. Case, former Chairman of the Board of AOLTW; Robert W. Pittman, former Chief Operating Officer of AOLTW; J. Michael Kelly, former Chief Operating Officer of the AOL subsidiary of AOLTW and current Chairman and Chief Executive of AOL International and Web Services; David M. Colburn, former Executive Vice-President and President of Business Affairs and Development for AOLTW; Eric Keller, former Senior Executive Vice President of Business Affairs and Development; Joseph A. Ripp, Vice Chairman of AOL; Myer Berlow, Senior Advisor to AOLTW, Barry Schuler, Chairman and Chief Executive Officer of AOL; Steven Rindner, former Senior Vice President of Business Affairs and Development for AOLTW; and Kenneth J. Novack, member of the Board of Representatives of Time Warner Entertainment. AC ¶ 36. [FN3]

FN3. Defendants Myer Berlow, Stephen M. Case, David M. Colburn, Eric Keller and Steven Rindner filed separate and individual motions to dismiss; however, the legal issues raised in those motions are substantially related to those presented by defendant AOLTW and the individual defendants in their papers. Accordingly, the Court decides the motions of defendants Berlow, Case, Colburn, Keller and Rindner in this opinion. *See infra* at 60-73.

The Amended Complaint names the following officers and directors of Time Warner prior to the Merger as individual defendants: Gerald M. Levin, former Chief Executive Officer of AOLTW; Richard D. Parsons, Chief Executive Officer of AOLTW and Chairman-Elect of the AOLTW Board of Directors; and Wayne H. Pace, Chief Financial Officer of AOLTW.

The Amended Complaint names the following additional individual defendants: Paul T. Cappucio, Executive Vice President, General Counsel and Secretary of AOLTW; Miles R. Gilburne, Director of AOLTW; James W. Barge, Senior Vice President and Controller for AOLTW; Daniel F. Akerson, Director of AOTLW and member of the Company's Audit and Finance Committee; Stephen F. Bollenbach, Director of AOLTW and Chair of the Audit and Finance Committee; Frank J. Caulfield, Director of AOLTW; and Franklin D. Raines, Director of AOLTW and member of the Audit and Finance Committee. AC ¶ 46.

The Amended Complaint names Ernst & Young LLP as a defendant. [FN4] Ernst & Young is a certified public accounting firm that provided auditing and accounting services to AOL and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 8

AOLTW. *Id.* ¶ 46.

FN4. Defendant Ernst & Young filed a separate and individual motion to dismiss, which, due to substantial overlap, is also addressed by this Opinion. *See infra* at 83-99.

*3 The Amended Complaint also names underwriter defendants Morgan Stanley & Co. ("Morgan Stanley"), Salomon Smith Barney Inc. ("Salomon"), Citigroup, Inc. ("Citigroup"), Banc of America Securities LLC ("Banc of America"), and J.P. Morgan Chase & Co. ("J.P.Morgan"). *Id.* ¶¶ 48-62. [FN5]

FN5. Defendant Citigroup, on behalf of itself and the underwriter defendants, filed a separate motion to dismiss on July 14, 2003. In addition, defendant Morgan Stanley filed separately its Motion to Dismiss Counts Four and Seventeen of the Amended Consolidated Class Action Complaint. Lead Plaintiff MSBI opposed both Citigroup and Morgan Stanley's motions in its Opposition to Motion to Dismiss of Bond Underwriter Defendants and Motion to Dismiss of Defendant Morgan Stanley as Financial Advisor, filed September 29, 2003. These motions are also covered by this Opinion. *See infra* at 99-112.

IV. THE COMPLAINT

The Amended Complaint alleges that AOL and AOLTW improperly accounted for at least 19 separate advertising transactions that impacted Advertising and Commerce ("A & C") revenue and advertising backlog in each of 14 calendar quarters from 4Q 1998 to 2Q 2002. AC ¶¶ 140-251. The Amended Complaint alleges that, as a result of fraudulent accounting, revenue and backlog were overstated in various SEC filings, press releases and other public statements made from January 27, 1999 to July 24, 2002 (the "Class Period"). The Amended Complaint alleges that, because advertising revenue was overstated at the time of the Merger, goodwill from the AOL/Time Warner Merger was also overstated during part of the Class Period. AC ¶ 424. The Amended Complaint also alleges that certain individual defendants made misleading oral statements between October 2000 and April 2001. These statements are alleged to have been misleading because the speakers knew or were reckless in not knowing about overstated A & C revenue and backlog at the time the statements were made. *Id.* ¶ 330. In sum, the Amended Complaint alleges that AOLTW has overstated advertising revenue by at least $1 .7 billion, causing billions of dollars in damage to investors, and amounting to "one of the largest frauds ever committed in the United States securities markets." *See* Memorandum of Lead Plaintiff MSBI in Opposition to Motion to Dismiss of the AOLTW Defendants, and Separate Motions to Dismiss of Defendants Ernst & Young LLP, Stephen Case, Myer Berlow, David Colburn, Eric Keller and Steven Rindner, dated September 29, 2003, at 1 ("MSBI Opp.").

