Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
(Cite as: 2004 WL 992991 (S.D.N.Y.))

Page 36

A defendant seeking to establish that a plaintiff was on inquiry notice as a matter of law "bear[s] a heavy burden." *Warnaco*, 335 F.3d at 194. Inquiry notice exists only when uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered the fraudulent conduct." *Warnaco*, 335 F.3d at 194 (*quoting Nivram Corp. v. Harcourt Brace Jovanovich, Inc.,* 840 F.Supp. 243, 249 (S.D.N.Y.1993). In support of its contention that MSBI was on inquiry notice of the facts underlying its Section 11 claim, E & Y contends that the SEC filings released at the time of the Sun and Hughes deals provided all of the material information a reasonable investor would have wanted regarding the transactions and thus were sufficient to trigger plaintiff's duty to inquire. E & Y Memo at 18-20. The Court disagrees. *See supra* at 18-26. The 1998 and 1999 SEC filings relied upon by E & Y as a basis of inquiry notice are not sufficient to meet defendant's "heavy burden" of establishing uncontroverted evidence which irrefutably demonstrates the fraudulent conduct. In addition, in light of the Court's determination that the SEC filings and press releases describing the Sun and Hughes transactions were insufficient to trigger MSBI's duty to inquire with respect to AOL and AOLTW, it would be illogical to now hold that those releases were sufficient to form the basis of inquiry notice against Ernst & Young. [FN45]

> FN45. For the reasons discussed *supra* at 73-75, E & Y's motion to dismiss for failure to plead loss causation is denied.

1. The Section 11 Merger Registration Claim Is Pled With Particularity

*32 Recently, the Second Circuit held that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud. *Rombach v. Chang,* Nos. 02-7907(L), 02-7933 (XAP), 2004 WL 77928 (2d Cir. Jan. 20, 2004). Accordingly, for the same reasons that the Court found that MSBI's Section 11 claims against AOL and AOLTW "sound in fraud," the Court also finds that MSBI's Section 11 claims against Ernst & Young "sound in fraud," and are thus subject to the heightened pleading requirements of Rule 9(b). *See supra* at 28-32.

Despite the heavier burden imposed on Section 11 plaintiffs by *Rombach*, the Court finds that MSBI has satisfied that burden with respect to its Section 11 claims against defendant Ernst & Young. Plaintiff's allegations regarding E & Y's alleged Section 11 violations based on the Sun and Hughes transactions are not merely "rote conclusions," but rather particularized pleadings which allege that AOL's recognition of advertising revenue from the Hughes deal was inflated because AOL overvalued the Series H stock by refusing to discount for time value and marketability (the stock was not convertible until June 2002, three years after the deal was consummated). *See* AC ¶ 186-191. Further, the pleadings allege that it was not until March 25, 2002 that AOL reported a charge of approximately $270 million to reflect an other-than-temporary decline in the carrying value of AOLTW's investment in Hughes. [FN46] AC ¶ 190. In sum, neither Rule 9(b) nor *Rombach* provide any basis upon which to dismiss MSBI's Section 11 claim based on the Merger Registration Statement against Ernst & Young.

> FN46. Of note, in January 2003, AOLTW sold its stake in Hughes for $800 million, resulting in a total writedown of $700 million. AC ¶ 191. In addition, according to a Hughes SEC From 8-K, filed on March 3, 2003, Hughes and AOLTW entered into an agreement terminating their strategic alliance, whereby Hughes was released from its commitment to spend an additional $1 billion in marketing and promotional efforts to support the companies' joint products and services. *Id.*

C. MSBI's Section 10(b) Claim Against E & Y Properly Pleads Scienter

To state a cause of action under Section 10(b) and Rule 10b-5, a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action cause [plaintiff] injury." *See*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 37

*Chill v. General Elec. Co.,* 101 F.3d 263, 266 (2d Cir.1996) (citation omitted). Defendant E & Y contends that MSBI has not met the requirements of Section 10(b) and thus its Section 10(b) claims must be dismissed.

1. No Class Member Who Purchased Shares Prior to August 13, 1999 Has a 10(b) Claim Against Ernst & Young

The Amended Complaint defines the purported class as all persons who purchased, exchanged, or otherwise acquired publicly traded securities of AOL and AOLTW from January 17, 1999 through July 24, 2002. AC ¶ 65. However, the earliest alleged misstatement that MSBI attributes to E & Y is the 6/30/99 AOL Opinion, which was not publicly disseminated until August 13, 1999 when it was included in AOL's Form 10-K for fiscal 1999. *See* Kulka Decl. Tab 5 at 72-73 of 112.

"It is well established that to meet the 'in connection with' requirement [of Section 10(b) ], the fraud practiced must have been prior to or contemporaneous with" the purchase or sale of securities. *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 259 n. 3 (S.D.N.Y.1983). Thus, MSBI cannot establish, nor does it appear to try, [FN47] that anyone who purchased before August 13, 1999 relied on E & Y's alleged misstatements-- another essential element of a 10(b) claim. As such, any and all 10(b) claims against E & Y by class members who purchased stock prior to August 13, 1999 are dismissed.

