UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------- X
IN RE: PRICELINE.COM, INC.              :    MASTER FILE NO.
SECURITIES LITIGATION                    :    3:00CV01884 (DJS)
                                         :
                                         :
This document relates to:                :
                                         :
   ALL ACTIONS                           :
                                         :    December 27, 2004
------------------------------------------------------- X


**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR ENTRY OF A CONFIDENTIALITY ORDER**

Plaintiffs, by and through their undersigned counsel, respectfully submit this Reply to Defendants' Opposition to Plaintiffs' Motion for Entry of a Confidentiality Order. Defendants advocate a multitude of substantial modifications to Plaintiffs' Proposed Confidentiality Order which, if adopted, will seriously prejudice Plaintiffs' litigation efforts. Defendants' proposals are unnecessary and unfair and Plaintiffs' proposed order should be entered as submitted.

**I.  DEFENDANTS' PARAGRAPH 9 WOULD PREJUDICE AND INVADE
PLAINTIFFS' TRIAL PREPARATION AND WORK-PRODUCT PRIVILEGE**

Defendants argue they are entitled to know the identity of all Plaintiffs' non-testifying experts as well as what documents they review. Defendants submit their proposed invasion of Plaintiffs' work-product is necessary because, with respect to "the travel industry generally, and the online travel industry in particular" they "must be allowed to object to the disclosure of [priceline's] confidential information to experts or consultants with respect to whom Priceline has a well-founded belief disclosure would be inappropriate." Truwit Declaration at ¶ 6.

1

Initially, Defendants' proposal would require Plaintiffs not only to disclose their non-testifying experts, but also to submit to Defendants advanced "notice of the intended disclosure," *i.e.* what documents Plaintiffs intend to show to any potential expert. Truwit Declaration at ¶ 7; Def. Proposed Order at ¶ 9. In essence, Defendants argue they are entitled to a road map of Plaintiffs' investigation and trial preparation efforts. Only allowing Defendants to actually participate in Plaintiffs' conversations with their experts could be more intrusive and prejudicial to Plaintiffs' litigation efforts. Defendants fail to present any credible justification for such an overreaching invasion of Plaintiffs' work product.

The mechanism Defendants propose to deal with their speculative concerns significantly overreaches what is required to address the issue. Notably, Defendants' proposed order requiring disclosure of Plaintiffs' non-testifying experts is not limited to experts in the online travel industry or even to the travel industry in general. Instead, Defendants proposal is that they be afforded access to all experts, regardless of their field of expertise or the purpose of the consultation. Thus, if Plaintiffs retain an expert to examine the marketing practices and policies of grocery manufacturers, Defendants' proposal would entitle Defendants to know that expert's identity as well as what documents she is shown. However, it is clear that such a person could present no risk of disclosure of any confidential information within the airline or travel industries. The same would be true for damage experts, goods distribution experts, accounting experts, and others. Defendants have failed to state any legitimate justification for infringing on Plaintiffs' work product with respect to non-travel industry experts in any way.

Nor do the Defendants justify their proposed invasion with respect to potential experts in the travel industry. The sophistry of Defendants' advocacy is found in the unspoken predicate of their argument: that Plaintiffs' experts will inevitably violate the terms of any confidentiality

order entered by the Court. However, Defendants have presented no evidence, anecdotal or otherwise, to support their position. The Order proposed by Plaintiffs specifically prohibits any person who views confidential information from using that information for any purpose other than the litigation of the claims in this lawsuit and requires them to submit to the jurisdiction of this Court for purposes of enforcement of the order. Plaintiffs' Proposed Order at ¶¶6-7. Consequently, Defendants' fears are fully addressed and ameliorated by Plaintiffs' Proposed Order.[1]

Defendants' proposed order is not only contrary to common sense, but also contravenes relevant case law. Courts have consistently found that

> once the identities of retained or specially employed experts are disclosed, the protective provisions of the rule concerning facts known or opinions held by such experts are subverted. For example, the expert may be contacted by an opposing party or his records obtained and information normally non-discoverable thereby revealed. Similarly, although perhaps rarer, the opponent may attempt to compel an expert retained or specially employed by an adverse party in anticipation of trial, but whom the adverse party does not intend to call, to testify at trial."

*Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 503 (10th Cir. 1980). Thus, the identity and other collateral information regarding a non-testifying expert are properly insulted from discovery under Rule 26(b)(4)(B). *See id.*, at 501 (citing *Tahoe Ins. Co. v. Morrison-Knudsen Co., Inc.*, 84 F.R.D. 362 (D. Idaho 1979); *Arco Pipeline Co. v. S/S Trade Star,* 81 F.R.D. 416 (E.D. Pa. 1978); *Weiner v. Bache Halsey Stuart, Inc.,* 76 F.R.D. 624 (S.D. Fla. 1977); *Baki v. B. F. Diamond Const. Co.,* 71 F.R.D. 179 (D. Md. 1976); *Nemetz v. Aye*, 63 F.R.D. 66 (W.D. Pa. 1974)).

---

[1] *Madanes v. Madanes,* 186 F.R.D. 279 (S.D.N.Y. 1999) is instructive. There, the Court, in exploring the discoverability of a non-testifying expert, stated that "advance notice [of the identity of a non-testifying witness] is warranted where there is reason to believe that the potential witnesses may have a vested interest in appropriating or misusing the information." *Id.* at 288-89. Finding that the party seeking protection had not made such a showing and noting that the protective order in place requires persons having access to the confidential information to agree in writing to maintain their secrecy, the Court refused to allow discovery on the identities of the non-testifying experts. *Id.; see also* Plaintiffs' Proposed Order at ¶¶ 6 and 7.

Defendants reliance on the "exceptional circumstances" language of Rule 26(b)(4)(B) is entirely misplaced. To be sure, Rule 26(b)(4)(B) provides a party may seek discovery from an expert that is not expected to be called as a witness at trial solely "as provided in Rule 35(b)[2] or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B). However, courts consistently require that "the party seeking discovery of a non-testifying expert carries the burden of showing exceptional circumstances." *Long Term Capital Holding, et al., v. United States*, No.01-CV-1290 JBA., 2003 WL 21269586, at *2 (D. Conn. May 6, 2003) (internal citations omitted); s*ee also FMC Corp. v. Vendo Company et al.,* 196 F. Supp. 2d 1023, 1046 (E.D. Cal. 2001) (citing *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001) (citation omitted)). Courts in this District have found there are "two situations where exceptional circumstances are commonly identified: (1) where the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery and (2) where it is possible to replicate expert discovery on a contested issue, but the costs would be judicially prohibitive." *Long Term Capital Holding, et al.,* 2003 WL 21269586, at *2. Defendants do not even attempt to meet such a showing here and there are no exceptional circumstances that make it impracticable for them to obtain relevant facts or opinions by other means. Thus, the extraordinary circumstances exception in Rule 26(b)(4)(B) does not justify the invasion into Plaintiffs' work product advocated by Defendants.[3]

---

[2] Rule 35 concerns physical and mental examinations and is clearly not applicable here.

[3] In support of their misapplication of Rule 26(b)(4)(B), Defendants cite *Bank of New York v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135, 145 (S.D.N.Y. 1997) and *Rywkin v. New York Blood Ctr.*, No. 95Civ.10008 BSJ JCF., 1988 WL 556158 (S.D.N.Y. Aug. 31, 1998) for the proposition that rule 26(b)(4)(B) does not prevent the discovery of the identity of a parties' expert who is not expected to testify. Def. Opp. at 8. These cases are inapposite to the facts at hand and Defendants' interpretation would contravene the plain language of Rule 26(b)(4)(B). For example, in *Bank of New York* the Court stated that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" did not satisfy the requirements of Rule 26 (c) and thus required the party resisting discovery to "prove that the disclosure of the confidential information will result in a clearly defined

