IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF CONNECTICUT

| | |
|---|---|
| **In Re: Priceline.com** : | **Master File No.** |
| **Securities Litigation** : | **3:00cv1884(DJS)** |
| ------------------------------------------------- : | |
| : | |
| **This document relates to:** : | |
| : | |
| ALL ACTIONS : | |
| : | |
| : | |
| : | |
| : | |
| : | |

**ANSWER OF DEFENDANT JAY S. WALKER
TO PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Defendant Jay S. Walker ("Walker"), by and through his undersigned attorneys Paul, Hastings, Janofsky & Walker LLP, hereby answers plaintiffs' Consolidated Amended Complaint ("Complaint") dated October 29, 2001 as follows:

1.      Admits that the Complaint purports to allege a class action as described, but denies that this action is suitable for certification as a class action and otherwise denies the allegations of paragraph 1.

2.      Denies the allegations of paragraph 2, except admits that Priceline uses a "Name Your Own Price" system, and refers the Court to the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of Priceline's Form 10-Q filed with the Securities and Exchange Commission ("SEC") on May 16, 2000 for a description of Priceline's business and the Name Your Own Price system.

3.      Denies the allegations of paragraph 3.

4.      Denies the allegations of paragraph 4.

5. Admits the allegations of paragraph 5.

6. Denies the allegations of paragraph 6, except admits that plaintiffs purport to invoke this Court's jurisdiction as alleged.

7. Denies the allegations in paragraph 7, except admits that plaintiffs purport that venue is laid in this District as alleged and that Priceline's headquarters are located at 800 Connecticut Avenue, Norwalk, Connecticut 06854.

8. Denies the allegations of paragraph 8, except admits that plaintiffs purport to invoke this Court's jurisdiction as alleged.

9. Denies the allegations of paragraph 9, except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegations that this plaintiff is a New York corporation and that it purchased Priceline common stock during the alleged Class Period and, therefore, denies these allegations.

10. Denies the allegations of paragraph 10, except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegation that this plaintiff purchased Priceline common stock during the alleged Class Period and, therefore, denies that allegation.

11. Denies the allegations of paragraph 11, except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegations that this plaintiff is a pension fund based in Switzerland and that it purchased Priceline common stock during the alleged Class Period and, therefore, denies these allegations.

12. Denies the allegations of paragraph 12, except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegations that these plaintiffs are

a married couple and that they purchased Priceline common stock during the alleged Class Period and, therefore, denies these allegations.

13.     Denies the allegations of paragraph 13, except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegation that this plaintiff purchased Priceline common stock during the alleged Class Period and, therefore, denies that allegation.

14.     Denies the allegations of paragraph 14, except: (i) admits that Priceline is a Delaware corporation with its headquarters located at 800 Connecticut Avenue, Norwalk, Fairfield County, Connecticut 06854; (ii) admits that Priceline uses a Name Your Own Price system and refers the Court to the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of Priceline's Form 10-Q filed with the SEC on May 16, 2000 for a description of Priceline's business and the Name Your Own Price system; and (iii) admits that Priceline's common stock traded on the NASDAQ National Market under the symbol "PCLN".

15.     States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of paragraph 15 and, therefore, denies these allegations.

16.     States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of paragraph 16 and, therefore, denies these allegations.

17.     States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of paragraph 17 and, therefore, denies these allegations.

18.     States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of paragraph 18 and, therefore, denies these allegations.

19. Denies the allegations of paragraph 19, except admits that he was Priceline's founder; that he was Vice Chairman of Priceline's Board from August 1998 to December 2000; that Priceline filed a Form 14A with the SEC on March 27, 2000 which speaks for itself, and refers the Court to that form for its actual content, denying every allegation in paragraph 19 inconsistent therewith; that he filed Forms 4 with the SEC on February 9, 2000, March 10, 2000, April 10, 2000, June 12, 2000, September 11, 2000, October 10, 2000, and December 8, 2000 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 19 inconsistent with therewith; that Walker Digital LLC filed Forms 4 with the SEC on June 12, 2000, July 10, 2000, October 10, 2000, and January 9, 2001 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 19 inconsistent therewith; that Walker Digital Corporation filed a Form 4 with the SEC on June 12, 2000 and filed a Form 144 with the SEC on May 18, 2000 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 19 inconsistent therewith; that he controlled Walker Digital, a research and development company which helped fund Priceline and WebHouse at their inceptions; and that he owned 34% of WebHouse.

