## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| _____ | : | **MASTER FILE NO.** |
| | : | **3:00CV01844(DJS)** |
| This document relates to: | : | |
| | : | |
| **ALL ACTIONS** | : | **JANUARY 7, 2005** |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PROPOSED CLASS REPRESENTATIVES' MOTION FOR CLASS CERTIFICATION

**SCOTT + SCOTT, LLC**
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Proposed Class Representatives John S. Anderson, the Leisinger Pension Fund, Lance B. Orr, R. Warren Ross, Mark Weiss, Marilyn D. Egel, Joseph Wilenkin and Sharon Tsai (collectively, the "Proposed Class Representatives") submit this memorandum of law in support of their motion for an order: (1) certifying this action as a class action, (2) certifying a class (the "Class") consisting of all purchasers of priceline.com ("Priceline") securities from January 27, 2000 to October 4, 2000, inclusive (the "Class Period"), and (3) appointing the Proposed Class Representatives as Class Representatives of the defined class.

## <u>INTRODUCTION</u>

This securities fraud action is perfectly suited for class treatment. The Complaint alleges that Defendants Priceline.com, Inc. ("Priceline"), N.J. Nicholas, Daniel H. Schulman, Richard S. Braddock and Jay S. Walker (collectively, "Defendants") repeatedly made false and misleading statements during the Class Period that were designed to convince the investing public that Priceline's "Name Your Own Price" business model was an entirely new business model that was easily expandable to numerous other markets. Complaint ("Compl.") ¶ 3. The Complaint further alleges that Defendants made several false and misleading statements about the profitability and business prospects of its affiliate, the Priceline WebHouse Club, Inc. ("WebHouse"). *Id.* Defendants made these misrepresentations at a time when they knew that Priceline's business model was not expandable and that WebHouse was not profitable. *Id.* These misrepresentations caused Priceline's securities to trade at artificially high prices and enabled the Defendants to personally profit by selling more than a quarter billion dollars of Priceline securities. *Id.* ¶ 4. When the truth about the misstatements emerged, defrauded

investors were left holding securities of diminished value in a small niche online company with a questionable future. *Id.*

The factual and legal issues which will be pursued by the named representatives are common to all members of the proposed class and support the appropriateness of class certification. As discussed in detail below, all of the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure are satisfied here. Moreover, the alternatives to class treatment would effectively deny Class members access to the courts, thereby barring them from establishing their right to recovery. Courts have long recognized that violations of the federal securities laws by public companies and their management generally inflict economic injury on large numbers of geographically dispersed persons with relatively small individual losses, rendering the cost of pursuing individual litigation – under complex statutes and against well-financed defendants – impractical. *See, e.g., Basic, Inc. v. Levinson,* 485 U.S. 224 (1988); *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir. 1985). Accordingly, the proposed Class should be certified and the Proposed Class Representatives should be approved as class representatives.

## STATEMENT OF FACTS

The Complaint alleges that Defendants made numerous false and misleading statements about Priceline's business model, financial status, and future prospects during the Class Period. Compl. ¶¶ 33-38, 97-148. As stated above, Priceline pioneered a "Name Your Own Price" pricing system, which is a type of demand collection system that allows consumers to make an offer to purchase items such as airline tickets, hotel rooms, or car rentals. *Id.* ¶ 2. After collecting the consumer demand in the form of an offer, Priceline matches the offer with a seller willing to discount the item in order to fill excess capacity. *Id.* Priceline's business model is its most valuable asset, and is at the root of the events giving rise to this lawsuit. *Id.* ¶ 2, 43.

In late 1999, Defendants realized that they could not sustain Priceline's current securities value and become profitable unless they expanded Priceline's business model to new markets beyond the Company's core businesses of airline travel, hotel rooms, and car rentals. *Id.* ¶ 3. This prompted Priceline to license its business model to WebHouse in November 1999. *Id.* ¶ 28. WebHouse applied Priceline's business model to the purchase and sale of groceries. *Id.* ¶ 26. Customers would bid for items on the internet, charge the items at a discount to their credit cards, and then take delivery of the groceries at a local store. *Id.* The supermarket providing the goods would receive the full retail price of the goods from WebHouse. *Id.* WebHouse was responsible for funding the difference between the full retail price and the discounted price offered to customers. *Id.* ¶ 60.

