## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

In Re: Priceline.com            :    Master File No.
Securities Litigation          :    3:00cv1884 (DJS)
--------------------------------------------------------- : 

This document relates to:         :

       ALL PENDING ACTIONS    :    March 9, 2005
                                          :

## DEFENDANTS' MOTION TO COMPEL DISCOVERY
## OF PLAINTIFFS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

       Defendants priceline.com Incorporated ("priceline.com"), N.J. Nicholas,

Daniel H. Schulman, Richard S. Braddock and Jay S. Walker (collectively, the

"Defendants"), pursuant to Local Civil Rules 7 and 37, and Rules 37(a), (b) and 16(b),

(f), Fed. R. Civ. P., respectfully move the Court for an Order compelling plaintiffs to

produce documents and information, and otherwise fully and completely respond to

several document requests and interrogatories served by the Defendants.

       Defendants' motion is supported by the concurrently-filed Motion for

Expedited Treatment and Consideration, the within Memorandum of Law and the

Declaration of William J. Kelleher, III, together with its annexed Exhibits A through L

(the "Kelleher Decl."). As set forth in the Kelleher Declaration, as required by Local

Civil Rules 7(b) and 37(a)(2), Defendants have conferred in good faith with plaintiffs'

counsel, through several letters and correspondence and by telephone, in an effort to

obtain the requested discovery but unfortunately have been unable to resolve all of the

discovery disputes. As a result of the meet and confer process, however, the parties have

been able to narrow somewhat the areas in dispute and, in this regard, plaintiffs have promised to supplement their responses accordingly.[1]

I.    **BACKGROUND**

Plaintiffs brought this lawsuit as a purported class action on behalf of all persons and entities that purchased or acquired securities of priceline.com between January 27, 2000 and October 4, 2000, the putative class period.  In their Consolidated Amended Complaint (the "Complaint"), dated October 29, 2001, plaintiffs[2] seek relief pursuant to various sections of the federal securities laws.  The Defendants served their respective Answers to the Complaint on December 23, 2004.

A.    **The Scheduling Order**

On October 20 and 25, 2004, the parties' held their initial planning meetings in accordance with Rule 26(f).  The parties' Rule 26(f) Report specifically contemplated discovery and depositions directed to class certification issues.  Based on that Report, on November 2, 2004, the Court entered a Scheduling Order which, among other things, essentially adopted the Defendants' position on class certification discovery and established certain deadlines relative to class certification.  Exh. B, Kelleher Decl.

---

[1] Plaintiffs have promised to supplement and/or clarify certain of their responses to documents requests and interrogatories.  See Exh. A, Kelleher Decl.  As a result of those assurances, Defendants do not include those requests and interrogatories as bases for their Motion.  However, should plaintiffs not provide the information, or continue to respond inadequately, Defendants reserve the right to supplement and include these matters as additional grounds for the Motion.  Plaintiffs stated during the meet and confer that they would produce supplemental materials on March 4.  As of March 8, Defendants still had not received any supplemental materials.

[2] Lead plaintiffs were then identified as: Amerindo Investment Advisors, Inc., Illiana Ilieva, Leisinger Pension Fund, Mark Weiss, Marilyn Egel and Joseph Wilenkin.  Amerindo Investment Advisors previously withdrew as a lead plaintiff.  Of the remaining lead plaintiffs, only Weiss, Egel, Wilenkin and the Leisinger Pension Fund have now been proffered as class representatives.

at 3, ¶ 9. Insofar as relevant here, the Scheduling Order required plaintiffs to file their motion seeking class certification by January 7, 2005, which they have done. Therein, plaintiffs identified eight proposed class representatives as follows: John S. Anderson, the Leisinger Pension Fund, Lance B. Orr, R. Warren Ross, Mark Weiss, Marilyn D. Egel, Joseph Wilenkin and Sharon Tsai. Last week, plaintiffs' counsel informed Defendants that they were withdrawing plaintiffs Orr and Tsai as proposed class representatives. See Exh. A, Kelleher Decl. Therefore, there are now six proposed class representatives: Anderson, the Leisinger Pension Fund, Ross, Weiss, Egel and Wilenkin.

