# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | **:** | |
| IN RE: PRICELINE.COM, INC. | **:** | |
| SECURITIES LITIGATION | **:** | |
| _____ | **:** | **MASTER FILE NO.** |
| | **:** | **3:00CV01844(DJS)** |
| This document relates to: | **:** | |
| | **:** | **March 14, 2005** |
| ALL ACTIONS | **:** | |
| | **:** | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANTS</u>

**SCOTT + SCOTT, LLC**
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

## TABLE OF CONTENTS

Page

INTRODUCTION                                                                 1

BACKGROUND                                                                   2

    A.    The Parties' Agreement Concerning The Scheduling Order     3

    B.    The Discovery Period Begins.                              3

    C.    Defendants Focus Exclusively On Class Discovery.          6

ARGUMENT                                                                     7

    A.    Defendants Have Tried To Gain A Tactical Advantage By Holding Onto Responsive Documents and Refusing To Produce A Privilege Log As Long As Possible.     7

    B.    Defendants Have Not Made A Good Faith Effort To Address Any Of Plaintiffs' Concerns About Defendants' Responses To Plaintiffs' Discovery Requests.     9

        1.    Defendants Have Placed Inappropriate Time Constraints On The Document Production And Interrogatory Responses.     10

        2.    Defendants Have Refused To Produce Highly Relevant Documents And Information Within Their Possession, Custody And Control.     11

            a.    Defendants Freely Exchanged Documents With Priceline WebHouse Club And Priceline Perfect Yard Sale In The Ordinary Course Of Its Business.     13

            b.    Jay Walker, As the Founder, Chairman, And Controlling Shareholder Of Walker Digital Has Access To Information In Walker Digital's Control.     15

        3.    Defendants Have Relied Entirely On Boilerplate Responses And Objections.     16

4.     Defendants Have Refused To Answer Several Of Plaintiffs'
Interrogatories.                                                    18

CONCLUSION                                                           21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Afros S.P.A. v. Drauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986)..................13

*Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984)................................15, 16, 18

*DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212 (S.D. Cal. 2001) ...............10

*Estate v. Bottle Rock Power Co.,* 2004 737463 (E.D. La. April 2, 2004) ...........13

*Fletcher v. Atex, Inc.*, 156 F.R.D. 45 (S.D.N.Y. 1994)...................................16, 18

*In Re Control Data Corp. Sec. Litig.*, 1988 WL 92085
(D. Minn. Feb. 22, 1988) ...............................................................................11

*In re In-Store Advertising Sec. Litigation*, 163 F.R.D. 452 (S.D.N.Y. 1995).......11

*In re Omeprazole Patent Litig.,* 2004 WL 187155
(S.D.N.Y. January 29, 2004) ........................................................................13

*Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494 (D. Md. 2000).............12, 13

*Saye v. Old Hill Partners, Inc.*, 2004 WL 1944024
(D. Conn. Aug. 31, 2004) ..................................................................15, 16, 18

*SEC v. Credit Bancorp Ltd.*, 194 F.R.D. 469 (S.D.N.Y. 2000) ...........................12

*Upton v. McKerrow*, 1996 WL 193807(N.D. Ga. Feb. 20, 1996) .......................10

## FEDERAL STATUTES

Fed. R. Civ. P. 26(b)(1)........................................................................................10

D. Conn. L. Civ. R. 37(a)(3) ..................................................................................9

## <u>INTRODUCTION</u>

Over the past several months, Defendants Priceline.com, Inc. ("Priceline"), N.J. Nicholas,

Daniel H. Schulman, Richard S. Braddock and Jay S. Walker (collectively, the "Defendants")

have delayed fact discovery to the point where fact depositions will not be able to start on April

1, 2005. Defendants waited to produce a single document responsive to Plaintiffs' document

requests until March 14, 2005 – the day this motion was filed. Defendants' sole production

consisted of only 6,000 pages, many of which appear to be publicly available documents.

Defendants' extreme delay is a clear violation of the Court's scheduling order, which provides

that fact discovery and class discovery are to proceed in tandem, with fact depositions beginning

April 1, 2005. Defendants also have not addressed concerns Plaintiffs have raised about

Defendants' responses to Plaintiffs' discovery requests. The disputed discovery issues include:

1)     The status of Defendants' document production, including the date when Defendants plan to finish the bulk of their document production;
2)     The date when Defendants plan to provide Plaintiffs with a privilege log;
3)     Whether the privilege log will be produced on a rolling basis along with the same production from which the documents are pulled;
4)     The steps that have been taken to ensure that responsive documents have been preserved;
5)     Whether Defendants plan to produce documents in the custody and control of Priceline WebHouse Club, Priceline Perfect Yard Sale and Walker Digital;
6)     Whether Defendants plan to withhold relevant documents or information on a time frame basis;
7)     Whether Defendants plan to withhold any documents on the basis of any of the boilerplate objections that they assert in response to the majority of Plaintiffs' discovery; and
8)     Whether Defendants plan to answer or supplement certain of their interrogatory responses.

