# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------- X
IN RE: PRICELINE.COM, INC.  :  MASTER FILE NO.
SECURITIES LITIGATION    :  3:00CV01884 (DJS)
              :
              :
This document relates to:   :  FORM 26(f) REPORT OF
              :  PARTIES' PLANNING
  ALL ACTIONS     :  MEETING
              :
--------------------------------------------------- X October 29, 2004

| | |
|---|---|
| Date Complaint Filed: | October 2, 2000 |
| Date Consolidated Amended Complaint Filed: | October 29, 2001 |
| Date Complaint Served: | October 10, 2000 |
| Date of Defendants' Appearance: | October 31, 2000 |

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, conferences were held on October 20, 2004 and October 25, 2004. The participants were:

David R. Scott (ct16080), Erin Green Comite (ct24886), and Geoff Johnson of Scott + Scott, LLC and Jacob B. Perkinson, Dennis J. Johnson and Peter J. McDougall of Johnson & Perkinson for Lead Plaintiffs Iliana Ilieva, Joseph Wilenkin, Mark Weiss, Marilyn D. Egel; and Leisinger Pension Fund (referred to herein as "Plaintiffs").

Daniel Slifkin and Christine Arena, of Cravath Swaine & Moore LLP for defendants priceline.com Inc., N.J. Nicholas, Richard Braddock and Daniel Schulman; Dana MacGrath of O'Melveny & Myers LLP for Defendant Jay S. Walker and William Kelleher (ct 22140) of Robinson & Cole LLP as local counsel for all defendants (referred to herein as "Defendants").

I.    **Certification**

The undersigned counsel certify that, after consultation with their clients, they have

discussed the nature and basis of the parties' claims and defenses and any possibilities for

achieving a prompt settlement or other resolution of the case and, in consultation with their

clients, have developed the following proposed case management plan. Counsel further certify

that they have forwarded a copy of this report to their clients.

II.    **Jurisdiction**

A.    **Subject Matter Jurisdiction**

Plaintiffs bring this action pursuant to Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934 as amended (the "1934 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule

10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Thus, this Court has federal question

jurisdiction over the subject matter of this action pursuant to Section 27 of the 1934 Act, 15

U.S.C. § 78aa, and 28 U.S.C. § 1331.

B.    **Personal Jurisdiction**

The parties do not dispute personal jurisdiction or venue in the District of Connecticut.

III.    **Brief Description of Case**

Lead Plaintiffs Iliana Ilieva, Leisinger Pension Fund, Mark Weiss and Marilyn D. Engle,

and Joseph Wilenkin bring this action on behalf of persons who purchased or otherwise acquired

securities of priceline.com Inc. ("priceline" or the "Company") between January 27, 2000 and

October 4, 2000 (the "Class Period"), pursuant to Sections 10(b) and 20(a) of the 1934 Act,

against priceline and Individual Defendants Daniel H. Schulman ("Schulman"), Richard S.

Braddock ("Braddock"), N.J. Nicholas ("Nicholas"), and Jay Walker, all high-level priceline

executives and/or directors. Lead Plaintiffs allege that during the Class Period, Defendants made

In addition, Plaintiffs allege that Defendants engaged in an accounting fraud throughout the class period by a) recklessly overstating the value of the WebHouse warrants carried on priceline's financial statements, recording a $189 million one-time gain in the fourth quarter, 1999; b) failing to thereafter write down the value of such warrants until the end of the class period; c) failing to properly apply ARB No. 51, by filing financial statements which did not include financial results at WebHouse; and d) by materially understating priceline's expenses by transferring computer software and hardware infrastructure expenses as to WebHouse while simultaneously collecting royalties from WebHouse, despite priceline's subsidation of WebHouse's expenses.

Lead Plaintiffs allege that this fraudulent course of conduct inflated the price of priceline's stock  and allowed the Individual Defendants to accumulate massive personal wealth through insider sales.

