**EXHIBIT F**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | :<br>:<br>:<br>: MASTER FILE NO.<br>: 3:00CV01884(DJS)<br>:<br>:<br>:<br>:<br>: |

### LEAD PLAINTIFFS' FIRST SET OF INTERROGATORIES
### DIRECTED TO ALL DEFENDANTS

Pursuant to Rules 26(a)(5) and 33(a) of the Federal Rules of Civil Procedure, Plaintiffs request that each of the Defendants in All Actions answer under oath each of the interrogatories set forth below (the "Interrogatories"). Written responses to the Interrogatories shall be served on the undersigned counsel no later than December 15, 2004.

### DEFINITIONS

1. These interrogatories incorporate by reference the definitions set forth in Local Rule 26(c) of the District of Connecticut Local Rules of Civil Procedure (the "Local Rules").

2. "Defendants," "you," and "your" shall mean Defendants Priceline, N.J. Nicholas, Richard S. Braddock, Daniel H. Schulman, and Jay S. Walker, along with all their successors, assignees, agents, and all other persons who are acting, have acted, or have ever purported to act on their behalf.

3. "Priceline" shall mean priceline.com, Inc., along with all of its subsidiaries, divisions, affiliates, successors, predecessors, partners, joint venturers, corporate parents, related

S:\CASELIST\Priceline\Final - 1st Set of Interrogatories.doc

entities, and/or any entity controlled by Priceline as well as any of its current or former directors, officers, employees, agents, attorneys, accountants, auditors, representatives, or other person acting or purporting to act on its behalf.

4. "WebHouse" shall mean the priceline.com WebHouse Club, Inc., along with all of its subsidiaries, divisions, affiliates, successors, predecessors, partners, joint venturers, corporate parents, related entities, and/or any entity controlled by WebHouse as well as any of its current or former directors, officers, employees, agents, attorneys, accountants, auditors, representatives, or other person acting or purporting to act on its behalf, including, without limitation, Defendant Jay S. Walker and Walker Digital, as defined below.

5. "Deloitte" means Deloitte & Touche, LLP, and includes any subsidiaries, affiliates, segments or divisions thereof, any present and/or former partners of Deloitte, or its subsidiaries, affiliates, segments or divisions and any present or former officers, accountants, auditors, employees, attorneys, agents, representatives or other persons (as defined below) acting or purporting to act on behalf of Deloitte or its subsidiaries, affiliates, segments or divisions.

6. "Walker Digital" means Walker Digital, Corp., Walker Digital, LLC, and includes any subsidiaries, affiliates, segments or divisions thereof, any present and former members of the Board of Directors of Walker Digital, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined below) acting or purporting to act on behalf of Walker Digital or its subsidiaries, affiliates, segments or divisions.

7. "Communicate" and "communication" means any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8. "Document" means anything which may be considered a document or tangible thing under Rule 34 of the Federal Rules of Civil Procedure. "Documents" include, without limitation, any printed, written, typewritten or graphical matter, as well as any material generated by or stored in a computer, or stored within or on any other data storage device or medium, such as discs or tapes. Any drafts, preliminary versions, revisions or non-identical copies are expressly included within this definition. "Document" refers to any of the foregoing that is now, or at any time was, within Defendants' possession, custody, or control.

9. "Identify a type of document" means to describe the general nature and contents of the document, the name of the person and division that prepared or created the documents, the date the document was created, how often the document was prepared, i.e. daily, weekly, monthly, bi-monthly, quarterly, yearly, etc., and to whom the document was distributed.

10. "Person" means and includes any natural person, and any business, legal or governmental entity or association.

11. "Concerning" means relating to, referring to, describing, evidencing or constituting.

## INSTRUCTIONS

1. The following rules of construction shall apply to these definitions and to all discovery requests, as set forth in Local Rule 26(d):

   a. The words "all" and "each" shall both be construed as all and each;

   b. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery requests all responses that might otherwise be construed to be outside its scope; and

   c. The use of the singular form of any word includes the plural and vice versa.

3

2. A request to identify a document is a request to state: (i) the type of document; (ii) the date, if any, on the document; (iii) the author(s) of the document; (iv) the addressees of the document; (v) the subject matter of the document; and (vi) the person(s) having custody or control over the document. It will be sufficient to attach copies of documents to your answer in lieu of a detailed description, so long as each such document is tied via index or other method to the interrogatory to which it is responsive.

3. A request to identify a person or entity is a request to state the person's or entity's, full name, home and business address (or last known address), home and business telephone number, position held at Priceline, WebHouse, Walker Digital, and/or any licensee of the same, and the person's present employer and position (or last known employer and position).

