# EXHIBIT I

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ------------------------------------------------ | X | |
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION | : | **MASTER FILE NO.**<br>**3:00CV01884 (DJS)** |
|  | : | |
| **This document relates to:** | : | |
| ALL ACTIONS | : | |
|  | : | **January 10, 2005** |
|  | : | |
| ------------------------------------------------ | X | |

## DEFENDANTS PRICELINE.COM INCORPORATED, N.J. NICHOLAS, DANIEL H. SCHULMAN AND RICHARD S. BRADDOCK'S RESPONSES AND OBJECTIONS TO LEAD PLAINTIFFS' FIRST SET OF INTERROGATORIES DIRECTED AT ALL DEFENDANTS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

Defendants priceline.com Incorporated ("priceline"), N.J. Nicholas, Daniel H. Schulman

and Richard S. Braddock ("Defendants") respond and object to Lead Plaintiffs' First Set

of Interrogatories Directed at All Defendants (the "Interrogatories") as follows:

### General Objections

1.      Defendants object generally to the Interrogatories, including the

definitions and instructions set forth therein, to the extent that they seek to impose

requirements with respect to the answering of interrogatories that are in addition to or

different from those set forth in Federal Rules of Civil Procedure or the Local Civil Rules

for the District of Connecticut.

2.      Defendants object generally to the Interrogatories, including the

definitions and instructions set forth therein, to the extent that they seek the disclosure of

information that comes within the scope of the attorney-client privilege, the work-product doctrine, the common defense or mutual interest privilege, or any other applicable privilege or immunity, or are otherwise exempted from discovery. Such information will not knowingly be disclosed. Any disclosure of any such privileged or protected information in response to any request is inadvertent and not intended to waive those privileges and protections. Defendants hereby claim such privileges and protections to the extent implicated by each request and exclude privileged or protected information from their responses to the Interrogatories.

3.      Defendants object generally to the Interrogatories, including the definitions and instructions set forth therein, to the extent that they call for the disclosure of confidential information including, without limitation, confidential business information, trade secrets or information subject to any third-party confidentiality agreement, order and/or obligation. Defendants will not disclose such confidential information without the protections of an appropriate protective order, as more fully described in the pending Cross-Motion for Entry of an Appropriate Protective Order. This objection is not a waiver of Defendants' other objections or an agreement to provide information if and when any protective order is entered.

4.      Defendants object to Definitions 2-6 and 8 and Instructions 2-4 of the Interrogatories, on the grounds that they are overly broad and unduly burdensome.

5.      Defendants object generally to the Interrogatories, including the definitions and instructions set forth therein, to the extent they seek information that is not in the possession, custody or control of Defendants. In particular, Defendants object to each Interrogatory that requests information regarding Priceline WebHouse Club, Inc. ("WebHouse"). WebHouse was a separate, closely-held company with a contractual

2

relationship with priceline. Notwithstanding this objection, Defendants have made a good faith attempt to gather information responsive to such requests and provide information regarding WebHouse, where available, upon information and belief.

6.      Defendants object generally to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent they seek information relating to matters outside the scope of this action or information that is not relevant to any claim or defense of any party to this action, or to the extent they are not otherwise reasonably calculated to lead to the discovery of admissible evidence in this action. In particular, Defendants object to the "Relevant Time Period" defined in Instruction 11 on this basis. Defendants will provide responses for the putative class period alleged in the Consolidated Amended Complaint—January 27, 2000 to October 4, 2000 (the "Alleged Class Period")—unless otherwise noted.

7.      Defendants object generally to the Interrogatories, including the definitions and instructions set forth therein, to the extent they seek information that is cumulative or duplicative, or is obtainable from public sources or from some other source or through some other means of discovery that is more convenient, less burdensome or less expensive.

8.      Defendants object generally to the Interrogatories, including the definitions and instructions set forth therein, to the extent the answers sought may be derived or ascertained from documents that Defendants will be producing in response to Plaintiffs' First Request for Production of Documents to All Defendants ("Plaintiffs' First Document Request").

9.      Defendants are providing this response without waiver of or prejudice to their right at any later time to raise objections as to: (a) the competence, relevance, materiality, privilege, work product and admissibility as evidence, for any purpose, of (i) the Interrogatories or any part thereof; or (ii) statements made in this response to the Interrogatories or any part thereof; or (b) the right to object to the use of any of the information or documents discussed hereunder in any subsequent proceedings or the trial of this or any other action; or (c) the right to object on any ground at any time to a demand for further response to these or other interrogatories or discovery requests in this action.

10.     The answers to the Interrogatories provided herein are based on a reasonable search for responsive information. Defendants reserve the right at any time to revise, correct, add to, clarify, or supplement their responses and objections to the Interrogatories at any time based on additional and/or different information that may become available in discovery.

## Specific Responses and Objections

Interrogatory No. 1

> Identify all persons, including but not limited to Priceline's employees, officers, directors, and/or agents, who were involved in making, commenting on and/or reviewing, in advance of the publication or release, any public statements made by Priceline, WebHouse or Walker Digital.

