### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| _____ | : | |
| | : | **MASTER FILE NO.** |
| **This document relates to:** | : | **3:00cv01884(DJS)** |
| | : | |
| **ALL ACTIONS** | : | **March 30, 2005** |
| | : | |
| | : | |

### PLAINTIFFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY

Plaintiffs respectfully submit this memorandum of law in opposition to Defendants'
Motion to Compel Discovery of Plaintiffs.  For the reasons discussed below, Defendants' Motion
should be denied.

### INTRODUCTION

Defendants' Motion to Compel ("Defendants' Motion" or "Def. Mem.") seeks the
production of documents that are either privileged, not relevant to any claims or defenses in this
action – let alone any issues related to class certification – or not reasonably calculated to lead to
the discovery of any admissible evidence.  Defendants have moved to compel the production of
documents in response to Document Requests 1 and 2 (which seek documents collected or
otherwise received in connection with any investigation or communications by Plaintiffs or
counsel for Plaintiffs concerning any allegation in any complaint in this action); 5 and 7 (which
seek documents concerning Plaintiffs investment policies, practices and the composition of

Plaintiffs' investment portfolios); and 11 (which seeks documents concerning any action in which any Plaintiff was put forth as a class representative).[1]

### I.      Document Requests 1 and 2 Seek Documents that are Clearly Protected by the Work Product Doctrine and the Attorney-Client Privilege

Defendants' Document Requests 1 and 2 seek documents that fall squarely within the work-product doctrine and/or attorney-client privilege. "[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable, without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(2); *see Hickman v. Taylor*, 329 U.S. 495 (1947)(work product protection is afforded to materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses, and inferences drawn from interviews). In response to these Requests, Plaintiffs' stated that they have no responsive documents that are not privileged. For their part, Defendants have made no showing of need, and certainly not any substantial need, for these documents.

Document Request 1 seeks "all documents collected, obtained or otherwise received in connection with any investigation by Plaintiffs or counsel for Plaintiffs concerning any allegation in the Amended Complaint or any other complaint in this Action or the Consolidated Actions." Defendants' First Request for the Production of Documents. Plaintiffs objected to this request on the grounds that it is overly broad and seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Plaintiffs stated they have no documents responsive to this request that are not protected by the privileges. As the documents requested

---

[1] Plaintiffs Weiss is the only named Plaintiff who has participated as a named Plaintiff in another class action and he is in the process of gathering documents responsive to Document Request Number 11.

fall clearly within the applicable privileges, the only possible reasons Defendants might have for seeking these documents is to inappropriately attempt to re-litigate the sufficiency of the Complaint, to gain materials that reveal Plaintiffs' counsel's mental impressions, or to use Plaintiffs' counsel's investigation as a roadmap to their own investigation, all to the effect of obtaining an unwarranted and inequitable litigation advantage over Plaintiffs. None of these reasons warrant compelling Plaintiffs or their counsel to reveal their work product.

Similarly, Plaintiffs responded to Document Request Number 2, which seeks documents that capture the communications between Plaintiffs or Plaintiffs' counsel and any other person concerning the allegations in the Complaints, by stating that they have no documents responsive to this request that are not protected by the attorney-client privilege and/or work-product doctrine. As was the case with Request Number 1, Defendants' second document request seeks documents that are clearly within the work product doctrine. Moreover, communications between counsel and Plaintiffs are almost inviolate and cannot be compelled under the circumstances presented here.

Tellingly, the recitation of Request 2 in Defendants' Motion to Compel does not reflect the actual language of the Request. To be clear, Defendants' Second Document Request seeks "all documents concerning or reflecting communications with any person in connection with any investigation by Plaintiffs or counsel for Plaintiffs concerning any allegation in the Amended Complaint or any other complaint in this Action or the Consolidated Actions." Now, in their Motion to Compel, Defendants claim that they are not seeking documents that reveal attorney-client communications or the mental impressions of counsel. This new interpretation of Document Request 2 was never communicated to Plaintiffs during the parties' meet and confers

and Defendants' apparent change of heart regarding the discoverability of the documents requested in their Second Request demonstrates the appropriateness of Plaintiffs' objection.

