# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| ———————————————— | : | **MASTER FILE NO.** |
| | : | **3:00CV01844(DJS)** |
| This document relates to: | : | |
| | : | **April 5, 2005** |
| ALL ACTIONS | : | |

### DEFENDANT JAY S. WALKER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DEFENDANTS

PAUL, HASTINGS, JANOFSKY & WALKER LLP
J. Allen Maines
Carl W. Mullis III
Summer B. Joseph
600 Peachtree Street N.E., Suite 2400
Atlanta, Georgia 30308-2222
404-815-2400
404-815-2424 (fax)

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Douglas C. Conroy
Paul R. Dehmel
1055 Washington Boulevard, 9th Floor
Stamford, Connecticut 06901
203-971-7400
203-359-3031 (fax)

Individual Defendant Jay S. Walker submits this Memorandum of Law in opposition to Plaintiffs' Motion to Compel Discovery from Mr. Walker as an individual. As discussed in detail below, Plaintiffs' Motion to Compel should be denied. Plaintiffs' discovery requests are poorly drafted, vague, over-broad, and especially as to individual defendants such as Mr. Walker, over-burdensome.

Mr. Walker has complied with, and continues to comply with, the Federal Rules of Civil Procedure in his responses to Plaintiffs' discovery requests. In many instances, Mr. Walker has gone beyond what the Rules require in an effort to be cooperative and move this litigation forward. Furthermore, Plaintiffs' Motion to Compel is premature, for Plaintiffs have not attempted to meet and confer with counsel for Mr. Walker regarding many of the issues that they now bring before this Court.[1] It is evident from the inaccurate representations in their Motion that Plaintiffs either misunderstood Mr. Walker's position on many of the discovery issues that they raise or were not concerned with accurately reflecting Mr. Walker's position. To date, Mr. Walker has produced over one hundred fifteen thousand (115,000) pages of documents; in contrast, Plaintiffs have produced approximately seventy-five (75) pages. Mr. Walker's voluminous, ongoing production of documents renders many of Plaintiffs' complaints moot.

---

[1] Plaintiffs consistently have failed to distinguish between Jay Walker and the other corporate and individual "Defendants" in this litigation, and many of the references in Plaintiffs' Motion to Compel brief to "Defendants," to conferences with "Defendants," or to the positions taken by "Defendants" do not refer or apply to Mr. Walker. Plaintiffs' intentional intermingling of Mr. Walker with the other "Defendants" leads to numerous misleading or false statements to the Court about Mr. Walker. We will not attempt to address each of Plaintiffs' misstatements in this brief, and our failure to do so should not be construed as any sort of admission by Mr. Walker.

# I. JAY WALKER'S PRODUCTION OF DOCUMENTS

## a. Paper documents

As of the date of this filing, Jay Walker individually has produced 115,646 pages of documents in response to Plaintiffs' First Request for Production of Documents to All Defendants. Mr. Walker's production of documents is ongoing, with an estimated 10,000-30,000 pages being produced approximately every three business days. Mr. Walker anticipates producing approximately 250,000 pages of responsive documents within the next few months.[2] This is an incredibly large production of documents from a single, individual defendant. In fact, such a production probably exceeds the threshold of burdensomeness for one individual, especially when one considers the enormous costs of producing the documents and reviewing them for privileged materials.[3] The enormity of the production and the unfair burden it has placed on one individual defendant, Mr. Walker, becomes even more apparent when one considers that Mr. Walker has produced over 100,000 pages of documents and ultimately will produce around 250,000 pages, whereas all of the other defendants combined have produced 6,316 pages, and Plaintiffs have produced only 75 pages.

Contrary to Plaintiffs' assertions, Mr. Walker is not withholding any of these paper documents on a temporal basis. Mr. Walker is producing all of the non-privileged, responsive paper documents within his possession, custody, or control for the years 1999, 2000, and 2001,

---

[2] Plaintiffs' counsel were aware that Mr. Walker would be producing this volume of documents at the time they filed their Motion to Compel, yet they failed to inform the Court of this fact.

[3] In addition, Plaintiffs are requesting a log of each privileged document. Mr. Walker's attorneys have commenced work on a privilege log, and will be working on it diligently as the document production progresses. It is only fair to state, however, that Mr. Walker's attorneys have been somewhat overwhelmed by the sheer size of this production and reviewing the documents for production. Mr. Walker will provide the log to Plaintiffs when the production is complete, or within a reasonable time thereafter.

as requested in Plaintiffs' First Request for Production of Documents to All Defendants. Mr. Walker strongly disagrees that this is a relevant time period, however. Plaintiffs have misled the Court by asserting that they are seeking documents for only a "two year 'Relevant Period'" (Pl. brief p. 11), when in fact they are seeking documents for a three year period: January 1, 1999 to December 31, 2001. They have articulated no reason why they need virtually all of Mr. Walker's documents for the thirteen months prior to the beginning of the nine-month alleged Class Period, let alone for the fifteen months following the end of the alleged Class Period. It would appear that Plaintiffs either are on a fishing expedition, or they are trying to overwhelm Mr. Walker with the burdensomeness of their Requests, neither of which are proper purposes for discovery.

