IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: Priceline.com<br>Securities Litigation<br>-------------------------------------------------------------<br><br>This document relates to:<br><br>       ALL PENDING ACTIONS | Master File No.<br>3:00cv1884 (DJS)<br><br><br><br><br><br>April 5, 2005 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DISCOVERY FROM DEFENDANTS**

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@stam.rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

*Attorneys for Defendants*
*priceline.com Inc., N.J. Nicholas,*
*Daniel Schulman and Richard S. Braddock*

## Citation Conventions

The following conventions will be used throughout this Memorandum:

- "Brief" or "Pltf. Br." for references to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery from Defendants, dated March 14, 2005.

- "Kelleher Decl. 3/9" for references to the Declaration of William J. Kelleher, III, dated March 9, 2005.

- "Kelleher Decl. 4/5" for references to the Declaration of William J. Kelleher, III, dated April 5, 2005.

- "Hein Decl." for references to the Declaration of James G. Hein, Jr., dated April 5, 2005.

Defendants priceline.com Inc. ("priceline"), N. J. Nicholas,
Daniel H. Schulman and Richard S. Braddock (collectively, "Defendants") submit this
Memorandum of Law in opposition to plaintiffs' motion to compel discovery from
Defendants.

### Introduction

On March 9, Defendants filed a motion to compel from plaintiffs the
discovery necessary to oppose class certification and conduct meaningful depositions of
the proposed class representatives.  At that time, the original deadline for opposing class
certification (April 8) was fast-approaching and Defendants had already proceeded with
the deposition of one of the class representatives without all relevant documents.  Five
days later, plaintiffs filed and sought expedited treatment for their own motion to compel,
which, among other things, asks the Court to order Defendants to complete their entire
production within twenty days, despite the fact that no deadlines were approaching.
Plaintiffs' motion is premature and, frankly, appears retaliatory.

The Court's scheduling Order provides for document production to be
completed by December 30, 2005, and for discovery to close on March 31, 2006.  Over
the last several months, Defendants have been diligently searching for, collecting and
reviewing documents and have started a rolling production.  (See Kelleher Decl. 4/5 ¶¶ 6-
9.)  Defendants have already produced over 16,000 pages to plaintiffs and expect to make
a substantial production on a regular and rolling basis over the next several months.  (See
id. ¶ 9.)  Defendants currently expect to complete production in July.  (See id. ¶ 10.)

There is still plenty of time for Defendants to complete their document production and for the parties to take depositions.[1]

By filing their motion to compel, plaintiffs prematurely ended discussions with Defendants regarding their concerns about Defendants' production. During the parties' meet and confer conference call on March 2, Defendants were willing to discuss any and all of plaintiffs' concerns. (Hein Decl. ¶ 2.)  Plaintiffs largely declined that opportunity, and opted to raise only three of their concerns during the call, stating that Defendants' other positions were clear from Defendants' March 1 letter.[2]  (Id.; Exh. J, Kelleher Decl. 3/9.)    Some of the issues raised by plaintiffs in their motion to compel might have been resolved, or at least narrowed, without the intervention of the Court had plaintiffs been willing to discuss them during the meet and confer.  Indeed, many of plaintiffs' representations to the Court in their motion to compel reflect a misunderstanding of Defendants' positions.

---

[1] In their Brief, plaintiffs claim that they intend to move forward with fact depositions beginning April 1, 2005.  (Pltf. Br. at 8.)  But plaintiffs still have not noticed a single deposition or so much as asked Defendants to provide dates on which any Defendants are available for deposition.

[2] By letter dated March 1, Defendants had addressed in detail the concerns raised by plaintiffs in their letter of February 17.  (Exh. A, Hein Decl.)  During the meet and confer, Defendants went through each of their concerns with plaintiffs' responses and objections to Defendants' discovery demands.  Defendants clarified some of their concerns and responded to questions from plaintiffs.  In many instances, the parties continued to disagree even after discussion.  (See Exh. J, Kelleher Decl. 3/9.)  But in some instances, the discussion allowed the parties either to resolve the concern or to narrow somewhat the area of dispute.  (See id.)  When it was plaintiffs' turn to raise their concerns about Defendants' discovery responses, plaintiffs' counsel asked if Defendants were prepared to move from the positions stated in Defendants' March 1 letter.  (Hein Decl. ¶ 2.)  Defendants stated that they did not intend to move from their positions unless plaintiffs offered some reason to do so.  (Id.)  Plaintiffs did not even attempt to do that. (See id.)

