**EXHIBIT A**

# CRAVATH, SWAINE & MOORE LLP

GEORGE J. GILLESPIE, III
THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN W. WHITE
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.

JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
W. CLAYTON JOHNSON
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER

**WORLDWIDE PLAZA**
**825 EIGHTH AVENUE**
**NEW YORK, NY 10019-7475**

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1242

JULIE A. NORTH
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN

GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO

SPECIAL COUNSEL
SAMUEL C. BUTLER
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

March 1, 2005

In re Priceline.com Securities Litigation
Master File No. 3:00cv1884 (DJS)

Dear Mr. Johnson:

I write in further response to your letter of February 17, 2005 ("2/17 Letter".)  As previously stated, we do not intend to amend our discovery responses (if at all) until after we have had the opportunity to discuss our objections and narrow the scope of your requests in the meet and confer scheduled for tomorrow.  To help narrow the issues for discussion on that call, however, we briefly address your "concerns" here.[1]

Document Requests

A.    General Objections

You take issue with the temporal limitation we have placed on our discovery responses.  (2/17 Letter at 1-2.)  As reflected in General Objection No. 3, we believe that the "Relevant Time Period" you have defined is overbroad and unduly burdensome to the extent it seeks information about conduct that occurred before or after the Alleged Class Period.  But we have not, as your letter suggests, limited our responses in a way that categorically excludes all documents "created outside of the [alleged] class period".  (2/17 Letter at 2.)  I can confirm that our reasonable search for responsive documents will encompass documents related to the claims and defenses asserted in the lawsuit and created during a reasonable amount of time before and after the Alleged Class Period.[2]

---

[1]  We address these items in the order they appear in your 2/17 Letter.

[2]  Your footnote with respect to Request No. 46 is puzzling.  We produced the insurance policies pertinent to this action three months ago as part of our Rule 26 initial disclosures.  See PCLN 00000001-00000173.

You next ask for two clarifications with respect to our General Objection No. 4:

First, you ask us to "confirm that [we] will produce all 'documents' that fall within the scope of Rule 34(a) and Local Rule 26(a)(2)". (2/17 Letter at 2.) Of course we will comply with all applicable federal and local rules of civil procedure; nothing in General Objection No. 4 suggests otherwise. Rather, General Objection No. 4 is directed at the 17 lines of prose that follow your invocation of Rule 34(a) in your definition of "Document", which are not "synonymous" with those rules. In addition, your definition of "Document" incorporates by reference your definition of "electronic data" (which in turn incorporates other defined terms), which nowhere appears in the Federal Rules of Civil Procedure or Local Rules.

Second, you assert that we have made a "blanket objection with respect to the production of electronic data" and suggest that we are refusing to produce the same. (2/17 Letter at 2.) That is not our position. We are well aware that data stored electronically is discoverable and, as we stated during our very first meet and confer, will be searching vast amounts of electronically stored data in the course of discovery here. As described in our response to your Interrogatory No. 32, a snapshot of the data on priceline's corporate file and e-mail servers was made years before you served your document requests, and we are in the process of searching that repository for responsive documents. The first sentence of our General Objection No. 5 was intended to preserve our rights to seek cost-sharing with respect to discovery of such electronically stored materials.

You next take issue with our General Objection No. 5 and ask us to substantiate the existence of any "common defense" or "mutual interest" privilege. (2/17 Letter at 2.) This general objection was lodged prior to our review of the bulk of documents sought by your requests and was intended to anticipate any number of hypothetical privilege issues that might arise in the course of our subsequent document review. At this time, however, we are not obliged speculatively to substantiate or defend privilege calls that have not yet been made.[3]

With respect to General Objection No. 6, you assume correctly that it was included in our response because it was drafted before the Court had entered the Protective Order in this case. (2/17 Letter at 2-3.) I can confirm that we intend to proceed with production of non-privileged, responsive documents pursuant to the terms of that Protective Order.[4]

---

[3] The request in my February 14, 2005 letter that you clarify your invocation of the "investigative privilege" is entirely different. We do not believe that there is any such thing as an "investigative privilege" that would entitle you to withhold documents from production under any circumstance.

[4] In the event we identify non-privileged, responsive documents subject to third-party confidentiality obligations, we may withhold production until the appropriate

Finally, you attack the basis for our General Objection No. 7 and assert that we "have an affirmative obligation under Rule 34 to provide documents and information in the possession, custody or control" of Priceline Webhouse Club, Inc. ("Webhouse") and Perfect Yard Sale, Inc. ("Yard Sale"). (2/17 Letter at 3.) Webhouse and Yard Sale were separate (and are now defunct) entities who licensed priceline's business model and had certain other arms-length contractual relationships with the company. Priceline did not hold any ownership interest in Webhouse or Yard Sale, nor did either of those two entities hold such an interest in priceline. While we are aware of the general principles set forth in the cases you cite, they do not suggest that the nature of the relationship between priceline and Webhouse or Yard Sale is sufficient to impute control over their documents to our clients. That being said, we have already committed to producing responsive documents regarding Webhouse and Yard Sale (if any) that do reside in our client's own files.

### B.    Specific Responses and Objections

You observe that "almost every one" of our written responses states objections and indicates that a reasonable search will be undertaken, and responsive documents will be produced, subject thereto. You request that we also "identify the responsive documents that [we] will or will not be producing." (2/17 Letter at 3.) We are not aware of any requirement under the Federal Rules of Civil Procedure or Local Rules that we do so, and we do not intend to amend our responses in this fashion.

You again ask us to "confirm that [we] will produce documents and provide information that is in the possession, custody or control" of Webhouse and Yard Sale. (2/17 Letter at 3.) For the reasons stated previously, we are unable to do so.

You next observe that we have objected to certain requests as overly broad and unduly burdensome (including with respect to the timeframes noted), and ask us to "confirm that [we] will not withhold any responsive documents on the grounds that these documents were created outside the Class Period". (2/17 Letter at 3–4.) As stated previously, our reasonable search for responsive documents will encompass documents created during a reasonable amount of time before and after the Alleged Class Period.

