IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: Priceline.com<br>Securities Litigation<br>------------------------------------------------------------<br>This document relates to:<br><br>ALL PENDING ACTIONS | Master File No.<br>3:00cv1884 (DJS)<br><br><br><br><br><br>April 13, 2005 |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

*Attorneys for Defendants
priceline.com Inc., N.J. Nicholas,
Daniel Schulman and Richard S. Braddock*

Douglas C. Conroy (ct11555)
Paul R. Dehmel (ct23063)
PAUL, HASTINGS, JANOFSKY &
WALKER, LLP
1055 Washington Boulevard
Stamford, CT 06901
Telephone: (203) 961-7400
Fax:  (203) 359-3031
douglasconroy@paulhastings.com
pauldehmel@paulhastings.com

J. Allen Maines (phv0013)
Carl W. Mullis
PAUL, HASTINGS, JANOFSKY &
WALKER, LLP
600 Peachtree Street, NE, Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
Fax: (404) 815-2424
allenmaines@paulhastings.com
carlmullis@paulhastings.com

*Attorneys for Defendant*
*Jay S. Walker*

## Citation Conventions

The following conventions will be used throughout this Reply Memorandum:

- "Motion to Compel" or "Opening Brief" or "Def. Br." for references to Defendants' Motion to Compel Discovery of Plaintiffs and Memorandum of Law in Support Thereof, dated March 9, 2005.

- "Opposition Brief" or "Pltf. Br." for references to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Discovery, dated March 30, 2005.

- "Kelleher Decl. 3/9" for references to the Declaration of William J. Kelleher, III, dated March 9, 2005.

- "Kelleher Decl. 4/13" for references to the Declaration of William J. Kelleher, III, dated April 13, 2005.

- "Hein Decl." for references to the Declaration of James G. Hein, Jr., dated April 5, 2005.

Defendants priceline.com Inc. ("priceline"), N. J. Nicholas, Daniel H. Schulman, Richard S. Braddock and Jay S. Walker (collectively, "Defendants") submit this Reply Memorandum of Law in support of their motion to compel discovery from plaintiffs.

**Introduction**

Defendants filed their Motion to Compel on March 9, seeking the Court's assistance in obtaining documents and information routinely called for and necessary to test the appropriateness of class certification. To date, plaintiffs have still only produced 53 pages of documents for the remaining five proposed class representatives.[1] In addition, since Defendants filed their Motion, plaintiffs' attorneys have revealed that they applied to Defendants' discovery demands an interpretation of the term "concerning" that is mistakenly narrow and inconsistent with District of Connecticut Local Civil Rule 26(c)(7). (See Exh. D, Hein Decl.) The word "concerning" appears in 13 of Defendants' document requests. Accordingly, there is every reason to believe that plaintiffs have not conducted an appropriate search for documents responsive to each of those requests, in addition to the deficiencies in plaintiffs' discovery responses already discussed in the Motion to Compel.

In their Opposition Brief, plaintiffs misstate both Defendants' arguments and applicable legal principles. In particular, plaintiffs are not correct in how the work product doctrine is applied to the identities of persons and documents associated with the

---

[1] At the time Defendants filed their Motion to Compel, plaintiffs had produced only 58 pages of documents for the then six proposed class representatives and had promised to produce supplemental materials on March 4 or soon thereafter. Plaintiffs' then announced the withdrawal of Joseph Wilenkin as a proposed class representative, leaving only 47 pages of relevant documents. Then, on April 1, plaintiffs produced just 6 more pages of documents, 3 of which are improperly altered (like many of the other 47 pages produced).

allegations in their Complaint. They are also not correct as to how the element of reliance can be rebutted in a securities fraud suit and how the alleged adequacy of class representatives can be disproved. Defendants address these issues below.

