UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM<br>SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Master File No.: 3:00cv1884(DJS) |

**DELOITTE & TOUCHE LLP'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Eric W. Wiechmann (CT 04331)
Thomas J. Finn (CT 20929)
MCCARTER & ENGLISH
City Place I
Hartford, Connecticut 06103
Tel: (860) 275-6700

William R. Maguire (CT 23375)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Tel: (212) 837-6000

Attorneys for Defendant Deloitte & Touche LLP

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page**

Preliminary Statement ..............................................................................................................1

Statement of Facts ...................................................................................................................2

Argument .................................................................................................................................3

    I.    THIS MOTION IS UNNECESSARY AND PREMATURE ........................................4

    II.   PLAINTIFFS SUBPOENA IS OVERBROAD AND IS NOT RELATED TO THE CLAIMS AND DEFENSES IN THIS ACTION ....................................................6

        A.    The Subpoena Violates Federal Rule Of Civil Procedure 26(b)(1) Limiting The Scope Of Discovery To Claims And Defenses ...............................6

        B.    Plaintiffs Requests Are Overbroad ........................................................................9

Conclusion .............................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

In re AOL Time Warner, Inc. Sec. & ERISA Litig., No. MDL 1500, 02 Civ. 5575,
2004 WL 1810661 (S.D.N.Y. Aug. 12, 2004).................................................................5

In re Carnegie Int'l Corp. Sec. Litig., 107 F. Supp. 2d 676 (D. Md. 2000)..........................5

In re CFS-Related Sec. Fraud Litig., 213 F.R.D. 435 (N.D. Okla. 2003)............................5

Collens v. City of New York, 222 F.R.D. 249 (S.D.N.Y. 2004)...........................................7

Faulkner v. Verizon Comm., Inc., 156 F. Supp. 2d 384 (S.D.N.Y. 2001)............................5

In re Honeywell Int'l, Inc. Sec. Litig., No. M8-85, 2003 WL 22722961,
(S.D.N.Y. Nov. 18, 2003)...............................................................................................14

Medhekar v. U.S. Dist. Court for the N. Dist. of Cal., 99 F.3d 325 (9th Cir. 1996)............4

Nicholas v. Poughkeepsie Savings Bank, No. 90 Civ. 1607, 1991 WL 113279
(S.D.N.Y. June 14, 1991)................................................................................................8

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)...................................................7

Podany v. Stephens, 350 F. Supp. 2d 375 (S.D.N.Y. 2004)..............................................5, 6

Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590, 1998 WL 67672
(S.D.N.Y. Feb. 18, 1998)..................................................................................................4

In re Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246 (D. Md. 2004)......................5

Riggs v. Termeer, No. 03 Civ. 4014, 2003 WL 21345183 (S.D.N.Y. June 9, 2003)............5

Segan v. Dreyfus Corp., 513 F.2d 695 (2d Cir. 1975)..........................................................9

SG Cowen Sec. Corp. v. U.S. Dist. Court for the N. Dist. of Cal., 189 F.3d 909
(9th Cir. 1999).................................................................................................................5

Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163 (S.D.N.Y. 1988)....................................9

Stoner v. Walsh, 772 F. Supp. 790 (S.D.N.Y. 1991)............................................................9

Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94 (S.D.N.Y. 1997)........................................4

In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571, No. 02 Civ. 5571 (HB), 2003
    WL 21035383 (S.D.N.Y. May 6, 2003) ..................................................................4

In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301 (S.D.N.Y. 2002) .......................................4

## STATUTES AND RULES

Fed. R. Civ. P. 26(b)(1)..................................................................................................6, 7, 11

Fed. R. Civ. P. 37(a)(2)(A) ......................................................................................................4

Non-party Deloitte & Touche LLP ("D&T") submits this memorandum in opposition to plaintiffs' motion to compel, filed March 21, 2005.

## Preliminary Statement

This motion is entirely unnecessary. Instead of filing this motion, plaintiffs could have worked with D&T to focus their subpoena requests to the facts of this case.

Notwithstanding its objections to plaintiffs' subpoena requests, D&T offered to produce its 1999 audit documents concerning the subject matter of this action: Priceline WebHouse Club Inc. ("WebHouse") and the WebHouse warrants that priceline.com ("Priceline") recorded on its 1999 audited financial statements.

