privileged documents be produced.[5] (Pls. Mem. at 11-12.) The plain language of Rule 26, however, specifically limits discovery to *non-privileged* matters. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, <u>not privileged</u>, that is relevant to the claim or defense of any party...") (emphasis added); 6 James Wm. Moore et al., Moore's Federal Practice § 26.47 (3d ed. 2005) ("Discovery is not permitted as to privileged matters."). There is no question that communications with counsel concerning this lawsuit are privileged matters and protected from discovery. See id. at § 26.49 ("federal common law recognizes an attorney-client privilege that protects from discovery communications from a client to an attorney for the purpose of obtaining legal advice").

Third, plaintiffs' citations to the Complaint do not justify their requests, because their citations deal either with WebHouse or the WebHouse warrants – the subject of D&T's offer to produce – or with allegations made in support of the claim against D&T, which the Court has dismissed and which cannot be the subject of discovery under Rule 26. (Pls. Mem. at 14, citing Complaint ¶¶ 35, 70, 73, 75, 89, 90, 91, 92, 94, 130, 149 and 225.)

  2. <u>Request 2</u>

> All documents referring or relating to any contemplated or attempted expansion of the Priceline (including WebHouse) business model by Priceline (including WebHouse) including, but not limited to: (a) all documents regarding any actual or contemplated work relating to the expansion of the Priceline business model; (b) all communications with Priceline (including WebHouse) customers, suppliers or sponsors (or their representatives) pertaining to Priceline (including WebHouse) or its products or services; (c) all documents reflecting the amounts of money received by Deloitte for such work; (d) all documents referring or

---

5. Plaintiffs argue that D&T has somehow waived privileges based on proprietary rights, work product, attorney-client and accountant-client relationships by not asserting such privileges on a document-by-document basis at this stage of the proceedings. (Pls. Mem. at 11-12.) Plaintiffs' assertion, at best, is premature. D&T's objection informed plaintiffs that D&T intends to assert such privileges, where applicable, to documents that they have requested. With its production, D&T will provide plaintiffs with a list of documents as to which D&T is asserting privilege and an explanation of the basis for that assertion of privilege.

NY #638415 v1 - MEMO - PRICELINE.COM

relating to any contracts with Deloitte for the provisions of such work; (e) all documents referring or relating to Deloitte's performance under such contracts; and (f) all documents referring or relating to the amount of and nature of, any services and/or training provided by Deloitte to such customers.

To the extent that this request can be read to go beyond WebHouse and the warrants that are the subject of the remaining claims and defenses, this request is overbroad. For example, there is no connection between the surviving claims in the Complaint (or the answers) and D&T's fees, the terms of D&T's engagement or D&T's bills. Moreover, to the extent this request has anything to do with WebHouse or the warrants, it is covered by D&T's offer. Accordingly, plaintiffs' motion should be denied.

3.  Request 3

All documents referring or relating to any contracts or transactions between Walker Digital and Priceline (including WebHouse), including without limitation: (a) any documents discussing or analyzing revenues and/or income related to such contracts or transactions; (b) all documents referring or relating to the performance by any parties to such relationships; and (c) all communications with any person or entity (including without limitation Walker Digital, Walker Digital's auditing or accounting firm(s) or Priceline (including WebHouse)) referring or relating to such contracts or transactions or Priceline's (including WebHouse) accounting of revenues and/or income from such contracts or transactions.

As part of its offer to plaintiffs, D&T agreed to produce documents from its 1999 Priceline audit files concerning WebHouse and the warrants, which would include any such documents concerning Walker Digital.

4.  Request 4

All documents discussing, analyzing, or otherwise referring or relating Deloitte's compliance with Generally Accepted Auditing Standards during its work for Priceline (including WebHouse).

