UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : : | |
| _____ | : | MASTER FILE NO. 3:00CV01884(DJS) |
| This document relates to: | : : | May 20, 2005 |
| ALL ACTIONS | : : : | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM DELOITTE & TOUCHE, LLP**

**SCOTT + SCOTT, LLC**
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

Plaintiffs, by and through Lead Counsel, hereby reply to Deloitte & Touche, LLP's ("Deloitte") Opposition to Plaintiffs' Motion to Compel filed on March 21, 2005. The crux of Deloitte's Opposition rests on an attempt to limit the allegations of the Plaintiffs' Consolidated Amended Complaint (the *"Complaint"*) to a single issue. However, Plaintiffs are entitled to discovery relating to all their claims, not just those selected by Deloitte. Deloitte's Opposition is unprincipled and without merit and Plaintiffs' Motion to Compel should be granted.

In its Opposition, Deloitte disregards Plaintiffs' good faith efforts to discuss and resolve this discovery conflict prior to filing the instant motion,[1] takes an unjustifiably narrow reading of discovery permitted under the Federal Rules and incorrectly restricts the scope of the pending *Complaint*. Plaintiffs' discovery requests are narrowly tailored and ask for documents in thirteen (13) well-defined categories that are directly relevant to the claims and defenses in this action, relate solely to a single client of Deloitte, and are limited to a narrowly defined time period.

## I.  FACTS

The *Complaint* alleges that Defendants made numerous false and misleading statements about Priceline.com Inc.'s ("Priceline or the "Company") business model, financial status, and future prospects during the Class Period (defined as January 27, 2000 through October 4, 2000). ¶¶ 33-38, 97-148.[2] Plaintiffs allege that, during the Class Period, the publicly reported financial statements of Priceline were false and misleading because Priceline's accounting did not comply

---

[1] Deloitte's argument that Plaintiffs failed to satisfy the meet and confer requirements of the Federal Rules is without merit and is based on two false presumptions: 1) that all discovery requests in federal civil practice are overbroad; and 2) that a proper meet and confer only occurs when the party requesting discovery agrees to a production of less than that to which it is entitled. As explained in more detail below, in this instance, each specific request is narrowly tailored to lead to the discovery of admissible evidence. Deloitte's insistence that Plaintiffs accept less than what they are entitled to has no basis in the Federal Rules. Plaintiffs went to extraordinary lengths, conferring with Deloitte in good faith on no less than three occasions, in an attempt to resolve this matter. The requirements of L.R. 37(a)(2) have been fulfilled, Deloitte's disappointment in its failure to restrict appropriate discovery notwithstanding.

[2] Citations to paragraphs of the *Complaint* will be in the form of "¶__."

with Generally Accepted Accounting Principles ("GAAP").  ¶¶ 35, 70, 76.  As a consequence of these misleading financial presentations, Plaintiffs allege that the reported financial results of Priceline were inflated, which in turn caused an artificial inflation in the price for Priceline stock during the Class Period.  ¶¶ 41, 116, 233.

Priceline conducted its initial public offering on March 30, 1999.  ¶23.  The offering was very successful and within months Priceline's stock had gone from an offering price of $16 per share to over $145 per share.  ¶23.  The *Complaint* alleges that the Defendants knew that they could only justify this high stock valuation if they were successful in expanding the Company's core business and convincing the investing public that Priceline was more than an on-line travel agency.  ¶24.  Moreover, in an attempt to prop up Priceline's core business (the online sale of airline tickets), Defendants were desperately attempting to attract additional airline companies beyond Delta Airlines, which had been Priceline's principal ticket supplier.  ¶25.  To accomplish this, Priceline issued warrants to airline carriers for the purchase of Priceline shares.[3]  ¶25.  As a consequence, airlines supplying tickets to Priceline had options to acquire over 20 million shares, most with strike prices above $56 per share.[4]  ¶43.

