## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
|  | : | |
|  | : | **MASTER FILE NO.** |
| **This document relates to:** | : | **3:00CV01844(DJS)** |
|  | : | |
| **ALL ACTIONS** | : | |
|  | : | |
|  | : | |

### LEAD PLAINTIFFS' SECOND SET OF DOCUMENT REQUESTS AND INTERROGATORIES DIRECTED TO ALL DEFENDANTS

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request that each of the Defendants in All Actions produce for inspection and copying the documents described below (the "Document Requests") and answer under oath each of the interrogatories set forth below (the "Interrogatories"). The documents described below shall be produced for inspection and copying at the offices of Scott + Scott, LLC, 108 Norwich Avenue, P.O. Box 192, Colchester, CT 06415, no later than April 1, 2005. Written responses to the Interrogatories shall be served on the undersigned counsel no later than April 1, 2005.

### DEFINITIONS AND INSTRUCTIONS

1.    Plaintiffs incorporate by reference the Definitions and Instructions contained in Plaintiffs' First Request for Production of Documents and Plaintiffs' First Set of Interrogatories Directed to All Defendants as if fully set forth herein.

2.    The term "this Action" refers to the lawsuit docketed under the caption *In re Priceline.com Securities Litigation*, 3:00cv01884 (DJS).

3. The term "Class Period" refers to the Class Period set forth in the Consolidated Amended Complaint filed in this Action.

4. The term "Answer" refers to the Answer and Defenses of Defendants Priceline, N. J. Nicholas, Daniel H. Schulman and Richard S. Braddock that has been filed in this Action.

5. The term "Walker Answer" refers to the Answer of Defendant Jay S. Walker that has been filed in this Action.

6. The term "Murray Devine" refers to Murray Devine & Co., and includes any subsidiaries, affiliates, segments or divisions thereof, any present and former members of the Board of Directors of Murray Devine, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons acting or purporting to act on behalf of Murray Devine or its subsidiaries, affiliates, segments or divisions.

7. The term "Defendant" or "Defendants" means the Defendants in this Action and any agent, employee, attorney or other representative of any such Defendant.

## RELEVANT TIME PERIOD

The relevant time period of these Document Requests, unless otherwise indicated, shall be from January 1, 1999 through December 31, 2001 and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior to that period. However, with respect to documents relating to WebHouse, there is no limitation in the relevant time period.

## DOCUMENT REQUESTS

1.    All documents relating to, sent to, received from, reviewed by, relied upon by, or prepared for each person whom Defendants expect to call as an expert witness (or whose testimony will be used) in a hearing or at trial in this Action. This includes, but is not limited to, documents relating to the following:

> (a) the subject matter on which such person will testify;
>
> (b) such person's qualifications within the field or area in which such person is expected to testify;
>
> (c) the substance of any facts and/or opinions as to which such person is expected to testify;
>
> (d) any oral or written report prepared or rendered by such person (including any drafts or revisions of drafts thereof); and
>
> (e) each document or other item examined, relied on, referred to or created by such persons in preparing any report or forming any opinion.

2.    All documents concerning any purchase, sale or other transfer of any shares of Priceline or any other Priceline security by any Defendant including, but not limited to, confirmations of such transactions, documents concerning the reasons for such transactions and stock certificates or other documents evidencing current ownership of priceline.com shares or securities.

3.    All documents concerning the investment policies or practices of any Defendant including, but not limited to, all statements of investment policy prepared by or for any Defendant.

4.    All documents created, considered, collected, reviewed, obtained or otherwise received by any Defendant in connection with any analysis, assessment or consideration of the market value or selling price of priceline.com common stock during the Class Period.

3

5.      All documents relating to any statement that any Defendant made concerning priceline.com stock during the Class Period.

6.      All documents concerning any action or investigation in which any Defendant has been charged with violating or alleged to have violated federal and/or state securities laws including, but not limited to, the pleadings and/or other materials filed in or prepared for such actions.

7.      All documents concerning any action or investigation in which any Defendant has been charged with violating or alleged to have violated the rules and/or regulations of the National Association of Securities Dealers ("NASD"), or any other private, public or quasi-governmental entity and/or self regulatory organization that regulates or purports to regulate the securities of publicly traded entities, including, but not limited to, the pleadings and/or other materials filed in or prepared for such actions.

8.      All transcripts or other recordings (including audio or video tape-recordings) of any testimony given by any Defendant in any civil, criminal, administrative or other proceeding, whether or not given under oath.

9.      All documents relating to or concerning any communications between or among any Defendant and/or any employee or any agent of any Defendant and any insurer whose policies provide or potentially provide coverage for the claims asserted in this Action.

10.     All documents relating to or concerning any documents sent between or circulated among any Defendant and/or any employee or any agent of any Defendant and any insurer whose policies provide or potentially provide coverage for the claims asserted in this Action.

11.    All documents concerning any agreement or understanding relating to this Action between or among any of the Defendants, including, without limitation, any joint defense agreement or indemnification agreement.

