IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: Priceline.com Securities Litigation | : : | Master File No. 3:00cv1884 (DJS) |
| ------------------------------------------------------- | : : | |
| This document relates to: | : : | |
| ALL PENDING ACTIONS | : : : | |
| | : | September 2, 2005 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY**

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

*Attorneys for Defendants
priceline.com Inc., N.J. Nicholas,
Daniel Schulman and Richard S. Braddock*

## Table of Contents

Introduction...................................................................................................................1

Argument .....................................................................................................................2

A      Document Request 3 ........................................................................................2

B.     Document Request 8 ........................................................................................5

C.     Document Request 11 ......................................................................................7

D.     Document Requests 12 and 13 and Interrogatories 1, 2, 3 and 34.........................10

E.     Interrogatories 7, 8, 12 and 21 (Defendants' "Primarily" Restrictions) ................13

F.     Interrogatories 22, 23 and 24 ..........................................................................18

G.     Interrogatories 19 and 20 ...............................................................................19

Conclusion .................................................................................................................22

Defendants priceline.com Inc. ("priceline"), N. J. Nicholas,
Daniel H. Schulman and Richard S. Braddock (collectively, "Defendants") submit this
Memorandum of Law in opposition to plaintiffs' second motion to compel discovery.

## Introduction

On April 25, 2005, Defendants served their Responses and Objections to
Plaintiffs' Second Set of Document Requests and Interrogatories.[1]  On May 25, plaintiffs
sent a letter to Defendants in which they described a number of alleged deficiencies in
Defendants' responses and objections.[2]  In a six page letter, dated June 3 (the "June 3
letter"), Defendants responded in detail to plaintiffs' concerns, providing clarifications
and explanations of the positions taken in their responses and objections.[3]  On June 7,
plaintiffs and Defendants held a meet and confer telephone conference to discuss the
challenged responses and objections.  (Kelleher Decl. at ¶ 2.)  During the meet and
confer, Defendants again addressed each of plaintiffs' concerns and reiterated many of
the clarifications and explanations first set forth in the June 3 letter.  (Id. at ¶ 2.)

Thereafter, on June 29, plaintiffs sent a letter to the Court requesting that a
hearing or conference be held to address the alleged deficiencies in Defendants'

---

[1] Defendants' Responses and Objections to Plaintiffs' Second Set of Document
Requests and Interrogatories are attached as Exhibit A to the Declaration of William J.
Kelleher, III, dated September 2, 2005 (the "Kelleher Decl.").

[2] Letter from Jacob P. Perkinson to James G. Hein, Jr., dated May 25, 2005, attached
as Exhibit B to the Kelleher Decl.

[3] Letter from James G. Hein, Jr. to Jacob B. Perkinson, dated June 3, 2005, attached
as Exhibit C to the Kelleher Decl.

responses and objections.[4]  The Court denied plaintiffs' request, and on July 14, 2005,

plaintiffs filed their Second Motion to Compel Discovery from Priceline Defendants.

Plaintiffs' memorandum in support of their motion purports to represent

Defendants' positions to the Court, but fails to acknowledge many of the clarifications

and explanations that Defendants made in their June 3 letter and during the meet and

confer.  Notably, plaintiffs did not even attach Defendants' June 3 letter as an exhibit to

the declaration accompanying their motion, nor is there any reference to that letter or its

contents in their brief.  Nor did plaintiffs submit to the Court their May 25 letter, the

content of which is largely replicated in their brief, despite the intervening letter from

Defendants and the meet and confer.  As we demonstrate below, when Defendants' actual

positions are considered, it becomes clear that plaintiffs' motion is not only highly

misleading—it purports to describe disputes where we believe none exist—but is also

entirely meritless.  Indeed, we believe that the current motion is simply vexatious.

## Argument

In the sections below, Defendants address each of the discovery responses

about which plaintiffs complain in their motion.

### A.    Document Request 3

Document Request 3 seeks "[a]ll documents concerning the investment

policies or practices of any Defendant".  Defendants objected to the request on the

grounds that the types of documents it seeks are not relevant with respect to Defendants.

Then, in their June 3 letter, Defendants clarified their response and explained that they

---

[4] Letter from Jacob B. Perkinson to Hon. Dominic J. Squatrito, dated June 29, 2005, attached as Exhibit D to the Kelleher Decl.

had produced and/or would produce documents concerning the individual defendants' investment policies or practices with respect to their trading in priceline stock, but would not produce documents concerning the individual defendants' investment policies or practices with respect to their non-priceline investments. (June 3 letter at ¶ 2.) Defendants explained:

> "Plaintiffs allege that the individual defendants sold priceline stock at artificially inflated prices and that their sales were suspicious in timing and amount. (See, e.g., CAC ¶¶ 44, 45.) Defendants contend, among other things, that the individual defendants' sales of priceline stock were consistent with their trading history in priceline stock. Accordingly, Defendants have produced and/or will produce documents concerning the individual defendants' investment policies or practices with respect to their trading in priceline stock. However, documents concerning the individual defendants' investment policies or practices with respect to their non-priceline investments are not at all relevant to plaintiffs' allegations, and Defendants will not produce them." (Id.)

