UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : | |
| _____ | : : | MASTER FILE NO. 3:00CV01844(DJS) |
| This document relates to: | : : | September 2, 2005 |
| ALL ACTIONS | : : : | |

PROPOSED CLASS REPRESENTATIVES' REPLY IN FURTHER SUPPORT
OF THEIR MOTION FOR CLASS CERTIFICATION

SCOTT + SCOTT, LLC
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

`

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.    THE CLASS REPRESENTATIVES ARE ADEQUATE AND TYPICAL ........................ 2

      A.    The Class Representatives' Claims Are Typical Of Those Of The Class .................. 2

      B.    The Proposed Class Representatives Are Adequate ...................................................... 4

      C.    The Cases That Defendants Rely On Are Easily Distinguished ................................. 6

II.   DEFENDANTS FAIL TO RAISE ANY LEGITIMATE BASIS
      FOR DISQUALIFYING ANY OF THE PROPOSED CLASS
      REPRESENTATIVES ........................................................................................................... 8

      A.    Warren Ross's Reliance On A Friend Does Not Make Him Atypical ...................... 8

      B.    Defendants' Attack On Thomas Linton Lacks Merit .............................................. 10

            1.    Thomas Linton Is A Credible Representative ................................................ 10

            2.    Thomas Linton Is Not Subject To Unique Defenses .................................... 12

      C.    John Anderson Is Qualified To Serve As A Class Representative ......................... 13

      D.    Ms. Egel and Mr. Weiss Are Qualified To Serve As Class Representatives .......... 15

      E.    The Leisinger Pension Fund Is Qualified To Serve As
            A Class Representative ......................................................................................... 17

III.  DEFENDANTS' ATTEMPT TO REDEFINE THE CLASS IS A
      MERITS BASED ARGUMENT THAT IS INAPPROPRIATE
      FOR CLASS CERTIFICATION ..................................................................................... 19

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

## FEDERAL CASES

*In re American Medical System, Inc.*, 75 F.3d 1069 (6th Cir. 1996) .............................. 6, 7

*Andrada v. Atherogenics, Inc.,* 2005 WL. 912359 (S.D.N.Y. April 19, 2005)................ 17

*In re Arakis Energy Corp. Sec. Lit.*, 1999 WL. 1021819 (E.D.N.Y. April 27, 1999)....... 16

*Buffa v. DLJ Sec. Corp.,* 222 F.3d 52 (2d Cir. 2000)........................................................ 20

*Cook v. Rockwell Intern. Corp.*, 151 F.R.D. 378 (D.Colo. 1993)........................................ 4

*Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001)............................. 14, 15

*Deutschman v. Beneficial Corp.,* 132 F.R.D. 359 (D.Del. 1990)....................................... 17

*Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 627 (2005) .................................................. 19, 20

*In re Energy System Equip. Leasing Sec. Litigation*, 642 F. Supp. 718 (E.D.N.Y. 1986).................................................................................................................................. 3

*Fogarazzo v. Lehman Brothers, Inc.,* 2005 WL. 1802851 (S.D.N.Y. July 29, 2005)....... 20

*In re Frontier Insurance Group, Inc. Sec. Litigation*, 172 F.R.D. 31 (S.D.N.Y.1997) .... 11

*Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397 (D. Conn. 1988)............. 1, 2, 3, 6, 8

*Gary Plastic Packaging Corp. v. Merrill*, 903 F.2d 176 (1990) ........................................ 1

*General Telegraph Co. v. Falcon*, 457 U.S. 147 (1982).................................................... 2

*Hoffman Electric V. Emerson Electric*, 754 F. Supp. 1070 (W.D. Pa. 1991) ................... 4

*In Re IPO Securities Litigation*, 227 F.R.D. 65 (S.D.N.Y. 2004)) ............................. 11, 12

*In re Independent Energy Sec. Litigation*, 210 F.R.D. 476 (S.D.N.Y. 2002) .............. 9, 10

*Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200 (N.D.Tex. 1997).............................. 11

*Kallus v. General Hospital Corp.,* 1988 WL 124074 (D. Conn. 1988) ............................ 12

*Koppel v. 4987 Corp.*, 191 F.R.D. 360 (S.D.N.Y. 2000) .................................. 6, 11, 13, 14

*Kronfeld v. TransWorld Airlines, Inc.,* 104 F.R.D. 50 (S.D.N.Y. 1987) ........................... 9

*Landry v. Price Waterhouse Chartered Accounts*, 123 F.R.D. 474 (S.D.N.Y. 1989) .. 9, 10

*Locaro v. Chicago Committee Corp.*, 1990 WL. 74250 (E.D. Pa. May 31, 1990).............7

*Margolis v. Caterpillar*, 815 F.Supp. 1150, 1154 (N.D.Ill. 1991) .................................... 17

*Marisol A. v. Guilani*, 126 F.3d 372 (2d Cir 1997) ......................................................... 16

*Markewich v. Ersek*, 98 F.R.D. 9 (S.D.N.Y. 1982) ............................................................. 9

*Moskowitz v. Lopp*, 128 F.R.D. 624 (E.D. Pa. 1989) ......................................................... 17

*In re Neopharm, Inc. Sec. Litigation*, 225 F.R.D. 563 (N.D. Ill. 2004) ............................ 18

*In re Nortel Networks Corp. Sec. Lit.*, 2003 WL. 22077464 (S.D.N.Y. Sept. 8, 2003).... 16

*In re Oxford Health Plans, Inc. Sec. Lit.*, 199 F.R.D. 119 (S.D.N.Y. 2001) .............. 16, 17

*In re PE Corp. Sec. Litigation,* 228 F.R.D. 102 (D. Conn. 2005)..................... 1, 2, 4, 5, 13

*Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981).................................................................... 12

*Prostic v. Xerox Corp.*, 1991 WL. 206770 (D. Conn. July 19, 1991)............. 3, 4, 9, 18, 19

*In re Resource America Sec. Litigation*, 202 F.R.D. 177 (E.D. Pa. 2001)....................... 14

*Retsky Family Ltd. Partnership*, 1999 WL. 543209 (N.D. Ill. July 23, 1999)................. 18

*Saddle Rock Partners v. Hiatt*, 2000 WL. 1182793 (S.D.N.Y. Aug. 21, 2000) .............. 11

*Stevelman v. Alias Research, Inc.,* 2000 WL. 888385 (D. Conn. June 22, 2000)... 2, 3, 4, 9

