UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : |
| ──────────────────────────── | : : |
| This document relates to: | MASTER FILE NO. 3:00CV01884(DJS) |
| | : |
| ALL ACTIONS | : September 19, 2005 |
| | : : |

**REPLY IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL**
**DISCOVERY FROM PRICELINE DEFENDANTS**

**SCOTT + SCOTT, LLC**
David R. Scott
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

**SCOTT + SCOTT, LLC**
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

**SCHATZ & NOBEL**
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone: (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

Plaintiffs, by and through Co-Lead Counsel, hereby reply to Defendants Priceline.com Inc. ("Priceline"), N.J. Nicholas, Daniel H. Schulman and Richard S. Braddock (collectively the "Priceline Defendants" or "Defendants") Opposition to Plaintiffs' Second Motion to Compel Discovery from the Priceline Defendants ("Def. Opp."). The Priceline Defendants' Opposition raises numerous objections for the first time which were not raised in Defendants' Response to Plaintiffs' Discovery Requests and the Opposition provides no basis for denial of Plaintiffs' Motion. Plaintiffs, therefore, reply to Defendants' arguments and request that the Court enter an order compelling the immediate production of the documents and answers sought by the interrogatories delineated below.

### 1.     Document Request No. 3

Plaintiffs' Document Request No. 3 seeks documents related to the investment policies and practices of the Defendants. Plaintiffs allege that the individual Defendants sold a tremendous amount of their personal Priceline stock holdings during the class period while in possession of material non-public information. ¶44.[1] Specifically, Plaintiffs allege that, during the Class Period, Defendant Walker sold 10,000,000 shares for $240,000,000;[2] Defendant Braddock sold 244,650 shares for $9,975,422; and Defendant Nicholas sold 500,000 shares for $30,838,610. *Id.* Defendants contend, however, that these insider sales were part of their normal investment practices and were not out of the ordinary.

Plaintiffs are entitled to investigate what constitutes Defendants' "normal" investment strategies and practices in order to gauge the proprietary and regularity of Defendants' sales.

---

[1] Citations to paragraphs of the Consolidated Amended Complaint will be in the format of ¶__.

[2] In addition, Plaintiffs allege that the Walker-controlled entities Walker Digital LLC and Walker Digital Corp. sold $45,802,000 and $52,000,000 worth of Priceline shares, respectively. *Id.*

1

Nevertheless, in their Opposition Defendants contend that Plaintiffs have failed to establish the relevancy of Defendants' non-priceline transactions. Def. Opp. at 9-10.

Defendants trading practices are specifically and expressly relevant to Plaintiffs' allegations because the transactions Defendants made during the relevant time period will provide evidence demonstrating Defendants' overall investment objectives and strategies. This information is essential to allow the Plaintiffs to evaluate Defendants' motives in making their trades and whether Defendants' Priceline transactions were consistent with their overall investment strategies as Defendants claim, or, as Plaintiffs allege, Defendants' trades in Priceline stock demonstrate their knowledge that undisclosed issues relating to Priceline resulted in an artificial inflation of which Defendants were taking active advantage.

Additionally, despite Defendants' argument to the contrary, this Court has already held that investment histories, including non-priceline securities transactions **are relevant** to a determination of ones motivation for their Priceline transactions. *See*, June 7, 2005 Order on Defendants' Motion to Compel. Indeed, if Plaintiffs' non-priceline transactions could reveal information that might be used to rebut the fraud-on-the-market theory, Defendants' non-priceline transactions can certainly be deemed likely to reveal information regarding Defendants' scienter. In the absence of the requested information, Plaintiffs will be deprived of relevant evidence going directly to a critical element of their case. Defendants should be ordered to immediately produce all documents in their possession, custody or control responsive to Document Request No. 3.

### 2. Document Request No. 8

Plaintiffs' Document Request No. 8 seeks documents reflecting testimony given by the Defendants during the relevant time period. Defendants' responded to this Request by offering

2

to produce responsive documents on the condition that Plaintiffs produce the same.[3] Thus, Defendants state no objections whatsoever to Document Request No. 8.[4] However, in their Opposition, Defendants attempt to improperly inject an untimely irrelevancy objection in a transparent attempt to shield relevant discovery from Plaintiffs. Def. Opp. at 6. Defendants' attempt to now raise a relevancy objection is entirely inappropriate as any such objection must be deemed waived for failure to assert it.

