UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : MASTER FILE NO. : ~~3:00CV01844(DJS)~~ |
| This document relates to: | : 3:00CV01884 (DJS) : |
| ALL ACTIONS | : : September 22, 2005 |

### DECLARATION OF ALLISON GRIFFIN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DOCUMENTS

I, Allison Griffin, declare the following based on personal knowledge:

    1.    I am a Managing Consultant with Navigant Consulting, Inc., an independent consulting firm that, among other things, provides computer forensics and electronic discovery advice to attorneys and firms engaged in complex and large scale electronic discovery. Prior to joining Navigant Consulting, I was a Computer Discovery Specialist with Computer Forensics, Inc. ("CFI"). CFI was acquired by Navigant Consulting in May 2005.

    2.    I have extensive experience advising attorneys on the best methods for gathering and managing electronic discovery. A copy of my curriculum vitae is attached as Exhibit A.

    3.    In April 2005, I was retained by Scott + Scott, LLC to serve as Plaintiffs' computer forensic consultant and provide Co-Lead Counsel with advice on how to obtain, restore and analyze electronically stored data in this case. To date, I have participated in conference calls with counsel, reviewed several letters and materials sent between the parties and reviewed portions of depositions.

4.     I have focused most of my attention on the 223 WebHouse and Perfect Yardsale backup tapes that Defendants currently have in their possession. It is my understanding that Defendant Jay Walker has 181 of these backup tapes and the Priceline Defendants have 42 of these backup tapes. The data on these tapes is not accessible until the tapes have been restored.

### Producing The Data On The Backup Tapes In Its Native Format.

5.     The key to unlocking the 223 WebHouse and Perfect Yardsale backup tapes in Defendants' possession is to restore the tapes to their "native format." Native format refers to the default format of a computer file. For example, if a company uses Microsoft's programs, emails are restored to Microsoft Exchange or Outlook, memoranda and letters are restored so to allow access via Microsoft Word, financial data or spreadsheets are restored so to allow access via Microsoft Excel, presentations are restored so to allow access via Microsoft Powerpoint, etc. The electronic data on the backup tapes must be restored to its native format before it can be searched, reviewed and subsequently produced. Producing data in its native format is the most cost effective approach.

6.     My firm has the ability to restore the electronic data located on each of the backup tapes for $400 per tape, or a total of $89,200 for all 223 tapes.[1] Additional funds would also need to be spent culling down the material on the tapes and searching the data for relevant information. It is difficult to put an exact figure on these costs without knowing the volume and type of data. Once the tapes are restored it will be possible to determine which of the tapes may have relevant data. Assuming only 25 –

---

[1] It may also be possible to take an inventory of the data contained on each tape. This allows a party to determine the types of computer files contained on a tape. This can be done for $100 per backup tape. However, if there is useful information on the tape, it would still need to be fully restored to its native format before it can be used.

2

40 tapes contain relevant data, I estimate it would cost an additional $50,000 - $100,000 to search and provide potentially responsive files on selected output media.

7.   An additional benefit to the native format approach is that the electronic data, once restored from the tapes, is easily searchable.  Once the backup tapes are restored to their native format, computer forensic software can be used to easily review and search all of the information on the tapes.  The first step following the restoration to native format is to run software that "de-duplicates" the data across all of the backup tapes – *i.e.,* eliminates all the duplicative information on the tapes.  It typically is the case that backup tapes contain massive amounts of duplicative information (the same information is backed up again and again).  The "de-duplication" process culls the material.

8.   After the duplicative material on the tapes is removed, other computer forensic software can then be used to search the tapes using names, keyword terms, dates, etc.  This software can also be used to segregate particular file types such as email, Excel spreadsheets, Word documents, etc.  Searching the electronic data is a fairly easy process when documents are in their native format because the vast majority of electronic data is designed to be fully accessible and searchable.

9.   In addition, restoring the files into their native format allows the parties to capture metadata.  Metadata is information about a file such as the author of the document, when it was created, the individuals who received and reviewed the document, the edits that were made to the document, etc. In the cases on which I have worked, metadata has played an important role because it allows parties to determine origination and ensure the integrity of the electronic data.

