UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : : : : : : : |
| | MASTER FILE NO. 3:00CV01884(DJS) |
| This document relates to: | |
| ALL ACTIONS | September 22, 2005 |

**DECLARATION OF PETER J. MCDOUGALL IN SUPPORT
OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION
OF ELECTRONIC DISCOVERY**

I, Peter J. McDougall, declare the following based on personal knowledge:

1. I am an attorney at the law firm of Johnson & Perkinson, one of the firms serving as Co-Lead Counsel in this action. I have personal knowledge of the facts and events set forth below. I make this declaration in support of the Motion to Compel Production of Electronic Discovery.

A. **The Parties Began Discussing Electronic Data In October Of 2004.**

2. The instant dispute over the electronic documents dates to October 2004, the date of the parties' first meet and confer following the Court's decision on the motions to dismiss. During the October 2004 meet and confer, Plaintiffs asked Defendants about the electronic documents, explaining that these documents would be highly relevant to the claims in this case.

3. Defendants responded that they had vast amounts of electronically stored data and would need to devote substantial resources to reviewing and producing this material. Defendants

also stated that their production of the electronic documents would be on a rolling basis and would span several months.

4.  The parties revisited the electronic discovery issues in February 2005. In letters dated February 17 and 18, 2005, Plaintiffs asked Defendants to "[p]lease confirm that you will produce any electronic documents and electronically-stored data that are responsive to our document requests." Exhibit A (February 17, 2005 Letter) and Exhibit B (February 18, 2005 Letter).

5.  In response, the Priceline Defendants stated in a letter on March 1, 2005 that: "We are well aware that data stored electronically is discoverable and, as we stated during our very first meet and confer, will be searching vast amounts of electronically stored data in the course of discovery here." Exhibit C (March 1, 2005 Letter). The Priceline Defendants also noted that: "a snapshot of the data on priceline's corporate file and e-mail servers was made years before you served your document requests, and we are in the process of searching that repository for responsive documents." *Id.*

### B.  Defendants Seek To Exclude Backup Tapes From The First Motion to Compel.

6.  Plaintiffs raised the electronic document issue again in March 2005, when they moved to compel Defendants to produce responsive documents. Plaintiffs' motion, which sought to compel production of paper and electronic documents, requested that the Court set a time frame for Defendants to complete the production of responsive documents.

7.  In response, Defendants filed papers arguing that they had "computer tapes" that should be excluded from the motion to compel because these tapes needed to be restored and

converted "into a searchable format before the search and review of the information can even take place." Doc. 161, at 14. Docket No. 161 at 14 (Opposition to Motion to Compel); Docket No. 162 at ¶ 7 (William Kelleher Declaration).

    8.    In making their argument, the Priceline Defendants did not inform the Court that they also had a copy of Priceline's entire corporate email and file servers, which was easily accessible and fully searchable (i.e., that the "snapshot" provided Defendants the ability to search for responsive documents). Defendants also did not argue that the snapshot should be excluded from the motion to compel or cite any reason why the parties needed to meet and confer on the snapshot. *Id.*

    9.    After hearing argument on the issue, on April 6, 2005 the Court ordered the parties to meet and confer on the electronic discovery issues and file a joint memorandum setting forth areas of agreement and their respective positions on the areas of disagreement. Doc. 164, at 1-2.

    **C.**    **Plaintiffs Try To Meet And Confer On Restoring the Backup Tapes.**

    10.    Following the Court's April 6, 2005 Order, Plaintiffs sent Defendants a letter in an attempt to resolve what Plaintiffs thought was a dispute about restoring the backup tapes. The letter stated: "We would appreciate it if all Defendants would provide us with the information regarding the backup tapes referenced in the opposition papers to the Lead Plaintiffs' motion to compel . . . . [T]his information is critical to resolving the outstanding issues concerning the backup tapes, as per the Court's instruction during last week's hearing on Plaintiffs' motion to compel." Exhibit D (April 12, 2005 Letter).

