# Exhibit C

# CRAVATH, SWAINE & MOORE LLP

GEORGE J. GILLESPIE, II
THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN W. WHITE
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.

JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
W. CLAYTON JOHNSON
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1242

JULIE A. NORTH
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN

GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO

SPECIAL COUNSEL
SAMUEL C. BUTLER
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

March 1, 2005

In re Priceline.com Securities Litigation
Master File No. 3:00cv1884 (DJS)

Dear Mr. Johnson:

      I write in further response to your letter of February 17, 2005 ("2/17 Letter".) As previously stated, we do not intend to amend our discovery responses (if at all) until after we have had the opportunity to discuss our objections and narrow the scope of your requests in the meet and confer scheduled for tomorrow. To help narrow the issues for discussion on that call, however, we briefly address your "concerns" here.[1]

Document Requests

  A.    General Objections

      You take issue with the temporal limitation we have placed on our discovery responses. (2/17 Letter at 1-2.) As reflected in General Objection No. 3, we believe that the "Relevant Time Period" you have defined is overbroad and unduly burdensome to the extent it seeks information about conduct that occurred before or after the Alleged Class Period. But we have not, as your letter suggests, limited our responses in a way that categorically excludes all documents "created outside of the [alleged] class period". (2/17 Letter at 2.) I can confirm that our reasonable search for responsive documents will encompass documents related to the claims and defenses asserted in the lawsuit and created during a reasonable amount of time before and after the Alleged Class Period.[2]

---

[1] We address these items in the order they appear in your 2/17 Letter.

[2] Your footnote with respect to Request No. 46 is puzzling. We produced the insurance policies pertinent to this action three months ago as part of our Rule 26 initial disclosures. See PCLN 00000001-00000173.

2

No. 4: You next ask for two clarifications with respect to our General Objection No. 4:

First, you ask us to "confirm that [we] will produce all 'documents' that fall within the scope of Rule 34(a) and Local Rule 26(a)(2)". (2/17 Letter at 2.) Of course we will comply with all applicable federal and local rules of civil procedure; nothing in General Objection No. 4 suggests otherwise. Rather, General Objection No. 4 is directed at the 17 lines of prose that follow your invocation of Rule 34(a) in your definition of "Document", which are not "synonymous" with those rules. In addition, your definition of "Document" incorporates by reference your definition of "electronic data" (which in turn incorporates other defined terms), which nowhere appears in the Federal Rules of Civil Procedure or Local Rules.

Second, you assert that we have made a "blanket objection with respect to the production of electronic data" and suggest that we are refusing to produce the same. (2/17 Letter at 2.) That is not our position. We are well aware that data stored electronically is discoverable and, as we stated during our very first meet and confer, will be searching vast amounts of electronically stored data in the course of discovery here. As described in our response to your Interrogatory No. 32, a snapshot of the data on priceline's corporate file and e-mail servers was made years before you served your document requests, and we are in the process of searching that repository for responsive documents. The first sentence of our General Objection No. 5 was intended to preserve our rights to seek cost-sharing with respect to discovery of such electronically stored materials.

You next take issue with our General Objection No. 5 and ask us to substantiate the existence of any "common defense" or "mutual interest" privilege. (2/17 Letter at 2.) This general objection was lodged prior to our review of the bulk of documents sought by your requests and was intended to anticipate any number of hypothetical privilege issues that might arise in the course of our subsequent document review. At this time, however, we are not obliged speculatively to substantiate or defend privilege calls that have not yet been made.[3]

With respect to General Objection No. 6, you assume correctly that it was included in our response because it was drafted before the Court had entered the Protective Order in this case. (2/17 Letter at 2-3.) I can confirm that we intend to proceed with production of non-privileged, responsive documents pursuant to the terms of that Protective Order.[4]

---

[3] The request in my February 14, 2005 letter that you clarify your invocation of the "investigative privilege" is entirely different. We do not believe that there is any such thing as an "investigative privilege" that would entitle you to withhold documents from production under any circumstance.

