# Exhibit I

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF CONNECTICUT
 3
 4
   IN RE:                      )   MASTER FILE NO.
 5                             )
   PRICELINE.COM, INC.         )
 6                             )
   SECURITIES LITIGATION       )   3:00CV01844(DJS)
 7                             )
                               )
 8 This Document Relates to:   )
   All Actions                 )   JULY 20, 2005
 9
10
11
12
13       DEPOSITION OF PATRICK SETON BROWN
14
15
16
17
18
19
20
21      Victoria L. Germani, R.P.R., C.S.R.
                   LSR NO. 051
22              Shea & Driscoll
           Court Reporting Associates
23            16 Seabreeze Drive
           Waterford, Connecticut 06385
24
25

        Shea & Driscoll Court Reporting Associates
```

Page 2

```
 1  APPEARANCES:
 2
 3
 4  REPRESENTING THE PLAINTIFFS:
 5
 6  SCOTT & SCOTT, LLC
 7    Attorneys at Law
 8    108 Norwich Avenue
 9    P.O. Box 192
10    Norwich, Connecticut 06415
11  BY: DAVID R. SCOTT, ESQ. and
12      ERIN GREEN COMITE, ESQ.
13
14
15
16  REPRESENTING THE DEFENDANT J.S. WALKER:
17
18  PAUL, HASTINGS, JANOFSKY & WALKER, LLP
19    Attorneys at Law
20    600 Peachtree Street, NE, Suite 2400
21    Atlanta, GA 30308-2222
22  BY: CARL W. MULLIS, ESQ. and
23      J. ALLEN MAINES, ESQ.
24
25

        Shea & Driscoll Court Reporting Associates
```

Page 3

```
 1
 2  REPRESENTING THE DEFENDANTS
 3  PRICELINE.COM, INC., N.J. NICHOLAS,
 4  DANIEL H. SCHULMAN, AND RICHARD S. BRADDOCK
 5
 6  ROBINSON & COLE, LLP
 7    Attorneys at Law
 8    Financial Center
 9    695 East Main Street
10    Stamford, Connecticut 06904-2305
11  BY: JOSEPH L. CLASEN, ESQ. and
12      WILLIAM J. KELLEHER, III, ESQ.
13
14
15
16
17
18
19
20
21
22
23
24
25

        Shea & Driscoll Court Reporting Associates
```

Page 4

 1    Deposition of PATRICK SETON BROWN, a witness in
 2    the above-entitled cause of action; taken at the request
 3    of the Plaintiffs pursuant to Rule 30(b)(6) of the
 4    Federal Rules of Civil Procedure; before Victoria L.
 5    Germani, a Notary Public within and for the State of
 6    Connecticut; at the offices of Robinson & Cole, LLP, 280
 7    Trumbull Street, Hartford, Connecticut; commencing at
 8    10:12 a.m.
 9
10                    STIPULATIONS
11    It was stipulated and agreed by and between
12    counsel for the parties that the requirements of notice
13    of the taking of the deposition have been complied with;
14    that proof of the qualifications of the Notary Public
15    before whom the deposition is taken has been waived;
16    that objections, except as to matter of form, be
17    reserved to the time of trial; and that an objection
18    made by one Defendant can be relied upon by the other
19    Defendant; and that the deponent shall read and sign his
20    deposition transcript before a Notary Public within 30
21    days of its receipt.
22    It is further stipulated and agreed that if the
23    deposition remains unsigned 30 days after delivery to
24    counsel for the deponent, signature shall be deemed
25    waived and the deposition may be used as if signed.

Shea & Driscoll Court Reporting Associates

Page 169

```
 1    Q   So I take it that you did -- you made a
 2   determination of the size of the data on the corporate
 3   server; right?
 4    A   (Nodded head affirmatively.)
 5    Q   Is that right?
 6    A   Correct -- Well, on the corporate servers. There
 7   is more than one server here in this instance.
 8    Q   Right. I understand you collected information to
 9   confirm the snapshot. But tell me what you specifically
10   did -- Let's just start with the corporate server,
11   because your testimony is you gathered information from
12   the corporate server. What did you gather?
13    A   When -- Corporate server, I would probably say
14   corporate servers is probably a better use of terms. So
15   that probably describes an environment, as we did
16   before, so...
17    Q   Okay.
18    A   We are told that there is -- there's pending
19   litigation. And we determine what is the best way to
20   provide the information required for this litigation.
21        So we would speak -- Anna Occhuizzo, as I
22   mentioned before, Tony Marques, and we would -- and I'm
23   sure there are others. I just -- forgive me if I can't
24   recall those meetings. And we would determine that --
25   the information that is required for this litigation,
```
Shea & Driscoll Court Reporting Associates

Page 170

