IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: Priceline.com<br>Securities Litigation | Master File No.<br>3:00cv1884 (DJS) |
| This document relates to: | |
| ALL PENDING ACTIONS | |
| | September 23, 2005 |

**DEFENDANTS' SURREPLY MEMORANDUM OF LAW
IN OPPOSITION TO THE PROPOSED CLASS REPRESENTATIVES'
<u>MOTION FOR CLASS CERTIFICATION</u>**

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Evan R. Chesler (ct03177)
Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
dslifkin@cravath.com

*Attorneys for Defendants
priceline.com Inc., N.J. Nicholas,
Daniel Schulman and Richard S. Braddock*

Douglas C. Conroy (ct11555)
Paul R. Dehmel (ct23063)
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901
Telephone: (203) 961-7400
Fax : (203) 359-3031
douglasconroy@paulhastings.com
pauldehmel@paulhastings.com

J. Allen Maines (phv0013)
Carl W. Mullis (phv0158)
Summer B. Joseph (phv0160)
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, NE
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
Fax: (404) 815-2424
allenmaines@paulhastings.com
carlmullis@paulhastings.com
summerjoseph@paulhastings.com

*Attorneys for Defendant*
*Jay S. Walker*

## **Citation Conventions**

The following conventions will be used throughout this Surreply Memorandum:

- "Def. Br." for references to Defendants' Memorandum of Law in Opposition to the Proposed Class Representatives' Motion for Class Certification, dated August 3, 2005.

- "Reply Br." for references to the Proposed Class Representatives' Reply in Further Support of their Motion for Class Certification, dated September 2, 2005.

- "Kelleher Decl." for references to the Declaration of William J. Kelleher, III, dated August 3, 2005.

- "Linton Dep." for references to the transcript of the deposition of Thomas L. Linton, dated May 12, 2005, attached as Exhibit J to the Kelleher Decl.

Defendants priceline.com Inc. ("priceline"), N. J. Nicholas, Daniel H. Schulman, Richard S. Braddock and Jay S. Walker (collectively, "Defendants") submit this Surreply Memorandum of Law in opposition to the proposed class representatives' motion for class certification and in response to plaintiffs' reply brief in support of that motion.

## Introduction

In our Memorandum of Law in Opposition to the Proposed Class Representatives' Motion for Class Certification (the "Opposition Brief"), we argued that plaintiffs had failed to carry their initial burden on class certification because they had not made any evidentiary showing that the proposed class representatives satisfy the requirements of Fed. R. Civ. P. 23(a). (Def. Br. at 4-7.) When plaintiffs subsequently asked for permission to file an overlength reply brief, we presumed that they would attempt to provide in that brief the factual basis that they were required to provide in their opening brief. Therefore, we opposed their request on the grounds that it appeared intended to circumvent the allocation of burdens for class certification. The Court permitted plaintiffs to file an overlength brief, but also granted Defendants the opportunity to seek this surreply. See Order, dated August 18, 2005.

Despite being afforded a second chance to carry their burden, however, plaintiffs have once again elected not to provide the evidentiary support necessary to permit class certification. Instead, plaintiffs devote much of their reply brief to explaining how little they believe they need to do in order to have a class certified. Indeed, plaintiffs appear to view the Court as nothing more than a rubberstamp in the class certification process.

In their reply brief, plaintiffs cite additional cases that purportedly support their motion, and they make selective—and sometimes misleading—representations about the record. We briefly address those new efforts in this surreply and show why they are unavailing. We submit that the testimonial and documentary evidence discussed in our Opposition Brief plainly demonstrates that there are serious problems with each of the proposed class representatives that require the denial of class certification.

