**EXHIBIT K**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| CAPITAL VENTURES INTERNATIONAL, | Case No. C02-0682L |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL INITIAL DISCLOSURES AND RESPONSES TO DISCOVERY REQUESTS |
| v. | |
| NETWORK COMMERCE, INC., *et al.*, | |
| Defendants. | |

This matter comes before the Court on "Plaintiff's Motion to Compel Initial Disclosures Mandated by Fed. R. Civ. P. 26(a)(1)(A); Compel Answers to Discovery Requests; and Establish Discovery Procedur[e]." Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

(1) This matter can be decided on the papers submitted. The parties' requests for oral argument are, therefore, DENIED.

(2) Plaintiff has identified a number of deficiencies in defendants' discovery responses. Rather than deal with each alleged deficiency individually, defendants argue that plaintiff's "focus on Rule 26(a) Initial Disclosures is misguided" (Opposition at 5) and attempt to justify most, if not all, of the delays in production by citing to the

ORDER GRANTING MOTION TO COMPEL
INITIAL DISCLOSURES AND RESPONSES
TO DISCOVERY REQUESTS

1   "unbelievable complexity" and "time-consuming" nature of electronic discovery

2   (Opposition at 6).  The federal discovery rules provide numerous methods by which

3   discovery may be obtained, and defendants' difficulties in accessing a specific universe

4   of documents do not excuse their total failure to comply with Fed. R. Civ. P. 26(a) or

5   provide substantive responses to plaintiff's interrogatories and requests for production.

6           (3) Pursuant to Fed. R. Civ. P. 26(a)(1)(B), parties must, without waiting for a

7   formal discovery request, provide to other parties "a copy of, or description by category

8   and location of, all documents, data compilations, and tangible things that are in the

9   possession, custody, or control of the party and that the disclosing party may use to

10  support its claims or defenses, unless solely for impeachment."  On January 21, 2004,

11  defendants sought to discharge their initial disclosure obligations by stating that they

12  intended to rely upon: "Relevant financial records, transaction documents relating to

13  plaintiff's investment, due diligence materials provided to plaintiff, public filings and

14  press releases, written and electronic correspondence, and other documents relevant to

15  the claims asserted (and not dismissed) in the Second Amended Complaint and all of

16  NCI's defenses thereto.  The foregoing documents are being stored at the offices of [NCI

17  and its counsel]."  Decl. of Duffy Graham (Dkt. # 102), Ex. 1 at 5.  No documents were

18  produced as part of the initial disclosure.

19          Defendants have taken two contradictory positions regarding the adequacy

20  of their disclosure.  In their Opposition, defendants argue that they failed to produce

21  even a single document pursuant to Fed. R. Civ. P. 26(a)(1)(B) because there are no

22  documents in existence that contradict plaintiff's claims and/or support their defenses.

23  Opposition at 5.  Defendants' assertion that a party cannot be expected to prove a

24  negative is a mere platitude in the circumstance presented here:  defendants make no

25  effort to explain why, for example, they could not disclose internal documents regarding

26  ORDER GRANTING MOTION TO COMPEL
    INITIAL DISCLOSURES AND RESPONSES
    TO DISCOVERY REQUESTS          -2-

1   the decision to lay off employees in early October 2000 or communications regarding

2   the April 2001 settlement of Walker's claims.  In addition, defendants' apparent

3   disavowal of any evidence supporting their defenses is a very risky litigation strategy in

4   the circumstances presented here.  Less than one week before filing their Opposition,

5   defendants answered the Second Amended Complaint.  Defendants not only denied

6   many of plaintiff's factual allegations, but affirmatively asserted lack of causation,

7   failure to mitigate, ratification, waiver, set-off, release and settlement, etc.  If defendants

8   have no evidence to support these defenses, plaintiff would be entitled to summary

9   judgment on them and would also have a fairly good argument that the defenses were

10  presented in bad faith.  If, on the other hand, defendants do have evidence to support

11  their various defenses, the failure to disclose information required by Fed. R. Civ. P.

12  26(a) without substantial justification could result in sanctions, including an award of

13  attorney's fees and the exclusion of such evidence from trial.  Fed. R. Civ. P.

14  37(a)(4)(A) and (c)(1).

15          Defendants' other position regarding their initial disclosures is that the

16  above-quoted statement satisfies the requirements of Rule 26(a)(1)(B) by identifying

17  what defendants have and where it is located.  Decl. of Duffy Graham (Dkt. # 102), Ex.

18  9 at 2.  But defendants have essentially said nothing more than that they may use every

19  document in their possession to support their defenses: they have made no effort to cull

20  the universe of documents to those that are relevant to this litigation or to otherwise

21  identify the specific documents or categories of documents on which they may rely.

22  Such a response is clearly inadequate in that it does not serve any of the purposes for

23  which Rule 26(a) was enacted.  See Advisory Committee Notes to 1993 and 2000

24  Amendments.  A reference to all documents in defendants' possession does not

25  "accelerate the exchange of basic information about the case" or "eliminate the paper

26

1   work involved in requesting such information." Advisory Committee Notes to 1993

2   Amendments, Subdivision (a). In fact, defendants' unhelpful response forced plaintiff to

3   serve interrogatories and requests for production seeking core information that clearly

4   should have been disclosed under Rule 26(a)(1). This is exactly the type of situation in

5   which Fed. R. Civ. P. 37(a)(3) comes into play: where, instead of making the type of

6   thoughtful disclosure required by Rule 26(a), the litigant discloses absolutely everything

7   so that virtually nothing is revealed, the Court will treat the "evasive or incomplete

8   disclosure . . . as a failure to disclose."

