# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : MASTER FILE NO. : 3:00CV01884(DJS) |
| This document relates to: | : : October 12, 2005 |
| ALL ACTIONS | : |

**DECLARATION OF MICHAEL FARLEY IN SUPPORT OF DEFENDANT JAY S. WALKER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ELECTRONIC DISCOVERY**

I, Michael Farley, do hereby swear and affirm as follows:

1. I am over 21 years of age and fully competent to make this Declaration. I make this Declaration of my own personal knowledge and for any uses allowed by law.

2. For the past 13 years I have been in the employ of Paul, Hastings, Janofsky & Walker, LLP. My current position is the East Coast Coordinator for the Practice Support Department.

3. I have received two boxes containing a total of 181 electronic tape media. All of these tapes appear to be DLT type of varying data storage capacities, ranging from 20 to 80 gigabytes ("Gb").

4. The only information initially available to me about these tapes was the handwritten labels on the tapes.

5. Paul, Hastings, Janofsky & Walker LLP does not have the equipment or software needed to restore these tapes from their current inaccessible, compressed format. It is necessary to hire an outside vendor to restore and process the tapes. Paul, Hastings, Janofsky & Walker LLP has hired Applied Discovery, an electronic discovery vendor owned by LexisNexis.

6. To convert the currently inaccessible data into an electronically searchable format for determination of responsiveness and privilege, the tapes first will have to be restored to their native file format at a cost of about $200 to $800 per tape, depending on the type of data each tape contains, and then loaded into the vendor's review tool for electronic review at $0.09 to $0.19 per page, depending on data volume.

7. To produce the responsive and non-privileged documents securely, the data must be converted to an image format, redacted where necessary, and "branded" with a Bates number and a confidentiality designation. To brand these documents and produce them in an image format, there will be an additional cost per page of $0.02 to $0.07 per page, depending on volume.

8. There also may be other costs related to set-up, filtering, de-duplicating, and hosting associated with managing the data if the volume is larger than what can be handled in-house. It is likely, however, that these processes will reduce the amount of data that ultimately will need to be loaded into the vendor's review tool for determination of responsiveness and privilege. However, there is no way to estimate the amount by which the data set can be reduced.

9. Sixteen of the 181 back-up tapes were sent to Applied Discovery in an effort to determine the number of pages potentially contained on the entire group of tapes. Of these 16 tapes, Applied Discovery was unable to restore two. Thus, it only was possible to restore 14 of the 16 tapes to a native file format. The total amount of data on the 14 tapes was determined by Applied Discovery to be approximately 126 Gb. Based on the amount of data on those 14 tapes, I originally estimated that all 181 tapes contained approximately 1,629 Gb of data. Therefore,

the page number and cost estimates in paragraphs 9-11 of my April 5, 2005 Declaration are based on 1,629 Gb.

10. Subsequently, two more tapes were restored. The amount of data on all 16 sample tapes was determined to be approximately 127 Gb. Based on the amount of data on all 16 tapes (as opposed to the amount of data on the original group of 14), I now estimate that all 181 tapes contain 1,436 Gb of data. Therefore, the page number and cost estimates contained in this declaration are based on 1,436 Gb of data rather than 1,629 Gb of data.

11. Common electronic discovery estimates for the number of pages per Gb are 50,000 to 80,000 pages per Gb. Therefore, I estimate that the total number of pages on the 181 tapes is between 71,834,000 and 114,935,000.

12. Based on the estimated page range, I estimate that the vendor cost to restore to native file format, convert to an image format, load into a review tool, Bates stamp, and produce all of the data potentially contained on the 181 tapes will range between $14,512,000.00 and $23,132,000.00. This does not include any attorney or paralegal time required for the review and production of the data. If de-duplicating and filtering the data reduces the size of the data set that needs to be loaded into the vendor's review tool for determination of responsiveness and privilege, the cost will be less, but there is no way to estimate by how much.

13. There may be some tapes that the vendor will be unable to restore, just as it was unable to restore two of the tapes in our original sample set (*see supra* ¶ 9). It may be possible for a forensic expert to restore all or part of such problematic tapes, but the costs and time associated with such a process could be significant. The estimates in this Declaration do not take such additional costs and time into account. Moreover, it is possible that even a forensic expert will not be able to restore certain tapes.

14. When documents are simply restored to a native file format, without being loaded into a review tool, they cannot be electronically searched, indexed, or organized. The only way to review them is manually, page by page.

15. Electronic documents must be loaded into a review tool to enable Boolean searching, which allows, *inter alia*, searching for words in various proximities to other words, searching for documents containing some words but not others, and designing searches based on the substantive content of the data. This searching capability allows the reviewing party to review electronic data quickly and efficiently. In addition, a review tool must be used to redact privileged materials and stamp the production set with Bates numbers.

16. Documents in a native file format cannot be produced securely. That is, the visual integrity of native files cannot be preserved as it is for hard copies, electronic documents in a PDF or TIFF format, or other static images. For example, a document originally created in Microsoft Word or Outlook, if produced in its native file format, would be delivered to the requesting party as a Word or Outlook file. Hypothetically, the requesting party would be able to edit that document using Microsoft Word or Outlook, and the producing party would have no evidence of the document's alteration.

17. Documents in a native file format cannot be Bates numbered.

18. Documents in a native file format cannot be stamped with confidentiality designations.

19. Documents in a native file format cannot be redacted.

20. When native files are converted to an image format such as TIFF or PDF, the metadata is preserved, and the vendor can provide searchable databases of both the data and the metadata.

21. Inclusion of the metadata substantially would increase the amount of data to be reviewed.

22. I understand from Applied Discovery that it will take approximately 4 to 6 weeks to restore the data on 181 back-up tapes to its native-file format.

23. I understand that it could take up to 3 to 4 months to load the native file data from the 181 back-up tapes into a review tool. It will take additional time to run searches, review the documents, and make any necessary redactions. It also will take additional time to brand the documents with Bates numbers and confidentiality designations and produce them.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 12, 2005.

_____
Michael Farley