UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : MASTER FILE NO. : 3:00CV01884(DJS) |
| This document relates to: | : : October 21, 2005 |
| ALL ACTIONS | : |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF ELECTRONIC DISCOVERY**

| | |
|---|---|
| **SCOTT + SCOTT, LLC** | **JOHNSON & PERKINSON** |
| David R. Scott | Dennis J. Johnson |
| Geoffrey M. Johnson | Jacob B. Perkinson |
| Erin Green Comite | Peter J. McDougall |
| 108 Norwich Avenue | 1690 Williston Road |
| P.O. Box 192 | P.O. Box 2305 |
| Colchester, CT  06415 | South Burlington, VT 05403 |
| | |
| **Co-Lead Counsel** | **Co-Lead Counsel** |
| | |
| | **STULL, STULL & BRODY** |
| | Jules Brody |
| | Aaron Brody |
| | 6 East 45th St. |
| | New York, NY 10017 |
| | |
| | **Co-Lead Counsel** |
| | |
| | SCHATZ & NOBEL |
| | Andrew M. Schatz |
| | Jeffrey S. Nobel |
| | One Corporate Center |
| | 20 Church Street, Suite 1700 |
| | Hartford, CT 06106 |
| | |
| | **Liaison Counsel** |

## **INTRODUCTION**

The Priceline Defendants' and Defendant Walker's opposition papers try to justify their conduct in connection with: (1) the fully accessible and searchable "snapshot" and "ex-employee tapes," which together contain every piece of electronic data ever placed on Priceline's file and email servers from the inception of the company to the date the snapshot was taken; and (2) the WebHouse and Perfect Yardsale "backup tapes," which contain electronic data from the WebHouse and Perfect Yardsale servers. However, Defendants' opposition papers are more notable for what they omit than for what they actually say:

- The Priceline Defendants never explain why they forced Plaintiffs to file a motion to compel before Defendants produced a single document from the snapshot and the ex-employee tapes when the snapshot and ex-employee tapes were fully accessible and searchable during the entire discovery period and Defendants have had Plaintiffs' document requests since November 2004.

- The Priceline Defendants never explain why they chose to hold back production of the fully accessible and searchable snapshot following this Court's order on the first motion to compel even though they did not mention the snapshot when opposing the motion to compel and focused only on the existence of "inaccessible" backup tapes as being the reason the parties needed to meet and confer on the electronic documents.

- The Priceline Defendants never explain why they delayed the Court-ordered meet and confer process for over six months by refusing to timely respond to Plaintiffs' many requests for information and by canceling the Rule 30(b)(6) deposition on the electronic documents and then failing to reschedule the deposition in a timely fashion.

- The Priceline Defendants never explain that the parties' so-called "agreement" on the snapshot and ex-employee tapes was predicated on Defendants getting Plaintiffs the electronic documents from the snapshot and ex-employee tapes by September 16, 2005 so that Plaintiffs would not have to file a motion to compel. Defendants rejected this proposal and now want to cherry pick the conditions from the proposal that suit their own interests without having to live up to their part of the proposed deal.

- Defendant Walker never explains why the backup tapes should be restored using his wasteful and unnecessary multi-million dollar approach (which he now claims will cost between $14 million and $23 million after earlier claiming it would cost between $26 million and $200 million) when Plaintiffs have consulted a computer forensic specialist who can restore the tapes for $89,200 and Plaintiffs are willing to pay their own costs to search the tapes.

1

## ARGUMENT

A.   **The Priceline Defendants Should Be Compelled To Produce The Entire Snapshot And All Of The Ex-Employee Tapes In Their Accessible And Searchable Format.**

The Priceline Defendants have filed opposition papers in which they gloss over everything that has transpired in connection with the snapshot and ex-employee tapes over the past eleven months. Indeed, the Priceline Defendants fail to mention that Plaintiffs first raised the electronic document issue all the way back in October 2004 at the very first meet and confer, or that Plaintiffs raised the issue again in February 2005, to which the Priceline Defendants responded on March 1, 2005: "We are well aware that data stored electronically is discoverable and, as we stated during our very first meet and confer, will be searching vast amounts of electronically stored data in the course of discovery here …. *[A] snapshot of the data on priceline's corporate file and e-mail servers was made years before you served your document requests, and we are in the process of searching that repository for responsive documents*." Exhibit C to Declaration of Peter J. McDougall ("McDougall Decl.") (Doc. 212-10).

