**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re: Priceline.com Securities Litigation | : | Master File No. 3:00cv1884 (DJS) |
| This document relates to: | : | |
| ALL PENDING ACTIONS | : | |
| | : | February 3, 2006 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY FROM DELOITTE & TOUCHE, LLP**


Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

*Attorneys for Defendants priceline.com Inc., N.J. Nicholas, Daniel H. Schulman and Richard S. Braddock*

**Citation Conventions**

The following conventions are used throughout this memorandum.

- "Pl. Br." for references to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Third Motion to Compel Discovery from Deloitte & Touche, LLP, dated December 14, 2005.
- "Seideman Decl." for references to the Declaration of Evan S. Seideman, dated February 3, 2006.

Defendants priceline.com, Inc. ("priceline"), N.J. Nicholas, Daniel H. Schulman and Richard S. Braddock (collectively, "Defendants") submit this memorandum of law and the Declaration of Evan S. Seideman in opposition to plaintiffs' third motion to compel discovery from Deloitte & Touche, LLP.

## Introduction

Plaintiffs' motion seeks an Order compelling nonparty Deloitte & Touche, LLP ("D&T") to produce one document that it withheld, at Defendants' request, from its response to plaintiffs' document requests. Defendants requested that D&T withhold the document because it is protected by the attorney-client privilege. Defendants provided plaintiffs with a privilege log listing the document.

In an effort to resolve plaintiffs' motion without the involvement of the Court, Defendants offered to instruct D&T to produce the document on the condition that plaintiffs agree that such production would not waive any applicable privilege as to any other document— i.e., that the production would not effect a subject matter waiver. Plaintiffs refused that offer, stating: "We are not willing to make concessions to obtain a document that we believe should be produced anyway." (Exhibit A.) The stated basis for plaintiffs' refusal is plainly meritless. According to plaintiffs, the document is not privileged. If that were true, its production could not waive any privilege. Accordingly, plaintiffs would not have been conceding anything by accepting Defendants' offer. Obviously, the purpose of Defendants' offer was to accommodate both parties. Plaintiffs wanted the document. Defendants were willing to give plaintiffs the document, but because it is privileged, Defendants feared that plaintiffs would try to use its production to effect a subject matter waiver. Plainly that fear was well-founded.

Further, although the document at issue is responsive to plaintiffs' sweeping subpoena to D&T, it is not at all relevant to any issue in this case. That is plain from the description of the document on the privilege log—"Advice on Skadden's proposed structure re: Priceline mortgage–$1.5mm Receivable". There is not a single allegation in the Consolidated Amended Complaint that refers or relates to PricelineMortgage in any way. Plaintiffs' speculation that the document "appear[s] to relate to Plaintiffs' claim that Priceline structured its financial transactions to evade financial reporting requirements" is blatant overreaching. (Pl. Br. at 1.) The withheld document has nothing whatsoever to do with financial reporting requirements, and there is absolutely no basis for thinking otherwise.

**The Document**[1]

The document at issue contains an email from Evan S. Seideman, Esq., who was in-house counsel for priceline, to two individuals at D&T, Robert Bass and Dave Acampora. That email includes an attachment marked "ATTORNEY WORK PRODUCT; PRIVILEGED AND CONFIDENTIAL". Mr. Seideman's email indicates that the attachment was prepared by Steve Daniels, an attorney at Skadden, Arps, Slate, Meagher & Flom LLP, counsel to priceline. The document also contains a one-line, seven-word email from Robert Bass to Thomas Restivo (also of D&T), in which Mr. Bass asks Mr. Restivo to respond to Mr. Seideman's email.

In his declaration, which is filed concurrently with this brief, Mr. Seideman explains that the attachment prepared by Mr. Daniels "contains legal advice to priceline regarding alternative structures for a loan between priceline and Allprice Holdings, Inc.".

[1] If the Court wishes, Defendants will be happy to provide the document for the Court to review in camera.

