IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: Priceline.com<br>Securities Litigation | Master File No.<br>3:00cv1884 (DJS) |
| ------------------------------------------------------------ | |
| This document relates to: | |
| ALL PENDING ACTIONS | |
| | April 27, 2006 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' FOURTH MOTION TO
COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT OF THEIR
<u>CROSS-MOTION FOR PROTECTIVE ORDER</u>**

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com

*Attorneys for Defendants
priceline.com Inc., N.J. Nicholas,
Daniel Schulman and Richard S. Braddock*

## **Table of Contents**

Page

Introduction ..................................................................................................................1

Factual Background .......................................................................................................3

Argument ......................................................................................................................8

I.      DEFENDANTS ARE ENTITLED TO PROTECTION FROM
        PLAINTIFFS' BURDENSOME AND UNNECESSARY DEMANDS
        FOR DISCLOSURE ..........................................................................................8

        A.      Plaintiffs Have Failed to Meet and Confer in Good Faith. ..........................8

        B.      The Number of Documents Moved Against is Unduly
                Burdensome. .................................................................................................10

        C.      A Protective Order Is Appropriate. ..............................................................12

II.     PLAINTIFFS' CATEGORICAL ARGUMENTS ARE WITHOUT
        MERIT ..............................................................................................................13

        A.      Defendants' Log Complies with Federal and Local Rules and
                the December 8th Order. ...............................................................................14

        B.      Defendants' Log Establishes Relationships Between All Listed
                Individuals. ...................................................................................................14

        C.      Defendants' Log Establishes that Privileged Communications
                Concern the Seeking or Rendering of Legal Advice .....................................17

        D.      Defendants' Log Establishes that Documents Involving Third-
                Parties Are Properly Privileged. ...................................................................19

        E.      Plaintiffs' Claim for Production of Defendants' Work-Product
                Is Without Merit. ...........................................................................................22

Conclusion ....................................................................................................................26

Defendants priceline.com Inc. ("priceline"), N. J. Nicholas, Daniel H. Schulman and Richard S. Braddock (collectively, "Defendants") respectfully submit this memorandum of law in opposition to plaintiffs' Fourth Motion to Compel Discovery ("Fourth Motion") and hereby move, pursuant to Rule 26 of the Federal Rules of Civil Procedure, for a Protective Order barring plaintiffs' harassing discovery motions.

### Introduction

Plaintiffs' lack of good faith in resolving discovery disputes continues with the filing of their Fourth Motion -- a motion that seeks an order compelling the production of 986[1] documents listed on Defendants' privilege log, but that only specifically addresses eight of those documents in the supporting memorandum.

In Section I (infra at 8), Defendants demonstrate why the Court should issue a protective order designed to prevent similar harassment in the future and to prevent plaintiffs from filing unduly burdensome motions. First, plaintiffs failed to meet and confer in good faith. Specifically, plaintiffs:

- failed to identify the disputed documents to Defendants until listing them, by log number, in charts attached to their current motion;

- failed to respond to Defendants' repeated requests that plaintiffs identify the disputed documents during a purported meet and confer;

- ignored Defendants' offer to review and, if appropriate, change privilege log designations should plaintiffs deliver a specific good faith list of the disputed documents; and

- failed even to attempt a meet and confer with respect to privilege log volume 9.

---

[1] In their Fourth Motion, plaintiffs appear to have inconsistencies and/or typographical errors in their lists of challenged documents. Defendants utilized the documents as listed in Exhibits R-Z to the Fourth Motion to best arrive at the document number counts referenced throughout this brief.

Had plaintiffs participated in good faith in the meet and confer process, the disputes might have been resolved or substantially narrowed long before disturbing the Court.

Second, plaintiffs' motion is unduly burdensome on it face. According to plaintiffs, they are entitled to proffer four general arguments in support of hundreds of privilege challenges, but to address with any real specificity only eight of those documents. Plaintiffs contend that Defendants, however, must substantiate their privilege designations with affidavits or equivalent statements "that address each document at issue". (Mem. of Law in Support of Pls.' Fourth Motion at 4 ("Pls.' Mem.") (quotation and citation omitted).) It cannot be that plaintiffs are entitled to present the Court with a list of almost a thousand disputed documents without identifying what genuine issues are in dispute, and Defendants then are required to generate thousands of pages in specific response.

Defendants, therefore, respectfully request that the Court deny without prejudice plaintiffs' Fourth Motion and approve the attached proposed protective order (i) mandating that plaintiffs return to the meet and confer process, and (ii) barring plaintiffs from filing burdensome discovery motions in the future. In the alternative, Defendants request that the Court impose a procedure by which remaining privilege log disputes can be resolved as efficiently as possible. For example, the Court may wish to appoint a Special Master to conduct a review of the documents and/or log and thereafter determine which, if any, privilege designations require additional evidentiary support.

In Section II (infra at 13), Defendants demonstrate that plaintiffs' legal position in support of their motion is without merit. With respect to plaintiffs' four general arguments, Defendants will show that the privilege log is proper as it:

- properly identifies priceline's counsel and employees sufficient to establish an attorney-client privilege;

- properly identifies that privileged communications were for the purpose of obtaining or providing legal advice;

- properly identifies as privileged certain documents that refer to third parties; and

- properly identifies work-product protected materials -- protections that plaintiffs fail to overcome.

