UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION<br>_____<br><br>This document relates to:<br><br>    ALL ACTIONS | :<br>:<br>:<br>:<br>:    MASTER FILE NO.<br>:    3:00CV01884(CFD)<br>:<br>:    May 11, 2006<br>:<br>: |

## REPLY IN SUPPORT OF PLAINTIFFS' FOURTH MOTION TO COMPEL DISCOVERY FROM PRICELINE DEFENDANTS

**SCOTT + SCOTT, LLC**
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**Co-Lead Counsel**

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

## INTRODUCTION

On August 11, 2005, Plaintiffs moved this Court for an Order overruling Defendants' Priceline.com, Inc. ("Priceline"), N.J. Nicholas, Daniel H. Schulman and Richard S. Braddock (collectively, "Defendants" or the "Priceline Defendants") attorney-client privilege and work product immunity objections and compelling Defendants to produce certain improperly withheld documents. The Court granted in part and denied in part Plaintiffs' Motion, determining:

> defendants have not adequately demonstrated that their objections should be sustained with respect to all entries. Defendants shoulder the burden of demonstrating that information is protected by the attorney-client privilege or the work product immunity doctrine and must therefore supplement their privilege log to provide information necessary to make an informed determination of the validity of their objections.

December 8, 2005 Order, Dkt. #244 (citing *U.S. v. International Broth. Or teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 199 F. 3d 210, 214 (2d Cir. 1997)). It is clear that Defendants did not take Judge Squartrito's Order seriously as Defendants still fail to provide adequate support for their assertions of protection as to many documents.

In bringing the instant Motion, Plaintiffs move on five discrete categories of deficiencies in Defendants' claims of protection. *See*, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Fourth Motion to Compel Discovery from Defendants ("Plaintiffs' Mem.") at p.3. These are the same categories that Plaintiffs raised in their previous Motion to Compel production of improperly withheld documents and discussed in correspondence and in numerous meet and confers with Defendants. *See generally*, Declaration of Peter J. McDougall in Support of Plaintiffs' Fourth Motion to Compel Discovery from Defendants ("McDougall Decl."). Instead of properly addressing these categories, Defendants devote a large portion of their Opposition trying to convince that Court that Plaintiffs have failed to meet and confer in good faith. Defendants' Opposition to Plaintiffs' Fourth Motion to Compel Discovery and

1

Memorandum in Support of Their Cross-Motion for Protective Order ("Def. Opp.") at p. 1-13. As the McDougall Declaration demonstrates, Plaintiffs have fully participated in the meet and confer process beyond what is required by the Federal Rules of Civil Procedure or this District's Local Rules. McDougall Decl. at ¶¶3-8, 10-15.[1] Defendants feigned support for their assertion that Plaintiffs have failed to meet and confer in good faith only serves to further expose Defendants' attempt to shift their burden to Plaintiffs, forcing Plaintiffs to demonstrate that documents for which Defendants claim protection are **not** privileged and turning on its head the well founded standard that the party asserting privilege bears the burden of support.

Defendants' motivation is clear. First, such tactics have prevented Plaintiffs from receiving nearly a thousand documents that go to the heart of this case. Second, Defendants brazen designation of documents as privileged has forced Plaintiffs to devote countless hours of attorney time to combing through Defendants' privilege logs, conducting numerous meet and confers on these issues, corresponding with Defendants regarding these improperly withheld documents and drafting and filing two motions to compel the production of these improperly withheld documents. Third, if Defendants do succeed in convincing this Court that Plaintiffs bear the burden of establishing that a document is not protected, precedent would be established that would allow a privilege log to become an accepted means for a party to prevent the disclosure of documents harmful to their case.

Defendants have failed to adequately support their assertions of protection under the attorney client-privilege or the work-product doctrine requiring this Court to reject Defendants attempts to prevent the discovery of relevant documents and order Defendants to produce the improperly withheld documents identified in Plaintiffs' Motion.

---

[1] Plaintiffs intend to file a separate Opposition to Defendants' Cross-Motion for a Protective Order within the time period allowed under Rule 7(a)(1) of the Local Rules for United States District Court of the District of Connecticut.

