UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION<br>_____<br><br>This document relates to:<br><br>ALL ACTIONS | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    MASTER FILE NO.<br>:    3:00CV01884 (CFD)<br>:<br>:    May 12, 2006<br>:<br>: |

**PLAINTIFFS' RESPONSE TO THE COURT'S APRIL 4, 2006 ORDER RE:
APPOINTING THE LEISINGER PENSION FUND AS CLASS REPRESENTATIVE**

SCOTT + SCOTT, LLC
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

**Co-Lead Counsel**

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

## **INTRODUCTION**

On April 4, 2006, Judge Dominic Squatrito certified this securities fraud action against Defendants Priceline.com, Jay Walker, Daniel Schulman, Richard Braddock and N.J. Nicholas ("Defendants") as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), concluding that "this is the quintessential securities fraud action" because it involves "an enormous group of potential plaintiffs, with losses ranging from millions of dollars to tens of dollars, [who] seek to recover damages arising from one entity's actions." Doc. 273 at 30. The Court noted that "the focus of this litigation is upon the propriety of defendants' conduct, and any issues pertaining to individual class members only pale in comparison to the importance of defendants' potential liability." *Id.* The Court also concluded that five of the proposed class representatives – R. Warren Ross, Thomas Linton, John S. Anderson, Mark Weiss and Marilyn D. Egel – were all adequate representatives within the meaning of Rule 23(a)(4). *Id.*

For the sixth and final class representative – the Leisinger Pension Fund (the "LPF") – the Court explained that it had **two** specific concerns that Plaintiffs needed to address in greater detail before it could approve the LPF as a class representative:

- First, the Court noted that it "cannot make an informed decision regarding the LPF's standing to sue." Doc. 273 at 28. On this point, the Court was concerned because Felix Leisinger, a beneficiary for the LPF, testified that the LPF had been "destroyed." *Id.*

- Second, the Court noted that "defendants raise substantial issues regarding the conduct of the LPF's investment manager and the interaction between the LPF's investment manager and the LPF." *Id.* On this point, the Court was concerned about Felix Leisinger's statement that his broker, UBS Warburg ("UBS"), had mismanaged his account. *Id.*[1]

---

[1] These two concerns led the Court to deny the LPF's application to serve as a class representative without prejudice. Doc. 273 at 31. In its order, the Court further provided that: "[s]hould plaintiffs wish to add the LPF as a class representative, they may file a motion to do so, addressing these concerns in sufficient detail." *Id.* at 28.

Plaintiffs file this response to the Court's order to address these two concerns. First, on the standing issue, Plaintiffs submit herewith evidence in the form of documents that prove that the LPF purchased thousands of shares of Priceline stock throughout the class period. Ex. A. Plaintiffs also submit documentary evidence that proves that the LPF was an existing entity at the time of the October 2000 filing of the complaint. Ex. B. These facts are sufficient to demonstrate that the LPF has standing to sue. *See, e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 725 (1975) (holding that a plaintiff has standing to sue under 10b-5 if the plaintiff is a purchaser or seller of the security in question); *In re Able Labs. Sec. Litig.,* -- F.Supp.2d --, 2006 WL 851638, at *7 (D.N.J. April 3, 2006) ("To have standing under Section 10(b), a plaintiff need only show it bought and sold the shares of stock."); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570 n.4 (1992) ("[S]tanding is to be determined as of the commencement of suit").[2]

As for the second issue the Court identified in its order – *i.e.,* the conduct of the LPF's investment manager and the interactions between the investment manager and the LPF – this is a question about whether or not the LPF's relationship with its investment manager creates individualized issues that render it an inadequate representative for the overall class. This question turns on whether the LPF will be able to avail itself of the fraud on the market presumption. The fraud on the market presumption, which was first articulated by the Supreme

---

[2] As for Felix Leisinger's statement that the LPF had been "destroyed," the documents in this case and the testimony at his deposition show that he was referring to the losses that he suffered in the account, which went from a value of over $14 million to a value of approximately $700,000. Importantly, Mr. Leisinger never said that the LPF had been **dissolved**. *See, e.g.,* Leisinger Dep. at 8 ("[The LPF] was not dissolved, it was destroyed."); *id.* at 97 ("[A]s far as we are concerned it should still be existing and should be resurrected as soon as possible."). Instead, he was referring to the ***principle in the account***, which essentially had been destroyed. This is completely consistent with the documents that Plaintiffs have produced in this case, which show that the LPF existed and was selling stock following the October 2000 filing of the complaint.

