UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION<br>_____<br><br>This document relates to:<br><br>ALL ACTIONS | : MASTER FILE NO.<br>: 3:00-CV-01884 (AVC)<br>:<br>:<br>:<br>:<br>:<br>: JUNE 12, 2006 |

### DEFENDANT JAY S. WALKER'S JUNE 12, 2006 STATUS REPORT
### REGARDING THE PRODUCTION OF ELECTRONIC INFORMATION

Defendant Jay S. Walker ("Walker") submits this Status Report on the Production of Electronic Information pursuant to the December 8, 2006 directive of the Court that, beginning in January 2006, the defendants file a monthly status report on the production of electronic information. (Decision and Order, dated December 8, 2005 ("December 8th Order").)[1]

This June 12, 2006 Status Report updates the information provided in Mr. Walker's previous January 10, February 10, March 9, April 10 and May 10, 2006 Status Reports, which Reports are incorporated here by reference. For the Court's convenience, copies of those prior Reports are attached hereto as Exhibits A through E.

---

[1] In April, 2006, Mr. Walker retained new counsel, Hennigan, Bennett & Dorman LLP and Day, Berry & Howard LLP, to represent him in this matter. To the extent that this status report describes events that took place before Mr. Walker's present counsel were engaged on this matter, the report relates the understanding of Mr. Walker's present counsel based on information and documents received from Mr. Walker's previous counsel, Paul, Hastings, Janofsky & Walker LLP. References to "Mr. Walker's counsel" prior to Hennigan, Bennett & Dorman LLP's and Day, Berry & Howard's assumption of Mr. Walker's representation in this matter refers to the Paul Hastings firm.

1

## I. THE DECEMBER 8TH ORDER.

Mr. Walker is in possession of 181 tapes, most of which contain back-up of computer data.[2] These are old tapes. There are 138 tapes that have dates referenced on the labels attached to the tapes. Of these 138 dated tapes, 133 are dated in November or December 1999, predating the January 27 through October 4, 2000 class period.

The 181 tapes represent an overwhelming amount of information that would be prohibitively time-consuming and costly to review entirely. Moreover, there is no reason to believe that the vast majority of the data on the back-up tapes would be relevant to this lawsuit.

Given the high cost of restoring and searching the backup tapes, in its December 8th Order, the Court refused to order that production of responsive documents be made from all the tapes. Rather, in an attempt to avoid what the Court was concerned could be "a colossal waste of resources" (December 8th Order, p. 6), the Court directed that the parties meet and confer to attempt to identify tapes that should be restored and searched. Specifically, the Court stated that before the Court orders defendants to restore a tape for review, there must be some indication that the files stored on the backup may contain relevant information. "Because of the extraordinary expense of restoration and review, this process should not be undertaken without justification." *Id.*

## II. EFFORTS TO ASSESS THE BACK-UP TAPES.

Even before the December 8th Order issued, Mr. Walker's counsel engaged in extensive discussions with plaintiffs' counsel with the goal of trying to assess how to deal with the tapes. To facilitate discussion, counsel for Mr. Walker grouped the 181 tapes into 16 groups based on their handwritten labels. At Mr. Walker's expense, Mr. Walker's counsel engaged an electronic discovery vendor, and had 16 of these tapes – one tape from each group – restored to a "native

---

[2] As it turns out, a few of the tapes were cleaning tapes or blank media.

file" format.[3]  Although the data on those 16 tapes was too voluminous for a page-by-page search and could not be searched or organized electronically without further processing, counsel performed spot checks of these 16 tapes to get a feel for the kind of files that each contained and to make informed guesses as to the contents of the remaining tapes.

Subsequent to the December 8th Order, Mr. Walker's counsel's IT team identified one of the tapes believed to contain emails (Tape 15) and created a "catalog" of the files on that tape. Mr. Walker's counsel discussed this catalog with the plaintiffs' counsel and agreed to provide the plaintiffs' counsel with this catalog and, additionally, to create and provide to the plaintiffs catalogs for each of the other tapes in the sample group of 16. For the files contained on each tape, the catalogs show, among other things: the file names, the folders, and the size of the file in bytes.

On January 9, 2006, Mr. Walker's counsel provided the plaintiffs with the 16 catalogs with the understanding that, once plaintiffs reviewed these catalogs, they would determine whether they desired to obtain such catalogs for the remaining 165 tapes. The catalogs for the 16 tapes totaled 12,922 pages and were provided to the plaintiffs in Bates-numbered hard copies.

Based on the spot-checking of the 16 sample tapes, Mr. Walker's counsel identified eight tapes (from Group 5 and Group 15) that they believed may contain email files.[4]  Two of these eight tapes were within the group of 16 sample tapes that had been restored to native format. Prior to February 10, 2006, Mr. Walker's counsel agreed to arrange for its electronic discovery

---

[3] Mr. Walker's counsel's IT team was unable to restore two of the sample tapes, the ones from Group 2 and Group 6. Consequently, the IT team chose another tape from Group 2 and another tape from Group 6 and restored them.

