## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: Priceline.com Inc. | : | Master File No. |
| Securities Litigation | : | 3:00cv1884 (AVC) |
| ---------------------------------------------------------- | : | |
| This document relates to: | : | |
| | : | |
| All Pending Actions | : | |
| | : | |
| | : | June 12, 2006 |
| | : | |

## STATUS REPORT ON THE PRODUCTION OF ELECTRONIC INFORMATION

On December 8, 2006, the Court directed Defendants to, beginning in January 2006, file a monthly status report on the production of electronic information. (Decision and Order, dated December 8, 2005 ("December 8th Order").) Pursuant to that Order, Defendants priceline.com Inc. ("priceline"), Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas (collectively, "Defendants") submit this June 12, 2006 Status Report on the Production of Electronic Information.

On May 4, 2006, an Order was issued that transferred the above-captioned case from Judge Squatrito to Judge Droney. In an effort to provide Judge Droney with a thorough background on the production of electronic information, Defendants submitted a more comprehensive Status Report on May 10, 2006 that attached numerous relevant exhibits and detailed the history of each of the key discovery issues.

In light of the May 18, 2006 Order that transferred this case to Your Honor, rather than duplicate our May 10, 2006 filing that detailed the history of electronic discovery, we respectfully refer the Court to the May 10, 2006 Status Report and we incorporate it herein.

STAM1-814297-1

The information that follows below provides a summary of the current status of electronic discovery and updates the Court on progress that has occurred since our May 10, 2006 Report.

1.    Emails.

To date, Defendants have produced more than 450,000 pages of emails from the snapshot and the departed employee tapes that were retrieved from the email files of an agreed-upon list of 80 custodians. (See May Status Report, 1-4.) As we have reported to the Court and the plaintiffs on numerous occasions during the course of the past three months, it is Defendants' position that the review and production of responsive, non-privileged emails from the email files of the agreed-upon custodians is substantially complete. Id. at 3.

Only recently plaintiffs have contended that Defendant should expand their search of email and review all individual email files contained on the snapshot and departed employee tapes using a list of search terms. Plaintiffs' new request would not only duplicate the completed, agreed-upon review of email for the 80 individuals identified by the parties as potentially having relevant information, it would also unnecessarily search all of the other individuals' email files that are not likely to contain relevant information. We believe that plaintiffs' effort to expand the review of email in disregard of the parties' previous agreements is unnecessary and intended only to burden the Defendants. Id. at 1-4.

2.    Non-email electronic material.

On December 19, 2005, plaintiffs agreed to Defendants' initial set of search terms and search parameters for the non-email electronic material on the snapshot and the departed employee tapes. Id. at 4-5. Defendants have now substantially completed the production of

2

responsive and non-privileged documents from that initial search, which total more than 120,000 pages. Id.

On February 15, 2006, plaintiffs proposed a list of additional search terms. Plaintiffs' six-page list contained over 637 terms -- many of which were either unrelated to the case (including several expletives), or so generic in nature (such as the term "sell") that they would have yielded an enormous volume of non-responsive material. Id. at 5-6. On March 1, 2006, Defendants advised plaintiffs that a search would not be done utilizing plaintiffs' February 15th list. Id.

On April 7, 2006, the plaintiffs provided a revised list of proposed additional search terms. Id. at 6. After reviewing that list, Defendants informed plaintiffs that it continued to be overly broad; however, with certain limitations, Defendants agreed to use the list to run a search against the non-email portion of priceline's snapshot and departed employee tapes. Id. Defendants would then report to plaintiffs the number of documents retrieved by those terms ("hits") and the corresponding page count so that the parties could then discuss the need, if any, to narrow or expand the April 7th list before any review began. Id. at 6-7.

On May 1, 2006, Defendants reported that the April 7th search term list generated over 360,000 document hits, with an estimated page count of well over 5 million pages. Those figures were computed after excluding repetitive hits and excluding the documents already reviewed as part of Defendants' initial search that was agreed-to on December 19, 2005.

On May 2, 2006, the parties conducted a meet and confer. Defendants told plaintiffs that after already reviewing millions of pages of documents in this litigation and producing over 750,000, Defendants were not willing to review five million additional pages retrieved by a search term list that is so overly broad and fails to target responsive materials. In

3

an attempt to compromise, however, Defendants offered several solutions, including: (i) attempting to identify and eliminate (with the help of an outside vendor) terms that are obviously overbroad in their retrieval; (ii) trying to agree on a workable number of terms that are relevant to the case to keep the document production moving forward; and (iii) focusing the search terms on retrieving certain types of files that are most likely to contain relevant materials -- files such as Word documents or Excel spreadsheets. Id. at 7-8.

      Plaintiffs refused to consider any of those proposed solutions.

