UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | **:** | |
| **IN RE: PRICELINE.COM, INC.** | **:** | |
| **SECURITIES LITIGATION** | **:** | |
| _____ | **:** | **MASTER FILE NO.** |
| | **:** | **3:00CV01884(AVC)** |
| **This document relates to:** | **:** | |
| | **:** | |
| **ALL ACTIONS** | **:** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
THE PRICELINE DEFENDANTS TO PRODUCE EMAILS AND
ELECTRONIC DOCUMENTS CONTAINED ON THE "SNAPSHOT"
AND "TERMINATED EMPLOYEE TAPES"**

**SCOTT + SCOTT, LLC**
David R. Scott
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**Co-Lead Counsel**

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017

**Co-Lead Counsel**

## TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................1

BACKGROUND.................................................................................................................3

    A.  The Priceline "Snapshot" and the "Terminated Employee Tapes." .............................3

    B.  The Case History Relating to the "Snapshot" And "Terminated Employee Tapes." ....4

ARGUMENT.................................................................................................................6

    A.  The Priceline Defendants Have Failed To Comply With Several Of the Court's
    Directives In Its December 2005 Order. .......................................................................6

        1.  Plaintiffs Have Reason To Believe That The Priceline Defendants Have Not
        Performed A Good Faith Email-By-Email Search Of The Designated Accounts...7

        2.  The Priceline Defendants Have Not Acted In Good Faith With Respect To The
        "Search Term" Part Of The Search.......................................................................12

        3.  The Priceline Defendants Have Refused To Search The Remaining Emails On
        The "Snapshot" And "Terminated Employee Tapes" Even Though These Emails
        Contain Relevant Information And Have Not Been Searched. ............................16

        4.  The Priceline Defendants Have Excluded Highly Relevant Financial Documents
        Contained On the Priceline "Snapshot" From Their Search.................................18

        5.  The Court Should Set A Deadline For The Completion Of The Electronic
        Production.............................................................................................................19

CONCLUSION.................................................................................................................19

## INTRODUCTION

For the past year and a half, Plaintiffs have tried without success to obtain highly relevant emails and other electronic documents that Defendants Priceline, Richard Braddock, Daniel Schulman and N.J. Nichols (collectively, the "Priceline Defendants") currently have in their possession, custody and control.[1]  These emails and electronic documents are responsive to Plaintiffs' document requests.[2]  Plaintiffs have participated in numerous meet and confers, sent several letters to the Priceline Defendants, taken a Rule 30(b)(6) deposition on the electronic document issues, moved to compel production of the emails and electronic documents on two separate occasions, and obtained a Court order directing the Priceline Defendants to produce these materials.  Despite these efforts, the Priceline Defendants still have not produced relevant emails and electronic documents.  Instead, ***the Priceline Defendants have engaged in a massive document dump***.  ***They have produced hundreds of thousands of blank and irrelevant emails and electronic documents, but the relevant emails and electronic documents still have not been produced.***  Thus, Plaintiffs are again forced to come before the Court.

Priceline's emails and electronic documents can be found in two locations.  The majority of Priceline's emails and electronic documents are contained on a "snapshot" that the Priceline Defendants took of Priceline's corporate file servers.  This "snapshot" is an electronic copy of "all the material that existed on priceline's corporate file servers in February 2002 (the time the snapshot was taken), reaching back to the beginning of the Company."  *See* Exhibit B to Johnson Decl. (Defs.' July 19, 2005 Letter).  The "snapshot" contains "emails, memoranda, letters and

---

[1]  The Priceline Defendants are represented by the Cravath Swaine & Moore and Robinson & Cole firms, whereas Defendant Jay Walker is represented by separate counsel.  Like the Priceline Defendants, Defendant Walker has failed to produce highly relevant emails and electronic documents in his possession, custody and control.

[2]  Plaintiffs' document requests are attached as Exhibit A to the Declaration of Geoffrey M. Johnson ("Johnson Decl.").

other office type documents." *Id.* The "snapshot" is fully searchable and accessible and does not need to be restored before electronic documents are reviewed and produced.[3] *Id.*

Other emails and electronic documents are contained on Priceline's "terminated employee tapes." The "terminated employee tapes" contain emails and electronic documents belonging to Priceline employees who were terminated from 2000-2001. *See* Exhibit B to Johnson Decl. (Defs.' July 19, 2005 Letter). This is the heart of the "Relevant Period" in this case, which spans from March 1, 1999 to April 1, 2001.[4] These documents were moved off of Priceline's corporate file servers before the snapshot was taken and therefore need to be searched separately. *Id.* Like the "snapshot," the "terminated employee tapes" are fully searchable and accessible and need not be restored before documents are reviewed and produced. *Id.*

Judge Squatrito has already ordered the Priceline Defendants to produce emails and electronic documents on the "snapshot" and "terminated employee tapes." Exhibit D to Johnson Decl. (Dec. 8, 2005 Order at 8-9) ("Defendants shall begin to produce responsive information from the e-mail files of the 113 individuals and the remainder of the snapshot."); *id.* at 9. The Court's order also made it clear that it was "placing primary responsibility on defendants to properly sort through the [electronic] data." *Id.* at 10. In addition, the Court ordered the Priceline Defendants to "record and produce a summary of their methodology so that plaintiffs can argue for the inclusion of more data if appropriate" and it ordered them to file monthly status

---

[3] The "snapshot" was taken in accordance with the Private Securities Litigation Reform Act ("PSLRA"), which provides that a defendant in a federal securities action "shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody and control of such person and are relevant to the allegations, as if they were the subject of a continuing request for production." 15 U.S.C. § 77(b)(2).

