# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| | : | **MASTER FILE NO.** |
| _____ | : | **3:00CV01884(DJS)** |
| | : | |
| This document relates to: | : | |
| | : | |
| ALL ACTIONS | : | |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO ALL DEFENDANTS**

Plaintiffs hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, that all Defendants produce and permit plaintiffs to inspect and reproduce the docu-

ments and records listed and described in this Request.

It is requested that the documents subject to this Request be produced at the offices of

priceline.com Incorporated, 800 Connecticut Avenue, Norwalk, Connecticut, 06854, or at such

other location as is mutually acceptable on December 15, 2004 at 10:00 a.m. and continue as

necessary to permit the inspection and reproduction of the requested documents and records, and

that the documents and records shall remain available to plaintiffs' counsel and be produced at

such other locations as plaintiffs' counsel may designate, which are mutually agreeable to the

parties, until such inspection and copying can reasonably be completed.  Inspection, reproduction

and photographing will be performed by, or under the supervision of, the undersigned attorneys.

1

I.

DEFINITIONS

As used herein, the following terms have the meanings indicated below:

1.      "You," "your" or "answering Defendant" refers to each Defendant answering the document request, and any agent, employee, attorney or other representative of any such Defendant.

2.      "Defendant" means a Defendant in this lawsuit.

3.      "Individual Defendants" refers to N.J. Nicholas, Daniel H. Schulman, Richard S. Braddock, and Jay S. Walker individually and jointly.

4.      "Person" includes natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations or any other legal or business entity.

5.      The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other, as appropriate in the context.

6.      "Document" or "documents" is to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and means, in its broadest possible sense, all recorded matter of any kind, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including but not limited to the following: booklets, brochures, signs, pamphlets, circulars, notices, posters, periodicals, papers, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, financial calculations and representations, invoices, accounting and diary entries, inventory sheets, diaries, appointment

2

books or calendars, teletypes, telefaxes, thermafaxes, e-mail (with each segment "thread" or "string" being considered a separate document), ledgers, trial balances, correspondence, telegrams, press releases, advertisements, notes, working papers, drawings, schedules, tabulations, projections, electronic data (as defined below), information or programs stored on a computer disc, floppy disc, compact disc, magnetic tape and laser disc (whether or not ever printed or displayed), computer hard drives and/or external storage devices, all graphic or manual records or representations of any kind, including but not limited to the following: photographs, microfiche, microfilm, videotapes, recordings, and motion pictures; and all electronic, mechanical or electric records or representations of any kind, including but not limited to the following: tapes, cassettes, discs, metadata, magnetic cards and recordings; and all drafts, alterations, modifications, changes or amendments of any of the foregoing.

7.      "And" means and/or.

8.      "Or" means and/or.

9.      "Refer" or "relate" or "concern" or "referring" or "relating" or "concerning" mean all documents which comprise, explicitly or implicitly refer to, or were reviewed in conjunction with, or were created, generated or maintained as the result of the subject matter of the Request, including, but not limited to, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the Request.

10.     The term "Priceline customer" or "WebHouse customer" or "any customer" refers to any person (as defined above) to whom Priceline (as defined below) and/or WebHouse (as defined below) sold or attempted to sell products or services, or act as a conduit

3

for the sale or purchase of the same, and includes any parent corporations, affiliates, divisions, subsidiaries, operating units, segments or divisions of the customer and any present and former members of the Board of Directors of the customer or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined above) acting or purporting to act on behalf of the customer or its subsidiaries, affiliates, segments or divisions. The term "customer" or "customers" is used in the broadest possible sense, including all members of target markets.

11. The terms "Priceline," "Priceline.com," and "the Company" refer to Priceline.com Incorporated and include any predecessors, subsidiaries, affiliates, licensees, segments or divisions thereof, including but not limited to priceline.com, LLC, Priceline Travel Inc., WebHouse, any present and former members of the Board of Directors of Priceline, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined above) acting or purporting to act on behalf of Priceline or its subsidiaries, affiliates, segments or divisions.

