# EXHIBIT V



April 27, 2006

<u>Via Facsimile and U.S. Mail</u>

Robert K. Simonds
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Re:    In re Priceline.com Securities Litig., Case No. 3:00cv1884 (DJS)

Dear Robert:

I write in response to your April 26, 2006 letter in which you finally provided us with a time frame when you plan to send us the indexes from the backup tapes and the results from the search of the snapshot and the departed employee tapes. On the indexes for the backup tapes, you state: "[i]t is our understanding from eMag, your chosen vendor, that the scan results will be done by the end of the week." You also state that, on the snapshot and departed employee tapes, "[w]e are hoping to have the 'hits' and page counts from our vendor by the end of the week." We look forward to receiving both the indexes from the backup tapes and the results from the snapshot and departed employee tape search by the close of business on Friday, April 28. Please email the indexes and the results from the search to me at gjohnson@scott-scott.com.

Your letter also states that the parties need to have another meet and confer to discuss next steps. We agree. We are available for the call anytime on Monday, May 1 or Tuesday, May 2. Please let us know what time on Monday or Tuesday you are available for the call.

Also, in preparation for the call, we need to know whether it is possible to restore the WebHouse backup tapes to their native format. I have asked this question to Jim Hein on at least two occasions. I also raised the question in my letter to you on April 20, 2006. We do not understand why you are so reluctant to provide us with this basic information. This is something we obviously need to know. We expect that you will provide us with an answer to this question prior to next week's call.

In addition, please confirm that the Priceline Defendants have used and will be using the search terms to search the *entire* snapshot and departed employee tapes. In Jim Hein's November 8, 2005 letter, he suggested that the Priceline Defendants planned to use the search



Robert Simonds
April 27, 2006
Page 2

terms to search only the non-email portions of the snapshot and departed employee tapes, excluding emails from the search. This would obviously create significant gaps in the production since only a small portion of the email accounts on the snapshot and departed employee tapes were hand searched. We are not sure if Jim was confused about this point, or if the Priceline Defendants plan to exclude the emails from the search. Please let us know prior to next week's call whether you plan to exclude emails from the search term search.

Finally, with respect to the three "Jay Walker Mac" files, you state in your letter that the Priceline Defendants "never intended to search the Jay Walker Mac Data." You admit that the "Jay Walker Mac" files are Jay Walker's own personal computer files and that they are in your custody and control. Moreover, Jim Hein sent us a spreadsheet on November 8 showing that these files were on the Priceline snapshot, which you have represented on numerous occasions as being fully searchable. Although you suggest that these files contain Walker's documents going back to the mid-1980s, you never state that **all** of the documents on the Jay Walker Mac files were created and/or altered outside of the relevant time period. Unless you can confirm that the Jay Walker Mac files contain no documents from the relevant time period, we expect that you will take steps to search and produce relevant documents from these files. We plan to address this issue during next week's conference call.

Sincerely yours,

Geoffrey M. Johnson

cc:    David R. Scott (via fax)
       Arthur Shingler III (via fax)
       Jacob B. Perkinson (via fax)
       Peter J. McDougall (via fax)
       Erin G. Comite (via fax)
       Stacey K. Porter (via fax)
       Donald A. Broggi (via fax)

# EXHIBIT W



May 1, 2006

<u>Via Facsimile and U.S. Mail</u>

Robert K. Simonds
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Re:    <u>In re Priceline.com Securities Litig., Case No. 3:00cv1884 (DJS)</u>

Dear Robert:

I have received your April 28, 2006 letter in which you suggest that the parties meet and confer by telephone on Tuesday, May 2, 2006 at 2:00 p.m. eastern to discuss the issues we have raised in our letters to you and to Jim Hein. We are available for the 2:00 p.m. telephonic meet and confer on May 2.

