# EXHIBIT I



April 28, 2006

<u>Via Facsimile and U.S. Mail</u>

Jeanne E. Irving
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017

  Re: <u>In re Priceline.com Securities Litig., Case No. 3:00cv1884 (DJS)</u>

Dear Jeanne:

  I write to summarize the conference call we had yesterday afternoon. The main purpose of that call was to discuss the methodology that Defendant Walker plans to use to retrieve and produce responsive information contained on the 181 WebHouse backup tapes in his custody and control. During the call, we discussed several proposed steps that need to occur before the documents are actually produced. These steps include:

  1. <u>Indexing The 181 WebHouse Backup Tapes</u>:

  The first step in the process is indexing the 181 WebHouse backup tapes. As we discussed on yesterday's call, we would appreciate it if you would produce all indexes in a searchable and sortable form. To date, we have only received 141 of the indexes in a searchable and sortable format (they were produced as Excel spreadsheets). The first 16 indexes we received were not in a searchable and sortable format. Please resend those indexes in the Excel spreadsheet format. Also, we are still waiting on the remaining indexes. Once we have searchable and sortable indexes, Plaintiffs will then be able to separate those files that likely contain responsive information from the files that can easily be eliminated from the search. The goal here is to eliminate as much of the material as possible and focus only on the files that may contain responsive documents.

  2. <u>Using The Indexes To Segregate The Data On The Backup Tapes</u>:

  Once we have gone through the indexes, the next step will require the parties to segregate the materials on the tapes so that we are only working with the files that Plaintiffs have designated for review. It is our understanding that this can be done by simply copying the native files we have selected to a hard drive or other removable media. This will significantly reduce the volume of material.

ATTORNEYS AT LAW  CONNECTICUT  SCOTT + SCOTT, LLC  440 247-8200 VOICE
  OHIO  33 RIVER STREET  440 247-8278 FAX
  CALIFORNIA  CHAGRIN FALLS, OH 44022  SCOTTLAW@SCOTT-SCOTT.COM
  WWW.SCOTT-SCOTT.COM



Jeanne Irving
April 28, 2006
Page 2

3.    Preparing the Segregated Data for Review:

The next step requires you to load the segregated data into your litigation support program, Introspect 5.0, for review. For this particular step, we strongly suggest that you keep the files and data in their native format when loading them into the Introspect software. As you will recall, Allison Goodman, our computer discovery consultant, identified several advantages to maintaining at least some of the files in native file format as you and your firm begin the review process – primarily .pst files and Excel spreadsheets. A .pst file is from Microsoft's Outlook email program and stores all of the data for a particular user (email, calendar entries, contacts, journal items, etc.). It is likely that there will be numerous items within some of the .pst files that will not responsive, but it is impossible to determine this until the file has been opened. So converting all of these items to TIFF and OCR format prior to any review would be wasteful and inefficient.

Your litigation support program, Introspect 5.0, should be able to create a database for you of the entire contents of each .pst file. Instead of needing to open each email individually, you would have a columnar format identifying the author, recipient, date, subject and body of the email in addition to any other available fields you choose to review. With this format you can often see several emails at once making the review process much quicker.

Regarding the Excel spreadsheets, Allison informs us that it is often a cumbersome process to convert these documents to TIFF because of the difficulties associated with pagination. Excel spreadsheets are often not configured to print properly and the TIFF process is nothing more than printing to a digital file.

4.    Search Methodology and Production:

Once the documents are loaded into your Introspect program, the parties will need to agree on a methodology for searching these files. We think the parties should agree to use the same format that the parties are currently using to search the Priceline "snapshot" and departed employee tapes. On February 17, 2006, Plaintiffs provided you with an initial list of people whose email accounts we want you to go through email by email for non-privileged, responsive information. Plaintiffs will also provide you with a list of search terms that you should use to search the entire database. The documents that you retrieve using these individuals and search terms will then be reviewed for responsiveness and privilege and produced. Plaintiffs reserve the right to supplement and/or amend the list of individuals and the search terms.

