**Exhibit U**

# CRAVATH, SWAINE & MOORE LLP

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1814

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. McATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

———

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

———

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

May 2, 2006

In re Priceline.com Securities Litigation
Master File No. 3:00cv1884 (DJS)

Dear Geoffrey:

       In your letters leading up to today's meet and confer and during the meet and confer itself, you raised issues that plainly have been addressed by Defendants on multiple occasions. The record is clear and it exposes your tactic of trying to generate discovery disputes. I address each issue in turn below:

### The Production of Emails

       You now state that any agreed-upon search term list for the non-email electronic data should also be used "to search the *entire* snapshot and *all* of the departed employee tapes -- not just those portions of the snapshot and departed employee tapes that contain non-email electronic data". Your justification for this new proposal is to "cross-check" our already completed production of emails. Your position is without logic or support.

       The parties went down this road months ago: the processes by which Defendants would search the "snapshot" for email and non-email electronic materials were explicitly negotiated and agreed-upon between the parties and communicated to the Court on multiple occasions. It was agreed that emails would be searched using an agreed-upon list of custodians for the designated two-year time period of March 1, 1999 to April 1, 2001; and non-email materials would be searched using an agreed-upon search term list. To refresh your recollection with respect to those agreements, I refer you to, among other things, the following:

- August 8, 2005 letter from Peter McDougall to Bill Kelleher and Jim Hein;

- August 11, 2005 letter from Jim Hein to Peter McDougall;
- August 15, 2005 letter from Peter McDougall to Jim Hein;
- January 10, 2006 Status Report;
- February 10, 2006 Status Report;
- March 9, 2006 Status Report; and
- April 10, 2006 Status Report.

To be clear, we will <u>not</u> duplicate the time-consuming and expensive efforts that we have completed with respect to reviewing and producing approximately 500,000 pages of emails in order to "cross-check" our efforts at your whim -- particularly when you negotiated the very terms of our email search to begin with.

We are done searching emails files; the production of email files is substantially complete. Your attempt to undo our memorialized agreements is further evidence of your tactics to harass and delay the discovery process.

<u>Utilization of plaintiffs' "April 7th" search term list</u>

You again raise this issue, and ask if Defendants are "prepared to use the shortened search term list . . . to search *and produce* responsive, non-privileged documents contained on the snapshot". As stated in my April 11th letter to you:

> "Defendants have agreed to utilize an appropriately shortened list to run a search against Priceline's 'snapshot'. Once we determine how many hits and pages the agreed-upon list produces, we will communicate those results to you and we can then discuss next steps. Obviously, we would not -- and did not -- blindly agree to produce documents retrieved by a proposed search term list that we had not yet seen. In any event, we only plan to produce non-privileged documents responsive to underlying document requests as modified by objection, agreement and/or court order."

Your April 20, 2006 letter to me specifically acknowledged this plan of action.

As you learned today, your April 7th search term list generated approximately 360,000 documents that are "hits". In terms of page numbers, the estimate is above <u>five million</u> pages. Those figures are computed after excluding (i) the documents we already reviewed as part of our "Webhouse", "Web house" and "WHC" search (which resulted in the production of more than 120,000 pages of documents), and (ii) any repetitive "hits". In light of the enormous amount of information retrieved by the April 7th list, as we stated in the meet and confer today (and as I predicted in my letter to you on April 11, 2006), your April 7th list is overly broad and needs to be refined. We have already reviewed millions of pages of documents in this litigation and have

produced over 750,000. We will not review five million additional pages retrieved by a search term list that generates numerous false "hits" and fails to target responsive materials.

We offered three solutions during our meet and confer today. You rejected them all. First, we offered, with the help of our vendor, to specifically review the April 7th list to identify which terms were either inappropriate or overly-broad in their retrieval. For example, it is our understanding from our vendor that many terms on the list are so generic in nature that they are retrieving numerous "hits" because they target a document's underlying formatting or set-up features. Second, we suggested that we agree on a workable number of terms that are relevant to the case to keep the document production moving forward. Third, we suggested that we focus the search terms on certain types of files that were likely to contain office-type documents such as Word and Excel documents. You refused to meet and confer further or even consider any of those proposed solutions. We remain available to discuss them.

