UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : <br> : MASTER FILE NO. <br> : 3:00CV01884(AVC) <br> : |
| This document relates to: <br><br> ALL ACTIONS | : <br> : July 28, 2006 <br> : <br> : |

### DECLARATION OF CELESTINO SANTOS IN SUPPORT OF DEFENDANT JAY S. WALKER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF EMAILS AND ELECTRONIC DOCUMENTS ON SEVENTEEN RESTORED PRICELINE WEBHOUSE CLUB TAPES

I, Celestino Santos, do hereby declare, swear and affirm as follows:

1.  I am over 21 years of age and fully competent to make this Declaration. I make this Declaration of my own personal knowledge and for any uses allowed by law.

2.  For approximately the last 7 years, I have been employed by Hennigan, Bennett & Dorman LLP. My current position is Litigation Support Administrator. I have held this position for approximately 3 years. In this position, I oversee HBD's litigation document and data management. In this capacity, I regularly analyze and consult with HBD's attorneys regarding the most efficient means of using various technologies available at HBD and through third party vendors to handle large document productions and reviews, including the review and production of electronic data.

3.  As a result of my position and experience in administering electronic document management issues, I am generally familiar with the average number of pages per gigabyte of data for various file types. The average number of pages contained per gigabyte of data generally varies according to the type of data at issue. For example, the following are some estimates of pages per gigabyte provided by Mr. Walker's electronic vendor with respect to

1

various categories of data: 100,099 pages per gigabyte of email files; 64,782 pages per gigabyte for Word files; 165,791 pages per gigabyte for Excel files; 677,963 pages per gigabyte for text files; and 15,477 pages per gigabyte for image files. Based upon my experience, the above estimates are reasonable.

4. It is more difficult to estimate the number of pages per gigabyte of data where the data consists of varied file types -- as with the back-up tapes at issue in plaintiffs' motion. In my experience, 70,000 pages per gigabyte is a reasonable estimate when dealing with data that consists of a mixture of file types.

5. I have analyzed electronic versions of catalogs generated by Mr. Walker's electronic vendor with respect to the back-up tapes that have been identified to me as belonging to what the Mr. Walker's prior counsel referred to as Groups 5 and 15 and Groups 4 and 6. I understand that Mr. Walker's electronic vendor was not able to generate catalogs for all of the back-up tapes within these groups.

6. The catalogs that I analyzed contained information regarding, among other things, the file type and file size of the data contained on a particular back-up tape. The catalogs for the back-up tapes in Groups 5 and 15 and 4 and 6 reflect a total data population of 329.82 gigabytes of data, including, among other things, approximately 123.65 gigabytes of .pst email files, 3.6 gigabytes of .doc Word files, and 8.12 gigabytes of Excel files. Over 58% of the gigabytes of data reflected on the catalogs for these tapes, therefore, appear to be something other than .pst email files, .doc Word files or Excel files. Moreover, using the above page per gigabyte estimations, the catalogs for the tapes in Groups 5, 15, 4 and 6 reflect that the cataloged tapes within these groups contain approximately 23,087,472 pages of data, including, among other things, approximately 12,377,174 pages of .pst email files, 230,109 pages of .doc Word files, and

2

1,341,549 pages of Excel files. Included in the files reflected on the catalogs for the tapes in Groups 5 and 15 and Groups 4 and 6 are varied file types that appear to include possible webpage data, systems files and database files.

7. Breaking these compilations down further, based on the data compilations and analyses of the information derived from the catalogs with respect to the restored back-up tapes contained in Groups 5 and 15, I estimate that Groups 5 and 15 contain a total of 204.84 gigabytes of data, including, among other things, 123.45 gigabytes of .pst email files, 2.57 gigabytes of .doc Word files, and 5.22 gigabytes of Excel files. Over 35% of the data contained on the restored back-up tapes for Groups 5 and 15, therefore, appear to be something other than .pst email files, .doc Word files or Excel files.

