UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : | |
| ———————————————— | : : | MASTER FILE NO. 3:00CV01884(AVC) |
| This document relates to: | : : | August 14, 2006 |
| ALL ACTIONS | : | |

REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DEFENDANT WALKER TO PRODUCE EMAILS AND ELECTRONIC DOCUMENTS
ON THE SEVENTEEN RESTORED WEBHOUSE CLUB TAPES

**SCOTT + SCOTT, LLC**
David R. Scott
Mark V. Jackowski
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**Co-Lead Counsel**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

ARGUMENT .............................................................................................................................6

    A.    Defendant Walker's Claim That He Does Not Know Which Of The
           17 WebHouse Tapes Plaintiffs Target In Their Motion Is
           Not Credible.........................................................................................................6

           i.      Defendant Walker Identified The 17 WebHouse Tapes
                  In Several Of His Own Monthly Status Reports...........................................6

           ii.     Plaintiffs Identified The 17 Restored WebHouse Tapes
                  That Are The Subject Of Their Motion During 5 Of
                  The Parties' Meet And Confers .................................................................9

    B.    No Execuse Exists For Defendant Walker's Failure To Restore Over
           Half Of The WebHouse Tapes He Agreed To Restore.........................................12

    C.    Defendant Walker Has Refused To Produce Responsive Documents
           On Those Few Tapes He Has Actually Restored – In Direct
           Violation Of The Court's December 8, 2005 Order On
           Plaintiffs' Motion To Compel..........................................................................16

           i.      The Court Should Compel Defendant Walker To
                  Perform An Email-By-Email Search Of All Of The
                  Key Individual Email Accounts.................................................................17

            ii.     The Court Should Compel Defendant Walker To
                    Use Search Terms To Cull Out Privileged Documents
                  And Then Produce The Rest Of The Electronic Documents
                  On The Tapes In A Timely Fashion .........................................................19

CONCLUSION.........................................................................................................................20

## <u>INTRODUCTION</u>

Defendant Walker has filed an Opposition brief that paints a clear and disturbing picture of his litigation strategy in this case – a litigation strategy in which Walker disregards the Court's orders, ignores the requirements of the Federal Rules of Civil Procedure, engages in hide-the-ball tactics, shields relevant documents from disclosure and plays fast and loose with the facts when it serves his own interests – all at the expense of Plaintiffs and the Court.  The latest and most egregious example of this litigation strategy is Walker's highly disturbing disclosure in his Opposition brief that ***Walker never restored 9 of the 17 WebHouse tapes that Plaintiffs target in their Motion to Compel – tapes that Walker previously agreed to restore and tapes that Walker told the Court in his June 12, 2006 status report he had successfully restored***.[1]

Defendant Walker's latest set of attorneys (the third set in the case so far) claim that Walker's failure to restore 9 of the 17 tapes is the result of a "mix-up," but this explanation strains credulity, given that the 17 WebHouse tapes Plaintiffs target in the Motion are:

- The WebHouse tapes that Defendant Walker agreed to restore months ago, as evidenced by Walker's own electronic production status reports, *see, e.g.,* Docket No. 322 (June 12, 2006 Status Report, at 4);

- The WebHouse tapes that Defendant Walker told Plaintiffs and the Court he had successfully restored, as evidenced by his June 12, 2006 status report – a status report that Walker's current attorneys prepared and filed on his behalf, *id.*;

- The WebHouse tapes that Defendant Walker charged Plaintiffs thousands of dollars to restore; and

- The WebHouse tapes Plaintiffs identified in numerous letters to Walker and discussed at length during 5 separate meet and confers.

---

[1] The tapes that Defendant Walker never restored are the WebHouse tapes in Groups 4 and 6.  In his June 12, 2006 status report, Defendant Walker represented: "Plaintiffs also requested, and Mr. Walker's counsel agreed, to arrange for the restoration of nine other tapes (from Group 4 and Group 6) . . . . ***The vendor was able to restore eight of the nine tapes from Group 4 and Group 6 that plaintiffs had sought to be restored***."  Docket No. 322 (Walker's June 12, 2006 Status Report, at 4) (emphasis added).

Defendant Walker's eleventh hour disclosure that he never restored 9 of the 17 WebHouse tapes Plaintiffs have sought over the past 8 months – which conflicts with the agreements and representations he made in his own status reports to the Court – is just the latest example of Walker's complete and intentional disregard of the Court's December 2005 Order, which he refuses to take seriously. Indeed, the Court had *already* taken the highly unusual step of ordering Defendant Walker to file monthly reports setting forth the status of the restoration of the WebHouse tapes, making it clear that it was ordering Walker to file these monthly status reports because "*the court would like to observe the process*" and ensure "*that there is no misunderstanding about the status of the production of information.*" Exhibit B to Johnson Decl. (Dec. 8, 2005 Order) (emphasis added).[2] Despite the extraordinary steps taken by the Court to ensure compliance, Walker has callously disregarded his obligations to participate in the discovery process in good faith.

Plaintiffs and the Court relied on Walker's monthly status reports, and Walker and his counsel had a duty to ensure that those reports contained accurate information. At a minimum, Defendant Walker's latest set of attorneys should have confirmed that the WebHouse tapes from Groups 4 and 6 had in fact been restored before they filed a status report representing that: "The vendor was able to restore eight of the nine tapes from Group 4 and Group 6 that plaintiffs had sought to be restored." Docket No. 322 (June 12, 2006 status report, at 4).[3] Defendant Walker's current attorneys also should have confirmed that these tapes had been restored prior to the

---

[2] All references in this Reply to the Johnson Declaration are to the Declaration Plaintiffs submitted along with their opening brief. *See* Docket No. 330 (Johnson Decl.).

