Westlaw.

Not Reported in F.Supp.	Page 1

Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Thomas E. CAREY, Plaintiff,
v.
BERISFORD METALS CORPORATION,
Berisford International PLC, Howard J. Zuckerman
and William P. Karon, Defendants.
**No. 90 Civ. 1045 (JMC).**

March 28, 1991.

### MEMORANDUM AND ORDER

CANNELLA, District Judge.

**\*1** Defendant's motion for leave to file a second amended counterclaim is granted in part. Fed.R.Civ.P. 13(f), 15(a). Plaintiff's motion to dismiss defendant's first amended counterclaim is denied as moot. Plaintiff's motion for a protective order is denied. Fed.R.Civ.P. 26(c). The scope of defendant's discovery request is limited as provided herein. Fed.R.Civ.P. 26(b)(1).

### BACKGROUND

Plaintiff Thomas E. Carey was the Chief Executive Officer ["CEO"] of defendant Berisford Metals Corporation ["BMC"] from 1977 through 1988. On March 13, 1989, Carey commenced the instant action to recover vested pension benefits, deferred compensation and other benefits allegedly due him pursuant to the provisions of his written employment contract with BMC and its parent, defendant Berisford International PLC.

BMC's first amended answer asserts a counterclaim charging Carey with fraud. BMC alleges that during Carey's eleven years of employment, Carey engaged in a complex scheme to defraud the company based on the company's policy of not requiring the submission of receipts to obtain reimbursement of expenses less than $25. BMC alleges that Carey submitted false expense reports for travel expenses that he never incurred. These expenses included expenditures for business periodicals, tips, taxis, drinks, gifts and meals. Although each expense was less than $25, BMC alleges that Carey reported spending several hundred dollars each day on these expenses. Carey now moves to dismiss BMC's first amended counterclaim on the ground that it fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Discovery proceeded during the pendency of Carey's motion to dismiss. At Carey's first deposition, Carey refused to answer any questions concerning his expense reports and reimbursements. Pursuant to a May 31, 1990 stipulation and order [the "May 31 Order"], Carey's deposition was to be continued no later than August 15, 1990. The Court subsequently decided that Carey could be asked questions pertaining to BMC's first amended counterclaim. Due to several delays, Carey was not deposed until September 25, 1990 and October 4, 1990. BMC now seeks leave to file its proposed second amended counterclaim.

On December 6, 1990, BMC served deposition notices upon the custodians of records of the financial institutions where Carey maintained bank accounts, seeking the production of Carey's bank account records from 1977 to date. Carey now moves for a protective order quashing the deposition notices.

### DISCUSSION

I. *Motion to Amend*

BMC seeks leave to file a second amended counterclaim, which differs from its first amended

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

counterclaim in two respects. First, the second amended counterclaim adds a fraud claim based on Carey's local expense reports and further specifies the fraud claim based on Carey's foreign expense reports. Second, it adds a claim based on section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. § 1962(c) (1988). Insofar as BMC expands upon its original fraud counterclaim, BMC's motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure. Insofar as BMC seeks to add a RICO counterclaim, BMC's motion is governed by Rule 13(f).

*2 Rule 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). Amendments to assert previously omitted counterclaims are liberally granted where plaintiff will not be unduly prejudiced and defendant did not act in bad faith. *See* Index Fund, Inc. v. Hagopian, 91 F.R.D. 599, 606 (S.D.N.Y.1981).

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading by leave of court and leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Similar to the liberality accorded omitted counterclaims under Rule 13(f), amendments under Rule 15(a) are generally favored. A motion to amend should be denied only if there exists "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility." Foman v. Davis, 371 U.S. 178, 182 (1962). Carey opposes BMC's motion to file its second amended counterclaim, citing the prejudice he will suffer if the amendment is allowed, BMC's delay in asserting the counterclaim and futility of the counterclaim.[FN1]

A. *Prejudice*

The undue prejudice Carey alleges he will suffer has many causes. First, he broadly asserts that a trial on his claim will be delayed as a result of the additional motion practice necessitated by BMC's RICO claim. However, in the absence of any supporting legal argument, Carey's mere speculation that there will be extensive motion practice is insufficient to establish that an adjudication on the merits will be significantly delayed.

