**Westlaw.**

Not Reported in F.Supp.2d                                                                                                                Page 1

Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,D. Connecticut.
    SECURITIES AND EXCHANGE COMMISSION,
                      Plaintiff,
                         v.
          Ian L. RENERT, et al., Defendants.
              No. Civ. 3:01CV1027(PCD).

                    June 17, 2002.

Franklin C. Huntington, IV, Juan Marcel Marcelino, LeeAnn G. Gaunt, Boston, MA, John B. Hughes, U.S. Attorney's Office, New Haven, CT, for Plaintiff.
Ian L. Renert, Wellington, Fl, pro se.

   *RULINGS ON PLAINTIFF'S MOTION TO COMPEL AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER.*
DORSEY, J.
***1** Plaintiff moves pursuant to Fed. R. Civ. P. 37(a) for an order compelling defendants to produce documents responsive to its discovery requests. Defendants respond that production of the requested documents would expose defendant Ian Renert to criminal liability under Bahamian law and move for a protective order precluding production. For the reasons set forth herein, plaintiff's motion to compel is granted and defendants' motion for a protective order is denied.

                  I. BACKGROUND

The present action is an enforcement action against defendants pursuant to §§ 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (c), § 7(d) of the Investment Company Act of 1940, 15 U.S.C. § 80a-7(d), § 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), Rule 10b-5, 17 CFR § 240.10b-5, and §§ 206(1) and 206(2) of the Investment Company Act of 1940, 15 U.S.C. §§ 80b-6(1) and 80b-6(2), for the fraudulent offer and sale of unregistered securities known as the Hawthorne Sterling Family of Funds ("Funds."). The Funds are organized as International Business Companies ("IBC") under the laws of the Bahamas. Allegedly defendants sold interests to the public through seminars, two websites, sales agents and private placement memoranda. The campaign allegedly raised in excess of $22 million but involved numerous misrepresentations to the investors about fund performances and investment risks. In June 2000, a Bahamian court appointed BDO Mann Judd, a Bahamian accounting firm, receiver of the Funds, froze the assets of the Funds and enjoined the funds from accepting new investments or conducting business.

On April 11, 2001, the Supreme Court of the Bahamas issued its decision on the status of the receivership. The Court pointed out that the Secretary of the Bahamian Security Commission's contention that it was the "opinion of the Commission ... [that] defendant[s] were carrying on mutual fund business illegally as none of them had been licensed ... under the Mutual Funds Act...." The Court further indicated that the Funds were placed in receivership to "enable the Commission to determine the correct state of affairs of the mutual funds and determine whether the best interest of creditors would be served by granting mutual fund licenses or by winding up the companies." The receiver "was not to be a 'Manager' of the alleged mutual fund business in that the defendant-companies were not licensed to carry on such business" and was appointed only to " safeguard and preserve the assets of the defendant-companies for the benefit of those who may be entitled to them pending the decision of the Commission as to whether to grant them operating licenses or take steps in accordance with the law." The Court held that the funds were not regulated

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

mutual funds pursuant to Bahamian law and thus the court was without authority to issue an order as prayed by the Bahamian Securities Commission. Litigation as to custody of funds' assets and financial records is ongoing in Bahama.

*2 In support of their argument that Renert would be liable for disclosure of the requested information, defendants provide the opinion of R. Rawle Maynard, an attorney and former magistrate in the Bahamas, who states that disclosure of the requested information would violate the Bahamian Constitution and would subject defendant Renert to criminal prosecution.

## II. MOTION TO COMPEL

Plaintiff moves to compel responses to certain requests for production involving bank and brokerage statements, internal records identifying assets held in the name of the various funds, internal records identifying individual investors in the various funds and the amount of their investments, communications between defendant Renert and various accountants providing services to the Funds and communications between those acting on behalf of the Funds and the investors. Defendant responds that Bahamian bank secrecy laws, specifically the Mutual Funds Act of 1995 ("MFA"), the Banks and Trust Companies Act ("BTCA") and the Bahamian constitution, impose penalties for disclosure of the confidential information and thus preclude disclosure.

### A. Standard

The scope of permissible discovery is broad. " Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992). The burden is on the party opposing discovery to establish that compliance with the request would violate the laws of a foreign sovereign. *See First Nat'l City Bank of N.Y. v. IRS,* 271 F.2d 616, 620 (2d Cir.1959).

### B. Analysis

Defendant Renert argues that his interaction with the receiver in providing information and documents pursuant to a Bahamian court order renders him "staff" under § 36 of the MFA and thus subjects him to criminal liability for producing the requested documents. Plaintiff responds that the MFA does not apply and thus is not a basis on which to refuse production of the requested documents.

It is apparent that one who violates the provisions of the MFA may be subject to criminal penalties. Section 36 prohibits certain disclosures while § 39 imposes criminal penalties for violation of § 36.[FN1] However, the MFA, by its express terms, applies only to "the Commission, the Executive Director, a licensed mutual fund administrator and their staff." *See* MFA § 36(1). Defendants argue that Renert's activities in conformance with the Bahamian Court order made him staff.

