UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION : : : : | |
| _____ : | MASTER FILE NO. |
| : | 3:00CV01884(AVC) |
| This document relates to: : | |
| : | August 21, 2006 |
| ALL ACTIONS : | |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
THE PRICELINE DEFENDANTS TO PRODUCE EMAILS AND
ELECTRONIC DOCUMENTS CONTAINED ON THE "SNAPSHOT" AND
"TERMINATED EMPLOYEE TAPES"**

**SCOTT + SCOTT, LLC**
David R. Scott
Mark V. Jackowski
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**Co-Lead Counsel**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................6

    A.    The Priceline Defendants' Complete Disregard For The
            December 2005 Order..............................................................................................6

            1.    The Priceline Defendants Have Never Described The Actual
                  Methodology They Used To Conduct The Email And
                  Electronic Document Search..............................................................7

            2.    Missing Third-Party Emails And Gaps In The Email
                  Production: Defendants Have *Not* Performed An
                  Email-By-Email Search .....................................................................8

    B.    The Priceline Defendants Have Failed To Act In Good Faith
            When Using "Search Terms." .................................................................................10

            1.    The Priceline Defendants Have Unilaterally Chosen To
                  Exclude Emails From Their "Search Term" Review.......................11

            2.    The Priceline Defendants Have Improperly Excluded
                  Financial Documents From Their Search ......................................13

            3.    The Priceline Defendants' "Search Term" Approach Is Not
                  Capturing Responsive Documents, And Has Led To A Massive
                  Document Dump Designed to Impede, Not Facilitate,
                  Discovery ........................................................................................14

CONCLUSION..................................................................................................................16

# INTRODUCTION

The Priceline Defendants have filed an Opposition Brief in which they continue to press forward with their aggressive and improper litigation strategy in this case – a litigation strategy in which they have engaged in hide-the-ball tactics, have routinely violated the Court's Orders, have refused to keep Plaintiffs apprised of what they are doing with the document review, and have improperly withheld responsive documents at their own capricious discretion. The latest example of the Priceline Defendants' shell game tactics and non-compliance with Court Orders is their failure to "***record and produce a summary of their methodology*** [they used to review and produce electronic documents] so that plaintiffs can argue for the inclusion of more data if appropriate." Exhibit D to Johnson Decl.[1] (Dec. 8, 2005 Order, at 8) (emphasis added). Defendants' failure to comply with the Court's December 2005 Order and provide this recorded summary has put Plaintiffs in a box: without the recorded summary, Plaintiffs do not know what the Priceline Defendants have done to review the electronic documents, and therefore have no way to argue for more data or challenge what Defendants have done. This is clearly what Defendants had in mind all along and is directly contrary to the prior Orders of the Court.

No question exists that the Court's entire December 2005 Order on electronic discovery is predicated on the Defendants producing this recorded summary. The recorded summary was specifically prescribed to add needed transparency to the process, enabling Plaintiffs and the Court to keep tabs on what Defendants were doing in light of the difficulty experienced in attempting to extract discovery from Defendants. The Court also made it clear that it was

---

[1] Unless otherwise noted, all citations to the Johnson Declaration in this Reply are to the Declaration of Geoffrey M. Johnson ("Johnson Decl.") submitted with Plaintiffs' Opening Brief. Docket No. 329-3.

1

ordering Defendants to produce this recorded summary so that Plaintiffs could argue for a more inclusive electronic document review, if appropriate.  The recorded summary of the Defendants' methodology was the central tenet of the Court's effort to move discovery in this case and it is what gives the Order its teeth.  Nevertheless, Defendants have taken it upon themselves to wholly disregard the Court's Order, forcing Plaintiffs to guess about:

1. **The methodology Defendants used to search the 80 "high priority" individual email accounts;**

2. **Whether Defendants actually conducted an email-by-email review of all the emails contained in the 80 "high priority" individual email accounts;**

3. **The methodology Defendants used to produce responsive documents on the remainder of the "snapshot" and "terminated employee tapes;" and**

