UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : | |
| _____ | : : | MASTER FILE NO. 3:00-CV-01884 (AVC) |
| This document relates to: | : : | September 1, 2006 |
| ALL ACTIONS | : : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT WALKER'S MOTION FOR PROTECTIVE ORDER REGARDING THE SUBPOENA ISSUED TO GOLDMAN SACHS & CO. SEEKING FINANCIAL INFORMATION**

Jay Walker's Motion for Protective Order regarding the Goldman Sachs subpoena is merely the latest of many actions manifesting his lack of respect for these judicial proceedings. His obdurate discovery tactics reflect a belief that the discovery rules do not apply to him. In both the meet and confer and his brief, Walker relies solely on conclusory statements without support and demands they be swallowed whole. Walker wholly fails to meet his burden of showing good cause why Plaintiffs should be prohibited from conducting their third party discovery, especially in light of the fact that the subpoenaed party stands ready to produce all requested documents which are non-privileged and is only awaiting resolution of the instant Motion to do so.

I.   <u>Standing</u>

Significantly, the entity served with the subpoena at issue here, Goldman Sachs, has not moved for a protective order. Walker however claims to have standing to seek modification of

the Subpoena based on a personal right to the privacy of his "financial" information. In the normal course, a party has no standing to object to a subpoena served on a third party:

> According to FRCP 45, which governs the procedure by which a non-party may be compelled to produce documents, the right to challenge such subpoenas is limited to the person to whom the subpoena is directed. See *Vogue Instrument Corp v. Lem Instruments Corp*, 41 FRD 346, 348 (S.D.N.Y.1967); *9 C. Wright and A. Miller, Federal Practice and Procedure,* § 2457 at 431 (1990 Supp) ("A motion to quash, or for a protective order, should be made by the person from whom the documents or things are requested.).

*In re: Seagate Technologies II Securities Litigation*, 1993 WL 293008 (N.D. Cal. 1993).

Despite his lack of standing, Walker cites *Chemical Bank* and *Chazin* as authority for this position. However, these cases do not support standing for a party to modify a third-party subpoena under the circumstances found here, where the financial and business dealings are directly related to the claims and defenses at issue in the Complaint. In fact, the cases cited in Walker's memo actually support Plaintiffs' position that the account records are discoverable and should be produced. For example, Walker selectively summarizes *Chazin v. Lieberman,* 129 F.R.D. 97, 98 (S.D.N.Y. 1990) as holding that the "parties had standing to move for a protective order limiting subpoenas seeking discovery of the parties' personal financial records from banks"[1] However, the *Chazin* case simply limited the scope of discovery to acts specified in the complaint. "[T]he court will impose limitations on the subpoenas so as to restrict their scope to material that pertains to the acts specified in the complaint." *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990). Thus, *Chazin* supports Plaintiffs here because they have specified in the Complaint how Walker actively deceived the investing public, and the Goldman Sachs information reflecting Walker's quickly deteriorating financial position will help to prove those claims to the jury.

---

[1] *See* Memorandum of Law in Support of Defendant Jay S. Walker's Motion for Protective Order Regarding the Subpoena Issued to Goldman Sachs & Co. Seeking Personal Financial Information, *at 3*.

Nor does *Chemical Bank v. Dana,* 149 F.R.D. 11, (D. Conn. 1993) support Defendant's Motion. There, the court closely defined the personal privacy right in terms of whether documents are related or unrelated to the matter before it. "Compliance with this subpoena might infringe on certain privacy rights, in that Chemical Bank would have easy access to Dana's **unrelated financial and business dealings**. *Chemical Bank v. Dana*, 149 F.R.D. 11, 13 (D.Conn. 1993). [Emphasis added.] However, the court specifically stated that if documents are related to claims made in the complaint, then even general business activity is discoverable: "Thus, the court finds that discovery should be limited to documents containing information relating to [defendant's] general business affairs." *Chemical Bank* at 13. The information sought from Goldman Sachs by Plaintiffs' subpoena relates to claims made in the Complaint, and is necessary to rebut the defenses of good faith and lack of motive asserted by Walker.

