## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:  PRICELINE.COM, INC.<br>SECURITIES LITIGATION | :  MASTER FILE NO.<br>:  3:00-CV-01884 (AVC)<br>: |
| | : |
| This document relates to: | :<br>: |
| ALL ACTIONS | :<br>:  September 11, 2006 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAY S. WALKER'S
MOTION TO QUASH AND FOR PROTECTIVE ORDER REGARDING THE
SUBPOENAS ISSUED TO MERRILL LYNCH, MORGAN STANLEY AND CHASE
MANHATTAN BANK SEEKING PRODUCTION OF
PRIVATE FINANCIAL INFORMATION**

# TABLE OF CONTENTS

**(Page)**

I.    INTRODUCTION. ..................................................................................................... 1

II.   THE SUBPOENAS TO THE BANKS. ................................................................... 3

    A.    Accounts of Walker and Walker Digital. ....................................................... 3

        1.    Merrill Lynch Accounts. .................................................................... 3

        2.    Morgan Stanley Accounts. ................................................................. 3

        3.    Chase Manhattan Bank. ...................................................................... 3

        4.    Generally. ........................................................................................... 4

    B.    Accounts of Hundreds of Employees and Others Individuals
        Associated With Walker Digital. ..................................................................... 5

III.   THE COURT SHOULD GRANT THE MOTION FOR PROTECTIVE
      ORDER. .................................................................................................................. 5

    A.    Jay Walker Has Standing to Seek the Protective Order. ................................. 5

    B.    There Is Good Cause for Issuance of the Protective Order. ............................ 6

        1.    The Subpoenas Violate Walker's Right to Privacy and
            That of Walker Digital. ....................................................................... 7

        2.    The Subpoenas Seek Information for an Illegitimate
            Purpose. .............................................................................................. 8

    C.    The Non-Priceline Transactions Sought by the Subpoenas Are
        Not Relevant to a Claim or Defense in This Action. ..................................... 11

    D.    The Time Frame of the Subpoenas Is Overbroad and Contrary to
        the Earlier Orders of the Court. ..................................................................... 14

        1.    Financial Transactions That Are Outside the Class Period
            Could Not Be Relevant. ..................................................................... 14

        2.    The Subpoenas Demand Documents for a Time Period
            That Exceeds the Limits Earlier Set by the Court. ............................ 14

    E.    The Subpoenas Are Fatally Overbroad. ........................................................ 15

    F.    Plaintiffs Failed to Timely Serve the Subpoenas. ........................................ 17

**TABLE OF CONTENTS (cont'd)**

<u>(Page)</u>

IV.    CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*Board of Education of Evanston Township High School District No. 202 v.*
  *Admiral Heating & Ventilating, Inc.*,
  104 F.R.D. 23 (N.D. Ill. 1984) ..................................................................10

*Carey v. Berisford Metals Corp.*,
  No. 90 Civ. 1045, 1991 WL 44843 (S.D.N.Y. March 28, 1991) ...............................7

*Chazin v. Lieberman*,
  129 F.R.D. 97 (S.D.N.Y. 1990)..................................................................6

*Chemical Bank v. Dana*,
  149 F.R.D. 11 (D. Conn. 1993) ..............................................................6, 7

*Hofer v. Mack Trucks, Inc.*,
  981 F.2d 377 (8th Cir. 1992) .................................................................12

*Innomed Labs, LLC v. Alza Corp.*,
  No. 01 Civ. 8095, 2002 WL 31012165 (S.D.N.Y. Sept. 6, 2002)............................12

*McCurdy v. Wedgewood Capital Management Co.*,
  1998 U.S. Dist. LEXIS 18875 (E.D. Pa. November 16, 1998) ...........................9, 19

*Ranney-Brown Distributors, Inc. v. E.T. Barwick Indus., Inc.*,
  75 F.R.D. 3 (S.D. Oh. 1977)...................................................................9

*Reserve Solutions, Inc. v. Vernaglia*,
  2006 WL 2337244 (S.D.N.Y. August 11, 2006)...............................................7

*Reserve Solutions, Inc. v. Vernaglia*,
  No. 05 Civ 8622, 2006 WL 1788299 (S.D.N.Y. June 26, 2006) ............................7

*Rus, Inc. v. Bay Indus., Inc.*,
  322 F.Supp.2d 302 (S.D.N.Y. 2003) .........................................................11

*S.E.C. v. Renert*,
  No. 3:01-CV-1027 (PCD), 2002 WL 32503671 (D. Conn. June 17, 2002)...................12

*Sawyer v. Boufford*,
  113 N.H. 627, 312 A.2d 693 (1973)..........................................................9

*Travelers Insurance Company v. Hindle*,
  748 A.2d 256; 2000 R.I. LEXIS 79 (R.I. 2000) .............................................10

## TABLE OF AUTHORITIES (cont'd)

<u>(Page)</u>

*United States v. Miller,*
  425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) ................................................................8

**Statutes**

Conn. Gen. Stat.
  §§ 36a-41 ................................................................................................................................7, 8

Fed. R. Civ. P.
  Rule 26.........................................................................................................................................4

  Rule 45 .............................................................................................................................4, 6, 19

Gramm-Leach-Bliley Act,
  15 U.S.C. § 6801 ......................................................................................................................7, 8

Right to Financial Privacy Act of 1978 .....................................................................................7, 8


