EXHIBIT N – PART 1

LEXSEE

Richard McCurdy, Trustee, Laborers' Industrial Pension Plan, Plaintiff, v. Wedgewood Capital Management Co., Inc., Defendant.

CIVIL ACTION No. 97-4304

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1998 U.S. Dist. LEXIS 18875

November 16, 1998, Decided
November 16, 1998, Filed

**DISPOSITION:** [*1] Defendant's Motion for Protective Order GRANTED in part and DENIED in part. Plaintiff and Defendant's Motions for sanctions DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff pension fund (fund), instituted an action in the district court (Pennsylvania) under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., claiming that respondent manager breached its fiduciary duty by investing the fund's money in a limited partnership. The manager filed a motion for protective order and for sanctions. The fund filed a counter motion to compel discovery and for sanctions.

**OVERVIEW:** The manager alleged misuse of subpoenas because the fund failed to provide notice to the manager until approximately two weeks after the subpoena was issued and served. Therefore, the court held that the fund violated Fed. R. Civ. P. 45(b)(1) by giving the manager late notice of the subpoena. However, the court held that the manager suffered little, if any, actual prejudice as a result of the fund's violation of the notice requirement because the parties appeared to concede that much of the information covered by the challenged subpoena could have been obtained pursuant to state statute, and since the manager did not demonstrate that they would be entitled to entry of a protective order even if they had been given proper notice. Therefore, this court did not impose sanctions on the manager. The court also held that the fund was not entitled to access to compel discovery of facts concerning the manager's financial status to determine the manager's ability to satisfy a judgment. The court also determined that the parties must have provided prior notice to opposing counsel on all future subpoenas.

**OUTCOME:** The manager's motion for protective order was granted, in part, and denied, in part. The fund and the manager's motions for sanctions were denied. The manager was ordered to produce those documents identified by the fund that the manager conceded to have been subject to discovery.

**CORE TERMS:** discovery, subpoena, protective order, partnership, disclosure, prior notice, partner, fiduciary, inspection, entity, notice, withheld, good cause, privileged, relevance, compel discovery, general partner, production of documents, pension fund, relevancy, servicing, subject matter, redacted, concede, certification, memorandum, discovery of admissible evidence, subject to discovery, court action, in camera

LexisNexis(R) Headnotes

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN1] See 29 U.S.C.S. § 1104(a).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN2] See 29 U.S.C.S. § 1109(a).

*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Pretrial Matters > Subpoenas*

Page 1

[HN3] Fed. R. Civ. P. 26(c) provides that a person or party from whom discovery is sought may move the court, for good cause shown, to issue an order protecting the person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). This rule authorizes the court to order that certain matter not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. The court is authorized to issue a protective order only after a showing that good cause exists for the protection of the material. The party requesting the protective order has the burden of demonstrating good cause. "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. In determining whether "good cause" exists for the issuance of a protective order, courts apply a balancing of interests standard.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Protective Orders*
[HN4] Fed. R. Civ. P. 26(c) provides that upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN5] Fed. R. Civ. P. 45(b)(1) provides that, service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person. Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Fed. R. Civ. P. 5(b).

*Civil Procedure > Pleading & Practice > Motion Practice > Content & Form*
*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
*Criminal Law & Procedure > Discovery & Inspection > Discovery Misconduct*
[HN6] Fed. R. Civ. P. 34(b) requires that a request for documents must describe each item and category with reasonable particularity. Moreover, a party seeking discovery must demonstrate a real, practical need for the information.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN7] Fed. R. 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, the information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Discovery > Relevance*
[HN8] Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case. Instead, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. The relevance standard will depend on the context of the particular action, and the determination of relevance is within the district court's discretion.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN9] When opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Fed. R. Civ. P. 45 notice requirement.

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN10] Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. Under Fed. R. Civ. P. 26(b)(1) the information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Civil Procedure > Discovery > Relevance*

[HN11] Fed. R. Civ. P. 26(b)(1) sets forth a two step process in determining the scope of discovery; first, whether the information sought is relevant and, if so, whether the information is privileged.

*Civil Procedure > Discovery > Relevance*
[HN12] Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings. Relevancy has been defined, for purposes of discovery, as encompassing any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. However, practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
*Civil Procedure > Discovery > Relevance*
[HN13] A party seeking a protective order on the ground that the documents sought are irrelevant must demonstrate to the court that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Thus, the party resisting production of discovery ordinarily bears the burden of establishing lack of relevancy. Since the precise boundaries of the Fed. R. Civ. P. 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the district court's discretion.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
[HN14] Fed. R. Civ. P. 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence.

**COUNSEL:** For RICHARD MCCURDY, TRUSTEE, LABORERS' INDUSTRIAL PENSION PLAN, PLAINTIFF: RICHARD KIRSCHNER, M. KAY GARTRELL, KIRSCHNER AND GARTRELL, P.C., WASHINGTON, DC USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: DOUGLAS N. CANDEUB, ADELMAN, LAVINE, GOLD AND LEVINE, PHILA, PA USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: MARK S. MILLER, POWELL, GOLDSTEIN, FRAZER & MURPHY, ATLANTA, GA USA.

