EXHIBIT N – PART 2

argument," (Doc. 27 at 5), this court finds the information to be irrelevant and will grant the Motion for Protective order. Plaintiff asserts that such information is relevant to their claim that various corporate entities should be disregarded and treated as a single entity, and that the Defendant corporation is merely an alter ego of the individual owners thereof, Malcolm D. Pryor, Raymond McClendon, Allen Counts, and Daryl Dennis. (Doc. 20 at 22). In support of this allegation, Plaintiff asserts that the same attorney represents Defendant, Malcolmn Pryor, individually, and the following firms in which Pryor is a principal: Pryor, McClendon, Counts & Co., Inc., ("PMC"), Pryor, Counts [*35] Capital Markets, LLC, and PMC Financial Markets, Inc. (Doc. 20 at 22). The mere allegation that corporations were not operated as independent entities and that various entities were represented by the same attorney is insufficient to support discovery of the financial information sought by the Plaintiff. Plaintiff's have not shown any basis for believing that the corporation and the owners thereof are so interrelated that their status as independent entities should be disregarded. In the absence of such a showing, to compel discovery of the information would be to authorize an unwarranted fishing expedition based on pure speculation. See e.g. Electromatic Ltd. V. Rad-O-Lite of Philadelphia, Inc., 90 F.R.D. 182, 183 (E.D.Pa. 1981) (allegation that corporations were not operated as independent entities insufficient to support discovery, but where a party demonstrates interrelated transactions and other connections, this is "enough to support further discovery on the relationships among the various defendants.").

## 2. DEFENDANT'S LIABILITY INSURANCE

Plaintiff seeks information as to the existence and contents of all insurance policies that relate to the relevant time [*36] period. Plaintiff claims that Defendant has not produced any policy that relates to April 13, 1993, the date on which the initial fiduciary breach occurred. Rule 26(d) permits discovery of the existence and contents of liability insurance agreements covering any 1993 breach of fiduciary duty by the Defendant. Accordingly, Defendant will be ordered to produce any liability insurance agreement covering April, 1993, within seven (7) days. However, Plaintiff also claims to be entitled to the production of policies that cover "1993 to the present," based on their contention that "the fiduciary breaches and prohibited transactions (occurring at least in 1994) are continuing in their nature and effect." (Doc.24 at 8). Plaintiff has alleged that fiduciary breaches and prohibited transactions occurred in April, 1993, the month in which the challenged investment was made, and in 1994, the year Plaintiff claims that Defendant illegally installed itself as General Partner of the PMSR III partnership. Moreover, Plaintiff has alleged that the breaches involved in this case are of a continuing nature. Because disclosure is required when the insurer "may" be liable on part or all of the judgment and, [*37] consistent with Plaintiff's allegations of "continuing" breaches of fiduciary duties, Defendant may be liable for breaches occurring in 1994, 1995, or 1996, the year in which the challenged investment was sold, Defendant will also be ordered to disclose insurance agreements for those years.

## 3. "INSOLVENCY OF WEDGEWOOD"

Plaintiff also moves to compel discovery of facts concerning Defendant's financial status in order to determine Defendant's "ability to satisfy a judgment." (Doc. 20 at 23). However, Plaintiff is not entitled to access to such information. Although discovery of the existence and contents of liability insurance agreements is permitted, [HN14] "Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." See e.g. Ranney-Brown Distributors, Inc. V.E.T. Barwick Industries, Inc. 75 F.R.D. 3, 4 (S.D.Ohio 1977); Renshaw v. Ravert, 82 F.R.D. 361, 363 (E.D.Pa. 1979) (inquiry into Defendant's personal financial status is not ordinarily permitted)(citing, 8 Wright & Miller, Federal Practice & Procedure § [*38] 2010, at 93 (1970)); Bogosian v. Gulf Oil Corp., 337 F. Supp. 1228 (E.D.Pa. 1971)(Deposition questions with respect to antitrust plaintiff's net worth and his ability to satisfy judgment for costs in the event defendants prevailed were not relevant to the subject matter of lawsuit); Blount v. Wake Electric Membership Corporation, 162 F.R.D. 102, 104 (E.D. N.C. 1993)(Evidence of defendant's financial condition was not subject to discovery in personal injury case unless plaintiff made factual showing that viable claim for punitive damages existed); U.S. v. General Electric Company, 158 F.R.D. 161, 163 (D.Oregon 1994) (corporate tax returns and financial statements of plaintiff, contractor, were not discoverable because financial condition was not relevant to issue of whether contractor was fully compensated for work it performed). Accordingly, such information does not become relevant prior to judgment with execution unsatisfied. n23 Therefore, plaintiffs are not entitled to Defendant's financial information at this time and Plaintiff's Motion to Compel will be denied. n24

n23 Moreover, a party seeking discovery must also demonstrate a real and practical need for the information. Consolidated Rail Corp. v. United States, 812 F.2d 1444, 1463 (3d Cir. 1987). We merely note that Plaintiff, in this case,

Page 14

cannot reasonably argue that it has a need for irrelevant financial information.
[*39]

n24 Although Defendant also objects to discovery from "other present or former clients," this issue is not before the court as Plaintiff has only issued a subpoena for documents from one former client, the City of Philadelphia.

