**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

IN RE:  PRICELINE.COM, INC.  : MASTER FILE NO.
SECURITIES LITIGATION   : 3:00-CV-01884 (AVC)
———————————————— :
            :
This document relates to:   :
            :
  ALL ACTIONS     : September 11, 2006

**DEFENDANT JAY S. WALKER'S SEPTEMBER 11, 2006 STATUS REPORT**
**REGARDING THE PRODUCTION OF ELECTRONIC INFORMATION**

 Defendant Jay S. Walker ("Walker") submits this Status Report Regarding the

Production of Electronic Information pursuant to the December 8, 2005 directive of the Court

that the defendants file a monthly status report on the production of electronic information.

 As reflected in Mr. Walker's last several status reports, there are 181 back-up tapes, at

least 73% of which are from 1999.  The volume of electronic data contained on the back-up

tapes is enormous, and the types of files are varied, with email being just one example.  Of

these 181 back-up tapes, 29 back-up tapes have been restored.  As described in Mr. Walker's

July 10, 2006 status report, a document-by-document review of just the email files on the

restored back-up tapes would result in hundreds of thousands of dollars of vendor charges and

in excess of $70 million in estimated attorneys' fees.

 In light of these staggering statistics, Mr. Walker's counsel has devoted considerable

time and effort to determine how best to utilize electronic tools to cull from these tapes that

information – if any – that might have some significance to this case.  As reflected in our

prior status reports, we have attempted to have a dialogue with plaintiffs about the most

efficient and cost-effective approach for attaining this goal. Despite plaintiffs' failure to

cooperate in this dialogue, Mr. Walker's counsel has expended considerable professional time

and other resources analyzing reasonable methodologies for identifying potentially relevant

data on the restored backup tapes in a manner – and for a cost – that is reasonable under the

circumstances.

In this regard, Mr. Walker's counsel has, thus far, initiated the following methodology

for culling through the voluminous .pst email data on the restored tapes:

1.  Mr. Walker's counsel has obtained a copy set of those emails produced by other

    defendants, and per Mr. Walker's counsel's instructions, Mr. Walker's

    electronic vendor has uploaded a copy set of those electronic emails produced

    by the other defendants.

2.  From the list of 121 individuals for whom plaintiffs seek an email-by-email

    review, based on the defendants' interrogatory responses and initial disclosures,

    Mr. Walker's counsel has identified 59 individuals, including the defendants, as

    most likely to have responsive information.[1]

3.  Per Mr. Walker's counsel's instructions, Mr. Walker's electronic vendor has

    uploaded the entire .pst mailboxes for any of these 59[2] individuals for whom

    mailboxes exist on any of the 29 restored back-up tapes.

---

[1] At the time of the August 10 status report, Mr. Walker's counsel had identified 55 individuals, including the defendants, as most likely to have responsive information. Upon further analysis of prior interrogatory responses, Mr. Walker's counsel has expanded that to 59 individuals, inclusive of the defendants.

[2] Attached hereto as Exhibit A is a list of these 59 individuals.

4.  Through this process, a total of approximately 12.7 gigabytes of data has been uploaded onto Mr. Walker's electronic vendor's systems for initial filtering, including approximately 9.94 gigabytes in the initial upload and approximately 2.78 gigabytes recently uploaded as a result of the identification of additional mailboxes for upload.

5.  The 29 restored backup tapes only contain .pst files (or mailboxes) for a subset of the 59 individuals identified by Mr. Walker's counsel for search and upload.

6.  The 9.94 gigabytes initially uploaded and the recently uploaded 2.78 gigabytes are at different stages of the filtering, release and review process. Specifically, the 9.94 gigabytes of data initially uploaded have been filtered in the manner described below and substantial emails and attachments within that population have been reviewed by attorneys for production.

7.  Mr. Walker's counsel expects that generally the same methodology applied to the initially uploaded 9.94 gigabytes of .pst files will be applied to the 2.78 gigabytes of recently uploaded data. However, the filtering, analysis and release of the recently uploaded 2.78 gigabytes of data has not been completed.

**Filters Applied To The 9.94 Gigabytes Of Data Initially Uploaded**

8.  Approximately 369,000 documents were uploaded in the initial upload of 9.94 gigabytes of data from identified .pst files. Once uploaded onto Mr. Walker's electronic vendors system, the 9.94 gigabytes of data were filtered to exclude documents that fell outside the relevant time period for production as set by Judge Squatrito. In this regard, a filter was applied to exclude those documents that predated March 1, 1999 and post-dated April 1, 2001.

