UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| _____ | : | MASTER FILE NO. |
| | : | 3:00-CV-01884 (AVC) |
| This document relates to: | : | |
| | : | September 29, 2006 |
| ALL ACTIONS | : | |
| | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT WALKER'S MOTION TO QUASH
AND FOR PROTECTIVE ORDER REGARDING THE SUBPOENAS ISSUED TO
MERRILL LYNCH, MORGAN STANLEY, AND CHASE MANHATTAN BANK**

Jay Walker's Motion to Quash and for Protective Order regarding the subpoenas issued to Merrill Lynch, Morgan Stanley, and Chase Manhattan Bank[1] (hereafter "Chase") fails for the same reasons his motion opposing the Goldman Sachs subpoena fails. Walker does not meet the requisite elements necessary for standing under Rule 26(c), or 45; nor has he demonstrated the requisite good cause or any cognizable "right to privacy" which cannot be protected through the confidentiality order already in place. Walker fails to articulate any legitimate grounds for circumscribing Plaintiffs' right to subpoena relevant information relating to claims made in the complaint. His motion should be denied.

I.  <u>No Good Cause Established</u>

Walker claims to have established good cause to modify the subpoena or for a protective order. The standard under Rule 26(c) provides that "*for good cause shown*, the court…may make any order which justice requires to protect a party or person from annoyance,

---

[1] Plaintiffs have been informed the entity once called Chase Manhattan Bank no longer exists. The correct entity is JPMorgan Chase & Co. located at Chase Manhattan Plaza, New York, NY.

1

embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c) (emphasis supplied).  However, it is axiomatic that the burden is on the *movant* to demonstrate any entitlement to relief in the discovery process (Fed.R.Civ.P. 26(c)).  A "party seeking an order of confidentiality with respect to discovery bears burden of demonstrating the required "good cause" supporting issuance of such an order." *Reliance Ins. Co. v. Barron's,* 428 F.Supp. 200, 202 (D.C.N.Y. 1977).  Walker relies upon two concepts to establish the requisite good cause necessary for standing; whether disclosure will violate any privacy interest, and whether the information is sought for a legitimate purpose.  As discussed below, Walker fails in his attempt to establish either, and therefore does not demonstrate the good cause necessary for standing.

A.    No personal privacy right exists

Walker cites three statutes which he claims serve as the authority establishing his purported privacy right: the Gramm-Leach-Bailey Act, 15 U.S.C. §6801; the Right to Financial Privacy Act of 1978, 12 U.S.C. §3401; and Connecticut General Statutes §36a-41.[2]  None of these statutes support his contention, as each is inapplicable to the facts of this case.

The Gramm-Leach-Bailey Act prohibits disclosure of information in some situations, but specifically exempts disclosure of banking information in response to a civil subpoena.  "(e) General exceptions: Subsections (a) and (b) of this section shall not prohibit the disclosure of nonpublic personal information - (8) to comply with a properly authorized civil…subpoena…" 15 U.S.C. §6802 (e)(8).  Civil subpoenas are specifically excluded from the Act's application. Thus, Walker's claim fails on this point.

Walker next cites The Right to Financial Privacy Act as authorizing limitations on the information sought in the subpoena.  However, this statute only applies to cases where a

---

[2] *See* Memorandum of Law in Support of Defendant Jay S. Walker's Motion for Protective Order Regarding the Subpoenas Issued to Merrill Lynch, Morgan Stanley, and Chase Manhattan Bank Seeking Production of Financial Information, at 7, and 8.

2

Government authority makes a request for banking records. "Access to financial records by Government authorities prohibited; exceptions – (§3407) A Government authority may obtain records…pursuant to a judicial subpoena only if – (1) such subpoena is authorized by law and reason to believe that the records sought are relevant to a legitimate law enforcement inquiry." 12 U.S.C. §3402, §3407 (1). This is not a law enforcement inquiry; Plaintiffs are not a Government authority, and thus the second of Walker's authorities does not apply.

Lastly, Walker cites a Connecticut statute, which specifically applies only to Connecticut chartered banks.

