# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION | : MASTER FILE NO.<br>: 3:00-CV-01884 (AVC)<br>: |
| This document relates to:<br><br>ALL ACTIONS | :<br>:<br>:<br>: September 29, 2006 |

## DEFENDANT JAY S. WALKER'S MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' MOTION TO MODIFY THE AUGUST 23, 2006 SCHEDULING ORDER

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF POSITION..................................................1

II. SUBSTANTIAL RESOURCES AND TIME ARE NECESSARY TO COMPLETE THE REVIEW OF ELECTRONIC DATA FROM THE BACK-UP TAPES. ..............................................................................................3

    A. Mr. Walker's Counsel Has Already Expended Substantial Resources And Time Reviewing Electronic Documents On The Back-up Tapes And Analyzing Methodologies For Further Review. ..............................................................................................4

        1. Plaintiffs Failed To Provide Promised Information Regarding The Data That They Wanted Uploaded Pursuant To A Review Of The Catalogs and Detail ReportsThey Had Requested..............................................5

        2. Mr. Walker's Counsel Has Expended Considerable Time Analyzing Data And Developing And Employing A Methodology For Reviewing Data From The Back-Up Tapes. ..............................................................................................7

    B. A Substantial Amount of Analysis And Review Remains With Respect To The Review and Production Of Electronic Data From The Back-Up Tapes...............................................................11

III. CONCLUSION..........................................................................................................12

I.      **INTRODUCTION AND SUMMARY OF POSITION.**

Defendant Jay Walker agrees that the schedule set forth in this Court's August 23, 2006 Order should be modified to extend the dates set forth therein. However, the modified schedule proposed by the plaintiffs is neither workable nor reasonable considering the scale and scope of the review that Mr. Walker's counsel is performing with respect to electronic data found in what has been referred to as the "WebHouse back-up tapes."[1]

There are 181 WebHouse back-up tapes, at least 73% of which are from 1999. The volume of electronic data contained on the back-up tapes is enormous, and the types of files are varied, with email being just one example. Of these 181 back-up tapes, only a small portion have been restored. As reflected in Mr. Walker's July 10, 2006 Status Report on Production of Electronic Discovery (Dkt. #332), we estimate that there are approximately 20 million pages of just email files on the 29 back-up tapes restored as of the date of that Status Report ("29 Restored Tapes"). (Declaration of Shawna L Ballard filed concurrently herewith ("Ballard Decl."), Ex. B, Dkt. #332.)

Plaintiffs' proposed schedule only gives Mr. Walker until December 29 of this year to complete its production of documents pursuant to outstanding document requests. As reflected in Mr. Walker's most recent Status Report to the Court regarding the production of electronic documents, Mr. Walker is in the midst of a large scale review of data from the 29 Restored Tapes. (See Sept. 11, 2006 Status Report, Dkt. # 371, Ballard Decl. Ex. C. The review of electronic data pursuant to the methodology and of the scale and scope contemplated by Mr. Walker cannot be completed by December 29. Instead, based on information presently

---

[1] Walker's Opposition to Plaintiffs' Motion to Compel Production of Electronic Discovery, filed on October 13, 2005 (Dkt. 230-1), at p. 3, reported that the "181 electronic back-up tapes . . . were found amongst the WebHouse documents . . . ." By referring to these tapes as "WebHouse back-up tapes," we do not intend to convey that all these tapes contain WebHouse data. To the contrary, for example, we know that several tapes in this collection are cleaning tapes and blank media. Also, we know that some tapes contain data from before WebHouse was created. Since they were found among the WebHouse documents, for ease of reference, we will refer to all the tapes in this collection as the "WebHouse back-up tapes."

available to us, we estimate that it will take approximately 12 months to complete the review and production of electronic data of a scope that we believe to be reasonable under the circumstances and pursuant to the methodology described herein.[2]

However, in July, plaintiffs filed a motion to compel the wholesale production of all non-privileged electronic data on 17 of the back-up tapes regardless of the date or relevance of the data and to compel an email-by-email review of the entire contents of the mailboxes for 121 custodians, irrespective of the date of the emails.[3] Even if extraordinary resources were committed to the project, we expect it would take years to complete the review sought in plaintiffs' motion to compel. Thus, the unbridled relief requested in plaintiffs' motion to compel would not only place an extreme and unjustified production burden on Mr. Walker, but it would significantly and unnecessarily delay the completion of discovery in this case.

