## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION | : <br> : <br> : | MASTER FILE NO.<br>3:00CV01884(AVC) |
| | : | |
| This document relates to: | : | September 29, 2006 |
| | : | |
| ALL ACTIONS | : | |

### DECLARATION OF JEANNE E. IRVING IN SUPPORT OF DEFENDANT JAY S. WALKER'S RESPONSE TO PLAINTIFFS' MOTION TO MODIFY THE AUGUST 23, 2006 SCHEDULING ORDER

I, Jeanne Irving, do hereby declare, swear and affirm as follows:

1.       I am a member of the firm Hennigan, Bennett & Dorman LLP, counsel for Jay S. Walker in this matter.  I submit this declaration in support of Mr. Walker's response to Plaintiffs' Motion to Modify the August 23, 2006 Scheduling Order.  Except to the extent stated otherwise herein, I make this declaration based on my own personal knowledge and experience and based on my knowledge of the file in this matter.

2.       In April, 2006, Mr. Walker retained this firm to represent him in this matter. While this firm was first transitioning into this case, on April 18, 2006, I spoke with Geoffrey Johnson, one of plaintiffs' attorneys in this action, about production issues, including issues pertaining to the 181 backup tapes.  In that call, Mr. Johnson relayed to me that Mr. Walker's previous counsel, Paul Hastings Janofsky & Walker LLP, had restored one sample tape from each of 16 groups of tapes, and had later restored and provided the plaintiffs with catalogs of what Mr. Johnson referred to as a group of 6 additional tapes.  I later learned that these tapes

were from Groups 5 and 15, as designated by Paul Hastings (hereinafter referred to as the "Groups 5 and 15 Tapes").[1]

3.    Mr. Johnson represented to me that the plaintiffs were in the process of identifying files on the catalogs from the Groups 5 and 15 Tapes, and specifically told me that plaintiffs would provide to me "soon" the designation of what files on the catalogs of the Groups 5 and 15 Tapes plaintiffs wanted Mr. Walker's counsel to review for production.  Mr. Johnson also told me in this conversation that the plaintiffs had found that there was a lot of material on the back-up tapes that they did not need.

4.    Mr. Johnson asked me to have a representative from my firm's IT department participate in a conference call with the plaintiffs' IT consultant to address the process of reviewing electronic documents for production "once we [plaintiffs] send back the indexes" on which they would be identifying the specific files they wanted reviewed for production.  Mr. Johnson stated that his computer person needed more information from ours to formulate a proposal for production.

5.    Following this April 18 call, attorneys and/or IT persons at this firm participated in several conferences with plaintiffs' counsel regarding technological and other issues associated with reviewing and culling through electronic data.   In this regard, on or about April 20, 2006, I spoke with several attorneys representing the plaintiffs, including Peter McDougall, Jake Perkinson, Stacy Porter and Geoff Johnson regarding issues pertaining to the 181 backup tapes.  In that conversation, Mr. McDougall informed me that plaintiffs were reviewing the catalogs for what he referred to as the 6 backup tapes that had recently been restored, i.e., the Groups 5 and 15 Tapes in order to identify files on those reports that they would seek to have uploaded and reviewed.

---

[1]    A true and correct copy of what I understand to be the March 10, 2006 letter from Paul, Hastings to Mr. McDougall attaching these catalogs is attached hereto as Exhibit A.  I have looked at the catalogs referenced in this letter and have seen that the catalogs are of the Group 5 and 15 Tapes.

6.     In this conversation, I stated that it seemed to me that the next step in the process was for plaintiffs to identify which of the files from the catalogs they wished to have reviewed and we could then discuss how to proceed. Mr. McDougal conveyed to me that plaintiffs would do this.

7.     On April 27, 2006, I had a further conversation with plaintiffs' counsel regarding issues relating to the review of information contained on the restored backup tapes. Shawna Ballard, another attorney at this firm working on this matter, also participated in this call. Moreover, pursuant to plaintiffs' request that we have a person from this firm's IT department join the call, Celestino (Tino) Santos, this firm's Litigation Support Administrator, also participated in this phone call. Mr. McDougall and Mr. Johnson, as well as Ms. Griffin, an IT person working on this matter for plaintiffs, participated on the call on behalf of the plaintiffs. In this call, plaintiffs' counsel again reiterated that they were going through the catalogs that had been provided to them to identify those files that they would like to have uploaded for review. Mr. McDougall indicated in that call that he would provide the identification of the files from the catalogs that they sought to have reviewed for potential production to us shortly.

8.     On April 28, 2006, Mr. Johnson wrote me a letter with respect to the call we held on April 27, 2006, a copy of which Mr. Johnson attached hereto as Exhibit B. In that letter, Mr. Johnson reiterated his commitment to review the catalogs to identify files they wished to have reviewed. Also, on page 2 of that letter, Mr. Johnson notes that "Plaintiffs will also provide you with a list of search terms that you should use to search the entire database."

9.     On Friday, May 5, 2006, Shawna Ballard and I participated in a further telephone conference with plaintiffs' counsel. Mr. Johnson and Mr. Mc Dougall participated in that call for plaintiffs. In that call, we discussed plaintiffs' request that we conduct an email-by-email search of the .pst mailbox files for 121 individuals identified by plaintiffs and on that same day, Mr. McDougall provided me with the list of 121 individuals for whom plaintiffs sought such an email-by-email search.

10.     In the meantime, beginning shortly after our retention, HBD spent a considerable amount of time analyzing the catalogs in an attempt to assess the volume of data that relates to email as well as other types of documents. We also spent a great deal of time discussing with Mr. Walker's electronic vendor the most efficient and cost-effective means of culling relevant material from the data population. These analyses and discussions revealed that the volume of the data that relates to email of the 121 individuals on the list provided to me on May 5, 2006, appears to be enormous and that the most efficient and cost-effective approach to culling from this population relevant material is to both (1) to commit to review the email of only reasonable list of identified individuals, and (2) to run a reasonable list of search and date terms against the email of those identified individuals. On May 12, 2006, I wrote a letter to Mr. Johnson, a true and correct copy of which is attached hereto as Exhibit C, explaining our position and soliciting plaintiffs' views.

11.     Plaintiffs' counsel never identified those files from the catalogs that it wished to have uploaded as they had committed to do in conversations held on April 18, 20 and 27, 2006 and the letter from Mr. Johnson dated April 28, 2006. Plaintiffs' counsel never provided me with proposed search terms to apply to the uploaded data as they had committed to do in their April 28, 2006 letter. And, plaintiffs' counsel never contacted me in response to my May 12, 2006 letter.

12.     In fact, while we awaited the plaintiffs' promised identification of files on the catalogs, and their proposed search terms, and a response to our proposal of May 12, 2006, months went by without plaintiffs communicating with us in any way. Plaintiffs never informed us that they had decided not to fulfill the commitments they had made in those regards.

13.     Instead, out of the blue, on July 7, 2006 plaintiffs filed a motion to compel wholesale production from 17 back-up tapes without any identification of material from the catalogs that would indicate what and what not might be of any significance to this case. Plaintiffs' counsel did not contact me or others representing Mr. Walker regarding their motion

to compel filed.  Plaintiffs' counsel never discussed with me the request for the wholesale production of documents on the backup tapes that are the subject of their motion to compel. Plaintiffs' counsel never discussed with me or others representing Mr. Walker that they were even contemplating a motion to compel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2006.

/s/  Jeanne E. Irving
Jeanne E. Irving