UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : MASTER FILE NO. : 3:00CV01884(AVC) : |
| This document relates to: | : September 29, 2006 : |
| ALL ACTIONS | : : |

DECLARATION OF SHAWNA L. BALLARD IN SUPPORT OF DEFENDANT
JAY S. WALKER'S RESPONSE TO PLAINTIFFS' MOTION TO MODIFY
THE AUGUST 23, 2006 SCHEDULING ORDER

I, Shawna L. Ballard, under penalty of perjury declares as follows:

1.      I am a member of the firm Hennigan, Bennett & Dorman LLP, attorneys for defendant Jay S. Walker ("Walker") in this action. I submit this declaration in support of Defendant Jay S. Walker's Response to Plaintiffs' Motion to Modify the August 23, 2006 Scheduling Order. Except to the extent stated otherwise herein, I make this declaration based on my own personal knowledge and experience and based on my knowledge of the file in this matter.

2.      Plaintiffs previously sought the production of all 181 backup tapes in a motion filed in September 2005. On December 8, 2005, Judge Squatrito denied plaintiffs' request to compel the production of 181 backup tapes in Mr. Walker's possession, and in doing so, Judge Squatrito issued a Memorandum of Decision and Order (Dkt # 245) setting forth the procedures that govern the production of documentation from the 181 backup tapes in Mr. Walker's possession. A true and correct copy of this Memorandum of Decision and Order is attached hereto as Exhibit A.

3.      I and others at this firm have spent a substantial amount of time analyzing data and information with respect to what have been referred to as the "WebHouse" back-up tapes in order to develop a methodology for review and analysis of data on these tapes that is reasonable

1

under the circumstances. Due to the sheer magnitude of data at issue, this process has been difficult and time-consuming. These steps and this methodology have been outlined in monthly status reports to the court, including, the July 10, 2006 status report (Dkt # 332) and the September 11, 2006 status report (Dkt # 371), a true and correct copy of which are attached hereto as Exhibits B and C, respectively. As reflected in the July 10, 2006 status report, the data on just the 29 back-up tapes restored as of the date of that report (the "29 Restored Tapes") is voluminous.

    4.    As a summary, the following are some of the some of steps that have been taken and methodologies employed thus far with respect to the review of voluminous data on the backup tapes:

    (a) We have obtained a copy set of those emails produced by other defendants, and pursuant to our instructions, Mr. Walker's electronic vendor has uploaded a copy set of those electronic emails produced by the other defendants.

    (b) From the list of 121 individuals for whom plaintiffs seek an email-by-email review, based on the defendants' interrogatory responses and initial disclosures, we have identified 59 individuals, including the defendants, as most likely to have responsive information in their mailboxes.

    (c) Pursuant to our instructions, Mr. Walker's electronic vendor has uploaded the entire .pst mailboxes for any of these 59 individuals for whom mailboxes exist on any of the 29 Restored Tapes.

    (d) Through this process, a total of approximately 12.7 gigabytes of data has been uploaded onto Mr. Walker's electronic vendor's systems for initial filtering.

    (e) Once uploaded onto Mr. Walker's electronic vendor's system, the 12.7 gigabytes of data were filtered to exclude documents that fell outside the relevant time period for production as set by Judge Squatrito. In this regard, a filter was applied to exclude those documents that predated March 1, 1999 and post-dated April 1, 2001.

(f) After the application of such filters, this left over 216,000 documents (including over 560,000 pages) that have presently been released to Mr. Walker's electronic vendor's review tool for further filtering, review and analysis, and attorneys are in the process of reviewing emails and attachments released to Mr. Walker's electronic vendor's review tool for responsiveness and production.

(g) A number of filters have been applied to the more than 560,000 pages of documents that remained after the application of the date filters in order to identify potentially responsive documents and assist with the prioritization of these documents for review and analysis.

(h) For example, Mr. Walker's electronic vendor has identified those emails from the back-up tapes that are duplicates of emails produced by other defendants.

(i) Moreover, the data has been filtered for numerous attorney and law firm names and for the terms: attorney(s), legal department, lawyer(s), and paralegal(s). Emails and attachments containing such search terms have been tagged as potentially privileged and have been segregated from any review to date so that that the time-consuming process of analyzing potentially privileged documents can, where practical, take place after the review of the remaining email population that results from the filtering, so as to expedite the production of the bulk of the documents that do not require the more technical privilege analysis.

(j) Further, Mr. Walker's counsel identified as the first priority the review of the contents of any of the defendants' mailboxes contained in the review tool.

(k) Filters were run against Mr. Walker's and Mr. Braddock's mailboxes to exclude from this initial review those emails that are duplicates of electronic emails already produced by co-defendants and to exclude those emails identified as potentially privileged in accord with the filters and methodology described above. The remaining population of emails contained in these mailboxes were segregated for priority review by the review team.

(l)  We identified certain documents containing various WebHouse terms as the subject of the second level of review, and, pursuant to our instructions, filters have, thus far, been run against the emails to segregate certain emails that were released from the initial upload of 9.94 gigabytes of data, for review and analysis.  Mr. Walker's electronic vendor is presently in the process of employing these same filters to those emails released from the more recent upload of 2.78 gigabytes of data.   These filters are more specifically described in Mr. Walker's September 11, 2006 status report regarding the production of electronic documents attached hereto as Exhibit C.

5.       Employing these methodologies, Mr. Walker's review team has been reviewing documents for responsiveness against the back-drop of in excess of 75 broad documents requests (many containing numerous subparts) served upon Mr. Walker.  Mr. Walker's counsel intends to produce non-privileged electronic documents on a rolling basis pursuant to this review process.

6.       As part of the process of developing an appropriate methodology for the review, we have reviewed information on the catalogs and tape detail reports generated by Mr. Walker's electronic vendor and information gleaned from the review of the documents released thus far into Mr. Walker's vendor's electronic review tool.  From this analysis, we have some limited record upon which we can attempt, through extrapolations, to make educated predictions as to the scope of review and production that is reasonable under the circumstances and the time and fees it would take to complete a review and production that is reasonable under the circumstances.  However, due to the number of variables at play, some difficult to predict, and the magnitude of the data at issue, these projections are estimates and not certainties.

7.      However, based on information presently available, we anticipate it will approximately 12 months to complete a review and production reasonable under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2006.

_____/s/ Shawna L. Ballard_____

Shawna L. Ballard