UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| _____ | : | MASTER FILE NO. |
| | : | 3:00-CV-01884 (AVC) |
| This document relates to: | : | |
| | : | October 17, 2006 |
| ALL ACTIONS | : | |
| | : | |

**PLAINTIFFS' MOTION FOR IN CAMERA REVIEW OF
DISPUTED DOCUMENTS ON THE DEFENDANTS' PRIVILEGE LOG**

Plaintiffs met and conferred with Defendants' counsel as instructed by the Court's September 22, 2006 Order. Substantial progress was achieved, reflected by the many documents now being produced by Defendants to Plaintiffs. In addition, much information which Defendants had previously refused to provide was supplied, leading to a fuller understanding of the haphazard logging presented initially by Defendants.[1] However, many documents remain in dispute requiring the Court's review to determine if Defendants' claims of privilege are legitimate. In general, the remaining disputes relate to Plaintiffs' well-accepted position that the claims of attorney-client privilege asserted by Defendants fail due to disclosure of these documents to third parties.

---

[1] For example, after numerous previous requests, Defendants finally revealed that certain people who appeared to be third parties were actually Priceline.com employees. Also, with respect to several documents, Defendants' counsel represented that third parties who were indicated to be recipients of the document were not in fact recipients as reflected in their log, but were merely purportedly referenced in the document. The carelessness of Defendants' logs brings into serious question the reliability of excluding from discovery the documents included in them and imposes an additional burden on Plaintiffs by requiring them to remain vigilant in continually reassessing Defendants' logs based on the developing evidence.

1. Disclosure to third parties

In response to Plaintiffs' reiterated challenges to certain claims by Defendants of attorney-client and work product privilege on many documents included on Defendants' privilege logs during the most recent meet and confer session, Defendants agreed to produce numerous documents. However, ninety-five documents remain in dispute based on the Defendants' contention that the disclosure of these documents to third parties does not destroy any applicable privilege. As described below, Defendants fail to carry their burden on these documents and they should be ordered produced.

> Because in most instances privilege depends upon confidentiality and broaching this confidentiality as to one person destroys it as to the world, courts regularly find that such disclosures justify discovery of formerly privileged materials by current litigants…a showing of disclosure to another precludes assertion of the privilege in the current litigation.

8 *Wright, Miller & Marcus*, Fed. Prac. and Proc. Civil 2d §2016.2 p249-250. *See Hanson v. U.S. Agency for Intl. Devel.*, 372 F.3d 286 (4th Cir. 2004) (Implied waiver of the attorney-client privileged occurs when a party claiming the privilege has voluntarily disclosed confidential information on a given subject to a party not covered by the privilege.)

The documents which appear to have been shared with or disclosed to third parties according to the entries on Defendants' Privilege Logs and subsequent explanation are:

Volume 1: 237;

Volume 2: 12, 251, 252, 255, 279, 293, 294, 295, 296, 359, 390, 400, 403, 410, 412, 430, 434, 435, 436, 461, 462, 463, 468, 469, 475, 476, 477, 489, 491, 503, 505, 509, 517, 523, 541, 565, 573, 576, 582, 603, 615, 619, 631, 680, 681, 692;

Volume 3: 14, 23;

Volume 4: 30, 80, 81, 86, 87, 94, 95, 96, 122, 123, 124;

Volume 5: 6, 7, 23;

Volume 6: 4, 19, 21, 25, 31, 36, 47, 67, 203, 209, 218, 219, 226, 229, 230, 241, 243;

Volume 7: 15, 16, 38, 45, 46, 47, 48, 50;

Volume 8: 8;

Volume 9: 16, 61, 62, 63, 73, 91.[2]

In addition to the ninety-five documents above, there are three privilege log entries that were disputed during the meet and confer session, and in response Defendants stated they would consider producing the documents and inform Plaintiffs shortly. After two weeks, Defendants have still not responded as to whether they will produce these documents or not, and therefore the following three entries which appear to have been shared with or disclosed to third parties according to the entries on Defendants' Privilege Logs and subsequent explanation are also still in dispute:

Volume 2: 239, 411;

Volume 6: 199;

With respect to all the disputed documents, Defendants' descriptions and oral explanations indicate that the attorney-client privilege, to the extent it ever existed, was destroyed and waived as a result of the information being disclosed to non-priceline.com employees or entities. "It is well-established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship." *See In re Grand Jury Proceedings*, No. M-11-189, 2001 WL 1167497, at *7 (S.D.N.Y. Oct. 3, 2001).

---

[2] Plaintiffs, of course, reserve the right to challenge additional documents currently included on Defendants' privilege logs based on additional information developed from the ongoing discovery process in this case.

3

Defendants do not contend that the disclosure to the third parties was inadvertent. The attorney-client privilege, if present, was thus waived upon disclosure to these third parties, and the documents should be ordered produced.

