IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN RE: PRICELINE.COM, INC.           : MASTER FILE NO.
SECURITIES LITIGATION                 : 3:00-CV-01884 (AVC)
                                      :
―――――――――――――――――――――                  :
                                      :
This document relates to:             :
                                      :
    ALL ACTIONS                       : October 11, 2006


**DEFENDANT JAY S. WALKER'S SURREPLY MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT WALKER TO
PRODUCE EMAILS AND ELECTRONIC DOCUMENTS ON THE SEVENTEEN
RESTORED PRICELINE WEBHOUSE CLUB TAPES**

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
Phone: (203) 977-7300
Fax:    (203) 977-7301
tdgoldberg@dbh.com – E-mail

- and -

J. Michael Hennigan (phv01119)
Bruce Bennett (phv01105)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01117)
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234
irvingj@hbdlawyers.com – E-mail

Attorneys for Defendant, Jay S. Walker

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**(Page)**

I.  INTRODUCTION. ........................................................................................................ 1

II. PLAINTIFFS' FAILURE TO MEET AND CONFER WITH RESPECT TO THE RELIEF SOUGHT WARRANTS THE MOTION'S DENIAL ................... 4

    A.    Plaintiffs Do Not Deny That They Failed to Meet and Confer About the Relief They Seek in This Motion. .................................................. 4

    B.    Plaintiffs Earlier Admitted That the Appropriate Way to Handle the Back-Up Tapes Is Not the Way They Seek Now. ................................... 7

        1.    Plaintiffs Had Committed to Identify From the Back-Up Tape Catalogs Particular Files That They Would Request Be Reviewed for Possible Production. ............................................... 7

        2.    Plaintiffs Had Committed to the Use of Search Terms to Cull Responsive Documents From the Loaded Files. ........................ 11

III. THE MOTION SHOULD BE SOUNDLY DENIED ON THE MERITS AS WELL. ................................................................................................................. 12

    A.    The Relief Sought Has Already Been Denied by Judge Squatrito. ................ 12

    B.    Plaintiffs Do Not Even Attempt to Argue That the Review and Production Methodology They Seek Will Cause the Documents Produced to Be Relevant to a Claim or Defense Alleged in This Case, or Even Responsive to Plaintiffs' Document Requests. ....................... 14

IV. PLAINTIFFS' MISCHARACTERIZATION OF A STAFF-LEVEL ERROR AS A NEFARIOUS SCHEME BY WALKER IS A BLATANT ATTEMPT TO MISLEAD THIS COURT. .......................................................... 15

V.  PLAINTIFFS' FAILURE TO IDENTIFY IN THEIR MOTION WHAT TAPES WERE THE SUBJECT OF THE MOTION CANNOT BE EXCUSED BY PLAINTIFF'S ARGUMENT THAT WALKER'S COUNSEL SHOULD HAVE INTUITED WHAT PLAINTIFFS INTENDED. ............................................................................................................ 21

VI. THE STATUS OF GROUP 4 AND 6 TAPES ........................................................ 22

VII. THE REVIEW METHODOLOGY EMPLOYED BY WALKER'S COUNSEL IS REASONABLE AND PROPER UNDER THE CIRCUMSTANCES ...................................................................................................... 23

VIII. CONCLUSION. ....................................................................................................... 26

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*Coleman (Parent) Holdings, Inc. v. Morgan Stanley & Co., Inc.*,
  2005 WL 679071 (Fla. Cir. Ct. Mar. 1, 2005) .................................................................. 23

*In re Clorox Co. Securities Litigation*,
  238 F. Supp. 2d 1139 (N.D. Cal. 2002) ......................................................................... 25

*Powers v. Eichen*,
  961 F. Supp. 233 (S.D. Cal. 1997) ................................................................................. 25

**Rules**

F.R.C.P. Rule 26(b)(1) ......................................................................................................... 15

F.R.C.P. Rule 37 ............................................................................................................. 4, 12

U.S.D.C. District of Connecticut Local Rule 37(a)(2) .................................................. 4, 12

**Other Authorities**

*Federal Civil Procedure Before Trial* (The Rutter Group 2006) ....................................... 23

