THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN RE: PRICELINE.COM, INC.  :  MASTER FILE NO.
SECURITIES LITIGATION    :  3:00-CV-01884 (AVC)
———————————————— :
            :
This document relates to:    :
            :  October 6, 2006
  ALL ACTIONS      :

**DEFENDANT JAY S. WALKER'S CONSOLIDATED REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF HIS:  (1)  MOTION FOR PROTECTIVE
ORDER REGARDING THE SUBPOENA ISSUED TO GOLDMAN SACHS & CO.
SEEKING PERSONAL FINANCIAL INFORMATION; AND  (2)  MOTION TO
QUASH AND FOR PROTECTIVE ORDER REGARDING THE SUBPOENAS ISSUED
TO MERRILL LYNCH, MORGAN STANLEY AND CHASE MANHATTAN BANK
SEEKING PRODUCTION OF PRIVATE FINANCIAL INFORMATION**

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
Phone:  (203) 977-7300
Fax:  (203) 977-7301
tdgoldberg@dbh.com – E-mail

- and -

J. Michael Hennigan (phv01119)
Bruce Bennett (phv01105)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01117)
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Fax:  (213) 694-1234
irvingj@hbdlawyers.com – E-mail

Attorneys for Defendant, Jay S. Walker

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

(Page)

I.    INTRODUCTION. ................................................................................................ 1

II.   IT IS UNDISPUTED THAT THE SUBPOENA TO CHASE
      MANHATTAN BANK SHOULD BE QUASHED. .......................................... 1

III.  PLAINTIFF'S OPPOSITIONS DO NOT UNDERCUT THE FACT
      THAT WALKER HAS STANDING TO BRING THESE MOTIONS. ................. 2

IV.   GOOD CAUSE SUPPORTS THE ISSUANCE OF THE REQUESTED
      PROTECTIVE ORDERS. ............................................................................... 4

      A.    The Law Clearly Recognizes a Right to Privacy Implicated by the
            Subpoenas. ......................................................................................... 4

      B.    Plaintiffs Do Not Refute That They Seek the Subpoenaed
            Documents for an Illegitimate Purpose. .............................................. 6

      C.    Plaintiffs Fail to Substantiate Their Claim That Walker's
            Financial Records Are a Proper Subject of Discovery for the
            Purpose of Establishing Scienter. ....................................................... 10

            1.    Plaintiff's Reliance on the Superseded Version of Rule 26
                  Cannot Support the Unprecedented Relief They Seek. ................. 10

            2.    Plaintiffs' Incantation of the "Motive and Opportunity"
                  Phrase Does Not Establish That Walker's Non-Priceline
                  Transactions Have Any Relation to Either a Motive or
                  Opportunity to Engage in Acts Alleged. ................................... 11

            3.    Plaintiffs' Articulated Excuses for Wanting to Snoop
                  Through Walker's Bank Records of Non-Priceline
                  Transactions Are Disingenuous and Provide No
                  Justification for an Invasion of Walker's Privacy. ................... 14

                  a)    Plaintiffs' Contention That They to Want Walker's
                        Non-Priceline Transactions to Determine Whether
                        Walker Was "Quietly" Raising Capital for
                        WebHouse Is Disingenuous. .......................................... 14

                  b)    Plaintiffs' Argument About the Importance of
                        WebHouse's Success Fails. ........................................... 15

                  c)    Plaintiffs Do Not Provide Any Argument Why
                        Walker's Non-Priceline Transactions Are Relevant
                        to His "Opportunity" to Misrepresent Information
                        Regarding Priceline. ..................................................... 16

## TABLE OF CONTENTS (cont'd)

**(Page)**

        d)     Plaintiffs' Unsupported Contention That "Non-Priceline Trades by Other Entities and Officers are Relevant" Has No Apparent Tie to the Four Bank Subpoenas. ........................................................................ 16

   D.    Records of Walker's Non-Priceline Transactions Should Not Be Produced. ........................................................................................ 17

   E.    Plaintiffs Fail to Justify the Overbreadth of the Subpoenas' Time Frame. ............................................................................................ 17

   F.    Plaintiffs Do Not Attempt to Justify the Overbreadth of the Four Subpoenas as They Affect Persons and Entities other than Walker and Walker Digital. ............................................................................ 19

