**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
                                :
IN RE: PRICELINE.COM, INC.      :
SECURITIES LITIGATION           :
                                :   MASTER FILE NO.
                                :   3:00-CV-1884(AVC)
This document relates to:       :
                                :
     ALL ACTIONS                :
                                :
```

## RULING AND ORDER RE: REMAINING DISCOVERY DISPUTES AND SCHEDULING ORDER

On July 6, 2006, the plaintiffs filed a motion to compel discovery of documents contained in the defendants' "snapshot" and "terminated employee tapes."  On July 7, 2006, the plaintiffs' filed a motion to compel the defendant, Jay S. Walker, to produce emails and electronic documents from the "Priceline WebHouse club tapes."  On August 17, 2006, the defendant, Jay S. Walker, filed a motion for protective order regarding the subpoena issued to Goldman Sachs & Co. seeking personal financial information.   On September 8, 2006, the plaintiffs filed a motion to modify the scheduling order in this case.  On September 11, 2006, defendant Walker filed a motion to quash and for protective order regarding subpoenas issued to Chase Manhattan Bank, Merrill Lynch and Morgan Stanley seeking personal financial information.  For the reasons that follow, the plaintiffs' motions are granted in part and denied in part.

## I. Motion To Compel - Snapshot and Terminated Employee Tapes

In February 2002, the defendants took a "snapshot" of the

information contained in its corporate file servers as of that date. This snapshot amounts to a back-up of all material that existed on the defendants' corporate file servers from the beginning of the company up to February 2002. The "terminated employee tapes" contain additional emails and electronic documents of Priceline employees who were terminated from 2000-2001.

The plaintiffs argue that the defendants have failed to provide sufficient relevant discovery from these databases. Specifically, the plaintiffs state that the parties agreed to a two pronged approach with respect to the production of documents contained in these databases. First, the defendants were to perform an e-mail by e-mail review of certain "key individual" accounts. Second, the defendants were to use search terms with respect to the remainder of the documents. With respect to the first prong, the plaintiffs argue that the defendants have not provided a statement of the methodology they used in searching the databases, as previously ordered by the court in a ruling dated December 8, 2005. The plaintiffs further state that the defendants have not performed a good faith email by email search of the key individual accounts.

The defendants respond that with respect to the methods they used in conducting an email by email search of the key accounts, they have consulted with the plaintiff by letter and in person at

2

each stage of production.  In addition, the defendants state that they have taken "all reasonable steps . . . to collect, review and produce available responsive, non-privileged email." Defendants' Brief at 7.

The court concludes that the defendants have not sufficiently set forth their methods in conducting an email by email search of the 80 accounts at issue.  The defendants shall, therefore, provide a sworn statement of the particular methods used in performing their search of the key individual accounts. See Ruling Dated December 8, 2005 at 8.  In addition, to the extent they have not already done so, the defendants shall perform an email by email search of the accounts at issue.

With respect to the second prong of the defendants' production, that is its use of search terms to produce additional relevant documents, the plaintiffs argue that the defendants have failed to utilize sufficient terms.  The plaintiffs suggest that the court order the defendants to use a term search to find potentially privileged documents, review and determine the applicability of privilege to those documents and then turn over the databases to the plaintiff to perform their own term search. The plaintiffs also argue that the defendants should be required to provide a statement of the methods they used in conducting the term search.  The plaintiffs further argue that the defendants should include in their term search the remaining email accounts

of those individuals not considered to be "key" employees, and certain financial documents.

The defendants respond that the plaintiffs have continually provided over broad lists of terms that would result in a list of many thousands of irrelevant documents. From the plaintiffs lists, however, the defendants ran what they believed to be 33 of the most relevant terms. The defendants further respond that with respect to emails, the parties agreement regarding "key" individuals was exclusive and meant to be a list of the only emails searched in the database. With respect to the financial documents, the defendants state that the plaintiffs have failed to provide any detail with respect to the financial documents at issue and refer to their ongoing production of documents from the snapshot and terminated employee tapes.

