IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: Priceline.com | : | Master File No. |
| Securities Litigation | : | 3:00cv1884 (AVC) |
| ------------------------------------------------------- | : | |
| This document relates to: | : | |
| | : | |
| ALL PENDING ACTIONS | : | |
| | : | |
| | : | December 7, 2006 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR IN CAMERA
REVIEW OF DISPUTED DOCUMENTS ON THE
DEFENDANTS' PRIVILEGE LOG**

Joseph L. Clasen (ct04090)
ROBINSON & COLE, LLP
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Telephone: (203) 462-7500
Fax: (203) 462-7599
jclasen@rc.com

Daniel Slifkin (ct21203)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
dslifkin@cravath.com
*Attorneys for Defendants
priceline.com Inc., N.J. Nicholas,
Daniel Schulman and Richard S. Braddock*

Defendants priceline.com Inc. ("priceline"), N. J. Nicholas,

Daniel H. Schulman and Richard S. Braddock (collectively, "Defendants") respectfully

submit this memorandum of law in opposition to plaintiffs' Motion for In Camera

Review of Disputed Documents on the Defendants' Privilege Log.

## Introduction and Background

On March 30, 2006, plaintiffs' filed their Fourth Motion to Compel

Discovery from Defendants -- a motion that sought the compelled production of 986

documents listed on Defendants' privilege log, but that only specifically addressed eight

of those documents in the supporting memorandum (Docket No. 270) ("Fourth Motion").

On September 22, 2006, this Court issued a Ruling and Order denying

plaintiffs' Fourth Motion ("September Order"). The Court held that "the parties [had not]

conferred with respect to the specific documents at issue", and found that "plaintiff's

motion refers to areas of dispute without specific reference to each document in dispute".

(September Order at 1.) The Court Ordered the parties to meet and confer and stated that

"[i]f any issues remain, any motion filed shall include a detailed listing of the documents

at issue and the arguments applicable to those documents". Id. at 2.

The parties participated in the Court-ordered meet and confer on October

3rd and 4th. Substantial progress was made and plaintiffs withdrew almost 90% of their

challenges. (Declaration of William J. Kelleher III, dated December 7, 2006 ("Kelleher

Declaration") at ¶5.) A number of disputes, however, did arise. Those disputes involved

alleged disclosures to purported "third parties", most notably priceline employee Robert

Mylod and former employee Paul Francis. Id.

Unfortunately, plaintiffs declined to engage in any meaningful discussion with respect to the content of the majority of those disputed documents. Id. at ¶6. Rather, plaintiffs took a blanket approach that the documents could not be privileged due to an alleged waiver so the content did not matter. Id. In an effort to move forward, Defendants offered to produce numerous documents on the condition that plaintiffs agree that such production would not waive any applicable privilege as to any other document-- i.e., that the production would not effect a subject matter waiver. Id. Plaintiffs, although they argued that the documents were not privileged to begin with, refused that offer. Id. Plaintiffs then filed the current motion seeking *in camera* review of 98 separate documents.

Plaintiffs' current motion provides no more information than their Fourth Motion did and is therefore, we believe, inconsistent with the Court's instructions in the September Order. Plaintiffs' motion merely attempts to set forth the applicable law surrounding the disclosure of documents to third parties and the law of common interest, but stops short of "specific reference to each document in dispute" as the Court required. (September Order at 1.) Instead, plaintiffs attach an exhibit, exactly as they did in their Fourth Motion, which purports to set fourth the "Dispute Details". That exhibit, however, simply lists the challenged documents by alleged third party and fails to make reference to (i) the bases of Defendants' privilege as outlined in Defendants' log and as communicated during the parties' meet and confer, (ii) the relevance of the date of each document as communicated during the parties' meet and confer, and (iii) whether a challenged document is subject to an attorney-client privilege, a work product protection, or both.

Having now had an opportunity to re-review the content of the 98 documents in detail, Defendants have decided to produce 50 of those documents.[1] Accordingly, of the 986 documents plaintiffs moved against in their Fourth Motion, only 48 now remain in dispute -- through a combination of additional production by Defendants and, principally, plaintiffs dropping their challenges.

