# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| **IN RE: PRICELINE.COM, INC.** | : | |
| **SECURITIES LITIGATION** | : | |
| _____ | : | **MASTER FILE NO.** |
|  | : | **3:00CV01884(AVC)** |
| **This document relates to:** | : | |
|  | : | |
| **ALL ACTIONS** | : | |

## PLAINTIFFS' MOTION TO COMPEL DEFENDANT WALKER TO PRODUCE RESPONSIVE DOCUMENTS ON THE RESTORED WEBHOUSE TAPES AND TO RESTORE ADDITIONAL WEBHOUSE TAPES

**SCOTT + SCOTT, LLP**
David R. Scott
Beth A. Kaswan
Mark V. Jackowski
Geoffrey M. Johnson
Erin Green Comite
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403

**Co-Lead Counsel**

## INTRODUCTION

Plaintiffs respectfully bring this fourth motion to compel Webhouse electronic documents that are responsive to Plaintiffs' first document request.  Over the past two years, Defendant Jay Walker has taken it upon himself to unilaterally hold back the most relevant e-mails and electronic documents in this entire case.  Plaintiffs requested these e-mail and electronic documents when they served their First Set of Document Requests on Defendant Walker more than two years ago in November of 2004. These e-mails and electronic documents are contained on 181 backup tapes (rather than in readily accessible Webhouse electronic files) that are currently in Defendant Walker's possession.

Over the last two years, Plaintiffs have held over a dozen meet and confers with the successive groups of attorneys that Walker has retained in an attempt to identify on which tapes Walker deposited the Webhouse e-mails and other responsive electronic discovery, and to cajole Walker into voluntarily conducting a meaningful search and production of the electronic files of Webhouse executives, including financial, operations and information technology personnel involved in the matters alleged in the consolidated complaint (the "complaint") in this case.  As it became clear that Walker was stone-walling Plaintiffs' requests, Plaintiffs filed three separate motions to compel in order to get Defendant Walker to restore the appropriate back-up tapes and to force a review and production of these records.  As Walker's last status report dated December 11, 2006 reflects, not until this Court issued its Order dated October 30, 2006 did Walker even begin a legitimate review of its Webhouse's e-mail accounts much less its other electronic discovery.  As a result, Walker is apparently hard-pressed to meet his obligations under the October 30, 2006 Order, and Walker's current counsel have predicated all discussions about which e-mail accounts and which search terms should be searched upon their position that only

about 500,000 pages can be reviewed with Walker's currently dedicated legal staff of reviewers by the March 1, 2007 deadline. Walker's quandary is a result of his own conduct in placing Webhouse's active files on unwieldy back-up tapes during the pendency of this case. Therefore, the consequences of his failure to timely begin his search are fairly borne by him and he is not entitled to the extraordinary relief from the obligations of the discovery rules he claims he deserves, Walker's proposed solution of arbitrarily limiting the number of documents he will review (not produce, but review) bears no relationship to his responsibility to search for and produce relevant and responsive documents under the Rules or to this Court's order of October 30, 2006. Despite lengthy attempts, the parties have been unsuccessful in attempts to resolve the remaining issues on which they were instructed to meet and confer.

The Court's October 30, 2006 Order provided in pertinent part:

> With respect to the restored WebHouse tapes, defendant Walker shall conduct an email by email review of the Walker and Braddock email boxes. With respect to the remaining 121 email accounts at issue, the parties shall meet and confer regarding which accounts are of key individuals to this litigation. The parties shall consider the list of key individuals searched with respect to the "snapshot" and "terminated employee tapes" above [relating to Priceline's search and production of electronic files], to the extent applicable. With respect to that narrow list of key individuals, defendant Walker shall conduct an email by email search of those accounts. Further, with respect to the remaining documents on the restored tapes, the parties shall meet and confer in order to agree upon a focused list of search terms to be used in order to identify potentially responsive documents. To the extent restoration of any of the tapes remains an issue, the parties shall meet and confer pursuant to local and federal rules and this court's December 8, 2005 order with respect to such restoration.

