UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : MASTER FILE NO. : 3:00CV01844 (AVC) |
| This document relates to: | : : |
| ALL ACTIONS | : DECEMBER 15, 2006 : : : |

DECLARATION OF EBEN F. DUVAL
IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Pursuant to 28 U.S.C. §1746, I, Eben Duval, declare that the following is true and correct under penalty of perjury under the laws of the United States of America:

1. I am an attorney employed by the law firm of Johnson & Perkinson, co-lead counsel for Plaintiffs in this lawsuit. I make this declaration based upon my own knowledge and information that I learned in the process of the "meet and confers" with counsel following this Court's Order dated October 30, 2006.

2. Shortly after the October 30, 2006 Order was entered, I contacted Defendant Walker's counsel to set a date for the first of three conference calls conducted to "meet and confer" and attempt to reach agreement on the open matters in the October 30, 2006 Order involving the Webhouse back-up tapes. The three "meet and confer" conference calls were held on November 16, 2006, November 29, 2006 and December 6, 2006. I participated on each of the calls.

3. On November 9, 2006, in anticipation of the first conference call, I wrote to Walker's counsel to, among other things, advise that Plaintiffs would be forwarding proposed lists of email

1

accounts to be searched and lists of search terms. In that letter I also requested that Walker produce similar lists in advance of the meet and confer. To date, Plaintiffs have only received a written list of twenty-nine email accounts that Walker confirmed exist, without agreeing to search them on an e-mail by e-mail basis. To date, Plaintiffs have not received any proposed search terms from Walker. On the telephone conference call of November 29, 2006, Walker's counsel identified the following 10 persons whose e-mail accounts they proposed to search on an email by email basis: Suarez, Francis, Otto, Mylod, McGill, Mott, Dore, Walker, Braddock, and Breitenbach. On December 6, 2006, Walker's counsel identified the following additional 11 persons whose e-mail accounts they proposed to search on an email by email basis: Scheidemann, Voss, (Lynn) Brown, Burgess, Burnmaster, Castenada, Goldman, Greenspan, Hamilton, Herskovitz, and Ronan,

4. By letter dated November 14, 2006, a true copy of which is attached as Exhibit A, I forwarded to Walker's counsel a list of individuals whose e-mail accounts Plaintiffs proposed for the e-mail by e-mail search (in addition to the accounts of Walker and Braddock). This list is List #2 attached to the November 14, 2006 letter. As the list reflects, many of these names were taken from Walker's September 2006 Status Report to the Court. In conjunction with other counsel at Johnson & Perkinson and Scott + Scott, Plaintiffs' other lead counsel, I developed the remainder of the list from our review of organization charts dated within the class period, and also from documents produced during discovery in this case that we had earlier identified as important to the resolution of the issues in the complaint.

5. The November 14, 2006 letter also included (as List #1), proposed search terms that I and the other counsel at Johnson & Perkinson and Scott + Scott developed as important to issues in the complaint, based upon our review of discovery produced to date in the case. In

preparing the list of search terms, we broke them down into 4 categories: (i) "general" search terms; (ii) "Priceline-People", who appeared to have been significantly involved in Webhouse matters; (iii) "Third-Party people" that appeared to have been involved in Webhouse matters; and (iv) "Third-Party-Entity", entities that appeared to have been involved in Webhouse matters. Our goal in selecting the terms in this manner was to capture documents that were likely to be important to the resolution of issues in the complaint, while excluding, to the extent possible, the electronic identification of large numbers of documents that were extraneous to issues in the complaint. Thus, while the number of terms on List #1 is high, that was, in large part, as a result of our efforts to choose narrow terms in order to reduce the number of irrelevant documents that would be identified electronically and would need to be reviewed by Walker -- *i.e.* we did attempt to reduce Walker's search and review burden in selecting the terms.

