## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IN RE: PRICELINE.COM, INC.
SECURITIES LITIGATION

This document relates to:

    ALL ACTIONS

: MASTER FILE NO.
: 3:00-CV-01884 (AVC)
:
:
:
:
:
: January 17, 2007

**DEFENDANT JAY S. WALKER'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL DEFENDANT WALKER TO PRODUCE
RESPONSIVE DOCUMENTS ON THE RESTORED WEBHOUSE TAPES AND TO
RESTORE ADDITIONAL WEBHOUSE TAPES**

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Telephone: (203) 977-7300
Fax: (203) 977-7301
tgoldberg@daypitney.com – E-mail

- and -

J. Michael Hennigan (phv01117)
Bruce Bennett (phv01105)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01119)
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234
irvingj@hbdlawyers.com – E-mail

Attorneys for Defendant, Jay S. Walker

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**(Page)**

INTRODUCTION ....................................................................................................... 1

ARGUMENT.............................................................................................................. 5

I.      PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED............................. 5

      A.    Plaintiffs' Motion to Compel Walker to Review Email Accounts of 24 New Individuals Not on the Original List Should Be Denied.............................................................................................. 5

      B.    Plaintiffs' Motion to Compel Walker to Apply 113 Search Terms Should Be Denied.................................................................................. 7

      C.    Plaintiffs' Motion to Compel Restoration of and Production From Three Additional Back-Up Tapes Contravenes the October 30 Order and Should Be Denied....................................................... 12

            1.    The October 30 Order Directed Plaintiffs and Walker to Meet and Confer Regarding Restoration of the 17 Tapes That Were the Subject of the 17 Restored Tapes Motion. ............... 12

            2.    Plaintiffs Have Had All Available Data Regarding the Three Newly Requested Tapes Since April 2006............................. 13

            3.    Plaintiffs Have Failed to Carry Their Burden of Demonstrating That the Newly Requested Tapes Warrant Restoration, and They Do Not.......................................................... 14

      D.    Plaintiffs' Turnover Request Is an Untimely Motion to Reconsider That Has Been Denied by This Court Twice Before, and Warrants the Same Result Now.............................................. 17

II.    THE BACK-UP TAPES WERE MADE IN THE REGULAR COURSE OF BUSINESS PREDOMINANTLY BEFORE THIS ACTION WAS FILED.............................................................................................................. 19

CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

**(Page)**

**Authority**

*Quinby v. WestLB AG*,
  2006 U.S. Dist LEXIS 64531 (S.D.N.Y. September 5, 2006) ...............................................9, 20

**Rules**

Federal Rules of Civil Procedure,
  Rule 26(b)(2) ...........................................................................................................14, 15, 16, 17

Local Rules of United States District Court for District of Connecticut,
  Local Rule 7(c)(1) .................................................................................................................19

Defendant Jay S. Walker ("Walker") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Compel Defendant Walker to Produce Responsive Documents on the Restored Webhouse Tapes and to Restore Additional Webhouse Tapes (the "Motion").

## INTRODUCTION

Last summer, plaintiffs filed a Motion to Compel Defendant Walker to Produce Emails and Electronic Documents on the Seventeen Restored Priceline Webhouse Club Tapes ("17 Restored Tapes Motion"). As part of its October 30, 2006 Ruling and Order on numerous outstanding discovery disputes (the "October 30 Order"), the Court denied that motion in part and granted it in part.

When the October 30 Order issued, Walker's review of data from the 17 Tapes was well underway, with a team of 11 attorneys assigned to the review project. Even so, Walker's counsel anticipated it would take until the end of August, 2007 to complete the production.[1] However, the October 30 Order set a document production deadline of March 1, 2007, just four months away. Once the Court set that deadline for document production, Walker's counsel expanded the review team to 35 attorneys, primarily by hiring 19 temporary contract lawyers.[2] During December alone the team devoted over 4000 hours to the document review, at a cost of nearly $800,000. Through these considerable, and enormously expensive, efforts, Walker's counsel is currently on track to complete the production by March 1, 2007 and to comply fully with the October 30 Order.[3]

Although presented as a motion to compel compliance with the October 30 Order, plaintiffs' Motion in fact seeks once again to impose additional burdens on Walker, which if

---

[1] *See* Walker's Motion to Schedule Pretrial Conference, filed Oct. 23, 2006 [Docket No. 403] at 2.

[2] This was the maximum number of reviewers that we believed we could supervise and manage. Inevitably, there was some turnover and change in the staffing levels. Declaration of Shawna Ballard, filed concurrently herewith ("Ballard Decl.") ¶ 24.

[3] Walker intends to seek contribution of plaintiffs to the costs of the review and production.

granted would simply increase the scope and expense of production beyond that contemplated in the October 30 Order, and result in delay. The October 30 Order's ruling on the 17 Restored Tapes Motion addressed three issues and, as shown below, Walker has acted reasonably to comply with the Court's ruling on each of those issues.

**Email-by-Email Review List.** The October 30 Order addressed plaintiffs' motion to compel Walker to do an email-by-email review for 121 specific individuals. The Court denied that request. Instead, it ordered Walker to conduct an email-by-email review of the Walker and Braddock email accounts, and directed the parties to distill a "narrow list of key individuals" who warranted an email-by-email search from the remainder of the list of 121 individuals. (October 30 Order at 8.)

