IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION<br>_____<br><br>This document relates to:<br><br>ALL ACTIONS | : MASTER FILE NO.<br>: 3:00-CV-01884 (AVC)<br>:<br>:<br>:<br>:<br>: February 28, 2007 |

# DEFENDANT JAY S. WALKER'S SUR-REPLY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT WALKER TO PRODUCE RESPONSIVE DOCUMENTS ON THE RESTORED WEBHOUSE TAPES AND TO <u>RESTORE ADDITIONAL WEBHOUSE TAPES</u>

Plaintiffs' reply brief substantially alters the relief sought in their outstanding Motion to Compel Defendant Walker To Produce Responsive Documents On the Restored WebHouse Tapes and To Restore Additional WebHouse Tapes. This Sur-reply is filed to address new issues raised by plaintiffs' revised request for relief and to address what appears to be an inadvertent, but substantial ambiguity with respect plaintiffs' revised request.[1]

Significantly, while the plaintiffs drop some of their excessive demands, they retain others. The end result is that the scope of review sought in plaintiffs' Reply is still unduly

---

[1] In their Reply, plaintiffs suggest that Mr. Walker's counsel has changed its position with respect to the scope of the electronic document review. This is not true. Throughout the meet and confer process, Mr. Walker's counsel made it clear that they would review as many documents as reasonably feasible within the timeframe provided by the Court. *See, e.g.,* Declaration of Shawna Ballard dated January 17, 2007 filed in support of memorandum of law in opposition to plaintiffs' Motion, Dkt 424 ("Ballard January Decl."), ¶¶ 40, 60-62. Mr. Walker's counsel never imposed a 500,000 page cap on the review but instead noted in the meet and confer sessions, which concluded shortly after the temporary attorneys had been retained on the project and before the review team began the analysis of longer excel and access database documents, that we could assure the plaintiffs that we could review at least 500,000 pages within the timeframe provided but we were committed to reviewing more if we were able to do so. Id.

1

burdensome and is not able to be accomplished within the time-frame provided.[2]

## I. PLAINTIFFS' REQUEST TO SELECT ADDITIONAL SEARCH TERMS SHOULD BE DENIED.

After refusing for months to narrow their list of 113 search terms, in their Reply – filed less than 30 days before the Court ordered production deadline – plaintiffs ask that the Court grant them an open ended opportunity to force Mr. Walker to employ 10 unidentified additional search terms. (Plaintiffs Reply Dkt. 429 at 3.) Initial testing that was provided to plaintiffs showed that 6 of the 113 search terms that plaintiffs might choose were **each** found **individually** in documents representing **28%** to **37%** of the pages contained in the documents against which these tests were conducted.[3] Thus, the burden of permitting plaintiffs to belatedly choose additional search terms to apply to millions of pages of data would be excessive.

As a result of plaintiffs' refusal to narrow their unduly broad list of 113 search terms,[4] Mr. Walker's counsel was forced to narrow the list themselves. In doing so, Mr. Walker's counsel selected 47 terms from plaintiffs' list (i.e., four more than the Court ordered priceline to employ) that were reasonably likely to capture responsive documents. While a few of these 47 terms selected by Mr. Walker were focused terms that captured a small number of documents, testing showed that 11 of the terms were **each** found **individually** in documents representing **5** to **17** percent of the total data population subject to the testing.

When applied to millions of pages of uploaded data, the 47 search terms produced a review population that was voluminous. In fact, for file types other than access database files, to date Mr. Walker's review team has reviewed documents from the back-up tapes estimated to

---

[2] In their Reply, plaintiffs effectively acknowledge that the scope of the email-by-email review being conducted by Mr. Walker is sufficient since plaintiffs no longer seek Mr. Walker to expand the scope of that review.

[3] Ballard January Decl. at ¶ 39.

[4] During the meet and confer process, Mr. Walker's counsel urged plaintiffs to narrow or prioritize their broad list of 113 search terms. Plaintiffs refused to do either. Ballard January Decl., ¶ 40.

contain in excess of 2.3 million pages and Mr. Walker's review team has reviewed access database files containing in excess of an estimated 20 million pages of tables.[5] The magnitude of the overall review effort demonstrates that Mr. Walker's methodology, including the employment of the 47 search terms, has been more than reasonable under the circumstances. Nothing further should be required of Mr. Walker particularly considering that plaintiffs refused to prioritize or narrow their broad list of 113 search terms at a point in time in which Mr. Walker's counsel could have tailored the review to accommodate those priorities.

## II.     PLAINTIFFS DO NOT APPEAR TO SEEK TO ENLARGE THE FILES AGAINST WHICH THE SEARCH TERMS ARE RUN AND THERE IS NO BASIS FOR DOING SO.

In their January 31 Reply, plaintiffs raise no objection to Mr. Walker's selection of files[6] for upload and filtering except to argue that search terms should be applied to "all restored tapes." Plaintiffs do not specify what they mean by "all restored tapes." It is quite possible that the use of that phrase is an unintentional lack of precision on plaintiffs' part, because, taken literally, this phrase refers to an absurdly huge amount of data, which overwhelmingly consists of data that no one – including the plaintiffs – has suggested is likely to be relevant to this case.

