UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| _____ | : | MASTER FILE NO. |
| | : | 3:00CV01884(AVC) |
| This document relates to: | : | |
| | : | |
| ALL ACTIONS | : | |
| | : | |
| | : | |
| | : | |

PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR LEAVE TO
SERVE AND FILE A SECOND AMENDED COMPLAINT

**SCOTT + SCOTT, LLP**
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

**SCOTT + SCOTT, LLP**
Beth A. Kaswan
19th Floor, Suite 1915
75 Rockefeller Plaza
New York, NY 10019
Tel: (212) 710-1040
Fax: (212) 710-1041

**SCOTT + SCOTT, LLP**
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Tel: (440) 247-8200
Fax: (440) 247-8275

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Eben Duval
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060

**Co-Lead Counsel**

## **INTRODUCTION**

Plaintiffs respectfully move under Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend the First Amended Consolidated Class Action Complaint ("the Complaint" or "original amended complaint") to add allegations describing, with particularity, the facts that give rise to a strong inference of scienter on the part of Priceline's auditors, Deloitte & Touche ("Deloitte"), in issuing a clean audit opinion on Priceline's 1999 financial statements which wrongfully recognized revenue from the issuance of warrants to purchase 75% of the stock of Webhouse Club, Inc. ("Webhouse").

The policy underlying Rule 15(a) is to freely grant leave when justice so requires. Moreover, in this case, the factors that courts typically consider when ruling on a motion to amend weigh heavily in favor of allowing the amendment. For instance, Deloitte cannot claim any undue prejudice because they have been on notice of the allegations the Plaintiffs assert in the proposed Second Consolidated Amended Complaint (the "Amended Complaint") throughout the entire pendency of this case. Moreover, Deloitte purposely withheld documents that Plaintiffs needed to plead Deloitte's scienter with specificity – forcing Plaintiffs to file three separate motions to compel and engage in negotiations and litigation spanning two and one-half years to get the relevant documents enabling Plaintiffs to make sufficient allegations to withstand a motion to dismiss. These documents show that Deloitte auditors were told by Deloitte National Office experts that Priceline's accounting treatment for the Webhouse warrants violated GAAP, and that, in violation of GAAS, the auditors developed false audit evidence to justify their wrongful audit opinion. Nor has there been any undue delay. Deloitte is the party that has purposely withheld relevant documents and information from Plaintiffs, and, therefore, it should not be allowed to reap any reward from its delays in producing its files. Finally, the amendment

1

has not been proffered in bad faith, and it is not futile. This much is clear from the Amended Complaint itself, which adds several highly particularized allegations bearing directly on the state of mind of the Deloitte auditors. Accordingly, this Court should grant Plaintiffs' motion seeking leave to amend their complaint.

## BACKGROUND

The original complaint in this action was filed on October 2, 2000. Two months after filing the complaint, Plaintiffs moved under the Private Securities Litigation Reform Act ("PSLRA") on December 1, 2000 to appoint Lead Plaintiffs in the case. The Court ruled on Plaintiffs' motion on September 12, 2001. The Court appointed Lead Plaintiffs and ordered them to file a Consolidated Amended Complaint within forty-five days.[1]

### A.    Plaintiffs File Their Consolidated Amended Complaint.

The Consolidated Amended Complaint in this action was filed on October 29, 2001. That complaint named Priceline.com, Inc. ("Priceline"), Jay Walker, Richard Braddock, Daniel Schulman, N.J. Nichols, and Deloitte & Touche ("Deloitte") as Defendants. Declaration of Jacob B. Perkinson at ¶ 5 ("Perkinson Decl."). It alleged that Defendants had violated the

---

[1] Judge Squatrito previously held that, for statute of limitations purposes, the filing of the Consolidated Amended Complaint related back to December 1, 2000 – the date the plaintiffs moved for the appointment of lead plaintiffs in the case. *See* Docket No. 101 (Oct. 7, 2004 Order at 18-19) ("The Court finds that the Consolidated Amended Complaint was filed, for the purpose of applying the applicable limitations period, on December 1, 2000. Both groups of plaintiffs seeking to be appointed lead plaintiffs sought permission to file a consolidated amended complaint. . . . Thus, all parties to the action prior to the filing of the consolidated amended complaint were waiting for the court to grant plaintiffs' request to file a consolidated amended complaint as of December 1, 2000 before addressing or adjusting the pleadings. The fact that the court did not decide this motion until September 12, 2001 and allowed plaintiffs an additional forty-five days to file the consolidated amended complaint should not prejudice plaintiffs for waiting to incorporate all amendments to the complaints rather than filing amended complaints in several actions.").

federal securities laws by making false statements about Priceline's financial results and business model.

