UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION | : : : : : : : : : | MASTER FILE NO.<br>3:00-CV-01884(AVC)<br><br>May 8, 2007 |
| This document relates to:<br><br>ALL ACTIONS | | |

## DECLARATION OF JACOB B. PERKINSON, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND AND FILE PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COMES Jacob B. Perkinson and, pursuant to 28 U.S.C. § 1746 and hereby states, under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

1. I am a partner with the law firm of Johnson & Perkinson which serves as one of Co-Lead Counsel in these consolidated class action securities cases. I make this declaration in support of Plaintiffs' Motion for Leave to Amend and to File the attached proposed Second Amended Complaint ("Second Amended Complaint")

2. My firm was primarily responsible for requesting, negotiating, compelling through litigation, and initially reviewing documents produced by Deloitte & Touche to Plaintiffs in this matter.

3. Cases began to be filed in this matter beginning in October of 2000.

1

4. Motions for the appointment of lead counsel were filed on December 1, 2000 and those motions were resolved on September 12, 2001. The Order on the lead counsel motions provided for the consolidation of all related cases and directed the Plaintiffs to file a consolidated amended complaint within 45 days.

5. Lead Plaintiffs' 249 page Complaint was filed on October 29, 2001. The Complaint alleged that the Defendants, including Priceline's auditor, Deloitte & Touche ("Deloitte"), issued false and misleading statements during the period January 27, 2000 through October 4, 2000. The Complaint alleged that Priceline's financial results including those for the fiscal year ended December 31, 1999, violated Generally Accepted Accounting Principles ("GAAP") and were materially overstated due, in part, to Defendants' representations that their business model was expandable beyond travel services, and that Defendants falsely described the profitability of Webhouse Club, Inc. ("Webhouse"). This Complaint also alleged that Priceline's 1999 financial statements were misstated and violated GAAP because Priceline had incorrectly recognized income upon receiving warrants for Webhouse stock. Complaint ¶ 80.

6. On February 28, 2002 Deloitte filed a Motion to Dismiss Plaintiffs' Complaint. In its twenty-nine page memorandum in support of their Motion to Dismiss Plaintiffs' Consolidated Amended Complaint, Deloitte asserted that Plaintiffs' Complaint was deficient for two reasons: (1) it was barred by the Statue of Limitations; and (2) it failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995, ("PSLRA").

7. On May 28, 2002, Lead Plaintiffs filed a 55 page Memorandum in Opposition to Deloitte's Motion to Dismiss. Plaintiffs' Memorandum set forth what was known about Deloitte's participation in the fraud alleged in the Complaint, and described how Plaintiffs

alleged that the financial statements provided to investors did not comply with GAAP. In this memorandum Lead Plaintiffs laid out an extensive list of "red flags" available to Deloitte which Plaintiffs believed demonstrated Deloitte's scienter under the federal securities laws.

8. On June 28, 2002, Deloitte filed a 28 page reply brief in support of its Motion. In its memorandum, Deloitte argued that Priceline's Webhouse affiliate was a separate entity, and that the misleading statements regarding expandability of the business model, repeat customers, gross margin forecasts, the success of the gasoline and grocery businesses, and valuation statements in the financial disclosures were not actionable. Deloitte also continued to argue that Plaintiffs' Complaint was time barred.

9. On February 14, 2003, and July 23, 2003, Deloitte filed notice of Supplemental Authority Regarding their Motion to Dismiss.

10. Lead Plaintiffs filed a Notice of Supplemental Authority and Response to Deloitte's Notice on September 16, 2003.

11. Deloitte filed a response to Plaintiffs' response on October 23, 2003.

12. On October 7, 2004, the Hon. Dominic J. Squatrito issued a memorandum of decision denying the Priceline Defendants' Motions to Dismiss in substantial part and granting Deloitte's Motion to Dismiss. The Court found that the Amended Complaint was filed in a timely manner as to Deloitte and the other defendants but granted Deloitte's Motion to Dismiss, based on the conclusion that Plaintiffs did not adequately allege that Deloitte acted with scienter. The October 7, 2004, memorandum of decision dismissed Plaintiffs claims against Deloitte, "without prejudice to Plaintiff's repleading these allegations upon curing the deficiencies set forth herein."

