UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN RE: PRICELINE.COM, INC.
SECURITIES LITIGATION

This document relates to:

ALL ACTIONS

Master File No.: 3:00cv1884(AVC)

June 20, 2007

DECLARATION OF WILLIAM R. MAGUIRE
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

I, WILLIAM R. MAGUIRE, submit this declaration pursuant to 28 U.S.C. § 1746 in support of Deloitte & Touche LLP's opposition to plaintiffs' motion for leave to file a second amended complaint.

1.  I am a member of the firm of Hughes Hubbard & Reed LLP, attorneys for Deloitte & Touche LLP ("Deloitte").

2.  I am an attorney duly admitted to practice in the State of New York and admitted, *pro hac vice*, to practice before the United States District Court for the District of Connecticut in this litigation.

3.  I make this declaration based on my personal knowledge, the knowledge of those with whom I work, and the documents and correspondence referred to herein.

4.  The purpose of this Declaration is: (i) to introduce copies of documents that may be considered in connection with plaintiffs' motion for leave to file a second amended complaint, including correspondence between priceline.com, Inc. ("Priceline") and the U.S. Securities and Exchange Commission ("SEC"), professional guidance, documents referenced in the proposed second amended complaint ("CAC II"), and documents relating to discovery issues;

and (ii) to respond to certain of plaintiffs' contentions regarding the course of non-party discovery taken against Deloitte and the form in which certain documents relating to Priceline WebHouse Club, Inc. ("WebHouse") were produced to plaintiffs.

**RELEVANT DOCUMENTS**

5. Attached hereto as Exhibit A is a true and correct copy of excerpts of the Priceline 1999 Form 10-K and the exhibits attached thereto.

6. Attached hereto as Exhibit B is a true and correct copy of the SEC's letter to Priceline dated February 4, 1999 regarding Priceline's Registration Statement on Form S-1 filed December 23, 1998, bates numbered D&T 0025582-92.

7. Attached hereto as Exhibit C is a true and correct copy of Priceline's letter to the SEC's Chief Accountant dated March 15, 1999 regarding Priceline's Registration Statement on Form S-1 filed December 23, 1998, bates numbered D&T 0025552-58.

8. Attached hereto as Exhibit D is a true and correct copy of Priceline counsel's letter to the SEC dated March 16, 1999 regarding Priceline's Registration Statement on Form S-1 filed December 23, 1998, bates numbered D&T 0025520-29.

9. Attached hereto as Exhibit E is a true and correct copy of Codification of Statements on Auditing Standards, AU § 336, *Using the Work of a Specialist*.

10. Attached hereto as Exhibit F is a true and correct copy of Murray, Devine & Co.'s valuation as of November 1, 1999, bates numbered D&T 0000429-45. (*See* CAC II ¶ 129 (referencing independent valuation).)

11. Attached hereto as Exhibit G is a true and correct copy of Deloitte's memorandum dated January 26, 2000 regarding "Webhouse Warrants Valuation," bates numbered D&T 0000446. (*Cf.* CAC II ¶ 129 (referencing independent valuation).)

12. Attached hereto as Exhibit H is a true and correct copy of Murray, Devine & Co.'s valuation as of December 31, 1999, bates numbered D&T 0000447-54. (*See* CAC II ¶ 129 (referencing independent valuation).)

13. Attached hereto as Exhibit I is a true and correct copy of Murray, Devine & Co.'s draft valuation as of March 31, 2000, bates numbered D&T 0000458-65. (*See* CAC II ¶ 129 (referencing independent valuation).)

14. Attached hereto as Exhibit J is a true and correct copy of a *Wall Street Journal* article dated October 16, 2000. (CAC II ¶ 222, quoted in part.)

15. Attached hereto as Exhibit K is a true and correct copy of plaintiffs' subpoena dated December 3, 2004 seeking discovery of Deloitte's documents pursuant to Federal Rule of Civil Procedure 45 ("Rule 45").

16. Attached hereto as Exhibit L is a true and correct copy of plaintiffs' "Notice of Deposition and Subpoena to Non-Party" seeking to "take the deposition of Deloitte & Touche, LLP by [its members]" pursuant to Rule 45.

17. Attached hereto as Exhibit M is a true and correct copy of Deloitte's memorandum dated November 8, 1999 regarding "Priceline/WebHouse," bates numbered D&T 0000410. (CAC II ¶ 84, quoted in part.)

