UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: PRICELINE.COM, INC.<br>SECURITIES LITIGATION | :<br>:<br>:<br>: |
| | : MASTER FILE NO.<br>: 3:00CV01844(AVC) |
| This document relates to: | : |
| | : June 21, 2007 |
| ALL ACTIONS | :<br>: |

**LEAD PLAINTIFFS' RESPONSE TO OBJECTIONS TO PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**SCOTT + SCOTT, LLP**
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Tel:  (860) 537-5537
Fax:  (860) 537-4432

**SCOTT + SCOTT, LLP**
Beth A. Kaswan
19th Floor, Suite 1915
75 Rockefeller Plaza
New York, NY  10019
Tel:  (212) 710-1040
Fax:  (212) 710-1041

**SCOTT + SCOTT, LLP**
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH  44022
Tel:  (440) 247-8200
Fax:  (440) 247-8275

**Co-Lead Counsel**

**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Eben F. Duval
1690 Williston Road
P.O. Box 2305
South Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060

**Co-Lead Counsel**

**I.    INTRODUCTION**

One Class member,[1] the New York State Teachers Retirement System ("NYSTRS"), has formally objected to the noticed upper limit of Plaintiffs' Counsel's fee application, one-third of the Settlement Fund. Since notice was sent to the Class, Plaintiffs' Lead Counsel have accumulated and reviewed the lodestars incurred by counsel on the litigation of this case and have determined to apply to this Court for an award below the ceiling in the Notice. As is more fully described in the Memorandum In Support of Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Plaintiffs' Fee Memorandum"), Plaintiffs' Counsel are applying to the Court for a 30% fee which represents a 1.98 times multiplier on their lodestar of $12.1 million.

In opposing Plaintiffs' fee application in this securities fraud case – a position NYSTRS frequently takes in cases in which it is an absentee Class member – NYSTRS notably does not object to the adequacy of the settlement itself. NYSTRS does not contend that the settlement is not an outstanding result for the Class or that Plaintiffs and their counsel did not face formidable risks in taking on this case and pouring enormous resources into its prosecution for almost seven years. Indeed, NYSTRS does not address any of the "*Goldberger*" factors that determine an appropriate fee award for class actions in the Second Circuit. Instead, NYSTR merely lists ten cases that have awarded fees of 20% or less of the Settlement Fund without further discussion of the amount of effort required or risk entailed in any of those lawsuits. It also cites to a supposed downward trend in the negotiation of fee schedules since institutions have begun to assume a greater role in securities class actions.

---

[1]    The Commonwealth of Pennsylvania Public School Employees' Retirement System ("PSERS") has also made a "conditional" objection and requested the right to make a supplemental submission after reviewing Plaintiffs' fee papers. In the recent past, PSERS has frequently filed tag-along objections adopting the position of NYSTRS as its own. Here, PSERS has yet to identify any support for its position.

1

As is fully set forth in the Plaintiffs' Fee Memorandum, under the circumstances of this case and when applying the Second Circuit's *Goldberger* factors, Plaintiffs' 30% fee application, which yields a highly conservative 1.98 times multiplier of counsel's lodestar, is eminently reasonable and should be approved. Had NYSTRS sought to be a lead plaintiff in this case, it would have been aware of the extensive effort expended by Plaintiffs' counsel during this exhaustive litigation. It has instead adopted a stance against serving as a lead plaintiff and follows a policy of objecting to fees only at the conclusion of such litigations.[2]

While the cases cited by NYSTRS approved fee percentages lower than Plaintiffs' Counsels' application, every case must be evaluated by reference to its individual risk, results and the efforts required by counsel to reach those results. Indeed, virtually all of the cases relied upon by NYSTRS approved *higher*, sometimes much higher, multiples of lodestar than Plaintiffs have requested here. As to NYSTRS's second position, the fact that one or more institutions have found securities counsel who were willing to agree to a fixed (and lower) fee structure before being retained, performing the work in the case or knowing its ultimate result, has little legal relevance to the inquiry pending before this Court. Nor, as set forth in the case law cited below, has there been the downward trend in attorneys' fees, as NYSTRS wrongly suggests.

