**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| _____ | : | **MASTER FILE NO.** |
| | : | **3:00CV01884(AVC)** |
| This document relates to: | : | |
| | : | |
| ALL ACTIONS | : | |

**MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................1

     A.     Plaintiffs' Counsel Should Be Awarded Fees as a Percentage of
          the Common Fund Created as a Result of the Settlement ..........................2

     B.     The Requested Fee is Fair and Reasonable as a Percentage of the Fund
          Created for the Benefit of Class Members and Consistent
          with Fee Awards in Comparable Cases ......................................................4

          1.     The Time and Labor Expended by Counsel ...................................6
          2.     The Magnitude and Complexity of the Litigation ..........................8
          3.     The Risk of the Litigation ...............................................................9
          4.     The Quality of Representation and the Result Achieved ..............12
          5.     The Relation of the Requested Fee to the Settlement ...................13
          6.     Public Policy Considerations ........................................................13

     C.     A "Cross-Check" of Plaintiffs' Counsel's Lodestar Demonstrates the
          Reasonableness of the Requested Award ......................................................

     D.     Plaintiffs' Counsel Should be Reimbursed for their Reasonably Incurred
          Litigation Expenses ................................................................................. 15

CONCLUSION ...........................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Adair v. Bristol Tech. Sys.*,
   No. 97 Civ. 5874, 1999 WL 1037878  (S.D.N.Y. Nov. 1999) .................................................... 5

*Agent Orange Prod. Liab. Litig.*,
   818 F.2d 226, 236 (2d Cir. 1987)............................................................................................ 11

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ................................................................................................. 11

*AOL Time Warner, Inc. Securities*,
   No. 02civ5575, 2006 WL 3057232 (S.D.N.Y. Oct. 2006) ........................................................ 3

*APAC Teleservices, Inc. Sec. Litig.*,
    No. 97 Civ. 9145 (S.D.N.Y. Dec. 2001)............................................................................. 4, 15

*Apple Computer Sec. Litig.*,
   [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 252 (N.D. Cal. Sept. 6, 1991) ........... 11

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990).................................................................................................... 11

*Baesa Sec. Litig.*,
   Nos. 96 Civ. 7435, 96 Civ. 8141 (S.D.N.Y. 1998) ................................................................... 4

*Bateman Eichler v. Berner*,
   72 U.S. 299, 86 L. Ed. 2d 215, 105 S. Ct. 2622 (1985)........................................................... 13

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ....................................................................................... 4

*Biogen Sec. Litig.*,
   No. 94-12177-PBS (D. Mass. 1999)........................................................................................ 10

*Blech Sec. Litig.*
    No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 2002)................................. 4

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980);................................................................................................................. 2

*Bolar Pharm. Co. Sec. Litig.*,
  966 F.2d 731 (2d Cir. 1992) ........................................................................... 4

*Buspirone Patent*,
  01-MD-1410 (S.D.N.Y. Apr. 11, 2003) ......................................................... 15

*Cherner v. Transitron Elec. Corp.*,
  221 F. Supp. 55 (D. Mass. 1963). ................................................................. 11

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), ......................................................................... 11

*Clorox Co. Sec. Litig.*,
  238 F. Supp. 2d 1139 (N.D. Cal. 2002) ........................................................ 11

*Columbia Sec. Litig.*,
  No. 89 Civ. 6821 (LBS) (S.D.N.Y. Feb. 1995) .............................................. 4

*Cosgrove v. Sullivan*,
  759 F.Supp. 166 (S.D.N.Y.1991) ................................................................... 6

*Dreyfus Aggressive Growth Mut. Fund Litig.*,
  No. 98 Civ. 4318, U.S. Dist. LEXIS 8418 (S.D.N.Y. 2001), ........................ 11

*Eisenstadt v. Centel Corp.*,
  113 F.3d 738 (7th Cir. 1997) ....................................................................... 10

*Fine Host Corp. Sec. Litig.*,
  No. MDL 1241, 3:97-CV-2619, 2000 WL 33116538 (D. Conn. 2000) ................... 3, 4, 14, 15

*Freedman v. Value Health, Inc.*,
  No. 01-7567, 34 Fed. Appx. 408  (2d Cir. 2002) .......................................... 10

*Generics Corp. Sec. Litig.*,
  [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,719 (S.D.N.Y. 1980). ........................ 14

*Gierlinger v. Gleason*,
  160 F.3d 858 (2d Cir. 1998); ....................................................................... 14

*Glendora Cmty. Redevelopment Agency v. Demeter*,
  202 Cal.Rptr. 389 (App.2d Dist.1984) ........................................................... 6

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000); .......................................... 3, 4, 6, 8, 9, 12, 14, 15

*Grant v. Martinez,*
   973 F.2d 96 (2d Cir. 1992); .................................................................................................. 14

*Health Management, Inc. Sec. Litig.,*
   No. 96-CV-889 (ADS) (E.D.N.Y. 1999) ................................................................................ 10

*Heritage Bond Litigation,*
   No. 02-ML-1475-DT (RCX), WL 1594389, *15 (C.D. Cal. June 2005). ................................. 8

*In-Store Adver. Sec. Litig.,*
   No. 90-CIV. 5594 (PKL) (S.D.N.Y. Dec. 1996) .................................................................... 4

