# EXHIBIT 3

**Deloitte & Touche LLP**

Stamford Harbor Park
333 Ludlow Street
P.O. Box 10098
Stamford, CT 06904

Telephone: (203) 708-4000
Facsimile: (203) 708-4797

January 27, 2000

The Audit Committee of the Board of Directors
priceline.com
800 Connecticut Ave
Norwalk, CT 06854

Dear Audit Committee Members:

We have audited the financial statements of priceline.com (the "Company" or "priceline") for the year ended December 31, 1999, on which we expect to issue an unqualified report thereon dated January 27, 2000.

Our professional standards also require that we communicate at least annually with you regarding all relationships between our Firm and the Company that, in our professional judgment, may reasonably be thought to bear on our independence. We have issued you a separate report dated January 27, 2000 concerning our comments with respect to our independence.

Our professional standards also require that we communicate with you concerning certain matters that may be of interest to you in fulfilling your obligation to oversee the financial reporting and disclosure process for which management of the Company is responsible. We have prepared the following comments to assist you in fulfilling that obligation.

<u>Our Responsibility under Generally Accepted Auditing Standards</u>

Our responsibility under generally accepted auditing standards has been described in our engagement letter dated May 3, 1999. Those standards require that we plan and perform the audit to obtain reasonable, rather than absolute, assurance about whether the financial statements are free of material misstatement. When performing an audit in accordance with those standards, we are required only to obtain an understanding of the Company's internal control structure sufficient to enable us to properly plan our audit and not to provide assurance on the internal control structure.

Based, in part, on our understanding of the control environment, we designed our audit to provide reasonable assurance of detecting errors and irregularities that are material to the financial statements. However, because of the characteristics of irregularities, particularly those involving forgery and collusion, a properly designed and executed audit may not detect such items. We will, however, issue to you a separate report containing our comments on the Company's internal controls at the next Audit Committee meeting.

Deloitte Touche
Tohmatsu
International

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005133

### Significant Accounting Policies

The Company's significant accounting policies will be set forth in the Notes to the Company's Financial Statements. During the year ended December 31, 1999, there were no significant changes in previously adopted policies or their application. We have included, as an appendix to this report, an update of certain accounting and regulatory developments.

### Other Information in Documents Containing Audited Financial Statements

When audited financial statements are included in documents containing other information such as the Company's Annual Report to Shareholders and on Form 10-K, generally accepted auditing standards require that we read such other information and consider whether it, or the manner of its presentation, is materially inconsistent with the information, or the manner of its presentation, in the financial statements audited by us. We will read the other information in the Company's Annual Report to Shareholders and on Form 10-K and inquire as to the methods of measurement and presentation of such information. If we note a material inconsistency, or if we obtain any knowledge of a material misstatement of fact in the other information, we will discuss this matter with Management and, if appropriate, with the Audit Committee.

### Management Judgments and Accounting Estimates

Accounting estimates are an integral part of the financial statements prepared by Management and are based on Management's current judgments. Those judgments are normally based on knowledge and experience about past and current events and on assumptions about future events. The basis for our conclusions as to the reasonableness of these estimates, when considered in the context of the financial statements taken as a whole, is our development of an independent expectation of the estimates to corroborate management's estimates.

Significant accounting estimates reflected in priceline's 1999 Consolidated Financial Statements include:

- Reserves for uncollectible accounts and notes receivable
- Warrant valuations
- Reserves / litigation

During the year ended December 31, 1999 relating to such estimates, we did not become aware of any significant changes in the methodology in computing accounting estimates or management judgments, and in addition we believe that management made use of all of the information available in determining estimates and the methodology utilized was appropriate.

### Significant Audit Adjustments

All proposed audit adjustments, whether recorded in the accounting records or not, were reviewed with management. The adjustments that were not recorded in the accounting records were determined, individually and in the aggregate, not to have a significant effect on the financial statements.

- 2 -

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005134

Issues Discussed with Management

Discussions regarding the application of accounting principles or auditing standards are periodically held with Management in the normal course of our audit engagement in connection with transactions that have occurred, transactions that are contemplated, or reassessment of current circumstances. In our judgment, such discussions were not held in connection with our retention as auditors. During 1999, major issues we discussed with management included the following:

- Accounting for issuance/receipt of warrants
- Accounting for barter transactions
- Capitalization of software developed for internal use
- Accounting for employee stock options
- Accounting matters related to investments and structuring of various deals, including consolidation.
- SEC/EITF deliberation specifically as to net versus gross revenue recognition.

