# EXHIBIT 14

OCT-26-1999 11:04    DELOITTE & TOUCHE LLP    212 436 5000    P.12

S&S DRAFT

~~10/23/99~~ EXECUTION COPY

# SERVICES AGREEMENT

*between*

PRICELINE.COM INCORPORATED

*and*

PRICELINE WEBHOUSE CLUB, INC.

dated as of October 26, 1999

NYDOCS02/475341 6 Blackline 7 v. 8

CONFIDENTIAL    D&T 0034049

OCT-26-1999 11:04   DELOITTE & TOUCHE LLP   212 436 5000   P.13

## SERVICES AGREEMENT

This SERVICES AGREEMENT, dated as of October 26, 1999 (this "Agreement"), between PRICELINE.COM INCORPORATED., a Delaware corporation ("Priceline"), and PRICELINE WEBHOUSE CLUB, INC., a Delaware corporation (the "Company").

### WITNESSETH:

WHEREAS, Priceline is an internet-based company with significant name recognition of its trademarked "priceline" name and patented "demand collection system" for selling products over the internet;

WHEREAS, Walker Digital ~~Corporation,~~ LLC ("Walker Digital") is a research and development company containing certain trade secrets, know-how and other intellectual property;

WHEREAS, in connection with the establishment of the Company's business of the sale of retail products in a "name your price" venue for the sale of products by businesses to consumers (the "Business") (i) Walker Digital is (A) contributing ~~the employees and~~ certain related know-how, and other assets and liabilities used in or incurred during the initial development of the Business pursuant to an asset contribution agreement dated as of the date hereof (the "Asset Contribution Agreement") between Walker Digital and the Company, and (B) licensing certain intellectual property pursuant to a license agreement between Walker Digital and Priceline, dated as of the date hereof, which intellectual property shall in turn be sublicensed by Priceline to the Company ~~and (ii)~~, (ii) Walker Digital Corporation, a research and development company, is contributing certain employees to the Company under the Asset Contribution Agreement, and (iii) Priceline is
(A) licensing and sublicensing, as applicable, the use of the "priceline" name, certain patent rights and other intellectual property rights for use in connection with the Business, pursuant to an intellectual property license agreement between Priceline and the Company, dated as of the date hereof (the "Priceline License Agreement"), (B) providing professional services, including certain ~~management,~~ accounting, ~~and~~ legal and other services to the Company pursuant to this Agreement, and
(C) providing certain marketing and technical services to the Company pursuant to a marketing and technical services agreement between Priceline and the Company, dated as of the date hereof (the "Marketing and Technical Services Agreement");

WHEREAS, in consideration for the cash and assets it contributed pursuant to the asset contribution agreement, Walker Digital received from the Company a Promissory Note in the amount of [~~     ~~] $14,592,185.60 payable on April 26, 2000;

NYDOCS02/475341.8 Blackline 7 v. 8

/3

CONFIDENTIAL

D&T 0034050

WHEREAS, in consideration for its execution and deliveries pursuant to the Priceline License Agreement, Priceline is receiving a warrant (the "Priceline Warrant") to purchase, under certain circumstances, up to 137.5 million shares of the Company's common stock, par value $.01 per share (the "Common Stock") and has certain rights to participate in the Company's corporate governance pursuant to the Securityholders' Agreement described in the following clause;

WHEREAS, the Company, Walker Digital, Priceline and the other investors are entering into an agreement providing certain rights to the parties and subjecting them to certain restrictions (the "Securityholders' Agreement");

WHEREAS, in connection with the establishment of the Company, Priceline is agreeing, pursuant to this Agreement and the Marketing and Technical Services Agreement, to provide services to, and to coordinate marketing activities with, the Company in exchange for arm's-length consideration; and

WHEREAS, subsequent to the date of this Agreement, Priceline is willing to provide or cause to be provided to the Company for a limited period of time certain professional, operating and administrative services with respect to the Business.

NOW THEREFORE, in consideration of the mutual promises and covenants hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I

## THE SERVICES

SECTION 1.01. *Provision of Services*. Subject to the terms and conditions set forth in this Agreement, Priceline shall provide or cause to be provided the professional services, including, but not limited to, ~~management,~~ accounting, legal and ~~operational~~ other services, to the Company currently provided by Priceline to the Business~~, or as the Company shall deem to be necessary (the "Services")~~: (the "Services"); provided, however, that Priceline shall only be required to provide such Services to the extent that it has the internal resources available at the time to provide such Services and Priceline shall have no obligation to engage any third party to provide such Services.

