# EXHIBIT 17

Deloitte & Touche

# Memo

**Deloitte & Touche LLP**
Tax Services

Telephone:
Facsimile:
www.us.deloitte.com

Date: October 20, 1999

To: priceline.com and Webhouse Club Tax Files - 1999

From: Dave Acampora, Robert Diskin, and Gretchen Hitchcock

Subject: Application of Treasury Regulation §1.1502-13 and IRC §382 to determine the timing of income and deductions related to the issuance and exercise of a warrant in exchange for a license agreement

**Facts:**

Webhouse Club ("Webhouse") will issue to priceline.com ("priceline") a warrant in exchange for an intellectual property patent and trademark license. The licenses have a 20 year term.

It is assumed that upon the exercise of the warrant, priceline will own at least 80% of Webhouse. Webhouse will join in the filing of a consolidated tax return with priceline.[1]

The warrant may be treated as an open transaction. Thus, when the warrant is exercised which causes priceline to own at least 80% of Webhouse, priceline will recognize income in an amount equal to the excess of the fair market value of Webhouse stock at the date of exercise over the option price. Conversely, Webhouse will be required to capitalize this amount.[2] The cost of this asset will be written off over the life of the asset, which would probably be the remaining life of the license agreement.

[1] If priceline is not already filing a consolidated return with another subsidiary, priceline would have to elect to file on this basis with Webhouse.

[2] From Webhouse's perspective, this payment will most likely be viewed as an advance royalty.

**Issue #1A:**

Is the exercise of the warrant an intercompany transaction subject to the deferral/matching rules of Treasury Regulation §1.1502-13? If so, does this permit priceline to match the recognition of income with Webhouse's deferred deductions?

***Conclusion – Issue #1A:***

Pursuant to Treasury Regulation §1.1502-13(b)(1)(i), the exercise of the warrant by priceline is an intercompany transaction because priceline and Webhouse are members of an affiliated group immediately after the transaction. Consequently, Treasury Regulation §1.1502-13(c) provides that the income earned by priceline must be recognized in the same period and have the same character as Webhouse recognizes the deductions.

**Issue#1B:**

Would priceline be required to accelerate the recognition of all remaining deferred intercompany income from the exercise of the warrant at such time as its ownership in Webhouse is reduced below 80%?

***Conclusion – Issue #1B:***

Treasury Regulation §1.1502-13(d) requires that any remaining balance of an intercompany item be taken into account at such time as one or both of the parties to the intercompany transaction are no longer members of the affiliated group. This would require priceline to accelerate any[3] income from the exercise of the warrants that was not taken into account pursuant to Treasury Regulation §1.1502-13(c). Webhouse would continue to amortize the deduction over the life of the license agreement.

**Issue #2:**

If the deduction by Webhouse is a built-in deduction at the date of the ownership change, i.e., the exercise date of the warrant, will the deduction to be treated as a pre-acquisition net operating loss subject to IRC §382 and/or the separate return limitation year rules? If so, what is the net result of these limitations to the consolidated group?

***Conclusion – Issue #2:***

In the event that there is a deduction by Webhouse at the date of exercise, the deduction will be treated as a pre-acquisition net operating loss subject to IRC §382. Therefore, Webhouse's amortization deduction (as well as any net operating loss carryover) will be subject to an annual limitation equal to the fair market value of Webhouse at the moment before the ownership change times the long-term tax exempt rate. Because Webhouse would be entitled to the amortization deduction, priceline would have to take into account the income under the matching rules contained in the regulations. The fact that Webhouse may not currently obtain

[3] To the extent Webhouse has amortized a portion of its prepaid royalty, priceline has conversely recognized the same portion as income. Thus, priceline's potential acceleration of income declines each year.

Application of Tres. Reg. §1.1502-13 and IRC §382 to determine the timing of income and deductions related to the issuance of a warrant in exchange for a license agreement 3

benefit of the deduction (the deduction instead adds to its net operating loss carryover) does not eliminate the requirement for priceline to include the amortization into income. This may result in a mismatch of income and expense within the consolidated group and may cause the group to report net consolidated taxable income with respect to the amortization deduction.

**Discussion – Issue #1:**

Pursuant to Treasury Regulation §1.1502-13(b)(1)(i), an intercompany transaction is a transaction between corporations that are members of the same consolidated group immediately after the transaction. Because priceline will own 80% of Webhouse immediately after the exercise of the warrants and Webhouse will join in the filing of a consolidated return with priceline, the companies will be members of a consolidated group at that time. Therefore, the exercise of the warrants is an intercompany transaction. See example at Treasury Regulation §1.1502-76(b)(1)(ii)(B)(2).

Treasury Regulation §1.1502-13(a)(3) specifies that the timing rules of that section are a method of accounting for intercompany transactions, to be applied by each member in addition to the member's other methods of accounting. To the extent the timing rules of that section are inconsistent with a member's otherwise applicable methods of accounting, the timing rules of that section control. The matching rule in Treasury Regulation §1.1502-13(c)(2)(i) requires that the buying member take its corresponding items into account under its accounting method, but the redetermination of the attributes of a corresponding item might affect its timing. The application of Treasury Regulation §1.1502-13(c)(2)(ii) reflects the difference for the year between the buying members corresponding item and the recomputed corresponding item. As defined in Treasury Regulation §1.1502-13(b)(4), the recomputed corresponding item is the corresponding item that the buying member would take into account if both members were divisions of a single corporation and the intercompany transaction were between those divisions.

