# EXHIBIT 25

| 203.705.3000 | 203.595.8264 | info@priceline.cc |
| TELEPHONE | FAX | E-MAIL |

2350
SB 3/00
TR 3/10

# priceline.com  Rep Letter

January 27, 2000

(March 17, 2000 as to Note 15)

Note: Incorporating Harold's comments on 1/27/00
Note: Braddock's signature to follow

Deloitte & Touche LLP
333 Ludlow Street
Stamford Harbor Park
Stamford, CT 06906

We are providing this letter in connection with your audits of the balance sheets of priceline.com Incorporated (the "Company") as of December 31, 1999 and 1998 and the related statements of operations, changes in stockholders' equity and cash flows for the years ended December 31, 1999 and 1998 and the period July 18, 1997 (inception) to December 31 1997, for the purpose of expressing an opinion as to whether the financial statements present fairly, in all material respects, the financial position, results of operations, and cash flows of the Company in conformity with generally accepted accounting principles. We confirm that we are responsible for the fair presentation in the financial statements of financial position, results of operations, and cash flows in conformity with generally accepted accounting principles. We also are responsible for the fair presentation of the additional information accompanying the basic financial statements that are presented for the purpose of additional analysis of the basic financial statements.

We confirm, to the best of our knowledge and belief, the following representations made to you during your audits.

1. The financial statements referred to above are fairly presented in conformity with generally accepted accounting principles.

2. We believe the effects of any uncorrected financial statement misstatements aggregated by you during the current audit engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. A summary of such uncorrected misstatements has been attached as Appendix A.

3. The Company has made available to you all:

   a. Financial records and related data.

   b. Minutes of the meetings of stockholders, directors, and committees of directors, or summaries of actions of recent meetings for which minutes have not yet been prepared.

POST OFFICE BOX 120024
STAMFORD, CT 06912

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005022

4. There has been no fraud involving management or employees who have significant roles in internal control.

5. There have been no communications from regulatory agencies concerning noncompliance with, or deficiencies in, financial reporting practices.

6. There are no unasserted claims or assessments that legal counsel has advised us are probable of assertion and must be disclosed in accordance with Statement of Financial Accounting Standards No. 5 except as follows:

    A lawsuit was filed on January 19, 1999 by Marketel International Inc. ("Marketel"), which alleges among other things that the defendants, including the Company, conspired to misappropriate Marketel's business model for a buyer-driven electronic market place for travel services. The Company believes the complaint is without merit.

7. We have completed implementation of our year 2000 remediation plan on a timely basis, and such remediation plan as implemented addresses all mission critical systems. We are not aware of any adverse effects of year 2000 issues on the Company, including its systems and operations. We have no information that indicates that a significant vendor may be unable to sell to the Company; a significant customer or client may be unable to purchase from the Company; or a significant service provider may be unable to provide services to the Company, in each case because of year 2000 compliance problems.

8. We have no intention of terminating our 401(k) plan, or taking any other action that could result in an effective termination or reportable event for the plan. We are not aware of any occurrences that could result in the termination of our 401(k) plan to which we contribute

9. The Company has properly classified equity securities with readily determinable fair values on the balance sheets as either available-for-sale or trading, based on the Company's intent with respect to those securities. Specifically, the Company classifies equity securities with readily determinable fair values as trading securities when those securities are held principally for the purpose of selling them in the near term. All other equity securities with readily determinable fair values are classified as available-for-sale.

    The Company has properly classified debt securities on the balance sheet(s) as held-to-maturity, available-for-sale, or trading, based on the Company's intent with respect to those securities. Specifically, the Company classifies debt securities as trading securities when those securities are held principally for the purpose of selling them in the near term. The Company classifies debt securities as held-to-maturity when the Company has the positive intent to hold such securities to maturity and the ability to do so. All other debt securities are classified as available-for-sale.

    In addition, the Company has properly recorded all trading securities as current assets and individual held-to-maturity securities and individual available-for-sale securities as either current or noncurrent as appropriate. Specifically, the Company classifies available-for-sale securities as current when the Company expects to sell the securities in the current period, or when the Company intends that the securities are available for current operations if needed

The Company classifies held-to-maturity securities as current when they are expected to mature within the next 12 months. All other held-to-maturity and available-for-sale securities are classified as noncurrent.

10. The cost method is used to account for the Company's investment in the common stock of Lending Tree as the Company does not have the ability to exercise significant influence over the investee's operating and financial policies, nor is there a ready market for such investment. With regard to the Company's investment in Lending Tree, no events have occurred and no facts have been discovered with respect to such investment that would indicate an other than temporary impairment of the investment's value.

