# EXHIBIT 26

Preparer: TJR 1/18/2000<br>
Reviewer: RJB 1/19/2000

WHC Memo to NO                                                                7180.2: 1/5

# Deloitte & Touche

# Memo

Date: January 18, 2000

To: Greg Tomlinson/Phil Callif

From: Tom Restivo (PL)

Subject: Priceline Licensing Agreement

Note: The following memo was prepared to address the accounting for the execution and delivery of the Priceline Licensing Agreement, which was paid in the form of a warrant to purchase WHC common stock.

## Summary Facts

Priceline.com ("PL") and Webhouse Club ("WHC") have entered into several agreements; among these agreements the following two relevant contracts will be addressed:

- Warrant agreement
- Intellectual Property Agreement

## Warrant Agreement:

WHC granted to PL a warrant to purchase 137.5 million shares of WHC common stock. The PL warrant is "in consideration for Grantee's execution and delivery of the Priceline License Agreement."

PL has engaged a third party appraiser to determine the fair value of such warrant.

The PL valuation estimated the value to be approximately $189 million.

## Warrant details:

- The warrant is fully vested to PL upon grant, at a purchase price of $3 per warrant.
- The warrant is exercisable at the earlier of :
  a) WHC achieving Net Revenue of $300 million for any four quarter period immediately preceding the date of measurement, or any shorter period in which WHC achieves Net Revenue of $300 million
  b) The occurrence of any Insolvency Event with respect to WHC

---

Priceline 12/31/99 [Restored]
Period End: 12/31/1999                                                    8/10/2005 1:42:47 PM

**D&T 0017398**

**CONFIDENTIAL**

Preparer: TJR 1/18/2000
Reviewer: RJB 1/19/2000

WHC Memo to NO                                                                                          7180.2: 2/5

   c) The occurrence of a Change of Control, or Board approval of a transaction that would result in a Change of Control
   d) Board approval of an IPO
   e) Five years (passage of time); priceline can exercise the warrants regardless.

### Intellectual Property Licensing Agreement ("Licensing Agreement"):

On October 26, 1999, PL and WHC entered into an "Intellectual Property License Agreement" (the "Licensing Agreement"). In the licensing agreement, PCLN grants WHC the use of the Priceline name, certain patent rights and other intellectual property for fair value royalty payments.

In exchange for performing under the terms of the licensing agreement, PL will receive royalty payments which are reflective of the fair value of such services/use of such intellectual property.

- Generally, the term of the license is 20 years, but can be terminated by priceline in a) the event that WHC fails to achieve annual Net Revenues of $100 million in the fiscal year ending December 31, 2001, b) change in control or c) upon a material breach by WHC.

- WHC may terminate the agreement at any time upon ninety days notice to PL or b) upon any willful material breach by PL

### Summary Question

What accounting applies upon the execution and delivery of the licensing agreement?

### Summary Analysis & Conclusion

The warrant was issued to induce PL to participate in the WHC service and is tantamount to a "sign-on" bonus or startup cost. The relevant accounting literature is SFAS 123, "Accounting for Stock Based Compensation", and EITF 96-18, "Accounting for Equity Instruments that Are Issued to Other Than Employees for Acquiring, or in Conjunction with Selling Goods or Services".

We believe a measurement date has been established in accordance with Issue 1 of EITF 96-18. PL does not have to perform any future services to exercise the warrant, as such, the measurement date has been established as "counterparty performance is complete."

Under EITF 96-18, the warrant income/expense should be recognized in the same period and in the same manner as if the enterprise had paid cash for the goods or services instead of using an equity instrument as consideration.

Since there are no further services (i.e., a service period) which are required to be performed to exercise the warrant, we believe warrant income/expense should be recorded on the date of the signed agreement (October 26, 1999) based on the fair value of the warrants on that date.

Alternatively, we believe the execution and delivery of the agreement is analogous to a nonrefundable licensing fee that has no future obligation or performance requirements. The intention of this nonrefundable initial fee relates to providing WHC the technology, know-how, and name recognition to launch the website, which is analogous to services provided for initial franchise fees. The royalty

CONFIDENTIAL                                                                                      D&T 0017399

Preparer: TJR 1/18/2000
Reviewer: RJB 1/19/2000

WHC Memo to NO                                                                  7180.2: 3/5

payments are intended to compensate for any on-going services, at fair value, and use of the intellectual property during the term of the licensing agreement.

### Detailed Analysis

**Question**

What accounting literature applies to the licensing and warrant agreements?

