# EXHIBIT 27

7180.1



# Memo

Telephone:    TR
Facsimile:

\* Note: Cleared Accounting
issue + Report Disclosure
w/ G. Tomlinson +
P. Cullis, Acctg Research,
Fri., 3/17/00

Date: March 15, 2000
To: File
From: T. Restivo
Subject: Webhouse Club - Accounting and Valuation

Summary Procedures:

1. Obtain and review final agreements
2. Identify potential accounting issues
3. Consult with national office about accounting
4. Obtain valuations as of the following dates:
   - November 1, 1999 – Contract Date
   - December 31, 1999 – to determine whether there has been a diminution in value
   - 3/31/00 draft

Summary description of procedures and results:

5. Obtain and review final agreements:

   Reviewed agreements, noting the following:

   A. WHC granted to PL a warrant to purchase 137.5 million shares of WHC common stock. The PL warrant is "in consideration for Grantee's execution and delivery of the Priceline License Agreement."

   B. Made inquiry to Bob Mylod, Senior VP Finance regarding the nature of the agreement and the warrant. Mr. Mylod indicated that the purpose of the warrant grant was purely an inducement to get PL to participate in discussion with the WHC service and was in the nature of a good faith "sign-on" bonus.

6. Identify potential accounting issues -
   - Accounting – the intent of the warrant grant is not precise; i.e., is the grant related to a) an inducement to negotiate / the initiation of a relationship, b) the signing of an agreement, c) issued in conjunction with the license agreement.

Deloitte Touche
Tohmatsu

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0000402

7. Consult with national office about accounting

   - Consulted with national office – (Callif and Tomlinson) who indicated that if priceline received the warrant as an inducement to enter into the relationship with WHC, and the warrants are non-forfeitable, fully vested upon grant, cliff exercise or earlier, do not require the performance of additional services by priceline then PL should recognize the $189 million representing the fair value at date of receipt. The fair value of the warrant should be supported by appraisal. (note: DT previously recommended that PL obtain a valuation of the warrant for recording purposes – Murray, Devine will be used).

   - National reviewed the documents and indicated that the underlying intent should be clarified. Priceline and WH will amend the agreements to reflect the original intent (See A/7180.5).

8. Obtain valuations as of the following dates:

   - November 1, 1999 – Contract Date –Obtained and reviewed; forwarded to Capital Markets Group for review; Capital Markets group indicated that the valuation was reasonable (Draft received on 1/12/00 – see A/7180.3; Final received – no change in the analysis – see A/7180.3A; see also discussion with capital markets group at A/7180.3B).

   - December 31, 1999 – to determine whether there has been a diminution in value; obtained a December 31, 1999 warrant valuation update for year-end to determine impairment – none noted; per discussion with appraisers, given the limited operational history of WHC (less than 2 months, they believe their conclusions/valuation would not change – appeared reasonable; see A/7180.4.

   - UPDATE – noted that 3/31/00 draft - requested that a draft analysis be performed based on available information to determine whether there has been a decline in valuation.– the warrant appreciated in value to an estimated value of 248.1 million; (See A/7180.6)

9. Include a representation in the management representation letter mirroring the language contained in Note 11 regarding the transaction. See management representation letter at 2350.

10. Consulted with national office regarding the subsequent accounting treatment of the warrant; Based on my analysis, accounting of warrant would support carrying the warrant at cost; briefly: EITF 99-2, Accounting for Weather Derivatives, appears to apply by analogy at best - and even so not clear on the analogy, even if it did apply, would not conflict with cost and assessment of fair value.

    - FAS 115 clearly does not apply as the Statement addresses the accounting and reporting for investments in equity securities that have readily determinable fair values- such is not the case here.

    - Moreover, FAS115, Footnote 2, by analogy, restricted stock, "[f]or the purpose of this Statement, means equity securities for which sale is restricted by governmental or contractual requirement except if that requirement terminates within one year or if the holder has the power by contract or otherwise to cause the requirement to be met within



CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0000403

one year. Any portion of the security that can be reasonably expected to qualify for sale within one year, such as may be the case under Rule 144 or similar rules of the SEC, is not considered restricted.);" – such is not the case here.

- Accordingly, it would appear that the warrant should be carried at cost and assessed for impairment; see "8. Valuations" above.

- FAS133 application – Per John Smith, National Office, indicated that if the underlying stock is not traded and settlement of the warrant is by delivery, it would not qualify as a derivative under FAS 133. Cost treatment appears reasonable..

CONFIDENTIAL DISCOVERY
MATERIAL REQUESTED BY
DELOITTE & TOUCHE LLP

D&T 0000404