UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. | : | |
| SECURITIES LITIGATION | : | |
| | : | MASTER FILE NO. |
| | : | 3:00-CV-1884(AVC) |
| This document relates to: | : | |
| | : | |
| ALL ACTIONS | : | |

### RULING ON MOTIONS FOR APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES

This is an action for damages brought on behalf of a class of all persons and entities who purchased or acquired Priceline.com securities during the class period of January 27, 2000 through October 4, 2000, and were damaged thereby.[1] It is brought pursuant to sections 10(b), 15 U.S.C. § 78j(b), and 20(a), 15 U.S.C. § 78t, of the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78a-78mm, and Rule 10b-5, 17 C.F.R. § 240.10b-5. The complaint alleges that the defendants made certain misleading statements with respect to the profitability of Priceline.com and WebHouse Club, causing the plaintiff class to suffer losses on their investments in Priceline.com securities. On May 4, 2007, the plaintiffs reached a settlement with the defendants Priceline.com, Jay Walker, Dan Schulman, Richard Braddock and N.J. Nichols. On July 2, 2007, the court held a hearing to address the fairness of the proposed settlement in accordance with Federal Rule of

---

[1] Excluded from the class are the following: (1) the settling defendants; (2) the officers and directors of Priceline.com, at all relevant times; (3) members of the settling defendants' immediate families and their legal representatives, heirs, successors or assigns; (4) any entity in which the settling defendants have or at any time had a controlling interest; and (5) Deloitte & Touche LLP, or any of Deloitte's partners, officers and directors.

Civil Procedure 23(e).[2]  For the following reasons, the court hereby approves the parties proposed settlement and the plaintiffs' requested attorneys' fees and expenses.

## FACTS

Examination of the complaint and the papers filed in connection with the parties' proposed settlement and the arguments made during the July 2, 2007, hearing reveal the following facts:

On October 2, 2000, the plaintiffs filed the complaint in this case, alleging that the defendants made certain misleading statements with respect to the profitability of Priceline.com and WebHouse Club, causing the plaintiff class to suffer losses on their investments in Priceline.com securities.  On November 29, 2000, the court consolidated nine of the within cases.  On September 12, 2001, the court consolidated the remaining 21 cases under the above-titled case number.  On September 12, 2001, the court appointed lead plaintiff for the putative class.  On October 29, 2001, the plaintiff filed a consolidated amended complaint.  On February 28, 2002, the defendant, Deloitte and Touche ("Deloitte"), and the defendants Priceline, Walker, Schulman, Braddock and Nichols ("Priceline Defendants"), filed motions to dismiss the consolidated amended complaint.  On October 7, 2004, the court, the honorable Dominic J. Squatrito, granted in part and denied in part the defendants motions to dismiss and dismissed a portion of the allegations against the Priceline defendants and all of the allegations against Deloitte.  On January 7, 2005, the plaintiffs filed a motion to certify the class.  On April 4, 2006, the court certified the plaintiff class to include all persons and entities who purchased or

---

[2] Federal Rule of Civil Procedure 23(e) provides, in relevant part, that "the court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(1)(C).

acquired Priceline.com securities during the class period of January 27, 2000 through October 4, 2000, and were damaged thereby.  During the pendency of this case, the parties filed numerous discovery motions and have produced and reviewed 5.29 million pages of WebHouse and Priceline documents.

On May 4, 2007, the plaintiffs reached agreement with defendants Priceline.com, Walker, Schulman, Braddock and Nichols for a cash settlement of $80 million.  On July 2, 2007, the court held a hearing to address the fairness of the proposed settlement in accordance with Federal Rule of Civil Procedure 23(e).

## STANDARD

Federal Rule of Civil Procedure 23(e) provides as follows:

(A) The court must approve any settlement . . . of the claims, issues, or defenses of a certified class.

(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C) The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.

Fed.R.Civ.P. 23(e)(1).  The second circuit has recognized that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005).  The court further stated that "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or rule 23(e) requirements:  the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  Id. at 114 (citing Weinberger v. Kendrick, 698 F.2d 61,70 (2d Cir. 1982) (internal quotation marks and

brackets omitted)).

The second circuit has further recognized that "[a] court may approve a class action settlement if it is fair, reasonable and adequate and not a product of collusion." Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005). "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." Id. (citing D'Amato v. Duetsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)). Further, the court has recognized a strong policy in favor of class action settlements and also that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" Id. at 116-17 (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

## DISCUSSION

### I. Adequacy of Notice to the Class

Federal Rule of Civil Procedure 23(e)(1)(B) requires that the court "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1)(B). In addition, Federal Rule of Civil Procedure 23(c)(2)(B) requires that the court "direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion,

- stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(c)(2).

