UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: PRICELINE.COM, INC. SECURITIES LITIGATION | : : : : : | MASTER FILE NO. 3:00-CV-01884 (AVC) |
| This document relates to: | : : | July 18, 2007 |
| ALL ACTIONS | : : | |

# DECLARATION OF BETH A. KASWAN

I, Beth A. Kaswan, pursuant to 28 U.S.C. § 1746 declare, under penalty of perjury, that the following is true, to the best of my knowledge and belief.

1. I am Of Counsel to Scott + Scott LLP, one of the lead counsel in this case. I make this declaration in further support of Plaintiffs' motion for leave to serve and file a second amended complaint.

2. I have been actively involved in reviewing the workpapers and other files produced in discovery by Deloitte and Touche LLP ("Deloitte") in this case, and am familiar with the documents used to plead Deloitte's scienter in the proposed Second Amended Complaint (the "SAC"). I am also familiar with the various accounting guidances and auditing standards cited in the SAC.

3. Attached as Exhibit 1 is a true copy of the Statement of Financial Accounting Concepts ("SFAC") No. 5, a highly authoritative accounting requirement in the hierarchy of accounting literature. Paragraphs 83 and 84 address "Revenues and Gains" and require, *inter alia*, that, "Revenues are not recognized until earned," and that, "If services are rendered or rights to use assets extend continuously over time . . . revenues may be recognized as earned as time passes."

4. Attached as Exhibit 2, is a true copy of SEC Staff Accounting Bulletin ("SAB") 101, on "Revenue Reconition in Financial Statements." SAB 101 provides guidance on the application of SFAC No. 5, and on page 8, in response to question #5, addresses situations where "nonrefundable fees" are paid "upon entering into arrangements," that "may ostensibly be received for conveyance of a license or other intangible right." The SEC then describes examples where, the "initial fees may, in substance, be wholly or partly an advance payment for future products or services," such that "the up-front fee and the continuing performance obligation related to the services to be provided or products to be delivered are assessed as an integrated package." According to the SEC, under SAB 101, when this occurs, the up-front fees, "generally should be defined and recognized systematically over the periods that the fees are

earned." This is the accounting theory the Plaintiffs have relied upon in drafting the new section in the SAC, Section IV-F, "The Evolving Intent and Accounting for the Webhouse Transaction," ¶¶68-104, relating to Deloitte's scienter.

5. Exhibit 3 is a true copy of a document produced by Deloitte in response to a subpoena served by Plaintiffs on Deloitte in December 2004. All documents with a Bates number beginning "D&T" were produced by Deloitte. ███████

███████

6. Exhibit 4, produced by Deloitte, purports to be ███████

███████

7. Exhibit 5 purports to be a ███████

███████

8. Exhibit 6 is a true copy of a memorandum dated ▮▮▮▮

9. Exhibit 7 is a true copy of a document produced by Priceline dated September 19, 1999 and purporting to be ▮▮▮▮

10. According to documents produced by Deloitte, ▮▮▮▮

11. Exhibit 8, produced from Deloitte, reflects that in ▓

13. Exhibit 15 purports to be ▓

14. [redacted]

15. Exhibit 17 purports to be a memorandum dated [redacted]

16. Exhibit 18 purports to be a [redacted]

17. Exhibit 19 is a copy of a document produced by Deloitte purporting to be [redacted]

18. Exhibit 20 is a true copy of Deloitte's audit opinion that was included within Priceline's 1999 Form 10-K. The opinion is dated January 27, 2000 (which generally means that that is the date that the audit fieldwork was completed), and March 17, 2000 as to the matters described in footnote 15 to Priceline's financial statements -- so that the audit opinion was necessarily issued to Priceline on or after March 17, 2000.

19. Exhibit 21 is a true copy of a document produced by Deloitte from its Webhouse audit files dated

21. A file was produced to Plaintiffs by Deloitte labeled ■

22. Exhibits 23 and 24 dated ■

23. Exhibit 25 is a document purporting to be the ■

[redacted]

24. Exhibit 26 is a memorandum purporting to be prepared [redacted]

25. Exhibit 27 is a memorandum dated [redacted]

26. Exhibit 28, are excerpts of what purports to be [redacted]

27. Exhibit 29 is an excerpt from

(Emphasis added).

28. With respect to Deloitte's statute of limitations defense, Plaintiffs dispute that Deloitte has timely produced its files since being served with a subpoena in December 2004. (Exhibit 30). As described in the Declaration of Jacob B. Perkinson, two-thirds of the documents produced by Deloitte were produced 18 months after the December 3, 2004 subpoena to Deloitte to produce its documents. And Deloitte continues to withhold the audit workpapers it relies upon for its defense that the accounting treatment for the Webhouse warrants was based on the earlier accounting for the Delta warrant. (Def. Mem. at 5).

29. Upon my review of certain loose letters produced by Deloitte that reflect part of the communications between Priceline and its counsel and the SEC in February and March 1999, about the accounting for the Priceline stock warrants issued to Delta Airlines in December 1998, I made a request to Deloitte's counsel to produce Deloitte's files relating to Priceline's restatement of its 1998 financial statements. As reflected in the letter dated March 26, 2007 (Exhibit 31), Deloitte refused on the grounds that, "The restatement relates to periods prior to 1999, and outside the applicable discovery period." In fact, the restatement occurred in 1999 and the restatement documents are called for by the subpoena issued to Deloitte, see Request No. 1(a), (b), (e), (f), (g) and (l). As Priceline's Registration Statement for its Initial Public Offering ("IPO") filed

March 31, 1999 reflects, the 1998 restatement covered changes to the 1998 accounting for the Delta airline warrant (Exhibit 32). In footnote no. 32 to the 1998 financial statements included in the March 1999 Registration Statement, under the heading "Restatement", Priceline reported that it had restated its 1998 income for, *inter alia*, its accounting for the Delta warrants -- which presumably occurred at some point in 1999 after Priceline first reported its earnings for the year ended December 31, 1998.

30. Deloitte has submitted selected portions of communications with the SEC as proof of the legitimacy of its accounting for the Webhouse warrant, while withholding the remainder of these communications as relating to periods "prior to 1999". See Exhibits B, C and D to the Declaration of William R. McGuire. Thus, despite Deloitte's protestations that it has been forthcoming in discovery, to this day Deloitte is withholding audit files which it contends are critical to the evaluation of the accounting for the Webhouse warrants.

31. Exhibit 33 purports to be a 

32. The American Institute of Certified Public Accountants ("AICPA") publishes United States Auditing Standards that are considered part of GAAS. Exhibit 34 is a true copy of the AICPA publication on AU Section 220 on auditor independence,

and Exhibit 35 is a true copy of the AICPA publication on AU 230A on the requirement for Professional Care in the Performance of Work by an auditor.

33. Exhibits 36 and 37 are excerpts of original complaints filed in this case which show that Plaintiffs performed "some inquiry" of the facts of this case as early as October 2000. The Consolidated Amended Complaint ("CAC"), at ¶237, also describes, in summary fashion, the investigation Plaintiffs undertook between October 2000 and October 2001 for pleading this case.

Dated: New York, New York
July /6, 2007

/s/ Beth A. Kaswan
Beth A. Kaswan
Scott + Scott, LLP
75 Rockefeller Plaza
19th Floor, Suite 1915
New York, NY 10019
Telephone: (212) 710-1040
Facsimile: (212) 710-1041