UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------x

IN RE: PRICELINE.COM : 
SECURITIES LITIGATION,  :  MASTER FILE NO.
 :  3:00-CV-01884 (AVC)
 :
 :
This document relates to: :
 :  July 27, 2007
 :
ALL ACTIONS :

---------------------------------------------------------------x

### DELOITTE & TOUCHE LLP'S SUBMISSION OF SUPPLEMENTAL AUTHORITIES AND SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Eric W. Wiechmann (CT 04331)
Thomas J. Finn (CT 20929)
McCARTER & ENGLISH, LLP
CityPlace I
Hartford, Connecticut 06103
(860) 275-6700

William R. Maguire (CT 23375)
David W. Wiltenburg
Kenneth M. Katz
David B. Shanies
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Attorneys for Deloitte & Touche LLP*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Page

I. THE CAC II CANNOT MEET THE SCIENTER PLEADING
REQUIREMENTS SET FORTH IN *TELLABS* AND *ATSI*..................................................1

II. THE CAC WAS TIME-BARRED UNDER
THE 1-YEAR STATUTE OF LIMITATIONS..................................................................4

III. THE CAC II CANNOT RELATE BACK TO THE DISMISSED CAC AND IS
THEREFORE TIME-BARRED UNDER THE 3-YEAR STATUTE OF REPOSE...........6

Conclusion ...............................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*,
104 F.3d 601 (3d Cir. 1997)..................................................................................5

*ATSI Commc'ns, Inc. v. Sharr Fund Ltd.*,
__ F.3d __, 2007 WL 1989336 (2d Cir. July 11, 2007)..............................................1

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987)................................................................................7, 8

*Black v. Northern Trust Co.*,
No. G88-150, 1989 U.S. Dist. LEXIS 17606 (W.D. Mich. Feb. 24, 1989) ..............8

*DiLaura v. Power Auth. of N.Y.*,
982 F.2d 73 (2d Cir. 1992)..................................................................................5

*Elmore v. Henderson*,
227 F.3d 1009 (7th Cir. 2000) ........................................................................7, 8, 9

*Falor v. G&S Billboard*,
No. 04-2373, 2006 U.S. Dist. LEXIS 76990 (D.N.J. Oct. 23, 2006) ......................9

*Fellman v. Electro Optical Sys. Corp.*,
No. 98 Civ. 6403, 2000 WL 489713 (S.D.N.Y. Apr. 25, 2000)...............................7

*Green v. Wolf Corp.*,
50 F.R.D. 220 (S.D.N.Y. 1970) ...........................................................................7

*Jewell v. County of Nassau*,
917 F.2d 738 (2d Cir. 1990).................................................................................7

*LC Capital Partners, LP v. Frontier Ins. Group, Inc.*,
318 F.3d 148 (2d Cir. 2003)..............................................................................4, 5

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)..............................................................................................7

*Marcello v. Maine*,
CV-06-68-B-W, 2006 U.S. Dist. LEXIS 92853 (D. Me. Dec. 22, 2006)................8

*McKenna v. City of Philadelphia*,
Nos. 98-5835, 99-1163, 2007 WL 1462229 (E.D. Pa. May 15, 2007).....................9

*In re Neopharm, Inc. Sec. Litig.*,
No. 02 C 2976, 2007 WL 625533 (N.D. Ill. Feb. 23, 2007)....................................9

# TABLE OF AUTHORITIES

Page

*Nite & Day Power Techs. v. Corporate Capital Res., Inc.*,
   No. CV-89-20298, 1995 U.S. Dist. LEXIS 22431 (N.D. Cal. Jan. 5, 1995) ............................ 9

*In re Priceline.com Inc. Sec. Litig.*,
   342 F. Supp. 2d 33 (D. Conn. 2004) ............................................................................... 3, 4

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ............................................................................................. 5, 6

*SEC v. Price Waterhouse*,
   797 F. Supp. 1217 (S.D.N.Y. 1992) ................................................................................... 4

*Stanford v. Kuwait Airlines Corp.*,
   Nos. 85 Civ. 0477, 85 Civ. 2448, 1987 U.S. Dist. LEXIS 10981
   (S.D.N.Y. Nov. 25, 1987) ................................................................................................... 8