Corporate defendants AOL Time Warner, American Online, Inc. and Time Warner Inc., and individual defendants Daniel F. Ackerson, James W. Barge, Stephen F. Bollenbach, Paul T. Cappuccio, Frank J. Caufield, Miles R. Gilburne, J. Michael Kelly, Gerald M. Levin, Kenneth J. Novack, Wayne H. Pace, Richard D. Parsons, Robert W. Pittman, Franklin D. Raines, Joseph A. Ripp, and Barry Schuler move to dismiss the Consolidated Amended Class Action Complaint filed by MSBI on April 15, 2003. Defendants Stephen Case, Myer Berlow, David Colburn, Eric Keller and Steven Rindner each move, individually, to dismiss the Amended Complaint. In addition, Defendants Ernst & Young LLP, Morgan Stanley & Company and the Bond Underwriters move to dismiss.

V. PLAINTIFF'S SUBSTANTIVE CLAIMS

MSBI alleges violations of numerous securities laws, some of which stem from the Securities Act of 1933 ("Securities Act") and some of which stem from the Securities Exchange Act of 1934 ("Exchange Act"). In total, MSBI alleges violations of §§ 11, 12(a) and 15 of the Securities Act of 1933 and §§ 10(b), 14(a) and 20(a) of the Securities

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Page 10 of 48

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 9

Exchange Act of 1934. A brief description of the statutory provisions that form the bases of MSBI's claims follows.

A. Section 11

*4 Section 11 of the Securities Act provides that any signer, director of the issuer, preparing or certifying accountant, or underwriter may be liable if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a).

B. Section 12(a)(2)

Section 12(a)(2) of the Securities Act, previously known as Section 12(2), allows a purchaser of a security to bring a private action against a seller that "offers or sells a security ... by means of a prospectus or oral communication, which contains an untrue statement of material fact or omits to state a material fact necessary in order to make the statements ... not misleading." 15 U.S.C. § 77l(a)(2).

C. Section 15

Section 15 of the Securities Act provides that "Every person who ... controls any person liable under section 11 or 12 [15 USCS § 77k or 77l] shall also be liable jointly and severally with and to the same extent as the controlled person ... unless the controlling person had no knowledge of ... the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. § 77o.

D. Section 13

Section 13 of the Securities Act sets forth the statute of limitations for Securities Act claims:

> No action shall be maintained to enforce any liability created under section 77k [Section 11] or 77l(a)(2) [Section 12(a)(2) ] of this title unless *brought within one year after the discovery of the untrue statement or the omission,* or after such discovery should have been made by the exercise of reasonable diligence ... *In no event shall any action be brought* to enforce a liability created under section 77k or 77l(a)(2) of this title *more than three years after the security was bona fide offered to the public,* or under section 77l(a)(2) of this title more than three years after the sale.

15 U.S.C. § 77m (emphasis added).

E. Section 10(b)

Section 10(b) of the Exchange Act provides that "It shall be unlawful ... (a) To effect a short sale ... of any security ... in contravention of such rules and regulations as the Commission may prescribe ... (b) To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j.

F. Section 14

Section 14(a) of the Exchange Act provides that "It shall be unlawful for any person, by use of the mails ... or otherwise ... to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title." 15 U.S.C. § 78n(a).

G. Section 20

*5 Section 20 of the Exchange Act provides that "Every person who, directly or indirectly, controls any person liable under any provision of this title ... shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

H. 28 U.S.C. § 1658 ("Sarbanes-Oxley")

On July 30, 2002, in response to a wave of corporate accounting scandals that undermined the integrity of the financial markets, Congress enacted Sarbanes-Oxley. Section 804 of Sarbanes-Oxley lengthened the statute of limitations for private causes of action alleging securities fraud. Section 804 is entitled "Statute of Limitations for Securities Fraud," and provides, in pertinent part:

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Page 11 of 48

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**
Page 10

a private right of action that *involves a claim of fraud, deceit, manipulation, or contrivance* in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of--

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation

28 U.S.C. § 1658 (emphasis added).

VI. LEGAL STANDARD FOR MOTION TO DISMISS

When deciding a motion to dismiss, "a court must accept as true the factual allegations of a complaint." *In re IPO Sec. Litig.,* 241 F.Supp.2d 281, 295 (S.D.N.Y.2003). In addition, such factual allegations must be construed in the light most favorable to plaintiffs. *Easton v. Sundram,* 947 F.2d 1011, 1014- 15 (2d Cir.1992). This is because, at the motion to dismiss stage, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Wright v. Ernst & Young LLP,* 152 F.3d 169, 173 (2d Cir.1998) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Further, courts are required to read complaints generously, drawing all reasonable inferences from the complaint's allegations in favor of the plaintiff. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Accordingly, a court must deny a defendant's motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *In re Emex Corp. Sec. Litig.,* No. 01 Civ. 4886(SWK), 2002 WL 31093612, at *4 (S.D.N.Y. Sept. 18, 2002) (*quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