>   FN47. At no point, either in its Complaint or its Opposition Memorandum, does MSBI argue that investors who purchased prior to August 13, 1999 have a cognizable 10(b) claim against E & Y.

2. The 10(b) Claims Are Pled with Particularity

*33 As stated previously, Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Here, E & Y contends that MSBI has not pled its 10(b) claim with the requisite particularity. Ernst & Young is wrong. The Amended Complaint contains numerous particularized allegations of deficiencies in E & Y's audit procedures and specific "red flags" that were ignored by E & Y. *See generally* AC ¶ 614-615. Rather than being "blanket statements of wrongdoing," *Segarra v. Messina,* 153 F.R.D. 22, 28 (N.D.N.Y.1994), MSBI's 10(b) allegations against E & Y are sufficiently particularized. Significantly, having adequately detailed the alleged fraud with respect to AOLTW's transactions with Homestore, MSBI pleads that Ernst & Young specifically vouched for the propriety of those deals. [FN48] In sum, MSBI's allegations regarding E & Y's alleged 10(b) violations are sufficient to provide E & Y with fair notice of MSBI's claim. *See Acito,* 47 F.3d at 52. Accordingly, Rule 9(b)'s particularity requirement is satisfied. [FN49]

>   FN48. Regarding the Homestore transactions in particular, AOLTW spokesman John Buckley stated in an August 6, 2002 *Los Angeles Times* article that, "AOL's accounting for all transactions with Homestore.com were appropriate and signed off by our outside auditors, Ernst & Young." AC ¶ 594. More broadly, in July 2002, Richard Parsons, in a conference call following the publication of *The Washington Post* articles, stated, "They [Ernst & Young] have confirmed in writing, without qualification, that the accounting for each and every one of the transactions mentioned in *The Washington Post* articles and the related financial statement disclosures for those transactions were appropriate and in accordance with GAAP." MSBI Opp. at 72, referring to AC ¶ 592.
>
>   FN49. Ernst & Young's protestations notwithstanding, Rule 9(b) does not contemplate a higher standard for pleading fraud by an independent auditor than for pleading fraud by any other 10(b) defendant.

3. MSBI Has Pled Facts Giving Rise To A Strong

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 38

Inference that E & Y Acted With Scienter

The PSLRA also mandates that a plaintiff asserting a Section 10(b) claim must plead allegations giving rise to a strong inference of scienter. 15 U.S.C. § 78u-4(b)(2). In the Second Circuit, there are two ways that a plaintiff can satisfy the scienter pleading standard: (1) by alleging facts demonstrating a motive and opportunity to commit fraud; or (2) by alleging circumstances indicating conscious or reckless behavior by the defendant. *Kalnit v. Eichler,* 264 F.3d 131, 138-39 (2d Cir.2001).

a. MSBI Has Not Alleged Motive and Opportunity

MSBI alleges that E & Y was motivated to commit accounting fraud in order to continue receiving the fees that AOL and AOLTW paid to E & Y for the services it rendered to those companies. AC ¶¶ 609, 618, 807. The Court disagrees. Receipt of compensation and maintenance of a profitable business relationship for auditing services do not constitute a sufficient motive for scienter. *Zucker v. Sasaki,* 963 F.Supp. 301 (S.D.N.Y.1997). [FN50]

> FN50. Indeed, MSBI appears to concede this, focusing its Opposition Memorandum almost exclusively on the "conscious or reckless behavior" avenue of pleading scienter.

b. MSBI Has Adequately Alleged Reckless Misbehavior by E & Y

For recklessness on the part of a non-fiduciary accountant to satisfy securities fraud scienter, such recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care. *Rothman,* 220 F.3d at 90. Recklessness requires a showing that the auditor's practices "amount[ed] at best to a pretended audit." *Id.* at 98. *See also Zucker,* 963 F.Supp. at 307 (plaintiff asserting a 10(b) claim must prove that the auditing practices were so deficient that the audit amounted to no audit at all.). According to E & Y, the Amended Complaint does not satisfy the Second Circuit's recklessness requirement. The Court disagrees.

i. The Allegations in the Amended Complaint are Both Factually and Legally Distinguishable from *Zucker*

*34 E & Y's argument that the Amended Complaint fails to establish scienter is based primarily on analogizing this case to *Zucker.* That analogy, however, fails. In its papers, E & Y cites *Zucker* for the propositions that, "general allegations of GAAP and GAAS violations fail to satisfy the scienter requirements," and "the mere misapplication of accounting principles by an independent auditor does not establish scienter." E & Y Memo at 30, citing *Zucker,* 963 F.Supp. at 307-08. While both of these statements of law are correct, *i.e.,* allegations of GAAP and GAAS violations are not sufficient, on their own, to establish scienter, they both overlook the fundamental distinction between *Zucker* and this case. The complaint in *Zucker* did not contain any allegations of "red flags" ignored by the auditor defendant, which the Amended Complaint in this case does. [FN51] *See* AC ¶¶ 614-615. In addition, the plaintiff's claim in *Zucker* that E & Y [FN52] knew or recklessly disregarded adverse facts was, "in essence, based solely on Ernst & Young's status as an auditor." *Zucker,* 963 F.Supp. at 309. The Amended Complaint in this case alleges far more. The presence of both "red flags" and specific allegations beyond E & Y's status as an auditor in MSBI's Amended Complaint distinguish this case from *Zucker.*