Finally, even if the Court is inclined to accept Defendants' predicate (that it must be assumed Plaintiffs' experts will ignore the prohibitions against disclosure and use provided by Plaintiffs' proposed order), Plaintiffs should at least be afforded the same opportunity to review and audit Defendants' non-testifying experts' activities that Defendants propose for themselves. Significantly, because it will be Defendants' documents which will form the overwhelming bulk of evidence in this case, under Defendants' proposed Order Plaintiffs will be deprived of the same opportunity afforded Defendants to examine and know exactly what their opponents' experts have been shown and who they are. As a practical matter, Defendants' proposal would allow them to track Plaintiffs' preparation, but would not afford Plaintiffs the same luxury. Consequently, even if Defendants' proposal is adopted, it should be modified to require that Defendants disclose their non-testifying experts to Plaintiffs as well as provide a catalogue of every document shown to Defendants' expert consultants. This would not ameliorate the unfairness to Plaintiffs of Defendants' proposal entirely, but it would even the playing field somewhat. Given that Defendants are requesting that Plaintiffs be prejudiced for Defendants' benefit, it is only fair to require that Defendants submit to an equal prejudice in exchange for this benefit.[4]

---

and very serious injury to its business" *Bank of New York*, 171 F.R.D. at 143 (internal citations omitted). In both *Bank of New York* and *Rywkin* the parties seeking protection demonstrated to the Court how disclosure of specific documents would pose an identifiable harm. *See Bank of New York*, 171 F.R.D. at 143-144; *Rywkin*, 1998 WL 556158, at *4. Defendants have made no such showing here. Instead, Defendants simply claim a "serious concern" that some experts, not even limited to the travel industry, may do work for priceline's competitors. Def. Mem. at 5. This speculative concern is void of any specific example of demonstrated harm and wrongly assumes that Plaintiffs' experts will ignore the mandates of this Court's orders. Defendants' argument is clearly insufficient, even under the misapplication of Rule 26(b)(4)(B) suggested by Defendants, to allow discovery of experts who Plaintiffs' do not expect to call as witnesses at trial.

[4] Additionally, Defendants' proposal establishing a timetable for objecting to disclosures to experts is unnecessarily long. Defendants propose they be afforded ten "business days" (*i.e.*, two weeks or more) to determine whether they would object to disclosure of materials to a particular expert and that there be two more weeks of required negotiations if Defendants do object. Only then may the <u>designating party</u> move the Court for an order to prohibit disclosure. Of course, a normal briefing schedule would add at least another month before the issue is ready for the Court's consideration assuming that the designating party moves immediately for a resolution of the issue, which is highly unlikely since Defendants' proposal provides that the prohibition on disclosure will remain in effect until the

## II. THE PARTY SEEKING PROTECTION SHOULD HAVE THE BURDEN OF MOVING TO PROTECT THEIR INFORMATION

It is an unfortunate reality in complex litigation that some parties routinely designate as "confidential" almost anything that bears their name or relates to their business, including filings to the Securities and Exchange Commission, press releases, advertisements and analyst reports. While there is no basis as of yet to suggest that Defendants or other producing entities in this case will follow a similar tact (because documents have yet to be produced), the fact remains that in large productions, such as that expected here, economics and efficiency dictate that low level staff are charged with making initial designations as to confidentiality. These designations often err on the side of designating a document confidential rather than taking the risk of vitiating the safeguards for information that may be legitimately entitled to enhanced protections. In light of this reality, it is only fair to require the designating party to undertake the burden of making an initial motion to preserve their confidential designations when an objection is raised.