20. States that the allegations in paragraph 20 pertain only to the definitions of terms used by plaintiffs which do not require a response, and these allegations are, therefore, denied.

21. Denies the allegations of paragraph 21, except admits that he received periodic reports concerning various aspects of Priceline's and WebHouse's businesses.

22. Denies the allegations of paragraph 22.

23. Denies the allegations of paragraph 23, except admits that Priceline's initial public offering occurred on March 30, 1999 and that Priceline's stock was offered to the public at $16 per share at that time and traded in a range of publicly available prices thereafter.

24. Denies the allegations of paragraph 24, except states that Priceline's historic stock prices constitute publicly available information which speaks for itself.

25. Denies the allegations of paragraph 25, except admits that Priceline's Form 8-K filed with the SEC on November 18, 1999 describes Delta Air Lines as "priceline's lead airline partner" and discusses Priceline's issuance of warrants to several domestic airlines, and refers the Court to that form for its actual content, and admits that Priceline's Form 8-K filed with the SEC on January 31, 2000 shows that Priceline took a $1.1 billion charge against income in the fourth quarter of 1999 as a result of issuing warrants to several domestic airlines, and refers the Court to that form for its actual content.

26. Denies the allegations of paragraph 26, except admits that Priceline licensed its business model to WebHouse as described in Priceline's Form 10-Q filed with the SEC on November 15, 1999, and refers the Court to that form for its actual content.

27. Denies the allegations of paragraph 27, except admits that Priceline's license to WebHouse provided for WebHouse to offer retail goods on a Name Your Own Price basis and for Priceline's home page to be the exclusive link to the WebHouse home page, as described in Priceline's Form 10-Q filed with the SEC on November 15, 1999.

28. Denies the allegations of paragraph 28, except admits that agreements were executed among WebHouse, Priceline, and Walker Digital LLC (the "WebHouse Agreements"), and states that these agreements speak for themselves and refers the Court to such agreements for their precise terms and conditions; admits that Priceline's home page was the exclusive link to

the WebHouse home page, as described in Priceline's Form 10-Q filed with the SEC on November 15, 1999; admits that Priceline's Form 8-K filed with the SEC on January 31, 2000 shows that Priceline recorded a one-time gain of $189 million during the fourth quarter of 1999 in connection with the acquisition of warrants to purchase WebHouse stock and refers the Court to that Form 8-K for its actual content; and admits that Priceline wrote off the value of the warrants in its Form 10-Q filed with the SEC on November 14, 2000, and refers the Court to that Form 10-Q for its actual content.

29. Denies the allegations of paragraph 29.

30. Denies the allegations of paragraph 30.

31. Denies the allegations of the first sentence of paragraph 31. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 31 and, therefore, denies those allegations. Denies the allegations of the third sentence of paragraph 31, except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegation regarding what an unnamed former WebHouse employee may have "acknowledged" and, therefore, denies that allegation. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of the fourth sentence of paragraph 31 and, therefore, denies those allegations; and denies the allegations of footnote 2 thereto. Denies the allegations of the fifth sentence of paragraph 31.

32. Denies the allegations of paragraph 32.

33. Denies the allegations of paragraph 33.

34. Denies the allegations of paragraph 34.

35. Denies the allegations of paragraph 35.

36. Denies the allegations of paragraph 36, except: (i) admits that WebHouse issued a press release dated October 5, 2000 and refers the Court to that press release for its actual content; (ii) admits that Priceline issued a press release dated October 5, 2000 and refers the Court to that press release for its actual content; (iii) admits that Priceline wrote off the value of the WebHouse warrants in its Form 10-Q filed with the SEC on November 14, 2000 and refers the Court to that form for its actual content; and (iv) states that any public statements by him referenced in paragraph 36 speak for themselves and refers the Court to such statements for their actual content.