Throughout the Class Period, Defendants held WebHouse out as a success at a time when they knew that WebHouse could not sustain its business model. *Id.* ¶ 3. In particular, Defendants knew by the beginning of the Class Period that grocery manufacturers would not offer discounts to WebHouse customers at a level that could sustain WebHouse's growth. *Id.* ¶ 43. Because grocery manufacturers were refusing to participate in WebHouse, WebHouse was forced to pay the discounts itself. *Id.* To hide these material facts, Defendants misrepresented the level of manufacturer participation and the prospects of future manufacturer participation. *Id.* ¶ 30, 43.

Additionally, Plaintiffs allege that, during the Class Period, the publicly reported financial statements of Priceline were false and misleading because they failed to reveal that Priceline's accounting did not comply with Generally Accepted Accounting Principles ("GAAP"). ¶¶ 35, 70, 76. As a consequence of these misleading financial presentations, the reported financial results of Priceline were inflated, which in turn contributed to an artificial

inflation in the price for Priceline securities during the Class Period. ¶¶ 41, 116, and 233. The most important factor in causing the financial statements of Priceline to be false and misleading throughout the Class Period was a $188.8 million valuation for the warrants received by Priceline to purchase stock in its subsidiary, WebHouse, which value was reported as an asset on Priceline's financial statements throughout the Class Period. ¶¶ 28, 35, 43, 68, 79.

The Complaint alleges that contrary to GAAP: a) the value of the WebHouse warrants was materially less than $189 million throughout the Class Period and Priceline failed to write down or write off these assets; b) Priceline had improperly recognized $189 million in income in the 1999 fourth quarter as a result of its acquisition of the WebHouse warrants; c) Priceline improperly recognized revenues received from WebHouse in the three reporting periods during the Class Period; and d) Priceline inaccurately reported its and WebHouse's results and assets on a separate rather than combined or consolidated basis. ¶¶ 76, 78, 79-84, 91, 130, 149. These violations played an integral role in the fraud alleged by allowing Priceline to tout WebHouse's success as evidence of the supposed value of Priceline while shielding the actual results of WebHouse from public evaluation.

The truth was disclosed on October 5, 2000, when Defendants issued a press release announcing that Priceline would be winding down WebHouse's operations over a 90-day period. *Id.* ¶ 158. Moreover, in sharp contrast to Defendants' numerous statements during the Class Period, Defendants also admitted that manufacturers had not been subsidizing grocery purchases to any significant extent and that WebHouse had been heavily subsidizing its customers' purchases since day-one of WebHouse's existence. *Id.* ¶ 162. Defendants also announced that they were writing down the value of certain warrants the Company was carrying on its books

representing its interest in the WebHouse business. *Id.* ¶ 159.  In response to these disclosures, the price of Priceline common stock dropped 38% to $5.81 on October 5, 2000.  *Id.* ¶ 160.

Shortly after the end of the Class Period, several plaintiffs filed complaints against Priceline and certain of its officers and directors.  A Consolidated Amended Class Action Complaint (the "Complaint") was filed on October 29, 2001.  Defendants moved to dismiss the Complaint on February 28, 2002.  By Memorandum and Order dated October 7, 2004, this Court denied in part and granted in part the Defendants' motion to dismiss.  The Court did not dismiss the claims brought against the Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a).  Moreover, with respect to those claims that were dismissed (*i.e.,* the claims against Priceline's auditor, Deloitte & Touche, LLP and claims based on certain false statements made by Defendants during the Class Period), the Court dismissed these claims without prejudice, holding that Plaintiffs could re-plead these claims upon curing the deficiencies set forth in the Memorandum and Order.

## ARGUMENT

### A.     Legal Standard For A Motion For Class Certification.

Courts in the Second Circuit have consistently held that class actions are appropriate for cases raising claims under the federal securities law.  *See, e.g., Green v. Wolf Corp.*, 406 F.2d 291, 296-97 (2d Cir. 1968) (noting that Rule 23 "illustrates the need for an effective use of class actions in securities act litigation"); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws.  It is well recognized that private enforcement of these laws is a necessary supplement to government regulation."); *Stevelman v. Alias Research, Inc.*, 2000 WL 888385, at *1-5 (D. Conn. June 22, 2000) (certifying class in case brought under federal

securities laws); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y.