Notably, the Scheduling Order also permitted Defendants 90 days after the filing of the class certification motion to conduct class certification-related discovery and to file their opposition to such motion by April 8, 2005, with any reply brief by plaintiffs to be filed by May 9, 2005. Exh. B, Kelleher Decl. Plaintiffs have thus long been on notice that class certification discovery and depositions were going to be an integral part of the early stages of this case and that Defendants would be seeking such discovery.

### B.  Defendants' Discovery Requests

On November 15, 2004, Defendants served the plaintiffs with a Combined First Sets of Requests for the Production of Documents and Interrogatories (the "First Requests"). Exh. C, Kelleher Decl. The document requests and interrogatories, consisting of sixteen document requests and ten interrogatories, seek documents and information that are routinely provided in a securities class action case and directly relevant to the threshold issue of class certification. See id. (e.g., Document Requests Nos. 5 & 11-13).

Plaintiffs served their responses to the First Requests on or about January 10, 2005. See Exh. D, Kelleher Decl. In response to the document requests,

3

plaintiffs asserted a host of generic, boiler-plate, and largely inapplicable, objections. Id. Their interrogatory responses were, likewise, inadequate, incomplete and consisted primarily of objections. A total of 57 pages of documents were attached to their respective interrogatory responses, many of which were altered and redacted, and which plaintiffs now claim constitute their production of documents as "kept in the usual course of business." See Exh. A at 5, Kelleher Decl. (March 1, 2005 letter).[3] In addition, on January 10, 2005, plaintiffs produced a one-page article (apparently from an edition of Worth magazine), from proposed class representative Ross that mentions priceline.com in one paragraph. Exh. D, Kelleher Decl.

After reviewing plaintiffs' motion for class certification, Defendants served plaintiffs with a Combined Second Sets of Requests for the Production of Documents and Interrogatories on January 19, 2005 (the "Second Requests"). The Second Requests more specifically targeted documents and information relevant to plaintiffs' pending motion for class certification. See Exh. E, Kelleher Decl. Like the First Requests, the Second Requests consisted of routine document requests and interrogatories for a case of this type, and asked for information that plaintiffs and their counsel should have already collected for purposes of this litigation.

Plaintiffs served their responses to the Second Requests on or about February 18, 2005. See Exh. F, Kelleher Decl. As with their responses to the First Requests, plaintiffs' interrogatory responses were again comprised almost entirely of inadequate and incomplete responses, and numerous boiler-plate objections. Id. In

---

[3] The 37 pages constituting Exhibit A to Weiss and Egel's responses were not provided until February 18, 2005. This discussion excludes 4 pages of documents attached to the responses of Tsai and Orr, who were later withdrawn as proposed class representatives.

addition to various objections, in response to the document requests, plaintiffs stated either that they had no responsive documents or that they had no "responsive documents which have not already been produced to Defendants," despite the fact that they had previously produced only a handful of documents. Id. In fact, other than supplying a missing attachment from earlier responses and résumés for five of the proposed representatives, plaintiffs failed to provide any additional documents in response to the Second Requests.

Thereafter, Defendants sent letters to plaintiffs regarding the deficiencies in their discovery responses (on February 14 and 25, 2005) in an attempt to identify their shortcomings and resolve the issues. See Exh. G, Kelleher Decl.[4] On the related matter of the depositions of proposed class representatives, Defendants specifically pointed out that acceptance of possible deposition dates for the representatives was contingent upon receiving full and complete discovery responses in sufficient time to prepare for those depositions. See id. (letter of February 25, 2005). Defendants also notified plaintiffs that if sufficient compliance with the discovery requests was not received, Defendants would move the Court to compel their compliance and adjourn any scheduled deposition dates. Id. By letters of February 25 and March 1, 2005, plaintiffs' counsel responded and also proceeded for the first time to raise perceived deficiencies in Defendants' discovery responses. See Exhs. A & I, Kelleher Decl.