Plaintiffs first raised issues concerning the document production as early as October

2004, when the parties started conferring about the scheduling order. Plaintiffs raised

deficiencies with the Defendants' responses to Plaintiffs' first set of discovery requests in letters

1

sent to Defendants on February 17 and 18, 2005.[1]  Plaintiffs have spent a considerable amount of time and effort addressing Defendants' concerns with Plaintiffs' discovery responses, but Defendants have unfortunately done nothing to address the concerns that Plaintiffs have raised about Defendants' document production and discovery responses.  Plaintiffs have set forth their position on these issues in letters and during telephone conversations, but have not been able to resolve these discovery issues, making this motion necessary.

## BACKGROUND

Plaintiffs brought this securities fraud class action against Defendants on behalf of all persons and entities that purchased or acquired Priceline securities between January 27, 2000 and October 4, 2000, alleging numerous violations of the federal securities laws.  On October 8, 2004, this Court denied in part and granted in part Defendants' motions to dismiss.  Comite Decl., Exhibit A.[2]  The Court left intact the entirety of Plaintiffs' securities fraud claims, including those under Section 10(b) and 20(a) of the Securities Exchange Act against the instant Defendants.  *Id.* at 21-47.  At the end of the Order, the Court directed the parties to submit a proposed discovery plan to the Court no later than October 29, 2004.  *Id.* at 54.  The Court also stated that the stay on discovery shall remain in effect until further order of the Court.  *Id.* at 54-55.

---

[1] Defendants have filed a motion to compel in which they state that "By letters of February 25 and March 1, 2005, plaintiffs' counsel responded and also proceeded ***for the first time*** to raise perceived deficiencies in Defendants' discovery responses."  Def. Mot. at 5 (citing to W. Kelleher Declaration).  Defendants' motion is not accurate.  Plaintiffs first raised concerns about the Defendants' responses to Plaintiffs' discovery requests in letters dated February 17 and 18, 2005.  These letters – as well as Plaintiffs' February 21, 2005 letter – were omitted from the materials Defendants submitted to the Court.  Plaintiffs' concerns about Defendants' discovery requests were also raised during several telephone conversations, beginning the week of February 21, 2005.

[2] Citation to "Comite Decl." refers to the Declaration Of Erin Green Comite In Support Of Plaintiffs' Motion To Compel Discovery From Defendants submitted contemporaneously herewith.

## A.    <u>The Parties' Agreement Concerning The Scheduling Order.</u>

Following the Court's ruling on the motions to dismiss, the parties held multiple telephone conferences to discuss the proposed discovery plan. Comite Decl. at ¶3. One of the main issues the parties discussed during these conference calls was whether class discovery and fact discovery would be staggered or whether they would proceed in tandem. Defendants wanted to complete all class discovery before Plaintiffs took any fact discovery, and Plaintiffs wanted all fact discovery, including fact depositions, to proceed in tandem with class discovery. After several lengthy discussions on this point, the parties were able to reach a compromise: fact discovery would proceed in tandem with class discovery, but Plaintiffs would hold off on taking fact depositions until April 1, 2005. *Id.* at ¶¶3-5.

The parties then submitted a proposed scheduling order to the Court that reflected the parties' compromise, providing that: "The parties agree that discovery, including class discovery, shall commence on November 15, 2004. *Fact discovery may be conducted concurrently with class discovery*." Comite Decl., Ex. C at 16 (emphasis added). The proposed scheduling order further provided: "The parties agree that depositions shall commence no earlier than April 1, 2005." *Id.* at 17. The parties' proposed scheduling order led the Court to enter a Scheduling Order that provided that: "Discovery, including class discovery and fact discovery, shall commence on November 15, 2004." Comite Decl., Ex. D. The Scheduling Order also provided that fact depositions were to begin on April 1, 2005. *Id.*

## B.    <u>The Discovery Period Begins.</u>

The parties exchanged their first set of discovery requests on or about November 15, 2004. Comite Decl., Exhibits E and F.[3] Before serving the Defendants with the discovery

---

[3] Plaintiffs provided the Defendants with a draft version of their document requests on November 5, 2004, ten days before the final version of Plaintiffs' discovery requests were sent to Defendants on November 15.

requests, Plaintiffs questioned Defendants about the upcoming document production. In

response, Defendants stated that, due to the labor-intensive nature of the document production,

Defendants planned to produce documents on a rolling basis. Finally, Defendants stated that

their full production would take several months. Comite Decl. at ¶8.

The parties exchanged their responses to one another's discovery requests in January

2005. Despite Defendants' earlier assertions that the document production would be produced

on a rolling basis and would take several months, Defendants produced no documents in

November 2004, December 2004, January 2005 or February 2005. On February 17, 2005,

Plaintiffs sent a letter to Defendants raising several specific concerns with Defendants' responses

to Plaintiffs' discovery requests. In that letter, Plaintiffs also stated:

> We are also concerned by the fact that you have yet to produce a single document
> in response to Plaintiffs' first set of document requests. This is particularly
> troubling in light of the Court's Scheduling Order, which provides that
> depositions shall commence on April 1, 2005. We believe that documents
> responsive to the requests should be produced well in advance of April 1st – so
> that we have time to review the documents before we start taking depositions.
> We also need to receive a copy of your privilege log before April 1st. You have
> now had our document requests for over three months. Please let us know by the
> close of business on Friday, February 18th when you will start producing
> documents, when you plan to complete your document production and when you
> plan to send us your finalized privilege log.