      **A.**      **Claims of Plaintiffs.**  Lead Plaintiffs submit the following summary of their claims:

      1.      **First Cause of Action -- Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.**  During the Class Period, Defendant priceline and the Individual Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged in the Complaint; (ii) artificially inflate and maintain the market price of priceline common stock; and (iii) cause Plaintiffs and other members of the Class to purchase priceline stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendant priceline and the Individual Defendants took the actions set forth in the Complaint.  These Defendants: (a)

4

Defendants deny all allegations of wrongdoing in the Consolidated Amended Complaint and respond to Plaintiffs' primary allegations as follows:

First, priceline did not mislead the investing public regarding the expandability of its "Name Your Own Price" business model. Rather, priceline clearly and repeatedly disclosed that the applicability of its business model to non-travel related products and services was uncertain at best. WebHouse, a separate and independent company in which priceline made no upfront investment of capital, licensed priceline's business model on arms' length terms and attempted to apply it to product areas such as groceries and gasoline. In exchange, priceline received licensing fees as well as a fully vested warrant to purchase 137,500,000 shares of WebHouse stock at $3.00 per share, which priceline could exercise in the event that WebHouse succeeded.

Second, priceline did not mislead investors by its accounting treatment of the WebHouse warrant. Murray Devine & Co. Inc., a premier valuation advisory firm, valued the warrant at $189 million using the Black-Scholes option-pricing model. Consistent with Murray Devine's valuation and the applicable accounting standards, priceline recorded a one-time gain of $189 million during the fourth quarter of 1999. Priceline applied the same accounting standards with respect to its issuance of warrants to airlines for the purchase priceline stock, which generated a $1.1 million expense (offset by the $189 million gain) during the same quarter. Deloitte & Touche audited these financial statements, which included the accounting for the WebHouse and airline warrants, and rendered an unqualified opinion. The value of the WebHouse warrant did not decline (and indeed increased) until WebHouse announced that it would be unable to continue its operations in the third quarter of 2000, at which point priceline immediately wrote off its value.

6

Defendants are not liable under Section 10(b) of the 1934 Act or under Rule 10b-5 promulgated thereunder or under Section 20 of the 1934 Act because, among other things:

(a)    they did not make a false or misleading statement of material fact or omission of material fact on which Plaintiffs relied and they are not responsible (in law or in fact) for any alleged false or misleading statements or omissions of material fact by others on which Plaintiffs are alleged to have relied;

(b)    the alleged misstatements and omissions about which Plaintiffs complain concern non-actionable matters of opinion, or are puffery or soft information, rather than matters of material fact;

(c)    the alleged misstatements, if any, were forward-looking and contained sufficient cautionary language and risk disclosure to be non-actionable under the PSLRA's statutory safe harbor or the "bespeaks caution" doctrine;

(d)    the alleged misrepresentations or omissions, if any, were based on good faith, and in reasonable reliance upon the work, opinions, information, representations, and advice of others upon whom they were entitled to rely;

(e)    the alleged misrepresentations and omissions, if any, did not affect the market price of priceline's securities;

(f)    Plaintiffs did not rely, or could not have relied, either reasonably, justifiably, or as a matter of law, upon the misstatements or omissions alleged;

(g)    at all times, and with respect to all relevant matters, defendants acted in good faith, exercised reasonable care, and did not know, and in the exercise of reasonable care could not have known, of the alleged misrepresentations or omissions; and/or

7

(h)    Plaintiffs knew, or in the exercise of reasonable care should have known, the information that they allege defendants misstated or omitted.

Defendants' defenses will be more fully set forth in their answer to the Consolidated Amended Complaint. Defendants reserve the right to assert additional or different defenses that they become aware of through discovery or other investigation or as necessary to respond to any amended pleadings by Plaintiffs.

## IV.    Statement of Undisputed Facts:

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1.    Defendant priceline is a Delaware corporation with its executive offices and principal place of business located at 800 Connecticut Avenue, Norwalk, Fairfield County, Connecticut.

2.    Priceline is an Internet-based retailer that operates through the publicly available website www.priceline.com. Consumers who visit priceline.com can purchase a variety of primarily travel-related services — such as airfare, hotels, rental cars, cruises and vacation packages — at discounted prices using, among other things, the website's "Name Your Own Price®" system.

3.    From July 1999 to May 2000, defendant Schulman was priceline's President and Chief Operating Officer. From May 2000 to May 2001, he was priceline's President and Chief Executive Officer ("CEO"). From July 1999 to May 2001, Schulman also served on priceline's board of directors ("Board").

8

2.      From August 1998 to May 2000 and from May 2001 to November 2002,

defendant Braddock was priceline's CEO. From August 1998 to April 2004, he was Chairman of

priceline's Board.