4. A request to identify an act or omission is a request to state the nature, date, time and place of the act or omission, and the name of person or persons who committed or performed it.

5. The use of any tense of any verb shall also include within its meaning all other tenses of the verb.

6. Furnish all information known or available to you at the time of your responses, whether the information is known by you, your representatives, agents or investigators, or by your attorneys or their agents or representatives.

7. These interrogatories are continuing and Defendants must supplement their responses upon discovering or learning of additional information in their custody, possession, or control that was not produced or included in an earlier response. Each supplemental response shall be served on Plaintiffs no later than thirty (30) days after the discovery of the further

information, and in no event shall any supplemental response be served later than the day before the first day of trial.

8. If any of these interrogatories cannot be answered in full, answer to the extent possible, specifying the reasons for your inability to answer the remainder and stating whatever knowledge or information you may have concerning the unanswered portion.

9. If you file a timely objection to any portion of a discovery request, definition, or an instruction, provide a response to the remaining portion.

10. The terms defined above and the individual interrogatories should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

11. Unless otherwise indicated, the "Relevant Time Period" shall be from January 1, 1999 through December 31, 2001.

## INTERROGATORIES

1. Identify all persons, including but not limited to Priceline's employees, officers, directors, and/or agents, who were involved in making, commenting on and/or reviewing, in advance of the publication or release, any public statements made by Priceline, WebHouse or Walker Digital.

2. To the extent not already identified, specifically identify the individual(s) at Priceline and/or WebHouse, or those acting on behalf of Priceline and/or WebHouse, who provided the factual basis for any of the statements contained in the following paragraphs of Plaintiffs' Consolidated Amended Complaint:

   a) 115(b);

   b) 116 (a), (b), (c), (g), (h), (r);

5

c) 122(b), (e), (h), (k), (p), (s);

d) 123(a), (c);

e) 124 (a), (f);

f) 125(a), (b), (c), (e), (f), (g), (h), (k), (l), (m), (n), (p), (q);

g) 136;

h) 139;

i) 147(a), (c), (e),(f); and

j) 148 (d), (e), (f), (g);

and for each, identify all communications made by such person to the entity publishing such statement.

3. Identify the date of every conference call held with any analysts that Priceline and/or WebHouse or anyone acting on their behalf participated in, state the identity of persons from Priceline and/or WebHouse involved in such conference call, whether an audio and/or visual recording was made of the conference call, whether a script or prewritten presentation was utilized, whether a Frequently Asked Question ("FAQ") document was prepared in advance of such conference call, and whether a transcript of all or part of the call was created; the identity of any person and/or entity that made the recording and/or transcript; the current location of any scripts, FAQ documents, recordings and/or transcripts; and identity of any outside firm(s) used to record, transcribe and/or disseminate such materials.

4. Identify all industry conferences attended by Priceline and/or WebHouse, or anyone acting on their behalf, at which Priceline and/or WebHouse or anyone acting on their behalf, made a presentation. For each conference, state the date and location of the conference, whether a script or prewritten presentation was utilized, whether a Frequently Asked Question

("FAQ") document was prepared in advance of such conference, the identity of those involved, whether an audio and/or visual recording was made of the conference, whether a transcript of all or part of any presentation made by Priceline or WebHouse personnel was created, the current location of any scripts, FAQ documents, recordings and/or transcripts, the identity of any presentation materials utilized, and/or notes taken, at each conference, and the identity of any outside firm(s) used to record, transcribe and/or disseminate any recordings, transcripts, presentation materials or notes.

5. Describe all formulas or methodologies used to set prices for products or services offered through WebHouse and/or Priceline, including without limitation: (a) how the price was established; (b) whether the price reflected the extent to which manufacturers or other sponsoring parties were subsidizing any discount; (c) how WebHouse determined the extent to which it would subsidize any discount; and (d) whether the formulas used to set prices were ever changed and, if so, when and for what reason.

6. Identify all persons and/or entities involved on behalf of Priceline, WebHouse and/or Walker Digital in the negotiation of the agreements referred to in Plaintiffs' Consolidated Amended Complaint at paragraphs 28 and 41(f), between Priceline, WebHouse and/or Walker Digital and, for each, set forth their involvement.

7. Identify all persons involved in making the decision to form WebHouse as a private, closely held, off-the-books affiliate and licensee of Priceline, and/or the decision to exclude WebHouse's financial performance from Priceline's financial reports, and for each such person, identify the nature of their involvement.