Response to Interrogatory No. 1

Defendants object to Interrogatory No. 1 to the extent that it seeks information regarding WebHouse and Walker Digital that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory on the grounds that it is overly broad and unduly burdensome, and to the extent it seeks information that is not relevant to any claim or defense of any party in this action and is

4

not otherwise reasonably calculated to lead to the discovery of admissible evidence in

this action.  Defendants further object to this interrogatory's use of the terms "involved"

and "public statements" as vague and ambiguous.  Subject to and without waiving these

objections or the General Objections, Defendants state that they believe that numerous

individuals in priceline's investor relations, public relations, finance and legal

departments, as well as members of priceline's senior management, may have made,

commented upon and/or reviewed in advance of their public dissemination, some or all of

priceline's press releases, presentations to analysts, public filings and/or statements

during analyst teleconferences, among other things, during the Alleged Class Period.

These individuals include, but are not limited to, the following:

1.    Richard S. Braddock[1]

2.    Thomas P. D'Angelo

3.    Brian Ek[2]
      *Vice President, Communications*
      4 Lyndenwood Drive
      Brookfield CT 06804
      (203) 775-8078

4.    Paul Francis

5.    Heidi Miller

6.    Robert J. Mylod

7.    William Pike

---

[1] Individuals whose names are underlined herein are represented by, and may only be contact through, undersigned counsel.  Defendant Jay S. Walker is represented by Albert M. Myers, III, Esq., Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, NE, 24th Floor, Atlanta, GA 30308.

[2] Last known home contact information for identified individuals (where available) is provided at their first mention in this document.  Contact information for individuals previously identified in Defendants' Initial Disclosures Pursuant to Rule 26(A)(1) ("Defendants' Initial Disclosures") is incorporated by reference.

8.    <u>Dan Rubenstein</u>

9.    <u>Daniel H. Schulman</u>

10.   Jay S. Walker

In addition, Defendants believe that Deloitte & Touche LLP and outside

counsel Skadden, Arps, Slate, Meagher & Flom LLP may have reviewed some of these

statements (as described above) during the Alleged Class Period.

Defendants further state, upon information and belief, that persons

involved (as described above) with respect to WebHouse's press releases, public filings

and verbal statements to the public during the Alleged Class Period may include (but may

not be limited to) the following:

1.    <u>Paul Francis</u>

2.    Kevin Goldman
      *Senior Vice President, Communications (WebHouse)*
      7 Harcount Road
      Scarsdale, NY 10583
      (914) 472-0784

3.    W. Robert Padgett
      *Director, Communications (WebHouse)*
      45 Robins Place
      Metuchen, NJ 08840
      (723) 767-3063

4.    Jay S. Walker

<u>Interrogatory No. 2</u>

To the extent not already identified, specifically identify the individual(s) at
Priceline and/or WebHouse, or those acting on behalf of Priceline and/or
WebHouse, who provided the factual basis for any of the statements contained in
the following paragraphs of Plaintiffs' Consolidated Amended Complaint:

a)    115(b);
b)    116 (a), (b), (c), (g), (h), (r);
c)    122(b), (e), (h), (k), (p), (s);
d)    123(a), (c);
e)    124 (a), (f);

6

f)    125(a), (b), (c), (e), (f), (g), (h), (k), (l), (m), (n), (p), (q);
g)    136;
h)    139;
i)    147(a), (c), (e), (f); and
j)    148 (d), (e), (f), (g);

and for each, identify all communications made by such person to the entity publishing such statement.

Response to Interrogatory No. 2

Defendants object to Interrogatory No. 2 on the grounds that it seeks information regarding WebHouse, and regarding the basis of statements made by individuals or entities other than Defendants, that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving these objections or the General Objections, Defendants state that they lack knowledge or information sufficient to answer this interrogatory.

Interrogatory No. 3

Identify the date of every conference call held with any analysts that Priceline and/or WebHouse or anyone acting on their behalf participated in, state the identity of persons from Priceline and/or WebHouse involved in such conference call, whether an audio and/or visual recording was made of the conference call, whether a script or prewritten presentation was utilized, whether a Frequently Asked Question ("FAQ") document was prepared in advance of such conference call, and whether a transcript of all or part of the call was created; the identity of any person and/or entity that made the recording and/or transcript; the current location of any scripts, FAQ documents, recordings and/or transcripts; and identity of any outside firm(s) used to record, transcribe and/or disseminate such materials.

Response to Interrogatory No. 3

Defendants object to Interrogatory No. 3 to the extent that it seeks information regarding WebHouse or those acting on its behalf that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory on the grounds that it is overly broad and unduly burdensome, seeks

7

publicly available information, and seeks information that can be more readily obtained through other, less burdensome means of discovery.  Subject to without waiving these objections or the General Objections, Defendants state that priceline held conference calls with analysts on the following dates during the Alleged Class Period (speakers on behalf of priceline noted in parenthesis):

1.   January 27, 2000 (Richard S. Braddock, Daniel H. Schulman, Paul Francis)

2.   April 24, 2000 (Richard S. Braddock, Daniel H. Schulman, Heidi Miller)

3.   July 24, 2000 (Richard S. Braddock, Daniel H. Schulman, Heidi Miller)

4.   September 27, 2000 (Richard S. Braddock)

Priceline possesses audio transcripts for the latter three analyst calls. Written scripts may have been prepared in connection with some or all of the foregoing analyst calls, copies of which may reside in priceline's corporate files.  Priceline is not aware of written transcripts or "FAQ" documents prepared in connection with any of the foregoing calls.

Defendants further state, on information and belief, that Jay S. Walker moderated a conference call with analysts on August 1, 2000, regarding WebHouse. Priceline is in possession of a written transcript of this call.