As is the case with Document Request 1, Document Request 2 seeks documents that are well within the bounds of the work-product doctrine and the attorney-client privilege. Defendants are seeking protected documents that would reveal a roadmap of Plaintiffs' litigation strategy. Although Plaintiffs continue to object to the production of any documents that fall within any applicable privileges, in response to Defendants' new interpretation of the Request, Plaintiffs submit that they have located no documents in their possession, custody or control that reflect communications between Plaintiffs and others regarding the allegations in the Complaint that are not protected by the attorney-client privilege.

The cases cited by Defendants clearly do not support their position that the documents requested are not entitled to protection under the work-product doctrine and in fact actually support application of the protection here. For example, without indicating how the quoted language is applicable to this discovery dispute, Defendants cite the Eighth Circuit case of *Petersen v. Douglas County Bank & Trust Co.,* 967 F.2d 1186, 1189 (8th Cir. 1992) for the statement that "documents are not protected under the work product doctrine . . .merely because [a] party transferred them to their attorney." *Id.* However, *Peterson* also confirms the accepted principal that discovery of documents prepared in anticipation of litigation is restricted and "[d]ocuments prepared in anticipation of litigation may include business records that were specifically selected and compiled by the other party or its representative in preparation for litigation and that the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation." *Id.* (internal citation omitted).[2] Defendants' Document

---

[2] Defendants also cite *In re Grand Casinos, Inc. Sec. Litig.*, 181 F.R.D. 615 (D. Minn. 1998) for a similar premise. However, like *Peterson*, *In re Grand Casinos* recognizes the protections afforded to documents that reflect counsel's

Requests 1 and 2 seek documents that fall clearly within this protection and their Motion to Compel the production of protected documents should be denied.

II.      **Defendants' Document Requests Numbers 5 and 7 Are Not Relevant to Plaintiffs' Claims or the Issue of Class Certification**

A.   Plaintiffs' Non-Priceline Investments are Irrelevant
to the Class' Claims

Document Request Number 5, in Defendants' First Set of Documents Requests and Request 7 in Defendants' Second Set of Document Requests, seek documents related to Plaintiffs' investment portfolios and investing strategies.  Plaintiffs agreed to produce documents responsive to these Requests to the extent that the documents relate or refer to the Plaintiffs' investments in Priceline.com securities during the class period.  Defendants contend they are entitled to obtain information regarding Plaintiffs' non-Priceline investments to rebut the presumption of reliance and to determine Plaintiffs' levels of sophistication in a misguided attempt to show they are atypical of the class.

Defendants' discovery requests seek irrelevant material and reveal Defendants' misapprehension regarding Plaintiffs' claims.  Given that Plaintiffs' claims are brought on behalf of a class of purchasers of Priceline securities, there is no reasonable basis for Defendants to seek such intrusive discovery of Plaintiffs' personal investments outside of those made in Priceline. The mere fact that Plaintiffs may have made personal investments in securities other than Priceline -- which may, or may not, be different from investments made by other class members -- has no material impact on their ability to represent the class.  Plaintiffs' investment decisions

---

thought processes or mental impressions which are exactly the types of documents the Defendants seek here. *Id.* at 622.  By its very nature, any investigation conducted by counsel related to this action is clearly reflective of counsel's mental impressions and thought processes.

or strategies are simply not relevant to the securities fraud claims at issue here or to class certification issues.

In the context of securities class actions, numerous courts have denied extensive discovery of plaintiffs' investment history, holding that such discovery is irrelevant to securities claims or class certification. *See, e.g.*, *In re Avon Sec. Litig.*, No. 91 Civ. 2287, 1998 U.S. LEXIS 18642, at *24 (S.D.N.Y. Nov. 19, 1998) ("Because the fraud on the market theory allows for a rebuttable presumption of reliance at the class certification stage, investor sophistication is largely irrelevant to the issue of class certification."); *Cohen v. Long Island Lighting Co.*, No. CV-84-0588 (LDW), 1986 WL 9961 (E.D.N.Y. May 20, 1986) (sophistication of the proposed class representative was not relevant to any issue in the litigation).

Moreover, it is respectfully submitted that those courts that have allowed discovery of plaintiffs' investments beyond the plaintiffs' investments in the stock at issue in their claims have inappropriately ignored the Supreme Court's pronouncements in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). In *Basic*, the Supreme Court held that:

> where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed ... An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed...