Despite the unreasonableness of Plaintiffs' Request, Mr. Walker is producing *all* of the non-privileged, responsive paper documents in his possession, custody, or control. As indicated, Mr. Walker anticipates that this production will amount to several hundred thousand pages of documents.

Plaintiffs have attempted to obtain "Walker Digital"[4] documents through Mr. Walker individually instead of subpoenaing Walker Digital Corp. and Walker Digital, LLC. To the extent that Plaintiffs require additional documents from Walker Digital Corp. or Walker Digital, LLC, Plaintiffs are free to request documents from those entities directly. As already stated, Mr. Walker is producing all of the responsive paper documents within his possession, custody, or control. Plaintiffs should not continue to harass him with burdensome requests for corporate documents.

---

[4] Plaintiffs used a six-line definition of "Walker Digital" in their Request for Documents (see Carl W. Mullis's March 5, 2005 email to Geoff Johnson, attached hereto as Exhibit A), but they subsequently have defined it as Walker Digital Corp. and Walker Digital, LLC. (Pl. bf. at 12.)

Plaintiffs misrepresent throughout their brief that Mr. Walker is "the founder, chairman, and controlling shareholder of Walker Digital LLC and Walker Digital Corp." (Pl. bf. at 14.) Without commenting on the accuracy or inaccuracy of that statement in 2000, it clearly is inaccurate in 2005. For example, Walker Digital Corp. was dissolved in 2001, a fact that Plaintiffs either know or should have discovered simply by contacting the Delaware Secretary of State. Walker Digital, LLC is merely a holding company that owns various patents.[5]

As has been stated, with the exception of the electronic documents discussed *infra*, Mr. Walker is producing all responsive, non-privileged documents in his possession, custody, or control. There are no additional non-privileged, responsive documents within his possession, custody, or control. It is clear that "[i]n the face of a denial by a party that it has possession, custody, or control of documents, the [requesting] party must make an adequate showing to overcome this assertion." Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 147 (S.D.N.Y. 1997). *See also* Burton Mech. Contractors, Inc. v. Foreman, 148 F.R.D. 230, 236 (N.D. Ind. 1992) (holding that the requesting party was *not* entitled to an order compelling a former employee to produce documents that the employee claimed to be outside his possession, absent a showing that the employee *was* in possession or had a legal right to obtain the documents). Even the cases that Plaintiffs cite to this Court make it clear that "the burden is on the party seeking discovery to make a showing that the other party has control over the materials sought." SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000). Plaintiffs have not shown and cannot show that Mr. Walker has either the legal right or the practical ability to

---

[5] Walker Digital, LLC currently does not have a board of directors, and although Mr. Walker has used the title "Chairman and CEO," the only acting officer is the Secretary, Harry Peden.

force "Walker Digital" to turn any additional documents over to him so that he may produce them in this litigation.

Plaintiffs have cited no authority holding that an individual, sued in his individual capacity, has "control" over the documents owned by a non-party company in which he holds shares for purposes of production in litigation.[6] To the contrary, it is clear that, absent some grounds for "piercing the corporate veil," an individual cannot be ordered to produce corporate documents in litigation brought against the individual personally.[7] *See, e.g.*, American Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 502 (D. Kan. 2001) (holding that the proper vehicle for the plaintiff to obtain corporate documents in litigation brought against the corporation's president in his individual capacity was *not* an order requiring the president to produce corporate documents, but a subpoena to the non-party corporation itself).

The difficulty with Plaintiffs' position is further illustrated by the fact that if Mr. Walker owned stock in, and served as a director of, General Electric, Plaintiffs clearly could not force

---

[6] Plaintiffs have cited the following cases, none of which support their position that Jay Walker, an individual, has "control" over documents in the possession, custody, and control of "Walker Digital" -- Poole v. Textron, Inc., 192 F.R.D. 494 (D. Md. 2000), concerned a corporate defendant that was held to have "control" over documents in the possession of its attorneys and employees. Afros v. Krauss-Maffei Corp., 113 F.R.D. 127 (D. Del. 1986), concerned a corporate defendant that was held to have shared control over documents in the possession of its non-party parent corporation. In re Omeprazole Patent Litigation, No. M-21-81, 2004 WL 187155 (S.D.N.Y. Jan. 29, 2004), also concerned a corporate defendant that was held to have "control" over data that it co-owned with it's non-party corporate partner in a joint venture. In Estate of Monroe v. Bottle Rock Power Corp., No. 03-2682, 2004 WL 737463 (E.D. La. Apr. 2, 2004), the court held that a husband had control over documents in his wife's possession. Finally, in SEC v. Credit Bancorp, LTD, 194 F.R.D. 469 (S.D.N.Y. 2000), the court held that the requesting party failed to show that the defendant had control over the requested documents.

[7] Plaintiffs have not alleged any facts suggesting that "Walker Digital" should be treated as an "alter ego" of Jay Walker for purposes of piercing the corporate veil, and in fact, there are no such grounds for disregarding the corporate form in this case.

him to obtain and produce all of the documents in the possession or control of General Electric (or any other company in which Mr. Walker happens to own shares).