Plaintiffs' motion to compel is also improper insofar as it seeks a blanket order regarding all of plaintiffs' document requests without addressing the relevance of any of the individual requests. The analysis set forth in Fed. R. Civ. P. 26(b) requires weighing the relevance of a discovery request against the burden of complying with it. In this brief, Defendants explain the burden associated with plaintiffs' requests. Plaintiffs, however, have offered no demonstration of relevance. In addition, until plaintiffs have received and reviewed more of Defendants' production, their request for a blanket order is premature, as they cannot possibly know whether that production is deficient in any respect.

In the sections below, Defendants address the issues raised in plaintiffs' Brief regarding the pace and scope of Defendants' production, and also explain why the fact that much of priceline's records are on computer tapes is a critical consideration with respect to Defendants' production. We also explain why Defendants' interrogatory responses are entirely adequate.

## I.    DEFENDANTS' PRODUCTION OF DOCUMENTS

### A.    Pace of Production

So far, Defendants have produced more than 16,000 pages of documents to plaintiffs.[3]  On March 11, Defendants started their rolling production and produced over 6,000 pages. (Kelleher Decl. 4/5 ¶ 9.) On March 24, Defendants produced almost

---

[3] Plaintiffs complain about the inclusion of publicly available documents in the production. (See Pltf. Br. at 1, 5.) In their February 17 letter, however, plaintiffs complained that Defendants had objected to producing publicly available documents, and they asked Defendants to "confirm that [they] will not withhold documents . . . on the grounds that [they] are obtainable from public sources". (Exh. B, Hein Decl.) Accordingly, Defendants complied with their request.

10,000 pages. (Id.) Later this week, Defendants expect to produce a significant amount of additional documents. (Id.) Defendants' estimate that they will be making a substantial production to plaintiffs on a regular and rolling basis and that it will take several months to complete the production. (Id. ¶ 10.)

The volume and pace of Defendants' production are largely a function of plaintiffs' document requests. Plaintiffs, however, steer clear of discussing the actual document requests that they seek to compel. They make no mention of the merits of Defendants' objections, nor do they seek to demonstrate the relevance of their requests. Indeed, it is impossible to tell from plaintiffs' Brief whether they seek compelled production of hundreds of documents, thousands of documents, or millions of documents. All that information, however, is critical to the Court's consideration of their motion.

In line with their October 20, 2004 warning to Defendants' counsel to "assume that everything might be subject to discovery" (See Exh. C, Hein Decl.), plaintiffs served Defendants with sixty-one exceedingly broad categories of document requests, many of which contain numerous sub-categories and sub-parts. Those requests seek what amounts to essentially all of priceline's paper and electronic documents for three full calendar years: 1999, 2000 and 2001. Plaintiffs' Document Request Nos. 5, 34 and 55 are representative. Those requests seek:

> 5. All documents referring or relating to the actual or contemplated business operations of Priceline and/or WebHouse, including but not limited to . . . .

> 34. All documents relating or referring to any advertising, marketing, sales presentation, strategy or plan utilized or considered by Priceline and/or WebHouse or any Priceline and/or WebHouse officer, director, contractor, agent, or employee, directed at any actual or potential Priceline and/or WebHouse customer, including without limitation . . . .

> 55. Irrespective of when created, all documents relating to any actual, contemplated or potential contracts, solicitations, agreements, accords, understandings, arrangements, commitments, or the like, and or communications between either any Defendant and/or WebHouse on one hand and any supplier or manufacturer (including suppliers or manufacturers of goods and/or services available for purchase or rent through Priceline and/or WebHouse) on the other hand, including but not limited to . . . .

(Plaintiffs' First Request for Production of Documents, dated January 10, 2005.)

Document Request No. 5, by itself, seeks virtually all of priceline's records for three years and, if complied with, would render almost every other document request cumulative and duplicative.

Beginning with the very first meet and confer, Defendants repeatedly warned plaintiffs that if they took their stated approach to document discovery and sought "everything", the volume of responsive documents would be enormous and the production process would be unreasonably time consuming and labor intensive.[4] (See Kelleher Decl. 4/5 ¶ 2.) Defendants explained that priceline has a very large volume of electronic data, including numerous computer back-up tapes, and that the production of that electronic data would be particularly burdensome and costly. (Id.) Defendants also advised plaintiffs that their document production would be on a rolling basis and would span several months. (Id.)