You take issue with our objections that certain requests are vague and ambiguous, or seek documents not relevant to the claims or defenses of any party to this action. You suggest that we should have provided further explanation of these objections in our written responses. (2/17 Letter at 4.) We believe the appropriate forum to discuss these objections, to the extent you do not understand them, is in our meet and confer session.

---

notifications are made and/or consents obtained. <u>See</u> General Objection No. 5. Furthermore, as acknowledged in the Protective Order, we may seek additional protections in the event you seek production of source code.

By way of illustration, we draw your attention to Request No. 51, to which we have objected on both of these grounds (among others.)[5]  It is vague and ambiguous, for example, insofar as it fails to clearly indicate whose "interactions, meetings or communications" it intends to capture:  those between or among "personnel" of two or more of the listed entities?  Or those between or among two or more personnel any one of the listed entities?  And exactly who is intended to be captured by the phrase "personnel <u>associated</u> with" a given entity:  that entity's employees? those of its licensees? those of its third party vendors?  Moreover, this request fails to limit the subject matter of the "interactions, meetings or communications" about which it inquires to the subject matter of the present lawsuit.  Accordingly, we believe it seeks documents that are irrelevant to the claims or defenses of any party to this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Finally, you ask us to "confirm that [we] will not withhold documents … on the grounds that [they] are obtainable from public sources".  (2/17 Letter at 4.)  To the extent that we identify non-privileged responsive documents maintained in our clients' files that happen to be publicly available, we will not affirmatively withhold them on that ground.  However, we will not seek to gather from outside sources publicly obtainable materials that plaintiffs are capable of gathering themselves.

<u>Interrogatories</u>

A.    <u>General Objections</u>

With respect to General Objection No. 2, we refer you to the preceding response regarding General Objection No. 5 to your document requests.

With respect to General Objection No. 3, we refer you to the preceding response regarding General Objection No. 6 to your document requests.

With respect to General Objection No. 5, we refer you to the preceding response regarding General Objection No. 7 to your document requests.

We believe the limitation on the Relevant Time Period set forth in General Objection No. 6 is appropriate.  For example, Interrogatory No. 1 asks us to identify persons "involved in making, commenting on and/or reviewing" priceline's public statements (among others.)  The only public statements by priceline at issue in this litigation are those made during the putative class period alleged in your Complaint.  Accordingly, we believe that limiting our response to individuals who participated with respect to those public statements is entirely appropriate, and we do not believe that our response excludes any "relevant information".  If you would like us to consider

---

[5] Request 51 seeks "All documents referring or relating to any interactions, meetings or communications between personnel associated with Webhouse, priceline, Perfect Yard Sale, Inc. and/or Walker Digital.

expanding the scope of this or any other response beyond the Alleged Class Period, please specifically articulate what you believe to be the relevance of the particular information requested.

### B.    Specific Responses

Our response to Interrogatory No. 5 asserted a number of objections, including the two noted in your 2/17 Letter. (2/17 Letter at 5.) The Court's recent entry of a Protective Order obviously resolves the confidentiality objection. However, this interrogatory remains overly broad and unduly burdensome. As drafted, this request purports to seek a description of all pricing formulas or methodologies applicable to any product or service sold through priceline from January 1, 1999 through December 31, 2001.[6] It is our understanding that, just during the Alleged Class Period, priceline offered a substantial number of products and services, the prices for which were set by different product groups using a variety of complex algorithms and revenue management principles (among other things) and often changed on a daily basis. We do not see the relevance of much of this information and the burden of preparing a comprehensive response would be substantial. Accordingly, we do not intend to prepare a supplemental response absent significant narrowing of this Interrogatory.

You next take issue with response to Interrogatory No. 10. (2/17 Letter at 5.) Our response describes how priceline arrived at its accounting for the Webhouse warrant at the time of its issuance. To the extent you are seeking information regarding subsequent accounting treatment, we can confirm that priceline periodically evaluated its investments (including the Webhouse warrant) in the normal course to determine whether any accounting adjustments were necessary or appropriate. When Webhouse announced on October 5, 2000 that it would begin winding down its operations, it became known that the value of the Webhouse was impaired. Accordingly, priceline wrote off the value of the warrant on its third quarter 2000 financial statements. (See 11/14/00 Form 10-Q at 8).

Your issue regarding our responses to Interrogatories 12, 13, 16 and 21 appears to be the same: that we have not provided definitive and/or exhaustive lists of the information you have requested. (2/17 Letter at 5-6.) The tentative nature of these responses, however, was necessitated by the focus of your requests—each of which seeks information about the conduct and/or operations of Webhouse. For the reasons previously stated, we do not believe that all of the information you seek regarding Webhouse is within the possession, custody or control of our clients. Nevertheless, as indicated in General Objection No. 5, we have made a good faith attempt to gather information responsive to these requests and have answered the interrogatories regarding Webhouse upon information and belief. Our clients cannot, however, speak definitively

---

[6] Our clients do not presently believe that they have knowledge or information sufficient to respond to this interrogatory's request for a description of Webhouse's pricing formulas and methodologies.

6

or exhaustively regarding the conduct or operations of this other company. Accordingly, we do not intend to supplement our responses as you have requested.

With respect to Interrogatory 14, we do not understand what you mean by the phrase "involved in soliciting members to participate in WebHouse". Please clarify what you are seeking in this interrogatory.

With respect to Interrogatories No. 17 and 20 (and General Objection No. 8), you misconstrue our objections. (2/17 Letter at 6-7.) We are not invoking Rule 33(d). Rather, we believe these requests are unduly burdensome insofar as they seek an itemization of the broad categories of document whose production you have requested elsewhere. (See Plaintiffs' First Set of Document Requests, Nos. 5 and 6.) As a general matter, we believe each party should bear the burden of analyzing the other's production for broad categories of documents they wish to use in this case.

Lastly, you ask that we amend our responses to include a response to Interrogatory No. 25. (2/17 Letter at 7.) But you ignore the objections that we have asserted. We do not intend to provide any additional information in response to this Interrogatory unless and until these objections are addressed.