## I.     Interrogatories 7, 8 and 9

In their Opposition Brief, plaintiffs repeatedly state that the work product doctrine protects the names of witnesses interviewed by counsel. (Pltf. Br. at 9, 10, 14, 15 and 17.) They cite numerous cases that they say support that proposition. (See Pltf. Br. at 9-11.) But Defendants do not dispute that proposition and made that clear in their Opening Brief. (Def. Br. at 17: "Defendants emphasize that they are not seeking the identities of the persons whom plaintiffs' counsel interviewed in connection with the Complaint. Defendants acknowledge that requesting the identities of that subset of persons would not be proper".) Plaintiffs themselves acknowledge Defendants' position, yet insist on arguing the point, refusing to acknowledge the clarification of the interrogatories Defendants have repeatedly made. (Pltf. Br. at 18, n.8: "Defendants asserted that they are not seeking the identities of persons whom plaintiffs' counsel interviewed in connection with the Complaint (Def. Mem. at 17)[.] [H]owever, it is clear from the specific language of the requests that the identities are exactly what Defendants are seeking.")

Plaintiffs also pretend that the above proposition resolves all of the issues presented by Defendants' Motion to Compel as to the interrogatories. It does not. Plaintiffs do not properly describe the various ways in which the work-product doctrine is applied to the identities of persons associated with the allegations in a complaint. Defendants submit that there are essentially three categories of persons for purposes of assessing whether their identities are entitled to protection pursuant to the work product

- 2 -

doctrine. Those categories, and their corresponding treatment under the work product doctrine, are as follows:

Category One is comprised of all persons with any information concerning a party's allegations, whether or not those persons supplied information used in preparing the allegations and regardless of the circumstances under which those persons indicated that they had such information. The set of persons in this category is thus akin to those persons captured by Fed. R. Civ. P. 26(a)(1)(A), which requires parties to disclose the names of "individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses". And like the identities of persons who fall under Rule 26(a)(1)(A), the identities of persons in Category One are discoverable. They do not receive work product protection because the list of such persons does not reveal anything about an attorney's mental impressions or how the attorney is preparing a case. The list "exists", so to speak, independent of any action by an attorney.

Category Two includes various subsets of the persons in Category One that are created when an attorney mixes his thoughts with the identities of persons in Category One. For example, Category Two includes the set of persons interviewed by an attorney in connection with the allegations. Similarly, it includes the set of persons whose information an attorney relied upon in preparing the allegations. Because revealing these subsets of identities could, under certain circumstances, reveal how an attorney is compiling a case—by, for example, indicating which persons the attorney thinks are most important—some courts have held that they are shielded from disclosure by the work product doctrine.

Category Three includes only persons who are specifically described in the allegations of a Complaint, but who are not specifically identified. Once a person has been described and associated with certain information in the allegations, the one piece of missing information—the person's name—is not work product, as the cases clearly hold.

With those categories in mind, Defendants turn to the challenged interrogatories. <u>Interrogatory 7</u> requests the identities of any person with whom plaintiffs or their counsel communicated in connection with their pre-suit investigation.[2] Again, as Defendants explained in their Opening Brief, they are not seeking the identities of the subset of persons whom plaintiffs' counsel actually interviewed or then relied upon in connection with the Complaint—that is, a Category Two list. Rather, Defendants are seeking a broader, Category One type list. Judge Scheindlin recently allowed the discovery of "the names of individuals who have personal knowledge of [the allegations]" in <u>In re Initial Public Offering Sec. Litig.</u>, 220 F.R.D. 30, 35 (S.D.N.Y. 2003). There is no reason for not doing the same here.

Defendants were forced to seek a Category One type list by way of this interrogatory because plaintiffs' original Rule 26(a)(1) Disclosures were so overbroad. In those Disclosures, plaintiffs listed some 216 persons and entities (including over 100 corporate entities) who might possess information regarding the allegations. (Exh. A, Kelleher Decl. 4/13.) Plaintiffs recently served Amended Rule 26(a)(1) Disclosures, which now include a list of 600 persons and entities "likely to possess information regarding, among others, Priceline and WebHouse operations, technology, valuation, and

---

[2] This interrogatory does not "ask Plaintiffs to identify those people with whom Plaintiffs' counsel spoke when preparing the Amended Complaint", as plaintiffs assert. (Pltf. Br. at 8.)