Plaintiffs issued a subpoena to D&T that seeks many categories of documents that are wholly unrelated to WebHouse or the warrants, and specifically seeks privileged documents. D&T asked plaintiffs to focus their requests to this case. For its part, D&T repeatedly agreed to expand the scope of its production, confirmed its offer in writing, and offered to accommodate any reasonable follow up requests. Plaintiffs, however, expressly refused to accept *any limitation* on the scope of their subpoena. Indeed, during a March 3 meet and confer telephone call concerning the subpoena requests, plaintiffs' counsel announced that they had already drafted their motion to compel and that they intended to file it the following day. D&T again asked plaintiffs to confer and to focus on the documents relevant to this action. While the parties did confer, plaintiffs reiterated that they were not prepared to compromise.

Plaintiffs have made no secret of their intent to try to find a claim against D&T. Nonetheless, D&T offered to produce all its 1999 audit documents related to the claims and defenses in this action. D&T asked only that plaintiffs attempt to focus their requests on the claims and defenses in this action and not engage in any wider "fishing" expedition for materials wholly unrelated to WebHouse or the warrants, such as Priceline's real estate, taxes, or other

accounting areas that are not mentioned, let alone challenged in the Complaint. Because plaintiffs refused to focus their requests, and seek documents wholly unrelated to WebHouse and the warrants, this motion should be denied.

## Statement of Facts

### The Complaint

Following the October 4, 2000 announcement that WebHouse was winding down, several plaintiffs filed complaints against Priceline and certain of its officers and directors. In October 2001, plaintiffs filed the Consolidated Amended Complaint (the "Complaint") in which they added D&T as defendant. Plaintiffs alleged that Priceline and the individual defendants made various misleading statements concerning WebHouse, including with respect to the value of WebHouse warrants recorded on Priceline's 1999 audited financial statements. Plaintiffs also claimed that D&T's report on the 1999 audited financial statements was misleading because the financial statements improperly recorded the WebHouse warrants. Among other things, plaintiffs alleged that WebHouse was destined to fail, that it was an alter ego of Priceline, and that the WebHouse warrants were worthless. On October 7, 2004, this Court granted D&T's motion to dismiss, holding that plaintiffs failed to plead sufficient facts to support an inference that D&T had acted with scienter. On October 29, 2004, plaintiffs submitted a Rule 26(f) statement in which they indicated that they intended to use discovery to try to find support for a claim against D&T.

### The Subpoenas

The parties have agreed that plaintiffs' motion should be deemed to have been made on the basis of the subpoena dated December 3, 2004, addressed to D&T (the "D&T Subpoena"). This agreement avoids the procedural infirmity in plaintiffs' having made a motion to compel based on a subpoena that was not properly served on D&T and which was addressed

2

to another entity.[1] In light of the parties' agreement that the motion is based on the D&T Subpoena, the Court can decide plaintiffs' motion on the merits.

### Argument

Plaintiffs' motion should be denied. First, before moving to compel, a party must make a good faith effort to meet and confer in an attempt to resolve the dispute. Plaintiffs did not do so. D&T engaged in good faith discussions to resolve the dispute, and notwithstanding its well-founded objections to plaintiffs' discovery requests, offered to produce its 1999 audit documents concerning WebHouse and the warrants and to accommodate any reasonable follow up requests. Plaintiffs rejected D&T's offer, refused to limit their demands to the relevant documents, and rebuffed all of D&T's attempts at compromise.

Second, plaintiffs' demands far exceed the scope of discovery permitted by Federal Rule of Civil Procedure 26. Rule 26 requires plaintiffs to limit their demands to the claims and defenses in the litigation. Plaintiffs have not done so. Plaintiffs' requests – and their motion – seek documents that are wholly unrelated to any issue in this action, as well as privileged documents and tax-related material that D&T is barred from producing by Section 7216 of Title 16.

---

1. On November 23, 2004, plaintiffs attempted to obtain discovery from D&T by delivering a subpoena addressed to Deloitte Touche Tohmatsu ("DTT" and the "DTT Subpoena") to D&T's office in Stamford, Connecticut. Counsel for D&T contacted plaintiffs' counsel and explained that the attempted service of the subpoena was improper because DTT is a separate and independent entity from D&T and does not maintain an office in Stamford. DTT is a verein organized under the laws of Switzerland and is a separate and independent legal entity from D&T, which is a Delaware limited liability partnership. DTT does not provide any professional services and was not involved with D&T's audit of Priceline's financial statements. Counsel for D&T offered to assist plaintiffs' counsel in arranging for service of a subpoena on D&T and, on December 3, 2004, counsel for plaintiffs issued a second subpoena, this time addressed to D&T (the "D&T Subpoena").