D&T's compliance with auditing standards is not relevant to the surviving claims in the Complaint or defendants' defenses. Generally accepted auditing standards ("GAAS") govern the procedures performed by an auditor in the course of an audit. Thus, these documents have

nothing to do with a claim against Priceline or the remaining defendants and the only reason for plaintiffs to seek them is to try to find some claim that they might be able to assert against D&T. While this request is improper, to the extent that D&T's audit work had anything to do with WebHouse or the warrants, D&T's offer includes its applicable audit working papers. Plaintiffs are not entitled to documents that are wholly unrelated to WebHouse or the warrants.

Accordingly, plaintiffs' motion to compel should be denied.

5. <u>Request 5</u>

All documents discussing, analyzing or otherwise referring or relating to (a) Priceline's (including WebHouse) compliance with Generally Accepted Accounting Principles; (b) the method of revenue recognition used by Priceline (including WebHouse); or (c) the valuation of any securities received, held or issued by Priceline (including WebHouse) or Walker Digital.

Plaintiffs seek all documents related to Priceline's compliance with generally accepted accounting principles ("GAAP"), its method of revenue recognition or the valuation of securities Priceline holds or issued. GAAP governs the accounting treatment and presentation applied to the financial information reported by Priceline in its financial statements. The only claim that Priceline failed to comply with GAAP relates to WebHouse and the WebHouse warrants. There is no basis for plaintiffs' demand for documents in accounting areas wholly unrelated to WebHouse or the WebHouse warrants. Accordingly, plaintiffs' motion to compel should be denied.

6. <u>Request 6</u>

All documents describing or comprising Deloitte's document retention or destruction policies in effect during the relevant period, and any modifications thereto, and the application of those document retention or destruction policies to any documents relating to Priceline (including WebHouse).

There is no justification for plaintiffs' request of D&T's document retention policy. A non-party accounting firm's document retention policies are not relevant or

discoverable in a securities fraud action against the accounting firm's client. See In re Honeywell Int'l, Inc. Sec. Litig., No. M8-85, 2003 WL 22722961, at *9 (S.D.N.Y. Nov. 18, 2003) (finding no basis to grant plaintiffs' motion to compel production of PricewaterhouseCoopers LLP's document retention policies).

7. Request 7

All documents referring or relating to Priceline (including WebHouse) securities and/or any actual or contemplated public or private offerings or sales of securities by Priceline (including WebHouse).

D&T has offered to produce its 1999 audit documents concerning WebHouse and the WebHouse warrants, including offering-related documents that mention WebHouse.

8. Request 8

All minutes, transcripts or notes of any meeting, contact or discussion between Deloitte and Priceline (including WebHouse).

D&T previously has indicated to plaintiffs that it will produce documents responsive to this request concerning WebHouse or the WebHouse warrants. To the extent that this request seeks documents that are not related to WebHouse or the warrants, plaintiffs' motion should be denied. In particular, plaintiffs cannot compel production of unrelated accounting areas, such as real estate, that are not the basis of the surviving claims and defenses in this case.

9. Requests 9 & 10

Request 9: All documents referring or relating to any actual or proposed merger, acquisition, or combination of any company, partnership or entity by or with Priceline (including WebHouse).

Request 10: All documents referring or relating to any contemplated merger or other combination, affiliation or partnership of Priceline (including WebHouse) with any other company or entity.

Plaintiffs do not distinguish between Requests 9 and 10 and argue that WebHouse "was a secret source of capital for funding and enhancing Priceline's operations."

14

(Pls. Mem. at 17.) If that is the case, then D&T's offer to produce all of its 1999 audit documents concerning WebHouse and the WebHouse warrants directly addresses plaintiffs' request. Accordingly, plaintiffs have no basis for their motion to compel.

10.   Request 11

All documents referring or relating to any investigation by any government or regulatory body or entity pertaining to Priceline (including WebHouse) or Walker Digital including, without limitation: (a) all communications referring or relating to any such investigation; (b) all documents provided by Deloitte to or received by Deloitte from such entity; (c) all memoranda discussing or pertaining to such investigation; (d) all communications with counsel pertaining to such investigation.