The *Complaint* alleges that Defendants knew that if Priceline's stock price dropped below the strike price of the airline warrants it would likely prompt airlines to demand

---

[3] In addition, as part of Priceline's November, 1999 airline warrant deals, Defendant Walker purchased two million shares of Priceline stock at $62.50 per share for a total of $125 million.  The *Complaint* alleges that Walker did so to compensate Delta for the dilutive affect that the warrants Priceline was issuing to six other airlines would have on Delta's Priceline warrants.  ¶43.  Plaintiffs allege that Walker's basis in these shares also motivated him to maintain the price for Priceline shares.  ¶43.

[4] The *Complaint* also alleges that Priceline stock was artificially inflated due to the improper accounting for warrants for the purchase of Priceline stock issued to airlines.   (¶¶ 25, 28, 35, 43, 44, 67, 117, 132, 149).  Obviously, Deloitte's work papers will reveal the basis for the reported valuation of these warrants and are relevant to Plaintiffs' proof of their claims on this issue.  In addition, the *Complaint* alleges that Priceline's financial statements issued during the Class Period did not comply with GAAP (¶¶ 35, 70, 76).  These allegations alone justify the entire discovery requested here.

adjustments to the warrant agreements resulting in a dilution of Priceline's equity (and thus erosion of its share price), or, alternatively, that the airlines would lose their motivation to make tickets available to Priceline. ¶¶ 42, 43.  The *Complaint* alleges that because of the existence of these airline warrants, to counter its stock price decline and to better meet the competitive threat to its core business, Defendants engaged in the course of conduct alleged in the *Complaint*. ¶¶ 56, 57.  Evidence of the conduct alleged would be found in Deloitte's audit documents, including documents relating to Priceline's physical and intellectual assets.  Such evidence will also support Plaintiffs' claims that WebHouse was never a credible venture or viable entity and that the Defendants' unjustifiably inflated the price of Priceline stock in the market based on their false representations that the Priceline business model was expandable as supposedly demonstrated by WebHouse's wholly illusory "success."[5]

## II.    The Subpoena is Narrowly Tailored and Calculated to Lead to the Discovery of Admissible Evidence.

Defendants' Answers and Affirmative Defenses specifically state that "Defendants are not liable because the alleged misrepresentations and omissions by Defendants were based on good faith, and in reasonable reliance upon the work, opinions, information, representations and advice of others upon whom Defendants were entitled to rely."  *See* Priceline Affirmative Defenses at ¶81; *see also* Walker Affirmative Defenses at ¶42.  Additionally, Defendants specifically point to Deloitte in their Responses to Plaintiffs Second Set of Interrogatories as an

---

[5] For example, the *Complaint* alleges that in light of difficulties associated with increased competition in the online travel industry, Defendants sought to convince the public that Priceline's name your own price business model was expandable beyond Priceline's core business. ¶¶ 3, 24, 26, 29, 61. 62. To accomplish this goal, Defendants touted WebHouse as the poster child of the expandability of the name your own price business model. ¶3, 61-63, 64-65. Through WebHouse, consumers would purchase groceries at a discount online through the Priceline website and pick-up the groceries at a participating grocery store. ¶26.  Priceline stated publicly that the difference between the discount price paid by the consumer and the retail price of the product on the store shelves would be made up in part by manufacturers subsidizing the discount. ¶¶ 64, 65. However, by the beginning of the Class Period Defendants were fully aware that manufacturers were unwilling to participate in WebHouse and the Priceline business model was not working at WebHouse. ¶¶ 65, 85, 97.

3

entity with information relevant to Plaintiffs' allegations in general.[6] Thus, Defendants intend to use their reliance on Deloitte as a defense in this case and specifically point to Deloitte as having information relevant to Plaintiffs claims, including claims beyond those related to WebHouse. Plaintiffs are entitled to all documents in Deloitte's possession, custody and control that refer or relate to any work done by Deloitte for Priceline during the relevant time period.

      a.    **<u>Deloitte Has Waived All Privileges</u>**

Although Deloitte has interposed objections to Plaintiffs' Subpoena which include an assertion of privilege, Deloitte's failure to comply with the Federal and Local Rules and sufficiently object to Plaintiffs' subpoena by producing a privilege log results in the waiver of any otherwise applicable privileges. The First Circuit, in *In re Grand Jury Subpoena*, 274 F.3d 563 (1st Cir. 2001), discussed the language contained in Fed. R. Civ. P. 45(d)(2), stating:

> The operative language is mandatory and, although the rule does not spell out the sufficiency requirement in detail, courts consistently have held that the rule requires a party resisting disclosure to produce a privilege log.