12.    All documents concerning (including, but not limited to, any documents that you claim refute) any statement made in the Motion for Class Certification, including, without limitation:

(a) that "[t]he factual and legal issues which will be pursued by the named representatives are common to all members of the proposed class";

(b) that "the Proposed Class Representatives satisfy the typicality requirement" of Rule 23(a)(3);

(c) that "[the Proposed Class Representatives'] interests are not antagonistic to those of the Class";

(d) that "[the Proposed Class Representatives'] claims and interests are identical to those of the Class";

(e) that "common questions plainly predominate in this action"; and

(f) that "individual members do not have an overriding interest in controlling the action."

13.    All documents relating to any method or formula by which Defendants propose to disprove and/or calculate common or class-wide injury and/or damages in this Action.

14.    All documents on which Defendants intend to rely to support any of the affirmative defenses that are set forth in the Answer and/or the Walker Answer filed in this Action.

15.    All documents Defendants relied upon when answering any of the interrogatories that Plaintiffs have served on Defendants in this Action.

## INTERROGATORIES

1. Identify all issues of law and/or fact raised by the claims asserted in this Action that you claim are not common to all members of the class for which Plaintiffs seek certification.

2. Identify the method or formula by which Defendants propose to disprove and/or calculate class-wide injury and/or damages in this Action and each individual upon whose knowledge, expertise or information that method or formula is based.

3. Set forth all facts upon which Defendants intend to rely to disprove any statement in the Motion for Class Certification, including but not limited to:

> (a) that "[t]he factual and legal issues which will be pursued by the named representatives are common to all members of the proposed class";

> (b) that "the Proposed Class Representatives satisfy the typicality requirement" of Rule 23(a)(3);

> (c) that "[the Proposed Class Representatives'] interests are not antagonistic to those of the Class";

> (d) that "[the Proposed Class Representatives'] claims and interests are identical to those of the Class";

> (e) that "common questions plainly predominate in this action"; and

> (f) that "individual members do not have an overriding interest in controlling the action."

4. Identify all persons with knowledge concerning the expansion of Priceline's business model to any new markets during the Class Period, including markets such as groceries or gas.

5. Identify all persons with knowledge concerning the truth or accuracy of any public statement made by Defendants during the Class Period.

6. Identify all persons with knowledge concerning any work performed by Murray Devine for Priceline regardless of the time period including but not limited to all persons with

knowledge concerning any memorandum, analysis, report, opinion or other document issued by

Murray Devine concerning the value of the warrants that WebHouse issued to Priceline in late

1999 (the "WebHouse Warrants").

7.    Identify all persons with knowledge concerning the decision to recognize the

value of the WebHouse warrants at $188.8 million as income in the 4th Quarter of 1999.

8.    Identify all persons with knowledge concerning the decision to write off the

WebHouse Warrants and take a one-time charge of $188.8 million in the 3rd Quarter of 2000.

9.    If you contend that the decision to recognize $188.8 million in income in the 4th

Quarter of 1999 from the issuance of the WebHouse Warrants was made in accordance with

Generally Accepted Accounting Principles ("GAAP"), please state all facts and reasons that

support your contention, including without limitation, any and all accounting authority to support

your contention.

10.    If you contend that the decision to carry the WebHouse Warrants as an asset

valued at $188.8 million on the December 31, 1999, March 31, 2000 and June 30, 2000 balance

sheets was made in accordance with Generally Accepted Accounting Principles ("GAAP"),

please state all reasons to support your contention, including without limitation, any and all

accounting authority to support your contention.

11.    If you contend that the decision to take a one-time charge for the WebHouse

Warrants of $188.8 million in the 3rd Quarter of 2000 was made in accordance with Generally

Accepted Accounting Principles ("GAAP"), please state all facts and reasons that support your

contention, including without limitation, any and all accounting authority to support your

contention.

12.    Identify the individual or individuals who made: (a) the decision to recognize $188.8 million in income in the 4th Quarter of 1999 from the issuance of the WebHouse warrants, (b) the decision to carry the full $188.8 million purported value of the WebHouse Warrants as an asset on the balance sheets as of December 31, 1999, March 31, 2000 and June 30, 2000, (c) and/or the decision to take a one-time charge for the WebHouse Warrants of $188.8 million in the 3rd Quarter of 2000.

13.    Identify all persons with knowledge about the decision to exclude WebHouse's financial performance from Priceline's financial reports and state which person(s) were responsible for making the decision.

14.    Identify all persons with knowledge about the launch of WebHouse and the WebHouse website.

15.    Identify all persons with knowledge about attempts to market the WebHouse business model and/or service to retailers, wholesalers, manufacturers or any other sponsoring parties and state which person(s) were responsible for making such decisions.

16.    Identify all documents that address whether and to what extent retailers, wholesalers, manufacturers and/or any other sponsoring parties were willing to and were actually subsidizing the difference between the retail price and the discount price for products offered or sold on the WebHouse website.