Plaintiffs' brief completely ignores Defendants' clarification and explanation. Plaintiffs purport to state Defendants' position as follows: "Defendants claim that their investment practices are not relevant to the claims of this action". (Plaintiffs' Second Motion to Compel Discovery from Priceline Defendants ("Pltf. Br.") at 9.) That is not correct, as plaintiffs are well aware.

Pursuant to Fed. R. Civ . P. 26(b)(1), plaintiffs must establish the relevance of their request. Fed. R. Civ. P. 26(b)(1). ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . "); see Alexander v. F.B.I., 194 F.R.D. 316, 325 (D.D.C. 2000) ("once a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable"); Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 631 (M.D. Pa. 1997) ("Once an objection has been raised on relevancy grounds, the party seeking discovery must demonstrate that the

request is within the scope of Fed. R. Civ. P. 26(b).").[5]  Plaintiffs do not, because they cannot, offer any explanation of how the individual defendants' non-priceline investments are relevant to the claims or defenses of any party.

Rather, plaintiffs cite a series of cases that they suggest stand for the proposition that Defendants' "overall investment strategies" are discoverable.  (Pltf. Br. at 9-10.)  That is not what those cases say.  Indeed, in each of the cases cited by plaintiffs, it is clear that the investments that were relevant to the plaintiffs' claims were the individual insider defendants' prior trades in the defendant company's stock, not their overall investment histories.  See In re Vantive Corp. Sec. Litig., 283 F.3d 1079 (9th Cir. 2002); Ronconi v. Larkin, 253 F.3d 423 (9th Cir. 2001); Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000); In re Enron Corp. Sec., Derivative & ERISA Litig., 258 F. Supp. 2d 576 (S.D. Tex. 2003).

In In re Vantive, for example, the court explained that one of the individual defendants "ha[d] no relevant trading history" because he had joined Vantive (the defendant company) four months into the class period.  283 F.3d at 1095.  Similarly, in Ronconi, the court explained that "all directors and officers selling securities in their own corporation file a Form 4", so "plaintiffs can get the insider trading reports from the Securities and Exchange Commission for the months prior to the class period to show the pattern of trading".  253 F.3d at 437 (emphasis added).  None of the cases cited by plaintiffs so much as even mentions an individual defendant's trading in any stock

_____

[5] Even if plaintiffs establish the relevance of a request, relevant discovery is still subject to the limitations of Rule 26(b)(2), which provides that relevant discovery can be limited, among other reasons, if "the burden or expense of the proposed discovery outweighs its likely benefit".  Fed. R. Civ. P. 26(b)(1), (2).

besides the stock of the defendant company. In fact, plaintiffs' cases impliedly support the very distinction that Defendants have made between the individual defendants' priceline and non-priceline trading.

Plaintiffs claim that "this Court has already held that investment histories are relevant considerations in plumbing the motivations for trades in Priceline stock", citing the Court's June 7, 2005 Memorandum of Decision and Order on defendants' motion to compel (the "June 7 Order I"). (Pltf. Br. at 10.) We do not believe that is what the Court held. Rather, the Court held that documents concerning the investment practices of the proposed class representatives "could assist defendants in rebutting the presumption of reliance arising in the 'fraud on the market' context". (June 7 Order I at 5.) Defendants, of course, are not invoking the presumption of reliance, and accordingly, the rationale behind the Court's June 7 decision is not applicable here. Simply stated, just because discovery on a particular topic may be appropriate from plaintiffs, that does not necessarily imply that discovery on the same topic is relevant when it comes from defendants.

## B.     Document Request 8

Document Request 8 seeks "[a]ll transcripts or other recordings . . . of any testimony given by any Defendant in any . . . proceeding". The request is a mirror image of Defendants' Document Request 12, dated November 15, 2004. Plaintiffs objected to Defendants' request and refused to produce any responsive documents.[6] But then they

---

[6] Lead Plaintiffs' Response to Defendants' First Set of Requests For the Production of Documents, attached as Exhibit E to the Kelleher Decl.

In footnote 5 of their brief, plaintiffs claim that they "have produced documents responsive to a similar request made by Defendants". (Pltf. Br. at 11 n.5.) Defendants are unaware of any documents produced by plaintiffs that are transcripts or other

served a mirror image of the request to Defendants. Defendants stated in response that they would "only produce documents in response to this request to the extent that plaintiffs produce documents in response to Defendants' request".