*In re THQ, Inc. Sec. Litigation*, No. CV 00-1783, 2002 WL. 1832145 (C.D. Cal. Mar. 22, 2002) ..................................................................................................................... 11

*Shamberg v. Ahlstrom,* 111 F.R.D. 689 (D.N.J. 1986) ........................................................ 4

*Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003).................................. 5

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) ..................................................... 13

*Trautz v. Weisman*, 846 F. Supp. 1160 (S.D.N.Y. 1994) ..................................................... 4

*Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377 (D.N.J. 1998) .............................. 17

*Welling v. Alexy*, 155 F.R.D. 654 (N.D.Cal. 1994) ........................................................... 17

*West v. First Penn.*, 1991 WL. 17807 (E.D. Pa. Feb. 12, 1991) .........................................7

*In re WorldCom, Inc. Sec. Litigation,* 219 F.R.D. 267 (S.D.N.Y. 2003) .........................18

*Zemel Family Trust v. Philips International Realty Corp.*, 205 F.R.D. 434 (S.D.N.Y. 2002).............................................................................................................................12

## FEDERAL STATUTES

Fed.R.Civ.P. 23(a)(4) ......................................................................................................12

# INTRODUCTION

Defendants' opposition claims that the six proposed class representatives in this case are not typical and adequate representatives of the class. Defendants do not contest any of the other requirements for class certification. Accordingly, Plaintiffs limit their reply to the Defendants' arguments on *adequacy* and *typicality* – *the only class certification criteria at issue in this case*.

Defendants open their opposition with a novel procedural challenge. Defendants claim that the Court can deny Plaintiffs' motion without considering the evidence in the record because Plaintiffs supposedly have not provided facts to show that the six proposed class representatives are typical and adequate representatives. Defendants' procedural objection turns the class certification standard on its head. Indeed, the Supreme Court and the Second Circuit have repeatedly emphasized that "[i]n light of the importance of the class action device in securities fraud suits," the factors set forth in Rule 23 "are to be *construed liberally*." *Gary Plastic Packaging Corp. v. Merrill,* 903 F.2d 176, 179 (1990) (emphasis added); *see also In re PE Corp. Sec. Litig.,* 228 F.R.D. 102, 106 (D. Conn. 2005) ("It is well recognized that class actions are a particularly appropriate means for resolving securities fraud actions."). In fact, courts in this circuit have emphasized: "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Id.* at 106 (citing cases).

Importantly, there is no merit to Defendants' argument because Plaintiffs have satisfied both the typicality and adequacy requirements. As to typicality, a class representative need only show that the representative's claims: (1) arise from the same event, practice or course of conduct that gives rise to claims of other class members; and (2) are based on the same legal theory. *Garfinkel v. Memory Metals, Inc.,* 695 F. Supp. 1397, 1404 (D. Conn. 1988). This inquiry focuses on "the nature of the claim of the class representative, and not on the specific facts from which the claim arose or relief was sought." *Id.* This requirement is satisfied when, as is the case here: "*plaintiffs allege*

1

*that they purchased [company] stock at a price artificially inflated by the defendants' material misstatements and omissions.*" *Id.* (emphasis added). Because Plaintiffs' claims focus on Defendants' class-wide misrepresentations, the typicality requirement is unquestionably satisfied.

Plaintiffs also satisfy Rule 23's adequacy requirement. "In the Second Circuit, adequacy of representation involves inquiry as to whether: 1) the plaintiff's interests are antagonistic to the interests of the other members of the class and 2) the plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *PE Corp.,* 228 F.R.D. at 109. Here, Defendants do not challenge the adequacy of lead counsel. Nor are the interests of the class representatives antagonistic to the interests of the class. Each of the six class representatives purchased Priceline securities on the open market and has been damaged by Defendants' misrepresentations, and thus, they each has a strong incentive to prove the securities fraud claims in this case.

## I.    THE CLASS REPRESENTATIVES ARE ADEQUATE AND TYPICAL.

Defendants argue at the beginning of their opposition that the Court should deny the class certification motion without considering any of the evidence in the record. Doc. 191-1 at 4-7. In making this argument, Defendants misstate the standard for establishing typicality and adequacy.[1] Defendants also misconstrue the evidence in the record.

### A.    The Class Representatives' Claims Are Typical Of Those Of The Class.

To establish typicality under Rule 23(a)(3), a proposed class representative need only show that the representative's claims: (1) "*arise from the same event or practice or course of conduct that gives rise to claims of other class members*," and (2) "*are based on the same legal theory*." *Garfinkel,* 695 F. Supp. at 1404 (emphasis added); *see also Stevelman v. Alias Research, Inc.,* 2000

---

[1] Defendants suggest this Court should apply a "rigorous" standard on class certification, citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 160 (1982). The *Falcon* Court's statement that a district court must conduct a "rigorous analysis" does not mean that the standard itself is onerous. Instead, the Court merely noted that: "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Id.* The Court went on to explain that, in other instances, a district court will need to look to the *full* factual record. *Id.*

WL 888385, at *2 (D. Conn. June 22, 2000) (same); *Prostic v. Xerox Corp.,* 1991 WL 206770, at

*2 (D. Conn. July 19, 1991) (same).  The typicality inquiry necessarily focuses on "the ***nature of***

***the claim of the class representative, and not on the specific facts from which the claim arose or***

***relief was sought***."  *Garfinkel,* 695 F. Supp. at 1404 (emphasis added) (quotation omitted); *see also*

*Xerox,* 1991 WL 206770, at *2; *Alias,* 2000 WL 888385, at *2.

    The typicality standard is easily satisfied in a case such as this involving securities fraud be-

cause the nature of the class representatives' claims involve the same course of conduct and legal

theories as the claims of the overall class.  *See, e.g., Garfinkel,* 695 F. Supp. at 1404; *Xerox,* 1991

WL 206770, at *2; *Alias,* 2000 WL 888385, at *2; *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642

F. Supp. 718, 750 (E.D.N.Y. 1986) (finding typicality where the complaint "describes a situation,

confirmed by the deposition testimony of the various class representatives, in which investors relied

upon and were purportedly misled by misrepresentation and omissions contained in standardized

and virtually identical offering materials").  Logically, in order for the alleged fraud to occur, De-

fendants' conduct would have to be uniform and therefore each investor's claim would necessarily

be typical of every other investor who was also misled.