Furthermore, there can be no question that Plaintiffs' Request No. 8 is highly relevant to this action. Plaintiffs' *Complaint* alleges a widespread fraud. Specifically, Plaintiffs allege that Defendants made numerous false and misleading statements regarding Priceline's business model, financial status and future prospects during the class period. ¶¶33-38, 97-148. Any testimony by Defendants during the relevant time period will undoubtedly contain information that is likely to lead to the discovery of admissible evidence regarding the business operations, failures, problems, expenses or scope of Priceline's business enterprises, all of which are relevant to Plaintiffs' claims that Defendants misrepresented the true state of affairs at the company. Tellingly, Defendants have not raised any valid objection to Plaintiffs' Request No. 8 and should be ordered to immediately produce all documents in their possession, custody or control responsive to Request No. 8.

---

[3] Defendants' response to Plaintiffs' Document Request No. 8, in its entirety, is:

> Defendants state that this request is a duplicate of one of Defendants' document requests to plaintiffs and that plaintiffs have refused to produce any documents in response to this request. Accordingly, Defendants will only produce documents in response to this request to the extent that plaintiffs produce documents in response to Defendants' request.

Defendants' Responses and Objections to Plaintiffs' Second Set of Document Requests and Interrogatories, at p. 7, attached as Exhibit B to Plaintiffs' Memorandum In Support of Plaintiffs' Second Motion to Compel Discovery from Priceline Defendants ("Plaintiffs' Memo.").

[4] In fact, Defendants do not even reference their General Objections in their Response to Request No. 8, as they do in every other Response to Plaintiffs' Second Set of Document Requests.

3

### 3.    Document Request No. 11

Document Request No. 11 seeks documents concerning any agreement among the Defendants relating to this action. Defendants argue that "any [joint defense agreement] or the existence thereof would not be relevant to the claims or defenses of any party, would be privileged, and therefore would not be discoverable." Def. Opp. at 7. Defendants also attempt to distinguish the cases cited by Plaintiffs in support of their position, Defendants' attempt, however, is futile. Courts have determined that the nature and existence of a joint defense agreement is a critical consideration when determining the applicability of the common interest doctrine in order to consider whether to extend the attorney-client privilege or the work product doctrine to communications between co-defendants and their respective counsel. *See U.S. v. Henke*, 22 F.3d 633, 637 (9th Cir.2000) ("[a] joint defense agreement establishes an implied attorney-client relationship with the co-defendant"); *Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C.*, No. 01 C 5014, 2002 WL 649043 (N.D. Ill. April 19, 2002). Defendants state that, "at this time, there is no written joint defense agreement in this litigation." Def. Opp. at 7. Additionally, Defendants state that neither the Priceline Defendants nor Defendant Walker has "designated any documents as privileged on the basis of such an agreement."

However, the joint defense privilege (also known as the common interest doctrine) is not itself a privilege, but "merely extends a recognized privilege, commonly the attorney-client or work product privileges, to cover those communications to parties with the common interest." *Power Mosfet Technologies v. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. 2000). Thus, the designation of documents as privileged pursuant to a joint defense agreement would merely require listing the documents on a privilege log as attorney-client privileged or protected under

4

the work-product doctrine. If Defendants are or will be operating under a joint defenses agreement to assert claims of privilege or work-product protection, Plaintiffs are entitled to know of the existence and nature of such an agreement as "the facts necessary to establish the attorney-client privilege are not themselves privileged." *Ocean Atlantic Development Corp.,* 2002 WL 649043, at *8 (citing *B.F.R. of Illinois v. Ameritech Corp.*, No. 99 C 4604, 2001 WL 14144678, at *4 (N.D. Ill. Nov. 13, 2001)). For example, in *Ocean Atlantic Development Corp.,* the court directed defendants, who claimed to have an oral joint-defense agreement, to submit affidavits describing the joint-defense agreement. *Id.* at *5. Defendants there provided plaintiffs with heavily redacted versions of the affidavits submitted to the court. *Id.* The court found that there was "no basis for redacting these affidavits; they contained neither confidential nor highly sensitive information that warrants such treatment." *Id.* at *8. Furthermore, the burden of establishing attorney-client privilege (and thus the joint defense privilege) "always rests on the person asserting it." *See U.S. v. Schwimmer*, 892 F.2d 237, 244 (2nd Cir. 1989); *United States v. Weissman*, 195 F.3d 96 (2nd Cir. 1999).