10.   Moreover, valuable information can be lost if documents are not restored, searched and produced in their native format.  For instance, documents must be produced in their native format to determine those individuals who received blind carbon copies of emails.  Email programs allow users to send a copy of an email to another

person without other recipients knowing that the person has been copied. This "bcc" field is available on an email that is maintained and produced in its native file format.

### Producing The Data On The Backup Tapes As TIFF Files.

11. Defendants have proposed converting the electronic data on the backup tapes to PDF and TIFF images. TIFF stands for Tagged Image File Format and is nothing more than a picture of the document, similar to a photocopy. Similarly, PDF stands for Portable Document Format. It too is often just a picture of the document, although it can be made so it is searchable within certain programs. It is common for parties to convert *paper* documents to TIFF or PDF images before they are produced. However, in my opinion, this is not an appropriate way to deal with large amounts of *electronic* data without at least culling and de-duplicating the data.

12. Most significantly, it is very expensive and wasteful to convert vast amounts of electronic data to PDF or TIFF files. In this case, Defendant Walker estimates that it will cost between $26 million and $200 million to produce the data contained on the 181 tapes. These figures strike me as somewhat high, but may not be totally out of line – depending on how much electronic data is contained on the backup tapes. Converting and producing all electronic data via PDF or TIFF is not a common approach to review and subsequent production of electronic data.

13. Moreover, as noted above, backup tapes typically contain an overwhelming volume of duplicative and useless information. If the data on the tapes is immediately converted to PDF or TIFF files, culling the duplicative and useless information would be more difficult and significant sums of money would have been wasted converting the duplicative and useless files.

14. It also is not possible to run searches of TIFF images unless they are accompanied by a text file that contains the digital information previously contained in the native document. The creation of this digital information can be accomplished by converting the native file format to a generic text file or scanning the TIFF images by

4

using Optical Character Recognition software or OCR. OCR is a software program that reads the letters on the TIFF picture and translates it into words. This process is less than perfect and accuracy rates vary depending on the quality of the TIFF image that is being scanned.

15. Furthermore, when digital data is converted to TIFF and OCR (or a searchable PDF file, which is another common conversion method), important data contained within the document is lost. Microsoft's Excel is a commonly used spreadsheet program that allows for very sophisticated calculations using formulas. These formulas are visible if the document is maintained in its native format (*i.e.*, as an Excel spreadsheet), but would be lost if the document was converted to PDF, TIFF or OCR. Metadata and blind carbon copies of emails may also be lost.

16. For these reasons, I do not believe that wholesale conversion of vast amounts of electronic data to PDF or TIFF files is an appropriate way to conduct electronic discovery. By way of example, I recently worked on a case where a defendant converted all of its electronic materials to TIFF files (without notifying plaintiffs or the Court), spending over a million dollars and taking a year to complete the conversion. The defendant then tried to shift these costs onto the opposing party. When the Court learned that the electronic data could have been maintained in its native format for a small fraction of the cost, it rejected the cost shifting argument and ordered Defendants to produce the electronic data in its native format.

17. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Allison Griffin
Managing Consultant
Navigant Consulting, Inc.

Declared under penalty of perjury
on September 20, 2005 in
Seattle, WA

Dated: September 22, 2005

Respectfully submitted,

SCOTT + SCOTT, LLC

_____
David R. Scott (ct16080)
Erin Comite (ct24886)
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
drscott@scott-scott.com
ecomite@scott-scott.com

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200
Facsimile: (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone: (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 22, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

_____
Erin Green Comite

## SERVICE LIST

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Martin Glenn
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036

Joseph L. Clasen
William Kelleher
Robinson & Cole, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
(Sent Via Overnight Delivery and Via Facsimile)

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019
(Sent Via Overnight Delivery and Via Facsimile)

Douglas C. Conroy
Carl Mullis
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9th Floor
Stamford, CT 06901
(Sent Via Overnight Delivery and Via Facsimile)

# EXHIBIT A

Case 3:00-cv-01884-AVC	Document 212-8	Filed 09/22/2005	Page 11 of 14



**Allison Griffin**
Managing Consultant

Navigant Consulting
1749 Dexter Avenue North
Seattle, Washington 98109
Tel  206.324.6232
Fax 206.322.7318

agriffin@forensics.com
www.navigantconsulting.com

# Allison Griffin

Allison Griffin is a Managing Consultant with Navigant Consulting's Discovery Services practice group. Ms. Griffin provides guidance to clients on the best methods for preserving, obtaining and managing electronic data pertinent to their specific needs.