11. After receiving no response to Plaintiffs' request for information regarding the backup tapes, Plaintiffs noticed a Rule 30(b)(6) deposition of the person at Priceline most knowledgeable about the electronic document issues. Plaintiffs noticed the deposition for May 13, 2005. Exhibit E (Deposition Notice).

12. The Priceline Defendants responded by unilaterally rescheduling the Rule 30(b)(6) deposition numerous times, stating as late as mid-May 2005 that they were still trying to locate the person at Priceline who was knowledgeable about the electronic documents. Exhibit F (May 20, 2005 Letter) and Exhibit G (May 25, 2005 Letter).

13. Defendants eventually agreed to make Patrick Brown, Priceline's internal computer specialist, available for deposition on July 20, 2005. This was three and one-half months after the Court ordered the parties to meet and confer on the electronic document issues and over two months after the date when the deposition was initially scheduled to take place.

14. Then, on July 19, 2005, the day before the Rule 30(b)(6) deposition, Plaintiffs received a letter from the Priceline Defendants that – for the first time – provided details about the documents that the Priceline Defendants had stored in electronic form. Exhibit H (July 19, 2005 Letter). In this letter, the Priceline Defendants stated:

> [W]e have mentioned the "snapshot" of electronic material that was taken for this litigation. . . . What we refer to as the "snapshot" is the equivalent of a full back-up of all the material that existed on priceline's corporate file servers in February 2002 (the time the snapshot was taken), reaching back to the beginning of the Company . . . [W]e believe that the snapshot contains every piece of electronic material created on the corporate file servers from priceline's inception until the date of the snapshot in February 2002.

15. The Priceline Defendants' letter acknowledged that the snapshot existed "in a usable format" – *i.e.,* unlike the backup tapes, the snapshot had been fully accessible and searchable since it was created in February 2002. The letter also referenced several ex-employee tapes that stored electronic material from terminated employees from 2000-2001. The Priceline Defendants later admitted that, like the snapshot, the ex-employee tapes were fully accessible and searchable.

16. This was confirmed by Patrick Brown during the 30(b)(6) deposition. Exhibit I at 170:23-172:4 (Brown Transcript). He testified that a snapshot of the entire corporate server and the ex-employee tapes have all been fully accessible and searchable since February 2002. *Id.*

D. **The Priceline Defendants Agree To Meet And Confer.**

17. Following the Rule 30(b)(6) deposition, the parties held a meet and confer on the electronic discovery issues. This took place on August 4, 2005, four months after the Court ordered the parties to meet and confer on these issues. During this meet and confer, despite stating in the March 1, 2005 letter that they were "in the process of searching that repository for responsive documents," the Priceline Defendants stated that they had just recently begun to search the snapshot for responsive material and that they expected the search to take several more months. After the meet and confer, the parties exchanged letters on their respective positions. Exhibit J (August 8, 2005 Letter); Exhibit K (August 11, 2005 Letter); Exhibit L (August 15, 2005 Letter); Exhibit M (August 17, 2005 Letter); Exhibit N (August 19, 2005 Letter); Exhibit O (August 30, 2005 Letter). Plaintiffs also provided Defendants with a draft of their position on September 12, 2005.

18.     Despite these efforts, the Plaintiffs and the Priceline Defendants still have not been able to resolve any of the electronic discovery issues. Most importantly, the Priceline Defendants claim that it will still take several months to review and produce the electronic information on the snapshot even though the snapshot has been fully accessible since February 2002. In addition, the Priceline Defendants have refused to provide a time frame in which the production will be complete. Exhibit M (August 17, 2005 Letter). They also have refused to tell Plaintiffs when the first electronic documents will be produced, even though they previously represented on March 1, 2005, that they had been searching the snapshot for responsive material.