[4] In the event we identify non-privileged, responsive documents subject to third-party confidentiality obligations, we may withhold production until the appropriate

3

Finally, you attack the basis for our General Objection No. 7 and assert that we "have an affirmative obligation under Rule 34 to provide documents and information in the possession, custody or control" of Priceline Webhouse Club, Inc. ("Webhouse") and Perfect Yard Sale, Inc. ("Yard Sale"). (2/17 Letter at 3.) Webhouse and Yard Sale were separate (and are now defunct) entities who licensed priceline's business model and had certain other arms-length contractual relationships with the company. Priceline did not hold any ownership interest in Webhouse or Yard Sale, nor did either of those two entities hold such an interest in priceline. While we are aware of the general principles set forth in the cases you cite, they do not suggest that the nature of the relationship between priceline and Webhouse or Yard Sale is sufficient to impute control over their documents to our clients. That being said, we have already committed to producing responsive documents regarding Webhouse and Yard Sale (if any) that do reside in our client's own files.

### B. Specific Responses and Objections

You observe that "almost every one" of our written responses states objections and indicates that a reasonable search will be undertaken, and responsive documents will be produced, subject thereto. You request that we also "identify the responsive documents that [we] will or will not be producing." (2/17 Letter at 3.) We are not aware of any requirement under the Federal Rules of Civil Procedure or Local Rules that we do so, and we do not intend to amend our responses in this fashion.

You again ask us to "confirm that [we] will produce documents and provide information that is in the possession, custody or control" of Webhouse and Yard Sale. (2/17 Letter at 3.) For the reasons stated previously, we are unable to do so.

You next observe that we have objected to certain requests as overly broad and unduly burdensome (including with respect to the timeframes noted), and ask us to "confirm that [we] will not withhold any responsive documents on the grounds that these documents were created outside the Class Period". (2/17 Letter at 3-4.) As stated previously, our reasonable search for responsive documents will encompass documents created during a reasonable amount of time before and after the Alleged Class Period.

You take issue with our objections that certain requests are vague and ambiguous, or seek documents not relevant to the claims or defenses of any party to this action. You suggest that we should have provided further explanation of these objections in our written responses. (2/17 Letter at 4.) We believe the appropriate forum to discuss these objections, to the extent you do not understand them, is in our meet and confer session.

---

notifications are made and/or consents obtained. See General Objection No. 5. Furthermore, as acknowledged in the Protective Order, we may seek additional protections in the event you seek production of source code.

FROM CRAVATH SWAINE & MOORE LLP          (TUE) 3. 1' 05 15:54/ST. 15:51/NO. 4864993766 P 6

4

By way of illustration, we draw your attention to Request No. 51, to which we have objected on both of these grounds (among others.)[5] It is vague and ambiguous, for example, insofar as it fails to clearly indicate whose "interactions, meetings or communications" it intends to capture: those between or among "personnel" of two or more of the listed entities? Or those between or among two or more personnel any one of the listed entities? And exactly who is intended to be captured by the phrase "personnel associated with" a given entity: that entity's employees? those of its licensees? those of its third party vendors? Moreover, this request fails to limit the subject matter of the "interactions, meetings or communications" about which it inquires to the subject matter of the present lawsuit. Accordingly, we believe it seeks documents that are irrelevant to the claims or defenses of any party to this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Finally, you ask us to "confirm that [we] will not withhold documents ... on the grounds that [they] are obtainable from public sources". (2/17 Letter at 4.) To the extent that we identify non-privileged responsive documents maintained in our clients' files that happen to be publicly available, we will not affirmatively withhold them on that ground. However, we will not seek to gather from outside sources publicly obtainable materials that plaintiffs are capable of gathering themselves.

### Interrogatories

A.   General Objections

With respect to General Objection No. 2, we refer you to the preceding response regarding General Objection No. 5 to your document requests.

With respect to General Objection No. 3, we refer you to the preceding response regarding General Objection No. 6 to your document requests.

With respect to General Objection No. 5, we refer you to the preceding response regarding General Objection No. 7 to your document requests.

We believe the limitation on the Relevant Time Period set forth in General Objection No. 6 is appropriate. For example, Interrogatory No. 1 asks us to identify persons "involved in making, commenting on and/or reviewing" priceline's public statements (among others.) The only public statements by priceline at issue in this litigation are those made during the putative class period alleged in your Complaint. Accordingly, we believe that limiting our response to individuals who participated with respect to those public statements is entirely appropriate, and we do not believe that our response excludes any "relevant information". If you would like us to consider

---

[5] Request 51 seeks "All documents referring or relating to any interactions, meetings or communications between personnel associated with Webhouse, priceline, Perfect Yard Sale, Inc. and/or Walker Digital."

expanding the scope of this or any other response beyond the Alleged Class Period, please specifically articulate what you believe to be the relevance of the particular information requested.