```
 1   what servers do they reside on; right.
 2    Q   Yes.
 3    A   What are the sources that we could use to collect
 4   this information.
 5    Q   Right.
 6    A   So we have -- as you might imagine, we -- I'll
 7   call it historical. You might have some historical
 8   e-mail to say that, yeah, I've created this server, this
 9   corporate server. It contains this information.
10        And we say, yes, we need that. So we created a
11   list to determine that these are the specific devices or
12   servers and hardware that have all of this information
13   that we want to create.
14        Once we completed that -- that process, we would
15   have confirmed it with -- we would have confirmed it
16   with -- actually, it wouldn't have been confirmation.
17   We would have just handed it off to our management to
18   say we've completed this.
19        And I believe the next process -- I wasn't
20   involved in the creation -- the next step, I wasn't
21   involved directly, but it was the creation of the
22   snapshot.
23    Q   I want to ask you about that. Can you explain
24   what is meant by "the snapshot"?
25    A   Yeah. We created a snapshot so that we could
```
Shea & Driscoll Court Reporting Associates

Page 171

```
 1   provide a single source to capture all the data relevant
 2   to this litigation for search purposes.
 3        So the snapshot contains the -- all the corporate
 4   user information, the corporate .pst information, the
 5   exchange information; and it contains the information
 6   really starting from -- or the -- well, I should say,
 7   certainly when I joined priceline in early 1999.
 8    Q   What format is the snapshot preserved in?
 9    A   It's in hard drive format; it's also in tape
10   back-up format. It's in two formats.
11    Q   And are the tape back-ups in useable format?
12    A   Yes.
13    Q   Okay. And is the snapshot -- is it just simply a
14   set of back-up tapes that were taken out of the
15   rotation?
16    A   No, not at all.
17    Q   Okay.
18    A   The snapshot is actually four hard disc drives,
19   that's the most -- that's the most useful, I guess,
20   component of the snapshot. The back-up is another
21   redundant source to ensure that we have it.
22    Q   Okay.
23    A   And so that the discs are in a readily readable
24   format of all of that data.
25    Q   And how is it preserved? Is it compressed?
```
Shea & Driscoll Court Reporting Associates

Page 172

```
 1    A   No. It's -- It resides on a -- I would say an
 2   NTFS volume, which is a Windows File Type.
 3        But I guess more importantly it could easily be
 4   read by a server at priceline.
 5    Q   Okay. When you say read by a server at
 6   priceline, if I asked you right now to read that data
 7   that's on the snapshot, --
 8    A   Uh-hum.
 9    Q   -- explain for me how you would go about doing
10   that.
11    A   If I wanted to read that data?
12    Q   Yes. And by read, I mean look at it in English
13   and not just in a series of numbers.
14    A   Okay. First of all, that data is in the
15   possession of Evidence Exchange right now for -- just so
16   you know, just so it's with --
17    Q   I didn't hear you, I'm sorry.
18    A   Myron Eagle of Evidence Exchange is the person
19   who is custodian of that information at the moment. So
20   we would obtain those discs.
21    Q   Yes.
22    A   I would have four discs. I would then build a
23   server, a Windows server. I would create a Windows
24   server.
25        I would install these hard disc drives in that
```
Shea & Driscoll Court Reporting Associates

1   Q   You use ARC Serve currently?
2   A   No. ARC Serve was used. LiveVault was used. The
3   .nt built-in back-up solutions were used. And that
4   would have been the .nt back-up for both Windows .nt
5   Operating Systems, Windows 2000 Operating Systems.
6       Many of the tapes are also literally straight
7   copies on some of the unit systems. You can do just a
8   system dump, if you will. You're copying into a -- The
9   tape is a device on your system much like a hard drive;
10  and it's dumped there as a means of back-up, too, to
11  restore your operating system.
12      What else is on there? The earlier versions of
13  the Veritas Client are on there.
14      I believe there's others. I can't recall them.
15  I could, you know, refer to some documentation.
16  Q   So are the back-up tapes -- the back-up tapes are
17  nothing more than a duplicate of the snapshot?
18  A   That's correct.
19  Q   Okay.
20  A   Yes.
21  Q   If you were to do a comparison hypothetically of
22  all the back-up tapes against the snapshot during the
23  same time period, you would have identical data?
24  A   I believe the snapshot probably contains more
25  information.