### Argument

**I.    CONTRARY TO PLAINTIFFS' SUGGESTION, THIS COURT'S PRECEDENTS ARE CONSISTENT WITH DEFENDANTS' APPLICATION OF THE TYPICALITY AND ADEQUACY REQUIREMENTS.**

In their reply brief, plaintiffs repeatedly cite two decisions of this Court—In re PE Corp. Sec. Litig., 228 F.R.D. 102 (D. Conn. 2005), and Stevelman v. Alias Research, Inc., No. 5:91-CV-682 (EBB), 2000 WL 888385 (D. Conn. June 22, 2000)—in connection with their claim that Defendants have misconstrued the typicality and adequacy requirements of Fed. R. Civ. P. 23(a). (Reply Br. at 1, 2, 3, 4, 5, 9, 13, 14.) But rather than support plaintiffs' understanding of the adequacy and typicality requirements, those cases reinforce several of the themes that we highlighted in our Opposition Brief and that are echoed by the numerous cases that we cited therein.

First, there is no presumption that class certification is appropriate. (See Def. Br. at 3-4.) "The movant bears the burden of proving that certification is warranted", Stevelman, 2000 WL 888385, at *2, and the court is obligated to conduct "a

rigorous analysis" regarding whether the prerequisites of Fed. R. Civ. P. 23 have been satisfied, id. at *2; In re PE Corp., 228 F.R.D. at 106.[1]

Second, proposed class representatives who are subject to unique defenses that threaten to become the focus of the litigation are atypical. (See Def. Br. at 9-10.) In Stevelman, the Court explained that "[p]roposed plaintiffs may not be named to represent the interests of absent class members where their claims are subject to unique defenses" because "[s]uch defenses would render the named plaintiff atypical of the class he purports to represent and, hence, inadequate to serve in that representative capacity". 2000 WL 888385, at *3. Similarly, in In re PE Corp., the Court stated: "The Second Circuit has cautioned that class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation so as to create a danger that absent class members will suffer if their

---

[1] The Second Circuit has held that "[t]he party seeking to certify a class bears the burden of demonstrating numerosity, commonality, typicality, and adequacy". Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999). Nevertheless, in footnote 2 of their reply brief, plaintiffs assert that "adequacy is generally presumed at the certification stage" and that "several courts have held that the burden is on the Defendants to show that the proposed class representatives are 'inadequate'". (Reply Br. at 4.) In support of those assertions, plaintiffs cite Cook v. Rockwell Intern. Corp., 151 F.R.D. 378 (D. Colo. 1993). But Cook explicitly states that "[t]he plaintiff has the initial burden to show facts to support a finding that it will adequately protect the interests of the class". 151 F.R.D. at 386. Plaintiffs also cite Shamberg v. Ahlstrom, 111 F.R.D. 689 (D.N.J. 1986) (Brotman, J.). In 2003, however, the same judge who authored the Shamberg opinion acknowledged that other courts disagreed with his allocation of the burden on adequacy in Shamberg. See Szczubelek v. Cendant Mortgage Corp., 215 F.R.D. 107, 115 n.4 (D.N.J. 2003) (Brotman, J.). In Szczubelek, the court also stated: "The plaintiff must do more than simply reiterate conclusory allegations to satisfy the requirements of Rule 23. . . . . Instead the <u>plaintiff must allege facts demonstrating that all of the requirements for bringing a class action are fulfilled.</u>" Id. at 115 (emphasis added) (citing In re American Med. Sys., Inc., 75 F.3d 1069 (6th Cir.1996)). To the extent that any case suggests that plaintiffs do not have to demonstrate each of the requirements of Fed. R. Civ. P. 23(a), such a suggestion is contrary to both Second Circuit precedent and the overwhelming weight of federal case law.

representative is preoccupied with defenses unique to it". 228 F.R.D. at 108 (internal quotation marks omitted).