9        (4) In April 2004, plaintiff served defendant with 14 interrogatories seeking fairly

10  basic information regarding Mall.com and how the decisions to implement the October

11  2000 headcount reduction, to withdraw Walker's shares from the secondary public

12  offering, and to settle Walker's claims arising out of that withdraw were made.[1] The

13  only interrogatory that defendants chose to answer was Interrogatory No. 1, which

14  sought the identity of each person who participated in responding to any of the

15  interrogatories. Not surprisingly, the only persons who helped create the litany of

16  procedural objections to Interrogatories No. 2-14 were defendants' counsel. Apparently

17  no one thought to involve defendants Walker or Koslow in the response, despite the fact

18  that they clearly have information regarding many of the questions raised. Instead,

19  defense counsel put forth a string of objections, most of which are meritless and/or

20  unsupported, and refused to provide any substantive responses to the interrogatories. In

21  response to Interrogatory No. 2, for example, counsel claimed an inability to understand

22  common English words, such as "approval" and "employees," and made no attempt to

23

24
    _____

        [1] Plaintiff has withdrawn all discovery regarding the alleged insider loans, including
25  Interrogatory No. 11.

26  ORDER GRANTING MOTION TO COMPEL
    INITIAL DISCLOSURES AND RESPONSES
    TO DISCOVERY REQUESTS                -4-

1   prove their claims of undue burden or privilege. See, e.g., Decl. of Duffy Graham (Dkt.

2   # 102), Ex. 6 at 9-10. Even if one or two of defendants' objections had merit, that

3   would not excuse their complete failure to provide substantive responses to the extent

4   the interrogatories are not objectionable. Fed. R. Civ. P. 33(b)(1).

5        (5) As discussed above, defendants' failure to provide adequate disclosures

6   pursuant to Rule 26(a)(1)(B) deprived plaintiff of any meaningful information regarding

7   the documents that defendants might use to support their defenses in this litigation.

8   Plaintiff therefore followed up with 27 requests for the production of documents, all of

9   which seek documents that are relevant to plaintiff's claims or are linked to plaintiff's

10  interrogatories. Decl. of Duffy Graham (Dkt. # 102), Ex. 2.[2] Once again, defendants

11  refused to provide any substantive responses (not one single document was produced)

12  and raised meritless and/or unsupported objections based on vagueness, undue burden,

13  lack of relevance, and privilege.

14          In its Opposition, defendants do not even attempt to explain their alleged

15  inability to understand words like "given," to provide a privilege log or other evidence to

16  support their claims of privilege, or to support their claims of irrelevance. Rather,

17  defendants attempt to justify their failure to produce any documents by pointing to the

18  number of documents in defendants' possession, the haphazard manner in which those

19  documents were stored in hard-copy and in electronic files, and plaintiff's unwillingness

20  to reformulate their discovery requests into search terms identifying objective and

21  searchable criteria such as author, recipient, date, or specific words. In short, defendants

22  argue that the requested production is simply too burdensome and they should either be

23  excused from their discovery obligations or the rules of discovery should be modified

24  _____

25      [2] Plaintiff has withdrawn all discovery regarding the alleged insider loans, including
    Request for Production No. 20.

26  ORDER GRANTING MOTION TO COMPEL
    INITIAL DISCLOSURES AND RESPONSES
    TO DISCOVERY REQUESTS                    -5-

1  given the special circumstances of this case.

2          Having reviewed the documents provided and considered this case in

3  comparison to similar matters, the Court finds that this litigation is relatively focused,

4  involves a limited number of events and issues, and is in no way extraordinary. The

5  only distinctive factor is that the corporate defendant has been defunct since April 2003,

6  but, contrary to defendants' assertions, that should actually have made it easier to

7  conduct discovery and produce documents. This case was originally filed in 2002 and

8  counsel were available to assist defendants in organizing their records as the business

9  wound down and NCI ceased operations. In fact, the evidence shows that counsel

10 assigned a paralegal to index defendants' file cabinets and boxes in 2001 and 2002 and

11 that the paralegal also assisted NCI's staff in indexing and boxing up their remaining

12 files in the spring of 2003. Decl. of Margaret Esteve (Dkt. # 113), at 2. In the absence

13 of ongoing operations, defense counsel had unhindered access to, and virtually exclusive

14 control over, the universe of documents from which the initial disclosures and discovery

15 responses were to be culled.[3] While the lack of available personnel could have posed

16 some difficulties in attempting to organize NCI's paper and electronic files, it appears

17 that counsel made no attempt to draw on the knowledge and experience of the individual

18 defendants and rarely called upon former employees, such as Scott Dickson, for

19 assistance. While the Court can envision circumstances in which the bankruptcy of a

20 corporate defendant would cause all sorts of difficulties for litigation counsel, simply

21

22          [3] The Court is willing to assume that the needs of the bankruptcy court and the trustee of
23 the bankruptcy estate may have limited defendants' access to certain documents for certain
   periods of time. According to Ms. Esteve, however, the number of documents that were held by
24 Scott Dickson and Marcia Frey was minuscule compared to the overall universe of documents
   available to counsel throughout the relevant period (less than 1%). Decl. of Margaret Esteve
25 (Dkt. # 113), at 2.