Despite their earlier representations about searching the snapshot, the Priceline Defendants now want to go back to square one with the snapshot and ex-employee tapes, arguing that they should be given several additional months to review and produce these materials. *See, e.g.,* Doc. 227, at 11 (claiming that they will not be able to produce all emails until January 31, 2006); *id.* ("We anticipate that the production of non-email documents from the snapshot and the departed employee tapes will take several months."). The Priceline Defendants claim that they need more time to remove privileged documents. They also claim that the production must be withheld so that they can bates label the documents. The Priceline Defendants fail to recognize, however, that there would be no need to hold back the production *if they had started to search the snapshot back in*

2

*March 2005, as they represented in their March 1 letter, and had been reviewing and producing responsive materials from the snapshot on a rolling basis over the past eight months.*

The Priceline Defendants also fail to address any of the events surrounding Plaintiffs' first motion to compel. In that motion, Plaintiffs sought to compel the production of paper and electronic documents. In response, the Priceline Defendants told the Court that the parties needed another meet and confer because "*a great deal* of the potential production has been stored and preserved electronically by way of computer tapes" and "producing documents from tapes is very burdensome and costly because it involves restoring tapes and converting them into searchable format before the search and review of the information can even take place." Doc. 161, at 14. In their papers and at the hearing, the Priceline Defendants never mentioned the snapshot or the ex-employee tapes, even though these *fully accessible and searchable materials contain every piece of electronic data placed on Priceline's corporate servers from the inception of the company to February 2002*. Nevertheless, the Priceline Defendants still chose to hold back production of the fully accessible and searchable snapshot following this Court's April 6 Order on the motion to compel, thereby delaying production of these highly relevant materials several months.

The Priceline Defendants also do not explain: (1) why they did not tell Plaintiffs that they were holding back materials from the snapshot when it was clear from Plaintiffs' correspondence that Plaintiffs believed the purpose of the meet and confer was to deal with the "inaccessible" backup tapes, not the fully accessible and searchable snapshot (Exhibit D to McDougall Decl.); (2) why they failed to timely respond to Plaintiffs' attempts to seek information about the electronic documents (McDougall Decl., ¶ 11); or (3) why they cancelled the Rule 30(b)(6) deposition on electronic documents two days before the deposition and refused to reschedule it for two months (Exhibit J to McDougall Decl.).

3

The Priceline Defendants' conduct when dealing with the snapshot and ex-employee tapes speaks for itself. This is a case where "Defendants' carefully drafted documents and unexplained silences misled" the Plaintiffs and the Court "regarding facts that would have aided in the efficient resolution of the underlying discovery dispute." *Capital Ventures Int'l v. Networks Commerce, Inc.,* No. C02-682L (W.D. Wash. May 27, 2005) (attached to Doc. 212-2 as Exhibit A). Indeed, if the Priceline Defendants had informed the Court when opposing Plaintiffs' first motion to compel that they planned to delay production of the accessible and searchable snapshot and ex-employee tapes, Plaintiffs would have insisted that the Priceline Defendants produce these materials on a rolling basis with all documents being produced on or before July 31, 2005. As things now stand, however, Plaintiffs still have not received the bulk of these materials, which has kept them from taking fact depositions and has needlessly delayed Plaintiffs' ability to prosecute this case.

Finally, in their opposition papers, the Priceline Defendants misconstrue the so-called "agreement" that the parties reached in early August 2005 on the snapshot and ex-employee tapes. In Plaintiffs' August 15, 2005 letter, Plaintiffs agreed to a proposed approach whereby the Priceline Defendants would initially limit their search to the email accounts of 113 individuals and would use search terms to search for other relevant emails and for relevant non-email documents on the snapshot and ex-employee tapes. Exhibit L to McDougall Decl. This entire approach, however, ***was predicated on the Priceline Defendants getting Plaintiffs the electronic documents on the snapshot and ex-employee tapes by September 16, 2005***. *Id.* Plaintiffs recognized that, if the Priceline Defendants forced Plaintiffs to file a motion to compel, they would not receive any of the electronic materials for several months. Thus, Plaintiffs agreed to the Priceline Defendants' more limited conditions in return for the Priceline Defendants' agreement that they would produce documents by September 16 and would not force Plaintiffs to file a motion to compel on the issue.