(Seideman Decl. ¶ 4.) In that attachment, Mr. Daniels discusses the legal ramifications for priceline of each of the potential loan structures. Mr. Seideman's email to D&T refers to the alternative structures contemplated by Mr. Daniels and requests D&T's assistance in understanding those structures. Mr. Seideman explains:

> "In order to advise priceline effectively with respect to the alternative contractual structures proposed by Mr. Daniels, I needed to understand sophisticated accounting concepts implicated by those alternatives that were beyond my expertise. Accordingly, in my September 12, 2000 email, I requested that D&T assist me in understanding Mr. Daniels' legal advice. I intended my email to be a privileged, confidential communication, and I believed that D&T would treat it accordingly." (Id. at ¶ 5.)

**Argument**

Plaintiffs contend that sharing a document or information with an accountant, auditor, or financial expert categorically waives attorney-client privilege as to that document or information. (Pl. Br. at 6-7.) Plaintiffs are wrong.

To be sure, no general accountant-client privilege exists under federal law. A client's disclosure of documents to an auditor, accountant or financial analyst often destroys confidentiality with respect to those documents. See, e.g., United States v. Arthur Young & Co., 465 U.S. 805, 817 (1984); Couch v. United States, 409 U.S. 322, 335 (1973).

However, there is a well-settled exception to that rule where the communication with the auditor, accountant or financial analyst is for the purpose of assisting an attorney in rendering legal advice. In United States v. Kovel, 296 F.2d 918 (2d Cir. 1961), the seminal Second Circuit case on the issue, Judge Friendly held that the attorney-client privilege protected certain communications with accountants:

> "Accounting concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases. Hence the presence of an accountant,

> whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege . . . . [T]he presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit. . . . What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." Id. at 922.

The Kovel exception also protects documents produced attendant to privileged communications with accountants and has enjoyed wide approval by the courts, having been expressly adopted by five other courts of appeals and discussed favorably by two others.[2] Thus, under certain limited circumstances, the attorney-client privilege may extend to communications with a third party, such as an accountant, when the third party is engaged to assist in the rendition of legal services. See id.

Notably, plaintiffs' motion papers completely ignore United States v. Kovel. (See Pl. Br. at 6-7.) The nearest plaintiffs come to acknowledging Kovel is their citation, in a parenthetical within a string-cite, of United States v. Ackert, 169 F.3d 136 (2d Cir. 1999), a case that discusses Kovel. In Ackert, the Second Circuit reaffirmed Kovel by acknowledging that "an accountant can play a role analogous to an interpreter in helping the attorney understand financial information". Ackert, 169 F.3d at 139. But the court distinguished the facts of Ackert from the type of facts that support application of the Kovel exception. Whereas Kovel and its progeny extend the protection of the attorney-client privilege to instances where an accountant's

---

[2] See, e.g., In the Matter of Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000) (adopting the Kovel analysis); United States v. Bornstein, 977 F.2d 112, 116-17 (4th Cir. 1992) (same); United States v. El Paso Co., 682 F.2d 530, 541 (5th Cir. 1982) (same); FTC v. TRW, Inc., 628 F.2d 207, 212 (D.C. Cir. 1980) (same); United States v. Cote, 456 F.2d 142, 144 (8th Cir. 1972) (same); United States v. Judson, 322 F.2d 460, 462-63 (9th Cir. 1963) (same); cf. Cavallaro v. United States, 284 F.3d 236, 247 n.6 (1st Cir. 2002) (assuming, arguendo, that the First Circuit "would adopt the Kovel test or a similar standard"); United States v. Alvarez, 519 F.2d 1036, 1045 (3d Cir. 1975) (citing Kovel approvingly).

assistance is sought in connection with an attorney-client communication of legal advice, in Ackert, an attorney sought and received information from an investment banker in circumstances where no attorney-client communication was involved. Significantly, the Ackert court did not foreclose the possibility that the client "might demonstrate circumstances bringing some particular question or questions put to [an investment banker] within the scope of [the attorney-client] privilege". Id. at 140. Thus, Ackert plainly does not support plaintiffs' contention that communications with an accountant can never be protected by the attorney-client privilege.