With respect to the eight discrete documents that plaintiffs do discuss in any detail, Defendants reviewed the documents and are prepared to reconsider the initial privileged designation of six of them -- they will be produced. It is obvious, however, that plaintiffs' identification of those six documents -- out of nearly a thousand -- was not random. Plaintiffs were able to consult the privilege log and identify the entries that they thought to be the best examples of non-privileged documents. Plaintiffs' successful selection is further evidence that Defendants' privilege log is proper on its face, as information sufficient to assess privilege is available. The fact that an additional six will be produced says nothing about the privileged status of the other 980 challenged documents.

### Factual Background

To date, Defendants have produced a total of over 750,000 pages of documents in response to plaintiffs' 76 document requests. (Declaration of William J. Kelleher, III, dated April 27, 2006, ¶2, ("Kelleher Decl.").) Those 750,000-plus pages were produced after review and analysis of millions of pages of documents by a large group of attorneys under the supervision of Defendants' counsel, Robinson & Cole LLP. (Id.) The 1633 documents appearing on Defendants' privilege log volumes 1-9 represent

less than 1% of the entire production. Plaintiffs now challenge over 60% of that mere

1%. In fact, plaintiffs challenge every single document on privilege log volume 6. (Id.)

Privilege Log Volumes 1 and 2: (Pls.' Exs. A, B)[2]

This is the second time that plaintiffs have asked the Court to compel

hundreds of documents from Defendants' privilege log based upon the same generic and

unspecified arguments. (See Pls.' Third Mot. to Compel, dated Aug. 11, 2005 ("Third

Motion").) In ruling upon the Third Motion, the Court held that Defendants' privilege

log was proper under the Local Rules, but that Defendants should supplement their log to

provide plaintiffs with additional information related to each claim of privilege.

(Memorandum of Decision and Order, dated December 8, 2005, at 3 ("December 8th

Order").) On February 17, 2006, in accordance with the December 8th Order,

Defendants provided plaintiffs with revised supplemental privilege log volumes 1 and 2,

which further substantiate privilege designations. (Ex. A, Letter from W. Kelleher to D.

Scott and E. Comite, dated February 17, 2006 ("February 17th Letter").)

Privilege Log Volumes 3, 4 and 5: (Pls.' Exs. C-E)

Between July 11 and November 9, 2005, Defendants provided plaintiffs

with privilege log volumes 3, 4 and 5, corresponding to Defendants' June, July and

October document productions. (Kelleher Decl. ¶4.) For each document withheld from

production, the volumes indicated the type of document, its general subject matter, its

date, its author, each recipient and the basis for withholding the document. (Id.)

---

[2] The references to "Ex. __" throughout the brief refer to exhibits attached to the Kelleher Decl. The references to "Pls.' Ex. __" refer to exhibits attached to the Declaration of Peter J. McDougall, dated March 29, 2006 ("McDougall Decl.").

By letter dated December 1, 2005, plaintiffs informed Defendants of their belief that certain of the documents listed on those volumes were "inappropriately logged as privileged" and "should be immediately produced". Plaintiffs provided Defendants with a list of the documents they felt were "inappropriately logged", which included an explanation as to the basis for each objection. Accordingly, on December 9, 2005, Defendants informed plaintiffs that they would reevaluate their privilege claim as to each document on plaintiffs' list and, where appropriate, would produce documents or provide a more detailed explanation of the basis for their objections to producing those documents. (Kelleher Decl. ¶5.)

Thereafter, on January 25, 2006, Defendants sent plaintiffs a document-by-document response to plaintiffs' December 1, 2005, letter. (Ex. F, Letter from W. Kelleher to P. McDougall, dated Jan. 25, 2006.) Where possible, Defendants further explained as to the basis for their objection to producing some of the documents. Moreover, upon consideration of plaintiffs' stated concerns, Defendants produced several of the documents that had been listed on privilege log volumes 3, 4 and 5. Defendants also informed plaintiffs that if they continued to believe that certain documents were inappropriately logged, Defendants would be happy to discuss those concerns. Plaintiffs did not take Defendants up on that offer. (Kelleher Decl. ¶6.) Defendants were therefore under the impression that the meet and confer process had operated successfully and plaintiffs were satisfied with the resolution. (Id.)

Privilege Log Volumes 6, 7, 8 and 9: (Pls.' Exs. F-I)

Between December 12, 2005, and February 10, 2006, Defendants provided plaintiffs with three additional privilege log volumes -- volumes 6, 7 and 8 --

-5-

corresponding to Defendants' November, December and January document productions. Again, all three of those logs indicated, for each document withheld from production, the type of document, its general subject matter, its date, its author, each recipient and the basis for withholding the document. (Kelleher Decl. ¶7.)

On February 22, 2006, plaintiffs requested that the parties set up a conference call to discuss Defendants' privilege logs. Plaintiffs later indicated their intent to discuss all of the privilege log volumes (i.e., not just volumes 6, 7 and 8). (Kelleher Decl. ¶8.) That call took place on March 8, 2006. During the call, plaintiffs raised a number of generic complaints about the privilege logs, but refused to identify specific documents that they believed were not privileged, despite being asked several times to do so by Defendants' counsel. (Id.) Although Defendants offered to revisit their privilege objections over specific documents that plaintiffs might identify -- as Defendants previously had done with plaintiffs' earlier complaints about log volumes 3, 4 and 5 -- plaintiffs would not identify purportedly non-privileged documents. (Id.) Nor did plaintiffs respond to Defendants' offer to discuss further the documents that plaintiffs believed to be non-privileged. (Id.)

On March 10, 2006, Defendants provided plaintiffs with privilege log volume 9, which again includes a detailed description of the documents withheld and the basis for Defendants' objections. Plaintiffs were silent with respect to that log. (Kelleher Decl. ¶9.)