2

1. **<u>Defendants Fail to Establish an Attorney-Client Relationship Between Priceline and Third-Party Law Firms and Fail to Sufficiently Identify Recipients and/or Authors of Documents.</u>**

Defendants provide little, if any, identifying information for individuals listed throughout Defendants' nine privilege logs, other than including "Esq." after the names of individuals that are apparently attorneys and listing numerous individuals on the privilege logs as employees, agents or consults of Priceline. *See*, Plaintiffs' Mem. at p. 7-9, 16-18. It is impossible to tell from Defendants' privilege logs whether the communications between an attorney listed on Defendants' privilege log and others involved the seeking or rendering of legal advice, concerned an attorney acting in his or her legal capacity, and was made in confidence with a reasonable expectation of privacy. Plaintiffs have asked Defendants on multiple occasions to provide a list identifying each attorney on the log, the firm or company where that attorney worked at the time the document was created, the purpose for which the attorney was retained, and the relationship between the attorney and the Defendants. McDougall Decl. at ¶¶ 5, 7, and 10, and Exhibit K attached thereto. Likewise, Plaintiffs have asked Defendants for a list of the other individuals listed on Defendants' privilege logs and their relationship with Defendants. *Id.* Despite this Court's December 8, 2005 Order requiring Defendants to provide a more detailed explanation of the basis for Defendants' assertions of privilege, Defendants have refused to provide this information which is essential to the assertion the attorney-client privilege.[2]

---

[2] Defendants ignore the fact that a communication between in-house counsel and an employee is not privileged simply because an individual is an employee of Priceline. Courts in the Second Circuit hold that "the privilege attaches only if the communication is disseminated to an employee who needs to know the material because he has a direct responsibility over the subject matter." *In re Grand Jury Subpoenas Dated Dec.18, 1981 and Jan. 4, 1982*, 561 F.Supp. 1247, 1258 (E.D.N.Y. 1982); *See also*, *Verschoth v. Time Warner, Inc.*, Civ. No. 00 CIV 1339 (AGS), 2001 WL 546630 (S.D.N.Y., May 22, 2001). Thus, beyond merely identifying an individual as an employee of Priceline, the employee's position at Priceline is essential to support any claim of privilege. Defendants refusal to provide this information results in their failure to satisfy their "burden of establishing attorney-client privilege, in all its elements." *EDO Corp.* 145 F.R.D. at 22-23 (D.Conn.,1992).

3

In their Opposition to the instant Motion, Defendants argue that the law requires Plaintiffs to "credit" the limited support that Defendants have placed on their privilege log. Def. Opp. at p. 15 (citing *Browne*). However, even crediting the diminutive support provided, Defendants fail to shoulder their burden of "establishing attorney-client privilege, in all its elements." *EDO Corp. v. Newark Ins. Co.*, 145 F.R.D. 18, 22-23 (D.Conn., 1992). The standard articulated in *Browne*, "is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere *conclusory* or *ipse dixit* assertions." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y.,1993).

Indicative of the inadequate nature of Defendants' privilege logs is Defendants' revelation, made for the first time in their Opposition, that Jeffrey Boyd, Esq., identified as in-house counsel on many of Defendants' log entries, was not in-house counsel beginning in October of 2000, when he became Chief Operating Officer. Def. Opp. at p. 17, n. 6. Defendants' claim that this revelation "merely illustrates . . . the difficult privilege calls that must be made in a production of this size." *Id.* However, this only serves to illustrate the callousness of Defendants' designation of documents as privileged. Defendants have withheld numerous documents apparently based on Jeffrey Boyd's position as in-house counsel, when he was no longer in-house counsel. For example, documents 82, 91, 95, 97, 186, and 218 on privilege log volume 2 are all dated after October 1, 2000, yet list Jeffrey Boyd, Esq. as in-house counsel. *See*. McDougall Decl. at ¶2, Exhibit B. Plaintiffs believe there are many more documents which

4

Defendants have carelessly designated as privileged based on an incorrect designation of Jeffrey Boyd as in-house counsel.

Defendants' have failed to provide sufficient information to identify the hundreds of individuals identified on their privilege logs and thus have failed to sustain their burden to demonstrate that the documents identified in Exhibits R through Z of the McDougall Declaration are privileged. Plaintiffs respectfully request that this Court grant Plaintiffs' Motion in its entirety and order Defendants to produce these improperly withheld documents.

2. **Defendants Fail to Establish that Many Communications Concerned the Seeking or Rendering of Legal Advice.**

In their Opposition, Defendants brush aside Plaintiffs' argument that Defendants fail to establish that hundreds of withheld documents concerned the seeking or rendering of legal advice by stating, without support, "Defendants do not need to include the specific term "legal advice" for each and every entry when it is otherwise obvious. Nor do Defendants have to disclose the full substance of the communications and risk eviscerating the privilege." Def. Opp. at p. 17-18. Defendants' position regarding what information they do not need to include in support of their assertions of privilege is merely an attempt to avoid discussing what information Defendants do need to include when withholding documents.