Court in *Basic v. Levinson*, 486 U.S. 224, 247 (1988), provides that courts may **presume** that members of a class relied on the integrity of market prices when making purchasing decisions. *Id.* Defendants have argued that the LPF's reliance on an investment manager precludes it from availing itself of the fraud on the market presumption. They are wrong.

It is well established that a party can serve as a class representative even though he has turned his account over to a third-party investment manager. *See, e.g., Retsky Family Ltd.,* 1999 WL 543209, at *5-6 (N.D. Ill. 1999) ("[R]elying on an investment advisor to make decisions about investments is commonplace. The fact that [the class representative] himself did not actually make the purchase does not preclude a finding of adequacy."). The investment manager, however, must have relied on the integrity of the market when making its investment decisions. This key requirement – *i.e.,* the necessity that the investment manager rely on the integrity of the market when making investment decisions – has led courts to draw a critical distinction between those cases where the investment manager has mismanaged his client's account and those cases where the class representative has been the victim of outright fraud. *Compare In re Regal Comm. Corp. Sec. Litig.,* 1995 WL 550454, at *5 (E.D. Pa. 1995) (fact that class representative relied entirely on broker who ignored client's wishes for conservative, long term investment and instead invested in speculative, high-risk stocks would not defeat typicality; class representative still entitled to fraud on the market presumption unless defendants could show that stock price played no role in broker's decision), *to In re Safeguard Scientifics,* 216 F.R.D. 577, 583 (E.D. Pa. 2003) (class representative subject to unique defense where he was the victim of "misleading financial advice and unauthorized trades").

In the case of mismanagement, the investment manager has still relied on the integrity of the market when making investment decisions and, therefore, his client may still serve as a class

3

representative in a case alleging securities fraud. *Regal Comm. Corp.,* 1995 WL 550454, at *5; *see also In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717 (C.D. Cal. 2002) (fact that class representative and his counsel had filed NASD action against broker for failure to diversify and for misrepresenting broker's qualifications and experience would not defeat class certification).

Here, Mr. Leisinger testified that his investment manager mismanaged the LPF account. Leisinger Dep. at 32:24-35:13 (attached as Exhibit C). He also testified that the manager did not keep him properly informed. *Id.* However, Mr. Leisinger has never claimed that his investment manager engaged in any type of fraud. Nor has he ever claimed that his investment manager relied on something other than the integrity of the market when making its investment decisions. This case is no different than those cases where a class representative believes that his broker has mismanaged his account. In those cases, the account holder may still serve as a class representative. Accordingly, the LPF will be able to assert the fraud on the market theory when this case goes to trial.

## ARGUMENT

### A.   The LPF Has Standing To Sue The Defendants For Securities Fraud.

Defendants argue that the LPF lacks standing to sue them for securities fraud. They are wrong. Whether or not the LPF has standing to sue is a question of federal law, *see Baker v. Carr,* 369 U.S. 186, 204 (1962), and standing is determined by the facts as they existed at the commencement of this suit. *See, e.g., Smith v. Sperling,* 354 U.S. 91, 93 n.1, 5 (1957) ("[J]urisdiction is tested by the facts as they existed when the action [was] brought" and "after vesting, it cannot be ousted by subsequent events"); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570 n.4 (1992) (applying the Supreme Court's "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed" and explaining that "standing is

to be determined as of the commencement of suit"). Here, the LPF has standing to sue because it purchased priceline.com common stock during the class period and because the LPF existed at the time that the securities fraud lawsuit was commenced.[3]

### 1. The LPF Bought Priceline Stock During The Class Period.

In a securities fraud action, a plaintiff has standing to sue so long as it bought or sold shares of the stock in question during the class period. *See Blue Chip Stamps,* 421 U.S. at 725; *Caiola v. Citibank, N.A.,* 295 F.3d 312, 322 (2d Cir. 2002) (explaining that, in a securities fraud action under 10b-5, "standing is limited to actual purchasers or sellers of securities."); *see also* 14A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 59:340 ("Standing to sue under the antifraud provisions of the federal securities laws is limited to purchasers and sellers of securities").