[4] Based on its spot-checking of the 16 sample tapes and other information then available, Mr. Walker's counsel concluded that none of the remaining tapes were likely to contain emails. *See* Defendant Jay S. Walker's February 10, 2006 Status Report on the Production of Electronic Discovery, p. 1, n. 1.

vendor to restore the other six of the eight tapes believed to contain email files, and plaintiffs' counsel agreed to split the cost of that restoration.[5]

Once those six tapes were restored, Mr. Walker's counsel arranged for the creation of catalogs of those tapes and, on March 10, 2006, provided catalogs of five of those tapes to the plaintiffs. (The first tape of this group of six turned out to be blank.) Counsel for Mr. Walker suggested that plaintiffs utilize the catalogs to limit their document requests. Counsel for Mr. Walker explained to plaintiffs' counsel that narrowing the request would reduce the amount of data that would be "staged," or filtered based on agreed-upon key words, if the parties should decide to take that step. Reducing the amount of data to be staged would reduce the costs associated with staging significantly.

Plaintiffs also requested, and Mr. Walker's counsel agreed, to arrange for the restoration to native format of nine other tapes (from Group 4 and Group 6) and for the creation of catalogs for all the remaining back-up tapes. The plaintiffs and Mr. Walker's counsel agreed to split equally the cost associated with these tasks.

Mr. Walker's counsel provided plaintiffs' counsel with searchable, electronic versions of catalogs generated for 61 of the back-up tapes on April 13, 2006, and for another 74 back-up tapes on April 27, 2006. The vendor was able to restore eight of the nine back-up tapes from Groups 4 and 6 that plaintiffs had sought be restored to native format, and on May 8, 2006, the searchable, electronic catalogs for these eight tapes were provided to the plaintiffs.

Additionally, plaintiffs requested that Mr. Walker's counsel provide them with electronic, searchable versions of the first 16 catalogs that plaintiffs had originally received in Bates-

---

[5] Consistently throughout this process and continuing to the present time, Mr. Walker's counsel has made it clear that his agreement to pay half the cost to restore tapes and produce catalogs of them does not constitute an agreement to produce these tapes to plaintiffs in native format or in any other format.

4

numbered hard copy. On May 12, 2006, Mr. Walker's counsel provided these electronic catalogs to the plaintiffs.

In total, catalogs for 164 back-up tapes have been provided to the plaintiffs, and plaintiffs' counsel is now in possession of all the catalogs that Mr. Walker's vendor has been able to generate from the 181 back-up tapes. Of the 164 back-up tapes for which catalogs have been generated, Mr. Walker's vendor has successfully restored a total of 29 back-up tapes. Of the remaining un-catalogued 17 tapes, three tapes were either blank media or cleaning tapes, four were attempted to but were unable to be restored, and 10 were unable to be catalogued for other reasons.

The catalogs were created and provided to Plaintiffs' counsel in the expectation that they would be used in evaluating whether a particular back-up tape, or part of a back-up tape, is likely to contain any information that would have any relevance to this litigation. In April, plaintiffs' counsel informed Mr. Walker's counsel that they had been reviewing and continued to review the catalogs of the back-up tapes in an effort to identify files on the back-up tapes that they might request to be further reviewed. On April 27, 2006, plaintiffs' counsel advised Mr. Walker's counsel that plaintiffs' counsel could provide Mr. Walker's counsel with the identified parts of the five catalogs (from Group 5 and Group 15) that Mr. Walker's counsel provided to plaintiffs' counsel on March 10, 2006, for which parts plaintiffs' counsel seeks further review. Plaintiffs' counsel has not yet provided the identified portions of those catalogs.

Once plaintiffs' counsel provides Mr. Walker's counsel with the identification of files on the catalogs that plaintiffs' counsel believe warrant further review, then Mr. Walker's counsel will use that information to assess such critical factors as the volume and nature of the data that plaintiffs seek to have further reviewed from the back-up tapes. Assessment of these factors will enable Mr. Walker's counsel to then make informed decisions regarding the technology that will

be required and the methodology to be employed in connection with any review and production of electronic data from these back-up tapes.

Both before and after the filing of the Mr. Walker's last status report, Mr. Walker's counsel spent a considerable amount of time analyzing the catalogs in an attempt to assess the volume of the data that relates to email as well as other types of documents. While that analysis continues, Mr. Walker's counsel presently estimates the size of the email filed on the back-up tapes to exceed 200 gigabytes. Mr. Walker's electronic discovery vendor advises that there are, on average, 100,099 pages of email per gigabyte of email data. Accordingly, the total email population on the back-up tapes is presently estimated to exceed 20,019,800 pages.