      In an effort to move the process forward in the absence of compromise, Defendants told plaintiffs that Defendants would select reasonable and relevant search terms from plaintiffs' April 7th list that appropriately would target responsive information. On May 23, 2006, Defendants forwarded a list of 20 such terms from plaintiffs' April 7th list that Defendants would utilize to continue the production from the non-email electronic material. (See Exhibit A, Letter from W. Kelleher to D. Scott and E. Comite, dated May 23, 2006.)

      Defendants are currently reviewing the numerous documents retrieved with those terms and Defendants expect to begin producing responsive, non-privileged documents from that retrieval within the next few weeks.

      3.    Back-up tapes.

      In its December 8th Order, the Court stated that full restoration of the backup tapes may well be "a colossal waste of resources." (December 8th Order, 6.) "Before the court orders defendants to restore a backup tape, there must be some indication that the files stored on the backup tape may contain relevant information." Id. at 6-7. The Court further held it would not "compel restoration of the backup tapes, regardless of which party is going to pay for restoration, unless the effort is justified." Id. at 7.

4

In early April, 2006, Defendants delivered 43 back-up tapes to eMag, an electronic document vendor recommended by plaintiffs, to conduct forensic scans of the tapes. eMag was able to produce indices for 40 of the 43 tapes and Defendants provided the logs of those scans to the plaintiffs on May 5, 2006.  eMag was not able to scan and provide indices for 3 of the tapes without further work and expense due to non-standard backup formatting, and the plaintiffs have been so informed.

Based on Defendants' preliminary review of the logs with our electronic document consultant, it appears that the 40 tapes that were indexed contain irrelevant priceline database material.  At this time, none of the back-up tapes have been selected for restoration and it is Defendants' position that, based on the preliminary results of the forensic scans and the Court's December 8th Order, that it is not necessary to restore and review the back up tapes at this time.  (See May 10, 2006 Status Report, 8-11.)

    4.       Cost-shifting.

Defendants continue to reserve their right to seek cost-shifting in connection with electronic discovery, as specifically permitted by the Court's December 8, 2006 Order.

Respectfully submitted,

DEFENDANTS PRICELINE.COM INC.,
N.J. NICHOLAS,
DANIEL SCHULMAN AND
RICHARD S. BRADDOCK



Joseph L. Clasen (ct04090)
William J. Kelleher III (ct22140)
Alexander D. Pencu (ct26759)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone:  (203) 462-7500
Fax:  (203) 462-7599
jclasen@rc.com
wkelleher@rc.com
apencu@rc.com


CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Fax:  (212) 474-3700

*Attorneys for Defendants*
*priceline.com Inc., N.J. Nicholas,*
*Daniel Schulman and Richard S. Braddock*

6

## CERTIFICATION

I hereby certify that the foregoing was filed with the Court and served on all counsel of

record listed below via first class mail on this 12th day of June, 2006:

| **Co-Lead Counsel** | **Liaison Counsel** |
|---|---|
| David R. Scott, Esq. | Andrew M. Schatz, Esq. |
| Erin G. Comite, Esq. | Jeffrey S. Nobel, Esq. |
| James E. Miller, Esq. | Justin  S. Kudler, Esq. |
| Scott & Scott, LLC | Schatz & Nobel, PC |
| 108 Norwich Avenue | One Corporate Center |
| P.O. Box 192 | 20 Church Street, Suite 1700 |
| Colchester, CT  06415 | Hartford, CT  06103-3202 |
| Tel:  860-537-3818 | Tel:  860-493-6292 |
| Fax:  860-537-4432 | Fax:  860-493-6290 |
| | |
| Jules Brody, Esq. | |
| Aaron Brody, Esq. | |
| Stull Stull & Brody | |
| 6 East 45th Street | |
| New York, NY  10017 | |
| Tel:  212-687-7230 | |
| Fax:  212-490-2022 | |
| | |
| Dennis J. Johnson, Esq. | |
| Jacob B. Perkinson, Esq. | |
| Peter McDougall, Esq. | |
| Johnson & Perkinson | |
| 1690 Williston Road | |
| South Burlington, VT  05403 | |
| Tel:  802-862-0030 | |
| Fax:  802-862-0060 | |

7

| **Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr.** | **Attorneys for Defendant Jay S. Walker** |
|---|---|
| Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Robert K. Simonds, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | Thomas D. Goldberg, Esq. (ct04386)<br>Terence J. Gallagher, Esq. (ct22415)<br>Day, Berry & Howard LLP<br>One Canterbury Green<br>Stamford, CT 06901<br>Tel: 203-977-7300<br>Fax: 203-977-7301<br><br>Jeanne E. Irving, Esq.<br>Hennigan, Bennett & Dorman LLP<br>865 South Figueroa Street, Suite 2900<br>Los Angeles, CA 90017<br>Telephone: 213-694-1200<br>Fax: 213-694-1234 |

Alexander D. Pencu