[4] The Court had previously held that: "Defendants shall produce all documents responsive to plaintiffs' discovery requests for the period March 1, 1999 through April 1, 2001." Exhibit C to Johnson Decl. (April 6, 2005 Order at 2). There is no longer any question that this is the "Relevant Period" in this case for the purpose of the discovery requests.

reports on the progress they have made so that the Court can "observe the process." *Id.* at 8. Despite these directives, the Priceline Defendants have failed to comply with Judge Squatrito's order – the end result being that few, if any, of the relevant emails and electronic documents on the "snapshot" and "terminated employee tapes" have actually been produced.

## BACKGROUND

**A.      The Priceline "Snapshot" and the "Terminated Employee Tapes."**

Plaintiffs have moved to compel the Priceline Defendants to produce emails and electronic documents contained on: (1) the Priceline "snapshot," and (2) Priceline's "terminated employee tapes."  The Priceline Defendants have described the "snapshot" as follows:

> [T]he "snapshot" is the equivalent of a full backup of all the material that existed on priceline's corporate file servers in February 2002 (the time the snapshot was taken), reaching back to the beginning of the Company …. [W]e believe that the snapshot contains every piece of electronic material created on the corporate file servers from priceline's inception until the date of the snapshot in February 2002.

Exhibit B to Johnson Decl. (Defs.' July 19, 2005 Letter).  According to the Priceline Defendants, electronic information is stored on the "snapshot" on three different types of servers:

> Priceline's electronic material is created and stored on three different types of servers: production database servers, which contain the raw transactional information of customer bids and offers; development servers, which contain the quality-control and other "test" data; ***and corporate file servers, which contain emails, memoranda, letters and all other office type documents***.  We do not believe that priceline's production database servers or development servers contain any information that is relevant to this litigation.[5]  *Id.*  (emphasis added).

---

[5] Plaintiffs have agreed to focus only on the "corporate file servers" based on the Priceline Defendants' representation that "We do not believe that priceline's production database servers or development servers contain any information that is relevant to this litigation."  *Id.*  However, in doing so, Plaintiffs reserve their right to seek information contained on the other two types of servers should they later learn that the Priceline Defendants' representations about the production database servers and development servers are inaccurate.  This motion is not directed at the information contained in the other servers.

The Priceline Defendants have also acknowledged that relevant emails and electronic documents are located on Priceline's "terminated employee tapes." *Id.* The terminated employee tapes contain: "[e]lectronic material for terminated employees from 2000-2001." *Id.* This material is not on the snapshot because it "was moved off the corporate file servers and onto back-up tapes before the snapshot." *Id.*

**B.    The Case History Relating to the "Snapshot" And "Terminated Employee Tapes."**

Plaintiffs have spent over a year and a half trying to obtain relevant emails and electronic documents on the "snapshot" and "terminated employee tapes." Plaintiffs have taken the following steps to obtain these electronic materials:

- In late 2004 and throughout the first half of 2005, Plaintiffs participated in numerous meet and confers with the Priceline Defendants on the electronic document issues. At first, the Priceline Defendants assured the Plaintiffs that "[A] snapshot of the data on priceline's corporate file and e-mail servers was made years before you served your document requests and *we are in the process of searching that repository for responsive documents*." *See* Exhibit E to Johnson Decl. (Defs.' Mar. 1, 2005 Letter) (emphasis added).

- In late March 2005, when no electronic documents were forthcoming, Plaintiffs moved to compel the Priceline Defendants to produce all responsive materials, including emails and electronic documents. In response, the Priceline Defendants told the Court that the emails and electronic documents should be excluded from Plaintiffs' motion to compel *because the electronic materials needed to be restored before they could be searched and reviewed*. *See* Docket No. 161 (Defs.' Opp. to Mot. to Compel, at 14). This led Judge Squatrito to order the parties to hold additional meet and confers on the restoration of the electronic materials. *See* Exhibit C to Johnson Decl. (April 6, 2005 Order).

- In late July 2005, Plaintiffs learned that the emails and electronic documents on the Priceline "snapshot" did not need to be restored, but were accessible and searchable in their current electronic form. The Priceline Defendants disclosed this fact in a letter that they sent Plaintiffs the day before Plaintiffs were to take a Rule 30(b)(6) deposition on the electronic documents. Exhibit B to Johnson Decl. (Defs.' July 19, 2005 Letter). The accessibility of both the "snapshot" and "terminated employee tapes" was confirmed the next day at the 30(b)(6) deposition – *a fact that directly contradicted the representations that the Priceline Defendants made to the Court months before when opposing Plaintiffs' motion to compel*.