12. "WebHouse" means Priceline WebHouse Club, Inc., and includes any subsidiaries, affiliates, segments or divisions thereof, any present and former members of the Board of Directors of WebHouse, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined above) acting or purporting to act on behalf of WebHouse or its subsidiaries, affiliates, segments or divisions.

13. "Deloitte" means Deloitte & Touche, LLP, and includes any subsidiaries, affiliates, segments or divisions thereof, any present and former members of the Board of

4

Directors of Deloitte, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined above) acting or purporting to act on behalf of Deloitte or its subsidiaries, affiliates, segments or divisions.

14.    "Walker Digital" refers to Walker Digital Corp., and Walker Digital LLC, and includes any subsidiaries, affiliates, segments or divisions thereof, any present and former members of the Board of Directors of Walker Digital, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined above) acting or purporting to act on behalf of Walker Digital or its subsidiaries, affiliates, segments or divisions.

15.    The terms "communications" or "communicated" shall mean and include every manner or means of disclosure, transfer or exchange and every disclosure, transfer or exchange of information whether orally or by document or otherwise, face-to-face, by telephone, telecopies, e-mail, modem transmission, mail, personal delivery or otherwise.

16.    "Electronic data" means the original, and any non-identical copies of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Electronic data includes, by way of example only, computer programs or software (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic internal and external peer-to-peer messages, including electronic mail, third party electronic mail sources and instant messages, operating

5

systems, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment.  Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips including, but not limited to, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or containers and labels appended to, or associated with, any physical storage device associated with electronic data or data produced whether electronically or in image form.

      17.    The term "software" means all materials relating to software systems (regardless of whether they are network or desktop based) and includes, but is not limited to, all currently existing or backed-up electronic representations including, but not limited to, data files, programs and data images stored on any type of media such as hard drive, server, floppy diskette, external storage device, magnetic tape or cartridge, the source code files, object code files, related command procedures, functional specifications, programmer reference guides, detailed design specifications and drawings, test plans, procedures and reports, documentation and other information in machine readable or document form which relate to the design and implementation of any and all software now in the possession, custody or control of Defendants.

      18.    "Electronic media" means any magnetic or other storage media device used to record electronic data.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, and computer chips

including, but not limited to, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

19.    "Network" means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

20.    The term "meeting" means the contemporaneous presence, whether in person or through any means of communication, of any natural persons, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

21.    "SEC" refers to the United States Securities and Exchange Commission.

22.    "Financial statement" refers, but is not limited to, the following (whether audited or unaudited, and whether final, pro forma, complete, or partial): consolidated and non-consolidated balance sheets, statements of earnings, additional paid-in capital, retained earnings, source and application of funds, cash flow, projections, and notes that pertain to Priceline's or WebHouse's past or present condition, including accountants' workpapers.

7

II.

INSTRUCTIONS

      1.      Documents produced in response to one specific paragraph of this Request need not be produced again provided that all Requests to which they are responsive are designated when they are first produced.  Documents previously produced need not be produced again provided those documents are identified by bates number in your response to each specific request.

      2.      Documents produced pursuant to this Request shall be produced in their native format, as they are kept in the usual course of business.  For copies of documents you have produced electronically, you must produce a document image information (DII) file for such documents.

      3.      You are required to produce all the requested documents which are in your possession, custody or control, including (by way of illustration only and not limited to) documents in the possession, custody or control of your affiliates, or merged and acquired predecessors and your present and former directors, officers, partners, employees, accountants, attorneys or other agents, as well as your present and former independent contractors over which you have control, and any other person acting on your behalf.

      4.      This Request for production is continuing so as to require supplemental production pursuant to Rule 26 of the Federal Rules of Civil Procedure.  If you or any person acting on your behalf obtains varying or additional documents called for by these Requests between the time of the original response and the time set for trial, notice of the availability of supplemental documents shall be served on plaintiffs' counsel no later than thirty days after the

8

discovery of any such documents, but in no event later than one month before the first day of trial.