You also state that "[t]here are numerous statements and positions in [Plaintiff's April 27] letter that we take issue with." You have misread our April 27 letter. The purpose of that letter was to get additional information to help facilitate the production of the electronic documents and data contained on the Priceline snapshot, the departed employee tapes, the Jay Walker Mac files and the backup tapes. We expect that you will come prepared to answer these questions during tomorrow's meet and confer. These questions include:

<u>For The Snapshot and Departed Employee Tapes</u>

- Whether the Priceline Defendants are prepared to use the shortened search term list that we sent you in early April to search *and produce* responsive, non-privileged documents contained on the snapshot and departed employee tapes;

- Whether the Priceline Defendants are prepared to use the shortened search term list to search the *entire* snapshot and *all* of the departed employee tapes – not just those portions of the snapshot and departed employee tapes that contain non-email electronic data;

- Whether the Priceline Defendants are prepared to set a deadline when you will complete the snapshot and departed employee tape production;

ATTORNEYS AT LAW    CONNECTICUT    SCOTT + SCOTT, LLC    860 267 8200 VOICE
OHIO    33 RIVER STREET    440 267-8276 FAX
CALIFORNIA    CHAGRIN FALLS, OH 44022    SCOTTLAW@SCOTT-SCOTT.COM
WWW.SCOTT-SCOTT.COM



Robert K. Simonds
May 1, 2006
Page 2

For the 42 Backup Tapes

- Whether eMag has the ability to restore the backup tapes to their native format;

- Whether you will agree to produce the indexes from the 42 backup tapes to us in a searchable and sortable format, which will allow Plaintiffs to cull down the material on those tapes and focus on those particular tapes and files that contain responsive information;

- Whether you have the ability to load the files that we designate from the eMag index into a searchable database, such as Introspect or Summation.

For the Jay Walker Mac Files

- Whether these files contain data or information from the relevant period;

- Whether these files are located on the snapshot.

Finally, we would like to address Bill Kelleher's April 28, 2006 letter in which Bill included several self-serving statements suggesting that we had inappropriately contacted eMag in order to obtain confidential information on the backup tapes themselves. This is a mischaracterization of what actually happened. As you know, the parties jointly agreed to use eMag to assist in the indexing and restoration of the backup tapes. We contacted eMag to ascertain when the indexes would be complete and whether eMag had the ability to restore the tapes to their native format. This information is hardly confidential in nature and – given that the parties jointly agreed to use eMag to assist in the restoration of the tapes – we did not believe that you were needed on the call. We will, however, make sure that you are on any calls in the future when we contact eMag about the status of the indexing and restoration of the backup tapes. We ask that you provide us with the same courtesy.

Sincerely yours,

Geoffrey M. Johnson /ns

Geoffrey M. Johnson

cc:    David R. Scott (via fax)
       Arthur Shingler III (via fax)
       Jacob B. Perkinson (via fax)
       Peter J. McDougall (via fax)
       Erin G. Comite (via fax)
       Stacey K. Porter (via fax)
       Donald A. Broggi (via fax)

# EXHIBIT X

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1814

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID M. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

———

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

———

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

May 2, 2006

In re Priceline.com Securities Litigation
Master File No. 3:00cv1884 (DJS)

Dear Geoffrey:

In your letters leading up to today's meet and confer and during the meet and confer itself, you raised issues that plainly have been addressed by Defendants on multiple occasions. The record is clear and it exposes your tactic of trying to generate discovery disputes. I address each issue in turn below:

## The Production of Emails

You now state that any agreed-upon search term list for the non-email electronic data should also be used "to search the *entire* snapshot and *all* of the departed employee tapes -- not just those portions of the snapshot and departed employee tapes that contain non-email electronic data". Your justification for this new proposal is to "cross-check" our already completed production of emails. Your position is without logic or support.

The parties went down this road months ago: the processes by which Defendants would search the "snapshot" for email and non-email electronic materials were explicitly negotiated and agreed-upon between the parties and communicated to the Court on multiple occasions. It was agreed that emails would be searched using an agreed-upon list of custodians for the designated two-year time period of March 1, 1999 to April 1, 2001; and non-email materials would be searched using an agreed-upon search term list. To refresh your recollection with respect to those agreements, I refer you to, among other things, the following:

- August 8, 2005 letter from Peter McDougall to Bill Kelleher and Jim Hein;

- August 11, 2005 letter from Jim Hein to Peter McDougall;

- August 15, 2005 letter from Peter McDougall to Jim Hein;

- January 10, 2006 Status Report;

- February 10, 2006 Status Report;

- March 9, 2006 Status Report; and

- April 10, 2006 Status Report.

To be clear, we will <u>not</u> duplicate the time-consuming and expensive efforts that we have completed with respect to reviewing and producing approximately 500,000 pages of emails in order to "cross-check" our efforts at your whim -- particularly when you negotiated the very terms of our email search to begin with.