Jeanne Irving
April 28, 2006
Page 3

In addition, we believe we are entitled to receive the documents in a searchable format, whether that be native file format (which is the most economical alternative), searchable .pdf or TIFF and OCR. If you disagree, please let us know immediately.

The most pressing issue right now is the production of the searchable and sortable indexes. Please send us those indexes as soon as possible. Once we get the indexes, we will then be able to segregate the data on the tapes. Also, we would like to set up a weekly call on these issues until the process is complete. We propose holding another conference call next Friday at 2:30 p.m. to talk through these issues. Please let us know your availability.

Sincerely yours,

Geoffrey M. Johnson

cc:    David R. Scott (via fax)
       Arthur Shingler III (via fax)
       Jacob B. Perkinson (via fax)
       Peter J. McDougall (via fax)
       Erin G. Comite (via fax)
       Stacey K. Porter (via fax)
       Donald A. Broggi (via fax)

# EXHIBIT J

CRAVATH, SWAINE & MOORE LLP

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DeMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS B. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700
———
CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1160

WRITER'S DIRECT DIAL NUMBER

(212) 474-1814

May 4, 2006

<u>In re Priceline.com Securities Litigation</u>
<u>Master File No. 3:00cv1884 (DJS)</u>

Dear Peter:

I write in response to your letter of yesterday.

To the extent your letter takes issue with Defendants' summary of the disputed discovery issues in my letter to Geoff, dated May 2, 2006, you are mistaken.

For example, in support of your claim that plaintiffs never "negotiated and agreed" that only non-email electronic information would be searched with a search term list, you refer to your August 15, 2005 letter and cite the passage: "you will: . . . search the complete snapshot using the search terms and produce any non-privileged, responsive materials". Not only do you ignore the other instructive correspondence and filings on the issue, but you also ignore the clear context of that particular statement -- it has nothing to do with emails. That statement was made in the second subsection of "1. <u>The Snapshot of the Corporate Server</u>", titled "b. <u>Remainder of Snapshot</u>". This "remainder" was created after the preceding subsection, titled "a. <u>Emails on Snapshot</u>", explicitly carved out the agreed-upon treatment of emails on the snapshot — only the email files of particular individuals would be searched.

Defendants' positions are clear. They are also supported by agreements between the parties that are memorialized in correspondence and filings with the Court. I refer you back to my letter of May 2nd and suggest you review the documents that I cited.

Sincerely,

Robert K. Simonds

Peter McDougall, Esq.
    Johnson & Perkinson
        1690 Williston Road
            P.O. Box 2305
                South Burlington, VT 05403

BY EMAIL AND FIRST CLASS MAIL

Copies to:

Geoffrey M. Johnson, Esq.
    Scott + Scott LLC
        33 River Street
            Chagrin Falls, OH  44022

William J. Kelleher, III, Esq.
    Robinson & Cole LLP
        695 East Main Street
            Stamford, CT 06904-2305

Jeanne E. Irving, Esq.
    Hennigan, Bennett & Dorman LLP
        865 S. Figueroa Street
        Suite 2900
            Los Angeles, CA   90017

BY EMAIL AND FIRST CLASS MAIL

# EXHIBIT K



May 5, 2006

<u>Via Facsimile and U.S. Mail</u>

Jeanne E. Irving
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017

      Re:   <u>In re Priceline.com Securities Litig., Case No. 3:00cv1884 (CFD)</u>

Dear Jeanne:

      I write in response to your May 4, 2005 letter in which you claim that I made several "mischaracterizations and incorrect assumptions" in my April 28, 2006 letter to you. You have misread my April 28 letter. The purpose of that letter – like the purpose of the April 27, 2006 conference call – was to discuss the methodology Defendant Walker plans to use to produce and restore responsive information contained on the 181 WebHouse backup tapes that he has in his possession, custody and control. These tapes are of critical importance to this litigation because they contain the WebHouse emails and other key electronic data from the relevant period.