In the meantime, it is our view that the process of searching and producing non-email material from the "snapshot" should continue even though you refuse to compromise. Therefore, Defendants plan to select ten reasonable and relevant search terms from your April 7th list that Defendants feel appropriately will target responsive information. We will produce responsive, non-privileged materials retrieved using those terms on a rolling basis. We will communicate the 10 terms as soon as they are chosen.

### 43 Back up Tapes

As discussed, eMag produced logs of indices for 31 of the 43 tapes. Based on preliminary discussions with our electronic document vendor, the indices indicate that the data on those tapes is irrelevant database material of the kind we previously described to you several months ago concerning other electronic data. An additional 8 logs have just been provided to us and they appear to list the same database type information. As to the 4 remaining tapes, as explained to you, they cannot be indexed at this time without further work and expense by eMag due to non-standard back up formatting.

To be clear, as mentioned to you and your colleagues several times, we do not think it is necessary to restore and review the back up tapes especially given the existence and purpose of the "snapshot". As you know, the Court has already concluded, back in December of 2005, when it largely denied your motion to compel, that full restoration of the backup tapes may well be "a colossal waste of resources." "Before the court orders defendants to restore a backup tape, there must be some indication that the files stored on the backup tape may contain relevant information." The Court further held it would not "compel restoration of the backup tapes, regardless of which party is going to pay for restoration, unless the effort is justified." In re Priceline.com Inc. Securities Litigation, 233 F.R.D. 88, 90 (D. Conn. 2005). Therefore, your assumption that the back up tapes will be reviewed and produced is contrary to the Court's order.

We will send to you the scan logs for the 39 back up tapes. We do not think it necessary or practical to discuss producing the logs in a searchable format -- and

we think you will agree when you see the logs. Furthermore, we remind you that we did not agree to hire eMag for restoration of the tapes as you try to suggest, but only to perform a forensic scan of them, as you well know from our correspondence.

Finally, your statement in your letter of late yesterday that you believe you can contact eMag at your discretion is wrong. The Court ordered that the Defendants are to retain full control over the indexing of the back up tapes. (December 8, 2006 Order.) The fact that the indexing is being completed by eMag, a vendor of your choosing, does nothing to change this fact. First, Defendants hired eMag in connection with this litigation. Therefore, eMag is an agent of Defendants and the work they complete for us is protected by the work-product doctrine. Second, since you have worked with eMag before, we know that you are aware of eMag's standard confidentiality obligation to its client -- us. Should you contact eMag again and attempt to violate the work-product protection or instigate a breach of eMag's obligations, we will bring this matter to the attention of the Court and seek any appropriate relief.

### Jay Walker Mac Files

As you are aware, those files are not part of the "snapshot". The data contained on those files are older Macintosh-formatted data from Mr. Walker's personal computer that date back to the mid-1980s. It was collected prior to the "snapshot" and it is our understanding that it was received by our vendor in connection with an entirely different litigation. We specifically told you back on November 8, 2005, by letter, and numerous times by telephone, that we did not plan to search those files.

In your letter to me of April 20, 2006, you again raised the Jay Walker Mac Files. In response to your revival of this issue, I informed Jeanne Irving, Mr. Walker's new counsel, that you were inquiring about the files. Ms. Irving then asked specifically for those files to be delivered to her. During the meet and confer today I explained to you that we were in the process of delivering those files to Ms. Irving. You stated that you did not understand our decision to do so. The files belong to Mr. Walker. When Mr. Walker's counsel requests them, we are obligated to comply. We suggest you contact Ms. Irving should you have any additional questions.

Sincerely,

Robert K. Simonds

Geoffrey M. Johnson, Esq.
  Scott + Scott LLC
    33 River Street
      Chagrin Falls, OH  44022

BY EMAIL AND FIRST CLASS MAIL

5

Copies to:

Peter McDougall, Esq.
  Johnson & Perkinson
    1690 Williston Road
      P.O. Box 2305
        South Burlington, VT 05403

William J. Kelleher, III, Esq.
  Robinson & Cole LLP
    695 East Main Street
      Stamford, CT 06904-2305

Jeanne E. Irving, Esq.
  Hennigan, Bennett & Dorman LLP
    865 S. Figueroa Street
      Suite 2900
        Los Angeles, CA   90017

BY EMAIL AND FIRST CLASS MAIL