8. Based on these data compilations and analyses, the catalogs available for the tapes contained in Groups 4 and 6 reflect a total of 124.99 gigabytes of data, including, among other things, approximately 0.19 gigabytes of .pst email files, 1.03 gigabytes of .doc Word files, and 2.9 gigabytes of Excel files. Over 96% of the data on the tapes cataloged in Groups 4 and 6, therefore, appear to be something other than .pst email files, .doc Word files or Excel files. Further, the analyses of these compilations suggests there are no .pst email files for the custodians on plaintiffs' list of 121 individuals for whom they seek an email-by-email search reflected on the catalogs for the back-up tapes in Groups 4 and 6. Moreover, 95.33% of the estimated pages of .pst email files, .doc Word files, and Excel files reflected in the catalogs for the back-up tapes in Groups 4 and 6 are contained on a single tape numbered TOG 21 of 157. (The foregoing compilations with respect to the back-up tapes in Groups 4 and 6 were derived from what I understand to be catalogs for those back-up tapes in these groups with respect to which Mr. Walker's vendor was able to generate catalogs. It is my understanding that Mr.

Walker's electronic vendor was unable, however, to generate catalogs for all of the back-up tapes identified as belonging to Groups 4 and 6.)

9. I also analyzed data from what I understand to be compilations of those .pst email files contained on the back-up tapes that are the subject of plaintiffs' motion with respect to those 121 individuals that are the subject of plaintiffs' request for an email-by-email review. In performing this analysis, I analyzed the filenames and file size of the data and eliminated from the compilations .pst email files that appeared to be duplicates. Based on these compilations and analyses, I estimate that the .pst email population on the tapes that are the subject of plaintiffs' motion (after the elimination of what I could determine from the catalogs to likely be duplicate .pst email files) is approximately 13.07 gigabytes or 1,308,177 pages. Based on these compilations, I presently estimate that the back-up tapes that are the subject of plaintiffs' motion contain mailboxes for approximately 59 of these 121 individuals.

10. I also analyzed the above-referenced compilations of .pst files for the 121 individuals identified by plaintiff in order to estimate the approximate total size of .pst email files for the defendants. It does not appear from these compilations that there are any .pst files for defendants Daniel Schulman and N.J. Nicholas. As for the remaining two defendants, Jay Walker and Richard Braddock, it appears that there is somewhere in the range of .15 to .24 gigabytes of .pst files, or approximately 14,571 to 24,302 pages of data, reflected on the catalogs for the tapes that are the subject of plaintiffs' motion. In other words, the total volume of .pst files belonging to any of these four defendants is approximately .04% to .07% of the data reflected on the catalogs for the tapes that are the subject of plaintiffs' motion.

11. A .pst file for a particular custodian generally constitutes a mailbox for that custodian. When I eliminated duplicate .pst files for purposes of the analyses referenced in the

4

above 2 paragraphs, I eliminated those .pst files that appeared from the filename and filesize to be exact duplicate copies of the same .pst mailbox. The catalogs generated for the back-up tapes do not, however, provide the information necessary to estimate the extent to which the emails within the various mailboxes reflected on the catalogs are duplicates of one another. Moreover, it was often difficult to determine from the information on the catalogs whether a particular .pst file belonged to one of the 121 individuals referenced above. Therefore, the estimates in the foregoing 2 paragraphs are approximations based on the information presently available.

    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

    Executed on July 28, 2006.

                                                          /s/ Celestino Santos
                                                          Celestino Santos

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2006, a copy of the foregoing **DECLARATION OF CELESTINO SANTOS IN SUPPORT OF DEFENDANT JAY S. WALKER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF EMAILS AND ELECTRONIC DOCUMENTS ON SEVENTEEN RESTORED PRICELINE WEBHOUSE CLUB TAPES** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                  /s/ Terence J. Gallagher
                                                   Terence J. Gallagher