[3] It is important to note that Defendant Walker has – for reasons never revealed to the Court or Plaintiffs – dismissed one set of counsel in favor of another at every major juncture in this litigation. What is disturbing in this trend is that each successive counsel has acted more obdurately in thwarting the discovery process than the last. This is yet another example of how Walker uses every tactic possible to obfuscate the truth.

parties' April 27, 2006 and May 5, 2006 meet and confers – which Plaintiffs scheduled to discuss Walker's methodology for reviewing and producing documents on the 17 restored WebHouse tapes, including those in Groups 4 and 6.[4]  Walker's failure to do so shows that he did not participate in good faith in these meet and confers, but was only interested in further stonewalling the discovery process in this case.

Unfortunately, Defendant Walker's lack of candor in connection with the WebHouse tapes is just the latest example of Defendant Walker's "play by your own rules" litigation strategy.  For example, when Plaintiffs filed their first Motion to Compel on the electronic documents, Walker told the Court that it would cost between $20 million and $200 million to produce responsive documents on the 181 "inaccessible" WebHouse tapes.  Docket No. 158-1 (Walker's Opp. to Mot. to Compel, at 7-8).  This prompted Plaintiffs to retain a computer restoration specialist of their own, who informed them that the tapes could be restored to a fully accessible format at a cost of just $400 per tape.  Plaintiffs then informed Walker that they were willing to split the cost to restore the tapes, bringing Walker's cost down to $200 per tape (which meant that it would have cost Walker $36,000 – not $200 million – to restore all 181 of the tapes to a fully searchable format, which was less than one half of one percent of the cost that Walker originally represented to the Court).

---

[4] Importantly, Plaintiffs identified the very issues that they now raise in their motion to compel in their May 5, 2006 letter, which provides:

> "***To date, Defendant Walker has already agreed to restore 17 of the tapes containing responsive information to their native format, and it is our understanding that those tapes have in fact been restored and are now fully accessible.  Therefore, we need to know how you plan to proceed with these 17 tapes*** . . . . ***We had expected you to address the methodology you planned to use to search and produce documents from the 17 restored tapes during the April 27 call, but you were not prepared to do so.  Certainly, we expect that you will address this issue on today's call***."  Exhibit K to Johnson Decl. (Plfs' May 5, 2006 Ltr.) (emphasis added).

Although the issue of the cost of restoring the tapes had been resolved, Walker continued to go out of his way to delay the production of the responsive documents contained on the WebHouse tapes. At first, he claimed that he did not know which of the "inaccessible" tapes contained responsive documents. This delay tactic continued for over a year. Only after Plaintiffs had participated in ***over a dozen meet and confers***, did Walker finally agree to restore the 17 targeted WebHouse tapes at issue in this Motion to Compel – tapes that he agreed to restore because they contained emails, Microsoft Word documents, spreadsheet and other highly responsive electronic materials. Walker's stonewalling, however, was not finished. Walker unilaterally refused to produce any of the emails and electronic documents on those tapes – in direct violation of the Court's December 8, 2005 order on the electronic documents – forcing Plaintiffs to file a third Motion to Compel. Interestingly, and quite predictably, Walker now informs Plaintiffs that ***9 of the 17 targeted tapes were never even restored***. Moreover, as of the filing of this reply, Plaintiffs still have not received the emails or electronic documents on any of the WebHouse tapes – including those located on the remaining targeted tapes that Walker actually bothered to restore. Something very wrong is going on here with the WebHouse tapes, and the direct intervention of the Court is unfortunately needed to compel Walker to comply with the Court's orders and his obligations under the Rules.[5]

Finally, Defendant Walker still refuses to explain how the WebHouse emails and electronic documents ended up on the 181 "inaccessible" backup tapes in the first place. Walker must be required to answer this question because the emails and electronic documents on the

---

[5] As Plaintiffs explained in detail in their opening brief, this case – at its core – is about the false statement that Walker and the other Defendant made about WebHouse during the Class Period and – although Walker may claim otherwise – Plaintiffs need the WebHouse emails and electronic documents to prosecute the complex securities fraud claims in this case.

"inaccessible" tapes were originally created in an accessible and searchable format in the ordinary course of business. This begs the question: Why were once accessible and searchable documents placed on "inaccessible" tapes?

Moreover, the circumstances surrounding the conversion of these documents to an "inaccessible" format raise serious questions of spoliation, which would entitle the Plaintiffs to presumptions in their favor based on the affirmative actions of Walker in causing evidence in his possession to become unavailable. Indeed, as Plaintiffs noted in their opening brief, there are several emails and electronic documents on these "inaccessible" WebHouse tapes that post-date the date when Walker was served with the complaint. That fact alone begs the question: Did Walker or someone under his control place at least some (if not all) of the WebHouse emails and electronic documents on the "inaccessible" backup tapes after Walker was personally served with the complaint? Walker has repeatedly pleaded ignorance on this point, but he served as the CEO of WebHouse, is personally named in the complaint and had a responsibility under the PSLRA to preserve all evidence relevant to the securities fraud claims in this case.[6] In any case, the fact of the matter is that these tapes were and are in Walker's custody and control. Walker's refusal to answer this question is highly suspect.