Carey also contends that he will be prejudiced by the need for further discovery. There are special circumstances where the reopening of discovery may be the source of undue prejudice to the opposing party. For example, in Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442 (2d Cir.1985), the Second Circuit affirmed the district court's denial of leave to amend where the amendment was based on an entirely new set of operative facts. *See id.* at 446. In the instant action, however, BMC essentially expands upon its fraud claim and adds a RICO claim based upon some of Carey's allegedly fraudulent acts. The Court finds that the proposed amendment is substantially an extension of the first counterclaim and that Carey will not be unfairly prejudiced if compelled to defend against the additional allegations. Moreover, the court's finding of prejudice in *Ansam* was also based on the fact that the motion was made after the time for discovery had run and after the opposing party had filed a motion for summary judgment. *See id.* Here, while pretrial preparation has been extensive, no trial date has been set, nor has a date been scheduled for the submission of pretrial papers. Furthermore, this is not a case where the amendment is designed to defeat a pending motion for summary judgment based on the completed discovery. *See Reisner v. General Motors Corp.,* 511 F.Supp. 1167, 1172 (S.D.N.Y.1981), *aff'd on other grounds,* 671 F.2d 91 (2d Cir.), *cert. denied,* 459 U.S. 858 (1982).

*3 Denial of a motion to amend is also warranted where the proposed amended claims will significantly increase the scope of discovery when the action is ready for trial and the moving party is using the discovery process to force a favorable settlement. *See* Barrows v. Forest Laboratories, Inc., 742 F.2d 54, 58 (2d Cir.1984). Trial in the instant action is by no means imminent nor is there

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

any danger that the discovery process is being used for any wrongful purpose. Thus, the Court finds that Carey will not be unduly prejudiced by the burden of further discovery. The opposing party's burden of additional discovery in and of itself does not rise to the level of prejudice required to deny leave to amend.

### B. *Undue Delay*

Carey also argues that BMC's proposed counterclaim will prejudice him before the jury. This is not a reason for denying leave to amend. Rather, if the Court subsequently determines that plaintiff will be prejudiced by BMC's counterclaim, the Court may order separate trials on the claims pursuant to Rule 13(i). *See* Fed.R.Civ.P. 13(i).

Carey next argues that BMC's counterclaim should be denied because BMC unduly delayed in asserting its counterclaim. The proposed second amended counterclaim comes nine months after BMC filed its answer. However, it appears that BMC's delay in asserting its counterclaim arises from the concomitant delay in holding Carey's deposition. Although the Court ordered the parties to conduct Carey's deposition no later than August 15, 1990, he was not deposed until September 25 and October 4, 1990. Approximately one month later BMC brought the instant motion.

Clearly, BMC was entitled to depose Carey to confirm the evidence of fraud they uncovered. Carey is the only party with actual knowledge regarding his allegedly fraudulent expense reports. Delay in asserting an amended claim in order to depose an important witness may be justified where there is a need to verify information. *See* State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981). Given the delay in holding Carey's deposition, the Court finds that BMC's delay in asserting its second amended counterclaim is excusable. In addition, the Court finds that BMC did not bring the counterclaim in bad faith or to purposefully delay the action.

### C. *Futility*

Finally, Carey argues that BMC's fraud and RICO counterclaims should be denied because they fail to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Thus, conclusory allegations that a party's conduct was fraudulent are insufficient. *See* Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir.1982). Rather, the act or statements constituting the fraud must be alleged with specificity. *See* Ross v. A.H. Robins Co., 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946 (1980). To comply with Rule 9(b), the fraud claim must specify:

*4 "(1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of not making) the same, (3) the context of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

Ruff v. Genesis Holding Corp., 728 F.Supp. 225, 227 (S.D.N.Y.1990) (quoting Posner v. Coopers & Lybrand, 92 F.R.D. 765, 769 (S.D.N.Y.1981), *aff'd,* 697 F.2d 296 (2d Cir.1982)). Rule 9(b)'s particularity requirements serve three purposes: first, they give the defendant fair notice of plaintiff's claim and the actions upon which the allegations of fraud are based, thereby enabling the defendant to prepare a defense; second, they protect defendant's reputation from harm that could result if plaintiff was permitted to broadly charge fraud; and third, they minimize the number of strike suits. *See* Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852 (1988); Di Vittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987); Goodman v. Shearson Lehman Bros., 698 F.Supp. 1078, 1083 (S.D.N.Y.1988).