FN1. Article 36 is entitled "secrecy" and provides as follows:
(1) Subject to subsections (2) and (3), the Commission, the Executive Director, a licensed mutual fund administrator and their staff shall not disclose any information relating to-
(a) any application made for a licence under this Act;
(b) the affairs of a mutual fund;
(c) the affairs of a mutual fund administrator; or
(d) the affairs of an investor in a mutual fund, which they have acquired in the course of their duties or the exercise of their functions under this Act and shall not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

use any such information for their own benefit.
Criminal penalties attach via Article 39(1)(a), which provides that "[a]ny person who wilfully contravenes ... section ... 36 is guilty of an offence and shall be liable on conviction on information to a fine of $40,000 or to imprisonment for three years or to both such fine and imprisonment...."

In support of their argument, defendants provide only the opinion of Attorney Maynard, who states that "Mr. Renert's relationship to Mr. Scott, Attorney, and the Receiver placed him in the position of staff so that during the receivership, he could not have released information without being rendered liable to prosecution." Although Attorney Maynard provides citation to Bahamian law for other legal propositions, he does not do so in support of his opinion that defendant Renert is staff. [FN2] Other than the unsubstantiated opinion of Attorney Maynard, defendants provide no basis in Bahamian law that would equate actions in compliance with a court order to a status as a staff member.

FN2. Defendants also refer to correspondence from Attorney Michael Scott, counsel for the receiver, who wrote: "Finally, I would remind you that no information regarding the affairs these companies, which operated as a mutual fund under the auspices of the Tenesheles Trust, should be disclosed to any third party, including the Security and Exchange Commission of the United States of America without the consent in writing of [the receiver and partner at BDO Mann Judd]." As with Attorney Maynard's opinion, no basis in law is provided in which to accept this unsupported opinion as Bahamian law on defendant Renert's potential criminal liability.

*3 Defendants also have not established that the Funds were "licensed" as required by § 36(1). Again defendants provide only the opinion of Attorney Maynard in support of their argument that the Funds were licensed, who states that
[t]hroughout the receivership, the Funds were clothed with legitimacy and an application had been made impliedly or expressly for a license. The Funds must be deemed to have been licensed and the State assumed an interest in protecting the confidentiality of information relating to items mentioned in Section 36.

The proposition is again made without an identified basis in Bahamian law. [FN3] This argument also directly contradicts the April 11, 2001 opinion of the Supreme Court of the Bahamas which declined to permit the Bahamian Security Commission to wind-up the IBC because it was not licensed and indicating that the objective of the receivership was to determine whether the funds should be licensed. [FN4]

FN3. Article 2 defines "licensed mutual fund" as "a regulated mutual fund that is the holder of a Mutual Fund Licence," " licensed mutual fund administrator" as " the holder of a Mutual Fund Administrator's Licence but does not include a person exempted from obtaining a Mutual Fund Administrator's Licence in accordance with subsection (2) of section 9," and "Licensor" as "the Commission or a licensed mutual fund administrator with an unrestricted mutual fund licence in its capacity as the grantor of a mutual fund licence."

FN4. The Court stated that "[s]ince it is alleged by the Securities Commission that the defendant companies have been carrying on mutual fund business without a license issued under the Mutual Funds Act and therefore are in breach of section 3 of that Act, it follows that the defendant companies cannot be classified or regard[ed] as regulated mutual funds under the act."

Defendants also argue potential liability for disclosure pursuant to § 15 of the BTCA. Plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 4
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

again responds that defendant Renert is not a director, officer, employee or agent of a licensee, thus the BTCA does not apply to him.

Defendants again cite the opinion of Attorney Maynard in support of their position. He States that
I have contended that the receivership sanctioned by the Securities Commission and the Court conferred legitimacy upon the funds operated by the Companies in receivership. If the Trust Companies were operating legitimately as contended then they must be deemed to have been licensed under Section 4 [FN5] during the receivership in which case Mr. Renert in his relationship with a former licensee would violate Section 15 [FN6] of The Bank and Trust Companies Regulation Act.

> FN5. Section 4, entitled "applications shall be made to the Governor," provides that " [a]ny person desirous of carrying on banking business and any company desirous of carrying on trust business from within The Bahamas shall make application to the Governor for the grant of a licence." 4(1).
>
> FN6. Section 15, entitled preservation of confidentiality, provides in relevant part:
> (1) No person who has acquired information in his capacity as-
> (a) director, officer, employee or agent of any licensee or former licensee;
> shall, without the express or implied consent of the customer concerned, disclose to any person any such information relating to the identity, assets, liabilities, transactions or accounts of a customer of a licensee or relating to any application by any person under the provisions of this Act, as the case may be, except-
> (I) for the purpose of the performance of his duties or the exercise of his functions under this Act, if any;
> (ii) for the purpose of the performance of his duties within the scope of his employment;
> (iii) when a licensee is lawfully required to make disclosure by any court of competent jurisdiction within The Bahamas, or under the provisions of any law of The Bahamas;
> (iv) for the purpose of enabling or assisting the Governor to exercise any functions conferred upon him by any written law;
> (v) to a person with a view to the institution of, or for the purpose of-
> (a) criminal proceedings,
> (b) disciplinary proceedings, whether within or outside The Bahamas, relating to the exercise by a counsel and attorney, auditor, accountant, valuer or actuary of his professional duties; or
> (c) disciplinary proceedings relating to the discharge by a public officer or a member or employee of the Central Bank of his duties.
> (8) Every person who contravenes the provisions of subsection (1) shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding twenty-five thousand dollars or to a term of imprisonment not exceeding two years or to both such fine and imprisonment.