4. **Whether Defendants actually reviewed any of the documents they have produced from the remainder of the "snapshot" and "terminated employee tapes" for responsiveness.**

The Priceline Defendants have refused to address any of these issues with Plaintiffs in Defendants' letters; they have refused to address these issues in their monthly electronic document status reports; and they have refused to address these issues during the parties' many meet and confers where Plaintiffs have continually pressed them for explanations of their methodology.  Tellingly, the Priceline Defendants have also refused to address any of these issues in their Opposition – even though this was a golden opportunity for them to come clean and tell Plaintiffs and the Court what they have actually done.  As a result, they have succeeded in keeping Plaintiffs and the Court completely in the dark as to the actual methodology that they used to search the electronic documents.  By doing so, they have been able to stonewall the production of responsive electronic documents and abuse the discovery process, all without the checks and balances the Court envisioned in its December 2005 Order.

2

Moreover, Plaintiffs' review of the emails and electronic documents that have been produced reveals that the Priceline Defendants have disregarded the Court's Order because they are attempting to hide relevant, probative evidence which is detrimental to their defense. For example, Plaintiffs have obtained several emails that third parties sent to and received from the Priceline Defendants. These emails were not part of the Priceline Defendants' own email production. Even more disturbing, one of these missing emails belonged to Priceline's CEO, Richard Braddock. This email shows that CEO Braddock was feeding information about Priceline to a third-party stock analyst at Goldman Sachs. That Goldman Sachs analyst, Anthony Noto, then put the information that Mr. Braddock was supplying him directly into his analyst report, which became part of the general mix of information available to class members. This email was never produced by the Priceline Defendants. Plaintiffs would never have known of its existence but for issuing a subpoena to Goldman Sachs.[2]

Not only are there missing third-party emails, but the vast majority of the emails that the Priceline Defendants have produced are either blank or wholly irrelevant, and there are significant and unexplained gaps in those few responsive emails that the Priceline Defendants actually produced. All of this begs the question: Why have the Priceline Defendants refused to "record and produce a summary of their methodology" they used to perform the email and electronic document review, in clear violation of the Court's December 8, 2005 Order? The answer is clear: it is part of their hide-the-ball litigation strategy – a strategy in which they are willing to disregard Court orders to prevent Plaintiffs from challenging what they have done.

---

[2] In their Opposition, the Priceline Defendants take issue with the fact that Plaintiffs specifically cite only one of the many examples of the missing third-party emails in their Opening Brief. Accordingly, Plaintiffs have attached *several additional examples* of missing third-party emails as Exhibit A to the Declaration of Geoffrey M. Johnson In Support Of Plaintiffs' Reply ("Johnson Reply Decl.").

The Priceline Defendants have also engaged in hide-the-ball tactics when it comes to their search of the remainder of the "snapshot" and "terminated employee tapes." Indeed, at this point, Plaintiffs have been told little about how Defendants are searching the remainder of the "snapshot" and "terminated employee tapes." However, Plaintiffs' review of the documents shows that, whatever the Priceline Defendants are doing, it is not working. It would be one thing if the Priceline Defendants' were capturing and then producing responsive documents. They are not. What the Priceline Defendants are doing is capturing massive amounts of totally non-responsive documents. They then have proceeded to dump these documents on the Plaintiffs to obscure the fact that responsive documents are *not* being produced. Because the Priceline Defendants have refused to share their methodology, Plaintiffs are left in the dark as to why Defendants are dumping hundreds of thousands of irrelevant documents.