The United States Supreme Court addressed a similar privacy issue in *U.S. v. Miller,* 96 S. Ct. 1619 (1976) in the context of the Fourth Amendment. There, the Defendant was accused of failure to pay income taxes, and attempted to quash a third party subpoena submitted to his bank. The Court found no expectation of privacy in bank records:

> All of the documents obtained, including financial statements and deposit slips, contain only ordinary information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business. The lack of any legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require records to be maintained because they "have a high degree of usefulness in criminal tax, and regulatory investigations and proceedings." 12 U.S.C. s 1829b (a)(1). Cf. *Couch v. United States*, supra, at 335, 93 S.Ct. at 619, The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the government. *U.S. v. White*, 401 U.S. 745, 751-752 (1971)…even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed. *Id.*, at 752.

*U.S. v. Miller*, 425 U.S. 435, 442-443, 96 S. Ct. 1619, 1624, 48 L.Ed.2d 71, (1976). Similarly, Walker claims here he has a privacy right in account information and trades that he revealed to Goldman Sachs, a privacy right the Supreme Court does not recognize for bank records and should not be created here simply to thwart the discovery of relevant evidence.

Under the standards of the authority cited in Walker's own memo, he lacks standing to object to the third-party Goldman Sachs subpoena and his Motion may be denied on this basis alone.

II.     Discovery Standards

   A.   Walker Fails to Demonstrate Good Cause in Support of His Motion

The standard under Rule 26(c), provides that "*for good cause shown*, the court…may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c) (emphasis supplied). It is axiomatic that the burden is on the *movant* to demonstrate any entitlement to relief in the discovery process (Fed.R.Civ.P. 26(c), but Walker has failed to demonstrate any expectation of privacy in bank records that would warrant the extraordinary relief he seeks by interfering with Plaintiffs' subpoena. Thus, the second fundamental defect in Walker's Motion is his failure to acknowledge that, even if he has standing, it is his burden to demonstrate good cause for limiting the third-party subpoena. A "party seeking order of confidentiality with respect to discovery bears burden of demonstrating the required "good cause" supporting issuance of such an order." *Reliance Ins. Co. v. Barron's,* 428 F.Supp. 200, 202 (D.C.N.Y. 1977). In his memo there is neither discussion of why the Protective Order applicable to this case (which provides for the preservation of confidential information from public disclosure) is insufficient to protect Walker's claimed "privacy" interests, nor is there any mention (much less

4

a credible showing) of any particular, real harm to Walker that may be balanced against the harm of denying relevant discovery to Plaintiffs.

To obtain a protective order, "the requisite showings must be made with specific facts, not mere conclusory allegations of confidentiality and/or business harm. *Standard Space Platforms Corp. v. U.S.* 35 Fed.Cl. 505, 507 Fed.Cl.,1996 (citing *Wall Indus., Inc. v. United States*, 5 Cl.Ct. 485, 487 (1984)). The task of demonstrating good cause was not undertaken, and is wholly absent from Walker's Motion. Since Walker has failed to show good cause for a limitation to the subpoena, there is no basis for granting the relief sought by Defendant Walker and his Motion should be denied.

B. The Subpoena Seeks Relevant Information

The standard for discovery of non-privileged information is found at Rule 26(b)(1). Contrary to Walker's assertions, the 2000 Amendments to the rule do not diminish the scope of permissible discovery. Discovery is limited to material relevant to claims made in the pleadings – whether Plaintiffs' claims or Defendants' defenses. The information sought in the subpoena reasonably relates to claims identified in the pleadings.[2] Additionally, the Advisory Committee Notes to the 2000 Amendments provide "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action."[3] Here, the information sought will reveal Walker's overall financial position at different times prior to and throughout the launch and collapse of Webhouse, tending to prove allegations made in the Complaint.

Of course, the "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P.

---

[2] *See Consolidated Amended Complaint*, sections 3, 4, 19, 44, 45, 130(n), 138-141, 148(h),(i), 181, 201- 215.
[3] *See* 2000 Amendments to Fed. R. Civ. P. 26, subdivision (b)(1), paragraph three.