**Other Authorities**


W. Schwarzer, A.W. Tashima, and J. Wagstaffe, *Federal Civil Procedure Before Trial*
  (The Rutter Group 2006) .....................................................................................................4, 6, 7

## I.    INTRODUCTION.

Defendant Jay S. Walker ("Walker") respectfully submits this memorandum of law in support of his motion pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure to quash and for a protective order to limit the scope of three subpoenas (the "Subpoenas") that plaintiffs served on, respectively, nonparties Merrill Lynch, Morgan Stanley and Chase Manhattan Bank (the "Banks").[1]  Plaintiffs' wide-ranging Subpoenas seek disclosure of account statements, trading records and other materials related to:

(1)    Walker's personal accounts at the Banks;

(2)    The accounts of Walker Digital LLC, Walker Digital Corporation, Atlantis Interactive and any subsidiaries, affiliates, segments or divisions of them; and

(3)    Any accounts maintained by any of literally hundreds of "present or former officers, employees, attorneys, agents, representatives or other persons acting on behalf of any of the entities referenced above," as well as directors of any such entities, during a three-year time frame.

Plaintiffs' unbounded fishing expedition into this private financial information is completely unwarranted, and should be addressed by issuance of a protective order.

This is a class action brought on behalf of shareholders of priceline.com, Inc. ("Priceline") who purchased stock within a period of eight months and eight days, from January

---

[1]    Each of the Banks have consented to having this motion heard by this Court on this action.  Declaration of Jeanne E. Irving ("Irving Decl.") filed concurrently herewith, ¶ 16. Copies of the Subpoenas are attached as Exhibits A, B and C to the Irving Decl.

The issuance of the three Subpoenas that are the subject of this motion follows by a couple of weeks the issuance of a nearly identical subpoena that plaintiffs served on yet another financial institution, Goldman Sachs.  On August 17, 2006, Mr. Walker filed a motion for protective order with respect to that subpoena.  *See* Defendant Jay S. Walker's Motion for Protective Order Regarding the Subpoena Issued to Goldman Sachs & Co. Seeking Financial Information [Docket No.354, 355 and 356].

27, 2000 through October 4, 2000 (the "Class Period"). This action alleges that the Priceline stock price was artificially inflated as a result of the defendants' actions during the Class Period.

What this motion is **not** about is documentation relating to Priceline securities. Walker does not object to production of information that identifies the holdings, purchases, sales or pledges of Priceline securities during the Class Period. Indeed, Mr. Walker's purchases and sales of Priceline securities at any time relevant to the Subpoenas are a matter of public record, reflected on Forms 4 readily available on the internet.

However, the Subpoenas are designed to reach, and this motion is intended to protect, documentation of transactions that are **not** the subject of this lawsuit. The Subpoenas seek production of private financial and other information that has nothing to do with any issue in the case. Additionally, the time period covered by the Subpoenas is overbroad and violates the Court's previous orders prohibiting the plaintiffs from requesting discovery outside a designated time frame. Further emblematic of the plaintiffs' callous disregard of any rationale boundaries for their discovery requests, the Subpoenas demand production of private financial records of hundreds of employees and other persons and entities associated – not with Priceline – but with Walker Digital.[2] A protective order is needed to interject some sanity into plaintiffs' discovery demands.[3]

---

[2]     Moreover, plaintiffs here, as in the past, failed to serve Walker and the other defendants with the Subpoenas within the time required by the Federal Rules.

[3]     On September 7, 2006, counsel for Walker and Plaintiffs conferred pursuant to Rule 37 of the Federal Rules of Civil Procedure in an effort to resolve in good faith the issues raised by this motion, but were unable to reach agreement on those issues. *See* Irving Decl. ¶ 5.

## II.     THE SUBPOENAS TO THE BANKS.

### A.     Accounts of Walker and Walker Digital. [4]

#### 1.     Merrill Lynch Accounts.

The Walker accounts maintained at Merrill Lynch were solely personal accounts of Jay Walker.  Walker Digital did not have accounts at Merrill Lynch.

Moreover, there were **no Priceline securities held in any Jay Walker account at Merrill Lynch**.  Consequently, plaintiffs' Subpoena to Merrill Lynch seeks only Jay Walker's personal financial information concerning non-Priceline transactions.

Merrill Lynch has objected to the Subpoena on multiple grounds, and a copy of its objections are attached as Ex. E to the Irving Decl.

#### 2.     Morgan Stanley Accounts.

The Walker accounts maintained at Morgan Stanley were solely personal accounts of Jay Walker.  Walker Digital did not have accounts at Morgan Stanley.

#### 3.     Chase Manhattan Bank.

JP Morgan Chase Bank, N.A. has objected to the Subpoena issued to Chase Manhattan Bank on numerous bases, including that Chase Manhattan Bank no longer exists.  JP Morgan Chase Bank states that plaintiffs will need to issue a different subpoena directed to the correct entity if any documents are to be produced.  JP Morgan Chase's objections are attached as Ex. F to the Irving Decl.

The subpoena to Chase Manhattan Bank is also invalid because it was issued from the wrong court.  It purports to have been issued by the District Court for the Souther2n District of New York, and seeks production of documents in Noblesville, Indiana.

---

[4]     The facts stated here with respect to the accounts maintained at the Banks are based on information from the Banks and relate to the time period covered by the Subpoenas.  Those facts may also be true of other time periods as well, but for purposes of this brief, we focused on the time period identified in the Subpoenas.  With very small variations, the Subpoenas are identical.