For WEDGEWOOD CAPITAL MANAGEMENT CO., INC., DEFENDANT: MARK J. FOLEY, KLETT LIEBER ROONEY & SCHORLING, PHILADELPHIA, PA USA.

For POWELL, GOLDSTEIN, FRAZER & MURPHY LLP, MOVANT: W. SCOTT SORRELS, POWELL, GOLDSTEIN, FRAZER & MURPHY, ATLANTA, GA USA.

**JUDGES:** PETER B. SCUDERI, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** PETER B. SCUDERI

**OPINION:**

### MEMORANDUM AND ORDER

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

November 16, 1998

Before the court is Defendant, Wedgewood [*2] Capital Management Co., Inc.'s ("Defendant") Motion for Protective Order and For Sanctions for alleged misuse of subpoenas (Doc. 19); Plaintiff, Richard McCurdy, Trustee, Laborers' Industrial Pension Plan's ("Fund" or "Plaintiff") Memorandum in Opposition thereto and Counter Motion to Compel Discovery and for Sanctions pursuant to Fed. R. Civ. P. 26(c) (Doc. 20); Defendant's Reply (Doc. 21); Plaintiff's Reply (Doc. 24); and Defendant's Sur-Reply thereto. (Doc. 27).

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff, a pension fund, instituted the present action against defendant, an investment manager of several million dollars of plaintiff's assets, under the Employee Retirement Income Security Act ("ERISA") claiming that Defendant breached its fiduciary duty by investing $ 950,000.00 of plaintiff's funds in a Limited Partnership whose only asset was certain "Purchased Mortgage Servicing Rights," allegedly an "esoteric, unmarketable investment consisting of pools of stripped mortgage rights." 29 U.S.C. § § 1104(a)(1)(B) & (C); n1 and 1109(a). n2 In a two count complaint, Plaintiff alleges that the investment, which was made in 1993, was a [*3] clear violation of fiduciary duties imposed by 29 U.S.C. § § 1104(a)(1)(B) (Count I) and 1104(a)(1)(C) (Count II) because it violated the parties' contract for Investment

Page 3

Services as well as Plaintiff's Investment Guidelines, incorporated therein, that restricted Defendant to investments in "fixed income securities which were highly marketable." (Doc. 20 at 6-7); (Doc. 19 at 2-3). In their brief in support of the instant motion, Plaintiff asserts that Defendant also breached its fiduciary duty when it (1) signed limited partnership agreements, and other partnership documents in plaintiff's name without legal authority; (2) became the General Partner in the very partnership in which it had made Plaintiff a limited partner; (3) issued misleading reports that failed to inform Plaintiff of facts related to its management of Plaintiff's money including the fact that Plaintiff had been made limited partner in two partnerships and that the partnerships were created for the purpose of dealing in highly-speculative investments and to fulfill Plaintiff's own obligation to another corporation, Universal Investment Services, Inc., rather than because they were thought to be a good and appropriate [*4] investment. (Doc. 20 at 7; Doc. 24 at 2-3). According to the Plaintiff, "If [Defendant] harmed the Plaintiff in order to line its own pockets or the individual pockets of its principals, or to benefit other clients, or to satisfy other of its obligations completely unrelated to Plaintiff, then Defendant has violated its duty of loyalty to Plaintiff." (Doc. 20 at 25).

n1  [HN1] 29 U.S.C. § 1104(a) is entitled "Prudent man standard of care" and provides,

> (1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
> (I) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

[*5]

n2  [HN2] 29 U.S.C. § 1109(a) provides:

> Liability for breach of fiduciary duty: (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

1. The Investment

In 1992, Plaintiff, a Taft-Hartley jointly administered pension fund governed by ERISA, retained the services of Defendant as an investment manager of $ 7,500,000.00 of its assets. The parties executed a contract for Investment Management Services incorporating a fee schedule and investment guidelines. (Plaintiff's Ex. E). The investment guidelines were particular to Plaintiff [*6] and limited the type of investments Defendant was permitted to make to "fixed income securities" which were "high quality, marketable securities." (Doc. 20 at 7, 9; Agreement paragraph 9).

On December 28, 1992, Defendant signed a "Letter of Intent" committing Defendant to purchase $ 15 million dollars worth of Purchased Mortgage Servicing Rights ("PMSR") from Universal Investment Services, Inc. ("Universal") that Defendant would then sell to its clients. On February 24, 1993, Universal notified Defendant that it was $ 11 million short on its payments for the

PMSR portfolios and indicated that Universal was prepared to sue for the money.