### 4. RICO

Plaintiff also contends that it is seeking material relevant only to an unpleaded claim pursuant to the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § § 1961-1968. This court finds that disclosing information relevant only to a prospective claim exceeds the scope of the subject matter of the present action. A complaint is not "a hunting license to discover whether, in fact, a viable claim may be alleged . . . The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made-not to discover whether a claim exists." American Communications Ass'n. Local 10, I.B.T. v. Retirement Plan for Employees of RCA Corp. and Subsidiary Cos., 488 F. Supp. 479, 484 (S.D.N.Y., aff'd without opinion, 646 F.2d 559 (2d Cir. 1980); McLaughlin v. Copeland, 455 F. Supp. 749, 753 (D.Del. [*40] 1978), aff'd, 595 F.2d 1213 (3d Cir. 1979)(table) (dismissing complaint for failure to state a claim stating that "while a plaintiff is entitled to a full opportunity to adduce evidence in support of the cognizable claims set out in his complaint, he is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim he has not made"); See also Cardio-Medical Ass'n v. Crozer Chester Medical Center, 536 F. Supp. 1065, 1071 (E.D.Pa. 1982) (citing American Communications with approval). Consequently, Plaintiff is not entitled to discovery merely to determine whether or not additional, unasserted claims might exist. Discovery, in this case, will be limited accordingly. Indeed, courts have recognized that the need to reasonably limit the scope of discovery is acute for claims under the RICO statute. See e.g., PMC v Ferro Corporation, 131 F.R.D. 184, 186 (C.D. Cal. 1990) ("The Supreme Court has recognized that the breadth of the RICO language encourages attempts to turn business disputes into federal racketeering charges . . . thus the risk that a party will attempt to use discovery to conduct a 'fishing expedition' is a significant [*41] concern").

### 5. REDACTED AND WITHHELD DOCUMENTS

This court understands that Plaintiff has produced redacted copies of documents and withheld other documents in their entirety. (Doc. 20 at 11). n25 Plaintiff contends that the improperly withheld and redacted documents include partnership agreements to which they have "a clear legal right as a member of two limited partnerships-the PMSR III limited partnership and the Dovenmuehle Mortgage Co, L.P." (Doc. 20 at 11). The documents sought by the Plaintiff are specifically listed in Document number 20 at pages 11-19.

n25 Plaintiff contends that, Defendant has "withheld entire documents, e.g. partnership agreements . . . [to which] plaintiff has a clear legal right as a member of two limited partnerships-the PMSR III limited partnership and the Dovenmuehle Mortgage Co, L.P . . ., and has also produced heavily redacted and expurgated partnership documents." (Doc. 20 at 11).

Defendant, however, does not oppose production of "many" of the documents identified [*42] by the Plaintiff in this submission. (Doc. 21 at 13) (stating that "[Defendant] does not disagree that Plaintiff should be entitled to many of the documents described in Plaintiff's list of documents allegedly 'withheld in their entirety by Defendant'. . . But it does disagree as to some"). Defendant states further that:

There is no dispute that alleged breaches of Defendant's fiduciary duty to Plaintiff are an allowable area of discovery. Indeed, Defendant would further concede that discovery into possible prohibited transactions in connection with the handling of Plaintiff's funds would be permissible, even though it is not alleged in the complaint . . . Defendant [only] objects to the third party discovery which Plaintiff sought from the City of Philadelphia, which Plaintiff suggests it may seek from other present or former clients, . . .[and] to subpoenas directed to various entities in which [Defendant]'s director, Malcolmn Pryor is involved, for purposes of fishing into a "piercing the corporate veil" argument.

(Doc. 21 at 7; Doc 27 at 4-5). Accordingly, Defendant will be ordered to produce those documents it concedes to be subject to discovery to Plaintiff [*43] within 10 days.

Moreover, because both parties suggest that the Court review any contested documents in camera, this Motion will be granted in order to determine whether Defendant properly redacted or withheld the documents. Accordingly, Defendant will be ordered to produce one set of the "redacted documents" with an accompanying memorandum setting forth its reasons for each redaction and one set of the "withheld documents" in our chambers by December 4, 1998, for in camera inspection. The supporting memorandum referred to above shall be submitted to Plaintiff no later than November 30, 1998, so that Plaintiff can submit a reply to this court by December 4, 1998. See e.g., Tetratec Corp. v. E.I. Dupont De Nemours & Co., 1992 U.S. Dist. LEXIS 12101, 1992 WL 202169 (E.D.Pa. 1992).

The parties' request for sanctions is denied.

**ORDER** - ENTERED: 11-17-98

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

AND NOW, this 16th Day of November, 1998, upon consideration of Defendant Wedgewood Capital Management Co.'s Motion for Protective Order and for Sanctions, and Plaintiff's response thereto, and Plaintiff Richard McCurdy, Trustee, Laborers' Industrial Pension Plan's Counter Motion to Compel Discovery, [*44] and Defendant's response thereto, it is hereby ORDERED as follows:

1. Defendant's Motion for Protective Order is GRANTED, in part, and DENIED, in part.

2. Parties and their counsel must provide prior notice to opposing counsel on all future subpoenas.

3. The Plaintiff and Defendant's Motions for sanctions are DENIED.

4. Defendant is ORDERED to produce those documents identified by the Plaintiff that Defendant concedes to be subject to discovery as well as a copy of any liability insurance policy covering April of 1993, 1994, 1995, and 1996 to Plaintiff within 10 days from the date of this order.

5. Defendant is further ORDERED to produce one set of the redacted or withheld documents with an accompanying memorandum setting forth its reasons for each redaction in my chambers by December 4, 1998 for in camera inspection. The supporting memorandum referred to above shall be submitted to Plaintiff no later than November 30, 1998, so that it can submit a reply by December 4, 1998.

BY THE COURT:

PETER B. SCUDERI

UNITED STATES MAGISTRATE JUDGE

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1

Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
Ian L. RENERT, et al., Defendants.
**No. Civ. 3:01CV1027(PCD).**

June 17, 2002.

Franklin C. Huntington, IV, Juan Marcel Marcelino, LeeAnn G. Gaunt, Boston, MA, John B. Hughes, U.S. Attorney's Office, New Haven, CT, for Plaintiff.
Ian L. Renert, Wellington, Fl, pro se.

*RULINGS ON PLAINTIFF'S MOTION TO COMPEL AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER.*
DORSEY, J.
*1 Plaintiff moves pursuant to Fed. R. Civ. P. 37(a) for an order compelling defendants to produce documents responsive to its discovery requests. Defendants respond that production of the requested documents would expose defendant Ian Renert to criminal liability under Bahamian law and move for a protective order precluding production. For the reasons set forth herein, plaintiff's motion to compel is granted and defendants' motion for a protective order is denied.