9. Approximately 48% of the documents in the initial 9.94 gigabyte upload were outside the relevant date range, leaving approximately 192,000 documents (including 480,000 pages) after the application of these filters. These documents remaining after the application of these date filters were released to Mr. Walker's electronic vendor's review tool for further filtering, review and analysis, and attorneys are in the process of reviewing emails and attachments released to Mr. Walker's electronic vendor's review tool for responsiveness and production.

10. As for the recently uploaded 2.78 gigabytes of additional .pst files, the processing of that data for release has not been completed, and, thus, we do not know the precise number of documents or pages that will be released to the review tool after the application of the above-described date filters to such data.

**Additional Filters Applied To All Data Released To The Review Tool**

11. A number of filters have been applied to the approximately 480,000 pages of documents that remained after the application of the date filters to the initially uploaded 9.94 gigabytes of data in order to assist with the prioritization of these documents for review and analysis.

12. For example, Mr. Walker's electronic vendor has identified those emails from the back-up tapes that are duplicates of emails produced by other defendants. In this regard, with respect to the approximately 192,000 documents (including approximately 480,000 pages) released to the review tool from the initial upload of 9.94 gigabytes, over 10,000 of these documents (including over 28,0000 pages) have been identified by Mr. Walker's electronic vendor as duplicates of

4

electronic documents produced by the other defendants. Mr. Walker's counsel does not plan to produce any documents identified by Mr. Walker's vendor as duplicates of documents produced by other defendants.

13. Moreover, the data in the initial release was filtered for numerous attorney and law firm names and for the terms: attorney(s), legal department, lawyer(s), and paralegal(s). Emails and attachments containing such search terms have been tagged as potentially privileged and have been segregated from any review to date so that that these particular documents can, where practical, be reviewed after the review of the remaining email population that results from the filtering. With respect to those documents presently residing in the review tool, approximately, 22,000 documents (including approximately 126,000 pages) have been segregated thus far as potentially privileged in accord with these filters.

**First Priority Review: Review of Mr. Walker's and Mr. Braddock's Mailboxes**

14. Mr. Walker's counsel identified as the first priority the review of the contents of any of the defendants' mailboxes that reside on the restored backup tapes. In this regard, Mr. Walker's electronic vendor located .pst files (mailboxes) for defendants Jay Walker and Richard Braddock on the backup tapes but did not locate any mailboxes for the other defendants.

15. The mailboxes located on the restored backup tapes for Mr. Walker and Mr. Braddock were part of the initial upload of 9.94 gigabytes of data and the contents of these mailboxes were part of the initial release to the review tool.

16. Filters were run against Mr. Walker's and Mr. Braddock's mailboxes to exclude from this initial review those emails that are duplicates of electronic emails already produced by co-defendants and to exclude those emails identified as potentially privileged in accord with the filters and methodology described above. The remaining population of emails contained in these mailboxes were segregated for priority review by the review team. The review team has completed at least an initial review of all but approximately 650 of these emails.

**Second Priority Review:  Review Of Documents Containing WebHouse Terms**

17. Mr. Walker's counsel identified certain documents containing various WebHouse terms as the subject of the second level of review, and filters have been run against the population of emails presently in the review tool to segregate such documents for review and analysis.

18. In this regard, the following filters were run against the data presently residing in the review tool in order to segregate appropriate documents for second priority review:

    a. Mr. Walker's counsel instructed its electronic vendor to employ filters and searches to isolate those documents that contain the following terms: WebHouse, Webhouse, Web House or WHC.  Mr. Walker's counsel also instructed Mr. Walker's electronic vendor to filter the documents collected through the above searches to exclude the following:

        i. any documents identified as potentially privileged in accord with the above-described searches and methodology; and

      ii.  any documents identified as duplicates of documents already produced by the co-defendants in accord with the above-described methodology.

  b.  Also, Mr. Walker's counsel instructed Mr. Walker's electronic vendor to run a filter to, where possible, exclude calendar items and contact cards from the second priority review.[3]

  c.  Mr. Walker has uploaded and released to the review tool .pst files for any of the selected custodians, regardless of which of the 29 restored backup tapes the data originally resided. And, the documents reviewed in the first phase of the review were reviewed irrespective of the source tape from which that data originated. However, plaintiffs' motion to compel Mr. Walker's production of electronic documents seeks both an email by email review, without regard to date, custodian or the content of the emails on certain of the restored backup tapes (and some unrestored tapes) *and* the production of all other nonprivileged data, regardless of file type, content or date, from certain of the restored tapes (and some unrestored tapes). Given plaintiffs' apparent interest in those of the