> "Sec. 36a-1 General statement. This title shall be known as the "Banking Law of Connecticut" and shall be applicable to all Connecticut banks…Sec. 36a-2. Definitions. As used in this title, …(4) "Bank" means a Connecticut bank or a federal bank; (5) "Bank and trust company" means an institution chartered or organized under the laws of this state as a bank and trust company; (12) "Connecticut bank" means a bank and trust company, savings bank or savings and loan association chartered or organized under the laws of this state"

Conn. Gen. Stat. §36a-1, 2. None of the three subpoenas at issue have been issued to banks chartered in Connecticut. Thus, by the terms of the statute, it does not apply to the instant subpoenas.

Further, the Connecticut statute can not apply to these subpoenas which are issued out of the Southern District of New York. *See* F.R.Civ.P 45 (a)(3)(B). Connecticut state law simply does not apply to these New York institutions. Each of the three statutes cited by Walker fails to establish his claim of financial information privacy. Under the standards of the authority cited in Walker's own memo, he lacks standing to object to the third-party subpoenas and his Motion may be denied on this basis alone.

B.   The Subpoenas seek information for a legitimate purpose

The Second Circuit's standard for proving scienter involves either of two methods articulated by the court:

> We have held that to plead scienter in a securities fraud claim, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud. *See Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir.1999); *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

*Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000). The Second Circuit provided guidance on the type of information required to prove one of the two methods:

> the inference may arise where the complaint sufficiently alleges that the defendants: 1) benefited in a concrete and personal way from the purported fraud…2) engaged in deliberately illegal behavior…3) knew facts or had access to information suggesting that their public statements were not accurate…or 4) failed to check information they had a duty to monitor.

*Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).

Despite these legal standards, Walker attempts to establish the requisite good cause for granting his Motion by arguing the subpoena seeks information for an illegitimate purpose. He thus spends several pages discussing a single sentence of Plaintiffs Opposition to Walker's Motion to Quash the subpoena served on another bank which references the obvious issue of Walker's ability to pay the multi-billion judgment liability presented by this case, yet disregards completely Plaintiff's primary scienter argument.

The subpoenas to these third party banks seek information needed to prove Walker's scienter alleged in the complaint. One method to prove scienter is to demonstrate the motive and opportunity for the insider to mislead the investing public for personal gain. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

The information sought by Plaintiffs is also relevant and discoverable under the alternative method of establishing scienter by proving strong circumstantial evidence of

4

conscious misbehavior or recklessness on the part of Defendants. The subpoenaed information relates not only to Defendant's motivation, and will provide circumstantial evidence of fraudulent manipulation and deception. The information will help to show the actual state of Walker's finances (and thus his state of mind as to his need –or lack of need- to inflate the price of Priceline.com stock) when he was making deceptive statements about Webhouse to the investing public which in turn inflated the market price of Priceline.com stock, Walker's greatest asset at the time.

Plaintiffs have specified with particularity in the Complaint that Defendants benefited in a concrete and personal way from the purported fraud; knew or had access to information suggesting that their public statements were not accurate, and failed to check information they had a duty to monitor.[3]

The requested trading activity in Walker Digital and other entities will reveal such things as whether Walker needed to boost the perceived value of Priceline due to margin calls or other liquidity or leverage issues in other stocks or entities reflected in the trading activity of the subpoenaed accounts. The information will also show whether he was quietly raising the capital necessary to continue the Webhouse charade, while continuing to influence the inflated value attributed for Webhouse warrants on Priceline's books and how important the success of Webhouse (which served as the primary valuation for Walker's vast Priceline.com stock holdings) was to Walker. The information will help establish that Walker was hyping Priceline's lateral expansion model to artificially inflate the Priceline stock price, and to capitalize upon it by selling shares to unwitting investors.