Assuming, however, that plaintiffs' excessive relief sought in their motion to compel is denied -- as it should be -- Mr. Walker recommends that this Court extend by 9 months the schedule recommended in plaintiffs' September 8, 2006 motion in order to give Mr. Walker's counsel adequate time to complete a review and production of electronic documents from the back-up tapes of a scale and scope that is reasonable under the circumstances. This proposed revised schedule is as follows:

---

[2]     If the scope of the electronic document review were expanded beyond what we believe and estimate to be reasonable under the circumstances, the time needed to complete a review and production would increase.

[3]     Moreover, plaintiffs have not limited their production requests to the contents of the 17 tapes that are the subject of their outstanding motion to compel, but instead have sought the production of data from additional tapes as well.

| | | |
|---|---|---|
| October 1, 2007 | ---- | Deadline for producing all documents responsive to the parties' outstanding document requests. |
| June 30, 2008 | ---- | Date when plaintiffs shall designate all experts and serve all expert reports, including damage analyses. |
| July 31, 2008 | ---- | Deadline for completing depositions of plaintiffs' experts. |
| August 1, 2008 | ---- | Date when Defendants shall designate all experts and serve all expert reports, including damage analyses. |
| September 3, 2008 | ---- | Deadline for completing depositions of Defendants' experts. |
| October 1, 2008 | ---- | Date when discovery shall end. |
| November 3, 2008 | ---- | Day by which dispositive Motions shall be filed. Any opposition thereto shall be filed thirty (30) days from the date the motion was filed. |
| December 3, 2008 (or within thirty (30) days of any decision on dispositive motions) | ---- | Date when joint trial memorandum is due. |

II. **SUBSTANTIAL RESOURCES AND TIME ARE NECESSARY TO COMPLETE THE REVIEW OF ELECTRONIC DATA FROM THE BACK-UP TAPES.**

The WebHouse back-up tapes require restoration in order to access the data contained on them. On December 8, 2005, Judge Squatrito issued an order denying plaintiffs' prior motion to compel the wholesale restoration and production of the data on these tapes and ordering that, in order to avoid a "colossal waste of resources" the "[r]estoration of back-up tapes shall proceed on a measured basis, with cost-shifting determinations made at each step of the process." (Dkt. # 245, Ballard Decl. Ex. A at 6, heading 2, emphasis added.) Moreover,

pursuant to the December 8 Order, the defendants were ensured the opportunity of developing a methodology to sift through the data to review for responsiveness and privilege in the most efficient manner that is reasonable under the circumstances. (Id. at 8.)

### A. Mr. Walker's Counsel Has Already Expended Substantial Resources And Time Reviewing Electronic Documents On The Back-up Tapes And Analyzing Methodologies For Further Review.

Subsequent to the December 8 Order, Mr. Walker's counsel and their IT personnel devoted substantial time and resources to produce information that would enable the parties to make informed decisions about which of the tapes might contain data whose value could justify the expense of restoring, reviewing and producing it. In this regard, Mr. Walker's counsel has provided plaintiffs' counsel with 164 searchable, electronic catalogs or detailed directory reports for the back-up tapes – i.e., all the catalogs or reports that Mr. Walker's vendor had previously been able to generate from the 181 back-up tapes. For the files contained on each tape, the catalogs and reports show, among other things: the file names, the folders, and the size of the file in bytes.