2. <u>Defendants Fail to Establish the Application of any Exceptions to the Disclosure Rule</u>

During the most recent meet and confer, as they have in the past, Defendants re-asserted the attorney-client privilege based on the claim that attorney-client privilege remained intact in many instances due to a purported joint defense agreement, also sometimes referred to as the "common interest" rule. This claim is asserted by Defendants as to the following subset of the documents disclosed to third parties:

<u>Volume 2</u>: 12, 239, 251, 252, 255, 279, 293, 294, 295, 296, 390, 403, 412.

As an initial matter, Defendants must fulfill their burden to prove the underlying attorney-client privilege, prior to any claim of an exception. "The party asserting the joint defense agreement always bears the burden of demonstrating its existence by establishing each element of the attorney client privilege." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997). They must then demonstrate that the engagement between Priceline.com employees or counsel and third parties comports with the requirements necessary to establish a joint defense agreement or exception under the common interest rule. Defendants fail to accomplish either task.

The differences between the common interest rule and joint defense agreements was explained *In re Asia Global Crossing Ltd*:

> [The common interest privilege] is limited to situations where multiple parties are represented by separate counsel but share a common interest about a legal matter. *Schwimmer*, 892 F.2d at 243; *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y.1995). In contrast, the "joint defense" or "joint client" privilege applies when two or more clients are represented by the same attorney on matters of common interest. *See* 3 *Weinstein*, ¶ 503.21[1], at

4

> 503-67 to 503-68. Nevertheless, courts sometimes use "joint defense" and "common interest" interchangeably. See *Schwimmer*, 892 F.2d at 243.

*In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 264 (Bkrtcy.S.D.N.Y.,2005). The difference in nomenclature of the privilege asserted is of little import since Defendants' claims fail under either standard. In the Second Circuit, neither a joint defense agreement nor common interest privilege is established by Defendants with respect to the thirteen documents as to which this type of privilege is asserted.

    A.  <u>Joint Defense Privilege and Common Interest Rule</u>

Defendants completely fail to establish the prerequisites for a joint defense privilege. Although joint defense agreements may be oral, they must be executed prior to third party disclosure and must be related to a legitimate and existing joint defense effort. The burden of establishing the necessary elements of a joint defense agreement rests entirely with the Defendants.

> In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *In re Bevill, Bresler & Schulman Asset Management*, 805 F.2d 120 at 126. It is incumbent on a party claiming the joint defense privilege, therefore, to establish that "the parties had agreed to pursue a joint defense strategy. Id.

*Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005). Here, Defendants have failed to reveal in their logs or in their discussions with Plaintiffs any basis upon which anyone could conclude that any joint defense effort existed as to any document in dispute. The only explanation ever offered by Defendants is that a joint defense exists because Defendants have written in a joint defense privilege in their log as the basis for withholding relevant discovery. Such circular reasoning is patently inadequate and can never support legitimate claims of privilege.

5

B.  <u>Strict Application by Second Circuit – Produced in Preparation for Potential Litigation Necessary</u>

In order to obtain the protection afforded documents under a joint defense agreement, a coordinated legal strategy between the claimant to the privilege and the third parties to which the information was disclosed must have been present.  The Second Circuit follows a strict approach to the common interest rule and the legal strategy between the third parties and employees must relate to potential litigation, not just a general business risk.  *See Polycast Technology Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 50 (S.D.N.Y. 1989) (Actual or potential litigation is "necessary prerequisite for application of the joint defense privilege.")  Here, Defendants have failed to establish the threat of any litigation while their privilege log entries exhibit a pattern not of joint litigation, but simply general legal meetings where third parties were allowed to participate for business planning purposes.

> 'The joint defense privilege arises only where the common interest of the parties relates to a joint defense of existing or impending litigation' *Metro Wastewater Reclamation v. Continental Casualty Co.,* 142 F.R.D. 417, 479 (1992).  This background helps to position the Second Circuit's doctrine, as declared in *Schwimmer*, on the spectrum of joint defense privilege analysis, and reveals that Second Circuit case law is much closer to the more demanding end of the spectrum than to the doctrine of the Ninth Circuit… *Schwimmer's* references to joint strategy and common enterprise demonstrate that the Second Circuit, unlike the Ninth Circuit, is unwilling to infer a joint defense agreement from the simple circumstance of a general purpose meeting held to discuss matters of common interest.

*U.S. v. Weissman*, Not Reported in F.Supp.,*9 1996 WL 737042 (S.D.N.Y.,1996), affirmed by *U.S. v. Weissman*, 195 F.3d 96 (2nd Cir. 1999).  Defendants have not articulated, much less demonstrated that any document as to which they assert a joint defense privilege dealt with any actual or potential litigation or that the parties to the document entered into a legitimate and effective joint defense privilege.

In addition to the requirement of either pending, or at least a strong potential for litigation, the parties must also have a real joint legal strategy. The common interest rule protects only those who "have demonstrated cooperation in formulating a common legal strategy." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995). "The timing of the communications is important; there must be a strong possibility of litigation. [Citations omitted.] The privilege arises out of the need for a common defense, as opposed merely to a common problem." *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F.Supp. 841, 844-845 (N.D.Ill.1988). Lacking a threat of litigation, and a common defense strategy the distribution of information to third parties waives attorney-client privilege in the Second Circuit.