I.  **INTRODUCTION.**

The matters at issue on this Motion are of critical importance to both the timely progression of this case to trial and the containment of the mushrooming cost of this litigation. Counsel for defendant Jay Walker ("Walker") has been diligently pursuing the review and production of email and attached electronic documents from the back-up tapes restored in 2005 and the spring of 2006 pursuant to a detailed methodology designed to identify the most relevant material and enhance the efficiency of producing pertinent material.[1]

In motion papers that are replete with distortions of the facts and scurrilous allegations, plaintiffs' seek to jettison this reasoned approach in favor of the wholesale production of documents regardless of their lack of relevance. Judge Squatrito has already expressly rejected the plaintiff's proposed approach in his December 8, 2005 Order.[2]

Further, the irresponsible allegations of plaintiffs' moving papers and reply brief ("Reply") do nothing to advance the discovery process. Behind the hysterical tone of the Reply, there is a resounding lack of substance, echoing the absence of any valid support for the requested relief in plaintiffs' original moving papers.

In the two months since Walker filed his Opposition to this Motion and the plaintiffs' filed their Reply, there have been several developments pertinent to this Motion that we believe will provide the Court with information valuable to the Court's consideration of the issues here.

---

[1] Walker's approach to identifying potentially responsive material on the tapes is explained in detail in his Defendant Jay S. Walker's October 10, 2006 Status Report on the Production of Electronic Discovery, attached as Ex. 1 to the Declaration of Jeanne E. Irving, filed concurrently herewith ("Irving Surreply Decl.").

[2] The December 8, 2005 Memorandum of Decision and Order [Dkt. 245] ("December 8 Order") was issued in response to Plaintiffs' Motion to Compel re Electronic Discovery [Dkt. 212-1]. The December 8 Order is Ex. B to the Declaration of Geoffrey M. Johnson in Support of Plaintiff's Motion to Compel Defendant Walker to Produce Emails and Electronic Documents on the Seventeen Restored Priceline WebHouse Club Tapes [Dkt. 330] ("Johnson Decl.").

For that reason and in an effort to elucidate the facts which may have been obscured by the Reply's misleading presentation, Walker submits this Surreply.[3]

On August 23, 2006, this Court issued a Scheduling Order setting a variety of dates, including a deadline for defendants to produce documents. On September 8, 2006, plaintiffs moved for a modification of that order. While Walker agrees with plaintiffs that the schedule should be modified, Walker disagrees with the alternative schedule proposed by plaintiffs and so, on September 29, 2006, Walker filed his Response to Plaintiffs' Motion to Modify the Scheduling Order [Dkt. 381] ("Scheduling Order Response").

As discussed in that Scheduling Order Response, a realistic schedule for production of documents is integrally tied to the approach used to review the material on the back-up tapes at issue here. Since the filing of Walker's Opposition to the back-up tape Motion, Walker's counsel has reviewed a substantial amount of email for production, as well as other electronic files that are attachments to the reviewed emails. However, as addressed in more detail in Walker's Scheduling Order Response, under the methodology Walker's counsel has adopted and pursued, there is an enormous amount of material still to be reviewed. Indeed, just recently, Walker's electronic vendor was able to restore several tapes previously believed to be unrestorable. As a result, the volume of email and attachments that Walker plans to review has grown considerably. The review and production pursuant to Walker's methodology is estimated to take an additional 12 months to complete. (Scheduling Order Response, p. 1-2.)

While the relief that plaintiffs' Motion requests is unjustified on several bases, it is also true that omitting the use of search terms to isolate responsive documents (as plaintiffs' Motion proposes) would dramatically increase the volume of documents that Walker would need to

---

[3] We had expected that these issues would be the subject of discussion at the Status Conference that had been scheduled for October 11, 2006 and was recently cancelled. We continue to believe that discussion of these important issues with the Court at a Status Conference or hearing would be valuable and, accordingly, request oral argument on this motion.

2

review for privilege and responsiveness,[4] and result in a corresponding increase in the time it would take to complete that production. (*See*, discussion in Section VII below.) Plaintiffs have failed to present in their Motion or Reply any justification for that result.