V.     THREE OF THE SUBPOENAED BANKS HAVE OBJECTED TO THE SUBPOENAS. ............................................................................................... 20

VI.    PLAINTIFFS DO NOT ATTEMPT TO JUSTIFY THEIR FAILURE TO SERVE THE FOUR BANK SUBPOENAS WITHIN THE TIME FRAME REQUIRED BY THE FEDERAL RULES. ............................................. 21

VII.   CONCLUSION. ....................................................................................... 22

# TABLE OF AUTHORITIES

<u>(Page)</u>

**Cases**

*Board of Education v. Admiral Heating & Ventilating, Inc.,*
    104 F.R.D. 23 (N.D. Ill. 1984) ...................................................................................8

*Carey v. Berisford Metals Corp.,*
    No. 90 Civ. 1045, 1991 WL 44843 (S.D.N.Y. March 28, 1991) ..........................6, 13

*Chazin v. Lieberman,*
    129 F.R.D. 97 (S.D.N.Y. 1990) ........................................................................3, 4, 13

*Chemical Bank v. Dana,*
    149 F.R.D. 11 (D. Conn. 1993) ...........................................................................4, 13

*Davidov v. United States SEC,*
    415 F. Supp. 2d 386 (S.D.N.Y. 2006) ........................................................................5

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) ...............................................13

*In re Clorox Co. Securities Litigation,*
    238 F. Supp. 2d 1139 (N.D. Cal. 2002)......................................................................9

*In re Seagate Technology II Securities Litigation,*
    1993 WL 293008 (N. D. Cal. June 10, 1993)...........................................................2, 3

*In re Sun Healthcare Group Sec. Litig.,*
    181 F. Supp. 2d 1283 (D.N.M. 2002)..........................................................................7

*McCurdy v. Wedgewood Capital Management Co.,*
    1998 U.S. Dist. LEXIS 18875  (E.D. Pa. November 16, 1998) ...................................8

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ...............................................10

*Powers v. Eichen,*
    961 F. Supp. 233 (S.D. Cal. 1997) ..........................................................................3, 9

*Ranney-Brown Distributors, Inc. v. E.T. Barwick Indus., Inc.,*
    75  F.R.D. 3 (S.D. Oh. 1977)......................................................................................8

*Reserve Solutions, Inc. v. Vernaglia,*
    2006 WL 2337244 (S.D.N.Y. August 11, 2006).....................................................6, 13

*Sawyer v. Boufford,*
    113 N.H. 627, 312 A.2d 693 (1973)...........................................................................8

## TABLE OF AUTHORITIES (cont'd)

<u>(Page)</u>

*SEC v. Jerry T. O'Brien, Inc.*,
    467 U.S. 735, 104 S. Ct. 2720; 81 L. Ed. 2d 615 (1984) .........................................................5

*Tolliver v. Federal Republic of Nigeria*,
    265 F. Supp. 2d 873 (W.D. Mich. 2003) .............................................................................15

*Travelers Insurance Company v. Hindle*,
    748 A.2d 256; 2000 R.I. LEXIS 79 (R.I. 2000) ....................................................................8

*United States v. Miller*,
    425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) ..............................................................5

**Statutes and Rules**

Conn. Gen. Stat.
    § 36a-41 ...................................................................................................................................5

15 U.S.C.
    § 6802(e)(8) .............................................................................................................................6

F.R.C.P.
    Rule 45 (a)(2)[1] ......................................................................................................................2

Gramm-Leach-Bliley Act, 15 U.S.C.
    § 6801 .....................................................................................................................................5

Right to Financial Privacy Act of 1978, 12 U.S.C.
    §§ 3401 ...................................................................................................................................5

**Other Authorities**

*Federal Civil Procedure Before Trial* (The Rutter Group 2006) ......................................2, 3, 4, 11

*Federal Practice & Procedure* (2d ed. 1994) & Supp. 2006 ......................................................17

## I.    INTRODUCTION.

Defendant Jay Walker ("Walker")submits this consolidated reply brief in further support of both (1) his Motion for Protective Order Regarding the Subpoena Issued to Goldman Sachs & Co.; and (2) his Motion to Quash and for Protective Order Regarding the Subpoenas Issued to Merrill Lynch, Morgan Stanley and Chase Manhattan Bank.[1]

In the Protective Order Motions, Mr. Walker demonstrated good cause for the issuance of the requested protective orders and an order quashing the subpoena to Chase Manhattan Bank. Plaintiffs' Oppositions do nothing to undercut the propriety of those orders.