The court concludes that the defendants have acted in good faith in an effort to perform term searches of the databases at issue. The court further concludes, however, that the plaintiff may, if they deem it necessary at this stage of the proceedings, provide the defendants with a list of 10 additional terms to be searched. The defendants shall review the resulting documents for responsiveness before providing them to the plaintiffs. Finally, the plaintiffs' request that the defendants state the method they used in conducting the term search is granted. The defendants shall provide such statement contemporaneously with

4

their statement of methods used with respect to the aforementioned email by email search.  With respect to non-key employee emails, the court concludes that there is no clear statement that the parties agreed that the email by email search of certain key individuals would be exclusive and prohibit discovery as to any other emails contained in the snapshot and terminated employee tapes.  Although the parties specifically agreed to a more inclusive method of search with respect to certain key individuals' emails, this agreement did not automatically exclude all other e-mails from search by the search term method.  The court concludes that when searching by term the defendants shall include emails other than those subject to their key individual email search.  Further, with respect to the financial documents, the plaintiffs shall make a specific request naming the documents at issue.

II. **Motion To Compel - Restored Priceline WebHouse Club Tapes**

On July 7, 2006, the plaintiffs filed a motion to compel the defendant, Jay S. Walker, to produce electronic documents contained on the seventeen restored Priceline WebHouse club tapes.  The plaintiff states as follows by way of background: The defendant possesses 181 WebHouse back up tapes containing various emails and electronic documents pertaining to WebHouse, a company that is the subject of the plaintiffs' claims.  On April 5, 2005, the court ordered the parties to meet and confer

concerning the production of information on the tapes.  The
parties met on several occasions from April-August 2005.  The
parties identified 8 tapes containing WebHouse executive and
employee emails.  On September 22, 2005, the plaintiffs filed a
motion to compel, arguing that the defendant had failed to
produce the requisite documents from the tapes.  On December 8,
2005, the court concluded that the parties were to determine
which of the back-up tapes contained responsive information
relevant to this case.  The court further stated that the
defendant would be responsible for review of the documents and
determination of any applicable privilege.  Finally, that court
stated that the defendant "shall record and produce a summary of
their methodology . . . ."  December 8, 2005 Ruling at p. 8.
From December 2005 through April 2006, the parties met and
conferred in an effort to determine which tapes contained
responsive information.  The parties identified nine additional
tapes, bringing the total number of tapes containing responsive
information to 17.

On July 7, 2006, the plaintiffs filed the within motion to
compel with respect to the 17 restored WebHouse tapes.  The
plaintiffs argue that with respect to emails, the court should
order the defendant to perform an email by email search to locate
and produce responsive documents.  In the alternative, the
plaintiffs argue that the defendant should provide the plaintiffs

with a searchable electronic copy of the email accounts at issue.
The plaintiffs further argue that with respect to the remaining
non-email electronic documents, the court should order the
defendant to use search terms to capture privileged documents,
review those documents and determine the applicability of any
privilege.  The plaintiffs state that the defendant should place
any privileged documents on a privilege log and that with respect
to the remaining documents, the defendant should provide the
plaintiffs with a searchable copy of the 17 tapes for the
plaintiffs' independent review.  The plaintiffs also state that
the defendant placed information on the tapes after the filing of
this lawsuit and further, that the defendant should explain why
the WebHouse emails and electronic documents ended up on the
back-up tapes in the first place.  The plaintiffs further state
that the defendant has failed to restore certain tapes that the
parties previously agreed would be restored.

     The defendant states that the plaintiffs failed to satisfy
the meet and confer requirements of the federal and local rules
before filing this motion.  In addition, the defendant argues
that because of the volume of material on the 17 back-up tapes at
issue, plaintiffs' request is over broad.  Further, the defendant
states that with respect to emails, a document by document review
of the suggested 121 email boxes contained on the tapes is
impracticable and excessive.  The defendant has agreed to conduct

an email by email review of the Jay S. Walker and Richard S.