With respect to the 48 documents that now remain at issue, those challenged documents fall into the following privileged categories:

- 37 are attorney-client communications that were never sent to a third party;

- 7 were disclosed to a third party pursuant to a common interest / joint defense privilege; and

- 4 are WebHouse privileged documents that defendants only came into possession of during this litigation, which is jointly defended with WebHouse's former Chief Executive Officer, Jay Walker.[2]

Although Defendants do not think it will be necessary after the Court's consideration of the arguments below and the attached affidavits, Defendants will promptly provide another copy of the remaining 48 documents to the Court for *in camera* review if requested.

---

[1] See the Attached Table B for a break down of those documents.

[2] See the Attached Table A for a listing of the applicable privileges/protections that apply to each of the 48 documents that remain in dispute.

## Argument

I.  THE MAJORITY OF THE REMAINING CHALLENGED DOCUMENTS NEVER
WERE IN THE HANDS OF A THIRD PARTY

### A.  Alleged disclosures to "Webhouse Chief Financial Officer Bob Mylod" and/or "Webhouse Chief Operating Officer Paul Francis"

Of the remaining 48 disputed documents, 34 are challenged based upon

the fact that they were disclosed to Mr. Mylod and/or Mr. Francis, who are purported

"third parties". Plaintiffs' stated premise, however, is wrong. Defendants are

withholding those 34 documents because they were sent to Mr. Mylod and/or Mr. Francis

by priceline counsel when those individuals were priceline employees -- i.e., because

they were attorney-client communications.

Mr. Mylod joined priceline in January 1999 as the Vice President of

Financial Planning and Analysis. (See Affidavit of Robert J. Mylod, Jr., dated Decemeber

7, 2006 ("Mylod Affidavit") at ¶1.) Thereafter, Mr. Mylod was promoted to become

priceline's Senior Vice President of Finance. Id. It was not until May 2000 that Mr. Mylod

left priceline and joined WebHouse as the acting Chief Financial Officer. Id. Mr. Mylod

stayed at WebHouse through October 2000. Id. On or about November 1, 2000, Mr. Mylod

returned to priceline as its Chief Financial Officer, and he has served in that role at

priceline ever since. Id.

Therefore, Mr. Mylod has served as an employee of priceline during the

periods of:

- January 1999 through April 2000; and

- November 1, 2000 through the present. Id.

Likewise, Mr. Francis began performing work for priceline pursuant to a

consulting agreement on or about June 30, 1997. (See Affidavit of Jill Saverine, dated

-4-

December 7, 2006 ("Saverine Affidavit") at ¶3.) Mr. Francis formally joined priceline as a full-time employee on October 19, 1997. Id. Mr. Francis held that position until he left priceline and became affiliated with WebHouse Club and Walker Digital on March 15, 2000. Id.

Therefore, Mr. Francis served as an employee of (or consultant for) priceline during the period of:

- June 30, 1997 through March 15, 2000[3]

During those respective periods of employment, Mr. Mylod and Mr. Francis were working on behalf of priceline and their communications with priceline attorneys -- as described throughout Defendants' privilege log -- are privileged. The fact that they at some other point worked at WebHouse, or any other company for that matter, is irrelevant to the privileged nature of the communications they had with priceline counsel while employed by priceline. As Defendants' log makes clear, Defendants are not withholding any Mylod or Francis documents on the basis of an attorney-client privilege that do not fall within their respective dates of employment at priceline.

B.  Additional documents that were never sent to a third party

Plaintiffs also challenge document number 237 from privilege log volume 1, document number 631 from volume 2 and document number 199 from volume 6 as respectively being disclosed to third parties' Walker Digital, WebHouse and "Unidentified Consultants". (Kelleher Declaration at ¶7.) Plaintiffs are mistaken. Id.

---

[3] We note that none of the disputed documents relating to Mr. Francis are from the time period prior to Mr. Francis becoming a full-time employee at priceline.