Docket No. 404, page 8-9 (10/30/2006 Order).

To comply with this Order, Plaintiffs immediately began a review of the hard copy documents produced in discovery to date, and of Webhouse's organization charts in an attempt to identify the appropriate Webhouse personnel who were most likely involved in the transactions and in matters alleged in the Complaint, and to derive search terms that would likely

produce relevant and responsive documents, without requiring an unnecessary review of large numbers of unresponsive documents.[1]  By letter dated November 9, 2006, Plaintiffs advised Walker that Plaintiffs would provide proposed lists of e-mail accounts and search terms prior to the first scheduled "meet and confer", and requested that Walker do the same.  While Plaintiffs produced the Plaintiffs' lists, none were forthcoming from Walker.  Plaintiffs have "met and conferred" with Defendant Walker over several hours on November 16, 2006, November 29, 2006 and December 6, 2006 with respect to the lists provided by Plaintiff -- to date Walker has produced no lists of proposed search terms and has identified only two of those on Plaintiffs' list that he considered objectionable ("Skadden" and "GS").  As of December 6, 2006, Walker's counsel verbally identified only twenty-one e-mail accounts that Walker was prepared to search on an e-mail by e-mail basis -- even though in September 2006, in his monthly report to the Court, he had identified a list of 59 persons who were likely to have information relevant to this case.

The cause for most of the disagreements between Walker and Plaintiffs boils down to the simple and unacceptable proposition clung to by Defendant Walker: that he will not endeavor to review more than 500,000 pages of documents.  In response to almost every suggested resolution, Defendant Walker's refrain has been: "We will do whatever you want as long as the review does not exceed 500,000 pages."  This arbitrary limitation is unwarranted and contrary to this Court's October 30, 2006 Order, which directed the parties to consider the breadth of the

---

[1] With that goal in mind, Plaintiffs developed individual lists of third party entities and their employees who were shown to be involved in the challenged transactions, as well as separate lists of Priceline employees and general search terms.  *See* the Declaration of Eben Duval, Exhibit A.

review conducted by Priceline when meeting and conferring over the e-mail accounts to be searched.[2] This position is also contrary to the Federal Rules of Civil Procedure.

Thus, Plaintiffs have no choice but to again apply to this Court to obtain the discovery they need to effectively litigate this case.

## ARGUMENT

This Court's October 30 Order provided the parties with a clear roadmap for how to proceed with respect to the 181 WebHouse backup tapes. In the October 30 Order, the Court directed the parties to:

1.    Meet and confer to determine which of the individual e-mail accounts contained on the restored WebHouse tapes were "key" e-mail accounts that Defendant Walker needed to search on an e-mail-by-e-mail basis;

2.    Meet and confer to determine what search terms Defendant Walker should use to search the e-mails and electronic documents contained on the remainder of the restored tapes; and

3.    Meet and confer to determine which, if any, of the remaining unrestored tapes should be restored.

On each of these issues, Defendant Walker has taken a very hard-line position calculated to prejudice Plaintiffs in obtaining the same type of information they received from Priceline, on the skewed theory that, unlike the Priceline defendants, Walker delayed the onset of his search and review of the Webhouse electronic files until this Court's October 30, 2006 Order, and so Walker should be relieved of his discovery obligations. It would turn justice and the Rules on their heads to so penalize Plaintiffs, and reward Walker for his obstructionist conduct. As

_____

[2] Priceline agreed to conduct an e-mail by e-mail search of 80 e-mail accounts. Plaintiffs, by their list produced on November 14, 2006, identified 89 individual e-mail accounts for the e-mail by e-mail review, but Defendants advised that many of these individuals did not have e-mail addresses on the restored tapes. If this is true, Defendant Walker will need to conduct an e-mail by e-mail review for a total of only about 60 individuals -- far less than the number searched by Priceline.

discussed in detail below, Walker's position on each of these issues violates the letter and the spirit of the Federal Rules and this Court's October 30 Order, and should be rejected out of hand.