6. At the November 16, 2006 meet and confer telephone call, Walker's counsel presented Walker's position that with the "reasonable" number of attorneys that would be dedicated to the search and review following the October 30, 2006 Order, only approximately 500,000 pages of electronic files could be reviewed by the March 1, 2007 cut-off period. Walker's counsel then invited Plaintiffs to identify and prioritize the e-mail accounts and search terms in light of this 500,000 page cap. Plaintiffs rejected the 500,000 page limit insisting that Walker dedicate the necessary resources to adequately review the tapes in accordance with the Court's Order. The parties agreed to disagree on this issue and continued their discussions to see if any narrowing of the dispute was possible.

7. During the November 16, 2006 conference call, Walker's counsel took the position that they were unable to gauge the acceptability of Plaintiffs' proposed search terms without testing them for the number of documents that would be electronically identified (or

"hit") by use of the terms. Thus, the parties agreed that Walker would first test the "third party entity" and "third party people" for occurrences, or "hits" when the terms were compared to the already up-loaded e-mail accounts from the restored back-up tapes. This subset of the tape data was comprised of twenty-nine email accounts from three of the four tape groups subject to the Order. The results of that test are contained in Exhibit B.

8. We then reviewed the "general" search term list (attached to my November 14, 2006 letter) to determine which terms would be subjected to a similar test for "hits" against the uploaded files on the back-up tapes. We and Walker's counsel discussed each term on Plaintiffs' "general" list, selecting those terms that appeared most likely to capture relevant documents without identifying large numbers of extraneous documents for review. These terms and the "hits" Walker identified in his test are attached as Exhibit C. During our "meet and confer" discussions, Walker's counsel confirmed that the number of "hits" for a term could be duplicative of hits for other terms if more than one tested term appeared on the same electronically searched document. During our discussions, Walker's counsel also explained that the back-up tapes included unsegregated electronic files of Walker's other businesses, including Walker-Digital's files.

9. I received "catalogues" or indices produced by Walker of the content of the 181 back-up tapes that could be restored. In an attempt to identify those which would likely include relevant documents and thus should be restored, I reviewed the catalogs, including those that were first produced by Walker in mid-October 2006. Based upon my review, I identified 3 unrestored back-up tapes that appeared to contain e-mails and other documents that may be important to this case and responsive to Plaintiffs' document requests. Those tapes are #17 from Group #2, and tapes #160 and #161 from the miscellaneous group listed on the catalogs. I

identified these tapes for Walker during the meet and confer sessions. While Walker's counsel did not deny that these three tapes appeared appropriate to be restored, they refused to restore any additional tapes at this time -- on the theory that they would not reach these tapes for review, given their proposed 500,000 page review cap.

Dated: Burlington, Vermont
December 15, 2006

_____
Eben F. Duval

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 15, 2006, a true copy of the foregoing was served on all counsel of record on the attached service list. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

　　　　　　　　　　　　　　　　　　　　_/s/ Erin Green Comite_

　　　　　　　　　　　　　　　　　　　　Erin Green Comite

## SERVICE LIST

Dennis J. Johnson, Esq.
Jacob B. Perkinson, Esq.
JOHNSON & PERKINSON
1690 Williston Road
South Burlington, VT 05403

David R. Scott
Beth A. Kaswan
Geoffrey M. Johnson
Erin Green Comite
Mark V. Jackowski
SCOTT & SCOTT,
108 Norwich Avenue
Colchester, CT 06415

Jules Brody, Esq.
Aaron Brody, Esq.
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

Andrew M. Schatz, Esq.
SCHATZ & NOBEL, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06106

Joseph L. Clasen, Esq.
William Kelleher, Esq.
ROBINSON & COLE
Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305

Evan R. Chesler, Esq.
Daniel Slifkin, Esq.
Robert K. Simonds, Esq.
CRAVATH, SWAINE & MOORE
825 Eight Avenue
New York, NY 10019

Jeanne E. Irving, Esq.
Shawna Ballard, Esq.
HENNIGAN BENNETT & DORMAN
865 South Figueroa Street,
Suite 2900
Los Angeles, CA 90017

Terence J. Gallagher, Esq.
Thomas D. Goldberg, Esq.
DAY BERRY & HOWARD
One Canterbury Green
Stamford, CT 06901