During the meet and confer process, plaintiffs identified 65 individuals from the list (including Walker and Braddock) whom they considered sufficiently "key" to warrant email-by-email review. Walker has agreed to perform an email-by-email review of any .pst (*i.e.*, email) files on the restored tapes for all of these 65 individuals, with the exception of Webhouse's former General Counsel, Mark McEnroe, most of whose communications are likely to be privileged. With the exception of those emails designated as potentially privileged based on search terms or attorney review, Walker has completed its full email-by-email review of the Walker and Braddock accounts, and an email-by-email review of the remainder of these accounts is underway. Ballard Decl. ¶ 29.[4]

But, in November 2006, for the first time plaintiffs also demanded that Walker undertake a full email-by-email review for **24 new individuals** who had never been on the list of 121 individuals that had been the subject of the 17 Restored Tapes Motions and the subject of the October 30 Order. Because that search was not within the contemplation of the October 30

---

[4]      Of the 64 such individuals remaining after McEnroe is taken out of the group, the restored tapes contain mailboxes for 34 of them.

Order and would be unduly burdensome, costly and time-consuming, Walker has declined to undertake that search.

**Search Term List.**    In the 17 Restored Tapes Motion, plaintiffs had requested that the Court compel a wholesale production of the remaining data on the 17 Tapes without the use of search terms.[5]    The Court rejected this position, and instead directed counsel to meet and confer in order to agree upon a "focused list of search terms" to identify potentially responsive documents from the data on the 17 Tapes. October 30 Order at 9.  Plaintiffs have proposed a list of **113 search terms** which, as Walker's counsel has explained, would result in an upload and review of documents that would be prohibitively expensive and time-consuming, and could not conceivably be accomplished by the March 1, 2007 deadline.  For comparison, in a related ruling on a motion to compel directed at the four other defendants in the case, including priceline.com, Inc. ("Priceline" and collectively, the "Priceline defendants"), the Court ruled that defendants acted in good faith in running 33 search terms, and allowed plaintiffs to add no more than 10 additional terms, for a total list of **43 search terms**. *Id.* at 4.  In the absence of reasonable guidance from plaintiffs, Walker's counsel has applied 47 search terms to the uploaded data that is not being searched email by email.  The ongoing search amply complies with the October 30 Order.

**Tape Restoration.**    The Court ruled that, to the extent restoration of the 17 Tapes remained an issue, the parties were to meet and confer on that issue.  By the time the October 30 Order issued, however, Walker's vendor had already restored all of the 17 Tapes that the vendor was able to restore.  Ballard Decl. ¶ 11.  Consequently, there were no restoration issues to address pursuant to the October 30 Order.  Instead, plaintiffs demanded that Walker restore three additional tapes that were not the subject of the 17 Restored Tapes Motion.  Because this request

---

[5]    The 17 Restored Tapes Motion was not the first time that plaintiffs had sought wholesale production without the use of search terms.  The Court had specifically denied this request in its earlier order of December 8, 2005.

goes far beyond the October 30 Order and because restoration and review of those tapes would be unduly expensive and burdensome, Walker declined that request.

Implicitly recognizing that Walker is fully complying with his obligations under the October 30 Order, plaintiffs' Motion attempts to shift the focus by resort to misstatements of fact and mischaracterizations of the meet and confer discussions between counsel. Those assertions are addressed in detail in the accompanying Ballard Declaration.[6]

Further, the Motion must be considered in the context of the entire document production. Plaintiffs have already received in production solely from the defendants **more than 3.37 million pages** of documents. Walker already has produced more than 536,000 pages of documents, including 358,000 pages of hard copy documents and an additional 178,000 pages of email and attached electronic documents. We expect that, by the March 1 deadline, we will have reviewed more than 1.5 million pages of documents, and will have produced more than 825,000 pages of electronic documents. At that point, plaintiffs would have **4.19 million pages** of documents just from the defendants.[7]  In addition, there have been substantial document

---

[6]     For example, plaintiffs misrepresent that Walker's counsel refused to review more than 500,000 pages of documents. Motion at 3. As addressed in the Ballard Declaration, ¶¶ 60-61, that is incorrect. Indeed, Walker's counsel has already reviewed more than one million pages to date, and review is continuing. Ballard Decl. ¶ 62.

Further, plaintiffs also attribute to Walker delays in this document review that were actually caused by plaintiffs having committed to select files that they would ask Walker to upload for review, and then never performing that selection. This point is addressed in detail in the Ballard Declaration, ¶¶ 70-73.

As another example, plaintiffs assert that, "[f]or over two years, Defendant Walker has led Plaintiffs on a merry chase shifting the burden to them to identify where, on Walker's 181 unrestored back-up tapes, he had deposited Webhouse's e-mail accounts and other responsive Webhouse documents." Motion at 9. To the contrary, plaintiff has had precisely the same information about the content of the tapes that Walker has had, *i.e.*, the catalogs. Walker had no more ability than plaintiffs to identify the .pst files (*i.e.*, email files) on the catalogs. There was nothing to stop plaintiffs from reviewing the catalogs for files containing the .pst suffix, just as Walker's counsel did. Ballard Decl. ¶ 80.

[7]     Needless to say, the review and production (and with respect to the Webhouse back-up tapes, the restoration) of this volume of documents is extremely costly. Plaintiffs' unfocused demand for wide-ranging document productions has resulted in the expenditure of many millions of dollars in attorneys' fees and vendor costs that otherwise could have been put to productive use toward settling this case, now in its seventh year.

productions in response to more than 75 subpoenas that plaintiffs have directed to third parties. Ballard Decl. ¶ 20. In short, plaintiffs suffer no lack of documents.

In sum, Walker and his counsel have complied with both the letter and the spirit of the October 30 Order, and there is no basis for any of the relief that plaintiffs seek in their new Motion to compel. The Motion should be denied in its entirety.