---

[5]     Last week, an outside vendor informed Mr. Walker's counsel that it estimated that just the responsive access database files contain 20 million pages of tables.

[6]     Because plaintiffs refused to abide by their prior commitments to identify particular files from the catalogs of the tapes for upload and filtering, Mr. Walker's counsel was left with the task of prioritizing the data uploaded for filtering and running search terms. As a result, Mr. Walker's counsel has caused in excess of 70 gigabytes of expanded data (estimated to exceed 6.3 million pages) to be uploaded, filtered and to have the search terms and date filters applied to it. Specifically, Mr. Walker's counsel has caused to be uploaded the following types of data from the restored tapes in Groups 3, 4, 5, 6, 15 and 16 for purposes of running search terms and date filters against such data: all identified (1) .doc (Word) files, (2) .xls (Excel) files, (3) .pdf (Adobe Acrobat) files, and (4) .ppt (PowerPoint presentation) files; and (5) .pst (i.e., email) files for 80 custodians. Further, Mr. Walker's counsel has also reviewed all .mdb (access database) files from the tapes in Groups 3, 4, 5, 6, 15 and 16 without regard to whether they contain any of the 47 search terms. This involved the review of over 100 gigabytes of access database files.

This is so for at least two reasons:

**(1)    Sample Tapes**

"All restored tapes" include those initially restored sample tapes that are not part of Groups 3, 4, 5, 6, 15 and 16, i.e, the sample tapes from the groups that no party has suggested are worthy of restoration. These sample tapes have not been the focus of any meet and confer discussions and plaintiffs provide no explanation as to why files from such sample tapes would merit upload for filtering. They do not.

**(2)    Irrelevant File Types**

In Mr. Walker's opposition to the December 15 Motion, Mr. Walker described in detail that only certain file types from the Groups 3, 4, 5, 6, 15 and 16 restored tapes had been uploaded for filtering for dates and search terms, and possible review. These file types included those most likely to contain relevant data (e.g., spreadsheet, Word documents, and powerpoint presentations),[7] and were consistent with the file types that plaintiffs had agreed with the Priceline defendants would constitute the universe of data be filtered for review from the Priceline "snapshot."[8] These file types also include pst email files for any custodian that plaintiffs have identified as potentially containing responsive information. Plaintiffs' January 31 Reply voiced no objection to Mr. Walker's selection of these specified files for upload and filtering and, accordingly, presented no argument that would support expanding the review to any other files.

Nevertheless, plaintiffs' revised request for relief fails to delineate clearly that the search terms should be applied to the universe of uploaded data described in Mr. Walker's Opposition papers. We presume this ambiguity is inadvertent considering that plaintiffs did not object to or

---

[7]    Further, as for the more than 100 gigabytes of access database files on the restored tapes in these Groups 3, 4, 5, 6 15 and 16, because it would have costs hundreds of thousands of dollars in projected vendor costs just to upload, filter and release this data, Mr. Walker's review team reviewed over 2,500 access databases located on these restored tapes irrespective of whether such files contained any of the 47 search terms.

[8]    Ballard January Decl. ¶¶ 47-50, 52.

4

challenge the uploaded data population in their January 31 Reply. The search terms are being run against the uploaded data from the restored tapes, not against the totality of the data on the restored tapes, which is both vast and vastly irrelevant.

### III. PLAINTIFFS' REVISED REQUEST TO RESTORE TWO TAPES SHOULD BE DENIED.

In their Reply, plaintiffs appear to request that the Court order the restoration of two additional back-up tapes (tapes 17 and 161) instead of the three tapes that were the subject of their initial Motion.[9] However, plaintiffs provide no evidence in their Reply contradicting Mr. Walker's evidence that the data on tapes 17 and 161 is likely to be largely duplicative of the data on already restored tapes, making the time and expense for the restoration, upload, filtering, release, review and production of data from these tapes unnecessarily burdensome in light of the circumstances.

---

[9] Plaintiffs have apparently withdrawn their request for the restoration of tape 160 since it is not mentioned in their January 31 Reply.

**IV.   CONCLUSION.**

Plaintiffs' motion, as revised in their Reply, imposes an undue production burden upon Mr. Walker.  It is now one day before the document production deadline.  Mr. Walker has complied with this Court's October 30, 2005 Order.  Plaintiffs' requested relief should, therefore, be denied in total.

DATED:  February 28, 2007

By: /s/      Shawna L. Ballard
         Shawna L. Ballard (phv01119)

Thomas D. Goldberg (ct04386)
Terence J. Gallagher (ct22415)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Phone:  (203) 977-7300
Fax:     (203) 977-7301
tgoldberg@daypitney.com – Email

- and -

J. Michael Hennigan (phv01117)
Bruce Bennett (phv01115)
Jeanne E. Irving (phv01118)
Shawna Ballard (phv01119)
HENNIGAN, BENNETT & DORMAN LLP
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Fax:  (213) 694-1234
irvingj@hbdlawyers.com – Email

His Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 28, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                      /s/ Shawna L. Ballard
                                                         Shawna L. Ballard