The Complaint alleged that Deloitte's audit opinion included within Priceline's 1999 Form 10-K constituted a false statement, because it falsely stated that Priceline's 1999 annual financial statements were fairly presented in accordance with GAAP, and that Deloitte had conducted its audit in accordance with GAAS.  Original Complaint ¶¶ 70, 89-96.  Among other things, this complaint alleged that Defendants violated FASB Statement of Concepts #5, by recognizing $189 million in revenue upon receiving the Webhouse warrants.  *Id.* at 80.

**B.      The Parties Brief and the Court Rules on Defendants' Motion to Dismiss.**

Four months after filing the Consolidated Complaint, Defendants Priceline, Schulman, Braddock, Nichols and Deloitte filed their motions to dismiss.  The parties spent the remainder of 2002 and the first part of 2003 briefing those motions.  Judge Dominic J. Squatrito ruled on Defendants' Motion to Dismiss on October 7, 2004.  In its Order, the Court sustained the vast majority of Plaintiffs' case to the extent that it targeted Defendants Priceline, Walker, Braddock, Schulman and Nichols.  With respect to Deloitte, the Court dismissed Plaintiffs' claims, because plaintiffs were found to have failed to allege that Deloitte "acted with scienter."  Docket No. 101 at 54.

Specifically, with respect to Deloitte, the Court held:

Deloitte's motion to dismiss (dkt. # 67) is GRANTED.  The portions of the Consolidated Amended Complaint that are dismissed pursuant to this memorandum of decision are DISMISSED without prejudice to plaintiffs re-pleading these allegations upon curing the deficiencies set forth herein.

Docket No. 101 at 2.

### C.     The Court Enters a Scheduling Order.

Following the Court's ruling on the Motions to Dismiss, the parties held their Rule 26(f)

conference.  One of the issues discussed was the filing of an amended complaint.  The parties'

respective positions on this issue are set forth in the joint Rule 26(f) report.  Plaintiffs took the

position that:

> the Court's Order was designed to permit Plaintiffs to amend their Complaint if
> they are able to satisfy Rule 9(b) as to the dismissed statements and if they
> discover evidence of [Deloitte's] recklessness in issuing its unqualified opinion on
> priceline's financial statements for year's end 1999 and in conducting its reviews
> of priceline's interim financial statements published during, or pertaining to, the
> class period…Further, Defendants would not be prejudiced by such an
> amendment since they have been given notice of the allegations Plaintiffs wish to
> pursue.  Accordingly, Plaintiffs request until April 30, 2005 to file motions to join
> additional parties and to file a Second Amended Complaint.

Docket No. 105 at 11 - 12.

> Defendants took the position that:

> Defendants do not believe that the Court intended to give Plaintiffs another six or
> seven months to amend their complaint as to the deficiencies cited in the Court's
> decision, and there is no reason for Plaintiffs to need that much additional time to
> replead…Any amendment to cure the deficiencies noted in the Court's
> memorandum of decision should be made without the benefit of discovery
> (indeed, the Court's Memorandum of Decision maintains the stay of discovery in
> these proceedings until further order from the Court).  Accordingly, Defendants
> request that Plaintiffs be allowed until November 15, 2004 (the date which
> Plaintiffs proposed, and Defendants agreed to, for the commencement of
> discovery) to join additional parties and to file a Consolidated Second Amended
> Complaint to attempt to cure the deficiencies noted in the Court's opinion, and
> that defendant be permitted until January 17, 2005 to move against or answer that
> complaint.

Docket No. 105 at 13.

The Court ruled on the Rule 26(f) report on November 2, 2004**.**  In its Order, the Court

held:

> Although the court granted leave for plaintiffs to re-plead certain allegations that
> were dismissed without prejudice, on the condition that plaintiffs attempt to

correct the deficiencies prompting dismissal of these allegations, the court did not mandate any amendments, **nor did the court impose time restrictions on amendments**. As such, the pleading stage of this lawsuit will progress as contemplated by the Federal Rules; should plaintiffs wish to amend the Consolidated Amended Complaint, they may seek permission to do so under Rule 15 of the Federal Rules of Civil Procedure.