13. On October 29, 2004 Plaintiffs and Priceline submitted a Form 26(f) report in which they set forth their differing interpretations with respect to when the complaint could be amended pursuant to the Court's October 7, 2004 Memorandum of Decision. In his Order dated November 2, 2004, Judge Squatrito stated:

> Although the Court granted leave for plaintiffs to replead certain allegations that were dismissed without prejudice, on the condition that Plaintiffs attempt to correct the deficiencies prompting dismissal of these allegations, the court did not mandate any amendments. As such, the pleading stage of this lawsuit will progress as contemplated by the Federal Rules; should plaintiffs wish to amend the Consolidated Amended Complaint, they may seek to do so under Rule 15 of the Federal Rules of Civil Procedure.

14. On November 22, 2004, Plaintiffs served a subpoena on Deloitte Touche Tohmatsu in Stamford Connecticut.

15. On December 3, 2004, Deloitte's counsel wrote to Plaintiffs to inform them that the November 22, 2004, subpoena was not valid, as Deloitte Touche Tohmatsu is structured as a Swiss Verein entity that does not conduct business in the U.S., and that they would not accept service of the subpeona, but would accept service of a new subpoena at Deloitte & Touche's offices in New York City.

16. On December 7, 2004, Deloitte's International Claims Counsel wrote to Plaintiffs also recounting the jurisdictional and entity issues previously raised. Also on December 7, 2004 Deloitte's counsel wrote to Plaintiffs to present objections to the forthcoming revised subpoena.

17. On December 14, 2004 Plaintiffs called Deloitte to conduct a meet and confer with Deloitte on the subpoena. On December 22, 2004 Deloitte and Touche formally objected to Plaintiffs' revised subpoena for documents.

18. On February 3, 2005 Plaintiffs wrote to Deloitte's counsel requesting a meet and confer session to discuss the objections to the subpoena.

19. On March 2, 2005 Plaintiffs held a conference call with Deloitte's counsel regarding discovery disputes.

20. On March 3, 2005 Plaintiffs and Deloitte held a meet and confer session to attempt to resolve the outstanding discovery disputes.

21. On March 8, 2005 Deloitte wrote a letter to Plaintiffs regarding the discovery disputes.

22. On March 9, 2005 Deloitte and Plaintiffs held their third meet and confer session to discuss discovery disputes.

23. As the parties' meet and confer process was unsuccessful, on March 21, 2005 Plaintiffs filed a Motion to Compel Discovery Production from Deloitte.

24. On April 1, 2005 Deloitte requested an extension of time to answer the motion to compel. On April 5, 2005 Deloitte moved for a twenty day extension to respond to Plaintiffs' motion to compel.

25. On April 25 2005 Deloitte filed an opposition to Plaintiffs' motion to compel discovery production.

26. On May 20, 2005 Plaintiffs filed a reply to Deloitte's response to Plaintiffs Motion to Compel.

27. On June 14, 2005 Judge Squatrito granted in part and denied in part Plaintiffs' motion to compel Deloitte to produce discovery. The order sustained the scope of the document requests and required Deloitte to respond, but limited the relevant time period to March 1, 1999 through April 1, 2001. Plaintiffs then contacted Deloitte to arrange for a review of the documents the Court had ordered produced.

28. On July 11, 2005 Plaintiffs wrote to Deloitte to request confirmation that Deloitte planned to comply with the Order compelling Deloitte to produce documents.

29. On July 12, 2005 Deloitte confirmed that they would provide access to responsive documents on July 18, 2005.

30. On July 18, 2005 documents produced by Deloitte, consisting of just six bankers' boxes, were reviewed by Plaintiffs' counsel.

31. At the time of the July 18, 2005 review, I inquired of Deloitte's counsel whether there were additional documents. Deloitte's counsel confirmed that there were, but that they were limited and consisted mostly of "tax stuff" which Deloitte's counsel suggested we would not have an interest in reviewing. I stated clearly that Plaintiffs did, in fact, wish to review all responsive documents, including documents related to tax issues.

32. On July 23, 2005, as part of their rolling production, six boxes of documents were produced, bates ranges D&T 0000151 – D&T 0002919.

33. On August 5, 2005, as part of their rolling production, Deloitte produced six additional boxes of documents, bates ranges D&T 0002920 – D&T 0016019.

34. On August 18, 2005 Plaintiffs called Deloitte to discuss document production.

35. On August 23, 2005 Deloitte designated several pages previously produced as "Highly Confidential Discovery Material" pursuant to the protective order governing treatment of confidential information.