18. Attached hereto as Exhibit N is a true and correct copy of Deloitte's memorandum dated January 18, 2000 regarding "Priceline Licensing Agreement," bates numbered D&T 0000406-09. (CAC II ¶ 89, quoted in part.)

19. Attached hereto as Exhibit O is a true and correct copy of Deloitte's memorandum dated February 22, 2000 regarding "Priceline Licensing Agreement," bates numbered D&T 0002148-53. (CAC II ¶ 91, quoted in part.)

20. Attached hereto as Exhibit P is a true and correct copy of Deloitte's memorandum dated March 15, 2000 regarding "Webhouse Club – Accounting and Valuation," bates numbered D&T 0000402-04. (CAC II ¶ 95, quoted in part.)

21. Attached hereto as Exhibit Q is a true and correct copy of Priceline management's representation letter to Deloitte issued in connection with Deloitte's audit of Priceline's 1999 financial statements, bates numbered D&T 0005022-30. (CAC II ¶ 97, quoted in part.)

22. Attached hereto as Exhibit R is a true and correct copy of WebHouse management's representation letter to Deloitte issued in connection with Deloitte's audit of WebHouse's 1999 financial statements, bates numbered D&T 0001321-27.

23. Attached hereto as Exhibit S is a true and correct copy of a draft letter from Priceline and WebHouse to Deloitte dated April 14, 2000, bates numbered D&T 0020471. (CAC II ¶ 100, reproduced in full.)

24. Attached hereto as Exhibit T is a true and correct copy of a draft letter from Priceline and WebHouse to Deloitte dated "May , 2000," bates numbered D&T 0069226.03. (CAC II ¶ 101, reproduced in full.)

25. Attached hereto as Exhibit U is a true and correct copy of typewritten notes maintained in Deloitte's tax working papers regarding a meeting on October 18, 1999, bates numbered D&T 0082499. (CAC II ¶¶ 75, 128, quoted in part.)

26. Attached hereto as Exhibit V is a true and correct copy of Deloitte's memorandum dated October 20, 1999 maintained in Deloitte's tax working papers, bates numbered D&T 0030069-73. (CAC II ¶ 76, quoted in part.)

27. Attached hereto as Exhibit W is a true and correct copy of handwritten notes maintained in Deloitte's tax working papers regarding a meeting on March 13, 2000, bates numbered D&T 0042094.  (CAC II ¶ 94, quoted in part.)

28. Attached hereto as Exhibit X is a true and correct copy of handwritten notes maintained in Deloitte's tax working papers regarding a meeting on August 17, 2000, bates numbered D&T 0042056.  (CAC II ¶ 128, quoted in part.)

29. Attached hereto as Exhibit Y is a true and correct copy of handwritten notes maintained in Deloitte's tax working papers regarding a meeting on September 30, 1999, bates numbered D&T 0029309-10.  (CAC II ¶ 74, quoted in part.)

30. Attached hereto as Exhibit Z is a true and correct copy of Deloitte's memorandum dated October 20, 1999 regarding the "Webhouse Agreement," bates numbered D&T 0037968-69.  (CAC II ¶ 76, quoted in part.)

31. Attached hereto as Exhibit AA is a true and correct copy of an October 26, 1999 fax from Shearman & Sterling to Deloitte attaching drafts of agreements between Priceline and WebHouse, bates numbered D&T 0034038-137.  (CAC II ¶ 78 (referencing draft agreements).)

32. Attached hereto as Exhibit BB is a true and correct copy of Emerging Issues Task Force Issue No. 96-18.

33. Attached hereto as Exhibit CC is a true and correct copy of excerpts of the Priceline 2000 Form 10-K.

34. Attached hereto as Exhibit DD is a true and correct copy of Codification of Statements on Auditing Standards, AU § 333, *Management Representations*.

35. Attached hereto as Exhibit EE is a true and correct copy of a production slip sheet stating: "IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION / ROBERT MORRIS / PRICELINE WEBHOUSE CLUB," bates numbered D&T 0020356.

36. Attached hereto as Exhibit FF is a true and correct copy of Deloitte's Record of Report Issuance for the audit of WebHouse's 1999 financial statements, bates numbered D&T 0001293-98.

37. Attached hereto as Exhibit GG is a true and correct copy of Deloitte's audit engagement letter for the audit of WebHouse's 1999 financial statements, bates numbered D&T 0001127-31.

38. Attached hereto as Exhibit HH is a true and correct copy of Deloitte's file folder for "WEBHOUSE CLUB," bates numbered D&T 0001041.