## II.   THE REQUESTED FEE IS REASONABLE

As the Second Circuit explained in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2nd Cir. 2000), the "fee award should be assessed based on the scrutiny of the unique circumstances of each case." *Id.* at 53. NYSTRS's form objection fails to address any of the particulars of this case. While Plaintiffs acknowledge that 30% is near the high end of

---

[2] As NYSTRS has publicly acknowledged, "Being a lead plaintiff invariably entails years of work toward an uncertain end; being an objector entails only a few hours or research and letter writing." Wayne Schneider, *An Obligation to Pursue Litigation? Really?*, The NAPPA Report, May 1997.

percentage awards in class actions, the risks of *this* litigation and the extensive effort expended by counsel to obtain *this* settlement fully justify Plaintiffs' request. In fact, NYSTRS does not contend otherwise. Instead, it argues only that, because some other courts have awarded fees equal to lesser percentages (while simultaneously awarding higher multipliers), *ipso facto*, this Court should exercise its discretion to "significantly" reduce any requested fee.

In the last few years, in no fewer than fifteen class actions, NYSTRS has appeared at the end of each case to object to the fees of class counsel.[3] Wholly at odds with legal precedent directing that the Court should examine, in each case, counsel's efforts, the risks attendant to the litigation and the results obtained, NYSTRS objects no matter how those factors fit into Plaintiffs' fee request. This case is no exception to that pattern.

NYSTRS's argument that there is a "growing trend" toward reduced fees by reason of the involvement of institutional plaintiffs is unfounded, is based on selective citations to inapplicable cases, and has recently been specifically rejected by several district courts. For example, in *In re Charter Communications, Inc., Sec. Litig.*, No. 4:02-CV-1186-CAS, 2005 WL 4045741, *18, *21 (E.D. Mo. June 30, 2005), the court awarded counsel a multiplier of 5.61, or 20% of a $146,250,000 settlement fund, in a case in which settlement was reached after two years of litigation and before any depositions were taken, stating,

> NYS Teachers asserts that the increased presence of institutional investors in securities class actions has resulted in a decline in fees requested, as well as awarded. While this is true in a select few mega-settlements, ***it is not a trend***. The fact remains that 33% remains the fee most frequently requested.

---

[3]  A list of these cases is set forth in Exhibit A, attached hereto.

3

*Id.* at *21 (emphasis added). In reaching this conclusion, the Court relied on a 2005 study by National Economic Research Associates, Inc. (NERA Feb. 2005, at pp. 9-10).[4] Similarly, in *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005), the court awarded counsel a 4.7 multiplier, or 25% of an $80 million settlement fund, where settlement was reached after just 2.5 years of litigation and before any depositions, stating:

> The court notes first that the Fund Objectors [NYSTRS] unquestionably support the adequacy of the $80 million settlement and the quality of the legal services provided by plaintiffs' co-lead counsel. Nevertheless, they … believe the requested attorney fee award is not reasonable because it would be too high. Although the Fund Objectors point this court to cases that awarded percentages less than twenty-five and that resulted in multipliers of less than 4.7, the Pennsylvania Fund acknowledges the courts' trend to "approve attorneys' fees in the neighborhood of 25% with lodestar multiples in excess of four."
>
> What the court gleans from this authority is that courts award percentages below and above 25% and below and above the 3x multiplier the Fund Objectors propose. This merely reflects the considerable discretion the court has in awarding attorney fees based on the uniqueness of the cases at hand.

*Id.* at 996-997;[5] *see also id.* at 998-999 (noting that courts typically award attorneys fees between 25% and 36% in common fund class actions) (collecting cases). In *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005), the court rejected NYSTRS's objection, awarding 22.2% of the fund as fees, even though the litigation, which was filed in November 2002, was still stayed under the PSLRA as of the January 2005 settlement and the

---

[4] This 2005 study, cited with approval by the Northern District of Texas in *TXU*, 2005 WL 3148350 at *31, can be found attached hereto as Exhibit B. It shows that in 40% of cases, the fees requested were 33%. *See also Nichols v. Smithkline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *21 (E.D. Pa. Apr. 22, 2005) (30% award); *In re Ravisent Tech., Inc. Sec. Litig.*, No. 00 CV 1014, 2005 WL 697461, at *10 (E.D. Pa. Apr. 18, 2005) (33 1/3% award); *In re Heritage Bond Litigation*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, *15 (C.D. Cal. June 10, 2005) (33 1/3% award).

[5] The court in *Xcel* further stated, "To the extent that the Fund Objectors imply that the courts "traditionally accounted for economies of scale by awarding lower fees as the size of the fund increases" or set a multiplier cap, the court reads the precedent otherwise." *Id.* at 997 (internal citation omitted) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303, 307 (3d Cir.2005) ("[T]here is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizable fund" and multipliers "need not fall within any pre-defined range, provided the district court justifies the award.").

only formal discovery was conducted thereafter, to confirm the adequacy of the settlement (clearly at less risk than discovery prior to settlement), with no depositions being taken. In doing so, the court stated that fee awards "of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method" are routine and "the customary fee awarded in securities cases in this District and across the country is 30% or more." *Id.* at *27 (setting forth an extensive list of cases in support of court's conclusion); *id.* at *31.