*Klein ex rel. Ira v. PDG Remediation,*
   No. 95 Civ. 4954, 1999 WL 38179 *4 (S.D.N.Y. Jan. 1999) .................................................. 4

*Lemmer v. Golden Books Family Entm't Inc.,*
   No. 98 Civ. 5748 (S.D.N.Y. Oct.1999) .................................................................................. 4

*Lloyd's American Trust Fund Litigation,*
   2002 WL 31663577 *26-28 (S.D.N.Y. Nov. 2002), ................................................................ 5

*Maley,*
   186 F. Supp. 2d at 369 ................................................................................................... 3, 15

*Maywalt v. Parker & Parsley Petroleum Co.,*
   963 F. Supp. 310 (S.D.N.Y. 1997), *aff'd*, (2d Cir. 1998) ...................................................... 4

*Mills v. Elec. Auto-Lite Co.,*
   396 U.S. 375 (1970) ............................................................................................................. 2

*Missouri v. Jenkins,*
   491 U.S. 274 (1989) ........................................................................................................... 14

*Moelis v. Hyperion Capital Mgmt., Inc.,*
   No. 94 Civ. 3328 (S.D.N.Y. Oct. 1997) ................................................................................ 4

*Nasdaq,*
   187 F.R.D. at 489 ................................................................................................................ 5

*Netease.com, Inc. Sec. Litig.,*
   No. 01-CV-9405 (RO), (S.D.N.Y. May 2003) ....................................................................... 4

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
   711 F.2d 136 (2d Cir. 1983) ................................................................................................ 14

*Newman v. Caribiner Int'l Inc.*,
   No. 99 Civ. 2271 (S.D.N.Y. Oct. 2001)................................................................................. 5, 15

*O'Brien v. National Property Analysts*,
   88 Civ. 4153, TR P. 72 (S.D.N.Y. July 27, 1989); ................................................................. 5

*Rabin v. Concord Assets Group, Inc.*,
   [1991-92 Transfer Binder] Fed. Sec. L. Rep. (CCH) p. 96,471 (S.D.N.Y.1991) ...................... 5

*JWP, Inc. Sec. Litig.*,
   No. 92 Civ. 5815 (S.D.N.Y. Jan. 24, 1997) ........................................................................... 4

*RJR Nabisco*,
   1992 U.S. Dist. LEXIS 12702, at *15-16 ............................................................................... 4

*RMED Int'l, Inc v. Sloan's Supermarkets, Inc.*,
   No. 94 Civ. 5587, WL 21136726 *2 (S.D.N.Y. May 2003).................................................... 4

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ......................................................................................... 10

*Roberts v. Texaco, Inc.*,
   979 F.Supp. 185 (S.D.N.Y.1997)......................................................................................... 5

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999).......................................................................................... 3, 14

*SLM Int'l, Inc. Sec. Litig.*,
   No. 94 Civ. 3327 (RLC) (S.D.N.Y. July 1996) ...................................................................... 4

*Steiner v. Williams*,
   No. 99 Civ. 10186, WL 604035 *6 (S.D.N.Y. May 2001).................................................. 4, 11

*Strougo*
   258 F. Supp.2d 254 (S.D.N.Y. 2003).................................................................................... 4

*TBK Partners, Ltd. v. Warshow*,
   [1977-1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,196, at 92,402 (S.D.N.Y. Oct. 6, 1997). ................................................................................................................................. 15

*Trustees v. Greenough*,
   105 U.S. 527 (1882).......................................................................................................... v

*Union Carbide*,
   742 F. Supp. at 163 ................................................................................................. 4, 12, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96, 123 (2d Cir.2005)..........................................................................3

*Warnaco Group, Inc., Securities;*
   WL 1574690 *2 (S.D.N.Y. July 2004);.............................................................15

*Warner Communications Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),..................................................................12

*Wedtech Sec. Litig.*,
   No. M21-46, MDL 735 (S.D.N.Y. July 1992)......................................................4

*Weiss v. Mercedes-Benz of N.Am., Inc.*,
   899 F.Supp. 1297 (D.N.J.1995) ........................................................................6

*Weseley v. Spear, Leeds & Kellogg*,
   711 F.Supp. 713 (E.D.N.Y.1989) ......................................................................4

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710, 743-44 (S.D.N.Y. 1970),....................................................11

## Other Authorities

15 U.S.C. §78u-4(a)(4) ......................................................................................iii

## I.    INTRODUCTION

This Memorandum is submitted in support of the application by Plaintiffs' counsel for an award of attorneys' fees in the amount of 30% of the Settlement Fund and reimbursement of $1,394,422.57 in litigation expenses, including costs and expenses awardable consistent with 15 U.S.C. §78u-4(a)(4) to Lead Plaintiffs.  The requested fee represents a modest 1.98 multiple of Plaintiffs' counsel's lodestar.