Areas of Audit Emphasis

The following areas were identified as "Areas of Audit Emphasis".

*Airline Ticket Transactions*

We have performed internal control testing both on the recording and processing of airline tickets and concluded that the accounting for such transactions was appropriate.

*Reserve for Airline Ticket Refunds*

We have performed testing on the methodology and the amount of the estimated reserve for ticket refunds. We have concluded that the Company's estimate is reasonable and consistent with GAAP.

*Litigation*

We have inquired of external and in-house counsel regarding the status of pending or threatened litigation and obtained representations from both relating to potential exposures and the adequacy of related recorded reserves. Based on our inquiries, we believe the reserves to be adequate.

Disagreements with Management

We have not had any disagreements with management related to matters that are material to the Company's 1999 financial statements.

Consultation with Other Accountants

We are not aware of any consultations that management may have had with other accountants about auditing or accounting matters during 1999.

CONFIDENTIAL DISCOVERY
MATERIAL-REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005135

### Difficulties Encountered in Performing the Audit

In our judgment, we received the full cooperation of the Company's management and staff and had unrestricted access to the Company's senior management in the performance of our audits.

### Internal Control Matters

We intend to issue a Report to Management for the 1999 audit at the Audit Committee meeting in April 2000. In this report we intend to disclose to the Audit Committee certain noted issues related to the internal control structure and certain other matters. Our consideration of the Company's internal control would not necessarily disclose all matters in the Company's internal control that might be a material weaknesses under standards established by the American Institute of Certified Public Accountants. Our evaluation of the internal control structure for the purpose of our audits of the Consolidated Financial Statements disclosed no material weaknesses. Although our audits were not directed specifically to such matters, we noted no instance of illegal acts, improper payments or conduct, or other apparent irregularities.

We affirm our responsibility to bring to the attention of the Audit Committee any matters noted during our audit that would be significant to the fulfillment of the Committee's responsibilities.

\* \* \* \* \* \* \* \* \* \* \* \*

This report is intended solely for the use of the Audit Committee of the Board of Directors, Management, and others within the Company and should not be used for any other purpose.

We will be pleased to discuss this report with you further at your convenience.

Yours truly,

Deloitte & Touche LLP

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005136

Appendix A

## CURRENT DEVELOPMENTS IN ACCOUNTING AND OTHER RELATED MATTERS

The pace of change in the business environment and of the various standard setting bodies impacting accounting and financial reporting continues to be brisk. The Financial Accounting Standards Board (FASB), the Securities and Exchange Commission (SEC), the American Institute of Certified Public Accountants (AICPA) and the Independence Standards Board (ISB) all continue to be very active in issuing new pronouncements and proposing new standards in response to the recommendations of the Blue Ribbon Panel on Audit Committee effectiveness. We have provided the company with information as to final Blue Ribbon Committee recommendations and guidelines. The following is a brief description for the Audit Committee of new and proposed accounting requirements issued since the update we provided to you in October 1999. We have also included projects now under consideration by the profession's standard setting organizations that we believe to be most relevant to the Company.

Staff Accounting Bulletins

The SEC has issued two staff accounting bulletins in December and November of 1999 and fulfilled a promise made by SEC Chairman Arthur Levitt in the fall of 1998 to clarify the SEC's views on certain accounting and financial reporting matters.

The SEC issued Staff Accounting Bulletin No. 101 in December of 1999. SAB 101 summarizes certain SEC staff views on the accounting for the recognition of revenue. The SEC provided this guidance due, in part, to the large number of revenue recognition issues that registrants encounter. For example, a March 1999 report entitled *Fraudulent Financial Reporting: 1987-1997 An Analysis of U.S. Public Companies*, sponsored by the Committee of Sponsoring Organizations (COSO) of the Treadway Commission, indicated that over half of financial reporting frauds in the study involved overstating revenue. We have reviewed the guidance provided by SAB 101 with management and have incorporated this guidance in performing our audit procedures.

Staff Accounting Bulletin No. 100 was issued in November of 1999. SAB 100 expresses views of the SEC staff on the accounting for and disclosure of certain expenses commonly reported in connection with exiting activities and business combinations. The views expressed in SAB 100 clarify staff positions on the accrual of exit and employee termination costs pursuant to Emerging Issues Task Force Issues No. 94-3, *Liability Recognition for Certain Employee Termination Benefits and Other Costs to Exit an Activity (Including Certain Costs Incurred in a Restructuring)* and No. 95-3, *Recognition of Liabilities in Connection with a Purchase Business Combination*, and the recognition of impairment charges pursuant to APB Opinion No. 17, *Intangible Assets*, and SFAS No. 121, *Accounting for the Impairment of Long-Lived Assets and for Long-Lived Assets to be Disposed of*.