SECTION 1.02. *Covered Services*. Priceline shall be obligated to make available and provide the Services at the time of execution and throughout the Term as reasonably requested from time to time, in writing, by the Company.

SECTION 1.03. *Standard of Performance*. Priceline agrees to provide or cause to be provided to the Company the Services in substantially the same manner and at substantially

14

CONFIDENTIAL

D&T 0034051

SECTION 1.07. Changes. The Company may request the provision of additional Services or new services which were not previously requested and **which are acceptable to Priceline, in its sole discretion, to provide, and** may request the cessation of specific Services then being provided. In such case, the parties shall negotiate in good faith on any additional compensation to be paid for additional Services or new services or for a rebate of the compensation paid or to be paid in respect of Services no longer rendered. In the event the parties are unable to agree on the amount of compensation or the specific Services to be provided for any given quarter, the compensation shall equal the amount agreed upon in the immediately preceding quarter plus 10% (on an annual basis) and the Services provided shall be the same Services provided the previous quarter. In the event the parties are unable to agree on the amount of compensation or Services for the first quarter of the year 2000, the compensation shall equal one-quarter of the annualized amount of the compensation agreed upon for the partial 1999 year plus 10% of such quarterly amount and the Services shall be the same Services provided during 1999.

## ARTICLE II

## RESPONSIBILITY

SECTION 2.01. Relationship of the Parties. Nothing in this Agreement shall be construed as (a) an assumption by Priceline of any obligation to maintain or increase the sales or profits of the Company or otherwise to assume responsibility for the Company's operations; (b) an assumption by Priceline of any financial obligation of the Company; (c) the creation of any relationship of employment or agency between the Company and employees or consultants of Priceline, its subsidiaries or associated companies; (d) an assumption by Priceline of any responsibility for the work performed by outside suppliers employed by the Company at the suggestion or recommendation of Priceline; or (e) the delegation of any function or authority of the Company to Priceline. In all matters relating to this Agreement, each party hereto shall be solely responsible for the acts of its own employees, and employees of one party shall not be considered employees of the other party. Except as specifically permitted by this Agreement, no party hereto nor any of its employees shall have any authority to negotiate, enter into any contract or incur any obligation, on behalf of the other party. **The parties hereto are independent contractors and neither party is an employee, partner or joint venturer of the other.**

SECTION 2.02. Limitation of Liability. Priceline **MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES PROVIDED HEREUNDER.** Priceline shall have no liability for any losses or damages that the Company may incur as a result of the provision or non-provision of Services except to the extent caused by the gross negligence or wilful misconduct of such person. In no event shall Priceline, its officers, directors, employees, agents, independent contractors, affiliates and stockholders be liable for any consequential or special damages suffered by the Company as a result of any representations, actions or inactions by any person or entity in respect of its obligations hereunder.

CONFIDENTIAL

D&T 0034053

  (b) if to the Company:

Priceline WebHouse Club, Inc.
One High Ridge Park
Stanford, CT 06905
Telecopy No.: (203) 595-8305
Attention: Anne Maffei

  {SECTION 4.03. Public Announcements. Except as required by law, by governmental regulation or by the requirements of any securities exchange on which the securities of a party hereto are listed, no party to this Agreement shall make, or cause to be made, any press release or public announcement in respect of this Agreement or the transactions contemplated hereby or otherwise communicate with any news media without the prior written consent of the other party, and the parties shall cooperate as to the timing and contents of any such press release or public announcement.}

  SECTION 4.04. Headings. The descriptive headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

  SECTION 4.05. Severability. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any law or public policy, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

  SECTION 4.06. Entire Agreement. This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, with respect to the subject matter hereof.

  SECTION 4.07. Assignment and Sublicense. This Agreement may not be assigned by either party without the express written consent of the other party (which consent may be granted or withheld in the sole discretion of any party), except that (i) this Agreement may be assigned, without consent, in connection with the sale of a party's business whether such is a sale of all or substantially all of such party's assets, a merger or a stock sale and (ii) Priceline may assign or sublicense its rights hereunder to an affiliate thereof; provided that any such assignment shall not relieve Priceline of its obligations hereunder. This Agreement shall inure to

CONFIDENTIAL                                                D&T 0034054