If priceline and Webhouse were divisions of a single corporation, the exercise of the warrants would result in no income or loss to the single corporation because the intercompany item would be eliminated. As the buying member, Webhouse will capitalize the cost of the license agreement and amortize it over the life of the agreement. As a separate company, priceline would be required to report the full amount of the income from the exercise of the warrants at the time of exercise. However, as the selling member in an intercompany transaction, priceline will take into account income at the same time and in the same amount as Webhouse takes into account the deduction. This results in a complete offset of the income and expenses generated as a result of priceline exercising the warrant issued by Webhouse. See Issue #2 for potential limitations of the offsetting deduction.

If either the buying or selling member of the consolidated group become nonmembers, Treasury Regulation §1.1502-13(d)(1)(i) requires that the selling member take into account the intercompany item immediately prior to becoming a nonmember. Because, in this case, the intercompany item will not be taken into account in determining the group's consolidated taxable income under the matching rule as discussed above, the intercompany item is accelerated into the consolidated return. The buying member would, pursuant to Treasury Regulation 1.1502-13(d)(2)(ii), continue to take its corresponding item into account based on

D&T 0030071

CONFIDENTIAL

Application of Tres. Reg. §1.1502-13 and IRC §382 to determine the timing of income and deductions related to the issuance of a warrant in exchange for a license agreement 4

its accounting method.

Priceline must maintain at least 80% ownership in Webhouse in order for both companies to be members of a consolidated group. In the event that priceline is unable to maintain 80% or more ownership in Webhouse, Webhouse will cease to be a member of the consolidated group. This would trigger the acceleration of income by priceline otherwise deferred under the matching rule. Priceline would be required to accelerate the remaining balance of the deferred intercompany income into the consolidated tax return immediately prior to Webhouse becoming a nonmember. Webhouse would continue to amortize its deduction over the life of the license agreement.

**Discussion – Issue #2:**

When priceline exercises the warrant it will increase its ownership in Webhouse from 0% to 80%. This constitutes an ownership change under IRC §382. As a result, net operating loss carryovers from the period prior to the change in ownership will be subject to an annual limitation equal to the fair market value of Webhouse immediately prior to the change in ownership times the federal long-term tax exempt rate. Additionally, if Webhouse has a net unrealized built-in loss as of the date of the ownership change, the recognition of such built-in loss in any taxable year in the five-year period beginning on the change date will be treated as a pre-change net operating loss subject to the 382 limitation. An unrealized built-in loss is the amount by which the fair market value of the assets of a corporation immediately before an ownership change is less than the aggregate adjusted basis of such assets at such time. It needs to be determined whether Webhouse will have a built-in loss at the time priceline exercises the warrant.[4]

If Webhouse has a net unrealized built-in loss at the time of the ownership change, the deductions related to its prepaid royalty asset will be subject to the §382 limitation. This limitation may be less than the Webhouse's anticipated allowable deduction. Priceline will be required to recognize income under the matching rule discussed above which is equal to the Webhouse deduction prior to the §382 limitation. Webhouse's deduction will be limited under §382. This will result in a mismatch of income and deduction from the intercompany transaction. If this transaction is considered in isolation, the consolidated group would have consolidated net taxable income from this transaction. Note that §382 overrides the built-in loss rules of Treasury Regulation §1.1502-15 that might otherwise have applied to any losses incurred prior to the date of change or deductions related to net unrealized built in losses that existed at the date of change.

cc: Peter Hatzis
Lynn Walker

H:\Clients\P\Priceline Webhouse\1502 13.doc

[4] At the time of this memo, we believe, subject to review with the client, that there will not be an unrealized built-in loss.

Deloitte Touche Tohmatsu International

D&T 0030072

CONFIDENTIAL

Application of Tres. Reg. §1.1502-13 and IRC §382 to determine the timing of income and deductions related to the issuance of a warrant in exchange for a license agreement 5

# Tax Research Record

**Office:** Stamford **Client:** Priceline Webhouse Club

**Subject:** Application of Treas. Reg. §1.1502-13 and IRC §382 to determine the timing of income and deductions related to the issuance of warrants in exchange for a license agreement

**Prepared By:** Gretchen Hitchcock **Date:**

**Reviewed By:** Robert Diskin and Dave Acampora **Date:**

**Concur. Review By:** Larry Axelrod **Date:**
MaryEllen Brecsiani

**Sources Consulted:** **(Items listed should include ALL sources consulted whether or not utilized in the final conclusion.)**

**Internal Revenue Code - Sections:**
§382

**Income Tax Regulations - Sections: (Including Temporary and Proposed Regulations)**
§1.1502-13; §1.1502-15; §1.382-2; §1.382-2T; 1.382-5T

**Court Cases:**

**Citator/Finding Lists: (Include Latest Update or Supplement)**

**Congressional Committee Reports:**

**Revenue Rulings:**

**Revenue Procedures:**

**Private Letter Rulings, Tax Advice Memoranda, General Counsel Memoranda:**

**Tax Reporter: Indicate Cite (Ex. CCH, RIA-Include "New Matters" if no on-line update)**

**Specialized Tax Services: (IRM; BNA; Bitker & Eustice; other Treatises)**

**On-line Electronic Research: (Lexis or CCH Access On-line)**

**Tax Articles: (Journal of Taxation; Tax Adviser; Taxation for Accountants; NYU; etc.**

**Technical Consultation: (WNTG Specialists; SLIP Specialists; etc.)**

**Other:**

CONFIDENTIAL D&T 0030073