11. We agree with the work of specialists in evaluating the fair value of Webhouse Club warrants granted in November 1999, and have adequately considered the qualifications of the specialist in determining amounts and disclosures used in the financial statements and underlying accounting records. We did not give any, nor cause any, instructions to be given to specialists with respect to values or amounts derived in an attempt to bias their work, and we are not aware of any matters that have impacted the independence or objectivity of the specialists.

Except where otherwise stated below, matters less than $100,000 collectively are not considered to be exceptions that require disclosure for the purpose of the following representations. This amount is not necessarily indicative of amounts that would require adjustment to, or disclosure in, the financial statements.

12. The following, to the extent applicable, have been properly recorded or disclosed in the financial statements:

   a. Related-party transactions and associated amounts receivable or payable, including sales, purchases, loans, transfers, leasing arrangements, and guarantees (written or oral).

   b. Guarantees, whether written or oral, under which the Company is contingently liable

   c. The impact of year 2000 issues on the Company, including its systems and operations.

   d. Capital stock repurchase options or agreements or capital stock reserved for options, warrants, conversions, or other requirements.

   e. Arrangements with financial institutions involving compensating balances or other arrangements involving restrictions on cash balances and line-of-credit or similar arrangements.

   f. All off-balance sheet derivative financial instruments (e.g., futures, options, swaps), including outstanding commitments to purchase or sell securities under forward placement and standby commitments.

   g. Financial instruments with significant individual or group concentration of credit risk

   h. Sales with recourse provisions.

CONFIDENTIAL DISCOVERY
MATERIAL-REQUESTED BY
DELOITTE & TOUCHE LLP

-3-

D&T 0005024

     i.    All impaired loans receivable.

     j.    Loans that have been restructured to provide a reduction or deferral of interest or principal payments because of borrower financial difficulties.

     k.    Agreements to repurchase assets previously sold.

13. There has been no fraud involving employees (other than management or those who have significant roles in internal control considered in Item 4 above) that could have an effect on the financial statements.

14. The Company has no plans or intentions that may affect the carrying value or classification of assets and liabilities.

15. There are no:

     a.    Violations or possible violations of laws or regulations whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency.

     b.    Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by Statement of Financial Accounting Standards No. 5 (including any liabilities or contingencies pertaining to year 2000 issues).

16. Except as listed in Appendix A, there are no transactions that have not been properly recorded in the accounting records underlying the financial statements.

17. The Company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral.

18. In preparing the financial statements in conformity with generally accepted accounting principles, management uses estimates. The Company has disclosed in the financial statements all estimates where it is reasonably possible that the estimate will change in the near term and the effect of the change could be material to the financial statements.

19. Risks associated with concentrations, based on information known to management, that meet all of the following criteria have been disclosed in the financial statements:

     a.    The concentration exists at the date of the financial statements.

     b.    The concentration makes the enterprise vulnerable to the risk of a near-term severe impact.

     c.    It is at least reasonably possible that the events that could cause the severe impact will occur in the near term.

20. The Company has complied with all aspects of contractual agreements, including barter transactions, that would have an effect on the financial statements in the event of noncompliance.

CONFIDENTIAL DISCOVERY MATERIAL-REQUESTED BY DELOITTE & TOUCHE LLP

D&T 0005025

21. Other than those described in the notes to the financial statements, no events (including the effects of year 2000 issues) have occurred subsequent to December 31, 1999 that require consideration as adjustments to, or disclosures in, the financial statements.

22. The Company is responsible for determining and maintaining the adequacy of the allowance for doubtful notes, loans, and accounts receivable, as well as estimates used to determine such amounts. Management believes the allowances are adequate to absorb currently estimated bad debts, voids and refunds included in the account balances.

23. We believe that all expenditures that have been deferred to future periods are recoverable.

24. Provision has been made for any loss to be sustained in the fulfillment of, or from inability to fulfill, any sales commitments.

25. We have fully disclosed to you all sales terms, including all rights of return or price adjustments and all warranty provisions.

26. Management has evaluated the available evidence about future taxable income and other possible sources of realization of deferred tax assets. The valuation allowance reduces deferred tax assets to an amount that represents management's best estimate of the amount of such deferred tax assets that more likely than not will be realized. or A full valuation allowance against deferred tax assets at the balance-sheet date is considered necessary because currently management has made the assessment that it is more likely than not the deferred tax asset will be not fully realized.

27. In estimating fair values of certain assets and liabilities, we believe that the market assumptions used were the most appropriate in the circumstances.

29. The Company, using its best estimates based on reasonable and supportable assumptions and projections, reviews for impairment long-lived assets and certain identifiable intangibles to be held and used whenever events or changes in circumstances indicate that the carrying amount of its assets might not be recoverable.

30. The Company operates as a single segment.

31. The Company retains title to certain priceline.com intellectual property, including, copyrights, service marks, trademarks, trade dress and trade secrets which have been properly disclosed and valued in the financial statements.