**Conclusion**

The relevant accounting literature is SFAS 123 "Accounting for Stock-Based Compensation", ETIF 96-18 "*Accounting for Equity Instruments that are Issued to Other than Employees for Acquiring, or in Conjunction with Selling, Goods or Services*".

**Question**

How should the PL warrant be valued?

**Conclusion**

FAS 123 "Accounting for Stock-Based Compensation" paragraph 8 states:

> *All transactions in which goods or services are the consideration received for the issuance of equity instruments shall be accounted for based on the fair value of the consideration received or the fair value of the equity instruments issued, whichever is more reliably measurable. The fair value of goods or services received from suppliers other than employees frequently is reliably measurable and therefore indicates the fair value of the equity instruments issued. The fair value of the equity instruments issued shall be used to measure the transaction if that value is more reliably measurable than the fair value of the consideration received*

Accordingly, the fair value of the warrant should be reflected.

**Question**

What is the measurement date of the warrant?

**Conclusion**

Measurement date of equity instruments is discussed in EITF 96-18 "*Accounting for Equity Instruments that are Issued to Other than Employees for Acquiring, or in Conjunction with Selling, Goods or Services*". Issue 1 of the above mentioned EITF states:

> *The issuer should measure the fair value of the equity instrument using the stock price and other measurement assumptions as of the earlier of either the following:*
>
> 1. *The date at which a commitment for performance by the counterparty to earn the equity instrument is reached (a "performance commitment) or*
>
> 2. *The date at which the counterparty's performance is complete*

---

Priceline 12/31/99 [Restored]
Period End:  12/31/1999

8/10/2005 1:42:47 PM

CONFIDENTIAL

D&T 0017400

Preparer: TJR 1/18/2000
Reviewer: RJB 1/19/2000

WHC Memo to NO                                                           7180.2: 4/5

PL's performance related to executing and delivering the licensing agreement was complete upon execution and delivery of the licensing agreement (October 26, 1999), and no further performance was required on priceline's behalf; the underlying intent of the grant was to bring priceline to the table to negotiate with WHC. Accordingly, the measurement date of the warrant for valuation and accounting purposes is October 26, 1999. All terms of the warrant are known as of this date which results in fixed accounting treatment.

**Question**

When should PL recognize revenue related to the execution and delivery of the agreement?

**Conclusion**

Under EITF 96-18, income related to the warrant should be recognized in the same period and manner as if the enterprise had received cash for the goods or services instead of receiving an equity instrument as consideration.

Since there are no further services (i.e., a service period) which are required to be performed, we believe warrant income should be recorded on the date of the signed agreement (October 26, 1999) based on the fair value of the warrants on that date.

Alternatively, we believe the execution and delivery of the agreement is a nonrefundable licensing fee that has no future obligation or performance requirements. The intention of this nonrefundable initial fee relates to providing WHC the technology, know-how, and name recognition to launch the website, which is similar in nature to services provided for initial franchise fees. The royalty payments are intended to compensate for any on-going services (at fair value) and use of the intellectual property during the term of the licensing agreement. USAAPMS 410-2 paragraph .050 specifies the following, in part:

> *Nonrefundable license fees that are payable at the initiation of a licensing agreement should be recognized immediately in income when received or when collectibility is reasonably assured, provided that there are no future obligations or performance requirements. Arrangements that provide for nonrefundable fees should be treated in a manner similar to initial franchise fees under FASB 45, that is, such fees may be recognized as revenue, with an appropriate provision for estimated uncollectible amounts, when the grantor of such rights has performed substantially all material services or substantially satisfied the conditions related to the agreement.*

All initial services have been rendered, WHC has launched the website, and payment has been made in the form of a fully vested warrant with no corresponding performance commitments (assuring collectibility – i.e., no contingency related to vesting or exercise). In addition, quarterly royalty payments represent fair value compensation for on-going services for the use of the intellectual property during the term of the agreement. Accordingly, the entire value of the warrant should be recognized as revenue in 1999.

UPDATE: Discussed with national office who concurred with the above analysis.

---

Priceline 12/31/99 [Restored]
Period End: 12/31/1999

8/10/2005 1:42:47 PM

**CONFIDENTIAL**

D&T 0017401

Preparer: TJR 1/18/2000
Reviewer: RJB 1/19/2000

WHC Memo to NO                                                                7180.2: 5/5

UPDATE: We will include a representation as to the intent of the agreement in the management representation letter and request that such intent be incorporated and reflected into the underlying agreements. Such amendment is underway and will be documented in the form of a letter to be signed by both parties.

Priceline 12/31/99 [Restored]
Period End: 12/31/1999                                                 8/10/2005 1:42:47 PM

CONFIDENTIAL                                                                 D&T 0017402