In this case, the claims administrator, Strategic Claims Services ("Strategic Claims"), mailed individual notices, by first-class mail, to all class members at their last known-addresses. Strategic Claims mailed a total of 88,893 packets of individual notice materials. In addition, the notice of this settlement was published in the *Wall Street Journal* and *USA Today*. Further, a press release announced the settlement over the PR newswire for national distribution and the notice of settlement and settlement agreement are currently posted on the claims administrator's website. Finally, Priceline described the settlement in its 2007 first quarter Form 10-Q, which it filed on May 10, 2007.

The court concludes that notice to the class in this case was adequate in form and content to satisfy the requirements of the federal rules and due process. The notice was sufficient for class members to understand the proposed settlement and their options.

## II. Fairness of the Settlement

The federal rules next require the court to determine whether "the settlement . . . is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(1)(C). The second circuit has stated that courts should consider the following factors when determining whether a particular settlement is fair: "(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants

to withstand a greater judgment . . .; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ." City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).  Further, the second circuit has recognized that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"   Wal-Mart Stores, Inc. V. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005) (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

In this case, the parties met in four mediation sessions before reaching agreement.  The honorable Nicholas H. Politan, retired U.S. district judge, and Robert A. Meyer, esq., conducted the negotiations between the parties.  The settlement in this case was ably negotiated at arms' length with the impartial participation of Judge Politan and attorney Meyer and is, therefore, entitled to a presumption of fairness and adequacy.   Further, the above-referenced factors militate in favor of approving the parties' proposed settlement.  This is a complex case involving many complex accounting issues and violations of the securities laws.  While two entities have raised issues with respect to the amount of class counsels' fee, the reaction of the class to the terms of the proposed settlement could not be more favorable.  Not one member of the class has objected to the settlement.  With respect to the stage of the proceedings, the parties have been litigating this case for almost seven years.  During that time, they have completed review of several millions of pages of documents and assembled and utilized teams of investigators and experts to analyze and quantify their claims.  Consequently, the parties are certainly in a position to understand and gauge the strengths and weaknesses of their case and to determine an adequate

settlement. See In re AOL Time Warner, Inc. Securities, 2006 WL 903236 *10 (S.D.N.Y. April 6, 2006). With respect to the risks of establishing liability, absent the within settlement, the plaintiffs would face motions for summary judgment and complex and fact-intensive analysis of accounting and fraud issues. The plaintiffs would also face significant obstacles in proving damages in this case with respect to differences between the stock's purchase price and the stock's "true" value. The determination of damages would depend upon the jury's reaction to and interpretation of conflicting expert opinions on the issue. Such a determination would be difficult to predict with any certainty. With respect to the risks of maintaining the class action through trial, although the court has certified the class in this case, the prospects of decertification certainly exist in light of the defendants' vigorous opposition to the plaintiffs' motions for certification and the defendants' defeat of one of the plaintiffs' motions for appointment of a lead plaintiff as a class representative. With respect to the defendants' ability to withstand a greater judgment, the plaintiffs' memorandum states that class counsel relied on this factor in deciding to settle this case. On its 2007 Form 10-Q, Priceline reported that $30 million of the $80 million dollar settlement amount is being funded through its insurance policies. In addition, the form states that Priceline's current liabilities exceed its current assets and that it reported an operating loss of $31.7 million for its most recent quarter. Finally, the range of reasonableness of the settlement in light of the best possible recovery and litigation risks weighs in favor of approving the parties settlement. Given the procedural history of this case, the previously discussed risks of proceeding to trial and the defendants' financial circumstances, the court concludes that the settlement here represents a fair, adequate and reasonable result for the class.

As part of the fairness determination, the court must determine whether the settlement's proposed allocation of the proceeds is fair and reasonable. "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed settlement is fair and reasonable in light of that information." In re Paine Webber Partnerships Litigation, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997). In this case, the settlement provides for distribution of the net settlement funds on a pro rata basis and involves a formula based upon liability and damages. The settlement agreement seeks to reimburse class members for the excess amount they paid for Priceline stock because of the artificial inflation of the stock by reason of the defendants' misrepresentations. The court notes that not one class member has objected to the proposed plan of allocation. Upon careful review of the settlement agreement's allocation of the settlement fund, the court concludes that it is fair and has a "reasonable rational basis" in light of the circumstances of this case. See Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

## III. Attorneys' Fees

Lead plaintiffs' counsel have also filed a motion for an award of attorneys fees in the amount of 30% of the $80 million dollar settlement and for reimbursement of litigation expenses. For the foregoing reasons, the motion is granted.

The plaintiffs argue that 30% of the settlement fund is a fair and reasonable fee in this case. The New York State Teachers' Retirement System ("NYSTRS") has filed an opposition to the requested fee and argues that the facts of this case do not support a fee award in that amount. In addition, the Pennsylvania Public Schools Employees' Retirement System ("PPSERS") has filed an objection to the proposed attorneys' fee request.