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) ............................................................................................... 7

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
   222 F. Supp. 2d 216 (E.D.N.Y. 2002) ................................................................................ 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) .................................................................................................... 1, 4

*U.S. v. Hussein*,
   178 F.3d 125 (2d Cir. 1999) ............................................................................................... 5

*Virgin Atl. Airways v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) ............................................................................................. 5

*White v. Murtha*,
   377 F.2d 428 (5th Cir. 1967) .............................................................................................. 5

## STATUTES AND RULES

28 U.S.C. § 2072(b) (2007) ....................................................................................................... 8

Fed. R. Evid. 408 (2007) ............................................................................................................ 3

This submission addresses the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007), as well as the Second Circuit's decision in *ATSI Communications, Inc. v. Sharr Fund, Ltd.*, __ F.3d __, Nos. 05-5132, 05-2593, 2007 WL 1989336 (2d Cir. July 11, 2007), which were handed down after the filing of Deloitte's Memorandum in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint ("Deloitte Opp."), and new arguments presented for the first time in Plaintiffs' Reply Memorandum in Further Support of Their Motion for Leave to File a Second Amended Complaint ("Pls. Reply").

## I. THE CAC II CANNOT MEET THE SCIENTER PLEADING REQUIREMENTS SET FORTH IN *TELLABS* AND *ATSI*

Plaintiffs cite the Supreme Court's decision in *Tellabs* (Pls. Reply at 4, 7, 9), but give short shrift to its requirement that the Court weigh *all* inferences, including the inference of innocence. The Supreme Court held that a merely "reasonable" inference of scienter is insufficient to survive a motion to dismiss, and that the inference of fraud must be "strong," "cogent" and "*at least as compelling as any opposing inference of nonfraudulent intent.*" *Tellabs*, 127 S. Ct. at 2504-05, 2510 (emphasis added). In *ATSI*, the Second Circuit first applied its standard two-prong motive/conscious misbehavior test for determining the adequacy of a securities fraud claim (*see* Deloitte Opp. at 34), and then applied the additional *Tellabs* weighing-of-inferences analysis. 2007 WL 1989336, at *11. The Second Circuit affirmed the dismissal of securities fraud claims where the inference of fraud was less "cogent" and "compelling" than the inference of nonfraudulent conduct. *Id.* Here, plaintiffs' fraud theory is both illogical and in conflict with the factual record, and the inference that Deloitte acted without fraudulent intent is far more "cogent" and "compelling."

Now that plaintiffs purport to have given up on a central point of the consolidated amended complaint (the "CAC") and second consolidated amended complaint (the "CAC II"), that the WebHouse valuation was fraudulent (plaintiffs' Reply on page 4 describes that theory as a "straw man"), the fraud theory that remains is premised on the notion that Deloitte should not have accepted representations from Priceline and WebHouse about their intent in entering into their agreements. (Pls. Reply at 3, 9-11.) However, there was nothing unusual in what the parties represented, which was that Priceline had no future performance obligation under the warrant. This was consistent with Priceline's warrant agreements with Delta Airlines and several other airlines, where expense was recognized immediately because the airlines had no future performance obligations.[1]

The allegation that the parties' representations of their intent were "revisionist" – and were made only after Priceline issued its January 27, 2000 earnings release to support what Priceline had said in the release (CAC II ¶ 92) – is without support and is directly contradicted by the documents plaintiffs quote in the CAC II. Those documents establish that the parties had made the same representations to Deloitte since at least November 8, 1999, months before the earnings release. (Deloitte Opp. at 45.)

Those same documents, as well as others cited by plaintiffs in the CAC II, show that Deloitte exercised due professional care in performing its audit and that Deloitte reasonably concluded that the accounting was appropriate, all of which supports the inference of innocence. That documentary record establishes that, in addition to: (i) having met with both parties and their counsel to confirm the parties' intent since at least November 8, 1999; Deloitte (ii) considered the relevant technical accounting literature; (iii) frequently reached out to

---

1. *See, e.g.*, 1999 Priceline Form 10-K, Item 7, at 26 (Continental and Delta warrant agreements did not require airlines "to make any performance commitments").