VII. APPLICABLE STATUTE(S) OF LIMITATIONS

The Court must determine what statute of limitations governs each of MSBI's securities claims. To satisfactorily resolve the statute of limitations issues, the Court must (potentially) make two determinations: 1) The date on which this consolidated class action was filed for purposes of Sarbanes-Oxley; and if that date is post-July 30, 2002, 2) The scope of Sarbanes-Oxley's application.

A. This Action Was Filed on September 16, 2002

*6 By its terms, Section 804 applies to "all proceedings addressed by this section that are commenced on or after the date of enactment of this Act [July 30, 2002]." 28 U.S.C. § 1658(b). Thus, if this consolidated class action was commenced prior to July 30, 2002, Section 804's expanded limitations period is inapplicable.

AOLTW contends that, for purposes of determining the applicability of Section 804, this consolidated class action was commenced on July 18, 2002, the date the first of several now-consolidated class actions were filed. *See* Reply Memorandum of Law in Support of the AOL Time Warner Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint, dated November 14, 2003, at 4 ("AOLTW Reply"). In response, MSBI argues that since its complaint as lead plaintiff was filed on September 16, 2002, seven weeks after the passage of Sarbanes-Oxley, that Section 804's expanded limitations period applies. [FN6]

FN6. In contending that the initial file date of July 18, 2002 date is irrelevant, MSBI relies on *In re IPO,* 241 F.Supp.2d. However, because *In re IPO* involved only one individual plaintiff filing a complaint to which the defendants did not raise a statute of limitations defense, that decision is of limited use.

The issue of when this consolidated class action was commenced is surprisingly complex. It creates the potentially anomalous outcome of punishing plaintiffs who filed too early, a proposition counter to the basic understanding of a statute of limitations. In addition, it is highly unlikely, if not a virtual certainty, that this issue will not present itself again; in other words, there are no plaintiffs at this point who will file cases prior to July 30, 2002, and thus be outside the scope of Section 804. While it is true that in most cases, class actions or otherwise, the date of the first filing is the operative one for statute of limitations purposes, such a result in this case is

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 11

both inequitable and impractical.

First, from a constitutional perspective, it is hard to imagine that an overzealous and careless plaintiff, could, by filing 12 days prior to the effective date of Sarbanes-Oxley's expanded protections for securities plaintiffs, bind an entire nation of purchasers of AOL securities to a statute of limitations that was against the interests of the entire class. Second, even if there were no potential due process problems, practically speaking, if the Court were to determine that July 18, 2002 was the operative date for statute of limitations purposes (and thus the § 10(b) claims based on oral statements made over 3 years ago were barred), no rational plaintiff would choose to remain in that class. [FN7] Because the Court will not bind an entire class to a statute of limitations that is flatly contrary to its interests, and because, as a practical matter, a commencement date of July 18, 2002 would create all of the procedural headaches that the JPML was trying to avoid when it consolidated these cases, the Court finds that this consolidated class action was filed on September 16, 2002. [FN8] Accordingly, Section 804 of Sarbanes-Oxley applies.

FN7. This, of course, assumes that there would still be time for these plaintiffs to file a timely complaint.

FN8. Contrary to AOLTW's characterization of MSBI's position as "absurd and disingenuous," a finding that this action was filed on September 16, 2002 is consistent with the Lead Plaintiff provisions of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B). In appointing MSBI Lead Plaintiff, the Court determined, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), that MSBI was "most capable of adequately representing the interests of the class members." To now hold that MSBI, the party "most capable" of representing the class, was bound by a statute of limitations that was against the Class' interest, would be inconsistent both with the PSLRA and this Court's previous determination that MSBI was the most suitable party to serve as Lead Plaintiff.

B. Sarbanes-Oxley Applies to MSBI's § 10(b) Claims

Having determined that the date this action was commenced for Section 804 purposes was September 16, 2002, the Court turns to the question of whether Section 804 applies to all, some, or none of the claims asserted by MSBI. Pursuant to Section 804, the threshold requirement for the application of Sarbanes-Oxley's expanded limitations period is that the right of action "involves a claims of fraud, deceit, manipulation, or contrivance." If the underlying securities claim does not involve a fraud-based claim, then Section 804's expanded limitations period is inapplicable.