> FN51. "Red flags," or audit risks are the various "risk factors" that auditors must consider under GAAS when performing an audit. According to AU § 312.02, audit risk is "the risk that the auditor may unknowingly fail to appropriately modify his or her opinion on financial statements that are materially misstated." *See also In Re Sunterra Corp. Sec. Litig.,* 199 F.Supp.2d 1308, 1333 (M.D.Fla.2002), (" 'Red flags' are those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors.").

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
(Cite as: 2004 WL 992991 (S.D.N.Y.))

Page 39

> FN52. Ernst & Young was also the defendant in *Zucker*.

ii. When Combined With the GAAS and GAAP Violations and AOLTW's Dependence on Advertising Revenue to Meet Earnings Targets, the "Red Flags" Allegedly Ignored by E & Y Are Sufficient to Plead Scienter

Allegations of "red flags," when coupled with allegations of GAAP and GAAS violations, are sufficient to support a strong inference of scienter. *In re Complete Mgmt. Sec. Litig.,* 153 F.Supp.2d 314, 334 (S.D.N.Y.2001). *See also Van De Velde v.. Coopers & Lybrand,* 899 F.Supp. 731, 736 (D.Mass.1995) ("[A] complaint will usually survive a motion to dismiss if plaintiffs have alleged the existence of 'red flags' sufficiently attention-grabbing to have alerted a reasonable auditor to the audited company's shenanigans.").

Here, in addition to the numerous GAAP and GAAS violations, MSBI has alleged a series of "red flags" which it claims that E & Y either ignored, or should have discovered through reasonable diligence. In particular, two of these "red flags" are significant. First, plaintiff alleges that E & Y ignored the fact that material amounts of advertising revenue came in at the end of each quarter just in time to permit AOL and AOLTW to hit its advertising revenue targets, AC ¶ 614(b). Such late-in-the-quarter revenue recognition has been found sufficient to support a claim of scienter. *In re Homestore.com, Inc. Sec. Litig.,* 252 F.Supp.2d 1018, 1044 (C.D.Cal.2003) (finding that "the most significant of these red flags was the fact that on numerous occasions, major transactions took place within the last few days of the quarter"). Second, the plaintiff has alleged that E & Y ignored several of AOL and AOLTW's complex barter transactions that generated gains or earnings growth while the amounts of cash transacted were simply exchanges of like amounts. *See* AC ¶ 615(a). Given the critical role that advertising revenue played in AOL and AOLTW's ability to meet its earnings targets, the magnitude and recurrence of the barter transactions, including Veritas, are problematic. *See In re Complete Mgmt.,* 153 F.Supp.2d at 334. In light of the centrality of advertising revenue to AOL and AOLTW's earnings targets, the combination of these two "red flags" with the numerous GAAS and GAAP violations is sufficient to support an inference of scienter. Accordingly, defendant Ernst & Young's motion to dismiss the Section 10(b) claim is denied.

D. MSBI's Section 14(a) Claim, as Circumscribed Below, is Actionable

*35 In Count Sixteen, MSBI alleges that E & Y violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, because its allegedly false and misleading audit opinions were incorporated in the Joint Proxy Statement that preceded the shareholders' approval of the Merger. AC ¶¶ 778-788. To state a claim under Section 14(a), a plaintiff must allege that: (1) the proxy statement contained a material misstatement or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. *See Bond Opp'ty Fund v. Unilab Corp.,* No. 99 Civ. 11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003). [FN53]

> FN53. While it is very clear that the Second Circuit's decision in *Rombach*, 2004 WL 77928, elevated the pleading standard for fraud-based Section 11 and Section 12(a)(2) claims, it is less clear what effect *Rombach* had on the pleading requirements for Section 14(a) claims. However, even assuming that Section 14(a) claims which "sound in fraud" are now subject to a heightened standard of particularized pleading, MSBI has satisfied that standard here with respect to the 6/30/99 AOL Opinion.

As a threshold matter, for the reasons first delineated *supra* at 18-26, the Court finds that MSBI's Section 14(a) claim against E & Y is timely.

Having determined that the 14(a) claim is timely, the Court must decide which members of the putative class are entitled to assert such claims against MSBI. "The purpose of [Section] 14(a) is to prevent management or others from obtaining

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 40

authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitations." *J.I. Case Co. v. Barak*, 377 U.S. 426, 431 (1965). Section 14(a) and Rule 14a-9 regulate the proxy solicitation process and "prohibit[ ] the solicitation of proxies by means of materially false or misleading statements." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1087 (1991). Section 14(a)'s emphasis on the proxy solicitation process indicates that the statute was designed to protect only those shareholders with voting rights. *See 7547 Corporation v. Parker & Parsley*, 38 F.3d 211, 229-230 (4th Cir.1994) (finding that "it goes too far to allow persons not even entitled to vote to assert a claim under § 14(a)"). *See also* Hazen, *The Law of Securities Regulation* § 11.3 (3d ed. 1995) ("[S]ince the proxy regulations are designed to protect shareholder voting rights, standing should be limited to shareholders who had a right to vote."). [FN54] Accordingly, only shareholders who owned Time Warner common stock on the record date of the Merger are permitted to bring Section 14(a) claims; *i.e.,* no class member who lacked voting rights has standing to assert a 14(a) claim against E & Y.