As Defendants concede, it will be the burden of the party seeking continued confidential treatment to demonstrate good cause to the Court when an objection to a designation is raised. Consequently, in the normal course, the party seeking to preserve the confidential treatment should be given the opportunity to present that party's initial arguments as well as a reply to the opponent's objection. Defendants' suggestion that the party with the burden of persuasion should be limited to an "opposition" brief without the opportunity of a reply in the normal course will either deprive the party seeking to preserve the designation of a fair briefing opportunity or place upon the Court the extra burden of reviewing an additional "sur-reply" in every instance.

---

matter is resolved by the designating party's own motion. Thus, Defendants' proposal would allow them to delay Plaintiffs' preparation by at least two months (and probably more) merely by posing an objection to disclosure. This is patently unjust. At most, the parties should be required to object and attempt to resolve any disputes within five business days after which resort to the Court should be available.

6

Simple logic dictates that under a blanket protective order such as that proposed here the party making the initial designation should be required to move the Court when legitimate objections are raised to confidential designations.

### III.  DEFENDANTS' "HIGHLY CONFIDENTIAL" DESIGNATION IS UNWARRANTED

In describing what they believe would be entitled to "highly confidential" treatment, Defendants do no more than provide a cursory description of the types of documents that are normally entitled to protection under Rule 26(c).  This calls into serious question what Defendants' plan is for designating documents as merely "confidential" and thereby severely restricting Plaintiffs' use.

It appears that Defendants' intent is to make "confidential" designations as to non-sensitive information since their Opposition at pages 11-12 describes the documents that Defendants believe would be entitled to "highly confidential" treatment as those which pose a risk of presenting "substantial harm" if revealed or contain "current" business information. However, the standard under Rule 26(c) is that the Court may protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including ordering "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."  F.R.C.P. 26(c)(7).  Thus, Defendants' proposed "highly confidential" designation simply describes the type of documents Rule 26(c) is designed to protect in the normal course and this category is already addressed in Plaintiffs' Proposed Order. There simply is no justification for designating documents "confidential" if they do not meet the standard Defendants propose for their "highly confidential" designation and the proposed distinction is unnecessary.

Defendants' distinction on this point reinforces the logic of requiring the party who initially designates a document as confidential to make the effort to preserve the designation by moving the Court for a ruling in the event an objection is made to such designation. If Defendants plan to designate documents which do not contain current business information or which would not cause Defendants harm if disclosed, they should have the burden of justifying the validity of such designations to the Court in the first instance when an objection is raised. *See* Section II, *supra*. If documents do not contain sensitive information, the only reason for designating them as "confidential" would be to hinder the fluid use of such documents by one's opponent.

Here again, the underlying, but unspoken, rationale of Defendants' argument for a "highly confidential" designation is the unjustified assumption that people will violate the Court's order. Thus, Defendants seek to limit not only the use of the confidential documents, but make unwarranted and arbitrary distinctions as to who may view such documents. Plaintiffs' proposed confidentiality order provides that any person who views the confidential documents will be bound by the confidentiality order which prohibits any use or disclosure of the documents outside the context of this litigation. *See* Plaintiffs' Proposed Confidentiality Order at ¶¶ 6 & 7. Defendants offer no reason to believe that anyone will violate the terms of the proposed Order by using materials designated as confidential for purposes beyond litigating the claims in this action and their "highly confidential" proposal is unnecessary and inappropriate.[5]

---

[5] Additionally, Defendants' proposal to eliminate references to source code in Plaintiffs' proposed Confidentiality Order is unwarranted. The issue of what information should be entitled to what kind of treatment is before the Court now. It would be inefficient and unduly burdensome to both the Court and the parties to revisit confidentiality issues again. The fact that Defendants interpret Plaintiffs' First Request for Production of Documents as not requiring the production of source code does not mean that such information may not prove to be necessary and relevant to Plaintiffs' trial preparation. There is no good reason to delay consideration of how such information should be handled since it is undisputed that, if requested, Defendants will demand special protections for this proprietary technical information.