37. Denies the allegations in paragraph 37, except: (i) admits that on January 27, 2000, *Dow Jones Business News* published an article entitled "Priceline.com's Operating Loss Narrows on Huge Revenue Gain," which reported that during a CNBC interview on the same date Schulman had said that profitability would be achieved in the first half of 2001 instead of the second half; and (ii) states that any public statements by him referenced in paragraph 37 speak for themselves and refers the Court to such statements for their actual content.

38. Denies the allegations of paragraph 38, except admits that he had the expectation that WebHouse would continue operations in the future.

39. Denies the allegations of paragraph 39.

40. Denies the allegations of paragraph 40, except admits that he received periodic reports concerning various aspects of Priceline's and WebHouse's business.

41. Denies the allegations of paragraph 41 except as specified below.

    a. Denies the allegations of paragraph 41(a).

    b. Denies the allegations of paragraph 41(b), except: (i) states that any public statements by him speak for themselves and refers the Court to such statements for their

actual content; and (ii) admits that from time to time Braddock and/or WebHouse executives and he discussed various aspects of WebHouse's business, including its business model and website.

  c. Denies the allegations of paragraph 41(c), except states that any public statements by him speak for themselves and refers the Court to such statements for their actual content.

  d. Denies the allegations of paragraph 41(d), states that any public statements by him speak for themselves and refers the Court to such statements for their actual content.

  e. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 41(e) and, therefore, denies those allegations; and denies the allegations in the second sentence of paragraph 41(e).

  f. Denies the allegations of paragraph 41(f), except admits that the WebHouse Agreements were executed and states that these agreements speak for themselves and refers the Court to such agreements for their precise terms and conditions.

  g. Denies the allegations of paragraph 41(g).

  h. Denies the allegations of paragraph 41(h).

  i. Denies the allegations of paragraph 41(i), except states that he is without knowledge of information sufficient to form a belief as to the truth of the allegation regarding the contents of unspecified news stories allegedly "verified" by unnamed WebHouse personnel and, therefore, denies those allegations; and admits that the Connecticut Better Business Bureau suspended Priceline's membership on September 14, 2000 and reinstated it on December 20, 2000.

  j. Denies the allegations of paragraph 41(j), except: (i) states that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of

stock sales by Braddock and Nicholas and, therefore, denies these allegations; and (ii) admits that he filed Forms 4 with the SEC on February 9, 2000, March 10, 2000, April 10, 2000, June 12, 2000, September 11, 2000, October 10, 2000, and December 8, 2000 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 41(j) inconsistent therewith; that Walker Digital LLC filed Forms 4 with the SEC on June 12, 2000, July 10, 2000, and January 9, 2001 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 41(j) inconsistent therewith; that Walker Digital Corporation filed a Form 4 with the SEC on June 12, 2000 and filed a Form 144 with the SEC on May 18, 2000 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 41(j) inconsistent therewith.

    42.    Denies the allegations of paragraph 42.

    43.    Denies the allegations of paragraph 43 except as specified below.

    a.    Denies the allegations of paragraph 43(a), except admits that Priceline's Form 8-K filed with the SEC on November 18, 1999 discusses Priceline's issuance of warrants to several domestic airlines, and refers the Court to that form for its actual content, and admits that Priceline's Form 8-K filed with the SEC on January 31, 2000 states that Priceline took a $1.1 billion charge against income in the fourth quarter of 1999 as a result of issuing warrants to several domestic airlines, and refers the Court to that form for its actual content.

    b.    Denies the allegations of paragraph 43(b), except admits that Priceline made filings with the SEC throughout the alleged Class Period and refers the Court to those filings for their actual content.

    c.    Denies the allegations of paragraph 43(c).

  d.  Denies the allegations of paragraph 43(d).