1993) (noting that there is a "preference for class certification in securities cases" as certification

is important "for small securities holders located throughout the country"); *Epifano v.*

*Boardroom Bus. Prods.*, 130 F.R.D. 295, 298 (S.D.N.Y. 1990) ("There is a strong public policy

in favor of private enforcement of the nation's securities laws . . . . A class action is both an

effective and appropriate method for resolving securities law claims.").

     In determining whether certification is appropriate, the Second Circuit has "directed

district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation."

*Maywalt*, 147 F.R.D. at 54 (internal citations omitted).[1]

     By providing a single forum in which to litigate the same or similar claims, a class action

also affords an indispensable mechanism for the conservation of judicial resources.  *See*

*Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("the effectiveness of the securities laws

may depend in large measure on the application of the class action device"); *Kennedy v. Tallant*,

710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be

repetitive, wasteful, and an extraordinary burden on the courts.").  Rule 23 is, therefore, broadly

structured so as to *facilitate* certification of class actions.  "The interests of justice require that in

a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a

class action."  *Eisenberg*, 766 F.2d at 785 (internal citations omitted).

---

[1] *See also Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (noting that when deciding an issue of class certification, courts must be "mindful of the admonition of liberality toward demands for class suit status in securities litigation"); *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965) ("The usefulness of the representative action as a device for the aggregation of small claims is 'persuasive of the necessity of a liberal construction of . . . Rule 23.'") (internal citations omitted); *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) (holding that Rule 23 is to be applied in a liberal fashion when considering claims brought under the federal securities laws); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 373 (S.D.N.Y. 2000) ("our Court of Appeals has directed district courts to avoid applying Rule 23 under a restrictive interpretation").

Finding that class actions serve a valuable purpose, the Second Circuit has stated that "[i]n light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990); *see also Dietrich*, 192 F.R.D. at 119; *In re Blech*, 187 F.R.D. at 102 ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws. . . . Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.").

The same reasons that supported class certification in the cases noted above apply here. There are a large number of proposed class members individuals, many with damage claims too small to justify the expense of individual actions, and each of whom seeks to assert identical claims against Defendants. Because the requirements of Federal Rule of Civil Procedure 23 are fully satisfied, the proposed Class should be certified.

**B.     This Action Satisfies The Requirements Of Rule 23(a).**

Federal Rule of Civil Procedure 23 ("Rule 23") requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy the four prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representations). *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992). Second, the action must satisfy one of the requirements of Rule 23(b)

(with 23(b)(3) relating to predominance and superiority). *Id.* This action satisfies each of these requirements.

### 1.    <u>The Class Is So Numerous That Joinder Of All Members Is Impracticable.</u>

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See Maywalt*, 147 F.R.D. at 54. The "numerosity" requirement does not mandate impossibility, but only difficulty or inconvenience of joining all members of a class. *See Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996). Precise quantification of class members is not a prerequisite to satisfying the numerosity requirement for class certification, as the Court may make common sense assumptions to support a finding of numerosity. *See Dietrich*, 192 F.R.D. at 123; *see also Cross v. 21st Century Holding Co.,* 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) ("Plaintiffs are not obligated to prove the exact class size to satisfy numerosity.").

The Court may also consider other factors bearing on the impracticability of joinder of all class members, such as judicial economy concerns, geographic dispersion of the proposed class, and the inability of class members to bring suit on an individual basis. *See Jackson v. Foley*, 156 F.R.D. 538, 542 (E.D.N.Y. 1994); *see also Avagliano v. Sumitomo Shoji Am., Inc.*, 103 F.R.D. 562, 580 (S.D.N.Y. 1984) (holding that geographical spread of class members is to be given considerable weight in determining whether joinder is impracticable).