On March 1, 2005, just four business days before the first class representative deposition was scheduled to start, plaintiffs finally informed Defendants

---

[4] Defendants had previously requested, and then continued to follow up in good faith with plaintiffs' counsel for, deposition dates during the weeks of March 7 and March 14 for all of the then proposed class representatives. See, e.g., Exh. H, Kelleher Decl. (letters of January 19 and February 1, 2005).

that they would be supplementing or clarifying <u>some</u> of their responses and interrogatory responses, but that they were still objecting to or refusing to provide several categories of documents or responses to interrogatories. Exh. A, Kelleher Decl. (letter of March 1, 2005). They confirmed this position in the March 2 meet and confer. In the conference, plaintiffs indicated merely that they would attempt to supplement certain discovery responses, and hopefully produce some documents responsive to those requests that had not been objected to by Friday March 4, 2005, but did not provide a date certain by which they would supplement. To date, Defendants have not received any additional discovery from plaintiffs, either by way of responsive documents or substantive interrogatory responses in response to the First Requests or the Second Requests.

During the March 2 meet and confer (and a follow up telephone conference on March 3), Defendants suggested to plaintiffs that given the outstanding discovery, the parties agree, subject to Court approval, to modify the Scheduling Order to allow for more time to complete the class-related discovery and for the parties to complete the briefing on the motion for class certification. Defendants sought plaintiffs' consent to such a modification, but plaintiffs' counsel insisted on going forward with depositions of class representatives despite the outstanding discovery issues. Defendants informed plaintiffs that if those depositions had to proceed, Defendants would conduct the depositions while reserving their right to re-open and seek costs if additional responsive information was obtained as a result of this motion. Exh. J, Kelleher Decl. (letter of March 3, 2005). In response, Plaintiffs represented only that they would be supplementing certain of their discovery responses by last Friday, March 4, but that some of their supplementation and responses would "spill over" beyond that date. <u>See</u> <u>id.</u>

Plaintiffs have not provided a date certain when they will produce all of their outstanding responses and documents for the class representative depositions, and no such supplemental responses on production have been received as of the date of this motion. See id.

Defendants deposed R. Warren Ross on Monday, March 7. Mr. Ross's deposition testimony revealed that he possesses, but has not produced, a number of responsive, non-privileged documents. Those documents include quarterly brokerage account statements reflecting his investments in priceline and correspondence between him and the SEC regarding priceline. Accordingly, Mr. Ross's testimony suggested that plaintiffs' counsel have not only withheld documents responsive to requests that they find objectionable, but have also failed to conduct an adequate search for documents responsive to the remainder of Defendants' requests.

Depositions of proposed representatives John Anderson and Leisinger Pension Fund are scheduled for March 14 and March 16, respectively. Plaintiffs' counsel still has not provided agreeable dates for the depositions of Mark Weiss and Marilyn Egel.[5] A tentative date of March 22 has been proposed for the deposition of Joseph Wilenkin.

---

[5] All of the proposed class representatives are being deposed in Connecticut or New York City. However, Weiss and Egel have refused to travel to the forum in which they brought suit and insist on being deposed in Chicago. As a matter of professional courtesy, Defendants are prepared to travel to Chicago to depose Weiss and Egel. But plaintiffs have not provided dates on which Defendants can make that accommodation. Defendants are therefore considering noticing the depositions of Weiss and Egel in Connecticut, as they are entitled to do under the law. See In re SciMed Sec. Litig., Civ. No. 3-91-575, 1992 WL 413867, at *1-*2 (D. Minn. 1992); Minnesota Mining & Manuf. Co. v. Dacar Chem. Prods. Co., 707 F. Supp. 793, 795 (W.D. Pa. 1989).

In a letter sent to plaintiffs yesterday, Defendants again suggested that these upcoming depositions be postponed until _after_ the parties' dispute over class certification-related discovery has been resolved, especially in light of Mr. Ross's testimony suggesting that no adequate search has been made for responsive documents. Exh. L, Kelleher Decl. That same letter also discussed the parties' current negotiations regarding a modification of the class certification briefing schedule. Defendants are hopeful that the parties will be able to agree to a modification on the terms outlined in the letter.[6] If an agreement is not reached, however, Defendants will be forced to seek the Court's intervention.