Ex. K to Comite Decl. Defendants responded to this letter on February 18, stating that the

parties "can discuss during our meet and confer when we will be able to begin rolling our

production." Ex. M to Comite Decl. Defendants also stated: "[W]e cannot possibly commit to

completing our production of documents or finalizing our privilege log by April 1." *Id.*

Plaintiffs followed this up with another letter to Defendants on February 21, which stated that:

"We continue to urge Defendants that the document production issues demand immediate

---

Plaintiffs sent the Defendants these requests after Defendants claimed that they could not agree to the terms of a
confidentiality order until they had an opportunity to review Plaintiffs' document requests.

attention.  By the time we get to the meet and confer, you will have had a draft of our document requests for close to four months.  That is more than enough time to deliver a good portion of the documents to Plaintiffs."  Ex. N to Comite Decl.

Defendants responded to this letter on February 23, stating once again that Defendants' document production "will likely take several months and will not be completed by April 1." Ex. O to Comite Decl.  Plaintiffs again raised the document production issues in letters to Defendants dated February 25 and March 1 and during the parties' March 2, 2005 meet and confer.  Comite Decl. at ¶¶20-21 and Exhibits U and V.  To date, Defendants have provided Plaintiffs with no concrete information about the document production and have not told Plaintiffs when their production or privilege log will start or be completed.  In fact, Defendants failed to produce a single document responsive to Plaintiffs' document requests until March 14, 2005 – the date this motion was filed.  The production consisted of a paltry 6,000 pages, many of which appear to be publicly available documents.  Defendants have also provided Plaintiffs with no information about the status of Defendants' privilege log.  *Id.* at ¶26.

Defendants also failed to address any of the specific concerns about the discovery responses that Plaintiffs first raised in their February 17 and 18 letters.  Defendants initially took the position that they did not need to tell the Plaintiffs their position on these issues prior to the parties' meet and confer.  Comite Decl., Ex. T.  Defendants eventually sent Plaintiffs a letter purporting to "narrow" the issues for the meet and confer.  Comite Decl., Ex. P.  This letter reiterated the objections that Defendants initially made when responding to Plaintiffs' discovery requests.  At the parties' meet and confer, Defendants once again stated that they were sticking to their earlier objections, thereby foreclosing any further discussion on these issues.  Tellingly, on many issues, Plaintiffs were asking only for consistent treatment – *i.e.,* Plaintiffs asked

Defendants to agree to take the same position when responding to Plaintiffs' requests that Defendants had asked Plaintiffs to take when responding to Defendants' requests. Defendants would not agree to this proposal.[4]

### C.     Defendants Focus Exclusively On Class Discovery.

Even though Defendants previously agreed to conduct class discovery and fact discovery in tandem, Defendants have spent the entire discovery period to date focusing exclusively on their own discovery requests served on Plaintiffs. Defendants have been remarkably aggressive on this front. For instance, in one letter, Defense counsel suggested that Plaintiffs' counsel may have violated Rule 11 because – according to Defendants – there was no support for the allegations in the class certification motion or in the Complaint. Comite Decl., Ex. T. This is an unusual claim to make in a case where the Court has already found that the Complaint satisfies the heightened pleading requirements of the federal securities laws and where the claims asserted are universally recognized as appropriate for class certification. Comite Decl., Ex. A.

For their part, Plaintiffs provided Defendants with a time frame when Plaintiffs' document production would be finished and have provided Defendants with a privilege log. Ex. V to Comite Decl. Moreover, Plaintiffs have kept Defendants constantly apprised of the status of Plaintiffs' document review. *Id.* Finally, Plaintiffs have made a good faith attempt to address the issues Defendants raised in their February 14 and February 25 letters. Plaintiffs' position on

---

[4] A prime example of Defendants' refusal to take consistent positions is their position on the "time frame" issue. On February 14, Defendants sent Plaintiffs a letter asking them to confirm that no documents would be withheld "on a timeframe basis." In response, Plaintiffs sent Defendants a letter stating that: "We assure you that we have not withheld any documents on the basis of time frame, but have produced all documents that fall within the scope of Rule 26(b)(1), no matter when those documents were created." Plaintiffs also noted that they had raised an identical concern in their February 17 and 18 letters. Plaintiffs then stated that: "we expect you to take the same position on the 'time frame' issue when responding to our requests that you expect us to take when responding to your requests." At the meet and confer, Defendants stated that they had limited their search to approximately four months before and four months after the Class Period and refused to expand their search to the "Relevant Period" (January 1, 1999 to December 21, 2001) listed in Plaintiffs' document requests. As we discuss below, Defendants' "time frame" limitation will lead to the exclusion of highly relevant documents in this case.

each of these issues was set forth in great detail in their March 1 letter.  *Id.*  In that letter,

Plaintiffs offered compromises and concessions on several disputed issues.  On those issues

where the parties continued to disagree, Plaintiffs explained their position in detail and provided

the Defendants with case law to support their position.  *Id.*  Most of Defendants' issues – such as

Defendants' request to see the work product documents or Defendants' claim that attorney-client

privilege is somehow lost once a party withdraws from a lawsuit – are not close calls.