3.      From July 1998 to June 2003, defendant Nicholas served on priceline's Board.

4.      Defendant Walker was priceline's founder. From August 1998 to December

2000, he was Vice Chairman of the Board. Walker also founded WebHouse Club Inc.

("WebHouse") and served as its CEO.

5.      Priceline's initial public offering occurred on March 30, 1999, at which time

priceline stock was offered to the public at $16 per share.

6.      WebHouse offered a variety of goods and services to consumers on a "Name

Your Own Price" basis, including groceries and gasoline.

7.      Deloitte & Touche LLP ("D&T"), a public accounting firm, audited priceline's

year end 1999 financial statements and issued an unqualified opinion on these financial

statements. D&T also reviewed priceline's quarterly financial statements published during the

class period alleged in the Consolidated Amended Complaint.

V.      **Case Management Plan:**

      A.      **Standing Order on Scheduling in Civil Cases**

The parties request modification of the Court's Standing Order on Scheduling in Civil

Cases, as specified below.[1]

      B.      **Scheduling Conference with the Court**

The parties have not been able to reach agreement on every date for a proposed

scheduling order, as identified below.

---

[1] The Court has already granted Defendants' consent motion for extension of time, allowing Defendants until **December 24, 2004** to answer the Consolidated Amended Complaint.

Plaintiffs request a pretrial conference, preferably in person, with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b). Plaintiffs maintain that such a conference is particularly important in view of the parties' different readings of the Court's Order, as set forth below, and because certain of the deadlines in the proposed schedule are pegged to the timing of the filing of Plaintiffs' Second Amended Complaint. In particular, Defendants seek a stay of discovery as to any additional allegations contained in the Second Amended Complaint unless Plaintiffs file that Complaint prior to the commencement of discovery. Plaintiffs believe that such a conference will be the most expeditious way to solve this conflict and to progress with discovery.

Defendants do not join in Plaintiffs' request for an in-person pretrial conference with the Court at this time. This report sets forth the parties' differing proposals for discovery deadlines, and the reasons underlying their respective positions, for the Court's consideration in connection with entering an appropriate order pursuant to Fed. R. Civ. P. 16(b). While Defendants do not seek to burden the Court's schedule with an in-person conference, they will be available at the Court's convenience should further input from the parties be deemed desirable.

## C.    Early Settlement Conference

1.    The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. The parties engaged in a one-day mediation in August 2004 with the Honorable Nicholas H. Politan. The parties believe settlement is unlikely at this time.

2.    Because settlement is unlikely at this time, the parties do not request an early settlement conference.

10

3.      The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

**D.      Joinder of Parties and Amendment of Pleadings**

1.      The Court's Memorandum of Decision dated October 7, 2004 provides that Plaintiffs may amend their complaint to cure the deficiencies in the Consolidated Amended Complaint, pursuant to Fed. R. Civ. P. 15. The parties disagree over the timing of the amendment contemplated by the Court's decision.

a.      Plaintiffs' Position. Repeatedly, the Court stated that Plaintiffs had the right to amend pursuant to Rule 15. Rule 15 permits amendment by leave of Court, which "shall be freely given when justice so requires" and the opposing party will not be prejudiced, Fed. R. Civ. P. 15(a), and permits amendments to the Complaint to comport with evidence developed during discovery. Plaintiffs believe that the Court intended its Order to provide that, if Plaintiffs are able during discovery to obtain the requisite support for the dismissed allegations, an amendment of their complaint is permitted.

While the Court stayed discovery pending further order of the Court, Plaintiffs interpret this to reflect the fact that the federal rules preclude such discovery until after the Rule 26 conference is conducted and the Court's desire to enter the instant Scheduling Order prior to allowing discovery. In support of their reading of the Court's Order, Plaintiffs note that the PSLRA was intended to prevent the filing of frivolous claims. As the Court has sustained the bulk of Plaintiffs' allegations, Plaintiffs' Complaint cannot be considered frivolous. Consequently, Plaintiffs believe the Court's Order was designed to permit Plaintiffs to amend their Complaint if they are able to satisfy Rule 9(b) as to the dismissed statements and if they discover evidence of D&T's recklessness in issuing its

11

unqualified opinion on priceline's financial statements for year's end 1999 and in conducting its reviews of priceline's interim financial statements published during, or pertaining to, the class period. As Plaintiffs' Complaint (and the course of conduct alleged therein) has been sustained, Defendant's requested limited stay of discovery as to any new matters pled in the Second Amended Complaint is not supported by the PSLRA and is designed merely to shield wrongdoing. Further, Defendants would not be prejudiced by such an amendment since they have been given notice of the allegations Plaintiffs wish to pursue. Accordingly, Plaintiffs request until **April 30, 2005** to file motions to join additional parties and to file a Second Amended Complaint.