8. Identify all persons, firms and/or entities that Priceline and/or WebHouse solicited, consulted or utilized in any actual or contemplated valuation or fairness opinion

7

regarding the WebHouse warrants received by Priceline in or about October 1999, and, as to each firm and/or entity, identify the individuals involved as well as those involved at either Priceline and/or WebHouse; describe the extent of the involvement of each; and set forth the dates on which Priceline and/or WebHouse solicited, consulted or utilized such person, firm or entity.

9. Identify all efforts or attempts to update or confirm the October 1999 valuation of WebHouse warrants received by Priceline, and/or to ascertain the value at which those warrants were carried on Priceline's financial statements issued or published during the Class Period defined in Plaintiffs' Consolidated Amended Complaint.

10. Identify all analyses used to determine whether Priceline should have taken a charge and/or set up a reserve in connection with the value of the WebHouse warrants received by Priceline.

11. Describe all efforts by Deloitte to determine: a) the value of the WebHouse warrants received by Priceline; b) the allocation of expenses between Priceline and WebHouse; and/or c) whether or not Priceline's and WebHouse's financials should be combined or consolidated.

12. Identify all persons or entities who were responsible for or otherwise involved in the launch of WebHouse and the WebHouse website and, for each such person, identify the extent of their involvement.

13. Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting participations in WebHouse by manufacturers, wholesalers, retailers or distributors.

14. Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting members to participate in WebHouse.

15. Identify all manufacturers, wholesalers, retailers or distributors or any other entities that were solicited by WebHouse or Priceline to participate in WebHouse for the sale of their products through WebHouse but refused to do so; the dates of such solicitations or negotiations; the identities of all persons involved; and, to the extent known, the reason or reasons for such refusal(s).

16. Identify all manufacturers, wholesalers, retailers, distributors or any other sponsoring parties who participated in the sale of products or services on WebHouse's or Priceline's websites; the dates such entities began to participate; all persons involved for such entities; all documents provided to such entities in connection with their participation; and each type of document which recorded the extent of their participation.

17. Describe the types of documents and/or reports created by WebHouse or Priceline that tracked: a) discounts given by WebHouse to customers; b) prices for products or services offered or sold by WebHouse; c) profit margins or subsidies for products or services offered or sold through WebHouse; and/or d) subsidies provided by WebHouse for products or services offered or sold through WebHouse.

18. Identify all persons, including but not limited to Priceline's employees, officers, directors, or agents, who were involved in Priceline's issuance of warrants to any airline before or during the Relevant Time Period and identify the extent of each person's involvement.

19. Identify all procedures or policies proposed, considered, used or implemented at Priceline and/or WebHouse to receive, analyze and/or process complaints by customers. Identify the types of documents and/or databases that tracked, analyzed or responded to such complaints.

20. Identify all analyses, budgets, reports, projections or studies of WebHouse's profitability and/or financial performance and identify all persons involved in creating these documents.

21. Identify all persons and/or entities that serviced, sought to improve or upgrade, maintained, installed, expanded, programmed, integrated, implemented and/or developed Priceline's, Walker Digital's and/or WebHouse's computer systems and websites during the Relevant Time Period, and, for each such person and/or entity, describe their involvement.

22. Identify all persons responsible for or otherwise involved in analyzing or monitoring any actual or potential competitors or competition faced by Priceline and/or WebHouse, and for each such person describe the extent of their activity and the types of documents used or created to monitor such competitors or competition.

23. Identify any investigation or inquiry, whether formal or informal, made of Priceline or of any of its operating units (including but not limited to WebHouse), officers, directors or employees, including the Defendants, by any attorney, accountant, analyst or the like retained by WebHouse or Priceline to conduct such investigation, by a grand jury, the Better Business Bureau, or any federal, state or non-governmental regulatory agency or body. For each such investigation or inquiry, identify the date it began, who conducted the investigation, any resolution, including the date of any resolution and any sanctions, reprimands, fines and/or penalties paid, and identify all documents received by or produced by or on behalf of Priceline and/or WebHouse or any of the Defendants related to or in connection with any such investigation or inquiry.

24. Identify all efforts to expand WebHouse beyond the sale of groceries and gasoline in the United States, whether by geographic area or product and, for each, identify:

    a)    what additional products or services were involved;

    b)    what countries such expansion was contemplated to occur or did occur;

    c)    what partners, joint ventures or other participants were involved;

    d)    what personnel from WebHouse, Priceline or Walker Digital were involved;

    e)    what manufacturer, wholesaler, retailer or sponsoring parties were involved;

    f)    the types of documents created related to actual or contemplated expansion; and

    g)    the results of such actual or contemplated expansion.