Interrogatory No. 4

Identify all industry conferences attended by Priceline and/or WebHouse, or anyone acting on their behalf, at which Priceline and/or WebHouse or anyone acting on their behalf, made a presentation. For each conference, state the date and location of the conference, whether a script or prewritten presentation was utilized, whether a Frequently Asked Question ("FAQ") document was prepared in advance of such conference, the identity of those involved, whether an audio

8

and/or visual recording was made of the conference, whether a transcript of all or part of any presentation made by Priceline or WebHouse personnel was created, the current location of any scripts, FAQ documents, recordings and/or transcripts, the identity of any presentation materials utilized, and/or notes taken, at each conference, and the identity of any outside firm(s) used to record, transcribe and/or disseminate any recordings, transcripts, presentation materials or notes.

Response to Interrogatory No. 4

Defendants object to Interrogatory No. 4 to the extent that it seeks information regarding WebHouse or those acting on its behalf, as well as information regarding the activities and conduct of third parties, that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory on the grounds that it is overly broad and unduly burdensome, seeks publicly available information, and seeks information that can be more readily obtained through other, less burdensome means of discovery. Defendants also object to the term "industry conferences" as vague and ambiguous.

Subject to and without waiving these objections or the General Objections, Defendants state that representatives of priceline spoke at numerous online travel-focused conferences sponsored by third-parties during the Alleged Class Period. These conferences include, but are not limited to (priceline speakers noted in parentheticals):

1.  Strategic Conference on Lodging Operations & Technology, 2/20/2000-2/22/2000, Dallas TX (Jules Sieburgh, *Director, Industry Relations*, 7412 Honesty Way, Bethesda, MD 20817, (301) 229-7976).

2.  Internet Commerce and Technology in the Travel Industry conference, 2/28/2000- 3/1/2000, San Francisco, CA (Tim Brier, *President, Travel*, 202 Dan's Highway, New Canaan, CT 06840, (203) 966-8699.

9

3.    Association of Travel Marketing Executives conference, 5/1/2000-

5/3/2000, Chicago, IL (William M. McCadden, *Chief Marketing*

*Officer*, 1 Chapel Hill Road, Westport CT 06880.

4.    E-Commerce for Travel conference, 9/11/2000-9/12/2000, Atlanta,

GA (Trey Urbahn).

5.    eTravelWorld conference, 9/21/200-23/2000, Orlando, FL

(William M. McCadden).

Interrogatory No. 5

Describe all formulas or methodologies used to set prices for products or services
offered through WebHouse and/or Priceline, including without limitation:
(a) how the price was established; (b) whether the price reflected the extent to
which manufacturers or other sponsoring parties were subsidizing any discount;
(c) how WebHouse determined the extent to which it would subsidize any
discount; and (d) whether the formulas used to set prices were ever changed and,
if so, when and for what reason.

Response to Interrogatory No. 5

Defendants object to Interrogatory No. 5 on the grounds that it is overly

broad and unduly burdensome and seeks information that can be obtained through other,

less burdensome means of discovery.  Defendants further object to this interrogatory to

the extent that it seeks information regarding WebHouse that is outside of Defendants'

possession, custody or control.  Defendants further object to this interrogatory to the

extent it seeks confidential and competitively sensitive information that requires

additional protections prior to disclosure, as more fully addressed in Defendants' pending

Cross-Motion for an Appropriate Protective Order.

Interrogatory No. 6

Identify all persons and/or entities involved on behalf of Priceline, WebHouse
and/or Walker Digital in the negotiation of the agreements referred to in
Plaintiffs' Consolidated Amended Complaint at paragraphs 28 and 41(f), between
Priceline, WebHouse and/or Walker Digital and, for each, set forth their
involvement.

10

Response to Interrogatory No. 6

Defendants object to Interrogatory No. 6 to the extent that it seeks information regarding WebHouse or Walker Digital that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory's use of the term "involved" as vague and ambiguous. Subject to and without waiving these objections or the General Objections, Defendants state that Robert Mylod and Paul Francis were the principal negotiators of the Warrant Agreement, Marketing and Technical Services Agreement, Intellectual Property License Agreement and Services Agreement dated as of October 26, 1999 (each between priceline.com Incorporated and Priceline WebHouse Club, Inc.) on behalf of priceline. On information and belief, Anne Maffei, *Vice President, Corporate Finance (WebHouse),* 233 West 77th Street, New York, NY 10024, and Jonathan Otto, *CEO and Chairman (WebHouse)* (contact information not known), were the principal negotiators of these agreements on behalf of WebHouse.

Interrogatory No. 7

Identify all persons involved in making the decision to form WebHouse as a private, closely held, off-the-books affiliate and licensee of Priceline and/or the decision to exclude WebHouse's financial performance from Priceline's financial reports, and for each such person, identify the nature of their involvement.

Response to Interrogatory No. 7

Defendants object to Interrogatory No. 7 to the extent that it seeks information about WebHouse that is outside of their possession, custody or control. Defendants further object to this interrogatory to the extent that it assumes disputed facts and/or legal conclusions and mischaracterizes the relationship between priceline and WebHouse (particularly with respect to its use of the term "off-the-books"), and to the extent that it mischaracterizes priceline's accounting and financial statements.