*Basic*, 485 U.S. at 247. As the Supreme Court explained, that Defendants may be able, <u>at trial</u>, to rebut the presumption of reliance by showing: (a) that the market for the stock at issue was already aware of allegedly omitted information, and thus the market was not misled; or (b) that a particular individual investor would have purchased the stock even if he/she was aware of the allegedly omitted or misrepresented information and, thus, did not rely on the integrity of the

market for the security at issue in their claim.  *Id.* at 248-49 & n. 29.  In either event, Defendants'

ability to rebut the presumption of reliance has nothing to do with any class members' other

investments.  *Id.* at 249.  The issues in this case relate to Priceline.com, not any other stock.

Plaintiffs' other investments simply have nothing to do with whether they or anyone else was

misled or otherwise injured by the conduct alleged in the Complaint.

>    B.    The Discovery Requests Are Not Relevant
>          <u>to a Determination of Adequacy or Typicality under Rule 23(a)</u>

Defendants contend that the discovery requested in Document Requests 5 and 7 is

relevant to a determination of  Plaintiffs' adequacy as a class representative under Rule 23(a).  In

particular, they argue that Plaintiffs' investment histories are discoverable because Plaintiffs may

be subject to unique defenses that render them atypical of the class.  This argument fails for

numerous reasons.  First, the proper defenses to Plaintiffs' claims are class wide defenses, not

individualized defenses.  Potential differences among class members have nothing to do with

Plaintiffs' claims on behalf of the class.

Even if a potential difference between class members was germane, no such difference

exists in this case.  Under Rule 23, there is no requirement that the claims of the class

representatives be **<u>identical</u>** to every class member.  The only salient  issue is whether the class

representatives and the proposed class rely on similar legal theories.  As recently stated in

*Teachers' Retirement System of Louisiana v. ACLN Ltd.*, 2004 WL 2997957, *4 (S.D.N.Y. Dec.

27, 2004), "[w]here, as here, the lead plaintiff alleges a common pattern of wrongdoing and will

present the same evidence, based on the same legal theories, to support its claim as other

members of the proposed class, courts have held the typicality requirement to be satisfied,

notwithstanding factual variances in the position of each member.  When inquiring into the

typicality requirement under Rule 23(a)(3), the focus must be on the defendants' behavior and

not that of the plaintiffs." *See Id.* (internal citations omitted).  S*ee also, Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1404 (D. Conn. 1988) ("typicality does not call for precise identity between the claims of the class and those of its would-be representative[s] . . . [t]o the extent that all purchasers throughout the class period share a common interest in proving plaintiffs' allegation[s], this is sufficient to make the claims of the class representatives typical of those of the class members.")(internal citations omitted);  *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465-66 (E.D. Penn. 2000) ("[t]he focus of this inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty.").  Defendants cannot use the class certification discovery process to engage in a fishing expedition to uncover irrelevant and speculative conflicts designed merely to harass the class representatives.

### III.    Defendants' Interrogatories Numbers 7, 8 and 9 Seek Information that is Clearly Protected by the Work-Product Doctrine and/or The Attorney-Client Privilege.

Defendants also move to compel responses to Interrogatories 7, 8 and 9 in Defendants First Set of Discovery Requests.  In Interrogatory No. 7, Defendants ask Plaintiffs to identify those people with whom Plaintiffs' counsel spoke when preparing the Amended Complaint.  In Interrogatory No. 8, Defendants ask Plaintiffs to identify the confidential informants referenced in the Amended Complaint, and in Interrogatory No. 9, Defendants asked Plaintiffs to identify documents that counsel collected when preparing the Amended Complaint.  Plaintiffs objected to these three Interrogatories because they seek information protected from disclosure by the work-product doctrine.  Defendants' arguments against the protection of such information fails for numerous reasons.

A.    The Interrogatories Seek To Improperly Gain
The Work Product Of Plaintiffs' Counsel

Defendants' Motion also strikingly and blatantly seeks to read out of existence the

protections afforded by the work-product privilege.  That doctrine protects from disclosure the

strategy, evaluation and investigation of an attorney or an attorney's representative in

anticipation of litigation or in preparation for trial, unless the party seeking discovery "is unable

without undue hardship to obtain the substantial equivalent of the material by other means."

Fed. R. Civ. P. 26(b)(3).  *See Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947).