Mr. Walker is producing all of the non-privileged, responsive documents maintained by or pertaining to Priceline Webhouse Club, Inc. ("Webhouse documents") that are in his possession, custody, or control. Many of these Webhouse documents had been stored in a storage facility in Connecticut. Mr. Walker is not aware of the existence of any additional Webhouse documents.

Although Mr. Walker stands by his objections to Plaintiffs' Request for Documents based on over-breadth, vagueness, and irrelevance, he is not withholding any paper documents that currently are in his possession, custody, or control based on those objections.

Thus, Mr. Walker's production of documents complies fully with Federal Rule 34, and Plaintiffs' Motion is unwarranted. Given the vast, unreasonable scope of their Request for Documents and the extremely large volume of documents that Mr. Walker is in the active process of producing,[8] Plaintiffs' Motion to Compel should be denied. In fact, considering the burdensome nature of Plaintiffs' discovery requests to date, if Plaintiffs seek any additional documents from Mr. Walker, Plaintiffs should be required to compensate Mr. Walker for the full costs of any such production, including the expenses associated with attorney review of such documents for responsiveness and privilege.

**b. Electronic documents**

In addition to the hundreds of thousands of pages of paper documents that are being produced, Mr. Walker has possession, custody, and control of what are *presumed to be* 181

---

[8] Note that Mr. Walker's attorneys have been giving Plaintiffs' counsel regular updates on the status of the production by telephone, and Plaintiffs' counsel are aware that the production is underway and progressing steadily.

computer system backup tapes that were found amongst the paper Webhouse documents. It is not yet clear what types of documents are on these tapes, the number of documents, whether they are responsive to Plaintiffs' Request, or whether they contain privileged materials. Nor is it possible to discern this information without incurring significant expense.

Production of these tapes would be extraordinarily over-burdensome. Neither Mr. Walker nor his counsel has the equipment necessary to process these tapes so that any documents contained thereon can be viewed. Therefore, it is necessary to outsource the tapes to a vendor. (Michael Farley declaration, ¶ 4.) Counsel have retained Applied Discovery, an electronic discovery vendor owned by LexisNexis.

The cost to convert the currently inaccessible data into a searchable format for determination of responsiveness and privilege will be about $200 to $800 per tape (depending on the type of data each tape contains), plus $0.09 to $0.19 per page depending on the volume of data. (Michael Farley declaration, ¶ 5.) Once the data is searched for responsive and non-privileged documents, each page will need to be electronically stamped with a Bates number and a confidentiality designation. This will cost $0.02 to $0.07 per page, depending on volume. (Michael Farley declaration, ¶ 6.) There also may additional costs associated with set-up, searching, de-duplicating, and hosting to manage the data if the volume is larger than what can be handled in-house. (Michael Farley declaration, ¶ 7.)

Based on a sampling of 14 of these tapes, Applied Discovery and counsel's in-house information technology staff estimate that those 14 tapes contain approximately 6,000,000 to 10,000,000 pages of documents. (Michael Farley declaration, ¶ 8-9.) If the remaining 167 tapes have approximately the same number of pages per tape as the sample of 14 tapes, then the 181 tapes would contain approximately 81,000,000 to 130,000,000 pages.

Based on these estimates, the vendor cost to produce all of the data contained on all 181 tapes would be approximately $26,000,000 (taking into account anticipated discounts from the vendor based on the volume of pages).  (Michael Farley declaration, ¶ 10.)  If, however, the remaining 167 tapes are filled to their potential capacity of 80 gigabytes, the total number of pages on all 181 tapes could be from 670,000,000 to 1,070,000,000 pages.  Thus, the vendor cost to produce all the data contained on all 181 tapes could be as much as $200 million (again, taking into account anticipated discounts from the vendor based on the volume of pages).  (Michael Farley declaration, ¶ 11.)  In addition, there is the enormous cost of the substantial attorney time that would be required to review this incredible volume of documents for responsiveness and privilege.  (Michael Farley declaration, ¶ 12.)

As illustrated above, to undertake a production of these tapes would be outrageously over-burdensome for a corporation, let alone for a single individual.  Although the party responding to a discovery request generally bears the cost of compliance, "[n]evertheless, a court may protect the responding party from 'undue burden or expense' by shifting some or all of the costs of production to the requesting party."  Rowe Entertainment, Inc. v. William Morris Agency, 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002); Fed.R.Civ.P. 26(b)(2); Fed.R.Civ. P. 26(c).  Furthermore, federal courts have recognized that, in the context of electronic discovery, "the reliance on broad discovery has hit a roadblock."  Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 311 (S.D.N.Y. 2003) (the seminal electronic discovery case within the Second Circuit).  Accordingly, the federal courts, including those within the Second Circuit, readily have shifted the costs of producing backup tapes such as these to the requesting party, the party more able to control costs by limiting the scope of its requests.