Defendants' warnings were informed by their diligent attention to the preservation and retention of paper and electronic documents, which began almost five years ago. Promptly following the onset of litigation in October 2000, counsel for

---

[4] See, e.g., Form 26(f) Report of Parties' Planning Meeting, dated October 29, 2004, at 16 ("Counsel for defendant priceline has advised Plaintiffs' counsel that the company's electronic documents are voluminous and that production thereof is likely to be both time and labor intensive.").

priceline issued a notice to its employees with instructions not to destroy or discard information that might be pertinent to the securities lawsuits. (See Defendants' Response to Interrogatory No. 32, in Defendants' Responses and Objections to Lead Plaintiffs' First Set of Interrogatories, dated January 10, 2005.) As of October 2000, priceline also suspended destruction of the quarterly and yearly back-up tapes associated with its corporate file and e-mail servers. (Id.) Then, a copy of the data resident on those servers was made during January and February 2002, in order to create an archive for litigation use. (Id.) Since receiving plaintiffs' first set of document requests in November 2004, Defendants have been engaged in the process of searching for, collecting and reviewing hundreds of thousands of pages of responsive paper and electronic documents. (Kelleher Decl. 4/5 ¶¶ 6-8.) That process is extraordinarily time and labor intensive.

Given the volume of documents that plaintiffs have demanded, their expectations with respect to the completion of Defendants' document production and privilege log are entirely unrealistic. Plaintiffs' request that the Court order Defendants to complete their entire production within 20 days of the Court's decision on their motion is simply not reasonably possible.

Plaintiffs themselves must already know how unreasonable their request is, given the pace of their own document production. So far, plaintiffs have produced a mere 53 pages of documents for the five remaining proposed class representatives,[5] and

---

[5] Joseph Wilenkin recently became the third individual to withdraw as a proposed class representative. The 16 pages of documents produced by Wilenkin have thus been excluded from Defendants' tally of plaintiffs' production.

many of those pages were produced in improperly altered or incomplete form.[6] Yet

plaintiffs asserted in their Complaint, which was filed nearly four years ago, that they had

collected and reviewed "approximately 30,000 pages" of priceline related documents and

information. (Complaint ¶ 237.)  Plaintiffs have also represented on several occasions

that they would complete or supplement their production on March 4, 2005.  (See, e.g.,

Exh. I, Kelleher Decl. 3/9)  But Defendants did not receive any additional documents

until April 1, almost a full month later, and even then received only 6 pages.  Considering

the deficiencies in plaintiffs' own incomplete production, they should not be heard to

complain about Defendants' much more burdensome production.

      **B.**    **Scope of Production**

          1.    <u>Temporal limitation</u>

      Plaintiffs have requested that Defendants produce all responsive

documents created from January 1, 1999, to December 31, 2001, and claim that the

temporal limitation that Defendants have placed on their document production is

inappropriate.  (Pltf. Br. at 10-11.)  Defendants believe that the three full calendar year

"Relevant Time Period" that plaintiffs have defined is overbroad and unduly

burdensome.[7]  Defendants have told plaintiffs that their production will cover documents

---

[6] The deposition testimony of R. Warren Ross, a proposed class representative, further revealed that plaintiffs have failed to conduct an adequate search for documents. (See Exh. L, Kelleher Decl. 3/9)  And in their letter of March 9, plaintiffs' counsel explained that they had applied to Defendants' discovery demands an interpretation of the term "concerning" that, in Defendants' submission, is mistakenly narrow and inconsistent with District of Connecticut Local Civil Rule 26(c)(7).  (See Exh. D, Hein Decl.)