Very truly yours,

Christine L. Arena

Geoffrey M. Johnson, Esq.
   Scott + Scott, LLC
      33 River Street
         Chagrin Falls, OH 44022

0125

BY FACSIMILE AND FIRST CLASS MAIL

Copies to:

Jacob B. Perkinson, Esq.
   Johnson & Perkinson
      1690 Williston Road
        P.O. Box 2305
          South Burlington, VT 05403

William J. Kelleher, III, Esq.
   Robinson & Cole LLP
      695 East Main Street
        Stamford, CT 06904-2305

J. Allen Maines, Esq.
Carl Mullis, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, NE
24th Floor
Atlanta, GA 30308

BY FACSIMILE

**EXHIBIT B**



February 17, 2005

<u>Via Facsimile and U.S. Mail</u>

Christine L. Arena
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

     Re:   <u>In re Priceline.com Securities Litig., Case No. 3:00cv1884 (DJS)</u>

Dear Christine:

     We have received your February 14, 2005 letter in which you request a meet and confer to discuss certain concerns you have about the Plaintiffs' responses to your discovery requests. We agree that the parties need to hold a meet and confer, which we would like to schedule for the week of February 28th. We too have several concerns about your responses to our discovery requests. We list some of those concerns in detail below.

     We are also concerned by the fact that you have yet to produce a single document in response to Plaintiffs' first set of document requests. This is particularly troubling in light of the Court's Scheduling Order, which provides that depositions shall commence on April 1, 2005. We believe that documents responsive to the requests should be produced well in advance of April 1st – so that we have time to review the documents before we start taking depositions. We also need to receive a copy of your privilege log before April 1st. You have now had our document requests for over three months. Please let us know by the close of business on Friday, February 18th when you will start producing documents, when you plan to complete your document production and when you plan to send us your finalized privilege log.

Document Requests

     A.  ·  <u>General Objections</u>

     In General Objection No. 3, you state that you will only be producing "documents relating to the putative class period alleged in the Consolidated Amended Complaint (the "Complaint") – January 27, 2000 to October 4, 2000." The limit you have placed on the "Relevant Time Period" conflicts with the scope of allowable discovery under Federal Rule of Civil Procedure 26(b)(1) which provides that a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Certainly, there will

ATTORNEYS AT LAW     CONNECTICUT     SCOTT + SCOTT, LLC     440 247-8200 VOICE
     OHIO     33 RIVER STREET     440 247-8275 FAX
     CALIFORNIA     CHAGRIN FALLS, OH 44022     SCOTTLAW@SCOTT-SCOTT.COM
     WWW.SCOTT-SCOTT.COM



Christine L. Arena
February 17, 2005
Page 2

be documents that were created outside of the Class Period that are relevant to the claims or defenses asserted in this lawsuit.[1]  Please confirm that you are not going to limit your production to documents created during or relating to the Class Period, but will produce responsive non-privileged documents that relate to the claims and defenses asserted in the lawsuit no matter when those documents were created.

In General Objection No. 4, you take issue with Plaintiffs' definition of the term "Document" as being overly broad and unduly burdensome.  However, in our document requests, we stated that: "'Document' or 'documents' is to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a)."  *See also* D. Conn. L. Civ. R. 26(a)(2) ("The term 'document' is defined to be synonymous in meaning and equal in scope of this term in Federal Rule of Civil Procedure 34(a).  A draft or non-identical copy is a separate document within the meaning of this term.").  Please confirm that you will produce all "documents" that fall within the scope of Rule 34(a) and Local Rule 26(a)(2).

You also object to the definition of the term "Document" "to the extent that it requires a search of all electronic data."  We do not believe that your blanket objection to the production of electronic data is appropriate – particularly in light of the case law on this topic.  *See, e.g., Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) ("Electronic documents are no less subject to disclosure than paper records.").  Please confirm that you will produce any electronic documents and electronically-stored data that are responsive to our document requests.

In General Objection No. 5, you state: "Defendants object generally to the Request to the extent that it seeks the disclosure for production of documents that come within the scope of the . . . common defense or mutual interest privilege."  You then go on to state that "[s]uch documents will not knowingly be disclosed."  Please provide us with any authority you have to support the "common defense" or "mutual interest privilege" and its application in this instance  Also, please let us know whether the Defendants have entered into a joint defense agreement in this case.

In General Objection No. 6, you state: "Defendants object generally to the Request to the extent that it calls for the disclosure of confidential information."  You then go on to state: "Defendants will not produce any documents containing such information without an appropriate protective order."  You make a similar objection when responding to several of the specific document requests.  We assume that you included this objection in your response because it was

---

[1] Take, for instance, Request No. 46.  There, Plaintiffs request: "All documents, regardless of when created, referring to, relating to or constituting any insurance policies or other agreements under which any Defendants may claim coverage to satisfy all or part of any possible liability for the claims asserted against them in this action."  You object to this request to the extent that it seeks documents "regardless of when created," limiting production to those documents created during the Class Period (*i.e.*, January 27, 2000 to October 4, 2000).  As it currently reads, your response excludes insurance policies created <u>before</u> the Class Period – even though the policies may cover claims asserted in this lawsuit.  Certainly, such documents fall within the scope of Rule 26(b)(1).

Christine L. Arena
February 17, 2005
Page 3

drafted before the Court entered the Protective Order in this case. Please confirm that you will
not withhold any documents responsive to the document requests on confidentiality grounds.

In General Objection No. 7, you claim that documents regarding Priceline Webhouse
Club, Inc. and Priceline Perfect Yard Sale, Inc. are not in the Defendants' "possession, custody
or control." Despite your assertions to the contrary, we believe that you have an affirmative
obligation under Rule 34 to provide documents and information in the possession and control of
these affiliated parties. *See, e.g., SEC v. Credit Bancorp. Ltd.,* 194 F.R.D. 469, 471-72
(S.D.N.Y. 2000) (explaining that a party is required to produce discovery materials in its
"control," which "has been construed broadly by courts as the legal right, authority, or practical
ability to obtain the materials sought upon demand"); *Afros S.P.A v. Drauss-Maffei Corp.,* 113
F.R.D. 127, 131 (D. Del. 1986) ("It is obvious that the particular form of the corporate
relationship does not govern whether [a corporation] controls documents."); *Gerling Int'l Ins.
Co. v. Commissioner of IRS,* 839 F.2d 131, 140-41 (3d Cir. 1988) (party controls documents if it
has the ability to obtain documents held by another corporate entity in the ordinary course of
business). Please confirm that you will produce documents and provide information that is in the
possession, custody or control of Priceline Webhouse Club, Inc. and Priceline Perfect Yard Sale,
Inc.