- 4 -

expansion". (Exh. B, Kelleher Decl. 4/13) The Disclosures also include 181 names of other persons and many companies likely to possess information on various other topics. Plaintiffs say that Defendants are not entitled to the information requested in Interrogatories 7 and 8 because "nothing prevents [Defendants] from interviewing or deposing persons whose names have been provided to them in Plaintiffs' Rule 26 Disclosures". (Pltf. Br. at 12) They contend that Defendants have no right to a further delineation of their Initial Disclosures. (Pltf. Br. at 15.) But Rule 26(a)(1) requires that a party list the names of persons that it "may use to support its claims". Plaintiffs cannot seriously expect Defendants or the Court to accept that plaintiffs believe that they may use some 600 persons to support their claims. Nor can plaintiffs seriously expect that Defendants should be required to depose 600 persons in order to figure out which of those persons actually have information regarding the allegations (see Interrogatory 7) and which of them are described specifically in certain allegations (see Interrogatory 8).

Interrogatory 8 seeks the identification of the unnamed persons described in specific paragraphs of the Complaint—that is, Category Three persons. The reasoning set forth for allowing that inquiry in two of the cases cited by Defendants in their Opening Brief—In re Aetna Inc. Sec. Litig., 1999 WL 354527 (E.D. Pa. 1999), and In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631 (N.D. Ga. 2002)—was recently followed in two cases within this Circuit. Judge Holwell directed plaintiffs to disclose the identity of an individual referred to in a paragraph of the complaint in In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571 (RJH), Order (S.D.N.Y. Nov. 4, 2004) (Exh. C, Kelleher Decl. 4/13). And Magistrate Judge Dolinger rejected plaintiffs' attempts to rely on the work product doctrine to "preclude identification . . . of the individuals referred to

in specific paragraphs of the complaint as the sources of specific paraphrased or quoted statements" in In re Nortel Networks Sec. Litig., No. 01 Civ. 1855, Endorsed Order (S.D.N.Y. June 11, 2003) (Exh. D, Kelleher Decl. 4/13). Plaintiffs rely heavily on In re MTI Tech. Corp. Sec. Litig. II, 2002 WL 32344347 (C.D. Cal. 2002), to support their argument that individuals described in the Complaint need not be identified. However, MTI was expressly rejected in Miller v. Ventro Corp., 2004 WL 868202 (N.D. Cal. 2004), and implicitly rejected in both Vivendi and Nortel. Defendants believe that MTI was wrongly decided.[3]

> Interrogatory 9 is similar to Interrogatory 8, except that instead of seeking identification of the persons described in certain allegations of the Complaint, it seeks identification of the documents described in certain allegations. The reasoning applied to Interrogatory 8 applies with the same force to this interrogatory. Identifying such documents will tell Defendants nothing about the mental processes or legal theories of plaintiffs' counsel that is not already revealed by the allegations themselves. See Theragenics, 205 F.R.D. at 636.

Plaintiffs refer to various persons and documents throughout the nearly 250 page Complaint. Defendants moved to dismiss the Complaint, but it survived that motion. Now, plaintiffs have to prove their allegations, and they cannot shield from discovery the various persons and documents that they used to survive dismissal when Defendants try to test their allegations, as Defendants are entitled to do.

---

[3] The MTI court failed to recognize the distinction between persons specifically described in a complaint and persons interviewed during an investigation. The MTI court also wrongly relied on cases such as Laxalt v. McClatchy, 116 F.R.D. 438 (D. Nev. 1987), which stand only for the proposition that the identities of witnesses whom a party interviews during an investigation are protected by the work product doctrine.

## II.     Document Requests 1 and 2

Document Request 1 seeks documents collected or received in connection with plaintiffs' investigation of the allegations in the Complaint. Plaintiffs admit in their Complaint that they received and reviewed numerous documents, including internal priceline documents, yet they persist in their contention that they have no documents responsive to this request that are not protected by the attorney-client privilege or the work product doctrine.[4] The law is clear that documents are not protected by the work product doctrine simply because they have been received by an attorney. Petersen v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992); In re Grand Casinos, Inc. Sec. Litig.; see In re Gupta Corp. Sec. Litig., 181 F.R.D. 615, 622 (D. Minn. 1998). Plaintiffs do not—because they cannot—point to any contrary authority.