   When plaintiffs moved to compel against D&T on the basis of the wrong subpoena – the DTT Subpoena, D&T's counsel contacted plaintiffs' counsel concerning this procedural error and the parties agreed that plaintiffs' motion to compel should be deemed to have been made on the basis of the D&T Subpoena, not (as is reflected in plaintiffs' moving papers) the DTT subpoena. See Maguire Verification Ex. D.

3

I.  **THIS MOTION IS UNNECESSARY AND PREMATURE**

Prior to moving to compel, the parties must first "meet and confer" in a good faith effort to resolve any discovery dispute. Fed. R. Civ. P. 37(a)(2)(A). The "meet and confer" must be a "genuine effort" to resolve the dispute. Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998). "To satisfy the meet-and-confer requirement, [movant] ha[s] to provide an account of a 'live exchange of ideas and opinions,' including details such as the positions taken by each side, <u>the extent to which the parties compromised their positions</u>, and why the negotiations proved fruitless." Id. at *4 (emphasis added); see also Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 100 (S.D.N.Y. 1997) (denying motion to compel where no attempt to compromise). Plaintiffs have not, and cannot, make this showing because they refused to focus their overbroad requests to the claims and defenses at issue in this case.[2]

On February 15, 2005, the parties first discussed the D&T Subpoena. When plaintiffs rejected D&T's suggestion that any attempt to replead a claim against D&T should precede non-party discovery against D&T, in order to respect D&T's rights under the Private Securities Litigation Reform Act, plaintiffs suggested that compromise was not practical. D&T asked to continue discussions, requested that plaintiffs provide authority for taking discovery against D&T notwithstanding the discovery stay provisions of the Reform Act, and agreed to consider making a production despite the protections of the Act.[3]

---

2. Plaintiffs' refusal to compromise is demonstrated in the accompanying Verification of William R. Maguire.

3. The Private Securities Litigation Reform Act was intended to impose a stay of discovery to prevent plaintiffs from using the discovery process to search for a claim. See, e.g., In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571 (HB), 2003 WL 21035383 (S.D.N.Y. May 6, 2003); In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301 (S.D.N.Y. 2002); Medhekar v. U.S. Dist. Court for the N. Dist. of Cal., 99 F.3d 325 (9th Cir. 1996). Courts have consistently rejected attempts by plaintiffs to effect discovery prior to submitting a

(Footnote continued on next page)

4

On March 3, 2005, the parties spoke a second time. Although plaintiffs did not provide any case authority for their position under the Reform Act, D&T offered to produce its 1999 audit documents concerning the subject matter of this action – the value of the WebHouse warrants held by Priceline and recorded on Priceline's 1999 audited financial statements, including:

- Communications between D&T and Priceline or any other remaining defendant or anyone else concerning WebHouse or the WebHouse warrants;

- All internal D&T notes and records of any meeting with Priceline or any of the remaining defendants or anyone else concerning WebHouse or the WebHouse warrants; and

- D&T audit working papers, emails, consultations, notes and other documents concerning WebHouse or the WebHouse warrants.

(Maguire Verification Ex. E (March 4, 2005 Letter outlining D&T's position and proposal), at 1-2.) All that D&T asked was that plaintiffs focus their requests to this case. Although D&T also offered to consider any reasonable follow up requests, plaintiffs rejected D&T's offer and insisted that <u>all</u> documents requested in the D&T Subpoena be produced.

---

(Footnote continued from previous page)

sufficiently pled complaint. See, e.g., SG Cowen Sec. Corp. v. U.S. Dist. Court for the N. Dist. of Cal., 189 F.3d 909 (9th Cir. 1999); Faulkner v. Verizon Comm., Inc., 156 F. Supp. 2d 384 (S.D.N.Y. 2001). "[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which the plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim." Podany v. Stephens, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004); see also, In re AOL Time Warner, Inc. Sec. & ERISA Litig., No. MDL 1500, 02 Civ. 5575, 2004 WL 1810661 (S.D.N.Y. Aug. 12, 2004). Here, plaintiffs take too narrow a view in arguing that because there is no motion to dismiss pending, the discovery stay does not apply. (Pls. Mem. at 8.) In fact, courts have applied the stay regardless of the pendency of a motion. See, e.g., In re Carnegie Int'l Corp. Sec. Litig., 107 F. Supp. 2d 676 (D. Md. 2000); In re Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246 (D. Md. 2004); Riggs v. Termeer, No. 03 Civ. 4014, 2003 WL 21345183 (S.D.N.Y. June 9, 2003); In re CFS-Related Sec. Fraud Litig., 213 F.R.D. 435, 444 (N.D. Okla. 2003).