D&T has objected to this request as irrelevant and overbroad but is not aware of any documents that are responsive to the request. Moreover, D&T's offer includes its 1999 audit documents concerning WebHouse and the warrants. To the extent that this request seeks anything unrelated to WebHouse or the warrants, it is overbroad and not focused on the claims and defenses at issue in this action.

11.   Request 12

All documents referring or relating to any communication between Deloitte, Priceline (including WebHouse), Walker Digital, Walker Digital's accountants, or any Individual Defendant concerning the subject matters specified in the requests above or this lawsuit.

D&T's offer includes its 1999 audit documents concerning communications with the remaining defendants related to the remaining claims and defenses in this lawsuit. D&T not only offered to produce its audit communications with the remaining defendants, but also agreed to expand its proposed production to include purely internal D&T audit documents concerning WebHouse or the warrants. Accordingly, this request is not properly the subject of a motion to compel.

15

12. **Request 13**

All documents referring or relating to any relationship any entity had or contemplated with Walker Digital or Priceline (including WebHouse) including, without limitation, the following: (a) Kingdom Holding Company; (b) Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud; (c) Allen & Company, Inc.; (d) Arista Capital Partners; (e) BDS Business Center, Inc.; (f) Vulcan Ventures; (g) General Atlantic Partners; (h) Gore Creek Trust; (i) Liberty, PL; (j) Murray, Devine & Co.; (k) Quantum Industrial Partners, LDC; (1) Soros Fund Management, LP; (m) Stone Street Fund 1999; and (n) W.R. Berkley.

D&T's offer includes documents concerning WebHouse and the warrants. To the extent that plaintiffs' request documents beyond these two areas, it is overbroad and not focused on the claims and defenses at issue in this action. Accordingly, this request is not properly the subject of a motion to compel.

### Conclusion

For the foregoing reasons, D&T respectfully requests that this Court deny plaintiffs' motion to compel and direct that non-party D&T's discovery obligations be limited to WebHouse and the WebHouse warrants.

Dated: April 25, 2005

Respectfully submitted,

Eric W. Wiechmann (CT 04331)
Thomas J. Finn (CT 20929)
MCCARTER & ENGLISH
City Place I
Hartford, Connecticut 06103
Tel: (860) 275-6700

William R. Maguire (CT 23375)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Tel: (212) 837-6000

*Attorneys for Defendant*
*Deloitte & Touche LLP*

16

## CERTIFICATE OF SERVICE

This is to certify that a copy of the Memorandum of Law in Opposition to Plaintiffs' Motion to Compel and the Verification of William R. Maguire in Opposition to Plaintiffs' Motion to Compel was mailed postage prepaid, this 25th day of April, 2005, to the parties listed on the attached service list:

                                        Thomas J. Finn

HARTFORD: 638423.01

## Service List

Dennis J. Johnson, Esq.
Jacob B. Perkinson, Esq.
JOHNSON & PERKINSON
1690 Williston Road
South Burlington, Vermont 05403
(802) 862-0030
(802) 862-0060 (fax)

David R. Scott, Esq.
James E. Miller, Esq.
SCOTT & SCOTT LLC
108 Norwich Avenue
P.O. Box 192
Colchester, Connecticut 06415
(860) 537-3818
(860) 537-4432 (fax)

Jules Brody, Esq.
Aaron Brody, Esq.
STULL, STULL & BRODY
6 East 45th Street
New York, New York 10017
(212) 687-7230
(212) 490-2022 (fax)

Andrew M. Schatz, Esq.
Jeffrey S. Nobel, Esq.
Patrick A. Klingman, Esq.
SCHATZ & NOBEL
330 Main Street
Hartford, Connecticut 06106
(860) 493-6292
(860) 493-6290 (fax)

Joseph L. Clasen, Esq.
William Kelleher
ROBINSON & COLE LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, Connecticut 06904-2305
(203) 462-7500
(203) 462-7599 (fax)