*Grand Jury Subpoena*, 274 F.3d at 575; *see also Bregman v. Dist. of Columbia,* 182 F.R.D. 352, 363 (D.D.C. 1998); *First American Corp. v. Al-Nahyan,* 2 F. Supp. 2d 58, 63 n. 5 (D.D.C. 1988); *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 1 (D.D.C. 1999) (describing privilege logs as "the universally accepted means" of asserting privilege claims in the federal courts). The consequence of Deloitte's failure to produce a privilege log is clear: "[a] party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *Grand Jury Subpoena,* 274 F.3d at 576. This waiver applies to documents which otherwise would have been

---

[6] For example, in response to Interrogatory Five in Plaintiffs' Second Set of Document Requests and Interrogatories, which asks Defendants to identify all persons with knowledge concerning the truth or accuracy of any public statement made by Defendants during the Class Period, Defendants state they "believe that Deloitte & Touche LLP . . . may have had information concerning the truth or accuracy of some of these statements. " A copy of Defendants Response to Interrogatory Five in Plaintiffs' Second Set of Document Requests and Interrogatories of  is attached hereto as Exhibit A.

4

privileged under both the attorney-client and work-product privileges and any privileges Deloitte may have claimed must now be deemed waived.

        **b.**      <u>**Request 1**</u>

Request 1 seeks documents referring or relating to any audit work done by Deloitte for Priceline. Deloitte contends this Request is overbroad because 1) it seeks documents unrelated to the allegations of the *Complaint*; and 2) seeks purportedly privileged documents. Opp. at 10-11. In their Opposition, Deloitte also cites examples of areas of financial statements they wrongly insist are not challenged or mentioned in the *Complaint*, contending, for instance, that "this is <u>not</u> a case about Priceline's real estate." Opp. at 10. However, this <u>is</u> a case about, *inter alia*, whether Priceline properly accounted for its income, assets and expenses and whether Priceline and WebHouse shared their assets in a manner which rendered them a single company or which would support Plaintiffs' claim that Priceline propped up WebHouse through undisclosed cash or in-kind subsidies. Absent a complete production from Deloitte, Plaintiffs will be severely prejudiced in their ability to prove their claims against the Defendants.

Because a central issue in this case is whether WebHouse was inappropriately omitted from Priceline's accounting, obtaining a full production of the audit papers Deloitte employed to test and analyze Priceline's accounting will be essential to Plaintiffs' efforts to prove their case. Thus, while Deloitte contends that subjects such as cash, receivables, prepaid expenses, and property are "extraneous discovery of areas of the financial statements," (Opp. at 10), the sharing of Priceline's employees, property (and real estate) is very much at issue in this litigation. Plaintiffs allege throughout the *Complaint* that Priceline and WebHouse were "alter egos," because they shared property, employees and headquarter facilities. ¶¶ 22, 41, 43, 77, 229. Defendants dispute this claim and Plaintiffs are required to present proof of their allegations.

5

Moreover, the *Complaint* includes allegations that challenge the adequacy of Priceline's financial statements throughout the Class Period, not simply limited portions of the financial statements that may relate to WebHouse as Deloitte suggests. Obtaining Deloitte's audit workpapers will be essential to Plaintiffs in examining the relationship between WebHouse and Priceline and determining whether Defendants appropriately accounted for their business activities or not.[7]

    **c.**    **Request 2**

Request 2 seeks for documents related to the expansion of the Priceline business model, including any work performed by Deloitte, records of any amounts of money received by Deloitte and contracts with Deloitte for any related work. Deloitte states in its Opposition that "to the extent that this request can be read to go beyond WebHouse and the warrants . . .this request is overbroad." Opp. at 12. However, as discussed above, the allegations of the *Complaint* go well beyond the limited reading afforded by Deloitte. Moreover, Defendants have asserted as an affirmative defense that they reasonably relied on the advice of others, which their discovery responses confirm, includes Deloitte. Thus, in addition to being related to the claims in the *Complaint*, any documents that relate to Deloitte's work for Priceline clearly are discoverable as they directly relate to the defenses in this action, including Defendants' scienter.