17.    Describe on a daily, monthly, and quarterly basis the extent to which retailers, wholesalers, manufacturers and/or any other sponsoring parties were subsidizing the discount prices for products offered and/or sold on the WebHouse website and the extent to which WebHouse was subsidizing the discount prices for products offered and sold on its website.

18.   Identify all persons with knowledge concerning whether WebHouse could or would ever reach a point where retailers, manufacturers or any other sponsoring parties would be subsidizing the full extent of the discount price offered to customers on the WebHouse website.

19.   Identify all manufacturers, wholesalers, retailers or any other sponsoring parties who participated in the WebHouse website and, as to each entity, identify all persons with knowledge concerning such participation.

20.   Describe in detail any and all problems experienced with the Priceline and WebHouse computer systems and websites during the Class Period and identify all persons with knowledge concerning such problems.

21.   Identify all persons with knowledge about the launch of hotwire.com in June of 2000, including, without limitation, the financial or business impact that hotwire.com could or would have on Priceline's financial or business results.

22.   Identify any insurer or other third party that has reviewed and/or investigated the claims asserted in this Action.

23.   If any insurer or other third party has reviewed and/or investigated the claims asserted in this Action, identify all persons knowledgeable concerning any such review and/or investigation.

24.   If any insurer or other third party has reviewed and/or investigated the claims asserted in this Action, identify the persons with whom the insurer or other third party has communicated and/or interviewed as part of the review or investigation.

25.   Set forth all facts upon which Defendants intend to rely to support their contention that "Plaintiffs did not rely, or could not have reasonably or justifiably relied, upon

the alleged misstatements or omissions alleged in the Complaint." Answer (Fifth Defense);
Walker Answer (Sixth Defense).

26.    Set forth all facts upon which Defendants intend to rely to support their
contention that "Defendants are not liable because they did not make a false or misleading
statement of material fact or omission of material fact on which plaintiffs relied and they are not
responsible (in law or in fact) for any alleged false or misleading statements or omissions of
material fact by others on which plaintiffs are alleged to have relied." Answer (Seventh
Defense).

27.    Set forth the facts upon which Defendants intend to rely to support their
contention that: "Defendants are not liable because certain alleged misstatements by them were
forward-looking and contained sufficient cautionary language and risk disclosure to be non-
actionable under the Private Securities Litigation Reform Act of 1995 . . . . and the bespeaks
caution doctrine." Answer (Tenth Defense).

28.    Describe in detail the "cautionary language and risk disclosure" you intend to rely
on in this Action.

29.    Set forth all facts upon which Defendants intend to rely to support their
contention that: "Defendants are not liable because plaintiffs knew, or in the exercise of
reasonable care should have known, the information that they allege Defendants misstated or
omitted." Answer (Eleventh Defense).

30.    Set forth all facts upon which Defendants intend to rely to support their
contention that: "Defendants are not liable because the alleged misrepresentations or omissions
by Defendants were based on good faith, and in reasonable reliance upon the work, opinions,

10

information, representations and advice of others upon whom Defendants were entitled to rely." Answer (Twelfth Defense).

31.    Set forth all facts upon which Defendants intend to rely to support their contention that: "Defendants are not liable because the alleged misrepresentations and omissions alleged in the Complaint did not affect the market price of Priceline's securities and/or did not cause the damage alleged by plaintiffs." Answer (Thirteenth Defense).

32.    Set forth all facts upon which Defendants intend to rely to support their contention that: "Plaintiffs' claims are barred by the applicable statute of limitations." Answer (Fourteenth Defense).

33.    Set forth all facts upon which Defendants intend to rely to support their contention that: "Plaintiffs' claims are barred, in whole or in part, by the truth on the market doctrine." Answer (Fifteenth Defense).

34.    Set forth all facts upon which Defendants intend to rely to support their contention that: "This action may not properly be maintained as a class action." Answer (Sixteenth Defense).

35.    Identify all persons involved in preparing your responses to these Interrogatories and the responses to Plaintiffs' Document Requests.

Dated: March 1, 2005

Respectfully submitted,

SCOTT + SCOTT, LLC
David R. Scott
Erin Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

11

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200
Facsimile: (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**Co-Lead Counsel**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IN RE: PRICELINE.COM, INC.     :
SECURITIES LITIGATION     :
     :
_____ :    **MASTER FILE NO.**
     :    **3:00CV01844(DJS)**
This document relates to:     :
     :
      **ALL ACTIONS**     :
     :
     :

### CERTIFICATE OF SERVICE

I, Geoffrey M. Johnson, hereby certify that on March 1, 2005, I caused a true and correct copy of *Lead Plaintiffs' Second Set of Document Requests and Interrogatories Directed to All Defendants*, to be served via Facsimile and UPS Next Day Delivery upon the following:

Daniel Slikfin
Christine Arena
Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Joseph L. Clasen
William Kelleher
Robinson & Cole, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06804

J. Allen Maines
Albert M. Myers III
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street NE, Suite 2400
Atlanta, GA 30308

Dated: March 1, 2005

Geoffrey M. Johnson
Scott + Scott, LLC
33 River Street
Chagrin Falls, Ohio 44022