As Defendants explained to plaintiffs in their June 3 letter, Defendants were in fact offering to produce documents responsive to the request, despite the fact that such documents are not even relevant with respect to Defendants. Defendants explained:

> "Prior testimony given by the proposed class representatives may bear on their adequacy as representatives and so is relevant to plaintiffs' pending motion for class certification. Prior testimony given by Defendants, by contrast, is not relevant to the claims or defenses of any party to this action. Nonetheless, as a gesture of compromise, we told you that we were willing to produce documents called for by the request if you would do the same. In return, you complained about our response while continuing to stonewall our efforts to get the same types of documents from plaintiffs, with respect to whom those documents are actually relevant." (June 3 letter at ¶ 3.)

To be clear, Defendants' objection to Document Request 8 is that it seeks documents that are not relevant to the claims or defenses of any party to this action. Plaintiffs bear the burden of establishing that the discovery they seek is relevant. Fed. R. Civ. P. 26(b)(1). To that end, they make a single, conclusory assertion that the request "seeks information that bears on, inter alia, Defendants' scienter, a central issue in this case". (Pltf. Br. at 11.) Plaintiffs, however, offer no explanation of how the individual defendants' testimony, if any, in unrelated proceedings could bear on their scienter in this action. Plaintiffs have failed to establish the relevance of their request.

Defendants were not suggesting that they would withhold documents simply because plaintiffs had not produced the same types of documents. Defendants

---

recordings of any testimony given by any of the proposed class representatives. Plaintiffs do not refer to any part of their production in support of their assertion.

made that clarification clear to plaintiffs both in their June 3 letter and during the meet and confer. Again, however, plaintiffs have sought to represent Defendants' position to the Court without any attempt to include the subsequent clarifications necessary to make that representation accurate.

## C.     Document Request 11

Document Request 11 seeks "[a]ll documents concerning any agreement or understanding relating to this Action between or among any of the Defendants, including, without limitation, any joint defense agreement or indemnification agreement". Defendants agreed to produce non-privileged documents concerning any indemnification agreement between or among any of the defendants. Plaintiffs complain that Defendants have objected to the production of "any agreements relating to the joint defense of this action". (Pltf. Br. at 11.)

At this time, there is no written joint defense agreement in this litigation, nor is a written joint defense agreement a prerequisite to asserting a joint defense privilege. See Ken's Foods, Inc. v. Ken's Steak House, Inc., 213 F.R.D. 89, 93 (D. Mass. 2002) ("a written agreement is not a prerequisite for invoking the common interest doctrine"). However, Defendants' position is that if they were to enter into a joint defense agreement, any such agreement or the existence thereof would not be relevant to the claims or defenses of any party, would be privileged, and therefore would not be discoverable.[7]

---

[7] Defendants objected to the request on the grounds that "(1) it seeks documents that are not relevant to the claims or defenses of any party . . . and (2) it seeks documents that are subject to the attorney-client or work product privileges or other privileges".

Plaintiffs have the burden under Fed. R. Civ. P. 26(b)(1) of establishing the relevance of the types of documents they seek. Alexander, 194 F.R.D. at 325. Plaintiffs simply assert—with no support or explanation—that "[t]he existence of and nature of any agreements for indemnification, joint defense, or similar accords is directly relevant to Plaintiffs' claims with respect to Defendants' scienter and respective liabilities to the class". (Pltf. Br. at 11.) Defendants, however, simply do not understand how an agreement relating to the defense of this litigation could be relevant to their scienter or their liability.

Plaintiffs also say that "without the revelation of such agreements, Plaintiffs will be prejudiced in their ability to challenge designations in Defendants' privilege logs". (Id. at 12.) Again, Defendants simply do not understand plaintiffs' argument. Neither Defendants nor defendant Walker has designated any documents as privileged on the basis of such an agreement. Plaintiffs further claim that without such agreements they "will be severely prejudiced in their efforts to obtain relevant and potentially non-privileged information". (Id. at 13.) But again, that is pure rhetoric, with no support or explanation.

In addition, the cases cited by plaintiffs are entirely inapposite. They first cite a California state case, OXY Res. California LLC v. Super. Court, 115 Cal. App. 4th 874 (Cal. App. 1 Dist. 2004). That case has nothing at all to do with the discoverability of joint defense agreements. Rather, the issue in OXY Res. was whether the joint defense agreement, which purported to protect communications made during the course of the transaction that gave rise to the lawsuit, could in fact protect such pre-lawsuit communications in the absence of an underlying claim of privilege. 115 Cal.

App. 4th at 893.  That is not the issue here.  Plaintiffs also cite <u>Essex Chem. Corp. v.</u>
<u>Hartford Accident & Indem. Co.</u>, 993 F. Supp. 241 (D.N.J. 1998).  In that case, the
plaintiff sought declaratory judgment against a group of insurance companies, one of
which was represented by a firm that had previously represented the plaintiff in a
substantially related matter.  993 F. Supp. at 243.  The question was whether the joint
defense agreement among the firms representing the insurance companies gave rise to an
implied attorney-client relationship between all of those firms and the plaintiff by virtue
of the one firm's previous representation of the plaintiff.  <u>Id.</u> at 253.  The court did not
address the discoverability of joint defense agreements.  The only other case cited by
plaintiffs is <u>For Your Ease Only, Inc. v. Calgon Carbon Corp.</u>, No. 02 C 7345, 2003
WL 21920244 (N.D. Ill. Aug. 11, 2003).  There, the question was whether a party could
invoke the protections of a joint-defense privilege for communications that took place
before a joint-defense agreement was entered into.  2003 WL 21920244, at *1.  Again,
there was no discussion of the discoverability of joint defense agreements.