    This point was emphasized in *Garfinkel*, a case decided in this District.  There, plaintiffs

brought a securities fraud suit in which they alleged that defendants made a series of false state-

ments about a publicly traded security.  *Garfinkel,* 695 F. Supp. at 1404-05.  Defendants argued on

class certification that plaintiffs had failed to satisfy their burden of establishing typicality.  *Id.*

Judge Eginton, looking to the allegations in the securities complaint, rejected this argument:

> In the instant case, the ***plaintiffs allege that they purchased Memory***
> ***Metals stock at a price artificially inflated by the defendants' mate-***
> ***rial misstatements and omissions***.  As Chief Judge Daly found in a
> similar case:  "***To the extent that all purchasers throughout the class***
> ***period share a common interest in proving plaintiffs' allegation[s],***
> ***this is sufficient to make the claims of the class representatives typi-***
> ***cal of those of the class members***."

*Id.* at 1397 (quotation omitted) (emphasis added).

Similar results were reached in three other securities fraud cases in this District – *Alias, Xerox,* and *PE Corp.* Plaintiffs in each of these cases alleged that the defendants made several materially misleading statements, causing damage to the plaintiffs and the other class members who purchased the securities during the class period. The court in each of these cases concluded that these allegations were sufficient to satisfy Rule 23's typicality requirement. *Xerox,* 1991 WL 206770, at *4 (finding the typicality requirement was satisfied because the complaint alleged that defendants made materially misleading statements that artificially inflated the price of company stock); *PE Corp.,* 228 F.R.D. at 108 (same); *Alias,* 2000 WL 888385, at *4 (same).

In the present case, Defendants do not dispute that each of the proposed class representatives purchased Priceline securities during the Class Period. Moreover, Plaintiffs have alleged that Defendants made several materially misleading statements about Priceline securities during the Class Period. Am. Compl. ¶¶ 97-149. Defendants' misleading statements damaged both the proposed class representatives and the overall class and are the basis for each of the proposed class representative's claims. Finally, there is no question – and Defendants do not challenge – that both the proposed class representatives and the overall class seek relief under the federal securities laws. *Id.* ¶¶ 199-221. Thus, the proposed class representatives' claims are typical of the claims of the overall class.

### B.    The Proposed Class Representatives Are Adequate.

Defendants also claim that class certification should be summarily denied because Plaintiffs supposedly have not shown that the proposed class representatives are adequate.[2] "In the Second

---

[2] Defendants claim that Plaintiffs have failed to satisfy their "burden" of showing that the class representatives are adequate. However, adequacy is generally presumed at the certification stage (*see Cook v. Rockwell Intern. Corp.,* 151 F.R.D. 378, 386 (D. Colo. 1993) (quoting 2 Robert Newberg, *Newberg on Class Actions,* §7.24 at 7-80 to -81 (3d ed. 1992)) and several courts have held that the burden is on the Defendants to show that the proposed class representatives are "inadequate." *See, e.g., Trautz v. Weisman,* 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994) ("Defendants bear the burden of proving that representation will be inadequate."); *Shamberg v. Ahlstrom,* 111 F.R.D. 689, 693 (D.N.J. 1986)

4

Circuit, adequacy of representation involves inquiry as to whether: 1) *the plaintiff's interests are antagonistic to the interests of the other members of the class* and 2) *the plaintiff's attorneys are qualified, experienced and able to conduct the litigation*." *PE Corp.,* 228 F.R.D. at 109 (emphasis added); *see also Spann v. AOL Time Warner, Inc.,* 219 F.R.D. 307, 320 (S.D.N.Y. 2003) ("The adequacy criteria tend to merge with the commonality and typicality requirements, although courts chiefly inquire whether the named plaintiffs' interests are antagonistic to those of the class, and whether class counsel are competent"). Here, Defendants incorrectly claim that Plaintiffs have failed to demonstrate that no conflict exists.

In assessing whether a conflict actually exists, courts in this conduct an analysis of whether "[t]he named plaintiffs' interests are aligned with absent class members." *PE Corp.,* 228 F.R.D. at 109. For example, in *Xerox,* Judge Burns held that the adequacy prong of the class certification test was easily satisfied "[w]here, as here, *a series of misrepresentations are alleged to have been made in furtherance of a single fraudulent scheme, class certification is appropriate*." (emphasis added). The court explained:

> In such situations, the class *plaintiff is often given the benefit of any doubt that he will have sufficient incentive to prove the claims of after acquiring shareholders since the proof required to show similar acts of wrongdoing is not so different from that required to prove his own claim*.

*Id.* (quotation omitted) (emphasis added). The court went on: "Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, *courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions*." (Emphasis added).

---

("The burden is on the defendants to prove that plaintiffs' representatives will be inadequate."); *Hoffman Elec. v. Emerson Elec.,* 754 F. Supp. 1070, 1076 (W.D. Pa. 1991) (same).

In the present case, the interests of the proposed class representatives are closely aligned with those of the absent class. For example, the proposed class representatives, like the absent class members, purchased Priceline securities during the Class Period at prices that were artificially inflated due to Defendants' material misrepresentations, and suffered losses as a result thereof and the Proposed Class Representatives' claims are based upon the same facts and legal theories as the rest of the class. All members of the class allege claims arising from the same wrongful conduct and are based on the same legal theories as the Class advanced by the proposed class representatives. Am. Compl. ¶¶ 97-149; 199-221. Thus, as the proposed class representatives advance evidence to prove their claims, their effort will simultaneously advance the interests of the class. Because the interests of the proposed class representatives are closely aligned with those of the overall class, Defendants' adequacy argument is easily dismissed.[3]

### C.    The Cases Defendants Rely On Are Easily Distinguished.

Defendants rely on three cases in their opposition brief for the proposition that this Court can deny the class certification motion as a matter of course. None of these cases is controlling and they all are easily distinguished. The first case Defendants cite – *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1078-79 (6th Cir. 1996) – is a class action the Sixth Circuit characterized as involving "extreme and limited facts." *Id.* at 1090. There, plaintiffs brought a product liability action against a penile implant manufacturer, alleging that several of the manufacturer's products were defective. The district court granted class certification without allowing the defendants to take any class discovery, and the Sixth Circuit reversed.