The cases Defendants' cite for their position that joint defense agreements are not discoverable are easily distinguished as they involve facts entirely different than the facts at hand. For example, in *United States v. Bicoastal Corp.*, No. 92-CR-261, 1992 WL 693384 (N.D.N.Y. Sept. 28, 1992), the Government sought an inquiry into defense counsels potential conflicts of interest. *Id.* at *1.[5] Unlike the instant case, the Government in *Bicoastal* did not raise any issue as to the designation of documents as privileged pursuant to the joint defense

---

[5] The Government argued that, because defense counsel in their present case formerly represented immunized witnesses in a Grand Jury proceeding, and one or more of the immunized Grand Jury witnesses would be witnesses at the trial, defense counsel would be placed in the position of cross-examining a former client. *Id.* The existence of a joint defense agreement in *Bicoastal* was at issue because the Government alleged that "since joint defense agreements include the sharing between counsel of information protected by the attorney-client privilege, the sharing of this information would taint the remaining three attorneys in this action." *Id.* at *5.

5

agreement, nor did the court address the fact that the party asserting the privilege bears the burden of establishing that such a relationship exists. Thus, *Bicoastal* does not provide any basis to deny Plaintiffs discovery in this instance. Defendants' arguments in attempted support fail to provide a basis for their assertion that joint defense agreements are not discoverable and Defendants should be ordered to produce documents responsive to Request No. 11.

### 4. Document Requests 12 and 13 and Interrogatories 1, 2, 3, and 34

Document Requests 12 and 13 and Interrogatories 1, 2, 3, and 34 seek information from Defendants relating to Plaintiffs' allegations that class certification is appropriate in this case. Defendants contend that because they have filed a memorandum in opposition to Plaintiffs' Motion for Class Certification, Plaintiffs' concerns regarding Defendants' responses to these discovery requests are moot, as Defendants' "position[s] are stated in [their] papers." Def. Opp. at 13. However, Defendants' Opposition to Plaintiffs' Class Certification Motion does not extinguish Defendants affirmative responsibility to respond to search for and produce relevant documents and properly respond to Plaintiffs' discovery requests by producing responsive information in Defendants' custody, possession or control and "stating a position" is much different than providing responsive discovery. Defendants should be ordered to produce all documents Responsive to Document Requests Nos. 12 and 13 and provide the information requested in Interrogatories 1, 2, 3, and 34.

### 5. Interrogatories 7, 8, 12 and 21

Interrogatory No. 7 asks Defendants to identify people with knowledge about the decision by Priceline to recognize $188.8 million in connection with the receipt of WebHouse warrants and Interrogatory 8 asks Defendants to identify all persons with knowledge concerning the decision to write off the WebHouse warrants and take a one time charge of $188.8 million.

6

The valuation of the WebHouse warrant is a <u>central issue</u> in this case as Plaintiffs allege that the warrants played a critical role in causing the financial statements of Priceline to be false and misleading. *Complaint* at ¶¶ 28, 35, 43, 68 and 79. Defendants responded by listing individuals *primarily* familiar with the matters identified. Defendants state that "without the 'primarily' restriction, Defendants would probably end up identifying all or most of the employees who worked for the persons already identified pursuant to the 'primarily' restriction." Def. Opp. at 17. Defendants further respond that "in many cases that would probably involve identifying entire departments." *Id.* However, the Priceline Defendants have failed to demonstrate that such an undertaking would present any undue burden. As Plaintiffs stated to Defendants during the meet and confer on this issue, Plaintiffs are not asking Defendants to do a worldwide census. Plaintiffs are simply asking Defendants to identify all persons known to them who have knowledge regarding the matters that Plaintiffs have inquired about. Plaintiffs' Memo. at p. 14

Similarly, Interrogatory 12 asks Defendants to identify individuals who made decisions related to the valuation, recognition and charge related to the WebHouse warrants. In response Defendants state that numerous people were involved in those decisions and identified eight individuals who Defendants state were "primarily involved" in those decisions. Now, in their Opposition brief, Defendants contend that "there may have been other persons who were peripherally involved in those decisions, but the decision-makers have been identified." Def. Opp. at 17. Interrogatory No. 12 merely asks Defendants to identify all people who made the decisions. In their response to the Interrogatory and during the meet and confer, Defendants suggested that the names provided were those primarily involved in those decisions, yet now Defendants claims all decision-makers have been identified. Def. Opp. at 17. Given Defendants' prior position that their response was limited by their "primarily involved"

7

qualification, Plaintiffs are not convinced Defendants response is a full and complete response to Interrogatory No. 12. Defendants should be ordered to provide a complete response to Interrogatory 12 without any limitations or qualifications.