Ms. Griffin has more than 20 years experience in the legal industry and has configured and implemented numerous software programs to manage complex, civil litigation matters. Mr. Griffin has served as an expert witness in civil litigation matters involving electronic discovery issues and databases.

## Selection of Relevant Experience

» *Product Recall* – Ms. Griffin managed the evidence gathering and preservation process for a large corporation, during a major product recall. Dozens of lawsuits were filed as a result of the recall and all motions for spoliation sanctions were denied.

» *Product Liability Class Action* – On behalf of several joint corporate defendants, Ms. Griffin managed all aspects of the discovery process for a large class action. This involved establishing numerous databases to manage the electronic and paper documents, including over 1,000 trial exhibits. Ms. Griffin supported the trial team's document management and presentation needs during the six-week jury trial that resulted in a complete defense verdict.

» *Construction Litigation* – In a multi-million dollar commercial construction dispute, Ms. Griffin worked with a Fortune 500 company to gather and preserve the appropriate electronic and paper documents and set up the databases to manage the data. All data had been captured, reviewed and produced and the client was able to obtain a favorable settlement within six months of commencement of the action.

» *Large Personal Injury Action* – Ms. Griffin worked closely with the insurance claims managers, the in-house legal department and trial counsel to gather and manage the data from hundreds of different households along with the medical records for over a thousand individuals. After a lengthy trial, the jury returned a defense verdict.



Allison Griffin

» *Confidential Private Arbitration – JAMS.* Ms. Griffin was identified and testified as an expert witness on whether one party had violated the terms of a confidentiality agreement by sending defamatory email about the other party. By thoroughly examining the emails in question and the computer system of the alleged offender, Ms. Griffin was able to show that the most likely sender of the email was a person related to the accuser.

## Lectures, Courses, and Presentations

» *Computer Forensics,* ARMA, Fort Worth Chapter, Fort Worth, TX - May 2005.

» *Current Issues in E-Discovery,* Washington State Paralegal Association (WSPA), Seattle, WA - February 2005.

» *Superior Legal Document Drafting Techniques,* National Business Institute, Seattle, WA - November 2004.

» *Relevant Case Law for the Non-Lawyer,* LawNet, Web Seminar - October 2004.

» *Sarbanes Oxley Experience,* Association for Information and Image Management (AIIM) and Association of Records Managers and Administrators (ARMA), Seattle, WA - October 2004.

» *The Artful Use of E-Discovery and Litigation Specialists,* Litigation Information Management, Inc. and Computer Forensics Inc., Portland, OR - September 2004.

» *Advanced Civil Discovery for the Litigation Paralegal in Washington,* Institute for Paralegal Education, NBI, Seattle, WA - October 2000.

» *Civil Procedure – Managing Documents,* University of Washington School of Law, Arthur J. Lachman, Adjunct Professor, Seattle, WA - January 1999.

» *Paralegals and the Litigation Team in Washington,* Institute for Paralegal Education, NBI, Seattle, WA - June 1998.

NAVIGANT CONSULTING

Allison Griffin

## Publications

» *Advanced Civil Discovery*, Institute for Paralegal Education, NBI - 2000.

» *Discovery Techniques*, Institute for Paralegal Education, NBI – 1998.

## Education

Bellevue Community College, SQL Database Programming, 2005

Counterpoint Mediation Training, Seattle, Washington 2000

Green River Community College, Auburn, Washington  1983 – 1985

Auerwswald Business School, Seattle, Washington, Court Reporting  1977-1978