19.     The Priceline Defendants also have not provided Plaintiffs with any of the information they previously agreed to provide. For instance, in early August 2005, the Priceline Defendants agreed to provide Plaintiffs with a spreadsheet of the data contained on the snapshot, a list of the email files contained on the snapshot and ex-employee tapes, and a list of possible search terms for the snapshot and ex-employee tapes. *Id.* To date, Defendants have not provided any of this information. In addition, the parties have not agreed on the production of the 42 WebHouse and Priceline backup tapes in the Priceline Defendants' possession.

E.      **The Discussions With Defendant Walker About The Backup Tapes.**

20.     Compared to the Priceline Defendants, Defendant Walker has been more willing to provide Plaintiffs with information on the electronic discovery issues. The parties have focused their discussions on the 181 WebHouse tapes in Defendant Walker's possession. Plaintiffs and Defendant Walker met and conferred on the backup tapes on April 21, 2005, May 26, 2005, June 15, 2005, and June 22, 2005. Several letters were also exchanged discussing the backup tapes.

21. During these meet and confers, the parties tried to come up with a way to narrow the number of backup tapes that needed to be restored. Defendant Walker provided Plaintiffs with information from the labels on the tapes, separated the tapes into various categories, and sampled the information on various tapes. Ultimately, Plaintiffs and Defendant Walker have no areas of agreement to represent to the Court. *See* Exhibit P (September 20, 2005 email).

22. The parties could not agree on a reasonable way to limit the tapes for two reasons. First, there is no way to determine what is actually on the tapes without restoring the tapes to their native format or, alternatively, taking an inventory of the data on each backup tape. Defendant Walker's counsel confirmed this point, noting that he has no way of knowing whether non-restored tapes contain responsive data. Second, Plaintiffs have subsequently learned that the tapes can be fully restored for $400 per backup tape. *See* Declaration of Allison Griffin filed herewith. Plaintiffs were previously under the impression that it would take several million dollars just to restore the tapes, as Defendant Walker represented in the affidavit that he submitted when opposing Plaintiffs' First Motion to Compel. Docket No. 158 (Farley Affidavit).

23. In addition, the parties are now six months away from the discovery cutoff under the current schedule and have been discussing these issues for close to six months. Given that the tapes can be converted to a fully accessible and fully searchable format for a fraction of the costs that Defendant Walker previously represented, Plaintiffs believe that all of the backup tapes should be produced in their native format. Defendant Walker opposes this approach.

24. I hereby certify that the above referenced letters and meet and confers represent the Plaintiffs' good faith efforts to resolve the electronic discovery disputes without Court intervention.

25. I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

_____
Peter J. McDougall

Declared under penalty of perjury on
September 21, 2005 in South Burlington, VT

Dated: September 22, 2005

Respectfully submitted,

SCOTT + SCOTT, LLC

*/s/ Erin Green Comite*

David R. Scott (ct16080)
Erin Comite (ct24886)
108 Norwich Avenue, P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
drscott@scott-scott.com
ecomite@scott-scott.com

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200
Facsimile: (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone: (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 22, 2005, a true copy of the foregoing was served on all counsel of record on the attached service list by first-class, postage prepaid U.S. mail.

*Erin Green Comite*

Erin Green Comite

## SERVICE LIST

Dennis J. Johnson
Jacob B. Perkinson
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
Hurwitz Sagarin & Slossberg
147 North Broad St., PO Box 112
Milford, CT 06460-0112

Albert M. Myers
Carl Mullis
Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E. 24th Floor
Atlanta, GA 30308

Martin Glenn
O'Melveny & Myers
Times Square Tower
7 Times Square
New York, NY 10036

Joseph L. Clasen
William Kelleher
Robinson & Cole, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
(Sent Via Overnight Delivery and Via Facsimile)

Daniel Slifkin
James Hein
Cravath, Swaine & Moore
825 Eight Avenue
New York, NY 10019
(Sent Via Overnight Delivery and Via Facsimile)

Douglas C. Conroy
Carl Mullis
Paul, Hastings, Janofsky & Walker
1055 Washington Blvd., 9th Floor
Stamford, CT 06901
(Sent Via Overnight Delivery and Via Facsimile)