   B.   Specific Responses

   Our response to Interrogatory No. 5 asserted a number of objections, including the two noted in your 2/17 Letter. (2/17 Letter at 5.) The Court's recent entry of a Protective Order obviously resolves the confidentiality objection. However, this interrogatory remains overly broad and unduly burdensome. As drafted, this request purports to seek a description of all pricing formulas or methodologies applicable to any product or service sold through priceline from January 1, 1999 through December 31, 2001.[6] It is our understanding that, just during the Alleged Class Period, priceline offered a substantial number of products and services, the prices for which were set by different product groups using a variety of complex algorithms and revenue management principles (among other things) and often changed on a daily basis. We do not see the relevance of much of this information and the burden of preparing a comprehensive response would be substantial. Accordingly, we do not intend to prepare a supplemental response absent significant narrowing of this Interrogatory.

   You next take issue with response to Interrogatory No. 10. (2/17 Letter at 5.) Our response describes how priceline arrived at its accounting for the Webhouse warrant at the time of its issuance. To the extent you are seeking information regarding subsequent accounting treatment, we can confirm that priceline periodically evaluated its investments (including the Webhouse warrant) in the normal course to determine whether any accounting adjustments were necessary or appropriate. When Webhouse announced on October 5, 2000 that it would begin winding down its operations, it became known that the value of the Webhouse was impaired. Accordingly, priceline wrote off the value of the warrant on its third quarter 2000 financial statements. (See 11/14/00 Form 10-Q at 8).

   Your issue regarding our responses to Interrogatories 12, 13, 16 and 21 appears to be the same: that we have not provided definitive and/or exhaustive lists of the information you have requested. (2/17 Letter at 5-6.) The tentative nature of these responses, however, was necessitated by the focus of your requests—each of which seeks information about the conduct and/or operations of Webhouse. For the reasons previously stated, we do not believe that all of the information you seek regarding Webhouse is within the possession, custody or control of our clients. Nevertheless, as indicated in General Objection No. 5, we have made a good faith attempt to gather information responsive to these requests and have answered the interrogatories regarding Webhouse upon information and belief. Our clients cannot, however, speak definitively

---

   [6] Our clients do not presently believe that they have knowledge or information sufficient to respond to this interrogatory's request for a description of Webhouse's pricing formulas and methodologies.

or exhaustively regarding the conduct or operations of this other company. Accordingly, we do not intend to supplement our responses as you have requested.

With respect to Interrogatory 14, we do not understand what you mean by the phrase "involved in soliciting members to participate in WebHouse". Please clarify what you are seeking in this interrogatory.

With respect to Interrogatories No. 17 and 20 (and General Objection No. 8), you misconstrue our objections. (2/17 Letter at 6-7.) We are not invoking Rule 33(d). Rather, we believe these requests are unduly burdensome insofar as they seek an itemization of the broad categories of document whose production you have requested elsewhere. (See Plaintiffs' First Set of Document Requests, Nos. 5 and 6.) As a general matter, we believe each party should bear the burden of analyzing the other's production for broad categories of documents they wish to use in this case.

Lastly, you ask that we amend our responses to include a response to Interrogatory No. 25. (2/17 Letter at 7.) But you ignore the objections that we have asserted. We do not intend to provide any additional information in response to this Interrogatory unless and until these objections are addressed.

Very truly yours,

Christine L. Arena

Geoffrey M. Johnson, Esq.
   Scott + Scott, LLC
      33 River Street
         Chagrin Falls, OH 44022

0125

BY FACSIMILE AND FIRST CLASS MAIL

Copies to:

Jacob B. Perkinson, Esq.
   Johnson & Perkinson
      1690 Williston Road
        P.O. Box 2305
          South Burlington, VT 05403

William J. Kelleher, III, Esq.
   Robinson & Cole LLP
      695 East Main Street
         Stamford, CT 06904-2305

7

J. Allen Maines, Esq.
Carl Mullis, Esq.
　Paul, Hastings, Janofsky & Walker LLP
　　600 Peachtree Street, NE
　　24th Floor
　　　Atlanta, GA 30308

BY FACSIMILE