Third, the adequacy analysis involves an inquiry into whether the proposed class representatives have demonstrated the capability and willingness to protect the interests of the proposed class by monitoring class counsel and taking an active role in the litigation. (Def. Br. at 14-15, 30-33.) As the Court observed in In re PE Corp., "class representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys". Id. at 109 (internal quotation marks omitted). Likewise, in Stevelman, the Court explained that a proposed class representative "may not completely abdicate control of the case to his attorneys" and must "ha[ve] sufficient knowledge of the allegations and familiarity with the issues asserted in th[e] case to adequately press the claims of absent class members". 2000 WL 888385, at *5. The inquiry into the proposed class representatives' ability to supervise the litigation is consistent with the goals of the Private Securities Litigation Reform Act of 1995, which sought to end "lawyer-driven" class action securities litigation and return control of such litigation to plaintiff investors. See A. Conte & H. Newberg, 7 Newberg on Class Actions (4th ed. 2002), at § 22.2.

## II. CONTRARY TO PLAINTIFFS' SUGGESTION, DEFENDANTS ONLY NEED TO SHOW THAT A UNIQUE DEFENSE CAN BE RAISED AGAINST A PROPOSED CLASS REPRESENTATIVE TO TRIGGER DISQUALIFICATION.

In Amara v. Cigna Corp., No. Civ. 3:01CV2361 (DJS), 2002 WL 31993224 (D. Conn., Dec. 20, 2002) (Squatrito, J.), this Court held that "the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff

class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation". Id. at *3 (internal quotation marks omitted). Accordingly, as we explained in our Opposition Brief, at the class certification stage, Defendants do not need to show that a unique defense will succeed. (Def. Br. at 10.) To disqualify a proposed class representative as atypical Defendants need only show that a unique defense can be raised with respect to that representative.

In our Opposition Brief, we demonstrated that the Leisinger Pension Fund (the "Fund"), R. Warren Ross, Thomas L. Linton, and Mark B. Weiss and Marilyn D. Egel are all subject to the unique defense of non-reliance on the integrity of the market and are therefore atypical of the other members of the proposed class. (Def. Br. at 9-14, 17-21, 26-30.) In responding to those arguments, plaintiffs ignore the applicable standard and suggest that the proposed class representatives are not atypical unless Defendants demonstrate that the presumption of reliance is in fact rebutted. However, Defendants only need to show that the available evidence makes the proposed class representatives <u>subject to</u> a defense of non-reliance.

Plaintiffs essentially concede (1) that Mr. Ross and the Leisinger Pension Fund each relied exclusively on third parties in purchasing priceline stock and (2) that if those third parties did not rely on the integrity of the market, then the presumption of reliance is rebutted as to Ross's and the Fund's respective claims. (See Reply Br. at 8-10, 18-19.) But plaintiffs then suggest that it is not enough, for typicality purposes, that Ross and the Fund each offered testimony that the third parties on whom they relied did not in turn rely on the integrity of the market. Plaintiffs appear to claim that Defendants must

-5-

provide further, but unspecified, evidence that the third parties themselves did indeed rely on factors extraneous to the market.[2] That is incorrect.

We have pointed to testimonial and documentary evidence of non-reliance from the proposed class representatives themselves (see Def. Br. at 10-14, 17-21), and frankly, we think that evidence is more than adequate on its own to rebut the presumption of reliance with respect to Mr. Ross and the Fund. But at a minimum, that evidence creates a serious issue regarding their reliance and so at the very least <u>subjects them</u> to unique defenses, the success of which need not be established at the class certification stage.[3] If Mr. Ross and the Leisinger Pension Fund are allowed to proceed as class representatives, their arguable non-reliance on the integrity of the market will become a focus of the litigation, to the prejudice of the other members of the proposed class.

### III.   PLAINTIFFS MISREPRESENT THE CHRONOLOGY OF THE TESTIMONY AT THOMAS L. LINTON'S DEPOSITION.

In their reply brief, plaintiffs state:

> "Throughout the first part of the deposition, Mr. Linton did not recall the limit order that he placed on Priceline stock. Defendants then showed Mr. Linton his trading records and directed his attention to the shorthand notation in his trading records evidencing the limit order. Mr. Linton responded: 'That, to tell you the truth, I don't know what that is.' . . . .