26 ORDER GRANTING MOTION TO COMPEL
   INITIAL DISCLOSURES AND RESPONSES
   TO DISCOVERY REQUESTS                    -6-

1    pointing to the fact that NCI filed for bankruptcy establishes nothing: when the actual

2    facts of this case are considered, it is clear that, if anything, the bankruptcy should have

3    made litigation counsel's responsibilities easier.

4        With regards to the hard-copy documents in defendants' possession, there

5    is apparently no reason why defendants could not have, within 30 days of the lifting of

6    the discovery stay in this matter, begun producing responsive documents.  Not only were

7    all but eight boxes of hard-copy documents in defendants' possession when the stay was

8    lifted on August 19, 2004, but counsel had indexed the 1200+ boxes as they were packed

9    and, as early as August 2003, took possession of boxes as needed "to facilitate the

10    logistics of organizing some of NCI's hard copy records."  Decl. of Margaret Esteve

11    (Dkt. # 113), at 2.  Defense counsel make no attempt to explain why they have been

12    unable to start the process of reviewing the hard-copy documents for relevance and

13    privilege.  Instead, counsel have taken the position that plaintiff must refine its document

14    requests to provide specific search terms or parameters.

15        There is no such requirement in the federal discovery rules and the

16    procedure proposed by defendants would improperly shift the risk of faulty disclosure

17    from defendants to plaintiff.  Plaintiff has made specific requests for documents that are

18    both clear and relevant.  For example, plaintiff seeks "[a]ll documents evidencing,

19    concerning, referring to or relating to the number of NCI's administrative employees

20    during the period September 1, 2000 through September 28, 2000."  Decl. of Duffy

21    Graham (Dkt. # 102), Ex. 2 at 6.  Defendants insist that they cannot possibly be expected

22    to find documents responsive to this request as currently stated and want plaintiff to

23    identify which files or boxes defendants should search.  How plaintiff is supposed to

24    accomplish such a task without the benefit of employee lists or any information

25    regarding defendants' operations and file maintenance procedures is a mystery.

26    ORDER GRANTING MOTION TO COMPEL
    INITIAL DISCLOSURES AND RESPONSES
    TO DISCOVERY REQUESTS                        -7-

1    Defendants, not plaintiff, have possession of the documents, orchestrated their boxing,

2    indexing, and storage, and have a box-by-box index that might (or might not, depending

3    on its level of detail) assist them in identifying files that would have relevant materials.[4]

4    As with any other type of litigation, it is defendants' obligation to locate, review, and

5    produce documents that respond to plaintiff's reasonable requests.[5]  If defendants believe

6    there is good cause to limit their search to certain operational or personnel files, such

7    limitations should be noted and the parties will then have an opportunity to evaluate the

8    completeness of the production, meet and confer regarding any perceived deficiencies,

9    and bring any necessary motions.  If the limitations imposed by defendants are arbitrary

10   (it chooses, for example, to forego a search of the human resources file when asked

11   about the number of administrative employees), plaintiff will likely succeed on a motion

12   to compel and be awarded reasonable fees under Fed. R. Civ. P. 37(a)(4).  Defendants

13   seek to alter the straightforward discovery process, so that plaintiff is forced to choose

14   blindly which of defendants' files to search while bearing the significant risk that the

15   search will be unproductive.  Discovery is not a game of hunt and peck: plaintiff has

16   

17   ⁴ This index was not provided to the Court and was apparently made available to
     plaintiff's counsel on a single day in October 2004.  Plaintiff was not permitted to retain a copy of
18   the index.  Decl. of Fay N.T. Kelley (Dkt. # 114), at 4.

19   ⁵ As plaintiff points out:

20       Parties who are interested in participating in discovery review the discovery
         requests (and analyze their claims and defenses, for purposes of identifying Initial
21       Disclosure documents); determine which files (computer or hard copy) probably
         contain responsive information; determine a means to search them; and then
22       produce to the other side what they find.  The process isn't always perfect, and
         sometimes documents are missed and disputes arise about whether the search was
23       comprehensive enough.  But nothing like that has happened here.  Defendants have
         engaged in a complete stonewall.  They have provided absolutely nothing.
24   

25   Reply at 16-17.

26   ORDER GRANTING MOTION TO COMPEL
     INITIAL DISCLOSURES AND RESPONSES
     TO DISCOVERY REQUESTS                    -8-

1  served reasonable, relevant, and clear requests for documents regarding specific topics

2  during relatively limited time frames.  It is not required to guess where defendants kept

3  responsive documents in the ordinary course of business or where they might have

4  stashed them as NCI's operations wound down.

5       Defendants' undue burden objections have slightly more credibility when

6  one considers the electronic documents stored on various servers, hard drives, and back-

7  up tapes.[6]  The recovery of such data may take longer than the 30 days provided under

8  Fed. R. Civ. P. 34 and the Court would be willing to make reasonable allowances based

9  on the needs of defendants' forensic experts.  Despite having recovered and converted

10  approximately 70% of the universe of electronic documents,[7] however, defendants

11  refused to make any productions unless and until plaintiff rewrites its documents

12  requests to identify the files to be searched and/or the search terms to be used.