4

In response, the Priceline Defendants rejected the approach, claiming, without explaining why, that the "proposed timetable for the production of electronic material is completely unrealistic." Exhibit M to McDougall Decl. Additionally, in a final attempt to resolve the snapshot issue, Plaintiffs asked the Priceline Defendants, in a letter send on August 19, to provide a date that Defendants' believed was reasonable for the completion of the production from the snapshot. Exhibit N to McDougall Decl. The Priceline Defendants failed to provide any date. Defendants cannot support their failure to provide discovery by relying on a proposed resolution they never agreed to.

B.  **The Priceline Defendants And Defendant Walker Should Be Compelled To Produce The WebHouse And Perfect Yardsale Backup Tapes In Their Native Format.**

The other area of dispute involves the 223 WebHouse and Perfect Yardsale backup tapes that the Priceline Defendants and Defendant Walker currently have in their possession. Plaintiffs have moved to compel the production of these tapes in their "native format" – *i.e.,* the format in which the electronic documents are kept in the ordinary course of business. Producing documents in their native format has numerous advantages. First, it only costs $89,200 to restore all 223 tapes to their native format, whereas Defendant Walker now estimates that his alternative approach will cost anywhere from $14 million to $23 million (when opposing Plaintiffs' first motion to compel, he told the Court that these costs would range from $26 million to $200 million). Moreover, the native format approach is the only way to capture crucial embedded information and metadata about the documents, and the tapes can be restored to their native format in a little over a week, whereas Defendant Walker's alternative approach will take several months, if not longer.

In response, Defendant Walker continues to maintain that the only appropriate way to deal with the tapes is to convert every piece of electronic data on the tapes to a TIFF or PDF file so that it can be searched using his outside vendor's own proprietary software. Defendant Walker devotes only a few pages in his opposition to explaining why his approach is necessary. Doc. 230*,* at 17-18,

5

20-21. He then goes on to spend the rest of his opposition arguing that all costs under his multi-million approach should be shifted to the Plaintiffs. *Id.*, at 8-17. Defendant Walker's reasons for focusing on cost-shifting are obvious. He has picked the most expensive and cost prohibitive approach in order to ratchet up the costs and then argues in favor of cost-shifting in hopes that the end result will be the exclusion of the damaging information on the backup tapes from the case.[1]

Even the Priceline Defendants have now chosen to abandon Defendant Walker's costly and wasteful approach. Doc. 227, 12-13. Indeed, the Priceline Defendants, for the first time, admit in their opposition papers that the information on the tapes can be searched using computer forensic software once the tapes are restored to their native format. *Id*. This is a point that they refused to acknowledge before Plaintiffs filed the motion to compel. The Priceline Defendants also now apparently agree that Defendants should pay the costs to restore the backup tapes to their native format. *Id.*[2] The Priceline Defendants go on, however, to propose that the parties "revisit" the

---

[1] Defendant Walker raises three purported "problems" with Plaintiffs' native format approach, none of which carry any weight. Doc. 230, at 17-18. First, he claims that Defendants will have no way to protect privileged and work-product materials if documents are produced in their native format. *Id.* This argument improperly assumes that he is entitled to assert a privilege with respect to documents that belong to WebHouse and Perfect Yardsale – two entities he previously characterizes as being separate and distinct "third party licensees." Defendants' privilege concerns can also be easily addressed through the use of a claw-back order, an approach that is addressed in detail in section c below. Second, Defendant Walker claims that there is no way to protect the integrity of the documents if they are produced in their native format. *Id.,* at 20. This is also incorrect. Plaintiffs' computer forensics consultant has access to inexpensive software that can easily and quickly compare all exhibits used in this case to the originals to ensure that no changes have been made to the documents themselves. Finally, Defendants argue that the documents must be bates labeled. *Id.,* at 21. Plaintiffs submit that it is not worth spending tens of millions of dollars to bates label the documents. Rather, the parties can easily keep track of the documents by placing exhibit numbers on documents used during the course of the case.