Importantly, notwithstanding the oft-invoked analogy to "translation", the Kovel exception also implicates and relies on broader agency principles:

> "[T]he privilege in appropriate circumstances extends to otherwise privileged communications that involve persons assisting the lawyer in the rendition of legal services. This principle has been applied universally to cover office personnel, such as secretaries and law clerks, who assist lawyers in performing their tasks. But it has been applied more broadly as well . . . . [A] client's communications with an accountant employed by his attorney [are] privileged where made for the purpose of enabling the attorney to understand the client's situation in order to provide legal advice . . . . [T]he privilege extends to communications involving consultants used by lawyers to assist in performing tasks that go beyond advising a client as to the law . . . [including] a client's confidential communications to a non-testifying expert retained by the lawyer . . . and other matters routinely the stuff of jury and personal communication consultants . . . ." In re Grand Jury Subpoenas, 265 F. Supp. 2d 321, 325-26 (S.D.N.Y. 2003) (extending the privilege to communications with public relations consultants in connection with giving or obtaining legal advice) (emphasis added).

Defendants do not suggest that an agency relationship automatically renders communications between a lawyer and an accountant privileged. Nor do Defendants suggest that the attorney-client privilege protects all communications between an accountant and a lawyer undertaken on behalf of the lawyer's client. Defendants do submit, however, that the privilege protects communications in some circumstances where an attorney solicits or engages an

accountant "in the pursuit of legal advice concerning the mechanics and consequences of alternative business strategies". In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1038 (2d Cir. 1984).

Where the purpose of engaging the accountant is to assist counsel in providing legal advice to his client and where that purpose significantly relates to the disputed communications or documents, the attorney-client privilege protects those communications or documents. See, e.g., Ferko v. NASCAR, Inc., 218 F.R.D. 125, 135 (E.D. Tex. 2003). Thus, without destroying privilege, "[a]ttorneys may . . . divulge client information to accountants or financial professionals in order to represent their client more effectively". Id. at 138.

Here, Mr. Seideman, priceline's in-house counsel, solicited the assistance of D&T to aid him in understanding alternative financial structures that were proposed by priceline's outside counsel, so that he could develop appropriate contractual arrangements for priceline. (See Seideman Decl. ¶¶ 4-5.) That is precisely the type of communication with accountants that Kovel and its progeny have deemed privileged and not subject to disclosure.

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny plaintiffs' motion to compel.

Respectfully submitted,

DEFENDANTS PRICELINE.COM INC.,
N.J. NICHOLAS,
DANIEL H. SCHULMAN AND
RICHARD S. BRADDOCK

/s/ Joseph L. Clasen

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

**CERTIFICATION**

I hereby certify that the foregoing was filed with the Court and served on all counsel of record listed below via the ECF electronic court filing system on this 3rd day of February, 2006:

| **Co-Lead Counsel** | **Liaison Counsel** |
|---|---|
| David R. Scott, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT 06415<br>Tel: 860-537-3818<br>Fax: 860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY 10017<br>Tel: 212-687-7230<br>Fax: 212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Johnson & Perkinson<br>1690 Williston Road<br>South Burlington, VT 05403<br>Tel: 802-862-0030<br>Fax: 802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT 06103-3202<br>Tel: 860-493-6292<br>Fax: 860-493-6290 |

| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore LLP<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | **Attorneys for Defendant Jay S. Walker**<br><br>J. Allen Maines, Esq.<br>Carl Mullis, III, Esq.<br>Summer B. Joseph, Esq.<br>Laura Berg, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA 30308<br>Tel: 404-815-2400<br>Fax: 404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>Paul, Hastings, Janofsky & Walker LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone: 203-961-7400<br>Fax: 203-359-3031 |
|---|---|

/s/ William J. Kelleher III

William J. Kelleher, III