Subsequently, Defendants informed plaintiffs by letter dated March 14, 2006, that "if you identify specific documents on our log that you have a good faith basis for believing are not privileged, then we remain willing to take another look at those

-6-

documents and discuss them with you further". (Ex. K Letter from J. Hein to E. Comite et al. dated Mar. 14, 2006 ("March 14th Letter"); Kelleher Decl. ¶10.) Defendants advised further that "[i]f you make a motion regarding our privilege log on the current record, then we will demonstrate to the Court that you have once again failed to meet and confer in good faith". (Id.)

Notwithstanding that letter, plaintiffs filed the current motion to compel on March 30, 2006, without identifying the specific documents with which they continue to take issue. (Kelleher Decl. ¶11.) In fact, the motion was filed without even attempting to meet and confer with respect to (i) any work-product concern (Id.), or (ii) any document on privilege log volume 9 (see Pls. Mem. at 2 n.1 ("Defendants served privilege log volume 9 on or about March 11, 2006. Although this privilege log was served after the March 8, 2006 conference call, plaintiffs' concerns regarding Defendants' first eight privilege logs are equally applicable to volume 9").) Furthermore, plaintiffs move against hundreds of entries that were previously contested on the exact same grounds in the Third Motion -- entries that already have been supplemented in compliance with the December 8th Order. (Kelleher Decl. ¶11.)

In light of this refusal to meet and confer in good faith, Defendants file this opposition and cross-motion requesting relief from plaintiffs' abusive discovery tactics for the reasons set forth below:

## Argument

## I. DEFENDANTS ARE ENTITLED TO PROTECTION FROM PLAINTIFFS' BURDENSOME AND UNNECESSARY DEMANDS FOR DISCLOSURE

### A. Plaintiffs Have Failed to Meet and Confer in Good Faith.

Plaintiffs' assert that they filed the current motion because their "good faith attempts to resolve the issues related to Defendants' eight privilege logs or to narrow the areas of dispute were unsuccessful". (McDougall Decl. ¶15; see also Declaration of Peter J. McDougall, dated Aug. 9, 2005, ¶9.) That assertion is false -- plaintiffs never met and conferred with Defendants in good faith.[3]

Before moving to compel, Rule 37 requires that a movant first confer in good faith in an effort to resolve any discovery dispute without Court action. See Fed. R. Civ. P. 37(a)(2)(A). Similarly, Local Rule 37 mandates that a party cannot file a motion to compel "unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution". Local Civ. R. 37(a)(2).

During this prescribed meet and confer, the requesting party must explain what the "party is actually seeking" and "what specific genuine issues" are in dispute. Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 99 (S.D.N.Y. 1997) (citation omitted). Otherwise, district courts routinely deny motions on the grounds that they are a waste of time and resources for the courts and parties. See Murphy v. Barberine Bros., Inc., 208

---

[3] Particularly illustrative of plaintiffs' tactics is their contention that Defendants "have made a wholesale refusal to adequately justify any claim to work-product protection". (Pls.' Mem. at 18.) Plaintiffs, however, never even mentioned any concern with Defendants' work-product assertions during the March 8, 2006, meet and confer or at any later time prior to filing their papers. (Kelleher Decl. ¶11.)

F.R.D. 483, 484 (D. Conn. 2001); see also Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 CV 7590, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998).

Prior to filing the current motion, plaintiffs failed to identify a single specific document with which they presently take issue.[4] (Kelleher Decl. ¶11.) During a meet and confer that the parties conducted by phone on March 8, 2006, plaintiffs discussed only generic concerns with Defendants' log -- concerns which were non-specific and disconnected to the log itself. (Kelleher Decl. ¶8; see also Ex. K, March 14th Letter.) Defendants repeatedly asked the plaintiffs to identify specific documents on the privilege log that were applicable to those generic concerns, but plaintiffs refused to do so. (Id.)

Defendants then sent plaintiffs a letter on March 14, 2006, that again requested identification of documents that plaintiffs believed were not privileged. Explicitly, Defendants stated: "if you identify specific documents on our log that you have a good faith basis for believing are not privileged, then we remain willing to take another look at those documents and discuss them with you further". (Ex. K, March 14th Letter.) Plaintiffs again refused Defendants' offer and thereafter filed the current motion. (Kelleher Decl. ¶10.)

Defendants cannot participate in a meaningful meet and confer if plaintiffs hide the ball with respect to the documents that they challenge. Now that we finally have a list of some 986 documents in the Fourth Motion, Defendants will -- even though it is

---

[4] Similarly, plaintiffs failed to meet and confer in good faith prior to filing their Third Motion (which sought to compel production of over 800 documents from Defendants' privilege log volumes 1 and 2) by failing to identify the specific documents in dispute during the preceding meet and confer. (See Opp. to Third Motion at 15-19.)

our position that it is not credible that such an extensive list was created in good faith --
review each of those documents and produce those that may appropriately be removed
from the log.

The document review and production in this case has, by necessity, been
performed by numerous attorneys over a significant period of time. (Kelleher Decl. ¶12.)
It has been, and continues to be, an extensive exercise that involves a review of millions
of pages and has thus far resulted in the production of over 750,000. (Id.) In a document
production of this size, many different attorneys are called upon to make close calls on
privilege. Defendants have reconsidered a few privileged designations, not all.
Defendants have always been, and remain, willing to review privilege calls with plaintiffs
-- but we cannot properly do so unless and until we are told by plaintiffs which specific
documents they take issue with. (Id.) Such negotiations are meant to occur during the
meet and confer process, not by motion.[5] Plaintiffs' motion should therefore be denied.