Furthermore, "[i]n cases involving corporations and in-house counsel, courts have maintained a stricter standard for determining whether to protect confidential information through the attorney-client privilege . . . because they are employees of their client, and their livelihood depends on that single corporate client, in-house counsel are not as independent as outside counsel." *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 220 F.Supp.2d 283, 286 (S.D.N.Y. 2002) (citing Janet J. Higley, Robert C. Jones, Peter C. Buck, *Confidentiality of Communications by In-House Counsel for Financial Institutions,* 6 N.C.Banking Inst. 265, 280

5

(2002)).  This stricter standard is the result of a concern that in-house attorneys are more likely to mix legal and business functions.  *Id.* (internal citation omitted).  "An in-house lawyer may wear several other hats (e.g. business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney client privilege may be questionable in many instances."  *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000).  If the advice is not primarily of a legal character and expresses substantial non-legal concerns then the advice is business advice and not legal advice.  *Georgia-Pacific Corp. v. GAF Roofing Manufacturing Corp.*, No.93Civ.5125 (RPP), 1996 WL 29392, at *4 (S.D.N.Y. Jan. 25, 1996) (internal citations and quotations omitted).  Thus, in instances where a document deals with both legal and non-legal aspects of corporation business, unless the document is "primarily of a legal character" it is not protected under the attorney-client privilege.  *Id.*, *see also, Espana v. American Bureau of Shipping*, No. 03 Civ. 3573, 2005 WL 3455782, at *2 (S.D.N.Y. Dec. 14, 2005)("If the communication involves business advice, it is not privileged").  Defendants have withheld from production hundreds of documents that appear to primarily concern business advice and thus are not protected.  *See*, Plaintiffs' Mem. at p. 9-11.

Defendants point to document number 462 on privilege log volume 2, as an example of a document that Defendants contend "clearly concerns a settlement of a legal dispute with WebHouse requiring the direct insight of counsel."  Def. Opp. at p. 18.  However, nothing on Defendants' privilege log or in Defendants' Opposition to the instant Motion provides the support necessary to carry their burden as to this document or the hundreds of other documents identified in Plaintiffs' Motion.  In fact, the privilege log specifically states that the communication is regarding "Priceline terms of the settlement to purchase hardware, software, WebHouse media, WebHouse license to intellectual property and right to market to WebHouse

customers." *See,* McDougall Dec., Exhibit B. Purchases of software, media and licenses as well as marketing concerns are clearly business purposes. As there is no indication of the existence of legal dispute and no mention of any legal advice being solicited or given, this document, and the hundreds of other documents improperly withheld by Defendants must be produced.

      3. **Defendants Improperly Withhold Numerous Documents That Were Sent to or Received From Third Parties.**

The Priceline Defendants have designated numerous documents as protected by privilege despite the fact that these documents were sent to or received from third parties. Plaintiffs asked Defendants, in written correspondence and during the meet and confers, to provide information regarding the individuals and companies listed on the privilege log. McDougall Decl. at ¶¶ 3-8, 10-15. The Priceline Defendants refused. By failing to provide sufficient information to allow Plaintiffs to assess the applicability of privilege, Defendants must be deemed to have waived their claimed protections.

Additionally, the Priceline Defendants theoretically claim that some of those documents have been withheld on the basis of the common interest doctrine stating that "if priceline was on the same side of a transaction as a third party, or on the same side of an actual or potential claim, negotiation or litigation, there was a common interest privilege between them." Def. Opp. at p. 21. However, Defendants cite no specific assertion of a common interest privilege and no document listed on Defendants' privilege logs lists the common interest doctrine as a basis for the assertion of an attorney-client privilege. If Defendants are relying on this doctrine as a basis for asserting a privilege they must provide sufficient detail in the privilege logs to sustain their burden. Additionally, Plaintiffs are entitled to know of the existence and specific nature of such an agreement as "the facts necessary to establish the attorney-client privilege are not themselves

7

privileged." *Ocean Atlantic Development Corp v. Willow Tree Farm, LLC.*, No. 01C5014, 2002 WL 649043, at *8 (N.D. Ill. April 19, 2002) (citing *B.F.R. of Illinois v. Ameritech Corp.*, No. 99 C 4604, 2001 WL 14144678, at *4 (N.D. Ill. Nov. 13, 2001)). Defendants claim a common interest may exist, but have failed to support this claim.[3]

In ruling on Plaintiffs' Third Motion to Compel, this Court stated that Defendants "may be entitled to assert a joint defense privilege" and that "Defendants must therefore place the communications in context so that an informed determination can be made with respect to each document drafted or received by persons affiliated with multiple companies or firms." Dkt. #244 at p.4 (citing *Lugosch v. Congel*, 219 F.R.D. 200, 241 (N.D.N.Y. 2003) ("The co-parties asserting the joint defense privilege will still be required to demonstrate, *inter alia*, they has a shared common interest and prior to sharing the work product amongst them, there existed an agreement that they will pursue a joint-defense strategy.")). Defendants have not provided any support for any assertions of privilege based on the common interest doctrine, despite this Court's clear directive to do so. By sending documents to or receiving documents from third-parties, any potentially applicable privilege is destroyed and such documents must be produced.