Here, there is no question that the LPF bought Priceline common stock during the class period. Indeed, Plaintiffs have produced numerous records evidencing trades that the LPF made in the spring and summer of 2000. Ex. A. For instance, the LPF purchased 5,000 shares of Priceline stock on April 11, 2000. *Id.* The LPF purchased another 5,000 shares of Priceline stock on May 31, 2000 and purchased 20,000 shares of Priceline stock July 28, 2000. *Id.* These purchases were recorded in account statements that were sent to Felix Leisinger, one of the primary beneficiaries for the LPF – account statements that Plaintiffs have provided to Defendants in response to their document requests. *Id.* Felix Leisinger also provided Defendants and the Court with a certification at the beginning of this case certifying under oath that the LPF had purchased Priceline stock during the class period. Ex. D. The trading records

---

[3] The LPF was created under Swiss law in 1966 as a family investment vehicle for the benefit of Felix Leisinger and his family and was managed by Swiss Bank Corporation and later UBS. Leisinger Dep. at 5, 78.

5

and certification demonstrate that the LPF purchased thousands of shares of Priceline stock during the class period, which is all that the LPF needs to show to have standing to sue for securities fraud. *See, e.g., In re Able Labs. Sec. Litig.,* -- F.Supp.2d --, 2006 WL 851638, at *7 (D.N.J. April 3, 2006) ("To have standing under Section 10(b), a plaintiff need only show it bought and sold the shares of stock.").

      **2.     The LPF Existed At The Time This Lawsuit Was Filed.**

Moreover, Defendants have numerous documents in their possession that show that the LPF was in existence and was actively buying and selling shares after the October 2000 filing of the Complaint. Ex. B. Plaintiffs have produced account statements that show that the LPF sold 40,000 shares of Priceline stock on November 16, 2000. *Id.* Plaintiffs have also produced account statements showing that the LPF sold 400 shares of Razorfish stock on November 16, 2000 and 10,000 shares of Genuity, Inc. stock on November 16, 2000. *Id.* The LPF made other trades on November 17, 2000. *Id.* These records offer definitive proof that the LPF existed and was actively trading securities following the October 2000 filing of the Complaint.

The November 2000 records also help to put into context Felix Leisinger's statement that the LPF was "destroyed" in 2000 when it dropped in value from $14 million to $700,000.[4] This is the statement that Defendants pointed to when arguing that the LPF had been "dissolved." The November 2000 statements show that Mr. Leisinger was referring to the ***money that he had invested in the LPF*** when he said that the LPF had been "destroyed" in 2000. The parties know that this is the case because the LPF was in existence and was actively selling shares after the filing of the complaint in November 2000. Ex. B. Moreover, Mr. Leisinger made it clear during his deposition that the LPF was not dissolved. Leisinger Dep. at 8:25 ("[The LPF] was not

---

[4] The Court should also take into account the fact that English is Mr. Leisinger's second language, which caused him some difficulty understanding questions at his deposition.

6

dissolved, it was destroyed."). He also testified that "as far as we are concerned it should still be existing and should be resurrected as soon as possible." Leisinger Dep. at 97.

In this case, there is no question that the LPF has standing to sue under the test articulated in *Blue Chip Stamps* because – as evidenced by the April 2000, May 2000 and July 2000 LPF trading statements – the LPF purchased thousands of shares of Priceline stock during the class period. Ex. A. Moreover, as evidenced by the November 2000 statements, the LPF was an existing entity and was selling securities at the time that the Plaintiffs filed the Complaint. Ex. B. This is all that the Plaintiffs must show to prove that the LPF has standing to sue.[5]

> **B.    The Relationship Between the LPF And Its Investment Manager Will Not Prevent It From Availing Itself Of The Fraud On The Market Presumption.**

The Court also questioned whether the conduct of the LPF's investment manager and the interaction between the investment manager and the LPF would create individualized issues that would make the LPF an inadequate class representative. As noted above, this issue turns entirely on whether the LPF's relationship with its investment manager will prevent it from availing itself of the fraud on the market presumption. *See, e.g., Basic,* 485 U.S. at 247; *see also Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 77 (2d Cir. 2004) ("The fraud-on-the-market doctrine as described by the Supreme Court in *Basic v. Levinson* creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value.").