To date, plaintiffs have provided Mr. Walker's counsel with a list of 121 individuals whose email files plaintiffs wanted Mr. Walker's counsel to search "email-by-email" for responsiveness and privilege. Notably, however, plaintiffs have not committed to limit their email requests to the email of only these identified individuals.

While the catalogs of the back-up tapes do not reference email files for all of the 121 individuals whom plaintiffs identified, it has become clear that the volume of the data that is on the back-up tapes and that does relates to email of persons identified on plaintiff's list of 121 individuals is enormous. Even limiting review to the emails files of the individuals identified on plaintiffs' list leaves an email population of a size so burdensome as to be unreasonable in light of the circumstances. Mr. Walker's counsel currently estimates the population of the email files of the individuals identified by plaintiffs to exceed 23 gigabytes, or 2,330,496 pages. It would likely cost several millions of dollars of attorney review time to perform an email-by-email review of an email population of that size.

Mr. Walker's counsel believes that the most efficient and cost-effective approach to culling from this population relevant material is: (1) to commit to review the email of only a more reasonable list of identified individuals; (2) to run a reasonable list of search terms against the email of those identified individuals; and (3) to set reasonable time parameters.

Mr. Walker's counsel made a proposal along these lines to plaintiffs by letter on May 12, 2006. In addition, Mr. Walker's counsel advised plaintiffs that they have been engaged in an ongoing discussion with the vendor who handled the cataloging and restoration of the back-up tapes concerning how best to deal with the review and production process, and that they believe the vendor's charges for staging the data, loading it for review and producing a production set are appropriately born by the plaintiffs. Mr. Walker's counsel is awaiting the plaintiffs' response to the May 12 letter.

Considerable analysis needs to be focused on ways to reduce the amount of data that might be staged (i.e., filtered) based on key words. Since the filing of the last status report, Mr. Walker's counsel has engaged in a continuing dialogue with Mr. Walker's electronic discovery vendor on whether and how the email population on the back-up tapes could be reduced by eliminating from it emails – if any – that have already been produced by the other defendants in this case, and what the cost would be for this service. It cannot be known at this point whether there is overlap between the emails on the back-up tapes and the emails that the other defendants have produced. However, the other defendants have produced 450,000 pages of email to the plaintiffs. If there were substantial overlap, then eliminating these emails (already in the hands of the plaintiffs) from the back-up tape email population could be a first step in what is likely to be a series of steps needed to be taken in order to create a manageable email population size for review.

Defendant, Jay S. Walker

By:    /s/ Terence J. Gallagher
Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
Phone: (203) 977-7300
Fax:    (203) 977-7301
tdgoldberg@dbh.com – E-mail

- and -

J. Michael Hennigan (phv01117)
Bruce Bennett (phv01105)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv1119)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234
irvingj@hbdlawyers.com – E-mail

His Attorneys

## CERTIFICATION

I hereby certify that a copy of the foregoing was served on all counsel of record listed below via first-class mail, postage prepaid on this 12th day of June, 2006.

**Co-Lead Counsel**

David R. Scott, Esq.
James E. Miller, Esq.
Scott & Scott, LLC
108 Norwich Avenue
P. O. Box 192
Colchester, CT 06415
Tel:   860-537-3818
Fax:   860-537-4432

**Liaison Counsel**

Andrew M. Schatz, Esq.
Jeffrey S. Nobel, Esq.
Justin S. Kudler, Esq.
Schatz & Nobel, PC
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103-3202
Tel:   860-493-6292
Fax:   860-493-6290

Jules Brody, Esq.
Aaron Brody, Esq.
Stull Stull & Brody
6 East 45th Street
New York, NY 10017
Tel:   212-687-7230
Fax:   212-490-2022

Dennis J. Johnson, Esq.
Jacob B. Perkinson, Esq.
Law Offices of Dennis J. Johnson
1690 Williston Road
South Burlington, VT 05403
Tel:   802-862-0030
Fax:   802-862-0060

| | |
|---|---|
| **Attorneys for priceline.com, Inc. Richard S. Braddock, Daniel H. Schulman and N. J. Nicholas, Jr.** | **Attorneys for Plaintiffs Twardy, Weingarten, Berdakina, Mayer, Mazzo, Fialkov, Licht, Bazag, Breirer, Farzam, Karas and Michols** |
| Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Christine Arena, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel:   212-474-1000<br>Fax:  212-474-3700 | David A. Slossberg, Esq.<br>Margaret E. Haering, Esq.<br>Hurwitz & Sagarin, LLC<br>147 N. Broad Street<br>Milford, CT 06460<br>Tel:   203-877-8000<br>Fax:  203-878-9800 |
| Joseph L. Clasen, Esq.<br>William J. Kelleher, Esq.<br>Robinson & Cole LLP<br>Financial Centre<br>695 East Main Street<br>P. O. Box 10305<br>Stamford, CT 06904-2305<br>Tel:   203-462-7500<br>Fax:  203-462-7599 | |

            /s/ Terence J. Gallagher
              Terence J. Gallagher