4

- Following the 30(b)(6) deposition, the parties held several more meet and confers. Then, when no electronic documents were forthcoming, Plaintiffs moved in September 2005 to compel the production of the entire "snapshot" and "terminated employee tapes." *See* Docket No. 212 (Plfs' Motion to Compel). In their motion, Plaintiffs stated that they were willing to take on the burden of searching the entire "snapshot" and "terminated employee tapes," but in order to do so they needed complete and unfettered access to these electronic materials. *Id.*

- On December 8, 2005, Judge Squatrito ruled on Plaintiffs' motion to compel. The Court declined to order the Priceline Defendants to turn over the entire "snapshot" and "terminated employee tapes." Instead, the Court placed the burden on the Priceline Defendants to design a proper methodology for searching and producing the responsive information on the "snapshot" and "terminated employee tapes." Exhibit D to Johnson Decl. (Dec. 8, 2005 Order at 8-9). The Court also held that the Defendants needed to "record and produce a summary of their methodology so that plaintiffs can argue for the inclusion of more data if appropriate" and it ordered the Priceline Defendants to file monthly status reports with the Court so that it could "observe the process." *Id.*

- Following the Court's ruling on the motion to compel, the Priceline Defendants informed Plaintiffs that they were adopting the two-pronged approach to deal with the "snapshot" and "terminated employee tapes" they had previously set forth in an August 11, 2005 letter. *See* Exhibit F to Johnson Decl. (Defs.' Aug. 11, 2005 Letter). First, Defendants proposed doing an email-by-email review of certain individual email accounts. Second, Defendants proposed using search terms to capture responsive documents on the "non-email portion of the snapshot." *Id.*

- Using their approach, the Priceline Defendants have produced approximately 450,000 pages of electronic documents. Docket No. 323 (June 12, 2006 Status Report). However, the vast majority of these documents are blank emails and/or wholly irrelevant. As of the filing of this motion, only a small fraction of the relevant emails and electronic documents responsive to Plaintiffs' document requests have been produced.

- The Priceline Defendants have also failed (in violation of the Court's order) to provide Plaintiffs with a detailed summary describing the methodology used to conduct their search and they have tried repeatedly to shift the burden of the search to the Plaintiffs – even though the Court made it clear in its December 2005 order that it was placing the burden on the Defendants to capture the responsive emails and electronic documents contained on the snapshot.

The Priceline Defendants clearly will do anything necessary to make sure that the Plaintiffs do not obtain the discoverable and highly relevant emails and electronic documents on the "snapshot" and "terminated employee tapes." They have been willing to dump hundreds of thousands of blank and irrelevant documents on the Plaintiffs, they have acted strategically to

develop a search process that will cause many of the responsive documents to slip through the cracks, and they have not been afraid to violate the Court's December 2005 order. So far, their strategy has worked – with the end result being that the highly relevant emails and electronic documents have not been produced.

## ARGUMENT

**A.     The Priceline Defendants Have Failed To Comply With Several Of the Court's Directives In Its December 2005 Order.**

The Priceline Defendants have chosen to use a two-pronged approach to search and review emails and electronic documents on the "snapshot" and "terminated employee tapes." *See* Docket No. 301 (Defs.' May 10, 2006 Status Report).[6]

- The first prong calls on the Priceline Defendants to conduct an email-by-email review of certain key individual email accounts – including those belonging to Defendants Walker, Schulman and Braddock – contained both on the "snapshot" and "terminated employee tapes." *Id.* All told, this part of the review requires the Priceline Defendants to review 80 individual email accounts.[7]

- The second prong calls on the Priceline Defendants to use search terms to search the remainder of the snapshot – *i.e.,* those emails and electronic documents that are not part of the initial email-by-email search. *Id.* This part of the review will require the Priceline Defendants to come up with a broad set of search terms that will capture a majority of the responsive documents on the "snapshot" and "terminated employee tapes."

---

[6] Defendants concede that the electronic data is fully discoverable. *See* Exhibit E to Johnson Decl. (Defs.' March 1, 2005 Letter) ("We are well aware that data stored electronically is discoverable"); *see also Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("Electronic documents are no less subject to disclosure than paper records").

[7] Plaintiffs initially proposed that the Priceline Defendants search 113 designated email accounts. The Priceline Defendants responded that only 80 of these 113 email accounts were located on the "snapshot" and "terminated employee tapes." Thus, the Priceline Defendants have focused only on these 80 email accounts. Docket No. 323 (June 12, 2006 Status Report).

1.     **Plaintiffs Have Reason To Believe That The Priceline Defendants Have Not Performed A Good Faith Email-By-Email Search Of The Designated Accounts.**

Plaintiffs have no problem with the first prong of the Priceline Defendants' approach – *so long as the Priceline Defendants actually review and produce all responsive emails and electronic documents (including attachments – which, if responsive, are no less important that the emails themselves) contained in the designated individual email accounts*.[8]   In their June 12, 2006 status report, the Priceline Defendants claim that their review of these 80 designated email accounts is now "substantially complete."  Docket No. 323 (June 12, 2006 Status Report). However, Plaintiffs have reason to believe that the Priceline Defendants have not conducted a good faith email-by-email search.  To date, most of the emails that the Priceline Defendants have produced are either blank or wholly irrelevant and there are significant gaps in the email production.  Plaintiffs have also obtained highly relevant Priceline emails from third parties that were not included in the Priceline Defendants' own email production.   And contrary to the December 8, 2005 Order, the Priceline Defendants have failed to provide a summary of the methodology used to conduct the search.  Thus, Plaintiffs can only conclude that they have not conducted a good faith email-by-email search.