     5.    If you withhold any documents requested herein on grounds of privilege, work-product or otherwise, identify the specific grounds upon which your objection is based and the particular Request objected to, and identify any withheld documents or portion(s) thereof as follows:

     (a)    its date;

     (b)    the identity of its author and/or signatory;

     (c)    the type of document it is (e.g., letter, chart, memorandum, etc.);

     (d)    a summary of its contents, or the nature of the document;

     (e)    its present location and custodian; and

     (f)    a listing of all persons who are known to or believed to have received copies of it.  Notwithstanding the assertion of any objection, any purportedly privileged document containing non-privileged material must be disclosed, with the purportedly privileged portion excised.

     6.    If any otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian, the location/address of such document, and describe in full the circumstances surrounding its disposition from your possession or control.

     7.    <u>DOCUMENTS PRODUCED PURSUANT TO THIS REQUEST SHALL BE LABELED TO INDICATE THE SPECIFIC PARAGRAPH(S) OF THE REQUEST TO</u>

WHICH THEY RESPOND as specifically provided by Rule 34(b) of the Federal Rules of Civil Procedure. If a document was prepared in several copies, or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of notation or modification of any kind whatsoever, including, without limitation, notations on the front or back of the document, such non-identical copies must be produced. Moreover, the fact that a document has been or shall be produced by one Defendant does not relieve any other Defendant from the obligation to produce his or its copy of the same document, even if the two documents are identical in all respects.

III.

RELEVANT TIME PERIOD

The relevant time period of these document Requests, unless otherwise indicated, shall be from January 1, 1999 through December 31, 2001 and shall include all documents and information which relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior to that period. However, with respect to documents relating to WebHouse, there is no limitation in the relevant time period.

IV.

DOCUMENT REQUESTS

1.      All documents showing the internal organization, structure and personnel of Priceline, WebHouse and Walker Digital, including without limitation, documents identifying the departments, groups, or divisions at Priceline, WebHouse or Walker Digital and the relationship among such departments, groups, or divisions.

10

2.      All documents referring or relating to any audit or review of, or other engagement in connection with, Priceline and/or WebHouse performed by any internal or external auditor, accountant, attorney or other consultant including without limitation:

      (a)      accounting workpapers, internal control and management review documents, including management letters, evaluation forms, memoranda, and reports from any accountant or auditor (independent or otherwise) which performed services for Priceline and/or WebHouse; and

      (b)      documents referring or relating to any communications between Priceline and/or WebHouse and any auditors, accountants, attorneys or other consultants and/or sent to or received from such auditors, accountants, attorneys or other consultants.

3.      All documents concerning the financial relationship between Priceline, WebHouse, and Walker Digital, including without limitation, documents concerning whether Priceline's and WebHouse's financial statements should or should not be combined or consolidated.

4.      All documents concerning any other relationship between Priceline, WebHouse, and Walker Digital, including without limitation, the exchange or sharing of administrative support services among Priceline, WebHouse and Walker Digital, common officers and directors, and other management, or infrastructure ties and any employees shared by Priceline, WebHouse, and Walker Digital.

11

5.     All documents referring or relating to the actual or contemplated business operations of Priceline and/or WebHouse, including but not limited to:

(a)     all documents reflecting or referring to the proposed or actual prices solicited, charged or received for products offered through Priceline and/or WebHouse;

(b)     all documents reflecting the number of orders processed by Priceline and/or WebHouse during a given period, the amount of revenue derived from such orders and the profit margin or lack thereof for such transactions or losses on such transactions;

(c)     all documents reflecting or referring to the characteristics and/or demographics of Priceline and/or WebHouse customers, including but not limited to the number of new users, how much customers purchased, amount of savings realized by customers, how often customers purchased or whether and how often such customers were repeat customers or Priceline and/or WebHouse;

(d)     all documents from, to or generated by Priceline's and/or WebHouse's network operations center including but not limited to information regarding the number of customers who used Priceline and/or WebHouse during any time period and the number of transactions completed during such time periods;