We are done searching emails files; the production of email files is substantially complete. Your attempt to undo our memorialized agreements is further evidence of your tactics to harass and delay the discovery process.

<u>Utilization of plaintiffs' "April 7th" search term list</u>

You again raise this issue, and ask if Defendants are "prepared to use the shortened search term list . . . to search **and produce** responsive, non-privileged documents contained on the snapshot". As stated in my April 11th letter to you:

> "Defendants have agreed to utilize an appropriately shortened list to run a search against Priceline's 'snapshot'. Once we determine how many hits and pages the agreed-upon list produces, we will communicate those results to you and we can then discuss next steps. Obviously, we would not -- and did not -- blindly agree to produce documents retrieved by a proposed search term list that we had not yet seen. In any event, we only plan to produce non-privileged documents responsive to underlying document requests as modified by objection, agreement and/or court order."

Your April 20, 2006 letter to me specifically acknowledged this plan of action.

As you learned today, your April 7th search term list generated approximately 360,000 documents that are "hits". In terms of page numbers, the estimate is above <u>five million</u> pages. Those figures are computed after excluding (i) the documents we already reviewed as part of our "Webhouse", "Web house" and "WHC" search (which resulted in the production of more than 120,000 pages of documents), and (ii) any repetitive "hits". In light of the enormous amount of information retrieved by the April 7th list, as we stated in the meet and confer today (and as I predicted in my letter to you on April 11, 2006), your April 7th list is overly broad and needs to be refined. We have already reviewed millions of pages of documents in this litigation and have

produced over 750,000. We will not review five million additional pages retrieved by a search term list that generates numerous false "hits" and fails to target responsive materials.

We offered three solutions during our meet and confer today. You rejected them all. First, we offered, with the help of our vendor, to specifically review the April 7th list to identify which terms were either inappropriate or overly-broad in their retrieval. For example, it is our understanding from our vendor that many terms on the list are so generic in nature that they are retrieving numerous "hits" because they target a document's underlying formatting or set-up features. Second, we suggested that we agree on a workable number of terms that are relevant to the case to keep the document production moving forward. Third, we suggested that we focus on the search terms on certain types of files that were likely to contain office-type documents such as Word and Excel documents. You refused to meet and confer further or even consider any of those proposed solutions. We remain available to discuss them.

In the meantime, it is our view that the process of searching and producing non-email material from the "snapshot" should continue even though you refuse to compromise. Therefore, Defendants plan to select ten reasonable and relevant search terms from your April 7th list that Defendants feel appropriately will target responsive information. We will produce responsive, non-privileged materials retrieved using those terms on a rolling basis. We will communicate the 10 terms as soon as they are chosen.

### 43 Back up Tapes

As discussed, eMag produced logs of indices for 31 of the 43 tapes. Based on preliminary discussions with our electronic document vendor, the indices indicate that the data on those tapes is irrelevant database material of the kind we previously described to you several months ago concerning other electronic data. An additional 8 logs have just been provided to us and they appear to list the same database type information. As to the 4 remaining tapes, as explained to you, they cannot be indexed at this time without further work and expense by eMag due to non-standard back up formatting.

To be clear, as mentioned to you and your colleagues several times, we do not think it is necessary to restore and review the back up tapes especially given the existence and purpose of the "snapshot". As you know, the Court has already concluded, back in December of 2005, when it largely denied your motion to compel, that full restoration of the backup tapes may well be "a colossal waste of resources." "Before the court orders defendants to restore a backup tape, there must be some indication that the files stored on the backup tape may contain relevant information." The Court further held it would not "compel restoration of the backup tapes, regardless of which party is going to pay for restoration, unless the effort is justified." In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 88, 90 (D. Conn. 2005). Therefore, your assumption that the back up tapes will be reviewed and produced is contrary to the Court's order.

We will send to you the scan logs for the 39 back up tapes. We do not think it necessary or practical to discuss producing the logs in a searchable format – and

we think you will agree when you see the logs. Furthermore, we remind you that we did not agree to hire eMag for restoration of the tapes as you try to suggest, but only to perform a forensic scan of them, as you well know from our correspondence.