      The first step in the process set forth in the Court's December 2005 order requires the parties to meet and confer to determine which of the 181 backup tapes need to be restored to their native format. Doc. 245 at 7 ("The parties must meet and confer in an attempt to identify which backup tapes should be restored."). To date, Defendant Walker has already agreed to restore 17 of the tapes containing responsive information, and it is our understanding that those tapes have in fact been restored and are now fully accessible. Therefore, we need to know how you plan to proceed with these 17 tapes. We set forth one possible way to proceed in our April 28 letter. However, the Court made it clear in its December 2005 order that: "[D]efendants . . . shall be responsible for excising duplicate files, sifting through the data for responsive information, and reviewing responsive documents for privilege in the most efficient manner possible." The Court further provided: "Defendants shall record and produce a summary of their methodology so that plaintiffs can argue for the inclusion of more data if appropriate." *Id.*

      We had expected you to address the methodology you planned to use to search and produce documents from the 17 restored tapes during the April 27 call, but you were not prepared to do so. Certainly, we expect that you will address this issue on today's call.

ATTORNEYS AT LAW     CONNECTICUT     SCOTT + SCOTT, LLC     440 247-6168 VOICE
                         OHIO             33 RIVER STREET         440 247-6278 FAX
                         CALIFORNIA     CHAGRIN FALLS, OH 44022     SCOTTLAW@SCOTT-SCOTT.COM
                                                          WWW.SCOTT-SCOTT.COM



Jeanne E. Irving
May 5, 2006
Page 2

As for the remainder of the backup tapes, we need to get indexes of those tapes from you so that we can tell whether those tapes also need to be restored. To date, you have not sent us 24 of the indexes, including indexes for 9 tapes that were determined likely to contain responsive materials and were being restored to their native file format. Also, the first 16 indexes you sent to us were not sent in a searchable and sortable format. We expect that you will tell us when we will receive the remainder of the indexes on today's call.

Finally, in your letter, you take issue with my statement that: "On February 17, 2006, Plaintiffs provided you with an initial list of people whose email accounts we want you to go through email by email for non-privileged, responsive information." You claim that: "You didn't even know me on February 17, 2006; our firm was not handling this case for Mr. Walker then; and you certainly did not give me then – or ever, for that matter – the information you claimed to have provided me." As Mr. Walker's new attorneys, you should have asked Mr. Walker's prior counsel for their files and all documents Plaintiffs previously provided to them in this case, including the list of email accounts. Since we became aware on April 15th that Defendant Walker was substituting counsel, we have attempted to be as accommodating to you as possible; however it is not our responsibility to bring you up to speed or to go over ground that we have already covered in this case. We have spent over a year going back and forth with Defendant Walker's counsel on the backup tapes and do not expect to go over ground the parties have previously covered. Please inform us today if you intend to take such a position going forward with regard to our prior dealings with Defendant Walker's counsel.

We look forward to addressing these and the other issues addressed in my April 28 letter during today's call at 2:30 p.m. eastern.

Sincerely yours,

Geoffrey M. Johnson

cc:    David R. Scott (via fax)
       Arthur Shingler III (via fax)
       Jacob B. Perkinson (via fax)
       Peter J. McDougall (via fax)
       Erin G. Comite (via fax)
       Stacey K. Porter (via fax)
       Donald A. Broggi (via fax)

# EXHIBIT L



May 10, 2006

<u>Via Facsimile and U.S. Mail</u>

Jeanne E. Irving
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017

     Re:   <u>In re Priceline.com Securities Litig., Case No. 3:00cv1884 (CFD)</u>

Dear Jeanne:

     I write to follow up on last Friday's meet and confer to address the 181 backup tapes that Defendant Walker currently has in his possession, custody and control. The issues that we discussed during that call were addressed in my May 5, 2006 letter, which I sent to you prior to the call. It is unfortunate that we were not able to reach agreement on those issues.

     Plaintiffs did, however, raise one additional issue during the call. We told you that Plaintiffs have determined that many email accounts likely to contain responsive materials are on the backup tapes that have now been restored, making them fully accessible and searchable. Accordingly, we expect that you will perform an email-by-email search of the email accounts of all the executives and employees on the list Plaintiffs provided to Defendant Walker's prior counsel on February 17, 2006 (which we forwarded to you on Friday, May 5, 2006) and produce responsive information resulting from this search. Such a search is required with the directive the Court issued on December 8, 2005 regarding emails in the Defendants' possession. On Friday's call, you stated that you needed more time to decide whether you will agree to do such a search. Please let us know by the end of this week whether or not you are willing to search these email accounts and produce responsive emails.