---

[6] This issue is of particular importance given that Walker now informs the Court that several of the WebHouse tapes that Defendant Walker previously agreed to restore (because they contained responsive Microsoft Word documents and other highly responsive documents) cannot be restored at all. *See, e.g.,* Docket No. 339 (Walker Opp., at 24) ("Although [Walker's] prior counsel, Paul Hastings, assented to plaintiffs' agreement to restore the tapes in groups 4 and 6 . . . . more than two-thirds of these 9 unrestored tapes in groups 4 and 6 are not restorable.").

## ARGUMENT

**A.    Defendant Walker's Claim That He Does Not Know Which Of The 17 WebHouse Tapes Plaintiffs Target In Their Motion Is Not Credible.**

Defendant Walker spends the first 16 pages of his opposition brief arguing that he cannot respond to Plaintiffs' Motion to Compel because he does not know what Plaintiffs are talking about when they state in their motion that they are targeting the 17 restored tapes containing emails and other responsive documents.  This is the first of many arguments that Walker makes in his brief that is designed to obscure the fact that he failed to restore over half of the 17 targeted tapes identified by Plaintiffs.  As with Walker's other arguments, this argument is openly false. Indeed, Plaintiffs have attached evidence to their opening brief showing that:

- Plaintiffs identified and discussed the tapes Plaintiffs target in their Motion at length with Defendant Walker during the parties' January 3, 2006, February 1, 2006, April 11, 2006, April 27, 2006 and May 5, 2006 meet and confers;

- Plaintiffs specifically identified these tapes as the ones they understood as being the restored tapes in their January 16, 2006, February 3, 2006, March 3, 2006, April 13, 2006, and May 5, 2006 letters to Defendant Walker; and

- Defendant Walker's own electronic production status reports – reports that the Court ordered him to file so that it could "observe the process" and ensure "that there is no misunderstanding about the status of the production of information" – specifically identify the restored tapes that Plaintiffs target in their Motion to Compel.

**i.    Defendant Walker Identified The 17 WebHouse Tapes In Several Of His Own Monthly Status Reports.**

The most powerful evidence that Defendant Walker knows exactly which tapes Plaintiffs targeted for restoration during the meet and confers and now seek in their Motion to Compel is Defendant Walker's own electronic production status reports.  Those status reports set forth the *four steps* that the parties used to identify and then restore the very tapes that Plaintiffs now target in their Motion to Compel:

1.     **Defendant Walker divided the 181 WebHouse tapes into 16 different "Groups" using the handwritten labels on the tapes.**

- As Walker explains: "Counsel for Plaintiffs and Defendant Jay S. Walker held numerous conference calls during April, May, June, July, and August, 2005, regarding the possible production of 181 back-up tapes in Mr. Walker's possession.  To facilitate discussion, counsel for Mr. Walker grouped the 181 tapes into 16 groups based on their handwritten labels."  Docket 254 (Walker's January 10, 2006 Status Report, at 1).

2.     **Defendant Walker restored and then spot-checked one sample tape from each of the 16 Groups to determine which of the Groups contained tapes with responsive documents.**

- As Walker explains: "At Mr. Walker's expense, Mr. Walker's counsel engaged an electronic discovery vendor, and had 16 of these tapes – one tape from each group – restored to a 'native file' format.  Although the data on those 16 tapes was too voluminous for a page-by-page search and could not be searched or organized electronically without further processing, counsel performed spot checks of these 16 tapes to get a feel for the kind of files that each contained."  Docket No. 254 (Walker's January 10, 2006 Status Report, at 1).

3.     **Defendant Walker informed Plaintiffs that the sample tapes from Groups 5 and 15 contained emails, and the parties agreed to split the cost to restore these tapes.**

- As Walker explains: "Based on the spot-checking of the 16 sample tapes*, Mr. Walker's counsel identified eight tapes (from Group 5 and Group 15) that they believed may contain email files.  Two of these eight tapes were within the groups of 16 sample tapes that had been restored to native format.  Prior to February 10, 2006, Mr. Walker's counsel agreed to arrange for its electronic discovery vendor to restore the other six of the eight tapes believed to contain email files and plaintiffs' counsel agreed to split the cost of that restoration*."  Docket No. 322 (Walker's June 12, 2006 Status Report, at 3) (emphasis added).

4.     **Defendant Walker agreed to restore the tapes from Groups 4 and 6 and the parties agreed to split the cost to restore these tapes.**

- As Walker explains: "*Plaintiffs also requested, and Mr. Walker's counsel agreed, to arrange for the restoration to native format of nine other tapes (from Group 4 and Group 6) . . . The vendor was able to restore eight of the nine back-up tapes from Groups 4 and 6 that plaintiffs had sought [to] be restored to native format*."  Docket No. 322 (Walker's June 12, 2006 Status Report, at 4) (emphasis added).

Defendant Walker's own status reports make it perfectly clear that Plaintiffs sought and are still seeking the 17 WebHouse tapes from Groups 5 and 15 and Groups 4 and 6 that the parties identified as containing responsive information following initial restoration and spot-checking of the 16 sample tapes. These are the same tapes – *i.e.,* the tapes from Groups 5 and 15 and Groups 4 and 6 – Walker himself tells the Court the parties had selected for restoration in his June 12, 2006 status report, which is the most recent report Defendant Walker filed prior to Plaintiffs' filing their Motion to Compel. *Id.*

In his opposition papers, Defendant Walker tries to confuse the issue by pointing to the 16 sample tapes, which, as Walker explains in his status reports, have also been restored. Walker claims that he does not know whether Plaintiffs are seeking the sample tapes that he restored as part of the initial spot-checking process, or are seeking the WebHouse tapes from Groups 5 and 15 and Groups 4 and 6, which are the tapes the parties agreed to target following the initial spot-checking of each of the 16 sample tapes. This is just another example of Walker's lack of candor. Indeed, Defendant Walker knows full well that Plaintiffs are seeking the tapes in Groups 5 and 15 and Groups 4 and 6 in their motion to compel, ***and not the sample tapes from the other categories***.[7] Walker himself spells this out in detail in his own status reports – reports that show that his claims of ignorance are not made in good faith.