The particularity requirements of Rule 9(b) must be read in conjunction with Rule 8(a) which requires that pleadings be "simple, concise, and direct." *See* Quaknine v. MacFarlane, 897 F.2d 75, 79 (2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                             Page 4
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Cir.1990). Rule 9(b) does not require the pleading of detailed evidentiary matter. *See* Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976 (1975); 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 9.03 (2d ed. 1989). Thus, fraud must be pleaded with sufficient particularity to enable the adverse party to adequately frame a response. The court, however, must also be careful not to demand voluminous and unwieldy complaints.

Carey first contends that BMC's allegations are insufficient because they rest upon "information and belief." Generally, allegations of fraud cannot be based upon information and belief. *See Di Vittorio,* 822 F.2d at 1247; Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972). However, the Second Circuit recognizes an exception to this rule with regard "to matters peculiarly within the opposing party's knowledge." *Schlick,* 507 F.2d at 379. To satisfy Rule 9(b) in this event, the allegations must be accompanied by a statement of the facts upon which the belief is based. *See Stern,* 844 F.2d at 1003; *Di Vittorio,* 822 F.2d at 1247.

BMC's allegations are necessarily based upon information and belief, since whether an item was improperly submitted for reimbursement lies peculiarly within Carey's knowledge. However, to properly assert allegations based upon information and belief, BMC must provide a basis upon which its belief is founded. The Court finds that BMC's allegations meet this requirement. For example, BMC alleges that upon information and belief Carey falsely reported spending cash for meals, business periodicals, taxis, drinks and tips on his foreign expense reports. *See* Answer and Second Amended Counterclaim, at ¶¶ 12, 16. BMC then provides a list of twenty dates in 1983 in which Carey allegedly submitted false expense reports for meals. *See id.* at ¶ 15. BMC's allegation that Carey falsely reported spending cash for meals is based on the fact that according to Carey's expense report he ate three or more meals and snacks per day, while also charging one or more meals on the same day to his company credit card. *See id.* Thus, BMC infers that Carey falsified his cash expenditures in order to obtain reimbursement from BMC. Similarly, BMC points to specific expense reports which adequately establish the basis for its remaining allegations based upon information and belief. *See id.* at ¶¶ 16-18, 20-22, 25.

*5 Carey also argues that BMC fails to particularize the fraud as required by Rule 9(b). Carey relies on the fact that BMC sets forth a few examples of allegedly fraudulent expense reports over the eleven year period, rather than list each expense it claims is fraudulent. With regard to BMC's fraud counterclaim based upon Carey's *foreign* expense reports, the Court finds that the allegations meet the particularity requirements of Rule 9(b) to the extent the allegations are limited to Carey's charges for meals, tips, drinks, business periodicals, taxis and gifts under $25. *See id.* at ¶¶ 12, 16. As to these identified items, BMC specifies how each expense was fraudulently reported. *See id.* at ¶¶ 15-18. For example, BMC alleges that the expense reports containing charges for eight or more taxi rides a day for a total in excess of $150 are false because of the magnitude of the expense. *See id.* at ¶ 17. Rule 9(b)'s particularity requirements do not mandate that BMC set forth a detailed analysis of every expense report containing fraudulent charges from 1977 through 1988. Where "the fraud allegedly involved a course of conduct over an extended period of time or a series of transactions, it is not necessary to recite in detail, the facts of each transaction of the fraudulent scheme." General Accident Ins. Co. v. Fidelity & Deposit Co., 598 F.Supp. 1223, 1232 (E.D.Pa.1984). Here, the fraudulent scheme is strictly limited to easily identifiable items appearing on Carey's foreign expense reports so as to give Carey fair notice of the claim asserted against him. Therefore, BMC's proposed fraud counterclaim based on Carey's foreign expense reports is not futile and, accordingly, leave to amend is granted.