As with the claims of "legitimacy" under the MFA, defendants provide no authority on which to support the proposition that defendant Renert became a licensee under the BTCA. Section 2 of the BTCA defines "licensee" as "any person holding a licence under the provisions of this Act." The BTCA does not expressly provide for licensing of a mutual fund when placed in receivership, and defendants provide no authority on which to conclude otherwise.[FN7]

> FN7. Plaintiff states without objection that "the Funds are Bahamian IBCs owned by Tenesheles Trust, which is a Bahamian grantor trust whose beneficiary is Equivest Premier Holdings, Inc. ("EPH"). EPH, which is also the manager of the Funds, is a Bahamian IBC owned by the Goose Trust, which is Bahamian non-grantor trust whose beneficiary is Renert's estate and in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

which Renert's 'life partner' has a life estate."

Defendants arguments as to the applicability of the MFA and BTCA further cannot be reconciled with the April 11, 2001 opinion. The Bahamian litigation involves allegations of an unlicenced mutual fund business involving IBC. The Bahamian court stripped Renert's control over the funds and transferred control to a receiver, whose function it was to protect the assets involved therein. The Funds were not to be managed by the receiver. The arrangement was to remain in effect until the Bahamian Security Commission determined whether to license IBC. It would be antithetical to the underlying orders to interpret this status quo arrangement as an implicit license and defendant Renert as staff of the receivership. Defendants have provided no basis in Bahamian law for such a conclusion and thus cannot establish the applicability of the MFA or BTCA as it is their burden to do. See *First Nat'l City Bank of N.Y.*, 271 F.2d at 620.

*4 Defendants also allude to the right of privacy in papers and correspondence protected by the Article 23 of the Bahamian constitution. [FN8] This argument appears to implicate potential civil liability under Bahamian common law, although no authority is provided for such a civil action. [FN9] Thus defendants have not established a realistic possibility of civil liability as it is their burden to do when refusing to comply with a legitimate discovery request. *See id.*

FN8. Chapter III, Article 23(2) of the constitution of the Bahamas, entitled " protection of freedom of expression," provides that:
Nothing contained in or done under the authority of any law shall be held to be inconsistent with or in contravention of this Article to the extent that the law in question makes provision-
(a) which is reasonably required-
(i) in the interests of defence, public safety, public order, public morality or public health; or

(ii) for the purposes of protecting the rights, reputations and freedoms of other persons, preventing the disclosure of information received in confidence, maintaining the authority and independence of the courts, or regulating telephony, telegraphy, posts, wireless broadcasting, television, public exhibitions or public entertainment....

FN9. The right of privacy discussed in defendants' briefs, which again centers on the opinion of Attorney Maynard, appears to be personal to the investors. If there is a basis for civil liability, the solution is not, as defendants propound, to require plaintiff to seek waivers from all identified investors, but rather to require defendants to produce evidence that they sought waivers from the clients as they, not plaintiff, must endeavor to comply with the legitimate discovery requests. See *Trade Dev. Bank v. Continental Ins. Co.,* 469 F.2d 35, 41 n. 3 (2d Cir.1972); *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 891 (S.D.N.Y.1999).

In conclusion, defendants have not established a realistic possibility of liability to preclude their compliance with requested discovery. See *United States v. Brodie,* 174 F.Supp.2d 294 (E.D.Pa.2001). Having failed to do so, see *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224 (Fed.Cir.1996); *United States v. Davis,* 767 F.2d 1025, 1033-34 (2d Cir.1985), they may not refuse plaintiff's discovery requests.[FN10] The motion to compel production is granted.

FN10. Defendants failure to demonstrate the possibility of criminal liability obviates the need to weigh the interests of the United States, the Bahamas and defendants as directed in *United States v. First Nat. City Bank,* 396 F.2d 897, 902 (2d Cir.1968), as there is no indication that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 6
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

production of the documents would subject defendants to any liability, civil or criminal, thus there is no conflicting law to reconcile. Nor will a request be made to a Bahamian court for permission to order discovery lawful under the laws of this country. See *In re Grand Jury Proceedings,* 691 F.2d 1384, 1391 (11th Cir.1982)

### III. MOTION FOR A PROTECTIVE ORDER

In light of the above ruling granting the motion to compel, defendants' motion for a protective order precluding production of the same is denied.

### IV. CONCLUSION

Plaintiff's motion to compel production (Doc. 33) is granted and defendants' motion for a protective order (Doc. 36) is denied.

SO ORDERED.

D.Conn.,2002.
S.E.C. v. Renert
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34129559 (Trial Pleading) Complaint for Injunctive and Other Relief (Jun. 06, 2001)
• 3:01CV01027 (Docket) (Jun. 06, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.