The Priceline Defendants have also taken absurd positions to further prevent the production of responsive documents. In particular, they have recently refused to search and produce the remaining emails on the "snapshot" and "terminated employee tapes" – *i.e.,* those responsive emails that are not contained in the "key" individual email accounts. The Priceline Defendants claim that *Plaintiffs* agreed to exclude these additional emails from the electronic search. Defendants know this is simply not true. Plaintiffs have always made it clear in their letters and in filings with the Court that Plaintiffs wanted Defendants to search these additional emails. *See, e.g.,* Docket No. 233 (Plfs' Oct. 21, 2005 Reply, at 4) (explaining that, in addition to the email-by-email review of the key individual email accounts, Defendants needed to "***use search terms to search for <u>other</u> <u>relevant</u> <u>emails</u> and for relevant non-email data on the snapshot and ex-employee tapes***."). While the Priceline Defendants may have inserted vague

4

language carving out the emails into the *headings* of their *own* letters, their representation that Plaintiffs agreed to exclude the remaining emails from the search is absolutely false.

Finally, the Priceline Defendants try to further prevent Plaintiffs from obtaining relevant documents by asking the Court to order Plaintiffs' counsel to pay Defendants' costs and attorneys' fees for having to respond to this Motion, claiming that Plaintiffs "have sought to obstruct the discovery process at every chance" and "have forced Defendants to waste time and misdirect resources in response to their unnecessary motion practice." Docket No. 337 (Opp., at 2). Defendants' tactic is transparent, particularly since the Priceline Defendants fail to mention *any* of the Court's prior rulings on Plaintiffs' Motions to Compel. A review of the Court's orders shows that *Plaintiffs have prevailed on virtually every issue in every Motion to Compel that they have filed against the Priceline Defendants in this case*.[3] More recent events also prove that it is only through motion practice that Plaintiffs get Defendants to comply with their discovery obligations. These events include:

- **The Priceline Defendants' decision to remove 277 "privileged" documents they improperly placed on the privilege log on the eve of the *in camera* review;**

- **The Priceline Defendants' filing of a Cross-Motion seeking a Protective Order barring harassing discovery Motions at a time when 277 non-privileged documents were sitting on their privilege log;**

- **Defendant Walker's eleventh-hour disclosure in his Opposition that he never restored 9 of the 17 tapes he previously agreed to restore;**

- **Defendant Walker's failure to produce any emails or electronic documents located on the WebHouse tapes;**

- **Defendant Walker's refusal to explain how accessible and searchable information ended up on the "inaccessible" WebHouse backup tapes; and**

---

[3] Plaintiffs described the case history on the prior Motions to Compel in detail in their Surreply in Opposition to the Priceline Defendants' Cross-Motion for a Protective Order. *See* Docket No. 346 (Surreply, at 7-10). Because Plaintiffs have already described the case history on their prior Motions in detail, they will not belabor the point by repeating that history here.

5

- **The Priceline Defendants' refusal to record and produce a summary of the methodology that they used to search emails and electronic documents.**

Plaintiffs submit that – given all that has transpired in connection with the documents in this case – the Priceline Defendants' request for sanctions is absurd. At the end of the day, Plaintiffs are simply seeking responsive documents that they are entitled to discover under the Federal Rules. It is Defendants' hide-the-ball litigation strategy, their unilateral disregard of the Court's Orders, the absurd positions they have taken on document discovery, and their refusal to produce documents that has forced Plaintiffs to come before the Court on this and every other occasion.

## ARGUMENT

A. **The Priceline Defendants' Complete Disregard For The December 2005 Order.**

In its December 8, 2005 Order, the Court held:

> [D]efendants, as custodians of the computer files, shall be responsible for excising duplicate files, sifting through the data for responsive information and reviewing responsive documents for privilege in the most efficient manner possible. ***Defendants shall record and produce a summary of their methodology so that plaintiffs can argue for the inclusion of more data if appropriate***. Defendants shall also seek input from plaintiffs regarding proposed search terms. ***Plaintiffs may seek a court order directing a more inclusive search.***

Exhibit D to Johnson Decl. (Dec. 8, 2005 Order, at 8) (emphasis added).