26(b)(1). The United States Supreme Court addressed the relevance standard of Rule 26(b)(1) in

*Oppenheimer Fund*:

> The key phrase in this definition-"relevant to the subject matter involved in the pending action"-has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See *Hickman v. Taylor*, 67 S.Ct. 385, 388, (1947). Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.*, at 388. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L.Ed.2d 253, (1978). Here, the evidence is sought to prove Walker's state of mind, which is informed by the state of his finances, and to establish a trend analysis of the interconnected businesses he oversaw.[4] This information will tend to prove the claims made in the Complaint, is relevant, and should not be quashed.

Rule 45 provides that a subpoena can be modified "if it, (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3). Walker has not articulated any specific claim of burden, undue or otherwise in his memo as to himself, and certainly none as to Goldman Sachs who has not moved for protection and stands ready to produce. There is no discussion of how providing unredacted account and trading information is burdensome or harms Walker or Goldman Sachs in any way, nor how the protective order already in place is insufficient to protect against the novel construction advocated by Walker that it is a "burden" to have a third party reveal

---

[4] For example, Defendants constantly deny that the various entities created and controlled by Walker had any connection beyond their common originating source. Plaintiffs assert this contention is false and that the interconnectedness of these various businesses provides strong evidence of all Defendants' knowledge that WebHouse was a sham and that its presentation to the public as an example of the strength of the "Priceline.com Business Model" was deceptive, and known by Defendants to be so. *See* section 22 of Consolidated Amended Complaint.

"private" information (which has already been disclosed to at least that third party) that will be designated confidential and protected from public disclosure.[5]

Walker also cites Rule 45(c)(3)(B), as authority for modification of the subpoena to prevent disclosing trade secrets, confidential research, and commercial information.[6] The Goldman Sachs trading and account history is not a trade secret, confidential research, or confidential commercial information. Moreover, even if this information qualified for these labels the Protective Order in force in this case allows the designation and protection of confidential information, thus obviating any concern articulated by Walker.

Nevertheless, Walker cites to the trade secret section of Wright and Miller[7] to support his contention that the subpoena should be quashed based on the following language: **"If…confidential information** is being sought.."[8] However, the meaning of the passage becomes clear when read in full and is quite different from the conclusion Defendant seeks to draw from it. The artfully ellipsed language provides: "If **it is established that** confidential information is being sought…" Thus, the citation from Wright and Miller refers to confidential information relating to trade secrets. Walker skips over the analysis of whether the information is a trade secret, research and development, or commercial information, and jumps immediately to burden shifting. But Rule 45(c)(3)(B) specifically refers to Rule 26(c)(7), trade secrets: "[T]he corresponding provision in Rule 26(c)(7) is that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a

---

[5] Walker suggests redaction of personal information is required here to protect against disclosure. This is false because the Protective Order in this case resolves issues of sensitive disclosures unequivocally. Further, Plaintiffs already have acquired the information Walker proposes to redact from this production and allowing redaction here will merely thwart Plaintiffs' ability to cross-reference documents without preventing the dissemination of information Defendant supposedly seeks to keep secret.
[6] See *Walker Memo of Law, Supra*, at 3.
[7] 8 Charles Alan Wright, et al*., Federal Practice and Procedure §2043 (2d ed. 1994 & Supp. 2006) at 554*.
[8] See *Walker Memo of Law, Supra*, at 7.

7

designated way."[9]  Although the rule does not define confidential commercial information, the courts have; *see Anderson, Greenwood & Co. v. Nibisco Supply, Inc.,* 1996 WL 377205 (W.D.N.Y.,1996) ("commercially sensitive information and that disclosure of such information to a competitor such as [Plaintiff] will cause serious and irreparable commercial and competitive injury to it"); *Allnet Communication Services, Inc. v. Federal Communications Commission,* 800 F.Supp. 984, 988 (D.D.C.1992) ("Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.")  Walker's trading records are not confidential commercial information, and he is not entitled to the protections available to such documents.  Moreover, any concerns on this score have already been resolved by the Court's entry of a confidentiality order protecting against the public disclosure of such information.  Here again, Walker simply ignores prior court orders and seeks to litigate anew issues already resolved by the Court.