"A subpoena must issue as follows:  . . . . (C) for production and inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made." F.R.C.P. Rule 45 (a)(2)[1].  "Designating the wrong court renders the subpoena void." W. Schwarzer, A.W. Tashima, and J. Wagstaffe, *Federal Civil Procedure Before Trial* (The Rutter Group 2006), p. 11-275, § 11:226 (citing *Kupritz v. Savannah College of Art & Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994) (court is incapable of enforcing subpoena issued by wrong court)).  The Chase Manhattan Subpoena should be quashed in its entirety both because it is directed to a non-existent entity and it is issued from the wrong court.

### 4.    Generally.

Regardless of whether any particular Bank held any Priceline stock for Walker and Walker Digital, plaintiffs seek from the Banks all documents related to the accounts of Walker and Walker Digital for a full three-year period – January 1, 1999 through December 31, 2001. Although the requested documents are relevant only to the extent they reflect Walker's holdings and transactions in Priceline securities, the Subpoena embarks on a far broader quest to obtain personal information about Walker, including his financial holdings and transactions over a time-period that is **more than four times as long as the Class Period**.  Plaintiffs seek documents regarding joint accounts Mr. Walker held with his wife in which there was no Priceline securities, and similar private information.

Walker does not object to production of information that identifies the holdings, purchases, sales or pledges of Priceline securities during the Class Period.  We seek relief, however, because the Subpoenas are overly broad and improper in that, among other things:  (1) they demand production of private financial information related to transactions that are not holdings, purchases, sales or pledges of Priceline securities, (2) they purport to encompass a time period more than four times as long as the period that is relevant to the allegations regarding Walker's trades in Priceline shares; and (3) they do not provide for the redaction of confidential personal information that is irrelevant to plaintiffs' claims.

**B.      Accounts of Hundreds of Employees and Others Individuals Associated With Walker Digital.**

The absurd overbreadth of plaintiffs' Subpoenas is underscored by the fact that, in addition to the accounts of Walker and Walker Digital entities, plaintiffs' Subpoenas demand production of documents relating to any accounts maintained at the Banks by any "present or former officers, employees, attorneys, agents, representatives or other persons . . . acting on behalf of Walker Digital or its subsidiaries, affiliates, segments or divisions," plus any directors of such entities, during a three-year time frame.  Subpoenas, Schedule A, p. 1, ¶ 3.  The Subpoena, therefore, quite literally demand any **account records** in the possession of the Banks **for hundreds of individuals**, regardless of whether those accounts have anything to do with Priceline or its stock.[5]

**III.      THE COURT SHOULD GRANT THE MOTION FOR PROTECTIVE ORDER.**

**A.      Jay Walker Has Standing to Seek the Protective Order.**

Federal Rule of Civil Procedure 26(c) provides:

> Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . (1) that the disclosure or discovery not be had . . . [and] (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters.

Rule 45 of the Federal Rules of Civil Procedure allows a person affected by a subpoena to move to modify a subpoena if the subpoena requires disclosure of privileged or other

---

[5]      See discussion in Section III E. below.

protected matter or subjects the person served to an undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A) & (B). In response to a subpoena,

> the nonparty witness, *or any party* may move:

- to *quash* the subpoena (e.g., for improper service, inadequate description, or lack of control of the designated documents); or

- to *modify* the subpoena on the ground it . . . requires disclosure of privileged or otherwise protected information, or subjects a person to undue burden (FRCP 45(c)(3)(A)); or

- for a *protective order* under Rule 26(c) (to prevent annoyance, embarrassment, oppression, undue burden or expense; . . .

W. Schwarzer, A.W. Tashima, and J. Wagstaffe, *Federal Civil Procedure Before Trial* (The Rutter Group 2006), p. 11-279, § 11:2286 (emphasis in original).

Because the Subpoena seeks production of information related to and contained in Walker's personal financial accounts and the financial accounts of companies with which he is associated, he has standing to seek modification of the Subpoena. *See, e.g., Chemical Bank v. Dana*, 149 F.R.D. 11, 13 (D. Conn. 1993) (account holder has standing to object to subpoenas seeking production of bank records, because "[c]ompliance with the subpoena might infringe on certain privacy rights, in that [the subpoenaing party] would have easy access to [objector's] unrelated financial and business dealings in detail"); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (parties had standing to move for a protective order limiting subpoenas seeking discovery of the parties' personal financial records from banks).

**B.    There Is Good Cause for Issuance of the Protective Order.**

Two of the factors relevant to a determination of the existence of good cause for a protective order are present there, e.g., "[1] whether the information is being sought for a

legitimate purpose; [and 2] whether disclosure will violate any privacy interest." *Federal Civil Procedure Before Trial, supra*, p. 11-112, § 11:1072 (emphasis in original).