On April 14, 1993, Defendant purchased a 49.5% interest in a Maryland Limited Partnership, known as "Purchased Mortgage Servicing Rights III, Limited Partnership" (PMSR III) with $ 950,000 of Plaintiff's assets. The PMSR III limited partnership purchased PMSRs as its only asset. (Pls. Mem. at 7 & Ex. F). Plaintiff later learned that the PMSR III limited partnership was, itself, a limited partner in a partnership in which the Dovenmuehle Mortgage Co. served as general partner (the "Dovenmuehle limited partnership"). (Doc. 24 at 4). The Dovenmuehle [*7] limited partnership, in turn, acquired "FNMA" purchased mortgage servicing rights. (Doc. 20 at 9). n3

> n3 Plaintiff asserts "thus from the very inception of the 1993 investment, and unknown to plaintiff, there was a three-tiered construct or pyramid; the Pension Fund and Pennsylvania State Workers' Insurance Fund limited partnership (PMSR III) which, in turn, had a limited partnership arrangement with Dovenmuehle, which, in turn, acquired FNMA purchased mortgage servicing rights." (Doc. 20 at 9).

Plaintiff alleges, further, that Defendant signed the PMSR III limited partnership agreement on behalf of both limited partners of PMSR III, Plaintiff and Pennsylvania State Workers' Insurance Fund ("Pa.SWIF"). (Doc. 20 at 8 n. 8, 16). While Plaintiff paid $ 950,000 for 46.5% of PMSR III its co-limited partner, Pa.SWIF, paid only $ 899,999 for a 49.5% interest in PMSR III; (Doc. 20 at 22). In 1994, Defendant succeeded Universal Equity Funding, Inc. as general partner of PMSR III. (Doc. 20 at 8, n. 8).

In 1996, the PMSR [*8] investment was sold for $ 363,433.16. This action was filed in July, 1997. n4 On June 3, 1998, Plaintiff issued and served a subpoena on the City of Philadelphia and its Board of Pensions and Retirement, a non-party former client of the Defendant, without concurrent notice to Defendant's attorney of record. n5 (Def. Mem at 3). The subpoena commands the City of Philadelphia and its Board of Pensions and Retirement to "produce and permit inspection and copying" of "all records related to investments made, administered, or sold by Defendant Wedgewood Capital Management Company, Inc. pursuant to its investment management contract with either the City of Phila. and/or the Board of Pensions and Retirement, excluding documents protected by attorney-client privilege or as work product." (Doc. 19, Ex. A). The records were to be produced on "June 19, 1998" at "10 a.m." (Doc. 19, Ex. A).

> n4 The complaint was amended in December, 1997.

> n5 Defendant's attorney of record is Douglas N. Candeub, Esq., of Adelman, Lavine, Gold, and Levin. Def. Mem at 3.

[*9]
On June 17, 1998, two days prior to the date set for producing the documents, the Defendant was notified of the subpoena during a telephone conversation with Plaintiff's counsel. (Doc. 19 at 4).

On June 24, 1998, plaintiff's counsel received the requested documents which had been forwarded by the City of Philadelphia on June 23, 1998 in response to the subpoena. (Doc. 19, Ex. C) (Letter from Judith E. Ryan, Esq.).

During the June 17, 1998, telephone conversation notifying Defendant of the subpoena, plaintiff's counsel explained that the failure to provide Defendant with a copy of the subpoena earlier was "inadvertent." (Doc. 19 at 4). In a letter dated June 17, 1998, counsel for Plaintiff Laborers Fund forwarded a copy of the subpoena to Defendant and explained, again, that the copy had "inadvertently" not been sent to him. (Doc. 19, Ex. B). The letter and copy of the subpoena enclosed therewith was not received by counsel for Defendant until July 23, 1998. Def. Ex. B (notation: "received 7/23/98"). Thus, far, Plaintiff has also issued or will issue subpoenas to the following persons or entities:

> (1) Dovenmuehle Mortgage Company, L.P., the limited partnership in which Dovenmuehle [*10] Mortgage Company, Inc., was the General Partner and in which PMSR III was a limited partner. With the Pension Fund's $ 950,000 Wedgewood bought in the Fund's name a 49.5% limited partnership interest in the PMSR III Limited Partnership, which then was itself made a limited partner in the Dovenmuehle Mortgage Company Limited Partnership;
> (2) Dovenmuehle Mortgage Co., Inc.;
> (3) James Casselberry, former President of Wedgewood, brought in by Wedgewood in part to deal with the "servicing rights" problem investments, including that of PMSR III;
> (4) Michael Lucas, former Vice-President of Wedgewood, who expressed grave

concerns about the limited partnership investments, including PMSR III;

(5) Nora Bustamonte, former Vice President of Wedgewood, who dealt with "servicing rights" such as those owned by the PMSR III limited partnership in which the Pension Fund was a limited partner;

(6) Universal Equity Funding, Inc., c/o Jeffrey Kosow, which was the General Partner in the PMSR III partnership to which the Fund belonged as a limited partner;