I. BACKGROUND

The present action is an enforcement action against defendants pursuant to §§ 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (c), § 7(d) of the Investment Company Act of 1940, 15 U.S.C. § 80a-7(d), § 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), Rule 10b-5, 17 CFR § 240.10b-5, and §§ 206(1) and 206(2) of the Investment Company Act of 1940, 15 U.S.C. §§ 80b-6(1) and 80b-6(2), for the fraudulent offer and sale of unregistered securities known as the Hawthorne Sterling Family of Funds ("Funds.") The Funds are organized as International Business Companies ("IBC") under the laws of the Bahamas. Allegedly defendants sold interests to the public through seminars, two websites, sales agents and private placement memoranda. The campaign allegedly raised in excess of $22 million but involved numerous misrepresentations to the investors about fund performances and investment risks. In June 2000, a Bahamian court appointed BDO Mann Judd, a Bahamian accounting firm, receiver of the Funds, froze the assets of the Funds and enjoined the funds from accepting new investments or conducting business.

On April 11, 2001, the Supreme Court of the Bahamas issued its decision on the status of the receivership. The Court pointed out that the Secretary of the Bahamian Security Commission's contention that it was the "opinion of the Commission ... [that] defendant[s] were carrying on mutual fund business illegally as none of them had been licensed ... under the Mutual Funds Act...." The Court further indicated that the Funds were placed in receivership to "enable the Commission to determine the correct state of affairs of the mutual funds and determine whether the best interest of creditors would be served by granting mutual fund licenses or by winding up the companies." The receiver "was not to be a 'Manager' of the alleged mutual fund business in that the defendant-companies were not licensed to carry on such business" and was appointed only to " safeguard and preserve the assets of the defendant-companies for the benefit of those who may be entitled to them pending the decision of the Commission as to whether to grant them operating licenses or take steps in accordance with the law." The Court held that the funds were not regulated

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

mutual funds pursuant to Bahamian law and thus the court was without authority to issue an order as prayed by the Bahamian Securities Commission. Litigation as to custody of funds' assets and financial records is ongoing in Bahama.

**\*2** In support of their argument that Renert would be liable for disclosure of the requested information, defendants provide the opinion of R. Rawle Maynard, an attorney and former magistrate in the Bahamas, who states that disclosure of the requested information would violate the Bahamian Constitution and would subject defendant Renert to criminal prosecution.

II. MOTION TO COMPEL

Plaintiff moves to compel responses to certain requests for production involving bank and brokerage statements, internal records identifying assets held in the name of the various funds, internal records identifying individual investors in the various funds and the amount of their investments, communications between defendant Renert and various accountants providing services to the Funds and communications between those acting on behalf of the Funds and the investors. Defendant responds that Bahamian bank secrecy laws, specifically the Mutual Funds Act of 1995 ("MFA"), the Banks and Trust Companies Act ("BTCA") and the Bahamian constitution, impose penalties for disclosure of the confidential information and thus preclude disclosure.

A. Standard

The scope of permissible discovery is broad. " Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992). The burden is on the party opposing discovery to establish that compliance with the request would violate the laws of a foreign sovereign. *See First Nat'l City Bank of N.Y. v. IRS,* 271 F.2d 616, 620 (2d Cir.1959).

B. Analysis

Defendant Renert argues that his interaction with the receiver in providing information and documents pursuant to a Bahamian court order renders him "staff" under § 36 of the MFA and thus subjects him to criminal liability for producing the requested documents. Plaintiff responds that the MFA does not apply and thus is not a basis on which to refuse production of the requested documents.

It is apparent that one who violates the provisions of the MFA may be subject to criminal penalties. Section 36 prohibits certain disclosures while § 39 imposes criminal penalties for violation of § 36.[FN1] However, the MFA, by its express terms, applies only to "the Commission, the Executive Director, a licensed mutual fund administrator and their staff." *See* MFA § 36(1). Defendants argue that Renert's activities in conformance with the Bahamian Court order made him staff.

> FN1. Article 36 is entitled "secrecy" and provides as follows:
> (1) Subject to subsections (2) and (3), the Commission, the Executive Director, a licensed mutual fund administrator and their staff shall not disclose any information relating to-
> (a) any application made for a licence under this Act;
> (b) the affairs of a mutual fund;
> (c) the affairs of a mutual fund administrator; or
> (d) the affairs of an investor in a mutual fund, which they have acquired in the course of their duties or the exercise of their functions under this Act and shall not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 3
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

use any such information for their own benefit.
Criminal penalties attach via Article 39(1)(a), which provides that "[a]ny person who wilfully contravenes ... section ... 36 is guilty of an offence and shall be liable on conviction on information to a fine of $40,000 or to imprisonment for three years or to both such fine and imprisonment...."

In support of their argument, defendants provide only the opinion of Attorney Maynard, who states that "Mr. Renert's relationship to Mr. Scott, Attorney, and the Receiver placed him in the position of staff so that during the receivership, he could not have released information without being rendered liable to prosecution." Although Attorney Maynard provides citation to Bahamian law for other legal propositions, he does not do so in support of his opinion that defendant Renert is staff. [FN2] Other than the unsubstantiated opinion of Attorney Maynard, defendants provide no basis in Bahamian law that would equate actions in compliance with a court order to a status as a staff member.

FN2. Defendants also refer to correspondence from Attorney Michael Scott, counsel for the receiver, who wrote: "Finally, I would remind you that no information regarding the affairs these companies, which operated as a mutual fund under the auspices of the Tenesheles Trust, should be disclosed to any third party, including the Security and Exchange Commission of the United States of America without the consent in writing of [the receiver and partner at BDO Mann Judd]." As with Attorney Maynard's opinion, no basis in law is provided in which to accept this unsupported opinion as Bahamian law on defendant Renert's potential criminal liability.