---

[3]In this regard, plaintiffs contended in their briefing with respect to the Priceline's production of electronic documents that the production of calendar items and meeting status emails without text in the body of such items was somehow improper, and, according to a chart in that briefing, plaintiffs labeled such documents as "Blank/Irrelevant Emails." (Memo of Law, Dkt 329 at p. 8) As a result, Mr. Walker's counsel sent plaintiffs' counsel correspondence seeking to confirm whether Mr. Walker should therefore exclude these sorts of meeting status emails and calendar items from Mr. Walker's production of electronic documents. Notwithstanding the positions they have taken with respect to Priceline's production of blank calendar items and meeting status emails, plaintiffs' counsel recently informed Mr. Walker's counsel that they want Mr. Walker to produce responsive calendar emails and items, even where such items have no text in the body to be produced. This letter from plaintiffs' counsel was received after the filters for the second priority review had already been run to exclude calendar items from that level of review.

restored tapes that are the subject of plaintiffs' outstanding motion to compel,[4] in this second priority review, Mr. Walker's counsel instructed Mr. Walker's electronic vendor to employ a filter to segregate, where possible, that data resulting from the above filters so that Mr. Walker's counsel can prioritize its second priority review, where practical, to focus on emails that were derived from those backup tapes that are the subject of plaintiffs' pending motion to compel and that have been restored.

19. The methodology employed in the first priority review has continued for this second phase review. The members of the review team are reviewing email attachments at the same time they review parent emails even if that attachment does not contain one of the above-described WebHouse search terms, and the members of the review team are reviewing all emails within a conversation thread, where such emails can be readily identified, even if those emails do not contain the WebHouse search terms described above.

20. Several members of the review team have begun this second level of review, and thousands of documents have been reviewed in this second level review.

To date, employing the above methodology, Mr. Walker's review team has reviewed over 10,000 documents for responsiveness. Thousands of documents have been identified as responsive, and Mr. Walker's counsel intends to produce electronic documents on a rolling basis.

Once the filtering and release of the 2.78 gigabytes of recently uploaded data has been

---

[4] It is Mr. Walker's position that it does not make sense to prioritize the review of the data contained on the 29 restored backup tapes based on which of the source tapes the data came from. Instead, the better methodology is to prioritize the restored data by file type, custodian, date and search terms, irrespective of which of the restored tapes the data was derived from.

completed, and as the review in accord with the above methodology progresses, Mr. Walker's counsel will have some additional data from which they can determine which additional filters and review steps, if any, are reasonable under the circumstances.

DATED: September 11, 2006

Defendant, Jay S. Walker

By: _____

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
Phone: (203) 977-7300
Fax:    (203) 977-7301
tdgoldberg@dbh.com – E-mail

- and -

J. Michael Hennigan (phv01119)
Bruce Bennett (phv01115)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01117)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234
irvingj@hbdlawyers.com – E-mail

His Attorneys

9

**Defendant Jay S. Walker's September 11, 2006 Status Report
Regarding The Production Of Electronic Information**

<u>Exhibit A</u>

1. Beeler, Marlene
2. Boyd, Jeffrey
3. Braddock, Richard
4. Breitenbach, Paul
5. Brier, Tim (or Tim Briar)
6. Brown, Lynn
7. Burgess, Peter
8. Burmaster, Brad
9. Case, T. Scott
10. Castaneda, Charles
11. D'Angelo, Thomas
12. DaCosta, Adam
13. Dilberto, Mike
14. Dore, Marisa
15. Eck, Brian (or Brian Ek)
16. Fogel, Glenn
17. Francis, Paul
18. Gerhardt, Tom
19. Gillingham, Lisa
20. Gleeson, Jill
21. Goldman, Kevin
22. Gordon, Tom
23. Gotch, Maria
24. Greenspan, B.J.
25. Hamilton, Ray
26. Herskovitz, Michael
27. Keller, Brett
28. Keller, Maryann
29. King, Don
30. Kucelek, Mona (or Kulceluk, Mona)
31. Maffei, Anne
32. McCadden, William
33. McEnroe, Mark
34. McGill, James
35. Miller, Heidi
36. Mott, Steve
37. Mylod, Robert
38. Ness, Baruch
39. Nicholas, N.J.

- 2 -

40. Otto, Jonathan
41. Padgett, Robert
42. Pfefferbaum, Jill
43. Pike, William
44. Rizzi, Terry
45. Ronan, Thomas
46. Rose, Ron
47. Rubenstein, Dan
48. Scheideman, Ernest
49. Schulman, Art
50. Schulman, Daniel
51. Seiburgh, Jules
52. Suarez, Jose
53. Truwit, Mitchell
54. Urbahn, Trey
55. Voss, Robert
56. Walker, Jay
57. Whitman, Don
58. Wisniewski, Jeanne
59. Zhuk, Igor

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2006, a copy of defendant Jay S. Walker's September 11, 2006 Status Report Regarding the Production of Electronic Information was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: _____
                    Shawna L. Ballard

10