In his memo there is neither discussion of why the Protective Order applicable to this case (which provides for the preservation of confidential information from public disclosure) is

---

[3] *See* Consolidated Amended Complaint, sections 3, 4, 19, 44, 45, 130(n), 138-141, 148(h) (i), 181, 201-215

insufficient to protect Walker's claimed "privacy" interests, nor is there any mention (much less a credible showing) of any particular, real harm to Walker that may be balanced against the harm of denying relevant discovery to Plaintiffs.

Thus, Walker's motion fails to demonstrate any good cause. Consequently, his Motion must be denied because to obtain a protective order, "the requisite showings must be made with specific facts, not mere conclusory allegations of confidentiality and/or business harm. *Standard Space Platforms Corp. v. U.S.* 35 Fed.Cl. 505, 507 Fed.Cl.,1996 (citing *Wall Indus., Inc. v. United States*, 5 Cl.Ct. 485, 487 (1984)). Since Walker has failed to show good cause for a limiting the subpoenas, there is no basis for granting the relief sought by Defendant Walker and his Motion should be denied.

## II. Relevance

Plaintiffs seek relevant non-privileged information relating to defendant Walker's financial activity through Merrill Lynch, Morgan Stanley, and Chase. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P 26(b)(1). Of course, the "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The United States Supreme Court addressed the relevance standard of Rule 26(b)(1) in *Oppenheimer Fund*:

> The key phrase in this definition-"relevant to the subject matter involved in the pending action"-has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See *Hickman v. Taylor*, 67 S.Ct. 385, 388, (1947). Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.*, at 388. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

6

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L.Ed.2d 253, (1978).  Here, the evidence is sought to prove Walker's state of mind, which is informed by the state of his finances, and to establish a trend analysis of the interconnected businesses he oversaw.[4]  This information will tend to prove the claims made in the Complaint, is relevant, and should not be quashed.

      A.      Non-Priceline Trades by Other Entities or Officers are Relevant

Walker summarizes the relevance standard articulated in *Chazin v. Lieberman,* 129 F.R.D. 97, (S.D.N.Y. 1990) as follows: "[c]ompliance with the subpoena might infringe on certain privacy rights, in that [the subpoenaing party] would have easy access to [objector's] **unrelated financial and business dealings** in detail."[5]  [Emphasis added].  The holding of the *Chazin* case is clear: whether financial and business dealings are related or unrelated to the matter is determined by whether the financial or business dealings are related or unrelated to claims are made in the complaint.  "[T]he court will impose limitations on the subpoenas so as to restrict their scope to material that pertains to the acts specified in the complaint." *Chazin*, 129 F.R.D. at 98.  Here, the Complaint alleges acts concerning the financial and business dealings sought in the subpoenas and should be produced.

The crux of Defendant's argument is that discovery in this case should be limited solely to the daily reported movements in Priceline.com stock during the class period.  This is an absurd reduction of the scope of this securities case and ignores the fact that the fluctuations in

---

[4] For example, Defendants constantly deny that the various entities created and controlled by Walker had any connection beyond their common originating source.  Plaintiffs assert this contention is false and that the interconnectedness of these various businesses provides strong evidence of all Defendants' knowledge that WebHouse was a sham and that its presentation to the public as an example of the strength of the "Priceline.com Business Model" was deceptive, and known by Defendants to be so.  *See* section 22 of Consolidated Amended Complaint.

[5] *See* Memorandum of Law in Support of Defendant Jay S. Walker's Motion for Protective Order Regarding the Subpoenas Issued to Merrill Lynch, Morgan Stanley, and Chase Manhattan Bank Seeking Production of Financial Information, at 6.

7

Priceline.com stock are merely the end result of the fraud alleged, and in no way reveal the underlying engine of Defendant's scheme.

This case concerns a complex scheme perpetrated by Defendants to leverage perceived value by the investing public for personal monetary gain. The case directly involves Walker's motivation and opportunity for engaging in the scheme, which is an element of proof of Plaintiffs' case. The requested information goes to matters that would tend to prove the allegations made in the Complaint, such as: whether Walker or other officers needed cash; whether he had increasing financial demands such as margin calls requiring him to artificially boost his net worth through the inflation of the largest asset he held, Priceline stock; whether Walker or other officers were sophisticated and active in trading; whether a large portion of Walker's net worth was represented in Priceline transactions; and whether movements in Priceline stock were significant to Walker.