The last of these catalogs and reports were provided to plaintiffs in May, 2006. Further Mr. Walker's prior counsel caused 29 of the 181 tapes to be restored to their native format, including 16 tapes restored in 2005 in an initial sampling of tapes and 13 tapes restored earlier this year. In addition, Mr. Walker's counsel has spent an extraordinary amount of time reviewing the content of catalogs and detail reports for the back-up tapes and reviewing some of the data extracted from the back-up tapes in order to develop a methodology for review and analysis of electronic data. These steps and this methodology have been outlined in monthly Status Reports to the court, including the September 11, 2006 report. (Dkt.# 371 , Ballard Decl. Ex.C.)

4

1.  **Plaintiffs Failed To Provide Promised Information Regarding The Data That They Wanted Uploaded Pursuant To A Review Of The Catalogs and Detail ReportsThey Had Requested.**

Prior to Mr. Walker engaging his present counsel, the plaintiffs and Mr. Walker's previous counsel had agreed that the appropriate way to begin the process of culling potentially relevant files from the back-up tapes was for catalogs of the tapes to be created and provided to the plaintiffs. The plaintiffs represented that they would review the catalogs and identify files on them that they wished to be reviewed for production. (Declaration of Jeanne E. Irving, filed concurrently herewith ("Irving Decl.") ¶¶ 2-3, Irving Decl. Ex. B.) Mr. Walker's prior counsel thus arranged for the creation of catalogs for all tapes that Mr. Walker's electronic discovery vendor then believed were capable of being cataloged.

Indeed, when Mr. Walker's present counsel (Hennigan, Bennett & Dorman LLP) began representing Mr. Walker in April of this year, plaintiffs' counsel represented that they had, in fact, begun that review process on the catalogs of the back-up tapes provided to them in March, 2006. (These tapes had been categorized by Paul Hastings as belonging to Groups 5 and 15.) In what appeared to be positive progress, plaintiffs' counsel reported to Mr. Walker's present counsel that, through plaintiffs' review of the catalogs, they had been able to identify a considerable collection of files that could be eliminated from any review by Mr. Walker's counsel because plaintiffs were satisfied that they were not likely sources of responsive documents. (Irving Decl. ¶¶ 3-7.)

In a letter to Mr. Walker's counsel dated April 28, 2006, plaintiffs reiterated their commitment to review the catalogs and detail reports for the back-up tapes in order to identify for Mr. Walker's counsel those files they wanted uploaded for filtering and review and in order to eliminate data for which no review would be necessary. For example, in this letter, plaintiffs' counsel notes that they are anxious to receive certain of the catalogs for the back-up

5

tapes (which plaintiffs' counsel refers to as indexes) in searchable format, and plaintiffs' counsel states that:

> Once we have searchable and sortable indexes, *Plaintiffs will then be able to separate those files that likely contain responsive information from the files that can easily be eliminated from the search.* The goal here is to eliminate as much of the material as possible and focus only on the files that may contain responsive documents.

(Irving Decl., Ex. B, p. 1, emphasis added.)

Plaintiffs' April 28, 2006 letter goes onto state that:

> *Once we have gone through the indexes*, the next step will require the parties to segregate the materials on the tapes *so that we are only working with the files that Plaintiffs have designated for review*. . . . This will significantly reduce the volume of material.

(Irving Decl. Ex. B, p. 1, emphasis added.) In this April 28, 2006 letter, plaintiffs' counsel further states: "The most pressing issue right now is the production of the searchable and sortable indexes. . . . we will then be able to segregate the data on the tapes." (Irving Decl., Ex. B, p. 3.)

However, plaintiffs failed to uphold their end of this agreement. Despite having represented to Mr. Walker's counsel in April, 2006 that they were prepared to identify to Mr. Walker's counsel those portions of the back-up tapes that they wanted to have reviewed for privilege and responsiveness, plaintiffs' never identified any such files. Plaintiffs also stated in the April 28, 2006 follow up letter to this call that they would propose to Mr. Walker's counsel with a list of search terms to use to search the database, plaintiffs never provided such search

6

terms (Irving Decl., Ex. B, p.2). Indeed, to this day, plaintiffs have failed to identify from the catalogs any files for review and production, and have failed to identify any search terms. (Irving Decl. ¶¶ 8, 11.)[4]