The notes describing the privilege log contents at issue here do not reflect a joint defense agreement, or a litigation threat which one would expect if an express agreement had been made. During the parties meet and confer session, Defendants offered no basis whatsoever to support their claim that the documents at issue concerned any threatened or pending litigation, much less a coordinated plan among unrelated parties to address the same.

Under these circumstances, there can be no finding that Defendants have satisfied their burden of establishing a joint defense or common interest privilege. For example, in *Weissman, supra,* the court found the existence of notes to be an integral part of creating a joint defense agreement: "[T]he court was influenced in part by the lack of any mention of a JDA in [counsel's] notes taken at the meeting." *U.S. v. Weissman* 195 F.3d 96, 99 (1999). Here, the only information Defendants have provided indicates an ongoing general business purpose with respect to the documents at issue, lacking the necessary strong potential litigation and coordinated legal strategy necessary for the protection Defendants claim. Without notes

reflecting a joint defense agreement or a memorialization of the agreement itself, the likelihood of the parties entering such an express agreement is suspect at best and Defendants have offered no evidence or even explanation to support their claims. Therefore, all documents as to which Defendants make their defective claim of a joint defense privilege should be ordered produced.

### C. Joint Defense Strategy Required

Defendants' logs also fail to provide evidence of the strategy necessary to establish a joint defense agreement. "Some form of joint strategy is necessary to establish a [joint defense agreement] rather than merely the impression of one side. *United States v. Weissman*, 195 F.3d at 100. Rather, there must be evidence of a 'coordinated legal strategy' between the two parties." *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) citing *Shamis v. Ambassador Factors Corporation*, 34 F.Supp.2d at 893. The strategy must be identical, rather than similar:

> More troublesome is the question of whether the doctrine can be stretched to apply to communications between entities that have parallel interests but are not actively pursuing a common legal strategy…'The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 447 (S.D.N.Y.,1995) citing *Duplan Corp. v. Deering Milliken, Inc*., 397 F.Supp. 1146, 1172 (D.S.C.1975). Here, the Defendants must show that the third parties' interests were identical to the Priceline.com interests Defendants assert were the subject of some imaginary, yet undisclosed pending or threatened litigation. "Mere cooperation among the parties, absent the intent to participate in a joint strategy, does not create the requisite ongoing common enterprise." *In re Asia Global Crossing, Ltd*., 322 B.R. 247, 264 Bkrtcy.S.D.N.Y.,2005 citing *United States v. Weissman*, 195 F.3d, at 99-100. Even if Defendants belatedly provide the Court with evidence of pending or threatened litigation which (for whatever reason) they refused to share with Plaintiffs, no

8

evidence of a prior coordinated legal strategy has been articulated, much less demonstrated. Defendants must prove this aspect of the engagement(s) in order to claim the privileges they assert, but they fail to do so.

Here, Defendants claim the common interest privilege applies to the thirteen documents willingly disclosed to the following third parties: Walker Digital LLC, Walker Digital Corp., Webhouse Club[3], Webhouse Chief Financial Officer Bob Mylod, Webhouse Chief Operating Officer Paul Francis; and Webhouse Vice President, Controller, Treasurer, and Assistant Secretary Ernie Scheidemann. *See Blanchard v. EdgeMark Finan. Corp.*, 192 F.R.D. 233 (D.C. Ill. 2000), (The common interest exception to the waiver rule was not applicable because communications between defendants or their counsel were copied to a third party.) No evidence of a joint defense agreement or pending or threatened litigation has been produced and therefore Defendants' claims of a joint defense agreement privilege must fail.

3.  Document Dispute Details

For ease of reference, a chart reflecting the details of the ninety-eight privilege log entries currently disputed is provided as Exhibit A for the Court's convenience. The third party to which the document was willingly disclosed is reflected in the left column, the volume and number in the right column corresponds to the respective privilege log volume and entry number.

Conclusion

For the foregoing reasons, Plaintiffs contend that the documents discussed above are not entitled to the claims of privileges asserted by Defendants and request that the court to review the disputed documents *in camera*, and order the documents produced to Plaintiffs.

---

[3] Plaintiffs believe Webhouse and Priceline were alter egos of the same entity even though separated by name. To the extent Defendants wish to cede this point, Plaintiffs will retract objections that Webhouse was a third party.

Dated: October 17, 2006  Respectfully submitted,

_____/s/ Eben F. Duval_____

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Eben F. Duval (phv01237)
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 862-0060

SCOTT + SCOTT, LLC
David R. Scott, Fed. Bar No. CT16080
Erin G. Comite, Fed Bar No. CT24886
Mark V. Jackowski
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

SCOTT + SCOTT, LLC
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone:  (440) 247-8200
Facsimile:  (440) 247-8275

**Co-Lead Counsel**