Plaintiffs' pursuit of wholesale discovery from 17 back-up tapes directly contravene's Judge Squatrito's order of December 8, 2005 ("the December 8 Order"), issued in response to plaintiffs' earlier request for unfocused production from the back-up tapes. And such wholesale production is nonsensical and irresponsible.[5] Additionally, it directly conflicts with plaintiffs' position expressed over the better part of last year, in which plaintiffs admitted that there was a considerable amount of non-responsive information on the back-up tapes that needed to be weeded out before a reasonable review could be approached. Plaintiffs understandably present no judicious rationale for this abrupt about-face. The fact of the matter is that this position defies reason.

Furthermore, in plaintiffs' Motion and Reply, plaintiffs do not deny that they never addressed with Walker's counsel the wholesale relief requested in the Motion. To the contrary, plaintiffs committed to Walker's counsel that they were reviewing the catalogs[6] that Walker's counsel had arranged to have created for plaintiffs, for the purpose of plaintiffs' culling from the catalogs those files they wished to be reviewed for production. Additionally, **plaintiffs do not deny that they had agreed with Walker's counsel that search terms should be used to locate**

---

[4] The December 8 Order expressly holds that defendants have the right and the responsibility to identify for production those documents that are responsive, and to identify privileged documents.

[5] Plaintiffs' proposed wholesale production would do nothing to ease the progress of this case. To the contrary, the resulting deluge of irrelevant documents that would pour down on all parties in this case would be a huge impediment to preparation for trial and pre-trial proceedings. Wading through this morass of unresponsive material to identify the pertinent information that would be needed to litigate this case would slow down proceedings for the entirety of the life of this case, exemplifying the adage, "garbage in; garbage out."

[6] Depending on whether the list of files resident on a back-up tape is generated from a restored or unrestored tape, the technical term for that list may vary. This brief refers to all such lists as "catalogs."

3

**potentially responsive documents on the identified files.**[7] Plaintiffs' abrupt filing of this Motion – seeking relief opposite to methods they had agreed were appropriate – violates Rule 37's meet and confer requirement.

Plaintiffs' Motion should be denied for several reasons. The Motion seeks to reverse the December 8 Order and is, accordingly, an invalid motion for reconsideration. The Motion is procedurally defective because plaintiffs filed it without ever meeting and conferring regarding the relief requested. And, most importantly, the relief sought is inconsistent with prevailing law, since it seeks the wholesale production of documents regardless of whether those documents are relevant to any claim or defense or even responsive to any document request propounded by plaintiffs. Plaintiffs' Reply does not deny the principal elements establishing the propriety for denying this Motion on each of these grounds. Moreover, the relief requested in this Motion would dramatically increase the amount of time required to complete document production in this case, and consequently delay the trial of this matter.

## II.   PLAINTIFFS' FAILURE TO MEET AND CONFER WITH RESPECT TO THE RELIEF SOUGHT WARRANTS THE MOTION'S DENIAL.

### A.   Plaintiffs Do Not Deny That They Failed to Meet and Confer About the Relief They Seek in This Motion.

Plaintiffs' Reply did not provide an excuse for plaintiffs' failure to comply with the meet and confer obligations set forth in F.R.C.P. Rule 37 and in this Court's Local Rule 37(a)(2).[8]

---

[7] Indeed, the use of search terms was an integral part of the review process contemplated by Judge Squatrito in his December 8 Order. *See* December 8 Order, p. 8.

[8] Local Rule 37(a)(2) prohibits a party from filing a motion to compel,

> unless counsel making the motion has conferred with opposing counsel and discussed **the discovery issues between them in detail** in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution. In the event the consultations of counsel do not fully resolve the discovery issues, counsel making a discovery motion shall file with the Court, as a part of the motion papers, an affidavit certifying that he or she has conferred with counsel for the opposing party in an **effort in good faith to resolve** by agreement **the issues raised by the motion** without the intervention of the Court, and has been unable to reach such an agreement.