## II.    IT IS UNDISPUTED THAT THE SUBPOENA TO CHASE MANHATTAN BANK SHOULD BE QUASHED.

In the Merrill/Morgan/Chase Motion, Walker established that the subpoena to Chase Manhattan Bank was invalid on two grounds:  (1) it was issued to an entity that no longer exists; and (2) it was issued out of the wrong court.  Plaintiffs caused the subpoena to be issued out of

---

[1]    Plaintiffs caused a subpoena to be issued to Goldman Sachs & Co. ("Goldman") on July 25, 2006, and on August 17, 2006, Walker filed his Motion for Protective Order regarding that subpoena [Docket No. 354] ("Goldman Motion").

The following day, on August 18, 2006, plaintiffs caused subpoenas to be issued to three more banks, Merrill Lynch, Morgan Stanley and Chase Manhattan Bank.  On September 11, 2006, Walker filed his Motion to Quash and for Protective Order regarding those subpoenas [Docket No. 367] ("Merrill/Morgan/Chase Motion").

Meanwhile, on September 1, 2006, plaintiffs filed their Opposition to Defendant Walker's Motion for Protective Order Regarding the Subpoena Issued to Goldman Sachs & Co. [Docket No. 362] ("Goldman Opp.").  On September 29, 2006, plaintiffs filed their Opposition to Defendant Walker's Motion to Quash and for Protective Order Regarding the Subpoenas Issued to Merrill Lynch, Morgan Stanley and Chase Manhattan Bank [Docket No. 379] ("Merrill/Morgan/Chase Opp.").  These two oppositions will be collectively referred to herein as the "Oppositions."

In order to consolidate the reply briefing on the two motions (the "Protective Order Motions"), Walker requested and on September 15, 2006 this Court granted an order extending until October 6, 2006 the time for Walker to file his reply in support of the Goldman Motion. [Docket No. 376.]

the Southern District of New York, but the subpoena calls for the production of documents in

Indiana.[2]

Plaintiffs acknowledge that they have been informed that Chase Manhattan Bank no

longer exists,[3] and plaintiffs acknowledged in the meet and confer preceding the filing of the

Merrill/Morgan/Chase Motion that a subpoena is required to be issued out of the district in which

the documents are to be produced.  Nevertheless, plaintiffs have not notified Walker's counsel

that they have withdrawn the invalid subpoena to the non-existent entity.

However, in the Merrill/Morgan/Chase Opp., plaintiffs present no argument in any way

attempting to refute either of the bases upon which Walker has established that the subpoena is

invalid.  For the reasons stated above and because the motion to quash is effectively unopposed,

the subpoena to Chase Manhattan Bank should be quashed.

## III.    PLAINTIFF'S OPPOSITIONS DO NOT UNDERCUT THE FACT THAT WALKER HAS STANDING TO BRING THESE MOTIONS.

In the face of numerous cases and secondary authority confirming that a party has the

right to move the court for a protective order with respect to a subpoena to a nonparty, plaintiffs

persist on asserting that Walker does not have standing to address with the Court the impropriety

of plaintiffs trying to access his personal banking and trading records of transactions that are not

the subject of this case.  For this preposterous position, plaintiffs rely on one unreported, page-

and-a-half-long case issued pre-PSLRA[4] and pre-2000 Rule 26 amendment – a case that has

never been cited in support of the proposition to which plaintiffs cling, *i.e.*, *In re Seagate*

---

[2]    "A subpoena must issue as follows:  . . . . (C) for production and inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made." F.R.C.P. Rule 45 (a)(2)[1]. "Designating the wrong court renders the subpoena void." W. Schwarzer, A.W. Tashima, and J. Wagstaffe, *Federal Civil Procedure Before Trial* (The Rutter Group 2006), p. 11-275, § 11:2262 (citing *Kupritz v. Savannah College of Art & Design*, 155 F.R.D. 84, 88 (E.D. Pa. 1994) (court is incapable of enforcing subpoena issued by wrong court)).

[3]    Merrill/Morgan/Chase Opp., p. 1, n.1.

[4]    Private Securities Litigation Reform Act of 1995.