Braddock email boxes.  The defendant further states that the
blanket production order suggested by the plaintiffs is improper
and should be denied.

The court concludes that the parties have met the
requirements of Federal Rule of Civil Procedure 37(a)(2)(A) and
Local Rule 37(a)(2).  The parties have conducted several meet and
confers with respect to the discovery at issue in this motion.
There remains some question, however, as to the extent to which
the parties discussed the precise conflicts at issue here.  With
respect to future discovery disputes in this case, if any, the
parties shall discuss among themselves any specific issue that
they plan to present to the court prior to filing the motion.

With respect to the restored WebHouse tapes, defendant
Walker shall conduct an email by email review of the Walker and
Braddock email boxes.  With respect to the remaining 121 email
accounts at issue, the parties shall meet and confer regarding
which accounts are of key individuals to this litigation.  The
parties shall consider the list of key individuals searched with
respect to the "snapshot" and "terminated employee tapes" above,
to the extent applicable.  With respect to that narrow list of
key individuals, defendant Walker shall conduct an email by email
search of those accounts.  Further, with respect to the remaining
documents on the restored tapes, the parties shall meet an confer

in order to agree upon a focused list of search terms to be used in order to identify potentially responsive documents.  To the extent restoration of any of the tapes remains an issue, the parties shall meet and confer pursuant to the local and federal rules and this court's December 8, 2005 order with respect to such restoration.

### III. <u>**Motions for Protective Orders**</u>

On August 17, 2006, defendant Walker filed a motion for a protective order with respect to a subpoena that the plaintiffs issued to Goldman Sachs and Company.  On September 11, 2006, defendant Walker filed a motion for a protective order with respect to subpoenas that the plaintiffs issued to Chase Manhattan Bank, Merrill Lynch and Morgan Stanley.  The subpoenas seek information concerning defendant Walker's various financial accounts.  The defendant argues that the subpoenas seek information that is not relevant to the claims in this case, seek information outside the relevant time period and fail to provide for redaction of certain confidential information.  Specifically, the defendant argues that the subpoenas seek information outside of Priceline transaction documents and also seek information with respect to certain other employees or agents of Walker Digital, Inc.  In addition, with respect to Chase Manhattan Bank, the defendant argues that the subpoena should be quashed because it is directed to a non-existent entity, as Chase Manhattan Bank is

now JP Morgan Chase Bank.  Further, the defendant argues that the
Chase Manhattan Bank subpoena was issued by the wrong court
because the documents at issue are located in Noblesville,
Indiana.  The defendant also states that he did not receive
notice of the subpoenas until several days after they were
served.

The plaintiffs respond that the defendant does not have
standing to challenge the subpoenas.  The plaintiffs further
argue that the defendant has failed to make the requisite showing
of good cause to warrant limiting the subpoenas because they seek
discoverable information.  Specifically, the plaintiffs state
that the defendants overall financial situation is relevant to
his state of mind at the time he made the alleged
misrepresentations.  The plaintiffs also state that redaction of
the documents is not necessary in light of the protective order
in place in this case.

In Chemical Bank v. Dana 149 F.R.D. 11 (D. Conn. 1993) the
court recognized that a nonparty has standing to challenge a
subpoena where the subpoena implicates the movant's privacy
rights in his financial and business dealings.  Id.; see also
Chazin v. Lieberman, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (holding
that the defendants had standing to object to subpoenas where the
defendants had a personal privacy right in the records sought).
Similarly, in this case, the subpoenas at issue seek personal

financial information and the court concludes that because of the defendant's privacy interest with respect to the documents sought, the defendant has standing to file the within motion.