Those documents were never sent to a third party -- and that fact was explained to plaintiffs in detail during the meet and confer.  Id.

With respect to 237 from volume 1, Defendants log states (and Defendants reiterated during the meet and confer) that the document is a "draft internal priceline.com communication . . . that contain[s] privileged communications between priceline.com personnel [Brian Harniman, clearly identified as a priceline employee] and counsel [John Andres, clearly identified as an attorney]".  More specifically the log states that the document contains "[i]n-house counsel's legal comments and analysis of draft letter to the Better Business Bureau concerning ticketing and refund policies".

As we have told plaintiffs on many occasions (see, e.g., Defs' Opposition to Fourth Motion at 19), Courts have held that drafts of documents prepared by an attorney (or on which an attorney comments) for subsequent transmission to third parties in final form are protected by the attorney-client privilege where the draft document contains confidential information communicated between the client and the attorney that is maintained in confidence.  See e.g., In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984).  Moreover, the document was never sent to and is wholly unrelated to Walker Digital.

With respect to 631 from volume 2, Defendants' log states that the document is a "draft memorandum [regarding] proposed terms for the new rates to be charged for services provided to Webhouse."  Although the log states that the "Recipient" of this memorandum is "Priceline Webhouse Club, Inc.", that entry is a mistake and was lifted from the "Re:" subject line of the memorandum in error by the individual logging the document at priceline's counsel, Robinson & Cole. (Kelleher Declaration at ¶8.)  We

-6-

plainly explained this error to plaintiffs during our meet and confer.  Id.  The document is

an internal memorandum created by priceline's then general counsel, Jeffrey Boyd, and

was not sent to Webhouse.  Plaintiffs refused to accept our representation during our

meet and confer and continue to challenge unnecessarily this clearly privileged

document.

        With respect to 199 from volume 6, Defendants log states that the

document is an attorney-client communication between priceline's in-house counsel and

priceline "employees and consultants".  Plaintiffs challenge the document based on the

fact that the consultants are "unidentified".  That is not true.  During the parties' meet and

confer, Defendants explained -- at times referencing the language of the document

directly -- that the consultants were "Internal Consultants" at priceline and that the

document related to potential litigation that priceline and its affiliated companies were

contemplating and was marked "CONFIDENTIAL -- NOT FOR EXTERNAL

DISTRIBUTION".  Id. at ¶9.  Yet plaintiffs again refused to accept our representation.

II.  FOR THOSE DOCUMENTS THAT WERE EXCHANGED WITH A PARTY
     OTHER THAN PRICELINE, THAT EXCHANGE WAS PURSUANT TO A
     COMMON INTEREST PRIVILEGE

        Of the remaining 11 disputed documents, seven were, in fact, provided by

priceline to Walker Digital and/or WebHouse and/or Mark McEnroe -- WebHouse's in-

house counsel  (see Mylod Affidavit at ¶9).  Those disclosures, however, were made

pursuant to a common interest/joint defense privilege and the documents, therefore,

remain privileged.

        The common interest privilege protects the "free flow of information"

where "multiple clients share a common interest about a legal matter".  United States v.

Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (quotation omitted).  It facilitates "a

pooling of resources, a healthy exchange of vital information, a united front against a common litigious foe, and the marshaling of legal talent and advice". Lugosch v. Congel, 219 F.R.D. 220, 238 (N.D.N.Y. 2003).

Under the common interest privilege, priceline's otherwise privileged communications with third parties are privileged if the parties shared a common legal interest and the communications were designed to further those interests. See, e.g., Schwimmer, 892 F.2d at 243. However, such common interests need not have been exclusively legal; the privilege applies fully to communications serving both legal and commercial purposes -- provided the commercial purpose does not control. See Lugosch, 219 F.R.D. at 237. Moreover, the common interest privilege applies even where there is no litigation in progress. See, e.g., Schwimmer, 892 F.2d at 244.