    **1.    The E-Mail Accounts of Eighty-Nine "Key" Individuals Should Be Searched On An E-mail-By-E-mail Basis.**

First, with respect to the e-mail-by-e-mail portion of the electronic search, Plaintiffs informed Defendant Walker prior to the Court-ordered meet and confers that there were eighty-nine "key" individuals whose e-mail accounts Defendant Walker should search on an e-mail-by-e-mail basis. In coming up with this list, Plaintiffs started off with the list of fifty-nine individuals that Defendant Walker himself identified in his September 10, 2006 Status Report as "most likely to have responsive information," -- although Walker later advised that only about half of these individuals had e-mail accounts on the restored Webhouse tapes. To this potential list of up to fifty-nine individuals, Plaintiffs added WebHouse executives and employees whose e-mail accounts Plaintiffs believe are also very likely to contain responsive information. These executives and employees are individuals whose names appeared on various important documents that Plaintiffs have culled from the document production and/or are individuals who are listed on the WebHouse organizational charts as having held relevant positions in the company. A comprehensive list of the eighty-nine "key" people whose e-mail accounts Plaintiffs have asked Defendant Walker to search is attached as "List 2" in Exhibit A to the Declaration of Eben Duval.

Plaintiffs sent Defendant Walker this list of eighty-nine key individuals prior to the parties' November 16, 2006 meet and confer. In response, Defendant Walker, by his counsel, stated that he would only agree to search ten of these e-mail accounts identified by Walker at that time and an undisclosed number of additional accounts, but less than the entirety of the accounts requested by Plaintiffs. On December 6, 2006, Walker agreed to include an additional eleven

people for a total of twenty-one accounts to be searched in the e-mail-by-e-mail portion of the electronic document search.  He was unable, however, to articulate any reason for excluding any of the remaining fifty-nine people he had already identified as having responsive documents, or the others that Plaintiffs had identified during the meet and confers.  For example, Walker did not test the proposed search terms against the identified individuals to determine whether any of those people were likely not to have relevant documents, nor did he contend that one or more had an exceptionally large number of e-mails to be searched.  And as described above, Walker's own twenty-one person list was narrowly drawn to address his unilateral decision on the resources he was willing to dedicate to the task, rather than any assessment of relevance or the needs of the case.

Critically, Defendant Walker has failed to demonstrate any reason to believe that an e-mail by e-mail search of the accounts requested is unreasonable or unduly burdensome.  In fact, according to the Defendants, of the eighty-nine accounts at issue, less than sixty of them have been found to be populated with anything at all.  So the actual number of accounts at issue is no more than sixty, which is twenty less than the number of accounts the Priceline Defendants have searched on an e-mail by e-mail basis.  In addition, to date, Defendant Walker has failed to articulate to Plaintiffs the actual number of pages that would need to be reviewed if the less than sixty accounts at issue and populated are examined on an e-mail by e-mail basis.

Because Defendant Walker lacks a legitimate reason for excluding any of the individual e-mail accounts requested by Plaintiffs from the e-mail-by-e-mail search and has failed to demonstrate that any undue burden would accrue as a consequence of performing such a review, Plaintiffs respectfully submit that this Court should order Walker to perform an e-mail-by-e-mail search of the e-mail accounts listed on Exhibit A to the Duval Declaration and produce all

responsive e-mails and electronic documents on a rolling basis within the timeframe currently set for Defendants to complete their document production.