ARGUMENT

## I.     PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED.

### A.     Plaintiffs' Motion to Compel Walker to Review Email Accounts of 24 New Individuals Not on the Original List Should Be Denied.

On February 17, 2006, plaintiffs sent Walker's prior counsel a list of 121 individuals for whose mailboxes plaintiffs wanted Walker to conduct an email-by-email review. Plaintiffs resent that list to Walker's present counsel in May, 2006. This is the list that plaintiffs urged upon this Court in their 17 Restored Tapes Motion, and is the list that the Court directed the parties to winnow down in order to reach a "narrow list of key individuals" for whom an email-by-email review would be appropriate.[8]

Two weeks after entry of the October 30 Order, as part of the meet and confer process, plaintiffs presented Walker's counsel with a list of individuals for whom plaintiffs requested an email-by-email review. Far from the "narrow" list the Court specified, the new list had 89 names. Of those 89 names, only 65 were on the list of 121 individuals that had been the subject of the 17 Restored Tapes Motion. The 24 other names were entirely new; they had never been on the list of 121 for whom plaintiffs had asked Walker to conduct an email-by-email review.

With respect to the 65 individuals pared from the list of 121, Walker's counsel has conducted (or is in the process of conducting) an email-by-email review of any and all .pst (email) files that were located on the restored tapes for all of these individuals with the exception

---

[8]     Indeed, with only eight exceptions, this is the same list of individuals for whom plaintiffs requested that the other defendants in this case perform an email-by-email review.

of Mark McEnroe, Webhouse's former General Counsel.[9] Ballard Decl. ¶ 63. Thus, to the

extent that the Motion seeks to compel an email-by-email review of Walker, Braddock and the

other identified individuals on the list of 121, it should be denied because Walker is fully

performing that search.

To the extent that plaintiffs move to compel an email-by-email review of the mailboxes

of the 24 individuals not on the list of 121, the Motion should also be denied.  First, the October

30 Order could not have been clearer that the universe from which the parties were to identify a

"narrow list of key individuals" for email-by-email review was the list of 121.

> Walker shall conduct an email by email review of the Walker and Braddock email
> boxes.  With respect to **the remaining 121 email accounts** at issue, the parties
> shall meet and confer regarding which accounts are of key individuals to this
> litigation. . . . .  With respect to that narrow list of key individuals, defendant
> Walker shall conduct an email by email search of those accounts.

October 30 Order at 8.  Confirming that the Court intended these parties to cull the "narrow list

of key individuals" from the list of 121, the October 30 Order also made reference to the review

process conducted by the Priceline defendants, stating that the parties "shall consider the list of

key individuals searched with respect to the 'snapshot' and 'terminated employee tapes' [in the

possession of Priceline], to the extent applicable."  October 30 Order at 8.  The Priceline

defendants had done an email-by-email review for 80 individuals, all of whom were included in

plaintiffs' list of 121.  Accordingly, in directing plaintiffs and Walker to the list of individuals

reviewed email-by-email by the Priceline defendants, the Court was again referring to

individuals who are all included on the list of 121.[10]

---

[9]     Because such vast amounts of the General Counsel's email are likely to be privileged, an
email-by-email review of this mailbox would be unduly burdensome and unproductive.
Privilege review is extremely exacting, requiring much more time than review for
responsiveness.  This expenditure of time is unreasonable on a population of documents that is
not likely to result in a substantial production because so much of it will be privileged.
However, Walker's counsel is applying search terms to McEnroe's email.  That way, Walker's
counsel will focus this time-consuming review process on those of McEnroe's emails that are at
least likely to have some relationship to the issues in this case.

[10]    By substituting of the word "breadth" for "list" in the October 30 Order, plaintiffs'
Motion tries to twist the Court's order, claiming that the October 30 Order directed plaintiffs and
Walker to consider "the breadth of the review" conducted by Priceline, as opposed to the "list of

Second, the requested search would be unduly burdensome, particularly given the document production schedule. The mailboxes for the new names are huge. They total **7 gigabytes**, or approximately **700,000 pages**, a volume impossible to review email-by-email for production by March 1. Ballard Decl. ¶ 32. Nor have plaintiffs proffered any justification for tendering the new 24 names at this late date. In the Motion, plaintiffs nebulously claim that they reviewed hard copy documents produced to date and Webhouse organization charts to identify the appropriate Webhouse personnel who were most likely involved in the transactions and in matters alleged in the Complaint. Motion at 2. However, plaintiffs failed to attach any such documents or organization charts to their Motion, and have not explained why any important names could not have been identified earlier. Plaintiffs' claims ring especially hollow because (1) only four of these 24 new names appear on any management level organization chart that Walker's counsel has been able to locate, and (2) nearly half (11 of 24) of the individuals are secretaries or administrative assistants, and consequently highly unlikely to be involved in the matters alleged in the Complaint. Ballard Decl. ¶ 32.

There is no reason to deviate from the course that this Court set in the October 30 Order for the purpose of adding this huge burden on the document review. Accordingly, plaintiffs' Motion to compel further email-by-email review should be denied.