Docket No. 107 at 1 (emphasis added). Importantly, in its Order, the Court also lifted the PSLRA discovery stay, which allowed Plaintiffs to start taking formal discovery in this case. *Id.*

### D. After Filing Three Motions To Compel, Plaintiffs Obtain Documents Showing that Deloitte was Complicit in the Defendants' Fraudulent Scheme.

Once the discovery stay was lifted, Plaintiffs began what would prove to be a long, difficult discovery process. With respect to Priceline, Plaintiffs were forced to file: (1) two motions to compel before Priceline produced paper documents; (2) three motions to compel before Priceline produced electronic documents; (3) three motions to compel before Priceline released documents improperly located on the privilege log; and (4) two motions to compel to get Priceline to respond to interrogatories. Plaintiffs prevailed on virtually every one of these motions and, as a result, Priceline was forced to turn over the most relevant and damaging documents in the case against it. Unfortunately, these productions did not occur until late 2006 and early 2007.

### i. Plaintiffs' File Their First Motion to Compel Against Deloitte.

Plaintiffs were also forced to engage in extensive motion practice in order to obtain relevant documents from Deloitte. Plaintiffs first served a subpoena on Deloitte Touche Tohmatsu in Stamford Connecticut on November 22, 2004. Perkinson Decl. at ¶ 14. On December 3, 2004, Deloitte's counsel wrote to Plaintiffs to inform them that the November 22, 2004, subpoena was not valid, as Deloitte Touche Tohmatsu is structured as a Swiss Verein entity that does not conduct business in the U.S., and that they would not accept service of the

subpoena, but would accept service of a new subpoena at Deloitte & Touche's offices in New York City.  Perkinson Decl. at ¶ 15.  On December 7, 2004, Deloitte's International Claims Counsel wrote to Plaintiffs also recounting the jurisdictional and entity issues previously raised. Perkinson Decl. at ¶ 16.  Also on December 7, 2004 Deloitte's counsel wrote to Plaintiffs to present objections to the forthcoming revised subpoena.  *Id.*

On December 14, 2004 Plaintiffs called Deloitte to conduct a meet and confer with Deloitte on the subpoena.  Perkinson Decl. at ¶ 17.  On December 22, 2004 Deloitte and Touche formally objected to Plaintiffs' revised subpoena for documents.  *Id.*  The parties then participated in three meet and confers from February 2005 to March 2005 in an attempt to resolve their differences.  Perkinson Decl. at ¶¶ 18-22.  The parties were not able to resolve these differences, and, as a result, Plaintiffs were forced to file a motion to compel on March 21, 2005. Perkinson Decl. at ¶ 23.  The parties then spent the next several months briefing that motion to compel.  The court ruled on that motion on June 14, 2005, when Judge Squatrito granted in part and denied in part Plaintiffs' motion to compel Deloitte to produce discovery.  The order sustained the scope of the document requests and required Deloitte to respond, but limited the relevant time period to March 1, 1999 through April 1, 2001.  Plaintiffs then contacted Deloitte to arrange for a review of the documents the Court had ordered produced.  Perkinson Decl. at ¶ 27.

On July 11, 2005 Plaintiffs wrote to Deloitte to request confirmation that Deloitte planned to comply with the Order compelling Deloitte to produce documents.  Perkinson Decl. at ¶ 28.  On July 12, 2005 Deloitte confirmed that they would provide access to responsive documents on July 18, 2005.  Perkinson Decl. at ¶ 29.  However, on July 18, 2005 documents produced by Deloitte, consisting of just six bankers' boxes, were reviewed by Plaintiffs' counsel.

Perkinson Decl. at ¶ 30.  At the time of the July 18, 2005 review, Plaintiffs' counsel inquired of Deloitte's counsel whether there were additional documents.  Perkinson Decl. at ¶ 31.  Deloitte's counsel confirmed that there were, but that they were limited and consisted mostly of "tax stuff" which Deloitte's counsel suggested we would not have an interest in reviewing.  *Id.*  Plaintiffs' counsel stated clearly that Plaintiffs did, in fact, wish to review all responsive documents, including documents related to tax issues.  *Id.*  On July 23, 2005, as part of their rolling production, six boxes of documents were produced, bates ranges D&T 0000151 – D&T 0002919.  Perkinson Decl. at ¶ 32.  Then, on August 5, 2005, as part of their rolling production, Deloitte produced six additional boxes of documents, bates ranges D&T 0002920 – D&T 0016019.  Perkinson Decl. at ¶ 33.