36. On September 9 and 12, 2005 Plaintiffs emailed Deloitte regarding partial document productions and the absence of any substantial amount of email documents. Deloitte responded that they were conducting a rolling discovery production, and that additional production would be forthcoming.

37. On September 15, 2005 Plaintiffs filed their second motion to compel discovery production from Deloitte.

38. On October 3, and October 5, 2005 Deloitte emailed and faxed Plaintiffs communications regarding the Motion to Compel, and inquired whether Plaintiffs would assent to an extension to comply.

39. On October 6, 2005 Deloitte moved for a one week extension to file their opposition to Plaintiffs second motion to compel discovery production.

40. On October 6, 2005 Deloitte removed the privilege designation as to nine documents previously withheld. These documents were produced on October 6, 2005.

41. On October 11, 2005 Plaintiffs moved to withdraw their motion to compel, which was denied as moot by Judge Squatrito on October 13, 2006.

42. On October 28, 2005 as part of their rolling discovery production Deloitte produced seven boxes of discovery material, bates range of D&T 0016100 – D&T 0029213.

43. On November 2, 2005 Plaintiffs contacted Deloitte to report a missing box from the production.

44. On November 17, 2005 Plaintiffs called Deloitte regarding document production, and documents Deloitte had withheld based on a claim of privilege. \

45. On November 18, 2005 Plaintiffs sent a letter to Deloitte objecting to their withholding documents for privilege without supporting documentation explaining the nature of the privilege.

46. On November 22, 2005 Deloitte removed the assertion of privilege as to two more documents previously withheld.

47. On December 14, 2005 Plaintiffs filed a third motion to compel discovery from Deloitte relating to electronic discovery.

48. On February 3, 2006 Deloitte filed a memorandum of law in opposition to Plaintiffs third motion to compel electronic discovery.

49. On February 17, 2006 Lead Plaintiffs filed a reply to Deloitte's response to Plaintiffs' third motion to compel discovery production.

50. On May 30, 2006 Judge Covello denied Plaintiffs' third motion to compel discovery production due to the privileged nature of the information sought.

51. On August 7, 2006 Deloitte wrote to Plaintiffs to inform them of additional documents to be produced, and to inform Plaintiffs of the existence of digitally stored documents on floppy disk media that requires special technical skills to retrieve. The new production consisted of thirty-five boxes of material, and contained detailed accounting workpapers and analysis of tax and auditing issues. This production also included notes of meetings in which the original intent of the Webhouse transactions and its proposed structure were discussed as provided in ¶'s 74-76 of the proposed Second Amended Complaint.

52. On August 16, 2006 Plaintiffs wrote to Deloitte to propose an electronic vendor to attempt to access information on two floppy diskettes that Deloitte referred to in the August 7, 2006 letter.

53. On August 18, 2006 Plaintiffs called and emailed Deloitte to discuss its discovery production.

54. On August 30, 2006 Deloitte produced approximately 60,000 pages of additional discovery not previously produced.

55. On September 22, 2006 and September 27, 2006 Plaintiffs called Deloitte regarding scanning the recent production of documents for Deloitte. On October 6, 2006 Plaintiffs' counsel wrote to Deloitte to confirm agreement to scan the documents for Deloitte's ease of retrieval.

56. On October 2, 2006 Plaintiffs called Deloitte regarding retrieving the data on the floppy disks.

57. On October 6, 2006 Plaintiffs' counsel wrote to Deloitte to confirm an agreement to scan the documents for Deloitte's ease of retrieval.

58. Several discussions regarding the restoration of the floppy disks ensued in October 2006, with Deloitte rejecting two suggested vendors due to concerns about their experience with magnetically restoring media of this kind.

59. On March 16, 2007 Deloitte wrote to Plaintiffs to suggest their preferred vendor to restore the floppy disks.

60. During the last half of 2006, Priceline produced over two million pages of documents that were reviewed concurrently with the Deloitte production.

61. After identifying several accounting issues requiring expertise, on January 25, 2007, Plaintiffs retained forensic accountants to assist in making a determination of the potential liability of Priceline, the individual defendants, and Deloitte in this action with respect to the misstatement of Priceline's financial statements.

62. Plaintiffs have pursued the investigation of their potential claim against Deloitte with the utmost diligence at all times in an attempt to amend the Complaint against Deloitte at the earliest possible time while meeting the pleading requirements of the PSLRA.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 8, 2007

Jacob B. Perkinson