39. Attached hereto as Exhibit II is a true and correct copy of a production slip sheet stating: "PRICELINE WEBHOUSE CLUB 1999 AUDIT WORKPAPERS (MASTER)," bates numbered D&T 0001551.

## DISCOVERY

### Procedural History

40. On November 23, 2004, plaintiffs attempted to obtain discovery from Deloitte by delivering a subpoena addressed to Deloitte Touche Tohmatsu ("DTT") to Deloitte's offices in Stamford, Connecticut. Plaintiffs were advised that the attempted service of the subpoena was improper. DTT is a separate and independent entity from Deloitte, which does not maintain an office in Stamford. It does not provide any professional services and was not involved with Deloitte's audits of Priceline.

41. On December 3, 2004, plaintiffs issued a subpoena addressed to Deloitte pursuant to Rule 45 seeking discovery of Deloitte's documents. (Ex. K.) Plaintiffs were unwilling to limit the scope of the subpoena to the allegations in their complaint and moved to compel Deloitte to comply with the subpoena. On June 13, 2005, plaintiffs' motion was granted in part and denied in part.

42. On July 18, 2005, my firm produced Deloitte's 1999 and 2000 audit working papers relating to priceline.com, Inc. ("Priceline"), Priceline WebHouse Club, Inc. ("WebHouse"), and Priceline Perfect YardSale ("Perfect YardSale"). These documents bear bates numbers D&T 0000001 through D&T 0016019.

43. Prior to the July 18, 2005 production, Priceline's counsel requested that Deloitte withhold nine documents on the basis of privilege (the "nine documents"). Pursuant to this request, Deloitte withheld the documents and inserted slip sheets in the production advising plaintiffs that the documents had been withheld at the request of Priceline's counsel. At the time of plaintiffs' inspection of the documents on July 18, I advised plaintiffs' counsel that Priceline counsel was considering the assertion of a privilege with respect to the nine documents, that Priceline's counsel would prepare a privilege log, and that Deloitte took no position on whether or not the documents were privileged. Deloitte asked that any inquiries or motion concerning the nine documents be addressed to Priceline, not Deloitte.

44. On September 15, 2005, plaintiffs moved to compel Deloitte to produce the nine documents.

45. On October 4, 2005, Priceline's counsel advised both plaintiffs and Deloitte that it had withdrawn its assertion of privilege as to all nine documents. On October 6, 2005, my firm produced the documents to plaintiffs. Accordingly, on October 11, 2005,

7

plaintiffs withdrew their motion, stating that "Third-Party Deloitte & Touche, LLP has produced the documents that were the subject of Plaintiffs' Motion" and that "Plaintiffs' Motion is now moot." (Mot. to Withdraw Second Mot. to Compel Discovery from Deloitte & Touche LLP.)

46. On October 28, 2005, my firm substantially completed Deloitte's production to plaintiffs of audit working papers and other responsive audit documents. These documents bear bates numbers D&T 0016100 through D&T 0029213.

47. Prior to the October 28, 2005 production, Priceline's counsel requested that Deloitte withhold two documents on the basis of privilege. As before, plaintiffs' counsel were advised to contact Priceline with respect to any issue concerning these documents.

48. On November 22, 2005, Priceline's counsel determined that it would assert privilege with respect to only one of the two documents, and my firm produced the non-privileged document to plaintiffs the same day.

49. On December 14, 2005, Plaintiffs moved to compel production of the remaining withheld document. In its response, Deloitte advised the Court that it took no position as to the merits of the claim of privilege, and that it would produce or continue to withhold the document as directed by the Court. (Deloitte & Touche LLP's Mem. in Resp. to Pls. Mot. to Compel.) The Court denied plaintiffs' motion to compel on May 30, 2006. (Order denying Sealed Mot.)

50. Following plaintiffs' motion on December 14, 2005, plaintiffs did not contact Deloitte with respect to any outstanding document issues. Nevertheless, Deloitte prepared for production the remainder of its responsive hard-copy and electronic documents primarily relating to tax work performed for Priceline, WebHouse, and Perfect YardSale. Deloitte also identified on its servers and prepared for production additional drafts of audit and

audit-related documents for fiscal year 1999 relating to Priceline, WebHouse, and Perfect YardSale.