In *Rite Aid,* over NYSTRS's objection, the court granted fees equal to 25% of the settlement fund, initially resulting in a 4.07 multiplier, even though the case lasted only four years, a partial settlement of $193 million was previously reached (one and one-half years into the litigation) in which counsel had already received 25% in fees; all three individual defendants were under criminal indictment and set for trial in the near future; and the SEC was conducting its own investigation into the alleged fraud. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2003) (first settlement); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603 (E.D. Pa. 2005) (second settlement). On appeal, the Third Circuit generally approved the district court's award of fees, citing several studies reviewed by Professor John Coffee of Columbia Law School that supported a proposed award of 25% of the $126.6 million settlement in that case:

> [T]he District Court found persuasive three studies referenced by Professor Coffee: ***one study of securities class settlements over $10 million that found an average percentage fee recovery of 31%;*** a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period that found a median percentage recovery range of 27-30%; and a third study of class action settlements between $100 million and $200 million that found recoveries in the 25-30% range were "fairly standard." [ *Rite Aid,* 269 F.Supp.] at 610. We see no abuse of discretion in the District Court's reliance on these studies [in granting an award of 25%].

5

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 303, 307 (3d Cir.2005) (emphasis added).[6]  On remand, the district court reaffirmed the award, which resulted in a multiplier of 6.96, and again rejected the objections filed by NYSTRS and the other pension funds.  *In re Rite Aid Corp. Sec. Litig.*, No. 99-1349, 2005 WL 697461 at *2 (E.D. Pa. Mar. 24, 2005).

Finally, in *In re Adelphia Communications Corp. Sec. and Deriv. Litig.*, 03 MDL 1529 LMM, 03 Civ. 5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), the court granted approximately $97 million in fees from a settlement of $455 million, representing a lodestar multiple of 2.89, though the case lasted just over three years, and there were government investigations and indictments.  *Id.* at *2.  The court granted counsel's fee request over the objection of NYSTRS, noting that it "considered the arguments of the objectors and does not find them persuasive," *id.*, due in part to the fact that "each case must be evaluated individually." *Id.* at *1 (citing *Goldberger*, 209 F.3d at 51-52).  The court favorably cited a declaration by Professor Coffee in reaching its conclusion.  *Id*.

Thus, *Rite Aid*, *Charter*, *TXU*, *Xcel*, and *Adelphia* all have in common:

- The cases were all "younger" and less advanced than the instant litigation;

- Each court cross-checked the percentage award requested against the lodestar multiplier, which exceeded the multiplier sought in this case by between two and three times; and

- *Each court, presented with substantially the same objection filed by NYSTRS, rejected the arguments presented therein, finding scant persuasive value in an objection that fails to examine the unique circumstances of the case.*

### III. INSTITUTIONAL LEAD PLAINTIFFS HAVE SUPPORTED FEE AWARDS WHICH APPROXIMATE, ARE EQUAL TO, AND EVEN EXCEED THAT REQUESTED BY LEAD COUNSEL

---

[6]  The Coffee Study submitted in *Rite Aid* confirms the reasonableness of Plaintiffs' request in this case. Following *Rite Aid*, the courts in *Xcel*, *TXU* and *Charter* all relied on the analysis of the Coffee Study in *Rite Aid* in awarding fees.  Thus, this Court can rely on the *Rite Aid* analysis as well.  To the extent that the Court would like a copy of the study relied upon in *Rite Aid*, Plaintiffs' counsel will endeavor to obtain a copy of the filed document and provide it to the Court.

6

NYSTRS asserts that the increased presence of institutional investors in securities class actions has resulted in a decline in fees requested, as well as awarded. While this is true in select cases, as set forth above, it is certainly not the trend. Awards comparable to or equal to that requested here have been granted even where the lead plaintiff is an institutional investor.[7] *See In re Oxford Health Plans, Inc. Sec. Litig.*, MDL N. 1222, Order and Final Judgment (S.D.N.Y. filed June 12, 2003) (28% of $300 million settlement); *In re IKON Office Solutions, Inc.,* 194 F.R.D. 166 (E.D. Pa. 2000) (30% of $111 million settlement, 2.7 multiple); *In re Mercury Finance Co.*, No. 97 C 3035 (N.D. Ill.) (Orders filed July 27, 2000 and filed July 9, 2000) (33 1/3% of $56.4 million settlement); *Morse v. McWhorter*, No. 3-97-0370, 25 Class Action Rep. 220-21 (2004) (E.D. Tenn.) (Order filed Mar. 12, 2004) (30% of $43.5 settlement); *Sands Point Ptnrs., L.P. v Pediatrix Med. Group*, No. 99 CV 6181, 2002 U.S. Dist. LEXIS 25721 (S.D. Fla. May 3, 2002) (30% of $12 million settlement); *In re Lotus Development Corp. Sec. Litig.*, No 94-11279 (D. Mass.) (Order filed July 10, 1998) (30% of $7.5 million settlement).