The Settlement obtained in this case – consisting of $80 million in cash – is extraordinary given the many obstacles Plaintiffs faced as described in the Memorandum in Support of Final Approval of Proposed Class Action Settlement (the "Settlement Memo"), and in the Joint Declaration of David R. Scott and Jacob B. Perkinson in Support of Final Approval of Proposed Class Action Settlement and Award of Attorneys' Fees and Expenses (the "Joint Declaration"). This exceptional result is due to the tenacious and skillful efforts of Plaintiffs' counsel, who prosecuted this case for almost seven years on a contingent basis.  Defendants, by their counsel, who are well known and regarded as some of the most formidable in the profession, mounted an arduous defense.  In the face of vigorous, time-consuming and expensive opposition, Plaintiffs' counsel constructed a compelling case and refused early settlement overtures that they deemed inadequate.   Plaintiffs' counsel's skill and diligence in prosecuting this action, and their willingness to take this case to repeated mediations until they obtained the right result, and if not, to trial, and to assume the risk that their significant investment of lodestar and out-of-pocket expenses could be lost rather than accept a less than optimum settlement offer, merits the requested fee in this case.   Indeed, higher percentages and lodestar multipliers have been awarded in numerous cases that were far less risky.

The Class does not disagree.  In accordance with this Court's May 11, 2007 Order, copies of the Settlement Notice were mailed to at least 88,893 potential Class Members, and a Summary Notice was published in all of the editions of the *Wall Street Journal* and *USA Today*.  Joint Declaration,  ¶¶90-93.   The Settlement Notice described the litigation and the proposed Settlement, as well as Plaintiffs' counsel's intent to request an award of fees of up to one-third of

the Gross Settlement Fund and reimbursement of their expenses.  The Settlement Notice also informed Class Members of their right to object to this application.  The deadline for filing an objection has passed.  Only one Class member has raised any formal objections on the subject of a fee petition – and that was made in response to the statement in the notice that counsel could request fees "up to" one-third of the Settlement Fund.[1]  However, Plaintiffs' counsel are not requesting an award of one-third of the Settlement Fund.  Instead, having now fully considered the lodestar contributions of all attorneys working on this case and for whom information was provided, Lead Counsel are requesting a fee award of 30% of the Settlement Fund, which constitutes a 1.98 time multiplier of the attorneys' lodestar.

Thus, consistent with the prevailing standards in the Second Circuit, Plaintiffs are applying to the Court for a reasonable and appropriate award given the complexities of this action, the sizeable award obtained and the enormous commitment of time and resources expended to successfully litigate this action. Moreover, the overwhelming positive response to the settlement itself from Class Members, including numerous sophisticated financial institutions who received notice in this case, and the limited number of objections to the fee application ceiling are further grounds for finding that the requested fee award is reasonable and appropriate.

A.     **Plaintiffs' Counsel Should Be Awarded Fees as a Percentage of the Common Fund Created as a Result of the Settlement**

Courts have long recognized that when, as in this case, a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375 (1970).  This "equitable" or "common fund" doctrine established more than a century ago in

---

[1]     Plaintiffs' response to this objection is addressed in the Lead Plaintiffs' Response to the New York State Teachers' Retirement System's Objection to Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Response to Objection") filed concurrently herewith.  While not a formal objection or consistent with the Court's directives as to the prerequisites for making an objection, one other Class member, the Commonwealth of Pennsylvania Public School Employees' Retirement System also wrote a letter to the Court indicating that it was making a "conditional" objection to a one-third fee award.  Plaintiffs' Response to Objection applies to both.

*Trustees v. Greenough*, 105 U.S. 527 (1882), spreads the cost of the litigation, including attorneys' fees, among the fund's beneficiaries.

Courts traditionally have used two methods to calculate attorneys' fees in common fund cases: (i) the percentage method, which awards attorneys' fees as a percentage of the common fund created for the benefit of the class; and (ii) the lodestar/multiplier approach, which multiplies the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience, and enhances the resulting lodestar figure by an appropriate multiplier to reflect the litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.  *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999); *Maley*, 186 F. Supp. 2d at 369-70.

The Second Circuit has held that both the percentage and lodestar/multiplier methods are available to district courts in awarding attorneys' fees in common fund cases, and that one option is to apply the percentage method, while using the lodestar as a check on the reasonableness of the award.  *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 123 (2d Cir.2005) ("As a "cross-check" to a percentage award, courts in this Circuit use the lodestar method.") (citing *Goldberger*, 209 F.3d at 50); *In re AOL Time Warner, Inc. Securities*, No. 02civ5575, 2006 WL 3057232, at *11, 23 (S.D.N.Y. Oct. 25, 2006) ("As this Circuit's law requires, I have cross-checked my tentative percentage calculation against the lodestar"…"the lodestar is used as a cross-check rather than the primary calculus."); *In re Fine Host Corp. Sec. Litig*., No. MDL 1241, 3:97-CV-2619, 2000 WL 33116538, at *4 (D. Conn. 2000) ("The court finds it appropriate to apply the percentage method in this case while remaining cognizant of the policy considerations favoring the lodestar calculation and using the lodestar documentation "as a 'cross check' on the reasonableness of the requested percentage.").