SAS 89 and SAS 90

In December 1999 the Auditing Standards Board issued SAS 89. This Statement on Auditing Standards (SAS) amends three SAS's to establish audit requirements designed to encourage management to record adjustments aggregated by the auditor. It also clarifies management's responsibility for the disposition of financial statement misstatements brought to its attention. SAS 89 requires written representation concerning management's belief that the effects of any uncorrected financial statement misstatements are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. It also requires that a summary of the uncorrected misstatements be included in or attached to the letter. These provisions of SAS

CONFIDENTIAL DISCOVERY
MATERIAL-REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005137

89 became effective for the audit of the 1999 financial statements and have been addressed in completing our audit procedures.

SAS 89 also requires the auditor to inform the audit committee about uncorrected misstatements aggregated by the auditor during the current engagement that were determined by management to be immaterial, both individually and in the aggregate, to the financial statements taken as a whole. As discussed in the body of this letter, all proposed audit adjustments not recorded in the accounting records determined, individually and in the aggregate, were determined not to have a significant effect on the financial statements.

In December of 1999, the Auditing Standards Board issued SAS No. 90, "Audit Committee Communications". SAS No. 90 serves to amend both SAS No. 61, "Communications with Audit Committees" as well as SAS No. 71, "Interim Financial Information". The amendment to SAS No. 61 requires an auditor of SEC clients to discuss with audit committees the auditor's judgements about the quality, not just the acceptability, of the company's accounting principles and underlying estimates in its financial statements. This amendment is effective for audits of financial statements for periods ending on or after December 15, 2000. Earlier application is permitted. The amendment to SAS No. 71 requires an auditor of SEC clients to attempt to discuss with audit committees the matters described in SAS No. 61 prior to filing of Form 10-Q. This amendment is effective for audits of financial statements for periods ending on or after December 15, 2000, including interim periods.

SEC Final Rule: Audit Committee Disclosure

Effective January 31, 2000, the Securities and Exchange Commission has adopted new rules and amendments to its current rules to require that companies' independent auditors review the companies' financial information prior to the companies filing their Quarterly Reports on Form 10-Q with the Commission, and to require that companies include in their proxy statements certain disclosures about their audit committees and reports from their audit committees containing certain disclosures. The rules are designed to improve disclosure related to the functioning of corporate audit committees and to enhance the reliability and credibility of financial statements of public companies. The pertinent points from the new rules and amendments are summarized as follows:

- Companies' independent auditors are to review the financial information included in the companies' Quarterly Reports on Form 10-Q prior to the companies filing such reports with the Commission.

- Companies must include reports of their audit committees in their proxy statements in which, the audit committee must state whether it has: (i) reviewed and discussed the audited financial statements with management; (ii) discussed with the independent auditors the matters required to be discussed by Statement on Auditing Standards No. 61, as may be modified or supplemented; and (iii) received from the auditors disclosures regarding the auditors' independence required by Independence Standards Board Standard No. 1, as may be modified or supplemented, and discussed with the auditors the auditors' independence; and (iv) recommended to the Board of Directors, based on the review and discussions noted above, that the audited financial statements be included in the company's Annual Report on Form 10-K for the last fiscal year for filing with the Commission;

- Companies need to disclose in their proxy statements whether their Board of Directors has adopted a written charter for the audit committee, and if so, include a copy of the charter as an appendix to the company's proxy statements at least once every three years;

- 2 -

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005138

- Companies must disclose in their proxy statements whether the audit committee members are "independent" as defined in the applicable listing standards, and disclose certain information regarding any director on the audit committee who is not "independent"

EITF Project – Accounting Issues Related to the Internet

The EITF (Emerging Issues task Force) has formed a working group to consider accounting issues the SEC staff is aware of that have arisen in companies with internet activities. The list has been compiled based upon a review of issues the SEC staff has dealt with in registrant filings, as well as issues identified through input from accounting firms. The issues discussed are all issues in which 1) there appears to be a diversity in practice, 2) the situation does not appear to be addressed in the accounting literature, and/or 3) the SEC staff is concerned that the developing practice may be inappropriate under generally accepted accounting principles. We have had in depth discussions with management about the developments of this project and the impact any conclusions would have on priceline's internet related activities. Since it's formation, no conclusions have been released.

- 3 -

CONFIDENTIAL DISCOVERY
MATERIAL-REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005139