32. The Company has disclosed all material contracts and commitments in the financial statements.

33. The Company has disclosed all restricted cash and/or other bank credit arrangements.

34. For all periods disclosed in the financial statements, the Company sublet office facilities from Walker Digital Corporation on a month-to-month basis.

35. The Company has recognized a potential additional liability related to Transportation Taxes due to the U.S. Government. The company believes that such additional accrued liabilities are sufficient to address potential additional taxes due to the U.S. Government.

36. Pursuant to the terms of the agreement between Walker Digital and priceline.com, Walker Digital has agreed to indemnify priceline.com for damages, liability and legal expenses incurred in connection with patent infringement litigation.

37. The Company has made consideration for and does not expect any future liabilities related to the Hotel Rebate program.

38. With respect to airline, hotel, and rental car products, the company is the merchant of record and holds title to such products prior to sale to customers.

39. As an inducement to enter into a relationship with WebHouse, priceline received a warrant to purchase a majority of the shares of WebHouse common stock. The warants are non-forfeitable, fully vested upon grant, exercisable in five years or earlier upon the occurrence of certain events, and do not require the performance of any additional services.

40. In March 2000, the Company entered into an agreement with Alliance Capital Partners, pursuant to which Alliance has formed an operating subsidiary, pricelinemortgage, for the primary purpose of acting as a broker and/or lender of residential mortgage loans in connection with the priceline.com mortgage service. Priceline.com has agreed to provide $3.62 million of financing to an affiliate of Alliance in the form of a convertible secured note and has agreed to license the "priceline" name and business model for use by pricelinemortgage. Alliance has agreed to provide management services to pricelinemortgage, including the procurement of personnel and office space and assistance in obtaining regulatory approvals.

    In February 2000, the Company announced the resignation of Paul Francis, Executive Vice President and Chief Financial Officer and the hiring of Heidi Miller as Senior Executive Vice President, Chief Financial Officer, Strategy, Planning and Administration.

    In the first quarter 2000, priceline.com made loans to two executives aggregating $5.0 million, which bear interest at 6.56%. Subject to certain prepayment obligations and to forgiveness in the event of certain changes of control, death, or termination without cause, pursuant to the terms of these loans, accrued interest and principal are payable after five years, but are forgiven under certain circumstances if the executive remains employed by the Company at that time. Upon any forgiveness of the loans, the Company would recognize as compensation expense an amount up to the amount of principal and interest forgiven.

41. The unaudited interim financial information presented in Note 16 to the financial statements for the years ended December 31, 1999 and 1998 has been prepared and presented in conformity with generally accepted accounting principles applicable to interim financial information. The accounting principles used to prepare the unaudited interim financial information are consistent with those used to prepare the audited financial statements.

---

Richard S. Braddock
Chairman and Chief Executive Officer

*[signature]*

Robert J. Mylod
Senior Vice President – Finance

*[signature]*

Thomas D'Angelo
Vice President – Finance and Controller

*[signature]*

Kevin Donalds
Vice President – Financial Reporting

Appendix A

|  | Amounts As Reported | Adjustments Inc (Dec) | | Amounts if Adjustments Were Made |
|---|---:|---:|---|---:|
|  | (In Thousands) | | | |
| **ASSETS** | | | | |
| Fixed Assets | $ 28,006,478 | $ 315,675 | A | $ 28,322,153 |
| **LIABILITIES and SHAREHOLDERS' EQUITY** | | | | |
| A/P | 24,302,434 | 315,675 | A | 24,618,109 |
| Accruals | 13,695,269 | (96,108) | B | 13,599,161 |
| **INCOME and EXPENSE** | | | | |
| G&A Expense | 27,609,430 | (96,108) | B | $ 27,513,322 |
| **NET LOSS BEFORE TAXES** | $ 1,055,089,522 | $ (96,108) | C | $ 1,054,993,414 |

A    To properly state fixed assets and liabilities for invoices not accrued as of the balance sheet date (12/31/99)

B    To remove unsubstantiated vacation accrual as Priceline.com's policy is not to allow carryover of vacation.

C    Net income statement effect from adjustments

CONFIDENTIAL DISCOVERY
MATERIAL-REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005029

03/28/00  16:09 FAX 212 980 6383          PRICELINE.COM                              ⌀002

0./27/00  19:10 FAX                                                                ⌀010

_____
Richard S. Braddock
Chairman and Chief Executive Officer

_____
Robert J. Mylod
Senior Vice President – Finance

_____
Thomas D'Angelo
Vice President – Finance and Controller

_____
Kevin Donalds
Vice President – Financial Reporting

-7-

CONFIDENTIAL DISCOVERY
MATERIAL-REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0005030