The second circuit has recognized that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class. . . . the attorneys whose efforts created the fund are entitled to a reasonable fee-set by the court-to be taken from the fund. Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (citations omitted). The second circuit has recognized two methods for calculating a reasonable fee. "The first is the loadstar, under which the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. Once that initial computation has been made, the district court may, in its discretion, increase the loadstar by a multiplier based on 'other less objective factors,' such as the risk of litigation and the performance of the attorneys." Id. (Citation omitted) (internal quotation marks omitted in original). Under the second method, "the court sets some percentage of the recovery as a fee." Id. The second circuit has recognized that regardless of the method used, "the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." Id. The second circuit has stated that whether using the loadstar or percentage methods, "the district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" Id. at 50 (quoting In re Union Carbide Corp. Consumer Products Business Securities, 724 F. Supp 160, 163 (S.D.N.Y. 1989)).

In this case, counsel have expended 31,768 hours at rates of between $50 and $770 per hour for a total of 12.1 million in fees. Counsel in this case state that they have investigated

9

publicly available materials, reviewed millions of pages of documents, consulted with experts, conducted ongoing research and drafted court documents for an extensive motions practice, formulated litigation strategy, prepared for and participated in multiple mediation sessions, and negotiated and administered the within settlement. The magnitude and complexity of this case are apparent from the more than six years of contentious discovery, intricate issues regarding proof of liability and loss and complex accounting issues. With respect to the risk of litigation, the plaintiffs developed their own theory of liability and damages, as there was not a government prosecution in this case. Proving the elements of this case would be a necessary and formidable task. Further, litigation brought issues of collectibility against these defendants, a risk that the class would not be certified, and risks associated with taking a case on a contingent fee basis. The quality of representation here is demonstrated, in part, by the result achieved for the class. Further, it has been this court's experience, throughout the ongoing litigation of this matter, that counsel have conducted themselves with the utmost professionalism and respect for the court and the judicial process. The relation of the requested fee to the settlement weighs in favor of the requested 30% fee award. The effort by counsel in this case, the result obtained and similar awards in comparable cases in this circuit, all weigh in favor of the requested fee. See e.g., Gwozdzinnsky v. Sandler Assoc., 159 F.3d 1346 (2d Cir. 1998) (summary order) (affirming district court's award of 25% of the common fund); Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 and 1/3% of the settlement fund) ; Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (granting attorneys' fees in amount of 33 and 1/3% of the settlement fund); In re RJR Nabisco, No. 88 Civ. 7905, 1992WL210138 (S.D.N.Y. Aug. 24, 1992) (recognizing

that the courts increasingly use the percentage of the fund method over the loadstar method in attorneys' fee award).

Finally, public policy considerations also support the requested fee. The award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis. The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature.

A cross check of the loadstar in this case also demonstrates the reasonableness of the requested percentage. The percentage requested equals a 1.98 multiplier of the $12.1 million dollar loadstar amount. Taking into consideration all of the aforementioned factors, the risks associated with contingent fee litigation, and the quality of representation here and the results obtained, this multiplier is reasonable in light of the circumstances of this case. See In re Lloyd's American Trust Fund Litigation, 2002 WL 31663577 *26-28 (S.D.N.Y. 26, 2002) (recognizing that courts typically apply a multiplier to the loadstar amount to recognize the risks of litigation and a contingent fee). The court, therefore, orders a fee award equal to 30% of the settlement amount plus accrued interest to the date of the award. The amount of the fee award shall be allocated among the plaintiffs' counsel in a fashion which fairly compensates counsel for their respective contributions in litigating this case.

Class plaintiffs' counsel also request an award for reimbursement of their litigation expenses advanced to prosecute this case, in the amount of $1,394,422.57. Counsel have submitted thorough records of their requested expenses. Absent any objection thereto and after careful review of the expenses at issue, the court grants the plaintiffs' request. The plaintiffs'

counsel shall be reimbursed for the full amount of the expenses they have advanced in this matter.

## IV. Opt Out Provision

The notice to the class of the proposed settlement gave class members the option to opt out of the settlement. On June 4, 2007, class member Barbara A. Res filed a request to opt out of the settlement in accordance with the procedures set forth in the notice of settlement. Her request is granted and she will not be part of the within settlement. In addition, Arnold J. Hoffman filed a request to opt out with respect to several trusts. That request is addressed in a separate order filed simultaneously herewith.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for final approval of the proposed class action settlement (document no. 462) and the motion for award of attorneys' fees and reimbursement of expenses (document no. 463) are **GRANTED**.

It is so ordered this 19th day of July, 2007, at Hartford, Connecticut.

/s/

Alfred V. Covello,
United States District Judge