Deloitte's National Office to confirm the appropriateness of the accounting; (iv) identified a wayward "Whereas" preamble that was arguably inconsistent with the parties' stated intent; and (v) followed up by re-confirming the parties' intent verbally and in writing, and obtaining their undertaking to amend the agreements to clarify that Priceline would have no future obligations under the warrant. (CAC II ¶¶ 84, 89, 91, 95, 97, 98, 99, 102; *see also* Deloitte Opp. at 45-47.) Plaintiffs' response is to argue that Deloitte could not have done good audit work because the remaining defendants agreed to an $80 million settlement. (*See* Pls. Reply at 4, 9.) This attempt to invoke guilt by association cannot cure the factual defects of plaintiffs' fraud claim.[2]

The claim that Deloitte knew the parties' representations regarding Priceline's future performance obligations were false is premised on documents that do not support any such theory: (i) documents that were prepared *before* the agreements were executed; and (ii) press releases and other non-contractual writings that say only that the warrant was in exchange for the license. This is entirely consistent with Priceline's representation that the warrant agreement was in the nature of a "sign-on" bonus for entering into the license, and did not require any future performance.[3] (*See* Deloitte Opp. at 46 n.37.)

Several additional factors support strongly an inference that Deloitte's conduct was not fraudulent: (i) the auditors confirmed the value of the warrant with *an independent*

---

2. A settlement cannot as a matter of law support an inference of wrongdoing even against the settling defendants, let alone against Deloitte. See Fed. R. Evid. 408(a)(1) (evidence inadmissible to show liability includes "furnishing or offering . . . or accepting or offering . . . a valuable consideration in compromising . . . the claim"). Moreover, plaintiffs' argument ignores their own allegations against the settling defendants, which go far beyond Deloitte's March 2000 audit report, and allege that the settling defendants made innumerable actionable misrepresentations concerning the viability of WebHouse, including, in particular, in the summer and early fall of 2000, immediately prior to its demise. (CAC II ¶¶ 118, 119, 172, 175, 176, 179-85, 191-94, 202, 203.) Thus, Judge Squatrito identified "significant differences" between the Priceline defendants and Deloitte when he dismissed the complaint as to Deloitte. *In re Priceline.com Inc. Sec. Litig.*, 342 F. Supp. 2d 33, 45-58 (D. Conn. 2004).

3. After trolling through millions of pages of discovery material, plaintiffs cite a phrase in Priceline's 2000 Form 10-K that refers to Priceline's receipt of the warrant for "services rendered." (Pls. Reply at 9.) This description is likewise consistent with the parties' intent. (*See* Deloitte Opp. at 47 n.39.)

*valuation* (Deloitte Opp. at 7); (ii) the terms of and accounting for the agreements were *fully disclosed* (Deloitte Opp. at 41-43); (iii) the parties represented their intent consistently and confirmed in writing that Priceline had no future performance obligations under the warrant (Deloitte Opp. at 45-47); and (iv) Priceline had typically entered into warrant agreements with no future obligations (*see supra* note 1). Differences in judgment on complex accounting questions simply are not sufficient to give rise to an inference of fraud. *See SEC v. Price Waterhouse*, 797 F. Supp 1217, 1241 (S.D.N.Y. 1992) ("no finding of fraud or recklessness can rationally be made" where the "items involved complex issues of accounting as to which reasonable accountants could reach different conclusions"); *see also* Deloitte Opp. at 43.

In granting Deloitte's motion to dismiss, and finding that plaintiffs alleged "nothing" to impeach Deloitte's work on the value of the warrant, Judge Squatrito also found that "the *nature* of the alleged *accounting* irregularities themselves" were insufficient to plead scienter. *See In re Priceline.com Inc. Sec. Litig.*, 342 F. Supp. 2d 33, 57-58 (D. Conn. 2004) (emphasis added). Judge Squatrito's finding is faithful to the Second Circuit's long-standing rule that mere GAAP or GAAS violations are insufficient to plead scienter, and therefore cannot satisfy the "cogent" and "compelling" inference of fraud required by *Tellabs*.