*7 In its motion to dismiss the Amended Complaint, Defendant AOLTW contends that claims under §§ 11, 12(a)(2) and 15 of the Securities Act must be brought within one year of the discovery of the alleged misstatement or omission, and, in any event, within three years of the relevant public offering or sale. *See* 15 U.S.C. § 77m. The defendant also asserts that "a similar limitations period" applies to claims under §§ 10(b), 14(a), and 20 of the Exchange Act. AOLTW Memo at 11.

Lead Plaintiff MSBI opposes AOLTW's interpretation of the effect of Sarbanes-Oxley on the statutes of limitations in this case. MSBI contends that Sarbanes-Oxley expanded the statute of limitations on all its claims.

There is little doubt that Section 804's expanded statute of limitations applies to § 10(b) claims. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288, No. 03 Civ. 6592, (S.D.N.Y. Nov. 21, 2003) at 25. *See also Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F.Supp.2d 243, 265 (S.D.N.Y.2003). Indeed, this is a rather non-controversial proposition; Section 804 expressly states that it applies to "claims sounding in fraud." The question of whether Section 804 applies to MSBI's other claims is less clear, but because MSBI concedes ( *See* MSBI Opp. at 23, n 11) that as a practical matter, the expanded Sarbanes-Oxley statute of limitations only affects its Section 10(b) claims (and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&dataid=B0055800000045430005077012... 10/4/2004

the related 20(a) control person claims), it is unnecessary to reach that question. In any event, Section 804 applies here, and MSBI's § 10(b) claims based on alleged misstatements prior to July 18, 1999 are timely.

VIII. AN AOLTW INVESTOR OF "ORDINARY INTELLIGENCE" WOULD NOT HAVE BEEN AWARE OF THE PROBABILITY THAT SHE HAD BEEN DEFRAUDED PRIOR TO JULY 18, 2002

Post-Sarbanes-Oxley, claims based on "fraud, deceit, manipulation or contrivance" must be brought within "2 years after the discovery of the facts constituting the violation" or within "5 years after such violation." 28 U.S.C. § 1658. The two-year limitations period commences after the plaintiff "obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir.1992). This type of notice is referred to as inquiry notice.

A plaintiff is on inquiry notice when sufficient information is available to "suggest to an investor of ordinary intelligence the probability that she has been defrauded." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir.1993). *See also Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir.2003). Under such circumstances a duty of inquiry arises, and if the plaintiff fails to make a diligent inquiry into the possibility of fraud, the limitations period runs from the date of inquiry notice. *See id.* The circumstances giving rise to the duty to inquire are referred to as "storm warnings." *See Levitt,* 340 F.3d at 101. The financial information that triggers the storm warnings "must be such that it relates directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants." *Newman v. Warnaco Group, Inc.*, 335 F.3d 187, 193 (2d Cir.2003). An investor does not, however, "have to have notice of the entire fraud being perpetrated to be on inquiry notice ." *Dodds,* 12 F.3d at 351-52. In order to trigger the duty to inquire, the wrongdoing suggested by the storm warnings "must be probable, not merely possible." *Warnaco,* 335 F.3d at 193. Further, even when "storm warnings" might indicate the probability of fraud, a plaintiff is not on inquiry notice if the company's management provides words of comfort to temper the "storm warnings." *LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 155 (2d Cir.2003). It should be noted, however, that words of comfort prevent the duty to inquire "only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern." *Id.*

***8** While the question of inquiry notice is typically inappropriate at the motion to dismiss stage, if the facts needed to make the determination "can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *Id.* at 156. However, "[d]efendants bear a heavy burden in establishing that the plaintiff was on inquiry notice as a matter of law. Inquiry notice exists only when uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered the fraudulent conduct." *Warnaco,* 335 F.3d at 194 (*quoting Nivram Corp. v. Harcourt Brace Jovanovich, Inc.*, 840 F.Supp. 243, 249 (S.D.N.Y.1993)). *See also In re Chaus Sec. Litig.*, No. 88 Civ. 8641(SWK), 1990 WL 188921, at *5 (S.D.N.Y.1990). [FN9]

FN9. Some examples of such "uncontroverted evidence" in the Second Circuit are: 1) When there were 3 substantial reserve charges in increasing amounts within four years, *LC Capital,* 318 F.3d at 155; and 2) When disclosures of the financial wrongdoing were contained in the company's prospectuses, *Dodds,* 12 F.3d at 351.

Here, AOLTW contends that, through a series of news articles, press releases, and SEC filings of transactions with Sun Microsystems ("Sun"), Hughes Electronics ("Hughes"), and Gateway, as well as vendor advertising deals and advertising/equity deals generally, MSBI was on notice of the allegedly overstated A & C revenue on or before July 18, 2001. AOLTW Memo at 13. [FN10]

FN10. News articles, press releases and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.