> FN54. MSBI takes the position that Time Warner shareholders acquiring stock pursuant to the merger, whether or not they were eligible to participate in the shareholder vote approving the Merger, can sue under § 14(a). MSBI Opp. at 90. This is fundamentally inconsistent with the purpose of 14(a), which is to protect the integrity of the *proxy solicitation process.* Further, in each of the cases cited by MSBI in support of its position, the shareholders at issue *did* have voting rights. *See, e.g., Hershfang v. Knotter*, 562 F.Supp. 393, 398 (E.D.Va.1983); *Jones v. Nat'l Distillers and Chem. Corp.*, 484 F.Supp. 679, 684 (S.D.N.Y.1979); *United Paper Workers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190 (2d Cir.1993); and *Gerstle v. Gamble-Skogmo, Inc.,* 298 F.Supp. 66 (E.D.N.Y.1969).

Next, the Court needs to determine the scope of E & Y's potential liability under Section 14(a). More specifically, the Court must decide whether the 6/30/00 AOL Opinion can form the basis of MSBI's Section 14(a) claim. After a careful and thorough review of both parties' submissions on this issue, the Court finds that the 6/30/00 AOL Opinion cannot form the basis of plaintiff's 14(a) claim. [FN55] Put simply, the 6/30/00 AOL Opinion post-dated the mailing of the Proxy/Prospectus and the shareholder vote on the Merger. It therefore cannot constitute a "solicitation" under Section 14(a). *See* 17 C.F.R. § 240.14a-1 (defining solicitation as any "communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy"). Accordingly, the only E & Y audit report that is actionable under Section 14(a) is the 6/30/99 AOL Opinion.

> FN55. The Court finds that E & Y's Reply Memorandum does not raise any "new" arguments, as MSBI contests in a letter to the Court dated November 25, 2003. The E & Y reply argument in question, whether the 6/30/00 AOL Opinion was incorporated into the Merger Registration Statement, was featured prominently in E & Y's opening memorandum. However, given that MSBI's November 25, 2003 letter and E & Y's December 2, 2003 both provided detailed information regarding the incorporation argument, the Court considered them both in determining that MSBI's Section 14(a) claim could be based only on the 6/30/99 AOL Opinion.

**XX. MORGAN STANLEY'S MOTION TO DISMISS COUNTS FOUR AND SEVENTEEN IS GRANTED**

***36** Before Time Warner, Inc. agreed to merge with America Online Inc., the Time Warner Board asked Morgan Stanley to provide its opinion as to whether the terms of the proposed merger were fair to Time Warner shareholders. [FN56] After reviewing certain public information, as well as information provided by the two companies, Morgan Stanley informed the Time Warner Board on January 9, 2000 that the terms of the proposed merger were, from a financial point of view, fair to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 41

the Time Warner shareholders. It is this "fairness opinion" that forms the basis of MSBI's claims against Morgan Stanley.

> FN56. Specifically, the Time Warner Board asked Morgan Stanley to provide its opinion as to whether the ratio at which Time Warner shares would be exchanged for AOLTW shares-the "exchange ratio"-was "fair from a financial point of view" to Time Warner shareholders.

Lead Plaintiff MSBI alleges that Morgan Stanley's fairness opinion was false and misleading because AOL's stock was overvalued and thus the exchange ratio was not, in fact, fair to Time Warner shareholders. *See* AC ¶¶ 700, 788. MSBI asserts two claims against Morgan Stanley based on its fairness opinion. First, because the fairness opinion was incorporated into the Merger Registration Statement, plaintiff alleges that Morgan Stanley violated Section 11 of the Securities Act, which creates civil liability for any registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). This claim is asserted "on behalf of all Class members who acquired AOL Time Warner common stock pursuant and/or traceable to the Merger Registration Statement, including in exchange for Time Warner common stock." AC ¶ 698.

Second, because the fairness opinion was incorporated into the proxy statement, MSBI alleges that Morgan Stanley violated Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder, which impose civil liability on persons who solicit proxies that contain "false or misleading" statements of material fact or that omit material facts. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). This claim is asserted "on behalf of all Class members who held Time Warner common stock at the close of business on May 18, 2000, the record date of eligibility to vote, and on June 23, 2000, the date of the Special Meetings in which the Merger was voted upon and approved." AC ¶ 786.

At the outset, the Court, for all of the reasons heretofore delineated, finds that MSBI's claims against Morgan Stanley are not time-barred. *See supra* at 18-26. Although plaintiff's claims against Morgan Stanley were not added until the April 2003 Amended Complaint, because the Court has already concluded that no reasonable investor was on notice prior to July 18, 2002, the added claims are still timely.