## IV. DEFENDANTS' PROPOSED RESTRICTIONS ON THE USE OF DOCUMENTS SOLELY AT DEPOSITION OR TRIAL WILL SEVERELY PREJUDICE THE PLAINTIFFS

While Defendants attempt to characterize the parties' disagreement on the use of documents outside depositions and trial as "minor" (Def. Opp. at 4), the issue is of the utmost importance to Plaintiffs' ability to prepare their case. To be perfectly clear, the parties have **not** "reached substantial agreement on the language" included in Defendants' proposed order. *Cf.* Def. Opp. at 13. Under Defendants' proposal, Plaintiffs' counsel would be prohibited from examining witnesses on confidential documents outside the context of depositions at which Defendants' counsel are also present. *See* Def. Opp., Ex. A at 4, ¶6(iii). Thus, Defendants would be privy to everything Plaintiffs ask about a document as well as every response received. A more egregious invasion of the work-product privilege can hardly be conjured.

Contrary to Defendants' suggestion at page 13 of their Opposition, it is not at all difficult to conceive why preparation of Plaintiffs' case will require that documents designated "confidential" be shown to witnesses who may not appear from the face of the document to have received it. Generally, Plaintiffs will need to establish who knew what and when, an exercise that will require inquiring of various people whether they had knowledge of specific information which is likely to be contained in documents designated as "confidential." For instance, the fact that a person did not have "personal knowledge" of a document will be significant if that person made public statements with Defendants' acquiescence or while Defendants stood by knowing that the statements were contradicted by information in their possession. For example, Priceline's spokespersons repeatedly represented that manufacturers were underwriting the subsidies customers received from Priceline's WebHouse affiliate. It will be crucial to know if Defendants misled their spokespersons by withholding documents contradicting Defendants'

9

public statements or if the spokespersons knowingly disseminated false information to the public. Similarly, if Priceline has a memo describing the problems Defendants had with plans to expand Priceline.com's business model, it would be important to establish that the venture capitalists, who initially funded Priceline's WebHouse venture and whose investments contributed to investor confidence in the Company, either were or were not provided with such documents.

**CONCLUSION**

Defendants' proposed Protective Order is overreaching and unnecessary. Plaintiffs' proposed Order provides complete protection to Defendants for all information legitimately entitled to protection under Rule 26(c). Plaintiffs respectfully submit that their proposed Confidentiality Order provides an equitable and just solution to the parties' concerns with respect to sensitive information likely to be produced in discovery and should be entered to facilitate the efficacious management of this litigation.

Dated: December 27, 2004.

Respectfully submitted,

_____
SCOTT + SCOTT, LLC
David R. Scott (ct16080)
drscott@scott-scott.com
Geoffrey M. Johnson
Erin Green Comite (ct24886)
ecomite@scott-scott.com
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

JOHNSON & PERKINSON  
Dennis J. Johnson  
Jacob B. Perkinson  
Peter J. McDougall  
1690 Williston Road  
P.O. Box 2305  
South Burlington, VT 05403  
Telephone: (802) 862-0030  
Facsimile: (802) 537-4432  

STULL, STULL & BRODY  
Jules Brody  
Aaron Brody  
6 East 45th St.  
New York, NY 10017  
Telephone: (212) 687-7230  
Facsimile:  (212) 490-2022  

**Co-Lead Counsel**

SCHATZ & NOBEL  
Andrew M. Schatz  
Jeffrey S. Nobel  
330 Main Street  
Hartford, CT 06106  
Telephone:  (860) 493-6292  
Facsimile (860) 493-6290  

**Liaison Counsel**

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on December 27, 2004, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

                                                                                                              _____

                                                                                                               Erin Green Comite

**SERVICE LIST**

Dennis J. Johnson, Esquire
Jacob B. Perkinson, Esquire
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
330 Main Street
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

William R. Maguire
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

Martin Glenn
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036

Joseph L. Clasen
William Kelleher
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
Christine Arena
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Douglas C. Conroy
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9Th Floor
Stamford, CT 06901