  e.  Denies the allegations of paragraph 43(e), except admits that Priceline's Form 8-K filed with the SEC on November 18, 1999 discusses Priceline's issuance of warrants to several domestic airlines, and refers the Court to that form for its actual content.

  f.  Denies the allegations of paragraph 43(f), except states that the warrant agreements speak for themselves, and refers the Court to the warrant agreements for their precise terms and conditions.

  g.  Denies the allegations of paragraph 43(g), except states that the WebHouse Agreements speak for themselves, and refers the Court to those agreements for their precise terms and conditions.

  h.  Denies the allegations of paragraph 43(h), except states that the WebHouse Agreements speak for themselves, and refers the Court to those agreements for their precise terms and conditions.

  i.  Denies the allegations of paragraph 43(i), except states that the warrant agreements speak for themselves, and refers the Court to those agreements for their precise terms and conditions.

  44.  Denies the allegations of paragraph 44, except admits that Priceline filed a Form 14A with the SEC on March 27, 2000 which speaks for itself and refers the Court to that form for its actual content, denying every allegation in paragraph 44 inconsistent with that form; that he filed Forms 4 with the SEC on February 9, 2000, March 10, 2000, April 10, 2000, June 12, 2000, September 11, 2000, October 10, 2000, and December 8, 2000 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 44 inconsistent therewith; that Walker Digital LLC filed Forms 4 with

the SEC on June 12, 2000, July 10, 2000, and January 9, 2001 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 44 inconsistent therewith; that Walker Digital Corporation filed a Form 4 with the SEC on June 12, 2000 and filed a Form 144 with the SEC on May 18, 2000 reporting transactions in Priceline stock and refers the Court to those forms for such transactions, denying every allegation in paragraph 44 inconsistent therewith.

45. Denies the allegations of paragraph 45, except: (i) states that announcements and public statements of Priceline and its senior executives speak for themselves and refers the Court to those items for their actual content; (ii) states that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of stock sales by Braddock and Nicholas and, therefore, denies these allegations; and (iii) admits that he entered into a forward contract to sell 8 million shares of Priceline common stock for gross proceeds of $190,000,000 on August 1, 2000.

46. With respect to the allegations of paragraph 46, admits that the Complaint purports to allege a class action as described, but denies that this action is suitable for certification, and states that the allegations in the second sentence of paragraph 46 pertain only to plaintiffs' definition of its proposed class which does not require a response and these allegations are, therefore, denied.

47. Denies the allegations of paragraph 47, except admits that Priceline's common stock is traded on the NASDAQ National Market under the symbol "PCLN" and that there are numerous shareholders of Priceline common stock.

48. Denies the allegations of paragraph 48.

49. Denies the allegations of paragraph 49.

50. Denies the allegations of paragraph 50.

51. Denies the allegations of paragraph 51.

52. Denies the allegations of paragraph 52, except admits that Priceline uses a Name Your Own Price system and refers the Court to the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of Priceline's From 10-Q filed with the SEC on May 16, 2000 for a description of Priceline's business and business model.

53. Denies the allegations of the first two sentences of paragraph 53, and refers the Court to the "Management's Discussion and Analysis of Financial Condition and Results of Operations" section of Priceline's From 10-Q filed with the SEC on May 16, 2000 for a description of Priceline's business and business model. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of the third sentence of paragraph 53 and, therefore, denies those allegations, except admits that Priceline issued press releases on April 15, 1998 and May 19, 1998 which stated that "priceline collects demand and helps airlines fill some of the 500,000 otherwise empty seats from major airlines every day," and refers the Court to those press releases for their actual content.

54. Denies the allegations of the first and second sentences of paragraph 54. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of the third sentence of paragraph 54 and, therefore, denies those allegations. Denies the allegations of the fourth, fifth and sixth sentences of paragraph 54. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of the seventh, eighth, ninth, tenth, and eleventh sentences of paragraph 54 and, therefore, denies those allegations. Denies the allegations of the final sentence of paragraph 54, except admits that *The Wall Street Journal* published an article dated October 29, 1999, entitled "Priceline.com Posts

Wider Loss on Airline-Partnership's Charges," and refers the Court to that article for its actual content.