In this case, although the exact size of the Class is not yet known, the facts alleged in the Complaint establish the numerosity requirement. Indeed, the Proposed Class Representatives seek to represent a class that likely consists of thousands of individuals who purchased Priceline securities on the open market during the Class Period. Compl. ¶ 47. Moreover, during the Class Period, there were at least 160 million shares of Priceline common stock outstanding and daily

trading volume ranged between 3 million and 260 million shares. *Id.* The Complaint also

alleges that, during the Class Period, Priceline common stock was traded on the NASDAQ and

held by shareholders in geographically dispersed locations throughout the United States and

abroad. *Id.* ¶ 27(a), 47. This fact alone satisfies the numerosity requirement of Rule 23. *See*

*Dietrich*, 192 F.R.D. at 123 (holding that allegations in a securities action that the defendant

company was traded on NASDAQ, and had 22.5 million shares outstanding held by

approximately 522 record holders, were facts reasonable to "infer that the class is sufficiently

large to meet Rule 23(a)'s numerosity requirement"); *Zeidman v. J. Ray McDermott & Co.,* 651

F.2d 1030, 1039 (5th Cir. 1981) (finding that numerosity is generally presumed when a claim

involves a nationally traded security); *see also In re Oxford Health*, 191 F.R.D. at 374 ("Here,

because Oxford stock was traded in high volume during the class period, the precise number of

class members could be, and very likely is, numbered in the thousands . . . [t]he [n]umerosity

requirement is satisfied."). Thus, the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2.    There Are Common Issues Of Law And Fact.

The "commonality" requirement under Federal Rule of Civil Procedure 23(a)(2) has also

been satisfied. This  requirement is generally considered a low hurdle that "has been applied

permissively by courts in the context of securities fraud litigation." *In re Blech,* 187 F.R.D. at

104. Courts have liberally construed the commonality requirement to mandate only a minimum

of one issue common to all class members. *See Trief v. Dun & Bradstreet Corp.,* 144 F.R.D.

193, 198 (S.D.N.Y. 1992*); see also Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989)

(commonality "does not mean that all issues must be identical as to each [class] member, but it

does require that plaintiffs identify some unifying thread among the members' claims that

warrants class treatment" (internal citations omitted)). Indeed, factual variations among class

members' grievances will not defeat the commonality requirement so long as the claims arise from a "common nucleus of operative facts." *In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D. Ill. 1991); *Green*, 406 F.2d at 298-99; *see also In re Avon Sec. Litig.,* 91 Civ. 2287 (LMM), 1998 U.S. Dist. Lexis 18642, at *15 (S.D.N.Y. Nov. 19, 1998) ("Commonality does not mandate that all class members make identical claims and arguments") (internal citation omitted); *Tedesco v. Mishkin,* 689 F. Supp. 1327, 1334 (S.D.N.Y. 1988) ("not every question of fact or law raised need be common to every member of the class").

        Here, there are numerous common legal and factual issues, as the same facts giving rise to the claims of the Proposed Class Representatives also give rise to absent Class Members' claims.  The common legal and factual issues include, among others:

> (i)     whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

> (ii)    whether the Company's publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts and whether Defendants breached any duty to convey material facts or to correct material facts previously disseminated;

> (iii)   whether the market prices of Priceline securities during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of in the Complaint; and

> (iv)    whether the Class has sustained damages, and the measure of such damages.

These common issues are more than sufficient to satisfy Rule 23(a)(2).  *See, e.g., Green*, 406 F.2d at 298-99; *Mishkin,* 689 F. Supp. at 1334.

**3.   The Proposed Class Representatives' Claims Are Typical Of The Class.**

Rule 23(a)(3) requires that the claims asserted by the Proposed Class Representatives be typical of the claims of each member of the Class.  In this Circuit, a representative's claims are typical if they are based on the same legal theory and arise from the same event or practice -- or same course of conduct -- that gives rise to the claims of other Class Members.  *See In re Drexel Burnham*, 960 F.2d at 291.  "Typicality under Rule 23 requires that a class representative have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."  *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997) (internal citations and quotations omitted).  The typicality requirement of Rule 23(a)(3) is also liberally construed and "typical" is not read to mean "identical."  *Trief*, 144 F.R.D. at 200.