II.    **ARGUMENT**

It is undisputed that plaintiffs have been on notice of the specific document requests, interrogatories and the class-related discovery here in dispute since at least as early as November 15, 2004, when Defendants served them with the First Requests and again on January 19, 2005 when Defendants served the Second Requests, and initially requested dates on which the proposed class representatives would be available for depositions. See Exhs. C, E & H, Kelleher Decl. Yet, only on the eve of class representative depositions did plaintiffs finally promise to supplement their discovery, and even then only as to some of their responses. At plaintiffs' insistence, Defendants agreed to proceed with the earliest scheduled deposition on Monday, March 7, while reserving their right to re-open it and seek costs if additional responsive information is obtained as a result of this Motion. See Orrinson v. Balcor Co., et al., 132

---

[6] Defendants are willing to agree to a fixed 30-day extension of the class certification briefing schedule, provided that such stipulation expressly acknowledges that the parties may agree to, or seek from the Court, additional extensions of time depending on how quickly the court rules on this Motion to Compel, and/or how quickly plaintiffs comply with any Court order that may result from this Motion to Compel.

F.R.D. 202 (N.D. Ill. 1990) (granting securities class action defendants a second

deposition of plaintiff on class certification issues because defendants did not have

sufficient opportunity to review plaintiff's documents prior to deposition).  Thus, here,

we seek the Court's assistance to obtain the documents and information necessary to test

the appropriateness of class certification.

   Plaintiffs' staunch resistance to producing responsive documents and

complete interrogatory responses is particularly troubling in light of the assertions in their

Complaint – filed <u>nearly four years ago</u> – that they had collected and reviewed

"approximately <u>30,000 pages</u>" of priceline.com related documents and information.

Complaint ¶ 237 (emphasis added).  None of those documents, however, have been

produced, nor essentially, any of the other documents that Defendants have requested.

Plaintiffs' continuing refusal and repeated objections to providing routine discovery is

impeding Defendants' ability to prepare their defense of this action and respond to the

pending motion for class certification.  Court intervention is necessary.

  A.  **The Discovery Sought is Routine For a Securities Class Action**

   As an initial matter, the document requests and interrogatories Defendants

have propounded are standard in securities fraud class actions at this stage of the

proceeding.  <u>See, e.g.</u>, <u>Connett v. Justus Enterpr. of Kansas, Inc., et al.</u>, 125 F.R.D. 166

(D. Kan. 1988) (recognizing that class certification discovery is necessary in many cases

and granting continuance for defendants to depose plaintiff on class issues in order to

respond to motion for class certification); <u>SciMed Life Sec. Litig.</u>, 1992 WL 413867

(ordering plaintiffs in securities class action to respond fully to several of defendant's

document requests and interrogatories, and denying plaintiffs' motion for a protective

order as to class representative depositions) (citing numerous cases); <u>cf. Chateau De Ville</u>

9

Prods., Inc. v. Tams-Witmark Music Library, Inc., 586 F.2d 962 (2d Cir. 1978) (noting that class certification discovery should normally be allowed when there is factual information as to certification that is needed by defendants to oppose class certification). Moreover, "[d]iscovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation." Gray v. First Winthrop Corp., 133 F.R.D. 39, 41 (N.D. Cal. 1990).

Nevertheless, to date, the proposed class representatives have produced a total of only 64 pages (often incomplete and/or altered). Otherwise, they have interposed various objections to Defendants' document requests and interrogatories. As Defendants explain below, the requests are plainly relevant and the objections raised by plaintiffs are equally plainly improper.

**B.    Defendants Seek Discoverable Documents and Information and Plaintiffs' Objections Are Unjustified**

1.    Document Request Nos. 1 and 2

Document Request No. 1 seeks documents collected or received in connection with plaintiffs' investigation of the allegations in the Complaint. Plaintiffs assert that they have no documents responsive to this request that are not protected by the attorney-client privilege or the work product doctrine. Plaintiffs' own allegations, however, belie that assertion. In paragraph 237 of their Complaint, for example, plaintiffs describe a variety of non-privileged documents that they collected or received in connection with their investigation of the allegations, including SEC filings, analyst reports, "internal Company memoranda, correspondence, and other internal Company

documents". (See Complaint ¶ 237).[7] Contrary to plaintiffs' assertions, those documents are not entitled to work product protection.