Nonetheless, Defendants have stayed on the attack, filing a motion to compel on those

few issues they continue to dispute.  The fact remains, however, that Plaintiffs have only today

received 6,000 pages of documents, and have not yet received a privilege log or a meaningful

response to any of their discovery concerns even though the parties previously agreed that fact

discovery and class discovery would proceed in tandem, with fact depositions starting on April 1.

## ARGUMENT

### A.    Defendants Have Tried To Gain A Tactical Advantage By Holding Onto Responsive Documents and Refusing To Produce A Privilege Log As Long As Possible.

As discussed above, Defendants originally wanted to stagger discovery in a way that

would allow Defendants to concentrate solely on class discovery before Plaintiffs were allowed

to take any fact discovery.  Ex. B to Comite Decl.  Plaintiffs would not agree to this proposal.

Defendants certainly could have raised this issue with the Court and set forth a separate position

in the proposed scheduling order, as they did with several of the other issues in the proposed

scheduling order.  However, Defendants agreed to compromise on this issue.  The parties'

agreement is spelled out in clear terms in the proposed scheduling order: class discovery and fact

discovery are to proceed in tandem, with the Plaintiffs holding off on fact depositions until April

1, 2005.  Ex. C to Comite Decl.  After agreeing to the proposed scheduling order, Defendants

have now unilaterally staggered the discovery schedule through the artifice of delay.

As of the filing of this motion, Defendants have failed to produce a single document responsive to Plaintiffs' document requests until March 14, 2005 – even though Defendants have had the first set of requests for four months and even though fact depositions are scheduled to begin in approximately three weeks.[5]  Defendants also have failed to provide Plaintiffs any concrete information about the status of their document production.  In addition, Defendants have refused to provide Plaintiffs with a date when the document production will be finished or a date when Plaintiffs can expect to receive Defendants' privilege log.  Defendants have also refused to produce their privilege log on a rolling basis.  Instead, it appears that Defendants plan to wait until the end of the discovery period before serving Plaintiffs with what will undoubtedly be a massive privilege log.

To remedy the situation, the Court should set specific deadlines for the production of documents and the completion of Defendants' privilege log.  All documents responsive to Plaintiffs' first and second set of discovery requests and the corresponding privilege log should be produced within twenty days of the Court's decision on this motion to compel.  This deadline is needed to ensure that Defendants do not engage in further delay.  Plaintiffs also need sufficient time to review and, if necessary, challenge any documents placed on Defendants' privilege log. As a practical matter, this will mean that many of the responsive documents and the privilege log will not be produced until well into April or May 2005.  A timely production of documents by Defendants is critical in light of the December 31, 2005 deadline for document discovery in this case.

Plaintiffs still intend to move forward with fact depositions starting April 1, 2005, in accordance with the parties' prior agreement and the Court's scheduling order.  To ensure that

---

[5] Defendant Walker has yet to produce a single document.  He has indicated that responsive documents will be produced around March 17, 2005.

Plaintiffs are not harmed by Defendants' delay in producing documents and the privilege log,

Plaintiffs also ask this Court to enter an order granting Plaintiffs leave to reconvene any

deposition that is taken before all documents responsive to Plaintiffs' outstanding discovery

requests are produced.  This order is needed to ensure that Defendants are not rewarded for their

failure to abide by the agreed-upon terms of the Court's Scheduling Order and their extensive

delay in producing documents and a privilege log.

**B.     Defendants Have Not Made A Good Faith Effort To Address Any Of Plaintiffs'
         Concerns About Defendants' Responses To Plaintiffs' Discovery Requests.**

Defendants also have not addressed any of the issues that Plaintiffs raised in their

February 17 and 18 letters to Defendants, other than to state that they are sticking by objections

initially made in response to Plaintiffs' initial discovery requests.[6]  Plaintiffs' concerns about

Defendants' responses to Plaintiffs' discovery requests include:

- Defendants' decision to place a narrow time limit on their production when Plaintiffs
  have requested all responsive documents and information from the entire "Relevant Time
  Period" (*i.e.,* January 1, 1999 to December 31, 2001);

- Defendants' refusal to produce documents within the custody and control of Priceline
  WebHouse Club, Priceline Perfect Yard Sale, and Walker Digital – even though
  Defendants have admitted that they have access to these documents and the documents
  fall within their custody and control;

- Defendants' assertion of boilerplate responses and objections to each of Plaintiffs'
  document requests and Defendants' refusal to provide further clarification about the
  boilerplate responses and objections or tell Plaintiffs whether Defendants intend to
  withhold documents on the basis of the boilerplate responses and objections;

- Defendants' refusal to respond at all to several of Plaintiffs' specific interrogatories,
  including Interrogatories 5, 10, 12, 13, 14, 16, 17, 20, 21 and 25.

---

[6] Defendants have raised the time-frame objection, custody-and-control objection and the boilerplate-
objections in response to each of Plaintiffs' document requests.  Thus, Plaintiffs have grouped these objections
together in accordance with Local Civil Rule 37(a)(3).  *See* D. Conn. L. Civ. R. 37(a)(3) ("Where several different
items of discovery are in dispute, counsel shall, to the extent possible, group the items into categories in lieu of an
individual listing of each item.").