If the Court intended Plaintiffs to amend the Complaint sooner, Plaintiffs request 45 days from the date of the Scheduling Order to file in their Second Amended Complaint. Plaintiffs have been diligently working to negotiate and compile this Report and a proposed Confidentiality Agreement with Defendants rather than focus on amending their Complaint. As Defendants acknowledge, no documents will be produced by Defendants prior to December 15, 2004. If the Court intended Plaintiffs to amend as soon as possible, Plaintiffs are agreeable to allowing Defendants to withhold document discovery on those matters dismissed by the Court until Plaintiffs' filing of their Second Amended Complaint (as Defendants request below). Thus, waiting until 45 days after the entry of the Scheduling Order to permit Plaintiffs to amend will not prejudice Defendants. Assuming Plaintiffs' Second Amended Complaint is due on April 30, 2005, Plaintiffs request that Defendants be allowed until **May 30, 2005** to file a response to a Second Amended Complaint.

12

b.     Defendants' Position. Defendants do not believe that the Court intended to give Plaintiffs another six or seven months to amend their complaint as to the deficiencies cited in the Court's decision, and there is no reason for Plaintiffs to need that much additional time to replead. Neither the Court's Memorandum of Decision nor Rule 15 authorizes the Plaintiffs to conduct discovery into allegations that could not survive a motion to dismiss. Any amendment to cure the deficiencies noted in the Court's memorandum of decision should be made without the benefit of discovery (indeed, the Court's Memorandum of Decision maintains the stay of discovery in these proceedings until further order from the Court). Accordingly, Defendants request that Plaintiffs be allowed until **November 15, 2004** (the date which Plaintiffs proposed, and Defendants agreed to, for the commencement of discovery) to join additional parties and to file a Consolidated Second Amended Complaint to attempt to cure the deficiencies noted in the Court's opinion, and that defendant be permitted until **January 17, 2005** to move against or answer that complaint. Should the Court permit Plaintiffs to amend following the commencement of discovery, Defendants request the issuance of an order precluding discovery into the dismissed allegations (and reserve the right to object to any such discovery), and seek **60 (sixty)** days following service to file their answer.

**E.     Discovery**

1.     Plaintiffs anticipate requesting all relevant and non-privileged documents from Defendants and various non-parties pertaining to (a) the course of conduct sustained in Plaintiffs' Amended Complaint; (b) Defendants' scienter; (c) to the statements found by the Court, in its opinion, not to satisfy Rule 9(b); and (d) D&T's participation in the alleged course of conduct.

13

Defendants reserve the right to object to any such discovery, in particular the discovery described in subpart (c) above.

      2.      Defendants' anticipated topics of discovery from Plaintiffs and third parties will include, among others: (a) information relating to Plaintiffs' motion for class certification (e.g., issues of numerosity, commonality, typicality and adequacy of the proposed class and/or class representatives); (b) Plaintiffs' investigation underlying the allegations made in the Consolidated Amended Complaint; (c) Plaintiffs' investments in priceline stock and investment policies generally; (d) what was known by analysts, market participants and others regarding priceline's and WebHouse's respective business activities and financial conditions during the alleged class period; (e) accounting standards, including the standards applicable to reporting warrants and/or the activities of independent businesses; (f) the alleged reliance by Plaintiffs and the purported class on the alleged misrepresentations and/or omissions asserted in the Consolidated Amended Complaint; (g) the alleged damages suffered by Plaintiffs and the purported class as a result of the alleged misrepresentations and/or omissions by Defendants.