25.    Identify all individuals or entities who received stock, stock options or warrants of Priceline, WebHouse or Walker Digital (other than securities acquired through trades on the open market) during the Relevant Time Period, and for each such person identify the number of shares, options or warrants acquired, the date acquired, the consideration paid, the value when acquired, the date of maturity or exercise, and identify all documents evidencing such transactions.

26.    Identify the location of all customer service and call center operations and the people in charge of such service center or call center operations.

27.    Identify every senior employee of WebHouse, their position, scope of responsibilities, dates of employment and state whether they were or are employees or contractors of Priceline and their last known address and telephone number. If such persons were or are employed by Priceline, please state their position, scope of responsibilities and dates of employment with Priceline.

11

28. Identify the "key managerial, marketing, planning, financial, technical and operations personnel" referred to at page 18 of Priceline's Form 10-K 405 filed on March 30, 2000.

29. Identify all law firms, consultants, accountants, valuation firms or business analysts employed, retained or used by WebHouse, Walker Digital or Priceline and state the nature and scope of their services.

30. Describe each computer network in operation in Priceline and/or WebHouse. Your response to this Interrogatory should include the brand and version number of the network operating system in use; the quantity and configuration of all network servers and workstations; the identity of the person(s) responsible for the ongoing operating, maintenance, expansion and upkeep of the network; and the brand name and version number of all applications and other software (including electronic mail applications) residing on the network.

31. Describe each mini- and mainframe computer system used by Priceline and/or WebHouse, including the brand and version of the operating system in use; the identity of the person(s) responsible for the ongoing operation, maintenance, expansion and upkeep of the mini- and/or mainframe system; and the name and description of function of all applications and other software (including electronic mail applications) residing on the network.

32. Describe your procedures for making and maintaining data backups on all computer systems used by Priceline and/or WebHouse. Your response to this Interrogatory should include a description of any and all procedures and/or devices used to backup the software and/or data, including, but not limited to: name(s) of backup software used; tape rotation schedule; type of tape backup drives (including name and version number); a statement whether multiple generations of backups are maintained (and if so, how many and whether the

backups are full or incremental); a statement whether backup storage media is kept off-site (and if so, where such media is kept); a description of the process for archiving and retrieving off-site media; the identity of the persons or group who conduct the backup; the identity of the information which was backed up; and a detailed list of all backup sets (regardless of the magnetic media on which they reside) showing current location, custodian, date of backup and a description of backup content.

33. Describe with particularity the computer systems Priceline and/or WebHouse use to store, compose, distribute or route electronic mail. This description should include: the number and types of computers; the number and types of storage devices; the name and version of all operating systems; and the name and version of all electronic mail software programs used.

34. Describe with particularity the voice mail system used by employees of Priceline and/or WebHouse. This description should include the manner of accessing messages; a statement whether voice mail messages could be stored and for how long; and, if voice mail messages were automatically purged, a description of the destruction schedule.

35. Identify all persons involved in preparing your responses to these Interrogatories and the responses to Plaintiffs' Document Requests.

36. Identify the location of the documents requested in each of Plaintiffs' Document Requests and the custodian of each.

Dated: November 15, 2004.

Respectfully submitted,

*David R. Scott*
SCOTT & SCOTT, LLC
David R. Scott
Erin Comite
Geoffrey M. Johnson

108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432


*[signature]*
JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 537-4432

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
330 Main Street
Hartford, CT 06106
Telephone: (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: PRICELINE.COM, INC.  :
SECURITIES LITIGATION       :
                            :   MASTER FILE NO.
                            :   3:00CV01884(DJS)
This document relates to:   :
                            :
ALL ACTIONS                 :
                            :
                            :
                            :

### CERTIFICATE OF SERVICE

I, Peter J. McDougall, hereby certify that on the 15th day of November, 2004, I caused a true and correct copy of *Lead Plaintiffs' First Set Of Interrogatories Directed To All Defendants*, to be served *via* Facsimile and Federal Express upon the following:

Martin Glenn, Esquire
Dana C. MacGrath, Esquire
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Daniel Slifkin, Esquire
Christine Arena, Esquire
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Joseph L. Clasen, Esquire
William Kelleher, Esquire
Robinson & Cole, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Date: November 15, 2004

_____
Peter J. McDougall
JOHNSON & PERKINSON
1690 Williston Road
P.O. Box 2305
South Burlington, VT 050403
(802) 862-0030