11

Defendants further object to this interrogatory's use of the term "involved" as vague and ambiguous. Subject to and without waiving these objections or the General Objections, Defendants state, on information and belief, that the following persons participated in the formation and/or financial design of WebHouse:

      1.    <u>Richard S. Braddock</u>

      2.    <u>Paul Francis</u>

      3.    Anne Maffei

      4.    <u>Robert Mylod</u>

      5.    Jonathan Otto

      6.    Jay S. Walker

In addition, Defendants believe that David Christie and Drew Wallace of Deloitte & Touche LLP and outside counsel Skadden, Arps, Slate, Meagher & Flom LLP consulted in connection with the formation of WebHouse.

<u>Interrogatory No. 8</u>

> Identify all persons, firms and/or entities that Priceline and/or WebHouse solicited, consulted or utilized in any actual or contemplated valuation or fairness opinion regarding the WebHouse warrants received by Priceline in or about October 1999, and, as to each firm and/or entity, identify the individuals involved as well as those involved at either Priceline and/or WebHouse; describe the extent of the involvement of each; and set forth the dates on which Priceline and/or WebHouse solicited, consulted or utilized such person, firm or entity.

<u>Response to Interrogatory No. 8</u>

      Defendants object to Interrogatory No. 8 to the extent that it seeks information regarding the conduct of WebHouse that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory's use of the term "involved" as vague and ambiguous. Subject to and without waiving these objections or the General Objections, Defendants state that <u>Robert Mylod</u> of priceline

engaged Murray Devine & Co. independently to value the warrant to purchase

WebHouse stock received by priceline pursuant to the October 26, 1999 Warrant

Agreement (the "WebHouse Warrant"). In particular, Murray Devine issued a fair

market valuation of the WebHouse Warrant (as of November 1, 1999) on January 12,

2000 and prepared a draft update to that valuation in March of 2000. On information and

belief, Dennis Murray and Christopher Hanssens at Murray Devine prepared these

valuations on behalf of Murray Devine. See also Item 14 of Defendants' Initial

Disclosures.

Interrogatory No. 9

> Identify all efforts or attempts to update or confirm the October 1999 valuation of
> WebHouse warrants received by Priceline, and/or to ascertain the value at which
> those warrants were carried on Priceline's financial statements issued or published
> during the Class Period defined in Plaintiffs' Consolidated Amended Complaint.

Response to Interrogatory No. 9

Defendants object to Interrogatory No. 9 as vague and ambiguous.

Subject to and without waiving this objection or the General Objections, Defendants refer

to the preceding Response to Interrogatory No. 8.

Interrogatory No. 10

> Identify all analyses used to determine whether Priceline should have taken a
> charge and/or set up a reserve in connection with the value of the WebHouse
> warrants received by Priceline.

Response to Interrogatory No. 10

Defendants object to Interrogatory No. 10 as vague and ambiguous and to

the extent it assumes disputed facts and/or legal conclusions. Subject to and without

waiving these objections or the General Objections, Defendants state that priceline

engaged Murray Devine to issue a fair market valuation of the WebHouse Warrant and

applied Generally Accepted Accounting Principals to reflect the fair value of that warrant

13

on priceline's 1999 10-K financial statement as a reduction of warrant expense. <u>See</u>

priceline 3/30/00 Form 10-K at 29. Priceline's auditors issued an unqualified opinion on

these financial statements, which included priceline's accounting treatment for the

WebHouse Warrant. <u>Id.</u> at 42.

Interrogatory No. 11

>Describe all efforts by Deloitte to determine: a) the value of the WebHouse
>warrants received by Priceline; b) the allocation of expenses between Priceline
>and WebHouse; and/or c) whether or not Priceline's and WebHouse's financials
>should be combined or consolidated.

Response to Interrogatory No. 11

Defendants object to Interrogatory No. 11 on the grounds that it calls for

information that is outside of Defendants' possession, custody or control. Subject to and

without waiving this objection, Defendants state that they lack knowledge or information

sufficient to answer this interrogatory.

Interrogatory No. 12

>Identify all persons or entities who were responsible for or otherwise involved in
>the launch of WebHouse and the WebHouse website and, for each such person,
>identify the extent of their involvement.

Response to Interrogatory No. 12

Defendants object to Interrogatory No. 12 on the grounds that it calls for

information regarding WebHouse that is outside of Defendants' possession, custody or

control. Defendants further object to this interrogatory as overbroad and unduly

burdensome. Defendants further object to this interrogatory's use of the term "involved"

as vague and ambiguous. Subject to and without waving these objections or the General

Objections, Defendants state, on information and belief, that persons primarily

responsible for the launch of WebHouse and its website may have included (but may not

have been limited to):

1.    Jonathan Otto

2.    Jose Suarez
       *contact information not known*

3.    Jay S. Walker

Interrogatory No. 13

Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting participations in WebHouse by manufacturers, wholesalers, retailers or distributors.