Courts have consistently held that the work product doctrine protects the names of

witnesses interviewed by counsel, with the rationale that "if the identity of interviewed witnesses

is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing

mental impressions and trial strategy."  *In re MTI Tech. Corp. Sec. Litig. II,* No. SACV 00-0745

DOC (ANX), 2002 U.S. Dist. LEXIS 13015, at *8 (C.D. Cal. June 14, 2002) (citing

*Massachusetts v. First Nat'l Supermarkets, Inc.,* 112 F.R.D. 149, 154 (D. Mass. 1986)); *Laxalt v.

McClatchy*, 116 F.R.D. 438, 443 (D. Nev. 1987); *McIntyre v. Main St. & Main Inc.,* 2000 U.S.

Dist LEXIS 19617, at *6-7 (N.D. Cal. Sept. 29, 2000).  On this subject, courts have noted that

there is a clear difference between a request under Rule 26(a)(1) for "the identity and location of

persons having knowledge of any discoverable matter," and a request for the names of those

contacted and interviewed by counsel.  As the court held in *First Nat'l Supermarkets*, in

declining to compel defendants' counsel to produce the names of the employees they had

interviewed in connection with that litigation:

> The cases seem to support the distinction between asking the
> identity of persons with knowledge, which is clearly permissible,
> and asking the identity of persons contacted and/or interviewed
> during an investigation, which is not.  The basis for not permitting
> interrogatories to be propounded which seek the names of persons
> interviewed by an adverse party is  . . . the Supreme Court's

> holding in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91
> L. Ed. 451 (1947), that an attorney's "work-product" is protected
> against discovery from an adverse party.

*Id.*, 112 F.R.D. at 152-53 (citing 4 Moore's Federal Practice, para. 26.57[2], pp. 26-166-7 (1984

ed.)); *see also, In re Initial Public Offering Sec. Litig.*, 220 F.R.D. 30 (S.D.N.Y. 2003).

In re MTI Tech., 2002 U.S. Dist. LEXIS 13015, is again directly on point.  In that case

the complaint described but did not name six former employees of the defendant company in

order to satisfy the pleading standards of the PSLRA.  The *In re MTI Tech.* court ruled that such

identification should be protected from disclosure, not only because counsel's choice of persons

to interview constituted work product, but also because such identification in a complaint

brought under the PSLRA case calls for:

> [n]ot a mere list of interviewees, but the identification of
> individuals that are linked to very specific factual contentions in
> the [complaint]. Disclosure of their identity would necessarily
> reveal counsel's opinions regarding the relative importance of
> these witnesses, the highlights of their testimony/factual
> knowledge, and would link any future factual statements by the
> witnesses with Plaintiffs' counsel's legal theories and conclusions
> as outlined in the complaint.

*Id.* at *12.  Similarly, in the instant case, any response to the Interrogatories would reveal not

only the identity of the persons specifically chosen by counsel to be interviewed, but also the

nature of the information provided by each person, since the individuals interviewed are linked

to specific allegations of the Complaint and counsel's assessment of the importance of such

information to counsel's legal theories.

In short, the information sought by Defendants goes to the very heart of counsel's work

product.  *See e.g., In re Gupta Corp. Sec. Litig.*, 1995 U.S. Dist. LEXIS 21847, at *3 (N.D. Cal.

July 14, 1995) (imposing sanctions on defendants for pursuing responses to interrogatories which

asked for the identity of each person contacted by plaintiffs' counsel and the matters discussed,