8

Consideration of cost-shifting is most important where, as here, the requested data is "inaccessible." *Id.* at 318. As the Zubulake court noted, "whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible or inaccessible* format (a distinction that corresponds closely to the expense of production)." *Id.* The court went on to explain that "[w]hether electronic data is accessible or inaccessible turns largely on the media on which it is stored." *Id.* The court deemed the type of back-up tapes at issue here to be "inaccessible," because "[b]ackup tapes must be restored . . . fragmented data must be de-fragmented, and erased data must be reconstructed, all before the data is useable. That makes such data inaccessible." *Id.* at 319-320. Thus, the consideration of cost-shifting here is warranted.

The cost-shifting analysis used to determine whether to permit discovery of electronic data such as this is necessarily fact-intensive. *E.g.*, Zubulake, 217 F.R.D. 309 (S.D.N.Y. 2003). Therefore, the courts employ a multi-factored analysis to determine when cost-shifting is required to protect the responding party from undue burden and expense.[9]

These factors, in descending order of importance, are:

1. The extent to which the request is specifically tailored to discover relevant information;
2. The availability of such information from other sources;
3. The total cost of production, compared to the amount in controversy;
4. The total cost of production, compared to the resources available to each party;
5. The relative ability of each party to control costs and its incentive to do so;
6. The importance of the issues at stake in the litigation; and
7. The relative benefits to the parties of obtaining the information.

*Id.* at 322.

---

[9] The Southern District of New York articulated these factors in Rowe Entertainment, Inc, v. The William Morris Agency, 205 F.R.D. 421 (S.D.N.Y. 2002), "the most influential response to the problem of cost-shifting relating to the discovery of electronic data." Zubulake, 217 F.R.D. at 316. The following year, the court modified the factors in Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003).

In the instant case, the first and most important factor weighs in favor of shifting the cost of producing the backup tapes to Plaintiffs, for their document requests are extremely broad, and, in many cases, vague.  For example, Request 1 seeks "[a]ll documents showing the internal organization, structure, and personnel of Priceline, WebHouse, and Walker Digital."  (Pl. Request p. 4.)  Request 5 seeks "[a]ll documents referring or relating to the actual or contemplated business practices of Priceline and/or Webhouse."  (Pl. Request p. 6.)  Request 8 seeks "*[a]ll documents*, including, without limitation, financial statements and/or progress reports, referring or relating to any tracking of fees, expenses, and/or costs involved in the service, use, licence, and/or installation of any Priceline and/or WebHouse product, service, business model, license and/or system."  (Pl. Request p. 9) (emphasis added).  Such sweeping requests give Walker no basis upon which to limit the number of tapes he must process and produce.

Because Walker has not determined what information is contained on the backup tapes, it is impossible to determine with certainty whether that information also is available from the paper documents that he is producing or from other sources.

However, the third and fourth factors also weigh in favor of cost-shifting, as the total cost of production, as outlined above, will be extremely high.  The potential costs are unreasonable and disproportionate both to the damages alleged and to the resources available.  Certainly the costs are too high to expect a single individual such as Mr. Walker to bear the financial burden.

Likewise, the fifth factor weighs in favor of cost-shifting, because Plaintiffs alone have the ability to control discovery costs by significantly limiting their requests and/or by agreeing to stipulations whereby Mr. Walker might be able to filter out privileged documents electronically without waiving the privilege.  If the costs of production are not shifted to Plaintiffs, they will

have no incentive to limit the production of the tapes. *See* <u>Medtronic v. Sofamor Danek, Inc.</u>, No. 01-2373-M1V, 2003 WL 21468573 (W.D. Tenn. May 13, 2003) (finding that this factor weighed in favor of cost-shifting because the requesting party "has nearly unfettered ability to control costs by limiting the scope of his discovery requests").

Regarding the sixth factor, because the tapes are inaccessible, Mr. Walker is not aware of any documents contained on these tapes that would bear significantly on the issues in this litigation. Moreover, the broad-based "fishing expedition" nature of Plaintiffs' Request would suggest that most, if not all, of the documents being sought are *not* important to the issues in this litigation.

The seventh factor likewise weighs in favor of cost-shifting, because Plaintiffs bear the burden of proving the allegations in their complaint. While Mr. Walker believes that there will not be any documents on the tapes that will prove Plaintiffs' claims, it is the party basing its claims on the evidence allegedly contained in the requested documents that benefits most from their production. *See* <u>OpenTV v. Liberate Techs.</u>, 219 F.R.D. 474, 479 (N.D. Cal. 2003) (finding that this factor weighed in favor of cost-shifting, because there was "no question" that the requesting party, which based its claim on the facts allegedly contained in the requested documents, "stands to benefit far more" from the production of those documents than would the defendant).

In addition to the enormous costs of processing the tapes so as to make the documents contained thereon producible, then searching for and producing responsive documents, Mr. Walker would be forced to incur significant costs associated with searching for privileged documents and creating a privilege log. It is only fair for Plaintiffs to be responsible for <u>all</u> of

these costs.  Only then will Plaintiffs be reasonable in designating what, if anything, needs to be searched and produced.