[7] Plaintiffs' claim that Defendants seek to hold them to a different standard is wrong. (See Pltf. Br. at 11.)  As Defendants explained during the meet and confer, Defendants' document requests and interrogatories have built-in time restrictions, as they primarily seek documents and information concerning (1) plaintiffs' involvement in this litigation and investigation of the allegations, and (2) plaintiffs' actions and communications relating to their involvement with priceline securities during the alleged class period.

created from September 1, 1999 to March 1, 2001—a period of approximately 18 months which represents the alleged Class Period plus the five-month frame on either side of that period.[8]

Plaintiffs insist that Fed. R. Civ. P. 26(b)(1) supports their broader timeframe, but they ignore the most important part of the rule's language. Rule 26(b)(1) states that a party may "obtain discovery regarding any matter, not privileged, <u>that is relevant to the claim or defense of any party</u>". Plaintiffs have not offered any explanation of the relevance to their claims of documents beyond the timeframe proposed by Defendants. Instead, plaintiffs' make conclusory statements that "documents created during [the three calendar year] period will bear on Defendants' fraudulent intent and/or knowledge about the wrongful conduct" and "will also bear on or reflect upon events that occurred during the Class Period". (Pltf. Br. at 11.) Those unsupported assertions do not establish the relevance of the broader timeframe. Indeed, they only beg the important question: <u>what facts or circumstances</u> suggest that there will be documents outside the alleged Class Period bearing on the allegations in the Complaint? Defendants maintain that outside of the several month period on either side of the alleged Class Period the likelihood of finding relevant documents is extremely remote indeed.

By contrast, the burden and expense to Defendants of searching three full calendar years of documents is significant. Without a reasonable date range to restrict the search for documents responsive to plaintiffs' broad requests, Defendants will be forced

---

Accordingly, Defendants' request that plaintiffs limit the time period of their demands is completely consistent with Defendants' own demands.

[8] Notably, Defendants' proposed time period spans the entire existence of WebHouse—which is at the core of plaintiffs' allegations—and includes additional months on either side of that time.

to search almost every document from the three year period. This is particularly problematic for the vast amount of electronic data in priceline's possession, as the date range will structure the electronic search. Obviously, the date range applied to Defendants' documents will have a significant impact on the time it takes to complete production. The timeframe proposed by plaintiffs is almost double the timeframe proposed by Defendants, which will make the search for and review of documents much more burdensome—even if they yield no relevant documents.

Pursuant to Fed. R. Civ. P. 26(b)(2), the Court can limit otherwise relevant discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit". Here, the search difficulties created by plaintiffs' expansive date range place a burden on Defendants that clearly outweighs the likely benefit to plaintiffs of receiving few, if any, relevant documents created well outside of the alleged class period.[9] See Young v. Liberty Mut. Ins. Co., 1999 WL 301688, at *6 (D. Conn. 1999) (Burns, J.) ("Rule 26(b)(2) requires courts to balance the burden and expense of proposed discovery against its likely benefit, and to issue any appropriate limiting orders.").

2.    Documents not in Defendants' possession, custody or control

Plaintiffs' document requests seek a broad array of documents concerning Priceline WebHouse Club, Inc. ("WebHouse") and Perfect Yard Sale, Inc. ("Yard Sale"). Defendants have stated that they will produce any responsive documents concerning those entities that are in their possession, custody or control. Defendants have also

---

[9] Of course, as Defendants have told plaintiffs, if Defendants find any relevant and responsive non-privileged documents outside of the search timeframe, they certainly will not withhold such documents.

11

warned plaintiffs, however, that there may be WebHouse and Yard Sale documents that are not within Defendants' possession, custody or control, and accordingly, that Defendants simply cannot produce them.  Plaintiffs insist that Defendants can produce such documents.  (Pltf. Br. at 12.)

Plaintiffs allege, and Defendants deny, that there was a very close relationship between priceline and WebHouse. [10]  It is nonetheless undisputed that WebHouse and Yard Sale are now defunct entities without any assets or employees.  (See Pltf. Br. at 11.)  Plaintiffs offer no factual basis for their assertion that Defendants can obtain WebHouse and Yard Sale documents from those defunct entities.  The assertion is quite simply wrong,[11] as Defendants as have repeatedly explained to plaintiffs.[12]

Plaintiffs cite a series of cases that discuss the circumstances in which one entity is deemed to have "control" of another entity for purposes of Fed. R. Civ. P. 34.  (Pltf. Br. at 12-13.)  Those cases are entirely besides the point here, for two reasons.  First, WebHouse and Yard Sale are defunct and ceased to exist prior to the commencement of this litigation.  Even assuming arguendo that Defendants did have control of those entities within the meaning of Rule 34, now that they are defunct there is

---

[10] WebHouse and Yard Sale were separate, and now defunct entities that licensed priceline's business model and had certain other arms-length contractual relationships with priceline.  Priceline did not hold any ownership interest in WebHouse or Yard Sale, nor did either of these two entities hold such an interest in priceline.