B.      Specific Responses and Objections

In almost every one of your Specific Responses and Objections, you simply list several
objections and then state: "Subject to and without waiving these objections, Defendants will
perform a reasonable search for documents responsive to this request and will produce to
plaintiffs non-privileged documents that Defendants find." Although you have told us what
portions of the document requests you find objectionable, you have not identified the responsive
documents that you will and/or will not be producing. Please amend your responses promptly so
that they provide this information.

You also repeat the same blanket objections over and over again throughout the Specific
Responses to the Document Requests. First, you object to virtually every one of our requests "on
the grounds that [the Request] seeks documents regarding WebHouse or those acting on its
behalf, as well as documents regarding the activities and conduct of third parties, that are outside
of Defendants' possession, custody or control." As we explain above, Defendants have an
affirmative obligation to produce these documents. Please confirm that you will produce
documents and provide information that is in the possession, custody and control of Priceline
Webhouse Club, Inc. and Priceline Perfect Yard Sale, Inc.

Second, you object to virtually every one of our requests on the grounds that the request
is "overbroad and unduly burdensome." Rarely do you explain or identify what about the
request is overbroad or unduly burdensome. Moreover, when you have provided an explanation,
you state that you are objecting because the request seeks documents "regardless of time period"
or "regardless of when created." *See* Response to Req. Nos. 9, 11, 29, 41, 46, 47, 48, 55, 60. As

Christine L. Arena
February 17, 2005
Page 4

explained above, Rule 26(b)(1) does not limit discovery to a particular time period; rather, it allows a party to obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Please confirm that you will not withhold any responsive documents on the grounds that these documents were created outside of the Class Period.

Next, you object to several of the requests on the grounds that they are "vague and ambiguous" and "seek documents that are not relevant to the claims or defenses of any party to this action." In most instances, however, you have not explained or identified what about the request is "vague and ambiguous." *See* Response to Req. Nos. 6-9, 11-20, 22-24, 26, 31, 33-35, 36-38, 41-43, 47-51, 53-55, 57-60. Nor have you provided any explanation for why you believe the request falls outside the scope of Rule 26(b)(1). *Id.* at 2-9, 11-31, 33-44, 46-61. Without any explanation to support the objection, we have no way to test the validity of your objection. Please confirm that you will not withhold any documents on the grounds that a particular document request is "vague and ambiguous." Also, please confirm that you will not withhold any documents that are responsive to document requests because you believe the request falls outside the scope of Rule 26(b)(1).

You also object to several of the requests on grounds that the requests seek "documents, including SEC filings, that are obtainable from public sources." Please confirm that you will not withhold documents responsive to the document requests on the grounds that the documents are obtainable from public sources.

Interrogatories

A.    General Objections

In General Objection No. 2, you state: "Defendants object generally to the Interrogatories, including the definitions and instructions set forth therein, to the extent that they seek the disclosure of information that comes within the scope of the . . . common defense or mutual interest privilege." You then go on to state that "[s]uch information will not knowingly be disclosed." Please provide us with any authority you have to support the "common defense" or "mutual interest privilege" and its application in this instance Also, please let us know whether the Defendants have entered into a joint defense agreement in this case.

In General Objection No. 3, you object to the interrogatories on the grounds that they seek "confidential business information, trade secrets or information subject to any third-party confidentiality agreement, order and/or obligation." Once again, we assume that you included this objection in your responses because no Protective Order was in place at the time you prepared the responses. Now that the Court has entered a Protective Order, we assume that you will be amending your interrogatory responses so that they include confidential information that was previously withheld. Please confirm that this is the case and inform Plaintiffs' counsel when Defendants will be providing this information.

Christine L. Arena
February 17, 2005
Page 5

In General Objection 5, you once again state: "Defendants object to each Interrogatory that requests information regarding Priceline WebHouse Club, Inc." For the reasons stated above, this is not a valid objection. Please confirm that you plan to provide information that is in the possession, custody or control of Priceline Webhouse Club, Inc. and Priceline Perfect Yard Sale, Inc.

In General Objection No. 6, you redefine the "Relevant Time Period" so that it encompasses only the Class Period, stating that "Defendants will provide responses for the putative class period alleged in the Consolidated Amended Complaint – January 27, 2000 to October 4, 2000 (the "Alleged Class Period") – unless otherwise noted." As explained above, this limitation conflicts with the plain language of Rule 26(b)(1). Please confirm that you have not withheld relevant information on these grounds.

In General Objection No. 8, you object to the interrogatories "generally" "to the extent the answers sought may be derived or ascertained from documents that Defendants will be producing in response to Plaintiffs' First Request for Production of Documents to All Defendants." This is not an appropriate way to respond to interrogatories. Rule 33(d) allows a party responding to an interrogatory to rely on business records where "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served" and where the party *specifies* "the record from which the answer may be derived or ascertained." Please confirm that you have not withheld information needed to answer an interrogatory on the grounds that the answers may be derived from the documents. Alternatively, please identify the specific documents from which the requested information may be obtained and explain why the burden of collecting such information from the documents would be equal as between Defendants and Plaintiffs.

B.    Specific Responses

Interrogatory No. 5 asks Defendants to "Describe all formulas or methodologies used to set prices for products or services offered through WebHouse and/or Priceline . . . ." In response to this Interrogatory, you object "to the extent it seeks confidential and competitively sensitive information that requires additional protections prior to disclosure." You also include the blanket objections that the request is "overly broad and unduly burdensome and seeks information that can be obtained through other, less burdensome means of discovery." Now that the Court has entered a Protective Order in this case, please confirm that you will amend your interrogatory responses to include the information requested in Interrogatory No. 5 and please inform Plaintiffs' counsel when such information will be provided.