As with their arguments regarding Interrogatories 7, 8 and 9, plaintiffs appear to have seized on only one of the applicable work product principles—namely, that a specific selection or compilation of documents in preparation for litigation is afforded work product protection. Like the identities of persons whom an attorney has interviewed (Category Two), a particular selection of documents by an attorney might reveal that attorney's mental impressions and strategies. But again, Defendants do not seek any particular compilation of documents. Rather, they seek all of the non-privileged documents that plaintiffs and their counsel collected or received in connection with their investigation of the allegations.

---

[4] Defendants note that plaintiffs have not yet produced a privilege log, so their assertions of privilege as to the numerous documents that they allegedly reviewed are difficult to test. If the Court upholds plaintiffs' assertion of privilege as to any portion of these documents or the documents sought in Request 2, Defendants expect that they will appear on plaintiffs' log.

Plaintiffs' persistence in their position that they have no documents responsive to this request that are not protected by the attorney-client privilege or the work product doctrine is particularly troubling given that plaintiffs recently produced a document responsive to this request—namely, a letter from the SEC to R. Warren Ross (one of the proposed class representatives) with an attached page of information from the Stanford Law School website. (Exh. E, Kelleher Decl. 4/13) That letter was plainly received by Mr. Ross in connection with his investigation of the allegations, and it is plainly not protected by the attorney-client privilege or the work product doctrine. But plaintiffs only produced this letter in response to Defendants' specific request for it during and following Mr. Ross's deposition (Exh. L, Kelleher Decl. 3/9), and Defendants would not have known about the letter but for Mr. Ross's deposition testimony. It appears likely, then, that plaintiffs possess other similar documents, and they should be ordered to produce them so that Defendants can make appropriate use of them during depositions.

The SEC letter to Mr. Ross is also responsive to <u>Document Request 2</u>, which seeks documents concerning plaintiffs' communications with any person in connection with any investigation of the allegations in the Complaint. Plaintiffs continue to insist that they have no documents responsive to Request 2 that are not protected by the attorney-client privilege or the work-product doctrine. But again, the SEC letter to Mr. Ross undermines that assertion. That letter plainly constitutes a communication by a plaintiff with another person in connection with an investigation of the allegations. In fact, the SEC letter is precisely the type of document that Defendants described in their Motion to Compel as responsive to this request. (Def. Br. at 12: "To be clear,

Defendants are not seeking documents that reveal attorney-client communications or the mental impressions of counsel. Rather, documents responsive to this request would include, inter alia, documents reflecting communications among plaintiffs themselves or with other non-lawyers regarding the allegations in the Complaint.".)

## III.    Document Requests 5 and 7

These requests seek documents concerning the investment policies or practices of plaintiffs and documents sufficient to show the composition of plaintiffs' investment portfolios throughout the alleged Class Period. Plaintiffs argue that any information regarding their non-priceline investments is irrelevant to both their claims and their motion for class certification. That is incorrect.

Plaintiffs say that the proper defenses to their claims are class-wide defenses, not individualized defenses, and accordingly, that it is irrelevant whether a proposed class representative may be subject to unique defenses. (Pltf. Br. at 7.) It is true that class-wide defenses are appropriate, but only once a class has been certified. In order to satisfy the prerequisites for class certification, plaintiffs must demonstrate, among other things, that the claims of the proposed class representatives are typical of those of the class. If a proposed class member would be subject to unique defenses, then that plaintiff may be deemed atypical and prevented from representing the class. See In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 113 (S.D.N.Y. 1993); In re ML-Lee Acquisition Fund II, L.P., 149 F.R.D. 506, 508 (D. Del. 1993); Greenspan v. Brassler, 78 F.R.D. 130, 132 (S.D.N.Y. 1978). Plaintiffs state that "[e]ven if a potential difference between class members was germane, no such difference exists in this case". (Pltf. Br. at 7.) But whether there are any differences among the claims or legal theories

of class members is one of the questions to be pursued during class-certification-related discovery, and the requested documents are relevant to that pursuit.