As demonstrated below, D&T's request to tailor the subpoena requests to this action was reasonable. The subpoena is overbroad and expressly requests categories of documents that are wholly unrelated to WebHouse or the WebHouse warrants as well as documents that are privileged or otherwise protected from production. Accordingly, plaintiffs' failure to make any effort to compromise to resolve this dispute requires denial of their motion.

II.  **PLAINTIFFS SUBPOENA IS OVERBROAD AND IS NOT RELATED TO THE CLAIMS AND DEFENSES IN THIS ACTION**

Plaintiffs' discovery requests appear to be more driven by the hope of manufacturing some claim against D&T, than discovering information concerning the claims and defenses in this case. In their Rule 26(f) statement, plaintiffs stated that they would request documents pertaining to "D&T's participation in the alleged course of conduct." (Form 26(f) Report of Parties' Planning Meeting, at 13.) Thus, the D&T Subpoena goes far beyond the claims against the remaining defendants and the defenses they have asserted and seeks documents wholly unrelated to WebHouse or the warrants. Plaintiffs are not permitted to use discovery to scavenge for a claim against D&T, or otherwise burden D&T with a subpoena that is overbroad in scope and lacking a sufficient nexus to the case at hand.

Under Rule 26(b)(1), "discovery is authorized solely for parties to develop the facts in a lawsuit in which the plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim." Podany v. Stephens, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).

A.  The Subpoena Violates Federal Rule Of Civil Procedure 26(b)(1) Limiting The Scope Of Discovery To Claims And Defenses

The scope of discovery is limited to "any matter, not privileged, that is relevant to the *claim or defense of any party* . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Plaintiffs'

6

NY #638415 v1 - MEMO - PRICELINE.COM

subpoena has no such limitation. Indeed, the D&T Subpoena is virtually unlimited and seeks essentially all documents generated or received in connection with the Priceline audit, regardless of the connection (or absence thereof) between the requested documents and the claims and defenses at issue in this case. Furthermore, plaintiffs expressly seek privileged documents and tax records that D&T is prohibited by law from producing. (See Maguire Verification Ex. B, at Request 1(l) (demanding "all communications with counsel pertaining to Priceline (including WebHouse) or this lawsuit"); Maguire Verification Ex. C, D&T's objection 6 (disclosure of tax material prohibited by Section 7216 of Title 16 of the United States Code).)

Rule 26(b)(1) was amended in 2000 to remind a court "that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000 amendment) (emphasis added); see also Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (denying disclosure request based on limitations created by the 2000 amendment and noting that "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition'").

Courts have long recognized the need to examine the purpose of discovery requests. In Oppenheimer Fund, Inc. v. Sanders, the Supreme Court denied the plaintiff's motion to compel where the information sought had no bearing on the issues disputed in the case. 437 U.S. 340, 353 (1978). The Court explained that "a court is not required to blind itself to the purpose for which a party seeks information" and "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." Id. at 353 n.17.

7

In <u>Nicholas v. Poughkeepsie Savings Bank</u>, No. 90 Civ. 1607, 1991 WL 113279 (S.D.N.Y. June 14, 1991), Judge Sweet applied this principle to a document subpoena served on a non-party public accounting firm in a securities fraud case. The plaintiff alleged fraud against the Bank and subpoenaed the auditor's working papers. The court rejected the broad request for working papers finding that the only working papers that might be relevant to the claim against the bank were communications between the auditor and the bank. The auditor's internal papers that never had been communicated to the bank were irrelevant to the claim against the bank. The Court stated: "While any communication, in either direction, will tend to reveal the Bank's knowledge of its financial condition, it is less obvious how the internal work papers, containing only the accountants' calculations and notes and indicating only their thought processes, could do so." <u>Id</u>. at *2. The court concluded that "the reasonable inference is that the purpose of this portion of the Subpoena is to obtain facts in order to make a claim against [Coopers & Lybrand]." <u>Id</u>. Guided by <u>Oppenheimer</u>, Judge Sweet explained:

> The sensitivity of [Coopers & Lybrand's] internal work papers and the very real possibility – backed up by the implied threat of the complaint – that [Coopers & Lybrand] may be named as a defendant, when weighed against the minimal relevance of such material to Nicholas' claims against the Bank, justify keeping a tight rein on Nicholas' discovery and adopting a strict construction of the usually-broad language of Rule 26's "reasonably calculated to lead to the discovery of admissible evidence."