Evan R. Chesler, Esq.
Daniel Slifkin, Esq.
CRAVATH, SWAINE & MOORE
825 Fifth Avenue
New York, New York 10019
(212) 474-1000
(212) 474-3700 (fax)

Albert M. Myers, III, Esq.
Carl W. Mullis, III, Esq.
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30308
Tel: (404) 815-2400
Fax: (404) 815-2424

David A. Slossberg, Esq.
Margaret E. Haering, Esq.
HURWITZ & SAGARIN, LLC
147 N. Broad Street
Milford, CT 06460
Tel: (203) 877-8000
Fax: (203) 878-9800

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | Master File No.: 3:00cv1884(DJS)<br><br>**VERIFICATION OF WILLIAM R. MAGUIRE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

WILLIAM R. MAGUIRE, an attorney duly admitted to practice before the United States District Court for the District of Connecticut, affirms the following under penalty of perjury:

1. I am a partner in the firm of Hughes Hubbard & Reed LLP, attorneys for non-party Deloitte & Touche LLP ("D&T"). I make this verification based on personal knowledge and the documents referred to herein.

2. I submit this verification in support of D&T's opposition to plaintiffs' motion to compel discovery.

**Plaintiffs' Subpoenas**

3. On November 23, 2004, plaintiffs attempted to obtain discovery from D&T by delivering a subpoena addressed to Deloitte Touche Tohmatsu ("DTT" and the "DTT Subpoena") to D&T's office in Stamford, Connecticut. At my direction, my colleague, Sarah L. Cave, informed plaintiffs of their mistake in addressing a subpoena to DTT. Ms. Cave explained that the attempted service of the subpoena was improper because DTT is a separate and independent entity from D&T, it does not maintain an office in Stamford, and it does not provide any professional services and was not involved with D&T's audits of Priceline. Ms. Cave's

explanation is set forth in a letter dated December 3, 2004 in which she offered to assist plaintiffs in arranging proper service. Attached hereto as Exhibit A is a true and correct copy of the letter.

4. On December 3, 2004, counsel for plaintiffs issued a second subpoena. The second subpoena was addressed to D&T and delivered to D&T's offices in New York (the "D&T Subpoena") on December 10, 2004. Attached hereto as Exhibit B is a true and correct copy of the D&T Subpoena.

5. On December 22, 2004, D&T provided plaintiffs with its objections to the D&T Subpoena. Attached hereto as Exhibit C is a true and correct copy of D&T's objections.

6. Although D&T assisted plaintiffs in the issuance of the D&T Subpoena, plaintiffs moved to compel against D&T on the basis of the wrong subpoena – the DTT Subpoena. I contacted Jake Perkinson, counsel for plaintiffs, concerning this procedural error and D&T and plaintiffs have agreed that plaintiffs' motion to compel should be deemed to have been made on the basis of the D&T Subpoena, not (as is reflected in plaintiffs' moving papers) the DTT subpoena. Attached hereto as Exhibit D is a true and correct copy of the letter confirming this agreement.

**D&T Attempted to Resolve This Dispute**

7. On February 15, 2005, I spoke with Mr. Perkinson to discuss the D&T Subpoena. When Mr. Perkinson rejected my suggestion that any attempt to replead a claim against D&T should precede non-party discovery against D&T, in order to respect D&T's rights under the Private Securities Litigation Reform Act, Mr. Perkinson suggested that compromise was not practical. I asked to continue discussions, requested that Mr. Perkinson provide authority for taking discovery against D&T notwithstanding the discovery stay provisions of the Reform Act, and agreed to consider making a production despite the protections of the Act.

2

### D&T Offered to Produce Documents Despite the Reform Act Discovery Stay

8.      On March 3, 2005, in a follow up call, Mr. Perkinson told me that plaintiffs did not have any case authority for proceeding with discovery against D&T and that plaintiffs relied on the text of the Reform Act which provides for a stay while a motion to dismiss is pending. Mr. Perkinson noted that there was no motion to dismiss pending because D&T's motion had been granted. I advised Mr. Perkinson that courts had not taken so narrow a view of the discovery stay.