    **d.**    **Request 3**

Request 3 seeks documents related to any contracts or transactions between Walker Digital and Priceline. In its Opposition Deloitte states that the documents from its 1999 Audit files concerning WebHouse and the WebHouse warrants would include any such documents concerning Walker Digital. Opp. at 12. However, there is no assurance that such a production

---

[7] Additionally, Deloitte's position ignores the practical reality of what is required to analyze audit work papers prepared for public companies. Because such papers are invariably cross-referenced with each other on a multitude of issues, anything less than a complete production renders the portions produce effectively meaningless. IN order to allow Plaintiffs to fully analyze Priceline's accounting, a full production must be made.

6

would provide a full production of the relevant documents. Plaintiffs allege that Deloitte's relationship with Defendants went well beyond work associated with WebHouse and the WebHouse warrants, thus it is reasonable to believe Deloitte has documents in its possession, custody or control that are responsive to this request that are not within the narrow set of documents Deloitte contends are discoverable. As the control of Walker Digital over Priceline and WebHouse is a central and disputed allegation of the *Complaint* (¶¶ 19, 21, 22, 26-30, 130), Plaintiffs are entitled to the requested discovery regardless of whether it directly relates to the limited issue of WebHouse.

    e.    **Requests 4 and 5**

Request 4 seeks documents related to Deloitte's compliance with Generally Accepted Auditing Standards ("GAAS") during its work for Priceline (including WebHouse) and Request 5 seeks documents related to Priceline's compliance with Generally Accepted Accounting Principles ("GAAP"). The *Complaint* alleges that Priceline's stock was inflated during the class period as a direct result of the violation of GAAS and GAAP. ¶¶ 35, 70, 76. Nonetheless, with respect to Request 4, Deloitte asserts that these documents have nothing to do with the claims against Priceline and argues the "only reason for plaintiffs to seek them is to try to find some claim that they might be able to assert against [Deloitte]." Opp. at 13. Similarly, with respect to Request 5, Deloitte states that there is "no basis for plaintiffs' demand for documents in accounting areas wholly unrelated to WebHouse or the WebHouse warrants." *Id.* However, in addition to these documents being directly relevant to Plaintiffs' allegations of Priceline's failure to properly report its financial statements (¶¶ 35, 70, 76), these documents are without question relevant to the asserted defense of justifiable reliance by Defendants. With Defendants asserting reliance on Deloitte as a defense, Plaintiffs certainly are entitled to discovery of all documents

relating to Deloitte's compliance (or failure to comply) with applicable standards and documents related to Priceline's compliance with GAAP, which, if nothing else, will allow Plaintiffs to determine the reasonableness of Defendants reliance on Deloitte. The fact that discovery may reveal evidence of another's wrongdoing in connection with the scheme alleged in the *Complaint* is no reason to deny discovery. Instead, it is a strong justification for granting it so that the purpose of discovery—to ascertain the truth--can be accomplished.

  f.  **Request 6**

Request 6 simply asks for documents describing Deloitte's document retention policies. This is a straightforward request routinely included in subpoenas. The fact that this case concerns events that occurred five years ago strongly supports the need for Plaintiffs to establish what documents may exist and whether the production from Deloitte is complete. Deloitte cites a single, unreported decision as support for its position that a document retention policy is not discoverable. Opp. at 13-14 (citing *In re Honeywell Int'l, Inc. Sec. Litig.,* No. M8-85, 2003 WL 22722961, at *9 (S.D.N.Y. Nov. 18, 2003). In *Honeywell*, the court determined that plaintiffs' "lack a concrete basis" for requesting documents related to the third-party accountant's document retention policy. *Id.* In this instance, the document retention policy is discoverable due, in part, to the length of time that has passed since the conduct alleged in the *Complaint* occurred. Moreover, as Deloitte actively has tried to limit the documents to which Plaintiffs are entitled, documents related to Deloitte's document retention policy are necessary in order for Plaintiffs to evaluate the production eventually received from Deloitte to determine what, if any, documents have been destroyed and/or withheld. Deloitte makes no argument supporting its assertion that its document retention policy is not relevant. Given the importance of the

8

document retention policy in this case and the lack of burden on Deloitte in complying with this request, Deloitte should be ordered to produce responsive documents.