      The federal cases that do address the discoverability of joint defense
agreements, however, hold that they are not discoverable.  In <u>United States v. Bicoastal</u>
<u>Corp.</u>, No 92-CR-261, 1992 WL 693384 (N.D.N.Y. Sept. 28, 1992), for example, the
government argued that if a joint defense agreement existed, then it must be produced.
<u>Id.</u> at *6.  The court disagreed, holding that "the disclosure of the existence of such an
agreement would be an improper intrusion into the preparation of the defendant's case",
and stated that it would "deny any motion by the Government to be provided with any
joint defense agreement should one exist".  <u>Id.</u>; <u>see also</u> <u>A.I. Credit Corp. v. Providence</u>
<u>Washington Ins. Co.</u>, No. 96 Civ. 7955 (AGS) (AJP), 1997 WL 231127, at *4 (S.D.N.Y.

May 7, 1997) ("joint defense agreements are generally considered privileged"); Waller v. Fin. Corp. of America, 828 F.2d 579, 584 (9th Cir. 1987) ("The district court may, indeed, consider it appropriate to frame a protective order which will assure against any improper disclosure of the terms of the joint defense agreement."); McNally Tunneling Corp. v. City of Evanston, No. 00 C 6979, 2001 WL 1246630, at *4 (N.D. Ill. Oct. 18, 2001) ("this Court concludes that the joint-defense agreement [except the "standstill" agreement contained therein] is protected by the work product doctrine").

**D.    Document Requests 12 and 13 and Interrogatories 1, 2, 3 and 34**

Document Requests 12 and 13 and Interrogatories 1, 2, 3 and 34 are mirror images of discovery requests that Defendants served on plaintiffs following the filing of plaintiffs' motion for class certification.[8]  In those requests and interrogatories, Defendants sought the evidentiary basis for the unsupported, conclusory assertions in plaintiffs' brief in support of class certification.  Strangely, plaintiffs then served essentially identical class-certification-related requests back on Defendants—who have no burden with respect to class certification and who, not surprisingly, do not independently have information or documents regarding the proposed class representatives.

Document Request 12 seeks "[a]ll documents concerning . . . any statement made in the Motion for Class Certification, including . . . (b) that 'the Proposed Class Representatives satisfy the typicality requirement' of Rule 23(a)(3)".

-----

[8] See, e.g., Plaintiff's [R. Warren Ross's] Responses and Objections to Defendants' Second Set of Interrogatories and Requests For The Production of Documents, attached as Exhibit F to the Kelleher Decl., at Document Requests 1 and 2 and Interrogatories 1, 2 and 4.

Document Request 13 seeks "[a]ll documents relating to any method or formula by which Defendants propose to disprove and/or calculate common or class-wide injury and/or damages".

In their June 3 letter, Defendants explained:

> "With respect to Document Requests 12 and 13, Defendants do not at this time have any responsive non-privileged documents other than documents produced by plaintiffs. . . . . Furthermore, with respect to Document Request 13, Defendants have objected, among other reasons, on the grounds that the request seeks documents that may be prepared by experts, and so is premature. Subject to the objections already made in the applicable responses, Defendants will produce non-privileged documents responsive to Document Requests 12 and 13, if any, and any such documents prepared by experts will be produced in accordance with the schedule ordered by the Court." (June 3 letter at ¶ 6 (emphasis added).)

Based on that response to plaintiffs' concerns, Defendants do not see how there could be any remaining issue for the Court to resolve. It appears that plaintiffs have simply ignored Defendants' response, as they told the Court only that "Defendants contend they are not required to produce information concerning Plaintiffs' class-related allegations". (Pltf. Br. at 13.)

Interrogatory 1 asks Defendants to "[i]dentify all issues of law and/or fact raised by the claims . . . that you claim are not common to all members of the class".

Interrogatory 2 asks Defendants to "[i]dentify the method or formula by which Defendants propose to disprove and/or calculate class-wide injury and/or damages in this Action and each individual upon whose knowledge expertise or information that method or formula is based".

Interrogatory 3 purports to require Defendants to "[s]et forth all facts upon which Defendants intend to rely to disprove any statement in the Motion for Class

-11-

Certification, including . . . (c) that '[the Proposed Class Representatives'] interests are

not antagonistic to those of the Class'".

Interrogatory 34 requests that Defendants "[s]et forth all facts upon which

Defendants intend to rely to support their contention that: 'This action may not properly

be maintained as a class action.'".