---

[3] Tellingly, Defendants fail to show any conflicting interests between the class representatives and the class members. Instead, Defendants resort to claiming that certain of the class representatives are inadequate because they supposedly lack detailed knowledge of the case. This fact alone should lead the Court to reject Defendants' adequacy argument. *See, e.g., Garfinkel,* 695 F. Supp. at 1405 (rejecting Defendants' adequacy argument because "[i]n the present case, the defendants have not specified any conflicting interests between the plaintiffs and the unnamed class members"); *see also Koppel v. 4987 Corp.,* 191 F.R.D. 360, 369 (S.D.N.Y. 2000) ("[I]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate.").

The Sixth Circuit held that the district court should have allowed the defendants to take class discovery because it was not clear from the pleadings themselves that the plaintiffs' claims were typical of those of the absent class.  The court explained:  "*[W]e know from the amended complaint that each plaintiff used a different model, and each experienced a distinct difficulty .... These allegations fail to establish a claim typical to each other, let alone a class*."  *Id.* at 108 (emphasis added).  The court went on: "[I]t should have been obvious to the district judge that [he] needed to 'probe behind the pleadings' before concluding that the typicality requirement was met."  *Id.* at 1082.  The court concluded: "[W]e find that the district judge's total disregard of the requirements of Rule 23 in this case, and his similar ruling in other medical products liability actions, warrant [decertification] on these extreme and limited facts."  *Id.* at 1090.[4]

The "extreme and limited" facts at issue in *American Medical* and Defendants' other cases are a far cry from the class certification issues here.  Most significantly, Defendants have presented no evidence whatsoever to show that the nature of the class representatives' securities fraud claims differ from the claims of the overall class.  Unlike *American Medical*, this is not a case where the plaintiffs have asserted claims that are "very different" from those of the overall class.  Moreover, unlike *American Medical*, the Defendants have been given an extensive opportunity to take class discovery and have presented no valid basis to challenge the proposed class representatives' typicality and adequacy.[5]  Accordingly, this Court should grant Plaintiffs' class certification motion in its entirety.

---

[4] Defendants also cite *West v. First Penn.,* 1991 WL 17807 (E.D. Pa. Feb. 12, 1991) and *Locaro v. Chicago Comm. Corp.,* 1990 WL 74250 (E.D. Pa. May 31, 1990), two unreported cases from the Eastern District of Pennsylvania involving discrimination and broker misconduct claims, respectively.  In both cases, there was no factual record to support class certification.  Moreover, the Defendants in those cases were challenging the numerosity and commonality requirements of Rule 23 – requirements that are not at issue here.   In the present case, the facts on class certification are fully developed and, unlike *West* and *Locaro*, there is more than enough evidence to support class certification.

[5] Ironically, it is the Defendants in the present case who are urging the Court to ignore the full factual record in deciding whether to certify this case as a class action.  Indeed, Defendants claim that Plaintiffs are somehow locked into their opening brief and cannot point to evidence contained in the complete factual record to counter arguments that De-

## II.    DEFENDANTS FAIL TO RAISE ANY LEGITIMATE BASIS FOR <u>DISQUALIFY-ING ANY OF THE PROPOSED CLASS REPRESENTATIVES.</u>

Defendants also argue that each of the six proposed class representatives should be disqualified as representatives for the class.  Defendants claim that:

- Warren Ross should be disqualified because he relied, in part, on a friend in deciding to purchase Priceline stock;

- Thomas Linton should be disqualified because, according to Defendants, he lacks credibility and did not rely on the integrity of the market;

- John Anderson should be disqualified because he supposedly lacks knowledge about the case and is not prepared to serve as a class representative;

- Mark Weiss and Marilyn Egel – who are married and share a joint account – should be disqualified because Ms. Egel is not knowledgeable about the case and Mr. Weiss purchased options to buy and sell Priceline stock in addition to his common stock transactions; and

- The Leisinger Pension Fund should be disqualified because Felix Leisinger – the main beneficiary for the Fund – abdicated all control over the fund to his investment broker and believes that his broker engaged in "illegal stock market transactions." Defendants also challenge Mr. Leisinger's ability and willingness to serve.

To defeat class certification, Defendants must articulate a valid reason for disqualifying *all six* investors who have volunteered to serve as class representatives.  However, a fair reading of the record shows that each one of the six proposed class representatives is qualified to serve.

### A.    <u>Warren Ross's Reliance On A Friend Does Not Make Him Atypical.</u>

Defendants argue that Warren Ross is an atypical representative because he relied, in part, on the advice of a friend when deciding to invest in Priceline stock.  This is the only argument that Defendants have made against Mr. Ross.  Courts in this circuit have repeatedly held that there is nothing wrong with a class representative relying on a third party such as a friend, family member or investment advisor for investment advice.  *See, e.g., Garfinkel,* 695 F. Supp. at 1404-05 ("In sum,

---

fendants make in their opposition brief.  Defendants cite no case law to support their position.  This is not surprising since Defendants' argument runs counter to the Supreme Court's holding in *Falcon*, which directs courts to conduct a "vigorous analysis" and examine the full factual record when deciding whether to certify a class.

reliance on the advice of others does not render plaintiffs atypical class representatives."); *Xerox Corp.,* 1991 WL 206770, at *3 ("Reliance on third parties such as investment counselors or knowledgeable family members is likely to be typical, rather than atypical, of the circumstances under which a substantial number of class members purchased their stock.") (quotation omitted); *Alias Research,* 2000 WL 888385, at 3-4 (same). Indeed, investors rely on third parties for investment advice all the time.

Rather, a class representative who has relied on a third party is atypical only where the third party advisor himself has "***relied upon factors wholly extraneous to the market***." *Xerox Corp.,* 1991 WL 206770, at 83 (quoting *Kronfeld v. TransWorld Airlines, Inc.,* 104 F.R.D. 50, 54 n.8 (S.D.N.Y. 1987)) (emphasis added). The classic example of a third party advisor relying on "factors wholly extraneous to the market" occurs where the third party "received non-public information from corporate officers." *In re Independent Energy Sec. Litig.,* 210 F.R.D. 476, 482 (S.D.N.Y. 2002); *see also Markewich v. Ersek,* 98 F.R.D. 9, 10-11 (S.D.N.Y. 1982) (plaintiff whose decision to purchase stock was based upon a recommendation from a broker privy to inside information held to be an inadequate representative of the class); *Landry v. Price Waterhouse Chartered Accounts,* 123 F.R.D. 474, 476 (S.D.N.Y. 1989) (party who had access to information from corporate director relied on factors wholly extraneous to market).