Interrogatory 21 asks Defendants to identify all persons with knowledge about the launch of hotwire.com. Defendants objected to this Interrogatory and stated in their Opposition their belief that "most of the employees of priceline probably had knowledge about the launch of hotwire." Def. Opp. at 18. Defendants simply ignore Plaintiffs clarification that they are not seeking a worldwide census and are only seeking the identification of specific people within Defendants knowledge. Plaintiffs' Memo. at p. 14. Plaintiffs are entitled to a response from each Defendant identifying all of the persons they are aware of whom they believe have knowledge about the launch of hotwire.com. Not only is this information relevant to Plaintiffs' attempts to prove the mechanics of the fraud alleged in their *Complaint*, but the scope of each Defendants' knowledge is an important factor in establishing each Defendants' scienter regarding the manipulations alleged in the Complaint.

With regard to Interrogatories 7, 8, 12, and 21, Defendants have failed to carry their burden to demonstrate how such requests are unduly burdensome. *See Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 71 (D.Conn. 2004) ("the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.")(internal citation omitted). Indicative of Defendants' inability to carry their burden, Defendants attempt to convince the court that Plaintiffs should be the ones to demonstrate why Defendants unilateral limitation is not enough. Defendants state Plaintiffs have "offered no explanation as to why the

8

names provided pursuant to the "primarily" restriction are not enough at this stage." Def. Opp. at 15.  Furthermore, Defendants apparently recognize the relevancy of these requests as they state that Plaintiffs have the opportunity to seek additional information through document discovery and deposition."  *Id*.  Defendants should be ordered to provide complete responses to Interrogatories 7, 8, 12 and 21.

### 6.    Interrogatories 22, 23 and 24

Interrogatories 22, 23 and 24 seek information regarding, and identification of, any third-party who conducted an investigation of the claims asserted in this lawsuit.  Defendants' response is limited to insurers.  Defendants are fully aware that such a response is inadequate, as it precludes investigations by, among others, state and federal government agencies.  Dubiously, Defendants respond however, by stating that they "do not know what else to say in response to those interrogatories." Def. Opp. at 19.  The scope and import of these Interrogatories are plain and clear.  Plaintiffs are seeking information regarding third parties who conducted investigations related to the claims asserted in this action.  This information goes not only to scienter, but can provide useful direction in Plaintiffs' attempts to piece together the course of conduct Defendants are so vigorously continuing to hide.[6]  Defendants should be ordered to fully respond to Interrogatories 22, 23 and 24.

### 7.    Interrogatories 19 and 20

Lastly, Defendants' affidavit submitted in compliance with the Court's June 7, 2005 Order on Plaintiffs' Motion to Compel resolves Plaintiffs' concerns with Defendants' response to Interrogatory 19.  Defendants have failed, however, to provide a satisfactory response to Interrogatory 20.  Interrogatory 20 seeks information regarding problems experienced with the

---

[6] Clearly such information is likely to lead to the discovery of admissible evidence and Defendants' unilateral limitation to insurers is entirely improper.

9

Priceline and WebHouse computer systems and websites during the class period. Defendants object to this request by stating that it is unduly burdensome because it calls for information regarding any and all problems and supposedly requires Defendants to search for and provide a large volume of information. Defendants simply refer Plaintiffs to lists of employees and/or contractors who **may** have worked on Priceline's and/or WebHouse's computer systems and/or websites during the class period. Problems with Defendants' and/or WebHouse's computer systems are directly relevant to the allegations of Plaintiffs' *Complaint*. Defendants should be ordered to immediately answer Interrogatory 20.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' request that this honorable Court enter an order compelling the Priceline Defendants to immediately produce the requested documents and responses to the discovery requests at issue in Plaintiffs' Motion.

Dated: September 19, 2005                           Respectfully submitted,

                                                    SCOTT + SCOTT, LLC


                                                    __/s/ Erin Green Comite_____
                                                    David R. Scott (ct16080)
                                                    Erin Comite (ct24886)
                                                    108 Norwich Avenue
                                                    P.O. Box 192
                                                    Colchester, CT  06415
                                                    Telephone: (860) 537-5537
                                                    Facsimile: (860) 537-4432
                                                    drscott@scott-scott.com
                                                    ecomite@scott-scott.com

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone:  (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

11

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 19, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

       /s/ Erin Green Comite_____

       Erin Green Comite

**SERVICE LIST**

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Martin Glenn
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036

Joseph L. Clasen
William Kelleher
Robinson & Cole, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019

Douglas C. Conroy
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9th Floor
Stamford, CT 06901

2