---

[2] <u>See</u> Reply Br. at 18-19 ("This argument fails because Defendants have provided no evidence to show that Mr. Leisinger's third-party advisors '<u>relied</u> upon factors wholly extraneous to the market.' . . . . Mr. Leisinger's belief that he may have been misled is nothing more than speculation.") (emphasis in original), and at 9 ("[Defendants] do not show that Mr. Ross or his friend relied on factors 'wholly extraneous to the market'" and "[i]nstead, . . . point to a conversation Mr. Ross had with a friend prior to investing in Priceline stock").

[3] By contrast, in <u>Stevelman</u>, the Court was not persuaded that the proposed class representative would be subject to a unique defense because the defendant did not point to <u>any</u> evidence suggesting that the presumption of reliance might be rebutted. 2000 WL 888385, at *4.

> Later in the deposition, defense counsel revisited the topic . . . ." (Reply Br. at 11.)

That is a misleading account of how Mr. Linton's testimony unfolded. As we explained in our Opposition Brief, Mr. Linton repeatedly and unequivocally stated that he purchased priceline stock to hold as a long-term investment <u>after</u> he was shown the page of his Ameritrade brokerage statement that indicated the sell order on his priceline stock and <u>after</u> he testified that the indicated entry "doesn't mean sell". (Def. Br. at 23-25; Linton Dep. at 16:13-17:23; 32:21-33:13; 40:11-18; 141:4-7, 11-13; 142:5-145:5, 18-21.) Further, as we pointed out, Mr. Linton's testimony is particularly incredible given that he is a sophisticated investor who monitored his investments every day (Linton Dep. at 27:4-6), and given that his Ameritrade brokerage account statements reveal that he placed sell orders on many of the stocks he held (<u>see</u> Exh. K to the Kelleher Decl.). (Def. Br. at 25.) At the class certification stage, a preliminary finding that Mr. Linton is subject to a credibility attack is sufficient to disqualify him as a proposed class representative. <u>Kline v. Wolf</u>, 702 F.2d 400, 403 (2d Cir. 1983).

Plaintiffs suggest that the inconsistencies in Mr. Linton's testimony are "minor" and inconsequential. (Reply Br. at 11-12.) That is wrong. The existence of the sell order bears on Mr. Linton's motivation for purchasing priceline stock and on his alleged reliance on the integrity of the market. His inconsistent and contradictory testimony thus goes to the very heart of his claim, and calls his credibility sufficiently into question to require that he be disqualified as a fiduciary of the proposed class.

Plaintiffs also attempt to avoid that result by claiming that "the fact that Mr. Linton had a limit order on his Priceline investment in no way contradicts a desire to hold the stock long-term" because "[i]t is common practice for long-term investors to

-7-

place limit orders on specific stocks that may be subject to volatility to avoid steep declines which sometimes follow sharp increases in stock prices". (Reply Br. at 13 n.10.) But that argument misrepresents the nature of Mr. Linton's sell order. His sell order operated in exactly the opposite manner of the "common practice for long-term investors" that plaintiffs described. Instead of protecting him against a decline in the price of his stock, Mr. Linton's sell order operated to force a sale of the stock if it <u>increased</u> in price by as little as about $1.50. (Def. Br. at 23.) There can be no question that such a sell order is wholly inconsistent with a long-term investment.