13       Defendants have uploaded the electronic documents from the original hard

14  drives and servers and created a computerized database using a word searchable data

15  management software called "Concordance."  There is no indication that defendants

16  consulted with plaintiff to try to reach agreement on the type of software used or the

17  format of the database created, so the Court can only assume that the million dollars[8] of

18  work performed so far is simply in preparation for defendants' own use of the electronic

19  _____

20  [6]  Apparently recognizing that back-up tapes are duplicative and that the burdens of
extracting the information may outweigh any need plaintiff may have for them, plaintiff requests

21  only that the back-up tapes be preserved and indexed at this point in time.

22  [7]  As of January 20, 2005, approximately 30% of the data contained in the hard drives and
servers remained to be processed.  Decl. of Fay N.T. Kelley (Dkt. # 114 ), at 6.  The Court

23  assumes that defendants have been diligently processing the remaining data and have, or soon will,
complete the task.

24
     [8]  Defendants' repeated use of bold-faced italics to highlight this amount is both

25  unnecessary and silly.

26  ORDER GRANTING MOTION TO COMPEL
   INITIAL DISCLOSURES AND RESPONSES
   TO DISCOVERY REQUESTS              -9-

1    documents. Unfortunately, defendants' choice of data management system has two

2    significant drawbacks. First, defendants are apparently unable to search by concept or

3    theory and therefore insist that plaintiff identify specific words that might be found in

4    responsive documents or specific metadata of interest (such as the origin of the file, its

5    author, date of creation, or title). As discussed above, shifting the burden of formulating

6    sensible search criteria to plaintiff is contrary to the normal discovery procedures and,

7    where defendants have refused to provide any documents or other information that could

8    assist plaintiff in narrowing the parameters of the search, makes absolutely no sense.[9]

9    Second, even if plaintiff had the ability to limit its document requests to specific search

10   terms and/or metadata, such as all e-mails written by defendant Walker between

11   February 2000 and April 2001,[10] the data management system selected by defendants is

12

---

13       [9] To the extent defendants rely on the 2004 Sedona Principles regarding "Best Practices,
Recommendation & Principles for Addressing Electronic Document Production," the Court is not

14   persuaded that the recommendations of the conference support defendants' position in this case.
As discussed above, this litigation is not particularly complex, the issues are fairly narrow, and the

15   discovery needs and burdens are not extraordinary. In such instances, the traditional approaches
to discovery, including application of the Rule 26(b) balancing standard, are generally sufficient to

16   protect against undue burden. Even in the context of electronic discovery, the Principles
recognize that "[r]esponding parties are best situated to evaluate the procedures, methodologies,

17   and technologies appropriate for preserving and producing their own electronic data and
documents." Principle No. 6. If the responding party chooses to restrict its search of

18   computerized data, the "responses and objections to discovery should disclose the scope and
limits of what is being produced," after which the requesting party will have the opportunity to

19   "show that the responding party's steps to preserve and produce relevant electronic data and
documents were inadequate." Principles No. 4 and 7. The Sedona Principles offer no authority

20   for what defendants are trying to do here, which is to refuse all production on the grounds that
plaintiff has not arbitrarily limited its substantive requests to specific search terms or metadata

21   fields.

22

23       [10] It is ironic that defendants are demanding such broad and unfocused discovery
requests. Generally, a demand for all documents created or received by the CEO of a corporation

24   during a specific time frame would draw a relevance objection because it is not limited to the
subject matter at issue. For purposes of this motion, however, defendants are taking the position

25   that they can respond to requests based on subject matter (unless plaintiff is willing to identify

26   ORDER GRANTING MOTION TO COMPEL
INITIAL DISCLOSURES AND RESPONSES
TO DISCOVERY REQUESTS          -10-

1  apparently so slow that it would take a week to ten days to locate and open all

2  responsive documents, after which defense counsel would then have to perform a

3  privilege review.  Plaintiff is not to blame for the limitations and delays inherent in

4  defendants' chosen data management system and will not be required to distill its cogent

5  and properly focused discovery requests into disjointed terms or dates.

6       (6) While defendants' concerns regarding the potential waiver of the attorney-

7  client privilege are valid, defendants ignore the critical difference between a voluntary or

8  negotiated disclosure to third-parties (which has the potential of waiving the privilege for

9  all future purposes) and a court-ordered, involuntary disclosure.  Defendants have not

10 cited, and the Court has not found, any case which holds that a forced disclosure

11 constitutes a waiver.  Although the participants in the Sedona conference clearly

12 disapprove of the use of "claw back" provisions, even they recognize that an order

13 compelling involuntary production alleviates many of the waiver concerns articulated at

14 the conference.  Protocol No. 10, comment 10(d).  The Court understands, and fully

15 appreciates that defendants object to the disclosure of any privileged material, even if

16 procedures are in place that limit the duration and extent of the disclosure.  Nonetheless,

17 defendants' recalcitrance in this matter and their total failure to provide any documents

18 (especially with regards to the hard-copy documents that have been available and

19 accessible over these many months) warrants the forced, if temporary, production of

20 privileged materials.

21

22       For all of the foregoing reasons, plaintiff' motion to compel is GRANTED

23 in large part.  It is hereby ORDERED that:

24 _____

   specific search terms) because their data management system is not designed to handle concepts.