[2] Although the Priceline Defendants have agreed to pay the $16,800 it will cost to restore the tapes to their native format, Plaintiffs are concerned with the Priceline Defendants' statement that "should it prove more expensive to restore the tapes than anticipated, [Defendants] will not be obligated to pay a penny more." Doc. 227, at 13. Plaintiffs' computer forensics specialist, Allison Griffin, based her figures for restoring the backup tapes on the information that Defendants themselves provided during the meet and confers. If the Priceline Defendants have reason to believe that it will "prove more expensive to restore the tapes than anticipated," then they should share this specific information with Plaintiffs and the Court rather than holding it back and trying to lock Plaintiffs into the $16,800 costs.

6

production issue once the tapes are restored. *Id.*, at 17. This is essentially the same approach they took when responding to Plaintiffs' first motion to compel. The Priceline Defendants presumably want the parties to hold another meet and confer on the issue before filing additional briefs so that they can delay production of the backup tapes several months before the issue is even considered.

The Priceline Defendants refuse to recognize that, due to their extensive delay on the electronic document issues, Plaintiffs are no longer in a position to wait six to twelve months before receiving the information on the backup tapes (which could have been produced months ago). Plaintiffs need this information now so that they can start to take fact depositions in the case. Most of the events at issue in this case occurred in late 1999 and throughout 2000. This makes it all too easy for deponents to claim that they "do not remember" or "do not recall" when confronted with damaging documents or asked important questions at the depositions. Under Plaintiffs' approach, Defendants simply need to restore the tapes to their native format and then send the Plaintiffs a copy of the restored tapes. The restoration process can be completed in a matter of weeks, if not sooner. Plaintiffs are then free to search and review the restored backup tapes at their own expense, and Defendants are free to do the same. This eliminates the need for further delay. This is the only approach that keeps the case moving forward and, accordingly, this Court should order the Defendants to produce the restored tapes.

C.  **A Claw-Back Order Is The Best Way To Deal With Defendants' Concerns About Any Potential Attorney-Client Privilege.**

Defendants devote a good portion of their opposition papers addressing the attorney-client privilege. The Priceline Defendants argue that they should not be compelled to produce the entire snapshot and ex-employee tapes in their accessible and searchable format because the snapshot and ex-employee tapes may contain information protected by the attorney-client privilege. Doc. 227, at 7. The Priceline Defendants and Defendant Walker raise the same issue when addressing the 223

7

WebHouse and Perfect Yardsale backup tapes. *Id.*, at 13; Doc. 230, at 17. The fundamental flaw with Defendants' argument is that their concerns about the attorney-client privilege can easily be addressed through the use of a "claw-back" order. *See, e.g.,* Hon. Lee H. Rosenthal, 2005 Report Of The Civil Rule Advisory Committee Regarding Proposed Amendments to Federal Rules, at 52-56 (Revised July 25, 2005) (attached as Exhibit A); *see also Zubulake,* 216 F.R.D. at 290; The Sedona Conference, *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* Comment 10a (March 2003).[3]

The proposed amendments to the Federal Rules, which the Federal Judicial Conference approved on September 20, 2005, are directly on point. As the Civil Rules Advisory Committee (the "Committee") explained in its recent report to the Federal Judicial Conference:

> *The Committee's more recent focus on electronic discovery revealed that the problems of privilege review are often more acute in that setting than with conventional discovery. The volume of electronically stored information responsive to discovery and the varying ways such information is stored and displayed make it more difficult to review for privilege than paper. The production of privileged material is a substantial risk and the costs and delay caused by privilege review are increasingly problematic. The proposed amendment to Rule 26(b)(5) addresses these problems by setting up a procedure to assert privilege and work product protection claims after production.*
>
> Under the proposed rule, if a party has produced information in discovery that it claims is privileged or protected as trial-preparation material, that party may notify the receiving party of the claim, stating a basis for it. After receiving notification, the receiving party must return, sequester, or destroy the information, and may not use or disclose it to third parties until the claim is resolved . . . . *[T]he amendment sets up a procedure to allow the responding party to assert a claim of privilege or of work product protection after production . . . . It is a nod to the pressures of litigation with the*

---

[3] A claw-back order is not needed to protect information on the WebHouse and Perfect Yardsale backup tapes because those materials belong to parties that the Defendants themselves have characterized as separate and distinct "third-party licensees," and, accordingly, Defendants have no privilege to assert with respect to those documents. However, Plaintiffs do not object if the Court enters a claw-back order that covers those materials as well.