**B.    <u>The Number of Documents Moved Against Is Unduly Burdensome.</u>**

Plaintiffs present Defendants for the first time with a list of almost a
thousand documents -- only 8 of which are discussed by plaintiffs with any real
specificity. Plaintiffs simply categorize the remaining documents into generic (and often
overlapping) arguments and state that the Defendants have failed to sustain their burden
of establishing privilege for each document at issue because they did not submit such

---

[5] For example, plaintiffs describe for the Court how, in response to plaintiffs' Third
Motion, Defendants "withdrew claims of privilege" to additional documents. (Pls. Mem.
at 1.) Plaintiffs' argument that that was a bad thing is misplaced. Defendants produced
documents from privilege log volumes 1 and 2 in response to plaintiffs' identification of
the disputed documents in their Third Motion; if plaintiffs had identified the documents
earlier during a true meet and confer, Defendants could have reviewed and produced
them without involving the Court.

evidence as "affidavits or equivalent statements". (Pls.' Mem. at 4 (quotation and citation omitted).)

To begin, plaintiffs are operating under a misunderstanding of the role played by a privilege log -- particularly in a case where the production is so large. As was the case in <u>A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.</u>, No. 97 CIV 4978, 2002 WL 31385824, at *3 (S.D.N.Y. Oct. 21, 2002):

> "Plaintiffs seem to be claiming that, in response to a Rule 34 request and prior to any motion to compel production, a party withholding documents on the ground of privilege or work product must produce an index, affidavits or other evidence which, in the aggregate, for each document withheld, establish every element of each privilege or protection asserted".

However, "[t]he law is otherwise". <u>Id.</u>

Unless a motion to compel is filed, "the only obligation the Federal Rules and the Local Rules impose on the withholding party is to produce an index of documents that complies with [the stated Rules]". <u>Id.</u> When faced with a motion to compel, courts will then utilize "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps". <u>See</u> <u>Bowne v. AmBase Corp.</u>, 150 F.R.D. 465, 474 (S.D.N.Y. 1993). In other words, the analysis does not begin and end with the privilege log -- a party has the opportunity to supplement the information with "affidavits or equivalent statements that address each document at issue". <u>Id.</u> at 473; <u>see also</u> Pls.' Mem. at 4. However, those affidavits or equivalent statements are only necessary to establish the specific "challenged elements of the applicable privilege or protection" -- a limitation that "saves the Court and the parties from having to address any elements of a privilege or protection that are not in dispute". <u>A.I.A. Holdings</u>, 2002 WL 31385824, at *6.

Plaintiffs' memorandum only discusses eight documents with any specificity, but their motion covers 986 documents. And plaintiffs appear to argue that Defendants must substantiate their privilege designations with evidentiary showings on a document-by-document basis. (Pls.' Mem. at 4.) That would impose an intolerable burden on both Defendants and the Court. Defendants cannot possibly be expected to discuss individually 986 documents in a single page-limited brief, let alone supply hundreds of affidavits in support of its positions. And the Court should not have to wade through such submissions to rule separately on all 986 documents.

This problem is merely exacerbated by plaintiffs' failure to identify specific and genuine disputes with the accuracy of Defendants' log entries. Defendants are essentially left to guess at the exact nature of the challenge with respect to each specific document. Plaintiffs cannot be allowed to raise blanket objections without identifying the purported application of each objection to each document and then expect Defendants and the Court to do their work document-by-document -- particularly when so many of the challenged documents are so obviously privileged (see discussion of document 238 on volume 2, infra at 23-24).

C.    **A Protective Order Is Appropriate.**

Discovery has "ultimate and necessary boundaries". Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted). Pursuant to Rule 26 of the Federal Rules of Civil Procedure, this Court may enter an order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". Fed. R. Civ. P. 26(c). The appropriateness and nature of such a protective order is within the broad discretion of the Court. Joseph L. v. Conn. Dep't of Children & Families, 225 F.R.D. 400, 402 (D. Conn. 2005) (citations omitted).

-12-

In light of plaintiffs' (i) failure to meet and confer in good faith, and (ii) subsequent filing of an unduly burdensome motion, the Fourth Motion should be denied without prejudice and the accompanying proposed protective order should be issued, which requires that:

    a.   If plaintiffs challenge the appropriateness of any document designation on Defendants' privilege log, plaintiffs must first meet and confer with Defendants in good faith. During such meet and confer, plaintiffs must (i) identify the specific documents at issue, and (ii) communicate their specific dispute with respect to each such document. Only after this meet and confer fails to resolve the dispute(s) may plaintiffs file a motion to compel.

    b.   Should plaintiffs file a motion to compel after complying with the above-listed requirements, plaintiffs must outline their specific concerns with respect to each challenged document. Defendants will not be required to respond to blanket objections covering purported categories of documents.

In the alternative, if the Court feels there are, in fact, genuine disputes with Defendants' log descriptions, Defendants respectfully request that the Court impose a procedure by which each outstanding document dispute can be resolved as efficiently and quickly as possible. For example, the Court may want to appoint a Special Master to conduct a review of the documents and/or log volumes to resolve remaining disputes after Defendants review the newly identified documents and produce those that may appropriately be removed from the log. Thereafter, the Special Master could determine which, if any, privilege designations require additional evidentiary support.