4. **<u>Defendants' Fail to Support Assertions of Work Product Protection</u>**

The Priceline Defendants also claim that numerous documents on their privilege log are protected from disclosure by the attorney work-product doctrine. To invoke the protections under the work-product doctrine, "a party generally must show that the documents were prepared principally or exclusively to assist ***in anticipated or ongoing litigation***." *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (emphasis added). *See also*, *Gould Inc.*

---

[3]    Even if the common interest the Priceline Defendants are seeking to invoke is not the result of a written agreement, as Defendants imply, Defendants are required to demonstrate the substance of such agreement through competent evidence. *Ocean Atlantic Development Corp.,* 2002 WL 649043, at *8

8

*v. Mitsui Min. & Smelting Co., Ltd.,* 825 F.2d 676, 680 (2d Cir. 1987) (requiring "real, rather than speculative, concern that the thought processes of ... counsel in relation to pending or anticipated litigation would be exposed."). Courts in this District have specifically held that "a party seeking to invoke Federal Rule 26(b)(3)'s protection of materials prepared in anticipation of litigation must establish, as an initial matter, that the sought after documents were, in fact, prepared in anticipation of litigation." *In re Perrier Bottled Water Litigation*, 138 F.R.D. 348, 352 (D. Conn. 1991). Likewise, in ruling on Plaintiffs' Third Motion to Compel, the Court stated "defendants must attempt to explain how documents it claims are immune from discovery pursuant to the work product doctrine were created in anticipation of litigation." Dkt. #244 at p. 5 (citing *U.S. v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

Defendants have attempted to support the assertion of work-product protect by stating, in their privilege logs, that many of these documents contain the language: "Document *captioned* privileged and work product" or "Document *captioned* privileged, work product and confidential." Defendants apparently believe that a document is work-product and has been prepared in anticipation of ongoing litigation simply because some undisclosed person has labeled it so and citing such a label is sufficient to support the assertion of this protection. Such conclusory statements are insufficient to show that documents have been prepared in anticipation of litigation and fail to comply with the Court's December 8, 2005 Order.

Additionally, in their Opposition, Defendants fault Plaintiffs for failing to address the distinction between opinion and ordinary work product. Def. Opp. at p. 23. However, the Court specifically ordered Defendants to "identify documents, or portions thereof, which qualify as opinion work product, and are therefore eligible for heightened protection." Dkt. #244. Nothing on Defendants' revised privilege logs or in Defendants' Opposition identifies any documents

9

subject to this heightened level of protection. Defendants' failure to make this distinction, particularly in light of this Court's Order, can only be deemed an assertion by Defendants that no withheld documents qualify for the heightened protections afforded to opinion work product.

Furthermore, as stated in Plaintiffs' Memorandum in Support of the instant Motion, Plaintiffs have a substantial need for the documents withheld by Defendants on the basis of work product because there is no way for Plaintiffs to obtain the substantial equivalent of the documents at issue from any other source including documents regarding WebHouse, Perfect Yard Sale and Walker Digital. *See*, Plaintiffs' Mem. at p. 20-21. All of these documents are likely to be extremely relevant to this case and the information contained in them is not available through any other means. While Defendants' description of the subject matter lacks the detail required under the Federal Rules, it is apparent that these documents refer or relate to issues that are extremely relevant to Plaintiffs' allegations. As these entities are no longer in existence or concern matters over 6 years old, Plaintiffs are unable to obtain such documents from any other source. Thus, the only way Plaintiffs would be able to receive these documents, which are central to Plaintiffs' allegations, is through production by Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court order the Priceline Defendants to produce the improperly withheld documents identified in the Motion to Compel.

Dated: May 11, 2006                                Respectfully submitted,

                                                   SCOTT + SCOTT, LLC

                                                   /s/ David R. Scott
                                                   David R. Scott (ct16080)
                                                   Geoffrey M. Johnson
                                                   Erin Comite (ct24886)

10

108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone:  (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

11

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 11, 2005, a true copy of the foregoing was filed with the Court and served on all counsel of record through the Court's electronic case filing service.

/s/ Peter J. McDougall
Peter J. McDougall