It is well settled that a party may serve as a class representative in a securities fraud action even though he has relied entirely on a third-party investment manager to make investment decisions. *See, e.g., Retsky Family Ltd.,* 1999 WL 543209, at *5-6 ("[R]elying on an

---

[5] Additionally, Felix Leisinger has standing to represent the LPF as Mr. Leisinger testified that he was a beneficiary of the Fund, Leisinger Dep. at 6:16-19, and that he has proxy over the Fund. *Id.* at 75:2-76:2; 100:11-15.

7

investment advisor to make decisions about investments is commonplace. The fact that [the class representative] himself did not actually make the purchase does not preclude a finding of adequacy."); *In re Worldcom Inc. Sec. Litig.,* 219 F.R.D. 267, 282 (S.D.N.Y.). There is nothing wrong with relying on a third-party investment manager because investment managers, like ordinary investors, rely on the integrity of the market when making investment decisions. *Id.* This is not the case, however, when the investment manager engages in outright fraud.

This realization has led courts to draw a critical distinction between those cases where a broker has mismanaged his client's accounts (by choosing inappropriate investments) and those cases where the broker or investment manager had engaged in outright fraud. *Compare In re Regal Comm. Corp. Sec. Litig.,* 1995 WL 550454, at *5 (E.D. Pa. 1995) (fact that class representative relied entirely on broker who ignored client's wishes for conservative, long term investment and instead invested in speculative, high-risk stocks would not defeat typicality; class representative still entitled to fraud on the market presumption unless defendants could show that stock price played no role in broker's decision), *to In re Safeguard Scientifics,* 216 F.R.D. 577, 583 (E.D. Pa. 2003) (class representative subject to unique defense where he was the victim of "misleading financial advice and unauthorized trades").

In the case of broker mismanagement, the broker or investment manager has still relied on the integrity of the market and, therefore, his client – the proposed class representative – may still assert the fraud on the market presumption. *Regal Comm. Corp.,* 1995 WL 550454, at *5; *see also In re Emulex Corp. Sec. Litig.,* 210 F.R.D. 717 (C.D. Cal. 2002) (fact that class representative and his counsel had filed NASD action against broker for failure to diversify and for misrepresenting broker's qualifications and experience would not defeat class certification). In the case of outright fraud, the broker or investment manager never relied on the integrity of

8

the market, which precludes his client from availing itself of the fraud on the market presumption in a case against the issuer of the securities in question. *In re Safeguard Scientifics,* 216 F.R.D. 577, 583 (E.D. Pa. 2003).

Here, Mr. Leisinger testified that his investment manager mismanaged the LPF account. Leisinger Dep. at 32:24-35:13.  He also testified that the manager did not keep him properly informed. *Id.* However, Mr. Leisinger has never claimed that his investment manager engaged in fraud.  Nor has he ever claimed that his investment manager relied on something other than the integrity of the market when making its investment decisions.  This case is no different than those cases where a class representative believes that his broker has mismanaged his account. Accordingly, this Court should add the LPF as a class representative in this case.

## CONCLUSION

For the foregoing reasons, the Leisinger Pension Fund should be added as a class representative in this case.


Dated: May 12, 2006                          Respectfully submitted,

/s/ Erin Gree Comite
SCOTT + SCOTT, LLC
David R. Scott (ct16080)
Geoffrey M. Johnson
Erin Comite (ct24886)
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road

9

P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

10

## CERTIFICATE OF SERVICE

     I hereby certify that on May 12, 2006, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. The parties may access this filing through the court's CM/ECF System.

                                    /s/ Erin Green Comite
                                    SCOTT + SCOTT, LLC
                                    David R. Scott (ct16080)
                                    Geoffrey M. Johnson
                                    Erin Comite (ct24886)
                                    108 Norwich Avenue
                                    P.O. Box 192
                                    Colchester, CT 06415
                                    Telephone: (860) 537-5537
                                    Facsimile: (860) 537-4432