Take, for instance, the emails that have been produced from the email accounts belonging to Defendants Richard Braddock, Dan Schulman and Jay Walker.   Braddock served as Priceline's Chairman and CEO, Schulman served as the Chief Operating Officer and was later

---

[8] Courts have consistently held that attachments to email files must be produced.  *See, e.g., CP Solutions PTE v. General Electric Co.,* No. 04-cv-2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) ("Defendants chose to produce the documents in the manner in which they were kept in the ordinary course of business.  Attachments should have been produced with their corresponding email files.  The Court appreciated the fact that attachments were created with different software programs, but that does not provide Defendants with an excuse to produce the emails and attachments in a jumbled, disorganized fashion.").

promoted to CEO, and Walker was Priceline's founder and Vice-Chairman.  As the following

chart demonstrates, very few responsive emails have been produced: [9]

| Defendant | Position at Priceline | Emails Produced | Blank/ Irrelevant Emails | Substantive Emails | Substantive Emails from Class Period |
|---|---|---|---|---|---|
| **Richard Braddock** | **Chairman and CEO** | **261** | **240** | **21** | **14** |
| **Daniel Schulman** | **COO and CEO** | **1515** | **786** | **729** | **689** |
| **Jay Walker** | **Founder and Vice-Chairman** | **1001** | **949** | **55** | **1** |

> **a.    The Priceline Defendants Have Failed To Produce The Vast Majority
> Of Defendant Richard Braddock's Emails.**

For Defendant Braddock – who served as Priceline's Chairman and CEO for most of the

"Relevant Period" – the Priceline Defendants produced 261 emails, 240 of which were blank

meeting status emails with nothing written in the body.  That leaves 21 substantive emails – *i.e.,*

emails that are neither blank nor wholly irrelevant to the case.  It is simply implausible to believe

that Braddock sent only 21 emails during the two-year Relevant Period.  This was the period

when Defendant Braddock was actively engaged in all aspects of Priceline's day-to-day financial

and business operations.  He was receiving daily, weekly and monthly financial reports, which

Priceline kept in an electronic form.  This was also the period when Defendant Braddock was

aggressively selling approximately $10 million worth of his own Priceline stock.  A complete set

_____

[9] Plaintiffs were able to identify the particular emails that came from the individual email
accounts belonging to Defendants Braddock, Schulman and Walker – as well as the other
Priceline executives and employees – because Plaintiffs requested and received a "custodian log"
that matches the bates numbers for the emails that the Priceline Defendants produced to the
individual accounts where the emails were stored.  A copy of the "custodian log" is attached as
Exhibit G to Johnson Decl. (Defs.' March 2, 2006 Letter).

of Defendant Braddock's email production is attached to the Johnson Declaration as Exhibit H. The vast majority of these emails are blank.

Even more troubling is the fact that ***Plaintiffs have obtained several Richard Braddock emails from third parties that were not part of the Priceline Defendants' own email production***.  Among the emails that Plaintiffs obtained from third parties were several emails that Defendant Braddock exchanged with analysts at Goldman Sachs in March 2000.  Exhibit L to Johnson Decl. (filed under seal).  In these emails, Braddock fed the analysts statements that they later included in an analyst report.  *Id.*; *see also* Exhibit M to Johnson Decl. (filed under seal).  The Priceline Defendants' failure to produce emails that Plaintiffs obtained from third parties is proof positive that the Priceline Defendants have failed to perform a good faith email-by-email search.

### b.    Defendant Daniel Schulman's Emails Contain Suspicious Gaps.

There are also substantial gaps in Defendant Schulman's email production.  Defendant Schulman was Priceline's Chief Operating Officer for most of the "Relevant Period," and then took over as Priceline's CEO.  For Schulman, the Priceline Defendants produced over 1500 emails.  Over 780 of these emails were blank meeting status emails with nothing written in the body – leaving 729 substantive emails.  Out of these 729 emails, 685 of the emails were dated between January 2000 and April 2000 and only 4 of the emails were dated between May 2000 and October 2000.  Plaintiffs submit that Defendant Schulman, in his capacity as Priceline's Chief Operating Officer and in his capacity as its CEO, would have sent and received more than 4 relevant emails between May 2000 and October 2000, particularly since he sent and received 685 emails in the first four months of that year.  A sample of Defendant Schulman's email production is attached as Exhibit I to the Johnson Declaration.

    c.    **For Defendant Walker, The Priceline Defendants Have Only
          Produced A <u>Single</u> Responsive Email.**

Defendant Walker's emails are equally suspect.  Walker was the founder of Priceline and the CEO of the Priceline WebHouse Club.  He was the chief spokesman for Priceline and was known as an incredible micromanager who had his hand in all aspects of the Company. Moreover, during the Class Period, Defendant Walker was in constant contact with analysts via in person meetings and conference calls and he routinely conducted interviews touting Priceline's "Name Your Own Price" business model.  During these meetings and conference calls, Defendant Walker made over two dozen false statements about Priceline's business model. The January 2000 to October 2000 Class Period was also the period when Walker was trying to show investors that Priceline's "Name Your Own Price" business model could be successfully used to sell groceries and gas, and it was the period when he was unloading millions of dollars worth of his own Priceline shares.  In the spring and summer of 2000, he sold close to $338 million worth of Priceline stock both individually and through his holding company, Walker Digital, LLC.  Clearly, Defendant Walker had a lot going on during the Class Period.