(e)     all documents regarding the actual or expected impact, financial or otherwise, of promotions run by Priceline and/or WebHouse;

12

(f)     all documents relating to the amount of subsidies being provided by Priceline and/or WebHouse as to any products being offered, sold or rented through Priceline and/or WebHouse;

(g)     documents referring or relating to membership in WebHouse and revenues associated with membership;

(h)     all documents referring or relating to any actual or contemplated layoffs, reductions in workforce, and/or hiring freezes at Priceline and/or WebHouse; and/or

(i)     all documents identifying individuals with access to any operational reports of Priceline and/or WebHouse.

6.     All documents referring or relating to the actual, historical, contemplated or projected financial results of Priceline and/or WebHouse, including without limitation,

(a)     all documents that calculate on a historical basis the sales, revenues, royalties, pretax income, net income, profit margins, operating results, expenses, sales backlog, inventory, costs of sales and/or expenses at Priceline and/or WebHouse and any Omnibus Plan(s) for 1999, 2000, or 2001;

(b)     all documents constituting any Priceline or WebHouse budget, projection, forecast or estimate of Priceline's and/or WebHouse's revenue, orders or sales, profits, royalties, costs or royalty payments pursuant to any agreement, pretax income, net income, profit margins, operating results, expenses, inventory, costs of

13

sales and/or expenses utilized or relied on in creating, or referring

to, any budgets, forecasts or estimates of the projected or actual

number or volume of Priceline and/or WebHouse orders or sales,

profits, expenses, costs, and/or products and/or services to be

supplied or provided by Priceline and/or WebHouse; and/or

referring or relating to any changes in such budgets, forecasts or

estimates including the reasons for such changes and the amount;

(c)    all documents which refer or relate to any comparisons of actual

financial or business results to any financial or business plans,

forecasts, or projections for Priceline and/or WebHouse; and

(d)    all documents referring or relating to any actual or contemplated

restatement of results for Priceline and/or WebHouse for any

period.

7.    All documents which refer or relate to  periodic reports (including, but not limited to annual reports, quarterly reports, weekly reports, biweekly reports, daily reports and the like) proxy materials, press releases, or brokerage reports and promotional material which were received by any Defendant and/or prepared or disseminated by or on behalf of any Defendant to the security holders of Priceline and/or WebHouse, to the public or to one or more members of the investment community, including financial institutions and brokerage houses.

8.    All documents, including, without limitation, financial statements and/or progress reports, referring or relating to any tracking of fees, expenses, and/or costs involved in

14

the service, use, license, and/or installation of any Priceline and/or WebHouse product, service, business model, license and/or system.

9.     Regardless of the time period, all documents referring or relating to the formation and/or termination of WebHouse, priceline.com, LLC and Priceline Travel Inc., as legal entities or otherwise, including but not limited to any communications regarding the timing of the formation or termination of each and documents referring any actual or contemplated mergers or other combinations or consolidations involving these entities.

10.     All documents regarding the financing and/or capitalization of any aspect of WebHouse.

11.     All documents, regardless of when created, that refer or relate to the by-laws, articles of incorporation or other governing documents for Priceline, WebHouse and/or Walker Digital.

12.     All documents concerning any meetings of Priceline or the Board of Directors at Priceline, WebHouse or Walker Digital and the committees and subcommittees thereunder, including without limitation:

> (a)     all documents presented at, prepared for, disseminated at, or prepared after, any Board meetings, committee meetings or subcommittee meetings;

> (b)     all documents including agendas, emails, reports, notes taken at, minutes, and all correspondence in connection with any Board meetings, committee meetings, or subcommittee meetings; and

(c)    all documents concerning the actual or contemplated appointment of directors to the Priceline, WebHouse or Walker Digital Board of Directors.

13.    All documents that refer or relate to any compensation and/or other benefits, remuneration or emoluments received or to be received by any of the answering Defendants or members of their family or in-laws (extending to the second degree of consanguinity) including, without limitation, employment contracts or agreements by, for and/or among the Individual Defendants.