Finally, your statement in your letter of late yesterday that you believe you can contact eMag at your discretion is wrong. The Court ordered that the Defendants are to retain full control over the indexing of the back up tapes. (December 8, 2006 Order.) The fact that the indexing is being completed by eMag, a vendor of your choosing, does nothing to change this fact. First, Defendants hired eMag in connection with this litigation. Therefore, eMag is an agent of Defendants and the work they complete for us is protected by the work-product doctrine. Second, since you have worked with eMag before, we know that you are aware of eMag's standard confidentiality obligation to its client -- us. Should you contact eMag again and attempt to violate the work-product protection or instigate a breach of eMag's obligations, we will bring this matter to the attention of the Court and seek any appropriate relief.

<u>Jay Walker Mac Files</u>

As you are aware, those files are not part of the "snapshot". The data contained on those files are older Macintosh-formatted data from Mr. Walker's personal computer that date back to the mid-1980s. It was collected prior to the "snapshot" and it is our understanding that it was received by our vendor in connection with an entirely different litigation. We specifically told you back on November 8, 2005, by letter, and numerous times by telephone, that we did not plan to search those files.

In your letter to me of April 20, 2006, you again raised the Jay Walker Mac Files. In response to your revival of this issue, I informed Jeanne Irving, Mr. Walker's new counsel, that you were inquiring about the files. Ms. Irving then asked specifically for those files to be delivered to her. During the meet and confer today I explained to you that we were in the process of delivering those files to Ms. Irving. You stated that you did not understand our decision to do so. The files <u>belong</u> to Mr. Walker. When Mr. Walker's counsel requests them, we are obligated to comply. We suggest you contact Ms. Irving should you have any additional questions.

Sincerely,

Robert K. Simonds

Geoffrey M. Johnson, Esq.
    Scott + Scott LLC
        33 River Street
            Chagrin Falls, OH 44022

BY EMAIL AND FIRST CLASS MAIL

Copies to:

Peter McDougall, Esq.
    Johnson & Perkinson
      1690 Williston Road
        P.O. Box 2305
          South Burlington, VT 05403

William J. Kelleher, III, Esq.
    Robinson & Cole LLP
      695 East Main Street
        Stamford, CT 06904-2305

Jeanne E. Irving, Esq.
    Hennigan, Bennett & Dorman LLP
      865 S. Figueroa Street
      Suite 2900
        Los Angeles, CA   90017

BY EMAIL AND FIRST CLASS MAIL

# EXHIBIT Y

# JOHNSON & PERKINSON

### ATTORNEYS AT LAW
1690 WILLISTON ROAD
P.O. BOX 2305
SOUTH BURLINGTON, VERMONT 05403
www.jpclasslaw.com

DENNIS J. JOHNSON
ALSO ADMITTED TO PA AND DC

JACOB B. PERKINSON
ALSO ADMITTED TO ME

*INACTIVE

JAMES F. CONWAY, III
ALSO ADMITTED TO MA

PETER J. McDOUGALL
ALSO ADMITTED TO MA

STACEY K. PORTER
ADMITTED TO MA & NY ONLY

TELEPHONE (802) 862-0030
TELECOPIER (802) 862-0060
E-MAIL email@jpclasslaw.com

May 3, 2006

Via Facsimile and U.S. Mail

Robert K. Simonds, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

     Re:   In re Priceline.com Securities Litig., Case No. 3:00cv1884 (DJS)

Dear Robert:

     I write in response to your May 2, 2006 letter and to summarize yesterday's meet and confer. The statements you made in the letter and during the meet and confer reflect a poor understanding of what has transpired to date with respect to the snapshot and departed employee tapes. We want to take this opportunity to correct several of those misstatements.

The Production of Emails

     On yesterday's call, we asked you to confirm that you would be using the search terms to search not only the non-email data on the snapshot and departed employee tapes but also the large volume of emails on the snapshot and tapes that have not been searched. There is no question that these unsearched emails are likely to contain responsive information. Moreover, these materials were not picked up in the email-by-email search you did for the 80 individuals. Nevertheless, you stated that you would not be using the search terms to search these emails on the snapshot and departed employee tapes and that Defendants would not conduct any review of these materials to determine the amount, or even existence, of responsive information.

# JOHNSON & PERKINSON
## ATTORNEYS AT LAW

Robert K. Simonds, Esq.
May 3, 2006
Page 2

Your reason for doing so is surprising, to say the least. You claim that Plaintiffs "explicitly negotiated and agreed" to exclude these emails from the search term search. We certainly were never part of any such "agreement." In fact, it has been our position all along that the emails on the snapshot and departed employee tapes needed to be part of the search term search. This is reflected in our correspondence, such as the August 15, 2005 letter in which we told you that Defendants needed to "[s]earch the *complete snapshot using the search terms* and produce and non-privileged, responsive materials." We also stated that Defendants needed to "search the *entire* backup tape using the above mentioned search terms." Remarkably, you claim that this is the letter where we agree to exclude the emails from the search term search.