     Additionally, we discussed files identified by counsel to the Priceline Defendants as Jay Walker Macintosh Files. They informed us that you have asked that these files be turned over to

ATTORNEYS AT LAW    CONNECTICUT    SCOTT + SCOTT, LLC    440 247-8200 VOICE
                      OHIO             33 RIVER STREET       440 247-8275 FAX
                      CALIFORNIA    CHAGRIN FALLS, OH 44022    SCOTTLAW@SCOTT-SCOTT.COM
                                                     WWW.SCOTT-SCOTT.COM



Jeanne E. Irving
May 10, 2006
Page 2


you and that these tapes contain materials from the relevant time period. It is our understanding
that these files are accessible and searchable. Please let us know how you intend to produce
responsive materials from these files.

                              Sincerely yours,

                              Geoffrey M. Johnson
                              Geoffrey M. Johnson

cc:    David R. Scott (via fax)
       Arthur Shingler III (via fax)
       Jacob B. Perkinson (via fax)
       Peter J. McDougall (via fax)
       Erin G. Comite (via fax)
       Denise V. Zamore (via fax)
       Donald A. Broggi (via fax)

# EXHIBIT M

HENNIGAN, BENNETT & DORMAN LLP

LAWYERS

865 SOUTH FIGUEROA STREET
SUITE 2900
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1015
IRVINGJ@HBDLAWYERS.COM

May 12, 2006

**Via Email and Mail**

Geoffrey M. Johnson
Scott + Scott, LLC
33 River Street
Chagrin Falls, Ohio 44022

  Re:  **In re Priceline.com Securities Litigation, Case No. 3:00cv1884 (DJS)**

Dear Geoff:

  I write in response to the portion of your May 10, 2006 letter that addressed email that has been restored from the 181 back-up tapes.

  We have spent a considerable amount of time analyzing the catalogs in an attempt to assess the volume of the data that relates to email as well as other types of documents. That assessment is ongoing. However, as you may have already determined for yourself, the volume of the data that relates to email of the 121 individuals on the list that you sent us on May 5, 2006, as well as the size of the email files, is enormous. An email-by-email search of the email files of the 121 individuals you have identified would impose unwarranted expense and burden. We believe that the most efficient and cost-effective approach to culling from this population relevant material is to both (1) to commit to review the email of only reasonable list of identified individuals, and (2) to run a reasonable list of search terms against the email of those identified individuals.

  We have been engaged in an ongoing discussion with the vendor who handled the cataloging and restoration of the back-up tapes concerning how best to deal with the review and production process. We believe the vendor's charges for staging the data, loading it for review and producing a production set are appropriately born by the plaintiffs. While we can address this in more detail, in considering search parameters, you should be aware that the vendor charges $900 per gigabyte for documents that are subjected to any filtering or de-duping, and $3,000 per gigabyte for allowing review of the resulting population of filtered and de-duped data. While we are endeavoring to get a more precise estimate of the size of the email population, you should know that we currently estimate the size of the email files on the restored back-up tapes

HENNIGAN, BENNE꜡ & DORMAN LLP

Geoffrey M. Johnson
May 12, 2006
Page 2

to exceed 200 gigabytes. In addition, the vendor will charge $0.04 per page to release the non-privileged, responsive documents in a production set. There are other associated charges as well, but these are the items we thought would be of most interest to you. Because the vendor charges various set-up fees, additional charges are incurred if production is handled piecemeal.

We look forward to hearing your thoughts on these issues.

Sincerely yours,

Jeanne E. Irving

JEI/yb

Cc:     Shawna Ballard
        Peter McDougall

545993w1

# EXHIBIT N
## <u>Filed Under Seal</u>

# EXHIBIT O
# Filed Under Seal