---

[7] Plaintiffs informed Defendant Walker on July 21, 2006 that the tapes in Groups 3 and 16 also need to be restored because those tapes contained WebHouse emails and other responsive electronic documents. Defendant Walker now states in his opposition brief that the tapes from Groups 3 and 16 have been restored. Accordingly, Walker should take immediate steps to produce responsive emails and electronic documents on the tapes from Groups 3 and 16 as well.

**ii.      Plaintiffs Identified The 17 Restored WebHouse Tapes That Are The Subject Of Their Motion During 5 Of The Parties' Meet And Confers.**

Incredibly, not only do Defendant Walker's own status reports show that he knows exactly which 17 WebHouse tapes Plaintiffs target in their Motion to Compel, but the whole history of the parties' meet and confers shows that these are the same 17 WebHouse tapes that the parties specifically targeted and then agreed to restore during their meet and confers that have occurred over the past 8 months.   Plaintiffs have held over a dozen meet and confers to specifically discuss the restoration and production of the WebHouse backup tapes – meet and confers that date all the way back to April 2005.   Moreover, with respect to 17 restored WebHouse tapes Plaintiffs' seek to compel, Plaintiffs have done the following in an attempt to work around Walker's intransigence without enlisting the aid of the Court:

1.      **Plaintiffs requested that Defendant Walker restore the 8 tapes from Groups 5 and 15 during the parties' January 3, 2006 meet and confer.**

- On January 3, 2006, the parties participated in one of their many meet and confers to discuss the WebHouse backup tapes.  During this meet and confer, Plaintiffs specifically identified the tapes from Groups 5 and 15 as being the ones they wanted restored. Plaintiffs followed this meet and confer up with a letter stating:

  o   "*During our discussion on Tuesday, January 3, 2006, you asked if we would be willing to split either the costs of cataloging, or restoring to their native format, the 8 back-up tapes you previously determined were likely to contain responsive information.  I have discussed this with co-counsel and we are willing to split the cost of restoring the 8 tapes to their native format.*"   Exhibit E to Johnson Decl. (Plfs' Jan. 16, 2006 Ltr.) (emphasis added).

2.      **Plaintiffs requested that Defendant Walker restore the 9 tapes from Groups 4 and 6 during the parties' February 1, 2006 meet and confer.**

- On February 1, 2006, the parties held another meet and confer.  On this call, Plaintiffs inquired about the status of the restoration of the tapes from Groups 5 and 15 and informed Defendant Walker's counsel that – in addition to these tapes – the backup tapes from Groups 4 and 6 should also be restored.  Plaintiffs followed up this meet and confer with a letter stating:

- o "*During the [February 1, 2006] call, we discussed restoring 9 additional back-up tapes from group 4 and group 6 which you determined were likely to contain responsive materials.  Plaintiffs agree to pay one-half the cost of restoring those 9 tapes to their native format*."  Exhibit F to Johnson Decl. (Plfs' Feb. 3, 2006 Ltr.) (emphasis added).

**3.    Plaintiffs' asked Defendant Walker to provide them with his proposed methodology for reviewing and producing responsive documents on the 17 restored tapes from Groups 5 and 15 and Groups 4 and 6 during their April 11, 2006 meet and confer.**

- On April 11, 2006, the parties held another meet and confer on the 17 WebHouse tapes. Plaintiffs' counsel called Walker's counsel before the call and asked him to be prepared to: (1) confirm that the tapes in Groups 5 and 15 and Groups 4 and 6 had been restored; and (2) discuss how Walker planned to produce the responsive emails and electronic documents on these tapes.

- During the April 11, 2006 call, Walker's counsel stated that he was not prepared to address either of the two issues.  The next day, Walker's counsel informed Plaintiffs that Walker had decided to retain new counsel in the case.  Exhibit H to Johnson Decl. (Plfs' April 13, 2006 Ltr.).

**4.    Plaintiffs again asked Defendant Walker to provide them with his proposed methodology for reviewing and producing responsive documents on the 17 restored WebHouse tapes during their April 27, 2006 meet and confer.**

- On April 27, 2006, Plaintiffs held another meet and confer with Walker's new counsel to discuss the backup tapes.  During this call, Plaintiffs inquired about Walker's proposed methodology for producing responsive information on the 17 restored WebHouse tapes. Walker's counsel was not prepared to do so.  Plaintiffs followed up this meet and confer with a letter stating:

  - o "*To date, Defendant Walker has already agreed to restore 17 of the tapes containing responsive information to their native format, and it is our understanding that those tapes have in fact been restored and are now fully accessible.  Therefore, we need to know how you plan to proceed with these 17 tapes . . . . We had expected you to address the methodology you planned to use to search and produce documents from the 17 restored tapes during the April 27 call, but you were not prepared to do so.  Certainly, we expect that you will address this issue on today's call*."  Exhibit K to Johnson Decl. (Plfs' May 5, 2006 Ltr.) (emphasis added).