Next, with regard to BMC's fraud counterclaim arising out of Carey's *local* expense reports, BMC alleges that the items Carey misrepresented as business related "include[ ] but are not limited to: (a) gas purchases, insurance payments and repairs for a car other than a company car, often made by Carey's wife or daughter; (b) regular purchases of alcohol for personal use; (c) charges for non-business related meals and entertainment, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                           Page 5
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

(d) gifts for non-business related persons." *See* Answer and Second Amended Counterclaim, at ¶ 20. BMC sets forth two examples of the fraud. In one example, BMC lists dates in 1982 through 1986 in which Carey allegedly charged personal liquor expenses to BMC as Carey was travelling outside of the United States on the dates the purchases were made. *See id.* at ¶ 21. In the second example, Carey lists dates in 1986 and 1987 in which members of Carey's family allegedly made gas purchases as Carey was working at a location other than the place where the purchase was made. *See id.* at ¶¶ 22, 33.

The allegations as to Carey's local expense reports fail to pass muster under Rule 9(b). BMC does not allege that *all* of Carey's gas, alcohol, etc. purchases were for personal use. BMC alleges that only some of these items were for personal use. The allegations fail to meet Rule 9(b)'s particularity requirements because BMC fails to give a method for distinguishing between fraudulent and legitimate charges. Rule 9(b) does not require that BMC list each gas, alcohol, meal, gift or other item for allegedly personal use charged to BMC; however, Rule 9(b) demands that sufficient particularity be given to allow Carey to frame a response to the fraud charge. Unlike the fraud counterclaim based on Carey's foreign expense reports, the fraud counterclaim based on Carey's local expense reports lacks further information identifying which items are allegedly fraudulent. Moreover, the isolated examples of fraud do not cure these deficiencies since they do not narrow the allegations in any manner that would enable Carey to determine which expenses were allegedly for personal use. Therefore, BMC's proposed fraud counterclaim based on Carey's local expense reports is futile and, accordingly, leave to amend is denied.

*6 Turning to BMC's RICO claim, BMC alleges that while Carey worked at BMC, he used BMC's employee reimbursement procedures to effectuate a scheme to defraud BMC through the submission of false foreign *and* local expense reports. *See id.* at ¶¶ 29-31. BMC alleges that Carey effectuated the scheme to defraud by using credit cards to charge personal expenses to BMC, and in doing so relied upon the United States mails in violation of the federal mail fraud statute. *See id.* at ¶¶ 31-32. Carey's sole opposition to the proposed RICO amendment is that it fails to allege the predicate act of mail fraud with the specificity required by Rule 9(b).

To adequately plead a RICO claim, BMC must allege the commission of two or more "predicate acts," 18 U.S.C. § 1961(1) (1988), constituting a " pattern of racketeering activity." 18 U.S.C. § 1962 (1988). The federal offense of mail fraud, 18 U.S.C. § 1341 (1988), constitutes such a predicate act. *See* 18 U.S.C. § 1961(1)(B) (1988). Where mail fraud violations are the "predicate acts" alleged to constitute a pattern of racketeering activity, those fraud allegations must be pleaded with the specificity required by Rule 9(b). *See* Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir.1990). Mail fraud allegations must set forth "the contents of the items mailed and specify how each of these items was false and misleading." Official Publications, Inc. v. Kable News Co., 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part and rev'd in part,* 884 F.2d 664 (2d Cir.1989). The requirement of particularity in mail fraud claims, however, "does not require a plaintiff to plead every date and place of mailing, particularly where such knowledge would be in the possession of defendants." Landy v. Mitchell Petroleum Technology Corp., 734 F.Supp. 608, 622 (S.D.N.Y.1990).