The purpose of the Court's Order is obvious: to create transparency in the electronic document review process by ensuring that Plaintiffs and the Court would be aware of exactly what Defendants were doing to review the electronic documents. Importantly, this Order was entered against the backdrop of over a year and a half of Defendants' prior stonewalling tactics and was designed to ensure that Plaintiffs had recourse if Defendants failed to act in good faith. Nevertheless, the Priceline Defendants have now taken it upon themselves to disregard this part

6

of the Court's December 2005 Order, choosing instead to keep Plaintiffs and the Court completely in the dark in direct contravention of the letter and spirit of the Court's Order.

### 1. The Priceline Defendants Have Never Described The Actual Methodology They Used To Conduct The Email And Electronic Document Search.

In their Opposition, the Priceline Defendants argue that:

Although it may be true that Defendants have not given plaintiffs a discrete piece of paper that it titled, at the top of the page, "Methodology", Defendants have every step of the way, (i) consulted and agreed with plaintiffs on our methods and protocol for collecting, reviewing and producing electronic material and (ii) memorialized those agreements in correspondence and filings.

Docket 337 (Opp. at 12). This argument warrants close scrutiny because – as with many of their arguments – the Priceline Defendants appear to say one thing, but, upon closer examination, really are saying something quite different. Indeed, what the Priceline Defendants are referring to when they speak of "consulting," "agreeing" and "memorializing" are the meet and confers held one year ago and the letters the parties exchanged following those meet and confers (which predate the December 2005 Order) in which the Priceline Defendants set forth their *proposed* two-pronged approach for searching the electronic data.[4] The Priceline Defendants know that this is not the information that the Court has ordered them to produce in the recorded summary. Rather, the Court ordered the Defendants to produce a recorded summary to Plaintiffs ***summarizing what they have actually done, not what they proposed to do a year ago***. The recorded summary is an important check on Defendants' own conduct, and it is information

---

[4] In these letters, the Priceline Defendants explained that they were willing to: (1) review the 113 individual email accounts on an email-by-email basis and produce responsive, non-privileged documents; and (2) use "search terms" to capture responsive documents on the remainder of the "snapshot" and "terminated employee tapes." Exhibit E to Kelleher Decl. (Defs' Aug. 11, 2005 Ltr.). This is the same approach that the Priceline Defendants advocated when they opposed Plaintiffs' Second Motion to Compel on the Electronic Documents.

Plaintiffs obviously need to know before exercising their right under the December 8, 2005 Order to "argue for the inclusion of more data . . ." *Id.* It is the actual methodology that Plaintiffs are after, and this is the information Defendants have refused to provide.[5]

The Priceline Defendants' Opposition is also highly instructive on this point. Here, the Priceline Defendants actually had one final opportunity to come clean and tell Plaintiffs how they reviewed and searched the electronic documents on the "snapshot" and "terminated employee tapes." They chose not to do so. Instead, the Priceline Defendants loaded up their brief with vague and conclusory statements that tell Plaintiffs and the Court nothing about the actual methodology they used to perform the review. *See, e.g.,* Docket No. 337 (Opp., at 1) ("Defendants' efforts to review and produce emails and electronic documents have been diligent and exhaustive."); *id.* at 7 ("There can be no debate: all reasonable steps were taken by Defendants to collect, review and produce available responsive, non-privileged email."). The Priceline Defendants' vague and conclusory statements about taking "all reasonable steps" are a far cry from the recorded summary of their methodology that the Court ordered them to produce. It also makes it virtually impossible for Plaintiffs to "argue for the inclusion of more data . . ." Exhibit D to Johnson Decl (Dec. 8, 2005 Order, at 8). This is, however, completely consistent with the sorry tactics Defendants have used throughout the discovery process in this case.

**2. Missing Third-Party Emails And Gaps In The Email Production: Defendants Have *Not* Performed An Email-By-Email Search.**

The Priceline Defendants' consistent refusal to produce a recorded summary of the methodology they used to search the key individual email accounts on the "snapshot" and

---

[5] The Priceline Defendants also refer in their Opposition to letters dated January 13, 2006 and February 24, 2006. Docket No. 337 (Opp., at 13). However, these letters do not set forth the recorded summary of the methodology that the Priceline Defendants used to review the electronic documents. Instead, in these letters, Defendants simply respond to two discrete questions about the electronic search that Plaintiffs asked about during the meet and confers.