The court was faced with a similar situation in *Sierra Rutile Limited v. Katz*, 1994 WL 185751 (S.D.N.Y.);

> …no privilege attaches to the information which defendants seek, nor is it "confidential research, development or commercial information" explicitly recognized grounds under Rule 45, Fed.R.Civ.P.  Resolution of the pending motion turns, therefore, on an inquiry into the relevance of the information sought balanced against the intrusion on the [plaintiffs'] privacy interests…[m]oreover, the documents sought can be protected under the confidentiality order which is in place in this case.

*Sierra Rutile Limited v. Katz*, 1994 WL 185751, *2 (S.D.N.Y.).  Here, the Court's protective order is wholly sufficient and effective to protect against disclosure of the information at issue and there is no basis for denying Plaintiffs access to probative information based solely on the unsupported speculation that they will violate the Court's orders.

  C. The Information Sought is Discoverable

---

[9] 8 Charles Alan Wright, et al., *Federal Practice and Procedure §2043 (2d ed. 1994 & Supp. 2006) at 554*

Plaintiffs seek relevant non-privileged information relating to defendant Walker's financial activity through Goldman Sachs. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P 26(b)(1). The information sought is relevant to the subject matter and time period of this case and specifically to the element of scienter Plaintiffs must prove in order to establish their case against Defendant Walker. In addition, Walker's financial trading activity is directly relevant to the specific allegations of the Consolidated Amended Complaint. *See e.g*. Paragraphs 3, 4, 19, 44, 45, 130(n), 138-141, 148(h)(i), 181, 201-215.

Walker's trading activity and financial positions are not only relevant to the liability issues to be proved in this case, but will also provide insight into his ability to pay any damages awarded. The subpoenaed information goes directly to the allegations of fraudulent manipulation and deception and will help to show the actual state of Walker's finances (and thus his state of mind) when he was making deceptive statements about Webhouse to the investing public which in turn inflated the market price of Priceline.com stock, Walker's greatest asset at the time.

The requested trading activity in Walker Digital and other entities will reveal such things as whether Walker needed to boost the perceived value of Priceline due to margin calls or other liquidity issues in other stocks or entities related to these accounts. The information will also show whether he was quietly raising the capital necessary to continue the Webhouse charade, while continuing to influence the inflated value attributed for Webhouse warrants on Priceline's books and how important the success of Webhouse (which served as the primary valuation for Walker's vast Priceline.com stock holdings) was to Walker. The information will help establish that Walker was hyping Priceline's lateral expansion model to artificially inflate the Priceline

9

stock price, and to capitalize upon it by selling shares to unknowing investors. In light of the broad relevance of Walker's trading history to his strong motivations in perpetrating a fraud on the public, it is no wonder Walker would prefer to limit discovery to only Priceline.com trades, thereby stripping Plaintiffs and ultimately the jury of the opportunity to understand the totality of his financial position, and state of mind as it relates to the fraud alleged in this case.

III. This Case is not Solely about Movements in Priceline Stock

The crux of Defendant's argument is that discovery in this case should be limited solely to the daily reported movements in Priceline.com stock during the class period. This is an absurd reduction of the scope of this securities case and ignores the fact that the fluctuations in Priceline.com stock are merely the end result of the fraud alleged, and in no way reveal the underlying engine of Defendant's scheme.

This case is not simply about Priceline stock, but concerns a complex scheme perpetrated by Defendants to leverage perceived value by the investing public for personal monetary gain. The case directly involves Walker's motivation for engaging in the scheme, which is an element of proof of Plaintiffs' case. The requested information goes to matters that would tend to prove the allegations made in the Complaint, such as: whether Walker needed cash; whether he had increasing financial demands such as margin calls requiring him to artificially boost his net worth through the inflation of the largest asset he held, Priceline Stock; whether Walker was sophisticated and active in trading; whether a large portion of his net worth was represented in Priceline transactions; and whether movements in Priceline stock were significant to Walker.

The motivations for Walker's fraud go well beyond the mere price of Priceline stock. Plaintiffs seek to understand the overlapping nature of Walker's holdings, the impact of

10

interrelated entities upon his finances as a whole, and his reactions to the changes in the market and the value of his holdings.