### 1.    The Subpoenas Violate Walker's Right to Privacy and That of Walker Digital.

The law has long recognized that an individual has a right to privacy in his or her personal financial matters. *See, e.g.,* Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 *et seq.*; Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 *et seq.* ("It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information"); Conn. Gen. Stat. §§ 36a-41 *et seq.*

Moreover, courts have recognized the need to limit discovery that unnecessarily seeks personal financial information such as that sought here. For example, in *Reserve Solutions, Inc. v. Vernaglia*, No. 05 Civ 8622, 2006 WL 1788299, at *2 (S.D.N.Y. June 26, 2006), the magistrate quashed a nonparty subpoena seeking personal financial records from American Express because it infringed on privacy rights and was "not limited to the accounts and transactions at issue in this case." The District Court recently denied a motion to set aside this order. *Reserve Solutions, Inc. v. Vernaglia*, 2006 WL 2337244 (S.D.N.Y. August 11, 2006).[6]

Similarly, in *Carey v. Berisford Metals Corp.*, No. 90 Civ. 1045, 1991 WL 44843 (S.D.N.Y. March 28, 1991), the court limited subpoenas which sought to have nonparty banks produce all information relating to bank and investment accounts. The District Court restricted the production to transactions and to a time period relevant to the fraud allegations at issue in the case. *Id.* at *8. *See also Chemical Bank v. Dana*, 149 F.R.D. at 13-14 (limited discovery of bank records to the particular business dealings at issue because plaintiff's "right to obtain relevant discovery is outweighed by [party's] privacy interests in these documents" ); *Chazin*, 129 F.R.D.

---

[6]    Cases cited herein and not appearing in the official reporters are attached hereto as Ex. N to the Irving Decl.

at 98 (limiting subpoena seeking documents from nonparty institutions, including banks, to exclude the time period before which plaintiff alleged acts of fraud).[7]

In the meet and confer that preceded the filing of this motion, plaintiffs argued that Walker's bank and brokerage firm records should not be considered private because employees of the banks and brokerage firms saw them. In their Opposition to Defendant Walker's Motion for Protective Order Regarding the Subpoena Issued to Goldman Sachs & Co. Seeking Financial Information [Docket No. 362], a copy of which is Ex. G to the Irving Decl. ("Plaintiffs' Goldman Opposition"), plaintiffs cited a 1976 case for this proposition. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). However, in direct reaction to the *Miller* case, both the federal legislature and the Connecticut legislature have since taken steps to legislatively establish a customer's right to privacy over financial records such as those sought by the Subpoenas. *See, e.g.,* Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 *et seq.*; Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 *et seq.*; Conn. Gen. Stat. §§ 36a-41 *et seq.*[8] The more recent case law cited in this section and elsewhere in this brief followed, clearly enforcing a right to privacy in connection with bank and other financial records.

## 2.    The Subpoenas Seek Information for an Illegitimate Purpose.

In Plaintiffs' Goldman Opposition, plaintiffs admitted that they seek documentation of transactions that are not trades of Priceline securities in order to gain "insight into [Jay Walker's]

---

[7]    The Subpoenas make no provision for redaction of confidential personal information, such as personal information disclosed on new account forms, or account numbers reflected in the requested documents, including the various account numbers for accounts of Walker and his family members. Such redaction is of compelling importance, given the widespread recognition that an individual has a right to privacy in his or her personal financial matters.

[8]    Notably, Mr. Walker took steps to limit access to his personal information even within the bank groups. For example, when presented with the opportunity to receive information about products and services offered by Morgan Stanley affiliates, Mr. Walker specifically instructed Morgan Stanley: "do not share my personal information with other companies within the Morgan Stanley family except where permitted by law, to process transactions and to service my account." See Ex. H to the Irving Decl.

ability to pay any damages awarded." Plaintiffs' Goldman Opposition, p. 9. This clearly is not a legitimate use of discovery.

> Ordinarily, the federal discovery rules and similar state rules do not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, since such matters are not relevant to the trial issues and cannot lead to the discovery of admissible evidence.

*Ranney-Brown Distributors, Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3 (S.D. Oh. 1977).

The court in *McCurdy v. Wedgewood Capital Management Co.*, 1998 U.S. Dist. LEXIS 18875 (E.D. Pa. November 16, 1998), denied plaintiff's motion to compel just such documents on the grounds that such documents are not discoverable.

> Plaintiff . . . moves to compel discovery of facts concerning Defendant's financial status in order to determine Defendant's "ability to satisfy a judgment." However, Plaintiff is not entitled to access to such information. Although discovery of the existence and contents of liability insurance agreements is permitted, "**Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence**."

*Id.* at *37 (emphasis added; citations omitted).

*Sawyer v. Boufford*, 113 N.H. 627, 312 A.2d 693 (1973), addressed precisely this issue. There, plaintiff moved to compel the defendant to produce documents relative to his net worth "in order to apprise the plaintiff of his ability to respond to a verdict in excess of his insurance coverage." *Id.* at 628. Recognizing that "there are competing policies which require imposing some limitations on discovery," *id.*, the court found that

> [t]he benefit which would result to the plaintiff from a disclosure by facilitating the decision to settle or go to trial is considerably outweighed by the

> **unwarranted invasion of the defendant's right of privacy** in this area. A
> groundless claim could become an excuse to make full inquiry into all the
> confidential assets of a defendant . . . .

*Id.* at 629-630 (emphasis added; citation omitted). *Accord, Travelers Insurance Company v. Hindle*, 748 A.2d 256; 2000 R.I. LEXIS 79 (R.I. 2000) (trial court abused its discretion in allowing discovery of a defendant's financial assets which was designed to determine whether the defendant could satisfy a potential judgment beyond his insurance limits).[9]

Courts have protected the financial privacy of corporations, as well as that of individuals. In *Board of Education of Evanston Township High School District No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23 (N.D. Ill. 1984), plaintiffs moved to compel a corporate defendant to answer interrogatories regarding its financial condition. However, the District Court refused to give "plaintiffs the opportunity to pry into defendants' financial affairs under the guise of discovery." *Id.* at 33.

Holding that case law supporting discovery into a defendant's financial condition in connection with post-judgment execution proceedings has no applicability pre-judgment, the court referred to the position of the drafters of the discovery rules.