(7) Universal Investment Services, Inc., an affiliate of Universal Equity Funding, Inc., which secured the 1992 "Letter of Intent" from Wedgewood [*11] to buy the mortgage servicing rights, which were subsequently purchased by PMSR III;

(8) Frank Tibbs, Asset Management Advisors, L.C., who was an independent consultant brought in by Wedgewood specifically in regard to the "servicing rights" investments of PMSR III and other limited partnerships which Wedgewood invested in for other, similarly situated, pension funds;

(9) Daryl C. Dennis, former President and Chief Investment Officer of Wedgewood who signed the PMSR III agreement on behalf of the Pension Fund, and also on behalf of the only other limited partner, the Pennsylvania State Workers' Insurance Fund (Pa.SWIF);

(10) Powell, Goldstein, et al. (Former counsel to Wedgewood) who advised plaintiff's counsel that it was in close contact with defendant Wedgewood and was in fact awaiting Wedgewood's responses so that it could determine which documents it would withhold on the basis of privilege; n6 (Doc. 20, Ex.L) and

(11) Malcolmn Pryor, individually, and as the principal in four financial adviser/broker entities in which he is an owner (in addition to Defendant). (Doc 20 Ex. B). n7

(Doc. 20 at 5-6). Discovery must be completed by February 8, 1999.

n6 The subpoena was quashed on July 22, 1998, but the Powell firm produced documents in response to an identical subpoena issued from federal district court in the District of Columbia, where the law firm also has offices. (Doc. 20 at 6).

[*12]

n7 Defendant was established and owned by Pryor, McClendon, Counts & Co., Inc. ("PMC"), a Philadelphia Brokerage firm/investment banker, and/or by the individual principals of PMC, all of whom served as directors of Defendant and, at various times, officers as well.

## II. STANDARD OF REVIEW

Defendant has filed the instant Motion for a Protective Order n8 pursuant to Fed. R. Civ. P. 26(c) n9 based on Plaintiff's failure to give Defendant prior notice of serving subpoenas as required by Fed. R. Civ. P. 45. n10 [HN3] Rule 26(c) provides that a person or party from whom discovery is sought may move the court, for good cause shown, to issue an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ. P. 26(c). This rule authorizes the court to order that certain matter not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. Moore's Federal Practice 3d. § 26.105[5] (1998). The court is authorized to issue a protective order only after a showing that good cause exists for the protection [*13] of the material. Id. The party requesting the protective order has the burden of demonstrating good cause. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (stating party seeking protective order must demonstrate that good cause exists for protection of particular material and holding that parties failed to sustain burden of demonstrating specific injury from public dissemination of privileged documents). "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Id. In determining whether "good cause" exists for the issuance of a protective order, courts apply a balancing of interests standard. see In re Eli Lilly & Co. Proza Prod. Liab. Lititig., 142 F.R.D. 454, 460 (S.D.Ind. 1992) (motion by drug manufacturer for entry of protective order redacting names from documents); Arenson v. Whitehall Convalescent & Nursing Home, Inc., 161 F.R.D. 355, 358 (N.D.Ill. 1995) (information sought had significant probative value and privacy interests were sufficiently protected by redaction of names). Irrelevancy satisfies the good cause requirement. Smith v. Dowson, 158 F.R.D. 138, 140 [*14] (D.Minn. 1994) (granting protective order on ground that actions taken by arresting officers in subsequent investigations, after release of erroneously arrested individual, is wholly irrelevant to plaintiff's claim that his arrest and detainer was without probable cause and in violation of

his civil rights); Hall v. Harleysville Ins. Co., 164 F.R.D. 172, 173 (E.D.Pa. 1995) (although contents of consumer credit reports were relevant to action, names and other identifying information were not and were subject to redaction).

n8 Defendant asserts that the June 3, 1998, subpoena was served by Plaintiff "without notice to Defendant's attorney of record" and is "so broad categorically as to encompass everything bearing on [Defendant]" and "stands to interfere detrimentally with their business relations with . . . former or current clients." Def. Mem at 3, 5. Defendant claims that "If [they] had received advance notice of the subpoena served on the City of Philadelphia, they would have moved for a protective order with respect to the discovery sought thereby."

n9 [HN4] Fed. R. Civ. P. 26(c) governing "Protective Orders" provides,

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (1) that the disclosure or discovery not be had;
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
> (5) that discovery be conducted with no one present except persons designated by the court;
> (6) that a deposition, after being sealed, be opened only by order of the court;
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way;
> (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

[*15]

n10 [HN5] Fed. R. Civ. P. 45(b)(1) provides that,

> . . . Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person . . . Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)."

Fed. R. Civ. P. 5(b) provides,

> Service shall be made upon the attorney . . . by delivering a copy to the attorney or party or by mailing it to the attorney or party at the attorney's or party's last known address or, if no address is known, by leaving it with the clerk of court.