*3 Defendants also have not established that the Funds were "licensed" as required by § 36(1). Again defendants provide only the opinion of Attorney Maynard in support of their argument that the Funds were licensed, who states that

[t]hroughout the receivership, the Funds were clothed with legitimacy and an application had been made impliedly or expressly for a license. The Funds must be deemed to have been licensed and the State assumed an interest in protecting the confidentiality of information relating to items mentioned in Section 36.

The proposition is again made without an identified basis in Bahamian law. [FN3] This argument also directly contradicts the April 11, 2001 opinion of the Supreme Court of the Bahamas which declined to permit the Bahamian Security Commission to wind-up the IBC because it was not licensed and indicating that the objective of the receivership was to determine whether the funds should be licensed. [FN4]

FN3. Article 2 defines "licensed mutual fund" as "a regulated mutual fund that is the holder of a Mutual Fund Licence," "licensed mutual fund administrator" as "the holder of a Mutual Fund Administrator's Licence but does not include a person exempted from obtaining a Mutual Fund Administrator's Licence in accordance with subsection (2) of section 9," and "Licensor" as "the Commission or a licensed mutual fund administrator with an unrestricted mutual fund licence in its capacity as the grantor of a mutual fund licence."

FN4. The Court stated that "[s]ince it is alleged by the Securities Commission that the defendant companies have been carrying on mutual fund business without a license issued under the Mutual Funds Act and therefore are in breach of section 3 of that Act, it follows that the defendant companies cannot be classified or regard[ed] as regulated mutual funds under the act."

Defendants also argue potential liability for disclosure pursuant to § 15 of the BTCA. Plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

again responds that defendant Renert is not a director, officer, employee or agent of a licensee, thus the BTCA does not apply to him.

Defendants again cite the opinion of Attorney Maynard in support of their position. He States that
I have contended that the receivership sanctioned by the Securities Commission and the Court conferred legitimacy upon the funds operated by the Companies in receivership. If the Trust Companies were operating legitimately as contended then they must be deemed to have been licensed under Section 4 [FN5] during the receivership in which case Mr. Renert in his relationship with a former licensee would violate Section 15 [FN6] of The Bank and Trust Companies Regulation Act.

>    FN5. Section 4, entitled "applications shall be made to the Governor," provides that " [a]ny person desirous of carrying on banking business and any company desirous of carrying on trust business from within The Bahamas shall make application to the Governor for the grant of a licence." 4(1).
>
>    FN6. Section 15, entitled preservation of confidentiality, provides in relevant part:
>    (1) No person who has acquired information in his capacity as-
>    (a) director, officer, employee or agent of any licensee or former licensee;
>    shall, without the express or implied consent of the customer concerned, disclose to any person any such information relating to the identity, assets, liabilities, transactions or accounts of a customer of a licensee or relating to any application by any person under the provisions of this Act, as the case may be, except-
>    (I) for the purpose of the performance of his duties or the exercise of his functions under this Act, if any;
>    (ii) for the purpose of the performance of his duties within the scope of his employment;
>    (iii) when a licensee is lawfully required to make disclosure by any court of competent jurisdiction within The Bahamas, or under the provisions of any law of The Bahamas;
>    (iv) for the purpose of enabling or assisting the Governor to exercise any functions conferred upon him by any written law;
>    (v) to a person with a view to the institution of, or for the purpose of-
>    (a) criminal proceedings,
>    (b) disciplinary proceedings, whether within or outside The Bahamas, relating to the exercise by a counsel and attorney, auditor, accountant, valuer or actuary of his professional duties; or
>    (c) disciplinary proceedings relating to the discharge by a public officer or a member or employee of the Central Bank of his duties.
>    (8) Every person who contravenes the provisions of subsection (1) shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding twenty-five thousand dollars or to a term of imprisonment not exceeding two years or to both such fine and imprisonment.

As with the claims of "legitimacy" under the MFA, defendants provide no authority on which to support the proposition that defendant Renert became a licensee under the BTCA. Section 2 of the BTCA defines "licensee" as "any person holding a licence under the provisions of this Act." The BTCA does not expressly provide for licensing of a mutual fund when placed in receivership, and defendants provide no authority on which to conclude otherwise.[FN7]

>    FN7. Plaintiff states without objection that "the Funds are Bahamian IBCs owned by Tenesheles Trust, which is a Bahamian grantor trust whose beneficiary is Equivest Premier Holdings, Inc. ("EPH"). EPH, which is also the manager of the Funds, is a Bahamian IBC owned by the Goose Trust, which is Bahamian non-grantor trust whose beneficiary is Renert's estate and in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

which Renert's 'life partner' has a life estate."

Defendants arguments as to the applicability of the MFA and BTCA further cannot be reconciled with the April 11, 2001 opinion. The Bahamian litigation involves allegations of an unlicenced mutual fund business involving IBC. The Bahamian court stripped Renert's control over the funds and transferred control to a receiver, whose function it was to protect the assets involved therein. The Funds were not to be managed by the receiver. The arrangement was to remain in effect until the Bahamian Security Commission determined whether to license IBC. It would be antithetical to the underlying orders to interpret this status quo arrangement as an implicit license and defendant Renert as staff of the receivership. Defendants have provided no basis in Bahamian law for such a conclusion and thus cannot establish the applicability of the MFA or BTCA as it is their burden to do. *See First Nat'l City Bank of N.Y.*, 271 F.2d at 620.

*4 Defendants also allude to the right of privacy in papers and correspondence protected by the Article 23 of the Bahamian constitution. [FN8] This argument appears to implicate potential civil liability under Bahamian common law, although no authority is provided for such a civil action. [FN9] Thus defendants have not established a realistic possibility of civil liability as it is their burden to do when refusing to comply with a legitimate discovery request. *See id.*

> FN8. Chapter III, Article 23(2) of the constitution of the Bahamas, entitled " protection of freedom of expression," provides that:
> Nothing contained in or done under the authority of any law shall be held to be inconsistent with or in contravention of this Article to the extent that the law in question makes provision-
> (a) which is reasonably required-
> (i) in the interests of defence, public safety, public order, public morality or public health; or

> (ii) for the purposes of protecting the rights, reputations and freedoms of other persons, preventing the disclosure of information received in confidence, maintaining the authority and independence of the courts, or regulating telephony, telegraphy, posts, wireless broadcasting, television, public exhibitions or public entertainment....