The motivations for Defendant's fraud go well beyond the mere price of Priceline stock. Plaintiffs seek to understand the overlapping nature of Walker's holdings, the impact of interrelated entities upon his finances as a whole, and his reactions to the changes in the market and the value of his holdings. The nature of Walker's financial resources is important to prove what type and amount of pressure was being exerted upon Walker's finances as a whole. Limiting the subpoena to only one aspect of his holdings would unfairly limit Plaintiffs ability to discover the stimuli affecting Walker's financial decision making process.

Plaintiffs have the right to discover relevant non-privileged information. The complaint specifically alleges that Walker, through companies he controlled, Walker Digital and Walker Digital LLC, sold over $123,000,000 worth of Priceline.com shares in addition to the personal

sales of over $240,000,000.[6]  The complaint also specifically alleges sales of stock by other Priceline officers, for example, co-defendants Braddock, and Nichols.[7]  Further, the issue of trades of and margin loans against securities other than Priceline.com are relevant to Walker's motivation and opportunity to manipulate Priceline.com stock.  This motivation is alleged in the complaint's scienter allegations.[8]  Plaintiffs seek to discover whether leverage upon Walker's interrelated businesses, all of which appear to have declined in value during the class period, played a role in his motivation to defraud the investing public.  Thus, the allegations made in the complaint concerning trading activity in other securities, entities, and by other individuals, are relevant, and are therefore related financial transactions discoverable under the standards of the *Chazin* case.

III.    No Undue Burden

Walker also claims he is subject to undue burden by the subpoena to third party banks. Significantly, the entities served with the subpoenas at issue here, Merrill Lynch, Morgan Stanley, and Chase have not moved for a protective order.  In the normal course, a party has no standing to object to a subpoena served on a third party:

> According to FRCP 45, which governs the procedure by which a non-party may be compelled to produce documents, the right to challenge such subpoenas is limited to the person to whom the subpoena is directed. See *Vogue Instrument Corp v. Lem Instruments Corp*, 41 FRD 346, 348 (S.D.N.Y.1967); *9 C. Wright and A. Miller, Federal Practice and Procedure,* § 2457 at 431 (1990 Supp) ("A motion to quash, or for a protective order, should be made by the person from whom the documents or things are requested.).

*In re: Seagate Technologies II Securities Litigation*, 1993 WL 293008 (N.D. Cal. 1993).

Rule 45 provides that a subpoena can be modified "if it, (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3).  Walker has not articulated any specific claim of burden, undue or

---

[6] *See* Consolidated Amended Complaint, §19, among others.
[7] *See* C.A.C. §44, among others.
[8] *See* C.A.C. §42, 43, 44, among others.

otherwise in his memo as to himself, and certainly none as to Merrill Lynch, Morgan Stanley, and Chase. There is no discussion of how providing unredacted account and trading information is burdensome or harms Walker or Merrill Lynch, Morgan Stanley, and Chase in any way. Indeed, it would only be the need to redact documents that would impose a burden on the banks – a burden which is patently "undue" in light of the existing protections provided by the confidentiality order applicable to this case. There is no mention of why the protective order already in place is insufficient to protect against the novel construction advocated by Walker that it is a "burden" to have a third party reveal "private" information (which has already been disclosed to at least those third parties) that will be designated confidential and protected from public disclosure.[9]

The court was faced with a similar situation in *Sierra Rutile Limited v. Katz*, 1994 WL 185751 (S.D.N.Y.);

> Resolution of the pending motion turns, therefore, on an inquiry into the relevance of the information sought balanced against the intrusion on the [plaintiffs'] privacy interests…[m]oreover, the documents sought can be protected under the confidentiality order which is in place in this case.