Instead, a few months went by while the ball was in plaintiffs' court, but without plaintiffs providing Mr. Walker's counsel with the list of culled files they had promised to provide. Then, without informing Mr. Walker's counsel that they were refusing to perform the review process for which Mr. Walker had caused 164 catalogs or detail reports to be generated, plaintiffs took a complete about-face by filing, on July 7, 2006, a motion to compel Mr. Walker to produce certain email accounts and all "remaining electronic documents" on 17 of the back-up tapes,[5] including the production of all "remaining electronic documents" from tapes in Groups 5 and 15.[6] Plts' motion sought wholesale production of documents from 17 tapes despite the fact that plaintiffs had informed us that they could see from their catalog review that there was a considerable amount of non-responsive material on the back-up tapes.

    2.    **Mr. Walker's Counsel Has Expended Considerable Time Analyzing Data And Developing And Employing A Methodology For Reviewing Data From The Back-Up Tapes.**

In the face of plaintiffs' abdication of the role they had committed to perform in order to identify potentially responsive material on the back-up tapes, Mr. Walker's counsel has endeavored to identify other methods to cull the back-up tape data, and engaged the services of

---

[4] Further, Plaintiffs never responded to Mr. Walker's May 12, 2006 letter addressing the types of steps that need to be taken to limit the volume of .pst files reviewed to a reasonable population and inviting plaintiffs' input on that issue.

[5] Plaintiffs never met and conferred with Mr. Walker's counsel before filing the motion to compel. Indeed, plaintiffs did not communicate with Mr. Walker's counsel at all in the almost two months before filing the motion to compel. (Irving Decl. ¶ 13.)

[6] Although plaintiffs' motion did not identify which 17 of the tapes were the subject of the motion, two days before the opposition to the motion was due, plaintiffs responded to Mr. Walker's repeated inquiries on this subject by disclosing that the tapes for which they sought production of all "remaining electronic documents" includes the tapes in Groups 5 and 15.

7

its electronic discovery vendor to perform critical steps in that process. Mr. Walker's counsel has begun that process and now has a limited track record from which to make some educated guesses on how long it might take for that process to be completed. While there are considerable variables in this process – some difficult or impossible to predict –the projections in this brief are based on those extrapolations. They are necessarily only estimates and not certainties.

As a result of this analysis and effort, Mr. Walker's counsel has taken numerous steps to develop a methodology for analyzing the scope of review that is reasonable under the circumstances. Below is a summary of some of the steps and methodologies that Mr. Walker's counsel has initiated and taken, to date, to cull through the voluminous .pst email data on the restored tapes:

1. Mr. Walker's counsel has obtained a copy set of those emails produced by other defendants, and pursuant to Mr. Walker's counsel's instructions, Mr. Walker's electronic vendor has uploaded a copy set of those electronic emails produced by the other defendants.

2. From the list of 121 individuals for whom plaintiffs seek an email-by-email review, based on the defendants' interrogatory responses and initial disclosures, Mr. Walker's counsel has identified 59 individuals, including the defendants, as most likely to have responsive information in their mailboxes.

3. Pursuant to Mr. Walker's counsel's instructions, Mr. Walker's electronic vendor has uploaded the entire .pst mailboxes for any of these 59 individuals for whom mailboxes exist on any of the 29 Restored Tapes.

4. Through this process, a total of approximately 12.7 gigabytes of data has been uploaded onto Mr. Walker's electronic vendor's systems for initial filtering.

5. Once uploaded onto Mr. Walker's electronic vendor's system, the 12.7 gigabytes of data were filtered to exclude documents that fell outside the relevant time period for production as set by Judge Squatrito. In this regard, a filter was applied to exclude those documents that predated March 1, 1999 and post-dated April 1, 2001.

6. After the application of such filters, this left over 216,000 documents (including over 560,000 pages) that have presently been released to Mr. Walker's electronic vendor's review tool for further filtering, review and analysis, and attorneys are in the process of reviewing emails and attachments released to Mr. Walker's electronic vendor's review tool for responsiveness and production.