Rather, plaintiffs' Reply makes the preposterous claim that communications that they had with Walker's counsel between January and May, 2006 satisfy their meet and confer obligation with respect to the Motion that plaintiffs filed out of the blue on July 7, 2006. (Plaintiffs' Reply, p. 11.) However, plaintiffs did not inform Walker's present counsel that they intended any of those discussions to constitute a meet and confer predicate to filing a motion to compel, and plaintiffs do not contend otherwise. (Irving Surreply Decl., ¶ 3.)[9]

It is **uncontroverted that the relief that plaintiffs seek in this Motion was never the subject of any discussion whatsoever with Walker's present counsel.**[10] To the contrary, plaintiffs' do not deny that, for the entirety of 2006 until the day plaintiffs filed the Motion, plaintiffs' position on the document review and production process was:

---

(Emphasis added). Reference to any Local Rules in this brief are to the Local Rules of Civil Procedure for the United States District Court, District of Connecticut.

[9] In addition to failing to meet and confer, before filing the motion to compel wholesale production from 17 tapes, plaintiffs did <u>not</u> do any of the following:

(1) Plaintiffs did not retract their acknowledgment that there was a considerable amount of material on the back-up tapes that was not responsive or useful to this case;

(2) Plaintiffs did not advise Walker's counsel that plaintiffs had decided to abdicate their commitment to identify files on the catalogs that they wished Walker's counsel to review for potentially responsive documents. In other words, plaintiffs did not inform Walker's counsel that they were refusing to perform the review process for which Walker had caused 164 catalogs or detail reports to be generated;

(3) Plaintiffs did not advise Walker's counsel that the plaintiffs had decided to abdicate their commitment to propose search terms for use in culling out potentially responsive documents from whatever files were loaded for review; and

(4) Plaintiffs did not advise Walker's counsel that plaintiffs disagreed with the proposed methodology set forth in Walker's counsel's May 12, 2006 letter, nor respond to the letter at all.

[10] Declaration of Jeanne E. Irving in Support of Jay S. Walker's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Production of Emails and Electronic Documents on Seventeeen Restored Priceline WebHouse Club Tapes [Dkt. 340] ("Irving Opp. Decl."), ¶ 16.

5

- that plaintiffs should identify from the tape catalogs particular files that would be loaded for review; and

- that one of the ways that those identified files would be further culled for potentially responsive documents would be by the use of search terms.[11]

This is the opposite of the relief that plaintiffs seek in this Motion, in which plaintiffs seek to have all non-privileged documents produced wholesale, regardless of their relation – or lack thereof – to any claim or defense in the case. Notably, plaintiffs do not contend (and could not truthfully contend) that before filing the Motion, they met and conferred with Walker's counsel and advised Walker's counsel that the plaintiffs believed that this was a proper way to approach this discovery. (Irving Surreply Decl., ¶ 3.)

A party cannot communicate with an opponent and advance one position, and then claim that that communication constituted a "meet and confer" in which the party seeks relief contrary to the position advanced in the discussion. Accordingly, plaintiffs' communications with Walker's counsel before July 7, 2006 cannot serve as the "meet and confer" predicate to the present Motion that seeks relief directly contrary to the positions plaintiffs advanced in those pre-Motion communications.[12] Plaintiffs' have failed to comply with Local Rule 37, which required them to address with Walker's counsel the specific **"issues raised by the motion"** before the Motion was filed.

In connection with the motion to compel that plaintiffs filed on July 6, 2006 against defendants other than Walker (the "Priceline Defendants") to produce documents listed on the Priceline Defendants' privilege log, the plaintiffs similarly failed to meet and confer with respect to the specific relief sought, i.e., the specific documents at issue. As stated by this Court,

---

[11] Even within one "file" listed on the catalog, there can be many documents. For example, a single .pst file containing one-quarter of a gigabyte of data and consisting of all emails and no attachments is estimated to contain approximately 25,000 pages of emails.

[12] Plaintiffs' facile argument that they should get to count the earlier discussions to satisfy Rule 37 because those discussions generally addressed back-up tapes misses the point of the meet and confer requirement. Plaintiff's never discussed the "issues raised by this motion."