2

*Technology II Securities Litigation*, 1993 WL 293008 (N. D. Cal. June 10, 1993). In fact, in the

only reported decision that has ever addressed *Seagate*'s comment on standing, the *Seagate*

position was rejected, and the court granted the defendant's motion to stay the effect of the

subpoenas served on non-parties. *See, Powers v. Eichen*, 961 F. Supp. 233, 235 (S.D. Cal. 1997)

("defendants have standing to seek a stay of the subpenas duces tecum that were issued in this

case to nonparties.") *Seagate* represents one maverick decision that has never been followed or

relied upon for the point plaintiffs espouse by any court in any reported decision in the 16 years

since it issued, and it should not be followed by this Court either.

Moreover, *Seagate* is distinguishable from the facts at bar. In *Seagate*, there were no

countervailing privacy considerations. As demonstrated by the several cases cited below in

which courts grant protective orders to protect the privacy interests of parties against subpoenas

to nonparties, parties do indeed have standing to bring to the attention of the court the assaults on

their privacy through subpoenas to nonparties.[5]

Plaintiffs attempt in vain to distinguish the cases Walker cites as holding that standing

exists. *Chazin v. Lieberman* could not be clearer on this point.

> The moving defendants argue that they have personal privacy rights in the records
> sought by plaintiff. This claim is sufficient to give them standing to pursue their
> present motion.

*Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990). Plaintiffs' non-sequitur of a response

to this obvious statement regarding standing is to argue that the Chazen court "simply limited the

scope of discovery to acts specified in the complaint." (Goldman Opp., p. 2.) Whatever

plaintiffs' point was intended to be regarding the scope of the limitations that the *Chazin* court

imposed on nonparty discovery at the request of the parties, the fact of the matter is that the

*Chazin* court expressly acknowledged that parties have standing to bring these issues to the

---

[5]     *See also,* W. Schwarzer, A.W. Tashima, and J. Wagstaffe, *Federal Civil Procedure Before Trial* (The Rutter Group 2006), p. 11-279, § 11:2286 (emphasis in original) ("In response to a subpoena, "the nonparty witness, *or any party* may move: to *quash* the subpoena . . .; or to *modify* the subpoena. . .; or for a *protective order* under Rule 26(c) . . . . ")

attention of the court. The scope of the relief awarded does not undercut the fact that the parties

had standing to request that relief.[6]

## IV.    GOOD CAUSE SUPPORTS THE ISSUANCE OF THE REQUESTED PROTECTIVE ORDERS.

As discussed in Walker's opening brief, the factors relevant to a determination of good

cause for the issuance of a protective order include: "[1] whether the information is being sought

for a legitimate purpose; [and 2] whether disclosure will violate any privacy interest." *Federal*

*Civil Procedure Before Trial*, *supra*, p. 11-112, § 11:1072. In their Merrill/Morgan/Chase Opp.,

plaintiffs do not dispute that these factors will support a finding of good cause sufficient for the

issuance of a protective order.

### A.    The Law Clearly Recognizes a Right to Privacy Implicated by the Subpoenas.

In the Goldman Motion, Walker cited several cases that established the existence – and

the honoring – of a right to financial privacy.[7] In response, plaintiffs relied upon a 30-year-old

case for the proposition that there is no right to financial privacy in bank records because the

---

[6]     Also in the standing section of the Goldman Opp., plaintiffs make the same odd argument about *Chemical Bank v. Dana*, 149 F.R.D. 11 (D. Conn. 1993), stating that, in that case, the "court closely defined the personal privacy right in terms of whether documents are related or unrelated to the matter before it." Goldman Opp., p. 3. Again, plaintiffs confuse the scope of the restrictions imposed by the court to protect the party's privacy with the fact that the party had standing to petition the court to impose those restrictions.

Plaintiffs also conflate the issues of standing and good cause for issuance of a subpoena in the Merrill/Morgan/Chase Opp., p. 2 (stating "Walker relies upon two concepts to establish the requisite good cause necessary for standing; . . . .").