With respect to the substance of the subpoenas, the defendant's motion is granted in part and denied in part. The time periods contained in the subpoenas at issue are outside those periods that this court has previously set forth with respect to discoverable information. Specifically, in a ruling dated April 6, 2005, the court set forth a period of March 1, 1999 through April 1, 2001, from which the parties could request discovery. This period includes the class period of January 27, 2000 through October 2, 2000. Therefore, the plaintiffs requests shall be limited to documents dated between March 1, 1999 and April 1, 2001.

This case involves claims that the defendant made certain misrepresentations concerning WebHouse and its financial success. The plaintiffs argue that analysis of Walker's various investment and other financial accounts are necessary in order to determine how his finances were effected and how the state of his finances motivated his actions. The court concludes that the plaintiffs may seek documents regarding defendant Walker and his various financial accounts including those of Walker Digital, limited, however, by the aforementioned time period. Redaction is not necessary in light of the protective order in place in this case.

In addition, to the extent that the subpoenas seek information regarding other employees or agents of Walker Digital and their accounts, the court concludes that the defendant has failed to establish his privacy interest with respect to those accounts and, therefore, he does not have standing to challenge the subpoenas with respect to those accounts. Further, with respect to Chase Manhattan Bank, the plaintiffs shall redirect the subpoena to the correct entity, that is, JP Morgan Chase Bank. In addition, pursuant to Federal Rule of Civil Procedure 45(a)(2), "[a] subpoena must issue . . . from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)©. The subpoena calls for the production of documents in Noblesville, Indiana and, therefore, shall issue from the district court in that jurisdiction. Finally, issuing counsel shall notify other counsel upon issuance of any subpoena.

IV. **Motion to Modify Scheduling Order**

On September 8, 2006, the plaintiffs filed a motion to modify the scheduling order in this case. The plaintiff proposes that document discovery close on December 29, 2006, and, inter alia, that all discovery close on December 31, 2007. The defendants agree with the plaintiffs' proposed schedule but reserve the right to object based upon the court's decision on the within discovery motions. Defendant Walker opposes the plaintiffs' proposed dates and argues that those dates should be

extended by an additional nine months.

The plaintiffs' motion is granted in part and denied in

part. The current scheduling order shall be extended as follows:

| | |
|---|---|
| March 1, 2007 | Complete document discovery |
| September 28, 2007 | Complete designation of plaintiffs' experts |
| October 31, 2007 | Complete depositions of plaintiffs' experts |
| November 1, 2007 | Complete designation of defendants' experts |
| December 3, 2007 | Complete depositions of defendants experts |
| December 31, 2007 | Complete discovery |
| February 1, 2008 | Deadline for filing dispositive motions |
| March 3, 2008 | Deadline for filing joint trial memorandum (or 30 days after ruling on dispositive motions, if any) |

## V. **Reply Briefs**

With respect to any future motions in this case, the court

refers the parties to Local Rule of Civil Procedure 7(d) which

provides, in relevant part, as follows:

Reply briefs are not required and the absence of a

reply brief will not prejudice the moving party. . . .

A reply brief **may not exceed 10 pages, must be strictly**

**confined to a discussion of matters raised by the**

**responsive brief** and must contain references to the

pages of the responsive brief to which reply is being

made.

Local Rule of Civil Procedure 7(d) (emphasis added). The parties

13

have filed a number of reply and surreply briefs in this case regarding discovery issues, many of which did not comply with this provision of local rule 7.  The parties shall tailor any future reply briefs to the specific issues raised by the responsive brief that the replying party did not have the opportunity to address in their original brief.

### CONCLUSION

For the foregoing reasons, the plaintiff's motions to compel (**document no. 329 and document no. 330**) are granted in part and denied in part, Defendant Walker's motions to quash and for protective orders (**document no. 354 and document no. 367**) are granted in part and denied in part and the plaintiffs' motion to modify the scheduling order (**document no. 364**) is granted in part and denied in part as set forth herein.

It is so ordered this 30th day of October, 2006, at Hartford, Connecticut.


_/s/_____
Alfred V. Covello, U.S.D.J.