A. Priceline's common interest with Walker Digital

Walker Digital is a company founded principally by Jay Walker. (Mylod Affidavit ¶3.) It is a leading business invention and research and development company. Id. Under a Purchase and Intercompany Services Agreement in April 1998, Walker Digital invested in priceline and sold, transferred, licensed and assigned to priceline certain rights in its patent, trademarks, servicemarks, and related intellectual property and applications. Id. Those intellectual property rights were primarily in the area of conditional purchase offers (i.e., buyer-driven commerce or priceline's "Name Your Own Price" business). Id.

Walker Digital and priceline were jointly involved in several litigations or potential litigations during the course of their relationship. Id. at ¶4. Those litigations or potential litigations included patent and intellectual property disputes. Id. One such example was a litigation that priceline and Walker Digital jointly pursued against Microsoft Corporation and its subsidiary Expedia.com for patent infringement. Id. Another such

-8-

example was a similar infringement litigation that priceline and Walker Digital contemplated against a company called Hotwire.com. Id.

Challenged document 16 from volume 9 was disclosed to Walker Digital pursuant to the common interest in patent litigation that priceline and Walker Digital shared against Microsoft and Expedia.com (id.); and challenged documents 239 from volume 2, 615 from volume 2 and 619 from volume 2 were disclosed to Walker Digital pursuant to a common interest that priceline and Walker Digital shared in potential patent litigation against Hotwire.com (id.). All four documents represent "a pooling of resources" in order to establish a "a united front against a common litigious foe" -- Microsoft and Hotwire.com. Lugosch, 219 F.R.D. at 238. They therefore remain privileged.

B. Priceline's common interest with WebHouse

WebHouse was a company founded and financed by Jay Walker and others in 1999. (Mylod Affidavit ¶5.) WebHouse was formed to apply priceline's "Name Your Own Price" business model to the sale of groceries and gasoline. Id.

The relationship between priceline and WebHouse was contractual in nature. Id. at ¶6. Under an Intellectual Property License Agreement between priceline and WebHouse in October 1999, priceline licensed its patented "Name Your Own Price" business model (and affiliated patents and trademarks) to WebHouse for use and application to its grocery and gasoline business. Id. In that agreement, among other things, priceline agreed to sublicense to WebHouse certain patent and intellectual property rights that Walker Digital had licensed to priceline. Id. Furthermore, the parties agreed to keep and maintain as confidential all confidential business information exchanged between the parties and they each had the option to litigate or take enforcement or other action against infringement or misuse of the licensed intellectual property. Id.

In addition, under a Services Agreement between priceline and WebHouse, also in October 1999, priceline also agreed to make certain professional services available to WebHouse, including legal, IT and accounting services. Id. at ¶7. In 2000, the Federal Trade Commission and the Connecticut Attorney General's Office started investigations into the advertising practices of both priceline and WebHouse. Id. at ¶8. Those investigations were jointly defended by priceline and WebHouse. Id. Mark McEnroe was the General Counsel at WebHouse and he was the chief contact with priceline in connection with all legal matters that were common to priceline and WebHouse. Id. at ¶9.

Challenged documents 680 and 681 from volume 2 were disclosed to WebHouse pursuant to a common interest shared by priceline and WebHouse in responding to a threat of litigation from the Federal Trade Commission (id. at ¶8); and document 47 from volume 6 was disclosed to WebHouse pursuant to a common interest shared by priceline and WebHouse in responding to a threat of litigation from the Connecticut Office of the Attorney General (id.). Those three documents illustrate a "marshaling of legal talent and advice" in developing a legal response to potential litigation. Lugosch, 219 F.R.D. at 238. They remain privileged.[4]

---

[4] Furthermore, plaintiffs' motion only argues for the production of documents based upon an alleged waiver of the attorney-client privilege. Plaintiffs fail to address the fact that all but one of the documents that were disclosed by priceline to a third party, albeit pursuant to a common interest, are also logged on Defendants' privilege log as "Work Product". (See Privilege Log entries for Volume 2: 239, 615, 619, 680, 681 and Volume 6: 47.) The standard for effecting a waiver of work product is quite different than the standard applicable to attorney-client communications. Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441 (S.D.N.Y. 2004) Therefore, even if the common interest privilege did not apply to those six documents -- which it does -- plaintiffs would have to show that the disclosure of those documents "increased the opportunity for potential adversaries to obtain the information." Id. at 445 (citation omitted). Plaintiffs did not attempt to meet that burden, nor can they. Neither WebHouse nor Walker Digital were litigation adversaries or "conduits" to potential litigation adversaries.