> **2.    Search Terms Drawn From Plaintiffs' List Should Be Used To Search The Remainder Of The Restored Back-Up Tapes.**

Second, with respect to the search term portion of the electronic document search, Plaintiffs, on November 9, 2006, requested Walker to produce a list of proposed search terms. To date no list has been produced by Walker either in writing or verbally.  On November 14, 2006, Plaintiffs provided Defendant Walker with a series of search terms.  These included fifty-five terms broken out by category into the names of third party entities and people that had been involved in the transactions alleged in the *Complaint*, and who for the most part, would not be expected to appear in Webhouse files for matters extraneous to the *Complaint*.  Plaintiffs also provided a list of Priceline employees involved in Webhouse matters, and a list of generalized search terms.  *See,* List 1 of Exhibit A of the Duval Declaration.  While the total number of terms exceed those Priceline is searching, by breaking out the terms into categories and using narrower language, Plaintiffs sought to reduce the number of extraneous records that would be produced for review by Walker.   As with the list of "key" individual e-mail accounts, Plaintiffs compiled their list of search terms after reviewing relevant documents already produced which they had culled from the document production to date.  *See,* the Duval Declaration, ¶¶ 4 to 5.

During the meet and confer process, Plaintiffs narrowed their general list based, in part, on comments from Walker as to those terms which would likely identify for review large numbers of extraneous documents.  The parties then agreed to test the narrowed list, as well as the third party entities and names**,** to estimate the number of documents that would be captured for review per term.  Walker used the previously uploaded the e-mail accounts for twenty-nine individuals in order to run this sample.  Non-e-mail documents such as spreadsheets, Word

documents, or PowerPoint presentations were not included. The data from one tape group had not yet been loaded into the search tool. It was agreed that this sample was for benchmark purposes only.

On November 21, Walker provided the results of running the 55 third-party entities and third-party people search terms, attached as Exhibit B to the Duval Declaration. On November 28, Walker provided Plaintiffs with the results of running the "general" search terms against the data subset, attached as Exhibit C to the Duval Declaration. These results necessarily included a significant number of "hits" for the same document, where more than one search term has been found in a single document. Defendants stated that they possess the ability to distinguish the result by total number of documents rather than occurrences, but did not employ the resources to complete this task.

After these "hit" lists were produced, during the meet and confers, Plaintiffs repeatedly asked Defendant Walker to identify any search terms that he believed produced an undue number of extraneous documents for review. He identified only two -- "Skadden" and "GS" (which Plaintiffs agree to remove from their list.) Walker maintained that he would search whatever Plaintiffs desired -- but would cap the review at 500,000 pages -- no matter how many relevant documents were contained on the Webhouse tapes or were excluded by his arbitrarily imposed limitations. Plaintiffs respectfully submit that Walker's position fails to comply with either this Court's Order or the Federal Rules.[3] Walker's plea of limited legal resources rings hollow because this is a problem born of his own recalcitrance over the last two years. Moreover Walker himself improperly increased his burden by moving electronic files to back-up tapes that

---

[3] Fed.R.Civ.P. 26(b)(2)(iii) permits the Court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Walker's arbitrary 500,000 page review cap satisfies none of these criteria.

have proved difficult, expensive and unwieldy to restore and co-mingling the files with those of his other businesses -- all after this case was filed.

While the fifty-five third party terms, and the fifty-eight general terms tested for reasonableness during the meet and confer process exceeded the number reviewed by Priceline, Walker's burden has been reduced by Plaintiffs' efforts to arrive at narrower terms, particularly with respect to the third party terms -- as Exhibit B reflects, most terms resulted in "hits" of less than 10,000 pages for review. Again, since Defendant Walker failed to analyze how many hits resulted from a single document, it is likely that the actual number of documents will be lower than the number of "hits" generated by Plaintiffs' search terms. Thus, because Walker has failed to demonstrate any cognizable reason to limit the use of Plaintiffs' proposed search terms, Plaintiffs respectfully suggest that Walker should be ordered to search all 113 terms on Exhibits B and C to the Duval Declaration.