> **B.     Plaintiffs' Motion to Compel Walker to Apply 113 Search Terms Should Be Denied.**

Plaintiffs seek to compel Walker to apply 113 search terms, despite the fact that, in the October 30 Order, this Court limited to 43 the number of search terms that all four of Walker's co-defendants (including Priceline itself) were required to apply in their electronic document

---

key individuals searched" by the Priceline defendants. Based on that distortion of the order, plaintiffs argue that Walker should review email-by-email their new list of 89 individuals, 24 of whom were never included on either the list of 121 or the list of 80 individuals whose mail the Priceline defendants reviewed. Motion at 3-4. However, plaintiffs' distortion does not comport with the October 30 Order. The order directed plaintiffs and Walker to consider the "**list** of key individuals searched," not the breadth of the search. October 30 Order at 8.

review.[11]  Moreover, most of plaintiffs' search terms are extremely broad and not targeted to identify significant or relevant information.[12]

Although plaintiffs' search list has two and a half times more terms than the number of terms this Court found proper for the Priceline defendants, plaintiffs proclaim that their excessive list contains narrower terms. Again, not so. Plaintiffs' list contains such overbroad terms as valu*," operat*, account*, partner*, update* and analys*, where the asterisks represent wildcards. Far from being narrow, **each** of these terms was found **individually** in documents representing 28% to 37% of the pages contained in the emails (including any attachments to such emails) against which these tests were run. Ballard Decl. ¶ 39. In combination, the use of plaintiffs' whole search term list would produce so many hits that the documents responsive to these search terms could closely approximate the entire database, which is estimated to contain **6.3 million pages of documents**. The application of plaintiffs' excessive list of overbroad search terms would result in an unjustifiable burden, and one that would be impossible to accomplish in the time allotted.

In the meet and confers, Walker's counsel encouraged plaintiffs to prioritize their requested search terms without prejudice to their implacable commitment to filing a motion to compel. Walker's counsel explained that, if plaintiffs would present the list of their search terms

---

[11]    Plaintiffs' Motion claims that Walker never provided any search term list. Motion at 3. Not so. Although plaintiffs had represented throughout the first half of 2006 that they would provide Walker with a list of proposed search terms, they did not. Consequently, Walker's counsel chose terms it thought appropriate, largely from the list of 33 search terms the Priceline defendants had used, and used those terms throughout the fall. In the meet and confer sessions following the issuance of the October 30 Order, Walker's counsel told plaintiffs about the terms it was using. Plaintiffs objected to the use of these terms and proposed their own list. That list contained 199 terms, which plaintiffs later reduced to the 113 terms they propose in their current motion. Ballard Decl. ¶ 37-38.

[12]    Plaintiffs claim that, in the meet and confer sessions, Walker's counsel could only identify two terms that produced an undue number of hits. Not true. To the contrary, during the last meet and confer session, Walker's counsel explained that the vast majority of the search terms were overbroad and burdensome. Then, Walker's counsel specifically recited to plaintiffs the list of their terms that were not overbroad, because it was a shorter list than the list of overbroad terms. Ballard Decl. ¶ 41.

in order of plaintiffs' priority, Walker's counsel would run the search terms in that order and

review as much of the responsive data as could be reviewed and produced by the March 1

deadline. Although there was no downside to plaintiffs' doing this, they declined that

invitation.[13]  Ballard Decl. ¶ 42-43.

Plaintiffs' unwillingness to present a search term list of reasonable size, or even to

identify which terms on their long list were most important to them, left Walker's counsel with

no choice but to make the judgment calls on which search terms to use.  Walker's counsel has

applied 47 search terms (four more than the Priceline defendants) to the uploaded data that is not

being searched email-by-email.[14]  All of these terms were taken from plaintiffs' list of 113.[15]

The application of 47 search terms is more than enough.  For example, in the recent case

of *Quinby v. WestLB AG*, 2006 U.S. Dist LEXIS 64531, *10 (S.D.N.Y. September 5, 2006), the

Court limited the email review to the application of 3 to 15 search terms for each of 17

individual's email accounts.  There is no justification for expanding the search list beyond the 47

terms that Walker's counsel is using.

Further, when plaintiffs' Motion refers to the data to which they seek search terms

applied, it references the "remainder of the restored back-up tapes."  This imprecise phraseology

may be simply for ease of reference, because plaintiffs have long agreed with the other

--------------------------------------------------

[13]     Actually, at the end of the last meet and confer session, plaintiffs represented that they
would shorten their search term list to less than 113, and would present the shorter list for the
first time in their motion to compel.  However, plaintiffs did not do that either, and moved on all
113 search terms.  Ballard Decl. ¶ 42.

[14]     In light of the fact that the back-up tapes are not solely back-ups of Webhouse data, but
also include back-ups of other companies' data as well, if used alone, two of the search terms –
"Goldman" and "minutes" – would produce a plethora of hits having to do with other companies
not relevant to this litigation.  Consequently, these search terms were used in conjunction with
the terms "Webhouse" or "WHC."  The remaining 45 search terms were applied without any
additional connectors.  A list of the 47 search terms applied by Walker's counsel is attached to
the Ballard Decl. as Ex. 43.

[15]     Plaintiffs' brief argues that by listing the search terms according to people, entity and
general categories, they sought to reduce extraneous records for review by Walker.  Motion at 7.
That makes no sense, and plaintiffs offer no explanation for their curious assertion.

defendants in the case that only word processing files, spreadsheets, databases, presentations and pdf files should be uploaded for review. Declaration of William J. Kelleher, III, filed November 22, 2006 [Docket No. 411] ¶ 7. The same is true with respect to the tapes at issue here.

Walker's counsel have uploaded or are in the process of uploading for filtering, search and/or review more than **65.84 gigabytes** of electronic data, estimated to consist of **6.3 million pages**. Included in this data are all identified Word, Excel, PowerPoint, and pdf files, as well as .pst (email) files for 80 individuals.[16] Walker is applying the search terms to this uploaded data.[17] Additionally, Walker's counsel instructed its electronic vendor to forward to Walker's counsel for review the 105 gigabytes of .mdb (access database) files located on the restored tapes. There are thousands of these database files and each is getting reviewed for responsiveness.