### ii.    Plaintiffs File Their Second Motion to Compel Against Deloitte.

Plaintiffs again contacted Deloitte to discuss document production on August 18, 2005, September 9 and 12, 2005.  Perkinson Decl. at ¶¶ 34, 36.  During these conversations, Plaintiffs learned that there were additional relevant Deloitte documents that had not been previously produced.  Perkinson Decl. at ¶ 36.  Specifically, Deloitte had withheld from its production several documents that the Priceline Defendants had designated as "Highly Confidential Discovery Material" during a separate review of the Deloitte production.  Perkinson Decl. at ¶ 35.  Plaintiffs filed their second motion to compel discovery production from Deloitte with respect to these documents on September 15, 2005.  Perkinson Decl. at ¶ 37.  After filing this motion, Deloitte agreed to produce the documents that it previously withheld.  Perkinson Decl. at ¶ 40.  On October 11, 2005 Plaintiffs moved to withdraw their motion to compel, which was denied as moot by Judge Squatrito on October 13, 2006.

### iii.     Plaintiffs File a Third Motion to Compel Against Deloitte.

On December 14, 2005, Plaintiffs filed a third motion to compel discovery from Deloitte. Perkinson Decl. at ¶ 47.  In this motion, Plaintiffs sought relevant electronic documents and emails that Deloitte had designated as being "privileged".  Perkinson Decl. at ¶¶ 44, 45, 47.  The parties spent the next few months briefing this motion to compel.  On May 30, 2006, this Court denied Plaintiffs' third motion to compel discovery production due to the privileged nature of the information sought.  However, after the Court had ruled on Plaintiffs' motion, Deloitte wrote to Plaintiffs to inform them of additional documents to be produced, and to inform of the existence of digitally stored documents on floppy disk media that requires special technical skills to retrieve.  Perkinson Decl. at ¶ 51.  The new production contained detailed accounting work papers and analysis of complex tax and auditing issues.  *Id.*

Then, on August 30, 2006 Deloitte produced approximately 60,000 pages of additional discovery not previously produced.  Perkinson Decl. at ¶ 54.  On October 6, 2006 Plaintiffs' counsel wrote to Deloitte to confirm agreement to scan the documents for Deloitte's ease of retrieval.  Perkinson Decl. at ¶ 55.  This final batch of documents – *i.e.,* the 60,000 pages produced on August 30, 2006, proved to be the most incriminating documents against Deloitte in this entire case, and they are the documents that form the basis for the highly particularized allegations of scienter set forth in the attached Amended Complaint.  Perkinson Decl. at ¶ 51.

### E.     The Proposed Amended Complaint Pleads Deloitte's Scienter Based Upon The Newly Discovered Evidence.

The Amended Complaint adds a new section, IV F, "The Evolving Intent and Accounting For the Webhouse Transaction," ¶¶ 68-104, based in principal part, on the documents produced by Deloitte.  This section describes how Deloitte auditors and tax consultants were intimately involved in structuring the Webhouse transaction, and in describing its "original intent" in the

transaction agreements.  Amended Complaint ¶¶ 74-79.  The Amended Complaint further describes how the Priceline audit partner, Robert Bass, on or about November 8, 1999, gave erroneous advice regarding the correct accounting treatment under GAAP for the issuance of the Webhouse warrants, *Id.* at ¶85; and that after Deloitte's National Office experts advised Bass and the other Deloitte auditors of the error, the Deloitte auditors embarked upon a scheme with Priceline to create false audit evidence to cover up the wrongful accounting.  *Id.* at ¶¶ 89-104.

The new allegations set forth with specificity the portions of the 1999 annual financial statements which were false and misstated, *Id.* at ¶¶ 98, 109-113; and cite to the specific provisions of GAAP and GAAS which were violated, *Id.* at ¶¶ 125-126, 138-145.  The Amended Complaint also describes the internal notes and other evidence produced from Deloitte files, including in the last production in August 2006, showing "scienter" on the part of Deloitte's auditors.  *Id.* at ¶¶ 73-79, 84, 86, 89, 91-96, 100-104, 128; Perkinson Decl. at ¶51.