51. On July 13, July 22, and August 2, 2006, I attempted to contact plaintiffs' counsel with respect to the documents Deloitte had prepared for production. Receiving no response, I informed plaintiffs' counsel by letter dated August 7, 2006, that they may inspect the documents, and that Deloitte believed that with this production it had fulfilled its obligations under the subpoena. I also informed plaintiffs' counsel that ten documents were being withheld based on an assertion of privilege by Priceline's counsel, and that Deloitte was unable to access and produce data from two floppy disks. On August 24, 2006, plaintiffs' vendor picked up the documents for scanning.

52. On August 17, 2006, plaintiffs recommended the use of eDiscovery, Inc. for the recovery of the data from the floppy disks. This vendor informed my colleague, Kenneth Katz, that it could not perform the requested work, and Mr. Katz requested that plaintiffs recommend a new vendor. On September 22, plaintiffs recommended eMag Solutions, and on October 5, plaintiffs provided my firm with contact information for this vendor. On October 6, my firm advised plaintiffs that Deloitte was not familiar with this vendor's experience with the recovery of data from floppy disks.

53. On February 22, 2007, plaintiffs issued Deloitte a "Notice of Deposition and Subpoena to Non-Party" seeking to "take the deposition of Deloitte & Touche, LLP by [its members]" pursuant to Rule 45. (Ex. L.)

54. On March 16, 2007, in light of depositions noticed by plaintiffs of Deloitte individuals, Deloitte raised the issue of the floppy disks and proposed a vendor and protocol by which the parties could undertake a recovery effort. On March 20, plaintiffs raised certain

9

questions with respect to the disks and the vendor. On March 26, my firm provided plaintiffs with the requested information and again asked plaintiffs to confirm their understanding of and agreement to the protocol by which recovery efforts should proceed. Plaintiffs did not respond.

### The WebHouse Documents

55. Deloitte audited the financial statements of Priceline and the separate financial statements of WebHouse. The CAC II refers to two Deloitte documents dated after Priceline filed its Form 10-K on March 30, 2000 as if they were produced from Deloitte's files for the 1999 Priceline audit. (CAC II ¶¶ 100-101.) In fact, these documents were from separate files relating to Deloitte's audit of the 1999 financial statements of WebHouse. Deloitte had separate engagement teams for the Priceline and WebHouse audits. (Ex. FF (Deloitte's Record of Report Issuance) & Ex. GG (WebHouse engagement letter).) The WebHouse audit partner was Andrew Wallace and the audit manager was Robert Morris. (Ex. FF.) Because WebHouse was a privately held company, it was not subject to SEC filing requirements and issued its financial statements several weeks after the filing of the Priceline Form 10-K. (*Id.*) Accordingly, the WebHouse audit report was dated April 14, 2000 and issued on May 10, 2000. (*Id.*)

56. The final working papers for WebHouse were clearly demarcated by file cover sheets and slip sheets. For example, the final hard copy working papers were produced under a copy of the file folder which identified the client name as "WEBHOUSE CLUB." (Ex. HH.) Similarly, the printouts of the final electronic working papers were produced to plaintiffs under a slip sheet bearing the legend: "PRICELINE WEBHOUSE CLUB 1999 / AUDIT WORKPAPERS (MASTER)." (Ex. II.)

57. My firm also produced documents that were not part of the final audit working papers relating to WebHouse, including copies of hard copy documents and printouts of electronic documents. Among these documents was a draft letter dated April 14, 2000 relating to WebHouse's and Priceline's intent in entering into the warrant transaction. (Ex. AA.) This document was produced with a set of documents under a slip sheet bearing the legend: "IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION / ROBERT MORRIS / PRICELINE WEBHOUSE CLUB." (Ex. EE.) Deloitte produced another draft of the letter describing the companies' intent. This draft, dated "May , 2000," was contained in Mr. Wallace's electronic folder on Deloitte's server. (Ex. Z.)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2007

/s/ William R. Maguire
William R. Maguire (CT 23375)

NY 1167575_1.DOC

**CERTIFICATION**

    I hereby certify that on this 20th day of June 2007 a copy of the foregoing Declaration of William R. Maguire in Support of Deloitte & Touche LLP's Opposition to Plaintiffs' Motion for Leave to File a Second Amended Compliant was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                   /s/ Thomas J. Finn
                   Eric W. Wiechmann (CT 04331)
                   Thomas J. Finn (CT 20929)
                   McCARTER & ENGLISH
                   CityPlace I
                   Hartford, Connecticut 06103
                   Tel:  (860) 275-6700