While institutional investors have negotiated lower fee rates during the course of litigation in various cases (where potential recoveries were far larger than in this case), it is unfair to speculate with hindsight what such a rate could have been in this case, much less assume that it would be significantly below the *prevailing* "market rates" for attorneys in contingent lawsuits.[8] *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). The 33 1/3% fee request is equal to or less than contingency fees typically negotiated by plaintiffs in non-class litigation. *See Blum v. Stenson*, 465 U.S. 886, 902 n. * (1984) (Brennan, J., Marshall, J.,

---

[7]    The unpublished opinions cited herein are attached as Exhibit C in alphabetical order.

[8]    Moreover, many firms negotiate retainer agreements with institutional investors that provide the law firm the opportunity to file multiple cases on behalf of that institution. Thus, the law firm is able to diversify risk by becoming lead counsel in several cases. This factor alone explains why a law firm would be willing to take a lower fee in a particular case.

7

concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.").[9]

## IV. THE CASES CITED BY NYSTRS CONFIRM THE REASONABLNESS OF LEAD COUNSEL'S FEE PETITION

The cases cited by NYSTRS actually support the reasonableness of lead counsel's fee petition. As set forth below, while counsel in these cases received fees less than 30 % of the settlement fund, in virtually all of them, the fees awarded reflected a much larger multiplier than is requested here;[10] the litigations were nowhere near as protracted as the instant one; and involved significantly less risk than was present here:

- In *Qwest Communications International, Inc. Securities Litigation*, No. 01 CV 01451 REB PAC, 2006 WL 650375 (D. Colo. Mar. 10, 2006), the court reduced the requested lodestar multiple of 5.1 to 3.3, noting that such an enhancement is reasonable. *Id.* at *16;

- In *In re Elan Securities Litigation*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005), the court held that "[T]he risk to counsel of pursuing this case on a contingency basis is 'perhaps the foremost' factor to be considered in determining whether to award an enhancement." *Id.* at 374 (citing *Goldberger*, 209 F.3d at 54). Although the court found that the case presented only modest risk, it determined a lodestar multiple of 3.47 to be reasonable;

- In *In re Interpublic Securities Litigation*, No. 02 Civ. 6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004), the court, noting the short duration of the litigation, reduced the requested multiple of 5.62 to 3.96, which the court found to be "reasonable under the *Goldberger* factors," *id.* at *12, almost double the requested fee multiplier in this case;

- In *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005), the court rejected a request for fees which would have

---

[9]   *See also In re IKON*, 194 F.R.D. at 194 (awarding 30%, and acknowledging that in private contingency tort matters, plaintiffs' counsel routinely negotiate agreements between 30%-40%); *In re Prudential-Bache Energy Income Pshps. Sec. Litig.*, No. 888 Sec. E, 1994 WL 202394, at * 2 (E.D. La. May 18, 1994) (fees between 30% and 40% are commonly contracted for in contingency cases).

[10]   The appropriate percentage is driven, in part, by counsel's lodestar. "[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen. Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50 (citation omitted). Ironically, in *Charter*, *Xcel*, and *Rite Aid*, NYSTRS based its objections on claims that lodestar did not justify the percentage requested because the multiple was too great. These courts, in approving multiples of 5.61, 4.7 and 6.96, respectively, each rejected NYSTRS's position, stressing that there is no mandate that multipliers "fall within any pre-defined range, provided the district court justifies the award." *Xcel*, 364 F. Supp. 2d at 997 (quoting *Rite Aid*, 396 F.3d at 306); *Charter*, 2005 WL 4045741 at *22 (quoting *Rite Aid*, 396 F.3d at 301) (where the Third Circuit cautioned against setting fees in a "formulaic way").

8

resulted in a multiplier of 5.42 and, instead, awarded a 3.5 multiplier on Plaintiffs' counsel's lodestar. The court stated that it did so because, in the Ninth Circuit, multiples above 4.0 are discouraged. *Id.* at *13.