No matter which method is chosen – percentage or lodestar/multiplier – the fees awarded in common fund cases must be "reasonable" under the circumstances.  *Goldberger,* 209 F.3d at 47; *In re Fine Host*, 2000 WL 33116538, at *4.  "What constitutes a reasonable fee is properly

committed to the sound discretion of the district court, … and will not be overturned absent an abuse of discretion, such as mistake of law or a clearly erroneous factual finding." *Goldberger,* 209 F.3d at 47;[2] *In re Fine Host,* 2000 WL 33116538, at *4.  The Second Circuit has instructed that in exercising their discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…., (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger,* 209 F.3d at 50, quoting *Union Carbide,* 742 F. Supp. at 163; *In re Fine Host,* 2000 WL 33116538, at *4.  As the *Union Carbide* court observed, in applying these criteria, "a Court essentially makes no more than a qualitative assessment of a fair legal fee under all the circumstances of the case." *Union Carbide,* 724 F. Supp. at 166.

**B.    The Requested Fee is Fair and Reasonable as a Percentage of the Fund Created for the Benefit of Class Members and Consistent with Fee Awards in Comparable Cases**

Irrespective of the method employed, the requested fee in this case is consistent with fee awards in comparable cases.  There are many recent common fund cases in which district courts in the Second Circuit have awarded fees totaling as much as 33 1/3% of the settlement fund, and here counsel are only requesting 30%.  *See, e.g., In re Netease.com, Inc. Sec. Litig.,* No. 01-CV-9405 (RO), slip op. at 3 (S.D.N.Y. May 16, 2003) (awarding 33 1/3% of the settlement fund); *RMED Int'l, Inc v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 WL 21136726 *2 (S.D.N.Y. May 15, 2003) (awarding 33 1/3% of the settlement fund); *Strougo,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (held that 33 1/3% of the settlement fund was reasonable); *Maley,* 186 F. Supp. 2d at 370 (awarding 33 1/3% of the settlement fund); *In re Blech Sec. Litig.,* No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002) (awarding 33 1/3% of the settlement fund); *In re APAC Teleservices, Inc. Sec. Litig.,* No. 97 Civ. 9145, slip op. at 2

---

[2]    The Second Circuit has held that the already deferential "abuse of discretion" standard of review "takes on special significance when reviewing fee decisions," *Goldberger,* 209 F.3d at 47 (acknowledging that "[t]he district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record.")  *See also In re Bolar Pharm. Co. Sec. Litig.,* 966 F.2d 731, 732 (2d Cir. 1992) (per curiam).

(S.D.N.Y. Dec. 10, 2001) (awarding 33 1/3% of the settlement fund); *Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) (awarding 33 1/3% of the settlement fund).[3]

In *In re Lloyd's American Trust Fund Litigation*, 2002 WL 31663577 *26-28 (S.D.N.Y. Nov. 26, 2002), Judge Sweet, after surveying attorney fee decisions, approved a requested fee of 28% (including expenses) of a settlement fund of an excess of $20,000,000 and a multiplier of 2.09 times lodestar, noting the 2 times multiplier was at the "lower end" of the range normally awarded in the Second Circuit:

> The fee requested here represents a multiplier of just 2.09 to the cumulative lodestar of all plaintiffs' firms. Under the lodestar method, a multiplier is typically applied to the lodestar in recognition of the contingency risk as well as other factors. *Steiner*, 2001 U.S. Dist. LEXIS 7097, at *19 (noting that the risk of success has been identified as the foremost factor in determining whether to award a fee enhancement); *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 716 (E.D.N.Y.1989) ("The most significant factor in the calculation of an upward adjustment is the risk of the litigation.").
>
> This Court approved a multiplier of approximately 3.97 in *In re Nasdaq*, 187 F.R.D. at 489, noting the Honorable Leonard B. Sand's observation that "[i]n recent years multipliers of between 3 and 4.5 have become common." *Rabin v. Concord Assets Group, Inc.*, [1991-92 Transfer Binder] Fed. Sec. L. Rep. (CCH) p. 96,471 (S.D.N.Y.1991) (applying a 4.4 multiplier), *quoting O'Brien v. National Property Analysts*, 88 Civ. 4153, TR P. 72 (S.D.N.Y. July 27, 1989); *see, e.g., Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 198 (S.D.N.Y.1997) (5.5 multiplier); *In re RJR Nabisco*, 1992 U.S. Dist. LEXIS 12702, at *15-16 (6 multiplier). Much