## II. THE CAC WAS TIME-BARRED UNDER THE 1-YEAR STATUTE OF LIMITATIONS

Plaintiffs' contention that this Court cannot revisit whether the CAC was time-barred when it was filed on October 29, 2001 (Pls. Reply at 11-13) runs afoul of two Second Circuit decisions. First, plaintiffs hold up Judge Squatrito's decision allowing "relation back" to a mere procedural motion unrelated to Deloitte (*id.* at 12), despite the Second Circuit's rejection of relation back in these circumstances in *LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148 (2d Cir. 2003). Plaintiffs do not even attempt to distinguish *LC Capital*, but

instead claim that "Judge Squatrito was aware of *LC Capital*," that he rejected Deloitte's argument that the CAC could not relate back to a motion that provided no notice of a claim against Deloitte, and that the law of the case precludes revisiting this issue.[4] (Pls. Reply at 12.) In fact, Judge Squatrito's decision did not cite, much less distinguish, *LC Capital*, and the law of the case doctrine is discretionary and need not be applied where a decision was *dictum* or clearly erroneous.[5] In any event, the question on the instant motion is whether amendment would be futile, and amending a complaint to proceed with a claim that is time-barred under the Second Circuit's reasoning in *LC Capital* would obviously be an exercise in futility.

Second, plaintiffs argue that because they made "some inquiry" by the date they filed the CAC and were nonetheless unable to plead scienter against Deloitte, the 1-Year statute of limitations had not even begun to run as of that date. (Pls. Reply at 14-15.) This argument is directly contrary to the Second Circuit's controlling decision in *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) (which plaintiffs themselves cite three times (Pls. Reply at 11, 13, 15)), because plaintiffs sued Deloitte on October 29, 2001 based upon allegations that they had known about for more than one year before they made that filing. (Deloitte Opp. at 23-27.)

Like the complaint against Deloitte in this case, the complaint in *Rothman* was dismissed by the District Court as against the accounting firm defendant because the plaintiffs were unable to plead scienter. 220 F.3d at 98. The inability to plead scienter, however, did not

---

4. Plaintiffs cite inapposite cases applying the "law of the case" doctrine to issues that previously had been addressed *in appellate rulings*. *See AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997) (declining "to reconsider a question that was decided in a prior *appeal*") (emphasis added); *White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967) (addressing the applicability of the "law of the case" doctrine to a "decision of a legal issue or issues *by an appellate court*") (emphasis added).

5. *See U.S. v. Hussein*, 178 F.3d 125, 129-30 (2d Cir. 1999) (issues "not necessary to" the outcome constitute dicta and are not subject to the "law of the case" doctrine); *DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 77 (2d Cir. 1992) ("the doctrine of law of the case permits a change of position if it appears that the court's original ruling was erroneous") (internal citation and quotation marks omitted); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (doctrine is "discretionary" and "does not limit a court's power to reconsider its own decisions prior to final judgment").

relieve plaintiffs from application of the statute of limitations. The Second Circuit held that dismissal under the statute would be appropriate if it could be established that plaintiffs had learned the facts alleged in the complaint more than one year before they filed the complaint. *Id.* at 96-98. Applying *Rothman* to the CAC filed against Deloitte on October 29, 2001, plaintiffs must point to some significant fact that they discovered within the 1-year period preceding the October 29, 2001 filing of the complaint. *Id.* at 97-98. Plaintiffs do not even attempt to make any such showing (Pls. Reply at 14-15), because they knew the facts that they alleged in the CAC for more than one year before they filed it. Indeed, the CAC itself cites the dates on which the facts alleged became public, and thus establishes that plaintiffs were aware of those facts before October 29, 2000, which is more than one year before they filed the CAC. (*See* Deloitte Opp. at 23-24.) Accordingly, the CAC was time-barred by the 1-Year statute of limitations.

### III.  THE CAC II CANNOT RELATE BACK TO THE DISMISSED CAC AND IS THEREFORE TIME-BARRED UNDER THE 3-YEAR STATUTE OF REPOSE

While plaintiffs acknowledge the rule, adopted by every Circuit Court of Appeals, that a dismissed complaint is treated as if it had never been filed (Pls. Reply at 16-17 n.10), their reply nonetheless argues that this rule should not be applied here for three reasons, each of which is without merit. (Pls. Reply at 16-18.)