A. Statements of Opinion Are Actionable Only if Both Objectively and Subjectively False

In *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1092-1096 (1991), the Supreme Court held that a statement of opinion is false and actionable only if the opinion is both (1) not believed by the speaker, and (2) objectively untrue. [FN57] Prior to *Virginia Bankshares,* the Second Circuit had already held that a complaint failed to state a claim under the 1933 and 1934 Acts because, "there [was] no allegation" that the financial advisors "did not hold the joint opinion" challenged by plaintiffs. *Friedman v. Mohasco Corp.,* 929 F.2d 77, 79 (2d Cir.1991). *See also In Re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp.2d 1248, 1265 (N.D.Cal.2000) ("In the case of a fairness opinion, then, the plaintiff must plead with particularity why the statement of opinion was objectively and subjectively false"). Courts in this Circuit have followed the lead of *Virginia Bankshares.* For example, in *Bond Opportunity Fund v. Unilab Corp.,* No. 99 Civ. 11074(JSM), 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003), the court stated: "Plaintiffs who charge that a statement of opinion, including a fairness opinion, is materially misleading, must allege 'with particularity' provable facts' to demonstrate that the statement of opinion is both objectively and subjectively false." In clarifying, the court found that "the plaintiff must show both that the directors did not actually hold the belief or opinion stated, *and* that the opinion stated was in fact incorrect." *Id.* (emphasis in original).

> FN57. MSBI's attempt to circumscribe the holding of *Virginia Bankshares* is unavailing. *See* Memorandum of Lead Plaintiff MSBI in Opposition to Motion to Dismiss of Bond Underwriter Defendants,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 42

and Motion to Dismiss of Defendant Morgan Stanley as Financial Advisor, dated September 29, 2003 ("MSBI Underwriter Opp."), 16-20. A careful read of that opinion reveals that it is not nearly as narrow as plaintiff contends. Indeed, the conspicuous absence of any cases supporting MSBI's "interpretation" of *Virginia Bankshares* is telling.

**\*37** Here, the Amended Complaint contains no allegation that Morgan Stanley in January 2000 did not believe its stated opinion that the exchange ratio was fair to Time Warner shareholders. Indeed, the Amended Complaint alleges only that the fairness opinion was objectively false, *i.e.*, that the exchange ratio was not fair "because AOL stock was overvalued and AOL had engaged in sham transactions and improper accounting." See AC ¶¶ 651, 700, 788. The failure to allege any facts, let alone 'provable' 'particularized' facts, that Morgan Stanley did not believe its stated opinion, is fatal to both MSBI's Section 11 and Section 14(a) claims.

Further undermining the case against Morgan Stanley is that the fairness opinion itself makes clear that Morgan Stanley based its opinion on information provided by others and that Morgan Stanley "assumed and relied upon" that information "without independent verification" of its "accuracy and completeness." Fairness Opinion at F-2. Indeed, the fairness opinion expressly discloses that Morgan Stanley "[has] not made and [has] not assumed responsibility for making any independent valuation or appraisal of the assets or liabilities of America Online or Time Warner." *Id.* Such a disclaimer nullifies MSBI's claim that Morgan Stanley was reckless by "turning a blind eye to AOL's accounting fraud." MSBI Underwriter Opp. at 20. Put simply, it was not Morgan Stanley's job to independently investigate AOL's accounting; indeed, Morgan Stanley explicitly disclosed this by disavowing any such independent investigation in the fairness opinion itself. [FN58] It would be nonsensical to attach Section 11 liability to the issuer of a fairness opinion for failure to investigate the financials of the underlying company, when the issuer has expressly stated that it relied on the integrity of the information provided by the company. [FN59]

FN58. MSBI's attempt to shoehorn "subjective knowledge of falsity" into its Amended Complaint by alleging that Morgan Stanley had extensive knowledge of AOL's financial situation vis-à-vis its role as the underwriter of over $1.35 billion in AOLTW bonds, is entirely unpersuasive. MSBI Underwriter Opp. at 20.

FN59. In dismissing, without leave to replead, a strikingly similar case in this circuit involving a Section 11 claim against Donaldson, Lufkin & Jenrette ("DLJ") regarding a fairness opinion, the court rejected plaintiff's assertion that DLJ should be held liable under Section 11 for failure to conduct a reasonable investigation of the financial information provided by Global Crossing ("GC"), stating that DLJ's fairness opinions "expressly revealed that [DLJ] had taken the financial information provided by GC at face value." *In Re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910(GEL), 2003 WL 22999478, at \*16 (S.D.N.Y. Dec. 22, 2003).

Because both the Amended Complaint and MSBI's Opposition Memorandum fail to allege any facts which indicate that Morgan Stanley did not believe its stated January 2000 opinion, and because Morgan Stanley expressly disclosed that it relied upon the financials provided to it by the two companies, there is simply no cognizable claim against Morgan Stanley. Accordingly, Counts Four and Seventeen are dismissed with prejudice.