55. Denies the allegations of paragraph 55, except admits that Priceline distributed a confidential memorandum marked October 5, 1999, and refers the Court to that memorandum for its actual content.

56. Denies the allegations of paragraph 56, except admits that Priceline's Form 8-K filed with the SEC on November 18, 1999 discusses Priceline's issuance of warrants to several domestic airlines, and refer the Court to that Form 8-K for its actual content.

57. Denies the allegations of paragraph 57, except admits that Priceline issued warrants to certain airlines pursuant to airline warrant agreements, and refers the Court to those agreements for their actual content.

58. Denies the allegations of paragraph 58, except admits that Priceline filed a Form 10-Q with the SEC on May 17, 1999, and refers the Court to that form for its actual content.

59. Denies the allegations of paragraph 59 except as specified below.

    a. With respect to the allegations of paragraph 59(a), states that the referenced press releases speak for themselves and refers the Court to such press releases for their actual content.

    b. With respect to the allegations of paragraph 59(b), states that the referenced article in *Fortune* magazine speaks for itself and refers the Court to such article for its actual content.

    c. States that he is without knowledge of information sufficient to form a belief as to the truth of the allegations of paragraph 59(c) and, therefore, denies these allegations.

60. Denies the allegations of paragraph 60, except admits that he helped form WebHouse, that Walker Digital and Vulcan Ventures made investments in WebHouse and in Priceline, and that WebHouse offered retail goods on a Name Your Own Price basis.

61. Denies the allegations of paragraph 61, except states that the referenced press releases speak for themselves and refers the Court to such press releases for their actual content.

62. Denies the allegations of paragraph 62, except states that the referenced advertisements featuring William Shatner, who portrayed Captain James *Tiberias* Kirk of the Starship Enterprise, speak for themselves and refers the Court to such advertisements for their actual content.

63. Denies the allegations of paragraph 63, except states that the referenced analysts' reports and recommendations speak for themselves and refers the Court to such reports and recommendations for their actual content.

64. Denies the allegations of paragraph 64, except states that the referenced newspaper articles and reports speak for themselves and refers the Court to such articles and reports for their actual content.

65. Denies the allegations of paragraph 65, except states that the referenced press releases and statements of Priceline speak for themselves and refers the Court to those items for their actual content.

66. Denies the allegations of paragraph 66, except states that the referenced press release and Form 8-K speak for themselves and refers the Court to such press release and form for their actual content.

67. Denies the allegations of paragraph 67, except admits that Priceline's Form 10-K filed with the SEC on March 30, 2000 shows that in 1999 Priceline recorded a one-time $188.8

million gain in connection with its receipt of warrants from WebHouse and that Priceline took a $1.1 billion charge against income as a result of issuing warrants to several domestic airlines, and refers the Court to that form for its actual content; and admits that Priceline filed Forms 10-Q with the SEC on May 16, 2000 and August 14, 2000, and refers the Court to those forms for Priceline's first and second quarter 2000 results.

68. Denies the allegations of paragraph 68, except states that the referenced Form 10-K speaks for itself and refers the Court to such form for its actual content.

69. Denies the allegations of paragraph 69, except states that the referenced Form 10-K speaks for itself and refers the Court to such form for its actual content.

70. Denies the allegations of paragraph 70, except states that the referenced Form 10-K speaks for itself and refers the Court to such form for its actual content.

71. Denies the allegations of paragraph 71, except states that the referenced press release speaks for itself and refers the Court to such press release for its actual content.

72. With respect to the allegations of paragraph 72, states that the referenced Form 10-Q speaks for itself and refers the Court to such form for its actual content.

73. Denies the allegations of paragraph 73, except states that the referenced Form 10-Q speaks for itself and refers the Court to such form for its actual content.

74. Denies the allegations of paragraph 74, except states that the referenced announcements speak for themselves and refers the Court to such announcements for their actual content.

75. Denies the allegations of paragraph 75, except states that the referenced Form 10-Q speaks for itself and refers the Court to such form for its actual content.