Courts have recognized that this requirement "can be met with surprising ease in most cases, because the majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met."  *In re Data Access Sys. Sec. Litig.,* 103 F.R.D. 130, 139 (D.N.J. 1984), *rev'd and remanded on other grounds,* 843 F.2d 1537 (3d Cir. 1988) (citation omitted).  A plaintiff's claims satisfy the typicality requirement if -- as here -- they arise "from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham*, 960 F.2d at 291.

Moreover, the typicality requirement can be met even if there are small differences in the facts giving rise to individual class members' claims.  Indeed, the Second Circuit has stated that when the same unlawful conduct was directed at or affected both the named plaintiff and the class, the "typicality requirement is not defeated by minor variations in the fact patterns of

individual class member's claims." *Abdul-Malik v. Coombe*, 96 Civ. 1021 (DLC), 1996 U.S.

Dist. LEXIS 18203, at *6 (S.D.N.Y. Dec. 5, 1996); *see also* 1 H. Newberg, *Newberg on Class

Actions* § 3.13, at 167 (3d ed. 1992).  Because this inquiry focuses on the nature of the claims,

any factual difference involving the date, type and manner of the purchase, the investor's

perception of the transaction, or even the information furnished to him or her at the time of the

purchase will not destroy typicality if each class member was the victim of the same material

omissions and the same course of conduct.  *See In re Baldwin-United Corp. Litig.,* 122 F.R.D.

424, 428 (S.D.N.Y. 1986); *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99

(S.D.N.Y. 1981); *Oscar Gruss & Son v. Geon Indus.*, 75 F.R.D. 531, 534-35 (S.D.N.Y. 1977).

Here, the Proposed Class Representatives, like the absent Class members, purchased

Priceline securities during the Class Period at prices that were artificially inflated due to

Defendants' material misrepresentations, and suffered losses as a result thereof.  Moreover, the

Proposed Class Representatives' claims are based upon the same facts and legal theories as the

rest of the Class.  As stated above, so long as there is a nexus between the class representative's

claims and the common questions of fact or law that unite the class, typicality is satisfied.

Accordingly, the Proposed Class Representatives satisfy the typicality requirement.

### 4.  The Proposed Class Representatives Will Fairly And Adequately Protect The Interests Of The Class.

The Proposed Class Representatives also satisfy Rule 23(a)(4), which provides that:  (i)

the representative party's attorney must be qualified, experienced and generally able to conduct

the litigation; and (ii) the plaintiff's interests must not be antagonistic to those of others in the

class.  *See In re Oxford Health*, 191 F.R.D. at 376; *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414

(S.D.N.Y. 2001); *In re Drexel Burnham*, 960 F.2d at 291; *Genden v. Merrill Lynch, Pierce,

Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y. 1987).

The Proposed Class Representatives satisfy both prongs of the adequacy test.  First, their interests are not antagonistic to those of the Class:  as discussed above, all members of the Class allege claims arising from the same wrongful conduct and are based on the same legal theories as the claims advanced by the Proposed Class Representatives.  The interests of the Class will be protected and advanced by the Proposed Class Representatives because their claims and interests are identical to those of the absent Class Members.  Thus, as the Proposed Class Representatives advance evidence to prove their claims, their effort will simultaneously advance the interests of the Class.

Second, Lead Plaintiffs have retained counsel with considerable experience in securities class actions and complex litigation.  Among the factors to be considered in determining the adequacy of counsel for the class are the attorneys' experience, skills, acumen, resources and staff, reputation in the field, and performance in the litigation to date.  *United States Trust Co. v. Alpert*, 163 F.R.D. 409, 422 (S.D.N.Y. 1995).  As set forth in the firm resumes attached as Exhibits A, B, C and D to the accompanying declaration of Erin Green Comite, the law firms of Scott + Scott, LLC, Johnson & Perkinson, Stull, Stull & Brody, and Schatz & Nobel, PC have successfully prosecuted numerous securities, consumer and other complex class actions in courts throughout the United States.  Accordingly, the adequacy requirements of Rule 23(a)(4) are satisfied.