As the Eighth Circuit has stated, "[d]ocuments are not protected under the work product doctrine . . . merely because [a] party transferred them to their attorney". Petersen v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992) (distinguishing the entire set of documents transferred to an attorney from any particular selection of documents by that attorney). In re Grand Casinos, Inc. Sec. Litig., 181 F.R.D. 615 (D. Minn. 1998), the court considered a document request very similar to the one here that was served to plaintiffs in a securities class action. The court held that plaintiffs were required to produce "all documents in their possession, which concern matters of historical fact, and which either add or detract from the claims and allegations of the Plaintiffs' pleadings". 181 F.R.D. at 622. Similarly, in another securities class action, In re Gupta Corp. Sec. Litig., No. C-94-1517 FMS, 1995 U.S. Dist. LEXIS 21847 (N.D. Cal. July 14, 1995), the court explained that "[i]f potential witnesses provide counsel with evidence or facts that are relevant, and if an opposing lawyer ends an interrogatory asking for the relevant evidence or facts, then a lawyer must provide that evidence or those facts directly". 1995 U.S. Dist. LEXIS 21847, at *4. Thus, although Gupta is cited by plaintiffs in their March 1 letter (Exh. A, Kelleher Decl.), it completely contradicts their position. As these cases demonstrate, just as facts themselves are not protected by the work product doctrine and do not acquire such protection merely because an attorney memorializes them in a document, so too do evidentiary documents

---

[7] Mr. Ross testified that he possesses correspondence between himself and the SEC regarding priceline. That correspondence is plainly responsive to Request No. 4 and/or No. 15 and yet has not been produced.

11

remain discoverable even when they become a part of an attorney's file. See Grand Casinos, 181 F.R.D. at 622.

Document Request No. 2 seeks documents concerning plaintiffs' communications with any person in connection with any investigation of the allegations in the Complaint. Plaintiffs object that they have no documents responsive to this request that are not protected by the attorney-client privilege, the work product doctrine, or the "investigative privilege"[8]. Given plaintiffs' counsel's flawed interpretation of the work product doctrine, as set forth above, Defendants believe that plaintiffs may be withholding non-privileged, responsive information on the basis of this objection. To be clear, Defendants are not seeking documents that reveal attorney-client communications or the mental impressions of counsel. Rather, documents responsive to this request would include, inter alia, documents reflecting communications among plaintiffs themselves or with other non-lawyers regarding the allegations in the Complaint. Such documents are not entitled to privilege or work-product protection. And they may bear on both the merits of plaintiffs' allegations, and, of more immediate importance, on plaintiffs' ability to satisfy the prerequisites for class certification. Documents reflecting communications among a plaintiff and another non-lawyer might reveal, for example, the plaintiff's motivations for bringing suit and his/her willingness to manage the litigation actively.

---

[8] Defendants are not aware of any "investigative privilege" that would be applicable to plaintiffs' documents, and despite our inquiry, plaintiffs have not provided any clarification of what they mean.

2.     Document Request Nos. 5 and 7

Document Request No. 5 seeks all documents concerning the investment policies or practices of plaintiffs. Document Request No. 7 is closely related and seeks documents sufficient to show the composition of the investment portfolios of each of the proposed class representatives throughout the alleged Class Period. As Defendants' counsel explained during the meet and confer, plaintiffs' overall investment policies and practices are relevant both to the merits of their securities fraud claim and to their pending motion for class certification. This discovery is relevant, inter alia, to (1) whether plaintiffs actually relied on Defendants' alleged misrepresentations and omissions; (2) whether any potential application of a presumption of reliance is rebuttable on the facts and circumstances here; and (3) whether the proposed class representatives are adequate and typical. Plaintiffs have persisted with their objection that these requests are irrelevant to the extent that they seek information regarding plaintiffs' non-priceline investments because, they say, plaintiffs claims are based on the fraud on the market theory. That objection is unjustified.

Reliance is an element of a securities fraud claim. See Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005). Plaintiffs have alleged both direct reliance and a presumption of reliance under the fraud on the market theory. See Complaint ¶ 208 ("relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market . . . plaintiffs . . . acquired Priceline common stock") (emphasis added). The discovery Defendants seek pursuant to Request Nos. 5 and 7 is relevant to both of these theories.

13

First, plaintiffs' investment policies, practices and portfolios may defeat their claim of direct reliance. As the court explained in In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109 (S.D.N.Y. 1993), "[i]nvestor sophistication is . . . relevant to the issue of reliance in a traditional Rule 10b-5 claim" and "discovery relating to investment history is proper where direct reliance is alleged". Id. at 114. Plaintiffs' investment policies, practices and portfolios may reveal why, when and under what circumstances they invested in priceline and may thus reveal whether their investments had anything to do with the Defendants' alleged misstatements or were instead made for other reasons.