1.       **Defendants Have Placed Inappropriate Time Constraints On The Document Production And Interrogatory Responses.**

Defendants have stated that they plan to place time constraints on their document production and on their responses to Plaintiffs' interrogatories.  Defendant Jay Walker has stated that he will limit the time frame for his production to the Class Period alleged in the Complaint – *i.e.,* January 27, 2000 to October 4, 2000.  Defendants Priceline, N.J. Nicholas, Richard S. Braddock and Daniel H. Schulman have stated that they plan to search for responsive documents "created during a reasonable amount of time before and after the Alleged Class Period."  Comite Decl., Ex. P.  During the parties' meet and confer, these Defendants explained that this meant they would search for responsive documents three or four months before and three or four months after the Class Period.   Defendants could not be persuaded to remove the time constraints during the meet and confer.

Defendants' decision to limit their production and interrogatory responses on a time frame basis conflicts with Rule 26(b)(1), which provides that a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  Indeed, courts have consistently held that plaintiffs are entitled to discover relevant documents created outside of the class period – particularly in a securities fraud action where documents created outside of the class period may bear on the defendants' fraudulent intent and knowledge about the alleged wrongdoing or may clarify or expound upon events that occurred during the class period.  *See, e.g.*, *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1223 (S.D. Cal. 2001) (statements made the year prior to the class period "may have evidentiary relevance to the issue of scienter and falsity because they may provide insight into what the defendant knew during the class period."); *Upton v. McKerrow*, 1996 WL 193807, at *4 (N.D. Ga. Feb. 20, 1996) (In a securities fraud action, the court "agrees with plaintiff that relevant

documents may have been created substantially prior to or after the proposed class period"); *In Re Control Data Corp. Sec. Litig.*, 1988 WL 92085, at \*3.  (D. Minn. Feb. 22, 1988) (class period "does not determine the period of relevancy for discovery purposes."); *In re In-Store Advertising Sec. Litig.*, 163 F.R.D. 452, 455 (S.D.N.Y. 1995) (overruling objection to providing documents created two years outside of the class period).

Here, Plaintiffs have asked for all responsive documents created from January 1, 1999 to December 31, 2001.  Responsive documents created during this period will bear on Defendants' fraudulent intent and/or knowledge about the wrongful conduct alleged in the Complaint. Documents created during this period will also bear on or reflect upon events that occurred during the Class Period.  Defendants can hardly claim that Plaintiffs' two-year "Relevant Period" is unreasonable – especially considering that Defendants themselves previously asked Plaintiffs to confirm that they have not withheld any documents "on a time frame basis."  Comite Decl., Ex. R.  Defendants should hold themselves to the same standards that they demand of the Plaintiffs and produce all responsive documents from January 1, 1999 to December 31, 2001.

**2.      Defendants Have Refused To Produce Highly Relevant Documents And Information Within Their Possession, Custody And Control.**

Defendants have indicated that they will not produce responsive documents and information within the possession, custody and control of Priceline WebHouse Club and Priceline Perfect Yard Sale.[7]  Priceline WebHouse Club is the now-defunct company that was formed by Defendants to market groceries and gasoline on Priceline's website.  Priceline Perfect Yard Sale is also a defunct company that was formed by Defendants to serve as Priceline's

---

[7] In a conversation on March 10, 2005, counsel for Defendant Jay Walker stated that he had searched some of the files within the custody and control of Walker Digital and some of the files within the custody and control of the Priceline WebHouse Club.  However, Walker's counsel could not confirm that all responsive documents had been obtained or that documents belonging to Walker Digital and/or the Priceline WebHouse Club had been appropriately preserved.  Comite Decl. at ¶25.

online auction site.  Similarly, Defendants have indicated that they will not be producing

responsive documents and information within the possession, custody and control of Walker

Digital (defined in Plaintiffs' requests to include both Walker Digital Corp. and Walker Digital,

LLC), which held Defendant Jay Walker's shares of the Priceline WebHouse Club.  Defendant

Walker is the founder, chairman and controlling shareholder of Walker Digital.

Defendants claim that documents and information in the possession of these three entities

need not be produced because the documents and information are outside of Defendants' custody

and control.  However, Defendants ignore the fact that Defendants Priceline and Jay Walker had

free access to documents at Priceline WebHouse Club and Priceline Perfect Yard Sale in the

ordinary course of business and had the ability to obtain documents from these entities upon

demand.  Likewise, Defendant Walker, as the founder, chairman, and controlling shareholder of

Walker Digital, has access to Walker Digital's documents and has the ability to obtain these

documents upon demand.  Thus, these documents are within the Defendants' custody and control

and – pursuant to Federal Rule of Civil Procedure 34 – must be produced.

### a.    Defendants Freely Exchanged Documents With Priceline WebHouse Club And Priceline Perfect Yard Sale In The Ordinary Course Of Its Business.