      3.      The parties have agreed to confer on a stipulation of confidentiality and proposed order, but disagree as to the timing of its submission to the Court.

          a.   Plaintiffs' Position.  Plaintiffs request that the parties be permitted until **November 15, 2004** to submit a stipulation of confidentiality and proposed order (or otherwise move the Court if agreement cannot be reached). The Parties are already negotiating the content of such an Order and, if an agreement cannot be reached by November 15, 2004, there is no reason to believe an extra three weeks will make any difference. Plaintiffs' date increases the likelihood that Defendants' document production, which is to

commence just nine days after Defendants' proposed date for bringing any remaining disputes regarding the Confidentiality Agreement to the Court's attention, will not be delayed. Additionally, Plaintiffs' desire the entry of the Confidentiality Order as soon as possible so that they may obtain non-party production of documents. Plaintiffs do not believe that Defendants' knowledge of the content of Plaintiffs' document requests is necessary prior to negotiating a Confidentiality Stipulation, which will govern the production of *all* information and/or documents produced at any point during the litigation. Thus, the only questions left open, following the entry of a Confidentiality Stipulation and Order, will be a) whether Defendants believe that any particular document being produced is entitled to confidential treatment within the scope of that Order and, b) if so, which category of confidential treatment applies. Nonetheless, to eliminate any disputes on this issue and so as to satisfy Defendants' desire to have Plaintiffs' document requests prior to their negotiating a Confidentiality Stipulation, Plaintiffs will undertake to provide Defendants with their First Request for Production of Documents by November 5, 2004

b. <u>Defendants' Position</u>. Defendants intend to work diligently with Plaintiffs to reach an agreed-upon stipulation of confidentiality and proposed order, and will submit the same to the Court as soon as practicable, but nonetheless request that the parties be permitted until **December 6, 2004** to conclude their negotiations (or otherwise move the Court if agreement cannot be reached). The parties may require this time to evaluate the scope of document requests

15

(a courtesy copy of which Plaintiffs have undertaken to provide Defendants by **November 5, 2004**), craft appropriate protections and engage in a meaningful negotiation. Submission of a protective order before that time is unnecessary, as no documents will be required for production by any party (or non-party) before mid-December (30 days following the agreed-upon onset of discovery, **November 15, 2004**).

4.      The parties agree that their respective initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) should be served no later than **November 15, 2004.**

5.      The parties agree that discovery, including class discovery, should commence on **November 15, 2004.** Fact discovery may be conducted concurrent with class discovery. All discovery will be completed (not propounded) by **March 31, 2006.**

6.      The parties agree that their respective production of documents should be completed by **December 30, 2005.** Counsel for defendant priceline has advised Plaintiffs' counsel that the company's electronic documents are voluminous and that production thereof is likely to be both time and labor intensive. Plaintiffs' counsel have agreed to accept a rolling production of the company's documents and have expressed a willingness to work with priceline to minimize the burden and expense associated with production. Nonetheless, Plaintiffs believe that the American Rule that each party bears its own costs and the Federal Rules of Civil Procedure impose on Defendants the burden and expense of complying with Plaintiffs' discovery requests. Priceline reserves the right to seek cost-shifting and/or reimbursement from Plaintiffs for expenses incurred in connection with electronic evidence discovery, as has been determined appropriate in other cases.

16

7.    The parties disagree regarding whether the ten (10) deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A) and Fed. R. Civ. P. 31(a)(2)(A) should be modified.

      a.    <u>Plaintiffs' Position.</u> The limit on depositions should be raised to a total of **thirty-five (35)** depositions for Plaintiffs and Defendants, each respectively. All deponents produced pursuant to a 30(b)(6) Notice of Deposition shall count, collectively, as one deposition. Defendants' proposal precludes Plaintiffs from conducting an orderly discovery program, as Plaintiffs will be unable to determine who they will depose and when they will take depositions since they will not know how many depositions they have in total. Plaintiffs need to know the total number of depositions they are permitted so they can apportion such depositions among potential witnesses. Conversely, Plaintiffs cannot be in the position of having Defendants seek to stay further depositions after Plaintiffs complete part of their discovery program because, according to Defendants, Plaintiffs have taken all the depositions to which they are entitled.

      b.    <u>Defendants' Position.</u> The limit on depositions should not be raised before the parties have had the opportunity to evaluate the information obtained during discovery. This procedure will encourage the parties to prioritize and focus their discovery efforts and to avoid unnecessary depositions. Either party may, prior to the close of the period agreed-upon for depositions, seek additional depositions upon good cause shown.