Response to Interrogatory No. 13

Defendants object to Interrogatory No. 13 to the extent that it seeks information regarding the conduct of employees of WebHouse, Walker Digital or third-parties that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory's use of the term "involved" as vague and ambiguous. Subject to and without waiving these objections or the general objections, Defendants state, on information and belief, that persons who may have solicited businesses to provide products or services to WebHouse during the Alleged Class Period may have included, but may have not been limited to, the following (positions at WebHouse provided):

1.    Adam DaCosta
       *Vice President, Business Development & Chief Food Merchant*
       8 Manitou Road
       Westport, CT 06880
       (203) 227-9820

2.    Paul Francis
       *Chief Operating Officer*

3.    Jill Gleeson
       *Vice President, Business Development*
       *contact information not known*

4.    Kimberly Guise
       *Director, Manufacturer Marketing*

15

*contact information not known*

5. Don King
   *Vice President, Business Development*
   *contact information not known*

6. Rob Voss
   *Executive Vice President, Manufacturer Relations &*
   *Merchandising*
   19 Northfield Ave.
   Weston, CT 06833
   (203) 341-0867

7. Jay S. Walker

Interrogatory No. 14

Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting members to participate in WebHouse.

Response to Interrogatory No. 14

Defendants object to Interrogatory No. 14 to the extent that it seeks

information regarding the conduct of employees of WebHouse, Walker Digital or third-

parties that is outside of Defendants' possession, custody or control. Defendants further

object to this interrogatory's use of the phrase "involved in soliciting members to

participate in WebHouse" as vague and ambiguous.

Interrogatory No. 15

Identify all manufacturers, wholesalers, retailers or distributors or any other entities that were solicited by WebHouse or Priceline to participate in WebHouse for the sale of their products through WebHouse but refused to do so; the dates of such solicitations or negotiations; the identities of all persons involved; and, to the extent known, the reason or reasons for such refusal(s).

Response to Interrogatory No. 15

Defendants object to Interrogatory No. 15 on the grounds that it calls for

information regarding WebHouse that is outside of Defendants' possession, custody or

control. Defendants further object to this interrogatory as overly broad and unduly

16

burdensome. Defendants also object to this interrogatory's use of the phrase "participate in WebHouse" as vague and ambiguous. Subject to and without waiving these objections or the General Objections, Defendants state that they are not aware of any instances in which priceline solicited any party to offer products or services through WebHouse. Defendants further state that they lack knowledge or information sufficient to identify which parties (if any) refused such solicitation efforts by WebHouse during the Alleged Class Period.

Interrogatory No. 16

> Identify all manufacturers, wholesalers, retailers, distributors or any other sponsoring parties who participated in the sale of products or services on WebHouse's or Priceline's websites; the dates such entities began to participate; all persons involved for such entities; all documents provided to such entities in connection with their participation; and each type of document which recorded the extent of their participation.

Response to Interrogatory No. 16

Defendants object to Interrogatory No. 16 on the grounds that it calls for information regarding WebHouse that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory as overly broad, unduly burdensome and to the extent it seeks information that is not relevant to any claim or defense of any party in this action and is not otherwise reasonably calculated to lead to the discovery of admissible evidence in this action. Defendants further object to the extent this interrogatory calls for publicly available information. Defendants also object to this interrogatory's use of the phrase "participated in the sale" as vague and ambiguous.

Subject to and without waiving these objections or the General Objections, Defendants state, on information and belief, that:

17

1.       WebHouse established relationships with numerous manufacturers for the provision of groceries through the WebHouse service, which may have included (but may not have been limited to) those listed in Exhibit A to this Response;

2.       WebHouse established relationships with numerous grocery retailers for the fulfillment of grocery purchases made through WebHouse, which may have included (but may not have been limited to) those listed in Exhibit B to this Response;

3.       WebHouse established relationships with numerous gas stations for the provision of gasoline purchases made through the WebHouse service, which may have included (but may not have been limited to) stations affiliated with the companies listed in Exhibit C to this Response; and

4.       WebHouse established relationships with numerous partners for the marketing and promotion of the WebHouse service, which may have included (but may not have been limited to) those listed in Exhibit D to this Response.

Interrogatory No. 17

Describe the types of documents and/or reports created by WebHouse or Priceline that tracked: a) discounts given by WebHouse to customers; b) prices for products or services offered or sold by WebHouse; c) profit margins or subsidies for products or services offered or sold through WebHouse; and/or d) subsidies provided by WebHouse for products or services offered or sold through WebHouse.

Response to Interrogatory No. 17

Defendants object to Interrogatory No. 17 on the grounds that it calls for information regarding WebHouse that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory as overly broad and unduly burdensome. Defendants also object to subpart (d) of this interrogatory as redundant and duplicative of subpart (c) of this interrogatory. In addition, Defendants object to this

18

interrogatory on the grounds that the answers sought may be derived or ascertained from documents that Defendants may produce in response to Plaintiffs' First Document Request. Subject to and without waiving these objections or the General Objections, Defendants state that they are not aware of any documents created by priceline that tracked information regarding WebHouse's discounts, prices, profit margins, or subsidies during the Alleged Class Period. Defendants further state, on information and belief, that WebHouse personnel created a variety of documents to record these types of information, including but not limited to "Discount Margin Reports" that tracked the discounts associated with products and/or product types.

Interrogatory No. 18

> Identify all persons, including but not limited to Priceline's employees, officers, directors, or agents, who were involved in Priceline's issuance of warrants to any airline before or during the Relevant Time Period and identify the extent of each person's involvement.