finding that such interrogatories were well beyond an appropriate request for the identity of persons with knowledge and constituted an invasion of "core work product interests that have been protected since *Hickman v. Taylor*, 329 U.S. 495 (1947)"); *Schbley v. Gould,* 1994 U.S. Dist. LEXIS 4082, at *5 (D. Kan. Mar. 29, 1994) (the work-product rule protects against inquiry of the identity of persons contacted or interviewed during an investigation); *United States v. Urban Health Network, Inc.*, 1993 U.S. Dist. LEXIS 441, at *12 (E.D. Pa. Jan. 19, 1993) ("names and dates of persons interviewed by the government during its investigation are also covered by the work product rule."); *Cruce v. Schuchmann*, 1992 U.S. Dist. LEXIS 21302, at *6 (D. Kan. Dec. 30, 1992) (the work product rule protects against inquiry into "the identity of persons contacted and/or interviewed during an investigation of the incident in anticipation of litigation or for trial."); *United States v. Dist. Council*, 1992 U.S. Dist. LEXIS 12307, at *30 (S.D.N.Y. Aug. 14, 1992) ("the identity of people mentioned in the [complaint] to whom [the governmental agent] spoke, and the substance of her conversations [are] work product", since the people counsel interview "is not factual information to which an adversary is entitled."); *United States v. Dist. Council*, 1992 U.S. Dist. LEXIS 12307, at *30 (S.D.N.Y. Aug. 14, 1992) (the identity of persons mentioned in the complaint to whom investigator spoke constitutes classic work product); *Bd. of Educ. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) (while the identification of persons with knowledge is legitimate; the identification of those persons specifically interviewed by counsel was not a proper subject for discovery).  *See also Seebeck v. GMC*, 1996 U.S. Dist. LEXIS 22629, at *8 (N.D. Ga. May 17, 1996); *BASF Corp. v. Old World Trading Co.,* 1992 U.S. Dist. LEXIS 951, at *10 (N.D. Ill. Jan 30, 1992).

Finally, while the Interrogatories seek information that invades core work product, Defendants have not even attempted to show that they would be subject to "undue burden" if

they were not provided with the information.  Nor can Defendants possibly make that showing,

since nothing prevents them from interviewing or deposing persons whose names have been

provided to them in Plaintiffs' Rule 26 Disclosures.  *See Trustmark Ins. Co. v. Gen. & Cologne*

*Life Re of Am.*, 2000 U.S. Dist. LEXIS 18917, at *11 (N.D. Ill. Dec. 19, 2000) (noting that

"undue hardship" is a difficult burden to meet and is likely to be satisfied "only in rare

situations" such as those involving witness unavailability).  In *In re MTI Tech.*, plaintiffs had

provided defendants with a list of names leading the court to find that defendants had not shown

"substantial need for the particular information sought beyond reducing their investigative costs

by riding on Plaintiffs' coattails."  *In re MTI Tech.*, 2002 U.S. Dist. LEXIS 13015, at 13.

> B.  Sound Policy Grounds Counsel Against Compelling Responses to These
> <u>Interrogatories.</u>

Several policy reasons also militate against providing Defendants with the information

they are seeking.  The first policy reason is found within the structure of the PSLRA itself, which

was intended to limit abusive complaints alleging securities fraud from reaching the discovery

stage, not to impact discovery once a complaint is sustained.  However, by requiring disclosure

of sources used in a complaint, the parameters of discovery would be necessarily altered.  In

*MTI,* court addressed the precise issue of the relationship of the PSLRA to discovery after a

complaint is sustained:

> The PSLRA's involvement in this issue cannot be ignored as it was
> undoubtedly the strict requirements of the PSLRA, and subsequent
> case law, that caused Plaintiffs to include mention of specific
> former employees in the complaint.  Yet, this Court does not
> believe that requiring disclosure at the discovery stage furthers the
> goals of the PSLRA.  Although the PSLRA has a tangential effect
> upon discrete discovery rules, *see, e.g., Medhekar v. U.S. Dist.*
> *Court for the N. Dist. of Cal.*, 99 F.3d 325, 327 (9th Cir. 1996)
> (noting that 15 U.S.C. § 78-u4(b)(3)(B) impacts the timing of
> initial disclosures under Rule 26(b)(1) by providing for a stay of
> discovery during pendency of a motion to dismiss brought

> pursuant to the PSLRA), its primary impact is upon the pleading standards in private securities fraud cases, *see generally* 15 U.S.C. § 78u-4(b). Congress may have sought to reduce discovery costs, but the tool it selected was a heightened pleading standard-- limiting the number of complaints alleging securities fraud that make it to the discovery stage-- and not a revision of the discovery rules themselves. *See SG Cowen Secs. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*, 189 F.3d 909, 911-13 (9th Cir. 1999). . . .

*In re MTI Tech.,* 2002 U.S. Dist. LEXIS 13015, at *14-15. *See also In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 346 (N.D. Cal. 1985) ("the nature of the homework plaintiffs and their counsel did before filing the complaint" is appropriate only under Rule 11). There is, of course, no basis to allege that counsel here has violated Rule 11. The Complaint was upheld by this Court, based on extensive detail, after briefing and argument on Defendants' motions to dismiss. In any event, the PSLRA dictates that such questions are reserved for post-judgment proceedings. *See* 15 U.S.C. §78u-4(c).