## II. JAY WALKER'S INTERROGATORY RESPONSES

As discussed in detail below, Plaintiffs' Motion to Compel also should be denied with respect to Mr. Walker's interrogatory responses and objections, because Mr. Walker's objections were valid, and his responses, especially in light of his document production, were more than sufficient.  In addition, Plaintiffs' counsel have failed to meet and confer with Walker's counsel regarding these interrogatories as required by District of Connecticut Local Civil Rule 37(a)(2).[10]

Mr. Walker's stated objections to the interrogatories in question are valid.  Objections regarding the vague, overly broad and unduly burdensome nature of Plaintiffs' interrogatories do not constitute "boilerplate" language; they are legitimate objections to interrogatories that appear to ask a single individual to provide unlimited, non-specific information about literally thousands of employees, shareholders, and records – information that Plaintiffs may obtain more easily from other sources, including the paper documents that Mr. Walker is producing.  Pursuant to Fed.R.Civ.P. 33(d), Plaintiffs can derive the information sought by these interrogatories from the produced paper documents just as easily as Mr. Walker can.  Furthermore, many of the

---

[10] Plaintiffs' brief often fails to distinguish between Mr. Walker and the other "Defendants" in this action, and Plaintiffs' counsel seem to have overlooked their obligation to meet and confer with *Mr. Walker's* counsel regarding any dissatisfaction with *Mr. Walker's* interrogatory responses.  For example, Plaintiffs did not raise any issues concerning Mr. Walker's response to interrogatories 13, 17, 20, or 21 in their letter dated February 18, 2004, contrary to their assertions in their brief (Pl. brief at 2, footnote 1) (*see* Geoff Johnson's letter to Mr. Walker's counsel dated February 18, 2005, attached hereto as Exhibit B), nor did they attempt to discuss *any* of Mr. Walker's interrogatory responses during the March 2, 2005 meet-and-confer telephone conference.  (*See* Carl W. Mullis' March 2, 2005 email to Geoff Johnson, attached hereto as Exhibit C.)

interrogatories in dispute ask Mr. Walker to provide information about which he does not have knowledge.

Nevertheless, subject to his objections, Mr. Walker provided responses to the interrogatories. In their Motion to Compel, Plaintiffs ask the Court to compel Mr. Walker to provide an incredible amount of information, much of which he simply does not have and to which he does not have access. The Federal Rules do not require such impossibilities.

Contrary to Plaintiffs' assertions, Mr. Walker is not required to conduct Plaintiffs' discovery for them by doing extensive research or by interrogating other parties or entities to obtain responsive information. *See* Lugo v. Heckler, 98 F.R.D. 709, 714-15 (E.D. Pa. 1983) ("Where an alternative is available, no party should be required to do independent research in order to acquire information with which to answer interrogatories.").

Moreover, Mr. Walker is charged only with his own personal knowledge and the knowledge of persons *under his control*. The cases that Plaintiffs themselves cite to this Court confirm that, in addition to personal knowledge, a party is charged only "with knowledge of what its agents know or what is in records available to it." Estate of Monroe, 2004 WL 737463 at *10, *quoting* Poole, 192 F.R.D. at 501 (also cited in Plaintiffs' brief).[11] Thus, while it is clear that "[p]arties must answer interrogatories with whatever information they have[,]" it is equally clear that a party "need not obtain responsive information . . . from entities outside its control to

---

[11] In each of these cases, the court's determination that the producing party had "control" over non-parties arose on facts completely dissimilar to those in the instant case. In Estate of Monroe at *10, the Eastern District of Louisiana held that a *husband* had the ability to obtain, on request, documents from his *wife*. In Poole, 192 F.R.D. at 501, the District of Maryland held that a *corporate defendant* had the obligation to seek information from its *attorneys and employees*. Neither of these holdings suggests that an individual defendant has control over or the obligation to obtain information from a co-defendant or from a company in which he might hold stock.

answer the interrogatories." <u>Pulsecard, Inc. v. Discover Card Services, Inc.</u>, 168 F.R.D. 295, 310

(D. Kan. 1996).

"The burden is on the party seeking discovery to make a showing that the other party has

control over the material sought." <u>Estate of Monroe</u>, 2004 WL 737463 at *10; *see also* <u>Credit</u>

<u>Bancorp, Ltd.</u>, 194 F.R.D. at 471.  Plaintiffs have not shown, and indeed cannot show, that

entities such as Priceline, Inc., Priceline Webhouse Club, Inc., or "Walker Digital" are agents

under the control of Mr. Walker.  Mr. Walker is not obligated to obtain information from them in

order to answer interrogatories propounded to him in his individual capacity.

Mr. Walker also addresses each individual challenged response below:[12]

### Interrogatory 5:

Describe all formulas or methodologies used to set prices for products or services offered
through WebHouse and/or Priceline, including without limitation: (a) how the price was
established; (b) whether the price reflected the extent to which manufacturers or other sponsoring
parties were subsidizing any discount; (c) how WebHouse determined the extent to which it
would subsidize any discount; and (d) whether the formulas used to set prices were ever changed
and, if so, when and for what reason.