[11] Defendants understand from counsel for defendant Walker that Mr. Walker has been able to gain access to certain WebHouse documents and has produced or will be producing them to plaintiffs.  (Hein Decl. ¶ 3.)  Defendants, however, do not have access to those documents.  (Id.)

[12] Plaintiffs assert that "Defendants have admitted that they have access to these documents and the documents fall within their custody and control".  (Pltf. Br. at 9.)  That assertion is simply false.

no basis to assume that Defendants have the practical ability to obtain any documents that those entities may have had. None of the cases cited by plaintiffs involves alleged control by one entity over a defunct entity, nor do any of those cases suggest that Rule 34 "control" should be imputed in such a situation.

Second, WebHouse and Yard Sale were licensees of priceline. Only one of the cases cited by plaintiffs discusses a licensor-licensee relationship, and in that case, the court suggested that a licensor does not have control over a licensee's documents. See In re Omeprazole Patent Litig., 2004 WL 187155, at *1 (S.D.N.Y. Jan. 29, 2004).

Again, Defendants have committed to producing responsive documents regarding WebHouse and Yard Sale that are in fact in their possession, custody or control, as plaintiffs know full well from the meet and confer process.

3.    The so-called "boilerplate" responses and objections

Plaintiffs complain that Defendants have "refused to clarify their boilerplate objections and have not told Plaintiffs whether they plan to withhold documents and information on the basis of such objections". (Pltf. Br. at 9.) As noted above, Defendants were willing to discuss any of plaintiffs concerns during the March 2 meet and confer, and plaintiffs did not ask about these objections.[13] Defendants have a good faith basis for each and every one of their objections, and were required under the federal rules to assert those objections or else be deemed to have waived them.

---

[13] Plaintiffs' assertion that Defendants "refused to address" these objections at the parties' meet and confer is simply wrong. (Pltf. Br. at 17.) Responding specifically to plaintiffs' complaints about certain of these allegedly "boilerplate" objections, Defendants even stated in their March 1 letter that "the appropriate forum to discuss these objections, to the extent you do not understand them, is in our meet and confer session". (Exh. A, Hein Decl.)

Plaintiffs cannot override Defendants' objections by simply alleging that they are inappropriate. Defendants have objected to many of plaintiffs' document requests on the grounds that they seek documents not relevant to the claims or defenses of any party. Pursuant to Fed. R. Civ. P. 26(b)(1), plaintiffs must establish the relevance of their individual document requests.[14] Plaintiffs, however, have not done so, and accordingly, have failed to comply with Rule 26. See Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 631 (M.D. Pa. 1997) ("Once an objection has been raised on relevancy grounds, the party seeking discovery must demonstrate that the request is within the scope of Fed. R. Civ. P. 26(b).").

### C.    Consideration of Back-Up Tapes

A critical consideration in determining the appropriate pace and scope of Defendants' production is the fact that a great deal of the potential production has been stored and preserved electronically by way of computer tapes. Recent cases both within the Second Circuit and elsewhere have recognized that producing documents from tapes is very burdensome and costly because it involves restoring the tapes and converting them into a searchable format before the search and review of the information can even take place. See Zubulake v. UBS Warburg LLC, 216 F.R.D. 280 (S.D.N.Y. 2003) (Scheindlin, J.) and 2003 WL 21087884 (S.D.N.Y. 2003); Wiginton v. CB Richard Ellis, Inc., 2004 WL 1895122 (N.D. Ill. 2004).

---

[14] Even if plaintiffs establish the relevance of their requests, relevant discovery is still subject to the limitations of Rule 26(b)(2), which provides that relevant discovery can be limited, among other reasons, if "the burden or expense of the proposed discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(1), (2).