In response to Interrogatory No. 10, which asks Defendants to "Identify all analyses used to determine whether Priceline should have taken a charge and/or set up a reserve in connection with the value of the WebHouse warrants received by Priceline," Defendants fail to identify any such analyses and fail to confirm whether any such analyses actually exist. Please amend your

Christine L. Arena
February 17, 2005
Page 6

responses so that they either identify the responsive analyses, or, alternatively, confirm that no such analyses exist.

Interrogatory No. 12 asks Defendants to "Identify all persons or entities who were responsible for or otherwise involved in the launch of WebHouse and the WebHouse website and, for each such person, identify the extent of their involvement." In response to this request, you have submitted a short list of persons stating that "primarily responsible for the launch of WebHouse and its website may have included (but may not have been limited to)" these individuals. This is not responsive to the Interrogatory. Please amend your responses so that they identify **all** persons or entities who were responsible for or otherwise involved in the launch of WebHouse and the WebHouse website and for each such person, identify the extent their involvement.

Interrogatory No. 13 asks Defendants to "Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-party, involved in soliciting participations in WebHouse by manufacturers, wholesales, retailers or distributors." In response to this request you have submitted a list of "persons who *may* have solicited business to provide products or services to WebHouse" and state that those involved may not be limited to this list. A list of persons who may have solicited business is not responsive. Please amend your responses so they identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third-part, involved in soliciting participations in WebHouse by manufacturers, wholesalers, retailers or distributors.

Interrogatory No. 14 asks Defendants to "Identify all people or entities, whether employed by Priceline, WebHouse, Walker Digital or a third party, involved in soliciting members to participate in WebHouse." You object to this interrogatory on the grounds that the phrase "involved in soliciting members to participate in WebHouse" is vague and ambiguous, but have not responded to the interrogatory. We do not believe that the interrogatory is vague or ambiguous. Please amend your responses so that they include a response to this interrogatory.

In response to Interrogatories No. 16, you attached as Exhibits A, B, C and D, lists of manufacturers, grocery retailers, gas stations and partners. You state that the lists in those Exhibits includes (but may not be limited to) entries that may have had relationships with WebHouse. A list of entities that may have had relationships with WebHouse is not response to Plaintiffs' Request. Please amend your response to identify all manufacturers, wholesalers, retailers, distributors or any other sponsoring parties who participated in the sale of products or services on WebHouse's or Priceline's websites; the dates such entities began to participate; all persons involved for such entities; all documents provided to such entities in connection with their participation; and each type of document which recorded the extent of their participation.

In response to Interrogatories Nos. 17 and 20, you state that "Defendants object to this interrogatory on the grounds that the answers sought may be derived or ascertained from documents that Defendants may produce in response to Plaintiffs' First Document Requests."

Christine L. Arena
February 17, 2005
Page 7

Your response to these two interrogatories does not comply with Rule 33(d). Please amend your responses so that they specify the specific documents that you reference in your response and explain why it is no more burdensome for Plaintiffs than Defendants to compile responsive information.

In response to Interrogatory No. 21 you include as Exhibits E, F, and G, lists of employees and contractors who *may* have worked on Priceline's and WebHouse's computer systems and/or websites during the Alleged Class Period. The is not responsive to Plaintiffs' request. Please amend your response to identify all persons and/or entities that serviced, sought to improve or upgrade, maintained, installed, expanded, programmed, integrated, implemented and/or developed Priceline's, Walker Digital's and/or WebHouse's computer systems and websites during the Relevant Time Period, and, for each such person and/or entity, describe their involvement.

Interrogatory No. 25 asks Defendants to "Identify all individuals or entities who received stock, stock options or warrants of Priceline, Webhouse or Walker Digital (other than securities acquired through trades on the open market) during the Relevant Time Period, and for each such person identify the number of shares, options or warrants acquired, the date acquired, the consideration paid, the value when acquired, the date of maturity or exercise, and identify all documents evidencing such transactions." You have not responded to this interrogatory. Please amend your responses so that they include a response to this interrogatory.

To narrow the issues at the meet and confer, we expect that you will amend your interrogatory responses and provide us with the additional information we ask for in this letter by the close of business on **Friday, February 25th** (with the exception of the dates relating to your document production, which we anticipate receiving no later than the close of business on **Friday, February 18th**). We look forward to discussing any remaining issues with you during a meet and confer. As we stated above, we are available for the meet and confer anytime during the week of February 28th. We believe that we should have our meet and confer no later than Thursday, March 3rd. If we do not receive sufficient assurances that you will appropriately comply with our discovery requests, we will be forced to move the Court to compel compliance.

Sincerely yours,

Geoffrey M. Johnson

cc:    David R. Scott
       Jacob B. Perkinson

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In Re: Priceline.com
Securities Litigation
                      :
                      :

This document relates to:       :      DECLARATION OF
                             :      CHRISTINE L. ARENA

ALL PENDING ACTIONS     :

                             :

I, CHRISTINE L. ARENA, declare as follows:

1.     I make this declaration in opposition to Plaintiffs' Motion for Entry of a Confidentiality Order and in support of Defendants' Cross-Motion for Entry of an Appropriate Protective Order. All information contained herein is made on the basis of my own personal knowledge, unless otherwise stated.

2.     I am an associate with the law firm of Cravath, Swaine & Moore LLP, counsel to defendants priceline.com Incorporated ("priceline"), N.J. Nicholas, Daniel H. Schulman and Richard S. Braddock ("Defendants") in the above-captioned action.

3.     Counsel to the parties in this action began discussing a proposed confidentiality order in connection with preparation of the Court's required Rule 26(f) report, during mid-October of 2004. On October 19, 2004, I provided a first draft of the Report to plaintiffs' counsel for discussion purposes. (See Declaration of Jacob B. Perkinson In Support of Plaintiffs' Motion for Entry of Confidentiality Order ("Perkinson Decl.") Exh. A.)

4.    During the first telephonic meet and confer held on this topic on October 20, 2004, Defendants' counsel stated its desire to negotiate the scope of a protective order with the benefit of knowing the scope of the discovery requests. Although the parties' recollections differ, plaintiffs' counsel recalls that they told Defendants' counsel to "assume that everything might be subject to discovery". (See infra Exh. 12 at 2.)