Plaintiffs' also say that plaintiffs' non-priceline investments have nothing to do with whether they or anyone else were misled by the alleged conduct and thus that those investments have nothing to do with Defendants' ability to rebut the presumption of reliance. (Pltf. Br. at 5-7.) But plaintiffs themselves cite Basic, Inc. v. Levinson for the proposition that one of the ways to rebut the presumption of reliance is to show "that a particular individual investor would have purchased the stock even if he/she was aware of the allegedly omitted or misrepresented information and, thus, did not rely on the integrity of the market". (Pltf. Br. at 7.) And documents showing plaintiffs' investment policies, practices and portfolios could reveal that one or more of them were sophisticated investors who might have purchased priceline securities notwithstanding their foreknowledge of the purported falsity of Defendants' alleged misstatements. For example, Plaintiffs' holdings in other companies besides priceline might reveal that one or more of them had an investment strategy that did not take into account company-specific information. That is precisely the type of information necessary to make the required showing to rebut the presumption under Basic. See Harcourt, 838 F. Supp. at 114; In re SciMed Life Sec. Litig., 1992 WL 413867, at *2-*3 (D. Minn. 1992); In re Grand Casinos, Inc. Sec. Litig., 181 F.R.D. at 619-21.

Further, plaintiffs continue to ignore their claim of direct reliance, to which the requested documents are also relevant. In Harcourt, the court explained that "discovery relating to investment history is proper where direct relevance is alleged". Id. at 114. Plaintiffs' investment policies, practices and portfolios may reveal why, when

- 10 -

and under what circumstances they invested in priceline and may thus reveal whether their investments had anything to do with the Defendants' alleged misstatements or were instead made for other reasons.

## Conclusion

Defendants respectfully request that the Court grant Defendants' Motion to Compel and order plaintiffs to produce all responsive, non-privileged documents and provide full and complete interrogatory responses within ten (10) days of the filing and entry of the Court's Order, see Local Civil Rule 37(a)(5), and grant such other and further relief as it deems just and proper.

April 13, 2005

          DEFENDANTS PRICELINE.COM INC.,
          JAY S. WALKER, N.J. NICHOLAS,
          DANIEL SCHULMAN AND
          RICHARD S. BRADDOCK

*/s/ Joseph L. Clasen*

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
   695 East Main Street
    P.O. Box 10305
      Stamford, CT 06904-2305
        Telephone: (203) 462-7500
          Fax: (203) 462-7599
           jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
   825 Eighth Avenue
    New York, NY 10019
      Telephone: (212) 474-1000
        Fax: (212) 474-3700
          dslifkin@cravath.com


          DEFENDANT JAY S. WALKER

Douglas C. Conroy (ct11555)
Paul R. Dehmel (ct23063)
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
1055 Washington Boulevard
Stamford, CT 06901
Telephone: (203) 961-7400
Fax: (203) 359-3031
douglasconroy@paulhastings.com
pauldehmel@paulhastings.com

_/s/ Carl Wullus_
J. Allen Maines (phv0013)
Carl W. Mullis
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
600 Peachtree Street, NE, Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
Fax: (404) 815-2424
allenmaines@paulhastings.com
carlmullis@paulhastings.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was served this 13th day of April, 2005 via first class mail to the following counsel of record:

| • **Co-Lead Counsel** | • **Liaison Counsel** |
|---|---|
| David R. Scott, Esq.<br>James E. Miller, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:  860-537-3818<br>Fax:  860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:  212-687-7230<br>Fax:  212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Law Offices of Dennis J. Johnson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:  802-862-0030<br>Fax:  802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin  S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT  06103-3202<br>Tel:  860-493-6292<br>Fax:  860-493-6290 |

| | • **Attorneys for Defendant Jay S. Walker**<br><br>J. Allen Maines, Esq.<br>Carl Mullis, III, Esq.<br>Summer B. Joseph, Esq.<br>Laura Berg, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA 30308<br>Tel: 404-815-2400<br>Fax: 404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>PAUL, HASTINGS, JANOFSKY & WALKER, LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone: 203-961-7400<br>Fax: 203-359-3031 |
|---|---|
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT 06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 |

*/s/ William J. Kelleher, III*
William J. Kelleher, III