<u>Id</u>. D&T made a similar offer to produce relevant communications here and then offered to expand its production beyond communications to include all of D&T's 1999 audit documents concerning WebHouse or the warrants. D&T's offer goes well beyond the communications with defendants that the <u>Nicholas</u> court held to be the outer limits of permissible non-party discovery.

8

Given the Court's dismissal of D&T from this litigation, discovery should be focused on those documents related to the remaining claims and defenses.[4] Accordingly, any production required of D&T should be limited to documents concerning WebHouse and the valuation of the warrants. (See Pls. Mem. at 12 (describing the Complaint in items (a) – (d)).)

B.  Plaintiffs Requests Are Overbroad

The requests are improper to the extent that they go far beyond the claims in the Complaint that the value of the WebHouse warrants was overstated and seek documents that are wholly unrelated to WebHouse or the warrants.

1.  Request 1

All documents referring or relating to any audit, review, or accounting work performed by, or contemplated to be performed by, Deloitte for Priceline (including WebHouse) including, but not limited to: (a) all financial statements utilized or contemplated for utilization in Priceline's filings with the SEC and/or public statements or press releases; (b) all workpapers created during any work performed by Deloitte for Priceline (including WebHouse); (c) all email, memoranda and/or correspondence; (d) all documents provided to Deloitte by Priceline (including WebHouse) or given by Deloitte to Priceline (including WebHouse); (e) all documents concerning any communications between Deloitte and Priceline (including WebHouse) or any other person or entity pertaining to Priceline's (including WebHouse) products, operations, financial results, financial statements, or its public reports, filings or public statements; (f) all documents concerning any communications among Deloitte's personnel relating to Priceline (including WebHouse); (g) all documents sent to, received from, filed with, or referring or relating to any communications or filings with the Securities and Exchange Commission ("SEC") or any other state or federal regulatory agency or authority of any national, regional, or local stock exchange or securities association relating to Priceline (including WebHouse); (h) all documents

---

4.  See Segan v. Dreyfus Corp., 513 F.2d 695, 696 (2d Cir. 1975) (affirming denial of plaintiff's request to obtain discovery from defendants before filing a more definite statement, which the court called "a fishing expedition of large proportions"); Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y. 1991) (denying putative derivative plaintiff's request to take discovery before amending complaint because "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."); Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 179 (S.D.N.Y. 1988) ("In this Circuit, it is established that, at least with respect to allegations of fraud or inequitable conduct, it is improper to use discovery in search of a factual predicate required to be pleaded in the first instance.").

9

concerning any communications among Deloitte and Murray, Devine & Company regarding Priceline (including WebHouse); (i) all engagement or retention letters related to Priceline (including WebHouse), Walker Digital or any of the Individual Defendants; (j) all documents related to any invoices, fees, payments, retainers, or other such transfers of monies, to or from Priceline (including WebHouse) and/or Deloitte; (k) all documents related to any prior or subsequent auditors or accountants used or consulted by Priceline (including WebHouse); and (l) all communications with counsel pertaining to Priceline (including WebHouse) or this lawsuit.

First, plaintiffs have refused to focus their request to this case, which concerns the valuation and accounting treatment for the WebHouse warrants in Priceline's 1999 audited financial statements. D&T has offered to produce the 1999 audit documents related to WebHouse or the WebHouse warrants, and has offered to supplement that production if there is a need for specific additional documents – but plaintiffs have rejected that offer.

Plaintiffs insist on extraneous discovery of areas of the financial statements that are not challenged (or even mentioned) in the Complaint and answers. These areas include by way of example: (i) cash; (ii) receivables; (iii) prepaid expenses; (iv) property; (v) accrued expenses; (vi) notes payable, long term debt and interest; (vii) payables; (viii) sales; and (ix) cost of sales. There is no allegation that there was a misstatement of Priceline's cash, receivables, real estate or, for that matter, anything other than WebHouse and the warrants. Thus, there is no basis for seeking documents for those wholly unrelated areas. For example, information concerning Priceline's real property is wholly irrelevant to the alleged misstatement of the value of the warrants or the likelihood that WebHouse would fail as a business. There must be some connection between the discovery sought and the case – and this is <u>not</u> a case about Priceline's real estate.

Second, plaintiffs' Request No. 1 goes far beyond the permissible scope of discovery in seeking: "(l) all *communications with counsel* pertaining to Priceline (including WebHouse) or this lawsuit." Likewise, in their motion, plaintiffs expressly insist that

10