### D&T Offered to Produce All Documents
### Relevant to WebHouse and the WebHouse Warrants

9.      During the March 3 call, I informed Mr. Perkinson that, notwithstanding its rights under the Reform Act, D&T was willing to produce from its 1999 Priceline audit files all communications and documents memorializing communications between D&T and Priceline or any other remaining defendant in the case relating to WebHouse and the warrants. Despite D&T's offer, plaintiffs continued to assert their need to obtain the entire Priceline audit file. I advised Mr. Perkinson if he needed more, D&T would also produce all of D&T's audit documents concerning WebHouse and the warrants. This offer also was rejected and plaintiffs insisted that every document prepared or obtained during the 1999 audit was relevant. I raised the fact that many areas of the 1999 financial statements are not challenged (or even mentioned) in the Complaint and answers. These areas include by way of example: (i) cash; (ii) receivables; (iii) prepaid expenses; (iv) property; (v) accrued expenses; (vi) notes payable, long term debt and interest; (vii) payables; (viii) sales; and (ix) cost of sales. I asked if plaintiffs would agree to narrow the subpoena to exclude such extraneous documents. Again, Mr. Perkinson refused.

10.     Mr. Perkinson expressed concern that, if D&T were to limit production by subject area, the produced working papers might contain cross-references to non-produced files.

NY DT_Priceline_ Maguire Verification (3).DOC

I assured Mr. Perkinson that, in the event that a document were referred to in a produced file and found to be relevant to the claims and defenses of the complaint, D&T was willing to supplement its production to fill in any such gap in its initial production. This offer also was rejected.

**Plaintiffs Announced that the Motion to Compel Had Already Been Drafted**

11. In the course of the March 3 telephone call, I asked Mr. Perkinson if plaintiffs were willing to narrow the scope of the subpoena in any respect. Mr. Perkinson refused to offer any limitation whatsoever on the scope of the subpoena. Mr. Perkinson did not even offer to limit the subpoena's request for privileged documents or for tax-related documents for which the production by D&T is prohibited under the Internal Revenue Code (Section 7216 of Title 16 of the United States Code), and punishable by a fine of up to $1000 and imprisonment of up to one year.

12. Mr. Perkinson informed me that the "meet and confer" process was concluded and that plaintiffs' motion to compel would be filed the next day. I responded that the "meet and confer" obligation involved more than providing notice of filing a motion that had already been drafted. I asked Mr. Perkinson to participate in another call after the weekend and to defer filing the motion until we spoke, and he agreed.

13. The following day, I faxed Mr. Perkinson a letter outlining D&T's position and setting forth a concrete proposal to resolve this dispute. Notwithstanding its objections, D&T confirmed in writing its offer to produce the relevant documents from its 1999 audit files: "Communications between D&T and Priceline or any other remaining defendant or anyone else concerning WebHouse or the WebHouse warrants; All internal D&T notes and records of any meeting with Priceline or any of the remaining defendants or anyone else concerning WebHouse or the WebHouse warrants; and D&T audit working papers, emails,

4

consultations, notes and other D&T documents concerning WebHouse or the warrants." Attached hereto as Exhibit E is a true and correct copy of the letter.

**Plaintiffs Refusal to Compromise**

14. On March 9, 2005, Mr. Perkinson informed me that plaintiffs were still unwilling to compromise the subpoena requests in any respect. Instead, Mr. Perkinson stated that plaintiffs planned to go forward with their motion to compel.

15. At no point during our conversations did plaintiffs propose or agree to any compromise. Plaintiffs rejected all D&T's offers. A genuine "meet and confer" – in which both parties attempt compromise – did not occur.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on April 23, 2005

William R. Maguire

5