        **g.**     **Requests 7, 8, 9, 10, and 11**

In opposing these Requests,[8] Deloitte simply states that it has "offered to produce its 1999 audit documents concerning WebHouse and WebHouse warrants, including offering-related documents that mention WebHouse" and to the extent the requests seek anything unrelated to WebHouse or the warrants, Deloitte contends the requests are overbroad. Opp. at 14-15. As stated above, the allegations of the *Complaint* go well beyond WebHouse and WebHouse warrants, extending to the entirety of Priceline's reported financials. Deloitte has failed to demonstrate that Plaintiffs are not entitled to all documents responsive to these requests and each of these requests seeks documents relevant to the claims and defenses in this action. *See* Plaintiffs' Mem. in Support of Motion to Compel Deloitte at 16-18.

        **h.**     **Request 12**

Request 12 seeks production of documents concerning any communications between Deloitte, Priceline (including WebHouse), Walker Digital, Walker Digital's accountants, or any Individual Defendant concerning the subject matters specified in the Document Requests or this lawsuit. Deloitte suggests that this request is not properly the subject of a motion to compel because it has offered to produce documents concerning communications with the Defendants related to the "remaining" claims and defenses in this lawsuit. However, as discussed above, Deloitte relies on an unjustifiably narrow reading of the *Complaint* in making this offer, one

---

[8] Request 7 asks for documents that refer or relate to Priceline (including WebHouse) securities and/or any actual or contemplated public or private offering or sales of securities by Priceline (including WebHouse); Request 8 asks for all transcripts or notes of any meeting, contact or discussion between Deloitte and Priceline (including WebHouse); Requests 9 and 10 asks for documents concerning any actual or proposed merger between or among any company and Priceline; Request 11 seeks documents concerning any investigation by any government or regulatory body pertaining to Priceline (including WebHouse) or Walker Digital.

9

which limits the allegations of Plaintiffs case solely to issues involving WebHouse and the WebHouse warrants. Plaintiffs respectfully request that Deloitte be compelled to produce all documents relevant to any of the allegations in the *Complaint*, not merely documents related to the narrow reading inappropriately suggested by Deloitte.

### i. **Request 13**

Request 13 seeks documents related to actual or contemplated relationships between certain entities and Walker Digital or Priceline (including WebHouse). This request specifically seeks documents related to the relationships, financial or otherwise, of a number of entities that were involved with Priceline, including WebHouse, and Walker Digital. Deloitte once again states that to the extent Plaintiffs request documents beyond WebHouse and the WebHouse warrants, the request is overbroad and not focused on the claims or defenses of this action. Again, the *Complaint* goes well beyond allegations regarding WebHouse and the WebHouse warrants. Plaintiffs are entitled to all documents in Deloitte's possession, custody or control that refer or related to these entities.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be granted in its entirety. Plaintiffs respectfully request that this Court enter an order pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37(a):

(1) compelling Deloitte to provide full and complete responses to the document production within twenty days of the entry of the Court's order on this issue; and

(2) awarding any additional relief that the Court determines is just and proper.

Dated: May 20, 2005                              Respectfully submitted,

                                                 SCOTT + SCOTT, LLC

                                                 _____

David R. Scott (ct16080)
Geoffrey M. Johnson
Erin Comite (ct24886)
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone:  (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 20, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

_____

Erin Green Comite

**SERVICE LIST**

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

William R. Maguire
Sarah Loomis Cave
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004

Joseph L. Clasen
William Kelleher
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Douglas C. Conroy
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9th Floor
Stamford, CT 06901

# EXHIBIT A

2