In their June 3 letter, Defendants explained:

> "With respect to Interrogatories 1, 2, 3 and 34, our position is that your
> requests for information are premature. In each of those interrogatories,
> you purport to require Defendants to commit to a position and/or provide
> factual support for one or more of their claims regarding the
> appropriateness of class certification. Interrogatories of this variety are
> frequently referred to as "contention interrogatories" in the case law, and
> the widely accepted approach by courts to such interrogatories is that the
> responding party may defer them until the relevant discovery has been
> completed. Class certification related discovery is not yet complete here .
> . . . As we told you, Defendants will provide information responsive to
> these interrogatories in their memorandum of law in opposition to class
> certification. . . . .[9]

---

[9] See Fed. R. Civ. P. 33 (c) ("An interrogatory otherwise proper is not necessarily
objectionable merely because an answer to the interrogatory involves an opinion or
contention that relates to fact or the application of law to fact, but the court may order
that such an interrogatory need not be answered until after designated discovery has been
completed or until a pre-trial conference or other later time.").

Defendants did not possess the information necessary to respond to these
interrogatories until the completion of class-certification-related discovery. Accordingly,
Defendants had a "legitimate reason" for objecting to them as premature and providing
responsive information in their opposition brief. Pouliot v. Paul Arpin Van Lines, Inc.,
No. 3:02 CV 1302 (DJS), 2004 WL 1368869, at *2 (D. Conn. June 14, 2004) (Squatrito,
J.) (acknowledging that "[t]he courts have the option to delay the answers to any such
opinion or contention interrogatories until after 'designated discovery'", but finding that
such delay was inappropriate on the facts of that case).

Plaintiffs' complaint about Defendants' responses to these interrogatories is
especially frustrating because plaintiffs themselves objected to similar requests on the
grounds that they were "contention interrogator[ies] calling for legal conclusions and []
premature". (See, e.g., Kelleher Decl., Exh. F, at Interrogatories 1, 2 and 4.) But, unlike
Defendants, plaintiffs were in control of the witnesses and documents that are the subject
of these interrogatories at the time of their objections, and they had already filed their
class certification papers. It is difficult to imagine when the proper time to provide a

"As we noted in our response to Interrogatory 2, that interrogatory is also premature to the extent that it calls for information that will be provided by expert witnesses. Defendants have not yet determined which expert witnesses they intend to call in a hearing or at trial." (June 3 letter at ¶ 6.)

Now that class discovery is complete and Defendants have filed their memorandum of law in opposition to plaintiffs' motion for class certification, plaintiffs' complaints about Interrogatories 1, 2, 3 and 34 are moot—our positions are stated in our papers. Once again, however, plaintiffs chose not to bring Defendants' explanations to the Court's attention, instead stating—incorrectly— that "Defendants contend they are not required to produce information concerning Plaintiffs' class-related allegations". (Pltf. Br. at 13.)

E.    **Interrogatories 7, 8, 12 and 21 (Defendants' "Primarily" Restrictions)**

Plaintiffs complain about Defendants' responses to Interrogatories 7, 8, 12 and 21.[10] Interrogatories 7, 8 and 21 seek the identities of "all persons with knowledge" regarding certain publicly-known decisions and events, and Interrogatory 12 seeks the identities of the individuals who made several different decisions regarding the WebHouse warrants. Defendants have objected to those interrogatories as overly broad and unduly burdensome, and Defendants believe that their answers have fully met the substance of plaintiffs' inquiries. For those interrogatories, Defendants have restricted their responses to persons "primarily familiar with" or "primarily involved in" the matters

---

factual basis for plaintiffs' class-certification-related assertions would be if not in plaintiffs' motion for class certification or while that motion is still pending.

[10] Plaintiffs discuss Interrogatory 7, Interrogatory 21 and Defendants' "primarily involved" limitation (as to Interrogatories 7, 8 and 12) in three separate sections of their brief. (Pltf. Br. at 13-15.) But plaintiffs' complaint in all three sections is the same, so Defendants address the sections together.

-13-

at issue. Plaintiffs insist that they are entitled to "listings of all persons, known to [Defendants]" regarding the various matters.[11] (Pltf. Br. at 14 (emphasis in original).)

There is no qualification to the knowledge element of those interrogatories: Plaintiffs are asking for the names of persons with any knowledge—whether or not that knowledge is distant, partial, tangential or remote. Further, the subject matters of those interrogatories are publicly-known events and decisions. We believe that all or virtually all of priceline's employees during the proposed class period had at least some knowledge of those events and decisions. Therefore, instead of dumping on plaintiffs a long, useless list of names, we provided plaintiffs with the names of the persons whom we believe are most knowledgeable about the matters at issue. In the June 3 letter, Defendants explained the meaning and scope of the "primarily" restrictions as follows:

> "In general, we provided the names of the heads of departments who were involved with the various subject matters of the applicable interrogatories. We did not include all of the employees who worked for those persons on the various subject matters unless such employees played an especially integral role in such matters." (June 3 letter at ¶ 8.)