Defendants claim that Mr. Ross should be excluded for relying on a friend for investment advice, but they do not show that Mr. Ross or his friend relied on factors "wholly extraneous to the market." Instead, Defendants point to a conversation Mr. Ross had with a friend prior to investing in Priceline stock where the friend described Priceline as being "undervalue[ed]." Ross Dep. 65:25-66:20 (Kelleher Dec., Ex. G).[6] Mr. Ross recalled that his friend, who had just purchased shares of

---

[6] Copies of each of the six representatives' deposition transcripts are attached as Exhibits C, G, J, M, N and O to the Declaration of William H. Kelleher, III. *See* Doc. 193-3.

Priceline stock, told him about "the management of the company, the competency of the management of the company." *Id.* at 62:7-19.  After describing the attributes of the company, Mr. Ross and his friend concluded that Priceline stock has the potential to increase in value.  This led Mr. Ross to purchase his shares of Priceline stock.  *Id.* at 57:13-25, 58:2-23, 65:25-66:5.

There is nothing about Mr. Ross' testimony that shows that he or his friend relied on factors wholly extraneous to the market.  Instead, Mr. Ross and his friend both considered the publicly available information on Priceline – factors such as the management of the company and the purchase price – and decided that Priceline was a good buy.  This is the type of behavior that virtually all investors engage in when deciding whether to purchase publicly traded securities.[7]  Indeed, all rational investors look for good value when purchasing securities.  Without any evidence to show that Mr. Ross or his third party advisor relied on factors wholly extraneous to the market, Defendants' challenge must be dismissed.  Mr. Ross, a career public servant dedicated to ensuring regulatory compliance by financial institutions, is an excellent candidate to act as the class' representative and should be certified as a class representative.

### B.    Defendants' Attack On Thomas Linton Lacks Merit.

#### 1.    Thomas Linton Is A Credible Representative.

Next, Defendants argue that Mr. Linton is not a "credible" class representative because, at the beginning of the deposition, he could not recall that he instructed his broker to sell his Priceline shares if they reached $28.25 a share.  This is commonly referred to as a "limit order."  Attacks on a class representative's credibility are rarely appropriate at the class certification stage of a case.  *See, e.g., Independent Energ.*, 210 F.R.D. at 485 ("[S]peculation and generalized attacks on credibility

---

[7] *See, e.g.*, Bruce Greenwald, *Value Investing: From Graham To Buffet And Beyond,* (Wiley & Sons 2004) (explaining that value investing is a common approach used by many successful investors); www.investopedia.com/terms/v/valueinvesting.asp (defining "value investing" as "[t]he strategy of selecting stocks that trade far less than their intrinsic value.  Value investors actively seek stocks of companies with sound financial statements that they believe the market has undervalued.").

are insufficient to defeat class certification."); *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 369 (S.D.N.Y. 2000) ("[I]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate.").

This is especially true when the attacks are based on "minor inconsistencies" and "refreshed recollections" at a deposition. *See In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (S.D.N.Y.1997) (holding that class representative's "imperfect recollection and understanding of her investments do not ... bar her from serving as class representative"); *IPO,* 227 F.R.D. at 98 ("Given the complexity of [securities] actions, minor testimonial inconsistencies and omissions are likely to occur."); *Saddle Rock Partners v. Hiatt*, 2000 WL 1182793, at *5 (S.D.N.Y. Aug. 21, 2000).[8]

Mr. Linton testified at his deposition that he purchased Priceline stock as "a long-term hold." Linton Dep. 33: 6-10 (Kelleher Dec., Ex. J). Throughout the first part of the deposition, Mr. Linton did not recall the limit order that he placed on Priceline stock. Defendants then showed Mr. Linton his trading records and directed his attention to the shorthand notation in his trading records evidencing the limit order. Mr. Linton responded: "That, to tell you the truth, I don't know what that is." *Id.* at 17: 6-9. Later in the deposition, defense counsel revisited the topic, asking: "Weren't you instructing your brokerage house to sell the stock for $28.25 whenever it reached that point?" Mr. Linton responded: "[N]ow we understand what that sell meant." *Id.* at 145: 6-21. Mr. Linton then concluded: "I had a sell, looks like I had a sell for $28.25." *Id.*

There is nothing about this testimony that undermines Mr. Linton's credibility. Instead, Mr. Linton's testimony is a classic example of an attorney refreshing a witness's recollection. *See, e.g., Saddle Rock,* 2000 WL 1182793, at *5 (explaining that "the apparent discrepancy between [a pro-

---

[8] *See also In re THQ, Inc. Sec. Litig.*, No. CV 00-1783, 2002 WL 1832145, at *7 (C.D. Cal. Mar. 22, 2002) ("The statements may not be entirely consistent, but any inference that there was some misstatement by [the class representative] clearly does not rise to the level necessary to find he lacks credibility; to the Court it appears that the witness was trying to remember but having difficulty."); *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 210 (N.D. Tex. 1997) (finding that two inconsistent statements in the deposition testimony of a putative class representative were not "so widespread and egregious as to suggest a deliberate attempt to mislead").

posed class representative's] two depositions may be attributable to a refreshed recollection or other explanations and not a plaintiff who lacks credibility" and concluding that the "credibility concern is not severe enough at this stage to warrant denying the motion for certification."). Here, Defendants make ado about nothing because they lack any basis for challenging Mr. Linton.[9]

### 2. **Thomas Linton Is Not Subject To Unique Defenses.**

Defendants also argue that Mr. Linton is somehow subject to unique defenses because he instructed his broker to sell his Priceline shares if they reached $28.25 a share. Defendants claim that Mr. Linton's limit order shows that his "motive in purchasing the stock was extremely short-sighted." Doc. 193-1 at 34. Defendants then claim that this "expectation of a quick profit" subjects Mr. Linton to unique defenses that should lead the Court to disqualify him as a class representative. Tellingly, Defendants cite no authority to support this point. *Id.*

It is well settled that a class representative's investment strategy does not preclude him from serving as a class representative so long as he "[has] the same incentive to prove defendants' liability as all other class members, and [his] presence in a securities case does not create intra-class conflicts." *IPO*, 227 F.R.D. at 108, n.328; *see also Kallus v. General Hospital Corp.,* 1988 WL 124074, at *5 (D. Conn. 1988). Judge Scheindlin made this point clear in the *IPO* case. There, the class representatives were investors who had repeatedly bought and sold shares on the same day. Defendants claimed that these day traders were atypical and would be subjected to unique defenses based on their investment strategy because they bought and sold their shares hoping to make a quick

---

[9] Defendants cite several cases that are not on point. For instance, Defendants rely on *Panzirer v. Wolf*, 663 F.2d 365 (2d Cir.1981), where the Second Circuit affirmed the district court's denial of class certification on the ground that Panzirer's lack of credibility made her an inadequate representative under Fed.R.Civ.P. 23(a)(4) because she "gave no less than four versions of her conversation with her broker" in four separate testimonial settings. 663 F.2d at 368. These facts are materially distinguishable from those at issue here. Defendants' other cases also are similarly factually distinguishable: *See also Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434 (S.D.N.Y. 2002) (class representative was considered atypical because of his lack of honesty and trustworthiness regarding his status in entities engaged in mini-tender offers that were the subject of SEC sanctions).

profit.  The court disagreed, holding that the day traders had the same incentive to prove the securities fraud claims as the overall class and were typical.