### IV. PLAINTIFFS MISREPRESENT THE HOLDINGS OF <u>IN RE NEOPHARM</u> AND <u>RETSKY</u>.

For a plaintiff to be a suitable class representative, "a certain minimal level of participation by the plaintiff in the relevant stock transaction must be demonstrated". <u>Fry v. UAL Corp.</u>, 136 F.R.D. 626, 635 (N.D. Ill. 1991). In our Opposition Brief, we explained that the Fund is not a suitable representative because Mr. Leisinger testified that it completely abdicated investment authority to a third party.[4] (Def. Br. at 10-13.) Plaintiffs do not dispute that the Fund completely abdicated investment authority. (See Reply Br. at 17-19.) Instead, they claim that two cases "have held that <u>Fry</u> applies only to individual investors, not institutional investors or a family trust like the Leisinger Pension Fund".[5] (Reply Br. at 18, citing <u>In re Neopharm, Inc.</u>

---

[4] We also explained that Ms. Egel is an unsuitable representative because she did not participate at all in the investments of her joint account. (Def. Br. at 34.)

[5] Plaintiffs' characterization of the Fund as a "family trust" is entirely unsupported by the documentary and testimonial evidence gathered from the Fund. (<u>See</u> Def. Br. at 7-9.) Plaintiffs say that Mr. Leisinger "described the Fund in a manner consistent with what would be considered a family trust under U.S. law". (Reply Br. at 19.) However, counsel's characterization of Mr. Leisinger's testimony is not <u>evidence</u> that the Fund was

-8-

Sec. Litig., 225 F.R.D. 563 (N.D. Ill. 2004), and Retsky Family Ltd. P'ship v. Price Waterhouse LLP, No. 97 C 7694, 1999 WL 543209 (N.D. Ill. July 23, 1999).) That is a misrepresentation of both cases.

In each case, the court held that the proposed class representative did in fact demonstrate the "minimal level of participation" that Fry held was necessary. In In re Neopharm, the court held that the plaintiff pension fund had "illustrate[d] involvement in and awareness of the financial affairs at issue".[6] 225 F.R.D. at 568. And in Retsky, the court held that the plaintiff partnership "was not uninvolved in the investments" and "had ongoing discussions with [the investment manager] about the investments, particularly the purchase and sale of the SSA stock".[7] 1999 WL 543209, at *6.

---

ever an actual legal entity, and plaintiffs have the burden of providing such evidence. Moreover, even assuming that counsel's characterization of Mr. Leisinger's testimony were accurate, it still would not help plaintiffs because under Connecticut law, a trust is not a legal entity with the capacity to sue. Randolph Foundation v. Appeal from Probate Court of Westport, No. X05CV980167903S, 2001 WL 418059, at *16 (Conn. Super. Ct. April 3, 2001) ("This court . . . finds no support for the position that a trust is a legal entity with the power to sue or be sued."). Further, the Fund no longer exists, and for that reason alone has no capacity to sue. (Def. Br. at 7-9.) Plaintiffs say that does not matter because "any 'dissolution' of the Fund occurred after the Class Period ended". (Reply Br. at 19.) They are wrong. Just as a person who died after the class period is an unsuitable class representative, so too a nonexistent entity lacks standing.

[6] "[T]his is not a situation like Fry . . . in which the proposed class representative is 'completely unaware' of the financial affairs at issue. [The proposed class representative] (1) promulgated detailed investment guidelines which its money managers followed when making investments on its behalf . . . (2) conducted periodic reviews of its money managers' investments . . . (3) used an investment advisor to monitor the money managers . . . and (4) retained counsel . . . to monitor its investment portfolio . . . ." In re Neopharm, 225 F.R.D. at 567-68.

[7] "Retsky . . . spoke with [the investment manager] about the investments. Retsky also read articles in the press about the Partnership's investments and reviewed monthly reports. With respect to the purchase of SSA stock, Retsky testified that he was aware of the investment and had conversations with [the investment manager] about it. . . . . Retsky's situation is dissimilar to that of the investor found inadequate in Fry who was completely unaware of the relevant affairs and the purchase in the stock at issue." Retsky, 1999 WL 543209, at *6 (internal record citations omitted).