25

26 ORDER GRANTING MOTION TO COMPEL
   INITIAL DISCLOSURES AND RESPONSES
   TO DISCOVERY REQUESTS                    -11-

1        (a) Having placed the entire universe of NCI documents at issue through their

2    initial disclosures, defendants shall preserve and maintain all of defendants' documents

3    (whether hard-copy, electronic, or back-ups) throughout the pendency of this litigation.

4        (b) Defendants shall, within ten days of the date of this Order, supplement their

5    Rule 26(a)(1)(A) disclosures to include the subjects about which each of the identified

6    witnesses may have discoverable information.

7        (c) Defendants shall, within twenty days of the date of this Order, produce full

8    and complete responses to plaintiff's First Set of Interrogatories. All objections, with the

9    exception of those based on the attorney/client privilege, are waived.

10       (d) Defendants shall, within two days of the date of this Order, provide plaintiff

11   with an electronic and hard copy of the index created by Ms. Esteve and Ms. Kelley.

12   Within five days of the date of this Order, defendants shall make the entire universe of

13   hard-copy documents available to plaintiff's counsel for a period of sixty days, during

14   which plaintiff's counsel may make copies, including electronic or scanned copies, of

15   any of the documents. Plaintiff shall bear the cost of copying any and all documents it

16   selects from the universe of hard-copy documents. Plaintiff shall provide to defendants

17   a list or duplicate set of all documents selected by plaintiff's counsel for copying: if

18   defendants request a duplicate set of the documents, they shall reimburse plaintiff for the

19   copying costs.

20       (e) Production of the hard-copy documents as described in paragraph (c) is

21   compelled and involuntary. The Court expressly finds that such production is a sanction

22   imposed by the Court and does not constitute a waiver of the attorney-client privilege.

23   Any privileged material made available to plaintiff or its agents shall retain its privileged

24   status and shall not be disclosed to any person or entity other than plaintiff's counsel

25   and their agents. Upon receipt of the list or duplicate set of all hard-copy documents

26   ORDER GRANTING MOTION TO COMPEL
      INITIAL DISCLOSURES AND RESPONSES
      TO DISCOVERY REQUESTS         -12-

1  selected by plaintiff's counsel for copying, defendants shall thereafter have twenty days

2  in which to identify documents in the set over which defendants claim privilege.  Upon

3  receipt of a privilege log regarding the documents over which defendants assert

4  privilege, plaintiff's counsel shall promptly delete all electronic copies and destroy all

5  hard copies of the identified documents in their possession or, within ten days of said

6  notice, file a motion with this Court challenging the assertion of privilege.

7      (f) Defendants shall, within sixty days of the date of this Order, review

8  defendants' electronic documents and provide full and complete responses to plaintiff's

9  First Requests for Production in a mutually agreed format.  Plaintiff shall bear the

10  copying costs (said copying costs do not include any costs associated with uploading or

11  incorporating documents into the Concordance database).  All objections, with the

12  exception of those based on the attorney/client privilege, are waived.  To the extent

13  defendants assert the privilege over a particular document, they shall provide a privilege

14  log containing sufficient detail so that plaintiff and the Court can evaluate the merits of

15  the asserted privilege.  To the extent defendants limit their search to specific files or

16  specific terms, such limitations shall be noted in their responses.  If defendants have not

17  yet uploaded and incorporated all of the electronic documents into a usable format, they

18  shall, within two days of the date of this Order, provide a declaration of counsel to that

19  effect and identify the date by which they expect to have completed the conversion:

20  production of all converted documents shall occur as set forth in this paragraph, with

21  supplemental productions made as more documents are converted.

22      (g) Within sixty days of the date of this Order, defendants shall provide to

23  plaintiff a complete inventory of all back-up tapes within defendants' possession.

24

25

26  ORDER GRANTING MOTION TO COMPEL
INITIAL DISCLOSURES AND RESPONSES
TO DISCOVERY REQUESTS                    -13-

1    DATED this 26th day of April, 2005.

2

3    *Mr S Lasnik*
     Robert S. Lasnik

4    United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    ORDER GRANTING MOTION TO COMPEL
      INITIAL DISCLOSURES AND RESPONSES
      TO DISCOVERY REQUESTS              -14-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAPITAL VENTURES INTERNATIONAL,

      Plaintiff,

      v.

NETWORK COMMERCE, INC., *et al.*,

      Defendants.

No. C02-0682L

ORDER REGARDING PRODUCTION
OF UNCONVERTED ELECTRONIC
DOCUMENTS

      This matter comes before the Court *sua sponte*. On April 26, 2005, the Court entered a discovery order which provided, in part, that "[i]f defendants have not yet uploaded and incorporated all of the electronic documents into a usable format, they shall, within two days of the date of this Order, provide a declaration of counsel to that effect and identify the date by which they expect to have completed the conversion . . . ." Order Granting Plaintiff's Motion to Compel Initial Disclosures and Responses to Discovery Requests at 13. Defense counsel has filed a statement indicating that defendants have not made any progress converting the remaining 30% of their electronic documents and do not intend to do so: defendants would prefer to provide "native data" to plaintiff, which could then process that data, or not, as it sees fit. This proposal is remarkably similar to that made by plaintiff at the beginning of this discovery dispute, with the exception that defendants want to provide plaintiff with copies of the relevant servers and hard drives (for a small fee) rather than turning over the hardware itself.