8

> *amount and nature of electronically stored information available in the present age*.

*Id.* at 52. The language of the proposed amendment to Rule 26(b)(5) provides:

> (B) If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for determination of a claim. If the receiving party discloses the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

2005 Advisory Committee Report, at 55-56 (Exhibit A). This is the exact approach that Plaintiffs are proposing here. Accordingly, Plaintiffs submit that the Court follow the Federal Judicial Conference's approach and "set[] up a procedure to assert privilege and work product protection claims after production." *Id.* at 52.[4]

The Federal Judicial Conference's "claw-back" approach is particularly appropriate here given the huge volume of electronic documents on the snapshot, ex-employee tapes and backup tapes and the "substantial cost and delay caused by privilege review." *Id.* There is no question that a full blown privilege review before production will be incredibly costly, difficult and will substantially delay the case. The Federal Judicial Conference's approach is also appropriate given

---

[4] Defendants raise two objections to the proposed "claw-back" approach. First, Defendant Walker claims that, if privileged documents are produced under a claw-back order, they could be subject to claims of waiver in a subsequent case. This is not correct. Rather, under the full faith and credit clause of the U.S. Constitution, a court in any later case would be required to give full faith and credit to this Court's determination that the production of the electronic documents does not constitute a waiver of the attorney-client privilege or work-product doctrine. Second, the Priceline Defendants claim that "[P]laintiffs' approach does not allow Defendants' counsel to review documents for privilege before they are produced. We are entitled to do this." This argument fails to acknowledge the realities of electronic discovery – realities that have led the Federal Judicial Conference to amend the Federal Rules. Their argument also fails because it ignores the fact that Defendants themselves have delayed producing the documents for nearly a year and have not been forthcoming on the electronic document issues with either the Plaintiffs or the Court.

9

that Defendants have done nothing with the backup tapes for the past year, have told Plaintiffs and the Court that the backup tapes would cost tens of millions to hundreds of millions to restore when it could be done for less than $90,000, have seized on every opportunity to delay electronic discovery in the case and have not been forthcoming with Plaintiffs or the Court on the electronic discovery issues.  Defendants' conduct has pushed back fact discovery nearly a year and has kept Plaintiffs from taking the bulk of the fact depositions (which were scheduled to begin on April 1, 2005), thereby prejudicing Plaintiffs' ability to discover relevant information in this case.  Plaintiffs should not have to wait any longer to receive responsive electronic documents.  Accordingly, this Court should adopt the Federal Judicial Conference's "claw-back" approach and should order Defendants to produce the entire snapshot and all of the ex-employee tapes immediately, and all of the backup tapes once the tapes have been restored to their native format.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its motion to compel electronic discovery in its entirety and: (1) compel the Priceline Defendants to immediately produce the entire snapshot and all ex-employee tapes in their accessible and searchable format; and (2) compel the Priceline Defendants and Defendant Walker to take immediate steps to restore and then immediately produce all 223 of the WebHouse and Perfect Yardsale backup tapes.

Dated: October 21, 2005                         Respectfully submitted,

                                                SCOTT + SCOTT, LLC

                                                     /s/  ERIN GREEN COMITE
                                                David R. Scott (ct16080)
                                                Geoffrey M. Johnson
                                                Erin Green Comite (ct24886)
                                                108 Norwich Avenue
                                                P.O. Box 192
                                                Colchester, CT  06415
                                                Telephone: (860) 537-5537

Facsimile: (860) 537-4432

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone:  (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2005, a copy of the foregoing REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DISCOVERY was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

      /s/   Erin Green Comite

      David R. Scott (CT 16080)
      Geoffrey M. Johnson
      Erin Green Comite (CT 24886)
      Scott + Scott LLC
      P.O. Box 192
      108 Norwich Avenue
      Colchester, CT  06415
      P: (860) 537-5537
      F: (860) 537-4432
      drscott@scott-scott.com
      ecomite@scott-scott.com