## II. PLAINTIFFS' CATEGORICAL ARGUMENTS ARE WITHOUT MERIT

Plaintiffs' present a specific argument with respect to only eight discrete documents. Six of those eight will be produced. Plaintiffs' selection of those six cannot have been an accident -- Defendants' detailed log allowed plaintiffs to handpick those documents which were mistakenly logged as privileged. The remaining two documents are plainly privileged and will be addressed below. For the additional 978 documents

-13-

that plaintiffs fail to discuss with any real specificity, plaintiffs' generic categorical arguments will be addressed in turn.

### A.  Defendants' Log Complies with Federal and Local Rules and the December 8th Order.

In ruling upon plaintiffs' Third Motion, the Court stated that "[D]efendants' privilege log meets the technical requirements of Rule 37(a)1 of the Local Rules of Civil Procedure for the District of Connecticut". (December 8th Order at 3.) The Court then instructed Defendants to supplement their privilege log volumes 1 and 2 to provide additional information "necessary to make an informed determination of the validity of [plaintiffs'] objections". Id.

On February 17, 2006, Defendants presented plaintiffs with revised privilege log volumes 1 and 2 in response to the December 8th Order. (Ex. A, February 17th Letter.) Those revised volumes contain additional information sufficient to support further each claim of privilege.

As for log volumes 3-9, they contain, at minimum, all of the required information, including: the type of document, its general subject matter, its date, its author, each recipient and the privilege asserted. Local Civ. R. 37(a)(1). The privileged nature of each document is facially discernable.

There is no argument -- Defendants have gone beyond what the rules require and are in full compliance with the December 8th Order.

### B.  Defendants' Log Establishes Relationships Between All Listed Individuals.

Plaintiffs allege that Defendants (i) failed to "provide enough information to establish an attorney-client relationship between Defendants and third-party law firms" and/or (ii) failed to "provide … identifying information" as to an author or recipient. (Pls.

Mem. at 6,15.) Plaintiffs specifically apply those general arguments to only two documents in their motion: documents 246 and 538 on volume 2. Defendants are prepared to reconsider their privileged designations and both will be produced. Their production, however, says nothing about the privileged status of the remaining 957 documents that are categorically challenged on those grounds. (See Pls.' Exs. R-Z (stating the challenge is: "Insufficient Information").)

Privilege logs should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure". Bowne, 150 F.R.D. at 474. When testing the facial adequacy of such information, the standard is to decide whether the facts "if credited" would suffice to establish the privilege claimed. Bowne, 150 F.R.D. at 474 (emphasis added) (citation omitted). Defendants' log fully complies with this standard.

For example, challenged document 170 on volume 2 is a July 2000 memorandum -- stamped "Privileged and Confidential" and "Subject to the Attorney Work Product and Attorney-Client Privileges" -- from Fred T. Goldberg, Jr., Esq. and Jodi B. Cohen, Esq. to Jeffrey Boyd, Esq. Defendants indicated on the log that the document was an "Attorney/Client" communication and described the document as a "[c]ommunication between in-house counsel and outside counsel re: legal advice and analysis of air transportation taxes". The law requires plaintiffs' to credit those facts. First, plaintiffs are fully aware that the referenced "in-house counsel", Jeffrey Boyd, is currently the President and Chief Executive Officer at priceline and was Executive Vice President and General Counsel at the time of the communication -- in fact, such

-15-

information is contained in public filings that plaintiffs cite in their own complaint (see, e.g., Consolidated Amended Complaint ¶120 (citing priceline's form 10-Q for the first quarter of 2000, which attaches Mr. Boyd's December 30, 1999, employment agreement)). Second, the individuals identified as "outside counsel", Fred T. Goldberg and Jodi B. Cohen, are both attorneys from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"). Skadden is outside counsel to priceline -- indeed plaintiffs note this in their motion: "Skadden, Arps, Slate, Meagher & Flom LLP . . . appears to be regular counsel to priceline". (Pls.' Mem. at 7 n.3.) Third, the description of the communication states that the memorandum was prepared for the purpose of providing legal advice concerning the tax treatment of certain priceline businesses. The document is clearly privileged and the inclusion of this document in plaintiffs' challenge is representative of the meritless nature of their motion.

Likewise, challenged document number 40 on volume 9 is an email from Evan Seidman, Esq. to John Work. Defendants assert an "Attorney/Client" protection for the document and describe it as a "[c]ommunication between in-house counsel and employee re: counsel's legal analysis/comments on Delta corporate agreement". As the description again makes clear, this is a communication between priceline's "in-house counsel", Evan Seidman, and a priceline "employee", John Work, for the purpose of providing "legal analysis" of, and an attorney's "comments" on, a proposed contract. Plaintiffs must credit these representations -- the document is privileged.

It is notable, as Defendants have repeatedly offered, that if plaintiffs "have a good faith basis for believing that [Defendants] have mistakenly characterized an individual" as a priceline in-house counsel, outside counsel, employee or agent, "then we

-16-

will, of course, be happy to verify the accuracy of the information provided". (See, e.g.,

Ex. K, March 14th Letter.) In light of the fact that plaintiffs never identified such

specific documents or individuals during a meet and confer, plaintiffs' argument is

harassment and nothing more.

<strong>C.    Defendants' Log Establishes that Privileged Communications<br/>Concern the Seeking or Rendering of Legal Advice.</strong>

Plaintiffs allege that Defendants failed to support that the "withheld

communication[s] involved the seeking or rendering of confidential legal advice". (Pls.