Nevertheless, the Priceline Defendants have only produced ***one*** substantive email for Defendant Walker from the entire Class Period.  The rest of the Walker email production consists of approximately one thousand blank or wholly irrelevant emails.  It is not plausible to believe that Defendant Walker sent only one substantive email during the Class Period.  A sample of Defendant Walker's email production – including the lone substantive email from the Class Period – is attached as Exhibit J to the Johnson Declaration.

**d.     The Priceline Defendants Have Failed To Provide Plaintiffs With A Summary Of The Methodology They Used To Conduct The Individual Email Account Search.**

These are only a few examples of the significant gaps in the Priceline Defendants' email production.  Many of the emails from the other individual email accounts also contain thousands of blank and wholly irrelevant emails – with few, if any, actual emails from the Relevant Period. This allows the Priceline Defendants to claim – as they have in their filings with the Court – that they "produced more than 450,000 pages of emails from the snapshot and the departed employee tapes" without turning over the substantive emails that go to the heart of this case.  Docket No. 323 (June 12, 2006 Status Report).  All of this has led Plaintiffs to conclude that the Priceline Defendants have not produced all of the relevant emails from the key email accounts.  However, Plaintiffs do not know for sure because the Priceline Defendants have not provided Plaintiffs with a summary of the methodology that they used to conduct the search – even though they were ordered to do so by the Court.[10]

Accordingly, Plaintiffs move this Court to order the Priceline Defendants to comply with Judge Squatrito's December 2005 Order and provide Plaintiffs with a summary of the *specific* methodology that they used to search the 80 designated email accounts on the Priceline "snapshot" and "terminated employee tapes."  This summary should state whether the Priceline Defendants searched all emails and electronic documents (including drafts, deleted emails, and attachments) in the 80 individual email accounts that were responsive to Plaintiffs' document requests on an *email-by-email basis*.  If no such search has been performed, the Court should

_____

[10] The facts in the present case bear a striking similarity to those in *Wachtel v. Guardian Life Ins. Co.,* No. 03-1801, 2006 WL 1286189 (D.N.J. May 8, 2006).  There, as here, the Defendants were not forthcoming in how they planned to review certain key email accounts.  *Id.* at *11-12.  The Court admonished the defendants for being evasive and acting strategically with respect to the email and electronic production and ordered the defendants to perform an email-by-email review of numerous key individual accounts.  *Id.* at *11-13.

11

order the Priceline Defendants to do an email-by-email search and produce all responsive emails and electronic documents contained in the 80 key individual email accounts.

      **2.**      **The Priceline Defendants Have Not Acted In Good Faith With Respect To The "Search Term" Part Of The Search.**

          **a.**      **The Priceline Defendants' "Search Term" Approach Is Not Capturing The Majority Of The Responsive Documents.**

The second prong of the Priceline Defendants' proposed approach – *i.e.,* the use of specific search terms to search the remainder of the snapshot – has proven to be even more problematic. The first problem relates to the search terms themselves. Remarkably, as of the filing of this motion, the Priceline Defendants have only proposed ***three search terms*** – "Webhouse" "Web House" and "WHC." Docket No. 301 (May 10, 2006 Status Report).[11] This is hardly a good faith attempt to capture responsive documents on the "snapshot" and "terminated employee tapes," which would be relevant to a complaint alleging accounting fraud, and misrepresentations regarding the fundamental business model upon which Priceline's market valuation was entirely based. Defendants' three terms capture only a small fraction of the relevant documents, while also capturing hundreds of thousands of irrelevant documents, which the Priceline Defendants then proceeded to dump on the Plaintiffs. The Priceline Defendants later agreed to use 20 additional terms to search the "snapshot" and "terminated employee

---

[11] The Priceline Defendants presumably chose these terms because Plaintiffs allege that Defendants made numerous false statements about Priceline WebHouse Club ("WebHouse"). Defendants launched WebHouse in November 1999 to demonstrate that Priceline's business model could be used to successfully sell groceries and gas. This was part of Defendants' overall scheme to tout Priceline as "a future Wal-Mart of the web."

tapes." These terms, however, have picked up very few responsive documents and led to yet another massive document dump.[12]

The second – and more troubling – problem with the Priceline Defendants' search term approach is that it has failed to capture hundreds of thousands of relevant documents on the "snapshot" and "terminated employee tapes," ***leading to their complete exclusion from this case***. This is perhaps what the Priceline Defendants have in mind. They know full well that it is not possible to capture many of the relevant documents with search terms – both because of difficulties in coming up with the search term list and because many relevant documents cannot be captured using search terms. The end result – particularly when using a narrow search term list of only 23 terms – is that Plaintiffs never see a majority of the responsive documents and hundreds of thousands of documents disappear entirely from the case.