14.    All documents that refer or relate to any contemplated or actual work performed by any executive recruiter(s) for or on behalf of Priceline and/or WebHouse.

15.    All documents, including but not limited to correspondence, memoranda, email and handwritten notes, concerning management changes at Priceline or WebHouse, including without limitation, all documents that refer or relate to the hiring of and departure or resignation of Heidi Miller and Maryann Keller from executive positions at Priceline.

16.    All documents relating to Priceline's and/or WebHouse's annual or special shareholders' meetings, including but not limited to:

(a)    agenda, minutes and/or transcripts/tapes thereof;

(b)    copies of speeches or presentations by Priceline and/or WebHouse representatives or agents and drafts thereof;

(c)    scripts or drafts of actual or anticipated shareholders' questions and answers thereto; and

(d)    memoranda, notes and/or agendas for or relating to such meetings.

16

17.     All documents referring or relating to any agreements, loans, financings, sales, purchases, rental agreements or other such transaction(s) between or among Priceline and/or WebHouse, on the one hand, and any of the Individual Defendants and/or Walker Digital, on the other.

18.     All documents referring or relating to any loan agreements obtained by or applied for by Priceline and/or WebHouse including, without limitation, any secured or unsecured credit facilities and for each produce the following:

     (a)     all documents referring or relating to any communications including, without limitation, negotiations, relating to any such agreement or application;

     (b)     all drafts or preliminary versions of such agreements;

     (c)     all compliance or default notices referring or relating to such agreements;

     (d)     all documents or reports created by any federal or state agency referring or relating to such loan agreements;

     (e)     all documents provided to any bank or other financial institution as part of Priceline's and/or WebHouse's application for or obtaining of any such agreement;

     (f)     all documents referring or relating to any borrowings made on any such loan agreement or any repayments thereof;

     (g)     all documents referring or relating to any actual or proposed waiver, extension or modification of any such agreement; and

17

(h)    all documents referring or relating to any borrowing restrictions imposed by such agreement and Priceline's and/or WebHouse's compliance with such borrowing restrictions including, without limitation, any restrictions relating to Priceline's and/or WebHouse's income, stock price, bond rating, net worth and/or total indebtedness.

19.    All documents referring or relating to:

(a)    the market for or marketability of Priceline and/or WebHouse securities;

(b)    the price of Priceline and/or WebHouse securities;

(c)    movements in the price of Priceline and/or WebHouse securities;

(d)    planned, proposed or actual efforts to support or stabilize the price of Priceline and/or WebHouse securities;

(e)    the possibility of declines or increases in the price of Priceline and/or WebHouse securities;

(f)    the strike price of any Priceline and/or WebHouse securities;

(g)    the desirability of maintaining or increasing the price of Priceline and/or WebHouse securities; and/or

(h)    efforts to maintain, increase or avoid a decline in the price of Priceline and/or WebHouse securities.

20.    All documents referring or relating to any proposed or actual offering of Priceline's and/or WebHouse's securities, whether public or private.

21.     To the extent not produced in response to any other Request, all documents relating or referring to any warrants or other securities of, or relating to, WebHouse held by any Defendant (regardless of the time period), all valuation reports and any actual or contemplated updates pertaining to or referencing valuations of such warrants or other securities, certificates or other evidence of interest in such warrants or other securities, contemplated or actual charges taken related to such warrants, the timing of actual charges taken, and proposed, draft or filed registration statements, fairness opinions, and/or other documents referring or relating to such warrants or securities.

22.     All documents discussing, reflecting, referring, relating to or analyzing the accounting treatment of any securities owned, directly or indirectly, by the Individual Defendants,  Priceline, WebHouse and/or Walker Digital.

23.     All documents referring or relating to any contemplated or actual work performed or to be performed by any valuation firm or entity (including but not limited to Murray Devine & Co., Inc.) on behalf of or requested by Priceline, WebHouse and/or any Individual Defendant.