We addressed this point again in the motion to compel that we filed in September 2005. There, we stated: "In Plaintiffs' August 15, 2005 letter, Plaintiffs agreed to a proposed approach whereby the Priceline Defendants would *initially* limit their search to email accounts of 113 individuals *and would use search terms for other relevant emails* and for relevant non-email documents on the snapshot and ex-employee tapes." The Court's December 2005 order also reflects this point. For instance, Directive 5 provides that: "Defendants shall begin to produce responsive information from the e-mail files of the 113 individuals *and the remainder of the snapshot* in the manner consistent with the preceding directive." Directive 6 further provides that you must file status reports informing the Court: "(a) What percentage of the responsive information from the 113 employee e-mail files has been produced; [and] (b) The status of the review and production of the *remainder* of the information on the snapshot."

Clearly, we never agreed to exclude the emails from the search term search in any of our letters or in our filings with the Court. Nor have we agreed to exclude the emails during the many meet and confers. You did not participate in any of those calls and have only been involved in this case for a few weeks. Thus, it may be the case that you are simply confused about this point. In any event, Defendants must use the search terms to search the remainder of the emails on the snapshot and departed employee tapes so that they can produce the responsive materials contained in those documents. The search term search is needed to capture the large volume of responsive emails that have never been searched or produced. Defendants have refused to do so, leaving us with no other choice than to file yet another motion to compel with the Court.

Plaintiffs' Second Search Term List

During yesterday's call, you also stated that you would not be using Plaintiffs' shortened search term list to produce responsive information. Instead, you asked us to revise our list a third time. Your demand that we continually revise our search term list has not been made in good

## JOHNSON & PERKINSON
### ATTORNEYS AT LAW

Robert K. Simonds, Esq.
May 3, 2006
Page 3

faith – particularly given that the shortened search term list was a compromise position and has
resulted in a universe that captures only 10% of the material on the snapshot and departed
employee tapes, leaving only a small percentage of the original volume of information, 360,000
documents, according to your own estimates, for you to review and produce. Moreover, on
yesterday's call, you were not able to tell us which search terms you thought resulted in non-
responsive results. We are comfortable that all of the terms on the list are necessary to capture
responsive and relevant results. Finally, the second version of the list was a compromise
position and was designed to get the search term process moving. Accordingly, we plan to move
the Court for a more inclusive search based on the entire search term list, consistent with the
Court's December 2005 Directives.

        In the interim, we expect that you will continue to review and produce documents
captured by terms on the shortened search term list which Defendants agree are necessary to
capture relevant documents. During the meet and confer, you stated that you would be willing to
produce documents that were captured by some subset of the search terms Plaintiffs have
provided. We expect you will provide us with a list of what Defendants have concluded are the
non-objectionable search terms and that Defendants will move ahead immediately with the
production of the documents from those terms. This is required by the Court's order, which
provides: "If one party seeks relief from the court concerning the scope of information searched
or produced, the party producing the information shall not delay working toward the production
of information that is not in dispute." Please provide the list of terms Defendants intend to limit
their search to by the end of the week so that we may appropriately tailor our motion to compel
to the terms that remain in dispute.

        Finally, you have stated that your technical support person has suggested that some of the
terms provided are capturing documents' underlying formatting and set up features. We do not
see why this is a problem. The fact that responsive search terms are capturing formatting data is
a strong indication that the documents themselves contain responsive information. Moreover,
the formatting data itself may be responsive. Also, on yesterday's call, you were not able to
provide specific information about this issue. You could not identify which terms were
capturing the formatting data or how many documents were being captured in this manner. In
fact, you were not even sure whether this was really an issue. You stated repeatedly that the
search terms "could" be capturing formatting data. Based on yesterday's conversation, it appears
that this is a non-issue which we have reason to believe has been manufactured merely as a
pretext for eliminating responsive search terms from the list.