5.      **Plaintiffs again asked Defendant Walker to provide them with his proposed methodology for reviewing and producing responsive documents on the 17 restored WebHouse tapes during their April 27, 2006 meet and confer.**

- On May 5, 2006, the parties held another meet and confer.  During this call, Plaintiffs asked Defendant Walker's counsel how Walker planned to proceed with the 17 restored tapes.  Walker's counsel failed to provide Plaintiffs with Walker's proposed methodology for searching the 17 restored tapes containing emails and electronic documents.  Exhibit L to Johnson Decl. (May 5, 2006 Ltr.).

Plaintiffs are at a complete loss to understand how Defendant Walker can claim that Plaintiffs failed to meet and confer to discuss the restoration and review of the 17 tapes they target in the Motion to Compel.  Plaintiffs discussed the restoration of the 8 tapes in Groups 5 and 15 during their January 3, 2006, February 1, 2006 and April 11, 2006 meet and confers.  Plaintiffs also discussed the restoration of the 9 tapes in Groups 4 and 6 during their February 1, 2006 and April 11, 2006 meet and confers.  Plaintiffs then asked Defendant Walker to provide them with his proposed methodology for producing the documents from these 17 restored tapes during their April 27, 2006 meet and confer and their May 5, 2006 meet and confer.  Moreover, Plaintiffs followed up each of these meet and confers with a *letter* summarizing what they discussed on the call.

Plaintiffs' May 5, 2006 letter to Walker's new counsel – in particular – could not be more clear.  It states:

> "*To date, Defendant Walker has already agreed to restore 17 of the tapes containing responsive information to their native format, and it is our understanding that those tapes have in fact been restored and are now fully accessible.  Therefore, we need to know how you plan to proceed with these 17 tapes* . . . . *We had expected you to address the methodology you planned to use to search and produce documents from the 17 restored tapes during the April 27 call, but you were not prepared to do so.  Certainly, we expect that you will address this issue on today's call*."  Exhibit K to Johnson Decl (Plfs' May 5, 2006 Ltr.) (emphasis added).

There simply is no wiggle room here for Defendant Walker to claim that Plaintiffs failed to meet and confer on the 17 tapes Plaintiffs target in their Motion to Compel.  Unfortunately, Walker's argument is indicative of how the Defendants have treated the meet and confer process in this case.  On every issue of importance – whether it involves the privilege log, the document requests, the interrogatories, the paper production or the electronic documents – Plaintiffs have held at least two (and in some cases many more) meet and confers.  Plaintiffs have learned to follow up these meet and confers with letters summarizing what was discussed.  On every one of these issues, Defendants have refused to move off of their initial position, forcing Plaintiffs to file a Motion to Compel.  Defendants then open their Opposition brief with the claim that Plaintiffs failed to meet and confer.  These claims are shopworn, false and simply not credible, and, in this particular instance, Defendant Walker's claim that Plaintiffs did not meet and confer crosses into the absurd.[8]

**B.    No Excuse Exists For Defendant Walker's Failure To Restore Over Half Of The WebHouse Tapes He Agreed To Restore.**

Defendant Walker devotes the majority of his brief to his claim that Plaintiffs are somehow at fault for his failure to restore the 9 tapes from Groups 4 and 6 that Plaintiffs target in their Motion to Compel.  This claim is wholly without merit given that:

- Plaintiffs specifically identified the 9 tapes from Groups 4 and 6 as the tapes they wanted restored during the parties' February 1, 2006 meet and confer; *see* Exhibit F to Johnson Decl. ("During the [February 1, 2006] call, we also discussed

---

[8] Defendant Walker also complains in his opposition brief that: "plaintiffs refused Mr. Walker's request for an extension of time to enable them [sic] to prepare a proper response." Docket No. 339 (Walker's Opp. at 15).  Defendant Walker, of course, fails to tell the Court the reason why Plaintiffs could not consent to his request.  At the time Walker sought this extension, the Court had set the hearing on Plaintiffs' motion for August 16, 2006.  Plaintiffs were already facing an extremely tight time frame for putting together their Reply.  If Plaintiffs had consented to Walker's request (Walker wanted to push back his Opposition to August 4), this would have left Plaintiffs with 7 business days to put together a Reply and would have forced Plaintiffs to file their Reply the day before the August 16 hearing, something Plaintiffs did not want to do.

restoring 9 additional back-up tapes from group 4 and group 6 which you determined were likely to contain responsive materials.  Plaintiffs agree to pay one-half the cost of restoring these 9 tapes to their native format.");

- Defendant Walker told the Court he had agreed to restore the 9 tapes in Groups 4 and 6 in his monthly status reports; *see, e.g.,* Docket No. 322 (Walker's June 12, 2006 Status Rep., at 4) ("Plaintiffs also requested, and Mr. Walker's counsel agreed, to arrange for the restoration to native format of 9 other tapes (from Group 4 and Group 6).");

- Defendant Walker represented to Plaintiffs and the Court in his June 12, 2006 status report that: "The vendor was able to restore eight of the nine back-up tapes from Groups 4 and 6 that plaintiffs had sought [to] be restored." *Id.*;

- Defendant Walker sought reimbursement and Plaintiffs have paid one-half of the costs to restore the tapes from Groups 4 and 6; and

- The parties held 2 meet and confers and exchanged several letters discussing Defendant Walker's proposed methodology for producing the responsive emails and electronic documents contained on the tapes from Groups 4 and 6.