In connection with Carey's *foreign* expense reports, BMC's RICO allegation arises out of Carey's use of the company credit card in connection with his scheme to defraud BMC by submitting false claims on his foreign expense reports for reimbursement. Specifically, BMC alleges that Carey used the company credit card to charge numerous expenses to BMC "including but not limited to ... meals." *See* Answer and Second Amended Counterclaim, at ¶ 34. The Court previously held that BMC's fraud counterclaim based on Carey's foreign expense reports satisfies Rule 9(b) because it sufficiently details those charges for meals, *inter alia,* not paid for in cash. Consequently, the meal purchases made with the company credit card as part of this fraudulent scheme are also sufficiently detailed to enable Carey to adequately respond. Thus, to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                             Page 6
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

extent that the predicate acts of mail fraud are based on Carey's use of the company credit card to charge meals as part of his scheme to defraud BMC by falsely reporting that he expended cash for meals, the Court finds that the proposed RICO claim meets the requirements of Rule 9(b). However, to the extent that BMC alleges that Carey used the company credit card to charge other meals and other unspecified expenses while away on business travel, BMC's claim is plainly deficient. *See id.* at ¶ 34.

*7 As to the acts of mail fraud in connection with Carey's *local* expense reports BMC alleges that credit cards were used to charge personal expenses to BMC for items "including but not limited to" gasoline purchased by members of Carey's family for their personal use. *See id.* at ¶¶ 32, 33. BMC then sets forth dates in 1986 and 1987 in which gas purchases were allegedly made by a family member at a location other than where Carey was working. *See id.* at ¶ 33.

These acts of mail fraud do not meet the specificity requirements of Rule 9(b). First, the allegations are overly broad as BMC fails to identify all the items for which Carey used a credit card to make personal purchases. The counterclaim is also not sufficiently particular to the extent that the mail fraud is limited to Carey's gasoline purchases. As with the fraud counterclaim based on Carey's local expense reports, BMC fails to provide any details that would enable Carey to identify which specific gas purchases were for personal use. The specified gas purchases in 1986 and 1987 are insufficient to support the entire claim since they fail to provide additional information indicating which gas purchases in other years were allegedly made by family members.

In sum, BMC's proposed RICO counterclaim relating to the meal charges in Carey's foreign expense reports adequately pleads mail fraud and, accordingly, leave to amend is granted. However, as to the proposed RICO counterclaim relating to the local expense reports, leave to amend is denied because the counterclaim fails to adequately plead mail fraud. Carey's final contention that BMC fails to sufficiently particularize its allegation that Carey was engaged in a "pattern of racketeering activity" for over ten years is without merit. Only the predicate act of mail fraud need conform to Rule 9(b)'s particularity requirements.

II. *Discovery Dispute*

Carey seeks a protective order quashing two deposition notices that were served on December 6, 1990, upon the custodians of records at two banks where he maintains bank accounts. The notices require the production of all documents "relating to any account of the Bank held by plaintiff Thomas E. Carey, including checking, savings, money-market or investment accounts, whether held jointly with his wife or solely in his own name" and "all documents recording payments into and out of such accounts" from January 1977 to present. *See* Plaintiff's Notice of Motion, Exh. A, 90 Civ. 1045 (JMC) (S.D.N.Y. Dec. 6, 1990). Carey contends that the documents should not be produced on the grounds that (1) the request violates the May 31 Order and (2) the request is irrelevant, unduly burdensome and intrusive into Carey's personal affairs.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the broad scope of permissible discovery: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Fed.R.Civ.P. 26(b)(1). Relevancy is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). However, a party from whom discovery is sought may seek a protective order from the court to protect him from "annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c).

*8 At the outset, the Court must determine whether Carey has standing to contest the deposition notices served on his banks. A party generally lacks

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

standing "to quash a subpoena to one who is not a party unless the party claims some personal right or privilege with regard to the documents sought." 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2457 (1971). Here, Carey's contention that he has a privacy interest in the bank records sought by BMC is sufficient to give him standing to contest the propriety of the discovery. *See* Chazin v. Lieberman, 129 F.R.D. 97, 98 (S.D.N.Y.1990).