8

"terminated employee tapes" is all the more troubling because – as Plaintiffs showed in their Opening Brief – a review of the emails that the Priceline Defendants have produced shows that they have *not* produced all responsive documents. Indeed, Plaintiffs have identified at least three problems with the Priceline Defendants' email production:

1. The Priceline Defendants have ***failed to produce several emails that Plaintiffs later obtained from third parties*** – which begs the obvious question: Are there other third-party emails that Plaintiffs do not know about that were never produced? *See* Exhibit A to Johnson Reply Decl. (sample third-party emails);

2. The Priceline Defendants have ***produced very few emails from the email accounts belonging to Defendants Walker, Schulman and Braddock***, and those few emails that were produced are either blank or non-responsive;[6] and

3. The Priceline Defendants have ***produced very few emails from the email accounts belonging to the other top executives at Priceline*** (*i.e.,* those email accounts listed on Plaintiffs' list of key individual email accounts), and those few emails that were produced are either blank or non-responsive.

The Priceline Defendants respond in their Opposition that Plaintiffs' claims are "pure speculation," "guesswork" and "supposition." Docket No. 337 (Opp., at 5, 12). Defendants' argument, of course, only further highlights the critical importance of the Court-ordered recorded summary, which Defendants have refused to provide. Simply stated, if the Priceline Defendants had actually bothered to comply with the December 8, 2005 Order and "record and produce a summary of their methodology" (instead of keeping Plaintiffs and the Court completely in the dark), Plaintiffs would not be forced to "speculate" as to how the Priceline Defendants carried out their review of the key individual email accounts. Instead, Plaintiffs would already know and would now be in a position to exercise their right under the Order to "argue for the inclusion of more data if appropriate." Exhibit D to Johnson Decl. (Dec. 8, 2005 Order, at 8).

---

[6] Plaintiffs provided the Court a sample of the documents produced from the Walker, Schulman and Braddock individual email accounts. *See, e.g.,* Exhibit J (Walker), Exhibit I (Schulman) and Exhibit H (Braddock) to Johnson Decl. Plaintiffs submit that when the Court reviews these emails, it will be obvious that responsive emails are not being produced.

Moreover, the fact that Plaintiffs have obtained several Priceline emails from third parties (which were not part of the Priceline Defendants' own email production), is not "speculation," "guesswork" or "supposition." It is definitive proof that Priceline emails and email accounts exist that have either been improperly withheld, illegally destroyed or simply not searched, and it is exactly the type of evidence that courts look to when deciding whether a party has fulfilled its discovery obligations under the Federal Rules. *See, e.g., Ultratech, Inc. v. Tamarack Scientific Co.,* No. 03-3235, 2005 WL 25652623, at *5 (N.D. Cal. Oct. 12, 2005) (sanctioning party for failing to produce documents that opponent had obtained from third party, holding that the "failure to produce the critical documents [that were obtained from a third party] is consistent with an intent to deceive").

> B.  **The Priceline Defendants Have Failed To Act In Good Faith When Using "Search Terms."**

As bad as the Priceline Defendants' email production has been, the "search term" approach that they have purported to use to search the remaining documents on the "snapshot" and "terminated employee tapes" has been even more problematic. Once again, Plaintiffs do not know exactly what the Priceline Defendants have done because Defendants refuse to record and produce a summary of the methodology they used to conduct this part of the search. Defendants have chosen once again to use slight of hand so that Plaintiffs cannot challenge what Defendants have done. However, based on what Plaintiffs have been told, they believe there are at least three problems with the Priceline Defendants' "search term" approach:

- *First*, the Priceline Defendants have unilaterally taken it upon themselves ***to exclude the remaining emails*** (*i.e.,* those that were not part of the email-by-email review of the key individual email accounts) from the entire "search term" search;

- *Second*, the Priceline Defendants plan ***to exclude from their search the highly relevant financial documents***, including spreadsheets, printouts and reports that are

contained in electronic form on the "snapshot" – documents that are among the most relevant in this case; and

- ***Third***, the Priceline Defendants are ***using the "search terms" approach strategically*** to exclude as many of the responsive documents as possible.