## IV. Time Period

Walker also attempts to unnecessarily constrain the scope of the subpoena to an extremely cramped time period. The time parameter set forth in the subpoena seek to recover relevant documents reflecting Walker's state of mind during the class period. "[Defendant's] attempt to confine discovery to a narrow period beginning three months before the start of the class period and ending three weeks after the class period closes is artificial, arbitrary and designed to avoid the production of relevant documents." *Seagate Technologies II, Supra*, at 1. The relevant time period includes transactions outside the class period because they inform why actions were taken during the class period and provide insight into effects of those actions (whether they successfully achieved their goals or not). Moreover, the time period covered in the subpoena is not overreaching or burdensome as it relates to a single client of Goldman Sachs and Goldman has raised no objection to the time period set forth in the subpoena. (See discussion in section 5 *infra*.) In light of the lack of any objection to the requested time period by Goldman, there is no justification for extirpating crucial portions of Plaintiffs' discovery based on the unfounded, wholly conclusory and ultimately wrong assertion by Walker that such documents will not reveal information admissible at trail concerning Walker's liability for the fraud alleged.

Walker cites *Carey v. Berisford Metals Corp.,* No. 05 Civ 8622 WL 1788299 (S.D.N.Y 2006) as authority to limit the applicable time period of the subpoena.[10] *Carey* is wholly inapposite as the discovery request there involved expense account fraud, and the court limited discovery to only the years Carey was employed by the firm in which it was claiming expense

---

[10] Walker Memo of Law, *Supra*, at 4.

11

account abuse. There, the time was finite, because no expenses would be approved, or reimbursed for non-employees. Here, conversely, the financial transactions leading up to and following the class period are not limited by a similar approval process with such strict confines. Walker's trading activity before, during and after the class period are all relevant to the allegations that Walker acted with motive in manipulating the price of Priceline.com stock.

V. No Undue Burden

The subpoena is limited and will not impose an undue burden on Goldman Sachs, as demonstrated by its willingness to produce all requested documents without limitation to timeframe.[11] Despite the boilerplate objections received from Goldman Sachs, they are not seeking the timeframe limitation Walker seeks.[12] It is interesting to note that in the same brief Walker argues that he is immune from the effect of general orders of the Court unless he deigns it worthy to participate in the litigation of the question[13] but then argues that third parties are bound by orders that specifically apply only to the parties.[14] The time period limitation as to the parties is a result of Defendant's constant melodramatics about the huge burden of producing relevant documents.[15] As noted, Goldman Sachs has not asserted such a burden objection and could not reasonably do so. Therefore, no cognizable "undue" burden exists under rule 45(c)(3)(A), and there is no basis for limiting the subpoena in this manner.

VI. Conclusion

The documents sought by the subpoena are directly related to claims made in the complaint and the defenses asserted by Walker and the other Defendants. In addition, Walker

---

[11] *See* Duval Declaration
[12] On August 8, 2006, Goldman Sach's counsel sent a letter to Plaintiffs' counsel asserting boilerplate objections to the subpoena, but has since indicated that it will not withhold any documents or otherwise limit its response to the subpoena once Walker's instant motion is no longer serving as an impediment to production. *See* appendix A.
[13] *See* footnote four from Walker's Memo of Law, *Supra* at 5
[14] *See* Walker's Memo of Law, *Supra*, at 6
[15] *See* July 10th 2006 Walker Status Report, at 2. "professional fees for reviewing…would exceed $79 million."

12

lacks standing to object. Defendant fails to present any good cause in support of his request to limit relevant discovery, and balancing the harm sought to be visited on the Class by denying them relevant discovery, the prerequisite elements for a protective Order have not been met.

The requested discovery is relevant and there exists no factual reason or legal predicate for denying Plaintiffs' legitimate discovery. Plaintiffs request the court to deny Walkers motion for Protective Order and award such other relief as it deems just and equitable.

Dated: September 1, 2006                                Respectfully submitted,

                                          ____/s/ Eben F. Duval_____

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Eben F. Duval (phv01237)
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

SCOTT + SCOTT, LLC
David R. Scott, Fed. Bar No. CT16080
Erin G. Comite, Fed Bar No. CT24886
Mark V. Jackowski
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

**Co-Lead Counsel**