> [W]hen the drafters of the Rules confronted the question of prejudgment
> discovery of a defendant's financial affairs, they drew a narrow line. In adopting
> Rule 26(b) (2) they required disclosure of a defendant's liability insurance
> coverage but stated further (Rule 26(b) (2), Advisory Committee Note
> (Subdivision (b) (2)--Insurance Policies)):

---

[9]    In *Travelers*, it was the insurance carrier rather than the plaintiff who wanted the discovery. However, in holding that it was an abuse of discretion to allow discovery of a defendant's financial condition to assess his ability to satisfy a judgment, the Rhode Island Supreme Court noted that "as a potential subrogee, [the carrier] metaphorically steps into the shoes of the [plaintiffs] and is entitled to the same rights that they enjoy vis a vis [the defendant], 'but no more and no less.'" *Id.* at 259.

"The amendment is limited to insurance coverage, which should be

**distinguished from any other facts concerning defendant's financial status** (1)

because insurance is an asset created specifically to satisfy the claim; (2) because

the insurance company ordinarily controls the litigation; (3) because information

about coverage is available only from defendant or his insurer; and (4) **because**

**disclosure does not involve a significant invasion of privacy**."

*Id.* (emphasis added).

The improper purpose for which plaintiffs seek the discovery demanded by the

Subpoenas warrants the issuance of a protective order.[10]

C.    **The Non-Priceline Transactions Sought by the Subpoenas Are Not Relevant**
      **to a Claim or Defense in This Action.**

Under Federal Rule of Civil Procedure 26(b)(1), a party is entitled to discovery only of

information "that is relevant to the claim or defense of any party." The Advisory Committee

Notes to the 2000 Amendment to Rule 26(b)(1) make clear that "[t]he rule change signals . . . to

the parties that they have no entitlement to discovery to develop new claims or defenses that are

not already identified in the pleadings." *See also Rus, Inc. v. Bay Indus., Inc.*, 322 F.Supp.2d

302, 318 (S.D.N.Y. 2003) ("[I]t is not sufficient that the material sought be relevant to the

general subject matter of the action, if it does not relate to the specific claims or defenses of

either party.").

Thus, "[s]ome threshold showing of relevance must be made before parties are required

to open wide the doors of discovery and to produce a variety of information which does not

reasonably bear upon the issues in the case." *S.E.C. v. Renert*, No. 3:01-CV-1027 (PCD), 2002

---

[10]    At the meet and confer that preceded the filing of this motion, plaintiffs argued that they should be able to obtain Walker's private information subject to not disclosing it to others in line with the general protective order in this case. However, as the cases discussed above demonstrate, Walker is entitled to have his privacy protected against prying by plaintiffs and their counsel, as well as by the general populace, and entitled not to have the information produced.

WL 32503671, at *2 (D. Conn. June 17, 2002) (*quoting Hofer v. Mack Trucks, Inc.*, 981 F.2d

377, 380 (8th Cir. 1992)). The relevancy standard of Rule 26(b)(1) applies to discovery obtained

from both parties and nonparties alike. *See Innomed Labs, LLC v. Alza Corp.*, No. 01 Civ. 8095,

2002 WL 31012165, at *1 (S.D.N.Y. Sept. 6, 2002).

This suit was brought on behalf of a class of **Priceline** shareholders alleging a securities

fraud involving **Priceline** stock. Plaintiffs allege that Walker and the other defendants made

false and misleading statements during the Class Period that artificially inflated the value of

**Priceline** stock. Plaintiffs' allegations include that Walker "sold **Priceline** shares at prices

artificially inflated by Defendants' course of conduct" (Consolidated Amended Complaint

("CAC") ¶ 44, (emphasis added)) and that his trading in **Priceline** securities was "suspicious in

timing and amount" (CAC ¶ 45). Thus, the only trading documents that are relevant to the

securities litigation are those evidencing holdings or transfers of **Priceline** securities.

Accordingly, a protective order should issue requiring redaction of information reflecting

holdings or transactions other than holdings, purchases, sales or pledges of Priceline securities.[11]

In the meet and confer regarding the Subpoenas, plaintiffs' counsel argued that

documentation of Walker's non-Priceline financial transactions could be relevant to the issue of

---

[11]   The lack of rationality in plaintiffs' discovery demands is further highlighted by reference
to the specific Walker trades of which plaintiffs complain. They consist of:

(1)   two sales by Jay Walker – one on August 1, 2000 and another on September 11,
2000;

(2)   one sale by Walker Digital Corporation on May 16, 2000; and

(3)   a number of sales by Walker Digital LLC, all of which took place in a 24-day
period, between May 16, 2000 and June 8, 2000.

CAC, p. 28-29, ¶ 44, copies of which pages are attached as Ex. I to the Irving Decl.

In other words, **all of the Walker-related Priceline sales** of which plaintiffs complain
took place in a **four month period** – from May 16 through September 11, 2000. Nevertheless,
plaintiffs' **Subpoenas seek the production** of documents regarding all Walker financial
transactions, even in non-Priceline products, for a **three year period**, from January 1, 1999
through December 31, 2001. Subpoenas (Irving Decl. Exs. A, B and C), p. 4.

scienter. Irving Decl. ¶ 6. According to plaintiffs, they hope to find some information in Walker's non-Priceline financial transactions that might have motivated Walker to make statements that were likely to cause an increase in the market price of Priceline stock. However, this argument is not supported in the law.