In the event that a Motion for Protective Order is granted, Fed. R. Civ. P. 26(c) provides that sanctions may be imposed in accordance with the provisions of Fed. R. Civ. P. 37(a)(4), which sanctions may include, but are not limited to, reasonable attorney's fees. n11 Cuthbertson v. Excel Industries, Inc. 179 F.R.D. 599, 1998 WL 237687 at *6 (D. Kan. 1998).

n11 The provisions of Fed. R. Civ. P. 37(a)(4) "Expenses and Sanctions" apply to the award of expenses incurred in relation to a Motion for Order Compelling Disclosure or a Motion for Protective Order filed pursuant to Fed. R. Civ. P. 26(c). Rule 37(a)(4)(A), (B), & (C) provides,

> (A) If the Motion [for Order Compelling Disclosure] is granted, or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the Motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing parties non disclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.
> (B) If the Motion [for Order Compelling Disclosure] is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion, the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.
> (C) If the Motion [for Order Compelling Disclosure] is granted in part and denied in part, the court may enter a protective order authorized under 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

[*16]

As a result of the alleged misuse of the subpoena by Plaintiff, Defendant requests that this court enter an order imposing the following sanctions for repeated failure to provide notice to Defendant prior to serving subpoenas on third parties: (1) limiting fund to discovery into matters pertaining to Plaintiff's dealings with Defendant and not matters concerning other current or former clients; (2) directing Plaintiff to give adequate advance notice to Defendant before serving subpoenas on third party witnesses; (3) directing Plaintiff to pay Defendant's reasonable attorney's fees incurred in filing the Motion and that Plaintiff be prohibited from utilizing or disclosing the City of Philadelphia records or any information obtained from them and return any copies received to the custodian of records of the City of Philadelphia.

In the instant Motion, Defendant does not object to all information sought by the Plaintiff nor does Defendant object, on relevance grounds, to every subpoena issued by the Plaintiff. Instead, Defendant objects only to (1) "third party discovery sought from the City of Philadelphia;" (2) discovery from "other present or former clients;" and (3) "to subpoenas [*17] directed to various entities in which [defendant's] director Malcolmn Pryor is involved for purposes of fishing into a 'piercing the corporate veil argument'." (Doc. 27 at 5).

Plaintiff has responded to Defendant's Motion by filing a Counter Motion to Compel Discovery pursuant to Fed. R. Civ. P. 37(a)(2)(B). Rule 37(a)(2)(B) provides that "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." [HN6] Fed. R. Civ. P. 34(b) requires that a request for documents must "describe each item and category with reasonable particularity." Moreover, "a party seeking discovery must demonstrate a real, practical need for the information." Consolidated Rail Corp. v. United States, 812 F.2d 1444, 1463 (3d Cir. 1987).

Plaintiff argues that this court should dismiss Defendant's Motion for Protective Order because the documents sought and obtained pursuant to the subpoena served on the City of Philadelphia [*18] City Employees Pension Fund, a public city agency, were discoverable under either state or city right-to-know laws, 65 P.S. § 66.1 et seq. n12 and Section 5-1104 n13 of the Philadel-

phia Home Rule Charter. n14 Plaintiff also moves to compel discovery pursuant to Fed.R.Civ.P. 26(a) n15 and 26(c) n16 seeking an order that: (1) Defendant produce within seven (7) days, unredacted copies documents already produced and any requested, relevant documents withheld in their entirety or, in the alternative that, Defendant submit any allegedly undiscoverable documents for review by this court in camera with written explanations as to why the entire document or portions thereof are protected from discovery and allowing Plaintiff an opportunity to respond thereto; and (2) Defendant reimburse Plaintiff for reasonable attorney's fees expended in filing the Motion to Compel document production pursuant to Fed. R. Civ. P. 26(c) which states in relevant part:

> If the motion for protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the [*19] award of expenses incurred in relation to the motion.

   n12 Plaintiff claims that "Plaintiff McCurdy and Laborers' Local 57 Industrial Pension Fund [Fund] are clearly citizens within the meaning of the state statute, and documents requested were clearly public records." PG Pub. Co. v. County of Washington, 638 A.2d 422, 162 Pa. Commw. 196 (1994).

   n13 Plaintiff also claims that "Sec. 5-1104 of the Philadelphia Home Rule Charter clearly entitled plaintiff to the city's records."

> Section 5-1104. Public right to Inspection. City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger the public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is legally privileged, or which have been prepared for or by the Law Department for use in actions or proceedings to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection but the officer, department, board, or commission or other governmental agency of the City having the care and custody of such records may make reasonable regulations governing the time, place, and manner of their inspection and for the purposes of archival preservation, copies of City records may be substituted in lieu of original records.