> FN9. The right of privacy discussed in defendants' briefs, which again centers on the opinion of Attorney Maynard, appears to be personal to the investors. If there is a basis for civil liability, the solution is not, as defendants propound, to require plaintiff to seek waivers from all identified investors, but rather to require defendants to produce evidence that they sought waivers from the clients as they, not plaintiff, must endeavor to comply with the legitimate discovery requests. *See Trade Dev. Bank v. Continental Ins. Co.,* 469 F.2d 35, 41 n. 3 (2d Cir.1972); *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 891 (S.D.N.Y.1999).

In conclusion, defendants have not established a realistic possibility of liability to preclude their compliance with requested discovery. *See United States v. Brodie,* 174 F.Supp.2d 294 (E.D.Pa.2001). Having failed to do so, *see Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224 (Fed.Cir.1996); *United States v. Davis,* 767 F.2d 1025, 1033-34 (2d Cir.1985), they may not refuse plaintiff's discovery requests.[FN10] The motion to compel production is granted.

> FN10. Defendants failure to demonstrate the possibility of criminal liability obviates the need to weigh the interests of the United States, the Bahamas and defendants as directed in *United States v. First Nat. City Bank,* 396 F.2d 897, 902 (2d Cir.1968), as there is no indication that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 6
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

production of the documents would subject defendants to any liability, civil or criminal, thus there is no conflicting law to reconcile. Nor will a request be made to a Bahamian court for permission to order discovery lawful under the laws of this country. *See In re Grand Jury Proceedings,* 691 F.2d 1384, 1391 (11th Cir.1982)

### III. MOTION FOR A PROTECTIVE ORDER

In light of the above ruling granting the motion to compel, defendants' motion for a protective order precluding production of the same is denied.

### IV. CONCLUSION

Plaintiff's motion to compel production (Doc. 33) is granted and defendants' motion for a protective order (Doc. 36) is denied.

SO ORDERED.

D.Conn.,2002.
S.E.C. v. Renert
Not Reported in F.Supp.2d, 2002 WL 32503671 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34129559 (Trial Pleading) Complaint for Injunctive and Other Relief (Jun. 06, 2001)
• 3:01CV01027 (Docket) (Jun. 06, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.
Ernest SEEWALD, et ano, Plaintiffs,
v.
IIS INTELLIGENT INFORMATION SYSTEMS,
LTD, et al., Defendants.
D.S.P., LTD., Plaintiff,
v.
IIS INTELLIGENT INFORMATION SYSTEMS,
LTD, et al., Defendants.
TIBON VEAL HOLDINGS LTD., Plaintiff,
v.
IIS INTELLIGENT INFORMATION SYSTEMS,
LTD, et al., Defendants.
**Nos. 93 CV 4252 (FB), 95 CV 824 (FB) and 94 CV 3603 (FB).**

Oct. 16, 1996.

Joseph H. Weiss, Weiss & Yourman, New York City, Jules Brody, Stull, Stull & Brody, New York City, for Plaintiff Ernest Seewald.
Steven G. Storch, Storch, Amini & Munves, P.C., New York City, for Plaintiffs D.S.P. and Tibbon Veal.
Jonathan J. Lerner, Skadden, Arps, Slate Meagher & Flom, New York City, for Defendants IIS Intelligent Information Systems, Ltd., Jacob Herbst and Thomas Bednarik.
Linda J. Cahn, Schulte Roth & Zabel, New York City, for Defendants Oppenheimer & Oppenheimer & Co., Inc. and Oscar Gruss & Son, Inc.

MEMORANDUM AND ORDER
BLOCK, District Judge:
*1 Plaintiffs Ernest Seewald ("Seewald") (as class representative), D.S.P. Ltd. ("D.S.P."), and Tibbon Veal Holdings Ltd. ("Tibbon Veal") (collectively " plaintiffs"), have brought the above-captioned actions against IIS Intelligent Information Systems ( "IIS") and certain other corporate and individual defendants alleging violations of the federal securities laws and common law fraud and negligent misrepresentation in connection with a public offering of securities by IIS. These actions, filed on September 15, 1993 (the *Seewald* class action complaint),[FN1] August 1, 1994 (the *D.S.P.* complaint), and March 1, 1995 (the *Tibbon Veal* complaint), were referred to Magistrate Judge Marilyn D. Go for supervision of all discovery proceedings. Magistrate Judge Go thereafter consolidated the actions for discovery purposes. Presently before the Court are the parties' objections to two of Magistrate Judge Go's orders-dated November 13, 1995 (the "November 13th order") and November 30, 1995 (the "November 30th order ")-which both limited and directed the production of certain documents sought by plaintiffs. The November 13th and November 30th orders are hereby affirmed.

    FN1. Plaintiffs in the Seewald class action filed an amended complaint on March 22, 1994.

I. BACKGROUND

A. The November 13th Order

The November 13th order set forth the rulings Magistrate Judge Go made on the record at a November 8, 1995 status conference (the " November 8th conference") at which she partially granted the plaintiffs' motion for additional discovery by allowing additional document production from IIS' accountants and the taking of the depositions of certain individual and corporate defendants. The order provided, in pertinent part, as follows:
2. In order to insure that plaintiffs in all three actions be afforded sufficient discovery necessary to respond to defendants' contemplated motions for summary judgment, plaintiffs' motion for additional

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

discovery is granted in part as follows:
a. Subject to any limitations under Israeli law, plaintiff shall be entitled to the discovery of all documents and work papers prepared or held by accountants for IIS and Decision Data, Inc. ("DDI") pertaining to the inventory, returns and warranty losses of DDI and the Decision Data Division of IIS for calendar year 1993 and the first quarter of 1994, including all inventory valuations, warranty losses and credits, and returns authorizations.
b. Plaintiffs may depose the following persons: Jacob Herbst, Thomas Bednarik, and Howard D. Sterling, one analyst and an employee involved in underwriting from defendant Oppenheimer & Co., Inc. ("Oppenheimer"), and a member or employee of the accounting firm for IIS and DDI for calendar year 1993 and the first quarter of 1994.