*Sierra Rutile Limited v. Katz*, 1994 WL 185751, *2 (S.D.N.Y.). Here, the Court's protective order is wholly sufficient and effective to protect against disclosure of the information at issue and there is no basis for denying Plaintiffs access to probative information based solely on the unsupported speculation that they will violate the Court's orders.

In light of the Complaint's specific allegations of scienter, under the standards articulated by this Circuit, it is very likely that the trading information contained in the subpoenaed accounts

---

[9] Walker suggests redaction of personal information is required here to protect against disclosure. This is false because the Protective Order in this case resolves issues of sensitive disclosures unequivocally. Further, Plaintiffs already have acquired the information Walker proposes to redact from this production and allowing redaction here will merely thwart Plaintiffs' ability to cross-reference documents without preventing the dissemination of information Defendant supposedly seeks to keep secret.

10

will prove Plaintiff's claims of motivation and opportunity to perpetrate a fraud upon the public, and may also prove the circumstantial evidence of conscious or reckless behavior. It is no wonder Walker would prefer to limit discovery to only himself, Priceline.com trades, and a constrained time period thereby stripping Plaintiffs and ultimately the jury of the opportunity to understand the totality of his financial position, and state of mind as it relates to his motivation and opportunity to commit the fraud alleged in this case.

IV.   Time Period

     Walker also attempts to unnecessarily constrain the scope of the subpoena to an extremely cramped time period. The time parameter set forth in the subpoena seeks to recover relevant documents reflecting Walker's state of mind during the class period. "[Defendant's] attempt to confine discovery to a narrow period beginning three months before the start of the class period and ending three weeks after the class period closes is artificial, arbitrary and designed to avoid the production of relevant documents." *Seagate Technologies II, Supra*, at 1. The relevant time period includes transactions outside the class period because they inform why actions were taken during the class period and provide insight into effects of those actions (whether they successfully achieved their goals or not).

     Moreover, the time period covered in the subpoena is not overreaching or burdensome as it relates to the banks, which have raised no objection to the time period set forth in the subpoena. In light of the lack of any objection to the requested time period by Merrill Lynch, Morgan Stanley, and Chase, there is no justification for extirpating crucial portions of Plaintiffs' discovery based on the unfounded, wholly conclusory and ultimately wrong assertion by Walker that such documents will not reveal information admissible at trial concerning Walker's liability for the fraud alleged.

Walker cites *Carey v. Berisford Metals Corp.,* No. 05 Civ 8622 WL 1788299 (S.D.N.Y 2006) as authority to limit the applicable time period of the subpoena.[10]  *Carey* is wholly inapposite as the discovery request there involved expense account fraud, and the court limited discovery to only the years Carey was employed by the firm which was claiming expense account abuse.  There, the time was finite, because no expenses would be approved, or reimbursed for non-employees.  Here, conversely, the financial transactions leading up to and following the class period are not limited by a similar approval process with such strict confines.  Walker's trading activity before, during and after the class period are all relevant to the allegations that Walker acted with motive in manipulating the price of Priceline.com stock.

Conclusion

The documents sought by the subpoenas are directly related to claims made in the complaint and the defenses asserted by Walker and the other Defendants.  In addition, Walker lacks standing to object to subpoenas directed to third parties.  Walker fails to cite any legitimate or applicable authority in support of his "privacy" arguments, and he fails to present any good cause in support of his request to limit relevant discovery.  No undue burden is presented by Plaintiffs' subpoenas.  The prerequisite elements for a protective Order have simply not been met.  The requested discovery is relevant and there exists no factual reason or legal predicate for denying Plaintiffs' legitimate discovery.  Plaintiffs request the court to deny Walkers motion for Protective Order and award such other relief as it deems just and equitable.

Dated: September 29, 2006               Respectfully submitted,

                                        ____/s/ Eben F. Duval_____

---

[10] *See* Walker Memo of Law, *Supra*, at 7.

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Eben F. Duval (phv01237)
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

SCOTT + SCOTT, LLC
David R. Scott, Fed. Bar No. CT16080
Erin G. Comite, Fed Bar No. CT24886
Mark V. Jackowski
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

**Co-Lead Counsel**