7. A number of filters have been applied to the more than 560,000 pages of documents that remained after the application of the date filters in order to identify potentially responsive documents and assist with the prioritization of these documents for review and analysis.

8. For example, Mr. Walker's electronic vendor has identified those emails from the back-up tapes that are duplicates of emails produced by other defendants.

9. Moreover, the data has been filtered for numerous attorney and law firm names and for the terms: attorney(s), legal department, lawyer(s), and paralegal(s). Emails and attachments containing such search terms have been tagged as potentially privileged and have been segregated from any review to date so that that the time-consuming process of analyzing potentially privileged documents can, where practical, take place after the review of the remaining email population that results from the filtering, so as to expedite the production of the

bulk of the documents that do not require the more technical and time-consuming privilege analysis.

10. Further, Mr. Walker's counsel identified as the first priority the review of the contents of any of the defendants' mailboxes contained in the review tool.

11. Filters were run against Mr. Walker's and Mr. Braddock's mailboxes to exclude from this initial review those emails that are duplicates of electronic emails already produced by co-defendants and to exclude those emails identified as potentially privileged in accord with the filters and methodology described above. The remaining population of emails contained in these mailboxes were segregated for priority review by the review team.

12. Mr. Walker's counsel identified certain documents containing various WebHouse terms as the subject of the second level of review, and filters have, thus far, been run against the emails to segregate certain emails that were released from the initial upload of 9.94 gigabytes of data, for review and analysis. Mr. Walker's electronic vendor is presently in the process of employing these same filters to those emails released from the more recent upload of 2.78 gigabytes of data. These filters were more specifically described in Mr. Walker's September 11, 2006 status report regarding the production of electronic documents. (Ballard Decl. Ex. C.)

Employing the above methodologies,[7] Mr. Walker's review team has been reviewing documents for responsiveness against the back-drop of more than 75 extremely broad documents requests (many containing numerous subparts) served upon Mr. Walker. Mr.

---

[7] Ballard Decl. ¶ 4.

Walker's counsel intends to produce non-privileged electronic documents on a rolling basis pursuant to this review process.

      **B.    A Substantial Amount of Analysis And Review Remains With Respect To The Review and Production Of Electronic Data From The Back-Up Tapes.**

Mr. Walker's counsel has expended a considerable amount of effort and time reviewing electronic documents for responsiveness and analyzing data in order to develop a methodology for culling through the enormous amount of data on the 29 Restored Tapes in a manner that is reasonable under the circumstances. However, a substantial amount of work remains as a result of the sheer volume of data at issue. For example, a substantial amount of data staged in accord with the filters employed thus far remains to be reviewed for responsiveness and the time consuming process of reviewing the substantial volume of documents identified as potentially privileged pursuant to the above filtering also remains outstanding. Further, Mr. Walker's counsel continues to evaluate what further filters and steps should be employed in the electronic review process.

While it is difficult to estimate at this stage the amount of time that it will take to complete an electronic review of back-up tape data that we believe to be reasonable under the circumstances and under the methodologies described herein, based on information presently available, we anticipate it will take approximately 12 months to complete the review and production. (Ballard Decl. ¶ 7.) The schedule proposed in this response is based on that estimate. If insufficient time is given for the electronic review, that will reduce the amount of electronic data that can reasonably be reviewed and produced under the circumstances.

### III.  CONCLUSION.

For the foregoing reasons, Mr. Walker requests that this Court adopt an order setting forth the schedule proposed herein, but that the Court reevaluate such order should this Court grant any part of plaintiffs' outstanding motion to compel the production of data from 17 of the back-up tapes or if Mr. Walker's production otherwise expands beyond that anticipated herein.

DATED:  September 29, 2006                     Defendant, Jay S. Walker

By:  ___/s/ Jeanne E. Irving___

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
Phone:  (203) 977-7300
Fax:     (203) 977-7301
tdgoldberg@dbh.com – E-mail

- and -

J. Michael Hennigan (phv01119)
Bruce Bennett (phv01115)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01117)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Fax:  (213) 694-1234
irvingj@hbdlawyers.com – E-mail

His Attorneys