6

"[w]ithout such specificity, . . . the court can not rule on the within motion." Accordingly, this Court denied that motion and ordered the parties to meet and confer in order to address the concerns raised by that motion.[13]

Plaintiffs' failure to meet and confer with respect to the Motion plaintiffs filed against Walker has similarly infected this Motion with a lack of focus. Indeed, the original Motion papers never identify, and until two days before the Opposition to the Motion was due, plaintiffs refused to confirm exactly which individual tapes were the subject of their Motion.[14]

As with plaintiffs' motion to compel the Priceline Defendants' to produce documents listed on their privilege log, plaintiffs' Motion against Walker should be denied.

    **B.**    **Plaintiffs Earlier Admitted That the Appropriate Way to Handle the Back-Up Tapes Is Not the Way They Seek Now.**

          **1.**    **Plaintiffs Had Committed to Identify From the Back-Up Tape Catalogs Particular Files That They Would Request Be Reviewed for Possible Production.**

Prior to Walker engaging his present counsel, the plaintiffs and Walker's previous counsel, Paul Hastings Janofsky & Walker LLP ("Paul Hastings"), had agreed that the appropriate way to begin the process of culling potentially relevant files from the back-up tapes was for catalogs of the tapes to be created and provided to the plaintiffs. **The plaintiffs represented that they would review the catalogs and identify files on them that they wished to be reviewed for production.**[15]

---

[13]    Ruling and Order Re: Plaintiffs' Motion to Compel and Defendants' Motion for Protective Order, filed September 22, 2006 [Dkt. 377].

[14]    *See*, discussion at Section IV.A. below.

[15]    Irving Opp. Decl., ¶¶ 9-10; Johnson Decl., Ex. G.

7

In mid-2005, Paul Hastings divided the 181 tapes into 16 groups based on the handwritten titles on the tapes themselves,[16] and arranged to have one sample tape from each group restored to a native file format. Paul Hastings then had catalogs created for each of those 16 sample tapes and provided those catalogs to plaintiffs.

Presumably based on their review of the 16 sample catalogs, plaintiffs then requested that Paul Hastings restore six more tapes.[17] Paul Hastings complied with the request, and caused these tapes to be restored and provided plaintiffs with catalogs for the tapes in this group of six.[18]

Since at least the beginning of 2006, plaintiffs committed to review the catalogs of restored tapes to identify particular files that they would request be reviewed for potentially non-privileged, responsive information. As early as February, Paul Hastings had outlined for plaintiffs a methodology for further identifying potentially responsive documents from the back-up tapes as follows:

> We are waiting to receive your suggestions on how the native file format tapes can be filtered to reduce the data that will need to be searched for responsive documents. We would appreciate your reviewing the catalogs you have already received and limiting your requests, inter alia, by the following:
>
> (1) File type--I believe you have agreed that we can filter out (i.e., exclude) system files and program files. If we can filter out any additional files that would be helpful.
>
> (2) Date range--The court has limited any production to the period of March 1, 1999 to April 1, 2001. Please let me know if we can limit the dates any further.
>
> (3) Custodian (for email/pst files)--The catalogs that we have provided, and will be providing, show the custodians of the various pst files. Please let us know which custodian files you want searched so that other custodian files can be filtered out.

---

[16] Defendant Jay S. Walker's January 10, 2006 Status Report on the Production of Electronic Discovery [Dkt. 254], p. 2.

[17] Defendant Jay S. Walker's February 10, 2006 Status Report on the Production of Electronic Discovery [Dkt. 260] ("Walker February 10 Status Report"), p. 1.

[18] As reflected on plaintiffs' March 3, 2006 letter to Paul Hastings, these tapes were from Groups 5 and 15 (Johnson Decl., Ex. G.), although, in their communications with Walker's present counsel, plaintiffs always simply referred to these tapes as the "group of six tapes" or "the six tapes." Irving Surreply Decl. ¶ 5.

8

> (4) Key words--Please let us know what key words . . . we can use to filter the data.
>
> The cost for filtering (or staging) the data is based on the amount of data that remains after the filtering has taken place. Thus, the more data that can be filtered out, the less cost for filtering..(Also the less data that remains after filtering, the less cost for loading that data into a review tool.)