[7]     Because the subpoenas seek production of information related to and contained in Walker's personal financial accounts, he has standing to seek modification of the subpoenas. *See, e.g., Chemical Bank v. Dana*, 149 F.R.D. 11, 13 (D. Conn. 1993) (account holder has standing to object to subpoenas seeking production of bank records, because "[c]ompliance with the subpoena might infringe on certain privacy rights, in that [the subpoenaing party] would have easy access to [objector's] unrelated financial and business dealings in detail."); *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (parties had standing to move for a protective order limiting subpoenas seeking discovery of the parties' personal financial records from banks).

bank employees see the records. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

When Walker filed his Merrill/Morgan/Chase Motion, he pointed out that, in direct response to *Miller*, legislatures had enacted several statutes that specifically established that, in fact, the law did recognize a right to financial privacy in one's bank and investment records. Those laws included Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 *et seq.*; the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 *et seq.*; and Conn. Gen. Stat. § 36a-41 *et seq.*

The point of Walker's argument was that these statutes had legislatively superseded the holding in *Miller*,[8] as acknowledged by the U.S. Supreme Court itself as well as myriad other courts.[9] Plaintiffs apparently recognized the error of their ways in relying upon *Miller* in the Goldman Opp. because, when it came time to file their Merrill/Morgan/Chase Opp., plaintiffs did not rely upon or even make any reference to *Miller* at all.

---

[8]    In addition to having been legislatively superseded, *Miller* would otherwise have no application to the Protective Order Motions before the Court. *Miller* was a criminal case in which the Supreme Court considered whether a criminal defendant's conviction should be overturned because bank records subpoenaed by the government had been used at his trial. This scenario is not analogous to the question of whether a plaintiff can gain access to a defendant's personal bank records to size him up for settlement purposes or try to divine a desire on the defendant's part to make misrepresentations about a company in which he owns stock.

[9]    As acknowledged by the United States Supreme Court,

in 1978, in response to this Court's decision in *United States v. Miller, supra, n15* Congress enacted the Right to Financial Privacy Act, 92 Stat. 3697, *12 U. S. C. § 3401* et seq.

n15 See H. R. Rep. No. 95-1383, p. 34 (1978) (the purpose of the statute is to fill the gap left by the ruling in Miller that a bank customer has "no standing under the Constitution to contest Government access to financial records").

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745, 104 S. Ct. 2720; 81 L. Ed. 2d 615 (1984). *See also, e.g., Davidov v. United States SEC*, 415 F. Supp. 2d 386, 387 (S.D.N.Y. 2006).("Congress enacted the RFPA in 1978 as a response to the Supreme Court's decision in *United States v. Miller*, 425 U.S. 435, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976), that a bank depositor had no protectible *Fourth Amendment* interest in bank records relating to his accounts. The RFPA is, in effect, a statutory *Fourth Amendment* for bank customers.")

Plaintiffs devote pages of their Merrill/Morgan/Chase Opp. to arguing that the subpoenas do not violate these privacy statutes referenced above. Plaintiffs miss the point of Walker's argument, which was that *Miller* had been legislatively superseded.[10] Walker then went on to cite several cases which (unlike *Miller*) were decided in circumstances analogous to those here, *i.e.*, in the context of civil subpoenas, in each of which the court refused to allow a fishing expedition into a party's financial records of transactions that were not at issue in the case, in deference to that party's right to financial privacy.[11]

Plaintiffs' do not dispute – in either of their Oppositions – that the cases cited by Walker on this point support the existence of a right to financial privacy and a demonstration by the courts that that right can be enforced by a motion for protective order.

**B.    Plaintiffs Do Not Refute That They Seek the Subpoenaed Documents for an Illegitimate Purpose.**

More than a year ago, Judge Squatrito established a 25-month period as the outer limits of the time frame that plaintiffs could use in crafting requests for discovery in this case: March 1, 1999 and April 1, 2001.[12] The subpoenas at issue in these motions all violate that order by

---

[10]    However, as plaintiffs tacitly acknowledge in their Merrill/Morgan/Chase Opp., compliance with the subpoena to Chase Manhattan Bank would violate the Gramm-Leach-Bliley Act. That act prohibits a bank from disclosing customer information in response to a civil subpoena unless it is a "properly authorized" subpoena. 15 U.S.C. § 6802(e)(8), cited in Merrill/Morgan/Chase Opp., p. 2. As discussed in Section II above, the subpoena to Chase Manhattan Bank was not "properly authorized."