III. PRICELINE IS IN POSSESSION OF CERTAIN DOCUMENTS THAT ARE
PRIVILEGED TO WEBHOUSE AS A RESULT OF THE DOCUMENT
COLLECTION IN THIS CASE

As plaintiffs are aware, at the outset of this action, priceline sought to
preserve all of its electronic material in one secure location. As a result, a "snapshot"
was taken of priceline's various servers. The "snapshot" is the equivalent of a full back-
up of all the material that existed on priceline's corporate file servers in February 2002.
(Kelleher Declaration at ¶2.)

As far back as July 19, 2005, plaintiffs became aware that WebHouse
utilized areas of priceline's computer servers for a period of time following its launch.
(See J. Clasen Letter to J. Perkinson, et al., dated July 19, 2005; see also W. Kelleher
Letter to E. Comite, dated Mar. 10, 2006.) Accordingly, when this litigation commenced
and priceline collected its "snapshot", priceline became in possession of certain
electronically stored WebHouse documents. Id. at ¶3. That collection, done in the
context of pooling resources in a jointly defended litigation with Mr. Walker
(WebHouse's former CEO), did not destroy the privilege as it was the first time priceline
came into possession of certain WebHouse documents. Lugosch v. Congel, 219 F.R.D.
220, 238 (N.D.N.Y. 2003).

As a result, however, certain WebHouse privileged documents that remain
in dispute (the last 4 documents from the original 48 that have yet to be discussed) appear
on our privilege log:  document numbers 412 and 517 on volume 2; and numbers 15 and
16 on volume 7.  Priceline is not in a position to waive WebHouse's (or WebHouse
employees') privilege as to those documents.  In order to reduce any future confusion on
this point, Defendants offered that going forward they would provide such documents to
counsel for co-defendant Jay Walker so that he may review the documents himself and

-11-

provide plaintiffs with a separate privilege log. (See e.g., Defs.' Opposition to Fourth

Motion at 22, citing Letter from B. Kelleher to E. Comite, dated March 10, 2006.)

### Conclusion

For the reasons stated above, Defendants respectfully request that this

Court deny plaintiffs' Motion; however, Defendants will promptly provide another copy

of the remaining 48 documents to the Court for *in camera* review if requested.


December 7, 2006

> DEFENDANTS PRICELINE.COM INC.,
> N.J. NICHOLAS,
> DANIEL SCHULMAN AND
> RICHARD S. BRADDOCK
>
>
>    /s/ Joseph L. Clasen
> Joseph L. Clasen (ct04090)
> ROBINSON & COLE, LLP
> Financial Centre
>   695 East Main Street
>    P.O. Box 10305
>     Stamford, CT 06904-2305
>      Telephone: (203) 462-7500
>      Fax: (203) 462-7599
>      jclasen@rc.com
>
>
> Daniel Slifkin (ct21203)
> CRAVATH, SWAINE & MOORE LLP
> Worldwide Plaza
>   825 Eighth Avenue
>    New York, NY 10019
>     Telephone: (212) 474-1000
>      Fax: (212) 474-3700
>      dslifkin@cravath.com