### 3. Defendants Should Be Ordered to Restore Three Additional Tapes

For over two years, Defendant Walker has led Plaintiffs on a merry chase shifting the burden to them to identify where, on Walker's 181 unrestored back-up tapes, he had deposited Webhouse's e-mail accounts and other responsive Webhouse documents. In mid-October 2006, Defendant Walker produced a final set of indices or "catalogues" for the contents of unrestored back-up tapes. Upon reviewing this last set of catalogues, Plaintiffs identified additional unrestored tapes containing e-mail accounts and other Webhouse records that appeared to respond to Plaintiffs' discovery requests. These e-mail accounts and records appeared on tapes #17 from Group # 2, and Tapes #160 and # 161 from the miscellaneous group listed in the catalogues.

During the meet and confer, Defendant Walker, did not deny that these unrestored tapes contained relevant and important electronic records. Instead, he took the position that it was unnecessary to restore the tapes because he lacked the resources to review them by the March 1, 2007 electronic discovery cut off date imposed by the Court -- *i.e.* that Walker's 500,000 page review cap would already have been exhausted before reviewing the e-mails and other documents on the last three tapes requested to be restored. This position simply is not acceptable, either under this Court's order or the requirements of the Federal Rules.

Defendant Walker, having personally multiplied the resources required to retrieve Webhouse's e-mails and other documents by improperly moving them to back-up tapes which are inaccessible other than through tedious and expensive efforts <u>after</u> this case was filed -- in brazen violation of his obligations to preserve Webhouse files under the federal securities laws -- should not be heard to complain, two years after Plaintiffs' document requests were served, that he now lacks the resources to recover and review the last three tapes, or any other relevant material in his possession. Indeed, if after more than two years, Walker is still unable or unwilling to dedicate the resources to review these tapes that clearly contain important and relevant files, he should be required to turn them over to Plaintiffs, intact, to permit the Plaintiffs to cull through the electronic files themselves -- as Plaintiffs requested in their last motion to compel.

Thus, the choice is clear -- either Walker needs to dedicate the resources required to complete the search and production of electronic discovery that remains undone two years after Plaintiffs served their document requests, or he should turn over his unreviewed tapes to Plaintiffs so they can retrieve the needed discovery themselves.

## **CONCLUSION**

For the reasons stated herein, Defendant Walker should be ordered to (1) restore tape # 17 from Group # 2, and tapes # 160 and #161 from the miscellaneous group; (2) conduct an e-mail by e-mail review of the 89 key e-mail accounts identified in Exhibit A; and (3) conduct a search using the search terms contained in Exhibits B and C against the remaining electronic files on the restored tapes and produce responsive documents resulting from such searches on a rolling basis to Plaintiffs.  Defendant Walker should further be ordered to produce the results of these searches by March 1, 2007, as provided by the October 30, 2006 Order, on pain of being required to turn over the unreviewed tapes to Plaintiffs to conduct the search for the documents responsive to Plaintiffs' long overdue discovery requests.


Dated: December 15, 2006                          Respectfully submitted,

                                                  /s/ Erin Green Comite
                                                  SCOTT + SCOTT, LLP
                                                  David R. Scott (CT16080)
                                                  Erin Green Comite (CT24886)
                                                  108 Norwich Avenue
                                                  P.O. Box 192
                                                  Colchester, CT  06415
                                                  Telephone: (860) 537-5537
                                                  Facsimile: (860) 537-4432

                                                  SCOTT + SCOTT, LLP
                                                  Beth Kaswan
                                                  75 Rockefeller Plaza
                                                  19th Floor, Suite 1915
                                                  New York, NY 10018
                                                  Telephone: (212) 710-1040
                                                  Facsimile: (212) 710-1041

SCOTT + SCOTT, LLP
Mark V. Jackowski
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200
Facsimile: (440) 247-8275

JOHNSON & PERKINSON
Dennis J. Johnson
Jacob B. Perkinson
Eben Duval
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Telephone: (802) 862-0030
Facsimile: (802) 537-4432

**Co-Lead Counsel**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2006, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/ Erin Green Comite*
Erin Green Comite