But, for purposes of clarity, Walker is not literally searching the "remainder of the restored back-up tapes." The back-up tapes are of the entire computer system. They contain enormous quantities of data that are not responsive to plaintiffs' request, including applications files, operating software, printer and other peripheral files, not to mention the data of companies other than Webhouse. And the sheer size of the data on the restored tapes is overwhelming. The tapes restored to date contain **612 gigabytes of data**. Ballard Decl. ¶ 13. To provide a visual

---

[16]     Those 80 names are listed on Exhibit C to the Ballard Decl. and can be categorized as follows: (1) those names on plaintiffs' new list of 89 that were not on the list of 121 (i.e., the new 24 names), (2) those names on the list of 121, other than Tom Gerard, that were not on the list of 89 (i.e. 55 names), and (3) Mark McEnroe. (Walker's counsel is conducting an email-by-email review of for Tom(masio) Gerard because of the similarity between this name and another custodian on both the list of 121 and the list of 89.) Of this list of 80, the restored tapes contained populated mailboxes for 47 individuals. Ballard Decl. ¶ 48.

[17]     Walker's prior counsel, Paul Hastings, had organized the 181 back-up tapes into 16 groups based on their handwritten labels, and had restored a sample tape from each group. Based on these samples, the parties agreed that the tapes from Groups 4, 5, 6 and 15 tapes would be restored. These are the 17 Tapes that were the subject of the 17 Restored Tapes Motion and were the subject of the October 30 Order. Due to a ministerial mix-up in the Paul Hastings IT department last spring, the vendor also restored tapes in Groups 3 and 16, resulting in restoration of 10 more tapes. Last summer, on learning that these tapes had already been restored, plaintiffs demanded that Walker's counsel review and produce documents from these tapes as well. Walker's counsel acceded to this request and, has uploaded pertinent files from the 10 restored tapes in Groups 3 and 16, in addition to the 17 Tapes that were the subject of the October 30 Order. The data that Walker has uploaded is from all 27 of these restored tapes.

perspective on the volume of this data, Walker's electronic discovery vendor states that you the volume of data in a gigabyte is comparable to a pickup truck filled with books. So, 612 gigabytes would be the **comparable to a multi-level parking garage filled with pickup trucks, all filled with books**.

If all this data were uploaded and released it would **cost approximately $2,350,000** in vendor charges alone, before any attorney reviewed a single page.[18] Uploading this amount of data would be the height of foolishness, as only a fraction of the files on these tapes is likely to contain potentially responsive information, and Walker has already uploaded and is reviewing those potentially responsive files.

Moreover, even just the .pst files on these tapes total 219 gigabytes in compressed form. The upload and release of that much data could cost as much as $850,000 in vendor charges alone.[19] The review time would cost a multiple of that. Ballard Decl. ¶ 17. Consequently, the appropriate approach to the .psts on the restored tapes is to do as Walker's counsel has done and upload the mailboxes for any of the 145 individuals that either plaintiffs or Walker's counsel have ever included on a list of persons warranting email-by-email review, to the extent mailboxes for those individuals exist on the restored tapes.[20]

---

[18]    Just the 17 tapes that were the subject of the 17 Restored Tapes Motion contain over 482 gigabytes of data. Consequently, without selecting specific files for upload, if all this data were uploaded and released it would cost approximately $1,880,000 in vendor charges for those preliminary steps alone.

[19]    Each .pst file on the back-up tapes consists of a compressed collection of email. In order to be reviewed, the .pst file has to be expanded into the individual emails. Once it is expanded, it consists of more bytes than it did in its compressed state. It has been the experience of Walker's counsel with the data uploaded for this case that the expanded .psts are 1.5 times the size of those same .psts when compressed. The upload and release charges are applied to the expanded size of the .psts. Filtering the data after upload would reduce the amount of data to be released, but this reduction can be substantially offset by the expansion of the psts. Ballard Decl. ¶ 16.

[20]    By way of example, the *Quinby* court limited the email review to 17 individuals' email accounts. *Quinby*, 2006 U.S. Dist LEXIS 64531 at *10.

Accordingly, plaintiffs' Motion to compel should be denied to the extent it seeks to require Walker to perform a review applying all 113 search terms proffered by plaintiffs or to apply search terms to any data other than the uploaded files.

**C.     Plaintiffs' Motion to Compel Restoration of and Production From Three Additional Back-Up Tapes Contravenes the October 30 Order and Should Be Denied.**

**1.     The October 30 Order Directed Plaintiffs and Walker to Meet and Confer Regarding Restoration of the 17 Tapes That Were the Subject of the 17 Restored Tapes Motion.**

When plaintiffs filed their 17 Restored Tapes Motion last summer, they failed to identify which 17 tapes were the subject of the motion. After repeated inquiries from Walker's counsel, two weeks after the motion was filed, plaintiffs revealed that the tapes intended as the subject of the motion were from Groups 4, 5, 6 and 15. Soon thereafter, Walker's counsel learned that, due to a ministerial error, most tapes in Group 4 and 6 had not been restored, which Walker's counsel brought to the Court's attention in the opposition to the motion filed in July 2006. Thereafter, Walker rectified this error by directing his vendor to restore the Group 4 and 6 tapes that inadvertently had not been restored. This had been completed by the time the October 30 Order issued.

In ruling on the 17 Restored Tapes Motion, the October 30 Order addressed the unrestored tapes that had been the subject of that motion, and directed that, to the extent that restoration of these tapes remained an issue, plaintiffs and Walker meet and confer on that issue. However, before the October 30 Order issued, Walker had already caused his vendor to restore those Group 4 and 6 tapes. Consequently, restoration of the Group 4 and 6 taepes (or any other of the 17 Tapes) no longer remains an issue.