## ARGUMENT

### A.    The Standard for Granting Leave to Amend.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  *Foman v. Davis,* 371 U.S. 178, 181-82 (1962).  In interpreting this language, the Supreme Court and the Second Circuit have repeatedly held that Rule 15(a) expresses a strong presumption in favor of allowing parties to amend a complaint.  *See, e.g., id.*; *Porat v. Lincoln Towers Community Ass'n,* 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)").[2]  As the Supreme Court has explained:

---

[2] *See also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("Rule 15 plainly embodies a liberal amendment policy"); *Middle Atlantic Utilities Co. v. S. M. W. Development Corp.*, 392 F.2d 380, 384 (2d Cir 1968) ("Narrow pleading rules should not be

> *In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."*

*Foman*, 371 U.S. at 182 (emphasis added).

This bias in favor of granting leave to amend is especially strong where a complaint has been dismissed for failing to plead fraud with particularity: "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986). "Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995). In fact, in fraud cases, the Second Circuit has consistently allowed multiple amendments at the pleading stage: "In cases where such leave was not granted, the plaintiff had already been afforded at least one opportunity to plead fraud with greater specificity." *Yoder v. OrthomolecularNutrition Institute, Inc.*, 751 F.2d 555, 562 n.6 (2d Cir. 1985) (holding the plaintiff should be afforded the opportunity to amend her complaint to plead fraud with greater specificity). Thus, "[i]n general, district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F. 3d. 79, 87 (2d Cir. 2000).

The Second Circuit recently emphasized this point in *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 168 (2d Cir. 2005). There, the Court explained:

---

applied to foil an honest plaintiff's efforts to gain redress."); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Building 1 Housing Development Fund Co., Inc.*, 608 F.2d 28, 43 (2d Cir.1979) (the policy of Rule 15(a) is "in favor of permitting the parties to obtain an adjudication of the merits"); *Concerned Citizens of Belle Haven v. Belle Haven Club*., No. Civ. 3:99CV1467, 2002 WL 32124959, *3 (D.Conn Oct. 25, 2002) ("It is well established that leave to amend a complaint is liberally granted.").

Any fraud must be pled with particularity, Fed.R.Civ.P. 9(b); but the rule is applied assiduously to securities fraud. This Circuit's strict pleading requirements in securities-fraud cases, *see Novak v. Kasaks,* 216 F.3d 300, 307-10 (2d Cir.2000), were (essentially) codified in the Private Securities Litigation Reform Act of 1995, *id.* at 309-11. So no claim should be filed unless and until it can be supported by specific factual allegations. *See, e.g., Levitt,* 340 F.3d at 104 ("[C]omplaints in federal securities fraud cases [must] allege 'those events which they assert give rise to a strong inference that [the] defendants had knowledge of th[e] facts ... or recklessly disregarded their existence,' including 'when the[ ] particular events occurred.' ") (quoting *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979)) . . . . ***Pleading with sufficient particularity may be especially difficult with claims against a "secondary" or "tertiary" wrongdoer (as opposed to an issuer or its officers or directors). See, e.g., Levitt, 340 F.3d at 102-04 (vacating the dismissal of a complaint against an issuer's clearing agent where the district court failed to ascertain whether plaintiffs had access to facts sufficient to make out a claim of primary liability under § 10(b)). We have been decidedly reluctant to foreclose such claims as untimely absent a manifest indication that plaintiffs "could have learned" the facts underpinning their allegations more than a year prior to filing.***

*Id.* at 168 (emphasis added).

When analyzing the reasons to deny leave to amend, "[t]he Second Circuit has made it clear that delay, without more, cannot be the basis to deny an amendment and has routinely excused delays of more than two years." *Concerned Citizens of Belle Haven*, 2002 WL 32124959 at *3 (D. Conn. Oct. 25, 2002).[3]  "Indeed, an amendment may be permitted at any point during the course of litigation." *Id.* (citing *Foman*, 371 U.S. at 181-182 ("in the interest of justice," leave to amend may be necessary even at post-judgment stage)).  In granting the plaintiff's motion for leave to file a third amended

---

[3]  *See also State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981) (amendment allowed after three-year interval) ("Mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 383 (2d Cir.1968) (amendment allowed after three-year interval); *Zeigan v. Blue Cross and Blue Shield*, 607 F.Supp. 1434, 1438 (S.D.N.Y.1985) (amendment allowed after three-year interval); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y.1970) (amendment allowed after four-year interval).

complaint despite a delay, the United States District Court for the District of Connecticut

reasoned:

> Moreover, some of the delay in this case can be attributed to the more than twenty extensions of time requests filed by the parties. Also, both parties engaged in mediation which delayed the litigation for a period of time. Defendants have failed to show that the length of time which has passed will cause them undue hardship in defending against plaintiffs' allegations

*Belle Haven*, 2002 WL 32124959 at *3.