- In *In re Infospace Inc. Sec. Litig.*, 330 F. Supp. 2d 1203 (W.D. Wash. 2004), the award made by the court conferred a 3.5 multiple on counsel. In reducing the requested fee, the court stated, "Defendants did file a motion to dismiss, but a response was never prepared or filed. No discovery occurred in this case…The amount of time and effort exerted by counsel was not extensive and does not support a substantial multiplier." *Id*. at 1214;

- *In re HPL Technologies, Inc. Sec. Litig.*, 366 F. Supp. 2d 912 (N.D. Cal 2005) (finding reasonable multipliers ranged from 1.67 to 3.59, the court awarded a 2.63 multiplier);

- *In re Microstrategy, Inc; Securities Litigation*, 172 F. Supp. 2d 778 (E.D. Va. 2001) (awarding a lodestar multiplier of 2.6, substantially higher than the enhancement requested in this case);

- In *DPL, Inc. Securities Litigation*, 307 F. Supp. 2d 947 (S.D. Ohio 2004), the court awarded a multiplier of approximately 28.6, even though class counsel merely filed an amended complaint and a memorandum in opposition to defendants' motion to dismiss. *Id.* at 954. The court commented that "it can be seen that Plaintiffs' counsel devoted a relatively small amount of time to this litigation." *Id*.

Moreover, many of the fee awards relied on by NYSTRS were undoubtedly driven by liability factors specific to those cases and not to any trend toward reduced fees, and are thus distinguishable from the circumstances present in *this* case. For example, in *Cendant PRIDES*, liability was conceded from the outset of the case. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735-36 (3rd Cir. 2001). In *Gemstar-TV Guide Int'l*, there was an SEC action which ultimately recovered approximately 30% of the $32.5 million recovered by class counsel and the defendants' conduct was so egregious that the SEC froze the assets of senior insiders. *See generally SEC v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031 (9th Cir. 2005). In *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005), there had been several investigative articles describing the alleged misconduct, and the court found relevant to risk the existence of a simultaneous SEC investigation. In *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 299 (S.D.N.Y. 2005), there was an SEC investigation pending throughout the litigation, and in *In re*

9

*Critical Path, Inc. Sec. Litig.*, No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002), there was an SEC investigation, an indictment, and guilty pleas. Here, there was no financial restatement, no governmental investigation or involvement and no admission of wrongdoing. The risks of recovery in the cases cited by NYSTRS were not nearly as high as the risk presented in this case and counsel's effort required to obtain the results in those cases was far less than Plaintiffs' counsels' counsel expended in this case.[11]

## CONCLUSION

NYSTRS has often objected to settlements at the last instant, without researching or addressing those litigations. PSERS has regularly filed tag-along objections, relying on NYSTRS. For this litigation, in making their objections, NYSTRS and PSERS have made no attempt to evaluate the circumstances attendant to the litigation and, instead, simply assert that counsel should get less because some other courts have awarded lesser amounts. The modest 1.98 times multiplier which Plaintiffs' counsel would receive with a 30% fee confirms the reasonableness of the award. Consequently, Lead Counsel respectfully requests that the objections be denied.

Dated: June 21, 2007

Respectfully submitted,

/s/ Eben F. Duval_____
**JOHNSON & PERKINSON**
Dennis J. Johnson
Jacob B. Perkinson
Eben F. Duval
1690 Williston Road
P.O. Box 2305

---

[11] The risks encountered by counsel here also demonstrate the appropriateness of the requested lodestar. Defendants' counsel argued that it would cost $24 million to review the electronic discovery necessary to compile the documents need by Plaintiffs and continuously argued that Plaintiffs should pay for the search. Even Plaintiffs' electronic discovery expert opined that such discovery would cost in excess of $200,000. Thus, the risks borne by Plaintiffs' counsel here warrant a 30% attorney fee award. *See In re Heritage Bond Litigation*, 2005 WL 1594389, *15 (C.D. Cal. 2005) ("Given that the brunt of the risk was absorbed by only two firms militates in favor of awarding attorneys' fees in the amount of one-third of the Settlement Fund.")

South Burlington, VT 05403
Tel: (802) 862-0030
Fax: (802) 862-0060

**SCOTT + SCOTT, LLP**
David R. Scott (CT16080)
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Tel:  (860) 537-5537
Fax:  (860) 537-4432

**SCOTT + SCOTT, LLP**
Beth A. Kaswan (CT21415)
19th Floor, Suite 1915
75 Rockefeller Plaza
New York, NY  10019
Tel:  (212) 710-1040
Fax:  (212) 710-1041

**SCOTT + SCOTT, LLP**
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH  44022
Tel:  (440) 247-8200
Fax:  (440) 247-8275

**Co-Lead Counsel for Plaintiffs**