---

[3]      *See also Adair v. Bristol Tech. Sys.*, No. 97 Civ. 5874, 1999 WL 1037878 at *3-4 (S.D.N.Y. Nov. 16, 1999) (awarding 33% of the settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee, plus expenses, is "well within the range accepted by courts in this circuit"); *Lemmer v. Golden Books Family Entm't Inc.*, No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) (awarding 1/3 of the settlement fund); *Klein ex rel. Ira v. PDG Remediation*, No. 95 Civ. 4954, 1999 WL 38179 at *4 (S.D.N.Y. Jan. 28, 1999) (awarding 33% of the settlement fund); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997), *aff'd*, (2d Cir. 1998) (awarding 33% of the settlement fund); *Moelis v. Hyperion Capital Mgmt., Inc.*, No. 94 Civ. 3328 (S.D.N.Y. Oct. 16, 1997) (awarding 33.33% of the settlement fund); *In re Baesa Sec. Litig.*, Nos. 96 Civ. 7435, 96 Civ. 8141 (S.D.N.Y. 1998) (awarding 33 1/3% of the settlement fund); *In re JWP, Inc. Sec. Litig.*, No. 92 Civ. 5815 (S.D.N.Y. Jan. 24, 1997) (awarding 33.3% of the settlement fund); *In re In-Store Adver. Sec. Litig.*, No. 90-CIV-5594 (PKL) (S.D.N.Y. Dec. 18, 1996) (awarding 33 1/3% of the settlement fund); *In re SLM Int'l, Inc. Sec. Litig.*, No. 94 Civ. 3327 (RLC) (S.D.N.Y. July 23, 1996) (awarding 33 1/3% of the settlement fund); *In re Columbia Sec. Litig.*, No. 89 Civ. 6821 (LBS) (S.D.N.Y. Feb. 15, 1995) (awarding 1/3 of the settlement fund); *In re Allstate Inns Sec. Litig.*, No. Civ. A. 88CIV 9282, 1991 WL 352491 (S.D.N.Y. Nov. 20, 1991) (awarding 35% of the settlement fund); *In re Wedtech Sec. Litig.*, No. M21-46, MDL 735 (S.D.N.Y. July 30, 1992) (granting fee award of one-third of the settlement fund). Although district courts in this Circuit have awarded fees in a lower range in certain common fund cases, these lower awards were based on findings that there was little, if any, litigation or contingency risk in the case. *See, e.g., Goldberger*, 209 F.3d at 53-54 (finding that "this was a 'promising case,' with almost certain prospects of a large recovery from solvent defendants," in which a preceding government investigation resulting in guilty pleas "dramatically increased [plaintiffs'] chances of success").

higher multipliers have been awarded as well.  *See, e.g., Weiss v. Mercedes-Benz of N.Am., Inc.*, 899 F.Supp. 1297, 1304 (D.N.J.1995) (awarding fee that resulted in a multiplier of 9.3 times hourly rate), *aff'd*, 66 F.3d 314 (3d Cir.1995); *Glendora Cmty. Redevelopment Agency v. Demeter*, 202 Cal.Rptr. 389, 398-99 (App.2d Dist.1984) (12 times lodestar).  *See also Cosgrove v. Sullivan*, 759 F.Supp. 166-67 n. 1 (S.D.N.Y.1991) (multiplier of 8.74 based on $1 million fee against lodestar of $114,398).

Judge Sweet also explained that the low award in *Goldberger* was attributable to the fact that there, "counsel had benefitted from the work done by the federal authorities during both criminal and civil actions brought against certain of the defendants, the claims involved no novel issues of law and the case was generally without risk."  *Id.*  Here, Plaintiffs' counsel had no such assistance.  In keeping with the authorities in the Second Circuit, and as discussed more fully below, the requested award is warranted and reasonable, and fully satisfies the six *Goldberger* criteria.

### 1.    The Time and Labor Expended by Counsel

The first *Goldberger* factor – the time and effort expended by counsel – supports the requested fee award in this case.  Plaintiffs' counsel have a total combined lodestar of over $12.1 million, which represents over 31,768 hours expended in litigating this case.  This enormous effort, which yielded the exceptional $80 million Settlement before the Court, was reasonable and necessary in light of the complexity of this case and the vigorous defense mounted by Defendants.

As discussed above and in the Joint Declaration, during the years this action has been pending, Plaintiffs' counsel have, among other things:

- Comprehensively investigated materials publicly available including SEC filings, reports of analyst conferences and other materials (*See, e.g.,* Joint Declaration at ¶¶30-35);

- Investigated Plaintiffs' claims through the review of millions of pages of documents produced by Priceline, WebHouse, Deloitte and non-parties (*See, e.g.,* Joint Declaration at ¶51);

- Consulted with expert advisors regarding the accounting and damages issues (*See, e.g.,* Joint Declaration at ¶33);

- Conducted extensive and on-going legal research and drafting in connection with the preparation of the initial complaint, the Amended Complaint, and extensive pre-trial litigation and motion practice (*See, e.g.,* Joint Declaration at ¶¶30-45);

- Researched, drafted and filed oppositions to Defendants' motions to dismiss (Joint Declaration at ¶¶37-42);

- Formulated litigation strategy and coordinated the work and assignments of all Plaintiffs' counsel in conferences among Plaintiffs' Co-Lead Counsel conducted on a regular basis, and communicated with clients (*See* Joint Declaration at ¶29);

- Prepared for and participated in the multiple mediations of Plaintiffs' claims (Joint Declaration at ¶¶67-71);

- Negotiated the settlement with Defendants' counsel(Joint Declaration at ¶¶67-71); and

- Attended to matters related to the administration of the Settlement (Joint Declaration at ¶¶89-100).

Plaintiffs in this case alleged and were prepared to prove at trial that Priceline and its officers and directors acted knowingly or recklessly in issuing Priceline's financial and other public statements throughout the Class Period. Evidence in support of the theories in this case was developed without the benefit of earlier or concurrent government investigations or the restatement by Priceline of its financial statements.

The hours expended by Plaintiffs' counsel in prosecuting this case are reasonable and necessary in light of the extraordinary obstacles that Defendants erected to producing their records. *See, e.g.* the Joint Declaration, ¶¶ 46 to 63. Discovery was commenced, and hotly contested, several experts in different disciplines (including damages, accounting and business valuation) were consulted, motions to dismiss were fully briefed and decided, class certification was obtained and four separate mediation sessions were held before two mediators, prior to arriving at the settlement amount achieved in this case.