First, plaintiffs argue that applying the rule here would render superfluous Judge Squatrito's grant of leave to replead because the statute of repose had run by the time of his decision dismissing the complaint as to Deloitte. (Pls. Reply at 16.) This argument could be made by any number of plaintiffs whose claims are dismissed "without prejudice," and would effectively nullify the settled law that dismissed claims are disregarded for statute of limitations

purposes.[6] In essence, plaintiffs are attempting to apply "equitable tolling" to the 3-Year statute of repose, which is expressly prohibited under *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363 (1991). Moreover, any such equitable tolling could not help plaintiffs here. Since the time Deloitte allegedly violated the securities laws by issuing its audit report on March 30, 2000, more than three have elapsed, even if the Court were to exclude the entire period during which their claim against Deloitte was pending.

Second, plaintiffs appear to argue that the rule should not apply to securities cases, where, they say, re-pleading is often allowed. (Pls. Reply at 16-17.)[7] But courts typically require plaintiffs to re-plead within 30 or 60 days, not months or, as here, years later. Further, plaintiffs offer no reason to apply a special exemption in securities cases, and have no cogent response to the securities cases that have applied the rule that there can be no relation back to a dismissed complaint (*see* Deloitte Opp. at 19-20), except to argue that one of them was "erroneously" decided. (Pls. Reply at 16 n.10.)

Third, plaintiffs argue that the rule disallowing relation back should not apply to the dismissal of one party in a multi-party case because such a dismissal is a non-final order under Rule 54(b), and Deloitte somehow remained a party even after dismissal. (Pls. Reply at 17-18.) The Second Circuit has squarely rejected this argument. In *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 162-63 (2d Cir. 1987) (emphasis added), the Second Circuit held that

---

6. Both the Seventh Circuit in *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000), and the Second Circuit in *Jewell v. County of Nassau*, 917 F.2d 738, 741 (2d Cir. 1990), noted that the running of the statutory time period is not affected by a district court's reference to repleading or statement that dismissal is without prejudice.

7. The cases cited by plaintiffs (Pls. Reply at 17) are clearly inapposite. Two of the three concern amendments of claims against *existing parties*. See *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F. 2d 843, 855-56 (2d Cir. 1981); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223-24 (S.D.N.Y. 1970). The third case, *Fellman v. Electro Optical Sys. Corp.*, No. 98 Civ. 6403, 2000 WL 489713, at *8-13 (S.D.N.Y. Apr. 25, 2000), is beside the point, because the statute of repose had not run and the court had no occasion to address time-bar or relation back.

"the purpose of the rule is . . . *only to clarify the appealability of an order*," and therefore "a dismissed defendant who fails to obtain a Rule 54(b) certification *does not remain a party* for purposes of determining diversity." Whether a court is exercising subject matter jurisdiction on the basis of diversity, defining discovery rights and obligations, entertaining cross-claims, or applying relation back under Rule 15(c), the Second Circuit's reasoning holds true: a non-final dismissal is nonetheless a dismissal, and means that the dismissed defendant is no longer a party.[8] Indeed, in *Elmore v. Henderson*, where one party was dismissed from a multi-party case, Judge Posner made clear that the dismissed claim could not stop the statute of limitations from running, even where the dismissal was non-final. 227 F.3d 1009, 1012-13 (7th Cir. 2000).

The reason for this rule is the same whether an action includes a single plaintiff and defendant or multiple parties. As Judge Posner held in *Elmore*:

> [A] suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed. Were this not the rule, statutes of limitations would be easily nullified. The plaintiff could file a suit, dismiss it voluntarily the next day, and have forever to refile it.

227 F.3d at 1011 (citations omitted). Here, the time limitation that would be "nullified" is the 3-Year statute of repose, which, as the Second Circuit has repeatedly stressed, is a firm "cutoff" of substantive rights. (Deloitte Opp. at 14-16.) The Federal Rules cannot be read to have such an effect on substantive rights – Congress specifically provided that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b) (2007).