XXI. THE MOTION TO DISMISS OF THE BOND UNDERWRITERS AND DEFENDANT CITIGROUP IS GRANTED

On April 19, 2001, AOLTW, pursuant to a Prospectus Supplement to the Bond Registration Statement dated April 11, 2001 ("April 11, 2001 Bond Offering"), issued $4 billion of bonds. The bonds were issued in three denominations, with maturities of 5, 10 and 30 years, respectively. Depending upon their maturity, the bonds accrue

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812  
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 43

interest at annual rates of 6.125%, 6.750% and 7.625%, respectively, payable semi-annually. The offering prices for the bonds were 99.793%, 99.750% and 99.803% of par value, respectively. *See* Butler Decl. Ex. 42.

AOLTW subsequently issued an additional $6 billion of bonds on April 8, 2002, pursuant to a Prospectus Supplement to the Bond Registration Statement April 3, 2002 ("April 3, 2002 Bond Offering"). The bonds were issued in four denominations, with maturities of 3, 5, 10 and 30 years, respectively. Depending upon their maturity, the bonds accrue interest at annual rates of 5.625%, 6.150%, 6.875% and 7.700%, respectively, payable semiannually. The offering prices for the bonds were 99.681%, 99.685%, 99.050% and 99.376% of par value, respectively.

*38 The Amended Complaint brings claims under Sections 11 and 12(a)(2) of the Securities Act, based upon allegations that the offering documents relating to the bonds issued by AOLTW in April 2001 and April 2002 contained misrepresentations or omissions. AC ¶¶ 656-676, 722-727, 741-747.

The Underwriter Defendants allegedly served as underwriters for both of these bond offerings. AC ¶¶ 48-64. MSBI asserts the claims against the Underwriter Defendants on behalf of all members of the Purported Class "who purchased or acquired AOL Time Warner Bonds issued in the April 2001 and/or April 2002 Offerings pursuant to and/or traceable to the Bond Registration Statement and Prospectus Supplement thereto." AC ¶¶ 722, 741. [FN60]

> FN60. The Bond Underwriters contention that MSBI's claims are barred by the statute of limitations is unpersuasive for the reasons delineated *supra* at 18-26.

A. Plaintiffs Lack Article III Standing

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. A federal court has the obligation to assure itself, at the outset of the litigation, that the plaintiff has Article III standing. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotations omitted).

To satisfy Article III's standing requirements, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 180-181.

"The burden to establish standing rests on the party asserting its existence." *Miller v. Silbermann*, 951 F.Supp. 485, 489 (S.D.N.Y.1997). At the pleading stage, the plaintiff bears the burden of "clearly ... alleg[ing] facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute." *Bd. of Educ. v. New York State Teachers Ret. Sys.*, 60 F.3d 106, 109 (2d Cir.1995) (quoting *FW/PBS, Inc., v. City of Dallas*, 493 U.S. 215, 231 (1990).

1. MSBI Has Not Alleged "Injury in Fact"

On April 15, 2003, the date on which the Underwriter Defendants were added to the Amended Complaint, the AOLTW bonds that form the basis of MSBI's claims were trading at significant premiums to their offering prices. [FN61] For example, the 6.125% Notes due April 15, 2006, which were offered at $99.793, were trading at $105.888 on April 15, 2003. *See* Declaration of Ronald Garber dated July 14, 2003 ("Garber Decl.") ¶ 2. Similarly, the 7.700% Debentures due 2032, which were offered at $99.376, were trading at $107.800 on April 15, 2003. *Id.* Rather than alleging any losses on AOLTW bonds, the allegations of the Amended Complaint reveal that AOLTW bonds purchased by Lead Plaintiff have actually increased in value. Indeed, each of the bonds at issue was trading at a minimum of $4.169 more per unit than when it was purchased. Absent any factual allegation of "injury in fact" plaintiffs lack Article III standing to assert claims against the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 44

Underwriter Defendants and Citigroup. As such, all of plaintiff's claims against the Bond Underwriters are dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

> FN61. On a motion to dismiss, a court may take judicial notice of the market prices of publicly traded securities without converting the motion to a summary judgment motion. *See Ganino,* 228 F.3d at 167, n. 8.

2. MSBI Has Not Pled Facts Which Establish an Injury Under Sections 11 and 12(a)(2)

*39 In addition to the lack of Article III standing, MSBI's claims against the Bond Underwriters fail for the independent reason that the claims do not allege a cognizable injury under the statutes in which they have been brought.

a. MSBI Has Not Demonstrated Losses Under Section 11(e)

Although a plaintiff has no obligation to plead damages under Section 11 of the Securities Act, *see In Re IPO Sec. Litig.,* 241 F.Supp.2d 281, 347 n. 76 (S.D.N.Y.2003), the plaintiff must nevertheless satisfy the court that she has suffered a cognizable injury under the statute. *See In re Broderbund/Learning Co. Sec. Litig.,* 294 F.3d 1201, 1203-05 (9th Cir.2002); *IPO Sec. Litig.,* 241 F.Supp.2d at 347 ("All Section 11 claims brought by plaintiffs who sold securities at prices above the offering price must be dismissed because these plaintiffs have no damages."). In fact, Section 11 itself defines the measure of damages recoverable in a suit under Section 11:

> The suit authorized under subsection (a) of this section may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C. § 77k(e)(2003).