## C.        The Requirements Of Rule 23(b)(3) Have Been Met.

The requirement of Rule 23(b)(3) has two prongs:  (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The issues of predominance and superiority are not amenable to a bright line

test.  Rather, the key inquiry turns on whether class certification will ensure economies of time and money by allowing a few representatives to proceed on behalf of a larger whole, such that a class action is the most efficient method of proceeding.  *In re Lilco Sec. Litig.,* 111 F.R.D. 663, 668 (E.D.N.Y. 1986); *see also Advisory Committee Note to the 1966 Revision of Rule 23*, 39 F.R.D. 69, 104 (1966).  The facts of this case satisfy both prongs of Rule 23(b)(3).

### 1.    <u>Questions Of Law And Fact Common To The Class Predominate</u>.

The predominance requirement is generally found to be satisfied when "common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . . "  7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1778 at 528 (2d ed. 1986).  Further, courts "generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 206 (S.D.N.Y. 1995) (internal quotations omitted).  Accordingly, securities fraud cases are typically found to satisfy this requirement, since defendants' liability to the entire class will be based on a common course of conduct, and certification should not be denied merely because individualized proof of damages will be required.  *See In re Lilco*, 111 F.R.D. at 668; *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *37 (E.D.N.Y. Apr. 23, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."); *Dolgow v. Anderson*, 43 F.R.D. 472, 491 (E.D.N.Y. 1968).

Further, the possibility of individualized proof of reliance is not an impediment to certification. *See Green*, 406 F.2d at 301; *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F. Supp. 718, 752 (E.D.N.Y. 1986). Here, the Proposed Class Representatives enjoy the benefit of the "fraud on the market" presumption, which presumes that: (a) the alleged misrepresentations, so long as they are material, will inflate the value of the Company's securities, and (b) plaintiff and all members of the Class relied upon the integrity of the market for those securities. *See Basic*, 485 U.S. at 241; *Ceres Partners v. GEL Assocs.,* 918 F.2d 349, 360 (2d Cir. 1990). As such, even reliance is a common issue in the present case.

As set forth above, the central focus of this litigation will involve Defendants' dissemination of materially false and misleading statements about Priceline's business model and the profitability and future prospects of its WebHouse affiliate. The uniform applicability of such liability issues is "readily susceptible to class-wide proof." *In re Baldwin-United*, 122 F.R.D. at 427*; In re Prudential*, 163 F.R.D. at 207 ("'[I]t would be folly to force each [investor] to prove the nucleus of the alleged fraud again and again.'" (quoting *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,* 140 F.R.D. 425, 431 (D. Ariz. 1992)). Thus, common questions plainly predominate in this action. The Complaint's allegations regarding the Defendants' false statements and omissions constitute the type of "common course of conduct" claim that fits well within the Second Circuit standards for class certification under Rule 23(b)(3). *See Green*, 406 F.2d at 300-301.

### 2. A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of The Controversy.

Among the issues to be considered in determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy are: (1) the interests of individual members in controlling the action; (2) the extent and nature of any

litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *See In re Blech,* 187 F.R.D. at 107.

First, individual members do not have an overriding interest in controlling the action. A consideration of paramount importance here is that the amount of damages suffered by the vast majority of Class members is too small -- compared to the cost of the litigation -- to justify the expense of individual litigation. Indeed, as has been noted:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims.

*In re Blech*, 187 F.R.D. at 107; *see also Korn*, 456 F.2d at 1214.

Although some Class members may have suffered damages substantial enough that it might be economically viable for them to bring their own suits, this fact does not support a finding that Class members have an interest in individually "controlling" the litigation under Rule 23(b)(3). As one commentator has noted, and as the above-cited cases demonstrate, the reference in Rule 23(b)(3) to the interest of individual class members in controlling the litigation relates to the interests of most or all of the Class members -- rather than the interests of only a few -- since if only a small fraction of the Class has an interest in controlling the litigation, they may serve their interest by opting out of the suit. 1 H. Newberg, *Newberg on Class Actions* § 4.29 at 332 (3d ed. 1992).

Moreover, there is no litigation concerning the controversy commenced by individual members of the Class other than as putative class actions. *See Notes of the Advisory Committee*,

39 F.R.D. at 104.  Indeed, as far as lead plaintiffs are aware, all litigation arising out of the

defendants' dissemination of false and misleading statements to the class is pending in this

action.  Thus, there is no evidence of significant interest on the part of absent class members in

controlling the litigation.