Second, plaintiffs' investment policies, practices and portfolios may rebut the presumption of reliance which they seek to invoke pursuant to their fraud on the market theory. It is well-settled that the presumption of reliance on the integrity of the market is rebuttable. Basic, Inc. v. Levinson, 485 U.S. 224, 248-50 (1988). In Harcourt, the court addressed a document request very similar to the one at issue here, and as here, plaintiffs argued that the use of the fraud on the market theory of reliance foreclosed such discovery. The court explained that "[i]t is axiomatic under Basic that non-reliance on the integrity of the market is critical in rebutting the presumption of reliance in a fraud on the market case", and held that "the investment history of a named plaintiff is relevant to a defense of non-reliance on the integrity of the market, and therefore discoverable". Id. at 114; SciMed Life Sec. Litig., 1992 WL 413867, at *2-3 ("Defendant . . . should have an opportunity to rebut the presumption, using information obtained through discovery of investment history and background."). Similarly, in Grand Casinos, 181 F.R.D. at 619-21, the court held that "information, which may be gleaned from the Lead Plaintiffs'

14

recent investment portfolios, and related materials, could evince that one or more of them were sophisticated investors, who either purchased, or might have purchased, [Defendant's] securities, notwithstanding their foreknowledge of the purported falsity of the Defendants' alleged misrepresentations".[9]

In addition to their relevance to the merits of plaintiffs' claim, plaintiffs' investment policies, practices and portfolios are also relevant to their pending motion for class certification. As one district court explained, securities plaintiffs' investment histories are discoverable because plaintiffs' "level of sophistication may subject them to unique defenses and render them atypical class representatives". In re ML-Lee Acquisition Fund II, L.P., 149 F.R.D. 506, 508 (D. Del. 1993). Similarly, in Harcourt, the court observed that "[a] named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class". 838 F. Supp. at 113. See also Greenspan v. Brassler, 78 F.R.D. 130, 132 (S.D.N.Y. 1978) ("Plaintiffs' possible reliance on another's expertise is sufficient to vitiate the typicality of their claims."); Cohen v. Laiti, 98 F.R.D. 581, 583-84 (E.D.N.Y. 1983) (plaintiff's investment strategy gave rise to unique defense where plaintiff "frequently speculated in inexpensive, lesser-known stocks with substantial growth potential"). Accordingly, the documents sought in Requests 5 and 7 are particularly important to Defendants' ability to conduct full and meaningful depositions regarding issues affecting class certification.

---

[9] In their March 1 letter, Plaintiffs cited Malanka v. Data General Corp., Civ. A. No. 85-2154-Me., 1986 WL 541, 837 (D. Mass. July 2, 1986) in support of their position. (Exh. A, Kelleher Decl.)  More recent cases, such as those cited above, have not followed Malanka.

3.     Document Request No. 11

Document Request No. 11 seeks documents concerning any action in which any plaintiff was put forth as a class representative. In response to Interrogatory No. 6, plaintiffs Weiss and Egel identified a securities action in which they were parties. From our brief research into that action, it appears that at least Mr. Weiss was put forward as a class representative. See Weiss v. Waterhouse Sec., Inc., 208 Ill. 2d 439 (Ill. 2004). Documents concerning this previous securities action are thus particularly relevant to the pending motion for class certification. Presumably, there was discovery in that action, including deposition testimony by Mr. Weiss, into precisely the issues bearing on his adequacy as a class representative that are currently before this Court. Nevertheless, plaintiffs continue to claim that they have no documents responsive to Request No. 11 in their custody or control. The law is well-settled that legal files in an attorney's possession are the client's property and must be surrendered upon request. See In re Grand Jury Proceedings, 727 F.2d 941, 944 (10th Cir. 1984); DeMassa v. Nunez, 770 F.2d 1505, 1507 (9th Cir. 1985); Martin v. Valley National Bank of Arizona, 140 F.R.D. 291, 321 (S.D.N.Y. 1991). Accordingly, Weiss and Egel can and must request files related to this action from their attorney in that matter and produce any non-privileged responsive documents contained therein in advance of their depositions.