Rule 34 of the Federal Rules of Civil Procedure provides that a party served with a

document request must produce documents "in the possession or control of the party upon whom

the request is served."  The term "control" in Rule 34 "has been construed broadly by courts as

the legal right, authority, or practical ability to obtain materials sought upon demand."  *SEC v.*

*Credit Bancorp Ltd.,* 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000); *see also Poole ex rel. Elliott v.*

*Textron, Inc.,* 192 F.R.D. 494, 501 (D. Md. 2000) ("It is well established that 'control' under

Fed. R. Civ. P. 34 is to be broadly construed so that a party may be obligated to produce

documents requested even though it may not actually possess the documents.  As long as the

party has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have 'control.'").

Defendants claim that they need not produce documents and information belonging to Priceline WebHouse Club and Priceline Perfect Yard Sale because "Webhouse and Yard Sale were separate (and are now defunct) entities who licensed priceline's business model and had certain other arms-length contractual relationships with the company." Comite Decl., Ex. Y. Defendants also claim that they need not produce these documents because Priceline "did not hold any ownership interest in Webhouse or Yard Sale, nor did either of those two entities hold such an interest in priceline." *Id.* In making these claims, Defendants overlook the fact that the test for "control" under Rule 34 does not turn on the legal relationship or corporate form connecting two or more entities. *See, e.g., In re Omeprazole Patent Litig.,* 2004 WL 187155, at *1 (S.D.N.Y. January 29, 2004) ("[A]n entity need not have legal control over documents in order to be responsible for their production."); *Afros S.P.A. v. Drauss-Maffei Corp.,* 113 F.R.D. 127, 131 (D. Del. 1986) ("It is obvious that the particular form of the corporate relationship does not govern whether [a corporation] controls documents."); *Moore's Federal Practice & Procedure,* § 34.14[2][A][b] (2004 Supp.) ("The scope of 'control' under Rule 34, of course, is not limited to legal ownership of the requested documents, nor is actual possession necessary."). Instead, "[t]he applicable test is whether the litigant has the ability to obtain the documents on request to a related party, either as a matter of law or as a matter of practical fact." *Moore's Estate v. Bottle Rock Power Co.,* 2004 737463, at *10 (E.D. La. April 2, 2004).

Putting aside the facile claims of corporate separation (which Plaintiffs dispute), Defendants have the practical ability to obtain documents from Priceline WebHouse Club and Priceline Perfect Yard Sale. Indeed, Defendants freely exchanged documents with Priceline

WebHouse Club and Priceline Perfect Yard Sale in the ordinary course of their business.  For instance, Defendants received daily financial and operational reports from Priceline WebHouse Club and Priceline Perfect Yard Sale.  Defendants also placed several of their own executives and employees in high-level positions at Priceline WebHouse Club and Priceline Perfect Yard Sale.  And, most significantly, Defendants had the ability to access information from Priceline WebHouse Club and Priceline Perfect Yard Sale upon demand.  Accordingly, documents and information within the custody and control of Priceline WebHouse Club and Priceline Perfect Yard Sale must be produced.

> **b.**     **Jay Walker, As the Founder, Chairman, And Controlling Shareholder Of Walker Digital Has Access To Information In Walker Digital's Control.**

Defendant Jay Walker has taken a similar position with respect to the documents in the custody and control of Walker Digital – although recently Defendant Walker stated that some of the Walker Digital documents may be produced.  Comite Decl. at ¶25.  As the founder, chairman, and controlling shareholder of Walker Digital, Defendant Walker clearly has access to documents within Walker Digital's custody and control.  Plaintiffs asked Defendant Walker's counsel about this issue at the March 2 meet and confer.  In response, Walker's counsel stated that he did not know what Plaintiffs meant by Walker Digital.  Ex. BB to Comite Decl.  Plaintiffs tried in good faith to explain to Walker's counsel that Walker Digital had been defined in the discovery requests and the entity was referenced repeatedly throughout the Amended Complaint. Walker's counsel continued to profess confusion, stating that he did not know what Plaintiffs meant by Walker Digital.  *Id.*

Defendant Walker's position on this issue has no merit.  Defendant Walker is the founder, chairman and controlling shareholder of Walker Digital, LLC and Walker Digital Corp. Walker formed the companies himself and has personal control over documents within Walker

Digital's possession, custody and control.  He had the ability to obtain the Walker Digital

documents both in his corporate capacity and as the controlling shareholder of these entities.

The Walker Digital documents clearly fall within the scope of Rule 34 and therefore must be

produced.  Information pertaining to Walker Digital that Plaintiffs seek in the interrogatories also

must be produced.

### 3.     Defendants Have Relied Entirely On Boilerplate Responses And Objections.

Defendants have also relied entirely on boilerplate responses and objections to Plaintiffs'

discovery requests.  Moreover, Defendants have refused to clarify their boilerplate objections

and have not told Plaintiffs whether they plan to withhold documents and information on the

basis of such objections.  For instance, Defendants have simply stated, in response to nearly

every document request: "Subject to and without waiving these objections, Defendants will

perform a reasonable search for documents responsive to this request and will produce to

plaintiffs non-privileged documents that Defendants find."  Comite Decl., Ex. G.  Defendant Jay

Walker has engaged in similar tactics, relying entirely on boilerplate objections and then stating:

"Subject to the foregoing objections and the General Objections, Walker will perform a

reasonable search for and produce those non-privileged documents in his possession and control,

if any, that are found and that are responsive to this Request. "  Comite Decl., Ex. H.