8.    The parties agree that depositions should commence no earlier than **April 1, 2005,** except that (1) depositions under Fed. R. Civ. P. 30(b)(6) and non-party depositions should commence at anytime after **November 15, 2004,** (2) any depositions pertaining to class

17

certification may commence at the time specified in Part F below, and (3) depositions of expert witnesses will be conducted during the timeframe specified in Paragraphs 9 and 10 below (and 11, should the Court determine to permit rebuttal experts). The parties agree that all depositions (except for experts) will be completed by **December 30, 2005.**

   9. The parties agree that they may each serve more than 25 interrogatories, respectively.

   10. Plaintiffs intend to call expert witnesses at trial. The parties agree that Plaintiffs should designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by **December 30, 2005** and that depositions of any such experts should be completed by **January 31, 2006.**

   11. Defendants intend to call expert witnesses at trial. The parties agree that Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by **February 1, 2006** and that depositions of any such experts will be completed by **March 1, 2006.**

   12. The parties disagree regarding whether rebuttal experts are appropriate.

     a. <u>Plaintiffs' Position.</u> The parties should be permitted to identify rebuttal trial experts. Plaintiffs will serve rebuttal expert reports, if any, by **March 15, 2006** and Defendants may serve their rebuttal expert reports by March 31, 2006. Plaintiffs believe that their expert should have the ability to respond to Defendants' experts' reports and, particularly since Defendants also have the right to submit rebuttal reports, there is no prejudice to Defendants under Plaintiffs' proposal.

b. <u>Defendants' Position.</u> No rebuttal experts should be permitted. Plaintiffs, who bear the burden of proof, should include all relevant information in the opening round of expert reports. Four rounds of expert reports would be unduly burdensome and costly and would create incentives for Plaintiffs to withhold relevant information in the opening round of reports. Moreover, the 15 days allotted to Defendants for a response under Plaintiffs' proposal may not be sufficient to both depose Plaintiffs' rebuttal expert(s) and respond to their rebuttal expert report(s). If the Court permits rebuttal experts, Defendants request that Plaintiffs produce their rebuttal expert(s) for deposition during the two week period following service of their report(s) and that Defendants be permitted an additional two weeks thereafter to submit their rebuttal expert report(s).

13.    The parties agree that a damages analysis will be provided by any party who has a claim or counterclaim for damages in connection with the production of each party's initial expert report.

F.    **Class Certification**

The parties disagree regarding the schedule for class certification motion practice and discovery.

1.    <u>Plaintiffs' Position.</u> During negotiations of this report, the parties each initially submitted to each other different deadlines for the filing of Plaintiffs' Motion for Class Certification Order. Each now supports the others' deadline. Plaintiffs propose a deadline of **January 3, 2005** for the filing of Plaintiffs' motion for class certification. Plaintiffs believe that the **January 3, 2005** deadline is necessary so that Plaintiffs' counsel has sufficient time to

19

identify which class members will be advanced as class representatives (Plaintiffs' counsel have been retained by over 200 such class members). Defendants should be permitted until **sixty (60)** days following the service of the class certification motion to file their opposition, and Plaintiffs should be permitted **thirty (30)** days after service of an opposition to file their reply. Plaintiffs agree that any depositions taken during class discovery should not count toward a parties' total number of depositions.

Moreover, Plaintiffs request that any deadlines established regarding document and deposition class discovery apply equally to the parties. Defendants' proposed class certification discovery schedule improperly assumes that they are the only ones entitled to such discovery. Under Plaintiffs' proposal, either side is free to take class discovery.

2.    Defendants' Position. Defendants have maintained consistently through the negotiation of this schedule that Plaintiffs' class certification motion should be filed on the same day that discovery commences.[2] Accordingly, Defendants submit that Plaintiffs should file their motion for class certification at the date they proposed (and Defendants agreed upon) for commencement of discovery, **November 15, 2004**, so that Defendants may commence class discovery at that time as well.[3] Plaintiffs should complete their production of documents in response to Defendants' document requests regarding class certification on or before **January 31, 2005**. Plaintiffs should make all class representatives available for deposition between **February 14, 2005** and **March 11, 2005**, which depositions should not count toward the 10-deposition limit. Defendants should file and serve any opposition to Plaintiffs' motion for class

---

[2] Defendants initially proposed that Plaintiffs file their class certification motion and that discovery commence on January 3, 2004.
[3] Defendants have proposed that amendment and joinder of additional parties also occur on **November 15, 2004** (see supra at D.1.b). This timing will avoid any need to reopen discovery or otherwise modify class proceedings in the event Plaintiffs add additional parties and/or alter their allegations in a manner that affects class certification issues.

certification no later than **April 11, 2005**. Plaintiffs should file and serve any reply to
Defendants' opposition papers no later than **May 9, 2005**.