Response to Interrogatory No. 18

Defendants object to Interrogatory No. 18 as overly broad and to the extent it seeks information that can be obtained through other, less burdensome means of discovery. Defendants further object to this interrogatory's use of the term "involvement" as vague and ambiguous. Subject to and without waiving these objections or the General Objections, Defendants state that all issuances of warrants to airlines occurred in 1998 and 1999, prior to the Alleged Class Period. The following persons were primarily responsible for the decision to issue warrants to airlines during that timeframe

> 1. Richard S. Braddock
>
> 2. Tim Brier
>
> 3. Paul Francis

19

4.    <u>Trey Urbhan</u>

5.    Jay S. Walker

<u>Interrogatory No. 19</u>

Identify all procedures or policies proposed, considered, used or implemented at Priceline and/or WebHouse to receive, analyze and/or process complaints by customers. Identify the types of documents and/or databases that tracked, analyzed or responded to such complaints.

<u>Response to Interrogatory No. 19</u>

Defendants object to Interrogatory No. 19 to the extent that it seeks information regarding WebHouse that is outside of Defendants' possession, custody or control. Defendants further object to this request as overly broad and unduly burdensome. Subject to and without waiving these objections or the General Objections, Defendants state that, during the Alleged Class Period, priceline customer inquiries, including complaints, were processed through one of the call center operations identified in Response to Interrogatory No. 26. Customer service agents at those locations used Silknet Software's customer service software (which was being rolled out during the Alleged Class Period to replace priceline-developed Customer Service Workstation software), as well as Kana Response, to address customer inquiries. The Silknet software enabled customer service agents to categorize customer inquiries and respond based on uniform response prompts determined by product line and inquiry type. If the customer's issue could not be resolved by the customer service agent, the matter would be referred to escalation customer service teams for the particular issue. Kana Response was used by agents to receive, review and respond to customer e-mail.

Defendants further state, on information and belief, that WebHouse customer service staff also used a Silknet solution to manage customer inquiries.

20

Interrogatory No. 20

>  Identify all analyses, budgets, reports, projections or studies of WebHouse's profitability and/or financial performance and identify all persons involved in creating these documents.

Response to Interrogatory No. 20

Defendants object to Interrogatory No. 20 to the extent that it seeks information regarding WebHouse that is outside of Defendants' possession, custody or control. Defendants further object to this request as vague and ambiguous. In addition, Defendants object to this interrogatory on the grounds that the answers sought may be derived or ascertained from documents that Defendants may produce in response to Plaintiffs' First Document Request. Subject to and without waiving these objections or General Objections, Defendants state, on information and belief, that WebHouse's financial executives (as identified in the following Response to Interrogatory 27) and their staff created a variety of documents concerning to WebHouse's profitability and financial performance.

Interrogatory No. 21

>  Identify all persons and/or entities that serviced, sought to improve or upgrade, maintained, installed, expanded, programmed, integrated, implemented and/or developed Priceline's, Walker Digital's and/or WebHouse's computer systems and websites during the Relevant Time Period, and, for each such person and/or entity, describe their involvement.

Response to Interrogatory No. 21

Defendants object to Interrogatory No. 21 to the extent that it seeks information regarding WebHouse's and Walker Digital's computer systems and websites that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections or the General Objections, Defendants state: that the employees listed in

21

Exhibit E to this Response, and the contractors listed in Exhibit F to this Response, may

have worked on priceline's computer systems and/or website during the Alleged Class

Period (some of whom may also have worked on WebHouse's computer systems and

website during the Alleged Class Period, pursuant to the October 26, 1999, Marketing

and Technical Services Agreement, see supra Response to Interrogatory No. 6);  on

information and belief, that persons listed in Exhibit G to this response may have worked

on WebHouse's computer systems and website during the Alleged Class Period.

Interrogatory No. 22

> Identify all persons responsible for or otherwise involved in analyzing or
> monitoring any actual or potential competitors or competition faced by Priceline
> and/or WebHouse, and for each such person describe the extent of their activity
> and the types of documents used or created to monitor such competitors or
> competition.

Response to Interrogatory No. 22

Defendants object to Interrogatory No. 22 to the extent that it seeks

information regarding WebHouse that is outside of Defendants' possession, custody or

control.  Defendants further object to this interrogatory on the grounds that it is overbroad

and unduly burdensome, and to the extent it seeks publicly available information.

Defendants also object to this interrogatory's use of the phrase "persons responsible or

otherwise involved" as vague and ambiguous.

Subject to and without waiving these objections or the General Objections,

Defendants state that they are not aware of any distinct individual or group of individuals

at priceline responsible for analyzing priceline's competitors or competition (actual or

potential) during the Alleged Class Period, nor are they aware of any particularized

documents designed for this purpose.  Rather, they believe that monitoring, analyzing and

responding to competitors and competition were done on a company-wide basis

throughout priceline's product groups, and may be reflected in a wide variety of priceline's business records. Defendants further state that they are aware of numerous industry analysts who monitored and analyzed priceline's actual and potential competition or competitors, many of whom are cited in the Consolidated Amended Complaint and/or noted in Plaintiffs' Rule 26(a)(1) Disclosures. Defendants lack knowledge or information sufficient to identify whether and how other third parties (including WebHouse) monitored and/or analyzed competition faced by priceline and/or WebHouse.

Interrogatory No. 23

> Identify any investigation or inquiry, whether formal or informal, made of Priceline or of any of its operating units (including but not limited to WebHouse), officers, directors or employees, including the Defendants, by any attorney, accountant, analyst or the like retained by WebHouse or Priceline to conduct such investigation, by a grand jury, the Better Business Bureau, or any federal, state or non-governmental regulatory agency or body. For each such investigation or inquiry, identify the date it began, who conducted the investigation, any resolution, including the date of any resolution and any sanctions, reprimands, fines and/or penalties paid, and identify all documents received by or produced by or on behalf of Priceline and/or WebHouse or any of the Defendants related to or in connection with any such investigation or inquiry.