The *In re MTI Tech.* court denied a motion to compel the names of sources used in the complaint before it, concluding that the pleading requirements of the PSLRA were not meant to be carried over into the discovery phase once plaintiffs pass "the PSLRA hurdle by stating their allegations with particularity." *Id.* at *16.[3]  *See also Stanley v. Safeskin Corp.,* slip op., Civil No. 99-CV-0454-BTM (LSP) (S.D. Cal. Apr. 12, 2001) (holding that discovery in a PSLRA case is still evaluated under the Federal Rules of Civil Procedure applicable to all civil cases, and denying defendants' motion to compel plaintiffs to reduce their list of knowledgeable persons to the specific sources for plaintiffs' amended complaint pled on information and belief).

---

[3]  The *In re MTI Tech.* court noted that the only reason to discover the names of sources in a complaint would be in connection with a challenge to the sufficiency of the underlying bases of a complaint's allegations brought pursuant to Fed. R. Civ. P. 11. *In re MTI Tech.,* 2002 U.S. Dist. LEXIS 13015, at *16 (citing Fed. R. Civ. P. (b) and (c)) (requiring counsel to certify that all factual contentions in pleadings have evidentiary support and allowing a motion for sanctions if opposing counsel believes the allegation is not warranted.).

Second, the policy concerns which have led various courts to conclude that Plaintiffs should not have to identify their sources by name in pleading their complaints are equally applicable during the discovery phase of the litigation. Providing defendants with the names of the specific sources interviewed by plaintiffs' counsel at the outset of a litigation could result in those persons being subject to retaliation or some other form of interference. In *In re MTI Tech.*, the court addressed this precise issue and noted the important public policy concerns implicated by the disclosure of the names of former employees acting as informants in a PSLRA case:

> Although the whistle-blower privilege is not available in this private suit, that does not lessen the need to consider the practical results of an order requiring disclosure of the employees' identities. The Fifth Circuit generally recognized that former employees acting as informers could face serious consequences if their identities were revealed by plaintiff's counsel. *See Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir. 1972). . . . Thus, there is a legitimate policy concern that militates against requiring disclosure.

2002 U.S. Dist. LEXIS 13015, at *17-18.[4] The *In re MTI Tech*. court noted that although defendants' counsel may ultimately determine through the depositions of former employees whether they have spoken to plaintiffs' counsel, it is still important not to provide the information to defendants' counsel, because "whether the witness is approached as an informant or merely an uninterested witness may have significant consequences." *Id*. at *18, citing *Hodgson v. Charles Martin Inspectors of Petroleum*, Inc. 459 F.2d 303, 306 ( 5th Cir. 1972)

---

[4]  *See also Novak v. Kasaks*, 216 F.3d 300, 314 (2nd Cir. 2000) (observing that "[i]mposing a general requirement of disclosure of confidential sources serves no legitimate pleading purpose while it could deter informants from providing critical information to investigators in meritorious cases or invite retaliation against them."); *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co*., 151 F.R.D. 478, 481 (D.D.C. 1993) ("The Court is unwilling to subject non-parties who work for Alyeska or its owner companies to the possible retaliation that frequently results when a whistleblower is identified. The case law, academic studies, and newspaper accounts well document the kind of treatment that is usually visited upon public and private employees who speak out as a matter of conscience on issues of public concern.").

(noting that when counsel speaks to a witness, counsel can then ascertain whether the information was given reluctantly or voluntarily, whether the tone and manner in which it was given was friendly to the defendant or unfriendly, and whether it was accusatory or favorable.).

Third, Defendants have no countervailing argument that they need this additional disclosure, or that the lack of such disclosure would prejudice them in any way from fully developing their defense to the claims in this action.  To the extent Defendants seek the identities of persons with "knowledge of any discoverable matter," Plaintiffs have provided them with that information in their Initial Disclosures, which includes all persons, other than consulting experts, interviewed by Plaintiffs' counsel.  Defendants are now free to interview or depose any of the individuals listed in those Initial Disclosures.[5]   To the extent that Defendants seek to determine which persons Plaintiffs intend to use at trial to support their claims, that information will be timely produced pursuant to Fed. R. Civ. P. 26(a)(3) or can be obtained through "contention" interrogatories served at the appropriate time.  *See* Fed. R. Civ. P. 33(c).  Defendants requested discovery is clearly inappropriate.