### Mr. Walker's Response to Interrogatory 5:

Walker objects to Interrogatory 5 on the grounds that it is vague, ambiguous, overly
broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and
not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks
information that can be obtained through other, less burdensome means of discovery.  Walker
further objects to this interrogatory on the grounds that it seeks confidential and competitively
sensitive information that requires additional protections prior to disclosure, as more fully
addressed in defendants' pending Cross-Motion for an Appropriate Protective Order.

As drafted, this interrogatory does not make clear what is meant by "all formulas and

methodologies."  The interrogatory seems to seek a description of *all* pricing formulas or

---

[12] Mr. Walker also hereby adopts his Co-Defendants' responses concerning Plaintiffs' Motion to
Compel as set forth in their "Defendants' Memorandum of Law in Opposition to Plaintiffs'
Motion to Compel Discovery from Defendants."

methodologies applicable to the thousands of products and services sold through Priceline

and/or Webhouse during a three-year period. These two companies offered thousands of

products and services, the prices for which were set by different groups using a variety of

methods, which often changed on a daily basis. It would be virtually impossible for Mr. Walker

individually to prepare such a list, and it clearly would be unduly burdensome. Moreover,

Plaintiffs should be able to determine much, if not all of this information from the documents

being produced by Mr. Walker and the other defendants.

### Interrogatory 10:

Identify all analyses used to determine whether Priceline should have taken a charge
and/or setup a reserve in connection with the value of the WebHouse warrants received by
Priceline.

### Mr. Walker's Response to Interrogatory 10:

Walker objects to Interrogatory 10 on the grounds that it is vague, ambiguous, overly
broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and
not reasonably calculated to lead to the discovery of admissible evidence; that it seeks
information that can be obtained through other, less burdensome means of discovery; and that it
assumes disputed facts and/or legal conclusions. Subject to all objections and without waiving
any objections, Walker states that he lacks knowledge of information sufficient to answer this
interrogatory.

Mr. Walker believes that Plaintiffs have obtained a complete response to this

interrogatory from the other Defendants. Moreover, Mr. Walker is producing paper documents

to plaintiffs from which they can obtain a response to this interrogatory, pursuant to Rule 33(d).

15

**Interrogatories 12 and 13:**[13]

12.     Identify all persons or entities who were responsible for or otherwise involved in the launch of WebHouse and the WebHouse website and, for each such person, identify the extent of their involvement.

13.     Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting participations in WebHouse by manufacturers, wholesalers, retailers or distributors.

**Mr. Walker's Responses to Interrogatories 12 and 13:**

12.     Walker objects to Interrogatory 12 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks public information and information that can be obtained through other, less burdensome means of discovery. Subject to all objections and without waiving any objections, Walker states, upon information and belief, that the following persons may have been primarily responsible for the launch of WebHouse and its website:

> Paul Brietenbach, Chief Marketing Officer
> T. Scott Case, President, Gasoline Services
> Jonathan Otto
> Jose Suarez
> Jay S. Walker

13.     Walker objects to Interrogatory 13 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks public information and information that can be obtained through other, less burdensome means of discovery. Subject to all objections and without waiving any objections, Walker states, upon information and belief, that the following persons may have solicited businesses to provide products or services to WebHouse during the alleged Class Period:

> Adam DaCosta, Vice President, Business Development & Chief Food Merchant
> Paul Francis
> Jonathan Otto
> Robert Voss, Executive Vice President, Manufacturer Relations & Merchandising
> Jay S. Walker

---

[13] Plaintiffs failed to meet and confer with counsel for Jay Walker regarding Mr. Walker's responses to interrogatories 12 and 13 as required by District of Connecticut Local Civil Rule 37(a)(2). These interrogatory responses were not raised in Plaintiffs' February 18, 2005 letter (attached hereto as Exhibit B), and they were not discussed during the March 1, 2005 meet and confer telephone conference.

It is not clear what is meant by such phrases as "all persons and entities," "all people or entities," and "otherwise involved." Nevertheless, Mr. Walker has provided the names of several individuals in response to these interrogatories. Moreover, in their Second Set of Interrogatories, Plaintiffs' have propounded interrogatories that seek substantially the same information.[14] Based on information recently gleaned from the voluminous documents being produced by Mr. Walker, more extensive lists of individuals will be provided in response to Plaintiffs' Second Set of Interrogatories.

In addition, pursuant to Rule 33(d), Plaintiffs themselves are able to ascertain additional names sought by these interrogatories from the paper documents being produced by Mr. Walker. Plaintiffs and Mr. Walker are on equal footing regarding the effort required to locate the requested information in those documents.

**Interrogatory 14:**

Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting members to participate in WebHouse.