Plaintiffs have indicated to Defendants that they believe that their motion to compel covers the information on the tapes. (Hein Decl. ¶ 4.) Defendants believe that the tapes present unique issues that warrant separate consideration. A number of courts have held that the costs of restoring and searching electronic information on tapes may be shifted to the discovering party. See Zubulake, 216 F.R.D. 280 and 2003 WL 21087884; Wiginton, 2004 WL 1895122. Defendants have previously alerted both plaintiffs and the Court that, depending on the burden and cost involved, they may seek some form of cost-shifting with respect to the back-up tapes. (See, e.g., Form 26(f) Report of Parties' Planning Meeting, dated October 29, 2004, at 16 ("Priceline reserves the right to seek cost-shifting and/or reimbursement from Plaintiffs for expenses incurred in connection with electronic discovery, as has been determined appropriate in other cases.")).[15]

Defendants and plaintiffs have not yet attempted to negotiate an agreement regarding the tapes, and both priceline and plaintiffs have expressed their willingness to continue discussing the issue. (Hein Decl. ¶ 4.) In light of the possibility of an agreement between priceline and plaintiffs, and given that the Court does not have the benefit of full briefing on the issue of cost-shifting, Defendants believe that it would be premature for the Court to consider the back-up tapes as a part of plaintiffs' motion. Of course, depending on the outcome of negotiations between the parties and the Court's decision on plaintiffs' motion to compel, the parties may ultimately still need to raise the issue of cost-shifting with the Court.

---

[15] In its November 2, 2004 scheduling Order, the Court "expresse[d] no opinion regarding the cost of discovery and d[id] not prejudice either party's right to request relief regarding the same".

## II.     DEFENDANTS' INTERROGATORY RESPONSES

Plaintiffs take issue with several of Defendants' interrogatory responses. In their Brief, plaintiffs list the allegedly deficient responses, but with the exception of responses 12, 13 and 16, they do not explain what is objectionable about them. Defendants have, to the best of their present ability, provided complete and meaningful responses to all of plaintiffs' interrogatories, and accordingly, believe that the appropriate means for plaintiffs to pursue any of the responses further is through depositions. Nevertheless, Defendants address the challenged responses below.[16]

### Interrogatory No. 5

Interrogatory No. 5 purports to seek a description of <u>all</u> pricing formulas or methodologies applicable to any product or service sold through priceline. Defendants object to this interrogatory as overly broad and unduly burdensome. During the alleged Class Period, priceline offered a substantial number of products and services, the prices for which were set by different product groups using a variety of complex algorithms and revenue management principles (among other things) and often changed on a daily basis. Defendants do not see the relevance of much of this information and the burden of preparing a comprehensive response would be substantial. <u>See</u> Fed. R. Civ. P. 26(b)(2).

### Interrogatory No. 10

Interrogatory No. 10 calls for Defendants to identify all analyses used to determine whether priceline should have taken a charge and/or set up a reserve in connection with its receipt of the WebHouse warrants. Defendants have fully responded

---

[16] Defendants previously addressed each of the challenged responses in their March 1 letter to plaintiffs. (Exh. A, Hein Decl.)

to this interrogatory by describing how priceline arrived at its accounting for the

WebHouse warrant at the time of its issuance. Defendants' response to this interrogatory

states, in relevant part:

> "priceline engaged Murray Devine to issue a fair market valuation of the
> WebHouse Warrant and applied Generally Accepted Accounting
> Princip[le]s to reflect the fair value of that warrant on priceline's 1999
> 10-K financial statement as a reduction of warrant expense. See priceline
> 3/30/00 Form 10-K at 29. Priceline's auditors issued an unqualified
> opinion on these financial statements, which included priceline's
> accounting treatment for the WebHouse Warrant. Id. at 42."

Defendants do not know what else to say in response to this interrogatory. Plaintiffs

will have the opportunity to seek additional information through document discovery and

depositions.

<u>Interrogatory Nos. 12, 13, 16 and 21</u>

For each of these interrogatories, plaintiffs complain that Defendants have

not provided definitive and/or exhaustive lists of the information requested. The non-

exhaustive nature of Defendants' responses to these interrogatories was necessitated by

the focus of plaintiffs' requests—each of which seeks information about the conduct

and/or operations of WebHouse. For the reasons stated above in section I.B.2.,

Defendants do not believe that all of the information regarding WebHouse that plaintiffs

seek in these interrogatories is within their possession, custody or control. Defendants

have made a good faith attempt to gather information responsive to these requests and

have answered the interrogatories regarding WebHouse upon information and belief. But

Defendants cannot speak definitively or exhaustively regarding the conduct or operations

of this other company.