5.    Plaintiffs' counsel's statement had broad implications for the negotiation of a protective order, given the breadth of confidential business, technical and other competitively sensitive information that I understand to be in priceline's possession. For example, I understand that discovery of sensitive "source code information" was of particular concern to priceline in prior litigation. While such information did not seem relevant to the present dispute, it fell within plaintiffs' suggested scope of negotiation.

6.    By e-mail dated October 22, 2004 (a true and correct copy of which is attached hereto as Exhibit 1), plaintiffs' counsel circulated a first draft of a confidentiality stipulation.

7.    During the parties' second telephonic meet and confer on October 25, 2004, Defendants' counsel reiterated a desire to have at least plaintiffs' initial document requests in hand before stipulating to a protective order, so that the parties would have a concrete basis upon which to assess the scope of appropriate protections.

8.    Later that day, I provided plaintiffs' counsel with a revised draft of the Rule 26(f) Report, which included our revised position that a confidentiality

2

stipulation should be submitted shortly <u>after</u> the commencement of discovery so that the parties could first exchange initial discovery requests.

9.      I also provided plaintiffs' counsel with a template for a protective order discussed by the parties in <u>Priceline.com Incorporated v. Microsoft Corporation et al.</u>, Civil Action No. 3:99 CV 1991(AWT). (<u>See</u> Perkinson Decl. Exh. B; a true and correct copy of the attachment to this e-mail is attached as Exhibit 2 to this declaration). This document illustrated many of the standard provisions we believed were appropriate to include in the protective order, as well as a host of carefully crafted provisions we believed were necessary to deal with discovery of source code information in that matter.

10.     In response to this proposal, plaintiffs' counsel provided a revised confidentiality stipulation on October 27, 2004 (a true and correct copy of which is attached hereto as Exhibit 3). This revision lacked many of the standard provisions we believed were appropriate to be included in the protective order in this case, as well as many of the substantial safeguards for source code included in the template we provided two days earlier. I informed plaintiffs' counsel of these deficiencies in my subsequent e-mail of October 28, 2004. (<u>See</u> Perkinson Decl. Exh. C).

11.     On October 29, 2004, the parties submitted a final Rule 26(f) Report to the Court. By Order dated November 2, 2004, the Court stated:

> "The court does not require the filing of a proposed protective order and does not set a deadline for the filing of a proposed protective order. If no proposed order is submitted, the parties may request relief by motion pursuant to the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the District of Connecticut at the appropriate time. The parties should also note that agreement on the scope of a protective order does not relieve the moving party, or parties, from demonstrating good cause for shielding documents from public view."

3

12.    On November 5, 2004, plaintiffs wrote to Defendants' counsel,

stating:

> "Attached is a rough draft list of the documents Plaintiffs expect to request
> in their initial Requests for Production from Defendants. Plaintiffs offer
> this document to Defendants based on the conditions and understandings
> set forth below. If the statement below does not comport with your
> understanding, or is not agreed to by Defendants, then Plaintiffs do not
> consent to share this list with Defendants and, in that event, I request that
> you immediately delete this message and its attachment from your system
> and confirm to me that you have done so.
>
> This list is being offered solely for Defendants' information at
> Defendants' request and solely for the purpose of facilitating the parties'
> attempts to negotiate a confidentiality order in this case. The document is
> to be used for no purpose other than negotiating a confidentiality order in
> this case. While Plaintiffs have made a good faith effort to recite the areas
> they intend to explore in discovery, Plaintiffs are not bound by anything
> contained in the attached draft in any respect and the draft has no force,
> effect or purpose beyond its use as an aid to facilitate the negotiation of a
> stipulated confidentiality order in this action. Plaintiffs reserve all claims
> of work product privilege and all other applicable privileges and the
> proffer of this draft shall not be deemed a waiver of any privilege in any
> way or for any purpose. By opening the attached document, Defendants
> agree to the above provisions."

(See Perkinson Decl. Exh. F at p.2.)

13.    Defendants' counsel declined to accept the disclaimers and

conditions detailed in this e-mail (none of which had been discussed in advance with

Defendants' counsel or mentioned in plaintiffs' Rule 26(f) proposal) and did not open the

attachment.[1] (Id. at pp.1-2.)

14.    On November 8, 2004, Plaintiffs' replied that:

> "I am sorry that there appears to be a misunderstanding as to what
> Plaintiffs agreed to submit to Defendants. As the Proposed Order

---

[1] Paragraph 16 of the Perkinson Declaration states incorrectly that this response was
made on November 8, 2004. As is indicated on the timestamp of the e-mails in Exhibit F
to that declaration, plaintiffs sent their "rough draft list" at 4:55 p.m. on November 5,
2004, and we responded at 6:00 p.m. on the same day.

4

submitted to the Court provides, Plaintiffs promised only to "undertake" to provide Defendants with a Request for Production. We have fulfilled this undertaking in good faith."

(Id. at p.1)

15.    By letter dated November 9, 2004 (a true and correct copy of which is attached hereto as Exhibit 4), I wrote to plaintiffs' counsel summarizing the negotiation history to that date and Defendants' position with respect to a proposed protective order, in the hope of avoiding further "misunderstanding[s]". I also agreed to participate in a conference call that week at plaintiffs' counsel's request.

16.    During the parties' November 10, 2004 conference call, I outlined several modifications to plaintiffs' proposed confidentiality order. With respect to the scope of protections for confidential documents, I again reiterated that the precise protections Defendants would seek would depend upon the scope of documents actually requested by plaintiffs.

17.    By e-mail dated November 11, 2004 (a true and correct copy of which is attached hereto as Exhibit 5), plaintiffs informed us that "after due consideration and discussion ... we do not believe, at this time, that any changes Defendants have suggested are warranted or appropriate" and stated their intention to file a motion with this Court by November 19, 2004.

18.    By letter dated November 12, 2004 (a true and correct copy of which is attached hereto as Exhibit 6), I urged plaintiffs' counsel to defer any unilateral submissions to the Court until after the service of initial discovery demands and a final meet and confer among the parties (which I suggested take place one week following the commencement of discovery, during the week of November 22nd).