Defendants believe that their responses are entirely reasonable, especially in light of the number of plaintiffs' discovery demands and the amount of information

---

[11] This issue also arises in Defendants' responses to certain other interrogatories. However, plaintiffs have not identified those other interrogatory responses. Therefore, to the extent that plaintiffs are attempting to challenge any other interrogatory responses on this basis, that attempt should be denied. Plaintiffs must specifically identify the interrogatory responses for which they are seeking to compel discovery; blanket requests for compelled discovery are not appropriate. See Trustmark Ins. Co. v. Schuchman, No. 99-1081 C T/K, 2003 WL 21277200, at * 6 (S.D. Ind. June 2, 2003) ("Trustmark's failure to specify which interrogatory response . . . is deficient results in a summary denial of its motion to compel", as "[t]he Court simply will not engage in this subjective task or craft Trustmark's argument in this respect"); Arons v. Lalime, 167 F.R.D. 364, 368 (W.D.N.Y. 1996) (referring to an earlier order denying plaintiffs' motion to compel, in part because the motion "failed to identify with specificity the discovery requests and responses at issue").

sought.[12]  See Fed. R. Civ. P. 26(b)(2); Young v. Liberty Mut. Ins. Co., No. 3:96-CV-

1189 (EBB), 1999 WL 301688, at *6 (D. Conn. Feb. 16, 1999) (Burns, J.) ("Rule

26(b)(2) requires courts to balance the burden and expense of proposed discovery against

its likely benefit, and to issue any appropriate limiting orders.").  Plaintiffs now have the

names of the persons primarily familiar with the various matters at issue, and they have

the opportunity to seek additional information through document discovery and

depositions.  In their brief, they have offered no explanation as to why the names

provided pursuant to the "primarily" restrictions are not enough at this stage.  Their

statement that they "are not requesting that Defendants take a worldwide census" (Pltf.

Br. at 14) misses the point and, frankly, highlights plaintiffs' disregard for the burden of

their sweeping discovery demands.  It appears that plaintiffs do in fact want Defendants

to conduct a census of every person who is currently working or used to work at

priceline, and Defendants believe that such a request is unreasonable and unduly

burdensome.

    Plaintiffs cite Moore U.S.A. Inc. v. The Standard Register Co., No. 98-

CV-485C(F), 2000 WL 876884 (W.D.N.Y. May 26, 2000) and Pueblo of Sandia v.

United States, 50 F.3d 856 (10th Cir. 1995), purportedly for the proposition that

"Defendants should be ordered to provide complete listings of all persons, known to

them, who were involved in the matters that Plaintiffs have inquired".  (Pltf. Br. at 14

(emphasis in original).)  Yet again, the cases plaintiffs rely upon do not support the

proposition for which they are cited.  The relevant interrogatory discussed by the court in

_____

[12] Defendants have now produced 172,785 pages of documents in response to
plaintiffs' 76 document requests and have responded to plaintiffs' 71 interrogatories.

<u>Moore</u> asked plaintiff "for the identities of each person who was <u>involved in</u> the negotiation and consummation of [certain licensing] agreements". 2000 WL 876884, at *5 (emphasis in original). In response, the plaintiff claimed that the licensing agreements themselves revealed the identities of the persons who signed the documents. <u>Id.</u> The court deemed that response insufficient because "[i]n all likelihood, it was not just the signatories of the agreements who were involved in the negotiation and consummation of those agreements". <u>Id.</u> The request in <u>Moore</u> for the identities of the persons <u>involved in</u> the negotiation and consummation of certain agreements is plainly narrower than the requests here for the identities of all persons <u>with any knowledge</u> regarding publicly-known decisions and events. Indeed, Defendants' identification of persons "primarily familiar with" and "primarily involved in" various matters is essentially the equivalent of the type of response that the court ordered in <u>Moore</u> and certainly goes well beyond the type of response that the <u>Moore</u> court found deficient.

       Plaintiffs' citation to <u>Pueblo</u> is even more inapposite. That decision has nothing at all to do with discovery. In <u>Pueblo</u>, the plaintiff complained that the National Forest Service had failed to comply with the National Historic Preservation Act (NHPA) in its evaluation whether a certain canyon was a "traditional cultural property". 50 F.3d at 857. The court concluded that the Forest Service had not made a "reasonable and good faith effort to identify historic properties" in the canyon, as required by the NHPA. <u>Id.</u>

       Interrogatories 7, 8, 12 and 21 and Defendants' corresponding responses are summarized below.

       Interrogatory 7 asks Defendants to "[i]dentify all persons with knowledge concerning the decision to recognize the value of the WebHouse warrants at $188.8

-16-

million as income in the 4th Quarter of 1999". That decision was public information. Accordingly, Defendants identified six persons who were "primarily familiar" with the decision and also identified Deloitte & Touche LLP as familiar with the decision. (See also June 3 Letter at ¶ 7.) As we stated above, rather than give plaintiffs a lengthy list of names, we gave them the names of the persons whom we believe are most knowledgeable about the relevant decision. Without the "primarily" restriction, Defendants would probably end up identifying all or most of the employees who worked for the persons already identified pursuant to the "primarily" restriction. In many cases, that would probably involve identifying entire departments.