Here, Defendants do not claim that Mr. Linton was a day trader.  Instead, they claim that he was hoping to make a quick profit because he instructed his broker to sell his shares if they reached $28.25 a share.  Even if Mr. Linton was hoping to make a "quick profit," it would not make a difference.  Mr. Linton, like all members of the class, relied on the integrity of the market when he purchased his shares of Priceline stock.  He had no reason to believe that Defendants were making materially false statements that artificially inflated the price of Priceline stock.  More importantly, Mr. Linton, like all members of the class, has an incentive to prove that Defendants were engaged in securities fraud.  He purchased his shares during the Class Period, relied on the integrity of the market, and has been damaged by Defendants' false and misleading statements throughout the Class Period.  Nothing about Mr. Linton's limit order alters these important facts.  Thus, Mr. Linton is qualified to serve as a class representative in this case.[10]

### C.     John Anderson Is Qualified To Serve As A Class Representative.

Defendants claim that John Anderson is not an adequate representative because he supposedly lacks detailed knowledge about the case and is unprepared to take an active role in the litigation.  The Supreme Court in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 370-374 (1966), "expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."  *PE Corp.,* 228 F.R.D. at 109 (citing *Surowitz*); *see also Koppel v. 4987 Corp.*, 191 F.R.D. 360, 369 (S.D.N.Y. 2000) ("[I]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate.").

---

[10] Of course, the fact that Mr. Linton had a limit order on his Priceline investment in no way contradicts a desire to hold the stock long-term.  It is common practice for long-term investors to place limit orders on specific stocks that may be subject to volatility to avoid steep declines which sometimes follow sharp increases in stock prices.

Indeed, Judge Droney recently noted in the *PE Corp.* case that: "It is unrealistic to require a class action representative to have an in-depth grasp of the legal theories of recovery behind his or her claim.   It is more important that the representative actively seeks vindication of his or her rights and engages competent counsel to prosecute the claims."  *Id.* (quoting *In re Resource America Sec. Litig.,* 202 F.R.D. 177, 187 (E.D. Pa. 2001); *see also Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 124 (S.D.N.Y. 2001) (finding that class representatives were adequate because they had engaged competent counsel and actively sought to vindicate rights even though they were unable "to describe the legal claims asserted against particular defendants").

As noted above, Defendants do not contest the competency of counsel to prosecute the claims in this case.  Moreover, the deposition testimony shows that Mr. Anderson has a clear understanding of his role as a class representative:

- When Defendants asked Mr. Anderson "What do you understand your role is going to be, if anything, in this case?" Mr. Anderson responded: "I'm just here to watch over the proceedings, so to speak, and to make sure it's a fair settlement to us being the class, if there is any settlement, or if there isn't, just make sure everything is going forward as far as there is no indiscretions or anything like that."  Anderson Dep. 54: 17-24 (Kelleher Dec., Ex. O).
- Defendants repeatedly asked Mr. Anderson whether he expected to receive any financial benefits other than his pro rata share of any recovery.  Mr. Anderson responded: "There is no expectation, no.  I would not get anything else.  Just what – I get what everybody else gets, so to speak, a pro rata share."  *Id.* 71: 24-25; 72: 1-5.
- Mr. Anderson also testified that, to date, he has exchanged several emails about the case with counsel, participated in a conference call with the other class representatives, reviewed interrogatory responses and searched for documents, and traveled from his home in Los Angeles to New York for his deposition.  *Id.* 65: 16-17.  He also stated that he understood that he could be called on to travel to Connecticut to testify at the trial in this case.  72: 24-25; 73: 1-3.

Moreover, the transcript shows that Mr. Anderson is actively seeking to vindicate his rights and has sufficient knowledge of the case for a non-lawyer:

- For instance, when Defendants asked: "Why are you doing this?  Why do you want to be a class representative?"  Mr. Anderson testified: "It's the principle at this point of the matter."  Anderson Dep. 72: 19-22.

14

- Defendants also asked Mr. Anderson why he contacted counsel about the suit. Mr. Anderson responded: "Because I had just lost $50 a share on this stock and they [Plaintiffs' counsel] were going to try to help me out – try." *Id.* 39: 2-4.
- Finally, Mr. Anderson was able to identify Priceline, Jay Walker, Braddock, Schulman and Nichols as the Defendants in this lawsuit and when asked to describe the basis for the lawsuit, he testified that the suit has been brought because Defendants "overinflated the price of their stock because of the WebHouse thing." *Id.* 51:2-3; 54:4-6. Mr. Anderson was also able to identify the class period, testifying that it started in January 2000 and ended in October 2000. *Id.* 81: 9-10.

Mr. Anderson clearly understands what his duties would be as a class representative and understands what this case is about. Defendants' attempts to use selective quotations and incomplete portions of Mr. Anderson's deposition testimony to suggest otherwise are inappropriate.