## V. THE ADEQUACY STANDARD IS NOT NONEXISTENT.

For the reasons set forth in our Opposition Brief, we submit that the testimonial evidence gathered from the Leisinger Pension Fund, Ms. Egel and Mr. Anderson demonstrates that none of them will be able to represent the proposed class fairly and adequately. (Def. Br. at 14-16, 30-33, 35-37.) We acknowledge that the standard for satisfying the adequacy prong of Fed. R. Civ. P. 23(a) is not a high hurdle. But the standard is not nonexistent. Numerous courts have found proposed class representatives inadequate because they were unfamiliar with the suit and/or had not taken an active role in the litigation and the supervision of class counsel. (See Def. Br. at 14-15, 31-33 (citing cases).) Consistent with those cases and with the PSLRA's goal of having investor plaintiffs who are not just the figureheads of class counsel, we believe that the aforementioned proposed class representatives must be deemed inadequate if the "adequacy" test is to have any substance.

## VI. DEFENDANTS' REQUEST THAT THE CLASS BE DEFINED TO COMPLY WITH SETTLED SUPREME COURT AND SECOND CIRCUIT PRECEDENT IS NOT A MERITS-BASED ARGUMENT.

In our Opposition Brief, we argued that the proposed class should be limited to persons who purchased priceline securities during the proposed class period and held those securities through the alleged corrective disclosure on October 5, 2000. (Def. Br. at 37-38.) Plaintiffs contend that we are making a merits-based argument that is inappropriate at the class certification stage. (Reply Br. at 19-20.) They are incorrect. Defining the appropriate scope of the proposed class is, of course, the point of the class certification stage and has nothing to do with the merits of plaintiffs' claims.

## Conclusion

For the foregoing reasons and for the reasons already stated in Defendants' Opposition Brief, Defendants respectfully request that this Court limit the scope of the proposed class and deny the proposed class representatives' motion for class certification.

September 23, 2005

DEFENDANTS PRICELINE.COM INC.,
N.J. NICHOLAS,
DANIEL SCHULMAN AND
RICHARD S. BRADDOCK

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
Evan R. Chesler (ct03177)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
dslifkin@cravath.com

DEFENDANT JAY S. WALKER

Douglas C. Conroy (ct11555)
Paul R. Dehmel (ct23063)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901
Telephone: (203) 961-7400
Fax: (203) 359-3031
douglasconroy@paulhastings.com
pauldehmel@paulhastings.com

_/s/ Carl W. Mullis_

J. Allen Maines (phv0013)
Carl W. Mullis (phv0158)
Summer B. Joseph (phv0160)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street, NE
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400
Fax: (404) 815-2424
allenmaines@paulhastings.com
carlmullis@paulhastings.com
summerjoseph@paulhastings.com

-12-

## CERTIFICATION

I hereby certify that a copy of the foregoing was served this 23rd day of September, 2005 via first class mail to the following counsel of record:

| Co-Lead Counsel | Liaison Counsel |
|---|---|
| David R. Scott, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT 06415<br>Tel: 860-537-3818<br>Fax: 860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY 10017<br>Tel: 212-687-7230<br>Fax: 212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Johnson & Perkinson<br>1690 Williston Road<br>South Burlington, VT 05403<br>Tel: 802-862-0030<br>Fax: 802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT 06103-3202<br>Tel: 860-493-6292<br>Fax: 860-493-6290 |

| | |
|---|---|
| **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT 06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 | **Attorneys for Defendant Jay S. Walker**<br><br>J. Allen Maines, Esq.<br>Carl Mullis, III, Esq.<br>Summer B. Joseph, Esq.<br>Laura Berg, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA 30308<br>Tel: 404-815-2400<br>Fax: 404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>PAUL, HASTINGS, JANOFSKY & WALKER, LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone: 203-961-7400<br>Fax: 203-359-3031 |
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | |

_/s/ William J. Kelleher, III_
William J. Kelleher, III