ORDER REGARDING PRODUCTION OF
UNCONVERTED ELECTRONIC DOCUMENTS

1                  Having reviewed defendants' proposal and the remainder of the record regarding

2  plaintiff's underlying motion to compel, the Court finds as follows:

3        (1) Contrary to defendants' assertion, the Court did address whether the general costs of

4  processing the data from servers and hard drives should be shifted to plaintiff.  They should not.

5  Plaintiff shall pay for their own copies of documents, servers, and/or hard drives produced by

6  defendants: it need not pay "any costs associated with uploading or incorporating documents

7  into the Concordance database."  Order of 4/26/05 at 13 (emphasis added).  The fact that

8  defendants have now replaced the word "uploading" with "processing" does not change the

9  allocation of costs established by the Court.

10      (2) Within 2 days of the entry of this Order, defendants shall make available to plaintiff's

11  counsel or their agent the servers and hard drives on which the remaining 30% of the electronic

12  data is found, along with an electronic and hard copy of any related indices.  All objections, with

13  the exception of those based on the attorney/client privilege, are waived.  Plaintiff's electronic

14  discovery expert shall have 90 days from the date of production to copy any or all of the data in

15  the servers and hard drives, after which the servers and hard drives shall be returned to

16  defendants' counsel.  Plaintiff shall bear the costs of copying the electronic data.  Twenty days

17  before any anticipated disclosure, plaintiff shall provide written notice to defendants regarding

18  any document originating from this production that plaintiff intends to disclosure to any person

19  or entity other than plaintiff's counsel, plaintiff's electronic discovery expert, or plaintiff's

20  documents vendor.  A copy of each document plaintiff intends to disclose shall be attached to

21  the notice.  Plaintiff shall bear the costs of providing this notice and copy.

22      (3)  Production of the electronic documents described in paragraph (2) is compelled and

23  involuntary.  The Court expressly finds that such production is a sanction imposed by the Court

24  and does not constitute a waiver of the attorney-client privilege.  Any privileged material made

25  available to plaintiff or its agents shall retain its privileged status and shall not be disclosed to

26

ORDER REGARDING PRODUCTION OF
UNCONVERTED ELECTRONIC DOCUMENTS   -2-

1  any person or entity other than plaintiff's counsel and their agents.  Upon receiving notice that

2  plaintiff intends to disclose one or more documents produced pursuant to this Order, defendants

3  shall thereafter have twenty days in which to identify documents in the set over which

4  defendants claim privilege.  Upon receipt of a privilege log regarding the documents over which

5  defendants assert privilege, plaintiff's counsel shall promptly delete all electronic copies and

6  destroy all hard copies of the identified documents in their possession or, within ten days of said

7  notice, file a motion with this Court challenging the assertion of privilege.  If defendants do not

8  assert the privilege within the twenty-day period, plaintiff's counsel may, consistent with any

9  applicable protective order, disclose to any person or entity the documents not identified as

10  privileged.

11

12       DATED this 2nd day of May, 2005.

13

14                                  _MM S Casnik_

15                                  Robert S. Lasnik
                                    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

ORDER REGARDING PRODUCTION OF
UNCONVERTED ELECTRONIC DOCUMENTS      -3-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAPITAL VENTURES INTERNATIONAL,

Plaintiff,

v.

NETWORK COMMERCE, INC., *et al.*,

Defendants.

No. C02-0682L

ORDER GRANTING PLAINTIFF'S
MOTION TO MODIFY MEANS OF
PRODUCING ELECTRONIC
DOCUMENTS

This matter comes before the Court on "Plaintiff's Motion to Modify Prior Order Regarding Production of Unconverted Electronic Documents." Dkt. # 132. Plaintiff seeks the production of certain native data files (rather than the hardware from which they were recovered) and an order directing defendants to cooperate in any future discovery disputes. Despite having rejected plaintiff's proposals before this motion was filed, defendants now agree that plaintiff is entitled to the native data files and they do not oppose most of the relief requested in plaintiff's motion.

On April 26, 2005, the Court entered a discovery order which noted, based on defendants' representations, that approximately 30% of defendants' electronic data had not been recovered from the servers and hard drives on which it had been stored during Network

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS

1   Commerce, Inc.'s operations.[1] Not knowing whether defendants had made any progress in

2   accessing this data while plaintiff's motion to compel was pending, the April 26th Order

3   provided, in part, that "[i]f defendants have not yet uploaded and incorporated all of the

4   electronic documents into a usable format, they shall, within two days of the date of this Order,

5   provide a declaration of counsel to that effect and identify the date by which they expect to have

6   completed the conversion . . . ." Order Granting Plaintiff's Motion to Compel Initial Disclosures

7   and Responses to Discovery Requests at 13. In response, defense counsel filed a statement

8   indicating that the remaining 30% of the electronic data had not been processed and that

9   defendants would not undertake that task because of the expense involved. Decl. of Counsel

10  (Dkt. # 129) at ¶¶ 3 and 7. Given this exchange, the Court had the impression that 30% of

11  defendant's electronic data had not been processed, that it was sitting on hard drives and servers

12  in defendant's storage areas, and that it was not yet in a format that could be of use in the

13  discovery process.