Mem. at 8.) Plaintiffs, however, identify and discuss only three documents in the context

of this argument. Defendants agree to produce two of the documents -- document 218 on

volume 2[6] and document 85 on volume 6. The remaining document is privileged and will

be discussed below. As for the additional 924 documents that plaintiffs categorically

challenge (id. Pls.' Exs. R-Z (stating the challenge is: "Non-legal/Business advice")),

plaintiffs' allegation is without merit.

For each of those entries on Defendants' log, Defendants classify the

document as an "attorney/client" communication. Defendants then provide an

accompanying description of the communication sufficient to establish the fact that legal

advice was either requested or provided. Defendants do not need to include the specific

term "legal advice" for each and every entry when it is otherwise obvious. Nor do

---

[6] In the log entry for this document, Jeffrey Boyd was identified as "in-house counsel" -- as he is for many entries on Defendants' log. However, in the month prior to the creation of this document, October 2000, Mr. Boyd moved to being Chief Operating Officer and his duties were no longer in the capacity of General Counsel. This merely illustrates, however, the difficult privilege calls that must be made in a production of this size.

-17-

Defendants have to disclose the full substance of the communications and risk

eviscerating the privilege.

        For example, plaintiffs refer the Court to document 462 on volume 2,

which is logged as an email authored by Perry Salat, of "priceline.com, Inc.", and sent to

Evan Seideman, Esq. and Scott Case (with various additional priceline employees carbon

copied ("cc'd")). The document is described by Defendants as a "[c]ommunication with

in-house counsel and employee re: Priceline's terms of the settlement to purchase

hardware, software, WebHouse media, WebHouse license to intellectual property and

right to market to WebHouse customers". Plaintiffs' complaint about such documents on

the log -- that "[t]here is no suggestion that any legal advice was sought by the employees

or that legal advice was provided" (Pls.' Mem. at 9) -- is baffling. The document clearly

concerns a settlement of a legal dispute with WebHouse requiring the direct insight of

counsel. The document is privileged.

        Similarly, challenged document 109 on volume 2 is also withheld as

"Attorney/Client" privileged and is a memorandum from Robert L. Brodansky, Esq. of

Nixon Peabody LLP to Evan Seideman, Esq. Defendants describe the document as a

"[c]ommunication between in-house counsel and outside counsel re: legal advice and

analysis of alternative business models for priceline.com Auto Services, LLC." Again,

Defendants identify that the communication was between a client ("in-house counsel")

and his attorney ("outside counsel") and even explicitly identify the communication as

"legal advice" regarding the structuring of potential business strategies. Plaintiffs are

ignoring the clear language of the log -- the document is plainly privileged

### D.    Defendants' Log Establishes that Documents Involving Third-Parties Are Properly Privileged.

Plaintiffs allege that Defendants' log seeks to protect documents as privileged that were "sent to or received from third-parties". (Pls.' Mem. at 10.) Plaintiffs have raised this complaint on numerous prior occasions, only to continue to ignore Defendants' responses. (See e.g., Defs.' Opp. to Third Motion at 28; Letter from W. Kelleher to E. Comite, dated July 15, 2005, at 1-2.) Plaintiffs selectively identify and discuss only three documents in the context of this argument. Defendants agree to produce two of the documents -- document 432 on volume 2 and document 190 on volume 6. Again, this production says nothing about the privileged nature of the third document (which will be discussed below) or the remaining 413 documents that plaintiffs categorically challenge. (Id. Pls.' Exs. R-U, W-Z (stating the challenge is: "Waiver/Third Parties").)

First, Defendants do not dispute that if a document was actually sent to a third-party it is not privileged. However, the fact that an entry on Defendants' log may list a third-party as a "recipient" is not dispositive.

Courts have held that drafts of documents prepared by an attorney (or on which an attorney comments) for subsequent transmission to third parties in final form are protected by the attorney-client privilege where the draft document contains confidential information communicated between the client and the attorney that is maintained in confidence. See e.g., In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984).[7] For example, a draft of this

---

[7] In addition, to the extent that a document appears on Defendants' log that is not a draft and was actually sent to or received by a particular third-party, that third party is

current brief that was prepared by an attorney is privileged, whereas the final version that is delivered to the Court is not.

In the context of the privilege log, plaintiffs challenge document 213 from volume 2, which is a letter dated May 10, 2000, that was prepared by Jeffrey Boyd, Esq. and the recipient is listed as Samuel Podberesky, Esq. -- an attorney at the "US Department of Transportation". The subject of the document is stated to be a "Draft reply re: Standard Fees/Taxes and Processing Charges" and is described further as being a "[d]raft letter prepared by counsel re: standard fees/taxes and processing charges in reasonable anticipation of litigation with DOT". This document is identified multiple times as only a draft of a letter that was prepared in anticipation of litigation. The draft was not sent to the Department of Transportation and the privilege is not waived. If a final version of the document was actually sent to Mr. Podberesky and was in priceline's files, it has been produced.

Second, plaintiffs allege that Defendants have improperly withheld specific documents that were "received from or sent to WebHouse, Walker Digital and/or Perfect YardSale". (Pls. Mem. at 13.) Plaintiffs are again mistaken.

To begin, plaintiffs' discussion of this allegation in the context of document 435 from volume 2 is wrong. This document was not sent to a third party. The document is described as an email, dated November 17, 2000, that was sent by Evan Seidman, Esq. to Robert Mylod and Ted Vagelos. The subject of the email is

---

properly identified as an "agent" on the log and was advising an attorney on how to handle problems involving litigated matters. Therefore, as those agents are "functional equivalent[s] of [priceline] employee[s]", these too are protected communications. In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 219-20 (S.D.N.Y. 2001) (holding that the privilege applied to a public relations firm advising the company and consulting with its attorneys on how to handle litigation matters).