      **b.**     **The Court Should Order The Priceline Defendants To Use Search Terms To Cull Out The Privileged Documents And Then Produce All Non-Privileged Emails and Electronic Documents On The "Snapshot" And "Terminated Employee Tapes."**

The best way to deal with this problem is to give the Plaintiffs the opportunity to search the "snapshot" and "terminated employee tapes" themselves. Plaintiffs have made it clear that they are willing to accept the burden of searching and reviewing the electronic materials for responsive information, but that they needed to be given access to the "snapshot" and "terminated employee tapes." The Priceline Defendants objected to this approach, claiming that this would lead to the disclosure of privileged and work-product documents contained on the "snapshot" and "terminated employee tapes." However, these concerns can be addressed by using search terms to capture the privileged and work-product documents contained on the

---

[12] The parties have engaged in an endless amount of back-and-forth on the Priceline Defendants' proposed "search term" approach, without making any real progress in the case. *See, e.g.,* Exhibits N through Z to Johnson Decl.

"snapshot" and "terminated employee tapes," which then could be reviewed for privilege and – to the extent that the captured documents actually are privileged – removed from the "snapshot" and "terminated employee tapes" and placed on a privilege log.[13]  Moreover, the Court already put a safeguard in place to protect against the possibility that certain privileged documents would not be captured by the search terms when it held that the inadvertent production of privileged and work-product documents would not constitute a waiver of the attorney-client privilege or work-product protection.  Exhibit D to Johnson Decl. (December 8, 2005 Order).

Using search terms to exclude privileged and work-product documents from the "snapshot" and "terminated employee tapes" is far better than trying to use search terms to capture responsive information.  If the search terms fail to capture privileged and work-product documents, there is still a safeguard in place to ensure that these documents will not be used in the case.  The Priceline Defendants will still be able to assert the attorney-client privilege and work-product doctrine with respect to these documents.  On the other hand, *if the search term method currently employed by the Priceline Defendants fails to capture responsive documents, Plaintiffs will never know that these documents exist and a majority of the responsive documents will be excluded from this case*.  Plaintiffs' proposed search term approach – *i.e.,* using search terms to exclude the privileged documents rather than using search terms to try to capture the relevant documents – strikes an appropriate balance between the Priceline

---

[13] By way of example, the Priceline Defendants could search the "snapshot" and "terminated employee tapes" using terms like "Skadden Arps" or "Robinson & Cole" or the names of attorneys from these firms.  These are the attorneys who would be likely to appear on the attorney-client privilege and work-product documents.  Of course, every document that contains the term "Skadden Arps" or "Robinson & Cole" will not be privileged.  Thus, after running the search, the Priceline Defendants will need to review the documents to determine if they are in fact privileged.

Defendants' right to assert the attorney-client privilege and Plaintiffs' right to discover responsive documents needed to prove the securities fraud claims at issue in this case.[14]

This approach is also appropriate given the directives set forth in the Court's December 2005 Order. In that order, the Court made it clear that: "the defendants, as custodians of the computer files, shall be responsible for excising duplicate files, sifting through data for responsive information and reviewing responsive documents for privilege in the most efficient manner possible." Exhibit D to Johnson Decl. (Dec. 8, 2005 Order). The order further provides that: "the court is placing primary responsibility upon the defendants to properly sort through the data." *Id.* The Priceline Defendants have failed to satisfy their responsibilities and refuse to come up with a good faith methodology for capturing responsive documents. Instead, they have acted strategically in hopes of preventing Plaintiffs from obtaining the vast majority of relevant documents at issue in this case.

Accordingly, this Court should order the Priceline Defendants to: (1) use search terms to capture those documents that may contain privileged and work-product information on "snapshot" and "terminated employee tapes"; (2) review these documents to ensure that they do in fact contain privileged or work-product information and then place the privileged and work-

---

[14] The Federal Judicial Conference's new proposed amendments to the Federal Rules have endorsed Plaintiffs' proposed approach. As the Civil Rules Committee has explained:

> The Committee's more recent focus on electronic discovery revealed that the problems of privilege review are often more acute in that setting than with conventional discovery. . . . [T]he costs and delay caused by privilege review are increasingly problematic. ***The proposed amendment to Rule 26(b)(5) addresses these problems by setting up a procedure to assert privilege and work product protection claims after production***. . . . It is a nod to the pressures of litigation with the amount and nature of electronically stored information available in the present age. (Hon. Lee H. Rosenthal, 2005 Rep. of the Civil Rule Advisory Committee at 52-56 (July 25, 2005)). (emphasis added).

product documents on a privilege log, which they must provide to the Plaintiffs; (3) make a searchable electronic copy of the remaining electronic documents on the "snapshot" and "terminated employee tapes" (*i.e.,* those that are not placed on the privilege log); and (4) produce this copy to the Plaintiffs so that they can search relevant emails and documents on the "snapshot" and "terminated employee tapes."