24.     All documents referring or relating to negotiations between

(a)     Priceline and/or WebHouse, and

(b)     any selling or purchasing stock holders and any underwriters or other parties facilitating such transactions relating to the offering price or valuation of Priceline's and/or WebHouse's securities in any public or private offering including, without limitation,

19

documents referring or relating to the prevailing market conditions for such securities.

25.     All documents referring or relating to any Defendant's purchase or sale of Priceline stock, including, but not limited to, Defendant Walker's purchase of Priceline.com stock from Delta Airlines or any other entity.

26.     All documents referring or relating to any actual or proposed direct and/or indirect investments in Priceline, WebHouse and/or any other Priceline licensee by:

      (a)    any Defendant;

      (b)    Prince Alwaleed bin Talal;

      (c)    Walker Digital;

      (d)    Perfect Yard Sale, Inc.;

      (e)    MYPrice Pty LTD ACN;

      (f)    Hutchison Whampoa Limited;

      (g)    Vulcan Ventures;

      (h)    Liberty Media; and/or

      (i)    any other entity.

27.     All documents which analyze, comment upon, or otherwise refer to any policy of Priceline and/or WebHouse regarding the purchase or sale of Priceline and/or WebHouse securities by officers and directors generally, or by the Individual Defendants in particular.

28.    All stock transfer records and shareholder lists or any other documents identifying purchasers or holders of Priceline and/or WebHouse securities during the Class Period.

29.    All documents which refer or relate to the amount of monies and/or profit realized on the purchase, acquisition, transfer or sale of any Priceline or WebHouse security by any Individual Defendant and/or Priceline and/or WebHouse in any stock offering and/or other financial transaction, whether public or private, regardless of the time period, including all documents which analyze, evidence, comment upon, or otherwise refer to purchases and/or sales of Priceline and/or WebHouse securities by any of the Individual Defendants, by any officer or director of Priceline and/or WebHouse or any member of their families or persons acting on their behalf, including, without limitation, the confirmation slips for each such transaction and any Forms 3, 4 and 144 filed with the SEC.

30.    All documents relating or referring to any warrants or other securities of Priceline and/or WebHouse that were offered to and/or received by any airline company including but not limited to Participation Warrant Agreements.

31.    All documents relating or referring to any communications provided by or on behalf of Priceline and/or WebHouse to or received from any media outlet, reporter, securities analyst, brokerage firm, money manager, investment banker or stock exchange relating in any way to Priceline and/or WebHouse, including, but not limited to, past financial or business results or to future projections of financial or business results or expectations for Priceline and/or WebHouse, and, each document memorializing any oral communications.

32.     All documents referring or relating to Priceline's and/or WebHouse's actual or proposed plans (or consideration of such plans) to charge WebHouse's customers a monthly fee, including any documents referring or relating to any decision to adopt or abandon charging this fee.

33.     All documents relating or referring to any sales presentation, strategy or plan utilized or considered by Priceline and/or WebHouse or any Priceline and/or WebHouse officer, director, contractor, agent, or employee, directed at any actual or potential Priceline and/or WebHouse supplier, including all manuals relating to sales or customer relations, pricing lists, handbooks, directives, memos, incentive deals, and the like.

34.     All documents relating or referring to any advertising, marketing, sales presentation, strategy or plan utilized or considered by Priceline and/or WebHouse or any Priceline and/or WebHouse officer, director, contractor, agent, or employee, directed at any actual or potential Priceline and/or WebHouse customer, including without limitation:

> (a)     all manuals relating to sales or customer relations, pricing lists, handbooks, directives, memos, incentive deals, discounts and the like, and all documents referring or relating to communications with William Shatner; and

> (b)     all documents referring or relating to any agreements, plans, attempts or discussions regarding Adaptive Marketing Programs (including adaptive promotions and adaptive cross selling), co-branding, co-positioning and/or co-marketing either Priceline's or WebHouse's brands, services or products.