        As always, we remain open to meaningful discussions towards resolving these
outstanding disputes. However, since Defendants have clearly stated their positions and refused

### JOHNSON & PERKINSON
#### ATTORNEYS AT LAW

Robert K. Simonds, Esq.
May 3, 2006
Page 4


to offer compromises or solutions acceptable to Plaintiffs, at this time, we have no choice but to
ask the Court to resolve the outstanding disputes. Thank you for your time and consideration.


Sincerely yours,

Peter J. McDougall


cc:    David R. Scott (via fax)
       Arthur Shingler III (via fax)
       Geoffrey M. Johnson (via fax)
       Erin G. Comite (via fax)
       Donald A. Broggi (via fax)
       James G. Hein, Jr. Esq. (via fax)
       Daniel Slifkin, Esq. (via fax)
       Joseph Clasen. Esq. (via fax)
       William Kelleher, III Esq. (via fax)

# EXHIBIT Z

CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1814

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DeMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

May 4, 2006

In re Priceline.com Securities Litigation
Master File No. 3:00cv1884 (DJS)

Dear Peter:

I write in response to your letter of yesterday.

To the extent your letter takes issue with Defendants' summary of the disputed discovery issues in my letter to Geoff, dated May 2, 2006, you are mistaken.

For example, in support of your claim that plaintiffs never "negotiated and agreed" that only non-email electronic information would be searched with a search term list, you refer to your August 15, 2005 letter and cite the passage: "you will: . . . search the complete snapshot using the search terms and produce any non-privileged, responsive materials". Not only do you ignore the other instructive correspondence and filings on the issue, but you also ignore the clear context of that particular statement -- it has nothing to do with emails. That statement was made in the second subsection of "1. The Snapshot of the Corporate Server", titled "b. Remainder of Snapshot". This "remainder" was created after the preceding subsection, titled "a. Emails on Snapshot", explicitly carved out the agreed-upon treatment of emails on the snapshot — only the email files of particular individuals would be searched.

2

Defendants' positions are clear. They are also supported by agreements between the parties that are memorialized in correspondence and filings with the Court. I refer you back to my letter of May 2nd and suggest you review the documents that I cited.

Sincerely,

Robert K. Simonds

Peter McDougall, Esq.
    Johnson & Perkinson
        1690 Williston Road
        P.O. Box 2305
            South Burlington, VT 05403

BY EMAIL AND FIRST CLASS MAIL

Copies to:

Geoffrey M. Johnson, Esq.
    Scott + Scott LLC
        33 River Street
            Chagrin Falls, OH  44022

William J. Kelleher, III, Esq.
    Robinson & Cole LLP
        695 East Main Street
            Stamford, CT 06904-2305

Jeanne E. Irving, Esq.
    Hennigan, Bennett & Dorman LLP
        865 S. Figueroa Street
        Suite 2900
            Los Angeles, CA  90017

BY EMAIL AND FIRST CLASS MAIL

# EXHIBIT AA

JOHNSON & PERKINSON

ATTORNEYS AT LAW

1690 WILLISTON ROAD

P.O. BOX 2305

SOUTH BURLINGTON, VERMONT 05403

www.jpclasslaw.com

DENNIS J. JOHNSON
ALSO ADMITTED TO PA AND DC*

JACOB B. PERKINSON
ALSO ADMITTED TO ME

*INACTIVE

ROBIN A. FRIEDMAN, JR.
ALSO ADMITTED TO OH*

JAMES F. CONWAY, III
ALSO ADMITTED TO MA

PETER J. McDOUGALL
ALSO ADMITTED TO MA

TELEPHONE (802) 862-0030
TELECOPIER (802) 862-0060
E-MAIL email@jpclasslaw.com

August 15, 2005

Via Facsimile and U.S. Mail

James G. Hein, Jr.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

   Re: In re Priceline.com Securities Litig., Case No. 3:00cv1884 (DJS)

Dear Jim:

   We have received your August 11, 2005 letter setting forth the Priceline Defendants' position on the electronic document issues. Your letter was helpful and we now believe that the parties are close to resolving the issues relating to the "snapshot" of the Priceline corporate server and the backup tapes for departed employees. In response to your letter, we have set forth our position on the snapshot and the backup tapes for departed employees below. We have also included our position on the WebHouse and Perfect Yard Sale backup tapes – the third category of electronic documents we discussed during the call. It appears that we will have to agree to disagree on the WebHouse and Perfect Yard Sale backup tapes.