In his opposition, Defendant Walker's attorneys claim his failure to restore the tapes from Groups 4 and 6 is a "mix-up," but it is hard to understand how this could have happened given that the Court already ordered Walker to file monthly status reports setting forth "the status of the **selection** of backup tapes for restoration" and "the status of the **restoration** of backup tapes for restoration."  Exhibit B to Johnson Decl. (Dec. 8, 2005 Order, at 6) (emphasis added). Defendant Walker's attorneys also try to blame Walker's prior counsel, Paul Hastings, for failing to restore these tapes in Groups 4 and 6.  However, Walker's latest set of attorneys prepared the June 12, 2006 status report that contained the inaccurate statement about the tapes in Groups 4 and 6.  Docket No. 322 (Walker's June 12, 2006 Status Report, at 3).  At a minimum, Defendant Walker's current counsel should have confirmed that the tapes from Groups 4 and 6 had been

13

restored before filing a report with the Court in which Walker represented that "[t]he vendor was able to restore eight of the nine back-up tapes form Group 4 and 6." *Id.* [9]

This so-called "mix-up" also calls into question whether Defendant Walker participated in good faith in the April 27, 2006 and May 5, 2006 meet and confers – which Plaintiffs scheduled so that the parties could discuss Walker's proposed methodology for reviewing and producing the responsive documents on the 17 restored tapes – including the tapes in Groups 4 and 6. *See, e.g.,* Exhibit K to Johnson Decl. (May 5, 2006 Ltr.) ("We had expected you to address the methodology you planned to use to search and produce documents from the 17 restored tapes during the April 27 call, but you were not prepared to do so. Certainly, we expect that you will address this issue on today's call."). Exhibit K to Johnson Decl. (Plfs' May 5, 2006 Ltr.). Defendant Walker should have confirmed that the tapes in Groups 4 and 6 had been restored prior to these two meet and confers – since the whole purpose of these meet and confers was to discuss how Walker planned to review and produce responsive information on the 17 restored tapes from Groups 5 and 15 and Groups 4 and 6.

Moreover, in continuation of his foot-dragging and spoliation exercises, Defendant Walker informs Plaintiffs and the Court in his Opposition that: "***more than two-thirds of these nine unrestored tapes in groups 4 and 6 are not restorable***." Docket No. 339 (Walker's Opp., at 24) (emphasis in original). These are the same tapes Walker represented in his June 12, 2006 status report as ***having been*** restored. Defendant Walker also goes on to claim that: "Although [Defendant Walker's] prior counsel, Paul Hastings, assented to plaintiffs' agreement to restore

---

[9] In his opposition brief, Defendant Walker also states that the he failed to restore the tapes in Groups 4 and 6 because: "plaintiffs had originally requested that Paul Hastings restore tapes from groups 3 and 16. After discussions between Paul Hastings and plaintiffs' counsel about the tapes, plaintiffs' counsel shifted their request to groups 4 and 6." Walker's explanation is false. Plaintiffs have made it clear to Walker all along that they were targeting the tapes in groups 4 and 6. *See, e.g.,* Exhibit F to Johnson Decl. (Plfs' February 3, 2006 letter).

the tapes in groups 4 and 6, more information has been obtained since that time that indicated that many of the tapes . . . are not worth pursuing." *Id.* Walker's statement is unsupported by any evidence and his assessment is absolutely wrong. Nothing changed, other than the fact that Defendant Walker has now revealed that these tapes had not been restored despite informing the Court that they had. Defendant Walker is clearly scrambling to justify his active failure to restore the tapes from Groups 4 and 6. Despite Walker's assertions to the contrary, the record shows that these are tapes that the parties identified following 8 months of meet and confers in which Plaintiffs identified tapes that needed to be restored. Defendant Walker agreed to restore the tapes in Groups 4 and 6 because these tapes contain Microsoft Word documents and other responsive documents, and Walker represented to the Plaintiffs that 8 of the 9 tapes in Groups 4 and 6 had been restored.

The fact that Defendant Walker cannot – or will not – restore tapes that he previously agreed to restore is a serious issue. The WebHouse electronic documents on those tapes are among the most critical and potentially incriminating documents in this entire case. Plaintiffs' ability to prosecute the complex securities fraud claim alleged in the complaint will be severely prejudiced if any of the tapes that the parties previously targeted and agreed to restore have been destroyed or rendered inaccessible. If it turns out that the tapes from Groups 4 and 6 cannot be restored, then the Court will need to instruct the jury at trial that it should draw an adverse inference from the spoliation of the responsive documents on the WebHouse tapes. Moreover, if Defendant Walker has failed to fulfill his obligations under the PSLRA to preserve the WebHouse emails and electronic documents that have now found their way onto the 181 "inaccessible" WebHouse tapes, then this Court should award Plaintiffs additional relief under the Federal Rules – both at the summary judgment and trial phases of this case. *See, e.g.,*

*Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co., Inc.,* 2005 WL 679071, at \*6-8 (Fla. Cir. Ct. Mar. 1, 2005) (granting plaintiff's motion for an adverse inference instruction due to Morgan Stanley's destruction of e-mails and Morgan Stanley's non-compliance with the Court's agreed orders).

**C.     Defendant Walker Has Refused To Produce Responsive Documents On Those Few Tapes He Has Actually Restored – In Direct Violation Of The Court's December 8, 2005 Order On Plaintiffs' Motion To Compel.**

Defendant Walker's Opposition labors under the false presumption that Plaintiffs seek to re-litigate Walker's obligation to perform tasks the Court has already commanded him to accomplish.  However, Plaintiffs did not file this Motion to Compel to get Defendant Walker to restore the 17 tapes they have targeted over the past 8 months.  Defendant Walker had already agreed to restore all 17 of these tapes, and directly represented to the Court in his monthly status reports that the targeted tapes had been restored.  Plaintiffs' Motion to Compel seeks to compel Defendant Walker to ***produce*** the WebHouse emails and responsive electronic documents on the 17 targeted WebHouse tapes.