Carey's first objection to BMC's discovery request is that it violates the May 31 Order. Pursuant to the May 31 Order, all requests for the production of documents relating to BMC's first amended counterclaim were to be served by June 15, 1990. Here, BMC is using a deposition notice to obtain the production of documents from a non-party. However, at the time of the May 31 Order BMC had not yet moved to amend its first amended counterclaim. In fairness, the May 31 Order cannot govern discovery relevant to BMC's proposed second amended counterclaim. Indeed, Carey himself argues that he will need to conduct additional discovery which would fall outside the scope of the May 31 Order in the event that BMC is permitted to amend its first amended counterclaim. Thus, BMC's discovery request is not prohibited by the May 31 Order.

Carey also argues that the discovery request is irrelevant, unduly burdensome and personally intrusive. Despite BMC's broad claim of relevance, BMC is able to provide support only with regard to Carey's alleged submission of fraudulent foreign expense reports. BMC explains that when Carey went on business trips BMC gave him a cash advance for his anticipated out-of-pocket expenses. Carey allegedly claimed that he expended cash over and above the amount advanced. These are the allegedly fictitious charges that appear on Carey's foreign expense reports. BMC argues that if Carey had indeed expended cash beyond the amount advanced him, this would be evidenced by withdrawals or travelers check purchases made on his banks. By examining his bank records, BMC seeks to determine whether Carey made such withdrawals. BMC's contention that an absence of withdrawals is relevant because it shows that Carey did not expend his own money on foreign business trips is reasonable. Thus, the discovery request falls within the broad scope of discovery allowed under Rule 26(b)(1).

Weighing against relevance is Carey's claim of undue burden and personal intrusion. The Court finds that BMC's right to obtain relevant discovery is not outweighed by Carey's assertion of undue burden and intrusion into his privacy interests. Accordingly, Carey's motion for a protective order to quash the deposition subpoenas is denied. Fed.R.Civ.P. 26(c).

The Court finds, however, that BMC's discovery request is not limited to relevant evidence and, therefore, will restrict the scope of discovery to the material that bears on the foreign expense reports. First, BMC requests the production of all bank records, including both deposit and withdrawal information. However, only information regarding withdrawals or any other transaction whereby Carey received monies from his banks is relevant. Second, BMC's relevancy claim pertains to cash that Carey allegedly spent while away on business travel. Therefore, the discoverable information is limited to the time period when Carey was away on business travel and one week prior to making the trip. BMC may obtain this information from both Carey's individual and joint bank accounts. Third, the information may be obtained for the years Carey was employed by BMC-1977 through 1988-as the years following his employment at BMC are plainly irrelevant.

*CONCLUSION*

Defendant's motion for leave to file its second amended counterclaim is granted only to the extent that the proposed fraud and RICO counterclaims are based on Carey's foreign expense reports. Fed.R.Civ.P. 13(f), 15(a). Plaintiff's motion to dismiss defendant's first amended counterclaim is denied as moot. Plaintiff's motion for a protective order is denied. Fed.R.Civ.P. 26(c). The scope of defendant's discovery request is limited as provided herein. Fed.R.Civ.P. 26(b)(1).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 8

*\*9* Defendant shall file an answer and second amended counterclaim consistent with this Memorandum and Order within ten (10) days of the filing of this Memorandum and Order. Plaintiff shall file a reply within ten (10) days of the filing of the answer and second amended counterclaim.

> FN1. Carey also argues that BMC's counterclaim is permissive and, consequently, should be asserted in a separate action. This is insufficient to warrant denial of defendant's motion to amend. Indeed, Rule 13(b) "encourages the parties to assert their independent and unrelated counterclaims in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits." 6C C. Wright & A. Miller, *Federal Practice & Procedure* § 1420 (1971).

S.D.N.Y.,1991.  
Carey v. Berisford Metals Corp.  
Not Reported in F.Supp., 1991 WL 44843 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:90cv01045 (Docket) (Feb. 16, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.