### 1. The Priceline Defendants Have Unilaterally Chosen To Exclude Emails From Their "Search Term" Review.

The first problem with the Priceline Defendants' "search term" approach is that they have unilaterally decided that they are not going to use search terms to search those remaining emails on the "snapshot" and "terminated employee tapes" that were not part of the individual email account search – despite the Court's Order to the contrary. Defendants' reason for violating the Court Order is absurd. They claim that ***Plaintiffs*** agreed to exclude these remaining emails from the "search term" search – a claim they know is absolutely false. Plaintiffs did not agree to exclude the remaining emails from the "search term" search during any of the parties' meet and confers, in any letters, or in any filings with the Court. Instead, Plaintiffs told Defendants that they expected Defendants to "[s]earch the ***complete snapshot using the search terms***." Johnson Decl., Exhibit AA (Plfs' Aug. 15, 2005 Ltr.).[7]

In their Opposition, the Priceline Defendants take the absurd position that the ***headings (not the text)*** in Plaintiffs' August 8, 2005 letter show that they have agreed to exclude the

---

[7] Plaintiffs made this point absolutely clear in their Reply in Further Support of their Second Motion to Compel on the Electronic Documents, which they filed on October 24, 2005:

In Plaintiffs' August 15, 2005 letter, Plaintiffs agreed to a proposed approach whereby the Priceline Defendants would initially limit their search to email accounts of 113 individuals and ***would use search terms to search for <u>other</u> <u>relevant</u> <u>emails</u> and for relevant non-email data on the snapshot and ex-employee tapes***. This entire approach, however, was predicated on the Priceline Defendants getting Plaintiffs electronic documents on the snapshot and ex-employee tapes by September 16, 2005. Plaintiffs recognized that, if the Priceline Defendants forced Plaintiffs to file a motion to compel, they would not receive any of the electronic materials for several months.
Docket No. 233 (Reply, at 4) (emphasis added).

remaining emails from the "search term" search.  Docket No. 337 (Opp., at 22).  This type of straw-grasping is a complete waste of the Court's time.  In their August 8, 2005 letter, Plaintiffs say nothing about carving out the emails from the "search term" search.  In fact, Plaintiffs' counsel made it clear that: "we do *not* agree to [Defendants' proposed] approach because we have little understanding of the parameters of the snapshot and believe Defendants bear the burden of searching for information on the snapshot that is responsive to our discovery requests."  Exhibit S to Kelleher Decl. (Plfs' Aug. 8, 2005 Ltr.).  In fact, Plaintiffs did not agree to anything in this letter, but *simply set forth their understanding of the Defendants' proposed approach*.  The Priceline Defendants clearly take Plaintiffs' letter completely out of context to support their absurd position that Plaintiffs agreed to exclude the remaining emails from the "search term" search.  Defendants' argument is pure foolishness and should be rejected out of hand.

Importantly, the Priceline Defendants themselves cannot cite to any text in their own letters that support this alleged agreement – further proof that their purported "agreement" is a complete and total fabrication.  Finally, and most importantly, the Priceline Defendants ignore the fact that the Court has already held in its December 2005 Order that: *"Defendants shall begin to produce responsive information from the e-mail files of the 113 individuals and the remainder of the snapshot."*  Exhibit D to Johnson Decl. (Dec. 8, 2005 Order) (emphasis added).  This issue has been resolved by the Court.  Nevertheless, the Priceline Defendants, as they have done time and time again, disregard Judge Squatrito's Order on this precise point and take it upon themselves to carve out the email accounts on the remainder of the "snapshot" and "terminated employee tapes," claiming they are free to do so because of a purported "agreement" that simply does not exist and would be superseded by the Court's Order even if it did.  Contrary to their own belief, Defendants are bound by the Orders of this Court.