Based on plaintiffs' theory, every individual ever sued for securities fraud would be required to lay bare his entire financial condition to every securities fraud plaintiff on the ephemeral hope that something in the defendant's finances might have caused him to want his stock to be worth more money rather than less money, and so, in plaintiffs' imagined world, motivate him to make unduly positive statements about the company. But this is not the law. Despite the innumerable cases issued in the securities litigation field, we could not find a single case that approved of pre-judgment discovery into a defendant's finances on this basis, and neither could plaintiffs.[12]

The law does not support plaintiffs' contention that they should be given carte blanche to peruse Walker's and his company's private financial information on the ephemeral hope of drumming up some motivation to make positive statements about Priceline. The necessity to avoid such an invasion of financial privacy, as reflected in the cases cited in Section III.B.1. and 2. above, clearly outweighs the hypothetical value of plaintiffs' proposed fishing expedition.[13]

---

[12]    In the meet and confer that preceded the filing of this motion, we asked plaintiffs if they could cite to a single case that approved of such discovery for this purpose. They responded that the case law on which they relied was cited in Plaintiffs' Goldman Opposition. However, not a single case cited there approved of pre-judgment discover of a defendant's finances on the grounds that such discovery would be relevant to proving scienter on a securities fraud claim. When this fact was pointed out, plaintiffs were unable to identify any case so holding. Irving Decl. ¶¶ 6-7.

[13]    In an earlier discovery dispute between plaintiffs and other defendants in the case (not including Walker), plaintiffs argued trades in other securities were relevant because these other defendants had contended that their trades were consistent with their regular trading practices, and Judge Squatrito ruled in favor of plaintiffs. See Memorandum of Decision and Order dated November 23, 2005 [Docket No. 243], a copy of which is attached as Ex. J to the Irving Decl.

However, as evidenced by Plaintiffs' Goldman Opposition, plaintiffs **do not contend** that that theory applies to Walker.

**D.     The Time Frame of the Subpoenas Is Overbroad and Contrary to the Earlier Orders of the Court.**

In addition to the fact that no production should be made of transactions that are not trades of Priceline securities, the three year time frame of the Subpoenas is overly broad whether considered in connection with Priceline securities or non-Priceline transactions.

**1.     Financial Transactions That Are Outside the Class Period Could Not Be Relevant.**

As discussed above, plaintiffs' two proffered reasons for wanting unbridled access to Walker's financial records cannot support this invasion of private financial information:  (1) the law forbids discovery of a defendant's financial records for the purpose of assessing his ability to satisfy a judgment; and (2) there is no legal authority for invading a defendant's privacy by allowing discovery of a defendant's finances under the theory that they might be relevant to scienter in a securities fraud claim.

This latter point is especially true of transactions that are outside the Class Period.  Such transactions, whether of Priceline stock or otherwise, cannot demonstrate motivation to increase the price of Priceline stock at an earlier time, during the Class Period.  Any such transactions would, by definition, take place after the announcements that plaintiffs would characterize as "corrective disclosures" that caused the price of Priceline stock to decline at the close of the Class Period.  A transaction at this relatively deflated price could not have motivated an earlier, alleged inflation of Priceline's stock price.

**2.     The Subpoenas Demand Documents for a Time Period That Exceeds the Limits Earlier Set by the Court.**

On April 6, 2005, Judge Squatrito issued an order forbidding the plaintiffs from seeking discovery from the defendants for any time period outside the March 1, 1999 through April 1, 2001 time period without first convincing the Court that there exists good cause to veer from the Court's order. *See* Order dated April 6, 2005 [Docket No. 164] ¶ 5 ("All requests for documents

and information directed to defendants shall be limited to this time period unless otherwise specified for good cause.")

Judge Squatrito applied this same time limitation to the discovery requests plaintiffs' have directed to nonparties through subpoenas, as well as to plaintiffs' discovery requests to the defendants.  See, e.g., Memorandum of Decision and Order dated June 14, 2005 [Docket No. 184], p. 3 (limiting production by then nonparty Deloitte Touche Tohmatsu to "the relevant time period set by the court, which is March 1, 1999 through April 1, 2001").[14]

In the Bank Subpoenas, plaintiffs inexplicably disregard these Court orders and seek documents for a three-year period – from January 1, 1999 through December 31, 2001.  Subpoenas, Schedule A, p. 4.  In other words, plaintiffs seek to invade the privacy of Walker's finances for a period that is **28 months longer than the 8-month Class Period**.

In the meet and confer that preceded the filing of this motion, plaintiffs attempted to rationalize their violation of the Court orders by contending that the April 6, 2005 Order followed a discussion of a large volume of documents sought to be produced, and – plaintiffs asserted without any factual basis whatsoever – the Bank Subpoenas don't.[15]  But the April 6, 2005 Order did not limit its applicability to document requests likely to elicit a particular sized production.  That order made its applicability quite clear:  "**All** requests for documents and information directed to defendants shall be limited to this time period unless otherwise specified for good cause."  April 6, 2005 Order ¶ 5.

### E.    The Subpoenas Are Fatally Overbroad.

The desperation of plaintiffs' discovery plan is evident in the absurdly broad net they attempt to cast in the form of the Bank Subpoenas.  In addition to seeking documents of Jay

---

[14]    Copies of the April 6, 2005 Order and June 14, 2005 Order are attached, respectively, as Exhibits K and L to the Irving Decl.