[*20]

   n14 Plaintiff also contends that the Defendant's Motion should be dismissed for failure to comply with the requirements of Rule 26(c) and Local Rule 26.1(f) providing that all discovery motions include a "Certificate" reciting that counsel made a "reasonable effort" to resolve the discovery dispute. Defendant's Motion [for Protective Order] must be accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. Fed.R. Civ. P. 26(c); Local Rule 26.1(f)("No motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."). Because Defendant has attached the proper certification reciting efforts made by counsel to resolve this dispute to his Motion for Protective Order, we reject this argument as meritless.

   n15 Fed.R.Civ.P. 26(a) provides:

> (1) Initial Disclosures. Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to the other parties"
> (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings identifying the subjects of the information;

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody or control of the party that are relevant to disputed facts alleged with particularity in the pleadings;
(C) a computation of any category of damages claimed by the disclosing party making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure on such computation is based, including materials bearing on the nature and extent of injuries suffered; and
(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

[*21]

n16 Fed.R.Civ.P. 26(c) provides that

If the motion for protective order is denied in hole or in part, the court may, on such terms and conditions as are just, order that any party of other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Federal Rule of Civil Procedure 26(b)(1) n17 provides that the scope of discovery need not be confined to matters of admissible evidence, but may encompass that which appears "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The burden of showing that the requested discovery is not relevant is on the party resisting discovery. see In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D.Pa. 1993)(unreported).

n17 [HN7] Fed. R. 26(b)(1) provides as follows:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, the information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

[*22] [HN8]

Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Instead, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action. Id. The relevance standard will depend on the context of the particular action, and the determination of relevance is within the district court's discretion. Thompson v. Glenmeade Trust, 1995 WL 752422, at *2 n.4 (E.D.Pa. 1995) ("district courts are empowered with broad discretion to manage discovery").

### III. DISCUSSION

### 1. THE PHILADELPHIA SUBPOENA: Prior Notice to Parties

Defendant alleges that Plaintiff violated Fed. R. Civ. P. 45(b)(1) when it issued and served a subpoena for production of documents on third party, City of Philadelphia and Board of Pensions and Retirement (City Employees Pension Fund), without prior notice to Defense counsel. Under Rule 45(b)(1), prior notice of any demand for production of documents before trial must be served on each party [*23] pursuant to Rule 5(b), the Rule covering service and filing of pleadings and other papers. n18

n18 Before the 1991 amendments to Fed.R.Civ.P. 45, the only way to collect documentary evidence from non-parties was through a subpoena duces tecum as authorized by Rule

45(b). But such a subpoena could not be issued independently of a deposition of the custodian of the documentary evidence. In 1991, Rule 45 was revised to "authorize the issuance of a subpoena to compel a non-party to produce evidence independent of any deposition." 1991 Amendment Notes of Advisory Committee on Rules. As noted, the Rule also adopted a special notice requirement in these circumstances. "Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." Fed.R.Civ.P. 45(b)(1).

A party issuing a subpoena to a nonparty for the production of documents during discovery must provide prior notice to all parties to the litigation. Fed. R. [*24] Civ. P. 45(b)(1) ("Prior notice of any commanded production of documents and things . . . shall be served on each party in the manner prescribed by Rule 5(b)."); Spencer v. Steinman, 179 F.R.D. 484, 487 (1998). Rule 5(b) provides that a party can make service either by delivery or mail to the opposing parties attorney. Fed.R.Civ.P. 5(b). When service is by mail, it is complete upon mailing. Fed. R. Civ. P. 5(b). The term "prior notice" has been interpreted to mean notice prior to service of the subpoena on the nonparty rather than prior to document production. See e.g. Biocore Medical Technologies, Inc. v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003 at *5 (D.Kan. 1998). The purpose of prior notice is to afford other parties an opportunity to object to the production or inspection and to obtain the materials at the same time as the party who served the subpoena. Id. (citing Fed.R.Civ.P. 45 committee note, 1991 amendments and Seewald v. IIS Intelligent Information Sys., Ltd., 1996 WL 612497 at *4 (E.D.N.Y. 1996)).

In the instant case, Fund failed to provide notice to Defendant until June 17, 1998, approximately two weeks after the subpoena was issued and [*25] served (June 3, 1998), two (2) days prior to the date set for producing the documents (June 19, 1998), and seven (7) days prior to actual receipt of the requested documents (June 24, 1998). Def. Exhibits A & C. n19 Therefore, the Plaintiff violated Rule 45(b)(1) by giving Defendant late notice of the subpoena. It also appears to be undisputed that Plaintiff's counsel has served at least seven (7) additional subpoenas on third parties and failed to serve any of the subpoenas on Defendant's counsel prior to the time they were served on third parties. (Doc. 19 at 5; Doc. 21 at 2-3; Doc 27 at 2; Doc. 24 at 7). However, Defendant concedes that, unlike in the case of the Philadelphia subpoena, Defendant "independently learned of [at least] six of these subpoenas soon after they were issued" and no harm resulted from the additional violations of Rule 45(b)(1) by the Plaintiff. (Doc. 19 at 5).

n19 Although the letter and copy of the subpoena enclosed therewith was not received by counsel for Defendant until July 23, 1998, Def. Ex. B (notation: "received 7/23/98"), as noted, when service is by mail, it is complete upon mailing. Fed. R. Civ. P. 5(b).