(November 13th order at ¶ 2(a), (b).) It also generally limited the length of the depositions to eight hours, directed plaintiffs to bear the costs of obtaining translations of any document in Hebrew which they intended to use during any deposition or in connection with any submission to the court, and prohibited any further discovery absent leave of the court.

*2 Plaintiffs D.S.P. and Tibbon Veal (together the "individual plaintiffs") object to the November 13th order arguing that its grant of additional discovery was too limited. The individual plaintiffs' broadly worded objections to the order are as follows:
[1] it refuses to permit plaintiffs to take document discovery addressed to specific claims of fraud pertaining to defendants' treatment of inventory and warranty reserves in connection with its acquisition of Decision Data shortly before a public offering of stock; [2] it deprives plaintiffs of document discovery directly aimed at establishing defendants' scienter in failing to properly disclose inventory and warranty reserves; and [3] it arbitrarily restricts both the number and duration of depositions in a case where no depositions have yet been taken by plaintiffs.

(Pl.Objections at ¶ 1.) In addition, they argue that the order "appears to be based" on an order of Judge Jack B. Weinstein in the *Seewald* action (to whom these cases were assigned prior to the undersigned), which severely limited the document discovery. The individual plaintiffs argue that the Weinstein order does not apply to their cases, because the D.S.P. and Tibbon Veal complaints were filed subsequent to that order and contain more specific allegations of fraud.

B. The November 30th Order

The November 30th order was issued by Magistrate Judge Go as a supplement to the November 13th order and in response to a letter from the defendants dated November 11, 1995. Defendants represented that prior to the November 8th conference at which the court permitted discovery of documents from IIS' accountants, plaintiffs had "clandestinely served through the Hague Convention a document request on IIS' auditors and accountants" commanding them to produce the same documents that were the subject of the court's ruling at the November 8th conference and set forth in the November 13th order. (Letter from Maura B. Grinalds to Magistrate Judge Go dated 11/11/95 at 1.) Defendants argued that plaintiffs' actions violated the discovery limitations previously set by Judge Weinstein and Magistrate Judge Go and warranted the preclusion of the additional document discovery.

Although Magistrate Judge Go had considered the defendants' letter prior to the issuance of the November 13th order, the November 30th order was issued to "deal with the issues raised [by the letter and] to insure future compliance with all discovery orders issued in this action." (November 30th order at 1-2.) The order acknowledges that Judge Weinstein had ordered "document discovery [to] be pared to the bone," and notes that his directive had been carried out in prior rulings limiting the discovery requested by plaintiffs. (Transcript of Hearing on Motion to Dismiss before the Hon. Jack B. Weinstein dated January 12, 1994 at 14.) The plaintiffs, however, were not expressly precluded from having additional requests considered and granted, if justified. As the November 30th order noted, "[b]ecause [the prior discovery orders] were designed to accomplish Judge Weinstein's directive of limiting the scope of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.     Page 3
Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

document discovery, I expected plaintiffs to seek the permission of the court for all other documentary discovery." (November 30th order at 2.)

*3 Thereafter, the order directly addressed the concerns raised in the defendants' letter:
While I am troubled by plaintiffs casual attitude that they have a right to seek discovery from third parties if they are dissatisfied by defendants' response, I am not prepared to conclude sanctions are warranted for intentional noncompliance of this court's orders. The 1994 discovery orders were issued in the context of addressing plaintiffs' specific requests for discovery from the party defendants. The orders referred to these requests and, unlike the November 13, 1995 order, did not expressly prohibit any other discovery.
In addition, although the preferable and more prudent procedure would have been for plaintiffs to give defendants notice of the document request when it was forwarded to Israel, no applicable Federal Rule, statute or treaty expressly requires that such prior notice be given. Since the subpoena permits compliance within thirty days of service, defendants still have sufficient time to challenge the subpoena in Israel and have not been prejudiced by plaintiffs' conduct.
Thus, I see no reason to modify the November 13[th] order providing for limited discovery. However, the documentary discovery should be limited [to] what is permitted in the order, rather than the broader discovery sought in the subpoena that has been issued in Israel. Plaintiffs are directed to take such action as may be necessary to limit the scope of the subpoena in accordance with the terms of my November 13, 1995 order.

(November 30th order at 3.)

Defendants' objections to the November 30th order are similar to those previously expressed to Magistrate Judge Go by letter-in essence, that it was improper for Magistrate Judge Go to allow the discovery of IIS' auditors because the subpoena was issued by plaintiffs without prior notice to the defendants and the document discovery was in " direct defiance" of prior orders limiting discovery. *See* Def.Notice of Motion Pursuant to E.D.N.Y. Standing Order 5(a). Defendants argue that the order was based on an erroneous holding that no notice was required for the issuance of the third-party subpoena. Consequently, they have requested that the November 30th order be vacated, the subpoena quashed and the discovery permitted thereby be barred.

II. DISCUSSION

"Matters concerning discovery are generally considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.), *cert. denied,* 498 U.S. 846 (1990). Accordingly, the Court reviews Magistrate Judge Go's orders under Rule 72(a), which directs district courts to "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Popular Imports, Inc. v. Wong's Int'l, Inc.,* 166 F.R.D. 276, 277 (E.D.N.Y.1996) (Nickerson, J.) ("Pretrial discovery questions are generally considered nondispositive and are thus reviewed under th[e] ' clearly erroneous' standard."). In applying this standard to magistrate judges' orders resolving discovery disputes, courts have held that " 'a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion.' " *Palmer v. Readers Digest Assoc., Inc.,* No. 84 Civ. 8397, 1995 WL 686737, *1 (S.D.N.Y. Nov. 20, 1995) (quoting *Nikkal Industries, Ltd. v. Salton, Inc.,* 689 F.Supp. 187, 189 (S.D.N.Y.1988)).