(Carl Mullis February 7, 2006 email to Peter McDougall (Irving Surreply Decl., Ex. 3).)

By the spring of this year or earlier, plaintiffs had admitted that the appropriate methodology for approaching the back-up tapes should include: (1) plaintiffs' identification of files they wished to be reviewed, and (2) the use of search terms to further cull from reviewed files documents that might be responsive. Indeed, in April of this year, plaintiffs' counsel represented that **they had, in fact, begun the process of identifying files from those listed on the catalogs of the back-up tapes provided to them in March, 2006**. In what appeared to be positive progress, plaintiffs' counsel reported to Walker's present counsel in a phone call on April 18, 2006 that, they had been able to identify a considerable collection of files on the catalogs that could be eliminated from any review by Walker's counsel because plaintiffs were satisfied that they were not likely sources of responsive documents. (Irving Surreply Decl., ¶ 4.)[19] On April 27, 2006, plaintiffs told Walker's counsel that plaintiffs would begin providing those identifications "shortly." (Irving Opp. Decl., ¶ 9.)

In a letter to Walker's counsel dated April 28, 2006 (Johnson Decl., Ex. I), plaintiffs reiterated their commitment to review the catalogs to identify those files they wanted uploaded for filtering and review, and to eliminate data for which no review would be necessary. Indeed, under the heading "Using The Indexes To Segregate The Data On The Backup Tapes," plaintiffs stated:

> Once we have searchable and sortable indexes, Plaintiffs will then be able to separate those files that likely contain responsive information from the files that can easily be eliminated from the search. **The goal here is to eliminate as much**

---

[19] It is not a foregone conclusion that plaintiffs would have identified a reasonable number of files from the catalogs, nor that Walker would have been in agreement with all such indentifications, but that identification was an agreed-upon step towards the goal of reasonably identifying potentially responsive material, as contemplated by the December 8, 2005 Order.

9

> **of the material as possible and focus only on the files that may contain responsive documents.**

(Johnson Decl., Ex. I, p. 1, emphasis added.) Plaintiffs' went on to state:

> Once we have gone through the indexes, the next step will require the parties to **segregate the materials on the tapes so that we are only working with the files that Plaintiffs have designated for review. . . .** This will **significantly reduce the volume** of material.

(*Id.*, emphasis added.) In fact, plaintiffs' emphasized: "The **most pressing issue** right now is the production of the **searchable and sortable indexes. . . . we will then be able to segregate the data on the tapes.**" (*Id.*, p. 3 (emphasis added).) Having caused Walker's counsel to create 164 catalogs for plaintiffs to segregate files to be reviewed, plaintiffs have never identified a single such file.

Instead, plaintiff's current Motion to compel wholesale production from 17 of the tapes, without identifying any files from the catalogs for these tapes, came out of nowhere – without explanation and without justification. Despite plaintiffs' admissions that the back-up tapes contain substantial material that is not useful to this case, and that it is critically important to weed out that material, plaintiffs now seek an order for wholesale production from the tapes that would include the material that plaintiffs acknowledge is not responsive and not useful. **Plaintiffs' Reply does not deny that the order they seek will result in the production of vast quantities of irrelevant and non-responsive material.**[20]

---

[20] Although the Motion's description of the relief sought is itself not a picture of clarity, this much can be discerned. Plaintiffs seek to have Walker's counsel (1) conduct an email-by-email search of the mailboxes for 121 custodians for responsive emails; (2) segregate out the privileged documents; and (3) produce all remaining documents on the tapes to plaintiffs – **regardless of whether they are relevant to any claim or defense and regardless of whether they are responsive to plaintiffs' document requests.**

What is unclear -- and would surely have been clarified in a meet and confer, had plaintiffs bothered to engage in one -- is whether plaintiffs' request for production of "the remaining electronic documents" includes email files other than the 121 custodians plaintiffs reference. Presumably not, since it would be illogical for Walker's counsel to cull through the email of the 121 custodians whom plaintiffs deem to be "key" (Reply, p. 17), to select the responsive emails for production, and then produce **all** the email of the custodians whom plaintiffs do not consider to be "key."

10