[11]    *Reserve Solutions, Inc. v. Vernaglia*, No. 05 Civ 8622, 2006 WL 1788299, at *2 (S.D.N.Y. June 26, 2006) (quashing nonparty subpoena seeking personal financial records from American Express because it infringed on privacy rights and was "not limited to the accounts and transactions at issue in this case"), motion to set aside order denied, 442 F. Supp. 2d 191 (S.D.N.Y. 2006); *Carey v. Berisford Metals Corp.*, No. 90 Civ. 1045, 1991 WL 44843, *8 (S.D.N.Y. March 28, 1991) ( subpoenas which sought to have nonparty banks produce all information relating to bank and investment accounts, but court restricted the production to transactions and to a time period relevant to the fraud allegations at issue in the case.) *See also*, cases cited in n. 7, above.

[12]    Judge Squatrito's first order addressing the relevant time frame of discovery in this case was issued in the context of plaintiffs' moving to compel production from defendants. In it, the Court forbid the plaintiffs from seeking discovery from the defendants for any time period outside the March 1, 1999 through April 1, 2001 time period without first convincing the Court that there exists good cause to veer from the Court's order. Judge Squatrito ordered that "[a]ll

seeking the production of documents for 11 months longer than the "relevant time period" set by the Court.[13]

In the two meet and confer sessions held before the filing of the two Protective Order Motions, plaintiffs' counsel was quite candid in admitting that plaintiffs sought Walker's financial records for 28 months beyond the 8-month Class Period (January 27 to October 4, 2000) – and indeed for 11 months beyond the time limits the Court has set on plaintiffs' discovery – because they wanted the information for the purpose of assessing Walker's ability to respond to a judgment in this case.[14] In response to Walker's counsel pointing out to plaintiffs

---

requests for documents and information directed to defendants shall be limited to this time period unless otherwise specified for good cause." Order dated April 6, 2005 [Docket No. 164], ¶ 5.

When the question of an appropriate time frame for nonparty discovery was raised, Judge Squatrito did not veer from this position. He applied this same time limitation in the nonparty subpoena context. In ruling on a motion to compel production from subpoenaed nonparty Deloitte Touche Tohmatsu, the Court ruled that the "subpoena shall be modified to seek documents from **the relevant time period set by the court, which is March 1, 1999 through April 1, 2001**" Memorandum of Decision and Order dated June 14, 2005 [Docket No. 184].

Copies of the April 6, 2005 Order and June 14, 2005 Order are attached, respectively, as Exs. K and L to the Declaration of Jeanne E. Irving, filed on September 11, 2006 in support of the Merrill/Morgan/Chase Motion [Docket No. 369] (the "Opening Irving Decl.").

[13]    The subpoenas seek the production of documents for a 36 month period, from January 1, 1999 through December 31, 2001. Copies of the subpoenas to Merrill Lynch, Morgan Stanley and Chase Manhattan Bank are, respectively, Exs. A, B and C to the Opening Irving Decl. The subpoena to Goldman Sachs is Ex. A to the Declaration of Terence J. Gallagher, filed August 17, 2006 in support of the Goldman Motion.

[14]    Plaintiffs also argue that they want this information in the hopes of intuiting from it a motivation to misrepresent information about priceline.com, Inc. ("Priceline") during the Class Period. *See* Section IV. C. below. However, Walker's financial transactions in securities other than Priceline after the Class Period cannot provide any motivation to misrepresent information about Priceline during the Class Period, and plaintiffs have presented no cogent rationale for how they could.

> "A defendant . . . is liable only for those statements made during the class period." *In re International Business Machines Corp. Secs. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998). "As the class period defines the time during which defendants' fraud was allegedly alive in the market, statements made or insider trading allegedly occurring before or after the purported class period are irrelevant to plaintiffs' fraud claims." *In re Clearly Canadian Secs. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995).

*In re Sun Healthcare Group Sec. Litig.*, 181 F. Supp. 2d 1283, 1293 (D.N.M. 2002).

that this was not a legitimate purpose of discovery, plaintiffs' counsel blithely admitted that they "did it all the time." (Reply Declaration of Jeanne E. Irving, filed concurrently herewith (Irving Reply Decl.," ¶ 2.) Indeed, plaintiffs included in their Goldman Opp. the admission that they sought this information for this purpose.[15]

In the Merrill/Morgan/Chase Motion, Walker presented numerous case authorities establishing that this is not a legitimate purpose of discovery.[16] In response, plaintiffs' Merrill/Morgan/Chase Opp. provided a resounding silence. In that Opposition,