## CERTIFICATION

I hereby certify that the foregoing was filed with the Court and served on all counsel of record listed below via the ECF electronic court filing system and by first class mail on this 7th day of December, 2006:

| Co-Lead Counsel | Liaison Counsel |
|---|---|
| David R. Scott, Esq.<br>Erin G. Comite, Esq.<br>Scott & Scott, LLC<br>108 Norwich Avenue<br>P.O. Box 192<br>Colchester, CT  06415<br>Tel:  860-537-3818<br>Fax:  860-537-4432<br><br>Jules Brody, Esq.<br>Aaron Brody, Esq.<br>Stull Stull & Brody<br>6 East 45th Street<br>New York, NY  10017<br>Tel:  212-687-7230<br>Fax:  212-490-2022<br><br>Dennis J. Johnson, Esq.<br>Jacob B. Perkinson, Esq.<br>Johnson & Perkinson<br>1690 Williston Road<br>South Burlington, VT  05403<br>Tel:  802-862-0030<br>Fax:  802-862-0060 | Andrew M. Schatz, Esq.<br>Jeffrey S. Nobel, Esq.<br>Schatz & Nobel, PC<br>One Corporate Center<br>20 Church Street, Suite 1700<br>Hartford, CT  06103-3202<br>Tel:  860-493-6292<br>Fax:  860-493-6290 |

-13-

| Attorneys for priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman and N.J. Nicholas, Jr. | Attorneys for Defendant Jay S. Walker |
|---|---|
| Evan R. Chesler, Esq.<br>Daniel Slifkin, Esq.<br>Robert K. Simonds, Esq.<br>Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212-474-1000<br>Fax: 212-474-3700 | Thomas D. Goldberg, Esq. (ct04386)<br>Terence J. Gallagher, Esq. (ct22415)<br>Day, Berry & Howard LLP<br>One Canterbury Green<br>Stamford, CT 06901<br>Tel: 203-977-7300<br>Fax: 203-977-7301<br><br>Jeanne E. Irving, Esq.<br>Hennigan, Bennett & Dorman LLP<br>865 South Figueroa Street, Suite 2900<br>Los Angeles, CA 90017<br>Telephone: 213-694-1200<br>Fax: 213-694-1234 |

   /s/ William J. Kelleher III
William J. Kelleher, III

**ATTACHED TABLE A**
**Summary of the Privileged Status of the 48 Documents that Remain in Dispute**

**Attorney-client communications that were never sent to a purported "third party":**

*Documents received by Mr. Mylod and/or Mr. Francis while employed by priceline:*

<u>Volume 2</u>:  410, 411, 434, 435, 436, 509, 576, 582, 692

<u>Volume 5</u>:  23

<u>Volume 6</u>:  4, 19, 21, 25, 36, 67, 203, 209, 218, 219, 226, 229, 241, 243

<u>Volume 7</u>:  38, 45, 46, 47, 48

<u>Volume 8</u>:  8

<u>Volume 9</u>:  61, 62, 63, 91

*Documents never received by Walker Digital and/or WebHouse or "Unidentified Consultants":*

<u>Volume 1</u>:  237

<u>Volume 2</u>:  631

<u>Volume 6</u>:  199

---

**Documents disclosed by priceline to Walker Digital and/or Webhouse pursuant to a common interest privilege:**

<u>Volume 2</u>:  239, 615, 619, 680, 681[1]

<u>Volume 6</u>:  47

<u>Volume 9</u>:  16

---

**WebHouse privileged documents that defendants came into possession of during document collection in the current litigation, which is jointly defended with WebHouse's former CEO, Jay Walker:**

<u>Volume 2</u>:  412, 517

<u>Volume 7</u>:  15, 16

---

[1] We note that an attachment to this document will be produced.  It is a copy of a letter received by priceline from the FTC inquiring about priceline's and WebHouse's advertising practices.  Multiple copies of this document have already been produced to Plaintiffs on prior occasions.

**ATTACHED TABLE B**
**Documents Defendants Agree to Produce**

**Documents that Defendants agree to produce (some of which will be redacted to remove attorney notes):**

Volume 2:  12, 251-2, 255, 279, 293-6, 359, 390, 400, 403, 430, 461-3, 468-9, 475-7, 489, 491, 503, 505, 523, 541, 565, 573, 603

Volume 3:  14, 23

Volume 4:  30, 80-1, 86-7, 94-6, 122-4

Volume 5:  6-7

Volume 6:  31, 230

Volume 7:  50

Volume 9:  73