In plaintiffs' pending Motion, however, plaintiffs pretend that the Court's reference to restoration opened the door to wholly new requests for restoration of any of the 181 back-up

tapes of their choosing,[21] and now move the Court to compel restoration of yet three more tapes (TOGs 17, 160 and 161) on the eve of the document production deadline. That characterization is at loggerheads with the October 30 Order which, to the extent it addressed the back-up tapes, specifically ruled on plaintiffs' 17 Restored Tapes Motion. Indeed, the order's only reference to tape restoration is found in a section titled "Motion to Compel: Restored Priceline Webhouse Club Tapes," which section includes no fewer then five references to the "17 tapes" that were the subject of that motion. The October 30 Order was not an invitation to a free-for-all on restoration of others of the 181 tapes, including the three whose restoration plaintiffs now belatedly seek.

### 2. Plaintiffs Have Had All Available Data Regarding the Three Newly Requested Tapes Since April 2006.

In the hopes of camouflaging the complete lack of justification for plaintiffs' belated request for restoration of three additional tapes, plaintiffs' attempt to mislead the Court into thinking that this request was prompted by plaintiffs' receipt of a handful of tape catalogs in October 2006.[22] That is nonsense.

**First**, the catalogs provided in October 2006 have nothing to do with the three newly requested tapes. The catalogs provided in October were solely for the Group 6 tapes. Ballard

---

[21]     Plaintiffs contend that the October 30 Order "provided the parties with a clear roadmap for how to proceed with respect to the 181 Webhouse back-up tapes." Motion at 4.

[22]     Plaintiffs' Motion, p.9, provides the following paragraph of non sequiturs.

In mid-October 2006, Defendant Walker produced a final set of indices or "catalogues" for the contents of unrestored back-up tapes. Upon reviewing this last set of catalogues, Plaintiffs identified additional unrestored tapes containing e-mail accounts and other Webhouse records that appeared to respond to Plaintiffs' discovery requests. These e-mail accounts and records appeared on tapes #17 from Group # 2, and Tapes #160 and # 161 from the miscellaneous group listed in the catalogues.

Decl. ¶ 55, Ex. D.[23]  The three newly requested tapes are from Group 2 and a miscellaneous group.

**Second**, sent in April 2006, the catalogs for the three newly requested tapes have been in plaintiffs' possession for nine months.  Ballard Decl. ¶ 55.  Consequently, any information plaintiffs have about these three tapes they have had for thee-quarters of a year, long before they filed their 17 Restored Tapes Motion last summer.  Plaintiffs had "ample opportunity," F.R.C.P. Rule 26(b)(2)(C), to request restoration of these tapes then, and should not be allowed to impose this unnecessary burden on Walker now, when his counsel is already shouldering an overwhelming burden to complete the review of pertinent files from the already restored tapes with a March 1 deadline looming.

Plaintiffs' Motion provides no rational explanation for their eleventh-hour request for restoration of these three new tapes, and the Motion should be denied.

> 3.    **Plaintiffs Have Failed to Carry Their Burden of Demonstrating That the Newly Requested Tapes Warrant Restoration, and They Do Not.**

In directing the parties to meet and confer regarding any remaining restoration issues relating to the 17 Tapes, the October 30 Order ordered the parties to do so pursuant to the Court's December 8, 2005 order.  In an attempt to avoid what the Court was concerned could be "a **colossal waste of resources**," December 8 Order [Docket No. 245] at 6, the December 8, 2005 order held that "[b]efore the Court orders defendants to restore a back-up tape, there must be some indication that the files stored on the back-up tape may contain relevant information," *id.* at 6-7, and ruled that "[b]ecause of the **extraordinary expense of restoration and review**, this process should not be undertaken without justification." *Id.* at 7 (emphasis added). Plaintiffs have shown no such justification for restoring the three recently requested tapes, TOGs 17, 160 and 161.

---

[23]    Plaintiffs' motion describes the catalogs received in October as "'catalogues' for the contents of unrestored back-up tapes." Actually, that is not correct.  The catalogs were for restored tapes, all from Group 6.

Revised F.R.C.P. Rule 26(b)(2) specifically states that a party is not required to produce material that is not "reasonably accessible," including back-up tapes.[24] Before a court can order that a party produce such material, the requesting party is required to have carried the burden of proving to the Court that there is "good cause" for such production.[25] Consequently, in their moving papers, it was incumbent upon plaintiffs to carry their burden of showing good cause for restoration of and production from the three new tapes. Plaintiffs failed to carry that burden.

With a wave of the hand, plaintiffs' Motion baldly proclaims that the files on these tapes are important and relevant. Motion at 10. However, the Motion provides no factual support for that contention whatsoever. Despite having had the catalogs for these tapes for nine months, plaintiffs fail to provide this Court with any information from the catalogs to suggest that restoration of these tapes is warranted, particularly at this late date.

Indeed, the information from the tape catalogs demonstrates that restoration is these tapes cannot be justified.[26] In general, each back-up tape or set of back-up tapes is a snapshot of the

---

[24]    This Court has already determined that data "is not accessible from these back-up tapes" absent restoration. December 8, 2005 Order [Docket No. 245] at 4-5.

[25]    Rule 26(b)(2), with emphasis added, provides:

(B) **A party need not provide discovery of electronically stored information** from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery . . ., the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).