**B.      There Is No "Substantial Reason" To Deny Plaintiffs Leave To Amend.**

This Court should allow Plaintiffs another opportunity to amend their complaint because

there is no "substantial reason" to deny Plaintiffs leave to amend. Indeed, each of the factors that

courts typically examine when determining whether to grant leave to amend weighs heavily in

favor of allowing the amendment:

- **No Undue Delay:** There is no undue delay in this case because Plaintiffs did not discover the additional facts upon which the Amended Complaint is based until they obtained the highly incriminating documents that Deloitte only recently produced. These are documents that Deloitte initially refused to produce, forcing Plaintiffs to file three motions to compel and obtain a Court Order before the documents came to light.

- **No Bad Faith:** The amendment is not proffered in bad faith, but is needed to further strengthen the existing allegations in the complaint so that Plaintiffs can satisfy their burden under Rule 9(b) and the Private Securities Litigation Reform Act. Moreover, any delay in filing the amendment was due to Deloitte's refusal to timely produce responsive documents, not any bad faith on Plaintiffs' part.

- **No Undue Prejudice:** The amendment would not unduly prejudice Deloitte because they will have plenty of time to review the new facts alleged in the complaint and formulate their defense. Moreover, they were put on notice both in the Court's October 7, 2004 opinion on the motion to dismiss and in the Court's November 2, 2004 Scheduling Order that Plaintiffs could seek leave to amend pursuant to Rule 15.

- **Not Futile:** The amendment is not futile because it adds highly specific allegations relating to the scienter of Deloitte auditors in creating false audit evidence about the original intent of the Webhouse transaction to cover up their knowledge that Priceline's 1999 financial statements were materially misstated.

In this case, Deloitte's refusal to produce the highly incriminating documents that show its complicity in the underlying fraud would be sufficient – standing alone – to justify the amendment.  However, in this instance, all of the other factors (*i.e.,* no undue prejudice, no bad faith, and no undue delay) also weigh heavily in favor of allowing the amendment.

Finally, when these factors are combined with the underlying policy of the Federal Rules to permit liberal amendments to facilitate the determination of claims on their merits, there remains absolutely no question at all that an amendment to the complaint must be allowed.  *See, e.g., Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("[T]he federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.")  Accordingly, Lead Plaintiffs respectfully request that this Court grant their motion and allow them to amend their complaint.

### C.      Plaintiffs' Proposed Amendment "Relates Back" To The Date That Plaintiffs Filed Their Original Complaint Against Deloitte & Touche.

Prior to filing the instant motion, Plaintiffs consulted with Deloitte's counsel to determine whether Deloitte would consent pursuant to Rule 15(a) to Plaintiffs' filing the amended complaint.  Deloitte declined to consent to the filing of an amended complaint.  Deloitte also stated that it believed that any such amendment would be barred by the statute of limitations for filing a securities fraud claim.[4]  On this point, Deloitte is mistaken.

---

[4]  Under Section 10(b) of the Securities and Exchange Act of 1934, claims of securities fraud must be "brought within one year after the discovery of the facts constituting the violation."  15 U.S.C. § 78i(e).  Because this case was filed before the Sarbanes-Oxley Act of 2002, the new statute of limitations does not apply.

It is well established that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading **arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading**." Fed.R.Civ.P. 15(c)(2) (emphasis added). Numerous cases in the Second Circuit have applied Rule 15(c)(2) to determine whether the statute of limitations has run or if the amendment relates back to the original complaint.[5] The purpose of "Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'" *Slayton v. American Exp. Co*. 460 F.3d 215, 228 (2d Cir. 2006) (citing *Siegel v. Converters Transportation, Inc*., 714 F.2d 213, 216 (2d Cir.1983) (citation omitted)). "Under Fed.R.Civ.P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.'" *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) (citing *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir.1973) (citation omitted)). Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs. *Id*. at 87. "**Where no new cause of action is alleged, as here, this Court liberally grants relation back under Rule 15(c)**." *Id*. at

---

[5] *Tho Dinh Tran v. Alphonse Hotel Corp*., 281 F.3d 23, 36 (2d Cir.2002) ("For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading....' "); *Stevelman v. Alias Research Inc*., 174 F.3d 79, 86 (2d Cir. 1999) (held that the amendment relates back because the securities fraud alleged in the original complaint clearly arose out of the conduct and transactions at issue in the amendment); *Slayton v. American Exp. Co*. 460 F.3d 215, 228 (2d Cir. 2006) ("where an initial complaint alleges a 'basic scheme' of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a 'natural offshoot' of that scheme."); *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir.2001) ("claims that are based on an 'entirely distinct set' of factual allegations will not relate back").