As the foregoing discussion makes clear, the significant time and effort expended by counsel without any guarantee of payment supports the requested fee in this case. That this investment was made primarily by two firms who wer much smaller than those employed by the Defendants demonstrates the high risk assumed by Plaintiffs' counsel in this case:

Moreover, the risks inherent in any securities class action are multiplied when faced, and surmounted, by smaller Plaintiffs' firms, which dedicate a substantial portion of their billable hours to one case, as is true here:

Given that the brunt of the risk was absorbed by only two firms militates in favor of awarding attorneys' fees in the amount of one-third of the Settlement Fund.

The Court also notes that the Law Offices of Brian Barry was almost entirely precluded from litigating other cases. As a result, its income over the past three years was restricted and its devotion to the case was exceptionally risky. This factor also militates in favor of awarding attorneys' fees in the amount of one-third of the Settlement Fund.

*In re Heritage Bond Litigation*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, *15 (C.D. Cal. June 10, 2005).

2.     The Magnitude and Complexity of the Litigation

The second *Goldberger* factor – the magnitude and complexity of the case – also supports the requested fee award in this case.  As described in the associated papers filed in support of the settlement, this action involved complex accounting and related issues that would be difficult to prove and explain to a jury.  Proof of Plaintiffs' claims had to be developed by navigating through over five million million pages of Priceline's, WebHouse's, Deloitte's and non-parties' books and records without the cooperation of their authors.  Expert analysis was required from forensic accounting experts as well as business valuation experts. In addition, because the overall market for internet stocks also dropped sharply during the Class Period, counsel faced the equally if not more difficult task of proving loss causation and damages, which also required highly technical and complex expert analysis.

Plaintiffs' counsel's ability to obtain a recovery of this magnitude in this complex case clearly supports the requested fee.

3.     The Risk of the Litigation

The Second Circuit identifies "the risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]."  *Goldberger,* 209 F.3d at 54.

"[L]itigation risk must be measured as of when the case is filed," I*d.* at 55, rather than with the hindsight benefit of subsequent events. From the outset, there was a significant and difficult litigation, with no assurance of success.

(i)      The Risk of Establishing Liability and Damages

Unlike the litigation in *Goldberger,* which was preceded by a lengthy government investigation that resulted in guilty pleas to charges of securities fraud, in this case, Plaintiffs had to develop their theories and proof on their own. No government agents investigated the facts, no witnesses came forward as cooperators and no admissions of errors or fraud were made by Company officers or through the restatement of the Company's financial reports. For this case, the challenged financial statements had been audited and approved by one of the big four accounting firms. Due to the complexity of the accounting issues, litigation risk was immense. Plaintiffs faced the difficult task of proving their case at trial through the accounting workpapers and the testimony of hostile witnesses – Defendants and present and former Priceline and Deloitte employees – who maintained that Priceline's financial results had not been falsely stated and that Deloitte's audit complied with professional standards. Plaintiffs would also face enormous obstacles in proving that Defendants had acted knowingly or recklessly.

(ii)     The Risk of Collectibility

As described in the papers submitted in support of the settlement, there were also serious collectibility issues in this case. If litigation proceeded, Priceline's attorneys' fees, expert expenses and other litigation costs would likely exhaust most, if not all, of the remaining $30 million left on Priceline's insurance policies. And Priceline's current balance sheet reflects that Priceline would be unable to pay much more than the settlement agreed to in this case.

(iii)    The Risk that a Class Would not be Certified

Defendants vigorously opposed class certification in this action and deposed every one of the class representatives. Defendants argued against the appointment of each of the six representatives, positing arguments of atypicality and/or inadequacy as to each one of them.

Obviously, if a class had not been certified in this action, the vast amount of resources and time expended by counsel could never be recovered since no statutory fee provisions apply and the common fund doctrine is the sole basis for compensation in a case such as this making class certification critical.  The risk associated with this aspect of the case is starkly demonstrated by the fact that Defendants successfully prevented the appointment of one of the Lead Plaintiffs as a class representative.  Thus, while securities cases are universally acknowledged to be amenable to class treatment, the qualification of an appropriate representative is never certain and is always vigorously opposed and often, as in this case, successfully defeated by defendants.

(iv)  Contingency Risk

In addition to the enormous litigation and collectibility risks, Plaintiffs' counsel diligently and vigorously pursued this case on an entirely contingent basis.  Courts have recognized that the risk of non-payment in complex cases such as this one is very real and is heightened when, as in this case, Plaintiffs' counsel press to achieve the very best result for those they represent.