---

8. *Id.*; *see also Stanford v. Kuwait Airlines Corp.*, Nos. 85 Civ. 0477, 85 Civ. 2448, 1987 U.S. Dist. LEXIS 10981, at *6 (S.D.N.Y. Nov. 25, 1987) (rejecting plaintiffs' assertion that a dismissed party is "still a party" under Rule 54(b) for the purposes of defining discovery rights and obligations, because "although an order of dismissal is subject to revision and not appealable until it is certified, it stands as a dismissal"); *Marcello v. Maine*, No. CV-06-68-B-W, 2006 U.S. Dist. LEXIS 92853, at *3-6 (D. Me. Dec. 22, 2006) (rejecting plaintiffs' Rule 54(b) argument that a dismissed defendant in a multi-party case is still subject to interrogatories under Rule 33, explaining that, in light of the Rule's purpose, "Plaintiffs' argument reflects the danger in lifting isolated phrases from the rules without placing them in a broader context"); *Black v. Northern Trust Co.*, No. G88-150, 1989 U.S. Dist. LEXIS 17606, at *2-3 (W.D. Mich. Feb. 24, 1989) (dismissing cross-claims brought by parties that were dismissed without Rule 54(b) certification, because they "are no longer parties to this action").

Finally, plaintiffs incorrectly claim that Deloitte has offered only one multi-party case applying the rule barring relation back, citing *In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2007 WL 625533 (N.D. Ill. Feb. 23, 2007), and claiming that this decision was "erroneous."[9] (Pls. Reply at 16 n.10.) In fact, federal courts, both within the Second Circuit and elsewhere, apply the rule in multi-party cases. *See Elmore*, 227 F.3d at 1011-13 (Deloitte Opp. at 19); *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 259-62 (E.D.N.Y. 2002) (Deloitte Opp. at 20); *McKenna v. City of Philadelphia*, Nos. 98-5835, 99-1163, 2007 WL 1462229, at *6 (E.D. Pa. May 15, 2007) (Deloitte Opp. at 20.); *see also Nite & Day Power Techs. v. Corporate Capital Res., Inc.*, No. CV-89-20298, 1995 U.S. Dist. LEXIS 22431, at *15 (N.D. Cal. Jan. 5, 1995) (denying leave to amend to replead against previously dismissed defendants and finding that the amendment could not "relate back" because these "individual defendants were completely out of the case for over three years and thus were 'new parties' when the second amended complaint was filed").[10]

---

9. In support of their supposed exception for multi-party cases, plaintiffs have cited only two multi-party cases, both from district courts in Illinois, the reasoning of which was expressly rejected by *In re Neopharm, Inc. Sec. Litig.*, because they failed to follow the Seventh Circuit's rule in *Elmore* that a dismissed complaint is treated as if it were never filed. (*See* Deloitte Opp. at 19-20.)

10. *See also Falor v. G&S Billboard*, No. 04-2373, 2006 U.S. Dist. LEXIS 76990, at *19 (D.N.J. Oct. 23, 2006) ("[I]f an original party to an action is subsequently dismissed from the action, she is no longer a party to the action after dismissal").

## Conclusion

For the foregoing reasons, Deloitte respectfully requests that the Court deny plaintiffs' motion for leave to file another untimely and insufficient Consolidated Amended Complaint.

Dated: July 27, 2007

                                        Respectfully submitted,

                                        /s/ Thomas J. Finn
                                        Eric W. Wiechmann (CT 04331)
                                        Thomas J. Finn (CT 20929)
                                        McCARTER & ENGLISH, LLP
                                        CityPlace I
                                        Hartford, Connecticut 06103
                                        (860) 275-6700

                                        William R. Maguire (CT 23375)
                                        David W. Wiltenburg
                                        Kenneth M. Katz
                                        David B. Shanies
                                        HUGHES HUBBARD & REED LLP
                                        One Battery Park Plaza
                                        New York, New York  10004
                                        (212) 837-6000

                                        *Attorneys for Deloitte & Touche LLP*

## CERTIFICATION

I hereby certify that on this 27th day of July 2007 a copy of the foregoing Submission of Supplemental Authorities and Sur-Reply in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Thomas J. Finn
Eric W. Wiechmann (CT 04331)
Thomas J. Finn (CT 20929)
McCARTER & ENGLISH
CityPlace I
Hartford, Connecticut 06103
Tel: (860) 275-6700