The AOLTW bonds issued in April 2001 and April 2002 both traded above their offering prices on April 15, 2003, the date the underwriter defendants were added to this lawsuit. Absent any losses under Section 11(e), plaintiffs lack statutory standing to assert their Section 11 claim against the Underwriter defendants.

b. MSBI Has Not Stated A Claim for Damages or Rescission Under Section 12(a)(2)

A plaintiff asserting a claim under Section 12(a)(2) is entitled to two forms of relief: (1) damages or (2) rescission. Section 12(a)(2) provides:

> [A party] shall be liable ... to the person purchasing such security from him, who may sue either at law or equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a)(2). If the plaintiff still owns the security, he is entitled to rescission, but not damages; if he no longer owns the security, damages, not rescission, are the appropriate remedy. *See Randall v. Loftsgarden,* 478 U.S. 647, 655 (1986).

The proper time for the plaintiff to choose between damages and rescission "is at the time the complaint is filed." *Wigand v. Flo-Tek, Inc.,* 609 F.2d 1028, 1035 (2d Cir.1979). [FN62] The Crawford Affidavit notwithstanding, plaintiff has not adequately alleged that it sold any of the bonds issued in April 2001 or April 2002. [FN63] Because plaintiff fails to allege that it no longer owns the bonds, let alone that it actually sold the bonds at a loss, it has not stated a claim for damages under Section 12(a)(2).

> FN62. MSBI contends that Section 12(a)(2) rescission damages are measured

Slip Copy  
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812  
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 45

as of the date the initial Complaint was filed. *See* MSBI Underwriter Opp. at 9. Thus, according to the plaintiff, the two relevant dates for calculating rescission damages are July 18, 2002, the date of filing of the first of the now-consolidated class actions, and September 16, 2002, the date MSBI filed its initial complaint; on both of these dates, the AOLTW bonds were trading below their offering price. The problem with this, however, is that neither the July 18 nor the September 16 complaints asserted claims against the Bond Underwriters. The first date that there were any claims asserted against the Underwriter Defendants was April 15, 2003, when the AOLTW bonds were trading at a premium.

FN63. MSBI contends that it has properly pled damages vis-à-vis Exhibit C of the Affidavit of Bryan L. Crawford in Further Support of Motion to Appoint the Minnesota State Board of Investment as Lead Plaintiff and to Approve Its Selection of Lead Counsel ("Crawford Affidavit"). There are, however, significant problems with the Crawford Affidavit, not the least of which is that the Court, try as it may, cannot make heads or tails of it. Additionally, the exhibit is unsworn and fails to reveal how much MSBI paid for the bonds it allegedly sold. In short, the Crawford Affidavit provides no basis for concluding MSBI sold any AOLTW bonds, let alone that it sold such bonds for a loss.

**\*40** Having failed to state a claim for damages, MSBI's only possible remedy under 12(a)(2) is rescission. As a condition of requesting rescission, plaintiff is required to tender his securities. *See* 15 U.S.C. § 77l. Here, there has been no demand for rescission; only a contention that an explicit request for rescission is not required . [FN64] *See* MSBI Underwriter Opp. at 10, citing *WorldCom,* 2003 WL 21219049, at \*28. The Court disagrees. *See Morin v. Trupin,* 747 F.Supp. 1051, 1063 (S.D.N.Y.1990) ("A complaint that does not plead at least an offer of tender is insufficient and subject to dismissal."). An investor cannot be allowed to delay a demand for rescission while he "watch[es] the market go up or down, thereby speculating on the success or value at the total risk of the wrongdoer." *Westinghouse Elec. Corp. v. "21" Int'l Holdings, Inc.,* 821 F.Supp. 212, 220 (S.D.N.Y.1993). MSBI's claims against the Bond Underwriters are fatally flawed because they do not allege a cognizable injury under the statutes in which they have been brought. Accordingly, the Bond Underwriters' motion to dismiss is granted. In addition, due to the glaring weakness of these claims, plaintiff's request for leave to amend is denied.

FN64. Lead Plaintiff has also explicitly rejected the offer of rescission made by AOL Time Warner. *See* Butler Decl. Ex. 4. Such rejection, of course, is not surprising given that the bonds are trading at a significant premium over their offering price.

XXII. LEAVE TO REPLEAD

When a cause of action is dismissed because of pleading deficiencies, plaintiff is usually permitted to replead its case. *See* Fed.R.Civ.P. 15(a) ( "Leave [to replead] shall be freely given when justice so requires."). This policy is especially appropriate in the context of claims dismissed under Rule 9(b) because the law favors resolving disputes on their merits. *See Acito,* 47 F.3d at 54-55. This does not mean, however, that every securities fraud claim is entitled to repleading. For example, where a claim is dismissed as a matter of law because it fails to state a claim, repleading would be "futile." *Lucente v. Int'l Bus. Mach. Corp.,* 310 F.3d 241, 258 (2d Cir.2002).