Additionally, it is desirable to concentrate the litigation in one forum since inconsistent

adjudications will thereby be avoided, and because, as discussed above, virtually all shareholders

would find individual litigation cost prohibitive.  Finally, there is no evidence that this action

will pose any unusual problems of manageability in the future.  Indeed, Lead Counsel, who have

substantial experience in class action litigation in this District and elsewhere, do not anticipate

any significant or unusual difficulties in the management of this litigation.  Without a factual

basis for such a determination, speculation as to the possible unmanageability of this class action

would be an inadequate basis for refusing certification.  *Simon v. Westinghouse Elec. Corp.,* 73

F.R.D. 480, 487 (E.D. Pa. 1977).

Thus, it is clear that securities suits such as this one satisfy the superiority requirement of

Rule 23.  Most violations of the federal securities laws, such as those alleged in the Complaint,

inflict economic injury on large numbers of geographically dispersed persons to such an extent

that the cost of pursuing individual litigation to seek recovery is not feasible.  Under such

circumstances, the alternatives to a class action are either no recourse for thousands of investors

or a multiplicity of scattered suits resulting in the inefficient administration of litigation that

follows.  The superiority of a class action in securities cases, which generally involve investors

who lack the ability to litigate their claims on a case-by-case basis, is well recognized.  *See In re

Blech*, 187 F.R.D. at 107 (holding the superiority requirement satisfied as "[m]ultiple lawsuits

would be costly and inefficient" and "although a large number of individuals may have been

injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf"); *Bresson v. Thomson McKinnon Sec. Inc.,* 118 F.R.D. 339, 345 (S.D.N.Y. 1988) (average investment of $8,600 would probably not be deemed sufficient to justify individual actions); *Genden,* 114 F.R.D. at 53 (noting that in "an action such as this one where the claims are numerous and relatively small, individual claimants are unlikely to take on the burden and cost of litigation. The superiority of the class action in such cases is beyond dispute.").

In short, as the Second Circuit has recognized, the class action is superior to other available methods -- particularly the alternative of multiple, duplicative individual lawsuits -- for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green,* 406 F.2d at 296. In the present case, as with the cases cited above, there are a large number of injured individuals, many with damage claims too small to justify the expense of individual actions, and each of whom seeks to assert effectively identical claims against Defendants. Because the requirements of Federal Rule of Civil Procedure 23 are fully satisfied, the proposed Class should be certified.

## <u>CONCLUSION</u>

For the foregoing reasons, the Proposed Class Representatives respectfully request that the Court grant their motion for class certification.

Dated: January 7, 2005                          Respectfully submitted,

_____        _____
SCOTT & SCOTT, LLC                      JOHNSON & PERKINSON
David R. Scott (ct16080)                Dennis J. Johnson
Geoffrey M. Johnson                     Jacob B. Perkinson
Erin Comite (ct24886)                   Peter J. McDougall
108 Norwich Avenue                      1690 Williston Road
P.O. Box 192                            P.O. Box 2305
Colchester, CT  06415                   South Burlington, VT 05403
Telephone: (860) 537-5537               Telephone: (802) 862-0030
Facsimile: (860) 537-4432               Facsimile: (802) 537-4432

                                        STULL, STULL & BRODY
                                        Jules Brody
                                        Aaron Brody
                                        6 East 45th St.
                                        New York, NY 10017
                                        Telephone: (212) 687-7230
                                        Facsimile:  (212) 490-2022

                                        **Co-Lead Counsel**

                                        SCHATZ & NOBEL
                                        Andrew M. Schatz
                                        Jeffrey S. Nobel
                                        One Corporate Center
                                        20 Church Street, Suite 1700
                                        Hartford, CT 06106
                                        Telephone:  (860) 493-6292
                                        Facsimile (860) 493-6290

                                        **Liaison Counsel**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 7, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

_____

Erin Green Comite

## SERVICE LIST

Dennis J. Johnson, Esquire
Jacob B. Perkinson, Esquire
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
330 Main Street
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Martin Glenn
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036

Joseph L. Clasen
William Kelleher
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
Christine Arena
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Douglas C. Conroy
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9Th Floor
Stamford, CT 06901