4.     Interrogatory Nos. 7, 8 and 9

Interrogatory Nos. 7, 8 and 9 request, respectively, the identification of any person with whom plaintiffs or their counsel communicated in connection with the investigation of plaintiffs' allegations in the Complaint (No. 7), the identification of the unnamed persons referenced in specific paragraphs of the Complaint (No. 8) and the

16

identification and description of the documents reviewed by plaintiffs relating to the allegations in the Complaint (including the unspecified documents mentioned in particular paragraphs of the Complaint) (No. 9). Each of the responding plaintiffs[10] asserted that he/she has no responsive information to these interrogatories that is not protected by the work-product doctrine.

With respect to No. 7, Defendants emphasize that they are <u>not</u> seeking the identities of the persons whom plaintiffs' counsel interviewed in connection with the Complaint. Defendants acknowledge that requesting the identities of that subset of persons would not be proper.[11] Therefore, the cases cited by plaintiffs in their March 1 letter (Exh. A, Kelleher Decl.) are inapposite because, as Judge Scheindlin explained in <u>In re Initial Public Offering Sec. Litig.</u>, 220 F.R.D. 30 (S.D.N.Y. 2003), those cases "stand only for the proposition that a party may not specifically demand the identities of witnesses interviewed or relied upon by counsel". 220 F.R.D. at 35-36 (distinguishing <u>In re MTI Tech. Corp. Sec. Litig. II</u>, 2002 WL 32344347 (C.D. Cal. 2002), <u>In re Ashworth, Inc. Sec. Litig.</u>, 213 F.R.D. 385 (S.D. Cal. 2002), and <u>Elec. Data Sys. Corp. v. Steingraber</u>, 2003 WL 21653414 (E.D. Tex. 2003) on this basis).

Here, and similar to <u>Initial Public Offering</u>, Defendants are simply asking for the list of persons with whom plaintiffs or their counsel communicated in connection with their investigation of the allegations, <u>irrespective</u> of whether those persons provided any information that was used by plaintiffs or their counsel and <u>irrespective</u> of whether

---

[10] Although each plaintiff submitted separate responses to the interrogatories, each and every plaintiff responded to Interrogatory Nos. 7, 8 and 9 in the same way.

[11] Nor do Defendants seek the substance of plaintiffs' counsel's communications with any person.

those persons were interviewed by plaintiffs' counsel. The aim of No. 7 is "not the subset of people interviewed by counsel", id. at 36, and "[w]hile plaintiffs undoubtedly have interviewed some of [the] people [responsive to the interrogatory], there is no reason to believe they were all interviewed", id. at 35. See also Casson Constr. Co., Inc. v. Armco Steel Corp., et al., 91 F.R.D. 376, 385 (D. Kan. 1980) (work product protection did not shield from discovery persons from whom facts had been learned).

With respect to No. 8, Defendants seek very specific identities—namely, the identities of individuals referred or alluded to in the Complaint. Again, the cases cited by plaintiffs—MTI, Ashworth and Elec. Data—are inapposite because Defendants are not seeking the identities of every person whom plaintiffs have interviewed. Instead, Defendants are merely seeking the identities of individuals who are specifically described in the Complaint. In those circumstances, the one piece of information that is missing— the name of each such person—cannot be work product.

Substantial authority supports Defendants' position that the identities of such specifically mentioned persons are indeed discoverable. In In re Aetna Inc. Securities Litigation, No. Civ. A MDL 1219, 1999 WL 354527 (E.D. Pa. 1999), the court held that the identities of potential fact witnesses described with some particularity in the complaint were not attorney work product. See id. at *2-3. The court reasoned that because plaintiffs had already described the individuals and information they provided with particularity, the mere fact that those individuals were "interviewed by Plaintiffs' counsel during its investigation in anticipation of litigation" did not give the defendants any further insight into opposing counsel's thought processes. See id. at *3. Similarly, in In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631 (N.D. Ga. 2002), the court held that

the identity of an unnamed "senior supplier management employee" was not attorney work product. See id. at 633, 636. The court reasoned that disclosure of that information would not reveal plaintiffs' litigation strategy or disclose counsel's thought processes because the plaintiffs "have already revealed through their allegations what information was provided by the witnesses whose identity Defendants seek". Id. at 636; see also Miller v. Ventro Corp., No. C01-012875BA (EDL), 2004 WL 868202, at *2 (N.D. Cal. April 21, 2004) ("[b]ecause Plaintiffs chose to build their complaint on a foundation of statements from . . . twenty-two" confidential witnesses, the identities of such witnesses were directly connected to obtaining discoverable evidence and "would not reveal counsel's mental impressions or processes").