Defendants' boilerplate objections and hide-the-ball tactics are inappropriate and conflict

with the letter and the spirit of the Federal Rules.  Indeed, numerous courts have held that "[t]he

party resisting discovery bears the burden of demonstrating that its objections should be

sustained, and pat, generic, non-specific objections, intoning the same boilerplate language, are

inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure."  *Saye v.

Old Hill Partners, Inc*., 2004 WL 1944024, at *2 (D. Conn. Aug. 31, 2004); *see also Compagnie*

15

*Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16,

42 (S.D.N.Y. 1984) (explaining that, to prevail on its objection, the objecting party must do more

than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or

overly broad"); Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed.

1994) (citing cases).

Instead of relying on boilerplate objections, an objecting party "must clearly set forth the

specifics of the objection and how that objection relates to the documents being demanded."

*Saye,* 2004 WL 1944024, at *2; *Phillips Petroleum Co.,* 105 F.R.D. at 42 (objecting party bears

the burden of demonstrating "specifically how, despite the broad and liberal construction

afforded the federal discovery rules, each [request] is not relevant or how each question is overly

broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence

revealing the nature of the burden."); *Fletcher v. Atex, Inc*., 156 F.R.D. 45, 54 (S.D.N.Y. 1994)

("If a party resists production on the basis of claimed undue burden, it must establish the factual

basis for the assertion through competent evidence.").

Defendants' reliance on the boilerplate responses is particularly dangerous in this case

because Defendants' response, in which they state that they will "perform a reasonable search"

and "produce any non-privileged documents that Defendants find," leaves the impression that

Defendants plan to produce all non-privileged documents responsive to the request. Plaintiffs

need to know if this is truly the case. Plaintiffs' main concern here is that Defendants will

unilaterally choose to withhold documents on the basis of the boilerplate objections, in which

case the documents will be lost in Defendants' no-man's land. These documents do not go on a

log; no record of the documents is produced to Plaintiffs. In fact, Plaintiffs may not even know

that documents have been withheld. At a minimum, Plaintiffs need to know if documents are

being withheld on the basis of the boilerplate objections. If documents are being withheld, the Defendants bear the burden of demonstrating that the objections should be sustained. Unfortunately, Defendants refused to address either of these issues in their letters or at the parties' meet and confer. Comite Decl. at ¶21 and Exhibits M, O, and P.

       **4.**     **<u>Defendants Have Refused To Answer Several Of Plaintiffs' Interrogatories.</u>**

Defendants also have refused to respond in any meaningful way to several of the specific interrogatories set forth in Plaintiffs' First Set of Interrogatories. Defendants claim that responding to some of the disputed interrogatories would be unduly burdensome. Defendants object to other interrogatories on the grounds that they seek information about Priceline WebHouse Club, Priceline Perfect Yard Sale and Walker Digital, which Defendants claim are outside of their custody and control. The disputed interrogatories include:

- Interrogatory 5, which asks Defendants to "Describe all formulas or methodologies used to set prices for products or services offered through WebHouse and/or Priceline, including without limitation: (a) how the price was established; (b) whether the price reflected the extent to which manufacturers or other sponsoring parties were subsidizing any discount; (c) how WebHouse determined the extent to which it would subsidize any discount; and (d) whether the formulas used to set prices were ever changed and, if so, when and for what reason. " Ex. F to Comite Decl.

- Interrogatory 10, which asks Defendants to "Identify all analyses used to determine whether Priceline should have taken a charge and/or set up a reserve in connection with the value of the WebHouse warrants received by Priceline." *Id.*

- Interrogatory 12, which asks Defendants to "Identify all persons or entities who were responsible for or otherwise involved in the launch of WebHouse and the WebHouse website, and, for each such person, identify the extent of their involvement. *Id.*

- Interrogatory 13, which asks Defendants to "Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting participants in WebHouse by manufacturers, wholesalers, retailers or distributors." *Id.*

- Interrogatory 14, which asks Defendants to "Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third party, involved in soliciting members to participate in WebHouse." *Id.*

- Interrogatory 16, which asks Defendants to "Identify all manufacturers, wholesalers, retailers, distributors or any other sponsoring parties who participated in the sale of products or services on WebHouse's or Priceline's websites; the dates such entities began to participate; all persons involved for such entity; all documents provided to such entities in connection with their participation; and each type of document which recorded the extent of their participation." *Id.*

- Interrogatory 17, which asks Defendants to "Describe the types of documents and/or reports created by WebHouse or Priceline that tracked: a) discounts given by WebHouse to customers; b) prices for products or services offered or sold by WebHouse; c) profit margins or subsidies for products or services offered or sold through WebHouse; and/or d) subsidies provided by WebHouse for products or services offered or sold through WebHouse." *Id.*

- Interrogatory 20, which asks Defendants to "Identify all analyses, budgets, reports, projects or studies of WebHouse's profitability and/or financial performance and identify all persons involved in created these documents." *Id.*

- Interrogatory 21, which asks Defendants to "Identify all persons and/or entities that serviced, sought to improve or upgrade, maintained, installed, expanded, programmed, integrated, implemented and/or developed Priceline's, Walker Digital's and/or WebHouse's computer systems and websites during the Relevant Time Period, and, for each such person and/or entity, describe their involvement." *Id.*