If the Court permits Plaintiffs to file their motion for class certification after November
15, 2004, Defendants request that the timing of class certification discovery and responsive
briefing be set according to the intervals set forth in Defendants' proposal. The 60 days allotted
by Plaintiffs for Defendants to conduct class certification-related discovery (including service of
document requests, review of Plaintiffs' production and depositions of the class plaintiffs) and
prepare opposition papers is insufficient.

G.    **Dispositive Motions**

The parties agree that dispositive motions will be filed on or before **May 1, 2006**. Any
opposition to any dispositive motion shall be filed by **thirty (30)** days after service of any
motion. Any reply to such opposition shall be filed by **twenty (20)** days after service of any
opposition.

H.    **Joint Trial Memorandum**

The parties agree that the joint trial memorandum required by the Standing Order on Trial
Memoranda in Civil Cases will be filed within **thirty (30)** days of the Court's ruling on the
dispositive motions, if any. Absent dispositive motions, the joint trial memorandum will be due
**thirty (30)** days following the close of discovery.

VI.    **TRIAL READINESS**

The parties agree that the case will be ready for trial within **forty-five (45)** days of the
Court's ruling on the dispositive motions, if any. Absent dispositive motions, the case will be
ready for trial **forty-five (45)** days following the close of discovery.

21

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

DATED: OCTOBER 29, 2004

**SCOTT & SCOTT, LLC**

_David R. Scott / w/ permission_
_EGC_
David R. Scott  CT16080/
Erin Green Comite CT24886
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel:  (860) 537-3818
Fax: (860) 537-4432


**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Peter McDougall
1690 Williston Road
South Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060

**Attorneys for Plaintiffs**

**ROBINSON & COLE, LLP**

_William J. Kelleher / w/ permission_
_EGC_
Joseph L. Clasen CT04090
William J. Kelleher, III CT22140
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Tel:  203-462-7500
Fax:  203-462-7599

**Local Counsel for All Defendants**

**CRAVATH, SWAINE & MOORE LLP**
Daniel Slifkin
Christine Arena
825 Eighth Avenue
New York, NY 10019
Tel:  212-474-1000
Fax:  212-474-3700

**Counsel for defendants priceline.com Inc., N.J. Nicholas, Richard Braddock and Daniel Schulman**

**O'MELVENY & MYERS LLP**
Dana C. MacGrath
153 East 53rd Street
New York, NY 10022
Tel:  212-326-2000
Fax:  212-326-2061

**Counsel for defendant Jay S. Walker**

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of **FORM 26(f) REPORT OF PARTIES'**
**PLANNING MEETING** was sent to counsel of record on the attached service list on October
29, 2004 by first-class, postage prepaid U.S. mail.

Erin Green Comite

23

## SERVICE LIST

Dennis J. Johnson, Esquire
Jacob B. Perkinson, Esquire
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403
Tel: 802-862-0030
Fax: 802-862-0060

Jules Brody, Esquire
Aaron Brody, Esquire
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017
Tel: 212-687-7230
Fax: 212-490-2022

Andrew M. Schatz, Esquire
Jeffrey S. Nobel, Esquire
Patrick A. Klingman, Esquire
Schatz & Nobel, P.C.
330 Main Street
Hartford, CT 06106
Tel: 860-493-6292
Fax: 860-493-6290

William R. Maguire, Esquire
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
Tel:  212-837-6000
Fax:  212-422-4726

Martin Glenn, Esquire
Dana C. MacGrath, Esquire
O'Melveney & Myers LLP
153 East 53rd Street
New York, NY 10022
Tel:  212-326-2000
Fax:  212-326-2061

Joseph L. Clasen, Esquire
William Kelleher
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Tel:  203-462-7500
Fax:  203-462-7599

Daniel Slifkin, Esquire
Christine Arena, Esquire
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019
Tel:  212-474-1000
Fax:  212-474-3700

David S. Slossberg, Esquire
Margaret F. Haering, Esquire
Hurwitz & Sagarin, LLC
147 North Broad Street
Milford, CT 06460
Tel: 203-877-8000
Fax: 203-878-9800

24