Response to Interrogatory No. 23

Defendants object to Interrogatory No. 23 to the extent that it seeks information regarding WebHouse that is outside of Defendants' possession, custody or control. Defendants further object to this interrogatory to the extent it mischaracterizes the relationship between Priceline and WebHouse. Defendants further object to this request as overbroad, unduly burdensome, vague and ambiguous.

Subject to and without waiving these objections or the General Objections, Defendants state that there were three primary inquiries and/or investigations into priceline's business operations during the Alleged Class Period:

23

First, in early 2000, the Connecticut Better Business Bureau ("BBB") commenced an inquiry into certain customer complaints regarding priceline's products and services. On March 24, 2000, the BBB suspended priceline's BBB membership pending resolution of the BBB's concerns regarding several issues. Thereafter, priceline cooperated fully with the BBB to address its concerns, resolve outstanding customer complaints, and make improvements to the priceline service. On September 14, 2000 the BBB informed priceline that it had revoked its membership, which decision was appealed by priceline on October 13, 2000. On December 19, 2000, the BBB granted priceline's appeal and restored to priceline all privileges of BBB membership.

Second, on July 7, 2000, the Federal Trade Commission ("FTC") informed priceline that it had commenced an investigation into priceline's current and past advertising practices with respect to its airline ticket services and WebHouse's grocery services. Thereafter, priceline cooperated fully with the FTC in the conduct of its investigation. On May 11, 2001, the FTC informed priceline that it had closed its investigation. No sanctions, reprimands, fines or other penalties were imposed by the FTC against priceline.

Third, on October 16, 2000, the Connecticut Attorney General's Office ("AG") notified priceline that it had commenced an investigation into priceline's advertising and other business practices. Thereafter, priceline cooperated fully with the AG in the conduct of its investigation. On July 22, 2001, the AG informed priceline that it had concluded to take no enforcement action as a result of its investigation. No sanctions, reprimands, fines or other penalties were imposed by the AG against priceline.

24

Interrogatory No. 24

Identify all efforts to expand WebHouse beyond the sale of groceries and gasoline in the United States, whether by geographic area or product and, for each, identify:

a) what additional products or services were involved;
b) what countries such expansion was contemplated to occur or did occur;
c) what partners, joint ventures or other participants were involved;
d) what personnel from WebHouse, Priceline or Walker Digital were involved;
e) what manufacturer, wholesaler, retailer or sponsoring parties were involved;
f) the types of documents created related to actual or contemplated expansion; and
g) the results of such actual or contemplated expansion.

Response to Interrogatory No. 24

Defendants object to Interrogatory No. 24 on the grounds that it seeks information about WebHouse that is outside of Defendants' possession, custody or control. Subject to and without waiving this objection or the General Objections, Defendants state that they are not aware of any efforts during the Alleged Class Period to expand WebHouse beyond the sale of groceries and gasoline in the United States.

Interrogatory No. 25

Identify all individuals or entities who received stock, stock options or warrants of Priceline, WebHouse or Walker Digital (other than securities acquired through trades on the open market) during the Relevant Time Period, and for each such person identify the number of shares, options or warrants acquired, the date acquired, the consideration paid, the value when acquired, the date of maturity or exercise, and identify all documents evidencing such transactions.

Response to Interrogatory No. 25

Defendants object to Interrogatory No. 25 on the grounds that it seeks information about the conduct of WebHouse and Walker Digital that is outside of their possession, custody or control. Defendants further object to this interrogatory as overly broad and unduly burdensome, in particular with respect to its request for "identification"

25

of "all" individuals, entities and documents and of "the value [of shares, options or warrants] when acquired". Defendants further object to this interrogatory to the extent it calls for publicly available information reflected, for example, in the Form 4 disclosures filed with the United States Securities Exchange Commission. In addition, Defendants object to this interrogatory on the grounds that the answers sought may be derived or ascertained from documents that Defendants may produce in response to Plaintiffs' First Document Request. Defendants further object to this interrogatory to the extent it seeks confidential, personal information about the compensation and trading activity of priceline employees that requires additional protections prior to disclosure, as more fully addressed in Defendants' pending Cross-Motion for an Appropriate Protective Order.

Interrogatory No. 26

Identify the location of all customer service and call center operations and the people in charge of such service center or call center operations.

Response to Interrogatory No. 26

Defendants object to Interrogatory No. 26 as vague and ambiguous, particularly with respect to its use of the phrase "people in charge" and its failure to identify whose "customer service and call center operations" it seeks to have Defendants identify. Subject to and without waiving these objections or the General Objections, Defendants state that Andy Abowitz, 210 West 78th Street, New York, NY 10024, served as Senior Vice President, Operations, from the beginning of the Alleged Class Period until approximately March 2000. Thereafter, Marlene Beeler, 4533 SW Bermuda Way, Palm City, FL 34990-1219, (772) 223-3486, assumed that position at priceline, through the end of the Alleged Class Period.