        C.      Plaintiffs Should Not Be Compelled To Provide The Names Of The Sources Identified In The Complaint

On November 15, 2004, Plaintiffs submitted their Initial Disclosures pursuant to Rule 26(a)(1), in which they specifically identified each individual "likely to have discoverable information" about this case.[6]  Defendants now seek the names of those within Plaintiffs' Disclosure list who were interviewed by counsel.  Defendants simply have no right under Rule 26(a)(1) to this further delineation of the Plaintiffs' Initial Disclosure list.  The only possible

---

[5]  Defendants can hardly argue that requiring them to undertake the same activities as Plaintiffs' counsel undertook, *i.e.*, interviewing potential witnesses, would be unduly burdensome to them.  Indeed, the Supreme Court concluded that it was not.  *See Hickman v. Taylor*, 329 U.S. 495 (1947), discussed infra.

[6] Plaintiffs also submitted a Revised 26(a)(1) Disclosure to reflect additional information.

reason for Defendants to obtain the information requested in these Interrogatories is to interfere with the sources of the Complaint, or to use Plaintiffs' counsel's investigation as a roadmap to their own investigation. Neither reason justifies disclosure of the information sought by Defendants.

The proper purpose of interrogatories under Fed. R. Civ. P. 33 is to "enable a party to prepare for trial, to narrow the issues and thus help determine what evidence will be needed at the trial, and to reduce the possibility of surprise at trial." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2162 (2d ed. 1994*). See also, Farran v. Johnston Equip., Inc.,* 1995 U.S. Dist. LEXIS 6649, at **13-14 (E.D. Pa. May 11, 1995). Defendants here seek information that is not consistent with this purpose. Through these Interrogatories, Defendants seek to ascertain the identities of persons who provided Plaintiffs' counsel with information <u>in connection with Plaintiffs' counsel's drafting of the Complaint</u>, not the persons Plaintiffs intend to use <u>to support their claims at trial</u>.

To the extent that Defendants seek to determine the persons that Plaintiffs will use to support their claims at trial, that information can be sought through properly framed interrogatories, often referred to as "contention interrogatories." *See, e.g., Towner v. Med James, Inc.,* 1995 U.S. Dist. LEXIS 11669, at *9 (D. Kan. Aug. 9, 1995) (purpose of contention interrogatories is to "narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondents' position."); *McCarthy v. Paine Webber Group*, 168 F.R.D. 448, 450 (D. Conn. 1996) (contention interrogatories include those which ask a party "to state all the facts on which it bases its contentions" or "to state all the evidence on which it bases its contentions"). Of course, even such properly framed contention interrogatories would only be appropriate <u>at the end of discovery</u>. *See, e.g., Thomas & Betts Corp. v. Panduit*

*Corp.*, 1996 U.S. Dist. LEXIS 4494, at *7 (N.D. Ill. Apr. 8, 1996) ("The general policy is to defer contention interrogatories until discovery is near an end.").[7]  In any event, Defendants will be timely provided with the information Plaintiffs intend to use to support their claims pursuant to Plaintiffs' pre-trial disclosure obligations under Fed. R. Civ. P. 26(a)(3).

Significantly, the information sought in the Interrogatories is irrelevant and unnecessary, since Plaintiffs may choose not to use some or any of the sources referenced in the Complaint. The discovery stay imposed prior to the disposition of the motion to dismiss (*see* 15 U.S.C. § 78 u-4 (b)(3)(B)) forced Plaintiffs' counsel to operate in a strictly limited investigative universe -- they could only interview willing participants who they were able to identify, locate and gain the cooperation of.  Only now, with the discovery stay lifted, can Plaintiffs' counsel engage in a full exploration of the facts, and it is quite possible that the sources used to support the allegations of the Complaint will be superseded by even better sources.