**Mr. Walker's Response to Interrogatory 14:**

Walker objects to Interrogatory 14 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and

---

[14] See Lead Plaintiffs' Second Set of Document Requests and Interrogatories Directed to All Defendants (attached hereto as Exhibit D). Interrogatory 14 seeks the identity of "all persons with knowledge about the launch of WebHouse and the WebHouse website." Subject to objections regarding the vagueness, over-breadth and burdensomeness of this request, and the availability of the information in the documents being produced pursuant to Rule 33(d), the names that Mr. Walker will provide in response to this interrogatory also are responsive to interrogatory 12, at issue here. Likewise, interrogatory 15 seeks the identity of "all persons with knowledge about attempts to market the WebHouse business model and/or service to retailers, wholesalers, manufacturers or any other sponsoring parties and state which person(s) were responsible for making such decisions." Subject to the aforementioned objections, the names that Mr. Walker will provide in response to this interrogatory also are responsive to interrogatory 13, at issue here.

not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks information that can be obtained through other, less burdensome means of discovery.

It is not clear what is meant by such phrases as "all people or entities" and "involved in soliciting members to participate in WebHouse." Furthermore, the interrogatory is overly broad, in that Webhouse employed thousands of people who could have played some role in advertising or procuring Webhouse membership. More importantly, much of this information can be obtained, pursuant to Rule 33(d), from the paper documents that Mr. Walker currently is producing to Plaintiffs.

### Interrogatory 16:

Identify all manufacturers, wholesalers, retailers, distributors or any other sponsoring parties who participated in the sale of products or services on WebHouse's or Priceline's websites; the dates such entities began to participate; all persons involved for such entities; all documents provided to such entities in connection with their participation; and each type of document which recorded the extent of their participation.

### Mr. Walker's Response to Interrogatory 16:

Walker objects to Interrogatory 16 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks public information and information that can be obtained through other, less burdensome means of discovery, including business records.

It is not clear what is meant by the terms "all," "participated in," and "all persons involved." This interrogatory appears to seek information concerning thousands of persons and entities and thus is over-burdensome. In addition, much of the information sought can be ascertained by Plaintiffs, pursuant to Rule 33(d), from reviewing the documents being produced to them by Mr. Walker and the other defendants.

Moreover, in their Second Set of Interrogatories, Plaintiffs' again seek the identity of manufacturers, wholesalers, retailers, distributors, and other sponsoring parties that participated

in Priceline Webhouse Club.[15]  Based on information gleaned from the voluminous documents

being produced to Plaintiffs, Mr. Walker will provide a more extensive list in response to

Plaintiffs' Second Set of Interrogatories.  However, Mr. Walker also will rely on Rule 33(d) in

his response to those interrogatories.

### Interrogatories 17 and 20:[16]

17.    Describe the types of documents and/or reports created by WebHouse or Priceline
that tracked: a) discounts given by WebHouse to customers; b) prices for products or services
offered or sold by WebHouse; c) profit margins or subsidies for products or services offered or
sold through WebHouse; and/or d) subsidies provided by WebHouse for products or services
offered or sold through WebHouse.

20.    Identify all analyses, budgets, reports, projections or studies of WebHouse's
profitability and/or financial performance and identify all persons involved in creating these
documents.

### Mr. Walker's Response to Interrogatories 17 and 20:

17.    Walker objects to Interrogatory 17 on the grounds that it is vague, ambiguous,
redundant, duplicative, overly broad, unduly burdensome, not relevant to the claims or defenses
of any party to this action, and not reasonably calculated to lead to the discovery of admissible
evidence; and that it seeks public information and information that can be obtained through
other, less burdensome means of discovery, including business records.  Subject to all objections
and without waiving any objections, Walker states that he is not aware of any documents created
by Priceline that tracked information regarding WebHouse's discounts, prices, profit margins, or
subsidies during the alleged Class Period.  In addition, Walker states that he recalls that there
were many different internal reports generated at WebHouse, including sales and M.I.S. reports
but that he does not recall the nature of specific reports.

---

[15] *See* Lead Plaintiffs' Second Set of Document Requests and Interrogatories Directed to All
Defendants (attached hereto as Exhibit D).  Interrogatory 19 seeks the identity of "all
manufacturers, wholesalers, retailers, or any other sponsoring parties who participated in the
WebHouse website, and, as to each entity, identify all persons with knowledge concerning such
participation."

[16] Plaintiffs failed to meet and confer with counsel for Jay Walker regarding Mr. Walker's
responses to interrogatories 17 and 20 as required by District of Connecticut Local Civil Rule
37(a)(2).  These interrogatory responses were not raised in Plaintiffs' February 18, 2005 letter
(attached hereto as Exhibit B), and they were not discussed during the March 1, 2005 meet and
confer telephone conference.

20.    Walker objects to Interrogatory 20 on the grounds that it is overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks public information and information that can be obtained through other, less burdensome means of discovery. Subject to all objections and without waiving any objections, Walker states that, upon information and belief, WebHouse's financial executives (as identified in response to Interrogatory 27) and their staff may have created documents concerning WebHouse's profitability and financial performance but that he otherwise lacks knowledge of information sufficient to answer this interrogatory.

Mr. Walker adopts his Co-Defendants' position that interrogatories 17 and 20 are unduly burdensome insofar as they seek an itemization of the broad categories of documents that Plaintiffs have requested all defendants, including Walker, to produce. Each party should bear the burden of analyzing the other's production for broad categories of documents that such party wishes to use in its case. Similarly, much of the information sought can be ascertained by Plaintiffs, pursuant to Rule 33(d), from reviewing the documents being produced to them by Mr. Walker and the other defendants. Moreover, Mr. Walker's response to interrogatory 20 adopts his response to interrogatory 27, which lists twenty-three individuals.