For example, Interrogatory No. 16 seeks the names of all entities who

participated in the sale of products or services on WebHouse's or priceline's websites, as

well other information concerning those entities. In response, Defendants provided four

charts, containing the names of grocery manufacturers, grocery retailers, gas stations, and

marketing/promotion partners with whom WebHouse established relationships, with the

caveat that the list might not be exhaustive. Similarly, Defendants provided three

additional charts in response to Interrogatory 21. Altogether, Defendants prepared 35

pages of charts containing hundreds of names and other items of responsive information.

Defendants have provided plaintiffs with all the information that they could obtain based

on reasonable inquiries; nothing more from Defendants is required or possible.

Interrogatory No. 14

This interrogatory seeks the identities of all persons or entities involved in

soliciting members to participate in WebHouse. Defendants objected to this

interrogatory's use of the phrase "involved in soliciting members to participate in

WebHouse" as vague and ambiguous. Plaintiffs have not offered any clarification of that

phrase.

Interrogatory Nos. 17 and 20

Interrogatory 17 purports to require Defendants to describe the types of

documents and/or reports created by WebHouse or priceline that tracked certain price and

profit information regarding WebHouse. Interrogatory 20 purports to call for Defendants

to identify all analyses, budgets, reports, projects or studies of WebHouse's profitability

or financial performance and to identify the persons involved in creating those

documents.

To the extent that the types of documents referenced in these

interrogatories exist and are in Defendants' possession, custody or control, Defendants

are in the process of producing them. Defendants are entitled to produce documents as

18

they are kept in the ordinary course of business. Fed. R. Civ. P. 34(b). Accordingly, these interrogatories are unduly burdensome insofar as they purport to require Defendants to itemize, describe or categorize documents being produced to plaintiffs. [17]

### Interrogatory No. 25

This interrogatory seeks the names of all individuals or entities who received stock, stock options or warrants of priceline, WebHouse or Walker Digital, as well as other information associated with such transactions and an identification of the documents evidencing those transactions. The interrogatory is overly broad and unduly burdensome because it seeks the identification of any person or entity that received stock, options or warrants during a three year period. The interrogatory also calls for information that is publicly available, such as on Form 4 disclosures filed with the United States Securities Exchange Commission, and so is obtainable from a less burdensome source. Further, the interrogatory seeks information that can be derived or ascertained from documents that plaintiffs have requested Defendants produce and that Defendants will produce in due course. Nothing more should be required.

### Conclusion

The Court's November 2, 2004 scheduling Order provides for the completion of document production by December 30, 2005, and for the completion of discovery by March 31, 2006. So there is still plenty of time for Defendants to complete their production and for the parties to take fact depositions.

---

[17] As already explained to plaintiffs, Defendants' objection on this ground is not based on Fed. R. Civ. P. 33(d). (Exh. A, Hein Decl.)

Defendants respectfully request that the Court deny plaintiffs' motion to compel discovery from Defendants.

April 5, 2005

DEFENDANTS PRICELINE.COM INC.,
JAY S. WALKER, N.J. NICHOLAS,
DANIEL SCHULMAN AND
RICHARD S. BRADDOCK

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@stam.rc.com


Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was served this 5th day of

April, 2005 via first class mail to the following counsel of record:

| •     **Co-Lead Counsel** | •     **Liaison Counsel** |
|---|---|
| David R. Scott, Esq.<br>James E. Miller, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:  860-537-3818<br>Fax:  860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:  212-687-7230<br>Fax:  212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Law Offices of Dennis J. Johnson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:  802-862-0030<br>Fax:  802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin  S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT  06103-3202<br>Tel:  860-493-6292<br>Fax:  860-493-6290 |

|  | **Attorneys for Defendant Jay S. Walker**<br><br>J. Allen Maines, Esq.<br>Carl Mullis, III, Esq.<br>Summer B. Joseph, Esq.<br>Laura Berg, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA  30308<br>Tel:  404-815-2400<br>Fax:  404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>PAUL, HASTINGS, JANOFSKY &<br>WALKER, LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone:  203-961-7400<br>Fax:  203-359-3031 |
|---|---|
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel:  212-474-1000<br>Fax:  212-474-3700 | **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT  06460<br>Tel:  203-877-8000<br>Fax:  203-878-9800 |

William J. Kelleher, III