5

19.     By e-mail dated November 15, 2004 (a true and correct copy of which is attached hereto as Exhibit 7), plaintiffs responded that their document requests would be served the same day and reiterated that they intended to move for a protective order by the end of that week if agreement could not be reached.

20.     Later that day, plaintiffs served Plaintiffs' First Request for Production of Documents to All Defendants and Lead Plaintiffs' First Set of Interrogatories Directed to All Defendants (the "First Requests") (true and correct copies of which are attached hereto as Exhibits 8 and 9). Plaintiffs also served their Rule 26(a)(1) Disclosures (a true and correct copy of which is attached hereto as Exhibit 10). Notably, the First Requests do not (on their face) appear to seek production of source code information. They do, however, seek production of various other items of information that I understand priceline considers to be confidential and competitively sensitive. (See accompanying Declaration of Mitchell L. Truwit at ¶¶ 3-4).

21.     By letter dated November 18, 2004 (a true and correct copy of which is attached hereto as Exhibit 11), I outlined for plaintiffs' counsel the specific modifications to their proposed confidentiality order we believed were appropriate, as informed by our review of the First Requests.

22.     By letter dated November 19, 2004 (a true and correct copy of which is attached hereto as Exhibit 12), plaintiffs' counsel informed us that they had filed a Motion for Entry of Plaintiffs' Confidentiality Order ("Plaintiffs' Motion"), as they had accepted some of our proposed revisions but not others.

23.     Defendants' counsel received the service copy of Plaintiffs' Motion by mail on November 22, 2004.

6

24. By letter dated November 24, 2004 (a true and correct copy of which is attached hereto as Exhibit 13), I provided further clarification of Defendants' positions to plaintiffs' counsel.

25. By letter dated November 29, 2004 (a true and correct copy of which is attached hereto as Exhibit 14), plaintiffs' counsel responded that they "fully comprehend[ed]" Defendants' position. With respect to the disputed scope of disclosure to fact witnesses, however, plaintiffs' counsel indicated that they were willing to consider Defendants' position with a clarification.

26. Thereafter, the parties continued their negotiations in a series of correspondence (true and correct copies of which are attached hereto as Exhibits 15, 16 and 17.

27. As of the date of this declaration, I have received no response from plaintiffs' counsel to my letter of December 8, 2004. Thus, several disputes appear to remain between the parties regarding the scope of a proposed protective order. Because Connecticut Local Rule 7(a) requires that Defendants' opposition to Plaintiffs' Motion be filed on December 10, 2004, however, each of these disputes (including those still subject to discussion with plaintiffs' counsel) is addressed in Defendants' opposition papers.


I declare under the penalty of perjury that the foregoing is true and correct.


Executed on December 9, 2004.

_Christine L. Arena_

Christine L. Arena

7

## CERTIFICATION

I hereby certify that a copy of the foregoing Declaration of Christine L. Arena was mailed this 10th day of December, 2004 via first class mail to the following counsel of record:

| Co-Lead Counsel | Liaison Counsel |
| --- | --- |
| David R. Scott, Esq.<br>James E. Miller, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT 06415<br>Tel: 860-537-3818<br>Fax: 860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY 10017<br>Tel: 212-687-7230<br>Fax: 212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Law Offices of Dennis J. Johnson<br>1690 Williston Road<br>South Burlington, VT 05403<br>Tel: 802-862-0030<br>Fax: 802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Patrick A. Klingman, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT 06103-3202<br>Tel: 860-493-6292<br>Fax: 860-493-6290 |

| **Attorneys for Defendant Deloitte & Touche LLP** | **Attorneys for Defendant Jay S. Walker** |
|---|---|
| Eric W. Wiechmann, Esq.<br>Peter W. Hull, Esq.<br>McCarter & English<br>185 Asylum Street<br>36th Floor<br>Hartford, CT 06103<br>Tel: 860-275-6700 | Martin Glenn, Esq.<br>Dana C. MacGrath, Esq.<br>O'Melveny & Myers LLP<br>153 East 53rd Street<br>New York, NY 10022<br>Tel: 212-326-2000<br>Fax: 212-326-2061 |
| William R. Maguire, Esq.<br>Carla A. Kerr, Esq.<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>Tel: 212-837-6000<br>Fax: 212-422-4726 | Martin Glenn<br>Dana C. MacGrath<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 326-2200<br>Fax: (212) 326-2061 |
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.** | **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols** |
| Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT 06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 |

_Melissa Sullivan_

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: Priceline.com Securities Litigation | : | Master File No. 3:00cv1884 (DJS) |
| ——————————————————— | : | |
| This document relates to: | : | |
| | : | |
| ALL PENDING ACTIONS | : | |
| | : | December 10, 2004 |

## NOTICE OF MANUAL FILING

Please take notice that the Defendants have manually filed the following documents:

1.    Memorandum of Law in Support of Defendants' Cross-Motion for Entry of An Appropriate Protective Order, together with Exhibits (A) through (E) thereto; and

2.    Exhibits (1) through (17) to the Affidavit of Christine Arena dated December 9, 2004 filed in Support of Defendants' Cross-Motion for Entry of An Appropriate Protective Order;

These documents are not being filed on disk in pdf. format because the electronic file size of each filing exceeds 1.5 megabytes. These documents have been manually served on all parties.