Similarly, Interrogatory 8 asks Defendants to "[i]dentify all persons with knowledge concerning the decision to write off the WebHouse Warrants and take a one-time charge of $188.8 million in the 3rd Quarter of 2000". Again, that decision was public information. Therefore, Defendants identified eight persons who were "primarily familiar" with the decision and also identified Deloitte & Touche LLP as familiar with the decision.

Interrogatory 12 essentially seeks the identities of the individuals "who made" the decisions referred to in Interrogatories 7 and 8. In response, Defendants stated that "numerous individuals were involved in the decision-making process for each of the decisions described in [Interrogatory 12]" and then identified eight persons who were "primarily involved" in those decisions. The individuals we identified are the persons who made the decisions described in the interrogatory. We are not seeking to hide anything. There may have been other persons who were peripherally involved in those decisions, but the decision-makers have been identified.

-17-

Interrogatory 21 asks Defendants to "[i]dentify all persons with knowledge about the launch of hotwire.com". Hotwire.com was an independent company and its launch was publicly-known. As Defendants explained to plaintiffs, Defendants believe that most of the employees of priceline probably had knowledge about the launch of hotwire.com. (June 3 Letter at ¶ 11.) It would be unduly burdensome for Defendants to undertake an investigation of priceline's current and former personnel to confirm which persons actually had such knowledge. Defendants told plaintiffs that a helpful clarification of the interrogatory would limit the request to "priceline's officers or directors" or a similarly contained group of persons. (Id.) Plaintiffs, however, have not offered any such clarification.

## F.     Interrogatories 22, 23 and 24

Interrogatory 22 seeks the identities of "any insurer or other third party that has reviewed and/or investigated the claims asserted in this Action".

Interrogatory 23 states: "If any insurer or other third party has reviewed and/or investigated the claims asserted in this Action, identify all persons knowledgeable concerning any such review and/or investigation."

Interrogatory 24 states: "If any insurer or other third party has reviewed and/or investigated the claims asserted in this Action, identify the persons with whom the insurer or other third party has communicated and/or interviewed as part of the review or investigation."

Defendants objected to each of those interrogatories on several grounds, including relevance. Accordingly, plaintiffs must demonstrate that their requests are within the scope of Fed. R. Civ. P. 26(b)(1). Andritz Sprout-Bauer, Inc., 174 F.R.D. at

-18-

631. Plaintiffs, however, have not even attempted to explain the relevance of the information they seek in those interrogatories.

Nonetheless, Defendants did in fact answer those interrogatories. In response to each of them, Defendants stated: "[P]riceline has insurers and has apprised those insurers of the claims in this action. Defendants have already provided plaintiffs with the relevant insurance policies. Defendants have neither knowledge nor information regarding any action that has been taken by any insurer beyond communications with Defendants' counsel." Defendants do not know what else to say in response to those interrogatories. Once again, plaintiffs did not bring Defendants' answer to the Court's attention.

G.    **Interrogatories 19 and 20**

Interrogatory 19 requests that Defendants "[i]dentify all manufacturers, wholesalers, retailers or any other sponsoring parties who participated in the WebHouse website and, as to each entity, identify all persons with knowledge concerning such participation".

In response, Defendants stated, on information and belief, that:

"1.     WebHouse established relationships with numerous manufacturers for the provision of groceries through the WebHouse service, which may have included (but many not have been limited to) those listed in Exhibit A to Defendants' Responses and Objections to Lead Plaintiffs' First Set of Interrogatories;

2.     WebHouse established relationships with numerous grocery retailers for the fulfillment of grocery purchases made through WebHouse, which may have included (but may not have been limited to) those listed in Exhibit B to Defendants' Responses and Objections to Lead Plaintiffs' First Set of Interrogatories;

3.     WebHouse established relationships with numerous gas stations for the provision of gasoline purchases made through the WebHouse service, which may have included (but may not have been limited to)

-19-

stations affiliated with the companies listed in Exhibit C to Defendants'
Responses and Objections to Lead Plaintiffs' First Set of Interrogatories;
and

4.    WebHouse established relationships with numerous partners for
the marketing and promotion of the WebHouse service, which may have
included (but may not have been limited to) those listed in Exhibit D to
Defendants' Responses and Objections to Lead Plaintiffs' First Set of
Interrogatories.