### D.    Ms. Egel and Mr. Weiss Are Qualified To Serve As Class Representatives.

Defendants also claim that Marilyn Egel and Mark Weiss are not suitable class representatives in this case. Ms. Egel and Mr. Weiss are husband and wife and held their Priceline securities in a joint account. First, Defendants argue that Ms. Egel is inadequate because she lacks sufficient "knowledge" about the case. As noted above, this type of attack is rarely appropriate. Moreover, as with Mr. Anderson, the transcript from Ms. Egel's deposition shows that she has a sufficient understanding of the case and is actively seeking to vindicate her rights and the rights of the overall class:

- During her deposition, Ms. Egel was asked what Defendants have done wrong. Ms. Egel testified: "They artificially inflated their stock prices." Ms. Egel went on: "I think that -- my understanding is that Priceline was putting money into a company called WebHouse. WebHouse was trying to show the public that Priceline could be duplicated in other companies. WebHouse was supposedly making money, but, in fact, it wasn't. And the house of cards kind of fell apart when it was realized, I think publicly and in print, that WebHouse was never really making any money." Egel Dep. 21: 1-2; 21: 14-24 (Kelleher Dec., Ex. N).
- Ms. Egel was able to identify the Defendants, testifying that: "I believe the Defendants are Priceline, a gentleman named Jay Walker, and I think three other Board of directors Priceline people." *Id.* 20:12-14. She was also able to identify the class period in this case. *Id.* 7: 20-23.
- Ms. Egel was also clear about her understanding of her role as a class representative. She replied: "To take into account my losses and the losses of every other person who was deceived by this situation." *Id.* 22: 17-23.

15

Defendants also argue that Mr. Weiss and Ms. Egel should be disqualified as class representatives because they held Priceline options in their joint account. This argument fails for several reasons. First and foremost, Mr. Weiss and Ms. Egel purchased certain shares on the open market, outside of options contracts. Thus, representatives Weiss and Egel have the same incentive to pursue recovery from Defendants on behalf of common stock purchasers as any other stock purchaser. Moreover, a class representative's claims are typical if they "arise[] from the same course of events, and … [the class representative] makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Guilani*, 126 F.3d 372, 376 (2d Cir. 1997).[11]

Here, Mr. Weiss and Ms. Egel relied upon the integrity of the market in purchasing their securities, which was undermined by Defendants' actions, just as did purchasers of common stock. Plaintiff Weiss, in his deposition, repeatedly affirmed his reliance upon the market's integrity. Weiss Dep. 19:6-10; 68:17-21; 83:16-85:17 (Kelleher Dec., Ex. M). Thus, representatives Weiss and Egel will be held to the same standard of proof for liability as will common stock purchasers. As one court in this Circuit explained, "where the public market of a quoted security is polluted by false information, or where price, supply and demand are distorted as a result of misleading omissions, all types of investors are injured." *In re Oxford Health Plans, Inc. Sec. Lit.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001).

In addition, Defendants completely ignore the fact that this action is being brought on behalf of purchasers of all Priceline securities, including those who purchased options. Am. Compl ¶ 46. Thus, far from making Plaintiff Weiss's claims atypical, Plaintiff Weiss's purchases of both common stock and options contracts places him in a position to pursue recovery on behalf of both op-

---

[11] Several courts in this circuit have noted that: "the rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit." *In re Nortel Networks Corp. Sec. Lit.*, 2003 WL 22077464, *4 (S.D.N.Y. Sept. 8, 2003) (internal citations omitted). In addition, "slight factual discrepancies between the claims of various plaintiffs are insufficient to bar class certification on the ground of atypicality." *In re Arakis Energy Corp. Sec. Lit.*, 1999 WL 1021819, *6 (E.D.N.Y. April 27, 1999).

tions and stock purchasers. Therefore, instead of a potential conflict of interest, Plaintiff Weiss's appointment assures those members of the putative Class who purchased options contracts that their interests are adequately and appropriately represented.

Numerous courts have held that an options purchaser satisfies the typicality standard to represent a class of securities purchasers. *Oxford Health*, 199 F.R.D. at 124 (finding that class representative who purchased options was qualified to serve as class representative); *Welling v. Alexy*, 155 F.R.D. 654, 662 (N.D.Cal. 1994) (appointing purchaser of both stock and options as class representatives for class of stock purchasers); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) ("[T]raders in puts and calls rely on the integrity of the information disseminated in the market just as do purchasers and sellers of the underlying security."); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 363 (D. Del. 1990) (holding that investor who purchased options was qualified to serve as class representative for a class of stock and options purchasers). Thus, Mr. Weiss and Ms. Egel satisfy the typicality requirement of Rule 23 and are qualified to serve. [12]

**E.    The Leisinger Pension Fund Is Qualified To Serve As A Class Representative.**

Next, Defendants claim that the Leisinger Fund is not qualified to serve as a class representative because Felix Leisinger – the Fund's main beneficiary – abdicated all control over the fund to his investment broker. Doc. 193-1 at 15-17. In making their "abdication" argument, Defendants cite a single case from the Northern District of Illinois for the proposition that: "[a] securities plain-

---

[12] Defendants cite three cases for the proposition that options purchasers are atypical class representatives, all of which are inapposite. The first case, and the one upon which Defendants primarily rely, is distinguishable from the case at bar due to the fact that, as Defendants admit, the proposed representative had *only* purchased options and the claims were brought on behalf of purchasers of *only* common stock. *See Andrada v. Atherogenics, Inc.*, 2005 WL 912359, *1, *5 (S.D.N.Y. April 19, 2005). Similarly, in *Weikel*, the options purchaser could not show that his options, purchased in Europe, had ever traded in an open market, or indeed had been purchased by anyone except the proposed representative, and all stock purchases made by the proposed representative were either sold prior to any corrective disclosure or were short sales. *See Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998). In *Margolis v. Caterpillar, Inc.*, the proposed class representative had only purchased options, and had not exercised any of them to actually purchase stock. *See Margolis*, 815 F.Supp. 1150, 1154 (N.D.Ill. 1991). Furthermore, the proposed representative in *Margolis* was certified as a class representative for a sub-class of options purchasers alongside a class representative for stock purchasers. *Margolis*, 815 F.Supp. at 1158.

tiff that has completely abdicated investment authority to a third party will be subject to unique defenses." Doc. 193-1 at 18 (citing *Fry v. UAO Corp.,* 136 F.R.D. 626, 636 (N.D. Ill. 1991). This case is easily distinguished.

Indeed, two later cases from the Northern District of Illinois – the only district where the rule has been applied – have held that *Fry* applies only to individual investors, not institutional investors or a family trust like the Leisinger Pension Fund. *See, e.g., In re Neopharm, Inc. Sec. Litig.,* 225 F.R.D. 563, 567 (N.D. Ill. 2004); *Retsky Family Ltd. Partnership*, 1999 WL 543209, at *5-6 (N.D. Ill. July 23, 1999) ("[R]elying on an investment advisor to make decision about investments is commonplace. The fact that [the beneficiary of a family trust] himself did not actually make the purchase does not preclude a finding of the fact of adequacy."). As the *Neopharm* court explained:

> Because [the class representative] is a pension fund, it lacks investment expertise and, more likely than not, its fiduciary duties would preclude it from making investment decisions on behalf of its beneficiaries. Thus*, to prohibit such an institutional investor from serving as class representative merely because it delegated investment responsibilities to a money manager would appear to be in tension with the PSLRA*.