14  _____

15      [1] In the context of plaintiff's underlying motion to compel, defendants had submitted the
    declaration of Fay N.T. Kelley to explain the status of the various data caches within the possession and
16  control of defendants. That declaration noted in relevant part that:

17          LMC began capturing and processing NCI's electronic data and converting it into
18      upload files that could then be loaded onto a searchable "Concordance" database. . . .
            In July of 2004, LMC began work on extracting and processing the data contained
19      on the 74 loose hard drives. The procedure of extraction, processing, and uploading the
        data on the hard drives was the same as that already described for the servers. In July of
20      2004, LMC provided a report to me summarizing the data extracted from the hard drives
        using the Encase software. The report alone exceeded 66,000 pages.
21              Only e-mail data has been processed from the loose hard drives. No other files
22      have been processed from the loose hard drives. We have been told that approximately 80
        gigabytes of end-user files have not yet been processed from the loose hard drives.
23              We estimate the approximately 30% of the data contained on the loose hard drives
24      and 22 servers remains to be processed.

25  Decl. of Fay N.T. Kelley (Dkt. # 114) at ¶¶ 16, 19-21.

26  ORDER GRANTING PLAINTIFF'S MOTION TO
    MODIFY MEANS OF PRODUCING
    DEFENDANT'S ELECTRONIC DOCUMENTS      -2-

1    Having again reviewed the underlying memoranda regarding plaintiff's motion to

2 compel, the Court's orders, and the April 28, 2005, declaration of Brian Buckley, the Court

3 finds that its understanding of the relevant facts was reasonable in light of defendants'

4 statements and arguments. At no point did defense counsel mention that the "unprocessed"

5 electronic data had, in fact, been recovered from the original hardware and was preserved in

6 EnCase files that could easily be copied to a CD or other media. At no point did defendants

7 make any effort to clarify what they meant by "unprocessed," even though it should have been

8 clear that their definition was significantly different from that used by the Court and plaintiff.

9 Defendants' carefully-drafted documents and unexplained silences misled the Court regarding

10 facts that would have aided in the efficient resolution of the underlying discovery dispute.

11    Even after defendants revealed that their entire universe of electronic data had, in

12 fact, been processed and was in a format that would have allowed an immediate and cost-

13 effective transfer of responsive documents to plaintiff, defendants thwarted plaintiff's attempts

14 to reach a reasonable resolution of this matter. Despite the fact that the Court had unequivocally

15 ordered production of the "unprocessed" documents subject to any future claims of

16 attorney/client privilege, defendants refused to make those documents available in their most

17 accessible, least expensive form. Defendants' insistence on following the letter, rather than the

18 spirit, of the Court's order is unacceptable in the circumstances presented here. Even a

19 modicum of cooperation on defendants' part would have resulted in the production of the

20 EnCase files rather than their unexplained and seemingly unjustified insistence that the

21 hardware, and only the hardware, be produced. Plaintiff was forced to file this motion to

22 compel the production of the EnCase files: only at that point did defendants drop their

23 opposition to much of the relief requested.

24    From start to finish, defendants have engaged in sharp practices designed to delay

25

26 ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS        -3-

1    and increase the costs of the production ordered by the Court.  For example (and putting aside

2    the discovery practices which prompted plaintiff's underlying motion to compel):

3          -- defendants "produced" hardware to plaintiff in Vancouver, British Columbia, despite

4    the fact that, as recently as January 2005, these hard drives and servers had been located in

5    Seattle;[2]

6          -- defendants provided conflicting information regarding how many servers and hard

7    drives contained the "unprocessed" data;

8          -- defendants demanded that plaintiff immediately approve their production in a foreign

9    country and then berated plaintiff when they voiced the obvious objection less than 48 hours

10   after the production was made;

11         -- defendants withdrew reasonable offers to provide additional access to the underlying

12   data apparently for the purpose of punishing plaintiff for objecting to the Vancouver

13   production;[3] and

14         -- defendants insisted on bringing the hardware from Vancouver to Seattle despite

15   plaintiff's on-going attempts to reach a more sensible and cost-effective resolution of the

16   dispute.[4]

17   _____

18       [2]  See Decl. of Fay N.T. Kelley (Dkt. # 114) at ¶ 15.

19       [3]  Contrary to Mr. Buckley's assertion (E-mail from Brian Buckley to Duffy Graham, dated May

20   9, 2005, attached as Ex. 3 to the Decl. of Duffy Graham (Dkt. # 133)), defendants offered to provide
     copies of the "unprocessed" data after the Court ordered that the hard drives and servers be produced (E-

21   mail from Kit Roth to Duffy Graham, dated May 3, 2005, attached as Ex. 1 to the Decl. of Duffy Graham
     (Dkt. # 133).  That offer was withdrawn when plaintiff objected to defendants' production of the

22   hardware in Vancouver, British Columbia.  E-mail from Kit Roth to Duffy Graham, dated May 5, 2005,
     attached as Ex. 1 to the Decl. of Duffy Graham (Dkt. # 133).

23

24       [4]  Plaintiff noted that defendants' decision to transport the servers and hard drives from
     Vancouver was precipitous and correctly stated that "[b]ringing the hardware to Seattle likely will not

25   resolve our major objection to what NCI has done, and is doing, in what appears to be a continuing

26   ORDER GRANTING PLAINTIFF'S MOTION TO
     MODIFY MEANS OF PRODUCING
     DEFENDANT'S ELECTRONIC DOCUMENTS        -4-

1    Overall, defendants have proven themselves recalcitrant and uncooperative, such that the relief

2    sought by plaintiff, including the ability to demand that defendants utilize efficient production

3    methods and the production of native data from all of defendants' hardware, is both necessary

4    and appropriate.