"Net2Phone/WebHouse Club Agreement" and it is described as a "[c]ommunication between in-house counsel and employee/agent re: request for legal advice on the obligations regarding the Net2Phone/WebHouse Club agreement", with the additional explanation that "[b]y agreement, Priceline agrees to provide WebHouse [with] legal services". The document was not sent to anyone outside of priceline. Both Mr. Mylod and Mr. Vagelos were employees of priceline at the time of the communication. The fact that the document refers to a third-party licensee does not abrogate the privilege.

Furthermore, if priceline was on the same side of a transaction as a third party, or on the same side of an actual or potential claim, negotiation or litigation, there was a common interest privilege between them. See TIFD III-E Inc. v. United States, 223 F.R.D. 47, 50 (D. Conn. 2004). "The common interest rule extends the attorney client privilege to privileged communications revealed to a third party who shares a common legal goal with the party in possession of the original privilege." Id.[8]

Finally, as plaintiffs are aware (Letter from B. Kelleher to E. Comite, dated Mar. 10, 2006.), WebHouse utilized areas of priceline's computer servers for a period of time following its launch. Accordingly, when this litigation commenced, priceline was in possession of certain electronically stored WebHouse documents. Counsel for defendants, who are jointly defending this action with Mr. Walker (WebHouse's former CEO), preserved and collected all the documents, including the WebHouse documents. That collection, done in the context of a jointly defended

---

[8] While recognizing the presence of a common interest privilege between priceline and such entities as WebHouse, Walker Digital and Perfect YardSale, plaintiffs seek to overcome this common interest by stating that the underlying document itself is not privileged. (Pls.' Mem. at 12-13.) Unfortunately, plaintiffs refer to no such example for this allegation, making the general assertion meritless.

-21-

litigation, did not destroy the privilege. As a result, however, WebHouse documents appear on our privilege log. (See, e.g., document entry 607 on volume 2, which was mentioned with others in passing by plaintiffs in their motion (Pls.' Mem. at 14).) In order to reduce any future confusion on this point, Defendants offered that going forward they would provide such documents to counsel for co-defendant Walker so that he may review the documents himself and provide plaintiffs with a separate privilege log. (Ex. J, Letter from B. Kelleher to E. Comite, dated March 10, 2006.)

E.    **Plaintiffs' Claim for Production of Defendants' Work-Product Is Without Merit.**

Plaintiffs' final challenge to the privilege log is targeted at Defendants' designation of 102 work-product protected documents. (Pls.' Exs. R-X, Z.) Plaintiffs allege that "to the extent that Defendants designate documents as protected under the work-product doctrine that were not prepared by an attorney in contemplation of litigation, they are not entitled to work-product protection and must be produced". (Pls.' Mem. at 17-18.) As we demonstrate below, not only is that an incomplete description of the law, but plaintiffs offer nothing to suggest it applies to the documents here.[9]

Attorney work-product protection can be divided into two categories. The first category of protection is afforded to "opinion" work-product, which reveals an attorney's thought processes or mental impressions. See Upjohn Co. v. U.S., 449 U.S. 383, 401 (1981). Those protected thought processes include, among other things, "preparing legal theories, planning litigation strategies and trial tactics, and sifting

---

[9] Plaintiffs also claim that to the extent certain documents were properly withheld as work-product, they have a "substantial need" for the documents' production. (Pls.' Mem. at 18-19.) Again, not only do plaintiffs misstate the law, but they also make no effort to substantiate such a purported "need".

through information". <u>In re Steinhardt Partners, L.P.</u>, 9 F.3d 230, 234 (2d Cir. 1993).

The Second Circuit has noted that opinion work-product receives special protection from

disclosure because it is meant to provide an attorney with a "privileged area within which

he can analyze and prepare his client's case." <u>United States  v. Adlman</u>, 134 F.3d 1194,

1197 (2d Cir. 1998), <u>quoting</u> <u>United States v. Nobles</u>, 422 U.S. 225 (1975).  "Opinion"

work-product "enjoys a near absolute immunity".  <u>In re Minebea Co.</u>, 143 F.R.D. 494,

499 (S.D.N.Y. 1992); <u>see also</u> <u>Renner v. Chase Manhattan Bank</u>, 98 CIV 926, 2001 U.S.

Dist. LEXIS 17920, at *7 (S.D.N.Y. Nov. 1, 2001) (stating opinion work-product is

"invariably protect[ed]").

       The second category of protection deals with work-product prepared in

anticipation of litigation that recites factual matters.  Such material is often referred to as

"ordinary" work-product, and includes notes, memoranda, witness interviews, and other

materials, whether they are created by an attorney or by an agent for the attorney.  <u>See</u>

<u>Nobles</u>, 422 U.S. at 238-39.  The protection for these materials, in contrast to "opinion"

work-product, "is qualified and not absolute".  <u>In re Grand Jury Subpoena Dated</u>

<u>November 9, 1979</u>, 484 F. Supp. 1099, 1102 (S.D.N.Y. 1980).[10]

       Plaintiffs do not even attempt to address this distinction with respect to

any of the documents they challenge.  For example, challenged document 238 on volume

2 is a memorandum dated August 28, 2000, from John Andres, Esq., priceline's in-house

---

[10] As Rule 26(b)(3) states, a party may obtain discovery of "ordinary" work-product
"only upon a showing that the party seeking discovery has substantial need of the
materials in the preparation of the party's case and that the party is unable without undue
hardship to obtain the substantial equivalent of the materials by other means".  Fed. R.
Civ. 26(b)(3).  However, the Rule goes on to state, in the context of "opinion" work-
product, that "the court shall protect against disclosure of the mental impressions,
conclusions, opinions, or legal theories of an attorney".  <u>Id.</u>

patent attorney, to Jeffrey Boyd, Esq., priceline's general counsel (with various priceline employees cc'd).  The document subject is listed as "Potential Litigation" and it is described as a "[c]ommunication between in-house counsel and employees re: legal analysis and advice on patents in reasonable anticipation of patent infringement litigation".  There can be no debate that this is opinion work-product involving an attorney's thought process with respect to the merits of potential patent litigation.  Plaintiffs ignore that this document is entitled to the highest level of protection -- with no "substantial need" exception -- and fail to consider how many other documents merit this same protection.