> **3.    The Priceline Defendants Have Refused To Search The Remaining Emails On The "Snapshot" And "Terminated Employee Tapes" Even Though These Emails Contain Relevant Information And Have Not Been Searched.**

As noted above, the Priceline Defendants:

- Have failed to perform a good faith email-by-email search of the 80 designated individual email accounts on the "snapshot" and "terminated employee tapes";

- Have failed to provide Plaintiffs with a summary describing the methodology they used to search the 80 designated email accounts – in violation of the Court's December 2005 Order; and

- Have adopted a narrow "search term" approach for searching the rest of the "snapshot" and "terminated employee tapes," which has resulted in a massive document dump and led to very few of the relevant documents actually being produced.

The Priceline Defendants have also violated the Court's December 2005 Order in another important way. They have refused to search the remaining emails on the "snapshot" and "terminated employee tapes" that were not part of the Priceline Defendants' purported email-by-email search of the 80 designated email accounts. The Priceline Defendants have no legitimate justification for disobeying the Court's order and refusing to search the remainder of the emails on the "snapshot" and the "terminated employee tapes."

When Plaintiffs asked the Priceline Defendants why they were refusing to run the search terms against the unsearched emails on the "snapshot" and "terminated employee tapes," the Priceline Defendants claimed that *Plaintiffs* had agreed that the remaining emails on the "snapshot" and "terminated employee tapes" need not be searched. Exhibit V to Johnson Decl.

16

(Defs.' May 2, 2006 Letter) (claiming that "It was agreed that emails would be searched using an agreed-upon list of custodians for the designated two year time period of March 1, 1999 to April 1, 2001; and non-email materials would be searched using an agreed-upon search term list."). This is not accurate.

Plaintiffs have made it clear all along that the Priceline Defendants needed to come up with some methodology for searching those emails that were not part of the email-by-email search. For instance, in an August 15, 2005 letter, Plaintiffs told the Priceline Defendants that they needed to "[s]earch the **complete snapshot using the search terms** and produce any non-privileged, responsive materials." Exhibit AA to Johnson Decl. (Plfs.' August 15, 2005 Letter). The Court's December 2005 Order also reflects this point. In the order, the Court held that: "Defendants shall begin to produce responsive information from the e-mail files of the 113 individuals **and the remainder of the snapshot**." Exhibit D (Dec. 8, 2005 Order). The Court also ordered the Priceline Defendants to file a monthly status report informing the Court: "(a) What percentage of the responsive information from the 113 employee e-mail files has been produced; [and] (b) The status of the review and production of the **remainder** of the information on the snapshot." *Id.*

These additional email accounts contain thousands of responsive documents and, as things now stand, they have not been searched. Plaintiffs have made it clear on numerous occasions that the remaining emails on the "snapshot" and "terminated employee tapes" needed to be searched. This has been Plaintiffs' position all along and it is a position that was endorsed by the Court. Accordingly, this Court should order the Priceline Defendants to include these remaining emails in the search.

4.     **The Priceline Defendants Have Excluded Highly Relevant Financial Documents Contained On the Priceline "Snapshot" From Their Search.**

The Priceline Defendants have also failed to propose a methodology for capturing responsive financial documents contained on the Priceline "snapshot" – again, in violation of the Court's December 2005 Order on the motion to compel.  There is no question that electronic financial documents will be of critical importance in this case.  Plaintiffs learned through their pre-suit investigation that Priceline kept highly detailed electronic financial records that tracked all financial and operational activity at Priceline and at the Priceline WebHouse Club on a daily, weekly and monthly basis.  These financial documents were sent to Priceline's top executives, including Defendants Walker, Schulman and Braddock, which shows that Defendants Walker, Schulman and Braddock were fully aware of the deteriorating financial situation at the Priceline WebHouse Club.

Some of these documents turned up in the paper production, but Plaintiffs have not been able to put together a complete set of the financial documents from the paper production because Priceline kept the complete set of its financial documents in an electronic form.[15]  Moreover, ***these documents will not be captured by either the email-by-email review of the 80 key email accounts or the search term approach used to search the remainder of the snapshot***.  Rather, it is more likely that these daily, weekly and monthly financial reports are kept in file folders on the Priceline snapshot.  Thus, the Priceline Defendants should be ordered to produce these

---

[15]  Plaintiffs identified specific financial reports that were missing from the paper production in a February 17, 2006 letter.  Exhibit K to the Johnson Decl. (February 17, 2006 Letter).  By way of example, Defendants created highly detailed "Monthly Financial Reports" recording the financial progress at the Priceline WebHouse Club.  The Priceline Defendants included the March 2000 report, pages from the May 2000 report, and a few of the other monthly reports in the paper production, but several monthly reports were missing.  To date, the missing financial reports have not been produced.

financial records as they are kept on the "snapshot." Alternatively, the Court can order the Priceline Defendants to turn over the "snapshot" and "terminated employee tapes" – minus the privileged and work-product documents – and the Plaintiffs will find these documents themselves.