22

35.    All documents referring or relating to the posting on Priceline's website a list of the analysts following the Company and/or recordings of the Company's conference calls, and information regarding the frequency of use of or access to this information by visitors to the website.

36.    All documents concerning the pricing of products and/or acceptances of bids for products offered through Priceline, WebHouse and/or any Priceline and/or WebHouse licensee, including all documents regarding different pricing models for different customers based on frequency of use and/or geographical location.

37.    All documents relating or referring to any public statements of any Defendant concerning Priceline, Walker Digital or WebHouse.

38.    Any and all documents relating or referring to or evidencing private statements of any Defendant concerning Priceline or WebHouse's services, operations, projects, the planned expansion of either, whether by market or products, customers or the market for their securities or products during the relevant time period, documents referring or relating to interviews or other statements made by any Defendant, discussing Priceline's and/or WebHouse's prospects, any of its products, services, suppliers, sponsors and/or the financial performance or condition of Priceline and/or WebHouse or the value of Priceline and/or WebHouse securities, including without limitation, internal discussions regarding private sales of any Priceline or WebHouse security.

39.    All documents referring or relating to the posting on Priceline's website of a list of the analysts following the Company and/or recordings of the Company's conference

23

calls, and information regarding the frequency of use of or access to this information by visitors to the website.

   40. All documents sent to, received from, filed with, or referring or relating to any communications or filings with the Securities and Exchange Commission ("SEC") or any other state or federal regulatory agency or authority of any national, regional, or local stock exchange or securities association (including but not limited to the National Association of Securities Dealers ("NASD") and any subsidiary of NASD, such as NASD Regulation, Inc.) with regard to Priceline, WebHouse or Walker Digital including all exhibits to and drafts of such material, proposed filings and other inquiries or comments to or from any such regulatory authority, and any notes or memoranda of any communications or other meetings regarding or relating to such filings or communications.

   41. Irrespective of when created, all documents which refer or relate to any investigation or inquiry, whether formal or informal, made of Priceline or of any of its operating units (including but not limited to WebHouse), officers, directors or employees, including the Individual Defendants, by any attorney, accountant, analyst or the like retained by WebHouse or Priceline to conduct such investigation, by a grand jury, the Better Business Bureau, or any federal, state or non-governmental regulatory agency or body including, without limitation, all documents produced by or on behalf of Priceline and/or WebHouse or any of the Defendants to any such entity and any transcripts of testimony or statements given in connection with such an investigation or inquiry by or on behalf of Priceline and/or WebHouse or relating thereto.

   42. All documents referring or relating to Priceline's, WebHouse's and/or any Individual Defendant's need for capital, including, without limitation, all documents which refer

24

to any cash flow and/or liquidity problems, issues or concerns at Priceline or WebHouse and all documents discussing the amount of capital anticipated to be needed to develop, manufacture or expand Priceline's or WebHouse's business.

43.    All files maintained by or on behalf of the Individual Defendants which refer or relate to Priceline and/or WebHouse or Priceline's and/or WebHouse's products and/or services, including, but not limited to, all diaries, calendars, or other systems maintained by or for Defendants concerning or for the purpose of their appointment scheduling.

44.    All documents concerning policies or practice of Priceline and WebHouse regarding the retention or destruction of documents, including any changes or modifications in such policies or practices during the relevant time period.

45.    Irrespective of when created, all documents discussing this lawsuit or any allegations therein.

46.    All documents, regardless of when created, referring to, relating to or constituting any insurance policies or other agreements under which any Defendant may claim coverage to satisfy all or part of any possible liability for the claims asserted against any of them in this action.

47.    All documents, regardless of when created, that refer and/or relate to any potential, planned or actual expansion of Priceline's and/or WebHouse's operations, strategic plans, marketing plans or strategies and/or services, including but not limited to the potential, planned or actual expansion of Priceline's and/or WebHouse's product and service offerings into other geographical areas and/or product areas including but not limited to the following:

(a)    airline tickets and/or travel insurance;

25