1.  The Snapshot of the Corporate Server

   a.  Emails on Snapshot

   In your letter, you offer to search individual email files contained on the snapshot and produce all non-privileged, responsive emails contained in those files. You have provided a list of 50 individuals you plan to search and have invited us to offer additional names. We will agree to this approach with the understanding that you will:

- Search the complete email files for the 50 individuals listed on your Attachment A and produce all non-privileged, responsive materials contained in those files;

JOHNSON & PERKINSON
ATTORNEYS AT LAW

James G. Hein, Jr.
August 15, 2005
Page 2

- Search the files of the additional individuals we have listed on the Supplemental Attachment, which we have included along with this letter and produce all non-privileged, responsive materials contained in those files;

- Agree that the parties can supplement the list with additional names at any time before the discovery cut-off in the event that any party has a good faith basis to believe that a search of the additional e-mail files will result in the production of responsive information;

- Agree that you will not seek cost-shifting in connection with this search, or any supplemental email search of the snapshot;

- Agree to preserve the materials in their native format so that they will be available in this format, if needed, in the future; and

- Provide a complete list of all e-mail accounts on the snapshot.

    b.    Remainder of Snapshot

Next, you address the remainder of the data contained on the snapshot. Here, you propose that Plaintiffs provide you with search terms, which you will then use to search the snapshot. Plaintiffs believe that the Defendants have a better understanding of the type of information that is on the snapshot, how the information was stored on the snapshot and how the search of this information will be conducted. Thus, consistent with Defendants' burden to search for and produce information responsive to Plaintiffs' discovery requests, Plaintiffs submit that it is Defendants who should compile the initial list of search terms. As is the case with the e-mails on the snapshot, Plaintiffs will review your list of search terms and will likely send you a revised or supplemental list. We will agree to this approach as a preliminary matter again with the understanding that you will:

- Search the complete snapshot using the search terms and produce any non-privileged, responsive materials;

- Agree that the parties can supplement the list with additional search terms at any time before the discovery cut-off in the event that any party has a good faith basis to believe that additional search terms will result in the production of responsive information;

JOHNSON & PERKINSON
ATTORNEYS AT LAW

James G. Hein, Jr.
August 15, 2005
Page 3

- Agree to preserve the materials in their native format so that they will be available in this format, if needed, in the future; and

- Agree that you will not seek cost-shifting in connection with this search, or any supplemental search.

Plaintiffs agree to this approach only as a means of attempting to reach a compromise. If it appears that this method is leaving out relevant materials, we reserve the right to revisit this process and request a different procedure.

In your letter, you also stated that you "are willing to provide [Plaintiffs] with a spreadsheet that shows, in technical terms, the contents of the snapshot and the quantity of electronic material contained on it." You go on to state that you "will only provide the spreadsheet . . . if [Plaintiffs] expressly agree in writing that such production will not constitute a waiver of any applicable privilege with respect to any other document or communication or with respect to the subject matter of the spreadsheet itself." We agree that, by producing the spreadsheet, you are not waiving any applicable privilege. We look forward to receiving this spreadsheet in the near future.

You also state in your letter that you will produce emails and other documents from the snapshot in TIFF format. That is fine provided Defendants also produce a corresponding text file of the material produced from the snapshot. Additionally, Plaintiffs may find the TIFF format unworkable if it results in a degradation of the information otherwise available in native format. Defendants must agree to preserve the documents in their native format so that they will be available in this format, if needed, in the future.

Finally, we think it makes sense to agree on a time-table for producing electronic documents. We propose that you produce all non-privileged, responsive emails for the 50 individuals listed on your Attachment A and the additional individuals listed on the Supplemental Attachment by September 16, 2005. With respect to the search terms, we propose that you provide us with your list of proposed search terms on or before August 19, 2005. We will provide you with our revisions and/or additions by August 26, 2005. We propose that you produce all non-privileged, responsive materials that are picked up by the search terms on or before September 23, 2005. If additional names and/or search terms are provided, materials found to be responsive after a search of the additional names and/or search terms should be produced within 30 days of the date when the names and/or search terms are provided.