With respect to the WebHouse tapes from Groups 4 and 6, Plaintiffs now know that Walker was refusing to produce responsive documents on these tapes, not because they did not contain responsive information, but because, contrary to Walker's representations to the Court, these tapes had never been restored.  However, Walker also refuses to produce responsive emails and electronic documents on the tapes from Groups 5 and 15 – tapes that, according to his status reports, he actually has restored.  Defendant Walker's refusal to produce the emails and

electronic documents on these restored tapes is yet another example of Walker's complete failure to comply with the Court's December 2005 order.[10]

i.    **The Court Should Compel Defendant Walker To Perform An Immediate Email-By-Email Search Of All Of The Key Individual Email Accounts.**

Prior to filing the instant Motion, Plaintiffs participated in meet and confers with Defendant Walker on April 27, 2006 and May 5, 2006 to discuss Walker's proposed methodology for reviewing and producing responsive emails and electronic documents on the 17 restored tapes.  During the May 5 meet and confer, Plaintiffs informed Defendant Walker's latest set of attorneys that Plaintiffs had determined that several key individual email accounts were sitting on those tapes that the parties had agreed to restore.  Plaintiffs followed up this meet and confer with a letter stating:

> Plaintiffs have determined that many email accounts likely to contain responsive materials are on the backup tapes that have now been restored, making them fully accessible and searchable.  Accordingly, we expect that you will perform an email-by-email search of the email accounts of all the executives and employees on the list Plaintiffs provided to Defendant Walker's prior counsel on February 17, 2006 (which we forwarded to you on Friday, May 5, 2006) and produce responsive information resulting from this search.

Exhibit L to Johnson Decl. (Plfs' May 10, 2006 Ltr.).  Defendant Walker, through his current attorneys, wrote back to Plaintiffs on May 12, 2006.  In that letter, Walker's counsel stated that Walker would not be performing an email-by-email review of the key individual email accounts, claiming that: "[a]n email-by-email search of the 121 individuals you have identified would impose unwarranted expense and burden."  Exhibit M to Johnson Decl. (Defendant Walker's

---

[10] In that order, the Court made it clear that once the parties selected the tapes to restore, the burden then shifted to Defendant Walker to sort through and produce the responsive documents on the restored tapes.  *See* Exhibit B to Johnson Decl. (Dec. 8, 2005 Order, at 6) ("The court is placing primary responsibility upon the defendant to properly sort through the data.").  The Court also ordered Defendants to "record and produce a summary of their methodology so that plaintiffs can argue for the inclusion of more data if appropriate."  *Id.*

May 12, 2006 Ltr.).  After receiving this letter, Plaintiffs moved to compel Walker to perform the email-by-email review of the key individual email accounts.

Now, after forcing Plaintiffs to move to compel on this issue, Defendant Walker backs off his prior position and concedes in his Opposition that an email-by-email review is appropriate for certain designated email accounts.  Docket No. 339 (Walker's Opp., at 9).  This is yet another example of Plaintiffs having to file a motion to compel to get appropriate and necessary discovery that should be produced in the normal course.  Walker states in his Opposition that his attorneys will "conduct an email-by-email review of Mr. Walker's and Mr. Braddock's .pst mailboxes."  *Id.*  Defendant Walker also states that he will upload the .pst mailboxes for 28 additional individuals that Plaintiffs have identified on their list of key individual email accounts.  *Id.*  Walker, of course, does not commit to searching these accounts and he does not disclose which 28 individual accounts he has uploaded and which of the key individual accounts he plans to exclude.[11]  He also does not commit to producing any of the emails or electronic documents contained in these key email accounts – including those in the accounts belonging to Walker and Braddock.  Instead, he simply states that, after reviewing Walker and Braddock's email accounts, he will assess whether a similar review for the remainder of the 28 individuals is warranted.  *Id.*

---

[11] Consistent with his litigation strategy and with his overall approach to filings with the Court, Defendant Walker again makes a statement that appears to say one thing, but upon further examination is revealed to say something quite different.  Defendant Walker gives the impression that he will be searching 55 of the key individual email accounts.  Docket No. 339 (Walker Opp., at 8-9).  However, in footnote 9, Defendant Walker discloses that only 28 of these 55 key individuals actually have mailboxes on the restored WebHouse tapes.  If this is accurate, Walker will be uploading only 28 individual mailboxes, not the 55 mailboxes he refers to throughout his Opposition brief.  This lack of candor is a prime example of the difficulty of conducting complex discovery operations in the face of an opponent who rejects the obligation to participate in the process in good faith.

Defendant Walker's wait-and-see approach is not what the Court contemplated in its December 2005 Order and Walker's inappropriate approach will only cause further delay. Defendant Walker has had unfettered access to these individual accounts for at least 6 months (putting aside the 6 years they were previously in his possession). There is no question that the emails and electronic documents in the key individual WebHouse email accounts are the most relevant document to the securities fraud claims alleged in the complaint and these are documents Plaintiffs need in order to move forward with the fact depositions in this case. Accordingly, the Court should order Defendant Walker to conduct an immediate and good faith email-by-email review *all* of the key individual email accounts on Plaintiffs' individual email account list.[12] Alternatively, if the Court concludes that Walker is unwilling or unable to perform this search in good faith, the Court should order Walker to send the restored tapes to Plaintiffs so that Plaintiffs can perform the email-by-email review themselves.