### 2. The Priceline Defendants Have Improperly Excluded Financial Documents From Their Search.

The second problem with the Priceline Defendants' "search term" approach is that it is deliberately designed to exclude the highly relevant financial documents contained on the "snapshot" and "terminated employee tapes." As Plaintiffs noted in their Opening Brief, these are among the most important documents in this entire case – because they show that Defendants had internal financial information in their possession that directly contradicted the statements Defendants were making publicly about Priceline and WebHouse. In their Opposition, the Priceline Defendants claim that this is nothing to worry about because financial documents were produced as part of the paper and email productions. This argument misses Plaintiffs' point.

As Plaintiffs noted in their Opening Brief, they have received some of the financial documents from the paper production, but *they have yet to receive a complete set of these documents*. Defendants kept highly detailed *electronic* financial reports tracking the financial results at Priceline and WebHouse on a daily, weekly, monthly and quarterly basis. Plaintiffs know that these financial reports exist (because they received some of them in the paper production), but several of the daily and monthly Priceline and WebHouse reports have never been produced – particularly those from the heart of the Class Period in this case. These are highly relevant documents that Plaintiffs need to prosecute the securities fraud claims in this case, and they are documents the Priceline Defendants should have already obtained and produced. Apparently, this is something Defendants are not willing to do and requires the Court's intervention.

  **3.  The Priceline Defendants' "Search Term" Approach Is Not Capturing Responsive Documents, And Has Led To A Massive Document Dump Designed to Impede, Not Facilitate, Discovery.**

  The third – and most disturbing – problem with the Priceline Defendants' "search term" approach is that the Priceline Defendants are using it strategically to exclude as many of the responsive documents as possible. Plaintiffs originally anticipated that this would be Defendants' *modus operandi* when Plaintiffs moved to compel the production of these documents back in September 2005, which is why Plaintiffs asked the Court to order Defendants to turn the entire "snapshot" and all "terminated employee tapes" over to Plaintiffs to review. Judge Squatrito denied Plaintiffs' request, giving Defendants the opportunity to review the documents in the first instance. This was done with the understanding that the Priceline Defendants would perform a good faith review of the electronic documents and would include Plaintiffs in the process, which is precisely why the Court ordered the Priceline Defendants to produce a recorded summary of their methodology and file monthly status reports.

  The Priceline Defendants now have had nine months to comply with the Court's December 2005 Order, which the Court entered after the Priceline Defendants had already delayed the electronic production for well over a year and a half. Throughout this entire time, Defendants have failed miserably to comply with the Court's Order, and have clearly taken advantage of what the Court noted was their "responsibility" – not their self-proclaimed "right" – to serve as the gatekeeper of the electronic documents. The best evidence of this is:

- The Priceline Defendants' refusal to record and produce a summary that sets forth the actual methodology used to perform the electronic search;

- The Priceline Defendants' attempt to limit the search to only three search terms – "Webhouse," "Web House" and "WHC";

14

- The Priceline Defendants' response to Plaintiffs' attempts to propose additional search terms, which they dismissed as "simply absurd" and stating that: "Quite frankly, we believe that the list of search terms was not sent to us in good faith." Exhibit N to Kelleher Decl. (Defs' March 1, 2006 Ltr.); [8]

- The Priceline Defendants' decision to dump thousands of blank and wholly irrelevant documents on the Plaintiffs using the "search terms," instead of reviewing the documents for responsiveness before sending them to Plaintiffs for their review; and

- The Priceline Defendants' decision to delay the entire "search term" process an additional nine months (when it had already been delayed well over a year and a half), by refusing to negotiate with Plaintiffs in good faith and refusing to produce a majority of the responsive documents on the "snapshot" and "terminated employee tapes."