[15]    Plaintiffs' assertion that the Subpoenas do not call for a large amount of documentation is flatly contradicted by their assertion in the same conversation that the Subpoenas require production of all the documentation of any accounts of hundreds of employees and other people and entities associated with Walker Digital.  Irving Decl. ¶ 8.

Walker's financial transactions and those of Walker Digital, through a labyrinth of interlocking definitions the Bank Subpoenas literally request documents for any accounts of **hundreds of individuals and companies.**

Each of the Subpoenas demands the production of a plethora of different types of documents "relating to the Walker Accounts" maintained by each Bank. "Walker Accounts" are defined to include any account maintained by or on behalf of, or in which a financial interest was held by:

 (1) Jay S. Walker;

 (2) Walker Digital, and

 (3) Atlantis Interactive.[16]

Subpoenas, Schedule A, ¶ 16. Walker Digital is, in turn, defined to include Walker Digital Corporation, Walker Digital LLC, and

> any subsidiaries, affiliates, segments or divisions thereof, any present and former members of the Board of Directors of Walker Digital, or its subsidiaries, affiliates, segments or divisions and any present or former officers, employees, attorneys, agents, representatives or other persons (as defined below) acting or purporting to act on behalf of Walker Digital or its subsidiaries, affiliates, segments or divisions.[17]

*Id.*, ¶ 3.

---

[16] The Merrill Lynch and Morgan Stanley Subpoenas demand production relating to all Atlantis Interactive accounts. Irving Decl. Exs. A and B, Schedule A, ¶ 16. The Chase Manhattan subpoena seeks documents relating to a specific Atlantis Interactive account, as well as documents relating to all accounts of affiliates of Walker Digital, which might also encompass Atlantis Interactive. Irving Decl. Ex. C, Schedule A, ¶ 16.

[17] Walker's counsel asked plaintiffs how they defined "affiliates" for purposes of these Subpoenas, since that term is not defined in the Subpoenas themselves. However, plaintiffs refused to provide any parameters of that term beyond "the common sense meaning" of the word.

Consequently, the subpoenas broadly seek the production of documents relating to any account of any type held at the Banks by any of hundreds of employees[18] – from the mailroom clerks to the CEO – of Walker Digital Corporation or Walker Digital LLC or Atlantis Interactive or any company affiliate thereof.  Indeed, because the law firms filing this motion represent Walker Digital in certain matters, the Bank Subpoenas literally demand production of any accounts that these law firms, or any of their individual attorneys who work on Walker Digital matters, may have maintained at the Banks covered by the Subpoenas.

This aspect of the absurdly broad scope of the Bank Subpoenas was discussed with the plaintiffs at the meet and confer.  Walker's counsel asked whether, in fact, plaintiffs wanted the Banks to produce account documentation of these hundreds of individuals and entities, and plaintiffs' counsel said yes.  Plaintiffs were, however, unable to explain any cogent reason why the private bank records of these hundreds of people and entities could have any relevance to the claims and defenses in this action.  Irving Decl. ¶ 8.

Plaintiffs' discovery demands are ridiculously overbroad and have been launched without regard to any reasonable limits in terms of time, the cost of production or the rights of any of the people and entities affected by plaintiffs' inane demands.  Plaintiffs' demand for the bank records of hundreds of people without regard to the lack of connection that those records have to this case is emblematic of the complete disconnect between plaintiffs' discovery demands and any legitimate discovery objective.  A protective order is required to redress this rank abuse of the discovery process.

> **F.      Plaintiffs Failed to Timely Serve the Subpoenas.**

Plaintiffs have repeatedly tried to, and succeeded at, disadvantaging Walker by failing to timely serve on Walker subpoenas that plaintiffs issue to nonparties in this action, including subpoenas for Walker's private financial documents.  In order to deprive Walker of the time the

---

[18]     For example, in June 2000 alone, it was reported that Walker Digital had 190 employees. J.D. Epstein, "Brainstorming for a Living," *The News Journal* (Wilmington, DE), June 18, 2000, a copy of which is included in Ex. N to the Irving Decl.

Federal Rules allow him to properly bring to the Court's attention the impropriety of the plaintiffs' Subpoenas, the plaintiffs failed to serve the Subpoenas on Walker's counsel, or even apprise Walker's counsel of their existence, when they were issued and served on the witnesses.

For example, with respect to the Goldman Sachs subpoena:

(1)     On July 25, 2006, plaintiffs issued the subpoena, calling for production on August 18, 2006. Plaintiffs did not serve Walker (or any defendants) with the subpoena at that time. Irving Decl. Ex. M.

(2)     A week later, on August 1, 2006, plaintiffs effected service of the subpoena on Goldman Sachs. Still, plaintiffs did not provide Walker any notice of the subpoena.

(3)     Three additional days later, and so 10 days after the subpoena was issued, plaintiffs finally deigned to send Walker notice of the subpoena to Goldman for Walker's personal financial records, but even then did so in a manner designed to further delay Walker's receipt of the information. They didn't email it. They didn't fax it. They didn't even overnight it. Instead, they put it in the regular U.S. mail. Irving Decl. Ex. M. Not surprisingly, it took three more days to arrive.

(4)     On August 7, 2006, a full 13 days after plaintiffs issued the subpoena, Walker's counsel received their first notice or it, when it arrived in the mail. Irving Decl. ¶ 14.

The time line on the Chase Manhattan, Merrill Lynch and Morgan Stanley Subpoenas was similarly egregious.