[*26]

Courts generally respond to Rule 45(b)(1) violations by striking the subpoenas, Biocore Medical Technologies v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003 at *5 (D.Kan 1998)(citing Santiago-Lugo, 904 F. Supp. 43, 47 (D.P.R. 1995)), or allowing opposing counsel an opportunity to object. Biocore Medical Technologies v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003 at *5 (D.Kan 1998)(citing Callanan v. Riggers and Erectors, Inc. 149 F.R.D. 519, 519 (D.VI. 1992)). In this case, such remedies are inadequate because the documents sought by the Philadelphia subpoena have already been obtained by the Plaintiff.

The potential harm arising from such violations was addressed by the court in Spencer v. Steinman, 179 F.R.D. 484, 489 (E.D.Pa. 1998), where the court stated:

> The risks attached to misuse of the subpoena power are great. Under this delegation of public power, an attorney is licenced to access, through a nonparty with no interest to object, the most personal and sensitive information about a party. By failing to receive prior notice of the information sought from the nonparty, a party is deprived of its greatest safeguard under [*27] the Rule, i.e., the ability to object to the release of the information prior to its disclosure. Therefore, the loss of the opportunity to object prior to the release of the information caused injury to Defendant. Moreover, misuse of the subpoena power is not limited to the harm it inflicts upon the parties, it also compromises the integrity of the court's processes. When the power is misused, public confidence in the integrity of the judicial process is eroded. Therefore, the failure to provide prior notice to Defendant of the subpoenas cause[s] injury to the public. n20

n20 "Abuse of the subpoena power is not only a violation of the Federal Rules of Civil Procedure, but potentially exposes offending counsel to discipline under the Pennsylvania Rules of Professional Conduct as a violation of the rights of third parties." Spencer v. Steinman, 179 F.R.D. 484, 489 n. 7 (E.D.Pa. 1998) (citing Pa. Rules of Professional Conduct 4.4)). "Such abuse may also be actionable as a tort." Id. (citing Fed. R.Civ.P. committee note, 1991 amendment; Santiago-Lugo, 904 F. Supp. at 48)).

[*28]

Courts have held, however, that [HN9] when opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Rule 45 notice requirement. Seewald v. IIS Intelligent Info. Sys. Ltd., 1998 U.S. Dist. LEXIS 7458, 1996 WL 310763 (E.D. Pa. 1998); Biocore Medical Technologies v. Khosrowshahi, 181 F.R.D. 660, 1998 U.S. Dist. LEXIS 16169, 1998 WL 724003 at *5 (D.Kan 1998) (ten days sufficient). Although the instant Defendant did receive actual notice of the subpoena prior to the date set for document production, the Plaintiff does not argue nor can this court conclude that two days constitutes a sufficient opportunity for Defendant to object thereto.

However, I find that Defendant, in this case, suffered little, if any, actual prejudice as a result of Plaintiff's violation of the notice requirement because the parties appear to concede that much of the information covered by the challenged Philadelphia subpoena could have been obtained pursuant to Pennsylvania statute, and since Defendant has not demonstrated that they would be entitled to entry of a protective order even if they had been given proper notice. Therefore, this court will not impose sanctions on Plaintiff at this time. n21 However, [*29] Plaintiff shall be placed on notice that any future failure to comply with the Federal Rules will meet with proof preclusive sanctions or an order directing Plaintiff to pay counsel fees incurred by Defendant in bringing the violation to the attention of the Court.

n21 Because the parties appear to concede that much of the information covered by the challenged Philadelphia subpoena could have been obtained pursuant to Pennsylvania statute, and since Defendant has not demonstrated that they would be entitled to entry of a protective order even if they had been given proper notice, I find that imposition of sanctions would be out of proportion to the culpability of defendants and the prejudice suffered by plaintiffs.

Defendant does not explicitly dispute Plaintiff's claim that they would be entitled to much of the information covered by the subpoena pursuant to the Pennsylvania "Right-to-Know" law, 65 Pa.C.S.A. § 66.1 et seq., or § 5-1104 of the Philadelphia Home Rule Charter. (Doc. 20 at 3-4). Instead, Defendant only conclusorily asserts that the scope of the subpoena is greater than that of the statute and baldly cites 65 P.S. § 66.1 which defines "public records" of which Pennsylvania citizens have a right to know. (Doc. 21 at 4) (quoting statute). In any event, we can not conclude that Defendant would have been entitled to a protective order precluding Plaintiff from obtaining the documents sought from the City of Philadelphia Municipal Employees Pension Fund. Defendant alleges that they would have successfully sought a protective order in connection with the document request pursuant to Fed. R. Civ. P. 26(c) because (1) the subpoena sought irrelevant information and was unlimited as to (a) time, (b) written investment guidelines similar to those of Plaintiff and (c) type of investment; and (2) would interfere with the business relations between Defendant and its current or former clients, Def. Mem. at 5; (Doc. 19 at 8). Defendant states that their "dealings with the City of Philadelphia, or other former customers is not relevant to the subject matter presented in this action" . . . and will "interfere with the business relations between [Defendant] and its current or former clients." (Doc. 21 at 5); see In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D.Pa. 1993)(unreported) ("The burden of showing that the requested discovery is not relevant is on the party resisting discovery . . . the party objecting to discovery must state with specificity how each request is not relevant or is unduly burdensome, overly broad or oppressive"). There is at least a reasonable possibility that the request for production here, from another client of the Defendant, a pension fund possibly with similar investment guidelines and identical breaches thereof, is relevant to the subject matter involved in the pending action, if not the specific claims themselves. As such, and because Defendant does not appear to have met the burden of demonstrating with specificity that the requests are oppressive or unduly burdensome, see In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D.Pa.1993)(unreported)("the fact that answering the [requests] will . . . interfere with defendant's business operations . . . is not alone suffi-