A. Plaintiffs' Objections to the November 13th Order

*4 As an initial matter, defendants argue that plaintiffs' objections "must be denied" because plaintiffs failed to comply with Rule 3(b) of the Civil rules of the United States Courts for the Southern and Eastern Districts of New York (" Local Rule 3(b)"), which requires that a moving party file a memorandum of law with its motion. (Def.Mem. of Law in Opp. to Pl.Objections at 12.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

Local Rule 3(b) provides, in pertinent part, as follows:
Upon any motion the moving party shall serve and file with the motion papers a memorandum setting forth the points and authorities relied upon in support of the motion divided, under appropriate headings, into as many parts as there are points to be determined ... Failure to comply may be deemed sufficient cause for the denial of the motion or the granting of the motion by default.

Plaintiffs' memorandum of law was not filed until January 22, 1996, nearly two months after the filing of the plaintiffs' objections. Accordingly, the Court is empowered to, but need not, deny plaintiffs' objections solely because of their failure to comply with the rule. *Compare Turner v. Hudson Transit Lines, Inc.,* No. 89 Civ. 4252, 1991 WL 123966, *3 (S.D.N.Y. July 2, 1991) (noting that it "need not consider the merits of defendants' objections" because no timely supporting memorandum was filed) *with Barcia v. Sitkin,* Nos. 79 Civ. 5831, 79 Civ. 5899, 1996 WL 476890, *2 (S.D.N.Y. Aug. 22, 1996) (refusing to grant parties' motion by default merely because opposing party had failed to comply with Local Rule 3(b)). The Court, in the exercise of its discretion, considers the merits of the objections.

Plaintiffs object that the November 13th order refuses to permit them to take document discovery pertaining to IIS' treatment of inventory and warranty reserves in connection with its acquisition of Decision Data. That, however, is realistically what the order provides for in allowing the discovery of the workpapers of IIS' accountants, which may render any other document discovery academic. Similarly, although plaintiffs object that the number and duration of depositions are being arbitrarily restricted, the order specifically provides plaintiffs with the opportunity "to seek by telephone application to extend the [ ] depositions." (November 13th order at ¶ 3.) Moreover, the order does not preclude the possibility of further discovery, if necessary, upon application to the court.

B. Defendants' Objections to the November 30th Order

The November 30th order erroneously states that " no applicable Federal Rule, statute or treaty expressly requires that [ ] prior notice be given" when serving a document request on a foreign third-party. (November 30th order at 3.) As defendants have noted, Federal Rule of Civil Procedure 45(b)(1), which governs subpoenas, expressly provides that "[p]rior notice of any commanded production of documents and things ... shall be served on each party in the manner prescribed by Rule 5(b)." *See* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2457 (1995) ("The 1991 amendments to Rule 45 now require that prior notice must be served on each party as prescribed by Rule 5(b) if a subpoena commands the production of materials ..." ).[FN2] The purpose of this notice

> FN2. Even prior to the 1991 amendments, courts held that a notice requirement inhered in Rule 45. *See, e.g., Ann L. v. X Corporation,* 133 F.R.D. 433, 436 (W.D.N.Y.1990) ("[S]ome form of notice that a third party subpoena duces tecum has been served must be given under the rule."); *Richardson v. Florida,* 137 F.R.D. 401, 404 (M.D.Fla.1991) ( "[I]t is inherent in Rule 45 that notice be given to another party when documents are to be obtained from a person who is not a party to the action.").

*5 ... is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.
Fed.R.Civ.P. 45 advisory committee's note; *see United States v. Santiago-Lugo,* 904 F.Supp. 43, 47 (D.P.R.1995) ("The purpose of this notice is to afford other parties ... the opportunity to object to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 5

the production or inspection."); *Callanan v. Riggers & Erectors, Inc.,* 149 F.R.D. 519, 520 (D.V.I.1992) ("[C]ompliance with the notice provision is not a mere formality but serves the important function of streamlining discovery in order to alleviate duplication or delays.").

Nonetheless, the plaintiffs' failure to provide notice does not here require preclusion of the document discovery approved by the November 30th order. Defendants learned of the document request at the November 8th conference, prior to the production of the documents, and thus, were not prejudiced by the lack of notice.[FN3] As the order expressly noted: "Since the subpoena permits compliance within thirty days after service, defendants still have sufficient time to challenge the subpoena in Israel and have not been prejudiced by plaintiffs' conduct." (November 30th order at 3.) Because the plaintiffs did receive notice and were not prejudiced, Magistrate Judge Go's decision to allow the document discovery pursuant to the terms of the November 13th order was appropriate. *See, e.g., Callanan,* 149 F.R.D. at 520 (issuing protective order in favor of non-party from whom documents were requested when notice was not given to all parties to the action, but allowing plaintiff ten days to serve notice and directing non-party to comply thereafter with the document demand); *Richardson,* 137 F.R.D. at 405 (noting defendants' failure to follow the notice requirement but refusing to apply the "harsh remedy of exclusion" where plaintiff had not alleged any prejudice from defendants' ex parte document discovery).[FN4]

> FN3. The documents have still not been produced by the accountants. See Transcript of Status Conference Before the Hon. Marilyn D. Go dated May 30, 1996.
>
> FN4. Plaintiffs' document request was purportedly made under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention") (codified at 28 U.S.C. § 1781). See *The Gap, Inc. v. Stone Int'l Trading, Inc.,* No. 93 Civ. 0638, 1994 WL 38651, *1 (S.D.N.Y. Feb.