- **Plaintiffs do not deny that they seek Walker's financial records to assess his ability to respond to a judgment**; and

- **Plaintiffs do not refute that this is an illegitimate purpose** for discovery.[17]

Moreover, plaintiffs continue to provide new and ever-strengthening evidence that they seek Walker's private financial information for an illegitimate purpose.[18] Following closely on the heals of the issuance of the four bank subpoenas, plaintiffs served on Walker a Request for Production of Documents, seeking the same type of documents that the subpoenas seek. Only this time, plaintiffs violated Judge Squatrito's April 6, 2005 order even further – they added an additional year and a half to the time period covered by the document requests.[19] Although

---

[15]     Goldman Opp., p. 9.

[16]     *See* Walker's Memorandum of Law in support of the Merrill/Morgan/Chase Motion, pp. 9-11, discussing *Ranney-Brown Distributors, Inc. v. E.T. Barwick Indus., Inc.*, 75 F.R.D. 3, 4 (S.D. Oh. 1977); *McCurdy v. Wedgewood Capital Management Co.*, 1998 U.S. Dist. LEXIS 18875, *37 (E.D. Pa. November 16, 1998); *Sawyer v. Boufford*, 113 N.H. 627, 628-630, 312 A.2d 693 (1973); *Travelers Insurance Company v. Hindle*, 748 A.2d 256; 2000 R.I. LEXIS 79 (R.I. 2000); and *Board of Education v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 33 (N.D. Ill. 1984).

[17]     Plaintiffs do not even attempt to debate the authorities that Walker presented on this point. In fact, plaintiffs do not discuss or even reference them.

[18]     While plaintiffs have not expressly stated so, it would not be difficult to believe that the real reason plaintiffs want Walker's private financial data is to size up his financial wherewithal for settlement purposes – another illegitimate purpose of discovery. *Sawyer v. Boufford*, 113 N.H. 627, 629-630, 312 A.2d 693 (18973).

[19]     *See* p. 5 of Document Request, which is Ex. 4 to the Irving Reply Decl.

Judge Squatrito's orders prohibited plaintiffs from seeking documents from defendants for any time period after April 1, 2001, this time plaintiffs seek documents of Walker's financial transactions for a **four and a half year period**, from January 1, 1999 through June 30, 2003 – *i.e.*, **two years and three months past the outer limit set by Judge Squatrito**. In other words, in a suit with an **8-month Class Period** that ends on October 4, 2000, plaintiffs want records of Walker's financial transactions for **two years and nine months after the Class Period ended**.

It is beyond cavil that documentation of Walker's financial transactions for **nearly three years after the end of the Class Period** has absolutely nothing to do with any claims or defenses alleged in this action. While the document request directed to Walker himself is not at issue in the pending Protective Order Motions, plaintiffs' behavior in this regard establishes not only their clear intention to continue to ignore the law of this case regarding the relevant time period, but also demonstrates that the real intent of the discovery directed to Walker's finances has nothing to do with any actions by him during the Class Period. Rather, the clear intent of this discovery is to get as close as possible to discerning what Walker's financial condition is today. The Protective Order Motions should be granted because plaintiffs seek Walker's financial records for a clearly illegitimate purpose.[20]

---

[20]     Discovery abuses, such as those attempted to be perpetrated by plaintiffs here, are legendary in securities class actions, and were part of the impetus for the enactment of the Private Securities Litigation Reform Act of 1995.

> The PSLRA was enacted in part to curb abusive discovery. See H.R. Conf. Rep. 104-369 at 32-33, 37. Congress concluded that Plaintiffs were using the threat of extensive discovery to force settlements on meritless claims, and sought to create a higher pleading bar in order to protect companies from the threat of pointless, expensive discovery. Id. at 37. This purpose would be entirely thwarted if a plaintiff could obtain discovery on a litany of meritless assertions simply by attaching them to one narrow colorable allegation.

*In re Clorox Co. Securities Litigation,* 238 F. Supp. 2d 1139, 1143 (N.D. Cal. 2002).

The court's comments in *Powers v. Eichen*, 961 F. Supp. 233, 235-236 (S.D. Cal. 1997), are also instructive in this regard generally.

> Congress found that the federal securities laws are frequently misused by the filing of frivolous suits "alleging violations of the federal securities laws in the hope that defendants will quickly settle to avoid the expense of litigation. These