(C) The . . . extent of use of the discovery methods otherwise permitted under these rules . . . shall be limited by the court if it determines that: (i) the discovery sought is **unreasonably cumulative or duplicative**, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had **ample opportunity** by discovery in the action to obtain the information sought; or (iii) the **burden or expense of the proposed discovery outweighs its likely benefit**, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

[26]    Plaintiffs' Motion claims that, during the meet and confer, Walker did not deny that these unrestored tapes contain relevant and important electronic records. Actually, Walker's counsel

computer system, in part or whole, at a particular point in time. Consequently, there is enormous overlap between snapshots taken at different times, particularly those taken close in time. For example, the vast majority of the documents appearing on a back-up of the computer system one week will also appear on the back-up of the system for the following week. Ballard Decl. ¶ 56.

Walker's counsel has already restored and uploaded tapes that were created shortly before, after and in between the creation dates of the three newly requested tapes.[27] These three new tapes were created on August 12, 15 and 29, 2000, respectively. Walker's counsel has already restored and uploaded the pertinent files from tapes that were backed up on August 5, August 17 and September 7, 8, 15, 27 and 28. Ballard Decl. ¶ 57. Consequently, the tapes that have already been restored and are in the process of being reviewed no doubt contain the overwhelming majority of the material on the three newly requested tapes. Restoration of these tapes is unnecessary as they will be **duplicative** of tapes already in the review process.

Indeed, the catalogs of these tapes reveal that they do not contain any populated mailboxes for any individual who is on (1) plaintiffs' wish list of 89 or their list of 121, but (2) for whom Walker has not already uploaded that individual's mailbox(es) from one or more of the already restored tapes. Ballard Decl. ¶ 58. The requested discovery from the three newly requested tapes is "**unreasonably cumulative [and] duplicative**." Rule 26(b)(2)(C).

Further, the upload and release process is cumbersome, time-consuming and costly. It can take up to several weeks for Walker's vendor to upload and release a collection of new files.

---

had not then had the opportunity to engage in the time-consuming analysis of the catalogs for the three new tapes, and consequently did not comment on the content of these tapes one way or the other. Ballard Decl. ¶ 58, n.6.

However, plaintiffs' argument completely misconceives which party has the burden on this issue. It is plaintiffs who have the burden of establishing good cause for the restoration of the tapes. It is not Walker's burden to negate good cause for restoration of the tapes.

[27]     Even for tapes whose hand-written labels do not indicate the date the back-up was performed, in most instances the creation date can still be determined by looking at the tape catalog and determining the last date that a file on the tape was modified or otherwise acted upon. Ballard Decl. ¶ 81.

In these last weeks before the document production deadline, Walker's counsel's efforts –
already taxed to the breaking point – need to be focused on finalizing the review of the enormous
amounts of data that has already been uploaded and preparing for production of responsive, non-
privileged documents. There is no justification for hindering the accomplishment of that goal by
starting an upload of more than 7.4 gigabytes of additional data from the three new tapes
plaintiffs have so belatedly requested.[28] Since discovery is not to be allowed by the Court if "the
burden or expense of the proposed discovery outweighs its likely benefit," Rule 26(b)(2)(C), the
Motion should be denied.

> **D.    Plaintiffs' Turnover Request Is an Untimely Motion to Reconsider That Has
> Been Denied by This Court Twice Before, and Warrants the Same Result
> Now.**

Plaintiffs did not file a separate "motion" and "memorandum of law" when they brought
their pending Motion to compel. Instead they filed one document titled "motion" which is really
more of a brief. The beginning of the brief does not identify what relief plaintiffs seek. For a
concise statement of the relief sought, one would have to look to the Motion's Conclusion, but
even that is less than crystal clear. The last sentence of the Conclusion states:

> Defendant Walker should further be ordered to produce the results of these
> searches by March 1, 2007, as provided by the October 30, 2006 Order, on pain of
> being required to turn over the unreviewed tapes to Plaintiffs to conduct the
> search for the documents responsive to Plaintiffs' long overdue discovery
> requests.

Plaintiffs do not explain what they mean by "unreviewed tapes." However, conceivably, any of
the 181 back-up tapes from which plaintiffs did not upload data for review might be
characterized as an "unreviewed tape."

Plaintiffs also filed a proposed order, section (5) of which states:

> Absent good cause shown before March 1, 2007, **any back-up tape which has
> not been searched, and responsive non-privileged documents produced by**

---

[28]    The 7.4 gigabytes size includes only a half dozen file types found on Tapes 160 and 161,
and not the full extent of the data residing on those tapes. The full size of all three of the newly
requested tapes is likely considerably larger than 7.4 gigabytes. Ballard Declaration ¶ 58.

March 1, 2007, shall be turned over to Plaintiffs to permit Plaintiffs to conduct the search and to obtain documents responsive to their document requests.

Could plaintiffs really be asking this Court yet again for a wholesale turnover of the 181 back-up tapes? If so, plaintiffs did not make any argument in support of this relief in their pending Motion. And rightly so, since no justification for this relief exists, as this Court has already held on a number of occasions.

In September 2005, plaintiffs moved the Court to compel Walker to restore and produce to plaintiffs wholesale all of the so-called Webhouse back-up tapes. Plaintiffs' Motion to Compel Electronic Discovery and for Expedited Treatment of Plaintiffs' Motion to Compel, filed September 22, 2005 [Docket No. 212-1] at 2. The Court denied this relief, stating,

> Defendants shall retain possession of the original data through the restoration, data management, and document review stages. There is no reason to deviate from the well-established principle that the party producing material in response to discovery requests shall have the opportunity to review the material for responsiveness and privilege prior to producing the material to the requesting party.

December 8, 2005 Order [Docket No. 245] at 6.