87 (citing *Siegel*, 714 F.2d at 216 (quoting *Glint Factors v. Schnapp*, 126 F.2d 207, 209 (2d Cir.1942))).[6]

Here, the facts alleged in the original Consolidated Amended Complaint clearly put Deloitte on notice as to the conduct and transactions at issue in this action. *See, e.g.*, Complaint at ¶¶ 70, 80, 89-96. Plaintiffs filed their motions to be appointed lead plaintiffs on December 1, 2000 (thereby commencing the action against Deloitte as provided in the October 7, 2004 decision), which was well within the applicable statute of limitations. That Complaint alleges that Deloitte knowingly violated Section 10(b) of the Securities Exchange Act by issuing a false and misleading audit opinion which was included in Priceline's 1999 Form 10-K. These are the exact same claims that Plaintiffs are asserting in the Amended Complaint, though with greater particularity, and the amended allegations arise out of the same conduct, transaction, and occurrence set forth in the original amended complaint. Thus, the amendment should relate back to December 1, 2000.

Deloitte has also asserted that the relation-back standard of Rule 15(c)(3) instead of Rule 15(c)(2) should be applied in this case. Rule 15(c)(2) applies to amendments which assert a new claim or defense against an existing party; Rule 15(c)(3)[7] applies to amendments which add

---

[6] *But see In re Neopharm, Inc. Securities Litigation*, No. 02 C 2976, 2007 WL 625533, *10 (N.D.Ill Feb. 23, 2007) (a case where the court erroneously cited precedent where the action was no longer pending and then improperly applied Rule 15(c)(3) even though a party was simply attempting to amend claims that had been asserted against a defendant in plaintiff's original complaint).

[7] An amendment of a pleading relates back to the date of the original pleading when "the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c)(3).

claims against a new party. Importantly, the claims asserted in Plaintiffs' Amended Complaint "relate back" to December 1, 2000, under Rule 15(c)(2) even though the claims were dismissed without prejudice on October 7, 2004. Docket No. 101 at 54-55. Indeed, numerous courts have addressed this precise point, explaining that a dismissal without prejudice has no bearing on the Rule 15(c)(2) analysis where, as here, the defendant was named and served and the same claims were asserted in the original complaint.

For instance, in *Whittaker v. Northern Illinois University*, 2002 WL 992660 * 2 (N.D.Ill. May 14, 2002), which is directly on point with this case, counts in the original complaint were dismissed without prejudice against the defendants. There, the defendants argued that because the original complaint was dismissed without prejudice, the plaintiff's amendment, where they were once again named, was attempting to add a new party and that the amendment should therefore be barred by the statute of limitations pursuant to Rule 15(c)(3). *Id.* In making its decision to apply Rule 15(c)(2) rather than Rule 15(c)(3), the court stated:

> the court finds [Plaintiff] may "relate back" her claim against these two defendants under Rule 15. It is undisputed [Plaintiff] named Wilhelm and Slater as defendants in her original complaint, which was filed within the statute of limitations. In a previous minute order dated July 6, 2001, however, this court dismissed Count III of [Plaintiff's] original complaint-the sole count brought against these two defendants. From this [Defendants] suggest [Plaintiff] has "effectively added new Defendants to her lawsuit" by "again naming them" in her amended complaint. (Def.Memo., p. 7) They further argue that, because [Plaintiff] has not satisfied the "mistake" requirement of Rule 15(c)(3) for adding new parties by amendment, she cannot "relate back" her new claim against them... The court disagrees. First, both [Defendants] were named as defendants in [Plaintiff's] original complaint, so they are not "new" parties, and have in fact already been served. Second, Count III of [Plaintiff's] original complaint was dismissed *without prejudice*. Third, the courts previous minute order did not dismiss the case in its entirety, just certain portions of it, so no final judgment was ever entered. For all of these reasons the court finds Rule 15(c)(2), not Rule 15(c)(3), provides the proper framework for deciding the "relation back" question as to [Defendants]. And because it is undisputed Count V of [Plaintiff's] amended complaint arises out of the "conduct, transaction, or occurrence set forth

16

> ... in the original pleading," Fed.R.Civ.P. 15(c)(2), that count as it pertains to [Defendants] relates back to [Plaintiff's] original complaint.