There are numerous class actions in which Plaintiffs' counsel expended thousands of hours and advanced significant out-of-pocket expenses and yet received no remuneration whatsoever, despite their diligence and expertise.  *See, e.g., Freedman v. Value Health, Inc.,* No. 01-7567, 34 Fed. Appx. 408  (2d Cir. 2002) (affirming district court's grant of summary judgment in favor of defendants); *In re Health Management, Inc. Sec.  Litig.,* No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities class action case);  *In re Biogen Sec. Litig*., No. 94-12177-PBS (D. Mass. 1999) (jury verdict for defendants in securities class action case); *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Eisenstadt v. Centel Corp*., 113 F.3d 738 (7th Cir. 1997) (appellate court affirmed the grant of summary judgment to defendants); *Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *In re Clorox Co. Sec. Litig., 238 F. Supp.* 2d 1139 (N.D. Cal. 2002) (summary

judgment and judgment on the pleadings granted); *In re Apple Computer Sec. Litig.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 252 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation); *see also West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) (referencing two cases which went to trial – in one case plaintiffs recovered nothing and in the other they recovered less than the amount which had been offered in settlement).[4]

The contingent nature of plaintiffs' counsel's representation is an important factor in determining a reasonable award of attorneys' fees. As the Second Circuit in *City of Detroit v. Grinnell Corp.* stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

95 F.2d 448, 470 (2d Cir. 1974), citing *Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963). *See also Steiner v. Williams,* No. 99 Civ. 10186, 2001 WL 604035 at *6 (S.D.N.Y. May 31, 2001); *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir. 1987); *Union Carbide*, 724 F. Supp. at 164 ("[C]ontingent fee risk is the single most important factor in awarding a multiplier"); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations

---

[4]    Thus, observations by some courts that "all but a small percentage of class actions settle, thereby guaranteeing counsel payment of fees and minimizing the risks associated with contingency fee limitations," *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 U.S. Dist. LEXIS 8418, at *16 (S.D.N.Y. 2001), are misguided.

omitted).  Although the Second Circuit in *Goldberge*r expressed "some doubt" that "there is a substantial contingency risk in every common fund case," 209 F.3d at 52, the enormous contingency risk in this case cannot be seriously disputed.  Plaintiffs' counsel declined offers of settlement they deemed inadequate, litigated plaintiffs' claims through multiple mediation sessions, proving that they were fully prepared to try this case and risk losing their enormous investment of attorney time and substantial out-of-pocket expenses in the absence of a fair, reasonable and adequate settlement that properly furthered the interests of their clients.

In *Goldberger*, the Second Circuit held that "[r]isk falls along a spectrum, and should be accounted for accordingly."  *Id.* at 54.  Taking into account the significant litigation and contingency risks in this case, an award by the Court of attorneys' fees in the amount requested by Plaintiffs' counsel is justified.

### 4.    The Quality of Representation and the Result Achieved

The fourth *Goldberger* factor – the result achieved and the quality of the services provided – also supports a fee award at the highest end of the range.  Here, the quality of the representation of Plaintiffs' counsel is best evidenced by the extraordinary recovery obtained for the Class – an $80 million value – and Plaintiffs' counsels' resolve to maximize the possible recovery for the Class.  The fact that the Settlement is all cash is also a significant achievement. Further, this is not a "claims made" settlement in which some indeterminate portion of the Gross Settlement Fund can revert to defendants.  This is a true fixed fund of $80 million.

As noted above, this extraordinary settlement was obtained in the face of vigorous opposition by defendants, who were represented by some of the country's leading law firms, including Robinson & Cole and Cravath, Swaine & Moore.  The ability of Plaintiffs' counsel to obtain such an extraordinary settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of Plaintiffs' counsel's representation.[5]

---

[5]    The experience of the law firms that represent plaintiffs in this action – including Class Plaintiffs' Counsel Scott+Scott and Johnson & Perkinson – is set forth in the accompanying affidavits of plaintiffs' counsel submitted

5.      The Relation of the Requested Fee to the Settlement

The fifth *Goldberger* factor – the relation of the requested fee to the Settlement – also supports the requested fee in this case.  As noted above, the requested fee is consistent with fee awards in comparable cases within the Second Circuit, and the unique circumstances of this case, the intense effort of Plaintiffs' counsel and extraordinary result obtained weigh heavily toward awarding the requested fee.

6.      Public Policy Considerations

Public policy considerations also support the requested fee in this case.  As the Court held in *Union Carbide*:

> The award of attorneys' fees in complex securities class action litigation is informed by the public policy that individuals damaged by violations of the federal securities laws should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases.  Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance.  *See Bateman Eichler v. Berner*, 472 U.S. 299, 86 L. Ed. 2d 215, 105 S. Ct. 2622 (1985).  A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.  These policies further support the award of a multiplier of counsel's lodestar fee.

724 F. Supp. at 169.  An award of the fees requested would be fully consistent with these important public policy considerations.

**C.      A "Cross-Check" of Plaintiffs' Counsel's Lodestar Demonstrates the Reasonableness of the Requested Award**

In *Goldberger*, the Second Circuit held that even in cases in which the percentage method is chosen, evaluation of the hours expended by counsel remains a useful 'cross-check' on the reasonableness of the requested percentage. *Goldberger,* 209 F.3d at 50.  "[W]here used as a mere cross-check, [however,] the hours documented by counsel need not be exhaustively scrutinized by the district court….Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case… ." *Id.* (citation omitted).

---

herewith.  As those submissions show, Plaintiffs' counsel practice extensively in the highly complex field of shareholder securities litigation.