Here, the absence of any injury with respect to the Sections 11 and 12(a)(2) claims based on the Bond Registration Statement would render repleading "futile." As a result, leave to replead is denied with respect to any and all claims based on the Bond Registration Statement and/or the Bond Offerings. In addition, MSBI may not replead either the Section 11 Claim based on the Merger Registration

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
(Cite as: 2004 WL 992991 (S.D.N.Y.))

Page 46

Statement or the Section 14(a) claim against defendant Morgan Stanley, as Morgan Stanley's disclosure with respect to its fairness opinion precludes liability as a matter of law. However, the claims that have been dismissed for failure to adequately plead scienter and/or culpable participation are entitled to repleading. [FN65]

> FN65. Specifically, the Section 10(b) claims against Stephen Case, Myer Berlow, Barry Schuler, Kenneth J. Novack, Gerald Levin, Richard Parsons, Joseph Ripp and Steven Rindner may be repled. Additionally, the Sections 15 and 20 claims that have been dismissed may be repled.

XXIII. CONCLUSION

A court will grant a defendant's motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Such is not the case here. Having carefully read the Amended Complaint and all of the parties' papers and supplemental submissions, it becomes quite clear that MSBI is entitled to offer evidence to support (most of) its claims involving the defendants "systematic and fraudulent scheme to inflate the advertising revenue reported in the companies' publicly disclosed financial statements and, in turn, the value of AOL and AOLTW securities," by at least $1.7 billion.

*41 Accordingly, the plaintiff may submit to the Court, no later than June 3, 2004 a proposed Second Amended Complaint. The Second Amended Complaint shall be accompanied by a Memorandum of Law indicating how the defects in the Amended Complaint have been cured. Thereafter, the Court will either grant leave to amend, or enter an Order dismissing the still defective portions of the Complaint with prejudice.

SO ORDERED.

*Appendix 1: Section 11*

Defendants Against Whom the Section 11 Claims Based on the Bond Registration Statement Are Dismissed With Prejudice:
1. AOL Time Warner
2. Ernst & Young LLP
3. Bond Underwriter Defendants (including Morgan Stanley & Co., Salomon Smith Barney Inc., Citigroup, Inc., Banc of America Securities LLC and J.P. Morgan Chase & Co.)
4. Stephen M. Case
5. Robert W. Pittman
6. J. Michael Kelly
7. David M. Colburn
8. Barry Schuler
9. Kenneth J. Novack
10. Eric Keller
11. Gerald M. Levin
12. Wayne Pace
13. Richard D. Parsons
14. Joseph A. Ripp
15. Paul T. Cappuccio
16. Daniel F. Akerson
17. James W. Barge
18. Stephen F. Bollenbach
19. Frank J. Caulfield
20. Miles R. Gilburne
21. Franklin D. Raines

Defendants Against Whom the Section 11 Claim Based on the Merger Registration Statement Is Dismissed With Prejudice:
1. Morgan Stanley & Co.

*Appendix 2: Section 12*

Defendants Against Whom the Section 12(a)(2) Claim Based on the Bond Registration Statement Is Dismissed With Prejudice:
1. AOL Time Warner
2. Bond Underwriter Defendants (including Morgan Stanley & Co., Salomon Smith Barney Inc., Citigroup, Inc., Banc of America Securities LLC and J.P. Morgan Chase & Co.)
3. Stephen M. Case
4. Robert W. Pittman
5. J. Michael Kelly
6. Barry Schuler
7. Kenneth J. Novack
8. Gerald M. Levin
9. Wayne Pace
10. Richard D. Parsons
11. Joseph A. Ripp
12. Paul T. Cappuccio

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812
**(Cite as: 2004 WL 992991 (S.D.N.Y.))**

Page 47

13. Daniel F. Akerson
14. James W. Barge
15. Stephen F. Bollenbach
16. Frank J. Caulfield
17. Miles R. Gilburne
18. Franklin D. Raines

*Appendix 3: Section 14(a)*

Defendants Against Whom the Section 14(a) Claims Are Dismissed With Prejudice:
 1. Morgan Stanley & Co.

*Appendix Four: Section 10(b)*

Defendants Against Whom the Section 10(b) Claims Are Dismissed:
 1. Stephen M. Case
 2. Myer Berlow
 3. Barry Schuler
 4. Kenneth J. Novack
 5. Gerald M. Levin
 6. Richard D. Parsons
 7. Joseph A. Ripp
 8. Steven Rindner

*Appendix Five: Sections 15 and 20*

Defendants Against Whom the Sections 15 and 20 Claims Are Dismissed:
 1. Stephen M. Case
 2. Myer Berlow
 3. Barry Schuler
 4. Kenneth J. Novack
 5. Gerald M. Levin
 6. Richard D. Parsons
 7. Joseph A. Ripp

2004 WL 992991 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,812

Motions, Pleadings and Filings (Back to top)

• 1:02CV05575 (Docket)
(Jul. 18, 2002)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.