Here, plaintiffs have made numerous references and allegations in the Complaint to unidentified persons (see, e.g., Complaint ¶¶ 31, 41(b), 41(i), 81, 85(c)(ii) and 85(e)). And in their Rule 26(a) Initial Disclosures, plaintiffs have simply listed (with no other information), some 216 entities and people who might possess information regarding the allegations. Defendants cannot be expected to shoulder the undue burden of determining from among this vast group (which includes more than 100 corporate entities), which of them are referenced throughout the nearly 250 page Complaint.

With respect to No. 9, which concerns documents referred or alluded to in the Complaint, the same reasoning applied above to persons referred or alluded to in the Complaint is again applicable. As the court noted in Aetna, "the critical question is the extent to which the information discloses an attorney's thought processes". 1999 WL 354527 at *3. Here, "[p]laintiffs have already revealed through their allegations what information was provided by" the documents whose identification Defendants seek in

No. 9.  See Theragenics, 205 F.R.D. at 636; see, e.g., Complaint ¶¶ 37 (n.3), 130 (l) and

237.  Identifying the documents, therefore, will tell Defendants nothing about the mental

processes or legal theories of plaintiffs' counsel that is not already revealed by the

allegations themselves.

**CONCLUSION**

Defendants respectfully request that the Court expedite the review and

consideration of this Motion, and for the reasons set forth above compel plaintiffs to

produce all responsive, non-privileged documents and provide full and complete

interrogatory responses, as detailed herein, within ten (10) days of the filing and entry of

the Court's Order, see Local Civil Rule 37(a)(5),  and grant such other and further relief

as it deems just and proper.

Respectfully submitted,

DEFENDANTS PRICELINE.COM INC.,
N.J. NICHOLAS, DANIEL
SCHULMAN AND RICHARD
S. BRADDOCK

Joseph L. Clasen (ct04090)
William J. Kelleher III (ct22140)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone:  (203) 462-7500
Fax:  (203) 462-7599
jclasen@rc.com

OF COUNSEL:
Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
*Attorneys for Defendants*
*priceline.com Inc., N.J. Nicholas,*
*Daniel Schulman and Richard S. Braddock*


DEFENDANT JAY S. WALKER

Douglas C. Conroy (ct11555)
Paul R. Dehmel (ct23063)
PAUL, HASTINGS, JANOFSKY & WALKER,
LLP
1055 Washington Boulevard
Stamford, CT 06901
Telephone: (203) 961-7400
Fax: (203) 359-3031
douglasconroy@paulhastings.com
pauldehmel@paulhastings.com


J. Allen Maines (phv0013)
Carl W. Mullis
PAUL, HASTINGS, JANOFSKY & WALKER,
LLP
600 Peachtree Street, NE Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
Fax: (404) 815-2424
allenmaines@paulhastings.com
carlmullis@paulhastings.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was served this __9th__ day of

March, 2005 via Federal Express to the following counsel of record:

| Co-Lead Counsel | Liaison Counsel |
|---|---|
| David R. Scott, Esq.<br>James E. Miller, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:  860-537-3818<br>Fax:  860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:  212-687-7230<br>Fax:  212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Law Offices of Dennis J. Johnson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:  802-862-0030<br>Fax:  802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin  S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT  06103-3202<br>Tel:  860-493-6292<br>Fax:  860-493-6290 |

| | **Attorneys for Defendant Jay S. Walker** |
|---|---|
| | J. Allen Maines, Esq.<br>Carl Mullis, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA  30308<br>Tel:  404-815-2400<br>Fax:  404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>PAUL, HASTINGS, JANOFSKY &<br>WALKER, LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone: 203-961-7400<br>Fax:  203-359-3031 |
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Christine Arena, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel:  212-474-1000<br>Fax:  212-474-3700 | **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT  06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 |

William J. Kelleher, III