- Interrogatory 25, which asks Defendants to "Identify all individuals or entities who received stock, stock options or warrants of Priceline, WebHouse or Walker Digital (other than securities acquired though trades on the open market) during the Relevant Time Period, and for each such person identify the number of shares, options or warrants acquired, the date acquired, the consideration paid, the value when acquired, the date of maturity or exercise, and identify all documents evidencing such transaction." *Id.*

These interrogatories seek highly relevant information that falls squarely within the scope of allowable discovery under Rule 26(b)(1).  Moreover, as noted above, Defendants bear the burden of showing that their objections should be sustained.  *Saye,* 2004 WL 1944024, at *2; *Phillips Petroleum Co.,* 105 F.R.D. at 42; *Fletcher,* 156 F.R.D. at 54.  Defendants have said very little to justify their objections – relying only on vague statements that responding to the interrogatories would be "overly broad and unduly burdensome" and would require Defendants to provide information that Defendants' claim is outside of their custody and control.  Ex. P to Comite Decl.  Defendants have failed to show why the information sought in the interrogatories

is out of bounds.  In addition to relying on these vague objections, the responses Defendants did

provide to these interrogatories are entirely insufficient and amount to no response at all.  For

example, in responses to Interrogatories 12, 13 and 16, which ask Defendants to identify all

persons and/or entities that were involved in certain activities of Priceline, WebHouse and/or

Walker Digital, Defendants simply provided Plaintiffs with a list of persons and/or entities that

includes but "may not be limited to" names of persons and/or entities that *may* have been

involved in the activities described in the Interrogatory.  Accordingly, this Court should compel

Defendants to supplement their answer to each of these interrogatories and provide the

information that is sought.  Plaintiffs ask the Court to compel Defendants to answer these

interrogatories within ten days of the Court's decision on the motion to compel.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion to compel should be granted in its entirety.

Plaintiffs respectfully request that this Court enter an order pursuant to Rule 37 of the Federal

Rules of Civil Procedure and Local Rule 37(a):

(1)   Compelling Defendants to produce all documents responsive to Plaintiffs' outstanding
      document requests no later than twenty days from the date when the Court enters the
      order on the motion to compel;

(2)   Compelling Defendants to produce a privilege log in accordance with Rule 26 listing all
      materials that Defendants have redacted and all documents that Defendants have
      withheld no later than twenty days from the date when the Court enters the order on the
      motion to compel;

(3)   Compelling Defendants to produce all documents in the possession, custody and control
      of Priceline WebHouse Club, Priceline Perfect Yard Sale and Walker Digital no later
      than twenty days from the date when the Court enters the order on the motion to
      compel;

(4)   Granting Plaintiffs leave to reconvene any deposition that Plaintiffs take before
      Defendants have produced all documents responsive to Plaintiffs' outstanding document
      requests (including all responsive documents in the possession, custody and/or control

of Priceline WebHouse Club, Priceline Perfect Yard Sale and/or Walker Digital) and/or have provided Plaintiffs with a finalized privilege log;

(5)    Compelling Defendants to explain in detail the steps that have been taken to preserve documents at Priceline WebHouse Club, Priceline Perfect Yard Sale and/or Walker Digital and confirm that no responsive documents within the possession, custody and/or control of Priceline WebHouse Club, Priceline Perfect Yard Sale and/or Walker Digital have been lost, discarded or destroyed;

(6)    Compelling Defendants to provide full and complete answers to Plaintiffs' Interrogatories 5, 10, 12, 13, 14, 16, 17, 20, 21 and 25 within ten days of the entry of the Court's order on the motion to compel; and

(7)    Award any additional relief that the Court believes is just and proper.


Dated: March 14, 2005                                   Respectfully submitted,


_____          _____
SCOTT + SCOTT, LLC                             JOHNSON & PERKINSON
David R. Scott (ct16080)                          Dennis J. Johnson
Geoffrey M. Johnson                               Jacob B. Perkinson
Erin Comite (ct24886)                             Peter J. McDougall
108 Norwich Avenue                                1690 Williston Road
P.O. Box 192                                      P.O. Box 2305
Colchester, CT  06415                             South Burlington, VT 05403
Telephone: (860) 537-5537                         Telephone: (802) 862-0030
Facsimile: (860) 537-4432                         Facsimile: (802) 862-0060

                                                  STULL, STULL & BRODY
                                                  Jules Brody
                                                  Aaron Brody
                                                  6 East 45th St.
                                                  New York, NY 10017
                                                  Telephone: (212) 687-7230
                                                  Facsimile:  (212) 490-2022

                                                  **Co-Lead Counsel**

                                                  SCHATZ & NOBEL
                                                  Andrew M. Schatz
                                                  Jeffrey S. Nobel
                                                  One Corporate Center
                                                  20 Church Street, Suite 1700
                                                  Hartford, CT 06106

Telephone:  (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 14, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

_____

Erin Green Comite

## SERVICE LIST

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Martin Glenn
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036

Joseph L. Clasen
William Kelleher
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Douglas C. Conroy
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9th Floor
Stamford, CT 06901