Priceline's call center operations were located at the following:

Calltech Communications

4335 Equity Drive
Columbus, OH 43228

Precision Response Corporation
14100 NW 4th Street
Sunrise, FL 33325

eSupportNow Inc.
226 Mystic Ave
Medford, MA 02155

Communications and Commerce Inc.
5245 College Drive
Murray, UT 84132

In addition, customer service agents operated out of priceline's

headquarters in Stamford, CT during the Alleged Class Period.

Interrogatory No. 27

Identify every senior employee of WebHouse, their position, scope of
responsibilities, dates of employment and state whether they were or are
employees or contractors of Priceline and their last known address and telephone
number. If such persons were or are employed by Priceline, please state their
position, scope of responsibilities and dates of employment with Priceline.

Response to Interrogatory No. 27

Defendants object to Interrogatory No. 27 on the grounds that it seeks

information about WebHouse that is outside of their possession, custody or control.

Subject to and without waiving this objection or the General Objections, Defendants

identify, based on information and belief, the following individuals, noting positions at

WebHouse during the Alleged Class Period (unless previously provided):

1.      Paul Brietenbach
        *Chief Marketing Officer*
        33 Hillbrook Road
        Wilton, CT 06897

2.      Lynne Brown
        *Senior Vice President, Human Resources*
        *contact information not known*

27

3.   Peter Burgess
     *Executive Vice President, Partner Programs*
     39 Lisa Lane
     Stamford, CT 06903
     (203) 609-9008

4.   Brad Burmaster
     *Senior Vice President Business Development, Gasoline Services*
     *contact information not known*

5.   T. Scott Case
     *President, Gasoline Services*
     2 Maplewood Lane
     Wilton, CT 06897

6.   Marisa Dore
     *Senior Vice President, Marketing*
     825 Hope Street, #2
     Stamford, CT 06907
     (203) 325-0245

7.   Paul Francis

8.   B.J. Greenspan
     *Senior Vice President, IT Business Group*
     718 Palmer Avenue
     Teaneck, NJ 07666

9.   Kevin Goldman

10.  Raymond Hamilton
     *Senior Vice President, Retail Technology*
     1724 Lower Church Street
     Virginia Beach, VA 23455
     (909) 927-9048

11.  Michael Herskovitz
     *Senior Vice President, IT Operations*
     *contact information not known*

12.  Marc McEnroe
     *General Counsel*
     1890 Palmer Avenue
     Larchmont, NY 10538
     (914) 627-2080

13.  James McGill
     *Chief Information Officer, Executive Vice President*

28

*contact information not known*

14.  Steve Mott
     *President, Groceries*
     1386 Long Ridge Drive
     Stamford, CT 06903
     (203) 322-6656

15.  <u>Robert Mylod</u>
     *Chief Financial Officer*

16.  Jonathan Otto

17.  Thomas Ronan
     *Senior Vice President, Operations*
     125 Armand Road
     Ridgefield, CT 06877
     (203) 894-4688

18.  Ernest Scheideman
     *Controller*
     11 Louisa Court
     Wayne, NJ 07470
     (973) 389-0363

19.  Jose Suarez
     *Senior Executive Vice President, New Products*

20.  Robert Voss

21.  Jay S. Walker
     *Founder*

Of the foregoing, the following persons had previously been employed by

priceline:  T. Scott Case (former priceline Chief Technology Officer), Paul Brietenbach

(former priceline Chief Marketing Officer), <u>Paul Francis</u> (former priceline Chief

Financial Officer), <u>Robert Mylod</u> (former priceline Senior Vice President, Finance).

Mr. Mylod is presently employed by priceline as its Chief Financial Officer.  <u>See</u> Item 5

of Defendants' Initial Disclosures.

29

Interrogatory No. 28

Identify the "key managerial, marketing, planning, financial, technical and operations personnel" referred to at page 18 of Priceline's Form 10-K 405 filed on March 30, 2000.

Response to Interrogatory No. 28

Subject to and without waiving the General Objections, Defendants state

that the individuals referenced in the above-quoted passage of priceline's March 30, 2000

10-K may have included priceline's senior management at the time of that disclosure,

including (positions in March 2000 noted):

1.  Marlene Beeler
    *Senior Vice President, Operations*

2.  Richard S. Braddock
    *Chief Executive Officer*

3.  Tim Brier
    *President, Travel*

**30**

4.      Jeffrey Boyd
        *Executive Vice President, General Counsel*
        34 Brookridge Drive
        Greenwich, CT 06830
        (203) 618-0656

5.      Thomas P. D'Angelo

6.      Brett Keller
        *Vice President, Marketing*
        62 Longview Drive
        Ridgefield, CT 06877
        (203) 438-2881

7.      Maryann Keller
        *President, Auto Services*
        15 Bayberry Lane
        Greenwich, CT 06831
        (203) 625-5552

8.      William M. McCadden
        *Chief Marketing Officer*

9.      Heidi Miller
        *Senior Executive Vice President, Strategic Planning &
        Administration and Chief Financial Officer*

10.     Baruch ("Ben") Ness
        *Senior Vice President, Financial Services*
        40 Pine Ridge Road
        Fairfield, CT 06432

11.     Ron Rose
        *Chief Technology Officer*

12.     Daniel H. Schulman
        *President & Chief Operating Officer*

13.     Mitchell Truwit
        *Senior Vice President, Corporate Development*
        64 Rowayton Avenue
        Rowayton, CT 06853
        (203) 838-5459