### D.  The Cases Relied Upon By Defendants Should Not Be Followed

In support of their motion, Defendants rely heavily on *In re Initial Public Offering Sec. Litig.*, 220 F.R.D. 30 (S.D.N.Y. 2003).  However, unlike the Requests in this instance which specifically seek the identities of individuals interviewed by Plaintiffs, the court found that the request in *Initial Public Offering* was specifically "not seeking the names of individuals

---

[7]  *See also* Fed. R. Civ. P. 33(c) (providing that the court may order that contention interrogatories "need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time."); *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985) (warning about the potential abuse of premature contention interrogatories); *Connecticut Indem. Co. v. Markman,* 1993 U.S. Dist. LEXIS 15202, at *12 (E.D. Pa. Oct. 28, 1993) (stating that contention interrogatories should be deferred until the end of discovery); *Ziemack v. Centel Corp.,* No. 92 C 3551, 1995 U.S. Dist. LEXIS 18192, at **6-8 (N.D. Ill. Dec. 6, 1995) (same); *Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 3 (D.D.C. 1995) (same); *B. Braun Med. v. Abbot Lab.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994) (same).

interviewed by plaintiffs or relied upon in the complaint." *Id.* at 35.[8]  Instead, the Defendants in

*Initial Public Offering* were seeking the names of individuals with personal knowledge regarding

specific issues in the case.  *Id*. at 35.  The court in *Initial Public Offering* specifically recognized

the protection afforded when a party seeks the identities of witnesses interviewed or relied upon

by counsel and determined that because the Defendants were not seeking names of individuals

with knowledge such information was not protected by the work product doctrine.  *Id.* at 35-36.

("the cases on which plaintiffs principally rely stand only for the proposition that a party may not

specifically demand the identities of witnesses interviewed or relied upon by counsel.").

Plaintiffs are aware of the requirement under the Fed. R. Civ. P. 26 to provide Defendants with a

list of the names of persons "with knowledge of any discoverable matter" and have provided

Defendants with a Rule 26(a)(1) disclosure listing the names and (if known) the addresses of

persons Plaintiffs believe have knowledge.  However, the requirement of identifying persons

with knowledge does not require the disclosure of persons within that list whom Plaintiffs

interviewed.  *Initial Public Offering* says nothing that offers support to Defendants' argument

and supports Plaintiffs' position that the information requested by Defendants is protected.

      Additionally, the other cases relied on by Defendants are equally unavailing as the

holdings in *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002) and *In re Aetna*

*Inc. Sec. Litig.*, No. Civ. A MDL 1219, 1999 WL 354527 (E.D. Pa. 1999) have been rejected by

later decisions.  In *Ashworth Inc., Sec. Litig.*, 213 F.R.D. 385 (S.D. Cal. 2002) the court stated:

> This Court is not persuaded by the rationale presented in *Aetna* [that, for
> example, identification of individuals that are linked to very specific
> factual contentions in the complaint would not necessarily reveal
> counsel's opinions regarding the relative importance of these witnesses].

---

[8] Defendants asserted that they are not seeking the identities of persons whom plaintiffs' counsel interviewed in
connection with the Complaint (Def. Mem. at 17)  however, it is clear from the specific language of the requests that
the identities are exactly what Defendants are seeking.

Therefore, this Court finds the *Theragenics* decisions also unpersuasive. Additionally, this Court agrees with the *MTI Technology* court's rejection of the *Aetna* court's finding that disclosure would be "consistent with the policy considerations underlying" the PSLRA… The court noted that "the toll [Congress] selected was a heightened pleading standard - - not a revision of the discovery rules themselves."

*Id.* (quoting *In re MTI Tech.*). The *MTI* court also rejected this rationale stating that "this court finds the *Aetna* court's rationale for discounting any potential work product content unpersuasive for numerous reasons and declines to follow the district court opinion." *MTI*, 2002 U.S. Dist. LEXIS 13015, at *11. Thus, Defendants' reliance on *Initial Public Offering* is entirely misplaced as it does not address the facts presented in this instance and the cases cited by Defendants that do address the issue in this case have been squarely rejected by subsequent cases.

**IV.    <u>Conclusion</u>**

For all of the foregoing reasons, Plaintiffs respectfully request that the motion to compel be denied.

Dated: March 30, 2005

Respectfully submitted,

_____
SCOTT + SCOTT, LLC
David R. Scott ct16080
Erin Comite ct24886
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**Co-Lead Counsel**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 30, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

_____

Erin Green Comite

**SERVICE LIST**

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Joseph L. Clasen
William Kelleher
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Douglas C. Conroy
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9th Floor
Stamford, CT 06901