### Interrogatory 21:[17]

Identify all persons and/or entities that serviced, sought to improve or upgrade, maintained, installed, expanded, programmed, integrated, implemented and/or developed Priceline's, Walker Digital's and/or WebHouse's computer systems and websites during the Relevant Time Period, and, for each such person and/or entity, describe their involvement.

### Mr. Walker's Response to Interrogatory 21:

Walker objects to Interrogatory 21 on the grounds that it is overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and not reasonably calculated to lead to the discovery of admissible evidence; and that it seeks public information and information that can be obtained through other, less burdensome means of discovery.

---

[17] Plaintiffs failed to meet and confer with counsel for Jay Walker regarding Mr. Walker's responses to interrogatory 21 as required by District of Connecticut Local Civil Rule 37(a)(2). This interrogatory response was not raised in Plaintiffs' February 18, 2005 letter (attached hereto as Exhibit B), and it was not discussed during the March 1, 2005 meet and confer telephone conference.

Subject to all objections and without waiving any objections, Walker states that he lacks knowledge of information sufficient to answer this interrogatory.

It is not clear what is meant by the phrases "all" or "sought to improve or upgrade, maintained, installed, expanded, programmed, integrated, implemented, and/or developed." Furthermore, this information can be obtained through other, less burdensome means of discovery, including Plaintiffs' review of the documents currently being produced by Mr. Walker, pursuant to Rule 33(d).

### Interrogatory 25:

Identify all individuals or entities who received stock, stock options or warrants of Priceline, WebHouse or Walker Digital (other than securities acquired through trades on the open market) during the Relevant Time Period, and for each such person identify the number of shares, options or warrants acquired, the date acquired, the consideration paid, the value when acquired, the date of maturity or exercise, and identify all documents evidencing such transactions.

### Mr. Walker's Response to Interrogatory 25:

Walker objects to Interrogatory 25 on the grounds that it is overly broad, unduly burdensome, not relevant to the claims or defenses of any party to this action, and not reasonably calculated to lead to the discovery of admissible evidence, and that it seeks information that can be obtained through other, less burdensome means of discovery, including without limitation Form 4 disclosures filed with the Securities and Exchange Commission. Walker further objects to Interrogatory 25 on the grounds that it seeks confidential, personal information about the compensation and trading activity of employees that requires additional protections prior to disclosure, as more fully addressed in Defendants' pending Cross-Motion for an Appropriate Protective Order. See also Conn. Gen. Stat. § 31-128f.

Walker objected to this interrogatory on the grounds that, *inter alia*, it is overly broad and unduly burdensome insofar as it seeks the identity of every private investor who purchased stock in four companies, including Priceline, over a span of three years, and the specific details of each transaction. It also seeks information concerning many, if not all, of the employees of these companies who received stock options. Thus, the interrogatory seeks information concerning thousands of individuals and transactions. This information can be obtained through other, less

burdensome means of discovery, including Plaintiffs' review of the documents currently being produced by Mr. Walker pursuant to Rule 33(d).

For all the foregoing reasons, Plaintiffs' Motion to Compel with respect to Interrogatories 5, 10, 12, 13, 14, 16, 17, 20, 21, and 25 should be denied.

## CONCLUSION

Mr. Walker's responses to Plaintiffs' broad, unreasonable, and burdensome discovery requests have complied in full with the Federal Rules of Civil Procedure, and Mr. Walker has cooperated in good faith to move this litigation forward. Thus, for all the foregoing reasons, Plaintiffs' Motion to Compel Discovery from Defendants should be denied.


Dated: April 5, 2005                    Respectfully submitted,



                                        PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                        Douglas C. Conroy (409180)
                                             douglasconroy@paulhastings.com
                                        Paul R. Dehmel (419276)
                                             pauldehmel@paulhastings.com
                                        1055 Washington Boulevard, 9th Floor
                                        Stamford, Connecticut 06901
                                        203-971-7400
                                        203-359-3031 (fax)

                                        PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                        J. Allen Maines (phv0013)
                                             allenmaines@paulhastings.com
                                        Carl W. Mullis III (phv0158)
                                             carlmullis@paulhastings.com
                                        Summer B. Joseph (phv0160)
                                             summerjoseph@paulhastings.com
                                        600 Peachtree Street N.E., Suite 2400
                                        Atlanta, Georgia 30308-2222
                                        404-815-2400
                                        404-815-2424 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of April, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail and by electronic mail.

Paul R. Dehmel (419276)

## SERVICE LIST

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Joseph L. Clasen
William Kelleher
Financial Centre
695 East Main Street
PO Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eighth Avenue
New York, NY 10019

David R. Scott
Geoffrey M. Johnson
Erin Green Comite
Scott & Scott, LLC
108 Norwich Avenue
PO Box 192
Colchester, CT 06415

ATL/1100680.7 58066.00002