STAM1-769982-1

Respectfully submitted,

DEFENDANTS
PRICELINE.COM INC.,
JAY S. WALKER, N.J. NICHOLAS,
DANIEL SCHULMAN AND
RICHARD S. BRADDOCK

Joseph L. Clasen (ct04090)
William J. Kelleher III (ct22140)
Melissa Sullivan (ct24443)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com
wkelleher@rc.com
msullivan@rc.com

2

## CERTIFICATION

I hereby certify that a copy of the foregoing Notice of Manual Filing was mailed

this 10th day of December, 2004 via first class mail to the following counsel of record:

| Co-Lead Counsel | Liaison Counsel |
|---|---|
| David R. Scott, Esq.<br>James E. Miller, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT 06415<br>Tel: 860-537-3818<br>Fax: 860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY 10017<br>Tel: 212-687-7230<br>Fax: 212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Law Offices of Dennis J. Johnson<br>1690 Williston Road<br>South Burlington, VT 05403<br>Tel: 802-862-0030<br>Fax: 802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Patrick A. Klingman, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT 06103-3202<br>Tel: 860-493-6292<br>Fax: 860-493-6290 |

3

| Attorneys for Defendant Deloitte & Touche LLP | Attorneys for Defendant Jay S. Walker |
|---|---|
| Eric W. Wiechmann, Esq.<br>Peter W. Hull, Esq.<br>McCarter & English<br>185 Asylum Street<br>36th Floor<br>Hartford, CT 06103<br>Tel:  860-275-6700<br><br>William R. Maguire, Esq.<br>Carla A. Kerr, Esq.<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY  10004<br>Tel: 212-837-6000<br>Fax: 212-422-4726 | Martin Glenn, Esq.<br>Dana C. MacGrath, Esq.<br>O'Melveny & Myers LLP<br>153 East 53rd Street<br>New York, NY  10022<br>Tel: 212-326-2000<br>Fax: 212-326-2061<br><br>Martin Glenn<br>Dana C. MacGrath<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Telephone:  (212) 326-2200<br>Fax:  (212) 326-2061 |
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT  06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 |

Melissa Sullivan

54

**EXHIBIT D**

# JOHNSON & PERKINSON

### ATTORNEYS AT LAW
1690 WILLISTON ROAD
P.O. BOX 2305
SOUTH BURLINGTON, VERMONT 05403
www.jpclasslaw.com

DENNIS J. JOHNSON
ALSO ADMITTED TO PA AND DC¹

JACOB B. PERKINSON
ALSO ADMITTED TO ME

'INACTIVE'

ROBIN A. FREEMAN, JR.
ALSO ADMITTED TO OH¹

JAMES F. CONWAY, III
ALSO ADMITTED TO MA

PETER J. McDOUGALL
ALSO ADMITTED TO MA

TELEPHONE (802) 862-0030
TELECOPIER (802) 862-0060
E-MAIL email@jpclasslaw.com

March 9, 2005

*VIA* FACSIMILE
James G. Hein, Jr., Esq.
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eight Avenue
New York, NY 10019

RE:     *In re: Priceline.com Securities Litigation*, 3:00CV1884 (DJS) (D.Conn.)

Dear Jim,

Thank you for your letter of March 8, 2005. It was nice meeting you on Monday and, once again, thank you for your hospitality in hosting the deposition.

On the issue of how best to deal with the class briefing schedule, it appears we should be able to come to an agreement that addresses both sides' concerns. Defendants take the position that they are entitled to documents as to which Plaintiffs have objected and that it would be more convenient and efficient to resolve whether such discovery will be allowed prior to conducting further depositions. As I expressed to you and Christine on Monday, Plaintiffs are wary of agreeing to an open-ended period for completing briefing on the class certification issue as originally suggested by Defendants.

I believe the concerns of both sides can be addressed by a stipulation which 1) provides that Defendants will file their Motion to Compel by March 11; 2) extends the time period for filing Defendants' Opposition to Class Certification (if any) to forty-five days after the resolution of Defendants' Motion to Compel; and 3) provides that Plaintiffs' Reply (if any) to Defendants' Opposition would be due thirty days after the filing of any Opposition.

Your letter also requests that the parties agree to postpone the scheduled Plaintiffs' depositions. In light of Plaintiffs' agreement to accommodate Defendants with respect to the extension of time for briefing the class certification issue, we will also agree to reschedule these depositions.

JOHNSON & PERKINSON
ATTORNEYS AT LAW

You also request the production of additional documents from Mr. Ross. As communicated to Defendants on Monday, we have no objection to producing the documents you seek. However, I feel compelled to note my strong disagreement with your assertion that Plaintiffs have "failed to conduct an adequate search for documents" and your characterization of Mr. Ross's testimony. None of the additional documents requested in your letter are responsive to Defendants' pending Requests.. Nevertheless, in the spirit of cooperation, as we have already informed Defendants, we will produce the documents referenced in your letter which are in the possession, custody or control of Mr. Ross.

In addition, now that you have asserted that Defendants' Requests also encompass account statements reflecting a plaintiff's holdings (as opposed to documents concerning any purchase, sale or other transfer) of Priceline.com stock, we will ask each Plaintiff to search for such documents and will produce them to the Defendants if they exist and are in Plaintiffs possession, custody or control. This offer is made solely as a courtesy and shall not be deemed to waive or compromise any objection previously asserted by Plaintiffs with respect to Defendants' discovery requests.

Please let me know at your earliest convenience whether all Defendants (including Jay Walker) will agree to the proposed stipulation regarding class certification noted above. Thank you.

Sincerely,

Jacob B. Perkinson

David R. Scott, Esq.
Erin G. Comite, Esq.
Carl W. Mullis, Esq.
William Kelleher, Esq.

| Transaction Report | | | | | |
|---|---|---|---|---|---|
| Send | | | | | |
| Transaction(s) completed | | | | | |
| No. TX Date/Time    Destination | | Duration P.# | Result | Mode | |
| 607 MAR-09   11:38 860 537 4432 | | 0°01'16" 003 | OK | Normal | |

# JOHNSON & PERKINSON
## ATTORNEYS AT LAW
### 1690 WILLISTON ROAD
### P.O. BOX 2305
### SOUTH BURLINGTON, VERMONT 05403
### (802) 862-0030 PHONE
### (802) 862-0060 TELECOPIER

## FACSIMILE TRANSMITTAL SHEET

| TO: David R. Scott, Esq. | FROM: Jacob B. Perkinson, Esq. |
|---|---|
| FAX NUMBER: (860) 537-4432 | DATE: 3/9/2005 |
| PHONE NUMBER: (860) 537-5537 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| RE: Priceline.com Securities Litigation | |

NOTES/COMMENTS:

Please see attached.

NOTICE: This message may be subject to attorney/client, work product or other applicable privileges and the inadvertent or accidental transmission of this e-mail to anyone other than the intended recipient shall not be deemed a waiver of any of these privileges. In addition, copyright is claimed as to all original material contained in or attached to this communication. This message and any attachments are intended for the individual or