5.    Individuals who were primarily familiar with the relationships
described in 1-4 above may have included (but may not have been limited
to):

      1.    Peter Burgess

      2.    T. Scott Case

      3.    Charles Castaneda

      4.    Paul Francis

      5.    Steve Mott

      6.    Robert J. Mylod

      7.    Jonathan Otto

      8.    Jose Suarez

      9.    Robert Voss

      10.    Jay S. Walker"  (emphasis added.)

The four exhibits referenced in Defendants' response contain the names of hundreds of

grocery manufacturers, grocery retailers, gas stations, and marketing/promotion partners

with whom WebHouse established relationships.[13]

In their brief, plaintiffs say that Interrogatory 19 "seek[s] to have

Defendants identity those entities who actually had a relationship with Priceline's

_____

[13] The relevant portions of and exhibits to Lead Plaintiffs' First Set of Interrogatories
Directed At All Defendants are attached as Exhibit G to the Kelleher Decl.

subsidiary, WebHouse, and who Defendants' listed in their prior responses". (Pltf. Br. at

16.) Inexplicably, they say that "Defendants have refused to do so". (Id.) As the quoted

excerpt above indicates, Defendants have indeed identified entities who had a

relationship with WebHouse. In fact, as indicated in the response to Interrogatory 19,

Defendants had already identified those entities in response to Interrogatory 16 of Lead

Plaintiffs' First Set of Interrogatories Directed At All Defendants.

Because Interrogatory 19 seeks information regarding WebHouse,

Defendants added the "may have included (but may not have been limited to)" caveat to

indicate that the information provided might not be exhaustive. To the extent that

plaintiffs are complaining about that caveat, they are attempting to relitigate an issue that

the Court has already adjudicated. As the Court may recall, in plaintiffs' first motion to

compel, they complained that Defendants did not provide exhaustive lists of information

in response to certain interrogatories regarding WebHouse, including Interrogatory 16.

Defendants explained that they had provided plaintiffs with all the information that they

could obtain based on reasonable inquiries, but that they could not speak definitively or

exhaustively regarding the conduct of another company. That is also the case here.

In its Memorandum of Decision and Order on plaintiffs' motion to

compel, dated June 7, 2005 (the "June 7 Order II"), the Court ordered Defendants to "file

an affidavit stating that they have provided the most complete response possible and that

they have attempted unsuccessfully in good faith to locate records that would allow a

more complete response". (June 7 Order II at 5.) In their brief, plaintiffs acknowledge

that "[i]n ruling on Plaintiffs' previous Motion to Compel, the court required Defendants

to provide an affidavit describing their efforts and ability to respond more completely to

-21-

such requests". (Pltf. Br. at 16.) Plaintiffs received the relevant affidavit from Defendants on July 11.[14] Despite receiving that affidavit, plaintiffs filed their motion to compel on July 14 and raised the same issue already addressed by the affidavit.

Plaintiffs include Interrogatory 20 along with Interrogatory 19 in section 9 of their brief. However, Interrogatory 20 has nothing at all to do with the complaints and arguments made in section 9.[15] (See Pltf. Br. at 15-16.) Accordingly, we do not believe that plaintiffs have properly moved with respect to Interrogatory 20, and it appears to have been included mistakenly.

### Conclusion

Defendants respectfully request that the Court deny plaintiffs' motion to compel discovery from Defendants. Moreover, given that plaintiffs have misrepresented or ignored our clarifications and explanations and have thus described disputes that we do not believe exist, we do not think that plaintiffs' motion was "substantially justified". Fed. R. Civ. P. 37(a)(4)(B). Accordingly, we also respectfully request that the Court require plaintiffs' counsel to pay Defendants the reasonable costs incurred in responding to the motion, including attorneys' fees. Id.

September 2, 2005

---

[14] Email from James G. Hein, Jr. to Erin Comite, dated July 11, 2005, attached as Exhibit H to the Kelleher Decl.; Affidavit of James G. Hein, Jr., dated July 11, 2005, attached as Exhibit I to the Kelleher Decl.

[15] Interrogatory 20 requests that Defendants "[d]escribe in detail any and all problems experienced with the Priceline and WebHouse computer systems and websites during the Class Period and identify all persons with knowledge concerning such problems".

DEFENDANTS PRICELINE.COM INC.,
N.J. NICHOLAS,
DANIEL SCHULMAN AND
RICHARD S. BRADDOCK

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com


Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was served this 2nd day of September, 2005 via first class mail to the following counsel of record:

| Co-Lead Counsel | Liaison Counsel |
|---|---|
| David R. Scott, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:  860-537-3818<br>Fax:  860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:  212-687-7230<br>Fax:  212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Johnson & Perkinson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:  802-862-0030<br>Fax:  802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin  S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT  06103-3202<br>Tel:  860-493-6292<br>Fax:  860-493-6290 |

| | |
|---|---|
| **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT 06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 | **Attorneys for Defendant Jay S. Walker**<br><br>J. Allen Maines, Esq.<br>Carl Mullis, III, Esq.<br>Summer B. Joseph, Esq.<br>Laura Berg, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA 30308<br>Tel: 404-815-2400<br>Fax: 404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>PAUL, HASTINGS, JANOFSKY & WALKER, LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone: 203-961-7400<br>Fax: 203-359-3031 |
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | |

William J. Kelleher, III