225 F.R.D. at 567; *see also In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (noting that rule barring institutional investor from serving as class representative violates PSLRA).

Defendants go on to claim that the Leisinger Fund should be disqualified because Mr. Leisinger believes that his investment broker "engaged in illegal stock market transactions." Doc. 193-1, at 21. This argument fails because Defendants have provided no evidence to show that Mr. Leisinger's third-party advisors "***relied*** upon factors wholly extraneous to the market." *Xerox Corp.,* 1991 WL 206770, at 83.[13] Mr. Leisinger's belief that he may have been misled is nothing more

---

[13] *See also In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717 (C.D. Cal. 2002) (fact that class representative and his counsel had filed NASD action against broker for *failure to diversify and for misrepresenting broker's qualifications and experience* would not defeat class certification); *In re Regal Comm. Corp. Sec. Litig.,* 1995 WL 550454, at *5 (E.D. Pa. 1995) (fact that class representative relied entirely on broker who *ignored client's wishes for conservative, long term investment and instead invested in speculative, high-risk stocks* would not defeat typicality; defendants must show stock price played *no* role in broker's decision).

than speculation. In fact, during his deposition, Mr. Leisinger himself could not come up with any

concrete evidence to support his belief. Without any evidence to show that Mr. Leisinger's invest-

ment advisor relied on factors wholly extraneous to the market, Defendants' challenge to the Leis-

inger Pension Fund should also be dismissed.

Defendants also claim that the Leisinger Fund lacks capacity to sue because the Leisinger

Fund is no longer in existence and because Felix Leisinger does not have authority for the Fund.

Both arguments fail. First, Mr. Leisinger testified at his deposition that any "dissolution" of the

Fund occurred after the Class Period ended. Leisinger Dep. 26:14-27:9 (Kelleher Dec., Ex. C). He

also described the Fund in a manner consistent with what would be considered a family trust under

U.S. law – a family investment vehicle "where you pool the family savings to provide for rainy

days, retirement and education." *Id.* at 73:19-24. Moreover, Mr. Leisinger testified that he was a

beneficiary of the Fund, *Id.* at 6:16-19, and that he has proxy over the Fund. *Id.* at 75:2-76:2;

100:11-15. Defendants have no evidence to contradict Mr. Leisinger's sworn testimony.

Finally, Defendants claim that Mr. Leisinger is unable and unwilling to supervise class

counsel going forward. Doc. 193-1, at 22-24. A fair reading of Mr. Leisinger's transcript shows

that this is not the case. Leisinger Dep. 90: 9-14; 18-21.[14]

## III.  DEFENDANTS' ATTEMPT TO REDEFINE THE CLASS IS A MERITS BASED ARGUMENT THAT IS INAPPROPRIATE FOR CLASS CERTIFICATION.

Defendants also argue that Plaintiffs' proposed class should be limited to persons who pur-

chased securities after January 27, 2000 and held the securities through October 5, 2000. Defen-

dants rely on the Supreme Court's recent opinion in *Dura Pharm., Inc. v. Broudo*, 125 S.Ct. 627

(2005), claiming that Plaintiffs' current class definition is "overly broad, as it includes persons who

---

[14] For instance, when Defendants asked Mr. Leisinger: "What do you understand the obligations of the Fund as one of the class representatives to be?" Mr. Leisinger responded: "To represent all of the victims of this." Leisinger Dep. 90: 9-22 (Kelleher Dec., Ex. C). Mr. Leisinger then testified that he understood this to mean that he would be "actively involved" in the suit. *Id.* Mr. Leisinger went on to state that, in addition to traveling from his home in London to New York for the Defendants' deposition, he was prepared to return to the U.S. to testify at trial, if necessary. *Id.*

sold Priceline stock before the alleged corrective disclosure on October 5, 2000." Doc. 193-1 at 46.

Defendants' argument should be rejected because it goes to the merits of Plaintiffs' claim and, thus, does not bear on the question of class certification. *See, e.g., Buffa v. DLJ Sec. Corp.,* 222 F.3d 52, 58 (2d Cir. 2000) ("[A] motion for class certification is not an occasion for an examination of the merits of the case."); *Fogarazzo v. Lehman Bros., Inc.,* 2005 WL 1802851, at *10 (S.D.N.Y. July 29, 2005) (rejecting defendants' loss causation argument on class certification because "class certification is not the time to wage a battle of experts; nor is it time to engage in weighing of contradictory facts").

Furthermore, Defendants misstate the holding in the *Dura* decision. In *Dura*, the Supreme Court reversed the ***Ninth Circuit's*** pleading rule for loss causation in securities fraud actions, which required that a plaintiff allege only that "the price ***on the date of purchase*** was inflated because of the misrepresentation." 125 S. Ct. at 1634 (emphasis in original). The Supreme Court brought the Ninth Circuit back in line with most Circuits – including the Second. The *Dura* Court simply held that a plaintiff must provide "some indication" under Rule 8(a) of the causal connection between the loss and the misrepresentation. *Id.* at 1634. Here, Defendants chose not to raise the loss causation argument in their own motion to dismiss. They omitted this argument because the Complaint alleges loss causation. *See* Am. Comp. ¶¶ 150-87. Thus, the *Dura* argument is easily dismissed.

## CONCLUSION

For the foregoing reasons, the Proposed Class Representatives respectfully request that the Court grant their motion for class certification.

Dated: September 2, 2005

Respectfully submitted,

_____
SCOTT + SCOTT, LLC
David R. Scott (ct16080)
Erin Comite (ct24886)

20

108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802)  862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**Co-Lead Counsel**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 2, 2005, a true copy of the foregoing

was served on all counsel of record on the attached service list by first-class, postage prepaid U.S.

mail.


_____

David R. Scott

**SERVICE LIST**

Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall                          Douglas C. Conroy
Johnson & Perkinson                         Paul, Hastings, Janofsky & Walker
1690 Williston Road                         1055 Washington Blvd., 9Th Floor
P.O. Box 2305                               Stamford, C T 06901
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Carl Mullis, III
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Joseph L. Clasen
William Kelleher
Robinson & Cole, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
James Hein, Jr.
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019