5        It is therefore ORDERED that:

6        (1)    Paragraph (2) of the Order Regarding Production of Unconverted Electronic

7    Documents (Dkt. # 130) is hereby modified, consistent with paragraphs (4) and (5) below, such

8    that defendants need only make available to plaintiff pursuant to its requirements the 15 hard

9    drives that defendants have identified as containing "dead" data and from which defendants have

10   not extracted or uploaded any data.

11       (2)    Counsel are under a continuing obligation, "as officers of the court, to work

12   towards the prompt completion of each case and to minimize the costs of discovery."

13   Introduction to the Local Civil Rules of the Western District of Washington.  In addition, "[a]n

14   attorney or party who without just cause fails to comply with any of the Federal Rules of Civil

15   or Criminal Procedure, or [the local rules of this district], or who presents to the court

16   unnecessary motions or unwarranted opposition to motions, . . . or who otherwise so multiplies

17   or obstructs the proceedings in a case as to increase the cost thereof unreasonably and

18   vexatiously, may, in addition to, or in lieu of the sanctions and penalties provided elsewhere in

19   these rules, be required by the court to satisfy personally such excess costs, and may be subject

20   to such other sanctions as the court may deem appropriate."  Local General Rule 3(d).

21       Defense counsel's conduct to date has not satisfied these provisions: future failures

22

23   _____

24   attempt either to delay discovery, to wring cost-sharing from Plaintiff beyond [what] the Court has
     required, or both."  E-mail from Duffy Graham to Kit Roth, dated May 5, 2005, attached as Ex. 1 to the
25   Decl. of Duffy Graham (Dkt. # 133).

26   ORDER GRANTING PLAINTIFF'S MOTION TO
     MODIFY MEANS OF PRODUCING
     DEFENDANT'S ELECTRONIC DOCUMENTS        -5-

to produce responsive information in a prompt, cost-effective manner will result in significant monetary sanctions against counsel themselves, preclusive rulings, and/or the waiver of the attorney/client privilege. Defendants and their counsel are specifically directed to cooperate with plaintiff to ensure that full and complete responses to discovery, consistent with the Court's April 26, 2005, Order Granting Motion to Compel Initial Disclosures and Responses to Discovery Requests, are provided to plaintiff in the most efficient and expeditious manner. To the extent that the documents to which plaintiff is entitled can be provided in a means or manner that is plainly less expensive and/or more efficient than that set forth within the precise contours of the Court's orders, defendants shall not refuse to consider or execute the alternative production method simply because it has not been specifically ordered by the Court.

(3)    Toward the goals articulated in paragraph (2) above, within five days of the date of this Order, the electronic document and discovery consultants and vendors of both defendants and plaintiff shall meet, either in person or telephonically, to address the most inexpensive and most efficient means of producing electronic documents in compliance with this Court's orders. Each party shall bear the expense of having its own vendors, consultants, and/or attorneys participate in this meeting.

(4)    Defendants shall, within eleven days of the date of this Order, make available to plaintiff for copying the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 4 servers and the 59 hard drives (*i.e.*, the 74 total hard drives less the 15 containing "dead" data) identified by defendants as containing their so-called "unprocessed" electronic documents. Plaintiff shall bear the expense of copying these files. In the alternative, defendants shall provide to plaintiff complete copies of the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 4 servers and the 59 hard drives identified by defendants as containing their so-called "unprocessed" electronic documents within eleven days of the date of this Order. Should defendants opt for

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS      -6-

this alternative, plaintiff shall pay defendants' actual cost to provide such copies or $2000, whichever is less, and defendants shall copy the EnCase files on to clean, new hard drives.

(5)     Defendants shall, within eleven days of the date of this Order, make available to plaintiff for copying the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 14 servers identified by defendants as containing their "processed" electronic documents.  Plaintiff shall bear the expense of copying these files.  In the alternative, defendants shall provide to plaintiff complete copies of the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 14 servers within eleven days of the date of this Order.  Should defendants opt for this alternative, plaintiff shall pay defendants' actual cost to provide such copies or $1000, whichever is less, and defendants shall copy the EnCase files on to clean, new hard drives.

(6)     Production of the electronic data described in paragraphs (1), (4), and (5) above is compelled and involuntary.  The Court expressly finds that such production is a sanction imposed by the Court and does not constitute a waiver of the attorney-client privilege.  Any privileged material made available to plaintiff or its agents shall retain its privileged status and shall not be disclosed to any person or entity other than plaintiff's counsel and their agents.  Upon receiving notice that plaintiff intends to disclose one or more documents produced pursuant to this Order, defendants shall thereafter have twenty days in which to identify documents in the set over which defendants claim privilege.  Upon receipt of a privilege log regarding the documents over which defendants assert privilege, plaintiff's counsel shall promptly delete all electronic copies and destroy all hard copies of the identified documents in their possession or, within ten days of said notice, file a motion with this Court challenging the assertion of privilege.  If defendants do not assert the privilege within the twenty-day period, plaintiff's counsel may, consistent with any applicable protective order, disclose to any person or entity the documents not identified as privileged.

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS      -7-

1

2          DATED this 13th day of June, 2005.

3                                    *Robert S. Lasnik*

4                                    Robert S. Lasnik
                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS    -8-