With respect to the second category of "ordinary" work-product, plaintiffs fail to identify a single document that they feel was improperly logged as one prepared in anticipation of litigation by an attorney or agent.  Nor do plaintiffs establish a "substantial need" to overcome the applicable protection.  Instead, plaintiffs generally claim that they are in need of documents related to WebHouse, Perfect YardSale, Walker Digital and "various agencies" such as the Better Business Bureau.  (Pls.' Mem. at 19.)  Defendants' production, however, already contains a significant number of documents that relate to those entities.  (Kelleher Decl. ¶13.)  In addition, co-defendant, Jay S. Walker, has produced more than 325,000 pages (almost all of which relate to those entities), and plaintiffs have subpoenaed and received hundreds of such documents from third parties, including, but not limited to, the Better Business Bureau itself, priceline's auditor, WebHouse business partners, and ex-priceline employees.  Plaintiffs have no difficulty in

obtaining the materials they seek.[11]  In fact, over 30 of the challenged documents that

plaintiffs list in string cites (Pls. Mem. at 19) have already been produced, and two others

have been withdrawn because they are outside the relevant time period -- statements that

Defendants recorded in the very log entries that plaintiffs complain about.

Finally, plaintiffs' claim that they are entitled to Defendants' work-

product because "this Court has already recognized in this case" that work-product may

have to be produced.  (Pls.' Mem. at 18 (citing In re Priceline.com Inc. Sec. Litig., No.

3:00 CV 1884, 2005 WL 1366450, at *4-5 (D. Conn. June 7, 2005).)  The ruling cited by

plaintiffs is entirely independent of the current dispute -- it certainly does not stand for

the proposition that work-product protection is unavailable to all parties for the remainder

of the litigation.  Plaintiffs must satisfy their own burden for each document in question,

and they have not even attempted to do so.

---

[11] Furthermore, plaintiffs have thus far only taken one deposition of the Defendants
(a Rule 30(b)(6) deposition of an IT employee) and a handful of non-party depositions.
Deposition testimony, however, is another source of information available to plaintiffs.
A.I.A. Holdings, 2002 WL 31385824, at *9 ("A witness's availability for a deposition
defeats a claim of substantial need" for work-product material.)

**Conclusion**

For the reasons stated above, Defendants respectfully request that this Court deny without prejudice plaintiffs' Fourth Motion and issue a protective order designed to prevent future unnecessary and unduly burdensome motions. In the alternative, Defendants respectfully request that the Court impose a procedure by which remaining privilege log disputes can be resolved as efficiently as possible. For example, the Court may wish to appoint a Special Master to conduct a review of the documents and/or log and thereafter determine which, if any, privilege designations require additional evidentiary support.

April 27, 2006

DEFENDANTS PRICELINE.COM INC.,
N.J. NICHOLAS,
DANIEL SCHULMAN AND
RICHARD S. BRADDOCK


   /s/ Joseph L. Clasen
Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
   695 East Main Street
   P.O. Box 10305
      Stamford, CT 06904-2305
        Telephone: (203) 462-7500
           Fax: (203) 462-7599
             jclasen@rc.com


Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
        Telephone: (212) 474-1000
           Fax: (212) 474-3700
             dslifkin@cravath.com

-26-

## CERTIFICATION

I hereby certify that the foregoing was filed with the Court and served on all counsel of record listed below via the ECF electronic court filing system on this 27th day of April, 2006:

| Co-Lead Counsel | Liaison Counsel |
| --- | --- |
| David R. Scott, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:  860-537-3818<br>Fax:  860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:  212-687-7230<br>Fax:  212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Johnson & Perkinson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:  802-862-0030<br>Fax:  802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Justin  S. Kudler, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT  06103-3202<br>Tel:  860-493-6292<br>Fax:  860-493-6290 |

-27-

| | |
|---|---|
| **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols**<br><br>David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT  06460<br>Tel: 203-877-8000<br>Fax: 203-878-9800 | **Attorneys for Defendant Jay S. Walker**<br><br>J. Allen Maines, Esq.<br>Carl Mullis, III, Esq.<br>Summer B. Joseph, Esq.<br>Laura Berg, Esq.<br>Paul, Hastings, Janofsky & Walker LLP<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA  30308<br>Tel:  404-815-2400<br>Fax:  404-815-2424<br><br>Douglas C. Conroy (ct11555)<br>Paul R. Dehmel (ct23063)<br>PAUL, HASTINGS, JANOFSKY & WALKER, LLP<br>1055 Washington Boulevard<br>Stamford, CT 06901<br>Telephone:  203-961-7400<br>Fax:  203-359-3031 |
| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.**<br><br>Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel:  212-474-1000<br>Fax:  212-474-3700 | |

    /s/ William J. Kelleher III
William J. Kelleher, III

-28-