**5.     The Court Should Set A Deadline For The Completion Of The Electronic Production.**

Finally, this Court should set a deadline for the completion of the Priceline Defendants' electronic production. This deadline is needed to ensure that the electronic discovery issues relating to the "snapshot" and the "terminated employee tapes" are not drawn out indefinitely. The Court has already had to reset the schedule in this case due to Defendants' failure to produce the electronic documents in a timely fashion, and Plaintiffs have been forced to hold off on taking the bulk of the fact depositions until they receive the responsive documents on the "snapshot" and "terminated employee tapes." As things now stand, the parties are in limbo with respect to the schedule in this case. Accordingly, this Court should set a date certain when the Priceline Defendants are to complete the production of the responsive emails and documents contained on the "snapshot" and "terminated employee tapes."

<u>CONCLUSION</u>

As demonstrated above, the Priceline Defendants have failed to conduct a good faith review of those documents on the "snapshot" and "terminated employee tapes" that are responsive to Plaintiffs' document requests. The Priceline Defendants have also failed to comply with the Court's December 8, 2005 Order in several important respects – the most notable being their failure to describe the methodology they used to conduct the designated email search. According, this Court should order the Priceline Defendants to do the following by a date certain:

(a)     Comply with Judge Squatrito's December 2005 Order and provide Plaintiffs with a summary of the *specific* methodology that they used to search the 80 designated individual email accounts. This summary should state whether the Priceline Defendants searched all emails and electronic documents (including drafts, deleted emails, and attachments) in the 80 individual email accounts on an *email-by-email basis*;

(b)     Produce all responsive emails and electronic documents (including draft emails, deleted emails, emails sent to the account holder, emails sent by the account holder, and attachments) contained in the 80 key individual email accounts;

(c)     Use search terms to capture those documents that may contain privileged and work-product information on "snapshot" and "terminated employee tapes";

(d)     Review those documents captured by the privilege search term search to ensure that they do in fact contain privileged or work-product information;

(e)     Place the privileged and work-product documents on a privilege log that fully comports with Rule 26, which they must provide to the Plaintiffs;

(f)     Make a searchable electronic copy of the remaining electronic documents on the "snapshot" and "terminated employee tapes" (*i.e.,* those that are not placed on the privilege log) and produce this copy to the Plaintiffs;

(g)     Provide Plaintiffs with appropriate relief for the failure of the Priceline Defendants to comply with the Court's discovery orders.

Dated: July 6, 2006                    Respectfully submitted,

                                       SCOTT + SCOTT, LLC


                                       __/s/*Erin Green Comite*_____
                                       David R. Scott (ct16080)
                                       Erin Green Comite (ct24886)
                                       108 Norwich Avenue
                                       P.O. Box 192
                                       Colchester, CT  06415
                                       Telephone: (860) 537-5537
                                       Facsimile: (860) 537-4432
                                       drscott@scott-scott.com
                                       ecomite@scott-scott.com

                                       SCOTT + SCOTT, LLC
                                       Geoffrey M. Johnson
                                       33 River Street
                                       Chagrin Falls, OH 44022
                                       Telephone:  (440) 247-8200
                                       Facsimile:  (440) 247-8275


                                       JOHNSON & PERKINSON
                                       Dennis J. Johnson
                                       Jacob B. Perkinson
                                       Peter J. McDougall
                                       1690 Williston Road
                                       P.O. Box 2305
                                       South Burlington, VT 05403
                                       Telephone: (802) 862-0030
                                       Facsimile: (802) 862-0060

                                       STULL, STULL & BRODY
                                       Jules Brody
                                       Aaron Brody
                                       6 East 45th St.
                                       New York, NY 10017
                                       Telephone: (212) 687-7230
                                       Facsimile:  (212) 490-2022

                                       **Co-Lead Counsel**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 6, 2006, a true copy of the foregoing was served on all counsel of record via either hand-deliver or overnight mail or prepaid, first-class U.S. mail, as noted below:

_____/s/*Erin Green Comite*_____

Erin Green Comite

**SERVICE VIA HAND DELIVERY**

Joseph L. Clasen
William Kelleher
Alexander Pencu
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
Stamford, CT 06904-2305

Frank F. Coulom, Jr.
Bradford S. Babbitt
ROBINSON & COLE
280 Trumbull Street
Hartford, CT 06103-3597

Terence J. Gallagher, III
Thomas D. Goldberg
DAY, BERRY & HOWARD
One Canterbury Green
Stamford, CT 06901-2047

**SERVICE VIA OVERNIGHT MAIL**

Bruce Bennett
Jeanne E. Irving, Esq.
J. Michael Hennigan, Esq.
Shawna Ballard
HENNIGAN, BENNETT & DORMAN
865 S. Figueroa St., Ste. 2900
Los Angeles, CA 90017

Daniel Slifkin
Robert Simonds
CRAVATH, SWAINE & MOORE

825 Eighth Avenue
Worldwide Plaza
New York, NY 10019

**<u>SERVICE VIA U.S. MAIL</u>**

Dennis J. Johnson
Jacob B. Perkinson
JOHNSON & PERKINSON
1690 Williston Road
South Burlington, VT 05403

Jules Brody
Aaron Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

Andrew M. Schatz
SCHATZ & NOBEL, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

J. Daniel Sagarin
HURWITZ SAGARIN & SLOSSBERG
147 North Broad St., PO Box 112
Milford, CT 06460-0112