JOHNSON & PERKINSON
ATTORNEYS AT LAW

James G. Hein, Jr.
August 15, 2005
Page 4

2.    The Backup Tapes for Departed Employees

Your proposal on the backup tapes for departed employees is identical to your proposal for the snapshot. You offer to search individual email files for those individuals who are specifically identified and you propose that Plaintiffs provide you with a list of search terms for the remainder of the electronic data of the departed employee backup tapes. We will agree to this approach so long as you agree to the same conditions that we set forth above on the snapshot. With respect to emails, you must agree to search the files of the 50 individuals on Attachment A (to the extent that these individuals have files on the ex-employee backup tapes), the individuals listed on the Supplemental Attachment, and you must agree that the parties can supplement the list at any time before the discovery cut-off. Additionally, you must provide us with a list of all e-mail accounts contained on these backup tapes.

With respect to the remainder of the departed employee backup tapes, you must agree to provide Plaintiffs with a list of proposed search terms which Plaintiffs will revise and/or supplement. Defendants will search the entire backup tape using the above mentioned search terms and must agree to do additional searches, if any, before the discovery cut-off. Again, the documents must also be preserved in their native format. Finally, we propose the same time-table for producing electronic documents from the departed employee backup tapes that we propose for the snapshot.

3.    The WebHouse and Perfect Yard Sale Backup Tapes

It appears that we will have to seek guidance from the Court on the WebHouse and Perfect Yard Sale backup tapes – tapes that are likely to contain responsive information and documents. We believe that the quickest and most cost efficient way to handle these tapes is for you to restore these tapes to their native format and then for you to produce the restored tapes in their entirety. To protect any privileged information on the tapes, we would agree to allow you to designate any information contained on the tapes as attorney-client privilege after the fact. This is commonly referred to as a "claw-back" agreement and it has been used in several recent cases when backup tapes are difficulty and costly to restore to a searchable format. See, e.g., Zubulake v. UBS Warburg, LLC, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) ("Zubulake III") ("Indeed, many parties to documents-intensive litigation enter into so-called 'claw-back' agreements that allow parties to forgo privilege review altogether in favor of an agreement to return inadvertently produced privileged documents."). Please let us know if you agree to this approach at your earliest convenience. If we cannot come to terms on the WebHouse and Perfect Yard Sale backup tapes, we need to get our joint memorandum on file with the Court as soon as possible.

## JOHNSON & PERKINSON
### ATTORNEYS AT LAW

James G. Hein, Jr.
August 15, 2005
Page 5


In an attempt to reach agreement on these issues, I would like to schedule a meet and confer for Wednesday, August 17 or Thursday, August 18. Please let me know of your availability on these dates.

Sincerely yours,

Peter J. McDougall

cc:  William J. Kelleher, III Esq.
     Jacob B. Perkinson, Esq.
     David R. Scott, Esq.
     Geoffrey M. Johnson, Esq.
     Erin G. Comite, Esq.

## SUPPLEMENTAL LIST FOR E-MAIL SEARCH

| | | | |
|---|---|---|---|
| Amit | Aggarwal | Alex | Iglesias |
| Angela | Alves-Lagarino | Doborah | Iorio |
| Hossein | Aminian | Jean | Japinga |
| Frances | Antolino | John | Kaufman |
| Kelli | Beougher | Kevin | Kells |
| Susan | Brett | Jean | Kim |
| Jacqueline | Brini | Kristin | Knous |
| Lynn | Brown | Julianna | Kopa |
| Brad | Burmaster | Jonathan | LaNasa |
| Carol | Caruso | David | Larimer |
| Charles | Castaneda | Stella | Lin |
| Peggy | Cheyne | Mark | McEnroe |
| Michael | Coleman | Eric | Meisner |
| Michael | D'Antonio | Gideon | Menczel |
| Hasan | Dewan | Bill | Murphy |
| Ryan | Donohew | Patrick | Nee |
| Marissa | Dore | Ben | Ness |
| Lisa | Edwards | Robert | Padgett |
| Roberta | Farrell | John | Redcay |
| Christine | Fitzpatrick | Chris | Rising |
| Tony | Free | Art | Schulman |
| Tom | Gerard | Mark | Scozzafava |
| Craig | Gibson | Chris | Soder |
| Gary | Goldberg | Michael | Speaker |
| BJ | Greenspan | Andrew | Van Luchene |
| Martin | Grossfeld | Corey | Vezina |
| Keith | Guibault | Rob | Voss |
| Ray | Hamilton | Bridge | Whalen |
| Shirley | Harris | Robert | Wisse |
| Francis | Hata | John | Work |
| Michael | Herskovitz | Jonathan | Yee |
| Alan | Hibbell | | |