**ii.** **The Court Should Compel Defendant Walker To Use Search Terms To Cull Out Privileged Documents And Then Produce The Rest Of The Electronic Documents On The Tapes In A Timely Fashion.**

Defendant Walker has also failed to develop a workable methodology for searching the remainder of the email accounts and the remaining electronic documents on the restored WebHouse tapes. Again, this runs counter to the Court's directives in its December 5, 2005 Order. Plaintiffs, on the other hand, have put forth a "search term" approach that would capture the privileged documents – to the extent that there even are privileged documents on these tapes – without excluding the relevant information and electronic documents they need to prosecute

---

[12] In his Opposition, Defendant Walker's states that he plans to exclude over half of the people on Plaintiffs' key email account list. Plaintiffs compiled their list of "key" email accounts using Defendants' own Rule 26(a) initial disclosures and interrogatory responses. Nevertheless, Walker claims that over half of the people on this list are not likely to have relevant information. Walker does not, however, identify any of the people he has chosen to exclude, nor does Walker provide the reasons why he thinks these people will not have responsive documents.

this case. This approach calls on Walker to use search terms to capture any privileged and work-product documents on the restored tapes, and then turn the remainder of the tapes over to Plaintiffs so that Plaintiffs can review them for responsive documents.

Plaintiffs' proposed "search term" approach strikes an appropriate balance between Walker's right to assert the attorney-client privilege (again, to the extent that there even are privileged documents on these tapes, something Walker has not shown) and Plaintiffs' right under the Federal Rules to discover appropriate information. It is also the only approach that will actually lead to the production of the responsive materials on these tapes – although this approach, as with any proposed approach, requires Walker to participate in good faith in the "search term" process, something he had not been willing to do. Plaintiffs have waited a year and a half to receive the WebHouse emails and electronic documents. They should not be forced to wait any longer. These are highly relevant electronic documents that Defendant Walker must be compelled to immediately produce.

## <u>CONCLUSION</u>

Plaintiffs and the Court have been subjected to Defendant Walker's aggressive and improper litigation tactics long enough. The integrity of the judicial system and the legitimacy of the discovery rules depend on the fulfillment of the good faith requirements imposed on all litigants and on the enforcement of appropriate sanctions where there is a refusal to reasonably abide by the rules and Court Orders. Accordingly, Plaintiffs respectfully request that the Court award such relief as it deems just and specifically order Defendant Walker to immediately:

(a)     Restore the 9 WebHouse tapes from Groups 4 and 6 he agreed to restore and had previously told the Court that he had successfully restored;

(b)     Award Plaintiffs an appropriate adverse inference instruction if any of the tapes from Groups 4 and 6 cannot be restored;

(c)     Explain in detail how the WebHouse emails and electronic documents ended up on the 181 "inaccessible" tapes and what Walker did to comply with his obligation under the PSLRA to preserve the WebHouse emails and electronic documents after receiving notice of the complaint;

(d)     For those tapes in Groups 5 and 15 and Groups 4 and 6 that Defendant Walker has actually restored:

   1.    Review those email accounts identified in Plaintiffs' February 17, 2006 letter on an email-by-email basis and produce all emails and electronic documents (including draft emails, deleted emails, emails sent to the account holder, emails sent by the account holder, and attachments) responsive to Plaintiffs' document requests contained in these individual email accounts; (alternatively, Defendant Walker can provide Plaintiffs with a searchable electronic copy of the email accounts identified in Plaintiffs' February 17, 2006 letter so that Plaintiffs can review the email accounts on their own);

   2.    Use reasonable search terms to capture those documents that may contain privileged and work-product information on 17 restored WebHouse tapes;

   3.    Review those documents captured by the "privileged search term" search to ensure that they do in fact contain privileged or work-product information;

   4.    Place the privileged and work-product documents on a privilege log that fully comports with Rule 26, which Wakler must provide to the Plaintiffs within 30 days of the date of this Order and on a rolling basis every 30 days thereafter as additional tapes are restored;

   5.    Make a searchable electronic copy of the remaining electronic documents on targeted restored WebHouse tapes (*i.e.,* those that are not placed on the privilege log) and produce this copy to the Plaintiffs;[13]

---

[13] As an alternative to step (d), Defendant Walker may provide Plaintiffs with searchable copies of the restored WebHouse tapes in their entirety.

(e)     Provide Plaintiffs with appropriate relief for the failure of Defendant Walker to comply with the Court's discovery orders.


Dated: August 14, 2006                              Respectfully submitted,

                                                    SCOTT + SCOTT, LLC

                                                    __/s/*Erin Green Comite* _____
                                                    David R. Scott (ct16080)
                                                    Mark V. Jackowski
                                                    Geoffrey M. Johnson
                                                    Erin Green Comite (ct24886)
                                                    108 Norwich Avenue
                                                    P.O. Box 192
                                                    Colchester, CT 06415
                                                    Telephone: (860) 537-5537
                                                    Facsimile: (860) 537-4432

                                                    JOHNSON & PERKINSON
                                                    Dennis J. Johnson
                                                    Jacob B. Perkinson
                                                    1690 Williston Road
                                                    P.O. Box 2305
                                                    South Burlington, VT 05403
                                                    Telephone: (802) 862-0030
                                                    Facsimile: (802) 862-0060

                                                    **Co-Lead Counsel**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2006, a copy of the foregoing REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT WALKER TO PRODUCE EMAILS AND ELECTRONIC DOCUMENTS ON THE SEVENTEEN RESTORED WEBHOUSE CLUB TAPES was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

____/s/*Erin Green Comite*_____
Erin Green Comite