This clearly is not what the Court had in mind when it held in December 2005 that "Defendants shall begin to produce responsive information from the e-mail files of the 113 individuals and the remainder of the snapshot," making it clear that "the court is placing primary *responsibility* upon the defendants to properly sort through the data." Exhibit D to Johnson Decl. (Dec. 8, 2005 Order, at 8) (emphasis added). The Priceline Defendants have confused their responsibility to search and produce documents on the "snapshot" and "terminated employee tapes" with a right to obstruct the discovery process and improperly withhold relevant documents that Plaintiffs need to prosecute the securities fraud claim in this case.

The Priceline Defendants' proposed "search term" approach clearly is not working, and, unfortunately, the involvement of the Court is once again needed to ensure that responsive documents on the "snapshot" and "terminated employee tapes" are produced – documents that this Court has already ordered them to produce. At the end of the day, Plaintiffs simply need the responsive documents on the "snapshot" and "terminated employee tapes" so they can move

---

[8] The Priceline Defendants have recently reversed their position with respect to several of the search terms that Plaintiffs previously identified in their prior letters to the Defendants. For many of these terms, the Priceline Defendnats only agreed to do this *after* Plaintiffs had filed their present Motion to Compel – which is consistent with their conduct throughout the entire course of this case. *See* Exhibit B to Johnson Reply Decl. (Defs' Aug. 8, 2006 Ltr.).

forward with the fact depositions and other necessary discovery in this case. Given what has occurred throughout the document discovery phase of this case – from the discovery requests, to the interrogatories, to the paper production, to the privilege log, to the WebHouse backup tapes, to the "snapshot" and "terminated employee tapes" – Defendants should not be allowed to serve as the gatekeepers to the electronic documents. If they are allowed to continue in such a role, Plaintiffs regrettably submit that they will be back before this Court on these same issues.

Accordingly, Plaintiffs request that Defendants be given a set amount of time to use search terms to remove privileged documents from the "snapshot" and "terminated employee tapes," and then turn over these electronic materials to the Plaintiffs for their review. This is the only way that Plaintiffs are going to get responsive electronic documents on the "snapshot" and "terminated employee tapes" – documents to which they are entitled under the Federal Rules.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their Motion To Compel The Priceline Defendants To Produce Emails And Electronic Documents Contained On The "Snapshot" And "Terminated Employee Tapes" be granted in its entirety. Plaintiffs also request that the Priceline Defendants' request for sanctions be denied. Finally, Plaintiffs request that this Court award any additional relief that it deems appropriate and just in light of the Priceline Defendants' failure to comply with the Court's December 8, 2005 Order and refusal to provide a recorded summary of the methodology they used to conduct the electronic search.

Dated: August 21, 2006 Respectfully submitted,

SCOTT + SCOTT, LLC

__/s/*Erin Green Comite*_____
David R. Scott (ct16080)
Geoffrey M. Johnson
Erin Green Comite (ct24886)
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Peter J. McDougall
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

STULL, STULL & BRODY
Jules Brody
Aaron Brody
6 East 45th St.
New York, NY 10017
Telephone: (212) 687-7230
Facsimile:  (212) 490-2022

**Co-Lead Counsel**

SCHATZ & NOBEL
Andrew M. Schatz
Jeffrey S. Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106
Telephone:  (860) 493-6292
Facsimile (860) 493-6290

**Liaison Counsel**

17

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 21, 2006, a copy of the foregoing Reply In Further Support Of Plaintiffs' Motion To Compel The Priceline Defendants To Produce Emails And Electronic Documents Contained On The "Snapshot" And "Terminated Employee Tapes" was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                   ____/s/ Erin Green Comite_____
                   David R. Scott
                   Erin Green Comite
                   Scott + Scott LLC
                   P.O. Box 192
                   108 Norwich Avenue
                   Colchester, CT  06415
                   P: (860) 537-5537
                   F: (860) 537-4432
                   drscott@scott-scott.com
                   ecomite@scott-scott.com