(1)     On August 18, 2006, plaintiffs issued the Subpoenas, calling for production by the Banks on September 5, 2006. Plaintiffs, however, did not serve Walker (or any defendants) with the Subpoenas at that time.

(2)     Later, when plaintiffs effected service of the Subpoenas on the Banks, plaintiffs still did not provide Walker any notice of the Subpoenas.

(3)     On August 30, 2006, a full 12 days after the Subpoenas had been issued, and just three business days before the date the face of the Subpoenas designated as the date for production, plaintiffs first sent Walker and the other defendants notice of the Subpoenas. Irving

Decl. Ex. D. However, even plaintiffs realized that this wouldn't fly, and accompanied the notice of the Subpoenas with a letter voluntarily extending the production time by one week.

(4)    However these notices were not emailed or faxed, and did not arrive at the offices of Walker's counsel or counsel for the other defendants until August 31, 13 days after the Subpoenas had been issued.  Irving Decl. ¶ 14.

These tactics are a clear violation of the Federal Rules of Civil Procedure.  "A party issuing a subpoena to a nonparty for the production of documents during discovery must provide **prior notice** to all parties to the litigation.  Fed. R. Civ. P. 45(b)(1) . . . ."  *McCurdy v. Wedgewood Capital Management Co.*, 1998 U.S. Dist. LEXIS 18875, at \*23-24 (E.D. Pa. November 16, 1998) (emphasis added).

> The term "prior notice" has been interpreted to mean notice **prior to service of the subpoena on the nonparty** rather than prior to document production. See e.g. *Biocore Medical Technologies, Inc. v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003* at \*5 (D.Kan. 1998). **The purpose of prior notice is to afford other parties an opportunity to object to the production** or inspection and to obtain the materials at the same time as the party who served the subpoena. Id. (citing *Fed.R.Civ.P. 45* committee note, 1991 amendments and *Seewald v. IIS Intelligent Information Sys., Ltd., 1996 WL 612497* at \*4 (E.D.N.Y. 1996)).

*Id.* at \*24.

> The risks attached to misuse of the subpoena power are great. Under this delegation of public power, an attorney is licensed to access, through a nonparty with no interest to object, the most personal and sensitive information about a party. By failing to receive prior notice of the information sought from the nonparty, a party is deprived of its greatest safeguard under the Rule, i.e., the ability to object to the release of the information prior to its disclosure. . . . .

Moreover, misuse of the subpoena power is not limited to the harm it inflicts upon the parties, it also compromises the integrity of the court's processes. When the power is misused, public confidence in the integrity of the judicial process is eroded. Therefore, the failure to provide prior notice to Defendant of the subpoenas cause[s] injury to the public.

*Id.* at *26-27.

Because the plaintiffs in *McCurdy*, like the plaintiffs here, failed to serve the defendant with a subpoena until two weeks after it was issued, the *McCurdy* court held that the plaintiff violated Rule 45(b)(1). The court therefore ruled that "any future failure to comply with the Federal Rules will meet with proof preclusive sanctions or an order directing Plaintiff to pay counsel fees incurred by Defendant in bringing the violation to the attention of the Court." *Id.* at *29. A similar order is warranted here.

At the meet and confer that preceded the filing of this motion, Walker's counsel raised with the plaintiffs their failure to timely serve subpoenas on the defendants. While plaintiffs acknowledged that they needed to "do a better job" on that score, they declined Walker's counsel's express request that plaintiffs serve the defendants with notice of subpoenas when those subpoenas were issued. There is no reason for plaintiffs not to do this – other than to deliberately deprive defendants of adequate notice. Walker requests that the Court order plaintiffs to serve defendants with notice of subpoenas when plaintiffs issue the subpoenas.

## IV.    CONCLUSION

For the foregoing reasons, Walker respectfully requests that this Court grant the motion and issue a protective order:

(1)    quashing the subpoena to Chase Manhattan Bank in its entirety on the grounds that it is directed to a non-existent entity and issued by the wrong court;

(2)    limiting the production of documents by the Banks to documentation of accounts maintained by Jay S. Walker, Walker Digital Corporation, Walker Digital and/or Atlantis Interactive; and

(3)    within those accounts, limiting production to those documents or portions of documents reflecting holdings, purchases, sales or pledges of Priceline securities and requiring the redaction of information relating to any holdings or transactions other than holdings, purchases, sales or pledges of Priceline securities;

(4)    additionally limiting the time period for which documents will be produced in response to Requests 2 through 6 to the Class Period and requiring the redaction of information relating to holdings or transactions outside this period;

(5)    additionally limiting the time period for which documents will be produced in response to Requests 1, 7 and 8 to the period from March 1, 1999 through April 1, 2001, and requiring the redaction of any information in these documents relating to any holdings or transactions outside the Class Period;

(6)    requiring the redaction of personal identifying and similar, private information;

(7)    directing plaintiffs to provide contemporaneous notice to defense counsel contemporaneously with the issuance of any subpoena; and

(8)    granting such other and further relief as the Court deems appropriate.

DATED:  September 11, 2006                    Defendant, Jay S. Walker

                                              By: *[signature]*

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
Phone:  (203) 977-7300
Fax:    (203) 977-7301
tdgoldberg@dbh.com – E-mail

                    - and -

J. Michael Hennigan (phv01119)
Bruce Bennett (phv01115)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01117)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Fax: (213) 694-1234
irvingj@hbdlawyers.com – E-mail

His Attorneys