cient reason for disallowing them"), we can not conclude that the Defendant's Motion for Protective Order would have been granted.

[*30]

## II. RELEVANCY OF OTHER INFORMATION SOUGHT BY THE PLAINTIFF PLAINTIFF'S MOTION TO COMPEL

Defendant argues that certain additional information to which Plaintiff claims to be entitled is not subject to discovery because it is sought by the Plaintiff for an irrelevant purpose. Rule 26(c) authorizes the court to order that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters. Fed. R.Civ.P. 26(c)(4); see, e.g., Johnson v. Mortham, 164 F.R.D. 571, 572 (N.D.Fla. 1996) (protective order may be used to limit the scope of discovery to just those issues that are left to be decided in case); Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D.Conn. 1993) (in action brought on guaranty, court limited discovery to documents containing information relating to defendant's general business affairs, and specified company and property, and excluded inquiries regarding other litigation and business and personal interests). A protective order that limits the scope of discovery, like all Rule 26(c) protective orders, requires a showing of good cause. Smith v. Dowson, 158 F.R.D. 138, 140 (D. Minn. 1994) (protective order in civil [*31] fights litigation). As noted, a showing of irrelevancy of the proposed discovery can satisfy the good cause requirement for a protective order. Smith v. Dowson, 158 F.R.D. 138, 140 (D.Minn. 1994) (granting protective order on ground that actions taken by arresting officers in subsequent investigations, after release of erroneously arrested individual, is wholly irrelevant to plaintiff's claim that his arrest and detainer was without probable cause and in violation of his civil rights); Navel Orange Admin. Comm. V. Exeter Orange Co., 722 F.2d 449, 454 (9th Cir. 1983) (not error for trial court to grant protective order barring defendants from discovering matters related to affirmative defenses that are not cognizable in enforcement proceeding because such discovery is irrelevant).

Accordingly, we must determine whether Plaintiff seeks any information for an irrelevant purpose. [HN10] Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other [*32] party" n22 Under Rule 26(b)(1) "the information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

n22 Thus, [HN11] Fed. R. Civ. P. 26(b)(1) sets forth a two step process in determining the scope of discovery; first, whether the information sought is relevant and, if so, whether the information is privileged. In the instant case, Defendant does not assert that the undisclosed information sought by the plaintiff is privileged. Rather, Defendant asserts only that the information is irrelevant.

[HN12] Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings. Surety Association of America v. Republic Insurance Company, 388 F.2d 412, 414 (2d Cir. 1967). Relevancy has been defined, for purposes of discovery, as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund Inc. v. [*33] Sanders, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). However, "practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Surety, 388 F.2d at 414.

[HN13] A party seeking a protective order on the ground that the documents sought are irrelevant "must demonstrate to the court that the requested documents either do not come within the broad scope of relevance defined pursuant to [Federal Rule of Civil Procedure] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Myrin v. Federal Ins. Co., 1996 U.S. Dist. LEXIS 8560, No. 95-7903, 1996 WL 355347 at *3 (E.D. Pa. June 19, 1996)(Yohn, J.) (quoting Musicom Int'l. Inc. v. Serubo, 1994 U.S. Dist. LEXIS 15245, No. 94-1920, 1994 WL 590619 at *2 (E.D. Pa. Oct. 27, 1994)(Hutton, J.)). Thus, the party resisting production of discovery ordinarily bears the burden of establishing lack of relevancy. Thompson v. Glenmede Trust Co., 1995 U.S. Dist. LEXIS 18780, No. 92-5233, 1995 WL 752443 at *2 (E.D. Pa. Dec. 19, 1995). Since the [*34] precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the district court's discretion. See DeMasi v. Weiss, 669 F.2d 114, 121 (3d Cir. 1982).

### 1. PIERCING THE CORPORATE VEIL

To the extent that Defendant objects "to subpoenas directed to various entities in which Malcolmn Pryor, a member of Defendant's Board of Directors, is involved for purposes of fishing into a piercing the corporate veil