4, 1994) ("Discovery of persons or documents outside the United States may be governed by the Federal Rules of Civil Procedure, the Hague Convention, or both.") (citations omitted). In order to obtain documents under the Hague Convention from a company in Israel, "an American court must first issue a Letter of Request to the appropriate Israeli official. Then the Israeli official will attempt to execute the Request according to Israel's domestic law." *The Gap, Inc.,* 1994 WL 38651 at *2; *see Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 535 (1987) ("Article 1 provides that a judicial authority in one contracting state 'may' forward a letter of request to the competent authority in another contracting state for the purpose of obtaining evidence."). However, no provision of the Hague Convention allows a party's attorney to issue a letter of request directly to foreign authorities, as done by plaintiffs here. Even if plaintiffs' procedure were correct, according to Rule 28, letters of request "shall be issued on application and notice." Fed.R.Civ.P. 28(b).

Contrary to defendants' assertions, the Court does not find the November 30th order to be inconsistent with Judge Weinstein's order that "discovery be pared to the bone." To the extent that it does modify that order, the Court approves of that modification and notes its continuing power to modify non-final orders. *See, e.g., In re United States,* 733 F.2d 10, 13 (2d Cir.1984) ("It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment and may be modified to the same extent if the case is reassigned to another judge."); *Mayer v. Cornell University, Inc.,* 909 F.Supp. 81, 83 (N.D.N.Y.1995) ("[T]he fact that [a] case has been reassigned ... does not preclude reconsideration" by the new court of "non-final district court orders and rulings.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

### III. CONCLUSION

**\*6** Accordingly, the Court affirms the November 13th and November 30th orders. The parties are directed to complete the discovery provided for in these orders forthwith.

SO ORDERED.

E.D.N.Y.,1996.
Seewald v. IIS Intelligent Information Systems, Ltd.
Not Reported in F.Supp., 1996 WL 612497 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:95cv00824 (Docket) (Mar. 01, 1995)
• 1:94cv03603 (Docket) (Aug. 01, 1994)
• 1:93cv04252 (Docket) (Sep. 15, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  Page 1

Not Reported in F.Supp.2d, 2002 WL 31012165 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
INNOMED LABS, LLC, Plaintiff,
v.
ALZA CORPORATION, Defendant.
**No. 01 CIV. 8095(HB)(RLE.**

Sept. 6, 2002.

OPINION AND ORDER
ELLIS, Magistrate J.

I. INTRODUCTION

*1 Before this Court is a motion by plaintiff Innomed Labs, LLC ("Innomed") seeking to compel production by non-party Wyeth of documents regarding Wyeth's sales of non-24 hour cold remedies. For the following reasons, Innomed's motion to compel is DENIED.

II. BACKGROUND

The facts of this case have been summarized in my opinion dated September 6, 2002, regarding Innomed's motion to compel documents from defendant Alza Corporation ("Alza") pertaining to its business relationship with non-parties Ciba Consumer Pharmaceuticals and Novartis Consumer Health Care, and need not be discussed at length here. Of importance to this decision, Innomed alleges an oral agreement with Wyeth to assign Innomed's Alza contract to Wyeth. However, before the assignment could go forward, Alza terminated its distribution contract with Innomed. Innomed brings this motion to compel production of certain documents and research from non-party Wyeth concerning its market shares of Dimetapp cold remedy products, none of which are 24-hour cold remedies.

III. DISCUSSION

While the scope of discovery is traditionally quite broad, it is by no means limitless. See *Wertheim Schroder & Co. Incorporated v. Avon Products, Inc.,* 1995 WL 6259*2 (S.D.N.Y.1995); *Alpex Computer Corp. v. Nintendo Co., Ltd.,* 1991 WL 195939*2 (S.D.N.Y.1991). Rule 26(b) of the Federal Rules of Civil Procedure permits parties to obtain discovery which is "relevant to the claim or defense of any party." This standard is applied to discovery obtained from both parties and non-parties alike. See *Bulkmatic Transp. Co. v. Pappas,* 2001 U.S. Dist. LEXIS 6062*7 (S.D.N.Y.2001). However, Innomed has failed to demonstrate the relevancy of the disputed documents in Interrogatories 2, 3 and 4. Despite the Declaration by J. Douglas Zona, I fail to see how research conducted by Wyeth concerning the non-24 hour cold remedies will have any weight or bearing on Wyeth's possible "willingness to pay" for Innomed's 24-hour cold remedy contract with Alza. The market and sales for Wyeth's nine different non-24 hour cold remedies is irrelevant to Innomed's claims of lost business opportunity against Alza concerning its 24-cold remedy. The information Wyeth has agreed to turn over in regard to Interrogatory number one seems more than sufficient for Innomed to calculate its lost business opportunity based on Zona's formula.

IV. CONCLUSION

For the foregoing reasons, Innomed's motion is DENIED.

S.D.N.Y.,2002.
Innomed Labs, LLC, v. Alza Corp.
Not Reported in F.Supp.2d, 2002 WL 31012165 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 31012165 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

- 2002 WL 32924357 () (Transcript) (Nov. 19, 2002) Original Image of this Document (PDF)
- 2002 WL 32926409 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff's Motion in Limine to Exclude Testimony of Defendant's Expert, Dr. Darrell Williams (Oct. 29, 2002) Original Image of this Document (PDF)
- 2002 WL 32933663 () (Report or Affidavit) (Aug. 28, 2002) Original Image of this Document (PDF)
- 2002 WL 32933628 () (Report or Affidavit) (Aug. 20, 2002) Original Image of this Document (PDF)
- 2002 WL 32933662 () (Report or Affidavit) (Aug. 13, 2002) Original Image of this Document (PDF)
- 2002 WL 32926407 (Trial Pleading) Second Amended and Supplemental Complaint & Demand for Jury Trial (Jun. 20, 2002)
- 1:01cv08095 (Docket) (Aug. 29, 2001)
- 2001 WL 34936767 () (Transcript) (2001) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.