Again, in the 17 Restored Tapes Motion, plaintiffs requested wholesale production from the 17 Tapes at issue there. Walker opposed on the ground, among others, that it was law of the case that Walker did not have to engage in wholesale production from the tapes,[29] and that the 17 Restored Tapes Motion was an untimely motion for reconsideration.[30] Not deterred by this Court's previous orders, plaintiffs request the same relief again, this time without providing any argument whatsoever why it should be granted.[31] This relief should be denied.

---

[29]    Defendant Jay S. Walker's Opposition to Plaintiffs' Motion to Compel Defendant Walker to Produce Emails and Electronic Documents on the Seventeen Restored Priceline Webhouse Club Tapes [Docket No. 392] at 2.

[30]    Defendant Jay S. Walker's Surreply Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendant Walker to Produce Emails and Electronic Documents on the Seventeen Restored Priceline Webhouse Club Tapes [Docket No. 392] at 4.

[31]    The Motion acknowledges that plaintiffs requested this relief "in their last motion to compel, Motion at 10, but omits to point out that the Court denied that request both in the "last motion" and in an earlier motion.

Once again, plaintiffs have failed to file their Motion seeking reconsideration of this Court's earlier rulings within the ten day deadline set out in Local Rule 7(c)(1).[32]  In addition to the request being untimely, plaintiffs have not identified any matter or controlling decisions that the Court overlooked in making its original decisions either on December 8, 2005 or on October 30, 2006.  For these reasons and all the reasons on which the Court based its earlier decisions on this point, the Motion should be denied.

## II.  THE BACK-UP TAPES WERE MADE IN THE REGULAR COURSE OF BUSINESS PREDOMINANTLY BEFORE THIS ACTION WAS FILED.

While not particularly germane to this Motion, Walker cannot leave unaddressed plaintiffs' repeated misrepresentations to this Court that Walker personally made the back-up tapes, and made them after the case was filed.  Walker did not make **any** of the back-up tapes, nor move **any** documents to them.  Declaration of Jay S. Walker filed concurrently herewith, ¶ 2.  And plaintiffs present no evidence to the contrary.

Plaintiffs compound their misrepresentations to this Court by asserting that Walker's fictitious creation of **all** 181 back-up tapes occurred during the pendency of this case.[33]  Not only did Walker **never** move **any** files to the back-up tapes, the overwhelming majority of the routine back-up tapes pre-date the initiation of this action.  Ballard Decl. ¶ 80.

Indeed, **for nearly two years now**, plaintiffs have had the evidence demonstrating the falsity of their representations.  On April 18, 2005, Walker provided plaintiffs copies of the

---

[32]    Local Rule 7(c)(1) provides:

Motions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order.

[33]    Plaintiffs' fabrications include: "Walker **himself** . . . mov[ed] electronic files to back-up tapes . . . **all** after this case was filed," Motion at 8-9 (emphasis added); and "Walker . . . **personally** . . . mov[ed] them to back-up tapes . . . after this case was filed . . . ," Motion at 10 (underscore in original; bold added).

handwritten labels on the 181 tapes; 146 of them are dated.  **One hundred percent of those handwritten back-up dates precede the filing of this case.**[34]  Indeed, of the 146 dates, all but five are in 1999, long before the October 4, 2000 filing of this case.  Even for the tapes whose hand-labeling does not include a creation date, a review of the catalogs (which have been in plaintiff's hands for nine months) reveals that, for many of the tapes, the latest files are dated in August and September, 2000, *i.e.*, before this case was filed.  Ballard Decl. ¶ 80 Ex. F.  Because the business practice (widespread in corporate America) of backing-up the computer system continued before and after this case was filed, naturally a small fraction of the tapes were created after the suit was filed, which is entirely consistent with applicable law.  *Quinby v. WestLB AG*, 2006 U.S. Dist. LEXIS 64531 at *26-27 (S.D.N.Y. September 5, 2006) (referring to back-up tapes, "in complying with a duty to preserve evidence, a party will be free to preserve electronic evidence in any format it chooses, including inaccessible formats").

---

[34]     A review of the catalog contents for a catalog with a handwritten date confirms that the hand-written date is the date of the latest file date for the files contained on the tape.  For example, the latest file date for TOG 154 is September 16, 2000, which is also the date on the hand-written label affixed to the physical tape.  Ballard Decl. ¶ 80.

## CONCLUSION

The Motion should be denied in its entirety. Specifically, the Court should (1) deny as moot plaintiffs' motion to compel Walker to conduct an email by email review of the mailboxes of Walker, Braddock and any other individual who was both identified on plaintiffs' original list of 121 and was included on plaintiffs' current list of 89 (with the exception of McEnroe), because Walker has agreed to and is performing that review; (2) deny plaintiffs' motion to compel Walker to perform an email by email review of mailboxes of persons not included on the list of 121 email accounts; (3) find that Walker's application of 47 search terms to the other uploaded documents is sufficient, and deny plaintiffs' motion to compel application of 113 search terms which would be unduly burdensome; (4) deny plaintiffs' motion to compel restoration of three additional tapes that were not part of the 17 Tapes. Further, the Court should deny once again plaintiffs' request for turnover of any of the tapes.

DATED: January 17, 2007                     Defendant, Jay S. Walker


By: _____/s/ Jeanne E. Irving_____

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Phone: (203) 977-7300
Fax:   (203) 977-7301
tdgoldberg@daypitney.com – E-mail

- and -

J. Michael Hennigan (phv01117)
Bruce Bennett (phv01105)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01119)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Fax: (213) 694-1234
irvingj@hbdlawyers.com – E-mail

His Attorneys

21