*Id.* (emphasis original). Similarly, the Third Circuit has recognized the importance of being a named party and receiving timely notice of the original complaint when determining whether a party is a "new party" so that Rule 15(c)(3), rather than Rule 15(c)(2), should apply. *Green v. Robinson*, 112 Fed.Appx. 165, 168 (3d Cir. 2004). "[C]ourts consider whether the defendant had timely notice that the original complaint was filed and that he was one of its intended defendants." *Id.* at 169 (citing *Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir.1996)). "As a result, where a party **is not named in the complaint**, or is named as a "John Doe" defendant, and has no reason to know that he is an intended party in the lawsuit, the relation back inquiry is governed by the new party standard of Rule 15(c)(3)." *Id.* (emphasis added) (citations omitted). The Third Circuit concluded, "In determining whether Rule 15(c)(2) or 15(c)(3) applies, the focus is on whether the defendant **had timely notice** that the plaintiff sought to assert claims against him." *Id.* (emphasis added).

In *Baur v. Powerscreen USA, LLC*, 2005 WL 1958357 (S.D.Ill. Aug.15, 2005), another case that is analogous with the present case, the Southern District of Illinois applied Rule 15(c)(2) rather than Rule 15(c)(3) because, although a the original claim failed to specify a claim against the defendant, the defendant was a named party in the original complaint and received timely notice of the original complaint. In determining that Rule 15(c)(3) did not apply, the court explained:

> While plaintiff's original complaint may have failed to state a claim against it, [Defendant] was nonetheless a party to this lawsuit, named as a defendant and served with a summons and complaint. In other words, although plaintiff may have failed to state a claim against [Defendant] in the original complaint, a dismissal of the original complaint as to [Defendant] would not have nullified the fact that [Defendant] had already become a party to this action.

*Id.* at *2.

Here, Deloitte was named in and served with the original amended complaint. Moreover, the original amended complaint asserts the exact same claims against Deloitte that arise out of the same conduct, transaction and occurrence that have been asserted in the Second Amended Complaint. Accordingly, there is no question that Rule 15(c)(2) applies and, thus, the claims asserted in the Second Amended Complaint "relate back" under Rule 15(c)(2).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs'

Motion For Leave To Serve And File A Second Amended Complaint and order the filing of the

proposed Second Consolidated Amended Complaint.

Dated:  May 14, 2007                                              Respectfully submitted,

                                                                 */s/  David R. Scott*
                                                                 **SCOTT + SCOTT, LLP**
                                                                 David R. Scott (CT16080)
                                                                 108 Norwich Avenue
                                                                 P.O. Box 192
                                                                 Colchester, CT  06415
                                                                 Tel:  (860) 537-5537
                                                                 Fax:  (860) 537-4432

                                                                 **SCOTT + SCOTT, LLP**
                                                                 Beth A. Kaswan (CT21415)
                                                                 19th Floor, Suite 1915
                                                                 75 Rockefeller Plaza
                                                                 New York, NY  10019
                                                                 Tel:  (212) 710-1040
                                                                 Fax:  (212) 710-1041

                                                                 **SCOTT + SCOTT, LLP**
                                                                 Geoffrey M. Johnson
                                                                 33 River Street
                                                                 Chagrin Falls, OH  44022
                                                                 Tel:  (440) 247-8200
                                                                 Fax:  (440) 247-8275

                                                                 **JOHNSON & PERKINSON**
                                                                 Dennis J. Johnson
                                                                 Jacob B. Perkinson
                                                                 Eben Duval
                                                                 1690 Williston Road
                                                                 P.O. Box 2305
                                                                 South Burlington, VT 05403
                                                                 Tel: (802) 862-0030
                                                                 Fax: (802) 862-0060

                                                                 **Co-Lead Counsel for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2007, a copy of the foregoing Plaintiffs' Memorandum of Law in Support of Their Motion For Leave To Serve And File A Second Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing.  The parties may access this filing through the court's CM/ECF System.

*/s/ David R. Scott*

**SCOTT + SCOTT, LLP**
David R. Scott (CT16080)
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Tel:  (860) 537-5537
Fax:  (860) 537-4432

**Co-Lead Counsel for Plaintiffs**