As discussed above, the hours expended by counsel are reasonable in view of the work performed, the ferocity of the defense and the stage of the proceedings. So too are Plaintiffs' counsel's hourly rates. The Second Circuit has held that the hourly rates to be applied in calculating the lodestar are those normally charged for similar work by attorneys of comparable skill and experience in the community where the attorney practices. *Savoie,* 166 F.3d at 460; *see also In re Fine Host*, 2000 WL 33116538 at *5. In addition, the United States Supreme Court and the Second Circuit have approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *Union Carbide*, 724 F. Supp. at 163, quoting *In re Generics Corp. Sec. Litig*., [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,719, at 98,770 (S.D.N.Y. Dec. 4, 1980). *See also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998); *Grant v. Martinez,* 973 F.2d 96, 100 (2d Cir. 1992); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 136, 153 (2d Cir. 1983). Here, the mere time value of monies expended over almost seven years warrants a significant multiplier to Plaintiffs' lodestar.

In determining whether the rates are reasonable, the Court should take into account the attorneys' legal reputation and experience. In this case, the team of lawyers working on the case was led by Class Plaintiffs' Counsel Scott + Scott and Johnson & Perkinson – two well-known, highly experienced and respected law firms. In short, the experience and reputations of Plaintiffs' counsel support the hourly rates charged. Clearly, the Class received the highest quality representation in this case.

Under the lodestar method, a multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie,* 166 F.3d at 460; *Goldberger,* 209 F.3d at 47. The total lodestar reported by Plaintiffs' counsel is over $12.1 million. Thus, the percentage fee requested represents a modest 1.98 multiplier to the cumulative lodestar of all Plaintiffs' counsel. This multiplier is well within the range of multipliers awarded by courts within the Second Circuit and is fully justified in this case. *See In re Buspirone Patent,* 01-MD-1410, slip op. at

41-43 (S.D.N.Y. Apr. 11, 2003) (awarding multiplier of 8.46); *Maley*, 186 F. Supp. 2d at 368-69 (finding a multiplier of 4.65 to be within the range in this Circuit*); In re APAC Teleservice, Inc. Sec. Litig*., No. 97 Civ. 9145, at 2 (percentage fee award of 33-1/3% represented multiplier of 2.76); *Newman*, 99 Civ. 2271 (percentage fee award of 33-1/3% represented  multiplier of 7.7); *Union Carbide*, 724 F. Supp. at 170 (applying multiplier of 2.3 to lodestar of plaintiffs' steering committee).

As discussed more fully above, this case was extremely risky and complex and, as evidenced by the extraordinary result obtained, the representation afforded the Class on an entirely contingent basis was first-rate.[6]   A 1.98 times multiplier in this case is eminently reasonable.

**D.    Plaintiffs' Counsel Should be Reimbursed for their Reasonably Incurred Litigation Expenses**

Plaintiffs' also request reimbursement for the reasonable and necessary expenses advanced to prosecute this litigation.  These expenses total $1,394,422.57 and are set forth in the declarations of Plaintiffs' counsel, in addition to the Lead Plaintiffs' expense declarations submitted herewith.  *See In re Warnaco Group, Inc., Securities;* 2004 WL 1574690 *2 (S.D.N.Y. July 13, 2004); *TBK Partners, Ltd. v. Warshow,* [1977-1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,196, at 92,402 (S.D.N.Y. Oct. 6, 1997).  Plaintiffs respectfully requests that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting this action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation.   Additionally, Plaintiffs' counsel respectfully request that the Court grant their application for an award of attorneys' fees in the

---

[6]    Although the Second Circuit observed in *Goldberger* that "a big recovery does not necessarily justify a quality multiplier," 209 F.3d at 56, it bears repeating that the factors that led the Court to decline to award a quality multiplier in that case – a preceding government investigation that resulted in guilty pleas – was not present in this case.  *See, In re Fine Host*, 2000 WL 33116538, at *6.

amount of 30% of the Gross Settlement Fund, together with the reimbursement of expenses reasonably incurred to date plus accrued interest to the date of the award to the same extent as has been earned by the deposited Settlement Funds.  The award of attorneys' fees should be ordered to be allocated among Plaintiffs' counsel in a fashion which, in the opinion of Class Plaintiffs' Counsel, fairly compensate Plaintiffs' counsel for their respective contributions in the prosecution of the action.

Dated:  June 21, 2007

                    Respectfully submitted,

                    **SCOTT & SCOTT, LLP**

                    /s/  David R. Scott
                    David R. Scott (ct16080)
                    drscott@scott-scott.com
                    108 Norwich Avenue
                    P.O. Box 192
                    Colchester, CT 06415
                    Telephone: (860) 537-5537
                    Facsimile:  (860) 537-4432

                    **JOHNSON & PERKINSON**

                    **/s/**  Jacob B. Perkinson
                    Jacob B. Perkinson
                    1690 Williston Road
                    South Burlington, VT 05403
                    Telephone: (802) 862-0030
                    Facsimile: (802) 862-0060

                    **Attorneys for Class Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. The parties may access this filing through the court's CM/ECF System.

*/s/ David R. Scott*
**SCOTT + SCOTT, LLP**
David R. Scott (CT16080)
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

**Co-Lead Counsel for Plaintiffs**